**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF FLORIDA

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7

☒ Chapter 11

☐ Chapter 12

☐ Chapter 13

☐ Check if this an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

**12/15**

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- | --- |
| **1.** | **Your full name** Write the name that is on your government-issued picture identification (for example, your driver's license or passport). Bring your picture identification to your meeting with the trustee. | **Liza** First name _____ Middle name **Hazan** Last name and Suffix (Sr., Jr., II, III) | First name _____ Middle name _____ Last name and Suffix (Sr., Jr., II, III) |
| **2.** | **All other names you have used in the last 8 years** Include your married or maiden names. | **Elizabeth Hazan** | |
| **3.** | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-7473** | |

Debtor 1    **Liza Hazan**                                                  Case number *(if known)*

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

■ I have not used any business name or EINs.

☐ I have not used any business name or EINs.

Business name(s)

Business name(s)

EINs

EINs

**5.** **Where you live**

**6913 Valencia Drive**
**Miami Beach, FL 33109**
Number, Street, City, State & ZIP Code

**Miami-Dade**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**If Debtor 2 lives at a different address:**

Number, Street, City, State & ZIP Code

County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** **Why you are choosing *this district* to file for bankruptcy**

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1   **Liza Hazan**                                          Case number *(if known)* _____

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7
■ Chapter 11
☐ Chapter 12
☐ Chapter 13

**8. How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

■ No.
☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No
☐ Yes.

| Debtor | _____ | | | Relationship to you | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number, if known | _____ |
| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11. Do you rent your residence?**

■ No.   Go to line 12.
☐ Yes.   Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?

   ☐ No. Go to line 12.

   ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

Debtor 1 __Liza Hazan__    Case number *(if known)* _____

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

- ■ No.    Go to Part 4.
- ☐ Yes.   Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).*

- ☐ No.    I am not filing under Chapter 11.
- ■ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.
- ☐ Yes.   I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

- ■ No.
- ☐ Yes.

What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____
Number, Street, City, State & Zip Code

| Debtor 1 | **Liza Hazan** | | Case number *(if known)* |
|---|---|---|---|

| **Part 5:** | **Explain Your Efforts to Receive a Briefing About Credit Counseling** |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

   ☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

   ☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

   ☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

   ☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

   ☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

   ☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1    **Liza Hazan**                                                    Case number *(if known)*

| Part 6: | Answer These Questions for Reporting Purposes |
|---|---|

**16.** What kind of debts do you have?

   16a.  **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

   16b.  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

   16c.  State the type of debts you owe that are not consumer debts or business debts

___

**17.** Are you filing under Chapter 7?

■ No.    I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ Yes.    I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

**18.** How many Creditors do you estimate that you owe?

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**19.** How much do you estimate your assets to be worth?

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20.** How much do you estimate your liabilities to be?

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Part 7: | Sign Below |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Liza Hazan**
_____          _____
**Liza Hazan**                                                      Signature of Debtor 2
Signature of Debtor 1

Executed on  **January 11, 2016**                    Executed on  _____
          MM / DD / YYYY                                              MM / DD / YYYY

Debtor 1   **Liza Hazan**                                               Case number *(if known)*

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Geoffrey S. Aaronson**                Date      **January 11, 2016**

Signature of Attorney for Debtor                               MM / DD / YYYY

**Geoffrey S. Aaronson**

Printed name

**Aaronson Schantz Beiley P.A.**

Firm name

**100 SE 2nd Street, Floor 27**
**Miami, FL 33131**

Number, Street, City, State & ZIP Code

Contact phone    **786-594-3000**                  Email address

**349623**

Bar number & State

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name       Middle Name       Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name       Middle Name       Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | |

☐ Check if this is an amended filing

B 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an insider. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.

| Part 1: | List the 20 Unsecured Claims in Order from Largest to Smallest. Do Not Include Claims by Insiders. |
|---|---|

**Unsecured claim**

**1**

900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606

_____
Contact

_____
Contact phone

What is the nature of the claim?    **Judgment**    $ **$500,000.00**

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**
■ No
☐ Yes. Total claim (secured and unsecured)   $ _____
     Value of security:   - $ _____
     Unsecured claim   $ _____

**2**

Allied Collection Service
1607 Central Ave
Columbus, IN 47201

_____
Contact

What is the nature of the claim?    **Hotel Bill**    $ **$312.00**

**As of the date you file, the claim is:** Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**
■ No
☐ Yes. Total claim (secured and unsecured)   $ _____
     Value of security:   - $ _____

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1    Liza Hazan                                     Case number *(if known)*

Contact phone                                Unsecured claim            $

---

**3**    **ATT Mobility**
PO Box 536216
Atlanta, GA 30353

What is the nature of the claim?    **Telephone Bill**    $ **$3,910.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $
         Value of security:    - $
         Unsecured claim    $

Contact

Contact phone

---

**4**    **Car Southeast Financial, LLC**
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431

What is the nature of the claim?    **Car Loan**    $ **$20,792.15**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ☐ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $
         Value of security:    - $
         Unsecured claim    $

Contact

Contact phone

---

**5**    **Cross Simon**
PO Box 1380
Wilmington, DE 19899-1380

What is the nature of the claim?    **Legal Fees**    $ **$11,023.83**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $
         Value of security:    - $
         Unsecured claim    $

Contact

Contact phone

---

**6**    **Direct TV**
PO Box 6550
Englewood, CO 80155-6550

What is the nature of the claim?    **Cable Bill**    $ **$461.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

---

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1    **Liza Hazan**                                      Case number *(if known)* _____

**Does the creditor have a lien on your property?**

_____
_____    ■ No
Contact                 ☐ Yes. Total claim (secured and unsecured)      $ _____
                                Value of security:                     - $ _____
Contact phone                   Unsecured claim                          $ _____

---

| **7** | **Enhanced Recovery Company** | **What is the nature of the claim?** | **Telephone Bill** | $ **$123.00** |

8014 Bayberry Rd
Jacksonville, FL 32256

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

_____
_____    ■ No
Contact                 ☐ Yes. Total claim (secured and unsecured)      $ _____
                                Value of security:                     - $ _____
Contact phone                   Unsecured claim                          $ _____

---

| **8** | **First National Collection Bureau, Inc.** | **What is the nature of the claim?** | **Bank Fees** | $ **$246.08** |

610 Waltham Way
Sparks, NV 89434

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

_____
_____    ■ No
Contact                 ☐ Yes. Total claim (secured and unsecured)      $ _____
                                Value of security:                     - $ _____
Contact phone                   Unsecured claim                          $ _____

---

| **9** | **Fisher Island Community Association** | **What is the nature of the claim?** | **Homeowner's Association Fees** | $ **$0.00** |

c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

_____
_____    ■ No
Contact                 ☐ Yes. Total claim (secured and unsecured)      $ _____
                                Value of security:                     - $ _____
Contact phone                   Unsecured claim                          $ _____

---

| **10** | | **What is the nature of the claim?** | **Cable Bill** | $ **$332.00** |

B 104 (Official Form 104)    For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims    Page 3

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1     Liza Hazan                      Case number *(if known)* _____

**Focus Management**
**10284 NW 47th St**
**Fort Lauderdale, FL 33351**

As of the date you file, the claim is: Check all that apply

- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

**Does the creditor have a lien on your property?**

- ☐ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
  - Value of security:    - $ _____
  - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**11**

**Halsted Management Company**
**c/o David A. Tane, Esq.**
**Tane Waterman & Wurtzel, PC**
**120 Broadway, Suite 948**
**New York, NY 10271**

What is the nature of the claim?    **Condominium Association Fees**    $ **$0.00**

As of the date you file, the claim is: Check all that apply

- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

**Does the creditor have a lien on your property?**

- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
  - Value of security:    - $ _____
  - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**12**

**Internal Revenue Service**
**P.O. Box 7317**
**Philadelphia, PA 19101**

What is the nature of the claim?    **Federal Income Taxes**    $ **$0.00**

As of the date you file, the claim is: Check all that apply

- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

**Does the creditor have a lien on your property?**

- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
  - Value of security:    - $ _____
  - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**13**

**Marzec Law Firm**
**225 Broadway, Suite 3000**
**New York, NY 10007**

What is the nature of the claim?    **Legal Fees**    $ **$0.00**

As of the date you file, the claim is: Check all that apply

- ☐ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

**Does the creditor have a lien on your property?**

- ■ No

---

B 104 (Official Form 104)     For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims     Page 4

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

Debtor 1    **Liza Hazan**       Case number *(if known)* _____

Contact _____
Contact phone _____

☐ Yes. Total claim (secured and unsecured)   $ _____
     Value of security:   - $ _____
     Unsecured claim   $ _____

---

**14**

**Mercedes Benz Financial Services**
**PO Box 685**
**Roanoke, TX 76262**

What is the nature of the claim? _____   $ **$0.00**

As of the date you file, the claim is: Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?

■ No

_____

Contact _____

Contact phone _____

☐ Yes. Total claim (secured and unsecured)   $ _____
     Value of security:   - $ _____
     Unsecured claim   $ _____

---

**15**

**Mount Sinai Medical Center**
**PO Box 403429**
**Miami Beach, FL 33140**

What is the nature of the claim?   **Medical Bill**   $ **$31,414.15**

As of the date you file, the claim is: Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?

■ No

_____

Contact _____

Contact phone _____

☐ Yes. Total claim (secured and unsecured)   $ _____
     Value of security:   - $ _____
     Unsecured claim   $ _____

---

**16**

**Newman Ferrara, LLP**
**1250 Broadway, 27th Floor**
**New York, NY 10001**

What is the nature of the claim?   **Legal Fees**   $ **$24,654.22**

As of the date you file, the claim is: Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?

■ No

_____

Contact _____

Contact phone _____

☐ Yes. Total claim (secured and unsecured)   $ _____
     Value of security:   - $ _____
     Unsecured claim   $ _____

---

**17**

**Ray Garcia P.A.**
**14850 SW 26th Street, Suite 204**
**Miami, FL 33185**

What is the nature of the claim?   **Legal Bills**   $ **$1,000.00**

As of the date you file, the claim is: Check all that apply

■ Contingent

---

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

Debtor 1  **Liza Hazan**                                    Case number *(if known)* _____

|  |  |
|---|---|
|  | ■ Unliquidated |
|  | ■ Disputed |
|  | ☐ None of the above apply |

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)          $ _____
        Value of security:                              - $ _____
        Unsecured claim                                  $ _____

Contact _____

Contact phone _____

---

**18**

**Sterling Emergency Serv. of Miami Beach**
**PO Box 975213**
**Dallas, TX 75397-5213**

What is the nature of the claim?    **Medical Bills**    $ **$4,442.40**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
☐ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)          $ _____
        Value of security:                              - $ _____
        Unsecured claim                                  $ _____

Contact _____

Contact phone _____

---

**19**

**Valencia Estates**
**c/o Jonathan Scott Goldstein, Esq.**
**Haber Slade**
**201 S. Biscayne Boulevard, Suite 1205**
**Miami, FL 33131**

What is the nature of the claim?    **Homeowner's Association Fees**    $ **$100,000.00**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)          $ _____
        Value of security:                              - $ _____
        Unsecured claim                                  $ _____

Contact _____

Contact phone _____

---

**20**

**Verizon**
**PO Box 1100**
**Albany, NY 12250-0001**

What is the nature of the claim?    **Telephone Bill**    $ **$1,758.00**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)          $ _____
        Value of security:                              - $ _____

Contact _____

---

B 104 (Official Form 104)        For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims        Page 6

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor 1 | Liza Hazan | | Case number *(if known)* | |
|---|---|---|---|---|
| | Contact phone | Unsecured claim | $ | |

---

| Part 2: | **Sign Below** |
|---|---|

**Under penalty of perjury, I declare that the information provided in this form is true and correct.**

X  **/s/ Liza Hazan**             X
     **Liza Hazan**                            Signature of Debtor 2
     Signature of Debtor 1

     Date    **January 11, 2016**                  Date

B 104 (Official Form 104)          **For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims**         **Page 7**

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606

Allied Collection Service
1607 Central Ave
Columbus, IN 47201

ATT Mobility
PO Box 536216
Atlanta, GA 30353

Car Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431

Chase Bank, NA
c/o Jennifer Kopf, Esq.
Shapiro, Fishman & Gashe, LLP
2424 N. Federal Highway, Suite 360
Boca Raton, FL 33431

Cross Simon
PO Box 1380
Wilmington, DE 19899-1380

Direct TV
PO Box 6550
Englewood, CO 80155-6550

Enhanced Recovery Company
8014 Bayberry Rd
Jacksonville, FL 32256

First National Collection Bureau, Inc.
610 Waltham Way
Sparks, NV 89434

Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351


Halsted Management Company
c/o David A. Tane, Esq.
Tane Waterman & Wurtzel, PC
120 Broadway, Suite 948
New York, NY 10271


Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101


Jacobs Keeley, PLLC
c/o Bruce Jacobs, Esq.
169 East Flagler Street, Suite 1620
Miami, FL 33131


Mark D. Cohen, PA
c/o Mark D. Cohen, Esq.
4000 Hollywood Boulevard, Suite 435
Hollywood, FL 33021


Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007


Mercedes Benz Financial Services
PO Box 685
Roanoke, TX 76262


Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140


Newman Ferrara, LLP
1250 Broadway, 27th Floor
New York, NY 10001


NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131

Presidential Auto Leasing & Sales
3201 South Federal Highway
Delray Beach, FL 33483


Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185


Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247


Robert P. Lithman P.A.
c/o Robert P. Lithman, Esq.
18001 Old Cutler Road, Suite 600
Miami, FL 33157


Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016


Select Portfolio Servicing, Inc.
ATTN: Bankruptcy Department
PO Box 66250
Salt Lake City, UT 84165


Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431


Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213


Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017

US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706


Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131


Verizon
PO Box 1100
Albany, NY 12250-0001

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
www.flsb.uscourts.gov

In re:

                                             CASE NO.:  16-10389-AJC

LIZA HAZAN,
        Debtor.                             CHAPTER 11
_____/

**FIFTH** **AMENDED DISCLOSURE STATEMENT**

*Table of Contents*

I.      **INTRODUCTION**                                        **page 2**
      A.    **Purpose of This Document**
      B.    **Deadlines for Voting and Objecting;**
            **Date of Plan Confirmation Hearing**
      C.    **Disclaimer**
II.     **BACKGROUND**                                       **page 4**
      A.    **Description and History of the Debtor's Business**
      B.    **Insiders of the Debtor**
      C.    **Management of the Debtor Before and During the Bankruptcy**
      D.    **Events Leading to Chapter 11 Filing**
      E.    **Significant Events During the Bankruptcy Case**
      F.    **Projected Recovery of Avoidable Transfers**
      G.    **Claims Objections**
      H.    **Current and Historical Financial Conditions**
III.    **SUMMARY OF THE PLAN OF REORGANIZATION**        **page 13**
      **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
      A.    **What is the Purpose of the Plan of Reorganization?**
      B.    **Unclassified Claims**
            1.    *Administrative Expenses*
            2.    *Priority Tax Claims*
      C.    **Classes of Claims and Equity Interests**
            1.    *Classes of Secured Claims*
            2.    *Classes of Priority Unsecured Claims*
            3.    *Class[es]of General Unsecured Claims*
            4.    *Class[es] of Equity Interest Holders*
      D.    **Means of Implementing the Plan**
      E.    **Risk Factors**
      F.    **Executory Contracts and Unexpired Leases**
      G.    **Tax Consequences of Plan**
IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**    **page 27**
      A.    **Who May Vote or Object**

B.    **Votes Necessary to Confirm the Plan**
    1.    *Votes Necessary for a Class to Accept the Plan*
    2.    *Treatment of Nonaccepting Classes*
C.    **Liquidation Analysis**
D.    **Feasibility**
    1.    *Ability to Initially Fund Plan*
    2.    *Ability to Make Future Plan Payments*
       *And Operate Without Further Reorganization*

V.    **EFFECT OF CONFIRMATION OF PLAN**        **page 31**
A.    **Discharge Of Debtor**
B.    **Modification of Plan**
C.    **Final Decree**

**EXHIBITS**
**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

## INTRODUCTION

This is the fifthamended disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes theFourthAmended Plan of Reorganization (the "Plan") filed by the Debtor on November 15, 2017. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid by 7/11/18.

A.    **Purpose of This Document**

This Disclosure Statement describes:

> The Debtor and significant events during the bankruptcy case,
> How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*,what you will receive on your claim or equity interest if the plan isconfirmed),
> Who can vote on or object to the Plan,
> What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
> Why the Proponent believes the Plan is feasible, and how the treatment

of your claim or equity interest under the Plan compares to what you wouldreceive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes thePlan, but it is the Plan itself that will, if confirmed, establish your rights.

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This sectiondescribes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot andreturn the ballot inthe enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. ClydeAtkins United States Courthouse301 North Miami Avenue, Room 150 Miami, FL 33128. Seesection IV.A. below for a discussion of votingeligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

3.    *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Courtand served pursuant to orders served herewith.

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
Counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

C.    **Disclaimer**

***The Court must approve this Disclosure Statement as containing adequate information toenable parties affected by the Plan to make an informed judgment about its terms. TheCourt***

*has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has historically earned in excess of $350,000 per year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele. The Debtor has several projects under contract that will provide sufficient income to confirm and fund her plan. The Debtor presently has closed contracts that will earn her significant funds (comparable to past earnings) in the next six months.

Debtor works with other major hospitality brands, restaurants, lounges and nightclubs that will earn her millions of dollars of income in the near future.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in the Fisher Island Property would support a refinancing, which could also be used to support funding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group, L.D.C. which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group, L.D.C. has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

### B.    Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were the Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case have been: The Debtor.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the

Debtor, or successor of the Debtorunder the Plan (collectively the "Post Confirmation Managers"), will be: The Debtor.

D.     **Events Leading to Chapter 11 Filing**

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtor's equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") now scheduled at $12 million for $5.1 million from NLG, LLC ("NLG") through its then claimed principal Chris Kosachuk. The Debtor has been involved in litigation with NLG and Kosachuk since that time as more fully described below.

**Chase Bank**

In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington MutualBank in the amount of $3,825,000. JP Morgan Chase Bank claims to now own the Washington Mutual Bank promissory note and mortgage signed by Debtor in March 7, 2007.

Chase filed a foreclosure action in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

**NLG**

**NLG FL litigation**

NLG's self-titled manager Chris Kosachukprovideda gift of equity or an "equity contribution" of $1,275,000 stating that Debtor does not have to pay back the amount of $1,275,00on the closing statement andalso had Debtor execute a note and second mortgage on the Fisher Island property forthat same amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtor's property. Litigation between the parties hasoccurred in four states, multiplecourts and has continued for over a decade, and continued in this court, costing Debtor millions in legal fees, adversely affectingher health and her career, and putting her in the financial position of having to seek relief in a Chapter 11reorganization.

Chris Kosachuk asserted that he was the manager and representative of NLG.Kosachuk has testified that he transferred NLGin 2007to Luxcom, a Russian company. In 2012 Chris Kosachuktestified that NLG is now owned by Meridian Trust Company located in BVI but he could not recall to whom he reported. In 2014 Chris Kosachuktestified in deposition that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover.From prior to the purchase date, more than a decade ago, to today, the

parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and was now in this Court.

NLG obtained a judgment on the promissory note signed by Debtor on April 28, 2008. ("The Scola Judgment").NLG also sued Debtor for foreclosure in 2011. In 2014, Judge Peter Lopez assigned NLG's judgment against Debtor, the Scola Judgment along with all NLG's rights, claims and benefits against Debtor to Selective Advisors Group, LLC. ("Selective")  and also ordered Selective to provide a partial credit in theamount of $2,746,953.34 which amount includes principal and interest through August 31, 2014(representing the full amount of the Scola judgment) at the 11% interest per annum. Selective did so.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a secured creditor in this case. Selective is listed in Debtor's schedule as her secured creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016.  Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.
In June 12, 2017 NLG moved again for Relief for Stay D.E. 475. Said Motion was denied on June 28, 2017. D.E. 500.

### NLG NY Litigation

NLG domesticated the judgment obtained against debtor on April 28, 2008 ("the Scola Judgment") in New York in 2014.New York Supreme Court Judge Barbara Jaffee,having recognized the Miami-Dade Judge Peter Lopez Order of Assignment of the NLG's Judgment ("The Scola Judgment") against the Debtor to Selective Advisors Group, LLC ("Selective") and having accepted the Selective's Satisfaction of NLG's Judgment against the Debtor Ordered on November 5, 2014:

"That the caption of the case, *NLG, LLC vs Elizabeth Hazan,* be changed to substitute Selective Advisors Group, LLC as Plaintiff in place of NLG and that the New York County Clerk is directed to accept for filing the Florida Court Order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further

ORDERED, that the County Clerk is directed to reflect on the docket of this case that the Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further

ORDERED, that the County Clerk is directed to accept for filing the satisfaction of Judgment or other appropriate satisfaction piece; and it is further

ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action under Index No. 108020/08."

NLG also filed a lawsuit in New York alleging Debtor fraudulently transferred the New York condo (described below). On November 2014, Hon. Judge Barbara Jaffee dismissed bothactions filed by NLG.

### Spencer Condominium

Debtor bought a condominium in New York City on Fifth Avenue and 62nd Street on December 2005 in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065 ("The New York Condominium").

**Debtor transferred this New York Condominium in August, 2011. The Board of Managers alleges that the transfer was madewithout the consent of Spencer Condominium. The Board of Managers has agreed to the approval of this Disclosure Statement. The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest the transfer has not yet run, but IRS has taken no such position and has not appeared in the case other than the filing of a Proof of Claim. The New York Condominium had no equity at the time of the transfer.**

Debtor's husband controls the corporation, Real Estate Holdings Group LDC which now owns the condominium. The Spencer Condominium Board of Managers has been involved with The Debtor and REHG in litigation since 2008 resulting in a confidentialsettlement agreement executed in March 2015. Spencer Condominium disputes that the Settlement Agreement is enforceable at this time, but in March 2017 Judge Singh of the New York Supreme Court has ordered the parties to comply with the Settlement Agreement; The settlement includes a resolution of the following lawsuits:

*Board of Managers of Spencer Condominium v. Elizabeth Hazen, et al;*
    No. 111644/09.
*Real Estate Holding Group, LDC v. Board of Managers of Spencer Condominium et al*;
    No. 154149/2012
*Real Estate Holdings Group, vs. Spencer Condominium*
    No. 159254/2013

All three cases have been dismissed and settled and REHG is presently hiring a real estate broker to list the condominium unit for sale to satisfy thealleged mortgages (alleged creditors of this Debtor) as well as toresolve the assessments allegedly due the Board of Managers.The unit will be listed for sale.

On July 21, 2016 Debtor filed the following motions: Motion for Relief from Stay Spencer Condominium, (D.E. 115), Motion to Seal or for in Camera Review (D.E. 116) and Motion for Abstention (D.E. 117). All three Debtor's Motions have been withdrawn without prejudice. On February 24, 2017 Debtor filed three new motions in this case: A Motion to Seal, D.E. 387, A Motion for Abstention D.E. 388, A Motion for Relief from Stay D.E. 389 and An Amended Motion for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 390.Debtor also filed an objection to Spencer'sProof of Claim. On March 1, 2017,This Court granted the agreed Order granting Debtor's Amended Motion for Order for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 392. The Court ruled as follows: "The Debtor's Motion is granted. The automatic Stay is lifted solely for the purpose of permitting the New York Supreme Court to exercise jurisdiction over the litigation

between the Debtor and Spencer Condominium and related parties and the stipulation for settlement therein. The 14 day Stay period pursuant to Bankruptcy Rule 4001(a)(3) is waived. No property of the estate will be affected by this Order".

In the case of *Real Estate Holdings Group, vs. Spencer Condominium* No. 159254/2013 in July 27, 2016, Real Estate Holdings Group, L.D.C. ("REHG") Owner of The New York Condominium filed an Order to Show Cause to enforce the confidential Stipulation of settlement executed by the parties in March 2015. In March 2, 2017, Honorable Judge Singh granted Plaintiff REHG's Motion to enforce the Confidential Settlement with Spencer Condominium as the stay has been vacated and ordered the parties to comply with the terms of the settlement within 30 days of the Order. The matter was adjourned to April 25, 2017 (2:30pm) to monitor compliance.

On April 25, 2017 Honorable New York Supreme Judge Singh granted the Plaintiff REHG's Motion to enforce the terms of the settlement agreement dated 3/2015 and ruled as follows: "After a conference held today the Court finds that all parties are in compliance with the terms of stipulation dated 3/2015."

In the case of *Board of Managers of Spencer Condominium v. Elizabeth Hazan* No. 109083/2008 Spencer has obtained an award in the amount of $109,554.86. This award was never converted to a judgment entered or recorded in any court. However the parties have agreed that this amount of alleged money owed by the Debtor to Spencer prior to her transfer of ownership of the New York condo in 2011 over six years ago shall be paid by REHG and not by the Debtor in the plan. Spencer has no standing to object to the Debtor's plan or object to her confirmation and is bound by their confidential Stipulation of Settlement executed on March 2015 and enforced by New York Judge Singh in April 25, 2017.

### Reorganization

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, or if necessary, refinancing and contributions from her husband's companies.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.  **Significant Events During the Bankruptcy Case**

\*  Date of Order for Relief under Chapter 11 on 1/11/16.

\*  Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM.

\*  Deadline for complaint re dischargeability was 4/18/16.

    \*        Professionals approved by the court
Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date.
Joel Arestywas substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126).
David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and was approved by the Court on October 19, 2016.

    \*        Contested claim disallowance proceedings: pending; see claim treatments.

    \*        Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

    \*        Debtor hasmanaged her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor toreorganize allowing Debtor to propose a plan for payment of creditors.

    \*

## ADVERSARY PROCEEDINGS *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* Adv. Case No. 16-1439-AJC

On August 21, 2016 Selective filed an Adv. Case No. 16-1439-AJC D.E.1. On 10/21/2016 Debtor moved to amend the Complaint to add Debtor, Liza Hazan as Plaintiff. On October 20, 2016. D.E.8. NLG filed their answer and their counterclaims. D.E5 and D.E 6.

On 11/08/16 Plaintiffs Selective and Hazan filed their motions to dismiss Count I and Count II of NLG's counterclaims and Motion for Judgment on the pleading D.E. 11 and D.E. 12. On December 6, 2016 Plaintiffs Selective and Hazan filed their Motion for leave to file Amended Complaint against NLG to add a count under Florida Statute § 65.08and Florida Statute § 65.011for quieting title and a count for damages. D.E. 32. On December 19, 2016 This Court ordered the parties to submit Orders on Plaintiffs' motions to dismiss NLG's counterclaims and Plaintiffs' motions for Judgment on the Pleadings. In December 23, 2016 Debtor Hazan amended her Complaint to add additional Counts D.E. 40. In 12/30/2016 This Court entered an Order granting Plaintiff's Motion to amend and allowing Second Amended Complaint. On January 3, 2017 Plaintiffs filed their Second Motion to Amend Complaint to add additional Tort claims, D.E 47 and D.E 48, adding additional torts.

On 01/13/17 NLG's counsel, Michael Friedman, filed his expedited Motion to Withdraw as attorney of record for NLG citing irreconcilable differences D.E 54. In 01/23/17 thisCourt granted Michael Friedman's Motion to Withdraw, D.E 61, andalso granted Plaintiffs Selective and Hazan's Second Motion to amend Complaint. D.E 62.

On 02/22/17 NLG's third counsel filed his notice of appearance - James Miller, D.E.75. On 03/01/17 NLG's third counsel filed his expedited motion to withdraw citing once again irreconcilable differences and also filed his motion to allow NLG to extend time to meet the Court's deadlines. D.E. 76. On 03/03/2017 Plaintiffs Selective and Hazan filed their Motion for Default against NLG for failing to answer Plaintiffs' Third Amended Complaint. D.E. 85.On 03/10/17 this court denied NLG's motion to extend time. D.E. 94.

On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG and denied Plaintiffs' motion for judgment on pleadings as moot because of the subsequent

filings and amendments. This Court granted a Default in favor of Plaintiffs and against Defendant NLG and ruled as follows:

> The Court also finds that the withdrawal and retention of multiple counsel by theDefendant does not constitute "cause" or "excusable neglect" warrantingan extension of time to comply with filing requirements. The Court set deadlines in this case for the filing of pleadings, specifically the filing of aresponsivepleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause existsto extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100.

NLG moved to vacate the default in March 24, 2017 (D.E. 104). The Court denied the Motion on April 20, 2017 (D.E. 112).

Former counsel for NLG (its fourth) filed an Expedited Motion to Withdraw on May 4, 2017. This follows an expedited Motion to Withdraw filed by prior counsel, James Miller, in March 1, 2017 which followed an Expedited Motion to Withdraw filed by the Genovese firm on January 12, 2017. NLG's initial counsel moved to withdraw in the main case on September 12, 2016.

The default against NLG, LLC was set aside in May 8, 2017 D.E 132 and the Court entered an order setting the matter for trial in July 13, 2017. The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017.

In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows:

"The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective,the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to

be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

   LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the
   Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor hasgood title to said Property against the claims or purported claims by, through, under, oragainst it by NLG, LLC and the title to the property is forever quieted as to all claims ofNLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG'soutstanding debt to Selective pursuant to the Quebec Judgment.

3. NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.

4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order."


**Valencia Estates Homeowners' Association**

The Debtor has entered into a Stipulation for Settlement with Valencia Estates Homeowners' Association, Inc. The Debtor has agreed to approval of the stipulation by this Court and the Association has agreed to support the Debtor's reorganization.

F.     **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 whichhas a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonableequivalent value, which facts are not relevant to the plan in this case.

**The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest a transfer is ten years and has not yet run. IRS has not challenged any transfers in this case and has not appeared in the case other than to file of a Proof of Claim. Debtor transferred the New York Condominium more than six years ago, in August, 2011.The Debtor contends that the New York Condominium had no equity at the time of the transfer.**

G.     **Claims Objections**

The Debtor has not completed claim objections but the current plan reflects the objectionscontemplated.

H.     **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to thisstatement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting is not a regular monthly income which wouldlend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS**

A.     **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describesthe treatment each class will receive. The Plan also states whether each class of claims or equity interests isimpaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by thePlan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are notconsidered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in theirview, their treatment under the Plan does not comply with that required by the Code. As such, the PlanProponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case whichare allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold tothe Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcypetition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless aparticular claimant agrees to a different treatment.

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of theCode. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the presentvalue of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receiveunder the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective dateof the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote toaccept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of theCode and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will[be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim.<br><br>SETTLED |
| | Joel Aresty | Attorney Joel Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. Stipulation |

| | | amended between the parties on November 1, 2017. Monthly payments in the amount of $1000 starting on November 1, 2017 Remaining Balance owed $28,000. SETTLED |
|---|---|---|
| | David W. Langley | Paid as awarded or agreed. |
| | US Trustee | paid in full at confirmation |

### Priority Claims

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | **IRS** <br><br> **Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Equal Payments of $2,674.34 every six months to include interest on anyunpaid claim amounts after theeffective date of the plan at 3%. |

### Secured Claims

### 6913 Valencia Drive Property Fisher Island Florida

| 2 | **Chase Bank** | | yes | **First Secured Mortgage –** <br> The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim.  Chase was scheduled as |

disputed, contingent and unliquidated.

The Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 in favor of Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues. If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final.

Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan. See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996).

**Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.**

| | | | | |
|---|---|---|---|---|
| | | yes | | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainstThe Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008, |
| 3 | **Selective Advisors Group, LLC** | | yes | Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014.per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014.<br><br>    On August 21, 2016, Selective sued NLGin this bankruptcy Court**ADVERSARY PROCEEDINGS *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend theirComplaint to add a count seeking to Quiet Title to the property, and a number oftort claims,which motion was granted on January 23, 2016.<br><br>The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017. |

In November 1, 2017 Honorable Judge AJ Cristolissued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows:

"The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and

owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260,

|  |  |  |  | CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 |
|--|--|--|--|--|

CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG'soutstanding debt to Selective pursuant to the

| | | | | |
|---|---|---|---|---|
| | | | | Quebec Judgment.<br><br>3. NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.<br><br>4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order." . |
| 4 | **6913 Valencia LLC** | | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLC's Mortgage on her Homestead property claim.<br><br>Insider claim will subordinate and not be paid until all other allowed claimsbut reserves right to vote for the plan |
| 5 | **Valencia Estates Community Assn, Inc claim #10** | | yes | **Valencia Estates Community Association's ("Valencia")**Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2. Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00as per the Stipulation.<br><br>3. Debtor has paidthe 2016 special assessment in the amount of |

<table>
<tr><td></td><td></td><td></td><td></td><td></td><td>

$6250.00 as per the Stipulation.

4. The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.

**Valencia Estates Community Association, Inc** withdrew its **objections to Debtor's disclosure and has agreed to vote for Debtor's plan**.

### Claim settled.

Agreed Order Approving Stipulation of Settlement of Claim # 10 filed by Valencia Estates Homeowners' Association entered on 11/18/16 D.E 302.

All Valencia's post petitions regular assessments and special assessment in 2016 have all been paid and are current.

A Post petition special assessment dated on September 15, 2017 to be paid as follows: $1,041.66 every month in addition to the monthly assessments starting at confirmation date for a period of five years.

In October, 2017, Debtor incurred

</td></tr>
</table>

| | | | | |
|---|---|---|---|---|
| | | | | substantial damages caused jointly and severally by both Fisher Island Community Association Inc("FICA") and Valencia Estates Community Association Inc("VALENCIA") to her homestead property fence. TheDebtor's Homestead residence is damaged and the fence needs to be completely removed and replaced. Debtor is planning to bring an action for damages against Fisher Island Community Association Inc and Valencia Estates Community Association Inc jointly and severally. This will offset some or the entirety of Valencia's post-petitionspecial assessment in the amount of $62,500.00 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of $46,555.48. |
| 6 | **Fisher Island Community Ass'n, Inc Claim #18** | | yes | FICA's Late filed Proof Of Claim in the amount of $216,278.97 in 10/20/16 –**Disputed by Debtor and Disallowed by this Court.**<br><br>The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been deniedin November 16, 2016.<br><br>Claimant 3343 West Commercial |

|  |  |  |  | Blvd. 100 (Fisher Island Community Association). |
|  |  |  |  | Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16 |
|  |  |  |  | **Claim Disallowed Claim by this Court.No payment through Plan.** |
|  |  |  |  | **Debtor plans to reinstate stay and pay thenet amount if any of all FisherIsland Community Association's post petitions feesin the amount of $46,555.48 less the damages caused to Debtor by FICAand Valencia (more explained below) after the filing of the petition at confirmation date. Debtor will obtain a discharge for all the prepetition fees.** |
|  |  |  |  | In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc ("FICA") and Valencia Estates Community Association Inc ("VALENCIA") to her homestead property's fence on Fisher Island. The Debtor Homestead residence's fence is substantially damaged and needs to be completely removed and replaced. Debtor is planning to bring an action for damages against FICA and VALENCIA. This will offset some or the entirety of Valencia's post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of |

| | | | | $46,555.48. |
|---|---|---|---|---|
| | | | | FICA has also caused substantial damages to the Debtor by denying access to all Debtor's guests and all business associates for years and has singled out the Debtor for many years. FICA has enjoined the Debtor to enjoy her home and conduct business. FICA has also endangered the Debtor's life by allowing access to the alleged principal of NLG, LLC a former creditor of the debtor, on Fisher Islandwho has caused Debtor harassment, trespassing her home,intimidation and caused Debtor additional damages that will be set for trial at a later date in **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** |
| 7 | **Miami-Dade Water andSewer claim #7** | no | yes | **Claim #7 $1502.54 to be paid on the EffectiveDate of The Plan** |
| 8 | **IRS claim #3** | no | yes | $393,985.17 - Secured claim shall be paidover ten years with interest Equal paymentsin the amount of $22,948.00 every 6 months to include interest on anyunpaid claim amounts after the effectivedate of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector** <br><br>**Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full. <br><br>**Claim #6  paid in full**. |

## Other Disputed Claims

| Class # | Description | **Insider** | Impairment | Treatment |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim #8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor. Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed tosupport Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163) **Claim settled.** |

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | no | yes | The Debtor disputes the Claim#14 filed by The Board of ManagersSpencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York.TheDebtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance feesowed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065.This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"),the owner of the |

| | | | | New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlementexecuted in March 2015 ("Settlement").The vast remaining portion of the Spencer Condo Boardof Managers' claimis to be paid by the owner of the unit,REHG,per the Settlement executedin March 2015 by the parties. **On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowingtheNew York Court toexercise jurisdiction over and enforce the confidential Settlement Agreement.** **On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce TheConfidential Stipulation entered in March 2015 between the parties.** On April 25, 2017 Honorable New York Supreme Judge Singh ordered that the Plaintiff REHG's Motion to enforce the terms of the settlement agreement dated 3/2015 is granted . "After a conference held today the Court finds that all parties |

| | | | | are in compliance with the terms of stipulation dated 3/2015."<br><br>The Deadline for *Board of Managers of Spencer Condominium* toFile Complaint to determine the Debtor's Dischargeability of Certain Debt has expired.<br><br>**No payment through the plan. Claim settled.**<br><br>**SETTLEMENT ENFORCED BY NEW YORK COURT** |
| --- | --- | --- | --- | --- |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full on the Effective Dateat confirmation**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
| --- | --- | --- | --- | --- |
| 12 | IRS Claim #3 | no | | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | | 461.00 |
| | FPL Claim #11 | no | | 2906.93 |
| | Mount Sinai | no | | 3,240.00 |
| | Mount Sinai | no | | 295.91 |
| | HSBC Bank USA NA | no | | 1070.66 |
| | Sterling Emerg Svc | no | | 2445.30 |

| | | | |
|---|---|---|---|
| | Bank of America NA has waived all prepetition fees | no | 0.00 |
| | Wells Fargo Claim #12 | no | 323.24 |
| | Real Time Resolutions ("RTR") Claim #5 Although Debtor settled this claim for $12,000 after misrepresentations made by alleged creditor Real Time Resolutions that it had a valid claim. Debtor,afterfurther investigation has determined that the statute of limitations has run and that Claim #5 is not a valid claim. Real time Resolutions has sued the debtor in case 08-47664 CA 32 in Miami-Dade County Court in October 21, 2008. The case 08-47664 CA 32 was dismissed in for lack of prosecution on January 08, 2010. The Statute of limitations has run. | no | 0.00 |
| | **S&S Collections Simon &Sigalos claim #13 partial paid amount $1740.96** | no | 0.00 |
| | Total | | 12958.04 |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims**

| Class # | Description | Insider? (Yes or No) | Impaired | Treatment | |
|---------|-------------|---------------------|----------|-----------|---|
| <u>13</u> | **<u>JMB Urban 900 Dev. claim #4*</u>** | **no** | **X** | Claim # 4 in the amount of $664,380.47. Claim # 4 will be paid 41% of the amount or 275,000.00 per settlement before the second anniversary of the entry of the agreed final judgment on or before July 20, 2018 in favor of JMB in case **Adversary proceedings 16-01188-AJC. Adversary proceeding case closed on 7/22/16 and <u>Case settled 16-01188-AJC</u>. DOC 21 Case 16-01188-AJC Order approving agreed final Judgment in favor of JMB entered on July 20, 2016..** <br><br> **<u>CLAIM SETTLED</u>** | |
| | **<u>S&S Collections Simon &Sigalos claim #13</u>** | **no** | **X** | Claim # 13 in the amount of $21,242 **Claim settled** for 41% $8,709.22. Amount of $1740.96 moved to convenience class. Amount of $1740.96 paid by third party on July 10, 2017. Remaining balance owed $6,968.04 to be paid same treatment as JMB. <br><br> **<u>CLAIM SETTLED</u>** | |

| | | | | |
|---|---|---|---|---|
| | **Southeast Financial LLC** | **no** | **X** | Stipulation Of Settlement DE 98 approved by this Court DE 101. |
| | | | | Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor. |
| | | | | Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current. |
| | | | | CLAIM SETTLED |
| | | | | |

**Disputed Unsecured Claims**

**not paid until and unless allowed**

**and then paid within 5 years after confirmation**

| | | | | |
|---|---|---|---|---|
| | **Cross & Simon Claim #1** | no | | Claim #1 in the amount of $11,023.83 Legal Bill for corporation other than Debtor. **Unallowed claim.** **No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| | | | | Claim #15 in the amount of $24,818.44 Legal bill Legal work for Corporation other than the Debtor. |
| | **Newman Ferrara LLP claim #15** | no | | **The Claims bar date has passed. No payment through plan. Unallowed claim.** |

| | | | | |
|---|---|---|---|---|
| | | | | |
| **FuerstIttleman David & Joseph, P.L.** **Claim #16** | **no** | | | Disputed Proof of Claim filed after Claim Bar Date. FuerstIttleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. FuerstIttlemanDavid & Joseph, P.L. have agreed that they are not a creditor of this estate. **No payment through plan.Unallowed Claim.** |

**Unsecured Scheduled Disputed and No Claim Filed**

**Therefore Disallowed**

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |

| | US Bank did not file a proof of claim and will not be paid through the Plan. |
|---|---|
| NLG, LLC | NLG, LLC did not timely file a proof of claim and **NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**. |
| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
| | NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor. |
| | The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 15, 2017. |
| | In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows: |
| | "The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by |

satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no standing in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II

and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

   LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

   have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG'soutstanding debt to Selective pursuant to the Quebec Judgment.

| | |
|---|---|
| | 3. NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. 4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order." . |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 14 | Equity Individual interest holder | no | retained |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 per year and in 2014 a personal income of $420,000.

Debtor has executed in the last quarter of 2016 and 2017 contracts that have earned her income comparable to past years, to be paid in installments, and additional payments throughout the construction phase, and the last remaining portion upon opening of the clients for business.

Debtor has contracts to expand a nationwide and worldwide very high end retail operator that has already over 50 existing stores and is planning to open over 100 new locations in the next five years.

Debtor has also exclusive contracts with high end restaurants and is responsible for their expansion nationwide. Debtor is in charge of finding new locations and is also responsible of their construction, architectural plans etc. all the way through their opening of their new locations.

Debtor's husband controls a company called Real Estate Holdings Group, L.D.C. ("REHG") which owns a New York condominium on Fifth Avenue and 62nd street New York Apt 1 A NYC NY 10065 appraised at $4,500,000.00 that has in excess of $2,500,000.00 in equity. The company, REHG, has agreed to refinance and also sell the condominium to fund the plan in order to assure successful reorganization and completion of the plan.

The New York condominium will be on the market listed for sale with New York Real Estate Broker The Corcoran Group.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island,Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics andclothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in Fisher Island would also support a refinancing, which could also be used supportfunding a plan if necessary.

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|---------------------|----------|--------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E. **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases. If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case. This Plan bears the risk that the Debtor's income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to make payments under this Plan. However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE. CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F. **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assumeunder the Plan. There are none. Assumption means that the Debtor has elected to continue to perform theobligations under such contracts and unexpired leases, and to cure defaults of the type that must be curedunder the Code, if any. Article also lists how the Debtor will cure and compensate the other party to suchcontract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of anydefaults, or the adequacy of assurance of performance, you must file and serve your objection to the Planwithin the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under thePlan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Planwithin the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is***no later than thirty (30) days after the date of the order confirming this Plan. Any claim based onthe rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court ordersotherwise.

G. **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their TaxLiability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is providedbelow. The description of tax consequences below is for informational purposes only and, due to lack of definitivejudicial or administrative authority or interpretation,substantial uncertainties exist with respect to various U.S.federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income taxconsequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims andInterestswho are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought orobtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this DisclosureStatement. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities havebeen obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not bindingupon the IRS or such other authorities. No representations are being made regarding the particular tax consequencesof the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes orClass 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, adifferent position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the InternalRevenue Code of 1986,as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, andadministrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the datehereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future couldalter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any taxlegislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the taxconsequences to the holders of Claims. Any such changes or interpretations

may be retroactive and couldsignificantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAXCONSEQUENCES OFTHE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAXCONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGNENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH ASPARTNERSHIPS ANDHOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS,MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESSINVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITESTRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATEAND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TOTHEALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OFTHE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TOCONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL ANDFOREIGN TAXCONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. Theseinclude the requirements that: the Plan must be proposed in good faith; at least one impaired class of claimsmust accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equityinterest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidationcase, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.These requirements are not the only requirements listed in §1129, and they are not the only requirements forconfirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder ofan allowed unsecured claim objects to the confirmation of the plan—
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account ofsuch claim is not less than the amount of such claim; or
(B) the value of the property to be distributed under the plan is not less than the projected disposable incomeof the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the datethat the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

## A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 for government units.***

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

• holders of claims and equity interests that have been disallowed by an order of the Court;
• holders of other claims or equity interests that are not "allowed claims" or "allowed equityinterests" (as discussed above), unless they have been "allowed" for voting purposes.
• holders of claims or equity interests in unimpaired classes;
• holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
• holders of claims or equity interests in classes that do not receive or retain any value under thePlan;
• administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of thePlan [and to the Adequacy of the Disclosure Statement].***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim,or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, andshould cast one ballot for each claim.

## B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class ofcreditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impairedclasses have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-acceptingclasses, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) ofthe allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at leasttwo-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept thePlan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of theallowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if thenon-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that bindsnonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bindnonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmationexcept the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair andequitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cramdown"confirmation will affect your claim or equityinterest, as the variations on this general rule are numerous and complex.*

### C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not acceptthe Plan will receive at least as much under the Plan as such claim and equity interest holders would receive ina chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or theneed for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidationor reorganization is proposed in the Plan.

#### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of thePlan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount ofcash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosurestatement as Exhibits C and D.

#### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make therequired Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in ExhibitD.

*You Should Consult with Your Accountant or other Financial Advisor If You Have AnyQuestions Pertaining to These Projections.*

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Discharge. In a case in which the debtor is an individual—
**(A)**unless after notice and a hearing the court orders otherwise for cause, confirmation of the plandoes not discharge any debt provided for in the plan until the court grants a discharge on completionof all payments under the plan;
**(B)**at any time after the confirmation of the plan, and after notice and a hearing, the court may grant adischarge to the debtor who has not completed payments under the plan if—

**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and
**(iii)** subparagraph (C) permits the court to discharge; and
**(C)** (*) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the debtor; and
**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

   Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon the satisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

   (a) Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

   (b) The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

   (c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

   (d) During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured and priority creditors, as contemplated under the Plan.

   (e) Upon the satisfaction of all payments required under the Plan to creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to creditors.

   (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local

form, whichshall certify that all payments required under the Plan to creditors have been made. The Court maythen grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, theCourt may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Planhas not been substantially consummated *and* (2) the Court authorizes the proposed modifications after noticeand a hearing.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules ofBankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the PlanConfirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively,the Court may enter such a final decree on its own motion.

Respectfully submittedNovember 15, 2017:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954—356-0450
By: /s/*David W. Langley*

Attorney for the Plan Proponent

**Exhibit A: Historical Earnings and assets**

**EXHIBIT A: Historical Earnings and Assets**

Debtor's educational background includes:

- 07/03/1992-Academy Of Paris Brevet De Technicienne Superieure Informatique De Gestion

- 06/28/1989-Academy De Bordeaux Baccalaureat De L'enseignement Du Second Degre Mathematiques & Sciences De La Nature

-1995-1996- University Of Montreal Law School

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has generally earned approximately $400,000.00 per year with the exception of the year preceding the filing of this Chapter 11 case following a period of declined income due to temporary health issues. The Debtor is now again earning at rates comparable to previous years. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") with a scheduled value of $12,000,000.00. Additionally, Debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Additionally, the equity in the Fisher Island homestead could support refinancing, which could be used in funding a plan if necessary.

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization which will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets. The Debtor intends to reorganize her debts and liabilities through a combination of:

(a) negotiating and/or litigating as may be necessary, resolutions with certain secured creditors, and unsecured creditors; and

(b) making distributions funded by her assets and income from her consulting work, or if necessary refinancing. To date, the Debtor's efforts have focused on settling with all her legitimate creditors, obtaining Stay relief from this Court in order to have the New York Court enforce her Confidential Settlement with Spencer, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

Exhibit D below is a projection showing the feasibility of making the payments required under the plan, from projected net income of approximately $450,000.00 to $650,000.00 per year. Receipts of consulting income are not regular monthly payments, which is why payments range from quarterly to every six (6) months, or even less frequently, in the plan.

She sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country by bringing all matters into a single forum, and to fashion a Plan of Reorganization that will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings group, L.D.C. ("REHG") which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. REHG has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

**Exhibit B Liquidation Analysis**

**Plan Proponent's Estimated Liquidation Value of Assets**

**Assets**

| | |
|---|---|
| a. Cash on hand at the effective date | $65,000.00 |
| b. Accounts receivable | $400,000.00 |
| c. Personal property including office furniture & equipment | $327,500.00 |
| d. Automobiles | $17,000.00 |
| e. Real Estate – Homestead on Fisher Island – appraised at$ 9,500,000 | |
| Non-exempt value | $0 |
| f. Lawsuits or other claims against third-parties: | |
| Potential claims against NLG, LLC | $ unknown |
| k. Other intangibles (such as avoiding powers actions) | $0.00 |

| | |
|---|---|
| **Total Non-exempt Assets at Liquidation Value** | **$809,500.00** |

**Less:**

| | |
|---|---|
| IRS Priority claim | ($24,663.00) |
| SE Financial lien on vehicle(secured portion of 24,970.70 claim) | ($17,000.00) |
| Chapter 7 estimated liquidation expenses | ($50,000.00) |
| Costs of sale (auctioneer fees) | ($32,750.00) |
| Chapter 11 administrative expenses - Geoffrey Aaronson | ($150,000.00) |
| Joel Aresty | ($35,000.00) |
| David W. Langley | ($30,000.00) |
| Amount available for distribution to unsecured creditors | **$470,087.00** |
| Percentage distribution to unsecured creditors | |
| (Total dollar amount of unsecured claims is $2,600,000 from claims docket) | **18% Distribution** |

The Amended Plan provides 41% to 100% distribution to allowed unsecured claims

**Exhibit C: Cash on hand on the effective date of the Plan**

**Cash on hand on effective date of the Plan**:                          $65,178

*Less --*

    Amount of administrative expenses payable on effective date of the Plan          TBD
    Amount of statutory costs and charges UST          TBD
    Plan Payments due on effective date of the Plan          TBD

    Balance after paying these amounts          TBD

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

Cash in Debtor's bank account now          $20,178
+ Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan          $45,000

(Basis for projection in anticipated income) see Exhibit D

Total          $65,178

## ELIZABETH HAZAN
### FEB 1, 2018 - JAN 31, 2019

| | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 120,000 | 160,000 | 80,000 | 80,000 | 80,000 | 80,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 810,000 |
| **TOTAL** | 120,000 | 160,000 | 80,000 | 80,000 | 80,000 | 80,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 810,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (HOME) | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| BOOKS AND ENTERTAINMENT | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL $82,500 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | 1,042 | 1,042 | 6,730 | 1,042 | 1,042 | 6,730 | 1,042 | 1,042 | 6,730 | 1,042 | 1,042 | 6,730 | 80,205 |
| INSURANCE (FISHER ISLAND) | 53,785 | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 60,000 | 0 | 0 | 0 | 60,000 |
| **TOTAL** | 62,616 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 76,061 | 9,331 | 9,331 | 70,678 | 322,848 |
| **NET RESULT** | 57,384 | 90,669 | 63,939 | 70,669 | 70,669 | 33,939 | 40,669 | 24,615 | -26,061 | 40,669 | 40,669 | -20,678 | 487,152 |
| SCHEDULED PAYMENTS OF CREDITORS | 30,381 | 1,393 | 1,393 | 1,393 | 1,393 | 296,705 | 27,015 | 1,393 | 1,393 | 1,393 | 21,705 | 1,393 | 385,950 |
| LIST OF PAYMENTS TO CREDITORS | | | | | | | | | | | | | |
| **NET RESULT** | 27,003 | 89,276 | 62,545 | 69,276 | 69,276 | -262,766 | 13,654 | 23,222 | -27,454 | 39,276 | 18,964 | -22,071 | 100,202 |
| **BEGINNING** | | | | | | | | | | | | | 0 |
| **CUMULATIVE NET AMOUNT** | 27,003 | 156,279 | 178,823 | 248,101 | 317,377 | 54,611 | 68,265 | 91,487 | 64,033 | 103,309 | 122,273 | 100,202 | 100,202 |

### LIST OF PAYMENTS TO CREDITORS PRE-PETITION
**SECURED**

| | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ISS - 993.985.17 (130 months) with 3% interest CLAIM 3 | | | | | | | 22,948 | | | | | | 22,948 |
| ISS - 24.663 - YEAR 2014 with 3% Interest Claim 5 | | | | | | | 2,674 | | | | | | 2,674 |
| VALENCIA ESTATES COMMUNITY $93,650 - 48M CLAIM 19 | 1,052 | | | | | 28,112 | | | | | 28,112 | | 46,586 |
| VALENCIA ESTATES - arrears | | | | | | 0 | 0 | 0 | 0 | 0 | 0 | | |
| SOUTHEAST FINANCIAL - 48 MONTHS | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBW URBAN 920 - 275,250.00 | 0 | 0 | 0 | 0 | 0 | 275,000 | 0 | 0 | 0 | 0 | 0 | 0 | 275,000 |
| S&S COLLECTIONS - $MNTH & $SANDS CLAIM 13 | 8,938 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,068 |
| LIST OF UNSECURED CLAIMS $28,219.04-$3,361.65-$12,000 | | | | | | | | | | | | | |
| ADMINISTRATIVE CLAIM | 12,858 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13,858 |
| JOEL ARESTY | | | | | | | | | | | | | |
| **TOTAL** | 33,361 | 1,983 | 1,000 | 1,598 | 1,393 | 1,393 | 1,000 | 22,015 | 1,696 | 1,393 | 1,393 | 1,000 | 366,950 |

**ELIZABETH HAZAN**
**FEB 1, 2019 - JAN 31, 2020**

| | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | December 2019 | January 2020 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **TOTAL** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD: FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD: REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL & ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,930 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 150,000 | | | | 150,000 |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 70,678 | 359,563 |
| **NET RESULT** | 40,669 | 40,669 | 33,539 | 40,669 | 40,669 | 33,539 | 40,666 | 24,615 | -116,061 | 40,669 | 40,669 | -20,678 | 240,437 |
| SCHEDULED PAYMENTS OF CREDITORS | 33,485 | 1,393 | 1,393 | 21,705 | 1,393 | 1,393 | 27,015 | 1,393 | 21,705 | 1,393 | 1,393 | 393 | 114,054 |
| LIST OF PAYMENTS TO CREDITORS | | | | | | | | | | | | | |
| **NET** | 7,184 | 39,276 | 32,546 | 18,964 | 39,276 | 32,546 | 13,654 | 23,222 | -137,766 | 39,276 | 39,276 | -21,071 | 126,383 |
| PREVIOUS YEAR | 88,202 | | | | | | | | | | | | 88,202 |
| CUMULATIVE NET AMOUNT | 95,386 | 134,662 | 167,208 | 186,172 | 225,448 | 257,994 | 271,648 | 294,870 | 157,104 | 196,380 | 235,656 | 214,585 | 214,585 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | December 2019 | January 2020 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - 393,985.17/120 months with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,898 |
| IRS 24 653 - YEAR 2014 | 2,674 | | | | | | 2,674 | | | | | | 3,348 |
| VALENCIA ESTATE 195,500 | 0 | 0 | 0 | 28,312 | 0 | 0 | 0 | 0 | 28,312 | 0 | 0 | 0 | 46,624 |
| VALENCIA ESTATES ANNUAL INTEREST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,476 |
| SOUTHEAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 355 | 393 | 393 | 393 | 355 | 393 | 355 | 355 | 355 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| IRS URBAN 800  275,000.80 | | | | | | | | | | | | | |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ADMINISTRATIVE CLAIM | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ICEL ARIES?? | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 333 | 11,665 |
| **TOTAL** | 33,485 | 1,393 | 1,393 | 21,705 | 1,393 | 1,393 | 27,015 | 1,393 | 21,705 | 1,393 | 1,393 | 393 | 114,654 |

**ELIZABETH HAZAN**
**FEB 1, 2020 - JAN 31, 2021**

| | February 2020 | March 2020 | April 2020 | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | December 2020 | January 2021 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **TOTAL** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,203 | 1,200 | 1,200 | 1,200 | 1,200 | 1,203 | 1,200 | 1,200 | 1,203 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | | | | | | | | | | | | | 16,654 |
| INSURANCE (FISHER ISLAND) | | | | 6,730 | | | 6,730 | | 6,730 | | | 6,730 | 26,920 |
| TAXES (FISHER ISLAND) | | | | | | | | 16,654 | | | | | 16,654 |
| INCOME TAXES ESTIMATED | | | | | | | | | 150,000 | | | | 150,000 |
| **TOTAL** | 9,331 | 9,331 | 9,331 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 54,617 | 359,563 |
| **NET RESULT** | 40,669 | 40,669 | 40,669 | 40,669 | 40,669 | 33,939 | 40,669 | 24,615 | -116,061 | 40,669 | 40,669 | -26,678 | 240,437 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 30,210 | 20,705 | 393 | 393 | 393 | 393 | 45,934 | 0 | 0 | 0 | 0 | 28,312 | 118,733 |
| **NET** | 10,459 | 19,964 | 40,276 | 40,276 | 40,276 | 33,546 | -5,265 | 24,615 | -116,061 | 40,669 | 40,669 | -46,990 | 121,704 |
| PREVIOUS YEAR | 214,585 | | | | | | | | | | | | 214,585 |
| **CUMULATIVE NET AMOUNT** | 225,044 | 245,008 | 278,554 | 318,830 | 359,106 | 392,652 | 387,387 | 412,002 | 295,941 | 336,610 | 377,279 | 336,289 | 336,289 |
| **LIST OF PAYMENTS TO CREDITORS** | | | | | | | | | | | | | **total** |
| **SECURED** | | | | | | | | | | | | | |
| ITS - 393,589.17 (120 months) with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| IRS 24,669 YEAR 2014 | 2,674 | | | | | | 2,674 | | | | | | 5,348 |
| VALENCIA ESTATE 195,560 | 0 | 28,312 | 0 | 0 | 0 | 0 | 28,312 | 0 | 0 | 0 | 0 | 28,312 | 84,936 |
| VALENCIA ESTATE ANNUAL INTEREST | 4,195 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,195 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 0 | 0 | 0 | 0 | 0 | 0 | 2,358 |
| **UNSECURED** | | | | | | | | | | | | | |
| IPM URBAN 800 275,960.20 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 30,210 | 20,705 | 393 | 393 | 393 | 393 | 45,934 | | | | | 28,312 | 118,733 |

**ELIZABETH HAZAN**
**FEB 1, 2021 - JAN 31, 2022**

| | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | January 2022 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **TOTAL** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | 6,730 | | 6,730 | | 6,730 | 6,730 | | | 6,730 | | | 6,730 | 26,928 |
| INSURANCE (FISHER ISLAND) | | | | | | | | | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | 16,054 | 150,000 | | | | 150,000 |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 70,178 | 359,565 |
| **NET RESULT** | 40,669 | 40,669 | 33,939 | 40,669 | 40,669 | 33,939 | 40,669 | 24,615 | -116,061 | 40,669 | 40,669 | -20,178 | 240,437 |
| SCHEDULED PAYMENTS OF CREDITORS LIST | 28,098 | 0 | 0 | 0 | 20,312 | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 98,344 |
| **NET** | 12,571 | 40,669 | 33,939 | 40,669 | 20,357 | 33,939 | 15,047 | 24,615 | -116,061 | 20,357 | 40,669 | -20,678 | 146,093 |
| PREVIOUS YEAR | | | | | | | | | | | | | 336,289 |
| **CUMULATIVE NET AMOUNT** | 348,860 | 389,529 | 423,468 | 464,137 | 484,494 | 518,433 | 533,480 | 558,095 | 442,034 | 462,391 | 503,060 | 482,382 | 482,382 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | January 2022 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| PS - 593,380.17 (220 monthly) with 3% interest | 22,846 | | | | | | 22,664 | | | | | | 45,886 |
| PS  26 603 - YEAR 2014 | 2,836 | | | | | | 2,674 | | | | | | 5,546 |
| VALENCIA ESTATE 185,000 | | | | | 20,312 | | | | | 20,312 | | | 40,624 |
| VALENCIA ESTATE ANNUAL INTEREST | 2.4% | | | | | | | | | | | | 2,476 |
| SIXTH EAST FINANCIAL - CAR 48 MONTHS | | | | | | | | | | | | | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| IRM URBAN 993  275,000.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 28,818 | 0 | 0 | 0 | 20,312 | 0 | 25,622 | 0 | 0 | 20,312 | 0 | 0 | 94,344 |

**ELIZABETH HAZAN**
**FEB 1, 2022 - JAN 31, 2023**

| | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | January 2023 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | 6,730 | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| FISHER ISLAND COMMUNITY ASS | | | | | | | | 16,654 | | | | 54,617 | 54,614 |
| TAXES (FISHER ISLAND) | | | | | | | | | 150,000 | | | | 150,000 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 0 | 0 | |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,985 | 166,061 | 9,331 | 9,331 | 70,678 | 359,563 |
| **NET RESULT** | 32,669 | 32,669 | 25,939 | 32,669 | 32,669 | 25,939 | 32,669 | 16,615 | -124,061 | 32,669 | 32,669 | -28,678 | 144,437 |
| **SCHEDULED PAYMENTS OF CREDITORS LIST** | 26,440 | 0 | 8,126 | 0 | 0 | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 60,188 |
| **NET PREVIOUS YEAR CUMULATIVE NET AMOUNT** | 6,229 | 32,669 | 17,813 | 32,669 | 32,669 | 25,939 | 7,047 | 16,615 | -124,061 | 32,669 | 32,669 | -28,678 | 84,249 |
| | 482,382 | 521,280 | 593,093 | 571,762 | 604,431 | 630,370 | 637,417 | 654,032 | 529,971 | 562,640 | 595,309 | 556,631 | 482,382 |
| | 488,611 | 521,280 | 593,093 | 571,762 | 604,431 | 630,370 | 637,417 | 654,032 | 529,971 | 562,640 | 595,309 | 556,631 | 566,631 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | January 2023 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| BS - 393,085.17 [120 months] with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| BS 24,603 - YEAR 2018 | 2,674 | | | | | | 2,674 | | | | | | 5,348 |
| VALHOK ESTATE 195,000 | | | 8,126 | | | | | | | | | | 8,126 |
| VALHOK ESTATE ANNUAL INTEREST | 813 | | | | | | | | | | | | 813 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| IBM URBAN 500 - 275,000.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 26,440 | 0 | 8,126 | 0 | 0 | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 64,988 |

**ELIZABETH HAZAN**
**FEB 1, 2023 – JAN 31, 2024**

| | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAX (FISHER ISLAND) | | | | | | | | | | | | 54,637 | 54,637 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| **TOTAL** | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS LIST | 25,622 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,579 |
| **NET** | 8,089 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 118,371 |
| PREVIOUS YEAR | 566,631 | 608,431 | 635,412 | 669,123 | 702,834 | 729,815 | 740,578 | 758,235 | 645,216 | 678,927 | 712,638 | 685,002 | 556,631 |
| **CUMULATIVE NET AMOUNT** | 574,720 | 608,431 | 635,412 | 669,123 | 702,834 | 729,815 | 740,578 | 758,235 | 645,216 | 678,927 | 712,638 | 685,002 | 685,002 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 5% interest | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,895 |
| IRS - 24,683 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,674 |
| VALENCIA ESTATE 199,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| IBM URBAN 900 275,000.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 25,622 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,579 |

ELIZABETH HAZAN
FEB 1, 2024 - JAN 31, 2025

| | February 2024 | March 2024 | April 2024 | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | December 2024 | January 2025 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATE COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND FEDERAL(LAND) | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INCOME (TAXES ESTIMATED) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | 140,000 | | | | 140,000 |
| INCOME TAXES ESTIMATED | | | | | | | | | | | | 54,617 | 54,617 |
| **TOTAL** | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| **SCHEDULED PAYMENTS TO CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 30,783 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 121,045 |
| **PREVIOUS YEAR** | 685,002 | | | | | | | | | | | | 685,002 |
| **CUMULATIVE NET AMOUNT** | 695,765 | 729,476 | 756,457 | 790,168 | 823,879 | 850,860 | 863,623 | 879,280 | 766,261 | 799,972 | 833,683 | 806,047 | 806,047 |
| **LIST OF PAYMENTS TO CREDITORS** | | | | | | | | | | | | | |
| **SECURED** | | | | | | | | | | | | | |
| IRS - 593,595.17 (130 months) with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| IRS - 26,663 - MAR 2014 | 0 | | | | | | 0 | | | | | | 0 |
| VALENCIA ESTATE 195,500 | 0 | | | | | | 0 | | | | | | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | | | | | | 0 | | | | | | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | | | | | | 0 | | | | | | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JIM URBAN 900 - 275,000.00 | 0 | | | | | | 0 | | | | | | 0 |
| LIST OF UNSECURED CLAIMS | 0 | | | | | | 0 | | | | | | 0 |
| **TOTAL** | 22,948 | | | | | | 22,948 | | | | | | 45,896 |

**ELIZABETH HAZAN**
**FEB 1, 2025 - JAN 31, 2026**

| | February 2025 | March 2025 | April 2025 | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | | 16,054 | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES (ESTIMATED) | | | | | | | | | 140,000 | | | | 140,000 |
| **TOTAL** | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 121,045 |
| PREVIOUS YEAR | 806,047 | | | | | | | | | | | | 806,047 |
| **CUMULATIVE NET AMOUNT** | 816,810 | 850,521 | 877,502 | 911,213 | 944,924 | 971,905 | 962,668 | 1,000,325 | 887,306 | 921,017 | 954,728 | 927,202 | 927,282 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2025 | March 2025 | April 2025 | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - 393,989.17 (120 months) with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| IRS 24,403 - 7,598 2014 | | | | | | | | | | | | | |
| VALENCIA ESTATE 195,000 | | | | | | | | | | | | | |
| VALENCIA ESTATE HPILM INTEREST | | | | | | | | | | | | | |
| SOUTH EAST FINANCIAL - CAR OR MERCEDES | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 855 275,220.20 | | | | | | | | | | | | | |
| LIST OF UNSECURED CLAIMS | | | | | | | | | | | | | |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

## ELIZABETH HAZAN
### FEB 1, 2026 - JAN 31, 2027

| | February 2026 | March 2026 | April 2026 | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | December 2026 | January 2027 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| TOTAL | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD- FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD- REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY ONE WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VENDOR ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | | | | | | | | | | | 26,920 |
| INSURANCE (FISHER ISLAND) | | 6,730 | 6,730 | | 6,730 | 6,730 | | 16,054 | 6,730 | | | 6,730 | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | | | | | 140,000 |
| TOTAL | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 15,019 | 8,289 | 8,289 | 66,836 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | 135,019 | 33,711 | 33,711 | -27,836 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| LIST | | | | | | | | | | | | | |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,836 | 121,045 |
| PREVIOUS YEAR | 927,092 | | | | | | | | | | | | 927,092 |
| CUMULATIVE NET AMOUNT | 937,855 | 971,566 | 998,547 | 1,032,258 | 1,065,969 | 1,092,950 | 1,103,713 | 1,121,370 | 1,008,351 | 1,042,062 | 1,075,773 | 1,048,137 | 1,048,137 |

### LIST OR PAYMENTS TO CREDITORS

| | February 2026 | March 2026 | April 2026 | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | December 2026 | January 2027 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - 303,589.37/120 months with 3% interest | 22,948 | | | | | | 23,248 | | | | | | 45,896 |
| IRS 24 663 YEAR 2014 | 0 | | | | | | 0 | | | | | | 0 |
| VALENCIA ESTATE $95,000 | 0 | | | | | | 0 | | | | | | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | | | | | | 0 | | | | | | 0 |
| SOUTH EAST BANK/UCM - CAR 48 MONTHS | 0 | | | | | | 0 | | | | | | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JIM URBAN 999  225,00.00 | 0 | | | | | | 0 | | | | | | 0 |
| LIST OF UNSECURED CLAIMS | 0 | | | | | | 0 | | | | | | 0 |
| **TOTAL** | 22,968 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

**ELIZABETH HAZAN**
**FEB 1, 2027 - JAN 31, 2028**

| | February 2027 | March 2027 | April 2027 | May 2027 | June 2027 | July 2027 | August 2027 | September 2027 | October 2027 | November 2027 | December 2027 | January 2028 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD - FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD - REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| **TOTAL** | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 65,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -23,636 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -53,584 | 98,097 |
| PREVIOUS YEAR | 1,048,137 | | | | | | | | | | | | 1,048,137 |
| **CUMULATIVE NET AMOUNT** | 1,058,900 | 1,092,611 | 1,119,592 | 1,153,303 | 1,187,014 | 1,213,995 | 1,224,758 | 1,242,415 | 1,129,396 | 1,163,107 | 1,196,818 | 1,146,234 | 2,146,234 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2027 | March 2027 | April 2027 | May 2027 | June 2027 | July 2027 | August 2027 | September 2027 | October 2027 | November 2027 | December 2027 | January 2028 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| #85 - 393,585.13 (14.33 months) with 5% interest | 22,948 | | | | | | 22,948 | | | | | 22,948 | 68,844 |
| #83 - 24 665 YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 335,559 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SOUTH EAST FINANCIAL - CDR 60 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JIM URBAN 929 275,000.83 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                    Case No. 16-10389-AJC
                                              Chapter 11

_____ Debtor _____/

### BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]*

*The plan filed by Liza Hazan on September 6, 2016 can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*This ballot is for creditor _____ for the following type of claim placed in the indicated class in the indicated amount:*

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| ☐ General Secured | | $ |
| ☐ General Unsecured | | $ |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]          ☐ Accepts          ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed:

Print Name:

Address:

Phone:

Date:

### ★ ★ ★ FILE THIS BALLOT ON OR BEFORE ★ ★ ★

with:    Clerk of Bankruptcy Court
         ✓  301 N. Miami Ave., Room 150, Miami, FL 33128
         ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
         ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

         **If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote.   Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI-DADE DIVISION

**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,                                                    CASE NO.:  16-10389 AJC

Debtor.                                                          CHAPTER 11

_____/

**FOURTH AMENDED PLAN OF REORGANIZATION**

**ARTICLE I**

**SUMMARY**

This Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtor (the "Debtor") from sources of payment, such as equity in properties and future income.

Debtor has an exclusive period during which only debtor may propose a plan. The exclusive period was extended through July 11, 2016 by motion filed on 5/10/16 at DE 63 and granted at hearing on 5/26/16 without objection and ordered on 7/7/16 at DE 99, and again extended through November 7, 2016, by Order entered on August 22, 2016 (DE 173), and again extended through April 30, 2017 by Order entered on January 26, 2017, D.E. 373, and again extended through November 15, 2017 by motion filed on 9/10/2017 at DE 543 and granted at hearing on October 3, 2017.

This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at a dividend of 41% to 100% of total allowed claims over up to 60 months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% by 7/11/18.

This Plan also provides for the payment of administrative claims. If payment is not made in full on the effective date of this Plan with respect to any such claim (to the extent permitted by the Code or the claimant's agreement), the paragraphs below will identify such claim and briefly summarize the proposed treatment.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    This Plan includes a class of priority claims, classes of secured claims, classes of unsecured claims, and a class of equity interests.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Counsels for Debtor Geoffrey Aaronson, Joel Aresty and David W. Langley will be paid outside of the plan and have agreed to such treatment.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid by terms of treatment consistent with §1129(a)(9)(C) of the Code.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6)(U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim.<br><br>SETTLED |
| | Joel Aresty | Attorney Joel Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. Stipulation amended between the parties on November 1, 2017. Monthly payments in the amount of $1000 starting on November 1, 2017 Remaining |

|  |  | Balance owed $28,000. SETTLED |
|---|---|---|
|  | David W. Langley | Paid as awarded or agreed. |
|  | US Trustee | paid in full at confirmation |

**Priority Claims**

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | **IRS** <br><br> **Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Equal Payments of $2,674.34 every six months to include interest on anyunpaid claim amounts after the effective date of the plan at 3%. |

**Secured Claims**

**6913 Valencia Drive Property Fisher Island Florida**

4

| 2 | **Chase Bank** | no | yes | **First Secured Mortgage –**<br><br>The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim.  Chase was scheduled as disputed, contingent and unliquidated.<br><br>Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 with Washington Mutual Bank.  Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan.  Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues.  If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final.<br><br>Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan.  See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). |

| | | | | |
|---|---|---|---|---|
| | | | | Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved. |
| 3 | **Selective Advisors Group, LLC** | yes | yes | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainst The Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008, |
| | | | | Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014. per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014. |
| | | | |     On August 21, 2016, Selective sued NLG in this bankruptcy Court **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January 3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend their Complaint to add a count seeking to Quiet Title to the property, and a number of tort claims, which motion was granted on |

January 23, 2016.

The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017.

On November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows:

"The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein

Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's

| | | | | | Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is |
|---|---|---|---|---|---|

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:
LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to

| | | | | the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida. |
|---|---|---|---|---|
| | | | | have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC. |
| | | | | 2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt to Selective pursuant to the Quebec Judgment. |
| | | | | 3. NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. |
| | | | | 4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order." |
| 4 | **6913 Valencia LLC** | | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLC's Mortgage on her Homestead property claim.<br><br>Insider claim will subordinate and not be paid until all other allowed claims but reserves right to vote for the plan |

| | | Yes | | |
|---|---|---|---|---|
| 5 | **Valencia Estates Community Assn, Inc claim #10** | no | yes | **Valencia Estates Community Association's ("Valencia")**Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2. Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00 as per the Stipulation.<br><br>3. Debtor has paid the 2016 special assessment in the amount of $6250.00 as per the Stipulation.<br><br>4. The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.<br><br>**Valencia Estates Community Association, Inc withdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan**.<br><br>**Claim settled.**<br><br>Agreed Order Approving Stipulation of Settlement of Claim # 10 filed by Valencia Estates Homeowners' |

| | | | | Association entered on 11/18/16 D.E 302. |
|---|---|---|---|---|
| | | | | All Valencia's post petitions regular assessments and special assessment in 2016 have all been paid and are current. |
| | | | | A Post petition special assessment dated on September 15, 2017 to be paid as follows: $1,041.66 every month in addition to the monthly assessments starting at confirmation date for a period of five years. |
| | | | | In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc ("FICA") and Valencia Estates Community Association Inc ("VALENCIA") to her homestead property's fence. The Debtor's Homestead residence is damaged and the fence needs to be completely removed and replaced. Debtor is planning to bring an action for damages against Fisher Island Community Association Inc and Valencia Estates Community Association Inc jointly and severally. This will offset some or the entirety of Valencia's post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of $46,555.48. |
| 6 | **Fisher Island Community Ass'n, Inc** | | yes | FICA's Late filed Proof Of Claim in the amount of $216,278.97 in 10/20/16 – **Disputed by Debtor and** |

| | **Claim #18** | | | **Disallowed by this Court.** |
|---|---|---|---|---|
| | | | no | The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been denied in November 16, 2016. |
| | | | | Claimant 3343 West Commercial Blvd. 100 (Fisher Island Community Association). |
| | | | | Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16 |
| | | | | **Claim Disallowed Claim by this Court.No payment through Plan.** |
| | | | | **Debtor plans to reinstate stay and pay the net amount if any of all Fisher Island Community Association's post petitions fees in the amount of $46,555.48 less the damages caused to Debtor by FICA and Valencia (more explained below) after the filing of the petition at confirmation date. Debtor will obtain a discharge for all the prepetition fees.** |
| | | | | In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc ("FICA") and Valencia Estates Community Association Inc ("VALENCIA") to |

| | | | | |
|---|---|---|---|---|
| | | | | her homestead property's fence on Fisher Island. The Debtor Homestead residence's fence is substantially damaged and needs to be completely removed and replaced. Debtor is planning to bring an action for damages against FICA and VALENCIA. This will offset some or the entirety of Valencia's post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of $46,555.48.<br><br>        FICA has also caused substantial damages to the Debtor by denying access to all Debtor's guests and all business associates for years and has singled out the Debtor for many years. FICA has enjoined the Debtor to enjoy her home and conduct business. FICA has also endangered the Debtor's life by allowing access to the alleged principal of NLG, LLC a former creditor of the debtor, on Fisher Island who has caused Debtor harassment, trespassing her home, intimidation and caused Debtor additional damages that will be set for trial at a later date in **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* Adv. Case No. 16-1439-AJC |
| 7 | **Miami-Dade Water and Sewer**<br><br>**claim #7** | no | yes | **Claim #7  $1502.54 to be paid on the Effective Date of The Plan** |

| | | | | |
|---|---|---|---|---|
| 8 | **IRS**<br><br>**claim #3** | no | yes | $393,985.17 - Secured claim shall be paid over ten years with interest Equal payments in the amount of $22,948.00 every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector**<br><br>**Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6  paid in full**. |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc**<br><br>**claim #8** | | yes | Claim #8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br>Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed to support Debtor's plan of |

| | | | | reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163) |
|---|---|---|---|---|
| | | | no | **Claim settled.** |

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers**<br><br>**Spencer Condominium**<br><br>**claim #14** | | yes<br><br><br><br><br><br><br><br><br><br><br><br><br>no | The Debtor disputes the Claim #14 filed by The Board of Managers Spencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York. The Debtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance fees owed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065. This amount will be paid by Real Estate |

|  |  |  |  | Holdings Group, L.D.C. ("REHG"), the owner of the New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlement executed in March 2015 ("Settlement"). The vast remaining portion of the Spencer Condo Board of Managers' claim is to be paid by the owner of the unit, REHG, per the Settlement executed in March 2015 by the parties.<br><br>**In March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowing theNew York Court to exercise jurisdiction over and enforce the confidential Settlement Agreement.**<br><br>**In March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce The Confidential Stipulation entered in March 2015 between the parties.** |
|---|---|---|---|---|

| | | | | In April 25, 2017 Honorable New York Supreme Judge Singh ordered that the Plaintiff REHG's Motion to enforce the terms of the settlement agreement dated 3/2015 is granted . "After a conference held today the Court finds that all parties are in compliance with the terms of stipulation dated 3/2015."

The Deadline for *Board of Managers of Spencer Condominium* toFile Complaint to determine the Debtor's Dischargeability of Certain Debt has expired.

**No payment through the plan. Claim settled.**

**SETTLEMENT ENFORCED BY NEW YORK COURT** |
|---|---|---|---|---|

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full on the Effectiver Date at confirmation**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 12 | IRS Claim #3 | no | | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | | 461.00 |
| | FPL Claim #11 | no | | 2906.93 |
| | Mount Sinai | no | | 3,240.00 |
| | Mount Sinai | no | | 295.91 |
| | HSBC Bank USA NA | no | | 1070.66 |
| | Sterling Emerg Svc | no | | 2445.30 |
| | Bank of America NA has waived all prepetition fees | no | | 0.00 |
| | Wells Fargo Claim #12 | no | | 323.24 |
| | Real Time Resolutions ("RTR") Claim #5 Although Debtor settled this claim for $12,000 after | | | 0.00 |

| | | | |
|---|---|---|---|
| | misrepresentations made by alleged creditor Real Time Resolutions that it had a valid claim. Debtor after further investigation has determined that statute of limitations has run and that Claim #5 is not a valid claim. Real time Resolutions has sued the debtor in case 08-47664 CA 32 in Miami-Dade County Court in October 21, 2008. The case 08-47664 CA 32 was dismissed in for lack of prosecution on January 08, 2010. The Statute of limitations has run. | no | |
| | **S&S Collections**<br><br>**Simon &Sigalos**<br><br>**claim #13 partial paid amount $1740.96** | no | 0.00 |
| | Total | | 12958.04 |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims**

| Class # | Description | Insider? (Yes or No) | Impaired | Treatment | |
|---------|-------------|----------------------|----------|-----------|---|
| <u>13</u> | **JMB Urban 900 Dev. claim #4\*** | **no** | **X** | Claim # 4 in the amount of $664,380.47. Claim # 4 will be paid 41% of the amount or 275,000.00 per settlement before the second anniversary of the entry of the agreed final judgment on or before July 20, 2018 in favor of JMBin case **Adversary proceedings 16-01188-AJC. Adversary proceeding case closed on 7/22/16 and <u>Case settled 16-01188-AJC</u>. DOC 21 Case 16-01188-AJC Order approving agreed final Judgment in favor of JMB entered on July 20, 2016..** <u>**CLAIM SETTLED**</u> | |
| | **<u>S&S Collections Simon &Sigalos claim #13</u>** | **no** | **X** | Claim # 13 in the amount of$21,242 <u>**Claim settled**</u> for 41% $8,709.22.Amount of $1740.96 moved to convenience class. Amount of $1740.96 paid by third party on July 10, 2017. Remaining balance owed $6,968.04 to be paid same treatment as JMB. <u>**CLAIM SETTLED**</u> | |

| | | | | |
|---|---|---|---|---|
| | **Southeast Financial LLC** | **no** | **X** | Stipulation Of Settlement DE 98 approved by this Court DE 101. Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor. Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current. CLAIM SETTLED |
| | | | | |

**Disputed Unsecured Claims**

**not paid until and unless allowed**

**and then paid within 5 years after confirmation**

| | | | | |
|---|---|---|---|---|
| | **Cross & Simon Claim #1** | no | | Claim #1 in the amount of $11,023.83 Legal Bill for corporation other than Debtor. **Unallowed claim.** **No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| | **Newman Ferrara LLP claim #15** | no | | Claim #15 in the amount of $24,818.44 Legal bill Legal work for Corporation other than the Debtor. **The Claims bar date has passed. No payment through plan. Unallowed claim.** |

| | | | | |
|---|---|---|---|---|
| | | | | |
| **FuerstIttleman David & Joseph, P.L.** **Claim #16** | **no** | | | Disputed Proof of Claim filed after Claim Bar Date. FuerstIttleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. FuerstIttlemanDavid & Joseph, P.L. have agreed that they are not a creditor of this estate. **No payment through plan.Unallowed Claim.** |

## Unsecured Scheduled Disputed and No Claim Filed

## Therefore Disallowed

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |

| | |
|---|---|
| | US Bank did not file a proof of claim and will not be paid through the Plan.**Claim settled.** |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and**NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**. |
| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
| | NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor. |
| | The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submittedon August 15, 2017. |
| | In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows: |
| | "The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by |

satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II

and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

   LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

   have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt to Selective pursuant to the Quebec Judgment.

| | |
|---|---|
| | 3. NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. |
| | 4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order." . |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 14 | Equity Individual interest holder | no | retained |

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03     Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01     Assumed Executory Contracts and Unexpired Leases.

(a)     The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan: none.

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII

## GENERAL PROVISIONS

7.01     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.02     Effective Date of Plan. The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03     Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04     Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05     Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII

## DISCHARGE

8.01.    **Debtor is an individual.**

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In this case the Debtor has provided for payments not less than Projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

Discharge. In a case in which the debtor is an individual—

(A)unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B)at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—

(i)the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii)modification of the plan under section 1127 is not practicable; and

(iii)subparagraph (C) permits the court to discharge; and

(C)(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—

(i)section522(q)(1) may be applicable to the debtor; and

(ii)there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to all unsecured and deficiency creditors. **Upon payment of all required Plan payments the Debtor shall be discharged of all allowed and disallowed claims**. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a) Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b) The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d) During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, that being 1/11/16, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e) Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to unsecured creditors.

(f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to unsecured creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

Respectfully submitted, 11/15/17

By: /s/ Liza Hazan

The Plan Proponent

By: /s/ David W. Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954356-0450

By: /s/ *David W. Langley*
Attorney for the Plan Proponent



**ORDERED in the Southern District of Florida on December 13, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

          LIZA HAZAN,

          Debtor.

_____/

16-10389-AJC

Chapter 11

**ORDER (I) APPROVING DISCLOSURE STATEMENT; (II)
SETTING HEARING ON CONFIRMATION OF PLAN; (III)
SETTING HEARING ON FEE APPLICATIONS;
(IV) SETTING VARIOUS DEADLINES; AND
(V) DESCRIBING PLAN PROPONENT'S OBLIGATIONS**

CONFIRMATION HEARING AND HEARING ON FEE APPLICATIONS

January 24, 2018 at 2:30 p.m.

LOCATION:
United States Bankruptcy Court
301 North Miami Ave, Courtroom 7
Miami, Florida 33128

PROPONENT'S DEADLINE FOR
SERVING THIS ORDER,
DISCLOSURE STATEMENT, PLAN,
AND BALLOT:

December 15, 2017 (40 days before Confirmation Hearing)

DEADLINE FOR OBJECTIONS TO CLAIMS:

LF-32B (rev. 12/01/09)

<u>December 15, 2017</u> (40 days before Confirmation Hearing)

DEADLINE FOR FEE APPLICATIONS:

<u>January 3, 2018</u> (21 days before Confirmation Hearing)

PROPONENT'S DEADLINE FOR SERVING NOTICE OF FEE APPLICATIONS:

<u>January 10, 2018</u> (14 days before Confirmation Hearing)

DEADLINE FOR OBJECTIONS TO CONFIRMATION:

<u>January 10, 2018</u> (14 days before Confirmation Hearing)

DEADLINE FOR FILING BALLOTS ACCEPTING OR REJECTING PLAN:

<u>January 10, 2018</u> (14 days before Confirmation Hearing)

PROPONENT'S DEADLINE FOR FILING PROPONENT'S
REPORT AND CONFIRMATION AFFIDAVIT:

<u>January 19, 2018</u> (three business days before Confirmation Hearing)

DEADLINE FOR INDIVIDUAL DEBTOR TO FILE "CERTIFICATE FOR CONFIRMATION REGARDING PAYMENT OF DOMESTIC SUPPORT OBLIGATIONS AND FILING OF REQUIRED TAX RETURNS":

<u>January 19, 2018</u> (three business days before Confirmation Hearing)

The court conducted a hearing on May 4, 2017 to consider approval of the disclosure statement filed by Liza Hazan (the "plan proponent"). The court finds that the disclosure statement (as amended, if amendments were announced by the plan proponent or required by the court at the hearing) contains "adequate information" regarding the plan in accordance with 11 U.S.C. §1125(a). Therefore, pursuant to 11 U.S.C. §1125(b) and Bankruptcy Rule 3017(b), the disclosure statement is approved.

This order sets a hearing to consider confirmation of the plan ("confirmation hearing"), a hearing on fee applications and sets forth the deadlines and requirements relating to confirmation provided in the Bankruptcy Code, Bankruptcy Rules and Local Rules of this court.

1. **HEARING TO CONSIDER CONFIRMATION OF PLAN**

The court has set a hearing to consider confirmation of the plan for the date and time indicated above as "CONFIRMATION HEARING". The confirmation hearing may be

continued to a future date by notice given in open court at the confirmation hearing.

### 2. DEADLINE FOR FILING AND HEARING ON FEE APPLICATIONS

The last day for filing and serving fee applications is indicated above as "DEADLINE FOR FEE APPLICATIONS". All prospective applicants for compensation, including attorneys, accountants and other professionals, shall file applications which include actual time and costs, plus an estimate of additional time and costs to be incurred through confirmation. At or prior to confirmation, applicants must file a supplement with documentation supporting the estimated time and costs. Fee applications shall be timely filed with the court and served (with all exhibits, including documentation of estimated time) on (i) the debtor; (ii) the plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or Examiner that has been appointed; and (v) the U.S. Trustee.

Fee applications will be set for hearing together with the confirmation hearing. The plan proponent shall serve notice of all fee applications pursuant to paragraph 6 below. The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

### 3. DEADLINE FOR OBJECTIONS TO CONFIRMATION

The last day for filing and serving objections to confirmation of the plan is indicated above as "DEADLINE FOR OBJECTIONS TO CONFIRMATION". Objections to confirmation shall be filed with the court and served on (i) the debtor; (ii) the plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or examiner that has been appointed; and (v) the U.S. Trustee.

### 4. DEADLINE FOR FILING BALLOTS ACCEPTING OR REJECTING PLAN

The last day for filing a ballot accepting or rejecting the plan is indicated above as

"DEADLINE FOR FILING BALLOTS ACCEPTING OR REJECTING PLAN". All parties entitled to vote should receive a ballot from the plan proponent by U.S. Mail pursuant to paragraph 6(A) of this order. If you receive a ballot but your entire claim has been objected to, you will <u>not</u> have the right to vote until the objection is resolved, unless you request an order under Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.

### 5.   DEADLINE FOR OBJECTIONS TO CLAIMS

The last day for filing and serving objections to claims is indicated above as "DEADLINE FOR OBJECTIONS TO CLAIMS". All objections to claims must be filed before this date unless the deadline is extended by further order.

### 6.   PLAN PROPONENT'S OBLIGATIONS

**(A)** On or before the date indicated above as "PROPONENT'S DEADLINE FOR SERVING THIS ORDER, DISCLOSURE STATEMENT, PLAN, AND BALLOT" the plan proponent shall serve a copy of this order, the approved disclosure statement (with all amendments, if amendments were announced by the plan proponent or required by the court at the disclosure hearing), and the plan on all creditors, all equity security holders, and all other parties in interest, as required by the Bankruptcy Rules (including those entities as described in Bankruptcy Rule 3017(f)) and the Local Rules, including those listed on a "Master Service List" required to be filed pursuant to Local Rules 2002-1(H). At the time of serving this order, the Local Form "Ballot and Deadline for Filing Ballot Accepting or Rejecting Plan", customized as required by Local Rule 3018-1 shall be served via U.S. Mail on all creditors and equity security holders entitled to vote on the plan. The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

**(B)** On or before the date indicated above as "PROPONENT'S DEADLINE FOR SERVING NOTICE OF FEE APPLICATIONS", the plan proponent shall serve a notice of

hearing of all fee applications, identifying each applicant and the amounts requested. The notice shall be served on all creditors, all equity security holders, and all other parties in interest as required by the Bankruptcy and Local Rules, including those listed on a "Master Service List" required to be filed pursuant to Local Rules 2002-1(H). The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

(C)     On or before 5:00 p.m. on the date indicated above as "PROPONENT'S DEADLINE FOR FILING PROPONENT'S REPORT AND CONFIRMATION AFFIDAVIT", the plan proponent shall file with the court the Local Form "Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees," and the Local Form "Confirmation Affidavit". The "Confirmation Affidavit" shall set forth the facts upon which the plan proponent relies to establish that each of the requirements of 11 U.S.C. §1129 are satisfied. The "Confirmation Affidavit" should be prepared so that by reading it, the court can easily understand the significant terms of the plan and other material facts relating to confirmation of the plan. The individual executing the "Confirmation Affidavit" shall be present at the confirmation hearing.

If the plan proponent does not timely comply with any of the requirements of this order, the court may impose sanctions at the confirmation hearing without further notice including dismissal, conversion of the case to chapter 7, or the striking of the plan. The court will also consider dismissal or conversion at the confirmation hearing at the request of any party or on the court's own motion.

### ###

**Submitted by:**

DAVID W. LANGLEY
*Attorney for Debtor*

LF-32B (rev. 12/01/09)                    Page 5 of 6

8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:    954-356-0450
Fax:            954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No.: 16-10389-AJC** |
| **LIZA HAZAN** a/k/a Elizabeth Hazan, | **Chapter 11** |
| Debtor. | |

**CREDITOR, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.'S:**

**(A) OBJECTION TO CONFIRMATION OF DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION; AND**

**(B) MOTION TO CONVERT OR DISMISS CASE, OR ALTERNATIVELY, MOTION FOR STAY RELIEF TO FILE ADDITIONAL LIEN**

Creditor, Valencia Estates Homeowners' Association, Inc. (the "Association"), by and through its undersigned counsel, hereby files this its: (A) Objection to Confirmation of the Debtor's Fourth Amended Plan of Reorganization [D.E. 563], and (B) its Motion to Convert or Dismiss Case, or Alternatively, Motion for Stay Relief to File Additional Lien, and in support thereof, states the following:

**SUMMARY OF OBJECTION AND MOTION**

1.      The Association objects to the Debtor's Fourth Amended Plan of Reorganization[1] (the "Plan") because **the Debtor is in violation of the Stipulation previously entered by this Court as between Debtor and the Association**.  A copy of the Stipulation is attached hereto and incorporated herein as **Exhibit "A"** (the "Stipulation").

---

[1] The Association previously filed an Objection to Debtor's Fifth Amended Disclosure Statement and Motion to Dismiss/Convert [D.E. 566]; however, on December 11, 2017, the Court vacated its prior Order Setting Hearing on Approval of Disclosure Statement (*see* D.E. 574 and 576) and entered instead an Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan (D.E. 580).  Accordingly, the Association now files this Objection to Confirmation of the Plan.

2.　　The Stipulation requires Debtor to pay all monthly and/or special assessments on an ongoing basis as required by the Association's Declaration of Covenants (the "Ongoing Assessments"), and if she fails to do so, **the Stipulation provides the Plan will not be confirmed**. Exhibit "A" at ¶ 9.　Furthermore, the Association has the right to file and foreclose upon a new lien against the Subject Property if Debtor fails to pay the Ongoing Assessments.　*See* **Exhibit "A"** at ¶¶ 7 and 9.

3.　　Debtor has failed to pay the Special Assessment (defined below) despite notice and demand, and Debtor is therefore in violation of the Stipulation.　**Indeed, Debtor even admits in her recent filings that she has not paid the Special Assessment.**　D.E. 562 at pp. 22-23; D.E. 563 at p. 12.　Accordingly, pursuant to the Stipulation entered by this Court, Debtor's Plan cannot be confirmed, and the Association is entitled to stay relief to file a new lien and seek enforcement thereof against the Subject Property.

4.　　**The Debtor's games have gone on long enough, and cause exists under 11 U.S.C. § 1112(b)(4) to dismiss or convert this case to a Chapter 7 proceeding**. This Bankruptcy Action was filed almost two (2) years ago in January 2016.　During that time, Debtor has filed **six (6) different Disclosure Statements and five (5) different proposed Plans**, and nearly all of them have been attacked by objections from various creditors.

5.　　In each Disclosure Statement and proposed Plan since December of 2016, Debtor states she will soon earn "significant funds (comparable to past earnings) in the next six months", which past earnings she claims are historically in excess of $350,000.00.　She proposes to fund her Plan by using this mysterious consulting income, despite the fact that **she has received $0.00 in business income from January 2017 to present**. Her monthly Debtor-in-Possession Operating Reports demonstrate that her alleged expected business income is non-existent, if not an outright

**Haber Slade, P.A.**

fabrication, as she consistently receives $0.00 in business income per month. *See* D.E. 394, 422, 437, 461, 493, 515, 530, 558, 559, and 564. She receives only some amounts of household income per month (anywhere from $800/month to $12,000/month) - - the majority of which is not earned income, but rather appears to be monetary gifts from her husband. *See id.*

6. Debtor's creditors, including the Association, should be paid what they are owed through conversion of this Action to a Chapter 7 proceeding, followed by liquidation of the Debtor's primary asset, i.e. - - the Subject Property.

## BACKGROUND

7. The Association previously objected [D.E. 138] to Debtor's original Disclosure Statement [D.E. 103] for several reasons, including because Debtor failed to adequately describe Debtor's alleged consulting and rental incomes which were to fund the Plan, and which, to date, do not appear to have materialized or have been misdirected elsewhere.

8. On or about August 17, 2016, Debtor and the Association entered into a Stipulation for Settlement of the Association's Claim #10, as well as the Association's pending Motion for Adequate Protection [D.E. 94], both of which were set to be heard by the Court on August 17, 2016. The Stipulation for Settlement was signed by the Debtor outside the courtroom to resolve the Association's Motion for Adequate Protection, as well as to solicit the vote of the Association in favor of the Debtor's eventual amended plan. *See* **Exhibit "A"** at ¶¶ 5, 11.

9. On or about November 17, 2016, the Court entered an Agreed Order approving the Stipulation, a copy of which is attached hereto and incorporated herein as **Exhibit "B"**.

10. The Stipulation clearly requires that Debtor pay Ongoing Assessments, failing which her plan will not be approved. *See* **Exhibit "A"** at ¶¶ 7, 9. Furthermore, pursuant to the Stipulation, in the event of non-payment by the Debtor for the Ongoing Assessments, the

Association has "the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at ¶ 7.

11.     On or about August 9, 2017, the Association passed a special assessment for certain site plan and landscape improvements to the Common Elements of the Association (the "Special Assessment"). Debtor was notified of same in accordance with the Association's standard procedures. *See* a copy of the Notice to Owners dated August 14, 2017, attached hereto and incorporated herein as **Exhibit "C"**.

12.     The Board voted that each Owner's contribution to the Special Assessment was to be paid in one (1) lump sum payment on or before September 15, 2017. *See* **Exhibit "C"**. Specifically, Debtor's portion of the Special Assessment to be paid on or before September 15, 2017, was $62,500.00.

13.     On or about August 22, 2017, the undersigned law firm wrote to Debtor's counsel regarding Debtor's failures to maintain and repair the Subject Property in accordance with the Association's Covenants, and also to remind Debtor's counsel that the Special Assessment in the amount of $62,500.00 was coming due from Debtor on or before September 15, 2017. A copy of said correspondence is attached hereto and incorporated herein as **Exhibit "D"**.

14.     **Despite Debtor's clear obligations under the Stipulation and the Association's Declaration, and despite multiple notices of same, Debtor failed to pay the Special Assessment.** Therefore, Debtor is in clear violation of the Stipulation, and per the Stipulation, Debtor's proposed plan must be denied. Additionally, under the Stipulation, the Association is entitled to initiate and purse a new collections action against Debtor's Subject Property, and should be provided stay relief for same.

**Haber Slade, P.A.**

## BASES FOR OBJECTION, CONVERSION/DISMISSAL, AND/OR STAY RELIEF

### A. Objection to Confirmation

15.     The Stipulation, which was executed by the Debtor well over a year ago, and also approved and adopted by this Court, is crystal clear in that if Debtor fails to fulfill her obligations under the Stipulation, her Plan must be denied. *See* **Exhibits "A"** and **"B"**.

16.     In her most recent Fifth Amended Disclosure Statement and Fourth Amended Plan, Debtor **admits** that she has not paid the Special Assessment, and offers to pay same in installments over five (5) years as part of her Plan. *See* D.E. 562 at p. 22; D.E. 563 at p. 12.

17.     This offer to pay in installments over time was **not** agreed to, and was indeed, **specifically rejected** by the Association on August 23, 2017 and on August 31, 2017, since no other Owner at the Association was permitted to pay over time, and no exceptions would or could be made for Debtor without treating the Debtor differently than all of the other Owners. Indeed, such a regime would not only be unfair to the other Unit Owners, but would fall woefully short of the financial needs of the Association to complete the renovations, which are notably already underway.

18.     The Debtor then goes on in her proposed Plan to concoct a completely bogus story about damage to her fence, which she claims must be reimbursed by the Association and/or by the Fisher Island Community Association, Inc. ("FICA"). Her theory is that this reimbursement would offset the Special Assessment amount owed by Debtor to the Association, as well as other amounts owed by Debtor to FICA. She offers no legal support which would authorize such an "offset", especially in light of the fact that Debtor has no pending claim against the Association for any damage to the fence.

**Haber Slade, P.A.**

19.     To be clear, the Association did not cause any damage to Debtor's fence. Hurricane Irma caused a tree on Debtor's Subject Property to fall on the fence, and when FICA removed the tree during post-hurricane clean-up, the fence was already broken. Photos of the broken fence, as well as a report dated October 21, 2017, describing that the tree fell during Hurricane Irma, are attached hereto and incorporated herein as **Composite Exhibit "E"**.

20.     Furthermore, it is Debtor's responsibility to maintain her fence and landscaping. Pursuant to the Association's Covenants at Section 5.1, Owners are responsible for maintaining all structures located on their Lots, including fences, which must be kept "in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance" of the Valencia Estates community. A copy of Section 5 of the Covenants is attached hereto and incorporated herein as **Exhibit "F"**. Owners are also responsible for maintaining their trees, shrubbery, grass and landscaping on their Lots, and keeping same in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. *See id.* at Section 5.2. So, at best, Hurricane Irma caused the damage to the fence, and Debtor needs to submit an insurance claim like everyone else - - or, at worst, perhaps the fence was already broken due to Debtor's tree before Hurricane Irma, due to Debtor's neglect of the Subject Property, and Debtor is now once again trying to avoid responsibility to maintain and repair the Subject Property.

21.     In light of the above, Debtor has no claim for a "setoff" to excuse her failure to pay the Special Assessment, in clear and direct violation of the Stipulation. Thus, unless and until she pays the Special Assessment due and owing to the Association, her Plan cannot be confirmed. *See* **Exhibit "A"** at ¶ 9.

22.     Further, pursuant to 11 USC § 1129, one of the requirements to confirm a plan is that the plan is "not likely to be followed by the liquidation, or the need for further financial

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan, unless such liquidation or reorganization is proposed in the plan."

23.     Here, Debtor's monthly Operating Reports reflect that her proposed Plan is **not feasible**.  Her Plan states that she will have $65,000.00 in cash on hand at confirmation, and depends on her obtaining being paid $120,000.00 in business income in February 2018; $100,000.00 in March 2018; $80,000.00 in April, May and June 2018, and then $50,000.00 per month in business income for the rest of the year.  But, in the past year, she has earned **$0.00 business income**, and appears to be subsisting solely on handouts from her husband.  This is simply not feasible, nor is fair or equitable to Debtor's creditors to allow her charade to continue while she lives in the Subject Property without paying all assessments coming due on same.  *See, e.g., In re Glades Health Care, Ltd.,* 88 B.R. 439 (Bankr. S.D. Fla. 1988) (holding that Chapter 11 plan was not feasible, and thus would not be confirmed, where funding for plan would require 150% increase in operating profit from previous year's experience, while there had been no change from pre-bankruptcy circumstances affecting debtor's income and expenses).

24.     Thus, not only has Debtor **stipulated** that her Plan cannot be confirmed if she defaults under the parties' stipulation, but the requirements for confirmation under 11 USC § 1129 are also not met here.

**B.  Request for Dismissal or Conversion of Case to Chapter 7**

25.     Debtor's transparent attempt to avoid payment of the Special Assessment, and to avoid the clear remedies under the Stipulation for her non-payment, is just the latest example in a long saga of shenanigans and misrepresentations made by the Debtor to this and other Courts to avoid complying with her legal obligations.

**Haber Slade, P.A.**

26.     **Debtor simply believes that the rules do not apply to her.  This Court should remind her that she must comply with the rules just as anyone else.**  Her cavalier attitude and wanton disregard of Court Orders and the Stipulation is knowing and willful and should not be tolerated.

27.     Debtor's creditors, including the Association, have been severely prejudiced by Debtor's manipulation efforts and non-stop litigation tactics. With respect to the Association specifically, the Association is a non-profit organization and is dependent upon homeowners paying their share of the Common Expenses.   The Association has not been timely paid maintenance assessments by Debtor **since 2007**, all the while the Debtor has resided in the Property for free, at great cost to the Association's other members.  Now, Debtor is refusing to pay her portion of the Special Assessment, and fabricating claims against the Association for damages to her fence to try to avoid payment - - once again seeking to have the other Unit Owners pay her financial obligations.  At what point will she actually be held responsible for her obligations?

28.     It is simply inequitable to continue to allow Debtor to take advantage of and manipulate the judicial system, including this Bankruptcy Court, in this manner.  *See, e.g., In re On the Ocean, Inc.,* No. 16-16204-BKC-RBR, 2016 WL 8539791, at *3 (Bankr. S.D. Fla. June 6, 2016) (noting that "[c]ourts have routinely found bad faith and dismissed cases in circumstances where debtors have filed to purposely delay a creditor's inevitable recovery of its property" and that "[t]he law requires more of a Chapter 11 Debtor than the mere desire to stay pending litigation or use the bankruptcy to gain a tactical litigation advantage.").

29.     Her monthly Operating Reports reflect that her proposed Plan is not feasible.  She has earned **$0.00 business income** in the past year, and appears to be subsisting solely on handouts from her husband!  Now, with her clear violation of the Stipulation, her Plan cannot be confirmed

**Haber Slade, P.A.**

regardless of its lack of feasibility. Accordingly, the Court should dismiss or convert the case to a Chapter 7 proceeding.

30. Pursuant to 11 U.S.C. § 1112(b)(1):

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate**, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. [Emphasis added.]

31. Under 11 U.S.C. § 1112(b)(4), cause includes numerous conditions or circumstances, including the following instances which are relevant here:

> a) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and

> e) failure to comply with an order of the court.

32. Debtor has failed to comply with the Stipulation, which was ratified by Court Order. That alone is enough to dismiss or convert this case, especially in light of the Stipulation's provision that Debtor's Plan **cannot be confirmed** if she violates the Stipulation. *See, e.g., In re Efron,* 529 B.R. 396, 412 (B.A.P. 1st Cir. 2015) (upholding grounds for dismissal where debtor failed to comply with Court orders directing him to make post-petition payments, and noting that "[w]ithout question and despite his objections, the debtor was nonetheless obligated to comply with the DSO Order and the subsequent orders directing him to commence the monthly DSO payments."). In addition, the Bankruptcy Court for the Eastern District of New York described when cause arises under 11 U.S.C. § 1112(b)(4)(E) in the following manner:

> This Section gives effect to the notion that compliance with court orders is a fundamental obligation of any party, and a debtor's failure to comply with a court order is a troubling matter indeed. As one court noted, "[b]ecause ... violations [of a court's orders] are disrespectful to the Court, they are disrespectful to the judicial process." *Babakitis v. Robino (In re Robino),*

243 B.R. 472, 487 (Bankr.N.D.Ala.1999). And Section 1112(b)(4)(E) also reflects the fact that the protections that a debtor gains under the Bankruptcy Code travel in tandem with many obligations that the debtor must meet.  **As the *Robino* court noted, "[i]n the bankruptcy context, if a debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide by the orders a court enters." *Id.*  Notably, Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud**.

*In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) (emphasis added).

33.     In addition, it is more than clear at this stage that Debtor does not have the ability to fund her Plan as she proposes - - the "consulting income" she claims she will earn is nothing but a fairytale, causing this matter to be drawn out for almost two (2) years with no real relief for the creditors.  Debtor's Plan is not feasible, and her continuous delay and manipulation of the judicial system is harmful to her creditors, many of whom, like the Association, have been trying to collect from her for multiple years.  Thus, the case should be dismissed or converted to a Chapter 7 proceeding.  *See, e.g., In re Brooks*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013) ("[A] **debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors**…and which is adequate justification, in and of itself, for dismissal of a Chapter 11 case for cause.") (citations omitted) (emphasis added); *In re Erkins*, 351 B.R. 218, 219 (Bankr.M.D.Fla.2006) (upholding original order to dismiss, which was based on the debtor's failure to propose a plan over a three year period, thus indicating little potential for successfully effectuating such a plan and creating delay that was unreasonably prejudicial to the creditor); *In re Tucker*, 411 B.R. 530 (Bankr. S.D. Ga. 2009) (Upon determining that "cause" existed to dismiss or convert debtor's individual Chapter 11 case based on his continued delay in filing monthly operating reports, and based on inaccurate or misleading nature of such schedules and reports as debtor filed, bankruptcy court would exercise its authority to convert case to Chapter 7 rather than to dismiss, where case

**Haber Slade, P.A.**

had been pending for more than one year, during which time debtor had benefited from automatic stay despite his failure to adhere to his duties as debtor-in-possession); *In re Babayoff*, 445 B.R. 64 (Bankr. E.D.N.Y. 2011) (Cause to convert or dismiss Chapter 11 case arose from debtor's **inability to effectuate a plan**; debtor's creditors had objected to the plan, these objections presented an insurmountable obstacle to confirmation, and **the long history of the case showed that debtor had been unable to formulate a plan of reorganization or to make meaningful progress toward confirmation**, as neither of debtor's proposed plans was complete or satisfied the requirements of the Bankruptcy Code, and the disclosure statement similarly omitted required information, including a meaningful liquidation analysis or description of the risk factors or tax consequences under the plan).

34.     Additionally, there are no "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" under 11 U.S.C. § 1112(b)(2), and moreover, even if there were such "unusual circumstances" (which there are not), Debtor cannot meet the requirements of subsection (b)(2)(A) and (B) to avoid the Court's mandatory dismissal or conversion of this action.

35.     In light of the foregoing, the Court must dismiss or convert this proceeding, as there is plain cause to do so under 11 U.S.C. § 1112(b)(4).

**C.  Request for Stay Relief to Pursue New Collections Action**

36.     Again, the Stipulation is clear that the Association is entitled to initiate and pursue a new collection and foreclosure action, including a lien upon the Subject Property, if the Debtor fails to pay the Ongoing Assessments.  *See* **Exhibit "A"** at ¶ 7.

37.     However, for the avoidance of doubt and in light of the Debtor's prior bad-faith litigation tactics, the Association seeks the Court's permission to pursue same, but only in the event this action is not dismissed and/or converted to Chapter 7.

WHEREFORE, the Association respectfully requests that this Court enter an Order:

A. Sustaining the Association's Objection to, and denying confirmation of, the Debtor's Fourth Amended Plan for the reasons set forth herein; and

B. Ordering that the case be dismissed, or converted to a Chapter 7 proceeding so that the Subject Property can be sold, since Debtor's proposed Plan cannot be confirmed, is not feasible, and is continuing to cause severe prejudice to her Creditors; or

C. Alternatively, awarding stay relief to the Association to pursue an additional collections and foreclosure action due to Debtor's non-payment of the Special Assessment; and

D. Awarding the Association, per the Stipulation, attorney's fees and costs incurred in seeking enforcement of the Stipulation, as well as any such other and further relief this Court may deem just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing was furnished by CM/ECF to all electronic notice parties on the CM/ECF service list on December 20, 2017.

Respectfully submitted,

**HABER SLADE, P.A.**
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
(305) 379-2400
(305) 376-1106 (fax)
dbhpaservice@dhaberlaw.com

By:   /s/ David B. Haber, Esq.
**DAVID B. HABER, ESQ.**
Florida Bar No.: 435368
dhaber@dhaberlaw.com
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@dhaberlaw.com
cpla@dhaberlaw.com

Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:

                                           CaseNo:16-10389AJC
                                           Chapter 11

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.** _____/

## STIPULATION OF SETTLEMENT CLAIM 10
## Valencia Estates Homeowners Assn, Inc.

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

      2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

      3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

      4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

      5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

            A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

            B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

            C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

      6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees + costs absent a breach bcf Debtor as referenced below*

7.     Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.     Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.     Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.     If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.     Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the *Valencia shall lose their action + liens, counterclaims. All defenses, proposed counterclaims + proposed third party claims against Valencia, it's agents, managers, attorneys, members + officers, raised or unraised, are released + waived.*

stipulated treatment.

12. This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

EXHIBIT "B"



ORDERED in the Southern District of Florida on November 17, 2016.

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF
FLORIDA MIAMI DIVISION

www.flsb.uscourts.gov

IN RE:

CaseNo:16-10389AJC
Chapter 11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR.                                    /

### AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10

(Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter

the "Stipulation"). The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

*   *   *

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

EXHIBIT "C"



August 14, 2017

Dear Residents,

On Wednesday, August 9, 2017 the Association held a special meeting of the Board of Directors to consider and vote on the approval of an updated proposed new site plan and treescape landscaping modifications, both at the Associations front entrance and Valencia Drive. The membership approved the Special Assessment in the total amount of $750,000.00 to fund theses two projects.


A one time lump sum payment is due on September 15, 2017. Included with this letter you will find a payment coupon indicating the amount to be paid.

Please send your payment and the coupon to the address notated on the coupon.

Valencia Estates

c/o Marquis Association Management

PO. Box 521056

Miami, FL33152-1056

Valencia Estates continues to enjoy one of the lowest Operating Budgets of Fisher Island and continues to limit increases to monthly maintenance assessments.

The Board of Directors looks forward to continuing this precedent of careful and conservative fiscal management and appreciates your understanding as we ensure the Association's financial steadiness through the balance of the budget year.

If you should have any questions regarding the foregoing, please feel free to contact me at mercy.rodriguez@marquishoa.com or on my cell phone 305-962-2537.


Very truly yours,

_____

Mercy V Rodriguez, LCAM
On Behalf of the Board of Directors
Valencia Estates Home Owners Association, Inc.

EXHIBIT "D"



**REBECCA NEWMAN CASAMAYOR, Esq.**
305.379.2400 ext. 134
rcasamayor@dhaberlaw.com

August 22, 2017

<u>**VIA E-MAIL ONLY:**</u>
David Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
E-mail: <u>dave@flalawyer.com</u>

> RE:   **In re: Liza Hazan, Debtor**
>    **Case No.: 16-10389-AJC – Chapter 11**

Dear Mr. Langley:

As you know, this law firm represents Valencia Estates Homeowners' Association, Inc. (the "Association") in the above-styled case (hereinafter the "Bankruptcy") filed by your client, Elizabeth Hazan (the "Debtor"). We write to notify you of two (2) major issues involving the Debtor and her home at Valencia Estates (hereinafter the "Subject Property"), which must be addressed forthwith.

**I. FIVE (5) DAY DEMAND TO REPAIR/MAINTAIN EXTERIOR OF SUBJECT PROPERTY**

The Debtor is failing to maintain the exterior of the Subject Property, including but not necessarily limited to, the landscaping, trees, and the pool. The exterior landscaping around the Subject Property is extremely overgrown, and the roots of the large tree in the front of the house are causing damage to the driveway. Photos of the front of the Subject Property, depicting the overgrown landscaping and the tree roots growing into and lifting up the driveway, are attached hereto as **Composite Exhibit "1"**. In addition, the pool maintenance personnel have reported that the Debtor's pool has not been properly maintained (despite their weekly routine maintenance efforts) and is consistently a green color, which is believed to be caused by the Debtor turning off the pool mechanical equipment and/or potentially another defect with the equipment, which is the Debtor's responsibility to maintain, repair and replace. These factors are both unsightly and well afoul of the acceptable standards set by the Association (and most probably, in violation of applicable zoning and housing codes).

Pursuant to the Association's Declaration of Covenants and Restrictions (the "Covenants") at Section 5.2, Owners are responsible for maintaining trees, shrubbery, landscaping, sidewalks, driveways, and their pools, which must be kept "in good working condition and all in a neat, orderly and attractive manner consistent with the general appearance of Fisher Island as a whole." A copy of Section 5 of the Covenants is attached hereto for you reference as **Exhibit "2"**. While the Association provides some basic routine services for these items, such as cutting the lawn and chemically treating/skimming the pool, Owners are responsible for landscape replacements, as well as for pool mechanical and surface repairs and maintenance. The Debtor has ignored those responsibilities, and the Subject Property is

*Demand Letter – Elizabeth Hazan*
*August 22, 2017*
*Page 2 of 3*

visibly deteriorating, devaluing the Association as a whole and otherwise impairing the Members' rights to reside in a well-kept community.

In accordance with Section 5.3 of the Covenants, the Association hereby notifies the Debtor that if the Debtor fails to correct these issues and provide for the proper maintenance of the Subject Property within **five (5) days** of the date of this correspondence, the Association reserves its right to enter onto the Subject Property and cause the work to be performed, in order to bring the Subject Property into compliance with the Covenants. The costs of this work, as well as a twenty-five percent (25%) surcharge, will be specially assessed against the Subject Property, as permitted by Section 5.4 of the Covenants.

As an alternative to performing the work and specially assessing the costs and surcharge for same against the Subject Property, the Association also reserves its right to move for the appointment of a Trustee in the Bankruptcy Action, and to seek the Court's approval for the Trustee to cause the work to be performed and/or to liquidate the Subject Property. There can be no doubt that the Subject Property is the primary, if not the sole, asset of the Debtor in the Bankruptcy proceeding, yet the Debtor is nonetheless inexplicably failing to maintain and preserve that asset for the benefit of her numerous creditors, including the Association, and is otherwise materially wasting same. We anticipate that the Bankruptcy Court, and the other creditors, will have no patience for this. Despite the Debtor's petulance she must either conform her behavior or be prepared to lose the protection the Court is temporarily graciously affording her.

## II. SPECIAL ASSESSMENT PASSED AUGUST 9, 2017 AND DUE SEPTEMBER 15, 2017

As the Debtor should be aware, on August 9, 2017, the Association held a Special Meeting of the Board of Directors to consider and vote on: (i) the approval of the updated proposed New Site Plan ("New Site Plan") and Treescape Landscaping Modifications ("Treescape Improvements"), both at the Association's front entrance and Valencia Drive (collectively, the "Project"); and (ii) the authorization of the Board of Directors to pay for the Project using the Association's operating account (the "Funding Authorization"), through a special assessment of up to, but not to exceed $750,000.00, and/or through a loan of up to, and not to exceed, $750,000.00.

The votes for the Project and the Funding Authorization both passed. With respect to the Funding Authorization, the Board voted that each Owner's contribution to same shall be paid in one (1) lump sum payment on or before September 15, 2017. The Debtor's lump sum amount due on or before September 15, 2017 is $62,500.00 (the "Project Assessment").

Pursuant to the Stipulation of Settlement of Claim 10, executed by the Parties on August 17, 2016 and thereafter approved and ratified by the Bankruptcy Court (the "Stipulation"), the Debtor is responsible to pay all ongoing monthly and/or special assessments, which would include both of the special assessments referenced herein (i.e. - - the costs and surcharge if the Association is forced to carry out repair and maintenance work to the exterior of the Subject Property, and the $62,500.00 Project Assessment). *See* Stipulation at Paragraph 7.

In the event that the Debtor fails to pay these special assessment amounts, she will be in violation of the Stipulation, in which case **her proposed Plan cannot be confirmed**. *See id.* at Paragraph 9. Therefore, we suggest that you immediately address these issues with the Debtor, in order to ensure that

*Demand Letter – Elizabeth Hazan*
*August 22, 2017*
*Page 3 of 3*

she remains in compliance with both the Covenants and the Stipulation, and advise us of same. Failure to comply will result in the Association exercising any and/or all of its legal and equitable remedies pertaining to same.

This correspondence reserves all rights of the Association, without limitation and/or reservation.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Sincerely,

**HABER SLADE, P.A.**

*/s/ Rebecca N. Casamayor*

DAVID B. HABER, ESQ.
REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures: As noted
cc:     Elizabeth Hazan [via FedEx]
        Tracking Number 770083435236

**HABER SLADE, P.A.**
**MIAMI CENTER | SUITE 1205 | 201 S. BISCAYNE BLVD. | MIAMI, FLORIDA 33131 | T: 305.379.2400 | F: 305.379.1106 | www.dhaberlaw.com**

# Exhibit 1













# Exhibit 2

OFF. REC. BK.
21004 PG 0398

from time to time sooner at the sole election of the Developer), be conveyed by quit claim deed to the Association, which shall automatically be deemed to have accepted such conveyance. Beginning from the date this Declaration is recorded, the Association shall be responsible for the maintenance, insurance and administration of such Common Properties (whether or not then conveyed to the Association), all of which is to be performed in a continuous and satisfactory manner without cost to the general taxpayers of the County. It is intended that all real estate taxes assessed against that portion of the Common Properties owned or to be owned by the Association shall be (or have been, because the purchase prices of the Lots and Homes have already taken into account their rights in and to the Common Properties) proportionally assessed against and payable as part of the taxes of the applicable Lots within the Neighborhood. However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Properties, the Association shall be responsible for the payment of same (subject to protest or appeal before or after payment), including taxes on any improvements and any personal property located thereon, which taxes accrue from and after the date this Declaration is recorded, and such taxes shall be prorated between Developer and the Association as of the date of such recordation. Developer and its affiliates shall have the right from time to time to enter upon the Common Properties and other portions of the Neighborhood for the purpose of the installation, construction, reconstruction, repair, maintenance, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Properties or elsewhere within Fisher Island that Developer and its affiliates elect to effect, and to use the Common Properties and other portions of the Neighborhood for sales, displays and signs or for any other purpose during the period of construction and sale of any portion of the Neighborhood. Without limiting the generality of the foregoing, the Developer and its affiliates shall have the specific right to maintain upon any portion of the Neighborhood, sales, administrative, construction and/or other offices without charge, and appropriate easements of access and use are expressly reserved unto the Developer and its affiliates, and its and their successors, assigns, employees and contractors, for this purpose. Any obligation to complete portions of the Common Properties shall, at all times, be subject and subordinate to these rights and easements and to the above-referenced activities. Accordingly, the Developer shall not be liable for delays in such completion to the extent resulting from the need to finish the above-referenced activities prior to such completion.

### ARTICLE 5.

### MAINTENANCE OF HOMES AND LOTS

5.1.   Homes. Each Owner shall be solely responsible for maintaining all structures (including the Home) located on his Lot, all screens, fences, walls and glass surfaces on or within the Lot, and all mechanical components serving such structures (including, without limitation, air conditioning, electrical and plumbing, and wiring, panels and conduits for any alarms, monitoring or security devices, if any, installed in a Home) in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance of The Neighborhood. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of Fisher Island as initially constructed and otherwise improved by Developer (taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Control Board). Each Owner shall repaint or restain, as appropriate, the exterior portions of his Home (with the same colors as initially used on the Home or as otherwise approved by the Architectural Control Board) as often as is necessary to comply with the foregoing standards. Notwithstanding the foregoing, however, the Association shall, approximately once every five (5) years, repaint the exteriors of each Home (with the costs thereof to be paid for through assessments).

- 9 -

OFF. REC. BK.
21004PG0399

5.2. <u>Lots</u>. Each Owner shall be solely responsible for maintaining his Lot, including, without limitation, the trees, shrubbery, grass and other landscaping thereon, the irrigation system, the sidewalks and driveways thereon and the swimming pool thereon, in good working condition and all in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. The minimum (though not sole) standard for the foregoing shall be the general appearance of Fisher Island as initially constructed and otherwise improved by Developer, and as to landscaping, as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of applicable landscaping, as properly trimmed and maintained). The foregoing maintenance obligations of the Owner shall also apply to the land up to the centerline of any unimproved road right of way which a Lot abuts, unless the Association assumes such maintenance responsibilities. Notwithstanding the foregoing, the Association shall provide the following services to each Lot: routine lawn cutting, weed pulling and hedge trimming and routine pool chemical treatment and skimming. Any and all other necessary or desired landscape or pool maintenance shall be performed solely by the Owner, at the Owner's sole cost and expense, including, without limitation, seasonal plantings, landscape replacements, pool mechanical repairs, maintenance and replacements and pool surface repairs, maintenance and replacements.

5.3. <u>Remedies for Noncompliance</u>. In the event of the failure of an Owner to maintain his Home or Lot in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon the Owner's Lot and perform such work as is necessary to bring the Lot or Home, as applicable, into compliance with the standards set forth in this Article. The remedies provided for herein shall be cumulative with all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

5.4. <u>Costs of Remedial Work; Surcharges</u>. In the event that the Association performs any remedial work on a Home or Lot pursuant to this Article, the costs and expenses thereof shall be deemed a special assessment under Section 6.4 of this Declaration and may be immediately imposed by the Board of Directors. In order to discourage Owners from abandoning certain duties hereunder for the purpose of forcing the Association to assume same, and, additionally, to reimburse the Association for administrative expenses incurred, the applicable entity may impose a surcharge of not more than twenty-five percent (25%) of the cost of the applicable remedial work, such surcharge to be a part of the aforesaid special assessment. No bids need be obtained for any of the work performed pursuant to this Article and the person(s) or company performing such work may be selected by the Association in the sole discretion of the Board.

5.5. <u>Right of Entry</u>. There is hereby created an easement in favor of the Association and its applicable designees over each Lot for the purpose of entering onto such Lot in the performance of the work herein described.

5.6. <u>Limited Exemption</u>. To the extent that a Home on a Lot is under construction by the Developer or a builder bound to comply with construction-related requirements or restrictions imposed by the Developer, the provisions of this Article shall not apply to such Lot until such time as the construction of the Home is completed as evidenced by the issuance of a certificate of occupancy therefor.

- 10 -



**Fisher Island**

1 Fisher Island Drive

Miami Beach, FL 33109

**Case Report**

| | | | |
|---|---|---|---|
| **Report Type:** | Complaint | **Case #:** | **17-10-0069** |
| **Location:** | **6913 - FICA HOT LIST Valencia Drive** | | |
| **Submitted:** | **10/21/2017 6:00:51 PM** | | |
| **Written By:** | **Juan Meza** | | |
| **Caller:** | **Mobile Initiation** | | |

| Mobile Unit Event | Timestamp | User |
|---|---|---|
| Arrival | 10/21/2017 6:00:51 PM | Juan Meza |
| Departure | 10/21/2017 6:15:36 PM | Juan Meza |

| Mobile Unit Question | Response |
|---|---|
| **Occurence Date/Time** | 10/21/2017 06:00:07 PM |
| **Name(s) of parties involved?** | Elizabeth Haven |
| **Describe Exact Location** | Backyard in unit 6913. |
| **Narrative** | Elizabeth Hazen complained about the removal of her fence in her backyard. Elizabeth said she approved the removal of fallen trees that were in her property but not her fence. Pictures were taken.<br><br>Sergio Ortiz said the fence was part of debris and damage caused by Hurricane Irma. Sergio said removal of debris was authorized by property management and FICA.<br><br>Property manager Mercy Rodriguez was advised on complaint. Mercy said she'll contact Elizabeth on Monday. |
| **Did you get any written statements?** | No |
| **Reporting Party - Contact Details** | First Name: Elizabeth<br>Last Name: Haven<br>Custom: NA |
| **Person Notified** | First Name: Mercy<br>Last Name: Rodriguez<br>Company Name: Marquis<br>Custom: NA |

| Attached Media Below |
|---|





| Attached Media | Download |
|---|---|
| 10/21/2017 5:59:29 PM | https://pulse2.abdi.net/gTour/get/?i=063B391D-E2A1-4A76-B455-EA9F79832E33 |



10/21/2017 File Upload by Juan Meza (JPG) : 6913 backyard fence (Uploaded by: Juan Meza)

| 10/21/2017 6:25:40 PM | https://pulse2.abdi.net/gTour/get/?i=727EE2E4-AAF2-4C2F-9B9A-B534363DCA5E |



10/21/2017 File Upload by Juan Meza (JPG) : debris removed from 6913 (Uploaded by: Juan Meza)

















EXHIBIT "F"

OFF. REC. BK.
2100 4PG 0398

from time to time sooner at the sole election of the Developer), be conveyed by quit claim deed to the Association, which shall automatically be deemed to have accepted such conveyance. Beginning from the date this Declaration is recorded, the Association shall be responsible for the maintenance, insurance and administration of such Common Properties (whether or not then conveyed to the Association), all of which is to be performed in a continuous and satisfactory manner without cost to the general taxpayers of the County. It is intended that all real estate taxes assessed against that portion of the Common Properties owned or to be owned by the Association shall be (or have been, because the purchase prices of the Lots and Homes have already taken into account their rights in and to the Common Properties) proportionally assessed against and payable as part of the taxes of the applicable Lots within the Neighborhood. However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Properties, the Association shall be responsible for the payment of same (subject to protest or appeal before or after payment), including taxes on any improvements and any personal property located thereon, which taxes accrue from and after the date this Declaration is recorded, and such taxes shall be prorated between Developer and the Association as of the date of such recordation. Developer and its affiliates shall have the right from time to time to enter upon the Common Properties and other portions of the Neighborhood for the purpose of the installation, construction, reconstruction, repair, maintenance, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Properties or elsewhere within Fisher Island that Developer and its affiliates elect to effect, and to use the Common Properties and other portions of the Neighborhood for sales, displays and signs or for any other purpose during the period of construction and sale of any portion of the Neighborhood. Without limiting the generality of the foregoing, the Developer and its affiliates shall have the specific right to maintain upon any portion of the Neighborhood, sales, administrative, construction and/or other offices without charge, and appropriate easements of access and use are expressly reserved unto the Developer and its affiliates, and its and their successors, assigns, employees and contractors, for this purpose. Any obligation to complete portions of the Common Properties shall, at all times, be subject and subordinate to these rights and easements and to the above-referenced activities. Accordingly, the Developer shall not be liable for delays in such completion to the extent resulting from the need to finish the above-referenced activities prior to such completion.

### ARTICLE 5.

### MAINTENANCE OF HOMES AND LOTS

5.1.   **Homes.**  Each Owner shall be solely responsible for maintaining all structures (including the Home) located on his Lot, all screens, fences, walls and glass surfaces on or within the Lot, and all mechanical components serving such structures (including, without limitation, air conditioning, electrical and plumbing, and wiring, panels and conduits for any alarms, monitoring or security devices, if any, installed in a Home) in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance of The Neighborhood. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of Fisher Island as initially constructed and otherwise improved by Developer (taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Control Board). Each Owner shall repaint or restain, as appropriate, the exterior portions of his Home (with the same colors as initially used on the Home or as otherwise approved by the Architectural Control Board) as often as is necessary to comply with the foregoing standards. Notwithstanding the foregoing, however, the Association shall, approximately once every five (5) years, repaint the exteriors of each Home (with the costs thereof to be paid for through assessments).

- 9 -

OFF. REC BK.
21004PG0399

5.2. Lots. Each Owner shall be solely responsible for maintaining his Lot, including, without limitation, the trees, shrubbery, grass and other landscaping thereon, the irrigation system, the sidewalks and driveways thereon and the swimming pool thereon, in good working condition and all in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. The minimum (though not sole) standard for the foregoing shall be the general appearance of Fisher Island as initially constructed and otherwise improved by Developer, and as to landscaping, as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of applicable landscaping, as properly trimmed and maintained). The foregoing maintenance obligations of the Owner shall also apply to the land up to the centerline of any unimproved road right of way which a Lot abuts, unless the Association assumes such maintenance responsibilities. Notwithstanding the foregoing, the Association shall provide the following services to each Lot: routine lawn cutting, weed pulling and hedge trimming and routine pool chemical treatment and skimming. Any and all other necessary or desired landscape or pool maintenance shall be performed solely by the Owner, at the Owner's sole cost and expense, including, without limitation, seasonal plantings, landscape replacements, pool mechanical repairs, maintenance and replacements and pool surface repairs, maintenance and replacements.

5.3. Remedies for Noncompliance. In the event of the failure of an Owner to maintain his Home or Lot in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon the Owner's Lot and perform such work as is necessary to bring the Lot or Home, as applicable, into compliance with the standards set forth in this Article. The remedies provided for herein shall be cumulative with all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

5.4. Costs of Remedial Work; Surcharges. In the event that the Association performs any remedial work on a Home or Lot pursuant to this Article, the costs and expenses thereof shall be deemed a special assessment under Section 6.4 of this Declaration and may be immediately imposed by the Board of Directors. In order to discourage Owners from abandoning certain duties hereunder for the purpose of forcing the Association to assume same, and, additionally, to reimburse the Association for administrative expenses incurred, the applicable entity may impose a surcharge of not more than twenty-five percent (25%) of the cost of the applicable remedial work, such surcharge to be a part of the aforesaid special assessment. No bids need be obtained for any of the work performed pursuant to this Article and the person(s) or company performing such work may be selected by the Association in the sole discretion of the Board.

5.5. Right of Entry. There is hereby created an easement in favor of the Association and its applicable designees over each Lot for the purpose of entering onto such Lot in the performance of the work herein described.

5.6. Limited Exemption. To the extent that a Home on a Lot is under construction by the Developer or a builder bound to comply with construction-related requirements or restrictions imposed by the Developer, the provisions of this Article shall not apply to such Lot until such time as the construction of the Home is completed as evidenced by the issuance of a certificate of occupancy therefor.

- 10 -

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                    CASE NO.: 16-10389 AJC

    Debtor.                                    CHAPTER 11

_____/

### SECURED CREDITOR'S FISHER ISLAND COMMUNITY ASSOCIATION, INC.'S LIMITED OBJECTION TO CONFIRMATION

      COMES NOW, Secured Creditor Fisher Island Community Association, Inc., (herein "Fisher Island", by and through the undersigned counsel, files this Limited Objection to Confirmation, and as grounds states as follows:

1. The Debtor filed for Bankruptcy Protection under Chapter 11 of the United States Bankruptcy Code on January 11, 2016.

2. The Debtor is the owner of, and resides at, a residence located at 6913 Valencia Drive, Fisher Island FL 33109.

3. The Property maintains a Legal Description as follows:

    Lot No. 7, Block No. 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, as recorded in Plat Book 157, at Page 64 of the Public Records of Miami-Dade County,Florida. A/K/A 6913 VALENCIA DRIVE FISHER ISLAND FLORIDA 33109.

4. The Debtor purchased the Property on March 7, 2007 from NLG, LLC.

5. On January 29, 2008, Fisher Island filed a Complaint in Miami-Dade County Court to foreclose on the lien rights provided to it under Fla. Stat. §720.3085 pursuant to its Declaration of Covenants (Exhibit A).

6. The Debtor's Fourth Amended Plan (D.E. 563) indicates a dispute to, and no distribution on the currently unliquidated claim of Fisher Island.

7. In addition, the Debtor will obtain a discharge on the personal obligation on the pre-petition amounts, however the Debtor's plan is silent on the pre-petition *in rem* amounts which are collectable against the property pursuant to Fla. Stat. §720.3085 and the Declaration of Covenants for Fisher Island, the Property at issue and all potential subsequent purchasers of the property jointly and severally liable for the delinquent assessments.

8. It appears the Debtor seeks to treat the disputed pre-petition *in rem* obligation to Fisher Island Direct, and Outside the Bankruptcy.

9. The Debtor has taken no action to remove Fisher Island's Lien on the property pursuant t0 11 U.S.C. §506, and could not do so as it is argued by the Debtor that the property retains equity even above the Mortgages and Association Liens held on the property by various parties.

10. As such the lien should survive the Bankruptcy and confirmation of the plan to be fully collectible, both pre-petition and post-petition, *in rem*.

11. In addition the post-petition assessments are rendered non-dischargeable pursuant to 11 U.S.C. §523 (a)(16) which states:

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable,

or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case;

12. 11 U.S.C. §1141(c) of the Bankruptcy Code states:

Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

13. While some claims on the property are being treated in the plan, the lien rights of the associations run with the land pursuant to Fla. Stat. §720.3085 and should not be voidable.

14. Extinguishing the lien rights of the Secured Creditor pursuant to 11 U.S.C. §1141(c) would not only be a massive windfall for the Debtor, but would also expand the debtor's personal discharge to cover non-filing parties by eliminating Fisher Island's rights to recover *in rem* and from future purchasers.

15. Furthermore, the Debtor's plan indicates the Debtor will bring an action against Fisher Island and Creditor Valencia Homeowners Association for an issue regard the Debtor's fence as well as an allegation accusing Fisher Island of not allowing the guests of the Debtor on the property.

16. The issue regarding the fence is strongly disputed and would be defended should the Debtor take legal action on that claim.

17. The issue of not allowing guests on the property was made pursuant to a Motion for Contempt and Sanctions against Fisher Island and Valencia Homeowners Association, which was subsequently withdrawn by the Debtor with prejudice.

18. As such retaining that allegation in a confirmed plan is not only inappropriate but flatly false.

## MEMORANDUM AT LAW

The general rule that a bankruptcy filing by a borrower does not affect the enforceability of a security interest in collateral has been part of U.S. bankruptcy jurisprudence for well over a century. See *Long v. Bullard*, 117 U.S. 617 (1886); accord *Dewsnup v. Timm,* 502 U.S. 410, 417 (1992) ("the creditor's lien stays with the real property until the foreclosure"); *Farrey v. Sanderfoot,* 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem.").

Courts in this Circuit have held that the lien is not extinguished by operation of 11 U.S.C. 1141(c). See *Bowen v. United States (In re Bowen)*, 174 B.R. 840 (S.D. Ga. 1994) (holding that a "lien" is not an "interest" within the meaning of section 1141(c); any release of a lien must rely on section 506(d)); *see also* 11 U.S.C. §§ 1123(a)(5) (a chapter 11 plan must "provide adequate means for the plan's implementation, such as . . . (D) sale . . . either subject to or free of any lien or (E) satisfaction or modification of any lien") and 1123(b)(5) (a plan may "modify the rights of holders of secured claims").

Specifically, in this case there is no modification of the rights of Fisher Island, besides discharging the pre-petition *in personam* obligation. The plan simply deals with the pre-petition *in rem* obligation Direct, and Outside the Plan and as such all rights, aside from being able to proceed *in personam,* should be available to Fisher Island, the lien holder.

WHEREFORE, the Secured Creditor, Fisher Island Community Association, Inc., prays this Honorable Court Sustain the foregoing Limited Objection to Confirmation, indicate that the pre-petition rights to *in rem* recovery and recovery against subsequent purchasers are maintained by Fisher Island pursuant to Fla. Stat. §720.3085, and for any and all further relief the Court deems just and proper.

/s/ Robert A Gusrae, Esq.
Law Office of Robert A. Gusrae, Esq.
560 Lavers Cir # 147
Delray Beach, FL 33444
Phone: 561-716-4690
Email: Gusraelaw@gmail.com
FBN: 99793

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served by electronic service via the CM/ECF this 2nd Day of January 2018 to all parties who have made an appearance on this case including but not limited to the Debtor by mail to all parties on the Courts Mailing Matrix.

/s/ Robert A Gusrae, Esq.
Law Office of Robert A. Gusrae, Esq.
560 Lavers Cir # 147
Delray Beach, FL 33444
Phone: 561-716-4690
Email: Gusraelaw@gmail.com
FBN: 99793

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                 Chapter 11
_____/

**SECURED CREDITOR NLG, LLG'S**
**AMENDED OBJECTION TO CONFIRMATION OF FOURTH AMENDED PLAN**

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, objects to the

Confirmation of the Fourth Amended Plan [ECF 563] filed by Elizabeth Hazan (the "Debtor") on

November 15, 2017, and states as follows:

**BACKGROUND**

1.      The Debtor filed her Chapter 11 Petition on January 11, 2016 (the "Petition

Date"), the day before the Miami-Dade County Clerk was set to auction the Debtor's Property

pursuant to NLG's Foreclosure Judgment.  Twenty-four months later, as of December 29, 2017,

the Debtor had only **$1952.13 in cash** on hand per her late filed monthly operating report. [ECF

595].

2.      Although the Debtor claims in the Fifth Amended Disclosure Statement that she

earns in excess of $350,000 per year, [ECF 562 p. 4], she earned only a fraction of that (about

$125,000) through the calendar year of 2016 and even less in 2017. *Id.* Incredibly the Debtor

claims projected income of $810,000 in the financial projections attached to the Fifth Amended

Disclosure Statement. [*See* ECF 562-4].

3.      The Debtor's primary asset is her residence located at 6913 Valencia Drive,

Fisher Island, Florida (the "Property"). The Debtor has filed an appraisal in this case valuing the

1

Property at $9.5 million, and has scheduled claims secured by the Property, including NLG's claim, totaling over $12 million. [ECF 20, 81-1].

4.    The Debtor and her husband's solely-owned company, Selective Advisors Group, LLC ("Selective"), filed an adversary proceeding challenging NLG's secured claim (the "NLG Adversary"),[1] but each and every issue raised in the NLG Adversary was decided in NLG's favor by all the state court judges in Miami-Dade Circuit Court, *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 2011-42770-CA-01 (02) (the "Foreclosure Action") and by the Third District Court of Appeal. The Foreclosure Action resulted in NLG obtaining a Final Judgment of Foreclosure with respect to the Property in the amount of $4,876,654.29 (the "Foreclosure Judgment") on December 2, 2015. [*See* ECF 66-1]. This Court entered judgment in favor of the Debtor and Selective in the adversary (a judgment which directly conflicts with the Foreclosure Judgment) and NLG has filed an appeal which is pending before the Honorable Darrin Gayles under case number 17-24127-DPG. The Debtor fails to mention that NLG has filed an appeal even though the appeal was filed before the Fifth Amended Disclosure Statement and Fourth Amended Plan were filed. As such, this Court can't proceed to a confirmation, when there is a pending appeal and if the Court does proceed to a confirmation hearing, then the Court must deny confirmation or delay confirmation until the pending appeal is adjudicated.

5.    The Fifth Amended Disclosure Statement and Fourth Amended Plan fail to mention the Foreclosure Action, the Foreclosure Judgment, the pending appeal of the NLG Adversary, or a host of other issues material to this case. Indeed, the Fifth Amended Disclosure Statement and Fourth Amended Plain fail to remedy any of the defects that resulted in the Court denying all of the Debtor's previous disclosure statements. The Court should deny confirmation

---

[1] *Hazan, et al. v. NLG, LLC*, Adv. No. 16-1439-AJC.

2

of the Debtor's Fourth Plan for all the reasons it denied the Debtor's prior disclosure statements,[2] and for the reasons discussed in detail below.

6. The Fifth Amended Disclosure Statement filed on November 15, 2017, was approved by the Court on December 13, 2017 [ECF 580] without a hearing. The order approving the Fifth Amended Disclosure Statement references a hearing on May 4, 2017, some six months before the operative Disclosure Statement was filed. The Fifth Amended Disclosure Statement failed to remedy any of the defects noted by the Court back in May including the libelous allegations against Mr. Kosachuk, NLG's manager.

7. NLG objects to confirmation to the extent that the Fourth Amended Plan attempts to discharge, terminate, modify or satisfy NLG's rights or claims which it had at the inception of this case and now are subject of the pending appeal before the Honorable Darrin Gayles under case number 17-24127-DPG.

8. NLG incorporates and adopts by reference creditor Valencia Estates' Objection to Confirmation and exhibits [ECF 590] as if fully re-written herein.

## ARGUMENT

9. Section 1125(b) of the Bankruptcy Code requires a disclosure statement to provide "adequate information," that is, "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of debtor's books and records … that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(b). Mere allegations or opinions unsupported by factual information do not meet the "adequate information" standard of

---

[2] NLG incorporates herein the objections to the Debtor's initial disclosure and amended statements. *See* [ECFs 136, 138, 139, 140, 143, 278, 279, 281, 282, 283, 284, 431, 547 and 569].

Section 1125. *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981). The Debtor's Third Amended Disclosure Statement falls well short of this standard and must be denied.

**Inadequate Disclosures Concerning
the Debtor's Income and other Sources of Plan Funding**

10.     First, the Fifth Amended Disclosure Statement fails to provide any meaningful information about the income with which the Debtor intends to fund her plan. *See In re Newkirk*, 2012 WL 830552, *3 (Bankr. E.D.N.C. March 9, 2012) (disclosure statement must provide adequate information of the debtor's ability to fund and maintain a proposed plan). The Debtor states that she intends to fund a plan through (a) her income as a "business consultant specializing in identifying locations for high-end restaurants and retailers round the world," and (b) refinancing the Property and refinancing the New York Condo. [ECF 562 pp. 29-30]. These claims are dubious at best.  Specifically the Debtor has no ability to refinance either property because of her insufficient income, bad credit and debts to creditors already secured by those properties.  Even her phantom $810,000 per year of income as outlined in the Fifth Amended Disclosure Statement is insufficient to support the multi-million dollar refinancing needed to pay off her creditors.

11.     With respect to her consulting income, the Debtor claims variously and inconsistently in the Fifth Amended Disclosure Statement that she either earns "in excess of $350,000 per year," that she "has always earned at least $400,000/year," and that she "has always earned at least $350,000 per year" [ECF 562 pp. 4, 29]. Without any explanation, the financial projections attached to the Fifth Amended Disclosure Statement project $810,000 in annual income [ECF 562-1].  Meanwhile, as noted above, the Debtor earned roughly $125,000 through the calendar year of 2016 [ECF 374] and approximately $70,000 in 2017, (none of which appears to be regular business income). The Debtor makes no effort at all to explain this

inconsistency between the claims concerning her income in the Fifth Amended Disclosure Statement and the reality that she has earned only a fraction of that amount in 2016 or 2017. Further, the Debtor has provided no records, such as tax returns, evidencing her alleged high-income earning potential. The Debtor needs to demonstrate her significant earning capacity has some basis in reality if she proposes to fund a plan with it.

12.     The disparity between the Fifth Amended Disclosure Statement and the income disclosed in the Debtor's monthly operating reports is particularly troubling considering that according to the Debtor, she intends to begin contributing between $50,000 and $120,000 per month—consistently, every month—to plan payments starting February 2018 (*i.e.*, less than 2 months from now). That projection is totally detached from reality in light of the Debtor's monthly operating reports, but if the Debtor intends to fund her plan using this income, she needs to disclose, for example, what clients the Debtor currently has that she believes will yield income of $50,000 to $120,000 per month starting less than 2 months from now.

13.     Additionally, the Debtor has indicated that Real Estate Holdings Group LDC, an entity controlled by the Debtor's husband, has committed to contribute funds from the proceeds of refinancing of a condominium in New York to Debtor's estate in order to fund a plan. [ECF 562 p. 4]. Yet the Debtor offers no real information whatsoever concerning this source of plan funding: how much has the Debtor's husband (through an entity he controls) "committed" to contributing? What is the nature of that commitment—a note? A mortgage? What is the value of the condo that is being refinanced? Is the refinancing already in place or is this source of funding contingent on the ability to find a lender? Is there a financing commitment for a lender already in place?   None of this necessary information is included in the Fifth Amended Disclosure Statement.

**Inadequate Disclosures Concerning the Litigation Regarding the Property**

14.    The Fifth Amended Disclosure Statement should be denied because it fails to provide adequate information concerning the NLG Adversary, the pending NLG Appeal and other actions that will impact the equity in the Property and the Debtor's ability to use the Property to confirm a plan. *See In re Fierman,* 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982) (a disclosure statement must provide a factual basis to support any valuations of real property and must disclose the existence of any litigation and explain the possible effect these lawsuits may have on the feasibility of a plan).

15.    As noted above, the Fifth Amended Disclosure Statement does not discuss the pending appeal of the NLG Adversary at all nor their potential impact on the Property. Yet, when NLG prevails in the appeal, then according to the Debtor's own appraisal, the Property will be significantly underwater.[3] This is critical, among other reasons, because the Debtor proposes to fund a plan, if necessary, by refinancing and using the equity from the Property. Simply put, there is *no* equity in the Property and the Debtor has no ability to refinance anything. The Fifth Amended Disclosure Statement mentions none of this.

16.    The Fifth Amended Disclosure Statement does not discuss JP Morgan Chase's pending foreclosure action which this Court granted stay relief to JP Morgan to pursue a final judgment of foreclosure [ECF 315] and to NLG to defend itself in that foreclosure action.  If JP Morgan is successful in its foreclosure action then there is no equity at all in the Property and such a judgment would decimate the entire proposed plan of reorganization. The Fifth Amended Disclosure Statement mentions none of this.

---

[3] The Debtor claims throughout the Fifth Amended Disclosure Statement that the Property is worth $12 million even though her own appraisal of record in this bankruptcy case values the Property at $9.5 million. The Debtor fails to acknowledge or explain this discrepancy in the Fifth Amended Disclosure Statement.

**Inadequate Disclosures Concerning NLG's Secured Claim**

17.     The Fifth Amended Disclosure Statement also fails to discuss the treatment of NLG's $4,876,654.29 secured claim (claim number 17-1) which is based on the Foreclosure Judgment. The Fifth Amended Disclosure Statement needs to explain how the Debtor will pay will pay NLG the full amount due under the non-appealable Foreclosure Judgment upon adjudication of the pending NLG Appeal.   The Fifth Amended Disclosure Statement completely ignores NLG's Foreclosure Judgment and the pending NLG Appeal.

18.     Section 1123(b)(5) of the Bankruptcy Code states that an individual chapter 11 debtor may not modify a claim secured by a security interest in real property that is the debtor's principal residence (which is precisely what this Debtor is trying to do to both NLG and JP Morgan). In turn, section 1129(a)(1) provides that for a plan to be confirmed, it must comply with the provisions of the Bankruptcy Code.

19.     Because the Plan on its face violates section 1123(b)(5), it cannot be confirmed under section 1129(a)(1). On this basis alone, the Court should deny approval of the Disclosure Statement. In I*n re Dakota Rail, Inc*., 104 B.R. 138 (Bankr. D. Minn. 1989), for instance, the bankruptcy court denied approval of the disclosure statement, reasoning that "[w]here the disclosure statement on its face relates to a plan that cannot be confirmed . . . the court [has] an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan … Allowing a facially non-confirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation."

20.     It should also be noted that, even if NLG does not have standing to object to the Plan (and NLG does have standing), the Court would have an independent duty to determine that the Plan complies with all of the provisions of the Bankruptcy Code in order for the Plan to be

7

confirmed. *See*, 11 U.S.C. §1129(a)(1); *Ala. Dep't of Econ. & Cmty. Affairs v. Ball Healthcare–Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1229 (11th Cir.2011) ("Importantly, the Bankruptcy Code envisions a bankruptcy court exercising an independent duty to ensure that the strictures of §1129(b) are met with regard to impaired dissenting classes of creditors in a Chapter 11 cram down.") Because the Plan as drafted cannot be confirmed, the Court should deny approval of the Fifth Amended Disclosure Statement.

### The Debtor's Undisclosed Asset and Transfer

21.     Prior to August 15, 2011, the Debtor owned a residential condo unit located at 1East 62nd Street No. 1A, New York, New York (the "New York Condo"). On August 15, 2011, the Debtor transferred the New York Condo out of her name and into the name of an individual named Raymond Houle for no consideration (the "New York Condo Transfer").[4] *See* Deed [ECF 290 pages 15 – 23] Mr. Houle eventually transferred the condo to Real Estate Holding Group, LDC, an entity controlled by the Debtor's husband, Sean Meehan. *See* Deed and Affidavit by Mr. Meehan [ECF 290 pages 24 – 37], respectively.

22.     The New York Condo Transfer occurred just a little over four years prior to the Petition Date. Although that is outside the four-year statute of limitations under Chapter 726 of the Florida Statutes, it is well within the six-year statute of limitations period applicable to fraudulent transfers under the law of New York, where the transfer occurred.[5] Also, the Debtor owes substantial tax liability to the IRS (about $374,526) that was incurred before the New York Condo Transfer. *See* [ECF 21 p. 13]. In addition to being actionable under New York law, the

---

[4] Mr. Houle is the same individual that obtained a fraudulent judgment against NLG in New York state court as part of the Debtor's efforts to frustrate NLG's attempts to exercise its lien rights in certain property owned by the Debtor. *See* NLG's Counterclaim [ECF 5] in *Selective Advisors Group, LLC v. NLG, LLC*, Adv. No. 16-1439-AJC.

[5] *See In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 229-30 (Bankr. S.D.N.Y. 2011) (citing NYCPLR § 213).

New York Condo Transfer may also be avoidable under Florida law and Section 544(b) under the holding of *In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016), which holds that a trustee may stand in the shoes of the IRS to avoid a transfer that occurred outside of the four-year look back period under Florida law.

23.     Although the Debtor claims in the Fifth Amended Disclosure Statement that she has completed her investigation into potentially avoidable transfers, the New York Condo Transfer is not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [ECF 190 p. 8 and ECFs 21, 90].

<u>**Other Inadequate Disclosures**</u>

24.     The exhibits that the Debtor has provided in support of the Fifth Amended Disclosure Statement reflect a variety of defects which must be explained before the document can be considered for approval:

- The Debtor had about **$375 in cash** on hand at the end of November 2017, but her Disclosure Statement states that she will have $65,000 on hand on the effective date of the Plan. What will be the source of those funds? Curiously every disclosure statement claimed the debtor will have $65,000 on hand at confirmation, yet the maximum amount of cash that the debtor every had in her DIP account was $29,000 on July 8, 2016.

- The Debtor is on her third bankruptcy attorney since she filed this case 23 months ago in January 2016, and has accumulated well over $200,000 in unpaid attorney's fees according to the Fifth Amended Disclosure Statement—far more than the $65,000 that the Debtor claims she will have on hand on the effective date. [ECF 562-2]. How does she propose to pay those administrative claims as required to confirm a plan?

9

- The Debtor lists as assets two "potential" claims against NLG and other defendants of an "unknown" value. *Id.* What is the nature of those claims, how will the Debtor prosecute them if at all, and why can she offer no estimate of their potential value?

- The Debtor's plan refuses to pay various creditors who filed proofs of claim without any ruling from the Court on those same claims. [See Claims 1-1, 3-1, 14-1 and 17-1].

- The Debtor discloses a $400,000 account receivable without explanation. What is the nature of that receivable and what is the Debtor doing to collect it? The Debtor disclosed this same $400,000 account receivable in her original plan filed on July 11, 2016 [ECF 103 p. 22] and 14 months later has still not collected a penny of this receivable. It is obvious that this $400,000 account receivable is pure fantasy and a blatant misrepresentation to this Court and all the creditors.

- The Debtor proposes to make payments under the plan in a "range" of monthly to every six months to "even less frequently." How much less frequently? Further, this statement cannot be reconciled with the projections in the Fifth Amended Disclosure Statement indicating that the Debtor will make plan payments of about $60,000 every month, as opposed to every quarter or six months as the Debtor claims elsewhere in the Fifth Amended Disclosure Statement.

- The Debtor fails to address the $62,500 due to the Valencia Estates Homeowner's Association which must be paid before a plan can be confirmed. Pursuant to an Order of this Court [ECF 302], a plan can't be confirmed if the HOA is not current which indeed the Valencia Estates HOA is not.

- The Debtor is projecting $810,000 of income and only $60,000 of income tax which
  is less than an 8% tax rate which does not exist for this level of income even with the
  recently passed tax cuts.

- Some undisclosed third party is supposed to pay the Debtor's previous lawyer,
  Geoffrey $145,000 in legal fees.  Can this undisclosed party pay the other creditors on
  the same percentage basis?

**This Confirmation should be Denied and this Case should be
Dismissed or Converted because the Debtor's Plan is Patently Unconfirmable**

25.     For the reasons explained in NLG's objections to the Debtor's prior disclosure
statements as well as all the other objections raised to the previous disclosure statements by other
creditors, the Fourth Amended Plan should be denied because it was not filed in good faith and is
patently unconfirmable. *See* [ECF 140 pp. 9-12]. The inadequacies demonstrate that the Debtor
plainly has no realistic ability or intent to confirm a plan in this bankruptcy case.

26.     A plan accompanying a disclosure statement which clearly does not meet the
requirements of 11 U.S.C. § 1129 should not proceed to certain defeat at confirmation. Instead,
courts may consider confirmation issues at the hearing on approval of the disclosure statement if
"the plan is so fatally and obviously flawed that confirmation is impossible." *In re Mahoney
Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) (citation omitted); *see also In re Am.
Capital Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) (bankruptcy court may address confirmability
at disclosure statement stage if it is patently obvious that the plan described by the disclosure
statement cannot be confirmed.); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr.
S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly fruitless venture is a
waste of the time of the Court and the parties.").

11

27. A plan is not confirmable if it is not feasible, which requires the Court to consider "whether the things to be done under the plan can be done as a practical matter under the facts." *In re M & S Assocs., Ltd.*, 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992) (citations omitted). Additionally, in considering feasibility, "a bankruptcy court must evaluate the possible impact of the debtor's ongoing civil litigation," and a "plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *Am. Capital Equip.*, 688 F.3d at 156 (citations omitted).

28. Here, the plan is infeasible and unconfirmable on its face: it is premised on a regular stream of consecutive $50,000 to $120,000 monthly payments totaling over $800,000 per year, yet the Debtor has disclosed that she is *incapable* of making consistent monthly payments because her income is irregular. Further, the Debtor has earned only a fraction (about $70,000) through all of 2017 of the roughly $800,000 that she purportedly intends to contribute towards the plan on annual basis. Very simply, the Debtor's plan is premised on a high six-figure income that the Debtor has admitted (through her filings in this case) does not actually exist.

29. Further, the Debtor's plan hinges on her success in the pending NLG Appeal (where NLG already has a Foreclosure Judgment) and the JP Morgan Foreclosure: if she loses the JP Morgan foreclosure then there is no equity in the Property according to the Debtor's own appraisal. That means that there will be no equity for the Debtor to borrow against to fund the plan, and no basis to deny NLG relief from the automatic stay to continue its foreclosure sale under the Foreclosure Judgment. The Debtor's plan, premised entirely on her success in pending litigation, is not confirmable, and so the Fifth Amended Disclosure Statement should be denied.

12

30.     NLG incorporates its pending Motion to Dismiss or Convert [ECF 462] and its pending Motion to Appoint Chapter 11 Trustee [ECF 481] as if fully rewritten herein and does hereby move the Court to dismiss or convert or appoint Chapter 11 Trustee.

**The Disclosure Statement and Plan were not submitted in good faith as required by**
**11 U.S.C. § 1129(a)(3).**

31.     In order to be confirmed, a Chapter 11 reorganization plan must be submitted in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). "While the Bankruptcy Code does not define the term, courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir.1995).

32.     Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied. *Kane v. Johns-Manville Corp*., 843 F.2d 636, 649 (2nd Cir.1988); *In re Sun Country Development, Inc*., 764 F.2d 406, 408 (5th Cir.1985); *In re Mulberry Phosphates, Inc.*, 149 B.R. 702, 707 (Bankr.M.D.Fla.1993).

33.     The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan, *Block Shim*, 939 F.2d at 292; *Madison Hotel*, 749 F.2d at 425, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start. Sun Country, 764 F.2d at 408.

34.     To be in good faith, a plan must have "a true purpose and fact-based hope of either `preserving [a] going concern' or `maximizing property available to satisfy creditors.'" *S. Beach Sec.,* 606 F.3d at 376 (*quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999)). To find that a plan does not comply with § 1129(a)(3) generally requires "misconduct in bankruptcy proceedings, such as

13

fraudulent misrepresentation or serious nondisclosures of material facts to the court." *In re* *342 *River Vill. Assocs.,* 161__B.R.__127, 140 (Bankr.E.D.Pa.1993), *aff'd,* 181__B.R. 795 (E.D.Pa.1995).

35.     The Debtor has committed just this type of misconduct in this bankruptcy proceeding by misrepresenting numerous facts to this Court in regards to NLG's Foreclosure Judgment and is impermissibly seeking that this Court vacate NLG's Foreclosure Judgment as detailed herein.

36.     The Debtor has concealed her second most significant asset, that being the New York Condo with an approximate value of $3.4 million.  [*See* ECF 384].  This asset concealment alone is reason enough to deny the Fifth Amended Disclosure Statement.

37.     Clearly the Fifth Amended Disclosure Statement and Plan were not submitted in good faith as they seek to ignore NLG's Foreclosure Judgment (which this Court has no authority or jurisdiction to do), modify a security interest in the debtor's principal residence (which is specifically prohibited by the Bankruptcy Code), not pay back any creditor what they are actually owed and conceal a multi-million dollar apartment beneficially owned by the Debtor.

38.     The Debtor is seeking to defraud this Court the same way that she has defrauded other courts over the years of litigation with her creditors.

**The Fifth Amended Disclosure Statement and Plan were submitted in bad faith**

39.     Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors." Id. *SE Property Holdings, LLC v. Seaside Engineering & Surveying, Inc.* (citing *In re Seaside Engineering & Surveying, Inc.*), No.

14-11590 (11th Cir. March 12, 2015)  (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir .1984)).

40.    This bankruptcy was filed the day before the foreclosure sale of the Debtor's Property pursuant to NLG's Foreclosure Judgment.  It is very clear that the sole purpose of this bankruptcy has been to delay and frustrate secured creditor NLG's efforts to foreclosure on its collateral; the Property.

41.    None of the filed disclosure statements and plans put forth even a remotely feasible plan of reorganization nor were they proposed in good faith as required by the Code. Quite frankly they were all proposed in bad faith.  The income to fund the plan is suspect at best and more accurately a blatant misrepresentation to the Court as detailed herein. The financial projections are hogwash and not supported by any document in the record.  This entire bankruptcy and the related adversary manifest the extreme bad faith of the Debtor and her counsel.

## CONCLUSION

42.    For the reasons explained above, the Court should deny confirmation of the Fourth Amended Plan and dismiss or convert or appoint a Chapter 11 Trustee in this case.

Dated:  January 10, 2018

Respectfully submitted,

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with

the Clerk of Court using the CM/ECF system on this 10th day of January, 2018.  I also certify

that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF

system to the parties on the attached service list.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

17

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com, rross@stearnsweaver.com; larrazola@stearnsweaver.com;
cgraver@stearnsweaver.com



**ORDERED in the Southern District of Florida on June 11, 2018.**

_____

A. Jay Cristol, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                          Case No: 16-10389 AJC
                                                Chapter 11
Liza Hazan
 Debtor.                    /

### ORDER CONFIRMING PLAN OF REORGANIZATION

THIS MATTER came before the Court on May 30, 2018 at 2:00 PM. upon Doc 563 Liza Hazan a/k/a Elizabeth Hazan's Fourth Amended Plan of Reorganization and Doc 562 Liza Hazan a/k/a Elizabeth Hazan's Fifth Amended Disclosure Statement both filed 11/15/17 proposed by (the "Debtor" or "Proponent") and Order Approving Amended Disclosure Statement and Setting Hearing on Confirmation of Plan entered 12/13/17 Doc 580.

In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i) *Certificate on Acceptance of Plan and Tabulation of Ballots Filed by Debtor Doc  681   ,* (the "Ballot Certificate") and (ii) *Confirmation Affidavit Filed by Debtor Doc 680,* (the "Confirmation Affidavit"). The Court has also: (i) reviewed and considered the entire record in this Chapter 11 Case, including the *Proponent's Disclosure Statement* and the Plan; (ii) considered the argument of counsel; (iii) considered the testimony of the Debtor as set forth in the Confirmation Affidavit which was proffered at the Confirmation Hearing without objection, and representations of counsel at the hearing, and (iv) considered the other evidence presented at the hearing.

The only creditors who previously objected to or voted against the plan were present, and announced that they were changing their votes to support the plan or had no objection.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure. Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises,* 256 B.R. 377, 385 n,2 (Bankr. N.J, 2000); *In re Antar,* 122 B,R, 788, 789 (Bankr. S.D. Fla. 1990).

A. The Court conducted a hearing to consider approval of the Disclosure Statement and Plan filed by the Debtor.

B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan. Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(I) and (b)(2)(L), 1334(a) and (b), the United States District Court's general Order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly), satisfies section 1123(a)(1) of the Bankruptcy Code;

G. Articles II through V  of the Plan specify any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfy section 1123(a)(2) and (3) of the Bankruptcy Code;

H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment, if applicable, and accordingly, satisfies section 1123(a)(4) of the Bankruptcy Code;

I. The Disclosure Statement Article III  sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code; the Plan will be funded through funds from the ongoing operation of the Debtor's properties and jobs;

J. Each of the Voting Classes have accepted the Plan in the requisite number of

2

ballots, and in the requisite dollar amount, as required pursuant to 11 U.S.C § 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly set forth the tabulation of votes, as required by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the Southern District of Florida;

L. The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Procedures Order;

M. The Ballot Certificate and evidence at the hearing reflects that all Classes have accepted or not rejected the Plan;

N. All other objections to confirmation were announced to be settled at the Confirmation Hearing;

O. The Plan complies with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the Proponent;

P. The Proponents of the Plan complied with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129;

Q. The Plan has been proposed and submitted to all Creditors and Interest Holders in good faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R. All payments made, or to be made, by the Debtor in connection with this Chapter 11 case or in connection with the Plan either have been approved by or are subject to the approval of the Bankruptcy Court, including applications for compensation and reimbursement of expenses and, therefore, the Plan satisfies the requirements of 11 U .S.C. § 1129(a)(4);

S. The Proponent of the Plan has disclosed the identity of the individual Reorganized Debtor, who will serve after the Confirmation Date and, therefore, the Plan satisfies the requirements of II U.S.C. § 1129(a)(5);

T. The Plan does not discriminate unfairly, is fair and equitable, and otherwise complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to each Class of Claims or Interests that are impaired under the Plan, including without limitation, creditors holding Unsecured Claims who will receive more on account of their Claims under this Plan, than they would receive in a chapter 7 liquidation;

U. The Plan and Disclosure Statement were accompanied by projections that support the financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11U.S.C. § 1129(a)(11) are satisfied;

V. The ongoing operation of the properties and incomes of Debtor will provide sufficient funds available for the payment in whole of: (i) Allowed Administrative Expense Claims (unclassified), which will be paid on the Effective Date; (ii) United States Trustee's Fees (unclassified); secured claims and a dividend to unsecured creditors.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS**:

1**.** The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129.

2. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All of the Terms and provisions of the Disclosure Statement and Plan are approved.

4. There are no allowed Administrative Expense Claims other than those of the Debtor's professionals and US Trustee fees. Administrative Expense Claims related to professional fees and costs shall be awarded by separate order of the Court.

5. Discharge. Because the Debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the Court may grant a discharge to the Debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and **(iii)** subparagraph (C) permits the court to discharge; and **(C)** the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the Debtor; and **(ii)** there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

6. As of the Effective Date all pre-petition property of the estate shall re-vest in the Reorganized Debtor.

7. Any judgment obtained in any court other than this Court is null and void as a determination of the individual liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 USC § 1141.

8.  All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived

9. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

10. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within ten (10) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a order by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

11. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and upon this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court approved local form.

12. The Reorganized Debtor shall pay all allowed claims at such time an in such amounts as provided for in the Plan.

13. The failure to reference or address all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, except as otherwise provided herein.

14. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacation of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

15. The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the

Plan, the Disclosure Statement, the Modification, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Orders and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). The Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

16. **All executory contracts and unexpired leases listed in Article VI of the Plan are deemed either assumed or rejected as indicated in the Plan as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as they deem appropriate in the exercise her business judgment without the need for a motion and hearing in this Court.**

17. The Bankruptcy Court shall retain jurisdiction:

(a) To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b) To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c) To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d) To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e) To determine the validity, extent and priority of all liens, if any, against property of the estate;

(f) To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

(g) To determine all objections to Administrative Claims;

(h) To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

(i) Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

(j) To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

(k) To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(l) To determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(m) To enforce any and all injunctions created pursuant to the terms of the Plan;

(n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(0) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

18. Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,

upon completion all payments required under the Plan to unsecured creditors.  Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Unsecured Creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns.  The Motion to Close shall certify that each of the above conditions have been met.

(c)     The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties.  The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)     During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the
treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e)     Upon the satisfaction of all payments required under the Plan to Unsecured Creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Unsecured Creditors.

(f)     Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Unsecured Creditors have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

###

Submitted by: David W. Langley who will serve copies to: all creditors and appearances.

7

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                            Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                  Chapter 11
_____/

**SECURED CREDITOR NLG, LLG'S
MOTION TO COMPEL TIMELY, LEGIBLE AND COMPLETE POST
CONFIRMATION QUARTERLY OPERATING REPORTS
AND COMPLIANCE GOING FORWARD**

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, in accordance with

Rule 2015 of the Federal Rules of Bankruptcy Procedure and the Chapter 11 Guidelines and

Reporting Requirements (revised January 8, 2018 and published by the United States

Department of Justice and the United States Trustee Region 21), moves to compel timely, legible

and complete post confirmation quarterly operating reports and compliance going forward in this

individual Chapter 11. In support, NLG states:

1.       This Court confirmed the Debtor's Plan on June 12, 2018. [*See* ECF No. 691].

2.       The last monthly operating report filed by the Debtor was for the reporting period

of June 2018.  The report was filed late on July 26, 2018.  The report also failed to attach the

Debtor's DIP bank account statement for her City National Bank account.  As such, the Debtor is

required to file an amended and complete monthly operating report for the June 2018.

3.       The debtor has also failed to file any post confirmation quarterly reports.  The

Court should compel the debtor to file the quarterly reports immediately and compel compliance

going forward.

4.       A review of the Debtor's monthly operating reports that the debtor has purchased

in excess of $100,000 worth of counter checks from the DIP account at BB&T bank.  Because

counter checks are specifically prohibited, the Court should compel the debtor to account for all the counter checks and/or return the money to the estate which was pilfered through the counter checks.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should compel timely, legible and complete quarterly reports for the third and fourth quarter of 2018, and thereafter; an amended monthly operating report, including debtor in possession bank statements for the June 2018 period and grant such other and further relief as the Court deems appropriate.

Dated March 19, 2019

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 19th day of March, 2019. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882

Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

### SERVICE LIST

***Served via CM/ECF***

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.

ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Daniel A. Bushell on behalf of Selective Advisors Group, LLC and Liza Hazan
dan@bushellappellatelaw.com

Kevin Christopher Gleason on behalf of Liza Hazan and Selective Advisors Group, LLC
KGPAECMF@aol.com



ORDERED in the Southern District of Florida on May 9, 2019.

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

In re:

LIZA HAZAN,                                        CASE NO. 16-10389-BKC-AJC
a/k/a ELIZABETH HAZAN                               CHAPTER 11

    Debtor.

_____/

**ORDER DENYING MOTION TO COMPEL POST CONFIRMATION QUARTERLY**
**OPERATING REPORT AND MOTION FOR SANCTIONS**

  THIS CAUSE came before the Court upon *Secured Creditor NLG, LLG's [sic] Motion to*
*Compel Timely, Legible and Complete Post Confirmation Quarterly Operating Reports And*
*Compliance Going Forward* (ECF 828) and upon Debtor's response in opposition, wherein she
requests sanctions against NLG for filing the motion to compel (ECF 835). Having reviewed the
motions, the Court finds no basis to require the filing of post-confirmation quarterly operating
reports in this case, where Debtor confirmed a Chapter 11 plan, which was not stayed, consummated

the plan, and obtained a discharge. The Court believes NLG has no standing to compel the Debtor to file such reports as it is not a creditor in this case, and the United States Trustee is not seeking to compel the filing of the operating reports. Accordingly, the Court finds no grounds to grant the relief requested.

The Court also does not believe that sanctions are warranted. Although the Debtor contends that this very same motion was already denied, the first filed motion was slightly different in that it requested monthly operating reports. Notwithstanding, the Court does not believe that sanctions are appropriate for defending the motion at a hearing set on various other multiple motions in this case. Accordingly, it is

ORDERED AND ADJUDGED that *Secured Creditor NLG, LLG's [sic] Motion to Compel Timely, Legible and Complete Post Confirmation Quarterly Operating Reports And Compliance Going Forward* (ECF 828) is DENIED. It is further

ORDERED AND ADJUDGED that Debtor's *Motion for Sanctions Against Non Creditor NLG, LLC and its Counsels Astrid Gabbe and Juan Ramirez Jr* (ECF 835) is DENIED.

### 

Copies furnished to:

Juan Ramirez, Esq.
Astrid Gabbe, Esq.
David Langley, Esq..
Daniel Bushell, Esq.
AUST
Clerk of U.S. Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN,                                    Chapter 11
            Debtor,
_____/

**LIZA HAZAN'S EXPEDITED MOTION FOR CONTEMPT, TO STRIKE LIS PENDENS
AND TO IMPOSE SANCTIONS ON CHRISTOPHER KOSACHUK AND
MOTION FOR ENTRY OF FINAL JUDGMENT AND FOR INJUNCTIVE RELIEF
And
REQUEST FOR EXPEDITED HEARING**

BASIS FOR REQUEST FOR EXPEDITED HEARING

**As more fully discussed in the attached Declarations of Liza Hazan and title
attorney Michael Simon, Ms. Hazan has a large payment coming due to Valencia
Estates Community Association on April 2, 2022. She has arranged for financing to
pay the assessment but cannot close on the financing due to the recently discovered
recording of a *lis pendens* by Chris Kosachuk which is the subject of this Motion.
The Debtor requests a hearing on Debtor's Motion prior to April 2, 2022.**

Reorganized and Discharged Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Hazan"),

through her undersigned counsel, moves for an order finding non-creditor Christopher Kosachuk,

("Kosachuk"), in further contempt of Court for again willfully violating this Court's orders,

determining the *lis pendens* filed by Kosachuk to be null and void, for injunctive relief, and

awarding sanctions, costs, attorney's fees, and other relief, and respectfully says:

1

## I.    **INTRODUCTION**

Kosachuk, NLG, LLC[1] and its attorney, Juan Ramirez, Jr. have repeatedly violated the orders of this Court, resulting in several previous sanctions orders.  Despite this Court's previous orders and warnings, Kosachuk has again recorded a *lis pendens* against Ms. Hazan's home.  Ms. Hazan once again requests sanctions of increasing severity in order to finally deter Kosachuk from continuing with his wrongful conduct.  Kosachuk and the related parties have been found by this Court to have violated numerous orders, including violations of the Order Granting in Part Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages and Punitive Damages [ECF NO. 780] **(the First Contempt Order)**, Order Confirming Plan of Reorganization [ECF NO. 691] **(the Confirmation Order)**, Order Granting Motion to Reopen Case to Approve Final Report and Enter Discharge to Reorganized Debtor [ECF NO. 766] **(the Discharge Order)**, the March 12, 2019 Order on Reorganized Discharged Debtor's Motion for Contempt and Sanctions **(the Second Contempt Order)** [ECF 823], the April 12, 2019 Order Granting in Part and Denying in Part Motion for Contempt and Sanctions and Setting Further Hearing [ECF 856**] (the Third Contempt Order)**, **(the Fourth Contempt Order)**, [ECF No. 932], the Order granting Hazan's Emergency Motion for Contempt [ECF No. 886], [ECF No. 902] **(the Fifth Contempt Order)**, Debtor's Expedited Motion for Contempt and to Impose Sanctions on NLG, Juan Ramirez Jr., Christopher Kosachuk and Motion for Entry of Final Judgment [ECF No. 926], [ECF No. 932], the Order Granting Debtor's Motions for contempt and Setting hearing on NLG LLC's Motion to Strike and for Sanctions [ECF No. 932] **(the Sixth Contempt Order)**, the Order Granting

---

[1] NLG is presently a debtor in an involuntary Chapter 7 bankruptcy action filed by Petitioning Creditor Chris Kosachuk, Case No. 21-11269-JKS, in the District of Delaware.

Debtor's Motion For Contempt and Sanctions For the filing of The Fifth Lis Pendens [ECF No. 995] **(the Seventh Contempt Order).**  The continuing violations, as more fully set forth below, include:

II.    **Kosachuk, in willful violation of this Court's orders, recorded a new (seventh) lis pendens on December 2, 2021 after NLG and its counsel Ramirez were warned not to record any additional lis pendens and were directed to dismiss, dissolve, and release all lis pendens filed.**

In complete defiance and willful violation of this Court's various Contempt Orders, Kosachuk filed a new lis pendens against Liza Hazan and her property on December 2, 2021. The seventh lis pendens is recorded at Book 32880 Pages 4069-4070 CFN 2021R0904549.  Attached as **Exhibit 1** is a true and correct copy.

The new lis pendens states that it:

relates to the lien based of NLG's mortgage recorded in the official records Book 25559 at Pages 4266-4272, CFN2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737-3742, CFN 20150812181 on the following property in Miami-Dade County, Florida: 6913 Valencia Drive, Fisher Island, FL 33109.

On October 31, 2017 this Court deemed the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 **Satisfied and Paid of Record** in the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238, which was upheld in both the District Court and in the Eleventh Circuit Court of Appeals [ECF No 1047] and [ECF No 1067].

The new lis pendens recorded by Kosachuk has further damaged Ms Hazan and her Fisher

3

Island property, slandering her title, diminishing the value of her property, making it impossible to sell or refinance her house or obtain a title insurance policy – efforts which are currently underway. See Declaration of Michael Simon attached as Exhibit 2 and Declaration of Liza Hazan attached as Exhibit 3.

As this Court has recognized, it can and should enforce its own orders. That is especially true in this case. If it was not clear before while various matters were on appeal, there can be no doubt now that Kosachuk has no claim and no standing, yet will continue to violate this Court's orders unless sufficiently punitive measures are imposed on him.

Under 28 U.S.C. §1334, this Court has jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11. A proceeding to enforce the discharge injunction and the Orders of this Court is within the bankruptcy court's jurisdiction. *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997).

### III. This Court has previously found that Kosachuk lacks standing in this case.

This Court previously found that "Chris Kosachuk, who has not filed a proof claim or otherwise participated in an individual capacity in Hazan's bankruptcy case, lacks standing to seek revocation. Pursuant to 11 U.S.C. §1109(b), only "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." A party in interest must have "a direct legal interest in the case" and may only "assert that interest with respect to any issue to which it pertains." *In re JMP-Newcor International, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (citations omitted). As Kosachuk has no claim against Hazan, he is unaffected by the confirmation of Hazan's plan. NLG also lacks standing regarding

confirmation of Hazan's plan because it holds no allowed claim. *See, e.g.*, *In re Flintkote Co.*, 526

B.R. 515, 520 (D. Del. 2014) (purported creditor lacked standing to challenge plan confirmation

"because all of its asserted claims were untimely or disallowed"); *In re Delta Air Lines, Inc.*, 374

B.R. 516 (Bankr. S.D.N.Y. 2007)." Case 18-01492-AJC Doc 35.

## IV.    Kosachuk's Violation of the Confirmation and Discharge Orders and Contempt Orders

In Paragraph 9 of the Court's June 12, 2018 Confirmation Order, the Court enjoined all

creditors from taking any action to collect any prepetition debt or to enforce any lien against the

debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing, or
> employing any action, process, or act to collect, recover, or offset
> any debts, or enforce any liens against the Debtor on account of any
> debt that existed as of the Petition Date.

[ECF 691 at 5].

In its December 7, 2018 Discharge Order, the Court found Hazan has been discharged of

all debts arising prior to entry of the Confirmation Order:

> The Reorganized Debtor is entitled to a discharge in accordance
> with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth
> Amended Plan and the Confirmation Order; thus, the Reorganized
> Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C.
> § 1141(d) from any debt that arose before the date of such
> confirmation and any debt of any kind specified in Section 502(g),
> 502(h) or 502(i) of Title 11 in accordance with the provisions of 11
> U.S.C. § 1141(d).

[ECF 766 at 11].

Section 524(a) of the Bankruptcy Code provides:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a

5

determination of the personal liability of the debtor with respect to any debt
discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not
discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an
action, the employment of process, or an act, to collect, recover or offset any
such debt as a personal liability of the debtor, whether or not discharge of such
debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action,
the employment of process, or an act, to collect or recover from, or offset against,
property of the debtor of the kind specified in section 541(a)(2) of this title that is
acquired after the commencement of the case, on account of any allowable
community claim, except a community claim that is excepted from discharge under
section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in
accordance with the provisions of sections 523© and 523(d) of this title, in a case
concerning the debtor's spouse commenced on the date of the filing of the petition in
the case concerning the debtor, whether or not discharge of the debt based on such
community claim is waived.

In violation of the injunction in the Confirmation Order as well as the Discharge Order,

Kosachuk has repeatedly engaged in actions to recover a prepetition debt against Hazan. On

December 7, 2018, this Court entered the First Contempt Order, warning NLG and its counsel "to

refrain from taking **any other action** in contravention of the Final Judgment on Counts I, II and III

entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June

12, 2018." ECF 780 at 9.

The Court made the following findings in its Order found at ECF 932: "The discharge order and

Order confirming Debtor's Chapter 11 plan enjoin NLG and Attorney Ramirez from commencing or

continuing action to collect, recover or offset the debt that this Court extinguished in these proceedings. The

injunctions imposed by the Confirmation Order and discharge promotes the fresh start policy of the

Bankruptcy Code. However, pursuit of NLG's extinguished and discharged liability is a violation of the

discharge injunction and Orders of this Court."

6

The Court further found that NLG's and Attorney Ramirez's actions in filing the Lis Pendens were an effort to collect a pre-petition claim that this Court determined was already extinguished and appear to be a collateral attack the Final Judgment. Kosachuk is now attempting to take the same wrongful action.

The Court also determined that the filing of the Third and Fourth Lis Pendens violated the injunctions provided by the Confirmation and Discharge Order and ordered them to be immediately dismissed, dissolved and released with prejudice. The Court concluded that NLG and Attorney Ramirez were in contempt of Court for filing the third and Fourth Lis Pendens in violation of the Confirmation Order and discharge injunction.

"Under Florida law, a Lis Pendens serves to provide inquiry notice to those interested in a particular tract of land as to the facts and issues involved in the suit or action concerned. The purpose of a Lis Pendens is to carry out the public policy that a plaintiff's action shall not be defeated by an alienation of the property during the course of the lawsuit. *In re Kodo Properties, Inc*. 63 B.R. 588 (EDNY 1986) citing *Mechanics Exchange Savings Bank v. Chesterfiel*d, 34 A.D.2d 111, 113, 309 N.Y.S.2d 548 (1970). NLG and Attorney Ramirez argued that the filing of the Third and Fourth Lis Pendens was not an attempt to collect, recover or offset the debt this Court previously ruled was extinguished or satisfied, but rather "merely ensures that a title search actually notices the pending appeal[2]. It not only protects potential buyers or lenders, but also the title examiner and malpractice insurance carrier." This Court was unpersuaded by such an argument. The Court found that the filing of the Lis Pendens at this late stage in the proceedings – years after judgment has been entered and not stayed, and while the judgment is on appeal – is not authorized by statute or otherwise. See, Florida Statute §48.23 (2019). The Court determined that neither NLG nor Chris Kosachuk have a lien

---

[2] On September 19, 2019 NLG's appeal of the Final Judgment was dismissed. Case 2018-cv-24272-SMITH. ECF No 132]. The Final Judgment entered by this Court was also upheld by the Eleventh Circuit Court.

on Debtor's property; the Court held that any alleged lien of NLG on Debtor's property was extinguished or

satisfied. That judgment has become final.  Kosachuk's filing of the seventh Lis Pendens is also an effort to

collect a pre-petition claim that this Court determined was already extinguished.

Ms. Hazan is respectfully requesting this Court enforce its previous contempt orders and:

a.  Find Kosachuk in contempt of Court;

b.  Determine that the seventh lis pendens is null and void;

c.  Enjoin Kosachuk from the further filing of any lis pendens or other impediments of title

against the subject property, or from taking any other action to impede Ms. Hazan's ability

to refinance or sell her home;

d.   Enter judgment against Chris Kosachuk for damages.

**V.      Standard for Injunctive Relief**

The requested injunction is well within the discretion of this Court.  To obtain an injunction,

the party seeking relief must establish that: "(1) irreparable injury will result if the injunction is

not granted, (2) there is no adequate remedy at law, (3) the party has a clear legal right to the

requested relief, and (4) the public interest will be served by the temporary injunction." *Provident*

*Management Corp. v. City of Treasure Island*, 796 So. 2d 481, 485 (Fla. 2001).

As stated in the attached Declarations, of Liza Hazan and Florida Attorney Michael W.

Simon, Ms Hazan will suffer imminent irreparable harm without the intervention of this Court.

Plaintiff has no adequate remedy at law and is in need of injunctive relief in order to prevent future

significant damage as a result of Kosachuk's wrongful actions.   The Reorganized and Discharged

Debtor maintains a substantial likelihood of success on the merits in that the Court has already

found that no lien exists in favor of NLG or the Kosachuck Group and that the continued filing of

lis pendens violates the discharge injunction and confirmation order.  No disservice is done to the public interest by the grant of this injunction.

**VI.    Conclusion**

The sanctions entered by the Court to date have been insufficient to deter the continuing violations of this Court's orders by Kosachuk.  Hazan requests sufficiently severe sanctions to prevent such further conduct.

WHEREFORE, Reorganized and Discharged Liza Hazan respectfully requests that the Court enter an order:

(1) Finding Chris Kosachuk in contempt of court and striking all improperly filed pleadings filed by Chris Kosachuk or his representatives, attorneys, agents;

(2) Directing Chris Kosachuk to immediately **dismiss, dissolve and release** with prejudice the newly recorded lis pendens recorded on December 2, 2021 CFN 2021R0904549 Book 32880 Pages 4069-4070;

(3) Permanently enjoining Kosachuk or his representatives, attorneys, agents from filing and recording a lis pendens against Liza Hazan aka Elizabeth Hazan's property on Fisher Island under any caption in any jurisdiction; or from taking any other action judicially or otherwise in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adversary Case 16-01439-AJC [ECF 238] or the Confirmation Order entered on June 12, 2018 [ECF 691], or the Discharge Order entered on December 7, 2019 [ECF No. 766];

(4) Deeming the lis pendens recorded on December 2, 2021 CFN 2021R0904549 Book 32880 Pages 4069-4070 and all other lis pendens filed by Chris Kosachuk, his representatives,

attorneys, agents null and void and of no effect;

(5) Awarding the following damages:

     a.   Compensatory damages, including damages for Liza Hazan's inability to refinance, sell or transfer her property, including all carrying costs since the recording of the lis pendens, plus damages for an egregious violation of the discharge injunction;

     b.   Hazan's reasonable attorney's fees and costs incurred in bringing this motion;

     c.   Punitive damages of four to ten times compensatory damages.

(6) Awarding such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served all parties of interest as specified on the attached service list on this 10th day of February, 2022.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:   954-356-0450
Facsimile:    954-356-0451
E-mail: dave@flalawyer.com
By:    /s/ David W. Langley
      David W. Langley, Esq.
      Florida Bar Number 348279

10

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association

khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will be electronically sent and mailed to:*


**Chris Kosachuk**

854 Pheasant Run Rd.
West Chester, PA 19382
chriskosachuk@gmail.com

# EXHIBIT 1



**CFN  2021R0904549**
OR BK 32880 Pgs 4069-4070 (2Pgs)
RECORDED 12/02/2021 14:06:40
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

**After recording return to:**
Chris Kosachuk
854 Pheasant Run Rd.
West Chester, PA 19382-8144
Tel. +1.305.490.5700
chriskosachuk@gmail.com

_____

Space above reserved for recording information

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**Bankruptcy Case Number: 21-bk-11269-JKS**
**Adversary Proceeding Case No.: 21-ap-51264-JKS**

**CHRIS KOSACHUK et. al.**

   **Plaintiffs,**

**v.**

**9197-5904 QUEBEC, INC. and**
**SELECTIVE  ADVISORS  GROUP,**
**LLC, A Delaware LLC**

   **Defendants.**
_____/

### NOTICE OF LIS PENDENS

**TO THE ABOVE STYLED DEFENDANTS AND ALL OTHERS TO**
**WHOM IT MAY CONCERN:**

OR BK 32880 PG 4070
LAST PAGE

**YOU ARE HEREBY NOTIFIED** of the pending bankruptcy and adversary proceeding in the above referenced cases which relates to the lien based of NLG's mortgage recorded in the Official Records Book 25559 at Pages 4266 – 4272, CFN 2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737 – 3742, CFN 20150812181 on the following property in Miami-Dade County, Florida:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County,

Physical Address: 6913 Valencia Drive, Fisher Island, FL 33109

including the buildings, appurtenances, and fixtures located thereon.

This Lis Pendens relates back to the original lis pendens recorded on December 23, 2011 in Book 27940 Pages 2791-2792 and CFN 2011R0864248.

CHRIS KOSACHUK
*Pro Se* PLAINTIFF
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

_____

Chris Kosachuk
*Pro Se Plaintiff*

Book32880/Page4070     CFN#20210904549                              Page 2 of 2

https://onlineservices.miami-dadeclerk.com/officialrecords/pdfjsviewer/web/viewer.html

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN,                                   Chapter 11

           Debtor,
_____/

**DECLARATION OF MICHAEL W. SIMON IN SUPPORT OF ELIZABETH HAZAN'S
MOTION TO STRIKE STRIKE LIS PENDENS AND TO IMPOSE SANCTIONS ON
CHRISTOPHER KOSACHUK AND
MOTION FOR ENTRY OF FINAL JUDGMENT AND FOR INJUNCTIVE RELIEF**

MICHAEL W. SIMON, being duly sworn first, deposes and says.

1.      I am an attorney at law licensed in the State of Florida.

2.      I have been hired by Ms. Elizabeth Hazan as the title agent and closing agent for the
refinancing of her residence located at 6913 Valencia Drive, Fisher Island Miami FL 33109, (the
"Property"). The proposed insured lender has advised that it has approved the financing and is
ready to close subject to its review and approval of insurable and marketable title reflected in the
title commitment requirements and exceptions.

3.      As the title agent, I have issued an Old Republic National Title Insurance Company, Title
Commitment No. 1221556. We are unable to insure the title to Ms. Hazan or her lender without
an exception to the newly discovered lis pendens filed by Chris Kosachuk as a pro se Plaintiff in
an action in Delaware ("lis pendens"). It is required that Ms. Hazan obtain the dismissal of Chris
Kosachuk's personal adversary complaint **with prejudice** and discharge of Lis Pendens recorded
in O.R. Book 32880, Page 4069, Public Records of Miami-Dade County, Florida, in that certain

1

Bankruptcy Case No. 21-11269-JKS and adversary proceeding case no. 21-51264-JKS in the United States Bankruptcy Court, District of Delaware. For involuntary dismissal, the appeal period must expire.

4.      Examination of title indicates that on October 31, 2017 this Court entered a Final Judgment deeming the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 **Satisfied and Paid of Record** in the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238, which Final judgment was upheld in both District Court and in the Eleventh Circuit court of Appeals [ECF No 1047] and [ECF No 1067].

5.      The new lis pendens purportedly "relates to the lien based of NLG's mortgage recorded in the official records Book 25559 at Pages 4266-4272, CFN2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737-3742, CFN 20150812181 on the following property in Miami-Dade County, Florida ..... 6913 Valencia Drive, Fisher Island, FL 33109. However, examination of title indicates that the Final Judgment entered on October 31, 2017 by this Court rendered that the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 are **Satisfied and Paid of Record**. See the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238. This Court's Final judgment was upheld in both District Court and in the Eleventh Circuit court of Appeals [ECF No 1047] and [ECF No 1067], and once the Eleventh Circuit Mandate was deemed final, we were prepared to issue title insurance without exception to the claims now alleged in Mr. Kosachuk's recently recorded lis pendens.

8.     The purported rights asserted in the Kosachuk lis pendens has prevented Old Republic Title Insurance Company from delivering insurable title to Ms. Hazan's new mortgage lender and has prevented Ms. Hazan from refinancing the Property and satisfying other financial obligations for the refinance proceeds. Time is of the essence to remove the lis pendens and dismiss the Kosachuk adversary complaint with Prejudice.

This Declaration is made and given by the undersigned and the undersigned declares that he has read the foregoing Declaration and that the facts stated in it are true and correct.

_____

MICHAEL W. SIMON.

SWORN TO AND SUBSCRIBED before me by ____ personal appearance or ____ on line notary by Michael W. Simon on this 8th day of March 2022.

_____
Notary Public Signature

(SEAL)

NOTARY PUBLIC
STATE OF FLORIDA
MAUREEN T. DOCKERTY
Commission # HH 105629
Expires March 17, 2025
Bonded Thru Budget Notary Services

_____
Print Name
State of _____ at Large
Commission No.: _____
My Commission expires: _____

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN,                                    Chapter 11


          Debtor,
_____/

**DECLARATION OF ELIZABETH HAZAN IN SUPPORT OF ELIZABETH HAZAN'S
MOTION TO STRIKE STRIKE LIS PENDENS AND TO IMPOSE SANCTIONS ON
CHRISTOPHER KOSACHUK AND
MOTION FOR ENTRY OF FINAL JUDGMENT AND FOR INJUNCTIVE RELIEF**

LIZA HAZAN AKA ELIZABETH HAZAN, being duly sworn first, deposes and says.

1.   My name is LIZA HAZAN  AKA ELIZABETH HAZAN and I am the Reorganized and

Discharged Debtor in this case.

2. I am the owner of the residence located at 6913 Valencia Drive, Fisher Island, FL 33109.

3. I am currently at the final stages of refinancing my Fisher Island property with a lender.

4. The lender has approved the refinancing of my house and I hired Florida Attorney Michael

Simon to issue title Commitment.

5. Attorney Michael Simon just discovered a lis pendens filed by non creditor Chris kosachuk

who was found in contempt by this Court along NLG and NLG's attorney Juan Ramirez, Jr.

6. This Court has already determined that Chris kosachuk lacks standing in this case.

7. This Court has previously found that "Chris Kosachuk, who has not filed a proof claim or

otherwise participated in an individual capacity in Hazan's bankruptcy case, lacks standing to seek

revocation. Pursuant to 11 U.S.C. §1109(b), only "[a] party in interest, including the debtor,the

trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in acase under this chapter." A party in interest must have "a direct legal interest in the case" and may only "assert that interest with respect to any issue to which it pertains." *In re JMP-Newcor International, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (citations omitted). As Kosachuk has no claim against Hazan, he is unaffected by the confirmation of Hazan's plan. NLG also lacks standing regarding confirmation of Hazan's plan because it holds no allowed claim. *See, e.g., In re Flintkote Co.*, 526 B.R. 515, 520 (D. Del. 2014) (purported creditor lacked standing to challenge plan confirmation "because all of its asserted claims were untimely or disallowed"); *In re Delta Air Lines, Inc.*, 374 B.R. 516 (Bankr. S.D.N.Y. 2007)." Case 18-01492-AJC Doc 35.

6. I need to use the refinancing proceeds to pay off the various liens in the house. I have an upcoming payment due to Valencia Estates Community Association, that becomes due on April 2, 2022.

7. Michael Simon needs to issue the title insurance for the refinancing of my residence. My lender has approved the refinancing of my house located at 6913 Valencia Drive, Fisher Island Miami FL 33109 and is ready to close.

3. Lawyer Michael Simon is unable to issue the title policy insurance at this time because of the newly discovered lis pendens filed by Chris Kosachuk as a pro se Plaintiff in an action in Delaware ("lis pendens").

4. I am urging this Court to Release, Discharge and Dissolve the lis pendens filed by non creditor Chris Kosachuk who has no standing so that Michael Simon is able to write the Title Commitment policy and I will be able to close on my refinancing and also be able to sell my house.

5. On October 31, 2017 this Court entered a Final Judgment deeming the Gordo foreclosure

judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 **Satisfied and Paid of Record** in the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238, which Final judgment was upheld in both District Court and in the Eleventh Circuit court of Appeals [ECF No 1047] and [ECF No 1067].

6. Chris Kosachuk has further damaged me and my Fisher Island property, slandering my title, diminishing the value of my property, making it impossible to sell or refinance my house or obtain a title insurance policy.

7. Kosachuk has rendered my title impossible to insure or market.

8. The new lis pendens purportedly "relates to the lien based of NLG's mortgage recorded in the official records Book 25559 at Pages 4266-4272, CFN2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737-3742, CFN 20150812181 on the following property in Miami-Dade County, Florida ..... 6913 Valencia Drive, Fisher Island, FL 33109. However, the Final Judgment entered on October 31, 2017 by this Court has ruled that the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 are **Satisfied and Paid of Record**. See the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238, which Final judgment was upheld in both District Court and in the Eleventh Circuit court of Appeals [ECF No 1047] and [ECF No 1067].

9. I am incurring daily expenses, assessments from the two associations Valencia Estates Community Association, Inc, and Fisher Island Community Association, Inc. and Real estate Taxes. I negotiated settlement with the various lienholders and I need to close on my refinancing

as soon as possible without any further delay.

10. Under 28 U.S.C. §1334, this Court has jurisdiction of civil proceedings arising under title 11 or arising in or related to cases under title 11. A proceeding to enforce the discharge injunction and the Orders of this Court is within the bankruptcy court's jurisdiction. Matter of Nat'l Gypsum Co., 118 F.3d 1056 (5th Cir. 1997).

11. This Court has previously found that "Chris Kosachuk, who has not filed a proof claim or otherwise participated in an individual capacity in Hazan's bankruptcy case, lacks standing Liza Hazan aka Elizabeth Hazan Pursuant to 11 U.S.C. §1109(b), only "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in acase under this chapter." A party in interest must have "a direct legal interest in the case" and may only "assert that interest with respect to any issue to which it pertains."

12. Non creditor Chris Kosachuk continues to violate this Court's orders, Final Judgment and permanent injunctions, of the Confirmation Order and Discharge Orders.

13. I am a Florida licenced realtor and I am actively marketing my house and am offering it for sale and I have a few serious potential buyers and I need this lis pendens removed urgently.



Liza Hazan AKA Elizabeth Hazan
DATE: MARCH 8, 2022

ORDERED in the Southern District of Florida on April 1, 2022



*A. Jay Cristol*

_____
**A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

In re:

LIZA HAZAN,                                    CASE NO. 16-10389-AJC
a/k/a ELIZABETH HAZAN

        Debtor.                              CHAPTER 11
_____/

### ORDER GRANTING LIZA HAZAN'S MOTION FOR CONTEMPT, TO STRIKE LIS PENDENS AND IMPOSE SANCTIONS AND FOR ENTRY OF FINAL JUDGMENT AND INJUNCTIVE RELIEF

THIS CAUSE came before the Court for hearing on March 30, 2022 upon the Reorganized

and Discharged Debtor, Liza Hazan's Motion for Contempt, to Strike Lis Pendens and to Impose

Sanctions on Christopher Kosachuk and for Entry of Final Judgment and for Injunctive Relief

(ECF 1068).[1] Hazan asserts Kosachuk willfully violated the injunction against the collection of

debts pursuant to 11 U.S.C. §524(a)(2) and the injunction contained in the Confirmation Order by

filing a seventh lis pendens on Hazan's homestead property recorded on December 2, 2021 with

_____
[1] Mr. Kosachuk appeared at the hearing and argued he was not properly served with the motion. Debtor's counsel insisted he was. Mr. Kosachuk had obviously reviewed the motion prior to the hearing because he was able to respond to the allegations and argued his case at length. He was also given additional time to prepare and submit a post-hearing brief, which he did. Under the circumstances, the Court finds notice is sufficient and due process is met.

the Miami-Dade County Clerk of Courts at Book 32880 Pages 4069-4070 CFN.

After consideration of the parties' arguments at the hearing and review of their respective post-hearing submissions, the Court believes that the filing of the seventh lis pendens at this late stage in the proceedings violates the injunctions provided by the Confirmation and Discharge Orders. Mr. Kosachuk filed the lis pendens after the Final Judgment on Counts I, II and III [adjudicating Mr. Kosachuk's rights in and to Debtor's homestead property and finding no claim thereto] was entered on November 1, 2017 in Adv. No. 16-01439-BKC-AJC-A [ECF 238] and was not stayed, and after that final judgment was subsequently upheld by the District Court and the Eleventh Circuit Court of Appeals (which orders on appeal have become final). Even after it was determined he had no interest in Debtor's property, Mr. Kosachuk persisted in filing the seventh lis pendens.

Mr. Kosachuk argues that the seventh lis pendens is already dissolved by operation of law as a result of the dismissal of the Delaware Adversary Proceeding referenced in the seventh lis pendens. He asserts no further action is needed and the motion should be denied as moot. Mr. Kosachuk relies on Fla.R.Civ.P. 1.420(f) which states:

**(f) Effect on Lis Pendens.** If a notice of lis pendens has been filed in connection with a claim for affirmative relief that is dismissed under this rule, the notice of lis pendens connected with the dismissed claim is automatically dissolved at the same time. The notice, stipulation, or order shall be recorded.

Mr. Kosachuk contends that, because all parties agreed that the underlying Delaware Adversary Proceeding was dismissed, so too was the lis pendens. On the other hand, Debtor's title attorney, Michael Simon, who filed a declaration of record, states that an order discharging the seventh lis pendens with prejudice is required before Debtor can proceed with a pending real estate transaction involving her property. Ms. Hazan's Declaration, attached to her motion, states that a significant payment is due the homeowner's association by April 2, 2022, and that the pending

transaction is needed to satisfy that obligation.

The Court believes that whether the seventh lis pendens is automatically dissolved or whether further steps are necessary to dissolve the lis pendens of record to allow the Debtor to complete the pending real estate transaction to pay her homeowner's association, all parties agree that the seventh lis pendens is of no force and effect whatsoever. Thus, as there is no dispute as to the dissolution of the seventh lis pendens, the Court will enter this Order specifically and unambiguously dissolving the lis pendens with prejudice. Additionally, because Mr. Kosachuk has been finally determined to have no further claim to Debtor's homestead property, yet he has filed a seventh lis pendens on Debtor's property based on an extinguished and satisfied claim, the Court believes an injunction is appropriate.

Upon consideration of the record, the Court determines that the filing of the seventh lis pendens violates this Court's Confirmation and Discharge Orders. Accordingly, it is

ORDERED AND ADJUDGED that the Discharged Debtor Liza Hazan's Motion to Strike Lis Pendens and to Impose Sanctions on Christopher Kosachuk and for Entry of Final Judgment and for Injunctive Relief (ECF 1068) is GRANTED as follows:

1. The seventh lis pendens recorded on December 2, 2021 with the Miami-Dade County Clerk of Courts at Book 32880 Pages 4069-4070 CFN 2021R0904549 is DISSOLVED, DISCHARGED, AND RELEASED, with prejudice, and deemed null and void. The Debtor and her counsel may take all action necessary to fully and finally dissolve, discharge, and release with prejudice the seventh lis pendens, including recording this Order.

2. Having determined that Chris Kosachuk is in contempt of Court for filing the seventh lis pendens in violation of the Confirmation Order and discharge injunction, CHRIS KOSACHUK, his representatives, agents and assigns are hereupon ENJOINED from filing and

recording any further lis pendens or other notices against Liza Hazan aka Elizabeth Hazan's property located at 6913 Valencia Drive, Miami FL 33109 on Fisher Island under any caption in any jurisdiction, or from taking any other action in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439-BKC-AJC-A [ECF 238], and long since affirmed on appeal, or the Confirmation Order entered on June 12, 2018 [ECF 691], or the Discharge Order entered on December 7, 2019 [ECF 766].

3. Other than the injunction imposed herein, the Court declines to impose any monetary sanctions on Mr. Kosachuk for his contempt in this instance; however, the Court cautions Mr. Kosachuk that any future violations of this Court's Orders, including the injunction contained herein, may incur extraordinary sanctions to coerce compliance in the face of contempt, including monetary sanctions and incarceration.

###

Copies to:

Christopher Kosachuk
David Langley, Esq.

Attorney Langley shall immediately serve a conformed copy of this Order upon all interested parties and file a certificate of service of same with the Court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED-USBC, FLS-MIA
'22 APR 12 PM 2:48

In re                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                          Chapter 11
_____/

## CHRIS KOSACHUK'S OBJECTION TO ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR CONTEMPT [ECF NO. 1073] AND REQUEST FOR DISTRICT COURT REVIEW

Chris Kosachuk, Jr., *pro se* ("Movant"), pursuant to Rule 9033(b) of the Federal Rules of Bankruptcy Procedure, hereby files this Objection to the Order ("the Order") [ECF No. 1073] Granting Debtor's Emergency Motion for Contempt and To Impose Sanctions ("the Motion") [ECF No. 1068].

This matter was heard before the Bankruptcy Court on March 30, 2022, pursuant an unserved Expedited Motion for Sanctions [ECF 1068] and to an Amended Notice of Hearing [ECF No. 1071]. This Court heard argument from Attorney David Langley and Chris Kosachuk, *pro se.* The Court having reviewed the file, having heard argument of counsel and Mr. Kosachuk, and otherwise being fully advised, "determined that Chris Kosachuk is in contempt of court for filing the seventh lis pendens in violation of the Confirmation Order and discharge injunction". [*See* ECF No. 1073 and attached hereto as Exhibit 1]. Pursuant to Federal Bankruptcy Rule 9033(b), Mr. Kosachuk objects to the Order in its entirety and requests review by the District Court.

First and foremost, the Motion was never served on Movant. The rule requires the Motion to be served in accordance with Rule 9014(b) which reads: "The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004 and within the time determined under Rule 9006(d)." Mr. Langley never served the Motion, never filed an affidavit

of service because he knows that he failed to serve the Motion. Without service of the Motion the Bankruptcy Court lacked jurisdiction over Mr. Kosachuk. Had the motion been properly served, Mr. Kosachuk would have hired counsel to represent him at the hearing and filed opposition.

The Order then takes issue with a lis pendens filed by Movant. The Order incorrectly finds that Movant filed seven lis pendens when in fact he filed only one. [*See* ECF No. 1068-1]. There is no evidence in the record that Mr. Kosachuk filed more than one lis pendens. There are several lis pendens on the property right now because the debtor has two pending foreclosure actions, one with JP Morgan Chase Bank, attached as Exhibit 2 and another with Valencia Estates, attached as Exhibit 3.

The Order then finds that the Final Judgment on Counts I, II and III "adjudicate[ed] Mr. Kosachuk's rights in and to the Debtor's homestead property." This conclusion is impossible because all allegations against Mr. Kosachuk individually were dismissed in the adversary proceeding and there is no judgment adjudicating his rights. The bankruptcy court is seems to be piercing the corporate veil without any of the required allegations or findings.

The bankruptcy court fails to recognize that the void $5 million New York Judgment by Confession that it enforced against NLG's Final Judgment of Foreclosure is still subject to attack because there is no statute of limitations on challenging a void judgment. In fact, the New York Court vacated it *nunc pro tunc*, only to reverse course and compound the litigation. The New York Court correctly determined the collusive nature of the Judgment by Confession in its order, which is attached hereto as Exhibit 4.

The Order then accepts at face value that the Debtor had to make a significant payment to the Valencia Estates Homeowners' association on April 2, 2022. The debtor in fact failed to make this alleged payment and Valencia Estates filed a foreclosure, see Exhibit 3.

The Order then enjoined Movant from filing any lis pendens without any of the required showing to obtain an injunction.

Movant just filed a Motion to Compel the Post Confirmation Operating Reports which this debtor has never filed. These operating reports will prove that the debtor has defaulted on almost all of her plan payments there rendering the Confirmation Order and Discharge Order unenforceable.

At the hearing the bankruptcy court asked for proposed orders and gave the parties less than 24 hour to submit them. Attached hereto as Exhibit 5 is Movant's proposed order. Opposing counsel never provided Movant a copy of his proposed order.

Movant adopts and incorporates by reference his proposed order as if fully re-written herein.

**WHEREFORE**, for the reasons set forth above, Mr. Kosachuk respectfully requests that the Court sustain his Objection to the Order ("the Order") [ECF No. 1073] Granting Debtor's Emergency Motion for Contempt and To Impose Sanctions ("the Motion") [ECF No. 1068].

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court on this 12th day of April, 2022. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail or via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

**Chris Kosachuk**
*Pro Se Movant*
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## SERVICE LIST

**Via Email and/or ECF**

All parties of record

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Steven D. Schneiderman, Esq.
Trial Attorney
United States Department Of Justice
Office of the United States Trustee
51 S.W. First Ave., Suite 1204
Miami, Florida 33130
Steven.D.Schneiderman@usdoj.gov

Adisley M. Cortez-Rodriguez
Trial Attorney
United States Department Of Justice
Office of the United States Trustee
51 S.W. First Ave., Suite 1204
Miami, Florida 33130
Adisley.M.Cortez-Rodriguez@usdoj.gov

# EXHIBIT 1

ORDERED in the Southern District of Florida on _April 11, 2022_



a Jay Cristol

**A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

In re:

LIZA HAZAN,                                    CASE NO. 16-10389-AJC
a/k/a ELIZABETH HAZAN

            Debtor.                            CHAPTER 11

_____/

## ORDER GRANTING LIZA HAZAN'S MOTION FOR CONTEMPT, TO STRIKE LIS PENDENS AND IMPOSE SANCTIONS AND FOR ENTRY OF FINAL JUDGMENT AND INJUNCTIVE RELIEF

THIS CAUSE came before the Court for hearing on March 30, 2022 upon the Reorganized

and Discharged Debtor, Liza Hazan's Motion for Contempt, to Strike Lis Pendens and to Impose

Sanctions on Christopher Kosachuk and for Entry of Final Judgment and for Injunctive Relief

(ECF 1068).[1] Hazan asserts Kosachuk willfully violated the injunction against the collection of

debts pursuant to 11 U.S.C. §524(a)(2) and the injunction contained in the Confirmation Order by

filing a seventh lis pendens on Hazan's homestead property recorded on December 2, 2021 with

---

[1] Mr. Kosachuk appeared at the hearing and argued he was not properly served with the motion. Debtor's counsel insisted he was. Mr. Kosachuk had obviously reviewed the motion prior to the hearing because he was able to respond to the allegations and argued his case at length. He was also given additional time to prepare and submit a post-hearing brief, which he did. Under the circumstances, the Court finds notice is sufficient and due process is met.

the Miami-Dade County Clerk of Courts at Book 32880 Pages 4069-4070 CFN.

After consideration of the parties' arguments at the hearing and review of their respective post-hearing submissions, the Court believes that the filing of the seventh lis pendens at this late stage in the proceedings violates the injunctions provided by the Confirmation and Discharge Orders. Mr. Kosachuk filed the lis pendens after the Final Judgment on Counts I, II and III [adjudicating Mr. Kosachuk's rights in and to Debtor's homestead property and finding no claim thereto] was entered on November 1, 2017 in Adv. No. 16-01439-BKC-AJC-A [ECF 238] and was not stayed, and after that final judgment was subsequently upheld by the District Court and the Eleventh Circuit Court of Appeals (which orders on appeal have become final). Even after it was determined he had no interest in Debtor's property, Mr. Kosachuk persisted in filing the seventh lis pendens.

Mr. Kosachuk argues that the seventh lis pendens is already dissolved by operation of law as a result of the dismissal of the Delaware Adversary Proceeding referenced in the seventh lis pendens. He asserts no further action is needed and the motion should be denied as moot. Mr. Kosachuk relies on Fla.R.Civ.P. 1.420(f) which states:

**(f) Effect on Lis Pendens.** If a notice of lis pendens has been filed in connection with a claim for affirmative relief that is dismissed under this rule, the notice of lis pendens connected with the dismissed claim is automatically dissolved at the same time. The notice, stipulation, or order shall be recorded.

Mr. Kosachuk contends that, because all parties agreed that the underlying Delaware Adversary Proceeding was dismissed, so too was the lis pendens. On the other hand, Debtor's title attorney, Michael Simon, who filed a declaration of record, states that an order discharging the seventh lis pendens with prejudice is required before Debtor can proceed with a pending real estate transaction involving her property. Ms. Hazan's Declaration, attached to her motion, states that a significant payment is due the homeowner's association by April 2, 2022, and that the pending

transaction is needed to satisfy that obligation.

The Court believes that whether the seventh lis pendens is automatically dissolved or whether further steps are necessary to dissolve the lis pendens of record to allow the Debtor to complete the pending real estate transaction to pay her homeowner's association, all parties agree that the seventh lis pendens is of no force and effect whatsoever. Thus, as there is no dispute as to the dissolution of the seventh lis pendens, the Court will enter this Order specifically and unambiguously dissolving the lis pendens with prejudice. Additionally, because Mr. Kosachuk has been finally determined to have no further claim to Debtor's homestead property, yet he has filed a seventh lis pendens on Debtor's property based on an extinguished and satisfied claim, the Court believes an injunction is appropriate.

Upon consideration of the record, the Court determines that the filing of the seventh lis pendens violates this Court's Confirmation and Discharge Orders. Accordingly, it is

ORDERED AND ADJUDGED that the Discharged Debtor Liza Hazan's Motion to Strike Lis Pendens and to Impose Sanctions on Christopher Kosachuk and for Entry of Final Judgment and for Injunctive Relief (ECF 1068) is GRANTED as follows:

1. The seventh lis pendens recorded on December 2, 2021 with the Miami-Dade County Clerk of Courts at Book 32880 Pages 4069-4070 CFN 2021R0904549 is DISSOLVED, DISCHARGED, AND RELEASED, with prejudice, and deemed null and void. The Debtor and her counsel may take all action necessary to fully and finally dissolve, discharge, and release with prejudice the seventh lis pendens, including recording this Order.

2. Having determined that Chris Kosachuk is in contempt of Court for filing the seventh lis pendens in violation of the Confirmation Order and discharge injunction, CHRIS KOSACHUK, his representatives, agents and assigns are hereupon ENJOINED from filing and

recording any further lis pendens or other notices against Liza Hazan aka Elizabeth Hazan's

property located at 6913 Valencia Drive, Miami FL 33109 on Fisher Island under any caption in any

jurisdiction, or from taking any other action in contravention of the Final Judgment on Counts

I, II and III entered on November 1, 2017 in Adv. No. 16-01439-BKC-AJC-A [ECF 238], and

long since affirmed on appeal, or the Confirmation Order entered on June 12, 2018 [ECF 691],

or the Discharge Order entered on December 7, 2019 [ECF 766].

    3. Other than the injunction imposed herein, the Court declines to impose any monetary

sanctions on Mr. Kosachuk for his contempt in this instance; however, the Court cautions Mr.

Kosachuk that any future violations of this Court's Orders, including the injunction contained

herein, may incur extraordinary sanctions to coerce compliance in the face of contempt,

including monetary sanctions and incarceration.

###

Copies to:

Christopher Kosachuk
David Langley, Esq.

Attorney Langley shall immediately serve a conformed copy of this Order upon all
interested parties and file a certificate of service of same with the Court.

# EXHIBIT 2

_space above reserved for recording information_

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

| | |
|---|---|
| JPMorgan Chase Bank, National Association, successor in interest by purchase from the FDIC as Receiver of Washington Mutual Bank F/K/A Washington Mutual Bank, FA<br>Plaintiff,<br>-vs.-<br>Elizabeth Hazan a/k/a Liza Hazan; Unknown Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG, LLC; 6913 Valencia, LLC; Western National Life Insurance Company f/k/a AIG Annuity Insurance Company; Fisher Island Community Association, Inc.; Valencia Estates Homeowners' Association, Inc.; Unknown Parties in Possession #1, If living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants; Unknown Parties in Possession #2, If living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants<br>Defendant(s). | Case #: 13-2013-CA-025902<br><br>DIVISION: 02 |

**NOTICE OF LIS PENDENS**

TO:    THE ABOVE NAMED DEFENDANT(S) AND ALL OTHERS WHOM IT MAY CONCERN:

YOU ARE HEREBY NOTIFIED that suit was instituted by the above-named Plaintiff against the above-named Defendant(s), in the above styled cause, involving the following described property, situated, lying and being in Miami-Dade County, Florida, to-wit:

LOT 7, BLOCK 2, LINDISFARNE ON FISHER ISLAND SECTION 10, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 157, PAGE 64, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Relief sought as to such property is for foreclosure of mortgage held by Plaintiff against the premises and recorded in Official Records Book 25450, Page 2835 of the Public Records of Miami-Dade County, Florida.

YOU will, therefore, please govern yourselves accordingly.

DATED: Aug, 2 , 2013

## *Pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), Plaintiff's counsel hereby designates its primary email address for the purposes of email service as: SFGBocaService@logs.com*

SHAPIRO, FISHMAN & GACHÉ, LLP
Attorneys for Plaintiff
2424 North Federal Highway, Ste 360
Boca Raton, Florida 33431
Telephone: (561) 998-6700
Fax: (561) 998-6707
Email: lewatson@logs.com

By: _____
Lee Andrew Watson, Esq
FL Bar # 356750       **LARA DISKIN**
                      **FL BAR #43811**

Pursuant to the Fair Debt Collections Practices Act, you are advised that this office may be deemed a debt collector and any information obtained may be used for that purpose.

11-238739 FC01 W50

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

JPMorgan Chase Bank, National Association,
successor in interest by purchase from the FDIC
as Receiver of Washington Mutual Bank F/K/A
Washington Mutual Bank, FA

          Plaintiff,

-vs.-

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan;
NLG, LLC; 6913 Valencia, LLC; Western
National Life Insurance Company f/k/a AIG
Annuity Insurance Company; Fisher Island
Community Association, Inc.; Valencia Estates
Homeowners' Association, Inc.; Unknown
Parties in Possession #1, If living, and all
Unknown Parties claiming by, through, under
and against the above named Defendant(s) who
are not known to be dead or alive, whether said
Unknown Parties may claim an interest as
Spouse, Heirs, Devisees, Grantees, or Other
Claimants; Unknown Parties in Possession #2,
If living, and all Unknown Parties claiming by,
through, under and against the above named
Defendant(s) who are not known to be dead or
alive, whether said Unknown Parties may claim
an interest as Spouse, Heirs, Devisees,
Grantees, or Other Claimants

          Defendant(s).

Case #: 13-2013-CA-025902

DIVISION: 02

## VERIFIED COMPLAINT TO FORECLOSE MORTGAGE

Plaintiff, **JPMorgan Chase Bank, National Association, successor in interest by purchase**

from the FDIC as Receiver of Washington Mutual Bank F/K/A Washington Mutual Bank,

FA, sues the Defendants and states:

1. This is an action to foreclose a mortgage on real property located in Miami-Dade County, Florida, and by reason thereof the venue for this matter is in Miami-Dade County, Florida.

2. Borrower(s) Elizabeth Hazan executed and delivered a Promissory Note ("Note") dated March 7, 2007 and Elizabeth Hazan executed a Mortgage ("Mortgage") dated March 7, 2007 securing payment of the Note to the payee named thereon. The Mortgage was recorded in Official Records Book 25450, Page 2835, of the Public Records of Miami-Dade County, Florida, and mortgaged the property described in the mortgage then owned by and in possession of the mortgagor(s). True and correct copies of said Note and Mortgage, are attached hereto as Exhibit "A" and Exhibit "B" respectively.

3. The parties subsequently modified the aforementioned loan documents. A copy of the Loan Modification is attached hereto as Exhibit "C".

4. The Defendant, Elizabeth Hazan, executed the Loan Modification.

5. Plaintiff is entitled to enforce the Note as a holder in possession and to foreclose the Mortgage securing the Note.

6. The Mortgage of the Plaintiff is a purchase money mortgage being a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagee or the mortgagee's predecessors in interest.

7. The Defendant, Elizabeth Hazan a/k/a Liza Hazan, is the current owner of the real property which is the subject of the Mortgage.

8. All conditions precedent to the acceleration of the Note and Mortgage and the filing of the instant foreclosure complaint have been fulfilled.

9. There has been a default in the payment of the amounts due under the Note and Mortgage in that the payment due for August 1, 2011 and all subsequent payments have not been made.

10. Plaintiff declares the full amount payable under the Note and Mortgage to be due and payable.

11. Defendant who may be held personally liable for a deficiency, if any, is the notemaker, Elizabeth Hazan, unless any of such Defendant have been discharged in bankruptcy in which event no deficiency is or will be sought.

12. There is now due and owing the principal sum of $4,282,432.36 accruing interest pursuant to the terms of the aforementioned loan documents and together with all sums that may be due for taxes, insurance, escrow advances, and expenses and costs of suit including but not limited to filing fees, recording fees, title search and examination fees, fees due for service of process and such other costs as may be allowed by the court.

13. Plaintiff is obligated to pay Plaintiff's attorney a reasonable fee for their services and seeks an award of attorney's fees.

14. That the Defendant, Unknown Spouse of Elizabeth Hazan a/k/a Liza Hazan, might have some claim or demand in the subject property by virtue of spousal homestead interest, if any, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

15. That the Defendant, NLG, LLC, might have some claim or demand in the subject property by virtue of a Mortgage in the amount of $1,275,000.00, filed April 24, 2007, in Official Records Book 25559, Page 4266, and by virtue of a Judgment filed in Official Records

Book 26406, Page 3259, by virtue of a Notice filed in Official Records Book 26585, Page 3280, by virtue of an Order filed in Official Records Book 26705, Page 3719, by virtue of a Notice filed in Official Records Book 27001, Page 3016, by virtue of a Lis Pendens filed in Official Records Book 28409, Page 2079, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

16. That the Defendant, 6913 Valencia, LLC, might have some claim or demand in the subject property by virtue of a Mortgage in the amount of $2,000,000.00, filed March 14, 2012, in Official Records Book 28034, Page 4869, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

17. That the Defendant, Western National Life Insurance Company f/k/a AIG Annuity Insurance Company, might have some claim or demand in the subject property by virtue of a UCC Financing Statement, filed in Official Records Book 24865, Page 2970, and by virtue of a UCC Financing Statement filed in Official Records Book 27701, Page 4489, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

18. That the Defendant, Fisher Island Community Association, Inc., might have some claim or demand in the subject property by virtue of a Lien, filed in Official Records Book

26070, Page 3787, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

19. That the Defendant, Valencia Estates Homeowners' Association, Inc., might have some claim or demand in the subject property by virtue of a Lien, filed in Official Records Book 26641, Page 3090, and by virtue of a Lien filed in Official Records Book 27219, Page 2764, by virtue of a Lien filed in Official Records Book 27699, Page 182, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

20. That the Defendant, Unknown Parties in Possession #1, if living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants might have some claim or demand in the subject real property by virtue of possession, whether by tenancy from the record title holder or mere possession only, however, any such claim or demand is inferior to the lien of the Mortgage.

21. That the Defendant, Unknown Parties in Possession #2, if living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants might have some claim or demand in the subject

real property by virtue of possession, whether by tenancy from the record title holder or mere
possession only, however, any such claim or demand is inferior to the lien of the Mortgage.

WHEREFORE, the Plaintiff respectfully requests that the court enter a Final Judgment:
(a) enumerating all amounts the court determines due to Plaintiff pursuant to said Note and
Mortgage, (b) ordering the Clerk of the Court to sell the subject property to satisfy the amount
due Plaintiff, in whole or in part; (c) adjudging that the right, title and interest of any party
claiming by, through, under or against any Defendant named herein be deemed inferior and
subordinate to the Plaintiff's Mortgage lien and be forever barred and foreclosed; (d) retaining
jurisdiction of the court in this action to make any and all further orders and judgments as may be
necessary and proper, including issuance of a writ of possession and the entry of a deficiency,
when and if such deficiency is sought if the parties liable under the Note have not been
discharged in bankruptcy (however no deficiency will be sought if the parties liable under the
Note were subject to an order allowing Plaintiff or its predecessors-in-interest only in rem relief

(This space intentionally left blank.)

# EXHIBIT 3

CFN: 20220260391 BOOK 33098 PAGE 2524
DATE:03/31/2022 08:54:58 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 2022-005424-CA-01

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

       Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

       Defendants.

_____/

## NOTICE OF LIS PENDENS

**TO: DEFENDANTS, ELIZABETH HAZAN; SEAN NEIL MEEHAN; 6913 VALENCIA, LLC; JOHN DOE AND JANE DOE; AND ALL OTHERS WHOM IT MAY CONCERN:**

**YOU ARE NOTIFIED OF THE FOLLOWING:**

(a) The Plaintiff has instituted this action against you seeking to foreclose a Claim of Lien recorded on March 24, 2021, in Official Records Book 32413 at Pages 4637-38 of the public records of Miami-Dade County, Florida, with respect to the property described below;

(b) The Plaintiff in this action is: **VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.;**

CFN: 20220260391 BOOK 33098 PAGE 2525

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Notice of Lis Pendens*

(c) The case number of the action is as shown in the caption;

(d) The property that is the subject matter of this action is in Miami-Dade County, Florida as is described as follows:

Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

The property address is 6913 Valencia Drive, Fisher Island, FL 33109.

Dated this 24th day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
*Counsel for Plaintiff*
251 NW 23rd Street
Miami, FL 33127
Telephone No.: (305) 379-2400
Facsimile No.: (305) 379-1106
service@haber.law

By: ___*/s/ Rebecca N. Casamayor*___
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfelipe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law

Filing # 146288525 E-Filed 03/23/2022 03:37:12 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

       Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

       Defendants.

_____/

### COMPLAINT

Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., a Florida not-

for-profit corporation ("ASSOCIATION" or "Plaintiff"), by and through its undersigned counsel,

hereby sues the Defendants, ELIZABETH HAZAN ("HAZAN"), an individual; SEAN NEIL

MEEHAN, as spouse of HAZAN ("MEEHAN") an individual; 6913 VALENCIA, LLC ("6913

VALENCIA"), a Florida limited liability company; and JOHN DOE and JANE DOE, as unknown

tenants or occupants ("TENANTS"), and alleges as follows:

### GENERAL ALLEGATIONS

1.    This Honorable Court has jurisdiction pursuant to § 26.012(2), Fla. Stat., as this is

an action to foreclose a claim of lien for unpaid assessments.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

2. The ASSOCIATION is a Florida corporation not-for-profit, operating pursuant to the provisions of Chapter 720, Florida Statutes. The ASSOCIATION is responsible for managing the affairs of Valencia Estates, a residential community in Miami-Dade County, Florida, pursuant to its Declaration of Covenants and Restrictions ("Declaration"), recorded in the Public Records of Miami-Dade County, Florida, on February 6, 2003, at ORB 21004, Page 390, as amended from time to time.

3. Defendant HAZAN, is over the age of eighteen (18) years, is a resident of Miami-Dade County, Florida, and is otherwise *sui juris.* HAZAN is the record owner of the real property forming the subject of this action.

4. Defendant MEEHAN is HAZAN's spouse, is over the age of eighteen (18) years, is believed to be a resident of Miami-Dade County, Florida, and is otherwise *sui juris.*

5. Defendant 6913 VALENCIA is a Florida limited liability company that is believed to still own and hold a second mortgage on the Subject Property, recorded in the public records of Miami-Dade County, Florida. According to online Florida public records, Defendant 6913 VALENCIA's Manager and Authorized Representative is Defendant HAZAN.

6. Defendants, TENANTS, if such persons exist, are residents of Miami-Dade County, Florida, who are over the age of eighteen (18) years, and are otherwise *sui juris.*

7. Venue is appropriate in Miami-Dade County, Florida because:

(a) The real property forming the subject of this action is located in Miami-Dade County, Florida;

(b) The causes of action asserted herein arose in Miami-Dade County, Florida;

(c) HAZAN is the owner of the Subject Property (hereinafter defined), and as such is a member of the ASSOCIATION;

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

    (d)    Defendants, MEEHAN and 6913 VALENCIA, hold or may claim to hold interests encumbering the Subject Property which is located in Miami-Dade County, Florida;

    (e)    Defendants, TENANTS, if they exist, reside in the Subject Property; and

    (f)    This is an action to foreclose a Claim of Lien upon on the following described real property located in Miami-Dade County, Florida (the "Subject Property"):

> Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

> a/k/a 6913 Valencia Drive, Fisher Island, FL 33109.

8.    Pursuant to § 720.3085, Fla. Stat. and Article 6 of the Association's Declaration, HAZAN is required to pay all assessments that are levied by the ASSOCIATION against the Subject Property as they become due and payable. A true and correct copy of Article 6 of the Declaration is attached hereto as **Exhibit "1"** and incorporated herein by reference.

9.    Additionally, § 720.3085, Fla. Stat. and Article 6 of the Declaration require that HAZAN pay interest at the rate of eighteen percent (18%) per annum on the balance of all unpaid maintenance assessments, along with administrative late fees in the amount of $25.00 for each monthly assessment installment that is not paid within fifteen (15) days of its due date, plus costs and attorney's fees incurred by the ASSOCIATION incident to the collections process. *See* **Exhibit "1"**.

10.    On or about August 2, 2013, JPMorgan Chase Bank, N.A. ("JPMorgan") filed an action against HAZAN to foreclose the first mortgage on the Subject Property, Case No.: 2013-

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

025902-CA-01 ("Bank Foreclosure"). The Bank Foreclosure is still pending in Miami-Dade County Circuit Court.

11.     On or about January 11, 2016, HAZAN filed for Chapter 11 bankruptcy in the Southern District of Florida, Case No. 16-10389-AJC ("Bankruptcy Action"). In the Bankruptcy Action, the ASSOCIATION and HAZAN entered into an agreement regarding the ASSOCIATION's claim for past-due assessments and related charges due at that time. True and correct copies of the Stipulation of Settlement for Claim 10 executed by the ASSOCIATION and HAZAN on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (hereinafter collectively the "Stipulation") are attached hereto as **Composite Exhibit "2"** and incorporated herein by reference.

12.     In addition to her obligations under Article 6 of the Association's Declaration and § 720.3085, Fla. Stat., the Stipulation further requires HAZAN to continue to pay all post-petition, ongoing monthly and/or special assessments to the ASSOCIATION. *See* **Composite Exhibit "2"** at Para. 6. Failure to pay such amounts entitles the ASSOCIATION to "all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at Para. 7.

13.     Thus, even though the Bankruptcy Action is still pending in that HAZAN is still making payments pursuant to her Bankruptcy Plan, the parties have already agreed and the Bankruptcy Court has already approved the filing of a new lien and foreclosure action with respect to post-petition assessments, which is what the ASSOCIATION's seeks herein.

14.     HAZAN has failed or otherwise refused to fully and timely pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount

currently exceeding $61,000.00, after application of payments received to date in accordance with § 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

15.     All conditions precedent to the filing of this action have been performed, occurred, or were otherwise waived.

16.     As a result of HAZAN's failure to pay assessments and related charges resulting from such nonpayment, the ASSOCIATION has been required to retain the undersigned counsel and is obligated to pay a reasonable fee thereto.

17.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., and the Association's Declaration at Article 6, the ASSOCIATION is entitled to be reimbursed its attorney's fees and costs incurred in this action.

## COUNT I
## FORECLOSURE OF LIEN

18.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 above as if fully set forth herein.

19.     This is an action to foreclose the Claim of Lien (hereinafter defined) against the Subject Property.

20.     HAZAN has failed or otherwise refused to pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount currently exceeding $61,000.00, after application of payments received to date in accordance with § 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

21.     On or about January 4, 2021, and in accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Notice of Intent to File/Record a Claim

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

of Lien ("Notice of Intent to Lien") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of the Notice of Intent to Lien is attached hereto as **Exhibit "3"** and incorporated herein by reference.

22.     HAZAN failed or otherwise refused to pay the amounts set forth in the Notice of Intent to Lien within forty-five (45) days thereof. As a result, and in accordance with § 720.3085, Fla. Stat. and the Declaration, on March 24, 2021, the ASSOCIATION recorded a Claim of Lien against the Subject Property in ORB 32413 at Pages 4637-38, of the public records of Miami-Dade County, Florida (the "Claim of Lien"). A true and correct copy of the Claim of Lien is attached hereto as **Exhibit "4"** and incorporated herein by reference.

23.     Pursuant to F.S. §720.3085(5)(b), the ASSOCIATION was not required to send HAZAN a forty-five (45) day Notice of Intent to Foreclose its Claim of Lien due to the pending Bank Foreclosure as well as the pending Bankruptcy. Nonetheless, on or about April 5, 2021, in accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Notice of Intent to Foreclose Claim of Lien ("Notice of Intent to Foreclose") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of the Notice of Intent to Foreclose is attached hereto as **Exhibit "5"** and incorporated herein by reference.

24.     In addition, on February 7, 2022, the ASSOCIATION sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Supplemental Notice of Intent to Foreclose Claim of Lien ("Supplemental Notice of Intent to Foreclose") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

the Supplemental Notice of Intent to Foreclose is attached hereto as **Exhibit "6"** and incorporated herein by reference.

25. As set forth in § 720.3085, Fla. Stat. and the Declaration, the Claim of Lien secures all unpaid assessments, interest, late fees, collection costs, and attorneys' fees and costs incident to the collections process set forth therein and that have and will come due subsequent to its recording through the entry of a final judgment in this action.

26. Further, pursuant to § 720.3085(1), the ASSOCIATION's lien rights and Claim of Lien are effective from and shall relate back to the date of recording of the ASSOCIATION's original Declaration, i.e. - - February 6, 2003.

27. To date, HAZAN has failed or otherwise refused to satisfy the Claim of Lien, and thus pursuant to § 720.3085, Fla. Stat. and Article 6 of the Declaration, the ASSOCIATION is now entitled to foreclose the Claim of Lien in the same manner that a mortgage is foreclosed.

28. The ASSOCIATION's interest in the Subject Property pursuant to the Declaration and the Claim of Lien is superior to any right, title or interest of Defendant or any party claiming by, through or under HAZAN to the Subject Property.

29. Defendant MEEHAN may claim some interest in or lien upon the Subject Property as an occupant or having a homestead interest in same. However, MEEHAN's specific interest in the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

30. Defendant, 6913 VALENCIA may claim an interest in the Subject Property by virtue of a Second Mortgage recorded on March 14, 2012 in ORB 28034, at Page 4869 of the Public Records of Miami Dade County, Florida. However, 6913 VALENCIA's specific interest in

the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

31.     Defendants TENANTS may claim an interest in the Subject Property by virtue of possession of the Subject Property as tenants under a lease or otherwise as occupants. However, TENANTS' specific interest in the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Defendants, and in so doing award the following relief:

A.     Take jurisdiction of this cause and of the parties to this action;

B.     Ascertain the amount of money including assessments, interest, late fees, expenses, costs and attorney's fees and costs which ASSOCIATION is entitled to recover in this action and award such amounts pursuant to the Declaration and § 720.385, Fla. Stat.;

C.     Find that ASSOCIATION be decreed to have a lien upon the Subject Property of Defendant HAZAN as described herein for the sum of money found to be due, and that said lien be decreed superior to the rights, title and interest of all of the Defendants named herein;

D.     Find that such lien be foreclosed in accordance with the Declaration and the established rules and practices of the Court, that upon default of the payment to ASSOCIATION of the amounts so found to be due, and that said real estate be sold by the Clerk of Court to satisfy ASSOCIATION's lien in accordance with provisions of Chapter 720 of the Florida Statutes;

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

        E.      Find that the Final Judgment of Foreclosure incorporate an order dispossessing the Defendants, and requiring that the purchaser at the foreclosure sale, his representatives or all of the assigns, be let into possession of the Subject Property;

        F.      Reserve jurisdiction to enter a Writ of Possession in favor of the person or entity acquiring title to the Subject Property as a result of the public sale ordered by the Court;

        G.      Reserve jurisdiction to award the ASSOCIATION a deficiency judgment in the event the sale of the Subject Property produces insufficient funds to satisfy the ASSOCIATION's judgment; and

        H.      Award such other and further relief as ASSOCIATION may be entitled to receive.

## COUNT II
## BREACH OF DECLARATION

32.      Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 as if fully set forth herein.

33.      The ASSOCIATION's Declaration allows the ASSOCIATION to levy assessments and charges related thereto against the Subject Property, which HAZAN is required to pay. *See* **Exhibit "1"**.

34.      The Declaration is a contract by and between the ASSOCIATION and HAZAN, which strictly governs the relationship between them.

35.      Pursuant to §§ 720.305 and 720.3085, Fla. Stat., HAZAN is required to comply with the terms and conditions of the Declaration.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

36.     Despite multiple demands from the ASSOCIATION, HAZAN still has not made payment for the assessments and related charges due and owing to the ASSOCIATION. *See* **Exhibits "3", "5", and "6"**.

37.     HAZAN materially breached the Declaration by failing or otherwise refusing to pay assessments levied by the ASSOCIATION against the Subject Property as same became due and payable.

38.     HAZAN further materially breached the Declaration by failing or otherwise refusing to pay the interest, late fees, collection costs, and attorneys' fees and costs incurred by the ASSOCIATION incident to the collections process, resulting from HAZAN's failure to pay the assessments levied by the ASSOCIATION against the Subject Property.

39.     As a direct and proximate result of such breaches, the ASSOCIATION has been damaged.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ELIZABETH HAZAN, and in so doing award the ASSOCIATION the actual damages it has sustained in this regard, along with pre-judgment and post-judgment interest and the reasonable attorneys' fees and costs incurred in this regard, together with such other and further relief deemed just and proper.

[SIGNATURE PAGE TO FOLLOW]

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

Dated this 23rd day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
251 NW 23rd Street
Miami, Florida 33127
(305) 379-2400
(305) 379-1106 (fax)
service@haber.law

By: ___*/s/ Rebecca N. Casamayor*___
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfelipe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law

# EXHIBIT 4

NYSCEF DOC. NO. 24

INDEX NO. 654670/2020

RECEIVED NYSCEF: 02/11/2021

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ANDREW BORROK** | **PART** | **IAS MOTION 53EFM** |

*Justice*

-------------------------------------------------------------------------X

RAMIREZ, JR., JUAN

Petitioner,

- v -

SELECTIVE ADVISORS GROUP, LLC

Respondent.

-------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654670/2020 |
| **MOTION DATE** | 11/09/2020 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 18, 19, 20, 22
were read on this motion to/for _____ JUDGMENT - DEFAULT _____ .

Juan Ramirez, Jr. (the **Petitioner**) filed this petition on September 23, 2020 pursuant to CPLR §§

3001, 3218, and 5015 to declare void, vacate, set aside and/or strike a certain judgment by

confession *nunc pro tunc* to date of entry recorded on February 22, 2012 in the action captioned,

*9197-5904 Quebec, Inc. v. NLG, LLC*, Index No. 2012- 101875 (NYSCEF Doc. No. 1).

Selective Advisors Group, LLC (the **Respondent**) was served with the petition on September 25,

2020 (NYSCEF Doc. No. 17). The Respondent did not respond.

The Petitioner subsequently filed the instant motion for default judgment on November 5, 2020

and served the Respondent on November 9, 2020 (NYSCEF Doc. No. 22). The Respondent did

not respond. Accordingly, the Petitioner's motion for a default judgment is granted as

unopposed.

**654670/2020 RAMIREZ, JR., JUAN vs. SELECTIVE ADVISORS GROUP, LLC**
**Motion No. 002**

**Page 1 of 2**

1 of 2

NYSCEF DOC. NO. 24

INDEX NO. 654670/2020

RECEIVED NYSCEF: 02/11/2021

Accordingly, it is

ORDERED that the Petitioner's motion for default judgment is granted as unopposed; and it is further

ADJUDGED and DECLARED that the Judgment by Confession for $5,000,225.00 in the case captioned as 9197-5904 Quebec, Inc. v. NLG, LLC entered under Index No. 101875-2012 in the Supreme Court of New York, New York County on February 22, 2012, and assigned to Selective Advisors Group, LLC on June 17, 2014 is *void ab initio* and hereby vacated, set aside and stricken from the public records, *nunc pro tunc* to date of entry as it was entered without jurisdiction, without service of process, without any due process, and collusive as the affidavit confessing the judgment was signed by the President of the Plaintiff corporation; and it is further

ORDERED that Clerk of the Supreme Court of New York for New York County is hereby ordered to vacate, strike and set aside from the public records the Judgment by Confession in the case captioned as 9197-5904 Quebec, Inc. v. NLG, LLC, and assigned to Selective Advisors Group, LLC on June 17, 2014, *nunc pro tunc* to date of entry to February 22, 2012 entered under Index No. 101875-2012 in the Supreme Court of New York, New York County.

20210211161609ABORROKB27E1693653D17B8A592A501BDEA1177

| 2/11/2021 | |
|---|---|
| DATE | ANDREW BORROK, J.S.C. |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**654670/2020   RAMIREZ, JR., JUAN vs. SELECTIVE ADVISORS GROUP, LLC**          **Page 2 of 2**
**Motion No. 002**

# EXHIBIT 5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                   Chapter 11

          Debtor.
_____/

## FINAL ORDER DENYING SANCTIONS

**THIS MATTER** was heard before the Court on March 30, 2022, pursuant an unserved Expedited Motion for Sanctions [ECF 1068] and to an Amended Notice of Hearing [ECF No. 1071]. This Court heard argument from Attorney David Langley and Chris Kosachuk, *pro se*. The Court having reviewed the file, having heard argument of counsel and Mr. Kosachuk, and otherwise being fully advised, finds as follows:

## <u>JURISDICTION</u>

Although the latest motion for sanctions [ECF 1071] does not specify under what authority the Court has over the motion, all parties and nonparties agree that this Court has limited jurisdiction. The motion under consideration, however, was filed post-confirmation, so that there exists a residue, albeit limited, of court authority over a confirmed chapter 11 case. *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988), citing *Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228 (4th Cir. 1987) (jurisdiction retained under § 1127); *In re Harlow Properties, Inc.,* 56 B.R. 794 (B.A.P. 9th Cir. 1985) (creditors may obtain specific performance against debtor pursuant to § 1142). Furthermore, in this post-confirmation case, "the all-important bankruptcy estate no longer exists." *Globaleyes Telecomms., Inc. v. Verizon N., Inc.*, 425 B.R. 481, 497 (S.D. Ill. 2010). This is particularly the case where the motions involve the Debtor's homestead property, which the Debtor declared was exempt from the bankruptcy estate. In fact, the Debtor has asserted that the homestead property "is no longer property of the estate" [*See* ECF 1033, fn. 2].

Fed. R. Bankr. P. 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate." Both § 105(a) and Rule 3020(d) limit this Court's jurisdiction to the issuance of orders that are necessary. This Court's jurisdiction is further limited by the fact that the rulings central to the motion for sanctions are under appeal and the instant Motion was never served upon Mr. Kosachuk. The Confirmation Order and the Discharge Order are under appeal before the District Court. As a general matter, "the filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 74 L. Ed.

2

2d 225, 103 S. Ct. 400 (1982). See also *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 798 (B.A.P. 9th Cir. 1995) ("A pending appeal… divests a bankruptcy court of jurisdiction."). This Court, however, "retains jurisdiction to implement or enforce the order." *Id.* This case law is applicable to Bankruptcy Courts.

Therefore, this Court's power to issue monetary sanctions is limited to cases where it is necessary to administer the estate and to implement or enforce the rulings under appeal. With all this in mind, this Court recognizes that it cannot proceed against NLG because of the automatic stay under 11 U.S.C. 362. As to nonparty Mr. Kosachuk, this Court must determine whether he was served the Motion, whether he violated this Court's Confirmation and Discharge Orders by recording a notice of lis pendens and whether it is necessary to exercise its contempt power to administer the estate. As such, the Court will decline to sanction Mr. Kosachuk.

## BACKGROUND

On December 28, 2018, this Court entered an Order Granting in Part Debtor's Amended Expedited Motion For Contempt, Sanctions, Damages and Punitive Damages [ECF 780]. That Motion [ECF 748] complained about the recording of a lis pendens in the state foreclosure action by JP Morgan Chase in Case No. 2013-25902, an action that remains pending in state court. This Court stated that "the primary issue is whether the recording of the lis pendens…against the Debtor violates the Court's injunction in the Confirmation Order." [ECF 780, p. 5]. It then ruled as follows:

Upon consideration, the Court believes **the recordation of the *lis pendens*** against Debtor's property **is not, in and of itself, a violation of the Plan's injunction**. The purpose of a *lis pendens* is to give constructive notice to a prospective buyer or lender of the pendency of a legal proceeding affecting title to or the right of possession of real property. A *lis pendens* exists, in part, to prevent third-party purchasers or lenders from "buying" a lawsuit when they purchase or loan against the property. *Chiusolo v. Kennedy*, 614 So. 2d 491 (Fla. 1993). The recordation of a *lis pendens* provides constructive notice to subsequent purchasers

3

or lenders, to prevent a buyer of real property from claiming *bona fide* purchaser status with respect to the asserted claim. A *lis pendens* also protects the filer from intervening liens that could impair any property rights claimed and from possible extinguishment of an unrecorded equitable lien.

> In this instance the *lis pendens* provides for notice "of the institution of a cross-claim for foreclosure by Defendant/Cross-claimant Plaintiff NLG, LLC pursuant to its Final Judgment of Foreclosure." While **the *lis pendens*** appears premised upon a pre-petition, satisfied and extinguished claim, it does not establish or perfect a lien on real property and therefore **does not constitute an act in violation of the stay or injunction** (though some courts may suggest otherwise).

[ECF 780, p. 5-6] (emphasis added).

By operation of law the dismissal of the underlying action automatically dismissed the notice of lis pendens under Fla. R. Civ. P. 1.420(f), which provides:

> **(f) *Effect on Lis Pendens.*** --If a notice of lis pendens has been filed in connection with a claim for affirmative relief that is dismissed under this rule, the notice of lis pendens connected with the dismissed claim is automatically dissolved at the same time. The notice, stipulation, or order shall be recorded.

Because all parties agreed that the underlying adversary proceeding in the District of Delaware was dismissed so too was the lis pendens. Thus, the instant Motion is now moot.

This Court also notes that the Order Confirming Plan of Reorganization (Confirmation Order). [ECF 691] is under appeal before the District Court under Case No. 1:18-cv-22564-DPG. On March 30, 2019, Judge Gayles entered an Order Staying the appeal pending resolution of the appeal of the November 1, 2017 Final Judgment [ECF 65]. The appeal remains stayed.

The Confirmation Order prohibits all creditors "from commencing, continuing, or employing **any action, process, or act to collect, recover, or offset** any [prepetition] debt." (emphasis added).[1] The full language of Confirmation Order is as follows:

> All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the

---

[1] All emphasis is added unless otherwise stated.

4

Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

ECF 691 at 5, ¶8.

In addition, Paragraph 9 of the Confirmation Order contains the following language:

All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

[ECF 691 at 5, ¶9].

On December 6, 2018, the Court granted the Debtor's request for a discharge (ECF 766).

Section 524(a) of the Bankruptcy Code provides:

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of **an action, the employment of process, or an act, to collect, recover or offset any such debt** as a personal liability of the debtor, whether or not discharge of such debt is waived…

The discharge order is also on appeal under Case No. 1:19-cv-20186-RNS. On July 29, 2019, Judge Scola entered an order staying the appeal pending resolution of the appeal of the November 1, 2017 Final Judgment.

Clearly, the issue is whether a notice of lis pendens constitutes "any action, process, or act to collect, recover, or offset any [prepetition] debt." A "notice" is not prohibited by the Confirmation Order, the Discharge Order or by statute. The issue then is whether such a notice which announces to the world that there is an action pending implicitly constitutes an action, a process, or an act to collect, recover, or offset a prepetition debt, particularly when such an appeal is a matter of public record. It does not.

## CONCLUSION

Because of these deficiencies, a lack of personal jurisdiction over Mr. Kosachuk and an issue that is now moot, as well as the equities in this case, this Court, in its discretion, will deny the Motion and enter no sanctions.


### ###

**Submitted by:**

Chris Kosachuk
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com


The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED-USBC FLS-MIA
'22 APR 12 ⅗ 2:49

In re                                               Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                     Chapter 11
_____/

### CHRIS KOSACHUK'S MOTION TO COMPEL TIMELY, LEGIBLE AND COMPLETE POST CONFIRMATION QUARTERLY OPERATING REPORTS AND PROOF OF INSURANCE AND COMPLIANCE GOING FORWARD

Chris Kosachuk, *pro se*; (the "Movant") in accordance with Rule 2015 of the Federal Rules of Bankruptcy Procedure and the Chapter 11 Guidelines and Reporting Requirements (revised January 1, 2020 and published by the United States Department of Justice and the United States Trustee Region 21), moves to compel timely, legible and complete post confirmation quarterly operating reports and compliance going forward in this individual Chapter 11. In support, Movant states:

1.      This Court confirmed the Debtor's Plan on June 12, 2018. [*See* ECF No. 691].

2.      On March 19, 2019, NLG moved to compel the quarterly operating reports [*see* ECF No. 828] and the Court denied the motion on the basis that NLG has no standing and that the US Trustee was not seeking the quarterly reports. [*See* Order ECF No. 895].

3.      However, the debtor has now moved for sanctions [*see* ECF No. 1068] against Mr. Kosachuk using the Confirmed Plan and the Discharge Order arguing that Movant should be found in contempt of Court for violating these orders.

4.      At the hearing on the Motion for Contempt on March 30, 2022, David Langley, Attorney for the Debtor, made numerous factual representations that are contradicted by the record and the limited information available to Movant through the public record. As an example, Mr.

Langley claims that the Debtor is attempting to refinance or sell the property – a fact hotly disputed throughout the numerous hearings for contempt; yet the Debtor has never listed the property for sale, which would be a critical step when attempting to sell a property currently worth well over $10,000,000. Accurate quarterly reports would reveal that the Debtor is in default on her plan, as well as the confirmation and discharge orders.

5. Other information learned from public records is that the Debtor has defaulted in her payments to Valencia Estates Homeowners' Association, which recently filed a Claim of Lien, its own lis pendens and a complaint in state court for foreclosure. These filings create a cloud on the title the Debtor is claiming has been clouded by the *lis pendens* filed by Movant. Although Mr. Langley claims that the Debtor has made arrangements with the Association, Movants have reason to believe that such a claim is false. This Valencia Estates lis pendens and foreclosure complaint are attached as Exhibit 1.

6. Debtor has been in litigation with JPMorgan Chase Bank since 2013 in the Miami-Dade Circuit Court. On April 14, 2021, the Debtor filed a 12-page Report with the Circuit Court arguing that the plaintiff's mortgage was wiped out in this Chapter 11 Bankruptcy and requesting a trial setting for April 1, 2022. Obviously, this ongoing litigation is a cloud on the title which will prevent any sale of the Fisher Island property. A copy of the Foreclosure and Report are attached as Exhibit 2.

7. Debtor has also defaulted in her payments to the other two secured creditors – the Fisher Island Homeowners' Association (owed over $667,000) *and* the Internal Revenue Service (owed over $400,000) creating further clouds on the title.

8. Debtor defaulted on her plan payments to the two largest unsecured creditors – JMB Urban Development in the amount of $275,000, and Spencer Condominium in the amount of $109,554.86.

9. Other than the unsworn statements of the Debtor and Mr. Simon, Mr. Langley has offered no proof that the Debtor has made arrangements to resolve these matters in the event of a sale or a refinancing.

10. The last monthly operating report filed by the Debtor was for the reporting period of June 2018. The report was filed late on July 26, 2018. The report also failed to attach the Debtor's DIP bank account statement for her City National Bank account. As such, the Debtor should be required to file an amended and complete monthly operating report for the June 2018.

11. The Debtor has also failed to file any post-confirmation quarterly reports. The Court should compel the Debtor to file the quarterly reports immediately and compel compliance going forward.

12. Debtor has flaunted the requirement that payments be made through her DIP account. Instead, she purchased in excess of $100,000 worth of counter checks, which are prohibited. The Court should compel the debtor to account for all the counter checks so that Movants can verify that those checks were actually delivered and cashed.

13. Additionally, the Debtor has failed to make numerous plan payments and thus the Confirmed Plan is in default. In order to prove the Confirmed Plan payment defaults, Movant needs for the Court to order the Debtor to file the quarterly operating reports. In the alternative, Movant requests that he be allowed to issue a subpoena duces tecum requiring the Debtor to bring the relevant records to her deposition.

14.    Additionally, the Debtor should be required to produce proof of insurance on the Fisher Island Property which the Debtor has also failed to do.

## MEMORANDUM OF LAW

Title 28, §586(a)(3) of the United States Code, directs the United States Trustee to supervise the administration of all chapter 11 cases. To comply with this charge, the United States Trustee for Region 21 has established these operating guidelines and reporting requirements for chapter 11 debtors and trustees.

Debtors have a continuing obligation to file monthly operating reports until the court confirms the plan of reorganization. After confirmation, debtors are required to file a quarterly post confirmation operating report. The post confirmation operating report includes, among other things, all payments made under the plan of reorganization and payments made in the ordinary course of doing business. These reports must be filed quarterly until the court enters a final decree, dismisses the case, or converts the case to another chapter in bankruptcy. The original report must be filed with the clerk of the bankruptcy court, and a paper copy served upon the United States Trustee. The report must be filed by the 21st day of the month following the reporting period. The post confirmation operating report may be obtained from the Region 21 website at http://www.justice.gov/ust/r21/reg_info.htm#ch11.

The law is clear. The Debtor is required to file quarterly operating reports.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should compel timely, legible and complete quarterly reports for the third and fourth quarter of 2018, and thereafter; an amended monthly operating report, including debtor in possession bank statements for the June 2018 period,

to produce proof of insurance for the Fisher Island Property and grant such other and further relief as the Court deems appropriate.

Dated April 12, 2022

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court on this 12th day of April, 2022. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail and via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

**Chris Kosachuk**
*Pro Se Movant*
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## SERVICE LIST

*Served via CM/ECF*

All parties of record

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Steven D. Schneiderman, Esq.
Trial Attorney
United States Department Of Justice
Office of the United States Trustee
51 S.W. First Ave., Suite 1204
Miami, Florida 33130
Steven.D.Schneiderman@usdoj.gov

Cortez-Rodriguez, Adisley M.
Trial Attorney
United States Department Of Justice
Office of the United States Trustee
51 S.W. First Ave., Suite 1204
Miami, Florida 33130
Adisley.M.Cortez-Rodriguez@usdoj.gov

# EXHIBIT 1

Filing # 146381332 E-Filed 03/24/2022 04:11:53 PM

CFN: 20220260391 BOOK 33098 PAGE 2524
DATE:03/31/2022 08:54:58 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 2022-005424-CA-01

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

        Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

        Defendants.

_____/

## NOTICE OF LIS PENDENS

**TO: DEFENDANTS, ELIZABETH HAZAN; SEAN NEIL MEEHAN; 6913 VALENCIA, LLC; JOHN DOE AND JANE DOE; AND ALL OTHERS WHOM IT MAY CONCERN**:

**YOU ARE NOTIFIED OF THE FOLLOWING:**

    (a) The Plaintiff has instituted this action against you seeking to foreclose a Claim of Lien recorded on March 24, 2021, in Official Records Book 32413 at Pages 4637-38 of the public records of Miami-Dade County, Florida, with respect to the property described below;

    (b) The Plaintiff in this action is: **VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.**;

CFN: 20220260391 BOOK 33098 PAGE 2525

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Notice of Lis Pendens*

(c) The case number of the action is as shown in the caption;

(d) The property that is the subject matter of this action is in Miami-Dade County, Florida as is described as follows:

Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

The property address is 6913 Valencia Drive, Fisher Island, FL 33109.

Dated this 24th day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
*Counsel for Plaintiff*
251 NW 23rd Street
Miami, FL 33127
Telephone No.: (305) 379-2400
Facsimile No.: (305) 379-1106
service@haber.law

By: */s/ Rebecca N. Casamayor*
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfelipe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law

Filing # 146288525 E-Filed 03/23/2022 03:37:12 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

        Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

        Defendants.

_____/

## COMPLAINT

Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., a Florida not-

for-profit corporation ("ASSOCIATION" or "Plaintiff"), by and through its undersigned counsel,

hereby sues the Defendants, ELIZABETH HAZAN ("HAZAN"), an individual; SEAN NEIL

MEEHAN, as spouse of HAZAN ("MEEHAN") an individual; 6913 VALENCIA, LLC ("6913

VALENCIA"), a Florida limited liability company; and JOHN DOE and JANE DOE, as unknown

tenants or occupants ("TENANTS"), and alleges as follows:

## GENERAL ALLEGATIONS

1.    This Honorable Court has jurisdiction pursuant to § 26.012(2), Fla. Stat., as this is

an action to foreclose a claim of lien for unpaid assessments.

2.      The ASSOCIATION is a Florida corporation not-for-profit, operating pursuant to the provisions of Chapter 720, Florida Statutes. The ASSOCIATION is responsible for managing the affairs of Valencia Estates, a residential community in Miami-Dade County, Florida, pursuant to its Declaration of Covenants and Restrictions ("Declaration"), recorded in the Public Records of Miami-Dade County, Florida, on February 6, 2003, at ORB 21004, Page 390, as amended from time to time.

3.      Defendant HAZAN, is over the age of eighteen (18) years, is a resident of Miami-Dade County, Florida, and is otherwise *sui juris.* HAZAN is the record owner of the real property forming the subject of this action.

4.      Defendant MEEHAN is HAZAN's spouse, is over the age of eighteen (18) years, is believed to be a resident of Miami-Dade County, Florida, and is otherwise *sui juris.*

5.      Defendant 6913 VALENCIA is a Florida limited liability company that is believed to still own and hold a second mortgage on the Subject Property, recorded in the public records of Miami-Dade County, Florida. According to online Florida public records, Defendant 6913 VALENCIA's Manager and Authorized Representative is Defendant HAZAN.

6.      Defendants, TENANTS, if such persons exist, are residents of Miami-Dade County, Florida, who are over the age of eighteen (18) years, and are otherwise *sui juris.*

7.      Venue is appropriate in Miami-Dade County, Florida because:

(a)     The real property forming the subject of this action is located in Miami-Dade County, Florida;

(b)     The causes of action asserted herein arose in Miami-Dade County, Florida;

(c)     HAZAN is the owner of the Subject Property (hereinafter defined), and as such is a member of the ASSOCIATION;

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

(d)    Defendants, MEEHAN and 6913 VALENCIA, hold or may claim to hold interests encumbering the Subject Property which is located in Miami-Dade County, Florida;

(e)    Defendants, TENANTS, if they exist, reside in the Subject Property; and

(f)    This is an action to foreclose a Claim of Lien upon on the following described real property located in Miami-Dade County, Florida (the "Subject Property"):

> Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.
>
> a/k/a 6913 Valencia Drive, Fisher Island, FL 33109.

8.    Pursuant to § 720.3085, Fla. Stat. and Article 6 of the Association's Declaration, HAZAN is required to pay all assessments that are levied by the ASSOCIATION against the Subject Property as they become due and payable. A true and correct copy of Article 6 of the Declaration is attached hereto as **Exhibit "1"** and incorporated herein by reference.

9.    Additionally, § 720.3085, Fla. Stat. and Article 6 of the Declaration require that HAZAN pay interest at the rate of eighteen percent (18%) per annum on the balance of all unpaid maintenance assessments, along with administrative late fees in the amount of $25.00 for each monthly assessment installment that is not paid within fifteen (15) days of its due date, plus costs and attorney's fees incurred by the ASSOCIATION incident to the collections process. *See* **Exhibit "1"**.

10.    On or about August 2, 2013, JPMorgan Chase Bank, N.A. ("JPMorgan") filed an action against HAZAN to foreclose the first mortgage on the Subject Property, Case No.: 2013-

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

025902-CA-01 ("Bank Foreclosure"). The Bank Foreclosure is still pending in Miami-Dade County Circuit Court.

11.     On or about January 11, 2016, HAZAN filed for Chapter 11 bankruptcy in the Southern District of Florida, Case No. 16-10389-AJC ("Bankruptcy Action"). In the Bankruptcy Action, the ASSOCIATION and HAZAN entered into an agreement regarding the ASSOCIATION's claim for past-due assessments and related charges due at that time. True and correct copies of the Stipulation of Settlement for Claim 10 executed by the ASSOCIATION and HAZAN on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (hereinafter collectively the "Stipulation") are attached hereto as **Composite Exhibit "2"** and incorporated herein by reference.

12.     In addition to her obligations under Article 6 of the Association's Declaration and § 720.3085, Fla. Stat., the Stipulation further requires HAZAN to continue to pay all post-petition, ongoing monthly and/or special assessments to the ASSOCIATION. *See* **Composite Exhibit "2"** at Para. 6. Failure to pay such amounts entitles the ASSOCIATION to "all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at Para. 7.

13.     Thus, even though the Bankruptcy Action is still pending in that HAZAN is still making payments pursuant to her Bankruptcy Plan, the parties have already agreed and the Bankruptcy Court has already approved the filing of a new lien and foreclosure action with respect to post-petition assessments, which is what the ASSOCIATION's seeks herein.

14.     HAZAN has failed or otherwise refused to fully and timely pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

currently exceeding $61,000.00, after application of payments received to date in accordance with § 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

15.     All conditions precedent to the filing of this action have been performed, occurred, or were otherwise waived.

16.     As a result of HAZAN's failure to pay assessments and related charges resulting from such nonpayment, the ASSOCIATION has been required to retain the undersigned counsel and is obligated to pay a reasonable fee thereto.

17.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., and the Association's Declaration at Article 6, the ASSOCIATION is entitled to be reimbursed its attorney's fees and costs incurred in this action.

## COUNT I
## FORECLOSURE OF LIEN

18.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 above as if fully set forth herein.

19.     This is an action to foreclose the Claim of Lien (hereinafter defined) against the Subject Property.

20.     HAZAN has failed or otherwise refused to pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount currently exceeding $61,000.00, after application of payments received to date in accordance with § 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

21.     On or about January 4, 2021, and in accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Notice of Intent to File/Record a Claim

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

of Lien ("Notice of Intent to Lien") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of the Notice of Intent to Lien is attached hereto as **Exhibit "3"** and incorporated herein by reference.

22. HAZAN failed or otherwise refused to pay the amounts set forth in the Notice of Intent to Lien within forty-five (45) days thereof. As a result, and in accordance with § 720.3085, Fla. Stat. and the Declaration, on March 24, 2021, the ASSOCIATION recorded a Claim of Lien against the Subject Property in ORB 32413 at Pages 4637-38, of the public records of Miami-Dade County, Florida (the "Claim of Lien"). A true and correct copy of the Claim of Lien is attached hereto as **Exhibit "4"** and incorporated herein by reference.

23. Pursuant to F.S. §720.3085(5)(b), the ASSOCIATION was not required to send HAZAN a forty-five (45) day Notice of Intent to Foreclose its Claim of Lien due to the pending Bank Foreclosure as well as the pending Bankruptcy. Nonetheless, on or about April 5, 2021, in accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Notice of Intent to Foreclose Claim of Lien ("Notice of Intent to Foreclose") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of the Notice of Intent to Foreclose is attached hereto as **Exhibit "5"** and incorporated herein by reference.

24. In addition, on February 7, 2022, the ASSOCIATION sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Supplemental Notice of Intent to Foreclose Claim of Lien ("Supplemental Notice of Intent to Foreclose") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of

the Supplemental Notice of Intent to Foreclose is attached hereto as **Exhibit "6"** and incorporated herein by reference.

25.     As set forth in § 720.3085, Fla. Stat. and the Declaration, the Claim of Lien secures all unpaid assessments, interest, late fees, collection costs, and attorneys' fees and costs incident to the collections process set forth therein and that have and will come due subsequent to its recording through the entry of a final judgment in this action.

26.     Further, pursuant to § 720.3085(1), the ASSOCIATION's lien rights and Claim of Lien are effective from and shall relate back to the date of recording of the ASSOCIATION's original Declaration, i.e. - - February 6, 2003.

27.     To date, HAZAN has failed or otherwise refused to satisfy the Claim of Lien, and thus pursuant to § 720.3085, Fla. Stat. and Article 6 of the Declaration, the ASSOCIATION is now entitled to foreclose the Claim of Lien in the same manner that a mortgage is foreclosed.

28.     The ASSOCIATION's interest in the Subject Property pursuant to the Declaration and the Claim of Lien is superior to any right, title or interest of Defendant or any party claiming by, through or under HAZAN to the Subject Property.

29.     Defendant MEEHAN may claim some interest in or lien upon the Subject Property as an occupant or having a homestead interest in same. However, MEEHAN's specific interest in the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

30.     Defendant, 6913 VALENCIA may claim an interest in the Subject Property by virtue of a Second Mortgage recorded on March 14, 2012 in ORB 28034, at Page 4869 of the Public Records of Miami Dade County, Florida. However, 6913 VALENCIA's specific interest in

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

the Subject Property and any other right, title or interest to and in the Subject Property is junior,

inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

31.    Defendants TENANTS may claim an interest in the Subject Property by virtue of

possession of the Subject Property as tenants under a lease or otherwise as occupants. However,

TENANTS' specific interest in the Subject Property and any other right, title or interest to and in

the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant

to the Claim of Lien.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION,

INC., respectfully requests that this Honorable Court enter judgment in its favor and against

Defendants, and in so doing award the following relief:

A.    Take jurisdiction of this cause and of the parties to this action;

B.    Ascertain the amount of money including assessments, interest, late fees,

expenses, costs and attorney's fees and costs which ASSOCIATION is entitled to recover

in this action and award such amounts pursuant to the Declaration and § 720.385, Fla. Stat.;

C.    Find that ASSOCIATION be decreed to have a lien upon the Subject

Property of Defendant HAZAN as described herein for the sum of money found to be due,

and that said lien be decreed superior to the rights, title and interest of all of the Defendants

named herein;

D.    Find that such lien be foreclosed in accordance with the Declaration and the

established rules and practices of the Court, that upon default of the payment to

ASSOCIATION of the amounts so found to be due, and that said real estate be sold by the

Clerk of Court to satisfy ASSOCIATION's lien in accordance with provisions of Chapter

720 of the Florida Statutes;

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

      E.     Find that the Final Judgment of Foreclosure incorporate an order dispossessing the Defendants, and requiring that the purchaser at the foreclosure sale, his representatives or all of the assigns, be let into possession of the Subject Property;

      F.     Reserve jurisdiction to enter a Writ of Possession in favor of the person or entity acquiring title to the Subject Property as a result of the public sale ordered by the Court;

      G.     Reserve jurisdiction to award the ASSOCIATION a deficiency judgment in the event the sale of the Subject Property produces insufficient funds to satisfy the ASSOCIATION's judgment; and

      H.     Award such other and further relief as ASSOCIATION may be entitled to receive.

## COUNT II
## BREACH OF DECLARATION

32.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 as if fully set forth herein.

33.     The ASSOCIATION's Declaration allows the ASSOCIATION to levy assessments and charges related thereto against the Subject Property, which HAZAN is required to pay. *See* **Exhibit "1"**.

34.     The Declaration is a contract by and between the ASSOCIATION and HAZAN, which strictly governs the relationship between them.

35.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., HAZAN is required to comply with the terms and conditions of the Declaration.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

36.     Despite multiple demands from the ASSOCIATION, HAZAN still has not made payment for the assessments and related charges due and owing to the ASSOCIATION. *See* Exhibits "3", "5", and "6".

37.     HAZAN materially breached the Declaration by failing or otherwise refusing to pay assessments levied by the ASSOCIATION against the Subject Property as same became due and payable.

38.     HAZAN further materially breached the Declaration by failing or otherwise refusing to pay the interest, late fees, collection costs, and attorneys' fees and costs incurred by the ASSOCIATION incident to the collections process, resulting from HAZAN's failure to pay the assessments levied by the ASSOCIATION against the Subject Property.

39.     As a direct and proximate result of such breaches, the ASSOCIATION has been damaged.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ELIZABETH HAZAN, and in so doing award the ASSOCIATION the actual damages it has sustained in this regard, along with pre-judgment and post-judgment interest and the reasonable attorneys' fees and costs incurred in this regard, together with such other and further relief deemed just and proper.

[SIGNATURE PAGE TO FOLLOW]

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

Dated this 23rd day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
251 NW 23rd Street
Miami, Florida 33127
(305) 379-2400
(305) 379-1106 (fax)
service@haber.law

By: ___*/s/ Rebecca N. Casamayor*___
      **REBECCA N. CASAMAYOR, ESQ.**
      Florida Bar No.: 99070
      rcasamayor@haber.law
      jfelipe@haber.law
      **DEESHA SMART, ESQ.**
      Florida Bar No. 1026394
      dsmart@haber.law

# EXHIBIT 2

space above reserved for recording information

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

JPMorgan Chase Bank, National Association,
successor in interest by purchase from the FDIC as
Receiver of Washington Mutual Bank F/K/A
Washington Mutual Bank, FA
      Plaintiff.

-vs.-

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC; 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
and all Unknown Parties claiming by, through,
under and against the above named Defendant(s)
who are not known to be dead or alive, whether said
Unknown Parties may claim an interest as Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living, and all
Unknown Parties claiming by, through, under and
against the above named Defendant(s) who are not
known to be dead or alive, whether said Unknown
Parties may claim an interest as Spouse, Heirs,
Devisees, Grantees, or Other Claimants
      Defendant(s).

Case #: 13-2013-CA-025902

DIVISION: 02

## NOTICE OF LIS PENDENS

TO:    THE ABOVE NAMED DEFENDANT(S) AND ALL OTHERS WHOM IT MAY CONCERN:

YOU ARE HEREBY NOTIFIED that suit was instituted by the above-named Plaintiff against the above-named Defendant(s), in the above styled cause, involving the following described property, situated, lying and being in Miami-Dade County, Florida, to-wit:

LOT 7, BLOCK 2, LINDISFARNE ON FISHER ISLAND SECTION 10, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 157, PAGE 64, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Relief sought as to such property is for foreclosure of mortgage held by Plaintiff against the premises and recorded in Official Records Book 25450, Page 2835 of the Public Records of Miami-Dade County, Florida.

YOU will, therefore, please govern yourselves accordingly.

DATED: Aug. 2 , 2013

*Pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), Plaintiff's counsel hereby designates its primary email address for the purposes of email service as: SFGBocaService@logs.com*

SHAPIRO, FISHMAN & GACHÉ, LLP
Attorneys for Plaintiff
2424 North Federal Highway, Ste 360
Boca Raton, Florida 33431
Telephone: (561) 998-6700
Fax: (561) 998-6707
Email: lewatson@logs.com

By:
Lee Andrew Watson, Esq **LARA DISKIN**
FL Bar # 356750
**FL BAR #43811**

Pursuant to the Fair Debt Collections Practices Act, you are advised that this office may be deemed a debt collector and any information obtained may be used for that purpose.

11-238739 FC01 W50

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

JPMorgan Chase Bank, National Association,
successor in interest by purchase from the FDIC
as Receiver of Washington Mutual Bank F/K/A
Washington Mutual Bank, FA

            Plaintiff,

-vs.-

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan;
NLG, LLC; 6913 Valencia, LLC; Western
National Life Insurance Company f/k/a AIG
Annuity Insurance Company; Fisher Island
Community Association, Inc.; Valencia Estates
Homeowners' Association, Inc.; Unknown
Parties in Possession #1, If living, and all
Unknown Parties claiming by, through, under
and against the above named Defendant(s) who
are not known to be dead or alive, whether said
Unknown Parties may claim an interest as
Spouse, Heirs, Devisees, Grantees, or Other
Claimants; Unknown Parties in Possession #2,
If living, and all Unknown Parties claiming by,
through, under and against the above named
Defendant(s) who are not known to be dead or
alive, whether said Unknown Parties may claim
an interest as Spouse, Heirs, Devisees,
Grantees, or Other Claimants

            Defendant(s).

Case #:  13-2013-CA-025902

DIVISION: 02

## VERIFIED COMPLAINT TO FORECLOSE MORTGAGE

Plaintiff, **JPMorgan Chase Bank, National Association, successor in interest by purchase**

from the **FDIC as Receiver of Washington Mutual Bank F/K/A Washington Mutual Bank,**

**FA**, sues the Defendants and states:

1. This is an action to foreclose a mortgage on real property located in Miami-Dade County, Florida, and by reason thereof the venue for this matter is in Miami-Dade County, Florida.

2. Borrower(s) Elizabeth Hazan executed and delivered a Promissory Note ("Note") dated March 7, 2007 and Elizabeth Hazan executed a Mortgage ("Mortgage") dated March 7, 2007 securing payment of the Note to the payee named thereon. The Mortgage was recorded in Official Records Book 25450, Page 2835, of the Public Records of Miami-Dade County, Florida, and mortgaged the property described in the mortgage then owned by and in possession of the mortgagor(s). True and correct copies of said Note and Mortgage, are attached hereto as Exhibit "A" and Exhibit "B" respectively.

3. The parties subsequently modified the aforementioned loan documents. A copy of the Loan Modification is attached hereto as Exhibit "C".

4. The Defendant, Elizabeth Hazan, executed the Loan Modification.

5. Plaintiff is entitled to enforce the Note as a holder in possession and to foreclose the Mortgage securing the Note.

6. The Mortgage of the Plaintiff is a purchase money mortgage being a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagee or the mortgagee's predecessors in interest.

7. The Defendant, Elizabeth Hazan a/k/a Liza Hazan, is the current owner of the real property which is the subject of the Mortgage.

8. All conditions precedent to the acceleration of the Note and Mortgage and the filing of the instant foreclosure complaint have been fulfilled.

9. There has been a default in the payment of the amounts due under the Note and Mortgage in that the payment due for August 1, 2011 and all subsequent payments have not been made.

10. Plaintiff declares the full amount payable under the Note and Mortgage to be due and payable.

11. Defendant who may be held personally liable for a deficiency, if any, is the notemaker, Elizabeth Hazan, unless any of such Defendant have been discharged in bankruptcy in which event no deficiency is or will be sought.

12. There is now due and owing the principal sum of $4,282,432.36 accruing interest pursuant to the terms of the aforementioned loan documents and together with all sums that may be due for taxes, insurance, escrow advances, and expenses and costs of suit including but not limited to filing fees, recording fees, title search and examination fees, fees due for service of process and such other costs as may be allowed by the court.

13. Plaintiff is obligated to pay Plaintiff's attorney a reasonable fee for their services and seeks an award of attorney's fees.

14. That the Defendant, Unknown Spouse of Elizabeth Hazan a/k/a Liza Hazan, might have some claim or demand in the subject property by virtue of spousal homestead interest, if any, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

15. That the Defendant, NLG, LLC, might have some claim or demand in the subject property by virtue of a Mortgage in the amount of $1,275,000.00, filed April 24, 2007, in Official Records Book 25559, Page 4266, and by virtue of a Judgment filed in Official Records

Book 26406, Page 3259, by virtue of a Notice filed in Official Records Book 26585, Page 3280, by virtue of an Order filed in Official Records Book 26705, Page 3719, by virtue of a Notice filed in Official Records Book 27001, Page 3016, by virtue of a Lis Pendens filed in Official Records Book 28409, Page 2079, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

16. That the Defendant, 6913 Valencia, LLC, might have some claim or demand in the subject property by virtue of a Mortgage in the amount of $2,000,000.00, filed March 14, 2012, in Official Records Book 28034, Page 4869, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

17. That the Defendant, Western National Life Insurance Company f/k/a AIG Annuity Insurance Company, might have some claim or demand in the subject property by virtue of a UCC Financing Statement, filed in Official Records Book 24865, Page 2970, and by virtue of a UCC Financing Statement filed in Official Records Book 27701, Page 4489, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

18. That the Defendant, Fisher Island Community Association, Inc., might have some claim or demand in the subject property by virtue of a Lien, filed in Official Records Book

26070, Page 3787, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

19. That the Defendant, Valencia Estates Homeowners' Association, Inc., might have some claim or demand in the subject property by virtue of a Lien, filed in Official Records Book 26641, Page 3090, and by virtue of a Lien filed in Official Records Book 27219, Page 2764, by virtue of a Lien filed in Official Records Book 27699, Page 182, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

20. That the Defendant, Unknown Parties in Possession #1, if living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants might have some claim or demand in the subject real property by virtue of possession, whether by tenancy from the record title holder or mere possession only, however, any such claim or demand is inferior to the lien of the Mortgage.

21. That the Defendant, Unknown Parties in Possession #2, if living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants might have some claim or demand in the subject

real property by virtue of possession, whether by tenancy from the record title holder or mere possession only, however, any such claim or demand is inferior to the lien of the Mortgage.

WHEREFORE, the Plaintiff respectfully requests that the court enter a Final Judgment: (a) enumerating all amounts the court determines due to Plaintiff pursuant to said Note and Mortgage, (b) ordering the Clerk of the Court to sell the subject property to satisfy the amount due Plaintiff, in whole or in part; (c) adjudging that the right, title and interest of any party claiming by, through, under or against any Defendant named herein be deemed inferior and subordinate to the Plaintiff's Mortgage lien and be forever barred and foreclosed; (d) retaining jurisdiction of the court in this action to make any and all further orders and judgments as may be necessary and proper, including issuance of a writ of possession and the entry of a deficiency, when and if such deficiency is sought if the parties liable under the Note have not been discharged in bankruptcy (however no deficiency will be sought if the parties liable under the Note were subject to an order allowing Plaintiff or its predecessors-in-interest only in rem relief

(This space intentionally left blank.)

Filing # 124949115 E-Filed 04/14/2021 08:11:29 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2013-025902-CA-01

JPMORGAN CHASE BANK, N.A.

    Plaintiff,

v.

ELIZABETH HAZAN,

    Defendant.

_____/

## ELIZABETH HAZAN'S CASE MANAGEMENT REPORT AND MOTION TO POSTPONE HEARING SET FOR APRIL 21, 2021

Defendant Elizabeth Hazan ("Hazan") submits the following Case Management Report and respectfully moves this honorable Court to postpone the hearing currently set for April 21, 2021 at 10:00 AM for a later date:

### 1. Summary of Facts and Theory of Liability and/or Defenses

Chase originally filed the instant action to foreclose a mortgage on a multi-million dollar house on Fisher Island, FL, owned by Defendant Elizabeth Hazan ("Hazan"). Hazan executed the note at issue, secured by the mortgage on the Fisher Island property, in March 2007 for the benefit of Washington Mutual Bank, N.A.

In 2016, Hazan filed chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida. In June 2018, the bankruptcy court confirmed Hazan's plan. On December 2018, hazan received her discharge.

Based on the language in the confirmed bankruptcy plan, Chase amended the complaint in the instant action to limit it to one count – a declaratory action to "determine the validity,

1

enforceability and amount of the mortgage and assignment thereof." In addition, Chase voluntarily dismissed all defendants other than Hazan.

The Washington Mutual ("WAMU") mortgage lien was wiped out in the Chapter 11 Bankruptcy because the mortgagee participated in the bankruptcy, the plan was confirmed, the property was dealt with in the plan, and the mortgagee's rights are not preserved in the plan. To the contrary, the plan expressly delegates to the state court the determination of validity, and certainly does not preserve the mortgage lien. "Accordingly, whether a plan extinguishes a lien depends on the requirements embedded in § 1141(c). The express wording of § 1141(c) provides that a lien is extinguished if (1) the plan is confirmed, (2) the property subject to the lien is "dealt with" by the plan, and (3) neither the plan nor the order of confirmation preserves it." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 346–47 (2d Cir. 2015). Similarly, "We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 348 (2d Cir. 2015); *see also In re Dynamic Int'l Airways, LLC*, 17-10814, 2018 WL 7017736, at *8 (Bankr. M.D.N.C. Aug. 6, 2018).

Plaintiff's action is barred by its failure to comply with Section 702.015, Florida Statutes. Without limitation, the Complaint must contain affirmative allegations expressly made by the Plaintiff at the time the proceeding is commenced that the Plaintiff is the holder of the <u>original</u> note secured by the mortgage or allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note under Section 673.3011, Florida Statutes. *See* Section 702.015(2), Florida Statutes. Here, Plaintiff alleges that "Plaintiff acquired ownership of the subject loan from

2

the Federal Insurance Corporation ("FDIC") as Receiver for Washington Mutual Bank pursuant to a September 25, 2008 Purchase and Assumption Agreement between the FDIC and Chase. Chase or its counsel is in physical possession of the Note and is, therefore, entitled to enforce the Note as a nonholder in possession of the instrument who has the rights of a holder pursuant to Section 673.3011(2) Florida Statutes." First Amended Complaint ¶6. Plaintiff does not specifically allege that it is the holder of the original note as required by Section 702.015(2), Florida Statutes, and has not filed a certification of possession of the original note as required by Section 702.015(4), Florida Statutes. Indeed, Washington Mutual lost the original note more than a decade ago. In a prior case in this Court, *Washington Mutual Bank v. Elizabeth Hazan, et al.*, Case No. 08-15394 CA 01, on September 24, 2008, Washington Mutual Bank provided sworn testimony that the original note had been lost in an affidavit of lost note. In fact, in *JPMorgan Chase Bank v. Elizabeth Hazan, et al.*, Case No. 09-25721 CA 20, JPMorgan Chase Bank submitted its own sworn testimony to the same effect in an affidavit of lost note filed on May 7, 2009. But Plaintiff has failed to file a lost note affidavit in the instant case as required by Section 702.015(5), Florida Statutes, or to plead a reestablishment of lost note count in the Complaint that would allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note.

Plaintiff lacks standing. It is well settled that standing must be possessed at the outset and cannot be cured post-filing. "A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" at the time the complaint is filed. *Russell v. BAC Home Loans Servicing, LP*, 239 So. 3d 98, 100 (Fla. 4th DCA 2018) (quoting *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012)). Plaintiff is not the holder of either the note or mortgage. Other than Plaintiff's allegation that it "… is entitled to enforce the Note as a holder in possession and to foreclose the Mortgage

3

securing the Note," Plaintiff has not specifically alleged that it is the holder of the <u>original</u> note and has not filed a certification of possession of the original note. According to affidavits submitted by Washington Mutual Bank and JPMorgan Chase Bank in prior litigation, the note was lost long before this action was filed and Plaintiff has not filed a lost note affidavit or pleaded a count for reestablishment of lost note in the Complaint. Further, no allegations were made that the loan was assigned to JPMorgan Chase Bank nor was an assignment of mortgage attached to the complaint. Section 559.715 requires an assignee to give written notice to the debtor within 30 days of assignment and no such notice was provided to the Defendant, evidencing that the note was not endorsed properly or assigned.

Plaintiff cannot obtain a judgment without surrendering the original note. "[I]n the case of original mortgages and promissory notes, they are not merely exhibits but instruments which *must be surrendered* prior to the issuance of a judgment. The judgment takes the place of the promissory note. Surrendering the note is essential so that it cannot thereafter be negotiated.… Stated differently, surrender removes a note from the stream of commerce, preventing someone else from trying to enforce it against the defendant a second time." *Deutsche Bank Nat. Trust Co. v. Clarke*, 87 So. 3d 58, 62 (Fla. 4th DCA 2012) (emphasis in the original). "In a foreclosure action the promissory note must be removed from the stream of commerce because the note is a negotiable instrument. A plaintiff must surrender the original promissory note to the *court or court clerk* or provide a satisfactory reason for the failure to do so before the trial court can issue a final judgment. *ALS Maxim I LLC v. Katsenko*, 218 So. 3d 472, 474 (Fla. 2d DCA 2017) (citation omitted). Given that Washington Mutual lost the original note over a decade ago, the Plaintiff will not be able to surrender the note prior to the issuance of a judgment. While "lost note" is an exception to the above, Plaintiff failed to file a lost note affidavit as required by Section 702.015(5), Florida

4

Statutes, as well as plead a reestablishment of lost note count in the Complaint that would allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note under Section 673.3011, Florida Statutes. Thus, unless Plaintiff amends, Plaintiff is precluded from obtaining a judgment for the reasons stated in this defense.

Defendant challenges the authenticity of the note and/or the authority of the person who executed the blank and original endorsement. According to sworn affidavits submitted by Washington Mutual and JPMorgan Chase Bank in prior litigation, the note was lost more than a decade ago. Additionally, the person signing the note never actually affixed their signature, which appears to be a "robosignature."

Plaintiff has failed to comply with conditions precedent to instituting suit, including failing to provide a proper notice of default and proper pre-acceleration notice to Defendant, and Defendant has been prejudiced thereby. Further, the Complaint is devoid of any allegation that a notice of pre-acceleration was given as required by the Mortgage, nor is a copy of any pre-acceleration notice purportedly given attached as an exhibit to the Complaint.

Plaintiff is barred from enforcing the alleged debt to the extent it exceeds the amount of the principal amount on which taxes were paid under section 201.08(1), Florida Statutes. The promissory note and mortgage, at origination, reference a debt with a principal amount of $3,825,000.00 secured by the mortgage. It appears that Washington Mutual paid certain taxes on the original principal amount of $3,825,000.00 when the mortgage was recorded. Chase is now seeking to enforce and collect a debt under the same promissory note and secured by the same mortgage with an increased principal amount. The principal amount is purportedly $4,282,432.36 according to paragraph 12 of the Complaint, an increased principal amount of $457,432.36. "In this district, a note or mortgage may not be enforced until the tax has been paid...." *Nikooie v.*

5

*JPMorgan Chase Bank, N.A.*, 183 So. 3d 424, 430 (Fla. 3rd DCA 2014). "The failure to pay tax

on the increased principal amount also precludes enforcement. § 199.282(4), Fla. Stat. (2006).

That provision plainly pertains to mortgage liens for original loans and future advances alike." *Id.*

at 431. Thus, in the absence of payment of certain taxes on the increased amount of principal that

Plaintiff is seeking, Plaintiff may not sue to recover the increased amount.

Plaintiff has failed to comply with Section 660.27, Florida Statutes. Section 660.27, titled:

*Deposit of securities with Chief Financial Officer*, provides, in pertinent part:

> (1)   Before transacting any trust business in this state, every trust
> company and every state or national bank or state or federal
> association having trust powers shall give satisfactory security by
> the deposit or pledge of security of the kind or type provided in this
> section having at all times a market value in an amount equal to 25
> percent of the issued and outstanding capital stock of such trust
> company, bank, or state or federal stock association or, in the case
> of a federal mutual association, an equivalent amount determined by
> the office, or the sum of $25,000, whichever is greater. However,
> the value of the security deposited or pledged pursuant to the
> provisions of this section shall not be required to exceed $500,000.
> Any notes, mortgages, bonds, or other securities, other than shares
> of stock, eligible for investment by a state bank, state association, or
> state trust company, or eligible for investment by fiduciaries, shall
> be accepted as satisfactory security for the purposes of this section.

Plaintiff is subject to this requirement. Section 658.12(20), Florida Statutes defines "trust

business" as "the business of acting as a fiduciary when such business is conducted by a bank, a

state or federal association, or a trust company, or when conducted by any other business

organization for compensation that the office does not consider to be de minimis." In turn, Section,

658.12(8), Florida Statutes, defines "fiduciary" as "…a trustee; committee, guardian, custodian,

conservator, or other personal representative of a person, property, or an estate; registrar or transfer

agent of, or in connection with, evidences of indebtedness of every kind and of stocks and bonds

and other securities; fiscal or financial agent; investment adviser; receiver; trustee in bankruptcy; assignee for creditors; or holder of any similar representative position or any other position of trust, including a person acting in any or all the capacities and performing any or all the functions enumerated in s. 660.34."

Without limitation, Plaintiff is transacting trust business in the State of Florida by, among other things, acquiring, holding, and transferring mortgages on property in Florida; receiving assignments of promissory notes; receiving payments from Florida consumers on mortgage notes; enforcing notes by filing and prosecuting this and other foreclosure actions; foreclosing on mortgages; purchasing foreclosed properties at judicial sales; and owning and selling properties acquired at judicial sales. As such, Plaintiff is required to post a bond pursuant to Section 660.27, Florida Statutes, to transact business and bring lawsuits in the State of Florida.

Plaintiff's claim is barred because it has come to court with unclean hands. Under the doctrine of unclean hands, "one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim. It is not essential that the act be a crime; it is enough that it be condemned by honest and reasonable men... Recently, this court found that unclean hands is tantamount to "[u]nscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct." *Shahar v. Green Tree Servicing LLC*, 125 So. 3d 251, 253 (Fla. 4th DCA 2013) (reversing the trial court's grant of summary judgment on the defense of unclean hands). As set forth above, this action was instituted despite that the promissory note was lost more than a decade ago and the entire lien wiped out by the bankruptcy.

All or a portion of Plaintiff's claim is barred by the statute of limitations to the extent that Plaintiff seeks payment of amounts that became due more than five years before this action was filed.

7

HAZAN is the record owner of real property ("SUBJECT PROPERTY") located at 6913 Valencia Drive, Fisher Island, Florida 33109 and legally described as follows:

> Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida.

JPMORGAN filed its Complaint to Foreclose Mortgage on August 2, 2013 in which the sole count of the complaint sought foreclosure of a mortgage against the SUBJECT PROPERTY.

Thereafter, HAZAN filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida under Case Number 16-10389-AJC.

On November 29, 2016, Bankruptcy Court entered an order granting JPMORGAN's motion for relief from stay in which the automatic stay was lifted so that Plaintiff could litigate its foreclosure action "…to the point of judgment, but not to conduct a foreclosure sale of the [SUBJECT PROPERTY]." (emphasis added).

Thereafter, on June 11, 2018, the Bankruptcy Court entered an order confirming HAZAN's Fourth Amended Plan of Reorganization ("BANKRUPTCY PLAN").

By virtue of the confirmation of the Bankruptcy Plan and by operation of the Bankruptcy Code, the Washington Mutual Bank mortgage, the rights to which JPMORGAN claims to hold, has been eliminated.

1.      "We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings." *In re N. New England*

8

*Tel. Operations LLC*, 795 F.3d 343. 348 (2d Cir. 2015); *See also In re Dynamic Int'l Airways, LLC*, 17-10814, 2018 WL 7017736, at \*8 (Bankr. M.D.N.C. Aug. 6, 2018).

All of these conditions are satisfied: the BANKRUPTCY PLAN does not preserve the mortgage; the BANKRUPTCY PLAN was confirmed; the property is dealt with under the BANKRUPTCY PLAN; and the alleged mortgagee participated in the bankruptcy proceedings.

Therefore, the Washington Mutual Bank mortgage, the rights to which JPMORGAN claims to hold, has been extinguished.

Alternatively, the express text of HAZAN's BANKRUPTCY PLAN restricts JPMORGAN.

The BANKRUPTCY PLAN further states that "**If** the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final."

Further, on December 6, 2018, the Bankruptcy Court entered an order of discharge to HAZAN discharging her from, *inter alia,* the alleged amount due under the note.

Notwithstanding the entry of an order of discharge, JPMORGAN continues to send HAZAN monthly invoice statements for the discharged debt allegedly due under the note.

Hazan filed 13 affirmative defenses and a four count counterclaim in response to the amended complaint. The Court held a special set hearing on April 1, 2021 on Chase's (i) motion to strike the affirmative defenses and (ii) motion to dismiss the counterclaim. At the hearing, the Court struck all but three affirmative defenses and three of the four counts of the

9

counterclaim.[1] Hazan does not agree with the Court's position and is planning on moving for rehearing and or appeal.

The Court held that, the only remaining affirmative defenses are that (i) Chase allegedly did not pay documentary stamps on the extra principal set forth in the loan modification; (ii) Chase allegedly did not provide security with the State of Florida as required to conduct a trust business in the State; and (iii) Chase allegedly did not send Hazan an acceleration notice. The only remaining counterclaim is that Hazan is entitled to quiet title to the property if it is determined that Chase does not have a valid mortgage. The Court stated that Hazan can seek to amend the FCCPA count of her counterclaim. Hazan does not agree with the Court's ruling and is planning on moving for rehearing and or appeal.

### 2. Pleading Status and Proposed Deadline for Amendment

Chase is currently traveling under an amended complaint that has one count for declaratory relief, as noted above. Hazan filed an answer, affirmative defenses and counterclaim. Hazan filed a motion to amend her affirmative defenses and counterclaim in advance of the April 1, 2021 special set hearing. **Hazan proposes June 1, 2021 as the deadline for Hazan to amend her affirmative defenses and counterclaim. Chase will then have the standard amount of time to respond to Hazan's amended pleading**.

### 3. Status of Outstanding Discovery and Proposed Schedule and Deadlines

a.      To date, Chase and Hazan have each served a request for production of documents and each has responded to the other's request.

---

[1] Two business days after the hearing, Chase circulated draft orders granting the motions in part, as ruled on by the Court at the hearing. Hazan, however, does not agree to the terms of the orders, and said she wants to get a transcript of the hearing.

b. Chase intends to depose Chase, its agents, attorneys and other parties, Washington Mutual, its agents, attorneys and other parties, and, if appropriate, other fact witnesses Chase discloses.

c. Hazan does anticipates the need for expert witnesses.

d. **Hazan proposes December 1, 2021 as the deadline to take fact discovery, subject to extensions**.

## 4. Dispositive Motions anticipated and deadline for briefing such motions.

Hazan anticipates filing a summary judgment motion. Hazan **proposes a deadline of January 1, 2022 (or 30 days after the discovery cutoff) to file the motion; a deadline for Hazan to respond to the motion of 20 days after the filing of the motion; and a deadline for Chase to reply to Hazan's response of 20 days thereafter.**

## 5. Mediation Efforts

Chase and Hazan have had limited settlement discussions, but have not yet engaged in mediation. **Chase proposes a deadline for mediation of January 1, 2022**. Hazan is respectfully requesting the Court ordering Plaintiff Chase and Defendant Hazan to mediation within the next sixty days.

## 6. A Statement of Anticipated Date as to Trial Readiness.

Depending on the course of discovery, Hazan's amended response to the amended complaint and the outcome of Chase and Hazan's anticipated summary judgment motions, Hazan **anticipates being ready for trial by April 1, 2022, although that date may change depending on the course of the litigation**. Chase requested a bench trial. Hazan requested a jury trial, but the Court struck the jury demand at the April 1, 2021. Hzan is planning to move

11

for rehearing and appeal the latest ruling of Court. The trial will therefore be a bench trial assuming the Court or the Appeal Court doesn't reverse the Court latest ruling.

Hazan is respectfully asking the Court to postpone[2] the hearing currently set for April 21, 2021 at 10:00 AM.

Dated: April 14, 2021                    Respectfully submitted,

                                         *s/ Elizabeth Hazan*
                                         Elizabeth Hazan,
                                         6913 Valencia Drive
                                         Miami, Florida 33109
                                         Telephone: 305.781.4176
                                         Email: elizabethhazan07@gmail.com
                                         Pro se Defendant

---

[2] Hazan contacted Plaintiff's counsel who has no objection to the rescheduling of the Case Management Conference for a later date.

12

# EXHIBIT 3

**Fisher Island Community Association, Inc.**
**1 Fisher Island Drive**
**Fisher Island Florida  33109**

**S T A T E M E N T**

| Date: | 9/28/2021 |
|---|---|
| Account: | 11213 |

| Amount Paid: | |
|---|---|

Phone: (305) 535-6068
Fax: (305) 604-2373

Email: callison@fisherislandfica.com

**ELIZABETH HAZAN**

**6913 VALENCIA DRIVE**
**FISHER ISLAND FL    33109**

*^Please return this portion with your payment^*

| Document No. | Date | Code | Description | Amount | Balance |
|---|---|---|---|---|---|
| | 6/1/2021 | BBF | | $639,221.81 | $639,221.81 |
| FCHRG1005484 | 6/2/2021 | SLS | FCHRG1005484 | $4,473.20 | $643,695.01 |
| FCHRG1005513 | 7/2/2021 | SLS | FCHRG1005513 | $4,473.20 | $648,168.21 |
| LC003178 | 7/15/2021 | SLS | LC003178 | $470.46 | $648,638.67 |
| FCHRG1005537 | 8/9/2021 | SLS | FCHRG1005537 | $4,614.34 | $653,253.01 |
| QA0033890 | 9/1/2021 | SLS | QA0033890 | $9,409.18 | $662,662.19 |
| FCHRG1005579 | 9/2/2021 | SLS | FCHRG1005579 | $4,614.34 | $667,276.53 |

| Amount Due: | $667,276.53 |
|---|---|

| Current | 0-30 Days | 31 - 60 Days | 61 and Over | – | – | – |
|---|---|---|---|---|---|---|
| $14,023.52 | $4,614.34 | $4,943.66 | $643,695.01 | $0.00 | $0.00 | $0.00 |

Codes:  SLS = Sales / Invoices   FIN = Finance Charges   CR = Credit Memos
SCH = Scheduled Payments   SVC = Service / Repairs   RTN = Returns
DR = Debit Memos   WRN = Warranties   PMT = Payments

```
ystem:    9/28/2021   1:23:15 PM           Fisher Island Community Associ                    Page:   1
ser Date:  9/28/2021                    TRANSACTION BY CUSTOMER INQUIRY REPORT            User ID: carola
                                              Receivables Management

ustomer ID:  11213              Elizabeth Hazan

anges:                    From:                    To:
  Document Number          First                   Last
  Document Date            First                   Last

orted By:  Document Date                     Include:  Open

  Voided
```

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|-----------------|----------|---|------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | 1ST Q 09 - 617 | | 1/1/2009 | SLSTE00000019 | 1ST Q 09 | | Z-US$ | |
| 12/2/2008 | | 1ST Q 09 - 617 | | $0.00 | $0.00 | | $5,409.00 | | $3,109.72 |
| pen | SLS | 2ND Q 09 - 978 | | 4/1/2009 | SLSTE00000024 | 2ND Q ASSESS | | Z-US$ | |
| 3/2/2009 | | 2ND Q 09 - 978 | | $0.00 | $0.00 | | $5,409.00 | | $5,409.00 |
| pen | SLS | Q03090605 | | 7/1/2009 | SLSTE00000027 | 3RD Q 2009 | | Z-US$ | |
| 6/1/2009 | | Q03090605 | | $0.00 | $0.00 | | $5,409.00 | | $5,409.00 |
| pen | SLS | Q04090603 | | 10/1/2009 | SLSTE00000029 | 0409Q-C | | Z-US$ | |
| 9/1/2009 | | Q04090603 | | $0.00 | $0.00 | | $5,409.00 | | $5,409.00 |
| pen | SLS | Q01101270 | | 1/1/2010 | SLSTE00000049 | 1STQ10 | | Z-US$ | |
| 12/2/2009 | | Q01101270 | | $0.00 | $0.00 | | $5,450.00 | | $5,450.00 |
| pen | SLS | QA0000578 | | 4/1/2010 | SLSTE00000069 | 2Q10 | | Z-US$ | |
| 3/2/2010 | | QA0000578 | | $0.00 | $0.00 | | $5,450.00 | | $5,450.00 |
| pen | SLS | QA0001934 | | 7/1/2010 | SLSTE00000096 | 3Q 10A | | Z-US$ | |
| 6/1/2010 | | QA0001934 | | $0.00 | $0.00 | | $5,450.00 | | $5,450.00 |
| pen | SLS | QA0002612 | | 10/1/2010 | SLSTE00000122 | 4Q 10 | | Z-US$ | |
| 9/1/2010 | | QA0002612 | | $0.00 | $0.00 | | $5,450.00 | | $5,450.00 |
| pen | SLS | QA0008020 | | 7/1/2012 | SLSTE00000330 | 3RD Q 12 | | Z-US$ | |
| 6/1/2012 | | QA0008020 | | $0.00 | $0.00 | | $5,722.50 | | $3,815.00 |
| pen | SLS | INV1007091 | | 8/5/2012 | RMSLS00001083 | 07062012ODRR | | Z-US$ | |
| 7/6/2012 | | E.Hazan speeding 3/25 & 4/2 | | $0.00 | $0.00 | | $200.00 | | $200.00 |
| pen | DR | DEBIT1000436 | | 8/31/2012 | RMSLS00001098 | 8/12PPI | | Z-US$ | |
| 8/1/2012 | | 8/12 P. PLAN INTEREST | | $0.00 | $0.00 | | $295.51 | | $295.51 |
| pen | DR | DEBIT1000444 | | 10/1/2012 | RMSLS00001121 | 0912PPINT | | Z-US$ | |
| 9/1/2012 | | 09/12 P.Plan Interest | | $0.00 | $0.00 | | $273.62 | | $273.62 |
| pen | SLS | QA0008695 | | 10/1/2012 | SLSTE00000359 | 4Q12ASS | | Z-US$ | |
| 9/1/2012 | | QA0008695 | | $0.00 | $0.00 | | $5,722.50 | | $5,722.50 |
| pen | DR | DEBIT1000469 | | 10/31/2012 | RMSLS00001139 | 1012PPINT | | Z-US$ | |
| 10/1/2012 | | 10/12 P.Plan Interest | | $0.00 | $0.00 | | $269.81 | | $269.81 |
| pen | DR | DEBIT1000481 | | 12/1/2012 | RMSLS00001157 | 1112PPI | | Z-US$ | |
| 11/1/2012 | | 11/12 P. Plan Interest | | $0.00 | $0.00 | | $248.55 | | $248.55 |
| pen | SLS | LEG11213112012 | | 12/20/2012 | SLSTE00000378 | 11202012LEG | | Z-US$ | |
| 11/20/2012 | | LEG11213112012 | | $0.00 | $0.00 | | $1,210.85 | | $1,210.85 |
| pen | DR | DEBIT1000488 | | 12/31/2012 | RMSLS00001178 | 1212PPINT | | Z-US$ | |
| 12/1/2012 | | 12/12 P.Plan Interest | | $0.00 | $0.00 | | $243.71 | | $243.71 |

```
ystem:      9/28/2021   1:23:15 PM          Fisher Island Community Associ                    Page:    2
ser Date:   9/28/2021               TRANSACTION BY CUSTOMER INQUIRY REPORT             User ID: carola
                                           Receivables Management

ustomer ID:  11213              Elizabeth Hazan

 Voided
```

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | | Amount Remaining |
| pen<br>12/2/2012 | SLS | QA0009375<br>QA0009375 | | 1/1/2013<br>$0.00 | SLSTE00000385<br>$0.00 | 1ST 2013<br>$5,722.50 | Z-US$ | $5,722.50 |
| pen<br>1/18/2013 | SLS | LC000879<br>LC000879 | | 2/17/2013<br>$0.00 | SLSTE00000399<br>$0.00 | 011820130DLATE<br>$286.12 | Z-US$ | $286.12 |
| pen<br>2/7/2013 | SLS | FCHRG1003039<br>FCHRG1003039 | | 3/9/2013<br>$0.00 | SLSTE00000405<br>$0.00 | 0212FC<br>$845.95 | Z-US$ | $845.95 |
| pen<br>2/21/2013 | SLS | LC1121302212013<br>LC1121302212013 | | 3/23/2013<br>$0.00 | SLSTE00000408<br>$0.00 | 022120130DLEG<br>$1,575.00 | Z-US$ | $1,575.00 |
| pen<br>3/2/2013 | SLS | QA0010051<br>QA0010051 | | 4/1/2013<br>$0.00 | SLSTE00000409<br>$0.00 | 2ND Q 13<br>$5,722.50 | Z-US$ | $5,722.50 |
| pen<br>3/4/2013 | SLS | FCHRG1003060<br>FCHRG1003060 | | 4/3/2013<br>$0.00 | SLSTE00000411<br>$0.00 | 0313FIN<br>$845.95 | Z-US$ | $845.95 |
| pen<br>3/7/2013 | SLS | LEG1121303072013<br>LEG1121303072013 | | 4/6/2013<br>$0.00 | SLSTE00000417<br>$0.00 | 03072013LEGHAZ<br>$2,396.90 | Z-US$ | $2,396.90 |
| pen<br>3/25/2013 | SLS | LEG11213032513<br>LEG11213032513 | | 4/24/2013<br>$0.00 | SLSTE00000424<br>$0.00 | 03252013LEG<br>$58.50 | Z-US$ | $58.50 |
| pen<br>4/2/2013 | SLS | FCHRG1003076<br>FCHRG1003076 | | 5/2/2013<br>$0.00 | SLSTE00000427<br>$0.00 | 0413FC<br>$845.95 | Z-US$ | $845.95 |
| pen<br>4/17/2013 | SLS | LC000946<br>LC000946 | | 5/17/2013<br>$0.00 | SLSTE00000429<br>$0.00 | 04172013LATE<br>$286.12 | Z-US$ | $286.12 |
| pen<br>5/6/2013 | SLS | FCHRG1003089<br>FCHRG1003089 | | 6/5/2013<br>$0.00 | SLSTE00000439<br>$0.00 | 0513FC<br>$931.79 | Z-US$ | $931.79 |
| pen<br>6/1/2013 | SLS | QA0010720<br>QA0010720 | | 7/1/2013<br>$0.00 | SLSTE00000433<br>$0.00 | 3Q 13<br>$5,544.12 | Z-US$ | $5,544.12 |
| pen<br>6/5/2013 | SLS | FCHRG1003102<br>FCHRG1003102 | | 7/5/2013<br>$0.00 | SLSTE00000440<br>$0.00 | 0613FC<br>$931.79 | Z-US$ | $931.79 |
| pen<br>7/2/2013 | SLS | FCHRG1003115<br>FCHRG1003115 | | 8/1/2013<br>$0.00 | SLSTE00000444<br>$0.00 | 0713FC<br>$931.79 | Z-US$ | $931.79 |
| pen<br>7/19/2013 | SLS | LC001000<br>LC001000 | | 8/18/2013<br>$0.00 | SLSTE00000447<br>$0.00 | 0713LF<br>$277.21 | Z-US$ | $277.21 |
| pen<br>7/19/2013 | SLS | LG000263<br>LG000263 | | 8/18/2013<br>$0.00 | SLSTE00000446<br>$0.00 | LEGAL<br>$3,244.34 | Z-US$ | $3,244.34 |
| pen<br>8/6/2013 | SLS | FCHRG1003124<br>FCHRG1003124 | | 9/5/2013<br>$0.00 | SLSTE00000452<br>$0.00 | 0813FC<br>$931.79 | Z-US$ | $931.79 |
| pen<br>8/22/2013 | SLS | LG000269<br>LG000269 | | 9/21/2013<br>$0.00 | SLSTE00000454<br>$0.00 | 0713LG<br>$75.00 | Z-US$ | $75.00 |
| pen<br>9/1/2013 | SLS | QA0011391<br>QA0011391 | | 10/1/2013<br>$0.00 | SLSTE00000455<br>$0.00 | 4Q 13<br>$5,544.12 | Z-US$ | $5,544.12 |

```
ystem:     9/28/2021   1:23:15 PM           Fisher Island Community Associ                    Page:   3
ser Date:  9/28/2021                   TRANSACTION BY CUSTOMER INQUIRY REPORT                  User ID: carola
                                              Receivables Management

ustomer ID: 11213                      Elizabeth Hazan

 Voided
```

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | Amount Remaining |
| pen | SLS | FCHRG1003135 | | 10/4/2013 | SLSTE00000457 | 913FC | | Z-US$ |
| 9/4/2013 | | FCHRG1003135 | | $0.00 | $0.00 | | $1,014.95 | $1,014.95 |
| pen | SLS | LG000275 | | 10/12/2013 | SLSTE00000462 | 09.13 LEGAL | | Z-US$ |
| 9/12/2013 | | LG000275 | | $0.00 | $0.00 | | $500.96 | $500.96 |
| pen | SLS | FCHRG1003151 | | 11/3/2013 | SLSTE00000468 | 1013FC | | Z-US$ |
| 10/4/2013 | | FCHRG1003151 | | $0.00 | $0.00 | | $1,014.95 | $1,014.95 |
| pen | SLS | LC001049 | | 11/17/2013 | SLSTE00000470 | 4QLC | | Z-US$ |
| 10/18/2013 | | LC001049 | | $0.00 | $0.00 | | $277.21 | $277.21 |
| pen | SLS | LG000281 | | 11/29/2013 | SLSTE00000472 | 1013LG | | Z-US$ |
| 10/30/2013 | | LG000281 | | $0.00 | $0.00 | | $835.40 | $835.40 |
| pen | SLS | FCHRG1003170 | | 12/8/2013 | SLSTE00000477 | 113FC | | Z-US$ |
| 11/8/2013 | | FCHRG1003170 | | $0.00 | $0.00 | | $1,098.11 | $1,098.11 |
| pen | SLS | LG000289 | | 12/30/2013 | SLSTE00000487 | 1113LG | | Z-US$ |
| 11/30/2013 | | LG000289 | | $0.00 | $0.00 | | $552.00 | $552.00 |
| pen | SLS | LG000296 | | 1/1/2014 | SLSTE00000489 | 1213LG | | Z-US$ |
| 12/2/2013 | | LG000296 | | $0.00 | $0.00 | | $3,039.33 | $3,039.33 |
| pen | SLS | QA0012069 | | 1/1/2014 | SLSTE00000478 | 1 Q 14 | | Z-US$ |
| 12/2/2013 | | QA0012069 | | $0.00 | $0.00 | | $5,956.05 | $5,956.05 |
| pen | SLS | FCHRG1003191 | | 1/3/2014 | SLSTE00000486 | 1213FC | | Z-US$ |
| 12/4/2013 | | FCHRG1003191 | | $0.00 | $0.00 | | $1,098.11 | $1,098.11 |
| pen | SLS | FCHRG1003203 | | 2/9/2014 | SLSTE00000497 | 0114FC | | Z-US$ |
| 1/10/2014 | | FCHRG1003203 | | $0.00 | $0.00 | | $1,179.25 | $1,179.25 |
| pen | SLS | LC001098 | | 2/15/2014 | SLSTE00000498 | 1Q14LC | | Z-US$ |
| 1/16/2014 | | LC001098 | | $0.00 | $0.00 | | $297.80 | $297.80 |
| pen | SLS | LG000301 | | 2/28/2014 | SLSTE00000499 | 0114LG | | Z-US$ |
| 1/29/2014 | | LG000301 | | $0.00 | $0.00 | | $510.00 | $510.00 |
| pen | SLS | FCHRG1003220 | | 3/8/2014 | SLSTE00000500 | 0214FC | | Z-US$ |
| 2/6/2014 | | FCHRG1003220 | | $0.00 | $0.00 | | $1,268.59 | $1,268.59 |
| pen | SLS | LG000307 | | 3/30/2014 | SLSTE00000513 | 02/14 LEG | | Z-US$ |
| 2/28/2014 | | LG000307 | | $0.00 | $0.00 | | $58.50 | $58.50 |
| pen | SLS | QA0012748 | | 4/1/2014 | SLSTE00000508 | 2ND Q 14 | | Z-US$ |
| 3/2/2014 | | QA0012748 | | $0.00 | $0.00 | | $5,956.05 | $5,956.05 |
| pen | SLS | FCHRG1003244 | | 4/5/2014 | SLSTE00000514 | 03.14FC | | Z-US$ |
| 3/6/2014 | | FCHRG1003244 | | $0.00 | $0.00 | | $1,268.59 | $1,268.59 |
| pen | SLS | LG000311 | | 4/30/2014 | SLSTE00000518 | 0314LEG | | Z-US$ |
| 3/31/2014 | | LG000311 | | $0.00 | $0.00 | | $141.00 | $141.00 |
| pen | SLS | FCHRG1003257 | | 5/3/2014 | SLSTE00000517 | 0414FC | | Z-US$ |
| 4/3/2014 | | FCHRG1003257 | | $0.00 | $0.00 | | $1,268.59 | $1,268.59 |

```
ystem:    9/28/2021   1:23:15 PM           Fisher Island Community Associ                      Page:    4
ser Date: 9/28/2021                    TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                              Receivables Management
```

ustomer ID:  11213                    Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | | Amount Remaining |
| pen | SLS | LC001153 | | 5/16/2014 | SLSTE00000525 | 2Q14LC | Z-US$ | |
| 4/16/2014 | | LC001153 | | $0.00 | $0.00 | $297.80 | | $297.80 |
| pen | SLS | INV1009303 | | 5/30/2014 | RMSLS00001526 | 414 | Z-US$ | |
| 4/30/2014 | | 04/14 LEGAL | | $0.00 | $0.00 | $161.50 | | $161.50 |
| pen | SLS | FCHRG1003265 | | 6/4/2014 | SLSTE00000529 | 0514FC | Z-US$ | |
| 5/5/2014 | | FCHRG1003265 | | $0.00 | $0.00 | $1,268.59 | | $1,268.59 |
| pen | SLS | INV1009361 | | 6/30/2014 | RMSLS00001543 | 05.14 | Z-US$ | |
| 5/31/2014 | | 05/14 Legal | | $0.00 | $0.00 | $112.00 | | $112.00 |
| pen | SLS | QA0013422 | | 7/1/2014 | SLSTE00000530 | 3Q14 | Z-US$ | |
| 6/1/2014 | | QA0013422 | | $0.00 | $0.00 | $5,956.05 | | $5,956.05 |
| pen | SLS | FCHRG1003270 | | 7/6/2014 | SLSTE00000532 | 0614FC | Z-US$ | |
| 6/6/2014 | | FCHRG1003270 | | $0.00 | $0.00 | $1,357.93 | | $1,357.93 |
| pen | SLS | LG000313 | | 7/30/2014 | SLSTE00000542 | 0614LG | Z-US$ | |
| 6/30/2014 | | LG000313 | | $0.00 | $0.00 | $185.00 | | $185.00 |
| pen | SLS | FCHRG1003276 | | 8/2/2014 | SLSTE00000538 | 0714FC | Z-US$ | |
| 7/3/2014 | | FCHRG1003276 | | $0.00 | $0.00 | $1,357.93 | | $1,357.93 |
| pen | SLS | LC001210 | | 8/16/2014 | SLSTE00000543 | 0714LC | Z-US$ | |
| 7/17/2014 | | LC001210 | | $0.00 | $0.00 | $297.80 | | $297.80 |
| pen | SLS | FCHRG1003295 | | 9/5/2014 | SLSTE00000549 | 814FC | Z-US$ | |
| 8/6/2014 | | FCHRG1003295 | | $0.00 | $0.00 | $1,447.27 | | $1,447.27 |
| pen | SLS | QA0014089 | | 10/1/2014 | SLSTE00000551 | 4Q 14 | Z-US$ | |
| 9/1/2014 | | QA0014089 | | $0.00 | $0.00 | $5,956.05 | | $5,956.05 |
| pen | SLS | FCHRG1003317 | | 10/5/2014 | SLSTE00000557 | 0914FC | Z-US$ | |
| 9/5/2014 | | FCHRG1003317 | | $0.00 | $0.00 | $1,447.27 | | $1,447.27 |
| pen | SLS | LG000326 | | 10/30/2014 | SLSTE00000561 | 0914LG | Z-US$ | |
| 9/30/2014 | | LG000326 | | $0.00 | $0.00 | $243.00 | | $243.00 |
| pen | SLS | FCHRG1003332 | | 11/1/2014 | SLSTE00000560 | 1014FC | Z-US$ | |
| 10/2/2014 | | FCHRG1003332 | | $0.00 | $0.00 | $1,447.27 | | $1,447.27 |
| pen | SLS | LC001256 | | 11/16/2014 | SLSTE00000566 | 4Q14LC | Z-US$ | |
| 10/17/2014 | | LC001256 | | $0.00 | $0.00 | $297.80 | | $297.80 |
| pen | SLS | LG000332 | | 11/30/2014 | SLSTE00000567 | 1014LG | Z-US$ | |
| 10/31/2014 | | LG000332 | | $0.00 | $0.00 | $157.50 | | $157.50 |
| pen | SLS | FCHRG1003338 | | 12/5/2014 | SLSTE00000568 | 1114FC | Z-US$ | |
| 11/5/2014 | | FCHRG1003338 | | $0.00 | $0.00 | $1,447.27 | | $1,447.27 |
| pen | SLS | LG000338 | | 12/30/2014 | SLSTE00000576 | 11.14LG | Z-US$ | |
| 11/30/2014 | | LG000338 | | $0.00 | $0.00 | $58.50 | | $58.50 |
| pen | SLS | QA0014762 | | 1/1/2015 | SLSTE00000573 | 1Q15 | Z-US$ | |
| 12/2/2014 | | QA0014762 | | $0.00 | $0.00 | $6,293.04 | | $6,293.04 |

ustomer ID: 11213                    Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | FCHRG1003347 | | 1/2/2015 | SLSTE00000575 | 12.14FC | | Z-US$ | |
| 12/3/2014 | | FCHRG1003347 | | $0.00 | $0.00 | | $1,536.66 | | $1,536.66 |
| pen | SLS | FCHRG1003363 | | 2/6/2015 | SLSTE00000582 | 0115FC | | Z-US$ | |
| 1/7/2015 | | FCHRG1003363 | | $0.00 | $0.00 | | $1,536.66 | | $1,536.66 |
| pen | SLS | LC001327 | | 2/15/2015 | SLSTE00000589 | 0115LC | | Z-US$ | |
| 1/16/2015 | | LC001327 | | $0.00 | $0.00 | | $314.65 | | $314.65 |
| pen | SLS | INV1010077 | | 3/2/2015 | RMSLS00001667 | 0115LG | | Z-US$ | |
| 1/31/2015 | | 01/15 LEGAL FEES | | $0.00 | $0.00 | | $112.00 | | $112.00 |
| pen | SLS | FCHRG1003383 | | 3/8/2015 | SLSTE00000590 | 0215FC | | Z-US$ | |
| 2/6/2015 | | FCHRG1003383 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| pen | SLS | QA0015431 | | 4/1/2015 | SLSTE00000598 | 2Q15 | | Z-US$ | |
| 3/2/2015 | | QA0015431 | | $0.00 | $0.00 | | $6,293.04 | | $6,293.04 |
| pen | SLS | FCHRG1003408 | | 4/4/2015 | SLSTE00000601 | 0315FC | | Z-US$ | |
| 3/5/2015 | | FCHRG1003408 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| pen | SLS | LG000348 | | 4/30/2015 | SLSTE00000613 | 0315LG | | Z-US$ | |
| 3/31/2015 | | LG000348 | | $0.00 | $0.00 | | $379.50 | | $379.50 |
| pen | SLS | FCHRG1003422 | | 5/2/2015 | SLSTE00000608 | 0415FC | | Z-US$ | |
| 4/2/2015 | | FCHRG1003422 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| pen | SLS | LC001393 | | 5/16/2015 | SLSTE00000615 | 2QLC | | Z-US$ | |
| 4/16/2015 | | LC001393 | | $0.00 | $0.00 | | $314.65 | | $314.65 |
| pen | SLS | FCHRG1003434 | | 6/4/2015 | SLSTE00000616 | 0515FC | | Z-US$ | |
| 5/5/2015 | | FCHRG1003434 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| pen | SLS | LG000353 | | 6/30/2015 | SLSTE00000624 | 0515LEG | | Z-US$ | |
| 5/31/2015 | | LG000353 | | $0.00 | $0.00 | | $901.00 | | $901.00 |
| pen | SLS | QA0016096 | | 7/1/2015 | SLSTE00000621 | 3Q 15 | | Z-US$ | |
| 6/1/2015 | | QA0016096 | | $0.00 | $0.00 | | $6,293.04 | | $6,293.04 |
| pen | SLS | FCHRG1003444 | | 7/4/2015 | SLSTE00000623 | 0615FC | | Z-US$ | |
| 6/4/2015 | | FCHRG1003444 | | $0.00 | $0.00 | | $1,725.46 | | $1,725.46 |
| pen | SLS | FCHRG1003456 | | 8/5/2015 | SLSTE00000630 | 0715FC | | Z-US$ | |
| 7/6/2015 | | FCHRG1003456 | | $0.00 | $0.00 | | $1,725.46 | | $1,725.46 |
| pen | SLS | LC001457 | | 8/15/2015 | SLSTE00000634 | 3Q15 | | Z-US$ | |
| 7/16/2015 | | LC001457 | | $0.00 | $0.00 | | $314.65 | | $314.65 |
| pen | SLS | LG000356 | | 8/30/2015 | SLSTE00000635 | 715LG | | Z-US$ | |
| 7/31/2015 | | LG000356 | | $0.00 | $0.00 | | $2,607.25 | | $2,607.25 |
| pen | SLS | FCHRG1003474 | | 9/5/2015 | SLSTE00000636 | 0815FC | | Z-US$ | |
| 8/6/2015 | | FCHRG1003474 | | $0.00 | $0.00 | | $1,819.86 | | $1,819.86 |
| pen | SLS | LG000360 | | 9/30/2015 | SLSTE00000648 | 815LG | | Z-US$ | |
| 8/31/2015 | | LG000360 | | $0.00 | $0.00 | | $243.50 | | $243.50 |

```
ystem:    9/28/2021  1:23:15 PM              Fisher Island Community Associ                    Page:   6
ser Date: 9/28/2021                      TRANSACTION BY CUSTOMER INQUIRY REPORT                 User ID: carola
                                              Receivables Management

ustomer ID:  11213                  Elizabeth Hazan

Voided
```

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | | Amount Remaining |
| pen | SLS | QA0016762 | | 10/1/2015 | SLSTE00000646 | 4Q15 | | Z-US$ |
| 9/1/2015 | | QA0016762 | | $0.00 | $0.00 | | $6,293.04 | $6,293.04 |
| pen | SLS | FCHRG1003495 | | 10/4/2015 | SLSTE00000649 | 915FC | | Z-US$ |
| 9/4/2015 | | FCHRG1003495 | | $0.00 | $0.00 | | $1,819.86 | $1,819.86 |
| pen | SLS | LG000367 | | 10/30/2015 | SLSTE00000653 | 915LG | | Z-US$ |
| 9/30/2015 | | LG000367 | | $0.00 | $0.00 | | $272.50 | $272.50 |
| pen | SLS | FCHRG1003510 | | 11/8/2015 | SLSTE00000654 | 1015FC | | Z-US$ |
| 10/9/2015 | | FCHRG1003510 | | $0.00 | $0.00 | | $1,819.86 | $1,819.86 |
| pen | SLS | LC001521 | | 11/19/2015 | SLSTE00000658 | 4Q15LC | | Z-US$ |
| 10/20/2015 | | LC001521 | | $0.00 | $0.00 | | $314.65 | $314.65 |
| pen | SLS | LG000373 | | 11/30/2015 | SLSTE00000663 | 1015LG | | Z-US$ |
| 10/31/2015 | | LG000373 | | $0.00 | $0.00 | | $272.19 | $272.19 |
| pen | SLS | FCHRG1003534 | | 12/6/2015 | SLSTE00000662 | 1115FC | | Z-US$ |
| 11/6/2015 | | FCHRG1003534 | | $0.00 | $0.00 | | $1,914.26 | $1,914.26 |
| pen | SLS | LG000379 | | 12/30/2015 | SLSTE00000667 | 1115LG | | Z-US$ |
| 11/30/2015 | | LG000379 | | $0.00 | $0.00 | | $3,613.48 | $3,613.48 |
| pen | SLS | QA0017428 | | 1/1/2016 | SLSTE00000665 | 1Q 16 | | Z-US$ |
| 12/2/2015 | | QA0017428 | | $0.00 | $0.00 | | $6,607.73 | $6,607.73 |
| pen | SLS | FCHRG1003570 | | 1/8/2016 | SLSTE00000670 | 1215FC | | Z-US$ |
| 12/9/2015 | | FCHRG1003570 | | $0.00 | $0.00 | | $1,914.26 | $1,914.26 |
| pen | SLS | LG000384 | | 1/30/2016 | SLSTE00000683 | 1215LG | | Z-US$ |
| 12/31/2015 | | LG000384 | | $0.00 | $0.00 | | $685.50 | $685.50 |
| pen | SLS | FCHRG1003589 | | 2/7/2016 | SLSTE00000682 | 0116FC | | Z-US$ |
| 1/8/2016 | | FCHRG1003589 | | $0.00 | $0.00 | | $1,914.26 | $1,914.26 |
| pen | SLS | LC001590 | | 2/17/2016 | SLSTE00000684 | 1Q16 LC | | Z-US$ |
| 1/18/2016 | | LC001590 | | $0.00 | $0.00 | | $330.39 | $330.39 |
| pen | SLS | LG000390 | | 3/1/2016 | SLSTE00000690 | 01.16LG | | Z-US$ |
| 1/31/2016 | | LG000390 | | $0.00 | $0.00 | | $2,382.50 | $2,382.50 |
| pen | SLS | FCHRG1003609 | | 3/6/2016 | SLSTE00000686 | 0216FC | | Z-US$ |
| 2/5/2016 | | FCHRG1003609 | | $0.00 | $0.00 | | $2,013.38 | $2,013.38 |
| pen | SLS | LG000396 | | 3/30/2016 | SLSTE00000701 | 02.16LG | | Z-US$ |
| 2/29/2016 | | LG000396 | | $0.00 | $0.00 | | $2,348.95 | $2,348.95 |
| pen | SLS | QA0018760 | | 4/1/2016 | SLSTE00000692 | 2Q16-1 | | Z-US$ |
| 3/2/2016 | | QA0018760 | | $0.00 | $0.00 | | $6,545.48 | $6,545.48 |
| pen | SLS | FCHRG1003643 | | 4/3/2016 | SLSTE00000696 | 03.16FC | | Z-US$ |
| 3/4/2016 | | FCHRG1003643 | | $0.00 | $0.00 | | $2,013.38 | $2,013.38 |
| pen | SLS | LG000401 | | 4/30/2016 | SLSTE00000708 | 3.16LG | | Z-US$ |
| 3/31/2016 | | LG000401 | | $0.00 | $0.00 | | $497.50 | $497.50 |

```
ystem:    9/28/2021   1:23:15 PM              Fisher Island Community Associ                    Page:    7
ser Date: 9/28/2021                     TRANSACTION BY CUSTOMER INQUIRY REPORT                  User ID: carola
                                               Receivables Management

ustomer ID:  11213                 Elizabeth Hazan

  Voided
```

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|---|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen  SLS | | FCHRG1003665 | | 5/5/2016 | SLSTE00000702 | 04.16FC | | Z-US$ | |
| 4/5/2016 | | FCHRG1003665 | | $0.00 | $0.00 | | $2,013.38 | | $2,013.38 |
| pen  SLS | | LC001638 | | 5/18/2016 | SLSTE00000709 | 2Q16LC | | Z-US$ | |
| 4/18/2016 | | LC001638 | | $0.00 | $0.00 | | $327.27 | | $327.27 |
| pen  SLS | | FCHRG1003686 | | 6/3/2016 | SLSTE00000715 | 5.16FC | | Z-US$ | |
| 5/4/2016 | | FCHRG1003686 | | $0.00 | $0.00 | | $2,111.56 | | $2,111.56 |
| pen  SLS | | LG000406 | | 6/30/2016 | SLSTE00000726 | 05.16LG | | Z-US$ | |
| 5/31/2016 | | LG000406 | | $0.00 | $0.00 | | $78.50 | | $78.50 |
| pen  SLS | | QA0019424 | | 7/1/2016 | SLSTE00000717 | 3Q 16 | | Z-US$ | |
| 6/1/2016 | | QA0019424 | | $0.00 | $0.00 | | $6,545.48 | | $6,545.48 |
| pen  SLS | | FCHRG1003718 | | 7/3/2016 | SLSTE00000725 | 06.16FC | | Z-US$ | |
| 6/3/2016 | | FCHRG1003718 | | $0.00 | $0.00 | | $2,111.56 | | $2,111.56 |
| pen  SLS | | LG000408 | | 7/30/2016 | SLSTE00000732 | 06.16LG | | Z-US$ | |
| 6/30/2016 | | LG000408 | | $0.00 | $0.00 | | $19.50 | | $19.50 |
| pen  SLS | | FCHRG1003731 | | 8/11/2016 | SLSTE00000733 | 07.16FC | | Z-US$ | |
| 7/12/2016 | | FCHRG1003731 | | $0.00 | $0.00 | | $2,111.56 | | $2,111.56 |
| pen  SLS | | LC001695 | | 8/14/2016 | SLSTE00000734 | 3QLC | | Z-US$ | |
| 7/15/2016 | | LC001695 | | $0.00 | $0.00 | | $327.27 | | $327.27 |
| pen  SLS | | LG000412 | | 8/30/2016 | SLSTE00000744 | 07.16LG | | Z-US$ | |
| 7/31/2016 | | LG000412 | | $0.00 | $0.00 | | $419.00 | | $419.00 |
| pen  SLS | | FCHRG1003747 | | 9/3/2016 | SLSTE00000741 | 08.16FC | | Z-US$ | |
| 8/4/2016 | | FCHRG1003747 | | $0.00 | $0.00 | | $2,209.74 | | $2,209.74 |
| pen  SLS | | LG000417 | | 9/30/2016 | SLSTE00000752 | 816LEG | | Z-US$ | |
| 8/31/2016 | | LG000417 | | $0.00 | $0.00 | | $614.50 | | $614.50 |
| pen  SLS | | QA0020109 | | 10/1/2016 | SLSTE00000746 | 4Q16 | | Z-US$ | |
| 9/1/2016 | | QA0020109 | | $0.00 | $0.00 | | $6,545.48 | | $6,545.48 |
| pen  SLS | | FCHRG1003772 | | 10/6/2016 | SLSTE00000748 | 09.16FC | | Z-US$ | |
| 9/6/2016 | | FCHRG1003772 | | $0.00 | $0.00 | | $2,209.74 | | $2,209.74 |
| pen  SLS | | LG000422 | | 10/30/2016 | SLSTE00000759 | 9.16LG | | Z-US$ | |
| 9/30/2016 | | LG000422 | | $0.00 | $0.00 | | $429.00 | | $429.00 |
| pen  SLS | | FCHRG1003787 | | 11/4/2016 | SLSTE00000757 | 10.16FC | | Z-US$ | |
| 10/5/2016 | | FCHRG1003787 | | $0.00 | $0.00 | | $2,209.74 | | $2,209.74 |
| pen  SLS | | LC001749 | | 11/17/2016 | SLSTE00000760 | 10.16LC | | Z-US$ | |
| 10/18/2016 | | LC001749 | | $0.00 | $0.00 | | $327.27 | | $327.27 |
| pen  SLS | | LG000428 | | 11/30/2016 | SLSTE00000762 | 10.16LG | | Z-US$ | |
| 10/31/2016 | | LG000428 | | $0.00 | $0.00 | | $175.00 | | $175.00 |
| pen  SLS | | FCHRG1003805 | | 12/2/2016 | SLSTE00000763 | 11.16FC | | Z-US$ | |
| 11/2/2016 | | FCHRG1003805 | | $0.00 | $0.00 | | $2,307.92 | | $2,307.92 |

Customer ID:  11213                    Elizabeth Hazan

Voided

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | LG000431 | | 12/30/2016 | SLSTE00000771 | 11.16LG | | Z-US$ | |
| 11/30/2016 | | LG000431 | | $0.00 | $0.00 | | $68.00 | | $68.00 |
| Open | SLS | QA0020794 | | 1/1/2017 | SLSTE00000768 | 1ST Q 17 | | Z-US$ | |
| 12/2/2016 | | QA0020794 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1003833 | | 1/4/2017 | SLSTE00000770 | 12.16FC | | Z-US$ | |
| 12/5/2016 | | FCHRG1003833 | | $0.00 | $0.00 | | $2,307.92 | | $2,307.92 |
| Open | SLS | LG000436 | | 1/29/2017 | SLSTE00000785 | 12.16LG | | Z-US$ | |
| 12/30/2016 | | LG000436 | | $0.00 | $0.00 | | $302.50 | | $302.50 |
| Open | SLS | FCHRG1003849 | | 2/3/2017 | SLSTE00000784 | 01.17FC | | Z-US$ | |
| 1/4/2017 | | FCHRG1003849 | | $0.00 | $0.00 | | $2,307.92 | | $2,307.92 |
| Open | SLS | LC001811 | | 2/16/2017 | SLSTE00000787 | 01.17LC | | Z-US$ | |
| 1/17/2017 | | LC001811 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| Open | SLS | LG000439 | | 3/2/2017 | SLSTE00000793 | 01.17LG | | Z-US$ | |
| 1/31/2017 | | LG000439 | | $0.00 | $0.00 | | $174.50 | | $174.50 |
| Open | SLS | FCHRG1003869 | | 3/11/2017 | SLSTE00000794 | 02.17FC | | Z-US$ | |
| 2/9/2017 | | FCHRG1003869 | | $0.00 | $0.00 | | $2,408.87 | | $2,408.87 |
| Open | SLS | LG000443 | | 3/30/2017 | SLSTE00000801 | 2.17LG | | Z-US$ | |
| 2/28/2017 | | LG000443 | | $0.00 | $0.00 | | $536.00 | | $536.00 |
| Open | SLS | QA0021480 | | 4/1/2017 | SLSTE00000795 | 2 Q 17 | | Z-US$ | |
| 3/2/2017 | | QA0021480 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1003906 | | 4/2/2017 | SLSTE00000798 | 03.17FC | | Z-US$ | |
| 3/3/2017 | | FCHRG1003906 | | $0.00 | $0.00 | | $2,408.87 | | $2,408.87 |
| Open | SLS | LG000445 | | 4/30/2017 | SLSTE00000807 | 03.17LG | | Z-US$ | |
| 3/31/2017 | | LG000445 | | $0.00 | $0.00 | | $195.00 | | $195.00 |
| Open | SLS | FCHRG1003927 | | 5/6/2017 | SLSTE00000806 | 04.17FC | | Z-US$ | |
| 4/6/2017 | | FCHRG1003927 | | $0.00 | $0.00 | | $2,408.87 | | $2,408.87 |
| Open | SLS | LC001880 | | 5/18/2017 | SLSTE00000810 | 2QLC | | Z-US$ | |
| 4/18/2017 | | LC001880 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| Open | SLS | LG000449 | | 5/30/2017 | SLSTE00000816 | 4.17LG | | Z-US$ | |
| 4/30/2017 | | LG000449 | | $0.00 | $0.00 | | $39.00 | | $39.00 |
| Open | SLS | FCHRG1003938 | | 6/2/2017 | SLSTE00000815 | 5.17FC | | Z-US$ | |
| 5/3/2017 | | FCHRG1003938 | | $0.00 | $0.00 | | $2,408.87 | | $2,408.87 |
| Open | SLS | LG000453 | | 6/30/2017 | SLSTE00000823 | 5.17LG | | Z-US$ | |
| 5/31/2017 | | LG000453 | | $0.00 | $0.00 | | $29.00 | | $29.00 |
| Open | SLS | QA0022167 | | 7/1/2017 | SLSTE00000817 | 3Q17 | | Z-US$ | |
| 6/1/2017 | | QA0022167 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1003955 | | 7/2/2017 | SLSTE00000821 | 6.17FC | | Z-US$ | |
| 6/2/2017 | | FCHRG1003955 | | $0.00 | $0.00 | | $2,509.87 | | $2,509.87 |

```
ystem:     9/28/2021   1:23:15 PM              Fisher Island Community Associ                        Page:    9
ser Date:  9/28/2021                       TRANSACTION BY CUSTOMER INQUIRY REPORT                     User ID: carola
                                                  Receivables Management
```

ustomer ID:  11213                Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|---|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | LG000457 | | 7/30/2017 | SLSTE00000827 | 6/17 LG | | Z-US$ | |
| 6/30/2017 | | LG000457 | | $0.00 | $0.00 | | $295.50 | | $295.50 |
| pen | SLS | FCHRG1003979 | | 8/6/2017 | SLSTE00000831 | 7.17FC | | Z-US$ | |
| 7/7/2017 | | FCHRG1003979 | | $0.00 | $0.00 | | $2,509.82 | | $2,509.82 |
| pen | SLS | LC001940 | | 8/17/2017 | SLSTE00000834 | 3Q17 LC | | Z-US$ | |
| 7/18/2017 | | LC001940 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| pen | SLS | LG000461 | | 8/30/2017 | SLSTE00000839 | 7.17LG | | Z-US$ | |
| 7/31/2017 | | LG000461 | | $0.00 | $0.00 | | $1,348.50 | | $1,348.50 |
| pen | SLS | FCHRG1004002 | | 9/3/2017 | SLSTE00000838 | 8.17FC | | Z-US$ | |
| 8/4/2017 | | FCHRG1004002 | | $0.00 | $0.00 | | $2,610.77 | | $2,610.77 |
| pen | SLS | QA0022855 | | 10/1/2017 | SLSTE00000840 | 4Q17 | | Z-US$ | |
| 9/1/2017 | | QA0022855 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| pen | SLS | FCHRG1004034 | | 10/5/2017 | SLSTE00000843 | 9..17FC | | Z-US$ | |
| 9/5/2017 | | FCHRG1004034 | | $0.00 | $0.00 | | $2,610.77 | | $2,610.77 |
| pen | SLS | LG000467 | | 10/30/2017 | SLSTE00000853 | 9.17LG | | Z-US$ | |
| 9/30/2017 | | LG000467 | | $0.00 | $0.00 | | $427.00 | | $427.00 |
| pen | SLS | FCHRG1004048 | | 11/4/2017 | SLSTE00000852 | 10.17FC | | Z-US$ | |
| 10/5/2017 | | FCHRG1004048 | | $0.00 | $0.00 | | $2,610.77 | | $2,610.77 |
| pen | SLS | LC002007 | | 11/15/2017 | SLSTE00000854 | 4QLC | | Z-US$ | |
| 10/16/2017 | | LC002007 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| pen | SLS | FCHRG1004063 | | 12/3/2017 | SLSTE00000860 | 11.17FC | | Z-US$ | |
| 11/3/2017 | | FCHRG1004063 | | $0.00 | $0.00 | | $2,711.72 | | $2,711.72 |
| pen | SLS | LG000475 | | 12/30/2017 | SLSTE00000865 | 11.17LG | | Z-US$ | |
| 11/30/2017 | | LG000475 | | $0.00 | $0.00 | | $887.00 | | $887.00 |
| pen | SLS | QA0023545 | | 1/1/2018 | SLSTE00000861 | 1ST Q 18 | | Z-US$ | |
| 12/2/2017 | | QA0023545 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| pen | SLS | FCHRG1004094 | | 1/6/2018 | SLSTE00000864 | 12.17FC | | Z-US$ | |
| 12/7/2017 | | FCHRG1004094 | | $0.00 | $0.00 | | $2,711.72 | | $2,711.72 |
| pen | SLS | LG000481 | | 1/30/2018 | SLSTE00000875 | 12.17LG | | Z-US$ | |
| 12/31/2017 | | LG000481 | | $0.00 | $0.00 | | $498.50 | | $498.50 |
| pen | SLS | FCHRG1004118 | | 2/4/2018 | SLSTE00000871 | 01.18FC | | Z-US$ | |
| 1/5/2018 | | FCHRG1004118 | | $0.00 | $0.00 | | $2,711.72 | | $2,711.72 |
| pen | SLS | LC002083 | | 2/17/2018 | SLSTE00000874 | 0118LC | | Z-US$ | |
| 1/18/2018 | | LC002083 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| pen | SLS | FCHRG1004151 | | 3/7/2018 | SLSTE00000877 | 2.18 FC | | Z-US$ | |
| 2/5/2018 | | FCHRG1004151 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| pen | SLS | LG000492 | | 3/30/2018 | SLSTE00000886 | 1.18LG | | Z-US$ | |
| 2/28/2018 | | LG000492 | | $0.00 | $0.00 | | $4,533.00 | | $4,533.00 |

ustomer ID:  11213              Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | QA0024229 | | 4/1/2018 | SLSTE00000880 | 2Q18 | | Z-US$ | |
| 3/2/2018 | | QA0024229 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| pen | SLS | FCHRG1004194 | | 4/4/2018 | SLSTE00000882 | 3.18FC | | Z-US$ | |
| 3/5/2018 | | FCHRG1004194 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| pen | SLS | LG000498 | | 4/30/2018 | SLSTE00000890 | 3.18LG | | Z-US$ | |
| 3/31/2018 | | LG000498 | | $0.00 | $0.00 | | $1,364.50 | | $1,364.50 |
| pen | SLS | FCHRG1004222 | | 5/5/2018 | SLSTE00000889 | 4.18FC | | Z-US$ | |
| 4/5/2018 | | FCHRG1004222 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| pen | SLS | LC002151 | | 5/17/2018 | SLSTE00000892 | 2Q18LC | | Z-US$ | |
| 4/17/2018 | | LC002151 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| pen | SLS | LG000504 | | 5/30/2018 | SLSTE00000898 | 4.18LG | | Z-US$ | |
| 4/30/2018 | | LG000504 | | $0.00 | $0.00 | | $625.00 | | $625.00 |
| pen | SLS | FCHRG1004234 | | 6/3/2018 | SLSTE00000900 | 5.18FC | | Z-US$ | |
| 5/4/2018 | | FCHRG1004234 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| pen | SLS | LG000508 | | 6/30/2018 | SLSTE00000906 | 5.18LG | | Z-US$ | |
| 5/31/2018 | | LG000508 | | $0.00 | $0.00 | | $50.00 | | $50.00 |
| pen | SLS | QA0024916 | | 7/1/2018 | SLSTE00000901 | 3Q18 | | Z-US$ | |
| 6/1/2018 | | QA0024916 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| pen | SLS | FCHRG1004255 | | 7/6/2018 | SLSTE00000904 | 6.18FC | | Z-US$ | |
| 6/6/2018 | | FCHRG1004255 | | $0.00 | $0.00 | | $2,913.62 | | $2,913.62 |
| pen | SLS | FCHRG1004293 | | 8/4/2018 | SLSTE00000910 | 7.18FC | | Z-US$ | |
| 7/5/2018 | | FCHRG1004293 | | $0.00 | $0.00 | | $2,913.62 | | $2,913.62 |
| pen | SLS | FCHRG1004322 | | 9/6/2018 | SLSTE00000917 | 8.18FC | | Z-US$ | |
| 8/7/2018 | | FCHRG1004322 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| pen | SLS | LG000514 | | 9/30/2018 | SLSTE00000923 | 8.18LF | | Z-US$ | |
| 8/31/2018 | | LG000514 | | $0.00 | $0.00 | | $4,421.28 | | $4,421.28 |
| pen | SLS | FCHRG1004347 | | 10/6/2018 | SLSTE00000921 | 9.18FC | | Z-US$ | |
| 9/6/2018 | | FCHRG1004347 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| pen | SLS | LG000517 | | 10/30/2018 | SLSTE00000929 | 9.18LG | | Z-US$ | |
| 9/30/2018 | | LG000517 | | $0.00 | $0.00 | | $2,363.50 | | $2,363.50 |
| pen | SLS | QA0025541 | | 11/1/2018 | SLSTE00000924 | 4Q18 | | Z-US$ | |
| 10/2/2018 | | QA0025541 | | $0.00 | $0.00 | | $8,407.95 | | $8,407.95 |
| pen | SLS | FCHRG1004369 | | 11/3/2018 | SLSTE00000927 | 10.18FC | | Z-US$ | |
| 10/4/2018 | | FCHRG1004369 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| pen | SLS | FCHRG1004386 | | 12/2/2018 | SLSTE00000931 | 11.18FC | | Z-US$ | |
| 11/2/2018 | | FCHRG1004386 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| pen | SLS | LC002275 | | 12/16/2018 | SLSTE00000937 | 4QLC | | Z-US$ | |
| 11/16/2018 | | LC002275 | | $0.00 | $0.00 | | $420.40 | | $420.40 |

```
ystem:    9/28/2021   1:23:15 PM           Fisher Island Community Associ                    Page:   11
ser Date: 9/28/2021                    TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                              Receivables Management
```

ustomer ID:  11213              Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | LG000525 | | 12/30/2018 | SLSTE00000945 | 11.18LG | | Z-US$ | |
| 11/30/2018 | | LG000525 | | $0.00 | $0.00 | | $2,554.00 | | $2,554.00 |
| pen | SLS | QA0026343 | | 1/1/2019 | SLSTE00000939 | 1Q19QA | | Z-US$ | |
| 12/2/2018 | | QA0026343 | | $0.00 | $0.00 | | $8,407.95 | | $8,407.95 |
| pen | SLS | FCHRG1004411 | | 1/5/2019 | SLSTE00000944 | 12.18FC | | Z-US$ | |
| 12/6/2018 | | FCHRG1004411 | | $0.00 | $0.00 | | $3,140.69 | | $3,140.69 |
| pen | SLS | LG000531 | | 1/30/2019 | SLSTE00000954 | 12.18 LG | | Z-US$ | |
| 12/31/2018 | | LG000531 | | $0.00 | $0.00 | | $679.00 | | $679.00 |
| pen | SLS | FCHRG1004456 | | 2/3/2019 | SLSTE00000948 | 1.19FC | | Z-US$ | |
| 1/4/2019 | | FCHRG1004456 | | $0.00 | $0.00 | | $3,140.69 | | $3,140.69 |
| pen | SLS | LC002342 | | 2/15/2019 | SLSTE00000955 | 1Q19 LC | | Z-US$ | |
| 1/16/2019 | | LC002342 | | $0.00 | $0.00 | | $420.40 | | $420.40 |
| pen | SLS | FCHRG1004487 | | 3/8/2019 | SLSTE00000956 | 2.19FC | | Z-US$ | |
| 2/6/2019 | | FCHRG1004487 | | $0.00 | $0.00 | | $3,266.81 | | $3,266.81 |
| pen | SLS | LG000533 | | 3/30/2019 | SLSTE00000969 | 2.19LG | | Z-US$ | |
| 2/28/2019 | | LG000533 | | $0.00 | $0.00 | | $1,936.50 | | $1,936.50 |
| pen | SLS | QA0026909 | | 4/1/2019 | SLSTE00000964 | 2NDQ19 QA | | Z-US$ | |
| 3/2/2019 | | QA0026909 | | $0.00 | $0.00 | | $8,541.79 | | $8,541.79 |
| pen | SLS | FCHRG1004539 | | 4/3/2019 | SLSTE00000967 | 3.19FC | | Z-US$ | |
| 3/4/2019 | | FCHRG1004539 | | $0.00 | $0.00 | | $3,266.81 | | $3,266.81 |
| pen | SLS | LG000537 | | 4/30/2019 | SLSTE00000979 | 3.19LG | | Z-US$ | |
| 3/31/2019 | | LG000537 | | $0.00 | $0.00 | | $4,966.50 | | $4,966.50 |
| pen | SLS | FCHRG1004578 | | 5/5/2019 | SLSTE00000976 | 4.19FC | | Z-US$ | |
| 4/5/2019 | | FCHRG1004578 | | $0.00 | $0.00 | | $3,266.81 | | $3,266.81 |
| pen | SLS | LC002428 | | 5/17/2019 | SLSTE00000980 | 2QLC | | Z-US$ | |
| 4/17/2019 | | LC002428 | | $0.00 | $0.00 | | $427.09 | | $427.09 |
| pen | SLS | LG000543 | | 5/30/2019 | SLSTE00000981 | 4.19LG | | Z-US$ | |
| 4/30/2019 | | LG000543 | | $0.00 | $0.00 | | $440.00 | | $440.00 |
| pen | SLS | FCHRG1004603 | | 6/7/2019 | SLSTE00000984 | 5.19FC | | Z-US$ | |
| 5/8/2019 | | FCHRG1004603 | | $0.00 | $0.00 | | $3,266.81 | | $3,266.81 |
| pen | SLS | LG000548 | | 6/30/2019 | SLSTE00000993 | 5.19LG | | Z-US$ | |
| 5/31/2019 | | LG000548 | | $0.00 | $0.00 | | $733.50 | | $733.50 |
| pen | SLS | QA0027594 | | 7/1/2019 | SLSTE00000986 | 3Q19QA | | Z-US$ | |
| 6/1/2019 | | QA0027594 | | $0.00 | $0.00 | | $8,541.79 | | $8,541.79 |
| pen | SLS | FCHRG1004618 | | 7/5/2019 | SLSTE00000989 | 6.19FC | | Z-US$ | |
| 6/5/2019 | | FCHRG1004618 | | $0.00 | $0.00 | | $3,394.94 | | $3,394.94 |
| pen | SLS | LG000552 | | 7/30/2019 | SLSTE00000998 | 6.19LG | | Z-US$ | |
| 6/30/2019 | | LG000552 | | $0.00 | $0.00 | | $753.00 | | $753.00 |

```
ystem:     9/28/2021   1:23:15 PM              Fisher Island Community Associ                        Page:   12
ser Date:  9/28/2021                    TRANSACTION BY CUSTOMER INQUIRY REPORT                        User ID: carola
                                              Receivables Management
```

ustomer ID:  11213              Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | FCHRG1004686 | | 8/4/2019 | SLSTE00001002 | 7.19FC | | Z-US$ | |
| 7/5/2019 | | FCHRG1004686 | | $0.00 | $0.00 | | $3,394.94 | | $3,394.94 |
| pen | SLS | LG000559 | | 8/30/2019 | SLSTE00001005 | 7.19LG | | Z-US$ | |
| 7/31/2019 | | LG000559 | | $0.00 | $0.00 | | $9,043.85 | | $9,043.85 |
| pen | SLS | FCHRG1004724 | | 9/1/2019 | SLSTE00001009 | 8.19FC | | Z-US$ | |
| 8/2/2019 | | FCHRG1004724 | | $0.00 | $0.00 | | $3,523.07 | | $3,523.07 |
| pen | SLS | LG000565 | | 9/30/2019 | SLSTE00001015 | 8.19 M | | Z-US$ | |
| 8/31/2019 | | LG000565 | | $0.00 | $0.00 | | $144.07 | | $144.07 |
| pen | SLS | QA0028416 | | 10/1/2019 | SLSTE00001011 | 4Q19OA | | Z-US$ | |
| 9/1/2019 | | QA0028416 | | $0.00 | $0.00 | | $8,541.79 | | $8,541.79 |
| pen | SLS | FCHRG1004766 | | 10/6/2019 | SLSTE00001016 | 9.19FC | | Z-US$ | |
| 9/6/2019 | | FCHRG1004766 | | $0.00 | $0.00 | | $3,523.07 | | $3,523.07 |
| pen | SLS | LG000574 | | 10/30/2019 | SLSTE00001017 | 9.19MGC | | Z-US$ | |
| 9/30/2019 | | LG000574 | | $0.00 | $0.00 | | $2,227.50 | | $2,227.50 |
| pen | SLS | FCHRG1004795 | | 11/1/2019 | SLSTE00001018 | 10.19FC | | Z-US$ | |
| 10/2/2019 | | FCHRG1004795 | | $0.00 | $0.00 | | $3,523.07 | | $3,523.07 |
| pen | SLS | LC002579 | | 11/16/2019 | SLSTE00001022 | 4QLC | | Z-US$ | |
| 10/17/2019 | | LC002579 | | $0.00 | $0.00 | | $427.09 | | $427.09 |
| pen | SLS | LG000581 | | 11/30/2019 | SLSTE00001023 | 10.19LG | | Z-US$ | |
| 10/31/2019 | | LG000581 | | $0.00 | $0.00 | | $20.00 | | $20.00 |
| pen | SLS | FCHRG1004821 | | 12/13/2019 | SLSTE00001027 | 11.19FC | | Z-US$ | |
| 11/13/2019 | | FCHRG1004821 | | $0.00 | $0.00 | | $3,651.80 | | $3,651.80 |
| pen | SLS | LG000593 | | 12/30/2019 | SLSTE00001032 | 11.19LG | | Z-US$ | |
| 11/30/2019 | | LG000593 | | $0.00 | $0.00 | | $119.00 | | $119.00 |
| pen | SLS | QA0029114 | | 1/1/2020 | SLSTE00001030 | 1 Q 2020 | | Z-US$ | |
| 12/2/2019 | | QA0029114 | | $0.00 | $0.00 | | $8,985.65 | | $8,985.65 |
| pen | SLS | FCHRG1004855 | | 1/3/2020 | SLSTE00001033 | 12.19FC | | Z-US$ | |
| 12/4/2019 | | FCHRG1004855 | | $0.00 | $0.00 | | $3,651.80 | | $3,651.80 |
| pen | SLS | LG000600 | | 1/30/2020 | SLSTE00001050 | 12.19LG | | Z-US$ | |
| 12/31/2019 | | LG000600 | | $0.00 | $0.00 | | $73.50 | | $73.50 |
| pen | SLS | FCHRG1004871 | | 2/6/2020 | SLSTE00001049 | 1.20LG | | Z-US$ | |
| 1/7/2020 | | FCHRG1004871 | | $0.00 | $0.00 | | $3,651.80 | | $3,651.80 |
| pen | SLS | INV1016194 | | 2/6/2020 | RMSLS00002618 | CLEAR | | Z-US$ | |
| 1/7/2020 | | Clearance 12/31/19 | | $0.00 | $0.00 | | $50.00 | | $0.00 |
| pen | PMT | PMT1042376 | | | RMCSH00004739 | CLEAR.1 | | Z-US$ | |
| 1/7/2020 | | | | $0.00 | $0.00 | | ($50.00) | | $0.00 |
| pen | SLS | LC002677 | | 2/14/2020 | SLSTE00001051 | 1Q20LC | | Z-US$ | |
| 1/15/2020 | | LC002677 | | $0.00 | $0.00 | | $449.28 | | $449.28 |

```
ystem:    9/28/2021   1:23:15 PM          Fisher Island Community Associ                Page:    13
ser Date: 9/28/2021                    TRANSACTION BY CUSTOMER INQUIRY REPORT        User ID: carola
                                            Receivables Management

ustomer ID:  11213                    Elizabeth Hazan

  Voided
```

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| pen | SLS | INV1016248 | | 2/29/2020 | RMSLS00002642 | 0130 | | Z-US$ | |
| 1/30/2020 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | | $0.00 |
| pen | PMT | PMT1042560 | | | RMCSH00004770 | CASH | | Z-US$ | |
| 1/30/2020 | | | | $0.00 | $0.00 | | ($50.00) | | $0.00 |
| pen | SLS | LG000606 | | 3/1/2020 | SLSTE00001056 | 1.20LG | | Z-US$ | |
| 1/31/2020 | | LG000606 | | $0.00 | $0.00 | | $100.00 | | $100.00 |
| pen | SLS | FCHRG1004894 | | 3/5/2020 | SLSTE00001055 | 2.20FC | | Z-US$ | |
| 2/4/2020 | | FCHRG1004894 | | $0.00 | $0.00 | | $3,786.58 | | $3,786.58 |
| pen | SLS | LG000614 | | 3/30/2020 | SLSTE00001067 | 220LG | | Z-US$ | |
| 2/29/2020 | | LG000614 | | $0.00 | $0.00 | | $830.55 | | $830.55 |
| pen | SLS | QA0029810 | | 4/1/2020 | SLSTE00001062 | 2NQ 20 OA | | Z-US$ | |
| 3/2/2020 | | QA0029810 | | $0.00 | $0.00 | | $8,985.65 | | $8,985.65 |
| pen | SLS | FCHRG1004935 | | 4/5/2020 | SLSTE00001068 | 3.20FC | | Z-US$ | |
| 3/6/2020 | | FCHRG1004935 | | $0.00 | $0.00 | | $3,786.58 | | $3,786.58 |
| pen | SLS | LG000628 | | 4/30/2020 | SLSTE00001075 | 320LG | | Z-US$ | |
| 3/31/2020 | | LG000628 | | $0.00 | $0.00 | | $570.00 | | $570.00 |
| pen | SLS | LG000621 | | 5/1/2020 | SLSTE00001073 | 4.20LG | | Z-US$ | |
| 4/1/2020 | | LG000621 | | $0.00 | $0.00 | | $150.50 | | $150.50 |
| pen | SLS | FCHRG1004967 | | 5/8/2020 | SLSTE00001072 | 4.20FC | | Z-US$ | |
| 4/8/2020 | | FCHRG1004967 | | $0.00 | $0.00 | | $3,786.58 | | $3,786.58 |
| pen | SLS | LC002761 | | 5/21/2020 | SLSTE00001074 | 2QLC | | Z-US$ | |
| 4/21/2020 | | LC002761 | | $0.00 | $0.00 | | $449.28 | | $449.28 |
| pen | SLS | LG000634 | | 5/31/2020 | SLSTE000010B0 | 5.20LG | | Z-US$ | |
| 5/1/2020 | | LG000634 | | $0.00 | $0.00 | | $34.00 | | $34.00 |
| pen | SLS | FCHRG1004996 | | 6/5/2020 | SLSTE00001076 | 5.20FC | | Z-US$ | |
| 5/6/2020 | | FCHRG1004996 | | $0.00 | $0.00 | | $3,786.58 | | $3,786.58 |
| pen | SLS | QA0030372 | | 7/1/2020 | SLSTE00001081 | 3Q 20 | | Z-US$ | |
| 6/1/2020 | | QA0030372 | | $0.00 | $0.00 | | $8,985.65 | | $8,985.65 |
| pen | SLS | FCHRG1005028 | | 7/4/2020 | SLSTE00001086 | 6.20 FC | | Z-US$ | |
| 6/4/2020 | | FCHRG1005028 | | $0.00 | $0.00 | | $3,921.36 | | $3,921.36 |
| pen | SLS | LG000640 | | 7/30/2020 | SLSTE00001087 | 6.20LG | | Z-US$ | |
| 6/30/2020 | | LG000640 | | $0.00 | $0.00 | | $68.00 | | $68.00 |
| pen | SLS | FCHRG1005064 | | 8/1/2020 | SLSTE00001088 | 7.20FC | | Z-US$ | |
| 7/2/2020 | | FCHRG1005064 | | $0.00 | $0.00 | | $3,921.36 | | $3,921.36 |
| pen | SLS | LC002852 | | 8/16/2020 | SLSTE03001092 | 3QLC | | Z-US$ | |
| 7/17/2020 | | LC002852 | | $0.00 | $0.00 | | $449.28 | | $449.28 |
| pen | SLS | LG000647 | | 8/30/2020 | SLSTE00001093 | 7.20LG | | Z-US$ | |
| 7/31/2020 | | LG000647 | | $0.00 | $0.00 | | $719.50 | | $719.50 |

```
ystem:    9/28/2021   1:23:15 PM           Fisher Island Community Associ                    Page:   14
ser Date: 9/28/2021                    TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                             Receivables Management
```

ustomer ID:  11213              Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | | Amount Remaining |
| pen | SLS | FCHRG1005099 | | 9/4/2020 | SLSTE00001096 | 8.20FC | 2-US$ | |
| 8/5/2020 | | FCHRG1005099 | | $0.00 | $0.00 | $4,056.14 | | $4,056.14 |
| pen | SLS | LG000653 | | 9/30/2020 | SLSTE00001105 | 8.20LG | 2-US$ | |
| 8/31/2020 | | LG000653 | | $0.00 | $0.00 | $68.00 | | $68.00 |
| pen | SLS | QA0031068 | | 10/1/2020 | SLSTE00001098 | 4Q20 OA | 2-US$ | |
| 9/1/2020 | | QA0031068 | | $0.00 | $0.00 | $8,985.65 | | $8,985.65 |
| pen | SLS | FCHRG1005154 | | 10/4/2020 | SLSTE00001104 | 9.20FC | 2-US$ | |
| 9/4/2020 | | FCHRG1005154 | | $0.00 | $0.00 | $4,056.14 | | $4,056.14 |
| pen | SLS | LG000662 | | 10/30/2020 | SLSTE00001108 | 9.20LG | 2-US$ | |
| 9/30/2020 | | LG000662 | | $0.00 | $0.00 | $72.50 | | $72.50 |
| pen | SLS | FCHRG1005194 | | 11/1/2020 | SLSTE00001112 | 10.20FC | 2-US$ | |
| 10/2/2020 | | FCHRG1005194 | | $0.00 | $0.00 | $4,056.14 | | $4,056.14 |
| pen | SLS | LC002936 | | 11/15/2020 | SLSTE00001118 | 4 Q 20 LC | 2-US$ | |
| 10/16/2020 | | LC002936 | | $0.00 | $0.00 | $449.28 | | $449.28 |
| pen | SLS | FCHRG1005231 | | 12/5/2020 | SLSTE00001122 | 11.20FC | 2-US$ | |
| 11/5/2020 | | FCHRG1005231 | | $0.00 | $0.00 | $4,190.92 | | $4,190.92 |
| pen | SLS | INV1017408 | | 12/30/2020 | RMSLS00002863 | 1130 | 2-US$ | |
| 11/30/2020 | | Clearance Fee | | $0.00 | $0.00 | $50.00 | | $0.00 |
| pen | PMT | PMT1045452 | | | RMCSH00005116 | 120220 CASH | 2-US$ | |
| 12/2/2020 | | | | $0.00 | $0.00 | ($50.00) | | $0.00 |
| pen | SLS | QA0031766 | | 1/1/2021 | SLSTE00001125 | 1Q21 | 2-US$ | |
| 12/2/2020 | | QA0031766 | | $0.00 | $0.00 | $9,409.18 | | $9,409.18 |
| pen | SLS | FCHRG1005287 | | 1/7/2021 | SLSTE00001129 | 12.20FC | 2-US$ | |
| 12/8/2020 | | FCHRG1005287 | | $0.00 | $0.00 | $4,190.92 | | $4,190.92 |
| pen | SLS | INV1017440 | | 1/14/2021 | RMSLS00002890 | 121520 | 2-US$ | |
| 12/15/2020 | | Clearance Fee | | $0.00 | $0.00 | $50.00 | | $0.00 |
| pen | PMT | PMT1045518 | | | RMCSH00005134 | 121520 CASH | 2-US$ | |
| 12/15/2020 | | | | $0.00 | $0.00 | ($50.00) | | $0.00 |
| pen | SLS | FCHRG1005322 | | 2/5/2021 | SLSTE00001134 | 1.21FC | 2-US$ | |
| 1/6/2021 | | FCHRG1005322 | | $0.00 | $0.00 | $4,190.92 | | $4,190.92 |
| pen | SLS | LC003016 | | 2/17/2021 | SLSTE00001137 | 1Q21LC | 2-US$ | |
| 1/18/2021 | | LC003016 | | $0.00 | $0.00 | $470.46 | | $470.46 |
| pen | SLS | FCHRG1005352 | | 3/20/2021 | SLSTE00001142 | 2.21FC | 2-US$ | |
| 2/18/2021 | | FCHRG1005352 | | $0.00 | $0.00 | $4,332.06 | | $4,332.06 |
| pen | SLS | QA0032460 | | 4/1/2021 | SLSTE00001143 | 2Q21 OA | 2-US$ | |
| 3/2/2021 | | QA0032460 | | $0.00 | $0.00 | $9,409.18 | | $9,409.18 |
| pen | SLS | FCHRG1005392 | | 4/3/2021 | SLSTE00001147 | 3.21FC | 2-US$ | |
| 3/4/2021 | | FCHRG1005392 | | $0.00 | $0.00 | $4,332.06 | | $4,332.06 |

```
ystem:    9/28/2021   1:23:15 PM              Fisher Island Community Associ                        Page:   15
ser Date: 9/28/2021                       TRANSACTION BY CUSTOMER INQUIRY REPORT                    User ID: carola
                                               Receivables Management
```

ustomer ID:  11213              Elizabeth Hazan

Voided

| rigin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID | |
|-------|------|-----------------|--------------|----------|------------------|----------|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | | Amount Remaining |
| pen | SLS | LG000683 | | 4/30/2021 | SLSTE00001151 | 3.21LG | Z-US$ | |
| 3/31/2021 | | LG000683 | | $0.00 | $0.00 | $73.00 | | $73.00 |
| pen | SLS | FCHRG1005422 | | 5/2/2021 | SLSTE00001150 | 4.21FC | Z-US$ | |
| 4/2/2021 | | FCHRG1005422 | | $0.00 | $0.00 | $4,332.06 | | $4,332.06 |
| pen | SLS | LC003101 | | 5/15/2021 | SLSTE00001155 | 2Q21LC | Z-US$ | |
| 4/15/2021 | | LC003101 | | $0.00 | $0.00 | $470.46 | | $470.46 |
| pen | SLS | LG000687 | | 5/30/2021 | SLSTE00001158 | 4.21LG | Z-US$ | |
| 4/30/2021 | | LG000687 | | $0.00 | $0.00 | $431.50 | | $431.50 |
| pen | SLS | FCHRG1005448 | | 6/9/2021 | SLSTE00001159 | 5.21FC | Z-US$ | |
| 5/10/2021 | | FCHRG1005448 | | $0.00 | $0.00 | $4,473.20 | | $4,473.20 |
| pen | SLS | QA0033315 | | 7/1/2021 | SLSTE00001163 | 3Q 21 OA | Z-US$ | |
| 6/1/2021 | | QA0033315 | | $0.00 | $0.00 | $9,409.18 | | $9,409.18 |
| pen | SLS | FCHRG1005484 | | 7/2/2021 | SLSTE00001167 | 6.21FC | Z-US$ | |
| 6/2/2021 | | FCHRG1005484 | | $0.00 | $0.00 | $4,473.20 | | $4,473.20 |
| pen | SLS | FCHRG1005513 | | 8/1/2021 | SLSTE00001173 | 7.21FC | Z-US$ | |
| 7/2/2021 | | FCHRG1005513 | | $0.00 | $0.00 | $4,473.20 | | $4,473.20 |
| pen | SLS | LC003178 | | 8/14/2021 | SLSTE00001175 | 3QLC | Z-US$ | |
| 7/15/2021 | | LC003178 | | $0.00 | $0.00 | $470.46 | | $470.46 |
| pen | SLS | FCHRG1005537 | | 9/8/2021 | SLSTE00001179 | 8.21FC | Z-US$ | |
| 8/9/2021 | | FCHRG1005537 | | $0.00 | $0.00 | $4,614.34 | | $4,614.34 |
| pen | SLS | QA0033890 | | 10/1/2021 | SLSTE00001181 | 4Q21 OA | Z-US$ | |
| 9/1/2021 | | QA0033890 | | $0.00 | $0.00 | $9,409.18 | | $9,409.18 |
| pen | SLS | FCHRG1005579 | | 10/2/2021 | SLSTE00001186 | 9.21FIN | Z-US$ | |
| 9/2/2021 | | FCHRG1005579 | | $0.00 | $0.00 | $4,614.34 | | $4,614.34 |

```
otal Documents:  276                                       Totals:    $671,483.31        $667,276.53
```