UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LIZA HAZAN

CASE NO. 16-10389-BKC-AJC

CHAPTER 11

Debtor,

_____/

**EMERGENCY MOTION TO REDUCE AND EXTEND
PLAN PAYMENTS TO SECURED VALENCIA
ESTATES COMMUNITY ASSOCIATION, INC.**

**Request for Emergency Hearing before April 20, 2022 deadline to cure
Valencia Estates Community Association, Inc's alleged Notice of Default.**

Reorganized and discharged Liza Hazan aka Elizabeth Hazan ("Hazan"), through undersigned counsel, files this Expedited Motion to Reduce and Extend Payments to Secured Creditor Valencia Estates Community Association, Inc. ("Valencia") and respectfully represents:

**Emergency Certificate**

Pursuant to Local Rule 9075-1 Movant certifies that she reasonably believes a hearing is needed on or before April 20, 2022 because that is the date Secured Creditor Valencia Estates Community Association, Inc. has threatened to accelerate the sums due under her Payment Plan. The demand is attached marked exhibit A. A direct, immediate and substantial harm will occur to the interest of Debtor and the Debtor's ability to reorganize if the parties are not able to obtain an immediate resolution of the dispute.

Movant made a bona fide effort to resolve the matter without hearing by repeated emails to counsel for Valencia requesting an extension of time and payment of half of $20,312.50 or $10,156.25, and $10,156.25 every five months until completion of the Valencia's Plan Payment amounts, but as of the time of this filing many communications have occurred but it is up to the Board and no response has been forthcoming, and the motion must be filed in order to get a hearing prior to the deadline.

### Request To The Court

Movant is requesting a one-time extension and to pay now half of the Plan Payment amount, or $10,156.25 every five months until completion of the Valencia's Plan Payment amounts.  Hazan requests this extension while her refinance goes through. Valencia has threatened to accelerate the amounts due on April 20, 2022, which movant has asked to extend to facilitate the refinancing.

Ms Hazan paid Valencia a special assessment at confirmation of $84,000 and another $4,062 at confirmation, $125,000 of Pre Petition Claim of $195,000 prepetition has been paid.

Ms Hazan has millions of dollars in equity in her Fisher Island Residence (since NLG's claim was completely wiped out and the market is on fire and the prices for the homes next door to Hazan's property are going pre construction price for more than $30 million).  Also Ms Hazan has negotiated short payoffs with all the lien holders and is ready to close on her loan, and pay Valencia, but unfortunately the sanctioned Kosachuk is constantly filing lis pendens (7 of them) and the Delaware Adversary Bankruptcy case is dismissed without prejudice and the title company requires that the Delaware case be dismissed with prejudice. Ms Hazan is trying to get her equity out either by refinance or sale. Ms Hazan should be entitled to an extension at least

one now since the refinance is approved and that the issue will be cleared with the title company

which will take a few weeks and she can pay off everything that is outstanding.

## INABILITY TO REFINANCE OR SELL FISHER ISLAND HOUSE

1. Hazan is the Reorganized and Discharged Debtor in this case and is the owner of the

residence located at 6913 Valencia Drive, Fisher Island, Miami FL 33109.

2. Hazan is currently at the final stages of refinancing her Fisher Island property.

3. Hazan's lender has approved the refinance of her Fisher Island house and is ready to

close and Hazan has hired Florida Attorney Michael Simon to issue title Commitment and close

on her loan.

4. Attorney Michael Simon recently discovered a lis pendens filed on December 2, 2021

by non-creditor Chris Kosachuk under a caption of an adversary Delaware case filed in NLG's

involuntary Chapter 7 bankruptcy case.  Kosachuk was found in contempt by this Court along

NLG and NLG's attorney Juan Ramirez, Jr for violating the Discharge Injunction and

Confirmation Orders. He is appealing and filing other motions against Debtor.

5. Hazan intends on using the refinance proceeds to pay off the various liens in the house

including Valencia's lien. Hazan's lender has approved the refinance of her house located at

6913 Valencia Drive, Fisher Island Miami FL 33109 and is ready to close. However, the title

company still requires that the Delaware case filed by Chris Kosachuk be dismissed with

prejudice and is refusing to clear title.

6. Kosachuk has further damaged Hazan and her Fisher Island property, slandering her

title, diminishing the value of her property, making it impossible to sell or refinance her house

or obtain a title insurance policy. Kosachuk has rendered Hazan's title impossible to insure.

7. The lis pendens filed by Kosachuk purportedly "relates to the lien based of NLG's mortgage recorded in the official records Book 25559 at Pages 4266-4272, CFN2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737-3742, CFN 20150812181 on the following property in Miami-Dade County, Florida ….. 6913 Valencia Drive, Fisher Island, FL 33109". However, the Final Judgment entered on October 31, 2017 by this Court has ruled that the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 are **Satisfied and Paid of Record**. See the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238, which Final judgment was upheld in both District Court and in the Eleventh Circuit court of Appeals (ECF No 1047) and (ECF No 1067).

8. Hazan is incurring daily expenses, assessments from the two associations Valencia and Fisher Island Community Association, Inc. and Real estate Taxes. Hazan has negotiated settlements with the various lienholders and she needs to close on her refinance as soon as possible without any further delay.

9. Hazan is a Florida licensed realtor and is actively marketing her house and is offering it for sale and does have a few serious potential buyers.

10.    On April 1, 2022, The Court granted Ms Hazan's Expedited Motion for Contempt, to Strike Lis Pendens and Impose Sanctions and for Entry of Final Judgment and Injunctive Relief. The Court Ordered the Lis Pendens filed by Kosachuk, on December 2, 2021 Dissolved, Discharged and Released, with prejudice, and deemed null and void. The Court also granted Hazan an injunction against Kosachuk, his representatives, agents and assigns from filing and

recording any further lis pendens against Hazan's property under any caption in any jurisdiction, or from taking any other action in contravention of the Final judgment entered in November 1, 2017, or the Confirmation Order or the Discharge Order.

11.     On April 1, 2022, Mr Simon wrote an email to the Senior Underwriter "Connie- Attached is the Court order related to the lis pendens on Hazan's home and enjoining Mr. Kosachuk from any further lis pendens filings, etc, on this property. Based upon the Delaware case dismissal and this Court order, may we proceed to show that Item #14 B-I has been satisfied? I look forward to your prompt reply.

12.     On April 4, 2022, The Senior Underwriting Counsel wrote an email to Michael Simon **"we are not willing to insure the title since the dismissal in the Delaware bankruptcy was without prejudice."**

13.     Although the Court dismissed the lis pendens with prejudice and deemed it null and void, Hazan is still unable to close on her loan and pay off Valencia.

## CARE ACT CHANGES TO THE BANKRUPTCY CODE

14.     On December 16, 2020, Hazan filed an Expedited Motion to Extend Payments to Secured creditor Valencia seeking relief under Care Act to extend her payments to 2025 and reducing the plan payments to $10,156.25 every five months instead of $20,312.50.

15.     Hazan is willing to pay $10,156.25 every five month until she is able to refinance or sell her home.

16.     Secured Creditor Valencia's outstanding plan payment claim is over-secured because of Hazan's successful reorganization and the fact that NLG's claim was completely wiped out. Also, the property has gained substantial equity in this strong booming Florida real estate market and luckily for Hazan, Fisher Island real estate developer Heinrich Von Hanau is

building 12 new Single Family homes at 68 Fisher Island, homes ranging from $32-$35 millions of dollars adjacent to Hazan's own Single Family home in Valencia Estates, Fisher Island.

17.    The Care Act permits Chapter 13 debtors with plans that have already been confirmed to modify them based on a material financial hardship related to the coronavirus pandemic, including extending payments under the plan for up to seven years after the initial plan payment was due.

18.    Hazan's undersigned attorney wrote to Valencia's attorney David Haber "In light of the Trump Care Act, my client is kindly asking if the Board will voluntarily agree to modify the balance of the payments so instead of paying every five months to the Association the amount of $20,250.00 my client is asking if she can pay $10,125.00 every five months.

19.    Valencia's proof of claim was $195,000. The balance owed today is approximatively $59,375.50.

20.    Hazan's first payment to Valencia Claim # 10 was in the amount of $4,062.00 at the effective date of the confirmed Fourth Amended Plan of Reorganization ("the Confirmed Plan"). See paragraph 6 of the executed stipulation and paragraph 7.02 Effective Date of Fourth Amended Plan. The effective date of this Plan was the fourteenth business day following the date of the entry of the order of confirmation. (Doc 563)

21.    Hazan's Fourth Amended Plan of Reorganization was confirmed on June 11, 2018. The effective date was June 29, 2018. Hazan has suffered a financial hardship caused by Covid-19 and is entitled to relief by this Court. The Care Act allows Hazan to extend payments to secured creditor Valencia under the plan for up to seven years after the initial plan payment was due or June 29, 2025.

**11 U.S. Code § 1127 (e) – MODIFICATION OF PLAN (Doc 691) § 17 (n).**

22.     Pursuant to 11 U.S. Code **§ 1127 (e)**If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor ……, to—

**(1)**
increase or reduce the amount of payments on claims of a particular class provided for by the plan;
**(2)**
extend or reduce the time period for such payments; or
**(3)**
alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

23.     On June 12, 2018 The court entered an Order granting Hazan's Fourth Amended Plan (Doc 562). The Court retained jurisdiction to modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the confirmation order. See Confirmation Order. (Doc 691) at 17 (n).

24.     Hazan's Fourth Amended Plan of Reorganization was confirmed on June 11, 2018. The effective date was June 29, 2018. The Care Act and 11 U.S. Code **§ 1127 (e)(1)(2)(3)** allow Hazan to extend and reduce payments to secured creditor Valencia Estates Community Association, Inc. under the plan for up to seven years after the initial plan payment was due or June 29, 2025 until completion.

25.     The Bankruptcy Code does not define "modification," and courts determine what constitutes a "modification" on a case-by-case basis. *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011). Plan proponents may, however, have some control over what will constitute a "modification" during the post confirmation period because some courts will "turn to the [p]lan for guidance" in determining what constitutes a "modification." *In re*

*Johns-Manville Corp.*, 920 F.2d 121, 128 (2d Cir. 1990). Section 1127(b) provides that only the plan proponent or the reorganized debtor may propose a post confirmation plan modification.  *See* 11 U.S.C. § 1127(b); *see also In re Sea Island Co.*, 486 B.R. 559, 570 (S.D. Ga. 2013) (liquidation trustee was not a plan proponent and, thus, section 1127(b) would prohibit him from making a "modification" to the plan); *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *6 (Bankr. S.D.N.Y. Jan. 24, 2008) (objecting shareholders were not proponents of confirmed plan and were not authorized under section 1127(b) to modify the confirmed plan); *In re Burk Dev. Co., Inc.*, 205 B.R. 778, 799 (Bankr. M.D. La. 1997) (United States Trustee did not have standing to seek modification of confirmed plan); *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 378 (Bankr. E.D. Pa. 1988) ("Here, the debtor was the plan proponent, and thus creditors are precluded from seeking a plan modification."); *In re Charterhouse, Inc.*, 84 B.R. 147, 151 (Bankr. D. Minn. 1988) (creditors' committee did not have standing to modify the plan because it was not a plan proponent).

26.    This limitation is even imposed on bankruptcy courts, which "cannot on [their] own modify a confirmed plan." *In re Boylan Int'l, Ltd.*, 452 B.R. at 48 (citing *In re Planet Hollywood Int'l*, 274 B.R. 391, 400 (Bankr. D. Del. 2001)); *see also Goodman v. Phillip R. Curtis Enters., Inc. (In re Goodman* ), 809 F.2d 228 (4th Cir. 1987) (bankruptcy court could not *sua sponte* modify plan, modification had to be sought by proper party under section 1127(b)).

27.    Perhaps the most import limitation imposed by section 1127(b) on post confirmation plan modifications is the open-ended requirement that "circumstances warrant" the modification.  Equitable considerations typically guide the court in its determination of whether circumstances warrant approval of a proposed modification, and some courts have concluded

that there were unforeseen changed circumstances that prompted the modification. For example, courts have determined that circumstances warranted post confirmation modification where a debtor farmer could no longer comply with a payment schedule set forth in the plan because the government changed a farm program upon which the debtor relied, *In re Olson*, 861 F.2d 188 (8th Cir. 1988), the reorganized debtor, due to not fault of its own, suffered a serious loss of revenue that rendered the plan unworkable, *In re Gene Dunavant & Son Dairy*, 75 B.R. 328 (Bankr. M.D. Tenn. 1987), and there was unforeseen and protracted trial and appellate litigation that prevented the liquidating trustee from prosecuting a malpractice claim that was the debtor's primary asset, *In re Boylan Int'l, Ltd.*, 452 B.R. 43 (Bankr. S.D.N.Y. 2011).

28.    Hazan has suffered a financial hardship caused by Covid-19 and is entitled to relief by this Court. Unforeseen changed circumstances caused by the Covid 19 prompt the modification.

**WHEREFORE**, for the reasons set forth above, Liza Hazan Hazan respectfully requests the Court Grant her Emergency Motion, entering an Order Reducing and Extending payments to Secured Creditor Valencia Estates Community Association, Inc. and directing her to pay $10,156.25 every five months until completion of the Valencia's Plan Payment amounts and grant such other and further relief as the Court deems appropriate.

April 13, 2022.

Respectfully submitted,

**JOEL M. ARESTY, P.A.**
*Attorneys for Liza Hazan*
309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
S:/ Joel M. Aresty
Joel M. Aresty, ESQ

Fla. Bar No. 197483

aresty@Mac.com

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern

District of Florida and I am in compliance with the additional qualifications to practice in this court

set forth in Local Rules 2090-1(A).

Respectfully submitted,

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of foregoing was served via CM/ECF, email

or U.S. Mail to the parties on the attached service list as indicated on this 13th day of April, 2022.

**JOEL M. ARESTY, P.A.**
*Attorneys for Liza Hazan*
309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
S:/ Joel M. Aresty____
Joel M. Aresty, ESQ
Fla. Bar No. 197483
aresty@Mac.com

## SERVICE LIST

**Via CM/ECF/Email**

16-10389-AJC Notice will be electronically mailed to:

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd

ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd

ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.

rpc@ecccounsel.com,

nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association

adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC

bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium

bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC

jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC

jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.

ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.

dhaber@dhaberlaw.com,

ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association

khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan

tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan

tdmckeown@mckeownpa.com

Office of the US Trustee

USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.

Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

16-10389-AJC Notice will be electronically sent and mailed to:

Chris Kosachuk 854 Pheasant Run Rd. West Chester, PA 19382

chriskosachuk@gmail.com



**REBECCA N. CASAMAYOR, ESQ.**
305-379-2400 Ext.117
rcasamayor@haber.law

## NOTICE OF DEFAULT AND DEMAND TO CURE

April 6, 2022

**VIA E-MAIL ONLY:**
David Langley, Esq.
E-mail: dave@flalawyer.com

**VIA E-MAIL ONLY:**
Joel Aresty, Esq.
E-mail: Aresty@Mac.com

RE: **In re: Liza Hazan, Debtor**
**Case No.: 16-10389-AJC – Chapter 11**

Dear Messrs. Langley and Aresty:

As you know, this Law Firm represents the interests of Valencia Estates Homeowners' Association, Inc. (the "Association") in the above-styled bankruptcy proceeding filed by your client, Elizabeth Hazan ("Hazan").

Pursuant to Paragraph 6 of the Stipulation of Settlement Claim 10 executed by Hazan and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Court on November 17, 2016 [D.E. 302] (the "Stipulation"), Hazan was to make payments to the Association under her bankruptcy plan (the "Plan") in the amount of $20,312.50 every five (5) months following the Effective Date (hereinafter the "Plan Payments"). A copy of the Stipulation and Order approving same are attached hereto as **Composite Exhibit "1"** for your reference.[1]

As you know, this is not the first Notice of Default the Association has had to send as a result of Hazan's failure to comply with the terms of the Stipulation and Plan. **Hazan has now failed to make the latest Plan Payment in the amount of $20,312.50, which was due on April 2, 2022.[2] As such, Hazan is clearly in default of the Stipulation and the Plan.**

Pursuant to Paragraph 10 of the Stipulation, this correspondence shall constitute the Association's notice and demand for Hazan to cure her default within fourteen (14) days of the date of this letter, i.e. - - on or before April 20, 2022 ("Cure Period"). Wire instructions for our Law Firm's Trust Account for the purpose of forwarding payment are included below.

---

[1] Hazan was also required under the Stipulation and Plan to pay all ongoing monthly and/or special assessments to the Association ("Ongoing Assessments"). *See* **Composite Exhibit "1"** at Paragraph 7. As you may be aware, Hazan has failed to fully and timely pay her Ongoing Assessments to the Association since on or about August 2019 to present, resulting in the Association filing a Claim of Lien against the property. However, our understanding is that neither of you represent Hazan with respect to her failure to pay the Ongoing Assessments and/or the Association's Claim of Lien in connection with same, so we are not including those maters in this letter.
[2] While Hazan reduced her Plan payments to $10,156.25 for the 2021 year due to alleged financial hardship caused by Covid-19, those Plan payments were to revert to the original amount under the Stipulation starting in 2022.

*HAZAN - NOTICE OF DEFAULT AND DEMAND TO CURE*
*April 6, 2022*
*Page 2 of 2*

Should Hazan fail to pay the $20,312.50 Plan payment within the Cure Period, pursuant to Paragraph 10 of the Stipulation, the remaining balance due of the Plan Payments shall be automatically accelerated, and the Association shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default, along with a request for reasonable attorney's fees and costs for its enforcement of the Stipulation. Under Paragraph 10 of the Stipulation, Hazan has already waived any and all defenses to the foregoing.

This correspondence reserves all rights of the Association, without limitation.

Sincerely,

**HABER LAW, P.A.**

/s/ *Rebecca Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

cc:    Mercy Rodriguez, Property Manager [via e-mail]
       Jason Giller, Board Member [via e-mail]

**WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

First Horizon Bank
165 Madison Avenue
Memphis, TN 38103

ABA #: 084 000 026
ACCOUNT: 003-5040167
SWIFT#: FTBMUS44

RE:    3706.005 (Hazan)

Composite Exhibit "1"

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:

                                                 **CaseNo:16-10389AJC**
                                                 **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR._____/**

**STIPULATION OF SETTLEMENT CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

      2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

      3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

      4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

      5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

          A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

          B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

          C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

      6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments").

*[handwritten: The Claim Amount of $195,000.00 include: pre-petition and post-petition attorney's fees & costs absent a breach by Debtor as referenced below in Paragraph 10 so long...]*

7.      Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.      Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.      Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.     If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.     Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*[handwritten: Valencia State Court Action, claims, counterclaims. All defenses, proposed counterclaims + proposed third party claims against Valencia, it's agents, managers, attorneys, members + officers, raised or unraised, are released + waived.]*

stipulated treatment.

      12.    This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor


s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan



**Certificate Of Service**


**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.



**ORDERED in the Southern District of Florida on November 17, 2016.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

IN RE:

                                          **CaseNo:16-10389AJC**
                                          **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR. _____/**

<u>**AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10**</u>
<u>**Valencia Estates Homeowners Assn, Inc.**</u>

       THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10

(Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter

the "Stipulation"). The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

*   *   *

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

**ARTICLE 6.**

**COVENANT FOR MAINTENANCE ASSESSMENTS**

6.1.  Creation of the Lien and Personal Obligation of the Assessments.  Except as provided elsewhere herein, the Developer (and each party joining in any supplemental declaration), for all Lots within the Neighborhood, hereby covenants and agrees, and each Owner of any Lot by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association annual assessments and charges for the operation of the Association and the maintenance, management, operation and insurance of the Common Properties as provided elsewhere herein, including such reasonable reserves as the Association may deem necessary, capital improvement assessments as provided elsewhere herein, assessments for maintenance, bulk cable and/or satellite television or communications charges and all other charges and assessments hereinafter referred to or lawfully imposed by the Association, all such assessments to be fixed, established and collected from time to time as herein provided. In addition, special assessments may be levied against particular Owners and Lots for fines, expenses incurred against particular Lots and/or Owners to the exclusion of others and other charges against specific Lots or Owners as contemplated in this Declaration. The annual, special and other assessments, together with interest thereon and costs of collection thereof as are hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with such interest thereon and costs of collection thereof as are hereinafter provided, shall also be the personal obligation of the person who is the Owner of such property at the time when the assessment fell due and all subsequent Owners until paid, except as provided in Section 6.9 below.

6.2.  Rate of Assessment.  Except as provided herein with respect to special assessments which may be imposed on one or more Lots or Homes and Owners to the exclusion of others and in Section 6.9 below, all assessments imposed by the Association shall be imposed against all Lots subject to its jurisdiction in accordance with the percentages set forth on **Exhibit "E"** attached hereto and made a part hereof.  Reference herein to assessments shall be understood to include reference to any and all of said charges whether or not specifically mentioned.

6.3.  Purpose of Assessments.  The regular assessments levied by the Association shall be used exclusively for the purposes expressed in Section 6.1 above.

6.4.  Special Assessments.  In addition to the regular and capital improvement assessments which are or may be levied hereunder, the Association (through the Board of Directors) shall have the right to levy special assessments against an Owner(s) to the exclusion of other Owners for: (a) the repair or replacement of damage to any portion of the Common Properties (including, without limitation, improvements and landscaping thereon) caused by the misuse, negligence or other action or inaction of an Owner or such Owner's Members' Permittee(s); or (b) the costs of work performed by the Association in accordance with Article **4** and/or Article **5** of this Declaration.  Any such special assessment shall be subject to all of the applicable provisions of this Article including, without limitation, lien filing and foreclosure procedures and late charges and interest.  Any special assessment levied hereunder shall be due within the time specified by the Board of Directors in the action imposing such assessment.

6.5.  Capital Improvements.  Funds which, in the aggregate, exceed twenty percent (20%) of the total amount of the current operating budget of the Association in any one fiscal year, and are necessary for the addition of capital improvements (as distinguished from

OFF. REC BK.

21004PG0401

repairs and maintenance) relating to the Common Properties and which have not previously been collected as reserves or are not otherwise available to the Association (other than by borrowing), shall be levied by the Association as special assessments only upon approval of a majority of the Board of Directors of the Association and upon approval by two-thirds (2/3) favorable vote of the Members of the Association voting at a meeting or by ballot as may be provided in the By-Laws of the Association. Additionally, the Association may adopt a capital improvement assessment upon approval of a majority of the Board of Directors of the Association for reconstruction as provided in Section 11.1 below.

6.6.     Date of Commencement of Annual Assessments; Due Dates.    The annual regular assessments provided for in this Article shall commence on the first day of the month next following the recordation of these covenants and shall be applicable through September 30 of such year. Each subsequent annual assessment shall be imposed for the year beginning October 1 and ending September 30. The annual assessments shall be payable in advance, in monthly installments, or in annual, semi-annual or quarterly installments if so determined by the Board of Directors of the Association (absent which determination they shall be payable monthly). The assessment amount (and applicable installments) may be changed at any time by said Board from that originally stipulated or from any other assessment that is in the future adopted. The original assessment for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, every six (6) months), but the amount of any revised assessment to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year. The due date of any special assessment or capital improvement assessment shall be fixed in the Board resolution authorizing such assessment.    Notwithstanding anything herein contained to the contrary, no Lot shall be subject to assessment until such time as a Home has been constructed thereon and received a certificate of occupancy from the applicable governmental authority.

6.7.     Duties of the Board of Directors. The Board of Directors of the Association shall fix the date of commencement and the amount of the assessment against each Lot subject to the Association's jurisdiction for each assessment period, to the extent practicable, at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the Lots and assessments applicable thereto which shall be kept in the office of the Association and shall be open to inspection by any Owner. Written notice of the assessment shall thereupon be sent to every Owner subject thereto thirty (30) days prior to payment of the first installment thereof, except as to special assessments. In the event no such notice of a change in the assessments for a new assessment period is given, the amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein. Subject to other provisions hereof, the Association shall upon demand at any time furnish to any Owner liable for an assessment a certificate in writing signed by an officer of the Association, setting forth whether such assessment has been paid as to any particular Lot. Such certificate shall be conclusive evidence of payment of any assessment to the Association therein stated to have been paid. The Association, through the action of its Board of Directors, shall have the power, but not the obligation, to enter into an agreement or agreements from time to time with one or more persons, firms or corporations (including affiliates of the Developer) for management services. The Association shall have all other powers provided in its Articles of Incorporation and By-Laws.

6.8.     Effect of Non-Payment of Assessment; the Personal Obligation; the Lien; Remedies of the Association. If the assessments (or installments) provided for herein are not paid on the date(s) when due (being the date(s) specified herein), then such assessments (or installments) shall become delinquent and shall, together with late charges, interest and

the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the Lot which shall bind such property in the hands of the then Owner, his heirs, personal representatives, successors and assigns. Except as provided in Section 6.9 below to the contrary, the personal obligation of the then Owner to pay such assessment shall pass to his successors in title and recourse may be had against either or both. If any installment of an assessment is not paid within fifteen (15) days after the due date, at the option of the Association, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest as provided herein but shall not be subject to additional late charges, provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid), or the next twelve (12) months' worth of installments may be accelerated and become immediately due and payable in full and all such sums shall bear interest from the dates when due until paid at the highest lawful rate and the Association may bring an action at law against the Owner(s) personally obligated to pay the same, may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the Lot on which the assessments and late charges are unpaid, may foreclose the lien against the Lot on which the assessments and late charges are unpaid, or may pursue one or more of such remedies at the same time or successively, and attorneys' and paralegals' fees and costs actually incurred preparing and filing the claim of lien and the complaint, if any, and prosecuting same, in such action (and any appeals therefrom) shall be added to the amount of such assessments, late charges and interest, and in the event a judgment is obtained, such judgment shall include all such sums as above provided and attorneys' and paralegals' fees actually incurred together with the costs of the action, through all applicable appellate levels. In the case of an acceleration of the next twelve (12) months' worth of installments, each installment so accelerated shall be deemed, initially, equal to the amount of the then most current delinquent installment, provided that if any such installment so accelerated would have been greater in amount by reason of a subsequent increase in the applicable budget, the Owner of the Lot whose installments were so accelerated shall continue to be liable for the balance due by reason of such increase and special assessments against such Lot shall be levied by the Association for such purpose. In addition to the rights of collection of assessments stated in this Section, any and all persons acquiring title to or an interest in a Lot as to which the assessment is delinquent, including without limitation persons acquiring title by operation of law and by judicial sales, shall not be entitled to the occupancy of such Lot or the enjoyment of the Common Properties until such time as all unpaid and delinquent assessments due and owing from the selling Owner have been fully paid; provided, however, that the provisions of this sentence shall not be applicable to the mortgagees and purchasers contemplated by Section 6.9 below. It shall be the legal duty and responsibility of the Association to enforce payment of the assessments hereunder. Failure of the Association to send or deliver bills shall not, however, relieve Owners from their obligations hereunder. All assessments, late charges, interest, penalties, fines, attorney's fees and other sums provided for herein shall accrue to the benefit of the Association. Owners shall be obligated to deliver the documents originally received from the Developer, containing this and other declarations and documents, to any grantee of such Owner.

6.9.  Subordination of the Lien. The lien of the assessments provided for in this Article shall be subordinate to real property tax liens and to the lien of any first mortgage recorded prior to recordation by the Association of a claim of lien held by a Mortgage Lender and which is now or hereafter placed upon any property subject to assessment; provided, however, that any such Mortgage Lender when in possession or any receiver, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any such Mortgage Lender acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under such purchaser or Mortgage Lender, shall hold title subject to the liability and lien

OFF. REC. BK. 21004PG0402

of any assessment coming due after such foreclosure (or conveyance in lieu of foreclosure). Any unpaid assessment which cannot be collected as a lien against any Lot by reason of the provisions of this Section shall be deemed to be an assessment divided equally among, payable by and a lien against all Lots subject to assessment by the Association, including the Lots as to which the foreclosure (or conveyance in lieu of foreclosure) took place.

6.10.    Effect on Developer.    Notwithstanding any provision to the contrary contained in this Declaration, for as long as Developer (or any of its affiliates) is the Owner of any Lot, Developer shall have the option, in its sole discretion, to (a) pay assessments on the Lots owned by it in like manner as paid by other Owners; or (b) not paying assessments on Lots owned by Developer, and in lieu thereof, funding any resulting deficit in the Association's operating expenses (exclusive of any capital costs and reserves) not produced by assessments receivable from Owners other than Developer and any other income receivable by the Association. The deficit to be paid under option (b) above shall be the difference between (i) actual operating expenses of the Association (exclusive of capital improvement costs and reserves) and (ii) the sum of all monies receivable by the Association (including, without limitation, assessments, interest, late charges, fines and incidental income) and any surplus carried forward from the preceding year(s). Developer may from time to time change the option stated above under which Developer is making payments to the Association by written notice to such effect to the Association. When all Lots within the Neighborhood are sold and conveyed to purchasers, neither the Developer, nor its affiliates, shall have further liability of any kind to the Association for the payment of assessments, deficits or contributions.

6.11.    Association Funds.    The portion of all regular assessments collected by the Association for reserves for future expenses, if any, and the entire amount of all special assessments, shall be held by the Association for the Owners of all Lots, as their interests may appear, and may be invested in interest bearing accounts or in certificates of deposit or other like instruments or accounts available at banks or savings and loan institutions the deposits of which are insured by an agency of the United States.

**ARTICLE 7.**

**CERTAIN RULES AND REGULATIONS**

7.1.    Applicability.    The provisions of this Article **7** shall be applicable to all of the Lots, Homes and Common Properties of the Neighborhood.

7.2.    Land Use and Building Type.    No Lot shall be used except for single family residential purposes, unless otherwise approved by the Developer. No building constructed on a Lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any Lot other than one Home and one cabana house. Temporary uses by Developer and its affiliates for model homes, guest accommodations, sales displays, parking lots, sales offices and other offices, or any one or combination of such uses, shall be permitted at all times. No improvements may be made to a Lot, or changes thereafter made (unless such changes are made by the Developer) without the consent of the Architectural Control Board (as hereinafter defined).

7.3.    Construction Activity.    Unless otherwise approved in advance by the Architectural Control Board, no construction or construction related activities may be undertaken: (a) on legal holidays recognized by the Federal Government (or other holidays designated as such by Declarant), (b) Sundays, or (c) outside the hours of 8:00 a.m through 6:00 p.m., Monday through Friday, or 9:00 a.m through 6:00 p.m. on Saturdays.

OFF. REC BK. 21004PG0403

Exhibit "3"

Valencia - Unit 6913 (Hazan)

| Date | Item | Assessment | Interest | Late Fees | Ass'n Costs | Atty Fees | Atty Costs | Balance | Pymt |
|---|---|---|---|---|---|---|---|---|---|
| 7/31/2019 | Opening Balance | $ - | $ | $ - | $ - | $ - | $ - | $ | $ - |
| 8/1/2019 | Assessment | $ 1,425.44 | | | | | | 1,425.44 | |
| 8/16/2019 | Interest | | 21.38 | | | | | 1,446.82 | |
| 8/16/2019 | Late Fees | $ | $ | 25.00 | | | | $ 1,471.82 | |
| 9/1/2019 | Assessment | $ 1,425.44 | | | | | | 2,897.26 | |
| 9/16/2019 | Interest | | 42.76 | | | | | 2,940.02 | |
| 9/16/2019 | Late Fees | $ | $ | 25.00 | | | | $ 2,965.02 | |
| 10/1/2019 | Assessment | $ 1,423.00 | | | | | | 4,388.02 | |
| 10/3/2019 | Payment | $ (2,731.86) | $ (64.14) | $ (50.00) | | | | $ 1,542.02 | $ 2,846.00 |
| 10/16/2019 | Interest | $ | 23.13 | | | | | 1,565.16 | |
| 10/16/2019 | Late Fees | $ | $ | 25.00 | | | | $ 1,590.16 | |
| 11/1/2019 | Assessment | $ 1,423.00 | | | | | | 3,013.16 | |
| 11/16/2019 | Interest | | 44.48 | | | | | 3,057.63 | |
| 11/16/2019 | Late Fees | $ | $ | 25.00 | | | | $ 3,082.63 | |
| 12/1/2019 | Assessment | $ 1,423.00 | | | | | | 4,505.63 | |
| 12/16/2019 | Interest | | 65.82 | | | | | 4,571.45 | |
| 12/16/2019 | Late Fees | $ | $ | 25.00 | | | | $ 4,596.45 | |
| 1/1/2020 | Assessment | $ 1,423.00 | | | | | | 6,019.45 | |
| 1/16/2020 | Interest | | 87.17 | | | | | 6,106.62 | |
| 1/16/2020 | Late Fees | $ | $ | 25.00 | | | | $ 6,131.62 | |
| 2/1/2020 | Assessment | $ 1,423.00 | | | | | | 7,554.62 | |
| 2/16/2020 | Interest | | 108.51 | | | | | 7,663.13 | |
| 2/16/2020 | Late FEes | $ | $ | 25.00 | | | | $ 7,688.13 | |
| 3/1/2020 | Assessment | $ 1,423.00 | | | | | | 9,111.13 | |
| 3/16/2020 | Interest | | 129.86 | | | | | 9,240.98 | |
| 3/16/2020 | Late Fees | $ | $ | 25.00 | | | | $ 9,265.98 | |
| 3/31/2020 | Payment | $ (2,241.91) | $ (458.97) | $ (150.00) | | | | $ 6,415.10 | $ 2,850.88 |
| 3/31/2020 | Payment | $ (2,850.88) | | | | | | 3,564.22 | $ 2,850.88 |
| 4/1/2020 | Assessment | $ 1,423.00 | | | | | | 4,987.22 | |
| 4/16/2020 | Interest | $ | 74.81 | | | | | 5,062.03 | |
| 4/16/2020 | Late Fees | $ | $ | 25.00 | | | | 5,087.03 | |

| Date / Description | Assessment | Interest | Late Fees | | Attorney Fees | Costs | Balance |
|---|---|---|---|---|---|---|---|
| 5/1/2020 Assessment | $ 1,423.00 | | | | | | $ 6,510.03 |
| 5/16/2020 Interest | | $ 96.15 | | | | | $ 6,606.18 |
| 5/16/2020 Late Fees | | | $ 25.00 | | | | $ 6,631.18 |
| 6/1/2020 Assessment | $ 1,423.00 | | | | | | $ 8,054.18 |
| 6/16/2020 Interest | | $ 117.50 | | | | | $ 8,171.68 |
| 6/16/2020 Late Fees | | | $ 25.00 | | | | $ 8,196.68 |
| 7/1/2020 Assessment | $ 1,423.00 | | | | | | $ 9,619.68 |
| 7/16/2020 Interest | | $ 138.84 | | | | | $ 9,758.53 |
| 7/16/2020 Late Fees | | | $ 25.00 | | | | $ 9,783.53 |
| 8/1/2020 Assessment | $ 1,423.00 | | | | | | $ 11,206.53 |
| 8/16/2020 Interest | | $ 160.19 | | | | | $ 11,366.71 |
| 8/16/2020 Late Fees | | | $ 25.00 | | | | $ 11,391.71 |
| 9/1/2020 Assessment | $ 1,423.00 | | | | | | $ 12,814.71 |
| 9/16/2020 Interest | | $ 181.53 | | | | | $ 12,996.25 |
| 9/16/2020 Late Fees | | | $ 25.00 | | | | $ 13,021.25 |
| 10/1/2020 Assessment | $ 1,726.16 | | | | | | $ 14,747.41 |
| 10/7/2020 Attorney' Fees & Costs | | | | | $ 462.50 | $ 0.40 | $ 15,210.31 |
| 10/16/2020 Interest | | $ 207.43 | | | | | $ 15,417.73 |
| 10/16/2020 Late Fees | | | $ 25.00 | | | | $ 15,442.73 |
| 11/1/2020 Assessment | $ 1,726.16 | | | | | | $ 17,168.89 |
| 11/16/2020 Interest | | $ 233.32 | | | | | $ 17,427.21 |
| 11/16/2020 Late Fees | | | $ 25.00 | | | | $ 17,427.21 |
| 12/1/2020 Assessment | $ 1,726.16 | | | | | | $ 19,153.37 |
| 12/16/2020 Interest | | $ 259.21 | | | | | $ 19,412.58 |
| 12/16/2020 Late Fees | | | $ 25.00 | | | | $ 19,437.58 |
| 12/16/2020 Attorney's Fees | | | | | $ 1,218.75 | | $ 20,656.33 |
| TOTALS: | $ 17,280.71 | $ 1,468.97 | $ 225.00 | $ - | $ 1,681.25 | $ 0.40 | |

**Exhibit "4"**

## Valencia Estates – Annual Interest on Claim 10 Due from Debtor Hazan

| Date | Item | Assessment | Interest | Balance | Pymt |
|------|------|-----------|----------|---------|------|
| 7/2/2018 | Opening Balance | $  - | $  - | $  - | $  - |
| 7/2/2018 | Claim 10 | 195,000.00 | | 195,000.00 | |
| 7/2/2018 | Effective Date Payment | (4,062.00) | | 190,938.00 | 4,062.00 |
| 7/31/2018 | July Interest | | 557.54 | 191,495.54 | |
| 8/31/2018 | August Interest | | 557.54 | 192,053.08 | |
| 9/30/2018 | September Interest | | 557.54 | 192,610.62 | |
| 10/12/2018 | First Payment | (20,312.50) | | 172,298.12 | 20,312.50 |
| 10/31/2018 | October Interest | | 498.23 | 172,796.34 | |
| 11/30/2018 | November Interest | | 498.23 | 173,294.57 | |
| 12/31/2018 | December Interest | | 498.23 | 173,792.80 | |
| 1/31/2019 | January Interest | | 498.23 | 174,291.02 | |
| 2/28/2019 | February Interest | | 498.23 | 174,789.25 | |
| 3/31/2019 | March Interest | | 498.23 | 175,287.48 | |
| 4/30/2019 | April Interest | | 498.23 | 175,785.70 | |
| 5/3/2019 | Second Payment | (20,312.50) | | 155,473.20 | 20,312.50 |
| 5/31/2019 | May Interest | | 438.91 | 155,912.12 | |
| 6/30/2019 | June Interest | | 438.91 | 156,351.03 | |
| 7/30/2019 | July Interest | | 438.91 | 156,789.94 | |
| 7/30/2019 | Interest Payment | | (6,038.03) | 150,751.91 | |
| 8/31/2019 | August Interest | | 438.91 | 151,190.83 | |
| 9/30/2019 | September Interest | | 438.91 | 151,629.74 | |
| 10/8/2019 | Third Payment | (20,312.50) | | 131,317.24 | 20,312.50 |
| 10/31/2019 | October Interest | | 379.60 | 131,696.84 | |
| 11/30/2019 | November Interest | | 379.60 | 132,076.44 | |
| 12/31/2019 | December Interest | | 379.60 | 132,456.05 | |
| 1/31/2020 | January Interest | | 379.60 | 132,835.65 | |
| 2/29/2020 | February Interest | | 379.60 | 133,215.25 | |
| 3/13/2020 | Fourth Payment | (20,312.50) | | 112,902.75 | 20,312.50 |
| 3/31/2020 | March Interest | | 320.29 | 113,223.04 | |
| 4/30/2020 | April Interest | | 320.29 | 113,543.33 | |
| 5/31/2020 | May Interest | | 320.29 | 113,863.62 | |

| | | | |
|---|---|---|---:|
| 6/30/2020 | June Interest | 320.29 | 114,183.91 |
| 7/30/2020 | July Interest | (4,495.91) | 109,688.00 |
| 7/27/2020 | Interest Payment | 320.29 | 110,008.28 |
| 8/14/2020 | Fifth Payment | (20,312.50) | 89,695.78 | 20,312.50 |
| 8/30/2020 | August Interest | 260.98 | 89,956.76 |
| 9/30/2020 | September Interest | 260.98 | 90,217.74 |
| 10/31/2020 | October Interest | 260.98 | 90,478.71 |
| 11/30/2020 | November Interest | 260.98 | 90,739.69 |
| **TOTAL DUE:** | | $ 89,375.50 | $ 1,364.19 |

# JUDGMENT LIEN AMENDMENT STATEMENT

THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES, TO AMEND INFORMATION SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE.

**DO NOT PHOTOCOPY THIS FORM PRIOR TO USE. BAR CODE MUST BE LEGIBLE.**

**JUDGMENT DEBTOR(S)**

1. JUDGMENT DEBTOR (DEFENDANT) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

   Elizabeth Hazan
   _INDIVIDUAL OR BUSINESS ENTITY NAME_

   6913 Valencia Drive
   _MAILING ADDRESS_

   | Miami Beach | FL | 33109 |
   |---|---|---|
   | CITY | ST | ZIP |

2. ADDITIONAL JUDGMENT DEBTOR, IF APPLICABLE:

   _INDIVIDUAL OR BUSINESS ENTITY NAME_

   _MAILING ADDRESS_

   | | | |
   |---|---|---|
   | CITY | ST | ZIP |

**JUDGMENT CREDITOR(S)**

3. JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

   Valencia Estates Homeowners Association, Inc.
   _CREDITOR NAME(S)_

   42205 Fisher Island Drive
   _MAILING ADDRESS_

   | Fisher Island | FL | 33109 |
   |---|---|---|
   | CITY | ST | ZIP |

**THIS SPACE FOR USE BY FILING OFFICER**

4. J17000156085
   ENTER FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE

5. 3/23/17
   DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE

6. 
   - [✓] AMENDMENT — THE JUDGMENT LIEN BEARING THE FILE NUMBER INDICATED ABOVE IS AMENDED AS SET FORTH BELOW.
   - [✓] PARTIAL RELEASE — THE JUDGMENT LIEN BEARING THE FILE NUMBER INDICATED ABOVE HAS BEEN PARTIALLY RELEASED AND THE VALUE OF THE LIEN REMAINING UNPAID AS OF THE DATE OF THIS STATEMENT $ 89,375.50 .
   - [ ] ASSIGNMENT — ALL OF THE JUDGMENT CREDITOR'S RIGHTS UNDER THE JUDGMENT LIEN CERTIFICATE INDICATED ABOVE HAVE BEEN ASSIGNED TO THE NEW JUDGMENT LIENOWNER WHOSE NAME AND ADDRESS ARE LISTED BELOW.
   - [ ] TERMINATION — THE JUDGMENT CREDITOR NO LONGER CLAIMS A LIEN ON THE PERSONAL PROPERTY UNDER THE JUDGMENT LIEN BEARING THE NUMBER INDICATED ABOVE.

7. SHOW NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE: (ATTACH PAGE, IF NECESSARY)

   Amend applicable interest rate from 4.91% to 3.5%

**UNDER PENALTY OF PERJURY,** I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Judgment Lien Amendment Statement for filing.

_Signature of Judgment Creditor or Authorized Representative_

Rebecca Newman Casamayor, Esq.
_Printed Name_

OWNER'S ATTORNEY OR AUTHORIZED REPRESENTATIVE TO WHOM ACKNOWLEDGMENT/CERTIFICATION OF FILING WILL BE MAILED:

Rebecca Newman Casamayor, Esq.
_NAME_

251 NW 23rd Street
_MAILING ADDRESS_

| Miami | FL | 33127 |
|---|---|---|
| CITY | ST | ZIP |

**NON-REFUNDABLE PROCESSING FEE:**

JUDGMENT LIEN AMENDMENT STATEMENT   $20.00     EACH ATTACHED PAGE, IF NECESSARY   $ 5.00
IF MORE THAN ONE DEBTOR BEING ADDED, FOR EACH ADDITIONAL   $5.00

**CERTIFIED COPY REQUESTED**   **$10.00** [ ]

Division of Corporations • P.O. Box 6250 • Tallahassee, Fl 32314 • 850-245-6011
**Make Checks Payable to: Florida Department of State**

CR2E094 (10/09)

**Rebecca Newman Casamayor**

| | |
|---|---|
| **From:** | donotreply@sunbiz.org |
| **Sent:** | Wednesday, December 16, 2020 4:37 PM |
| **To:** | Rebecca Newman Casamayor |
| **Subject:** | Sunbiz.org Payment Receipt |

Thank you for submitting your payment to Florida Department of State, Division of Corporations. This email will serve as confirmation that your payment was received by our office.
Your filing will be posted on our website http://www.sunbiz.org/ in the order received.

The transaction information is listed below:

```
Receipt Number:          3795076660
Transaction Date/Time:   12/16/2020 04:37 PM
Card Number:
Card Type:
Approval Code:           295511
Payment Amount:          $20.00
Tracking Number:         J20000404588
Document Number:         NEW
```



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                Chapter 11
_____/

## CHRIS KOSACHUK'S MOTION FOR RELIEF FROM AND REHEARING OF ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR CONTEMPT [ECF NO. 1073]

Chris Kosachuk, Jr., *pro se* ("Movant"), pursuant to Rule 59 and 60 of the Federal Rules

of Civil Procedure and Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, hereby

files this Motion for Relief From and Rehearing of the Order ("the Order") [ECF No. 1073]

Granting Debtor's Emergency Motion for Contempt and To Impose Sanctions ("the Motion")

[ECF No. 1068]. In support, Movant states:

Debtor Hazan has filed at least 12 motions for contempt, listing all the various grounds

asserted as being contemptuous. On the very first order issued on December 28, 2018 [ECF No.

780], disposing of the first four motions for contempt, this Court correctly found:

> Upon consideration, the Court believes the recordation of the *lis pendens*
> against Debtor's property is **not**, in and of itself, **a violation of the Plan's
> injunction**. The purpose of a *lis pendens* is to give constructive notice to a
> prospective buyer or lender of the pendency of a legal proceeding affecting title to
> or the right of possession of real property. A *lis pendens* exists, in part, to prevent
> third-party purchasers or lenders from "buying" a lawsuit when they purchase or
> loan against the property. *Chiusolo v. Kennedy*, 614 So.2d 491 (Fla. 1993). The
> recordation of a *lis pendens* provides constructive notice to subsequent purchasers
> or lenders, to prevent a buyer of real property from claiming *bona fide* purchaser
> status with respect to the asserted claim. A *lis pendens* also protects the filer from
> intervening liens that could impair any property rights claimed and from possible
> extinguishment of an unrecorded equitable lien. *Id.* [*See* ECF No. 780 p. 5]
> (emphasis added).

This Court further stated:

> While the *lis pendens* appears premised upon a pre-petition, satisfied and
> extinguished claim, it does not establish or perfect a lien on real property and

Motion for Relief
Case No. 16-10389-AJC
Page 2 of 5

therefore **does not constitute an act of violation of the stay or injunction** (though some courts may suggest otherwise). *Id.* (emphasis added).

Without explaining how, this Court now finds that the *lis pendens* filed by Movant violates the Confirmation Order and the Bankruptcy Code's discharge injunction without considering that the Confirmed Plan is in default or that a *lis pendens* is merely a notice.

Neither the Motion nor the Order explain how the *lis pendens*, does anything more than give constructive notice to a prospective buyer or lender of the NLG bankruptcy in Delaware.

There is nothing in the Confirmation Order enjoining the filing of a *lis pendens*. For example, Paragraph 8 of the Confirmation Order contains an injunction prohibiting creditors whose claims were extinguished from pursuing claims against the debtor:

> All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

See ECF No. 691, ¶ 8. The *lis pendens* is not commencing, continuing, or in any way seeking to collect against the Debtor or her property. Likewise, Paragraph 9 of the Confirmation Order contains an injunction prohibiting all creditors from taking any action to collect any prepetition debt or to enforce any lien against the debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing/, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

See ECF No. 691, ¶ 9. The Bankruptcy Code, under 11 U.S.C.§524, contains a similar injunction.

The Order incorrectly finds that Movant filed seven lis pendens when in fact he filed only one. [*See* ECF No. 1068-1]. There is no evidence in the record that Mr. Kosachuk filed more than one lis pendens. There are several lis pendens on the property right now because the debtor has

Motion for Relief
Case No. 16-10389-AJC
Page 3 of 5

two pending foreclosure actions, one with JP Morgan Chase Bank, [*See* ECF No. 1074 p. 11] and another with Valencia Estates [*See* ECF No. 1074 p. 20].

The Order then finds that the Final Judgment on Counts I, II and III "adjudicate[ed] Mr. Kosachuk's rights in and to the Debtor's homestead property." This conclusion is impossible because all allegations against Mr. Kosachuk individually were dismissed in the adversary proceeding and there is no judgment adjudicating his rights. The bankruptcy court seems to be piercing the NLG corporate veil without any of the required allegations or findings.

The bankruptcy court fails to recognize that the void $5 million New York Judgment by Confession that it enforced against NLG's Final Judgment of Foreclosure is still subject to attack because there is no statute of limitations on challenging a void judgment. In fact, the New York Court vacated it *nunc pro tunc*, only to reverse course and compound the litigation. The New York Court correctly determined the collusive nature of the Judgment by Confession in its order [*See* ECF No. 1074 pp. 34-35].

The Order then accepts at face value that the Debtor had to make a significant payment to the Valencia Estates Homeowners' Association on April 2, 2022. The debtor in fact failed to make this alleged payment and Valencia Estates filed a foreclosure, [*See* ECF No. 1074 pp. 20-32]. This fact is now confirmed by the debtor herself in her Emergency Motion to Reduce and Extend Plan Payments to Secured Creditor, Valencia Estates Community Association, Inc. [ECF No. 1076]. Contained in that motion is a demand letter from Valencia Estates dated April 6, 2020 [ECF No. 1076-1] which reads: "Hazan has now failed to make the latest Plan Payment in the amount of $20,312.50, which was due on April 2, 2022. As such, Hazan is clearly in default of the Stipulation and the Plan". Hazan is in default of several of her plan obligations. [*See* ECF No. 1075]. Hazan

Motion for Relief
Case No. 16-10389-AJC
Page 4 of 5

wants all the protections of bankruptcy and none of the responsibilities. This is patently unfair and an abuse of the bankruptcy code.

Also, in the Motion [ECF No. 1076], it states that on April 1, 2022, Mr. Simon (Hazan's personal attorney) wrote an email to the Senior Underwriter "Connie- Attached is the Court order related to the lis pendens on Hazan's home and enjoining Mr. Kosachuk from any further lis pendens filings, etc, on this property. Based upon the Delaware case dismissal and this Court order, may we proceed to show that Item #14 B-1 has been satisfied? I look forward to your prompt reply".

On April 4, 2022, The Senior Underwriting Counsel wrote an email to Michael Simon "**we are not willing to insure the title since the dismissal in the Delaware bankruptcy was without prejudice**."

It should be perfectly clear now to this Court that Movant's lis pendens has nothing to do with the debtor's inability to refinance the property. And that Movant is not in contempt of any order of this Court.

Movant adopts and incorporates by reference the Objection filed on April 12, 2022, [ECF No. 1074] as if fully re-written herein.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should grant relief from its Order finding Movant in contempt. [ECF No. 1073].

Dated April 15, 2022

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court on this 15th day of April, 2022. I also certify that the foregoing was served on

Motion for Relief
Case No. 16-10389-AJC
Page 5 of 5

this day by either U.S. Mail or Electronic mail or via the CM/ECF system to the parties on the

attached service list.

Respectfully submitted,

**Chris Kosachuk**
*Pro Se Movant*
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## SERVICE LIST

**Via Email and/or ECF**

All parties of record

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Steven D. Schneiderman, Esq.
Trial Attorney
United States Department Of Justice
Office of the United States Trustee
51 S.W. First Ave., Suite 1204
Miami, Florida 33130
Steven.D.Schneiderman@usdoj.gov

Adisley M. Cortez-Rodriguez
Trial Attorney
United States Department Of Justice
Office of the United States Trustee
51 S.W. First Ave., Suite 1204
Miami, Florida 33130
Adisley.M.Cortez-Rodriguez@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                      CASE NO.:  16-10389-AJC

     Debtor.                                    CHAPTER 11

_____/

**LIZA HAZAN'S EXPEDITED MOTION FOR CONTEMPT, TO**
**STRIKE LIS PENDENS AND TO IMPOSE SANCTIONS ON**
**CHRISTOPHER KOSACHUK AND**
**MOTION FOR ENTRY OF FINAL JUDGMENT**
**And**
**REQUEST FOR EXPEDITED HEARING**

BASIS FOR REQUEST FOR EXPEDITED HEARING

**As more fully discussed below, Ms. Hazan owes a large payment that came due to**
**Valencia Estates Community Association on April 2, 2022, as stated in Hazan's last**
**Motion for Sanctions (ECF 1068).  The Valencia HOA has now filed a foreclosure**
**action against Ms. Hazan.  Ms. Hazan has arranged for financing to pay the**
**assessment but cannot close on the financing due to yet another recording of a *lis***
***pendens* by Chris Kosachuk, recorded the very day this Court found Kosachuk in**
**contempt of Court, and which is the subject of this Motion.  The Debtor requests a**
**hearing as soon as possible.**

Reorganized and Discharged Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Hazan"),

through her undersigned counsel, moves for an order finding non-creditor Christopher Kosachuk,

("Kosachuk"), in further contempt of Court for again willfully violating this Court's orders,

determining the eighth *lis pendens* filed by Kosachuk to be null and void, for injunctive relief, and

awarding sanctions, costs, attorney's fees, and other relief, and respectfully says:

**I.      INTRODUCTION**

1

Kosachuk, NLG, LLC[1] and its attorneys have repeatedly violated the orders of this Court, resulting in several previous sanctions orders. In particular, this Court recently held, following the previous sanctions motion against Kosachuk, "Other than the injunction herein [against Kosachuk for filing the Seventh Lis Pendens], the Court declines to impose any monetary sanctions on Mr. Kosachuk for his contempt in this instance; however, the Court cautions Mr. Kosachuk that any future violations of this Court's Orders, including the injunction contained herein, may incur extraordinary sanctions to coerce compliance in the face of contempt, including monetary sanctions and incarceration". Despite this and other previous orders and warnings, Kosachuk has recorded an eighth *lis pendens* (the Eight Lis Pendens) against Ms. Hazan's home. Further, despite the issuance of an Order finding him in contempt for filing the Seventh Lis Pendens [ECF 1073], and threatening possible incarceration, he has taken no action to limit possible future sanctions by voluntarily dissolving the Eighth Lis Pendens. Ms.Hazan once again requests sanctions in order to finally deter Kosachuk from continuing with his wrongful conduct. Hazan incorporates by reference the listing of many previous violations of the Discharge Injunction and Confirmation Order set forth in ECF 1068 and as referenced in this Court's Order, ECF 1073.

## II. KOSACHUK HAS AGAIN ACTED WITH WILLFULL CONTEMPT OF COURT BY RECORDING AN EIGHT LIS PENDENS ON MARCH 30, 2022.

In complete defiance and willful violation of this Court's various Contempt Orders, Kosachuk filed a new lis pendens against Liza Hazan and her property on March 30, 2022, the day of the hearing on Hazan's Emergency Motion to hold Kosachuk in contempt of Court for filing a seventh lis pendens. The Eighth Lis Pendens is recorded at Book 33096, Pages 4285-4286, CFN

---

[1] NLG is presently a debtor in an involuntary Chapter 7 bankruptcy action filed by its principal, Chris Kosachuk, Case No. 21-11269-JKS, in the District of Delaware.

2022R0257478, of the Public Records of Miami-Dade County. Attached as Exhibit A is a true and correct copy.

The Eighth Lis Pendens states that it:

Relates to the lien based of(sp) NLG's mortgage recorded in the Official records Book 25559 at Pages 4266-4272, CFN2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737-3742, CFN 20150812181 on the following property in Miami-Dade County, Florida: 6913 Valencia Drive, Fisher Island, FL 33109.

On October 31, 2017, this Court deemed the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 **Satisfied and Paid of Record** in the Final Judgment in ADV Case 2016 ap-01439-AJC ECF 238, which was upheld by both the District Court and in the Eleventh Circuit Court of Appeals [ECF No 1047] and [ECF No 1067]. The Eighth Lis Pendens recorded by Kosachuk has further damaged Ms Hazan and her Fisher Island property, slandering her title, diminishing the value of her property, making it impossible to sell or refinance her house or obtain a title insurance policy – efforts which are currently underway. As this Court has recognized, it can and should enforce its own orders. That is especially true in this case. There can be no doubt now that Kosachuk has no claim and no standing, yet will continue to violate this Court's orders unless sufficiently punitive measures are imposed on him. Under 28 U.S.C. §1334, this Court has jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11. A proceeding to enforce the discharge injunction and the Orders of this Court is within the bankruptcy court's jurisdiction. *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997).

### III. THIS COURT HAS PREVIOUSLY FOUND THAT KOSACHUK LACKS STANDING IN THIS CASE.

This Court previously found that "Chris Kosachuk, who has not filed a proof claim or otherwise participated in an individual capacity in Hazan's bankruptcy case, lacks standing to seek revocation. Pursuant to 11 U.S.C. §1109(b), only "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." A party in interest must have "a direct legal interest in the case" and may only "assert that interest with respect to any issue to which it pertains." *In re JMP-Newcor International, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (citations omitted). As Kosachuk has no claim against Hazan, he is unaffected by the confirmation of Hazan's plan. He also lacks standing regarding confirmation of Hazan's plan because he holds no allowed claim. *See, e.g.*, *In re Flintkote Co.*, 526 B.R. 515, 520 (D. Del. 2014) (purported creditor lacked standing to challenge plan confirmation "because all of its asserted claims were untimely or disallowed"); *In re Delta Air Lines, Inc.*, 374 B.R. 516 (Bankr. S.D.N.Y. 2007)." Case 18-01492-AJC Doc 35.

### IV. KOSACHUK'S REPEATED VIOLATIONS OF THE CONFIRMATION AND DISCHARGE ORDERS.

In violation of the injunctions in the Confirmation Order and the Discharge Order, Kosachuk has repeatedly engaged in actions to recover a prepetition debt against Hazan, including his recent filing of an Adversary Proceeding in the NLG, LLC involuntary Chapter 7 bankruptcy proceeding pending in the Bankruptcy Court for the District of Delaware, Adversary Case No. 21-11269-JKS, titled *Chris Kosachuk v. 9197-5904 Quebec, Inc. and Selective Advisors Group, LLC*. The Adversary Proceeding is the case listed on the Seventh Lis Pendens and was yet a further effort to

collaterally attack the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439. This Court has previously warned the NLG parties "to refrain from taking ***any other action*** in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June 12, 2018." ECF 780 at 9.

The Court has further found that the various filings of Lis Pendens were an effort to collect a pre-petition claim that this Court determined was already extinguished, and appear to be a collateral attack on the Final Judgment. Kosachuk is now attempting to take the same wrongful action.

"Under Florida law, a Lis Pendens serves to provide inquiry notice to those interested in a particular tract of land as to the facts and issues involved in the suit or action concerned. The purpose of a Lis Pendens is to carry out the public policy that a plaintiff's action shall not be defeated by an alienation of the property during the course of the lawsuit. *In re Kodo Properties, Inc.* 63 B.R. 588 (EDNY 1986) citing *Mechanics Exchange Savings Bank v. Chesterfield*, 34 A.D.2d 111, 113, 309 N.Y.S.2d 548 (1970). NLG and Attorney Ramirez argued that the filing of the Third and Fourth Lis Pendens was not an attempt to collect, recover or offset the debt this Court previously ruled was extinguished or satisfied, but rather "merely ensures that a title search actually notices the pending appeal[2]. It not only protects potential buyers or lenders, but also the title examiner and malpractice insurance carrier." This Court was unpersuaded by such an argument. The Court found that the filing of the Lis Pendens at this late stage in the proceedings – years after judgment has been entered and not stayed, and while the judgment is on appeal – is not authorized by statute or otherwise. See, Florida Statute §48.23 (2019).

The Court determined that neither NLG nor Chris Kosachuk have a lien on Debtor's property; the

---

[2] On September 19, 2019 NLG's appeal of the Final Judgment was dismissed. Case 2018-cv-24272-SMITH. ECF No. 132]. The Final Judgment entered by this Court was also upheld by the Eleventh Circuit Court.

Court held that any alleged lien of NLG on Debtor's property was extinguished or satisfied. That judgment has become final. The Court has already concluded that "the filing of the seventh lis pendens at this late stage in the proceedings violates the injunctions provided by the Confirmation and Discharge Orders. The Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439-BKC-AJC-A [ECF 238] was not stayed. The District Court and the Eleventh Circuit Court of Appeals (which orders on appeal have become final) have held that any challenges to the Final Judgment are barred by the doctrine of equitable mootness. No collateral attack on the Final Judgment can overcome those rulings. The filing of the Delaware Adversary Proceeding and subsequent recording of the Seventh and Eighth Lis Pendens are further violations of the Discharge Injunction and Confirmation Order.

Hazan is respectfully requesting this Court enforce its previous contempt orders and: Find Kosachuk in contempt of Court; Determine that the Eighth Lis Pendens is null and void; Enjoin Kosachuk from the further filing of any lis pendens or other impediments of title against the subject property, or from taking any other action to impede Ms. Hazan's ability to refinance or sell her home; Enter judgment against Chris Kosachuk for damages; Order his incarceration for willful violation of the orders of this Court.

## V. CONCLUSION

The sanctions entered by the Court to date have been insufficient to deter the continuing violations of this Court's orders by Kosachuk. Hazan requests sufficiently severe sanctions to prevent such further conduct. Hazan also requests the Court consider and grant Hazan's Motion for Order to Show Cause to be filed subsequent to this motion.

WHEREFORE, Reorganized and Discharged Liza Hazan respectfully requests that the Court enter an order:

(1) Finding Chris Kosachuk in contempt of court and striking all improperly filed pleadings filed by Chris Kosachuk or his representatives, attorneys or agents;

(2) Directing Chris Kosachuk to immediately **dismiss, dissolve and release** with prejudice the newly recorded lis pendens recorded on March 30, 2022 at Book 33096 Pages 4285-4286 CFN 2022R0257478;

(3) Permanently enjoining Kosachuk or his representatives, attorneys, agents from filing and recording a lis pendens against Liza Hazan aka Elizabeth Hazan's property on Fisher Island under any caption in any jurisdiction; or from taking any other action judicially or otherwise in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adversary Case 16-01439-AJC [ECF 238] or the Confirmation Order entered on June 12, 2018 [ECF 691], or the Discharge Order entered on December 7, 2019 [ECF No. 766];

(4) Dissolving, discharging and releasing with prejudice the Eighth Lis Pendens recorded on March 30, 2022 at Book 33096 Pages 4285-4286 CFN 2022R0257478 and all other past, present or future lis pendens filed by Chris Kosachuk, his representatives attorneys, agents and deeming all such filings and recordings null and void and of no effect;

(5) Awarding the following damages:

    a. Compensatory damages, including damages for Liza Hazan's inability to refinance, sell or transfer her property, including all carrying costs since the recording of the lis pendens, plus damages for an egregious violation of the discharge injunction and confirmation order;

    b. Hazan's reasonable attorney's fees and costs incurred in bringing this motion;

    c. Punitive damages.

7

(6) Order Chris Kosachuk to be incarcerated and to be brought before the Court for inquiry into his future intentions to harass and intimidate Hazan and to respond to the Motion for Order to Show Cause;

(7) such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served all parties of interest as specified on the attached service list on this 26th day of April, 2022.

> DAVID W. LANGLEY
> *Attorney for Debtor-in-Possession*
> 8551 W. Sunrise Blvd., Ste 303
> Plantation, Florida 33322
> Telephone:      954-356-0450
> Facsimile:      954-356-0451
> E-mail: dave@flalawyer.com
> By:      */s/ David W. Langley*
>          David W. Langley, Esq.
>          Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will be served by United States Postal Service Mail, postage prepaid, to:*

**Chris Kosachuk**
854 Pheasant Run Rd.
West Chester, PA 19382

And since Mr. Kosachuk has denied receipt of service by Mail, this Motion will also be served
by U.S. Certified Mail, postage prepaid, to:

**Chris Kosachuk**
854 Pheasant Run Rd.
West Chester, PA 19382

And by email to:
chriskosachuk@gmail.com

**After recording return to:**
Chris Kosachuk
854 Pheasant Run Rd.
West Chester, PA 19382-8144
Tel. +1.305.490.5700
chriskosachuk@gmail.com



CFN 2022R0257478
OR BK 33096 Pgs 4285-4286 (2Pgs)
RECORDED 03/30/2022 12:54:31
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

---

Space above reserved for recording information

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

### Bankruptcy Case Number: 21-bk-11269-JKS
### Chapter 7

In Re:

NLG, LLC
A Delaware LLC
_____/

## <u>NOTICE OF LIS PENDENS</u>

## TO THE ABOVE STYLED DEFENDANTS AND ALL OTHERS TO WHOM IT MAY CONCERN:

**YOU ARE HEREBY NOTIFIED** of the pending bankruptcy in the above referenced case which relates to the lien based of NLG's mortgage recorded in the Official Records Book 25559 at Pages 4266 – 4272, CFN 2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial

Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737 – 3742, CFN 20150812181 on the following property in Miami-Dade County, Florida:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County,

Physical Address: 6913 Valencia Drive, Fisher Island, FL 33109

including the buildings, appurtenances, and fixtures located thereon.

This Lis Pendens relates back to the original lis pendens recorded on December 23, 2011 in Book 27940 Pages 2791-2792 and CFN 2011R0864248.

CHRIS KOSACHUK
*Pro Se Petitioning Creditor*
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

Chris Kosachuk
*Pro Se Petitioning Creditor*

Book33096/Page4286    CFN#20220257478                    Page 2 of 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                                      CASE NO.:  16-10389-AJC

      Debtor.                                               CHAPTER 11

_____/

**REORGANIZED DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE**
**And**
**REQUEST FOR EXPEDITED HEARING**

BASIS FOR REQUEST FOR EXPEDITED HEARING

**As more fully discussed below, Ms. Hazan has a large payment coming due to Valencia Estates Community Association on April 2, 2022.  She has arranged for financing to pay the assessment but cannot close on the financing due to the recently discovered recording of an eighth *lis pendens* by Chris Kosachuk which is the subject of this Motion, as well as ECF 1090, Hazan's Motion for Contempt. The Motion for Contempt has been set for hearing on May 3, 2022, at 3:00 pm. The Debtor requests a hearing on Debtor's Motion for Order to Show Cause on the same date.**

Reorganized Debtor, Liza Hazan, through counsel, moves for an Order to Show Cause why Chris Kosachuk should not be enjoined from filing further vexatious pleadings, lawsuits and lis pendens, and says:

1.      Chris Kosachuk has been involved in this case and several related adversary proceedings, as well as other Federal Court and State Court proceedings directed at the Reorganized Debtor, Liza Hazan (Hazan), as both the purported principal of NLG, LLC (NLG) and representing himself.

1

2.  Kosachuk has also been drafting and filing pleadings on behalf of NLG using the filing credentials of attorney Astrid Gabbe. See Hazan's prior Motion for Order to Show Cause, ECF 857.

3.  Kosachuk has been disruptive and combative and has ignored the rulings of this Court and has abused the system, most recently resulting in a finding of contempt and sanctions against him. See ECF 1073.

## **IMPROPER FILINGS**

4.  The improper and vexatious pleadings, lawsuits and other documents of legal significance filed by Kosachuk include the following:

    a.  Seventh Lis Pendens: The filing of the Seventh Lis Pendens by Kosachuk was the subject of the most recent hearing before the Court. The Court found Kosachuk in contempt of Court and threatened further sanctions, including incarceration, for further wrongful acts by Kosachuk. See ECF 1073.

    b.  Eight Lis Pendens: The Eighth Lis Pendens was recorded on March 30, 2022, the day of the hearing on the Motion for Sanctions for recording the Seventh Lis Pendens. Despite the Court's threat of sanctions and incarceration, Kosachuk has refused to withdraw or dissolve this latest lis pendens.

    c.  Kosachuk's Motion to Compel Quarterly Operating Reports, ECF 1075. Four prior filings of this motion have been denied. See ECF 489, 773, 828 and 1031.

    d.  Kosachuk's Objection to Order Granting Emergency Motion for Contempt, ECF 1074, to which is attached an order by Judge Borrok of the Supreme Court of New York, New York County. Kosachuk's Objection claims that "the New York Court correctly determined the collusive nature of the Judgment by

Confession in its order". Kosachuk failed to disclose that the order has been set

aside by Judge Borrok, stating:

> The Court granted the Prior Order without opposition, but as now
> demonstrated by Selective the sole reason that the petition was unopposed
> was because Selective was never actually served with the petition. Rather,
> service was effectuated on a different, separate and wholly unrelated entity
> "Selective Advisors Group, LLC", a Delaware entity by the same name…"

That phony entity by the same name was organized by Chris Kosachuk. Judge

Borrok went on to state:

> Put another way, Mr. Ramirez [Kosachuk's attorney] appears to have
> attempted to perpetrate a fraud on the filing of this special proceeding. His
> filing of this motion is equally outrageous. Selective is entitled to recover
> its reasonable legal fees and costs in having to defend against this patently
> frivolous motion".

See ECF 407-1 in the Adversary case, 16-1439-AJC.

e.  In violation of the injunctions in the Confirmation Order and the Discharge

Order, Kosachuk has repeatedly engaged in actions to recover a prepetition debt

against Hazan, including his recent filing of an Adversary Proceeding in the

NLG, LLC involuntary Chapter 7 bankruptcy proceeding pending in the

Bankruptcy Court for the District of Delaware, Adversary Case No. 21-11269-

JKS, titled *Chris Kosachuk v. 9197-5904 Quebec, Inc. and Selective Advisors*

*Group, LLC*. The Adversary Proceeding is the case listed on the Seventh Lis

Pendens and was yet a further effort to collaterally attack the Final Judgment

on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439.

f.  Kosachuk filed an action in the District Court for the Southern District of

Florida in which he attempted to obtain and serve a writ of garnishment against

Ms. Hazan.  See ECF 856 in which this Court found:

These attempts to collect on the Quebec judgment from Ms. Hazan are blatantly contemptuous acts in willful defiance of this Court's Confirmation Order (ECF 691), Discharge Order (ECF 766) and the discharge injunction provided under the Bankruptcy Code.

g. Kosachuk has also filed a Garnishment case against Elizabeth Hazan, 18-mc-25369-KMM, ECF No. 6 and most recently on attorney Joe Grant ECF No. 45, 46.

h. The Court is aware of the numerous other wrongful actions by Kosachuk which are the subject matter of numerous prior motions for sanctions.

5. Hazan has initiated an investigation into the litigiousness of Kosachuk and has learned that Kosachuk has engaged in other, similar vexatious litigation, including to but not limited to the following:

a. Chris Kosachuk defrauded Oxana Agapov. In 2001, Agapov purchased the property located at 6913 Valencia Drive, Miami FL 33109 (now owned by Hazan). The purchase price was $2,750,000. The contract required a series of deposits. In total, Agapov paid $1,375,000 in deposits to the seller, with funds provided to her by her father, Valeri Negodaeva. Agapov borrowed the balance of the purchase price from Diana Basumova. The amount of the Basumova loan was $1,700,000. This amount included an interest reserve and various loan fees. In early 2003, after the Property was constructed, it was time to close on the purchase of the Property. Agapov did not want to take title in her own name. She so advised Defendant Kosachuk. At that time, Agapov considered Kosachuk to be a friend. Kosachuk volunteered to hold title in NLG. He was the president and sole member of NLG. Neither Kosachuk nor NLG paid a single dollar toward the purchase of the Property. Agapov and Kosachuk

reached an oral agreement that title to the Property would be held temporarily by NLG but would be transferred by NLG to Agapov upon Agapov's request. Kosachuk later denied the existence of the oral agreement. See Complaint attached as Exhibit A from Case No. 05-cv-22007-PAS ECF No. 1. See case Involuntary Petition filed by Agapov against NLG, LLC in 2004 case 04-13026-RAM.

b.  Kosachuk stole money from Eugenia Lorret and Nina Gogitidze. Kosachuk stole signed blank checks belonging to Eugenia Lorret's mother which he negotiated in the amount of $150,000. See attached Final Judgment filed in New York entered against Kosachuk in favor of Eugenia Lorret and Nina Gogitidze, attached as Exhibit B. See also Exhibit B-1.

c.  Kosachuk impersonated an associate of Ms. Hazan named Raymond Houle. See the Decision of Judge Braun attached as Exhibit C which states, "ORDERED that, pending the determination of this action, defendants and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, are restrained and enjoined from (1) representing that Raymond Haule signed documents transferring ownership of plaintiff companies to either defendant, (2) holding themselves out as the owners, shareholders, members, agents, presidents, board of directors, management, or any other representative of either Global Retail Consultants, Inc. or World of Concepts, LLC, acting individually or through any corporation or other entity that they own, control or operate, and (3) binding or otherwise acting on behalf of Global Retail Consultants, Inc. and World of Concepts,

LLC, with respect to, and toward any banking institution, federal credit union, a client of plaintiffs, debtor or creditor of plaintiffs, a government entity, a current or former employee, a private individual or company, or any other entity either individually or through any corporation or other entity that the defendants own, control or operate". See Decision Judge Braun case index 116915/09 March 4, 2010 in Supreme Court New York attached as Exhibit C.

6.     Kosachuk has also threatened and intimidated numerous individuals involved in this and related cases, including Hazan's counsel, including the following:

    a.   In October 2008, Kosachuk broke into Debtor's homestead residence located on Fisher Island, moved in for two months, painted the walls and removed personal property. Debtor, who was out of the country, after learning of the incident, filed an emergency motion to vacate the fraudulent Sheriff's deed obtained by NLG. Judge Scola granted Debtor's emergency motion, finding Kosachuk's actions "unconscionable". See ECF 316.

    b.   Kosachuk has stolen Debtor's mail, broken into her lawyer Michael Simon's office, and upon information and belief has stolen his monitors and computers. (Michael Simon has so testified before Judge Eig). Chris Kosachuk has attempted to kill Debtor and stalked her for years. See ECF 316.

    c.   Kosachuk has threatened many of Debtor's lawyers. He knocked Darius Marzec, her New York attorney, to the ground and pushed Marzec's face against the snow. Kosachuk has impersonated Debtor and called her banks to find out personal information. Kosachuk has intimidated Debtor's previous clients, attempted to ruin her business and caused her millions of dollars of

lost income. Kosachuk has harassed Debtor's clients and has defamed her character and damaged her reputation, defaming her in numerous newspapers, calling her a zero and a loser and other names. New York Judge Paul Feinman granted Debtor's motion for sanctions against Chris Kosachuk and NLG on these actions. See Exhibit B to ECF 316.

d. Kosachuk has sent Debtor an email stating "your days are numbered" and told her that he would bury her alive. See ECF 316.

e. Kosachuk once had to be restrained by the US Marshals outside of Judge Cristol's courtroom while her husband walked her to her car.

7.     Kosachuk has filed vexatious, false and fraudulent claims against Hazan in an illegal effort to extort funds from her following the loss of the Adversary Proceeding deeming the NLG mortgage assigned and satisfied. His actions are sanctionable and he should be enjoined from future similar conduct.

**<u>MEMORANDUM OF LAW</u>**

8.     When one person, by his activities, upsets the normal procedure of the Court so as to interfere with the causes of other litigants, it is appropriate to exercise restraint upon that person. *Emery v. Clifford*, 721 So.2d 401 (Fla. 3rd DCA 1998). Appropriate limits including requirements that vexatious litigants file pleadings only through a licensed attorney. *Gladstone v. Smith*, 729 So.2d 1002 (Fla. 4th DCA 1999). Prior to the imposition of sanctions, the trial court must issue an order to show cause which initiates a separate proceeding. State of *Florida v. Spenser*, 751 So.2d 47 (Fla. 1999).

9.     Kosachuk has caused sufficient disruption of the Bankruptcy Court, District Courts and State Courts and has caused Hazan and numerous other undeserving defendants to expend considerable time, energy, costs and attorney's fees in defense of Kosachuk's outrageous claims,

so as to justify appropriate limitations on the filing of pleadings not only in this action, but in any proceeding in this jurisdiction or in any other jurisdiction.

10.     Further, Kosachuk has engaged in ghost writing using the credentials of Astrid Gabbe in an effort to cause Hazan to incur substantial attorney's fees, while Kosachuk incurs none. See ECF 857. "Ghost writing is violative of Court rules, particularly Rule 11, Fed.R.Civ.P. and ABA Standing Committee Opinion 1414 (1978) in Ethics and Professional Responsibility. *In re Ellingson*, 230 B.R. 426 (Bankr. Mont., 1999), citing *In re Ellingson*, 230 B.R. 426 (Bankr. Mont., 1999), *Johnson v. Bd. of County Commissioners for the County of Fremont*, 868 F.Supp. 1226, 1231-32 (D.Colo.1994).

11.     Hazan requests the Court order Kosachuk to appear in Court to show cause why he should not be sanctioned for the disruptive filings and to show cause why he should not be enjoined from filing any further vexatious litigation, pleadings or public documents of record absent appropriate screening limitations to be imposed by this Court, including a requirement that any such document filed or recorded by or on behalf of Kosachuk or his agents or assigns be reviewed, approved and signed by a licensed attorney.

WHEREFORE, the Debtor respectfully requests an order to show cause as set forth above, and such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 27th day of April, 2022.

DAVID W. LANGLEY
*Attorney for Reorganized Debtor*
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:      954-356-0450
Facsimile:      954-356-0451
E-mail: dave@flalawyer.com
By: ___/s/ *David W. Langley*_____
        David W. Langley, Esq.
        Florida Bar Number 348279

## **SERVICE LIST**

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

_16-10389-AJC Notice will be served by United States Postal Service Mail, postage prepaid, to:_

**Chris Kosachuk**
854 Pheasant Run Rd.
West Chester, PA 19382

And since Mr. Kosachuk has denied receipt of service by Mail, this Motion will also be served
by U.S. Certified Mail, postage prepaid, to:

**Chris Kosachuk**
854 Pheasant Run Rd.
West Chester, PA 19382

And by email to:
chriskosachuk@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: _____

OXANA AGAPOV,

      Plaintiff,

vs.

NLG, LLC, a Delaware limited liability
company, TAIWAN RATIONAL
ENTERPRISES, LLC, a Delaware
limited liability company,
CHRISTOPHER G. KOSACHUK, and
ANTON WAHLMAN,

      Defendants.

_____/

## COMPLAINT

Agapov, Oxana Agapov ("Agapov"), files this Complaint against Defendants, and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Agapov Oxana Agapov ("Agapov" or "Agapov") is a citizen of Russia who resides in New York City.

2.    Defendant Christopher Kosachuk ("Kosachuk") is a citizen of Pennsylvania.

3.    Defendant Anton Wahlman ("Wahlman") is a citizen of Sweden.

4.    Defendant Kosachuk is the managing and sole member of Defendant NLG, LLC ("NLG").

5.    Defendant Wahlman is the managing and sole member of Defendant Taiwan Rational Enterprises, LLC ("TRE").

6. Defendant NLG, LLC ("NLG") is a Delaware limited liability company which has a registered agent in Dover, Delaware.

7. Defendant TRE is a Delaware limited liability company which has a registered agent in Dover, Delaware.

8. This action concerns a residence at 6913 Valencia Drive, Fisher Island, Miami-Dade County, Florida (the "Property"). The legal description of the Property is as follows:

> Folio No.: 30-4209-016-0070
> Lot 7 Block 2 Lindesfarne on Fisher Island
> Section 10, Plat Book 157 Page 64, Public
> Records of Miami-Dade County, Florida

9. Agapov's causes of action against Defendants NLG and Kosachuk arise from their breach of a written contract entered into with Agapov in Miami, Florida by failing to perform acts required by the contract to be performed in Miami-Dade County, Florida.

10. Agapov's causes of action against Defendant TRE arise from TRE's breach of a written contract entered into with Agapov in Miami, Florida by failing to perform acts required by the contract to be performed in Miami-Dade County, Florida.

11. Agapov's causes of action against Defendant TRE also arise from TRE's ownership of a mortgage on real property located in Miami-Dade County, Florida.

12. Agapov's causes of action against Defendants Kosachuk and Wahlman arise from their commission of tortious acts in Miami-Dade County, Florida constituting tortious interference with contracts.

13.     Defendant NLG owns the Property for investment and rental income and, thus, is conducting a business venture in this state and is, therefore, subject to jurisdiction in Florida.

14.     This Court has long-arm jurisdiction (a) over *all* Defendants under Fla. Stat. § 48.193(1)(b); (b) over Defendants NLG and TRE under Fla. Stat. § 48.193(1)(g); (c) over Defendant TRE under Fla. Stat. § 48.193(1)(c); and (d) over NLG under Fla. Stat. § 48.193(1)(a).

15.     Complete diversity of citizenship exists under 28 U.S.C. § 1332(a)(2).

16.     The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

17.     Venue lies in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events and omissions giving rise to the claims herein occurred in this District, and the subject property is situated in this District.

## FACTS COMMON TO ALL COUNTS

### The Original Fraud

18.     In 2001, Agapov purchased the Property, prior to its construction. She intended to relocate there from New York with her daughter.

19.     The purchase price was $2,750,000. The contract required a series of deposits. In total, Agapov paid $1,375,000 in deposits to the seller, with funds provided to her by her father, Valeri Negodaeva.

20.     Agapov borrowed the balance of the purchase price from Diana Basumova, subject to a first mortgage in favor of Basumova.  The amount of the Basumova loan was $1,700,000.  This amount included an interest reserve and various loan fees.

21.     In early 2003, after the Property was constructed, it was time to close on the purchase of the Property.  Agapov did not want to take title in her own name.  She so advised Defendant Kosachuk.

22.     At that time, Agapov considered Defendant Kosachuk to be a friend.  Kosachuk volunteered to hold title in NLG.  He was the president and sole member of NLG.

23.     Neither Kosachuk nor NLG paid a single cent toward the purchase of the Property.

24.     Agapov and Kosachuk reached an oral agreement that title to the Property would be held temporarily by NLG but would be transferred by NLG to Agapov upon Agapov's request.  Kosachuk later denied the existence of the oral agreement.

25.     The closing took place in Miami on March 23, 2003.  A few days after the closing, Kosachuk paid a visit to Agapov in New York City and presented her with a promissory note drafted by his counsel.  They had not previously discussed this note.

26.     The note was payable by NLG to Agapov's father and was in the amount of $1,417,201.11.  The note was not interest-bearing.  A true and correct copy of the note payable to Agapov's father is attached hereto as Exhibit A.

27.     The note stated that the sum due, $1,417,201.11, would be paid in full upon receipt of the sale proceeds of the Property in excess of $1,700,000 (the amount of the

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

Basumova mortgage) plus any other costs associated with the sale, maintenance or improvement of the Property.

28.    The note, thus, was payable by NLG only upon a sale of the Property, and the amount to be paid depended on the purchase price.

29.    The note left out a critical term. There was no time period to sell the Property. Defendants Kosachuk and NLG later took the position that NLG could hold title indefinitely and, thus, never repay the note.

30.    Kosachuk falsely advised Agapov that the note would provide security to her father. Kosachuk knew, at the time of this representation, that the note was unenforceable as written.

31.    Agapov has only a high school education in Russia, and speaks English as a second language. She did not understand that the note was missing a critical term.

32.    Moreover, Kosachuk intentionally approached Agapov when he knew she would not have the benefit of counsel.

33.    The note payable to Negodaeva was later assigned by Negodaeva to Agapov.

34.    By the time of the closing, in March 2003, Agapov had decided not to relocate to Miami. She wanted to sell the Property as soon as possible and repay the mortgage debt to Basumova.

35.    Kosachuk agreed to list the property for sale. He listed it for sale briefly and then took it off the market.

36.    When Agapov found out that the home was no longer listed, she asked Kosachuk to deed the Property to her. He refused.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

**The State Court Action**

37.     After trying, unsuccessfully, to resolve the matter, Agapov, in October 2003, filed an action against NLG and Kosachuk in the Circuit Court for Miami-Dade County, Florida (the "State Court Action").

38.     Agapov also filed a Notice of Lis Pendens in the State Court Action. This Notice of Lis Pendens was recorded in the Public Records of Miami-Dade County, Florida on December 1, 2003 at OR Book 21857 Page 4164. A true and correct copy of the Notice of Lis Pendens is attached hereto as Exhibit B.

39.     The Notice of Lis Pendens accurately describes the Property and complies with all statutory requirements.

40.     The prosecution of the State Court Action did not lead to a resolution of the dispute. NLG and Kosachuk devoted their efforts to trying to get the Notice of Lis Pendens discharged, and they rebuffed all reasonable settlement proposals.

41.     The Basumova loan was scheduled to mature on March 27, 2004. As that date approached, Basumova warned Agapov that Basumova intended to move aggressively to foreclose her mortgage if the loan was not paid on time.

42.     Because Agapov did not hold title, she was not able to find a replacement lender.

**The Bankruptcy Filing**

43.     On April 8, 2004, Agapov filed an involuntary bankrupty petition against NLG under Chapter 7 of the United States Bankruptcy Code.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

44. Agapov filed the involuntary petition to stave off a foreclosure by Basumova and to force a sale of the Property.

45. NLG moved aggressively to dismiss the involuntary bankruptcy case, but its initial efforts were not successful.

46. During the early weeks of the bankruptcy proceeding, Agapov learned that, shortly before the bankruptcy petition, NLG entered into a one-year prepaid lease of the Property. She also learned that Kosachuk remitted $120,000 from the prepaid lease to his personal account.

47. Agapov also discovered that NLG, shortly after the bankruptcy filing, refinanced the Basumova mortgage. Rather than payoff the Basumova mortgage, NLG arranged for it to be assigned to a new lender, TRE.

48. TRE, the new lender, was a newly-formed Delaware limited liability company owned and controlled by one of Kosachuk's best friends, Anton Wahlman. Kosachuk did not seek a loan from any other lender.

49. NLG agreed to terms for the TRE loan which were so favorable to TRE as to be usurious.

50. NLG and TRE entered into a one-year "Forbearance Agreement" under which they agreed to maintain the Basumova loan (now TRE's loan) in a default status so that TRE could charge the 18% default rate of interest. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit C.

51. Further, NLG and TRE agreed to a pre-payment penalty providing that TRE was guarantied one year's worth of interest at 18% even if the loan was paid off right away.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

52.     Finally, NLG and TRE agreed to a profit participation which allowed TRE to obtain 50% of the profit upon the sale of the Property under certain circumstances.

53.     When Agapov learned of the pre-paid lease and the TRE loan, she asked the Bankruptcy Court to prohibit NLG from engaging in non-ordinary course business transactions without court approval.

54.     The Bankruptcy Court entered an order specifically prohibiting NLG from making any expenditure in excess of $5,000 and from engaging in any transaction affecting "the existing financing on the property including, of course, any modifications to the existing lease or mortgage."

55.     The Bankruptcy Court scheduled a final evidentiary hearing on NLG's motion to dismiss and required the parties to go to mediation. The mediation was not successful.

56.     The evidentiary hearing was scheduled for October 29, 2004. On the eve of the hearing, the parties settled their dispute. In general terms, NLG and Agapov agreed that they would sell the Property and divide the net sale proceeds, and TRE agreed to reduce the amount it claimed was owed and to wait for payment until the earlier of the date when the Property was sold or July 26, 2005.

57.     The parties appeared in Bankruptcy Court on October 29, 2005 to announce the settlement. However, minutes before the start of the hearing, NLG's attorney, David Rosendorf, made a new and unusual settlement demand—that the Bankruptcy Court not retain jurisdiction to enforce the settlement.

58.     Agapov objected strenuously to this demand. However, the Bankruptcy Court determined that it would retain only limited jurisdiction. It retained jurisdiction only to

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

interpret ambiguous terms and resolve any expense or accounting issues which might arise in the event of a sale.

59.     The Bankruptcy Court advised counsel that it would not retain jurisdiction to decide claims of breach of the settlement agreement, breach of the duty of good faith or other state law claims.

60.     The Bankruptcy Court questioned counsel concerning a number of the other settlement terms, and several points were clarified. Counsel then recited the settlement terms on the record. Counsel advised the Bankruptcy Court that the parties would prepare and sign written settlement agreements.

61.     Several weeks later, and after a further hearing in the Bankruptcy Court to resolve certain disputed settlement terms, the parties signed two separate written settlement agreements.

**The Settlement Agreements**

**The Sale Agreement**

62.     NLG and Agapov entered into a settlement agreement providing for the sale of the Property for $4 million. The Property could be sold for less than $4 million only if both parties agreed. This agreement (hereafter, the "Sale Agreement") was signed by Kosachuk (as manager of NLG) on January 7, 2005 and by Agapov on January 11, 2005. A true and correct copy of the Sale Agreement is attached as Exhibit D hereto.

63.     Pursuant to the Sale Agreement, NLG and Agapov agreed to divide the net sale proceeds on an 82%/18% basis (82% to Agapov) after paying the "Taiwan Rational

mortgage," closing expenses and reimbursements due to the parties. Paragraph 1(c) of the Sale Agreement provides:

> "Upon the sale of the property, after payment of (a) all of seller's customary closing costs and expenses, fees, and brokerage fees (brokerage fees not to exceed 6% of the contract price); (b) **the Taiwan Rational mortgage as modified pursuant to separate agreement between TRE, Agapov and NLG**; and (c) reimbursement to either party of all costs of preserving and protecting the property from October 29, 2004 going forward as set forth in paragraph 3. hereunder, then (d) all net proceeds of sale shall be divided 82% to Agapov and 18% to NLG." (Emphasis added.)

64. The Sale Agreement also required NLG to execute an amended promissory note in favor of Agapov, secured by a mortgage on the Property. This amended note was to amend NLG's original note (Exhibit A), payable to Agapov's father, Valeri Negodaeva.

65. The main purpose of Agapov's mortgage, as agreed by the parties and stated on the record of the October 29, 2005 Bankruptcy Court hearing, was to protect the priority of Agapov's interest against subsequent liens.

66. The Sale Agreement also resolved the State Court Action. The parties in the State Court Action (Agapov, NLG and Kosachuk) filed a Stipulation adopting the Sale Agreement and reciting that Agapov would be granted a mortgage which would "merge into and relate back to the date of the filig of the Notice of Lis Pendens previously filed in this cause." A true and correct copy of the Stipulation is attached as Exhibit E hereto.

67. The parties in the State Court Action also submitted a proposed Agreed Order providing for (a) approval of the Sale Agreement, (b) dismissal of the State Court Action, and (c) the discharge the Notice of Lis Pendens upon the recording of Agapov's new mortgage.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

68. On February 14, 2005, the State Court entered the proposed Agreed Order. A true and correct copy of the Agreed Order is attached hereto as Exhibit F.

69. The Sale Agreement was very favorable to Kosachuk. Without having investing a penny in the purchase of the Property, Kosachuk, as the sole owner of NLG, was assured of receiving 18% of the net sale proceeds. Agapov agreed to the settlement to end the litigation, to secure her interest in the Property and to recover her investment through a sale of the Property.

**The Payoff Agreement**

70. The largest amount to be deducted from the sale proceeds, prior to the 82%/18% split, was the amount due for the Taiwan Rational mortgage. Thus, it was essential to quantify and fix this amount.

71. Therefore, prior to the October 29, 2004 Bankruptcy Court hearing, Agapov and NLG negotiated with TRE to quantify and reduce the amount of the Taiwan Rational mortgage. These negotiations proceeded simultaneously with the negotiations leading to the Sale Agreement.

72. After extensive negotiations, NLG and Agapov reached an agreement with TRE for the payoff of the Taiwan Rational mortgage. The terms were set forth in a separate document entitled "TRE/Agapov-NLG Settlement Terms" (hereafter, the "Payoff Agreement"). The Payoff Agreement was signed by all three parties on January 12, 2005. A true and correct copy of the Payoff Agreement is attached as Exhibit G hereto.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

73. Under the Payoff Agreement, TRE agreed to roll back the interest rate from the default rate of 18% to the regular note rate of 10% and to forego the prepayment penalty as well as the profit participation.

74. The parties also agreed that the principal amount of the Taiwan Rational mortgage was $1,700,000 and that the accrued but unpaid interest would be converted to a fixed sum--$110,000--which would not bear interest.

75. Thus, pursuant to the Payoff Agreement, the amount required to be paid to TRE was as follows: principal of $1,700,000, an agreed sum of $110,000 which included accrued interest through October 26, 2004, and interest thereafter ($1,700,000 at 10%) in the amount of $14,166.67 per month.

76. As to timing, TRE agreed that it would not be paid until the earlier of the date the Property was sold or July 26, 2005. The July 26, 2005 date was three months beyond the expiration of the one-year "forbearance" period under the Forebearance Agreement.

77. TRE's agreement to wait to receive payment until a sale occurred or until July 26, 2005 (if no sale occurred before then) was vital to the settlement. The goal was to afford NLG adequate time to market and sell the Property. The parties believed that six months (February-July 2005) would be sufficient.

78. Indeed, the period of time TRE would be required to wait before receiving payment was negotiated extensively. TRE initially agreed only to wait until the end of June. After further negotiation, TRE agreed to wait an additional month.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

79.     The Payoff Agreement further provided that all of the parties (TRE, NLG and Agapov) would exchange mutual general releases subject only to the terms stated in the Payoff Agreement itself.

80.     In the weeks following the signing of the Payoff Agreement, TRE's counsel made requests to Agapov's counsel for an exchange of general releases. However, TRE's counsel refused to provide a general release complying with the requirements of the Payoff Agreement. Therefore, general releases were never exchanged.

**Material Breach Of The Settlement Agreements**

81.     Immediately after the settlement agreements were signed and the bankruptcy case was dismissed, NLG and TRE materially breached them. Agapov learned of the most significant breach in June 2005.

82.     In June 2005, Agapov's counsel, in performing a title search, discovered that, on February 23, 2005, NLG had paid off the Taiwan Rational mortgage and replaced it with a new mortgage in favor of Regions Bank.

83.     The new mortgage in favor of Regions Bank was in the principal amount of $3,000,000--an increase of nearly $1.2 million over the negotiated amount of the Taiwan Rational mortgage.

84.     The amount of the Taiwan Rational mortgage was a vital consideration in the settlement. NLG and Agapov understood that this amount would have the greatest single impact on their ultimate recoveries, based on their 82%/18% interests.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

85.     The Sale Agreement specifically identified the "Taiwan Rational mortgage" as the mortgage which would be paid from the sale proceeds.  It did not  authorize the payment of *any* first mortgage in *any* amount.

86.     The parties negotiated a reduction of the amount of the Taiwan Rational mortgage and persuaded TRE to leave the Taiwan Rational mortgage in place until a sale of the Property or July 26, 2005, whichever date was earlier.

87.     NLG, in addition to placing a new mortgage on the Property and vastly increasing the mortgage debt, paid TRE an amount far in excess of the negotiated amount of the Taiwan Rational mortgage.

88.     In breach of its agreement, TRE knowingly accepted a payoff for an amount far exceeding the amount it had agreed upon, and TRE failed to wait until July 26, 2005, as it had agreed to do, in the absence of an earlier sale.

89.     By satisfying the Taiwan Rational mortgage, prior to a sale of the Property, and replacing it with the Regions Bank mortgage, Defendant NLG breached both the Sale Agreement and the Payoff Agreement.

90.     By accepting payment of an amount exceeding the agreed upon sum, and accepting payment prior to the agreed payment date, Defendant TRE breached the Payoff Agreement.

91.     The remaining proceeds of the Regions Bank loan (the amount not paid to TRE) were distributed to, or used for the financial benefit of, NLG, Kosachuk, Wahlman and their attorneys.  None of the proceeds went to Agapov.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

92.     Defendant Wahlman, the sole owner of TRE, actively assisted NLG in obtaining the Regions Bank loan. Indeed, Wahlman gave a personal guaranty to Regions Bank to induce Regions Bank to make the $3 million loan to NLG. Wahlman was assisted by his counsel, Arthur Spector, and other attorneys employed by Berger & Singerman.

93.     None of the Defendants or their counsel advised Agapov or her counsel of the Regions Bank refinancing. Indeed, they intentionally concealed it.

94.     On information and belief, Defendants formed a plan to refinance the Property, for a much larger amount, prior to settling with Agapov, and they knowingly concealed this information from Agapov.

95.     On information and belief, David Rosendorf's demand that the Bankruptcy Court not retain jurisdiction was in anticipation of his client's material breach. Rosendorf's client, NLG, wanted to deprive Agapov of redress in the Bankruptcy Court for NLG's breach.

**Intentional Delay in Delivering Agapov's Mortgage**

96.     NLG's and TRE's material breach is compounded by actions they took, in concert with their attorneys, to delay the delivery of Agapov's mortgage.

97.     The Bankruptcy Court's order dismissing the bankruptcy case was signed on February 7, 2005 and docketed on February 11, 2005. The 10-day appeal period expired on February 22, a Monday.

98.     The parties agreed that Agapov's mortgage would be delivered on February 22, 2005. Indeed, Agapov's counsel requested that the mortgage be delivered at an earlier date, so that it could be recorded prior to the finality of the order dismissing the bankruptcy

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

case. However, counsel for NLG, David Rosendorf, insisted that the parties wait for the expiration of the 10-day bankruptcy appeal period.

99. It was Agapov's intention to obtain her mortgage and record it on February 22, 2005, the date the mortgage was supposed to be delivered, but the mortgage was not delivered on February 22.

100. On February 22, Agapov's counsel attempted to contact NLG's bankruptcy counsel, David Rosendorf, to obtain delivery of the mortgage.

101. Agapov's counsel was informed that David Rosendorf was away from the office. Later in the day on February 22, one of Rosendorf's partners, Cori Lopez-Castro, called Agapov's counsel and advised him that the original executed mortgage was in possession of Chris David, NLG's state court counsel.

102. Lopez-Castro also advised Agapov's counsel of a new requirement: Agapov would have to deliver the original promissory note (payable to Negodaeva) in order to obtain delivery of the mortgage which was being held by Chris David.

103. Agapov's counsel then attempted to reach Chris David but was advised that he was out of the office.

104. On February 23, Agapov's counsel attempted to have a courier service deliver the original note in exchange for the amended note and the mortgage. However, Agapov's counsel was advised that Chris David, again, was out of his office.

105. Later on February 23, Chris David got back to Agapov's counsel. David called Agapov's counsel from his cell phone. David said he was out of the office and no one else could handle an exchange of the documents.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

106. The closing with Regions Bank took place on February 23, 2005, the day after Agapov's mortgage was supposed to be delivered and the same day that Agapov's counsel was attempting to send a courier to Chris David's office to pick up the mortgage.

107. The amended note and mortgage were not delivered to Agapov until February 24, 2005, *after* Regions and Wahlman recorded their mortgages. True and correct copies of the amended note and mortgage in favor of Agapov are attached hereto as Exhibits H and I.

108. NLG and its attorneys intentionally created a delay in the delivery of Agapov's mortgage to create a brief window for Regions and Wahlman to record their mortgages.

109. These actions were in material breach of the Sale Agreement and were done to enable NLG to pull cash out of the Property for its own economic advantage and to the detriment of Agapov.

**Additional Material Breaches**

110. Prior to learning of the refinancing, Agapov had obtained financing sufficient to enable her to purchase the Property for $4,000,000, pursuant to the terms of the Sale Agreement.

111. On June 10, 2005, Agapov's counsel conveyed to NLG's counsel, Chris David, a bona fide offer to purchase the Property for $4,000,000 subject to the condition that NLG reduce the mortgage debt to the amount of the Taiwan Rational mortgage.

112. On the same day, June 10, 2005, counsel for NLG, Chris David, sent a fax back rejecting the offer. He stated in his fax that he had not yet consulted with his client, NLG, but nonetheless found the offer to be unacceptable.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. ✦ SUITE 400 ✦ MIAMI, FLORIDA 33134 ✦ TELEPHONE 305-460-1000 ✦ TELEFAX 305-460-1422

113.    David's June 10 fax letter noted his view that Agapov was required to post a 10% deposit.   He demanded proof of Agapov's financing.   He also demanded proof that A&Y Realty Services was truly Agapov's broker.

114.    The Sale Agreement states only that a "bona fide" offer for $4,000,000 must be received.   Agapov's offer was a "bona fide" offer.   None of the conditions imposed by David are required by the Sale Agreement.

115.    The reasons given by David for rejecting the offer and the demands in his response letter were intended solely to avoid having to sell the Property to Agapov.

116.    David's response, rejecting Agapov's offer, was a further breach of the Sale Agreement.

117.    Agapov was, at the time of her offer, and is, at the present time, ready, willing and able to purchase the Property for $4,000,000, subject to the terms and conditions stated in her offer.

118.    Agapov's offer was made at a time when there were no other pending offers for the Property and very few parties had even asked to see the Property.   Instead of jumping at the chance to sell the Property for $4,000,000, NLG invented excuses for not proceeding.

119.    The principal reason that there were no other offers for the Property is that NLG and Kosachuk failed to exercise their best efforts to sell the Property, as required by the Sale Agreement.

120.    The Property should have been listed for sale by mid-February.   Instead, NLG and Kosachuk delayed listing the Property for approximately a month, and the Property did not get listed until after the "season" for Fisher Island.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

121. Eventually, Kosachuk listed the Property for sale with the real estate broker agreed to by the parties, the Vole-Pingaro Partnership.

122. However, Kosachuk failed to take appropriate steps to assure that the real estate broker, Robert Vole, had access to the Property to show it to prospective purchasers. On several occasions Vole was unable to show the Property.

123. Another problem was the manner in which the tenant decorated the Property. Vole complained that the tenant had darkened the interior of the home and filled it with religious and devotional art work, giving the home a museum-like appearance.

124. More significantly, the tenant, with NLG's consent, reconfigured the kitchen by building a wall between the kitchen and the living room, changing the open, modern design of the original Euro-style kitchen into an old-fashioned servant's kitchen, separate from the rest of the home.

125. NLG was not prohibited from leasing the Property. However, it was required, as part of the obligation to use "best efforts," to (a) negotiate a suitable arrangement for access to the Property by the broker and prospective purchasers, and (b) assure that the tenant was not permitted to make detrimental structural changes. NLG failed to meet these requirements.

**Retention of Counsel and Commencement of this Action**

126. Agapov has engaged Adorno & Yoss, LLP as its counsel in this action and has agreed to pay said firm a reasonable fee for its services and to reimburse all court costs.

127. All conditions precedent to the bringing of this action have occurred, been waived or excused.

## COUNT I – BREACH OF SETTLEMENT AGREEMENT BY NLG

128.  Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

129.  The Sale Agreement is a binding contract.

130.  Section 1.c. of the Sale Agreement requires that the proceeds from a sale of the Property be used to pay off the "Taiwan Rational mortgage as modified pursuant to separate agreement between TRE, Agapov and NLG."

131.  The "separate agreement" referred to in Section 1.c. of the Sale Agreement is the Payoff Agreement.

132.  Section 1.c. does not authorize NLG to satisfy the Taiwan Rational mortgage and replace it with a new and larger mortgage.

133.  On the contrary, the parties agreed to leave the Taiwan Rational mortgage in place until the date of the sale of the Property or July 26, 2005, whichever was earlier.

134.  The agreed amount of the Taiwan Rational mortgage was $1,810,000 plus interest on $1,700,000, commencing October 26, 2004, at the rate of 10% per annum.

135.  In breach of the Sale Agreement, NLG (a) satisfied the Taiwan Rational mortgage prior to the agreed payment date, and (b) replaced the Taiwan Rational mortgage with a $3 million mortgage, thereby adding approximately $1.2 million in additional mortgage debt.

136.  In further breach of the Sale Agreement, NLG paid TRE an amount, in satisfaction of the Taiwan Rational mortgage, which was far in excess of the amount agreed to by the parties in the Payoff Agreement.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

137. These actions substantially decreased the value of Agapov's 82% interest in the Property and prevented Agapov from receiving the amount she was entitled to receive pursuant to paragraph 1.c. of the Sale Agreement.

138. Beginning in June 2005, Agapov was ready, willing and able to purchase the Property for $4 million based on the amount of the Taiwan Rational mortgage.

139. By increasing the mortgage debt to $3 million, NLG made it impossible for Agapov to purchase the Property for $4 million under the terms of the Sale Agreement. This constitutes an additional material breach by NLG of the Sale Agreement.

140. NLG further materially breached the Sale Agreement by wrongfully rejecting Agapov's offer to purchase the Property for $4 million, conditioned on the reduction of the mortgage debt, as alleged above.

141. NLG further materially breached the Sale Agreement by failing to deliver the Agapov mortgage on February 22, 2005 and by intentionally delaying the delivery of the Agapov mortgage until February 24, 2005, after the closing on the Regions Bank loan.

142. Additionally, NLG materially breached the Sale Agreement by failing to exercise best efforts in the sale of the Property, as alleged above.

143. Agapov has sustained damages as a result of the foregoing breaches by NLG.

**WHEREFORE**, based on the foregoing, Defendant requests that this Court grant judgment in favor of Agapov and against NLG for the amount of Agapov's damages resulting from NLG's breach of contract and grant such other and further relief as the Court may deem just and proper.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

## COUNT II – BREACH OF SETTLEMENT AGREEMENT BY KOSACHUK

144.   Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

145.   Kosachuk was a defendant in the State Court Action.

146.   In entering into the Stipulation filed in the State Court Action, Kosachuk agreed to be bound by the terms of the Sale Agreement.

147.   Kosachuk materially breached the Sale Agreement by (a) causing NLG to satisfy the Taiwan Rational mortgage; (b) causing NLG to pay TRE more than the agreed amount of the Taiwan Rational mortgage, (c) causing NLG to execute and deliver a new mortgage in favor of Regions Bank; (d) causing NLG to increase the mortgage debt on the Property; (e) causing NLG to wrongfully reject Agapov's purchase offer, and (f) failing to use his best efforts (and failing to cause NLG to use its best efforts) to sell the Property, all in the manner alleged in Count I above.

**WHEREFORE**, based on the foregoing, Defendant requests that this Court grant judgment in favor of Agapov and against Kosachuk for the amount of Agapov's damages resulting from Kosachuk's breach of contract and grant such other and further relief as the Court may deem just and proper.

## COUNT III – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING BY NLG

148.   Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

149.   Every contract entered into in Florida contains an implied duty of good faith and fair dealing.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

150. The Sale Agreement was entered into in Florida.

151. Under the Sale Agreement, NLG was required to sell the Property for the benefit of Agapov and NLG and to distribute the net sale proceeds to Agapov and NLG in accordance with their respective 82%/18% interests.

152. NLG, as the title holder, has control over the Property and was the party primarily responsible for accomplishing a sale of the Property, subject to the terms of the Sale Agreement.

153. Because NLG had control over the Property, the performance of the Sale Agreement was largely in NLG's hands, and Agapov was dependent on NLG's good faith in performing the Sale Agreement.

154. The purpose of the Sale Agreement was to maximize the recovery to Agapov and NLG, in accordance with their respective interests, from a sale of the Property.

155. In order to achieve this purpose, the parties expressly agreed upon the expenses which were allowed to be deducted from the gross sale proceeds prior to the distribution of the remaining proceeds to Agapov and NLG in accordance with their respective interests. These expenses are set forth in Section 1.c. of the Sale Agreement.

156. Section 1.c. of the Sale Agreement provides that the parties will pay the Taiwan Rational mortgage from the sale proceeds. The amount of the Taiwan Rational mortgage is set forth in a separate agreement (the Payoff Agreement) which is expressly referenced in Section 1.c. of the Sale Agreement.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

157.   The list of deductible expenses, as set forth in Section 1.c. of the Sale Agreement, was all-inclusive.  Section 1.c. does not provide for the payment of any mortgage other than the Taiwan Rational mortgage as modified by the Payoff Agreement.

158.   NLG used its control over the Property to frustrate the purpose of the Sale Agreement by increasing the mortgage debt and thereby substantially reducing the amount available to pay Agapov upon a sale of the Property based on her 82% interest.

159.   Instead of complying with the Sale Agreement, NLG frustrated the purpose of the Sale Agreement by taking out a new mortgage for $3 million from Regions Bank.  The effect of this transaction was to increase the mortgage debt by  $1.2 million and to reduce Agapov's distribution (based on a $4 million sale) by over $900,000.

160.   NLG used the Regions Bank loan proceeds to pay TRE substantially more than TRE was entitled to receive under the Payoff Agreement and to pay NLG's attorneys. On information and belief, NLG also used the loan proceeds to pay other expenses not authorized by the Sale Agreement.

161.   NLG breached its implied duty of good faith and fair dealing by using its position of control over the Property to reduce the amount available to pay Agapov and defeat her legitimate contractual expectations.

162.   NLG further breached its implied duty of good faith and fair dealing by wrongfully refusing to accept Agapov's offer to purchase the Property for $4 million.

163.   Agapov's purchase offer was a bona fide offer, as provided in the Sale Agreement, and Agapov was ready, willing and able to perform.

164.   NLG did not cite any valid contractual basis for rejecting Agapov's offer, and no valid basis existed.

165.   Agapov has sustained damages as a result of the foregoing breaches by NLG of its implied duty of good faith and fair dealing.

**WHEREFORE**, based on the foregoing, Defendant requests that this Court enter judgment for Agapov and against NLG for the amount of Agapov's damages from NLG's breach of the implied duty of good faith and fair dealing and grant such other and further relief as the Court may deem just and proper.

## COUNT IV – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING BY KOSACHUK

166.   Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

167.   Every contract entered into in Florida contains an implied duty of good faith and fair dealing.

168.   The Sale Agreement was entered into in Florida.

169.   Kosachuk was a defendant in the State Court Action.

170.   In entering into the stipulation filed in the State Court Action, Kosachuk agreed to be bound by the terms of the Sale Agreement.

171.   Kosachuk breached his duty of good faith and fair dealing in the same manner, and to the same degree, as NLG, as alleged in Count III above.

172.   Agapov has sustained damages as a result of the foregoing breaches by Kosachuk.

**WHEREFORE**, based on the foregoing, Defendant requests that this Court enter judgment for Agapov and against Kosachuk for the amount of Agapov's damages from NLG's breach of the implied duty of good faith and fair dealing and grant such other and further relief as the Court may deem just and proper.

## COUNT V – BREACH OF SETTLEMENT AGREEMENT BY TRE

173.   Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

174.   TRE agreed in writing to accept a certain sum in full payment of the Taiwan Rational mortgage.  TRE's agreement is set forth in the Payoff Agreement.

175.   Agapov is a party to the Payoff Agreement and, therefore, is entitled to enforce it.

176.   TRE agreed to receive the following in full satisfaction of the Taiwan Rational mortgage:  (a) principal of $1,700,00.00; (b) an additional fixed sum of $110,000 which included all accrued interest through October 26, 2004 and (c) interest after October 26, 2004 at the rate of 10% per annum on the principal amount of $1,700,000 ($14,166.67 per month).

177.   TRE agreed to provide NLG and Agapov with a general release, releasing all obligations other than those expressly set forth in the Payoff Agreement.

178.   Accordingly, by agreeing to generally release NLG and Agapov, TRE released them of any obligations which may have existed to pay 18% interest (the default rate) or to pay a profit participation.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305·460·1000 • TELEFAX 305·460·1422

179.   TRE received, from NLG (or NLG's lender, Regions Bank), a payment which was substantially in excess of the amount TRE agreed to receive in satisfaction of the Taiwan Rational mortgage.

180.   By receiving an excessive payment, contrary to the amount it agreed to accept, TRE breached the Payoff Agreement.

181.   Further, TRE agreed to wait for payment until the earlier of the date of the closing on a sale or July 26, 2005.  In breach of its agreement, TRE received payment on February 23, 2005, five months ahead of schedule.

182.   Agapov did not consent to TRE receiving more money in satisfaction of the Taiwan Rational mortgage than TRE had agreed to accept under the Payoff Agreement.  Nor did Agapov consent to TRE receiving payment before it was supposed to be paid.

183.   Agapov has been damaged by TRE's breaches.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against TRE for damages for breach of contract in the amount TRE received in satisfaction of the Taiwan Rational mortgage which is in excess of the amount it agreed to receive under the Payoff Agreement, together with interest thereon from the date of the payment to TRE, and grant such other and further relief as the Court may deem just and proper.

## COUNT VI – TORTIOUS INTERFERENCE BY WAHLMAN

184.   Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

185.   Defendant Wahlman knew that NLG and Agapov had an enforceable contract—the Sale Agreement.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

186. Wahlman also knew that the Sale Agreement provided that the Taiwan Rational mortgage would be paid with the proceeds derived from a sale of the Property.

187. Wahlman also knew that NLG, Agapov and TRE had entered into a separate agreement—the Payoff Agreement—which reduced and quantified the amount of the debt due under the Taiwan Rational mortgage.

188. Wahlman also knew that the purpose of the Sale Agreement and the Payoff Agreement was to maximize the recovery to both Agapov and NLG from a sale of the Property.

189. Nonetheless, five months before the debt to TRE was supposed to be paid, Wahlman induced NLG to breach the Sale Agreement by satisfying the Taiwan Rational mortgage and granting a new mortgage, in a much larger sum, to Regions Bank.

190. Further, Wahlman induced NLG to breach the Payoff Agreement by paying TRE, Wahlman's solely owned company, a payoff amount which is far in excess of the amount TRE agreed to accept under the Payoff Agreement.

191. The effect of the refinancing was to increase the mortgage debt by approximately $1.2 million, thereby substantially decreasing Agapov's 82% interest in the sale proceeds.

192. The refinancing was a breach of the Sale Agreement, as well as the Payoff Agreement, and Wahlman knew this.

193. In addition to inducing NLG to breach the two agreements, Wahlman interfered with the agreements by enabling the refinancing to occur.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

194.    Wahlman enabled the refinancing to occur by giving Regions Bank a personal guaranty.   On information and belief, Regions would not have made the loan without obtaining Wahlman's personal guaranty.

195.    Wahlman undertook the foregoing actions to obtain a substantial financial benefit.

196.    As a result of the refinancing, NLG was able to pay TRE an amount far in excess of the payoff amount which TRE was entitled to receive pursuant to the Payoff Agreement.

197.    On information and belief, the amount received by TRE from the Regions Bank loan was transferred by TRE to Wahlman.

198.    Wahlman's actions constitute an intentional interference with Agapov's contract right to receive 82% of the net sale proceeds after payment of the Taiwan Rational mortgage and the other expenses listed in the Sale Agreement.

199.    Wahlman also knew that, pursuant to the Sale Agreement, Agapov was entitled to receive a mortgage to secure her 82% interest.

200.    Wahlman knew that the timing of the delivery of the mortgage to Agapov was of critical importance, since one of the primary reasons for the granting of the mortgage was to preserve Agapov's priority position.

201.    Despite this knowledge, Wahlman decided to obtain from NLG a mortgage in his own favor, to secure his guaranty to Regions Bank of the $3 million owed by NLG to Regions.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

202. Wahlman wanted to attempt to assure that his own mortgage would have priority over Agapov's mortgage.

203. By intentionally recording his own mortgage prior to the delivery of Agapov's mortgage, Wahlman sought to interfere with Agapov's contract right to obtain a mortgage prior in right to any mortgage other than the Taiwan Rational mortgage.

204. Moreover, Wahlman's actions interfered with Agapov's right to purchase the Property by increasing the amount of financing Agapov would have to obtain to purchase the Property at a price of $4 million.

205. Agapov, prior to learning of Wahlman's actions, was prepared to purchase the Property for $4 million, subject to the assumption that she needed only approximately $2.6 million to close.

206. Agapov's estimation of the cash needed to close was based on the amount of the Taiwan Rational mortgage and her entitlement to 82% of the net proceeds of sale.

207. Wahlman's actions increased the cash needed to close by approximately $1.2 million, to approximately $3.8 million, an amount exceeding Agapov's available financing.

208. Wahlman's actions, thus, interfered with Agapov's right, under the Settlement Agreement, to purchase the Property for $4 million.

209. Wahlman's acts of interference with contract, as alleged above, were not privileged, justified or excused.

210. Agapov has been damaged as a result of Wahlman's intentional interference with contract.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment for Agapov and against Wahlman for damages resulting from Wahlman's intentional interference with contract and grant such other and further relief as the Court may deem just and proper.

## COUNT VII – SPECIFIC PERFORMANCE BY NLG

211. Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

212. Agapov made a bona fide offer to purchase the Property for $4 million.

213. NLG was required by the Sale Agreement to accept Agapov's offer and has wrongfully rejected Agapov's offer.

214. The Sale Agreement is a contract for the sale of real property, and Agapov's offer is an offer for the purchase of real property.

215. Agapov does not have an adequate remedy at law in the form of money damages to compensate her for NLG's breach of the Sale Agreement.

216. Justice and equity require the remedy of specific performance.

**WHEREFORE**, Agapov respectfully requests that the Court, in the alternative to the other relief requested herein, grant specific performance to Agapov and order NLG to convey the Property to Agapov in accordance with the terms and conditions of Agapov's offer and grant such other and further relief as the Court may deem just and proper.

## COUNT VIII – EQUITABLE LIEN

217. Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

218. Defendant NLG has engaged in fraudulent and inequitable conduct by, among other things, appropriating all or a portion of Agapov's equity interest in the Property.

219. The imposition of an equitable lien in favor of Agapov is necessary to prevent NLG from benefiting from its fraudulent and inequitable conduct.

220. Agapov does not have an adequate remedy at law for the damages caused to her by NLG's fraudulent and inequitable conduct in depleting her equity.

221. NLG's receipt of 18% of the net sale proceeds from the sale of the Property, under these circumstances, would be inequitable and unjust.

**WHEREFORE**, Agapov respectfully requests that the Court impose an equitable lien in favor of Agapov on NLG's 18% interest in the net proceeds of sale of the Property, such that, upon the sale of the Property, Agapov shall recover all of the proceeds of sale after payment of the amounts and expenses set forth in the Sale Agreement, and NLG shall receive nothing, and that the Court grant such other and further relief as the Court may deem just and proper.

## COUNT IX – CONSTRUCTIVE TRUST

222. Plaintiff repeats and realleges paragraphs 1 through 127 as though fully set forth herein.

223. Defendant NLG has engaged in fraudulent and inequitable conduct by, among other things, appropriating all or a portion of Agapov's equity interest in the Property.

224. Under the Sale Agreement, Agapov and NLG were partners or joint venturers in the sale of the Property.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

225.  NLG, as the title holder of the Property, had sole management and control over the Property and was principally responsible for selling the Property.

226.  NLG, as the partner or joint venturer in control of the management of the Property, had a duty of trust to Agapov to assure that the Property was managed and sold in accordance with the terms of the Sale Agreement.

227.  Further, NLG, as the partner or joint venturer in control of the management of the Property, held the Property in trust for the benefit of both NLG and Agapov.

228.  NLG violated its duty of trust to Agapov by (a) encumbering the Property with new mortgages, (b) increasing the amount of the mortgage debt, to the advantage of NLG and the disadvantage of Agapov, (c) paying TRE an amount in excess of the amount it had agreed to receive as its payoff, (d) paying TRE before TRE was supposed to receive its payoff, and (e) failing to use best efforts to accomplish a sale of the Property in accordance with the Sale Agreement.

229.  NLG obtained a financial benefit from its violation of trust.

230.  Agapov does not have an adequate remedy at law for NLG's violation of trust.

231.  Under these circumstances, equity demands that the Property be placed in a constructive trust for the benefit of Agapov.

**WHEREFORE,** Agapov respectfully requests that the Court impose a constructive trust upon the Property for the benefit of Agapov, that the Court require the Property to be sold for the benefit of Agapov and that the Court grant such other and further relief as it may deem just and proper.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

## JURY DEMAND

Plaintiff demands trial by jury.

Dated:  July 22, 2005

**ADORNO & YOSS, LLP**

By: _____

**Peter H. Levitt**
Florida Bar Number:  650978
2525 Ponce de Leon Blvd., Suite 400
Miami, Florida  33134
Phone:  (305) 460-1000
Fax:  (305) 460-1422

Counsel for Plaintiff, Oxana Agapov

# EXHIBIT A

# PROMISSORY NOTE

**Wilmington, Delaware**          March _17_ 2003          $1,417,201.11

=====================================================================

**PROMISE TO PAY.** NLG, LLC ("Debtor"), a Delaware limited liability company, promises to pay to Valeri Negodaeva ("Creditor"), his successors and assigns, in lawful money of the United States of America, the principal amount of one million four hundred seventeen thousand two hundred one and eleven cents ($1,417,201.11), at the times and in the manner hereinafter provided.

**PAYMENT.** Principal hereon shall be due and payable as follows: upon the completed sale of 6913 Valencia Drive, Fisher Island, FL 33109 (The "House") depending on the sales price. The Note will be deemed paid in full by receiving the proceeds of sale of the House in excess of $1,700,000 (the amount of the first mortgage of the House) plus any other costs associated with the sale, maintenance or improvement of the House. Payments shall be made payable to creditor.

**INTEREST.** No interest shall accrue on this loan.

**PREPAYMENT.** Debtor may pay all or a portion of the amount owed earlier than it is due. Early payments will not relieve Debtor of its obligation to timely pay all other amounts scheduled hereunder.

**DEFAULT.** In the event that Debtor shall fail to make payment due hereunder upon completion of the sale of the House, Debtor shall be in default of its obligations hereunder. In the event that Debtor shall fail to make payment due hereunder within two (20) business days after the sale of the House, Creditor shall provide written notice to Debtor by facsimile and, if the payment is not made within ten (10) business days after the giving of such notice, Debtor shall be in default of its obligations hereunder. Upon default, without notice or any other action, all unpaid principal amounts and all accrued and unpaid interest due hereunder, shall become immediately due and payable, and interest at the aforementioned rate shall accrue thereafter on all unpaid principal amounts.

Any notice to Debtor shall be delivered to Debtor at the following address:

> Chris Kosachuk
> NLG, LLC
> 489 Broome Street, Suite 5W
> New York, NY 10013
> (305) 490-5700 (fax) (305) 422-0539

**CREDITOR'S RIGHTS.** Upon default, Creditor may hire or pay someone else to help collect this Note if Debtor does not pay. Debtor also will pay Creditor these collection costs. This includes Creditor's reasonable legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or

injunction), appeals, and any actual or anticipated post-judgment collection services. Debtor also will pay any court costs, in addition to all other sums provided by law. If judgment is entered in connection with this Note, interest will continue to accrue on this Note after judgment at the interest rate applicable to this Note at the time judgment is entered. This Note has been delivered to Creditor and accepted by Creditor in the State of Delaware and shall be governed by and construed in accordance with the laws thereof without regard to principles of conflicts of law. If there is a lawsuit, Debtor agrees to submit to the jurisdiction of the courts of New Castle County, State of Delaware, and agrees to accept service of process by mail sent to the address set forth above.

Creditor may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Except for the notice of non-payment as provided herein, Debtor hereby waives, to the extent allowed by law, presentment, demand for payment, protest, and notice of dishonor. Debtor hereby waives the right to jury trial in any action or proceeding brought against it by Creditor. Debtor agrees that Creditor may renew or extend (repeatedly and for any length of time) this Note and Debtor's obligations hereunder and take any other action deemed necessary by Creditor without the consent of or notice to anyone.

**SEVERABILITY.** If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**PRIOR TO SIGNING THIS NOTE, DEBTOR OR AUTHORIZED REPRESENTATIVES OF DEBTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE WAIVER OF JURY TRIAL PROVISIONS. DEBTOR AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

As of the date first above written, the undersigned Debtor executes and acknowledges as a document under seal this Promissory Note, with the intent to be legally bound hereby.

DEBTOR:

_____[ SEAL ]

NLG, LLC

March 27, 2003

ATTEST:

By: _____

Name: UXANA KEEPER

March 27, 03

543486

3

# EXHIBIT B

CFN 2003R0775744 OR BK 21748 Pg 2189; (1pg)
RECORDED 10/17/2003 10:50:06
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

CFN 2003R0883489 OR BK 21857 Pg 4164; (1pg)
RECORDED 12/01/2003 13:18:05
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

General Jurisdiction Division

CASE NO.:

OXANA AGAPOV,

    Plaintiff,

v.

CHRISTOPHER KOSACHUCK and
NLG, LLC, a Delaware limited liability
Company,

    Defendants.

_____/

03 - 23976 CA 10

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that this is a true copy of the
original filed in this office on _____ 1st ____ day of
____ DECEMBER ____, A.D. 2003
WITNESS my hand and Official Seal.
HARVEY RUVIN, CLERK, of Circuit and County Courts
By _____ D.C.



### NOTICE OF LIS PENDENS

TO:    DEFENDANTS NAME ABOVE AND ALL OTHERS WHOM IT MAY CONCERN:

    **YOU ARE HEREBY NOTIFIED** of the filing of the above-styled action seeking

specific performance of an agreement for deed concerning the below-described real property or,

in the alternative, the imposition of an equitable lien upon the below-described real property

located at 6913 Valencia Drive, Fisher Island, Miami, Florida:

        **Folio No.: 30-4209-016-0070**
        **Lot 7 Block 2 Lindesfarne on Fisher Island**
        **Section 10, Plat Book 157 Page 64, Public**
        **Records of Miami-Dade County, Florida**

Dated: October 9, 2003.

        ADORNO & YOSS, P.A.
        2601 South Bayshore Drive, Suite 1600
        Miami, Florida 33133
        Telephone: (305) 858-5555
        Fax: (305)858-4777

        By: _____
        PETER H. LEVITT
        Florida Bar No. 650978

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. 12/01 AD 20 03
HARVEY RUVIN, CLERK, of Circuit and County Courts
Deputy Clerk _____

**ADORNO & YOSS, P.A.**
2601 SOUTH BAYSHORE DRIVE • SUITE 1600 • MIAMI, FLORIDA 33133 • TELEPHONE 305-858-5555 • TELEFAX 305-858-4777

# EXHIBIT C

# FORBEARANCE AGREEMENT

The Forbearance Agreement ("Agreement") is made and entered into as of April 26, 2004, between

TAIWAN RATIONAL ENTERPRISES, a Delaware LLC  (the "Lender" or "we") and NLG, a

Delaware LLC ("you").

## RECITALS

A       That certain Note (or Loan Agreement) dated March 27, 2003, executed by NLG, LLC in
        the original principal amount of **$1,700,000.00** ("Note") in favor of DIANA BASUMOVA
        and secured by a mortgage/deed of trust on real property located at **6913 Valencia Drive,
        Fisher Island, Florida,** (the "Security Instrument") (the Note and Security Instrument
        collectively referenced as the "Loan Documents") are now in default under the terms of such
        Loan Documents.  The Lender is the holder of the Note and Security Instrument.

B       The Security Instrument grants the Lender a security interest in the real property owned by
        NLG, a Delaware LLC and as more particularly described in the Security Instrument (the
        "Property") and allows the Lender  to enforce remedies, including foreclosure of the
        Property, upon occurrence of a default, including the failure to make payments as agreed
        under the Note.

C       For fair and valuable consideration, DIANA BASUMOVA sold and assigned her interest in
        the Loan Documents to Taiwan Rational Enterprises, LLC on April 26, 2004.

D.      Based on such default existing under the terms of the Loan Documents, the Lender  is
        entitled to demand, and to collect, payment in full of all sums owed under the Loan
        Documents; however, you have requested that the Lender refrain from exercising the rights
        and remedies granted to the Lender by the Loan Documents pursuant to the terms and
        conditions set forth in this Agreement for the term of this Agreement.

E       You agree that the following sums are now due and owing under the terms of the Loan
        Documents:

                TOTAL DEBT due as of April 26, 2004          $1,725,150.68

Pursuant to your request for Taiwan Rational Enterprises to refrain from exercising the rights and
remedies granted the Lender under the Loan Documents, and in consideration of the promises,
conditions, and terms set forth below, the Lender agrees to forbear from exercising its rights under
the Loan Documents pursuant to the terms defined below.


## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals which you agree to be true and

correct and incorporated by reference herein to this Agreement and other good and valuable

consideration, the receipt and sufficiency of which you and TAIWAN RATIONAL ENTERPRISES

acknowledge, you and TAIWAN RATIONAL ENTERPRISES agree as follows:

1.      **Validity of Loan Document:** Except as set forth herein, the terms and conditions of the
        Loan Documents in full force and effect and the Security Instrument shall continue to secure
        the Note.



2. **Prepayment penalty:** In exchange for the Lender agreeing not to foreclose for a period of one year, you and Taiwan Rational Enterprises agree to a one year pre-payment penalty in the amount of $310,527.27, which is equivalent to one year's interest at 18%.

3. **Property Taxes and Insurance:** You remain responsible for payment of taxes, insurance and association dues. In the event that taxes, insurance, or association dues are delinquent Taiwan Rational Enterprises may in sole and absolute discretion advance payments as required and add such amounts to the outstanding balance referenced above to accrue interest at the contract rate of the Note.

4. **Payments:** No payments shall be due and payable until April 26, 2005, at which time the entire balance of $2,035,677.95 shall be due and payable via wire transfer

5. **Reinstated:** The loan is not considered reinstated until the total delinquency is paid in full. **This Agreement does not cure the default.** At the end of the term of this Agreement, the Lender may elect in its sole and absolute discretion to continue with its foreclosure under the terms of the Security Instrument rather than renegotiating a new Agreement.

6. **Payments:** All payments shall first be applied towards outstanding fees and costs; then to repayment of obligatory or protective advances, then, if any, to late charges; and lastly to unpaid interest and principal. Acceptance of payments by the Lender during the term of this Agreement will not invalidate or affect the status of the current foreclosure proceeding. You are aware that any default in this Forbearance Agreement will lead to a resumption without notice of the current, valid foreclosure sale or the judicial foreclosure action.

7. **Additional Events of Default:** Without limiting the other events of default set forth in the Loan Documents, you will be in default under this Agreement upon the occurrence of any one or more of these events:

   a. Any representation or warranty made in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

   b. You fail to make any of the payments as required by this Agreement.

   c. You sell or convey any interest in the Property without the Lender's prior written consent.

   d. Breach of any of the terms or provisions of this Agreement.

8. **Consequences of Your Default:** If you default under this Agreement or the Loan Documents after the Effective Date, (your "Default") the Lender may, in addition to the remedies provided by the Loan Documents, terminate this Agreement and, subject only to applicable law, institute or resume any foreclosure or collection proceedings without prejudice for having accepted any payments under this Agreement and exercise any of its rights and remedies against you under the Loan Documents and/or this Agreement. Moreover, upon your Default, the Lender may, at is option, if not previously accelerated, accelerate the entire amount due under the Note, accrued interest thereon, and any other costs or advances; and elect to account for and apply all payments you may have made from the Effective Date until the time of your Default pursuant to the terms of the Note.

9. **Your Representations and Warranties:** As a condition to TAIWAN RATIONAL ENTERPRISES, LLC willingness to enter into this Agreement, you represent and warrant the following facts:

   a. A valid debt in favor of TAIWAN RATIONAL ENTERPRISES exists pursuant to the terms of the Loan Documents and this Agreement, that the Total Debt is accurately set forth in this Agreement, and that there are no claims, actions, causes of action, defenses, counterclaims, or setoffs of any kind against the DIANA BASUMOVA and the Lender in connection with the making, closing, administration, collection, or enforcement by the Lender of the Loan Documents, this Agreement, or any other related agreements.

   b. You represent and warrant all statements you have made to the Lender, whether written or oral, and all financial information you have provided the Lender regarding the Property, and all information provided pursuant to any initial agreement you have signed with TAIWAN RATIONAL ENTERPRISES, LLC remain valid and were true as of the date made and as of the date first written above.

10. **YOUR RELEASE OF TAIWAN RATIONAL ENTERPRISES:** IN THE EVENT THAT YOU HAVE ANY CLAIMS, ACTIONS OR CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR SETOFFS OF ANY KIND WHICH YOU NOW OR HEREAFTER MAY ASSERT AGAINST DIANA BASUMOVA AND/OR THE LENDER IN CONNECTION WITH THE MAKING, CLOSING, ADMINISTRATION, COLLECTIONS OR THE ENFORCEMENT BY THE LENDER OF THE LOAN DOCUMENTS, THIS AGREEMENT OR ANY OTHER RELATED AGREEMENTS, THEN BY EXECUTING THIS AGREEMENT YOU FOREVER IRREVOCABLY WAIVE AND RELINQUISH THEM AND HOLD THE LENDER HARMLESS. THE TERM "THE LENDER" SHALL INCLUDE FOR THE PURPOSES OF THIS AGREEMENT, BUT SHALL NOT BE LIMITED, TO TAIWAN RATIONAL ENTERPRISE'S PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, ATTORNEYS AND ALL PRIOR AND SUBSEQUENT PARTIES IN INTEREST, INCLUDING BUT NOT LIMITED TO TAIWAN RATIONAL ENTERPRISE'S PREDECESSOR IN INTEREST.

11. **Final Agreement:** This Agreement may not be supplemented, changed, waived, discharged, eliminated, modified or omitted except by written document between you and the Lender. This Agreement constitutes the entire agreement between you and the lender, supersedes all previous negotiations and discussions between you, the Lender, and/or the Lender's predecessors in interest, and neither parol evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, conditions, or obligations other than those contained in this Agreement.

12. **No Waiver:** By executing this Agreement, TAIWAN RATIONAL ENTERPRISES is not waiving and shall not be deemed to have waived any of the defaults under the Loan Documents nor any of the Lender's rights or remedies. Moreover, any waiver by Taiwan Rational Enterprises of any breach or any provision of this Agreement or the Loan

Documents or any related Agreement or its failure to exercise any right or remedy under this Agreement, the Loan Documents or any related agreement shall not be deemed a continuing waiver of any other or subsequent breach, whether of the same or any other provision, and shall not in any way impair any of the Lender's rights or remedies.

13. **No Novation:** You expressly agree that this Agreement is not a new loan or refinancing from the Bank, but a forbearance of the Bank's rights to exercise its remedies under the Loan Documents. Neither you nor TAIWAN RATIONAL ENTERPRISES have any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

14. **Choice of Law and Severability:** This Agreement shall be governed by and construed under the laws of the state where the Property is located. If any position, term or provision of this Agreement is held by a court of competent jurisdiction to be illegal or in conflict with such law, the validity of the remaining terms or provision of this Agreement shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if the Agreement did not conflict with such law and/or did not contain the term or provision hold to be invalid.

15. **Successors:** This Agreement shall bind the parties' respective successors, assigns, heirs and personal representatives. This Agreement shall not be understood to limit in any way the right of the Lender to sell, or otherwise convey, any interest in the subject obligation to another, provided that such subsequent party in interest is also bound as is the Lender to the terms of this Agreement.

16. **References:** All references to the singular shall include the plural, as applicable.

17. **Executed in Counterpart:** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

18. **No Trial by Jury:** BY EXECUTING THIS AGREEMENT, YOU AND THE LENDER IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF ANY RELATING TO THIS AGREEMENT AND ANY RELATED AGREEMENTS OR DOCUMENTS OR TRANSACTIONS CONTEMPLATED IN THIS AGREEMENT.

19. **Payment Instructions:** All payments shall be made by wire transfer to the Lender.

20. **Notices:** All notices should be sent to:

If to: Taiwan Rational Enterprises             If to you: NLC, LLC

_____                    _____
_____                    _____
_____                    _____

21. **Time of the Essence:** Time shall be of the essence as to your obligations under this Agreement.

22. **Survival of Terms Upon Default, Termination or Expiration of Agreement:** You agree that **Section 10** of this Agreement will survive termination or expiration of this Agreement, whether based on default or the completion of this Agreement.

23.  **Opportunity to Consult with Counsel:** You understand that this Agreement is legally binding and that it affects your rights (including but not limited to release of any claims that you may have against the Bank as more particularly described in **Section 10**). You have obtained and consulted, or have had the opportunity to obtain and consult, your own independent legal counsel concerning the meaning, terms, effect and importance of this Agreement. You further represent and warrant that you are signing the Agreement voluntarily and with full understanding and acknowledgment of its contents and meaning.

WITNESS the following signatures and seals as of the day first written above.

NLG, LLC
By: Christopher Kosachuk, as Manager-Member

TAIWAN RATIONAL ENTERPRISES, LLC

By: Anton Wahlman, as Manager-Member

# EXHIBIT D

### NLG/AGAPOV Settlement Agreement

NLG, LLC (hereafter "NLG"), and Oxana Agapov (hereafter "Agapov") agree as follows:

1. <u>Sale of Property.</u>

    a.    Upon dismissal of the bankruptcy case and the state court case, the property will be immediately placed with The Vole Pingaro Partnership as broker and placed on the Multiple Listing Service for a sale price of $4.0 M. Copies of the fully executed listing agreement will be provided to NLG and Agapov, and any amendments or modifications thereto shall be subject to the consent of both NLG and Agapov. The listing agreement shall provide that all offers shall be communicated to both NLG and Agapov. NLG and Agapov shall use their best efforts in good faith to sell the property at an agreed upon price pursuant to the terms hereof as soon as reasonably possible.

    b.    If a bona fide offer is received for less than $4.0 M, the property will go to contract only upon the consent of both Agapov and NLG. If the offer is acceptable to one party ("accepting party") but not the other ("rejecting party"), the rejecting party may (but is not required to) buy out the accepting party for an amount equal to the amount that the accepting party would have received upon the sale of the property at the stated offer. If Agapov is the rejecting party exercising this buy-out option, the amount which shall be payable pursuant to the buy-out option shall include the reimbursements which would have been payable to NLG pursuant to paragraph 1.c.(c) of this Agreement, and the amount which would have been payable to NLG pursuant to paragraph 1.c.(d) of this Agreement. Upon the exercise of such option by Agapov and payment of the amounts due pursuant thereto, NLG shall convey title to the Property to Agapov by quit-claim deed unless (1) NLG or Kosachuk conclude that conveying title prior to a sale to a third party purchaser will have adverse tax consequences; or (2) Agapov cannot take title because Taiwan Rational Enterprises, LLC ("TRE"), which holds the first mortgage on the Property, has not waived its right to enforce, or seek to enforce, a due on sale clause that could arguably permit TRE to accelerate the mortgage prior to July 26, 2005 if title is conveyed to Agapov. If title to the Property is not conveyed upon exercise of the option by Agapov pursuant to this paragraph, NLG shall execute such documents as may be necessary to insure that Agapov will have complete control of the property and the full obligation to maintain and preserve the property, even if NLG retains bare legal title. Such documents shall provide whatever protections may be necessary to ensure that NLG retaining bare legal title does not prejudice Agapov in her ability to take full control of the property and full control of the sale process, and similarly does not create any potential liabilities for NLG if it is required to stay on title. Under either alternative, Agapov shall upon exercise of the option assume the sole obligation to pay monthly interest payments to TRE pursuant to the modified TRE note and mortgage on a going forward basis (NLG shall be responsible to pay TRE pursuant to the modified TRE note and mortgage up to the date of exercise of the option), and assume all ongoing expenses of maintenance, preservation and upkeep of the property as provided in paragraph 3 of this Agreement, and NLG will have no further responsibility for such expenses. If a dispute arises over the best transactional way to

EXHIBIT

effectuate this provision, the Court will resolve the dispute. If, pursuant to the buy-out option, NLG is the rejecting party and NLG seeks to exercise the buy-out option, upon the exercise of such option by NLG and payment of the amounts due pursuant to paragraph 1.c., the note and mortgage in favor of Agapov provided for in this Agreement in paragraphs 2.b. and 2.c. shall be deemed satisfied and any claims or rights of Agapov pursuant to this Agreement shall be deemed satisfied and extinguished.

        c.    Upon the sale of the property, after payment of (a) all of seller's customary closing costs and expenses, fees, and brokerage fees (brokerage fees not to exceed 6% of the contract price); (b) the Taiwan Rational mortgage as modified pursuant to separate agreement between TRE, Agapov and NLG; and (c) reimbursement to either party of all costs of preserving and protecting the property from October 29, 2004 going forward as set forth in paragraph 3. hereunder, then (d) all net proceeds of sale shall be divided 82% to Agapov and 18% to NLG.

      2.    <u>Title, modification of note, and issuance of mortgage</u>.

        a.    <u>Title</u>. The property shall remain titled in the name of NLG until the exercise of the buy-out provision by Agapov as set forth in paragraph 1.b., alternative (1), or the sale of the property as set forth in paragraph 1.a.

        b.    <u>Note</u>. NLG shall clarify and amend the note granted to Valeri Negodaeva, and assigned to Agapov, dated March 27, 2003, to provide that: (a) the note is secured by a mortgage of even date; (b) that the amended note represents an enforceable obligation; (c) that the amended note shall obligate NLG to pay to Agapov the proceeds of sale of the property as set forth in paragraph 1.c. above; (d) that the amended note shall be deemed satisfied upon payment as set forth in paragraph 1.c. above; and (e) that the amended note shall be enforceable pursuant to Florida law and shall be enforceable in Miami-Dade County, Florida.

        c.    <u>Mortgage</u>. NLG shall issue a mortgage in favor of Agapov as security for the amended note. The mortgage shall be recorded by Agapov, and all fees and recording costs associated with the mortgage shall be the responsibility of Agapov.

      3.    <u>Maintenance, preservation and upkeep of property</u>.

        a.    <u>Costs of Maintaining Property</u>. Pending the sale of the property, NLG shall timely pay: (a) all monthly payments to Taiwan Rational pursuant to the modified mortgage note as described herein; (b) all real estate taxes (taxes are due by March 31, 2005 for 2004); (c) all insurance premiums to maintain adequate insurance coverage on the property; (d) all condominium association and other Fisher Island related monthly fees and assessments; and (e) any future property maintenance costs necessary to maintain the property in good condition. NLG shall retain receipts or other appropriate documentation for all such expenditures, and will be reimbursed for expenditures pursuant to paragraph 1.c.(c) at sale closing only to the extent of the appropriate documentation provided. Kosachuk will not be reimbursed for any travel expenses, car

rental, restaurants or personal purchases, or expenses incurred solely as a result of any lease or lease extension which generates future rental income.

      b.    <u>Removal of Tenancy.</u>  Upon execution of a sales contract, NLG will use its best efforts to cause the tenant to voluntarily quit the premises prior to the proposed closing date of the sales contract. Any reasonable expenses incurred thereby shall be reimbursed in accordance with Paragraph 1.c.(c) of this Agreement only if (a) such expenses are approved first by Agapov, which approval shall not be unreasonably withheld; and (b) there is appropriate documentation establishing such expenses. Any such expenses shall not include reimbursement for travel expenses, car rental, restaurants or personal purchases.

      4.    <u>TRE Mortgage Note</u>

      a.    TRE, Agapov and NLG have entered into a separate agreement regarding the note, mortgage and loan agreement between NLG and Diana Basumova (and assigned to TRE). NLG agrees to execute such documents as are reasonably necessary to effectuate that settlement. NLG agrees that nothing in this Settlement Agreement prevents Agapov from satisfying the TRE mortgage at any time, and NLG will not object to Agapov satisfying the TRE mortgage.

      5.    <u>Dismissal and Settlement Procedures in Bankruptcy Court and State Court.</u>

      a.    <u>Bankruptcy Court</u>. The terms of this settlement have been announced at the trial date hearing in Bankruptcy Court on October 29, 2004. The parties shall file a joint motion in the Bankruptcy Court providing (a) for approval of the settlement; (b) for dismissal of the bankruptcy case with prejudice; (c) for the exchange of general releases subject to the terms and conditions of the settlement; and (d) for each party to bear its own costs and attorney fees. The order shall provide for the reservation of jurisdiction by the Bankruptcy Court to interpret this settlement agreement and resolve disputes relating to this Settlement Agreement consistent with and limited to the reservation of jurisdiction stated on the record at the October 29th hearing, as clarified by the Court at the December 15, 2004 hearing.

      b.    <u>State Court</u>. NLG and Agapov will stipulate to the entry of an order by the State Court (a) finding and determining that the Lis Pendens previously filed in the case shall merge into the mortgage granted to Agapov as set forth in paragraph 2.c., with the mortgage relating back to the date of the filing of the Lis Pendens; (b) approving this settlement; (c) dismissing the case with prejudice; and (d) providing for each party to bear its own costs and attorney's fees. Upon the adjudication of Agapov's request for such an order, the State Court Action shall be dismissed with prejudice and the Lis Pendens withdrawn, no later than 30 days after the execution of the documents provided for in this settlement agreement.

      6.    Agapov agrees not to file nor to solicit or assist in the filing of any further involuntary petition against NLG.

7.   To the extent there is any ambiguity or dispute with respect to this Settlement Agreement, or the Note and Mortgage to be executed in connection therewith, such ambiguities or disputes shall be resolved consistently with the Bankruptcy Court's rulings as reflected in the October 29, 2004 hearing transcript, as further clarified by the rulings announced on the record and reflected in the December 15, 2004 hearing transcript and December 17, 2004 Order (1) Enforcing Settlement Agreement; (2) Determining Form of Promissory Note; and (3) Setting Final Deadline for Execution and Submission of Settlement Agreement.

[SIGNATURE PAGE FOLLOWS]

Date: 1/7/05

NLG, LLC
By: Chris Kosachuk
(Name & Title)
STATE OF New York )
COUNTY OF Kings )

The foregoing instrument was acknowledged before me this 7th day of
January, 2005 by Chris Kosachuk, as Manager of
NLG, LLC.

NOTARY PUBLIC, State of New York
Notary Public Seal:

> GLORIA L. HERNANDEZ
> NOTARY PUBLIC, STATE OF NEW YORK
> No. 01HE6082685
> QUALIFIED IN KINGS COUNTY
> MY COMMISSION EXPIRES NOV. 4, 20 06

Date: _____

OXANA AGAPOV

STATE OF _____ )
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2005 by OXANA AGAPOV.

NOTARY PUBLIC, State of _____
Notary Public Seal:

246028-8                                    5

NLG, LLC _____                    Date:_____

By:_____

(Name & Title)

STATE OF _____ )

COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2005 by _____, as _____ of
NLG, LLC.

_____

NOTARY PUBLIC, State of _____

Notary Public Seal:

_____

OXANA AGAPOV                              Date: Jan 11, 05

STATE OF _____ )

COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2005 by OXANA AGAPOV.

_____

NOTARY PUBLIC, State of _____

Notary Public Seal:

346021-9

5

# EXHIBIT E

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

## GENERAL JURISDICTION DIVISION

### CASE NO.: 03-23976 (10)

OXANA AGAPOV,

     Plaintiff,

v.

CHRISTOPHER KOSACHUK and
NLG, L.L.C., a Delaware limited liability
Company,

     Defendants.

                            /

## STIPULATION FOR ENTRY OF AGREED ORDER APPROVING SETTLEMENT AGREEMENT, PROVIDING FOR MERGER OF MORTGAGE INTO LIS PENDENS AND DISMISSING CASE WITH PREJUDICE

The parties, by through undersigned counsel, hereby file this Stipulation and submit as follows:

1.    The parties have amicably resolved the disputes raised in this action pursuant to the NLG/Agapov Settlement Agreement (the "Settlement Agreement") attached hereto as Exhibit A.

2.    The Settlement Agreement provides, among other things, for the granting of a Mortgage to Plaintiff. A copy of the executed Mortgage is attached hereto as Exhibit B.

3.    The Settlement Agreement provides, and the parties hereby stipulate, that the Mortgage shall merge into and relate back to the date of the filing of the Notice of Lis Pendens previously filed in this cause.

4. The Settlement Agreement further provides, and the parties hereby stipulate, that each party shall bear its own attorneys' fees and costs incurred herein.

**WHEREFORE,** the parties respectfully request that the Court enter the agreed order submitted herewith approving the parties' Settlement Agreement, providing for the relation back of the Mortgage to the date of the recording of the Notice of Lis Pendens and dismissing this action with prejudice, each party to bear its own fees and costs.

Respectfully submitted,

**HALL DAVID AND JOSEPH, P.A.**
Attorneys for Defendants
428 Brickell Avenue, Penthouse
Miami, Florida 33131
Tel: 305-374-5030
Fax: 305-374-5033

By: _____
CHRISTOPHER M. DAVID
F.B.N.: 985163

**ADORNO & YOSS LLP**
Attorneys for Plaintiff
2525 Ponce de Leon Blvd., Suite 400
Coral Gables, Florida 33134
Tel: 305-460-1000
Fax: 305-460-1422

By: _____
PETER H. LEVITT
F.B.N.: 650978

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 03-23976 (10)

OXANA AGAPOV,

      Plaintiff,

v.

CHRISTOPHER KOSACHUK and
NLG, L.L.C., a Delaware limited liability
Company,

      Defendants.

_____/

## AGREED ORDER APPROVING SETTLEMENT AGREEMENT, PROVIDING FOR MERGER OF MORTGAGE INTO LIS PENDENS AND DISMISSING CASE WITH PREJUDICE

**THIS CAUSE** having come before the Court on the parties' Stipulation for Order

Approving Settlement Agreement, Providing for Merger of Mortgage into Lis Pendens and

Dismissing Case with Prejudice, and the parties having advised the Court that they entered into a

Settlement Agreement, a copy of which is attached as Exhibit A to the Stipulation, and

Defendant NLG, pursuant to the Settlement Agreement, having executed a Mortgage in favor of

Plaintiff, a copy of which is attached as Exhibit B to the Stipulation, and the parties having

agreed that the Mortgage will merge into and relate back to the Notice of Lis Pendens previously

filed in this cause by Plaintiff, and the Court having reviewed the court file and the Settlement

Agreement and finding the terms of the Settlement Agreement to be fair and reasonable and

supported by law, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.  The Settlement Agreement is hereby approved.

2.  Pursuant to the Settlement Agreement, and as approved by the Court, the Mortgage granted by Defendant NLG to Plaintiff, upon the recording thereof, shall merge into the Lis Pendens filed by Plaintiff in this cause and said Lis Pendens shall be discharged.

3.  This case is dismissed with prejudice, with each party to bear its own attorneys' fees and costs.

4.  The Court shall retain jurisdiction to enforce the terms hereof.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida on this _____ day of January 2005.

_____

**CIRCUIT COURT JUDGE**

cc:

Peter H. Levitt, Esq.
Christopher M. David, Esq.

# EXHIBIT F

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
# IN AND FOR MIAMI-DADE COUNTY, FLORIDA

## GENERAL JURISDICTION DIVISION

### CASE NO.: 03-23976 (10)

OXANA AGAPOV,

      Plaintiff,

v.

CHRISTOPHER KOSACHUK and
NLG, L.L.C., a Delaware limited liability
Company,

      Defendants.

_____/

## AGREED ORDER APPROVING SETTLEMENT AGREEMENT,
## PROVIDING FOR MERGER OF MORTGAGE INTO
## LIS PENDENS AND DISMISSING CASE WITH PREJUDICE

**THIS CAUSE** having come before the Court on the parties' Stipulation for Order

Approving Settlement Agreement, Providing for Merger of Mortgage into Lis Pendens and

Dismissing Case with Prejudice, and the parties having advised the Court that they entered into a

Settlement Agreement, a copy of which is attached as Exhibit A to the Stipulation, and

Defendant NLG, pursuant to the Settlement Agreement, having executed a Mortgage in favor of

Plaintiff, a copy of which is attached as Exhibit B to the Stipulation, and the parties having

agreed that the Mortgage will merge into and relate back to the Notice of Lis Pendens previously

filed in this cause by Plaintiff, and the Court having reviewed the court file and the Settlement

Agreement and finding the terms of the Settlement Agreement to be fair and reasonable and

supported by law, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.  The Settlement Agreement is hereby approved.

2.  Pursuant to the Settlement Agreement, and as approved by the Court, the Mortgage granted by Defendant NLG to Plaintiff, upon the recording thereof, shall merge into the Lis Pendens filed by Plaintiff in this cause and said Lis Pendens shall be discharged.

3.  This case is dismissed with prejudice, with each party to bear its own attorneys' fees and costs.

4.  The Court shall retain jurisdiction to enforce the terms hereof.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida on this~~FEB 1 4 2005~~ day of ~~January~~ 2005.

_____
**CIRCUIT COURT JUDGE**


cc:

Peter H. Levitt, Esq.
Christopher M. David, Esq.



## Official Records

### Harvey Ruvin, Clerk
### Circuit and County Courts
### Miami-Dade County, Florida

---

**This page has been skipped in the Official Record.
There is no image associated with it.**



# EXHIBIT G

## TRE/AGAPOV-NLG SETTLEMENT TERMS

A.    Taiwan Rational Enterprises, LLC ("TRE") on the one hand and Oxana Agapov ("Agapov") and NLG, LLC ("NLG") on the other hand agree that TRE will modify the existing forbearance agreement dated April 26, 2004 between NLG and TRE relating to: (1) a certain promissory note executed by NLG ("the maker") in favor of Diana Basumova on March 27, 2003 (the "Basumova note"); (2) a certain Loan Agreement between the same parties executed contemporaneously with the Basumova note; and (3) a certain mortgage executed by NLG to secure the obligations under the Basumova note and Loan Agreement, to effect the following:

1.    Although the Basumova note was due when the Basumova note, Loan Agreement and mortgage were assigned to TRE on April 26, 2004, TRE will waive default rate interest retroactive to April 26, 2004, and accept the contractual non-default rate of 10% per annum until and unless the maker shall default hereafter.

2.    The maker shall pay accruing interest in arrears monthly on a going-forward basis commencing on November 26, 2004.  By way of illustration, interest on the face amount of the Basumova note that accrues from October 27, 2004 – November 26, 2004 shall be due on November 26, 2004, and the monthly payment shall be $14,166.67 each until maturity.

3.    The Basumova note's maturity date will be further extended to July 26, 2005.

4.    All accrued interest through October 26, 2004 plus an additional amount negotiated by the parties, altogether totaling $110,000 ("the additional obligation") shall be paid on the earlier of July 26, 2005, or the closing of any sale of the property pursuant to the separate settlement agreement between NLG and Agapov. The additional obligation will not bear interest. The additional obligation shall form a part of the obligation under the Basumova note, and shall be secured by the mortgage to secure all obligations under the Basumova note and Loan Agreement.

5.    TRE shall give Agapov notice of any payment default by NLG, and she shall have 10 days within which to cure it.

{G8A/210952.0001/M1300815_1}

B.     The maker shall execute an additional promissory note to the order of TRE in the amount of $42,376.30 (the "side note") payable with interest at 10% per annum and due on the closing of any sale of the property pursuant to the separate settlement agreement between NLG and Agapov. This note shall be nonrecourse; NLG shall give TRE an assignment of the proceeds of sale of the property to which it becomes entitled pursuant to the terms of the settlement with Agapov (which is 18% of the net proceeds after payment of various costs and expenses and the only source of the payment). Christopher Kosachuk shall guarantee the payment of the side note.

C.     Subject only to the terms of this agreement, Agapov and TRE shall execute mutual general releases.

D.     Subject only to the terms of this agreement, NLG and TRE shall execute mutual general releases.

E.     Agapov shall timely file a motion to dismiss the pending involuntary bankruptcy petition against NLG, LLC and shall not commence, solicit, urge or otherwise participate in  a new involuntary petition for relief under the Bankruptcy Code (or similar insolvency proceeding) against TRE.

_Geoffrey S. Aaronson_
_Aaronson & Yuss, PLLP_

Date: _1/12/05_

_Attorneys For_ OXANA AGAPOV

NLG, LLC

By: _____     Date: _1/12/05_
     Christopher Kosachuk,
     Managing Member

TAIWAN RATIONAL
ENTERPRISES, LLC

By: _____     Date: _January 12, 2005_
     Arthur J. Spector
     Berger Singerman, P.A.
     Its Attorney

{GSA/210952.0001/M1300815_1}                    2

# EXHIBIT H

## AMENDED AND RESTATED PROMISSORY NOTE

Miami, Florida                    January _12_, 2005

---

This Amended and Restated Promissory Note is dated as of the _12th_ day of January, 2005 (the "Amended Note") and given by NLG, LLC ("Debtor"), a Delaware limited liability company in favor of Oxana Agapov ("Creditor").

This Amended Note is intended to amend and restate that certain Promissory Note in the maximum amount of $1,417,201.11 dated March 27, 2003 (the "Original Note") made by Debtor in favor of Valeri Negodaeva (the "Original Creditor"), which Original Note was assigned by Original Creditor to Creditor pursuant to an Assignment of Promissory Note executed on or about February 29, 2004.

This Amended Note is delivered pursuant to the NLG/AGAPOV Settlement Agreement dated as of January _12_ , 2005 (the "Settlement Agreement") and is secured by a Mortgage of even date herewith executed by Debtor encumbering the property located at 6913 Valencia Drive, Fisher Island, FL 33109 (the "Property").

**PROMISE TO PAY.** Debtor promises to pay to Creditor an amount equal to 82% of the net sale proceeds derived from the sale of the Property (hereafter, the "82% Payment"). The amount of the 82% Payment shall be determined pursuant to paragraph 1.c of the Settlement Agreement and does not have a fixed value.

**MATURITY DATE.** The 82% Payment shall become due and payable immediately upon the closing of a sale of the Property in accordance with the Settlement Agreement (the "Maturity Date").

**DEFAULT.** In the event that Debtor fails to pay the 82% Payment at the Maturity Date, Debtor shall be in default of its obligation hereunder and Creditor may exercise all of her rights under the Mortgage and the Settlement Agreement. Debtor hereby waives, to the extent allowed by law, presentment, demand for payment and notice of default. Debtor agrees that Creditor may renew or extend this Note or Debtor's payment obligation without the consent of Debtor or notice to any party.

**INTEREST.** This Note is non-interest bearing.

**NOTICES.** Any notice to Debtor shall be delivered to Debtor at the following address:
NLG, LLC
854 Pheasant Run
West Chester, PA 19382

Any notice to Creditor shall be delivered to Creditor at the following address:

Oxana Agapov
45 E. 80th Street, Apt. 5-B
New York, NY 10021

**ATTORNEY'S FEES AND COSTS.** Upon default, Creditor may hire or pay someone else to help collect this Note if Debtor does not pay. Debtor also will pay Creditor these collection costs. This includes Creditor's reasonable legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any actual or anticipated post-judgment collection services. Debtor will pay any court costs, in addition to all other sums provided by law.

**WAIVER OF JURY TRIAL.** Debtor hereby waives the right to jury trial in any action or proceeding brought against it by Creditor arising out of or relating to this Note.

**PRIOR NOTE.** This Note shall amend, restate, superseded and replace that certain Promissory Note dated March 17, 2003 payable to Valeri Negodaeva which Promissory Note was assigned to Creditor.

**MORTGAGE.** This Note is secured by a Mortgage of even date from Debtor to Creditor. The rights and remedies of Creditor stated in this Note are in addition to and not in limitation of the rights and remedies stated in the Mortgage.

**BUY-OUT.** In the event either Creditor or Debtor shall exercise the buy-out option set forth in paragraph 1.b of the Settlement Agreement, this Note shall be deemed paid and satisfied.

**SEVERABILITY.** If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CHOICE OF LAW AND FORUM.** This Note has been delivered to Creditor and accepted by Creditor in the State of Florida and shall be governed by and construed in accordance with the laws thereof without regard to principles of conflicts of law, and is enforceable in any court located in Miami-Dade County, Florida.

**PRIOR TO SIGNING THIS NOTE, DEBTOR OR AUTHORIZED REPRESENTATIVES OF DEBTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE WAIVER OF JURY TRIAL PROVISIONS. DEBTOR AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

As of the date first above written, the undersigned Debtor executed and acknowledges as a document under seal this Note, with the intent to be legally bound hereby.

NLG, LLC:

By: _____

Name: Christopher Kosachuk

Title: Sole Member

ATTEST:

By: _____

Name: Damaris Mejia

STATE OF New York )
)ss.:
COUNTY OF Kings )

ON THIS, the 12th day of January, 2005, before me, the undersigned officer, personally appeared Christopher Kosachuk, who presented identification and acknowledged himself to be the sole and managing member of NLG, LLC, a Delaware limited liability company, and that he as such sole and managing member, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
NOTARY PUBLIC
My Commission Expires:

[SEAL]

ELIZABETH
NOTARY PUBLIC, STATE OF K
No. 01SI6082794
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES NOV. 4, 20___

ELIZABETH SILVA
NOTARY PUBLIC, STATE OF NEW YORK
No. 01SI6082794
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES NOV. 4, 2006

# EXHIBIT I

CFN 2005R0190261
OR Bk 23116 Pgs 0776 - 780; (5pgs)
RECORDED 02/25/2005 11:48:08
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

THIS INSTRUMENT PREPARED BY:
David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134

## **MORTGAGE**

This mortgage is made as of this __11__ day of January, 2005 by and between NLG, LLC ("Mortgagor"), a Delaware limited liability company having an address at 854 Pheasant Run, West Chester, PA 19382, and Oxana Agapov ("Mortgagee"), having an address at 45 E. 80th Street, Apt. 5-B, New York, NY 10021.

**WHEREAS**, Mortgagor is indebted to Mortgagee in accordance with the terms and conditions of an Amended and Restated Promissory Note ("Note"), a copy of which is attached hereto as Exhibit "A,"

**NOW, THEREFORE**, to secure the performance by Mortgagor of all covenants and conditions in the Note, and in order to charge the property hereinafter described with such payment and performance and for and in consideration of the sum of Ten and no/100 Dollars ($10.00), Mortgagor does hereby mortgage, sell, pledge and assign to Mortgagee all of the land in the county of Miami-Dade County together with the improvements thereon described as:

> **Lot 7 Block 2 LINDSFARNE ON FISHER ISLAND SECTION
> 10, according to the Plat thereof, recorded in Plat Book 157 Page
> 64 of the Public Records of Miami-Dade County, Florida**



3293/101/248479.1

**PROVIDED ALWAYS**, that if Mortgagor shall pay to Mortgagee the Note at the time and in the manner stipulated therein, then this Mortgage shall cease and be void, but shall otherwise remain in full force and effect.

**IN WITNESS WHEREOF**, this instrument has been executed on the date first above written.

NLG, LLC, a Delaware limited liability company

By: _____

Name: Christopher Kosachuk

Title: Sole Member

STATE OF _New York_____ )

                                              )ss

COUNTY OF _Kings_____ )

The foregoing instrument was acknowledged before me this _11th_ day of _January 2005_, by Christopher Kosachuk, as Sole Member of NLG, LLC, a Delaware limited liability company, on behalf of said company.

_____

NOTARY PUBLIC, State of _New York_

Notary Public Seal:

Personally Known ( ) OR Produced Identification ( )

> ELIZABETH SILVA
> NOTARY PUBLIC, STATE OF NEW YORK
> No. 01SI6082794
> QUALIFIED IN NEW YORK COUNTY
> MY COMMISSION EXPIRES NOV. 4, 2006

ATTEST:                                                    ATTEST:

By: _Damaris Mejia_                     By: _Erica Ramos_

Name: _Damaris M._                      Name: _ERICA RAMOS_

# AMENDED AND RESTATED PROMISSORY NOTE

Miami, Florida                    January _12_, 2005

---

This Amended and Restated Promissory Note is dated as of the _12th_ day of January, 2005 (the "Amended Note") and given by NLG, LLC ("Debtor"), a Delaware limited liability company in favor of Oxana Agapov ("Creditor").

This Amended Note is intended to amend and restate that certain Promissory Note in the maximum amount of $1,417,201.11 dated March 27, 2003 (the "Original Note") made by Debtor in favor of Valeri Negodaeva (the "Original Creditor"), which Original Note was assigned by Original Creditor to Creditor pursuant to an Assignment of Promissory Note executed on or about February 29, 2004.

This Amended Note is delivered pursuant to the NLG/AGAPOV Settlement Agreement dated as of January _12_, 2005 (the "Settlement Agreement") and is secured by a Mortgage of even date herewith executed by Debtor encumbering the property located at 6913 Valencia Drive, Fisher Island, FL 33109 (the "Property").

**PROMISE TO PAY.** Debtor promises to pay to Creditor an amount equal to 82% of the net sale proceeds derived from the sale of the Property (hereafter, the "82% Payment"). The amount of the 82% Payment shall be determined pursuant to paragraph 1.c of the Settlement Agreement and does not have a fixed value.

**MATURITY DATE.** The 82% Payment shall become due and payable immediately upon the closing of a sale of the Property in accordance with the Settlement Agreement (the "Maturity Date").

**DEFAULT.** In the event that Debtor fails to pay the 82% Payment at the Maturity Date, Debtor shall be in default of its obligation hereunder and Creditor may exercise all of her rights under the Mortgage and the Settlement Agreement. Debtor hereby waives, to the extent allowed by law, presentment, demand for payment and notice of default. Debtor agrees that Creditor may renew or extend this Note or Debtor's payment obligation without the consent of Debtor or notice to any party.

**INTEREST.** This Note is non-interest bearing.

**NOTICES.** Any notice to Debtor shall be delivered to Debtor at the following address:
                    NLG, LLC
                    854 Pheasant Run
                    West Chester, PA 19382


EXHIBIT
A

Any notice to Creditor shall be delivered to Creditor at the following address:

Oxana Agapov
45 E. 80th Street, Apt. 5-B
New York, NY 10021

**ATTORNEY'S FEES AND COSTS.** Upon default, Creditor may hire or pay someone else to help collect this Note if Debtor does not pay. Debtor also will pay Creditor these collection costs. This includes Creditor's reasonable legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any actual or anticipated post-judgment collection services. Debtor will pay any court costs, in addition to all other sums provided by law.

**WAIVER OF JURY TRIAL.** Debtor hereby waives the right to jury trial in any action or proceeding brought against it by Creditor arising out of or relating to this Note.

**PRIOR NOTE.** This Note shall amend, restate, superseded and replace that certain Promissory Note dated March 17, 2003 payable to Valeri Negodaeva which Promissory Note was assigned to Creditor.

**MORTGAGE.** This Note is secured by a Mortgage of even date from Debtor to Creditor. The rights and remedies of Creditor stated in this Note are in addition to and not in limitation of the rights and remedies stated in the Mortgage.

**BUY-OUT.** In the event either Creditor or Debtor shall exercise the buy-out option set forth in paragraph 1.b of the Settlement Agreement, this Note shall be deemed paid and satisfied.

**SEVERABILITY.** If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CHOICE OF LAW AND FORUM.** This Note has been delivered to Creditor and accepted by Creditor in the State of Florida and shall be governed by and construed in accordance with the laws thereof without regard to principles of conflicts of law, and is enforceable in any court located in Miami-Dade County, Florida.

**PRIOR TO SIGNING THIS NOTE, DEBTOR OR AUTHORIZED REPRESENTATIVES OF DEBTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE WAIVER OF JURY TRIAL PROVISIONS. DEBTOR AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

As of the date first above written, the undersigned Debtor executed and acknowledges as a document under seal this Note, with the intent to be legally bound hereby.

NLG, LLC:

By: _____

Name: Christopher Kosachuk

Title: Sole Member

ATTEST:

By: _____

Name: Damaris Mejia

STATE OF New York )

COUNTY OF Kings )ss.:

    ON THIS, the 12th day of January, 2005, before me, the undersigned officer, personally appeared Christopher Kosachuk, who presented identification and acknowledged himself to be the sole and managing member of NLG, LLC, a Delaware limited liability company, and that he as such sole and managing member, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunder set my hand and official seal.

NOTARY PUBLIC

My Commission Expires:

[SEAL]

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that this is a true copy of the original filed in this office on _____ day of _____ A D 20 __
WITNESS my hand and Official Seal.
HARVEY RUVIN, CLERK, of Circuit and County Courts
By _____ D.C.

ELIZABETH
NOTARY PUBLIC, STATE OF ...
No. 01SI6082794          K
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES NOV. 4, 20__

ELIZABETH SILVA
NOTARY PUBLIC, STATE OF NEW YORK
No. 01SI6082794
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES NOV. 4, 2006

3293/101/247229-2

3

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

## I. (a) PLAINTIFF

OXANA AGAPOV

**DEFENDANTS**

NLG, LLC, et al., Taiwan Rational Enterprises, LLC, CHRISTOPHER KOSACHUK & ANTON WAHLMAN

CIV - SEITZ

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF New York County, New York

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Delaware

NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Dade 05 ca 22007/Seitz/M'Al.ley

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)

Peter H. Levitt, Adorno & Yoss, LLP
2525 Ponce de Leon Blvd. Suite 400
Miami, FL 33134
Tel. No. 305-460-1000

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
MIAMI-DADE COUNTY

## II. BASIS OF JURISDICTION (PLACE AN X ON ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX)
(For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) Warsaw Convention Case. Claimed non-delivery or mis-delivery of goods (mail). Removal authorized by 28 U.S.C. §1441(b)

Breach of settlement agreement, tortious interference with contract, imposition of equitable lien, constructive trust.

**IVa.** 2 days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A. CONTRACT | A. TORTS | | B. FORFEITURE/PENALTY | A. BANKRUPTCY | A. OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury- | ☐620 Other Food & Drug | ☐423 Withdrawal | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product | Med Malpractice | ☐625 Drug Related Seizure of | 28 USC 157 | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | Liability | ☐365 Personal Injury- | Property 21 USC 861 | | ☐450 Commercial/ICC Rates, Etc |
| ☐150 Recovery of Overpayment | ☐320 Assault, Libel & | Product Liability | ☐630 Liquor Laws | **A. PROPERTY RIGHTS** | ☐460 Deportation |
| & Enforcement of | Slander | ☐368 Asbestos Personal | ☐640 RR & Truck | ☐820 Copyrights | ☐470 Racketeer Influenced and |
| Judgment | ☐330 Federal Employers | Injury Product | ☐650 Airline Regs | ☐830 Patent | Corrupt Organizations |
| ☐151 Medicare Act | Liability | Liability | ☐660 Occupational | ☐840 Trademark | ☐810 Selective Service |
| ☐152 Recovery of Defaulted | ☐340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐850 Securities/Commodities/ |
| Student Loans | ☐345 Marine Product | ☐370 Other Fraud | **A. LABOR** | **B. SOCIAL SECURITY** | Exchange |
| (Excl. Veterans) | Liability | ☐371 Truth in Lending | ☐710 Fair Labor Standards | ☐861 HIA (1395ff) | ☐875 Consumer Challenge |
| ☐153 Recovery of Overpayment | ☐350 Motor Vehicle | ☐380 Other Personal | Act | ☐862 Black Lung (923) | USC3410 |
| of Veteran's Benefits | ☐355 Motor Vehicle | Property Damage | ☐720 Labor/Mgmt | ☐863 DIWC/DIWW (406(g)) | ☐891 Agriculture Acts |
| ☐160 Stockholders Suits | Product Liability | ☐386 Property Damage | Relations | ☐864 IOTitle XVI | ☐892 Economic Stabilization |
| ☐190 Other Contract | ☐360 Other Personal | Product Liability | ☐730 Labor/Mgmt | ☐865 RSI (406(g)) | Act |
| ☐195 Contract Product Liability | Injury | | Reporting& | | ☐893 Environmental Matters |
| **A. REAL PROPERTY** | **A. CIVIL RIGHTS** | **B. PRISONER PETITIONS** | Disclosure Act | **A. FEDERAL TAX SUITS** | ☐894 Energy Allocation Act |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motions to Vacate | ☐740 Railway Labor | ☐870 Taxes (US Plaintiff | ☐896 Freedom of |
| ☐220 Foreclosure | ☐442 Employment | Sentence | Act | or Defendant) | ☐900 Appeal of Fee Determination |
| ☐230 Rent, Lease & Ejectment | ☐443 Housing/ | Habeus Corpus | ☐790 Other Labor | ☐871 IRS-Third Party | Under Equal Access to |
| ☐240 Torts to Land | Accomodations | ☐530 General | Legislation | 28 USC 7808 | Justice |
| ☐245 Tort Product Liability | ☐444 Welfare | ☐535 Death Penalty | ☐791 Empl Ret inc | | ☐950 Constitutionality of |
| ☐290 All Other Real Property | ☐440 Other Civil Rights | ☐540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐550 Civil Rights | | | ☐990 Other Statutory Actions |
| | | | | | A or B |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☒1 Original Jurisdiction
- ☐2 Removed from State Court
- ☐3 Remanded from Appellate Court
- ☐4 Refiled
- ☐5 Transferred from another district (specify)
- ☐6 Multidistrict Litigation
- ☐7 Judge from Magistrate Judgment

Appeal to District

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** DEMAND $

☐ UNDER F.R.C.P. 23

Check YES only if demanded in complaint:

**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY NONE (See instructions):

JUDGE_____ DOCKET NUMBER_____

DATE 7/22/05

SIGNATURE OF ATTORNEY OF RECORD

PETER H. LEVITT, FLA. BAR NO. 650978

$250.00  924672  07/22/05

UNITED STATES DISTRICT COURT     FOR OFFICE USE ONLY     RECEIPT NO _____     AMOUNT _____

SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x    Index No. 103896/04

EUGENIA LORRET and NINA GOGITIDZE,

          Plaintiffs,

        -against-

CHRIS KOSACHUK & NLG, LLC

          Defendants.

-------------------------------------------------------------x

### JUDGMENT

    The issues in the above entitled action having duly come on to be heard before Justice Walter

B. Tolub, without a jury, at an IAS Part 15, of this Court on the 12th, 13th and 14th days of

September, 2006, and the issues having been duly tried on those days and the plaintiff,

EUGENIA LORRET, having duly appeared by Burstein & Blum, LLP, by Alvin M. Blum, Esq.,

her attorney, and the defendant, CHRIS KOSACHUK, having duly appeared pro se, and the

proofs of both parties having been adduced and the plaintiff's counsel and the defendant having

been duly heard, and the Court, after due deliberation, on the 6th day of November, 2006, having

made and filed Findings of Fact and Conclusions of Law in writing in favor of the plaintiff

EUGENIA LORRET and against the defendant CHRIS KOSACHUK and directing the entry of

judgment in the sum of $108,293.54 plus interest from November 25 2002, and the costs and

disbursements of the plaintiff having been duly taxed in the sum of $1,050.00.

    NOW, on motion of BURSTEIN & BLUM LLP, attorneys for the plaintiff, it is

    **ORDERED, ADJUDGED AND DECREED** that the plaintiff, EUGENIA LORRET,

residing at , recover of the defendant, CHRIS KOSACHUK, residing at , the sum of ONE

HUNDRED EIGHT THOUSAND TWO HUNDRED NINETY THREE DOLLARS AND

FIFTY FOUR CENTS ($108,293.54) Dollars, with interest from the 25th day of November, 2002

in the amount of _____ 44,388. _____ ($_____)

as of ___2/21/07___, together with ONE THOUSAND FIFTY DOLLARS

($1,050.00) costs and disbursements as taxed, making in all the sum of

X _____ $ 150,732. 45 _____ ($_____),

and that the plaintiff EUGENIA LORRET have execution therefor.

Judgment signed this 20 day of ~~November~~ DECEMBER, 2006.

Cy

Norman Goodman
Clerk

**FILED**

FEB 22 2007

COUNTY CLERK'S OFFICE
NEW YORK

**BURSTEIN & BLUM LLP**
**Robert A. Burstein, Esq.**
**21 EAST 40TH STREET SUITE 1802**
**NEW YORK, NY 10016**
**(212) 947-9416**
SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x      Index No. 103896/04
EUGENIA LORRET and
NINA GOGITIDZE

                          Plaintiffs,


                     -against-


CHRIS KOSACHUK & NLG, LLC,

                          Defendants.
-------------------------------------------------------------x

## BILL OF COSTS AND DISBURSEMENTS


COSTS (CPLR 8201)
Before note of issue                                              $200.00
After note of issue                                               200.00
Trial, inquest or assessment of damages                          300.00
                                    TOTAL                         $700.00

DISBURSEMENTS
Fee for Index Number (CPLR § 8018(a))                            $210.00
Request for Judicial Intervention                                95.00
Note of Issue                                                    30.00
Sheriff's fee on execution (CPLR 8301 [a][8])                    15.00

                          TOTAL:                                 $350.00

*I HEREBY CERTIFY THAT I HAVE ADJUSTED THIS BILL OF COSTS AT $____ FEB 22 2007 CLERK*

*Costs and disbursements taxed by court NG/AH*

STATE OF NEW YORK )
         ) SS.:
COUNTY OF NEW YORK )

  David M. Blum, after being duly sworn, deposes and says:

  I am a member of the firm of Burstein & Blum LLP, attorneys for the Plaintiff in this case. The foregoing disbursements were or will be necessarily made and are reasonable in amount.

                DAVID M. BLUM

Sworn to before me this
November 6, 2006

Notary Public

Robert A. Burstein
Notary Public, State of New York
No. 31-4726699
Qualified in New York County
Commission Expires July 31, 20__

FILED
FEB 22 2007
COUNTY CLERK'S OFFICE
NEW YORK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK         Index No.: 103896/04

---

EUGENIA LORRET and NINA GOGITIDZE,

                         Plaintiffs,

       -against-

CHRIS KOSACHUCK and NLG, LLC,

                         Defendants.

---

## NOTICE OF SETTLEMENT

### JUDGMENT & BILL OF COSTS AND DISBURSEMENTS

---

**BURSTEIN & BLUM LLP**
Attorney for Plaintiffs
Office and Post Office Address, Telephone
**21 EAST 40TH STREET**
**SUITE 1802**
**NEW YORK, NEW YORK 10016**
**(212) 947-9416**

---

**TO: Chris Kosachuck**

**Defendant Pro Se**

---

Service of a copy of the within             is hereby admitted.

Dated,          Attorney(s) for         ....................

---

    **Sir: Please take notice**

[ ]*NOTICE OF ENTRY*
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the
within named court on
[ ]*NOTICE OF SETTLEMENT*
that an order              which the within is a true copy will be
presented for
settlement to the HON.       one of the judges the within named Court, at
on the    day of   19   at      M.

Dated,

     Yours, etc.

To

Attorney(s) for

**BURSTEIN & BLUM LLP**
Attorney for Plaintiff
Office and Post Office Address
**21 EAST 40TH STREET**
**SUITE 1802**
**NEW YORK, NEW YORK 10016**
**(212) 947-9416**

FILED AND DOCKETED
FEB 2 2 2007
AT 3:24 P M
N.Y. CO. CLK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ *TOLUB* _____    PART _15_

Justice

*LORRET, EUGENIA, ETAL.*

- v -

*CHRIS KOSACHUCK, ETAL*

INDEX NO. _103896/04_

MOTION DATE _____

MOTION SEQ. NO. _08_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

**Cross-Motion:** ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion and motion seq. 007 are

Consolidated for disposition in accordance with the memorandum

decision.

**FILED**

MAY 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: _____

_TOLUB_    J.S.C.

Check one: ☐ FINAL DISPOSITION ☐ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

SCANNED ON 5/12/2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 15
----------------------------------------x
EUGENIA LORRET and NINA GOGITIDZE

              Plaintiffs,

      -against-

CHRIS KOSACHUK & NLG, LLC

              Defendants.
----------------------------------------x

**Index No.** 103896/04
**Mtn Seq.** 007,008

**FILED**

MAY 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

**WALTER B. TOLUB, J.:**

    Motion sequence 007 and sequence 008 are consolidated for disposition in accordance with the underlying decision. Motion sequence 007 is a motion to modify the judgment entered in this matter on February 22, 2007 by $60,000 to correct a ministerial error. Motion sequence 008 is a motion to vacate an order entered against the Plaintiff on March 21, 2008 for failure to appear.

<u>Facts</u>

    Plaintiffs commenced this action against the Defendants claiming that the Defendants diverted funds from the Plaintiffs' account for his personal benefit. The action as to NLG was eventually dismissed.

    In the Answer to the Complaint, and upon the three day trial of the action, the Defendant Chris Kosachuk admitted receiving two checks totaling $136,293.54 from the Plaintiff, and depositing said funds into his private account.

Upon the trial of the action it was proven that, inter alia, the Plaintiff, prior to the filing of the Complaint had demanded repayment from the Defendant of all sums which remained due and owing out of the $136,293.54 (See Findings of Fact and Conclusions of Law, Defendant's Ex. F).

At trial, Plaintiff further demanded repayment of $60,000.00 which the Defendant had surreptitiously wired out of Plaintiff's account. This court specifically and expressly stated that the claim for $60,000 would not be considered as part of this case. (Defendant's Ex. D and E, at 433-434). Although the $60,000 claim was rejected, this court inadvertently included the sum in its Findings of Fact and Conclusions of Law.

On March 7, 2008, Plaintiff was served with the instant order to show cause seeking a modification of the Judgment made and entered by the court. The matter was scheduled for a hearing on March 21, 2008. No one from Plaintiff's office appeared and Plaintiff now seeks to vacate the default and upon vacatur, opposes Defendant's motion for modification of the Judgment.

### Discussion

### Motion Sequence 008 to Vacate the Default

CPLR §5015(a) provides, inter alia, that the court which rendered the judgment or order may relieve a party from such order upon such terms as may be just upon the ground of excusable

2

default.  Courts have routinely recognized that there is a strong preference for adjudicating matters on the merits rather than relying on procedural issues.  (Campos v. New York City Health and Hospitals Corp., 307 AD2d 785 [1st Dept 2003]).  Where the party's default resulted from a mistake and an inadvertent assumption, courts have grated motions to vacate.  (Connolly v. Tuan, 12 Misc.3d 1172(A) [Sup. Ct. NY Co. June 23, 2006]).  Here, although Defendant could have been more thorough and diligent in managing its affairs, this court is inclined to vacate the March 21, 2008 Default Judgment so that the matter may be decided on the merits.

Motion Sequence 007 Motion To Modify the Judgment Entered

Defendant's motion for a modification of the Judgment entered on February 22, 2007 is also granted as this court made a ministerial error.  As is clear from the trial transcript, this court had no intention of even considering Plaintiff's $60,000 claim.  Plaintiff's claim was in fact expressly excluded from this matter.  (Defendant's Ex. D and E, at 433-434).

Furthermore, the court may correct any mistake, defect or irregularity in the papers or proceedings not affecting a substantial right of a party.  (CPLR §5019).  Clerical mistakes may be corrected, not substantive ones.  Here, there has been a clerical error and therefore the court is within its power to correct same.

3

Accordingly it is

ORDERED that Plaintiffs' motion to vacate the default judgment of march 21, 2008 is granted; and it is further

ORDERED that Defendant's motion is granted and that the Judgment entered in this case on February 22, 2007 be modified downward to exclude the sum of $60,000 and that Defendant is to pay all sums due and owing; and it is further

ORDERED that the Clerk of the court is directed to enter judgment accordingly.

This memorandum opinion constitutes the decision and order of the Court.

Dated:  5/7/08

HON. WALTER B. TOLUB, J.S.C.



4

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _BRAUN_       PART _23_
      *Justice*

GLOBAL RETAIL CONSULTANTS

INDEX NO. 116915/09

MOTION DATE 3/4/10

- v -

MOTION SEQ. NO. 001

NLG, LLC (et al.

MOTION CAL. NO. _____

The following papers, numbered 1 to _3_ were read on this motion to/for _injunctive and declaratory relief_

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    1

Answering Affidavits — Exhibits _____    2

Replying Affidavits _____    3

Cross-Motion: ☒ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion is granted on default, and the cross motion denied (no cross motion having been submitted by defendants) based upon defendants' failure to appear for oral argument on this date, to the extent that it is

ORDERED that, pending the determination of this action, defendants and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, are restrained and enjoined from (1) representing that Raymond Houle signed documents transferring ownership of plaintiff companies to either defendant, (2) holding themselves out as the owners, shareholders, members, agents, presidents, board of directors, management, or any other representative of either Global Retail Consultants, Inc. or World of Concepts, LLC, acting individually or through any corporation or other entity that they own, control or operate, and (3) binding or otherwise acting on behalf of Global Retail Consultants, Inc. and World of Concepts, LLC, with respect to, and toward any banking institution, federal credit union, a client of plaintiffs, debtor or creditor of plaintiffs, a government entity, a current or former employee, a private individual or company, or any other entity either individually or through any corporation or other entity that the defendants own, control or operate.

FILED

MAR 08 2010

NEW YORK
COUNTY CLERK'S OFFICE

ENTER: RB

Dated: _____ New York, New York, March 4, 2010      J.S.C.

Check one: ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST    ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LIZA HAZAN

CASE NO. 16-10389-BKC-AJC

CHAPTER 11

Debtor,

_____/

**AMENDED EMERGENCY MOTION TO REDUCE AND EXTEND**
**PLAN PAYMENTS TO SECURED VALENCIA**
**ESTATES COMMUNITY ASSOCIATION, INC.**

**Request for Emergency Hearing On May 3, 2022 deadline to cure**
**Valencia Estates Community Association, Inc's alleged Notice of Default.**

Reorganized and discharged Liza Hazan aka Elizabeth Hazan ("Hazan"), through undersigned counsel, files this Expedited Motion to Reduce and Extend Payments to Secured Creditor Valencia Estates Community Association, Inc. ("Valencia") and respectfully represents:

**Emergency Certificate**

Pursuant to Local Rule 9075-1 Movant certifies that she reasonably believes a hearing is needed on or before May 3, 2022 because that is the date Secured Creditor Valencia Estates Community Association, Inc. has threatened to accelerate the sums due under her Payment Plan as extended. The demand is attached marked exhibit A. A direct, immediate and substantial harm will occur to the interest of Debtor and the Debtor's ability to reorganize if the parties are not able to obtain an immediate resolution of the dispute.

Movant made a bona fide effort to resolve the matter without hearing by repeated emails to counsel for Valencia requesting an extension of time and payment of half of $20,312.50 or $10,156.25, and $10,156.25 every five months until completion of the Valencia's Plan Payment amounts, but as of the time of this filing many communications have occurred but it is up to the Board and no response has been forthcoming, and the motion must be filed in order to get a hearing prior to the deadline.

## Request To The Court

Movant is requesting a one-time extension and to pay now half of the Plan Payment amount, or $10,156.25 every six months until completion of the Valencia's Plan Payment amounts. Hazan requests this extension while her refinance goes through. Valencia has threatened to accelerate the amounts due on May 3, 2022, which movant has asked to extend to facilitate the refinancing.

Ms Hazan paid Valencia a special assessment at confirmation of $84,000 and another $4,062 at confirmation, $125,000 of Pre Petition Claim of $195,000 prepetition has been paid.

Ms Hazan has millions of dollars in equity in her Fisher Island Residence (since NLG's claim was completely wiped out and the market is on fire and the prices for the homes next door to Hazan's property are going pre construction price for more than $30 million). Also Ms Hazan has negotiated short payoffs with all the lien holders and is ready to close on her loan, and pay Valencia, but unfortunately the sanctioned Kosachuk is constantly filing lis pendens (7 of them) and the Delaware Adversary Bankruptcy case is dismissed without prejudice and the title company requires that the Delaware case be dismissed with prejudice. Ms Hazan is trying to get her equity out either by refinance or sale. Ms Hazan should be entitled to an extension at least

one now since the refinance is approved and that the issue will be cleared with the title company which will take a few weeks and she can pay off everything that is outstanding.

## INABILITY TO REFINANCE OR SELL FISHER ISLAND HOUSE

1. Hazan is the Reorganized and Discharged Debtor in this case and is the owner of the residence located at 6913 Valencia Drive, Fisher Island, Miami FL 33109.

2. Hazan is currently at the final stages of refinancing her Fisher Island property.

3. Hazan's lender has approved the refinance of her Fisher Island house and is ready to close and Hazan has hired Florida Attorney Michael Simon to issue title Commitment and close on her loan.

4. Attorney Michael Simon recently discovered a lis pendens filed on December 2, 2021 by non-creditor Chris Kosachuk under a caption of an adversary Delaware case filed in NLG's involuntary Chapter 7 bankruptcy case. Kosachuk was found in contempt by this Court along NLG and NLG's attorney Juan Ramirez, Jr for violating the Discharge Injunction and Confirmation Orders. He is appealing and filing other motions against Debtor. Kosachuk has now recorded a new 8th lis pendens on march 30, 2022.

5. Hazan intends on using the refinance proceeds to pay off the various liens in the house including Valencia's lien. Hazan's lender has approved the refinance of her house located at 6913 Valencia Drive, Fisher Island Miami FL 33109 and is ready to close. However, the title company still requires that the Delaware case filed by Chris Kosachuk be dismissed with prejudice and is refusing to clear title.

6. Kosachuk has further damaged Hazan and her Fisher Island property, slandering her title, diminishing the value of her property, making it impossible to sell or refinance her house or obtain a title insurance policy. Kosachuk has rendered Hazan's title impossible to insure.

7. The lis pendens filed by Kosachuk purportedly "relates to the lien based of NLG's mortgage recorded in the official records Book 25559 at Pages 4266-4272, CFN2007R0410013 and the Final Judgment of Foreclosure entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County recorded in Official Records Book 29902 at Pages 3737-3742, CFN 20150812181 on the following property in Miami-Dade County, Florida ….. 6913 Valencia Drive, Fisher Island, FL 33109". However, the Final Judgment entered on October 31, 2017 by this Court has ruled that the Gordo foreclosure judgment, dated December 4, 2015, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 and NLG's Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013 are **Satisfied and Paid of Record**. See the Final Judgment in ADV Case 2016 ap-01439-AJC D.E. ECF 238, which Final judgment was upheld in both District Court and in the Eleventh Circuit court of Appeals (ECF No 1047) and (ECF No 1067).

8. Hazan is incurring daily expenses, assessments from the two associations Valencia and Fisher Island Community Association, Inc. and Real estate Taxes. Hazan has negotiated settlements with the various lienholders and she needs to close on her refinance as soon as possible without any further delay.

9. Hazan is a Florida licensed realtor and is actively marketing her house and is offering it for sale and does have a few serious potential buyers.

10. On April 1, 2022, The Court granted Ms Hazan's Expedited Motion for Contempt, to Strike Lis Pendens and Impose Sanctions and for Entry of Final Judgment and Injunctive Relief. The Court Ordered the Lis Pendens filed by Kosachuk, on December 2, 2021 Dissolved, Discharged and Released, with prejudice, and deemed null and void. The Court also granted Hazan an injunction against Kosachuk, his representatives, agents and assigns from filing and

recording any further lis pendens against Hazan's property under any caption in any jurisdiction, or from taking any other action in contravention of the Final judgment entered in November 1, 2017, or the Confirmation Order or the Discharge Order.

11.     On April 1, 2022, Mr Simon wrote an email to the Senior Underwriter "Connie-Attached is the Court order related to the lis pendens on Hazan's home and enjoining Mr. Kosachuk from any further lis pendens filings, etc, on this property. Based upon the Delaware case dismissal and this Court order, may we proceed to show that Item #14 B-I has been satisfied? I look forward to your prompt reply.

12.     On April 4, 2022, The Senior Underwriting Counsel wrote an email to Michael Simon **"we are not willing to insure the title since the dismissal in the Delaware bankruptcy was without prejudice."**

13.     Although the Court dismissed the lis pendens with prejudice and deemed it null and void, Hazan is still unable to close on her loan and pay off Valencia.

### CARE ACT CHANGES TO THE BANKRUPTCY CODE

14.     On December 16, 2020, Hazan filed an Expedited Motion to Extend Payments to Secured creditor Valencia seeking relief under Care Act to extend her payments to 2025 and reducing the plan payments to $10,156.25 every five months instead of $20,312.50.

15.     Hazan is willing to pay $10,156.25 every six months until she is able to refinance or sell her home.

16.     Secured Creditor Valencia's outstanding plan payment claim is over-secured because of Hazan's successful reorganization and the fact that NLG's claim was completely wiped out. Also, the property has gained substantial equity in this strong booming Florida real estate market and luckily for Hazan, Fisher Island real estate developer Heinrich Von Hanau is

building 12 new Single Family homes at 68 Fisher Island, homes ranging from $32-$35 millions of dollars adjacent to Hazan's own Single Family home in Valencia Estates, Fisher Island.

17.     The Care Act permits Chapter 13 debtors with plans that have already been confirmed to modify them based on a material financial hardship related to the coronavirus pandemic, including extending payments under the plan for up to seven years after the initial plan payment was due.

18.     Hazan's undersigned attorney wrote to Valencia's attorney David Haber "In light of the Trump Care Act, my client is kindly asking if the Board will voluntarily agree to modify the balance of the payments so instead of paying every five months to the Association the amount of $20,250.00 my client is asking if she can pay $10,125.00 every five months."

19.     Valencia's proof of claim was $195,000. The balance owed today is approximatively $59,375.50.

20.     Hazan's first payment to Valencia Claim # 10 was in the amount of $4,062.00 at the effective date of the confirmed Fourth Amended Plan of Reorganization ("the Confirmed Plan"). See paragraph 6 of the executed stipulation and paragraph 7.02 Effective Date of Fourth Amended Plan. The effective date of this Plan was the fourteenth business day following the date of the entry of the order of confirmation. (Doc 563)

21.     Hazan's Fourth Amended Plan of Reorganization was confirmed on June 11, 2018. The effective date was June 29, 2018. Hazan has suffered a financial hardship caused by Covid-19 and is entitled to relief by this Court. The Care Act allows Hazan to extend payments to secured creditor Valencia under the plan for up to seven years after the initial plan payment was due or June 29, 2025.

**11 U.S. Code § 1127 (e) – MODIFICATION OF PLAN (Doc 691) § 17 (n).**

22.     Pursuant to 11 U.S. Code **§ 1127 (e)** If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor ……, to—

**(1)**
increase or reduce the amount of payments on claims of a particular class provided for by the plan;

**(2)**
extend or reduce the time period for such payments; or

**(3)**
alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

23.     On June 12, 2018 The court entered an Order granting Hazan's Fourth Amended Plan (Doc 562). The Court retained jurisdiction to modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the confirmation order. See Confirmation Order. (Doc 691) at 17 (n).

24.     Hazan's Fourth Amended Plan of Reorganization was confirmed on June 11, 2018. The effective date was June 29, 2018. The Care Act and 11 U.S. Code **§ 1127 (e)(1)(2)(3)** allow Hazan to extend and reduce payments to secured creditor Valencia Estates Community Association, Inc. under the plan for up to seven years after the initial plan payment was due or June 29, 2025 until completion.

25.     The Bankruptcy Code does not define "modification," and courts determine what constitutes a "modification" on a case-by-case basis. *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011).  Plan proponents may, however, have some control over what will constitute a "modification" during the post confirmation period because some courts will "turn to the [p]lan for guidance" in determining what constitutes a "modification." *In re*

*Johns-Manville Corp.*, 920 F.2d 121, 128 (2d Cir. 1990). Section 1127(b) provides that only the plan proponent or the reorganized debtor may propose a post confirmation plan modification. *See* 11 U.S.C. § 1127(b); *see also In re Sea Island Co.*, 486 B.R. 559, 570 (S.D. Ga. 2013) (liquidation trustee was not a plan proponent and, thus, section 1127(b) would prohibit him from making a "modification" to the plan); *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *6 (Bankr. S.D.N.Y. Jan. 24, 2008) (objecting shareholders were not proponents of confirmed plan and were not authorized under section 1127(b) to modify the confirmed plan); *In re Burk Dev. Co., Inc.*, 205 B.R. 778, 799 (Bankr. M.D. La. 1997) (United States Trustee did not have standing to seek modification of confirmed plan); *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 378 (Bankr. E.D. Pa. 1988) ("Here, the debtor was the plan proponent, and thus creditors are precluded from seeking a plan modification."); *In re Charterhouse, Inc.*, 84 B.R. 147, 151 (Bankr. D. Minn. 1988) (creditors' committee did not have standing to modify the plan because it was not a plan proponent).

26.     This limitation is even imposed on bankruptcy courts, which "cannot on [their] own modify a confirmed plan." *In re Boylan Int'l, Ltd.*, 452 B.R. at 48 (citing *In re Planet Hollywood Int'l*, 274 B.R. 391, 400 (Bankr. D. Del. 2001)); *see also Goodman v. Phillip R. Curtis Enters., Inc. (In re Goodman* ), 809 F.2d 228 (4th Cir. 1987) (bankruptcy court could not *sua sponte* modify plan, modification had to be sought by proper party under section 1127(b)).

27.     Perhaps the most import limitation imposed by section 1127(b) on post confirmation plan modifications is the open-ended requirement that "circumstances warrant" the modification.  Equitable considerations typically guide the court in its determination of whether circumstances warrant approval of a proposed modification, and some courts have concluded

that there were unforeseen changed circumstances that prompted the modification. For example, courts have determined that circumstances warranted post confirmation modification where a debtor farmer could no longer comply with a payment schedule set forth in the plan because the government changed a farm program upon which the debtor relied, *In re Olson*, 861 F.2d 188 (8th Cir. 1988), the reorganized debtor, due to not fault of its own, suffered a serious loss of revenue that rendered the plan unworkable, *In re Gene Dunavant & Son Dairy*, 75 B.R. 328 (Bankr. M.D. Tenn. 1987), and there was unforeseen and protracted trial and appellate litigation that prevented the liquidating trustee from prosecuting a malpractice claim that was the debtor's primary asset, *In re Boylan Int'l, Ltd.*, 452 B.R. 43 (Bankr. S.D.N.Y. 2011).

28.    Hazan has suffered a financial hardship caused by Covid-19 and is entitled to relief by this Court. Unforeseen changed circumstances caused by the Covid 19 prompt the modification.

**WHEREFORE**, for the reasons set forth above, Liza Hazan Hazan respectfully requests the Court Grant her Emergency Motion, entering an Order Reducing and Extending payments to Secured Creditor Valencia Estates Community Association, Inc. and directing her to pay $10,156.25 every six months until completion of the Valencia's Plan Payment amounts and grant such other and further relief as the Court deems appropriate.

April 29, 2022.

Respectfully submitted,

> **JOEL M. ARESTY, P.A.**
> *Attorneys for Liza Hazan*
> 309 1st Ave S
> Tierra Verde, FL 33715
> Fax: 800-559-1870
> Phone: (305) 904-1903
> S:/ Joel M. Aresty
> Joel M. Aresty, ESQ

Fla. Bar No. 197483

aresty@Mac.com

## **CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern

District of Florida and I am in compliance with the additional qualifications to practice in this court

set forth in Local Rules 2090-1(A).

Respectfully submitted,

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of foregoing was served via CM/ECF, email

or U.S. Mail to the parties on the attached service list as indicated on this 13th day of April, 2022.

> **JOEL M. ARESTY, P.A.**
> ***Attorneys for Liza Hazan***
> 309 1st Ave S
> Tierra Verde, FL 33715
> Fax: 800-559-1870
> Phone: (305) 904-1903
> S:/ Joel M. Aresty____
> Joel M. Aresty, ESQ
> Fla. Bar No. 197483
> aresty@Mac.com

## **SERVICE LIST**

**Via CM/ECF/Email**

16-10389-AJC Notice will be electronically mailed to:

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd

ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd

ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.

rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association

adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC

bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium

bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC

jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC

jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.

ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.

dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association

khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan

tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan

tdmckeown@mckeownpa.com

Office of the US Trustee

USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.

Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

16-10389-AJC Notice will be electronically sent and mailed to:

Chris Kosachuk 854 Pheasant Run Rd. West Chester, PA 19382

chriskosachuk@gmail.com

**REBECCA N. CASAMAYOR, ESQ.**
305-379-2400 Ext.117
rcasamayor@haber.law

HABER LAW

## NOTICE OF DEFAULT AND DEMAND TO CURE

April 6, 2022

**VIA E-MAIL ONLY:**
David Langley, Esq.
E-mail: dave@flalawyer.com

**VIA E-MAIL ONLY:**
Joel Aresty, Esq.
E-mail: Aresty@Mac.com

RE:   **In re: Liza Hazan, Debtor**
       **Case No.: 16-10389-AJC – Chapter 11**

Dear Messrs. Langley and Aresty:

As you know, this Law Firm represents the interests of Valencia Estates Homeowners' Association, Inc. (the "Association") in the above-styled bankruptcy proceeding filed by your client, Elizabeth Hazan ("Hazan").

Pursuant to Paragraph 6 of the Stipulation of Settlement Claim 10 executed by Hazan and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Court on November 17, 2016 [D.E. 302] (the "Stipulation"), Hazan was to make payments to the Association under her bankruptcy plan (the "Plan") in the amount of $20,312.50 every five (5) months following the Effective Date (hereinafter the "Plan Payments"). A copy of the Stipulation and Order approving same are attached hereto as **Composite Exhibit "1"** for your reference.[1]

As you know, this is not the first Notice of Default the Association has had to send as a result of Hazan's failure to comply with the terms of the Stipulation and Plan. **Hazan has now failed to make the latest Plan Payment in the amount of $20,312.50, which was due on April 2, 2022.[2] As such, Hazan is clearly in default of the Stipulation and the Plan.**

Pursuant to Paragraph 10 of the Stipulation, this correspondence shall constitute the Association's notice and demand for Hazan to cure her default within fourteen (14) days of the date of this letter, i.e. - - on or before April 20, 2022 ("Cure Period"). Wire instructions for our Law Firm's Trust Account for the purpose of forwarding payment are included below.

---

[1] Hazan was also required under the Stipulation and Plan to pay all ongoing monthly and/or special assessments to the Association ("Ongoing Assessments"). *See* **Composite Exhibit "1"** at Paragraph 7. As you may be aware, Hazan has failed to fully and timely pay her Ongoing Assessments to the Association since on or about August 2019 to present, resulting in the Association filing a Claim of Lien against the property. However, our understanding is that neither of you represent Hazan with respect to her failure to pay the Ongoing Assessments and/or the Association's Claim of Lien in connection with same, so we are not including those maters in this letter.
[2] While Hazan reduced her Plan payments to $10,156.25 for the 2021 year due to alleged financial hardship caused by Covid-19, those Plan payments were to revert to the original amount under the Stipulation starting in 2022.

---

*HAZAN - NOTICE OF DEFAULT AND DEMAND TO CURE*
*April 6, 2022*
*Page 2 of 2*

Should Hazan fail to pay the $20,312.50 Plan payment within the Cure Period, pursuant to Paragraph 10 of the Stipulation, the remaining balance due of the Plan Payments shall be automatically accelerated, and the Association shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default, along with a request for reasonable attorney's fees and costs for its enforcement of the Stipulation. Under Paragraph 10 of the Stipulation, Hazan has already waived any and all defenses to the foregoing.

This correspondence reserves all rights of the Association, without limitation.

Sincerely,

**HABER LAW, P.A.**

/s/ *Rebecca Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

cc:    Mercy Rodriguez, Property Manager [via e-mail]
       Jason Giller, Board Member [via e-mail]

**<u>WIRE TRANSFER INSTRUCTIONS</u>:**

Haber Law, P.A. IOTA Trust Account

First Horizon Bank
165 Madison Avenue
Memphis, TN 38103

ABA #: 084 000 026
ACCOUNT: 003-5040167
SWIFT#: FTBMUS44

RE:    3706.005 (Hazan)

Composite Exhibit "1"

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:

                                     CaseNo:16-10389AJC
                                     Chapter 11

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR._____/**

**STIPULATION OF SETTLEMENT CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

      2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

      3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

      4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

      5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

            A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

            B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

            C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

      6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees & costs absent a breach by Debtor as referenced below in paragraph 10 below E.H*

7.    Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.    Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.    Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.    If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.    Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*Valencia State Court Action, claims, counterclaims, All defenses, proposed counterclaims + proposed third party claims against Valencia, it's agents, managers, attorneys, members + officers, raised or unraised, are released & waived. E.H*

stipulated treatment.

12.   This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan


**Certificate Of Service**


**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

# UNITED STATES BANKRUPTCY COURT
## THE SOUTHERN DISTRICT OF
## FLORIDA MIAMI DIVISION
### www.flsb.uscourts.gov

IN RE:

                                                   **CaseNo:16-10389AJC**
                                                   **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

__DEBTOR._____/

### AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

      THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10 (Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter the "Stipulation").  The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

Exhibit 2

OFF. REC BK.
21004PG0400

## ARTICLE 6.

### COVENANT FOR MAINTENANCE ASSESSMENTS

6.1.    Creation of the Lien and Personal Obligation of the Assessments.  Except as provided elsewhere herein, the Developer (and each party joining in any supplemental declaration), for all Lots within the Neighborhood, hereby covenants and agrees, and each Owner of any Lot by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association annual assessments and charges for the operation of the Association and the maintenance, management, operation and insurance of the Common Properties as provided elsewhere herein, including such reasonable reserves as the Association may deem necessary, capital improvement assessments as provided elsewhere herein, assessments for maintenance, bulk cable and/or satellite television or communications charges and all other charges and assessments hereinafter referred to or lawfully imposed by the Association, all such assessments to be fixed, established and collected from time to time as herein provided. In addition, special assessments may be levied against particular Owners and Lots for fines, expenses incurred against particular Lots and/or Owners to the exclusion of others and other charges against specific Lots or Owners as contemplated in this Declaration. The annual, special and other assessments, together with interest thereon and costs of collection thereof as are hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with such interest thereon and costs of collection thereof as are hereinafter provided, shall also be the personal obligation of the person who is the Owner of such property at the time when the assessment fell due and all subsequent Owners until paid, except as provided in Section 6.9 below.

6.2.    Rate of Assessment.  Except as provided herein with respect to special assessments which may be imposed on one or more Lots or Homes and Owners to the exclusion of others and in Section 6.9 below, all assessments imposed by the Association shall be imposed against all Lots subject to its jurisdiction in accordance with the percentages set forth on **Exhibit "E"** attached hereto and made a part hereof.  Reference herein to assessments shall be understood to include reference to any and all of said charges whether or not specifically mentioned.

6.3.    Purpose of Assessments.  The regular assessments levied by the Association shall be used exclusively for the purposes expressed in Section 6.1 above.

6.4.    Special Assessments.  In addition to the regular and capital improvement assessments which are or may be levied hereunder, the Association (through the Board of Directors) shall have the right to levy special assessments against an Owner(s) to the exclusion of other Owners for: (a) the repair or replacement of damage to any portion of the Common Properties (including, without limitation, improvements and landscaping thereon) caused by the misuse, negligence or other action or inaction of an Owner or such Owner's Members' Permittee(s); or (b) the costs of work performed by the Association in accordance with Article **4** and/or Article **5** of this Declaration.  Any such special assessment shall be subject to all of the applicable provisions of this Article including, without limitation, lien filing and foreclosure procedures and late charges and interest.  Any special assessment levied hereunder shall be due within the time specified by the Board of Directors in the action imposing such assessment.

6.5.    Capital Improvements.  Funds which, in the aggregate, exceed twenty percent (20%) of the total amount of the current operating budget of the Association in any one fiscal year, and are necessary for the addition of capital improvements (as distinguished from

OFF. REC BK.

21004PG0401

repairs and maintenance) relating to the Common Properties and which have not previously been collected as reserves or are not otherwise available to the Association (other than by borrowing), shall be levied by the Association as special assessments only upon approval of a majority of the Board of Directors of the Association and upon approval by two-thirds (2/3) favorable vote of the Members of the Association voting at a meeting or by ballot as may be provided in the By-Laws of the Association. Additionally, the Association may adopt a capital improvement assessment upon approval of a majority of the Board of Directors of the Association for reconstruction as provided in Section 11.1 below.

6.6.   Date of Commencement of Annual Assessments; Due Dates.   The annual regular assessments provided for in this Article shall commence on the first day of the month next following the recordation of these covenants and shall be applicable through September 30 of such year. Each subsequent annual assessment shall be imposed for the year beginning October 1 and ending September 30. The annual assessments shall be payable in advance, in monthly installments, or in annual, semi-annual or quarterly installments if so determined by the Board of Directors of the Association (absent which determination they shall be payable monthly). The assessment amount (and applicable installments) may be changed at any time by said Board from that originally stipulated or from any other assessment that is in the future adopted. The original assessment for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, every six (6) months), but the amount of any revised assessment to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year. The due date of any special assessment or capital improvement assessment shall be fixed in the Board resolution authorizing such assessment.   Notwithstanding anything herein contained to the contrary, no Lot shall be subject to assessment until such time as a Home has been constructed thereon and received a certificate of occupancy from the applicable governmental authority.

6.7.   Duties of the Board of Directors.  The Board of Directors of the Association shall fix the date of commencement and the amount of the assessment against each Lot subject to the Association's jurisdiction for each assessment period, to the extent practicable, at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the Lots and assessments applicable thereto which shall be kept in the office of the Association and shall be open to inspection by any Owner. Written notice of the assessment shall thereupon be sent to every Owner subject thereto thirty (30) days prior to payment of the first installment thereof, except as to special assessments. In the event no such notice of a change in the assessments for a new assessment period is given, the amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein.  Subject to other provisions hereof, the Association shall upon demand at any time furnish to any Owner liable for an assessment a certificate in writing signed by an officer of the Association, setting forth whether such assessment has been paid as to any particular Lot. Such certificate shall be conclusive evidence of payment of any assessment to the Association therein stated to have been paid. The Association, through the action of its Board of Directors, shall have the power, but not the obligation, to enter into an agreement or agreements from time to time with one or more persons, firms or corporations (including affiliates of the Developer) for management services.  The Association shall have all other powers provided in its Articles of Incorporation and By-Laws.

6.8.   Effect of Non-Payment of Assessment; the Personal Obligation; the Lien; Remedies of the Association.  If the assessments (or installments) provided for herein are not paid on the date(s) when due (being the date(s) specified herein), then such assessments (or installments) shall become delinquent and shall, together with late charges, interest and

the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the Lot which shall bind such property in the hands of the then Owner, his heirs, personal representatives, successors and assigns. Except as provided in Section 6.9 below to the contrary, the personal obligation of the then Owner to pay such assessment shall pass to his successors in title and recourse may be had against either or both. If any installment of an assessment is not paid within fifteen (15) days after the due date, at the option of the Association, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest as provided herein but shall not be subject to additional late charges, provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid), or the next twelve (12) months' worth of installments may be accelerated and become immediately due and payable in full and all such sums shall bear interest from the dates when due until paid at the highest lawful rate and the Association may bring an action at law against the Owner(s) personally obligated to pay the same, may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the Lot on which the assessments and late charges are unpaid, may foreclose the lien against the Lot on which the assessments and late charges are unpaid, or may pursue one or more of such remedies at the same time or successively, and attorneys' and paralegals' fees and costs actually incurred preparing and filing the claim of lien and the complaint, if any, and prosecuting same, in such action (and any appeals therefrom) shall be added to the amount of such assessments, late charges and interest, and in the event a judgment is obtained, such judgment shall include all such sums as above provided and attorneys' and paralegals' fees actually incurred together with the costs of the action, through all applicable appellate levels. In the case of an acceleration of the next twelve (12) months' worth of installments, each installment so accelerated shall be deemed, initially, equal to the amount of the then most current delinquent installment, provided that if any such installment so accelerated would have been greater in amount by reason of a subsequent increase in the applicable budget, the Owner of the Lot whose installments were so accelerated shall continue to be liable for the balance due by reason of such increase and special assessments against such Lot shall be levied by the Association for such purpose. In addition to the rights of collection of assessments stated in this Section, any and all persons acquiring title to or an interest in a Lot as to which the assessment is delinquent, including without limitation persons acquiring title by operation of law and by judicial sales, shall not be entitled to the occupancy of such Lot or the enjoyment of the Common Properties until such time as all unpaid and delinquent assessments due and owing from the selling Owner have been fully paid; provided, however, that the provisions of this sentence shall not be applicable to the mortgagees and purchasers contemplated by Section 6.9 below. It shall be the legal duty and responsibility of the Association to enforce payment of the assessments hereunder. Failure of the Association to send or deliver bills shall not, however, relieve Owners from their obligations hereunder. All assessments, late charges, interest, penalties, fines, attorney's fees and other sums provided for herein shall accrue to the benefit of the Association. Owners shall be obligated to deliver the documents originally received from the Developer, containing this and other declarations and documents, to any grantee of such Owner.

6.9.  Subordination of the Lien. The lien of the assessments provided for in this Article shall be subordinate to real property tax liens and to the lien of any first mortgage recorded prior to recordation by the Association of a claim of lien held by a Mortgage Lender and which is now or hereafter placed upon any property subject to assessment; provided, however, that any such Mortgage Lender when in possession or any receiver, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any such Mortgage Lender acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under such purchaser or Mortgage Lender, shall hold title subject to the liability and lien

of any assessment coming due after such foreclosure (or conveyance in lieu of foreclosure). Any unpaid assessment which cannot be collected as a lien against any Lot by reason of the provisions of this Section shall be deemed to be an assessment divided equally among, payable by and a lien against all Lots subject to assessment by the Association, including the Lots as to which the foreclosure (or conveyance in lieu of foreclosure) took place.

6.10.   Effect on Developer. Notwithstanding any provision to the contrary contained in this Declaration, for as long as Developer (or any of its affiliates) is the Owner of any Lot, Developer shall have the option, in its sole discretion, to (a) pay assessments on the Lots owned by it in like manner as paid by other Owners; or (b) not paying assessments on Lots owned by Developer, and in lieu thereof, funding any resulting deficit in the Association's operating expenses (exclusive of any capital costs and reserves) not produced by assessments receivable from Owners other than Developer and any other income receivable by the Association. The deficit to be paid under option (b) above shall be the difference between (i) actual operating expenses of the Association (exclusive of capital improvement costs and reserves) and (ii) the sum of all monies receivable by the Association (including, without limitation, assessments, interest, late charges, fines and incidental income) and any surplus carried forward from the preceding year(s). Developer may from time to time change the option stated above under which Developer is making payments to the Association by written notice to such effect to the Association. When all Lots within the Neighborhood are sold and conveyed to purchasers, neither the Developer, nor its affiliates, shall have further liability of any kind to the Association for the payment of assessments, deficits or contributions.

6.11.   Association Funds. The portion of all regular assessments collected by the Association for reserves for future expenses, if any, and the entire amount of all special assessments, shall be held by the Association for the Owners of all Lots, as their interests may appear, and may be invested in interest bearing accounts or in certificates of deposit or other like instruments or accounts available at banks or savings and loan institutions the deposits of which are insured by an agency of the United States.

## ARTICLE 7.

## CERTAIN RULES AND REGULATIONS

7.1.   Applicability. The provisions of this Article **7** shall be applicable to all of the Lots, Homes and Common Properties of the Neighborhood.

7.2.   Land Use and Building Type. No Lot shall be used except for single family residential purposes, unless otherwise approved by the Developer. No building constructed on a Lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any Lot other than one Home and one cabana house. Temporary uses by Developer and its affiliates for model homes, guest accommodations, sales displays, parking lots, sales offices and other offices, or any one or combination of such uses, shall be permitted at all times. No improvements may be made to a Lot, or changes thereafter made (unless such changes are made by the Developer) without the consent of the Architectural Control Board (as hereinafter defined).

7.3.   Construction Activity. Unless otherwise approved in advance by the Architectural Control Board, no construction or construction related activities may be undertaken: (a) on legal holidays recognized by the Federal Government (or other holidays designated as such by Declarant), (b) Sundays, or (c) outside the hours of 8:00 a.m through 6:00 p.m., Monday through Friday, or 9:00 a.m through 6:00 p.m. on Saturdays.

OFF. REC BK. 21004 PG 0403

Exhibit "3"

## Valencia - Unit 6913 (Hazan)

| Date | Item | Assessment | Interest | Late Fees | Ass'n Costs | Atty Fees | Atty Costs | Balance | Pymt |
|------|------|-----------|----------|-----------|-------------|-----------|------------|---------|------|
| 7/31/2019 | Opening Balance | $ - | | $ - | $ - | $ - | $ - | | $ - |
| 8/1/2019 | Assessment | $ 1,425.44 | | | | | | 1,425.44 | |
| 8/16/2019 | Interest | | 21.38 | | | | | 1,446.82 | |
| 8/16/2019 | Late Fees | $ | | 25.00 | | | | 1,471.82 | |
| 9/1/2019 | Assessment | $ 1,425.44 | | | | | | 2,897.26 | |
| 9/16/2019 | Interest | | 42.76 | | | | | 2,940.02 | |
| 9/16/2019 | Late Fees | $ | | 25.00 | | | | 2,965.02 | |
| 10/1/2019 | Assessment | $ 1,423.00 | | | | | | 4,388.02 | |
| 10/3/2019 | Payment | $ (2,731.86) | (64.14) | (50.00) | | | | 1,542.02 | $ 2,846.00 |
| 10/16/2019 | Interest | $ | 23.13 | | | | | 1,565.16 | |
| 10/16/2019 | Late Fees | $ | | 25.00 | | | | 1,590.16 | |
| 11/1/2019 | Assessment | $ 1,423.00 | | | | | | 3,013.16 | |
| 11/16/2019 | Interest | $ | 44.48 | | | | | 3,057.63 | |
| 11/16/2019 | Late Fees | $ | | 25.00 | | | | 3,082.63 | |
| 12/1/2019 | Assessment | $ 1,423.00 | | | | | | 4,505.63 | |
| 12/16/2019 | Interest | $ | 65.82 | | | | | 4,571.45 | |
| 12/16/2019 | Late Fees | $ | | 25.00 | | | | 4,596.45 | |
| 1/1/2020 | Assessment | $ 1,423.00 | | | | | | 6,019.45 | |
| 1/16/2020 | Interest | $ | 87.17 | | | | | 6,106.62 | |
| 1/16/2020 | Late Fees | $ | | 25.00 | | | | 6,131.62 | |
| 2/1/2020 | Assessment | $ 1,423.00 | | | | | | 7,554.62 | |
| 2/16/2020 | Interest | $ | 108.51 | | | | | 7,663.13 | |
| 2/16/2020 | Late FEes | $ | | 25.00 | | | | 7,688.13 | |
| 3/1/2020 | Assessment | $ 1,423.00 | | | | | | 9,111.13 | |
| 3/16/2020 | Interest | $ | 129.86 | | | | | 9,240.98 | |
| 3/16/2020 | Late Fees | $ | | 25.00 | | | | 9,265.98 | |
| 3/31/2020 | Payment | $ (2,241.91) | (458.97) | (150.00) | | | | 6,415.10 | $ 2,850.88 |
| 3/31/2020 | Payment | $ (2,850.88) | | | | | | 3,564.22 | $ 2,850.88 |
| 4/1/2020 | Assessment | $ 1,423.00 | | | | | | 4,987.22 | |
| 4/16/2020 | Interest | $ | 74.81 | | | | | 5,062.03 | |
| 4/16/2020 | Late Fees | $ | | 25.00 | | | | 5,087.03 | |

| Date / Description | Assessment | Interest | Late Fees | | Attorney Fees | Costs | Balance |
|---|---|---|---|---|---|---|---|
| 5/1/2020 Assessment | $ 1,423.00 | | | | | | $ 6,510.03 |
| 5/16/2020 Interest | | $ 96.15 | | | | | $ 6,606.18 |
| 5/16/2020 Late Fees | | | $ 25.00 | | | | $ 6,631.18 |
| 6/1/2020 Assessment | $ 1,423.00 | | | | | | $ 8,054.18 |
| 6/16/2020 Interest | | $ 117.50 | | | | | $ 8,171.68 |
| 6/16/2020 Late Fees | | | $ 25.00 | | | | $ 8,196.68 |
| 7/1/2020 Assessment | $ 1,423.00 | | | | | | $ 9,619.68 |
| 7/16/2020 Interest | | $ 138.84 | | | | | $ 9,758.53 |
| 7/16/2020 Late Fees | | | $ 25.00 | | | | $ 9,783.53 |
| 8/1/2020 Assessment | $ 1,423.00 | | | | | | $ 11,206.53 |
| 8/16/2020 Interest | | $ 160.19 | | | | | $ 11,366.71 |
| 8/16/2020 Late Fees | | | $ 25.00 | | | | $ 11,391.71 |
| 9/1/2020 Assessment | $ 1,423.00 | | | | | | $ 12,814.71 |
| 9/16/2020 Interest | | $ 181.53 | | | | | $ 12,996.25 |
| 9/16/2020 Late Fees | | | $ 25.00 | | | | $ 13,021.25 |
| 10/1/2020 Assessment | $ 1,726.16 | | | | | | $ 14,747.41 |
| 10/7/2020 Attorney' Fees & Costs | | | | | $ 462.50 | 0.40 | $ 15,210.31 |
| 10/16/2020 Interest | | $ 207.43 | | | | | $ 15,417.73 |
| 10/16/2020 Late Fees | | | $ 25.00 | | | | $ 15,442.73 |
| 11/1/2020 Assessment | $ 1,726.16 | | | | | | $ 17,168.89 |
| 11/16/2020 Interest | | $ 233.32 | | | | | $ 17,427.21 |
| 11/16/2020 Late Fees | | | $ 25.00 | | | | $ 17,427.21 |
| 12/1/2020 Assessment | $ 1,726.16 | | | | | | $ 19,153.37 |
| 12/16/2020 Interest | | $ 259.21 | | | | | $ 19,412.58 |
| 12/16/2020 Late Fees | | | $ 25.00 | | | | $ 19,437.58 |
| 12/16/2020 Attorney's Fees | | | | | $ 1,218.75 | | $ 20,656.33 |
| TOTALS: | $ 17,280.71 | $ 1,468.97 | $ 225.00 | $ - | $ 1,681.25 | 0.40 | |

Exhibit "4"

**Valencia Estates - Annual Interest on Claim 10 Due from Debtor Hazan**

| Date | Item | Assessment | Interest | Balance | Pymt |
|---|---|---|---|---|---|
| 7/2/2018 | Opening Balance | $ - | $ - | $ | $ - |
| 7/2/2018 | Claim 10 | 195,000.00 | | 195,000.00 | |
| 7/2/2018 | Effective Date Payment | (4,062.00) | | 190,938.00 | 4,062.00 |
| 7/31/2018 | July Interest | | 557.54 | 191,495.54 | |
| 8/31/2018 | August Interest | | 557.54 | 192,053.08 | |
| 9/30/2018 | September Interest | | 557.54 | 192,610.62 | |
| 10/12/2018 | First Payment | (20,312.50) | | 172,298.12 | 20,312.50 |
| 10/31/2018 | October Interest | | 498.23 | 172,796.34 | |
| 11/30/2018 | November Interest | | 498.23 | 173,294.57 | |
| 12/31/2018 | December Interest | | 498.23 | 173,792.80 | |
| 1/31/2019 | January Interest | | 498.23 | 174,291.02 | |
| 2/28/2019 | February Interest | | 498.23 | 174,789.25 | |
| 3/31/2019 | March Interest | | 498.23 | 175,287.48 | |
| 4/30/2019 | April Interest | | 498.23 | 175,785.70 | |
| 5/3/2019 | Second Payment | (20,312.50) | | 155,473.20 | 20,312.50 |
| 5/31/2019 | May Interest | | 438.91 | 155,912.12 | |
| 6/30/2019 | June Interest | | 438.91 | 156,351.03 | |
| 7/30/2019 | July Interest | | 438.91 | 156,789.94 | |
| 7/30/2019 | Interest Payment | | (6,038.03) | 150,751.91 | |
| 8/31/2019 | August Interest | | 438.91 | 151,190.83 | |
| 9/30/2019 | September Interest | | 438.91 | 151,629.74 | |
| 10/8/2019 | Third Payment | (20,312.50) | | 131,317.24 | 20,312.50 |
| 10/31/2019 | October Interest | | 379.60 | 131,696.84 | |
| 11/30/2019 | November Interest | | 379.60 | 132,076.44 | |
| 12/31/2019 | December Interest | | 379.60 | 132,456.05 | |
| 1/31/2020 | January Interest | | 379.60 | 132,835.65 | |
| 2/29/2020 | February Interest | | 379.60 | 133,215.25 | |
| 3/13/2020 | Fourth Payment | (20,312.50) | | 112,902.75 | 20,312.50 |
| 3/31/2020 | March Interest | | 320.29 | 113,223.04 | |
| 4/30/2020 | April Interest | | 320.29 | 113,543.33 | |
| 5/31/2020 | May Interest | | 320.29 | 113,863.62 | |

| | | | |
|---|---|---|---|
| 6/30/2020 | June Interest | 320.29 | 114,183.91 |
| 7/30/2020 | July Interest | (4,495.91) | 109,688.00 |
| 7/27/2020 | Interest Payment | 320.29 | 110,008.28 |
| 8/14/2020 | Fifth Payment | (20,312.50) | 89,695.78 |
| 8/30/2020 | August Interest | 260.98 | 89,956.76 |
| 9/30/2020 | September Interest | 260.98 | 90,217.74 |
| 10/31/2020 | October Interest | 260.98 | 90,478.71 |
| 11/30/2020 | November Interest | 260.98 | 90,739.69 |
| **TOTAL DUE:** | | $ 89,375.50 | $ 1,364.19 |

20,312.50

**Composite Exhibit "5"**

# JUDGMENT LIEN AMENDMENT STATEMENT

THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA
STATUTES, TO AMEND INFORMATION SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE.

**DO NOT PHOTOCOPY THIS FORM PRIOR TO USE.
BAR CODE MUST BE LEGIBLE.**

### JUDGMENT DEBTOR(S)

1. JUDGMENT DEBTOR (DEFENDANT) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

   Elizabeth Hazan
   _____
   INDIVIDUAL OR BUSINESS ENTITY NAME

   6913 Valencia Drive
   _____
   MAILING ADDRESS

   Miami Beach                    FL        33109
   _____         ____      _____
   CITY                           ST        ZIP

2. ADDITIONAL JUDGMENT DEBTOR, IF APPLICABLE:

   _____
   INDIVIDUAL OR BUSINESS ENTITY NAME

   _____
   MAILING ADDRESS

   _____         ____      _____
   CITY                           ST        ZIP

### JUDGMENT CREDITOR(S)

3. JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

   Valencia Estates Homeowners Association, Inc.
   _____
   CREDITOR NAME(S)

   42205 Fisher Island Drive
   _____
   MAILING ADDRESS

   Fisher Island                  FL        33109
   _____         ____      _____
   CITY                           ST        ZIP

**THIS SPACE FOR USE BY FILING OFFICER**

4. J17000156085
   _____
   ENTER FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE

5. 3/23/17
   _____
   DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE

6.
   [✓] AMENDMENT — THE JUDGMENT LIEN BEARING THE FILE NUMBER INDICATED ABOVE IS AMENDED AS SET FORTH BELOW.

   [✓] PARTIAL RELEASE — THE JUDGMENT LIEN BEARING THE FILE NUMBER INDICATED ABOVE HAS BEEN PARTIALLY RELEASED AND THE VALUE OF THE LIEN REMAINING UNPAID AS OF THE DATE OF THIS STATEMENT $ 89,375.50 .

   [ ] ASSIGNMENT — ALL OF THE JUDGMENT CREDITOR'S RIGHTS UNDER THE JUDGMENT LIEN CERTIFICATE INDICATED ABOVE HAVE BEEN ASSIGNED TO THE NEW JUDGMENT LIENOWNER WHOSE NAME AND ADDRESS ARE LISTED BELOW.

   [ ] TERMINATION — THE JUDGMENT CREDITOR NO LONGER CLAIMS A LIEN ON THE PERSONAL PROPERTY UNDER THE JUDGMENT LIEN BEARING THE NUMBER INDICATED ABOVE.

7. SHOW NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE: (ATTACH PAGE, IF NECESSARY)

   Amend applicable interest rate from 4.91% to 3.5%

**UNDER PENALTY OF PERJURY,** I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Judgment Lien Amendment Statement for filing.

_____
Signature of Judgment Creditor or Authorized Representative

Rebecca Newman Casamayor, Esq.
_____
Printed Name

OWNER'S ATTORNEY OR AUTHORIZED REPRESENTATIVE TO WHOM ACKNOWLEDGMENT/CERTIFICATION OF FILING WILL BE MAILED:

Rebecca Newman Casamayor, Esq.
_____
NAME

251 NW 23rd Street
_____
MAILING ADDRESS

Miami                          FL        33127
_____         ____      _____
CITY                           ST        ZIP

**NON-REFUNDABLE PROCESSING FEE:**

JUDGMENT LIEN AMENDMENT STATEMENT    $20.00              EACH ATTACHED PAGE, IF NECESSARY    $ 5.00
IF MORE THAN ONE DEBTOR BEING ADDED, FOR EACH ADDITIONAL    $5.00

**CERTIFIED COPY REQUESTED   $10.00**  [ ]

**Division of Corporations • P.O. Box 6250 • Tallahassee, Fl 32314 • 850-245-6011
Make Checks Payable to: Florida Department of State**

CR2E094 (10/09)

**Rebecca Newman Casamayor**

| | |
|---|---|
| **From:** | donotreply@sunbiz.org |
| **Sent:** | Wednesday, December 16, 2020 4:37 PM |
| **To:** | Rebecca Newman Casamayor |
| **Subject:** | Sunbiz.org Payment Receipt |

Thank you for submitting your payment to Florida Department of State, Division of Corporations. This email will serve as confirmation that your payment was received by our office.
Your filing will be posted on our website http://www.sunbiz.org/ in the order received.

The transaction information is listed below:

```
Receipt Number:          3795076660
Transaction Date/Time:   12/16/2020 04:37 PM
Card Number:
Card Type:
Approval Code:           295511
Payment Amount:          $20.00
Tracking Number:         J20000404588
Document Number:         NEW
```

1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No.: 16-10389-AJC** |
| **LIZA HAZAN** a/k/a Elizabeth Hazan, | **Chapter 11** |
| Debtor. | |

**SECURED CREDITOR, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION,**
**INC.'S OBJECTION TO DEBTOR'S AMENDED EMERGENCY MOTION TO**
**REDUCE AND EXTEND PLAN PAYMENTS [D.E. 1097]**
**AND**
**ASSOCIATION'S MOTION FOR ADDITIONAL STAY RELIEF TO PROCEED TO**
**AUCTION IN STATE COURT FORECLOSURE ACTION ON POST-PETITION**
**ASSESSMENTS**

Creditor, Valencia Estates Homeowners' Association, Inc. (the "Association"), by and through its undersigned counsel, hereby files this its Objection to Debtor's Emergency Motion to Reduce and Extend Plan Payments [D.E. 1097] and its Motion for Additional Stay Relief to Proceed to Auction in State Court Foreclosure Action on Post-Petition Assessments, and in support thereof, states the following:

## I.    BACKGROUND

**A. Original Payments due to Association under the Parties' Stipulation and the Plan Approved by this Court.**

1.      On August 17, 2016, the Association and Debtor executed a Stipulation of Settlement Claim 10 [D.E. 209-A], which was approved by the Court on November 17, 2016 [D.E. 302] (hereinafter the "Stipulation"). A copy of the Stipulation and Order approving same are attached hereto and incorporated herein as **Composite Exhibit "A"**.

2.      Under the Stipulation, the parties agreed to resolve the Association's claim against Debtor in the amount of $195,000.00, which settled amounts owed by the Debtor for past due

maintenance assessments and related charges dating as far back as 2012. *See* **Composite Exhibit "A"** at Paragraph 6.

3.       The Stipulation requires Debtor to make payments to the Association of $20,312.50 every five (5) months, as well as annual interest payments at the rate of 3.5%, until Claim 10 is fully paid off over the forty-eight (48) months commencing after the Effective Date, i.e. - - until on or about June of 2022 (the "Plan Payments"). *See id*.

4.       Under the Stipulation, Debtor is also required to make payment for ongoing monthly and/or special assessments as required by the Association's Declaration of Covenants ("Declaration"). *See* **Composite Exhibit "A"** at Paragraph 7; *see also* a copy of the pertinent portions of the Association's Declaration attached hereto and incorporated herein as **Exhibit "B"**.

5.       The Plan Payments and Ongoing Assessments were explicitly made part of the Debtor's Fifth Amended Disclosure Statement [DE 562 at pp. 21-23, 49-58] and Fourth Amended Plan of Reorganization [DE 563 at p. 11-12]. Debtor's Plan was confirmed by this Court on June 12, 2018 [DE 691], with an effective date of June 29, 2018.

**B.  Debtor's First Motion to Extend Plan Payments to the Association (December 2020)**

6.       On December 16, 2020, Debtor filed an Expedited Motion to Extend Payments to the Association [D.E. 1015], in which she asked the Court to reduce the Plan Payments to the Association by half for the remainder of the Plan due to alleged Covid-19 hardship ("First Motion to Extend"). In that Motion, Debtor also baselessly accused Association counsel of committing perjury and asked the Court to enter sanctions. The Association filed an Opposition to Debtor's First Motion to Extend [D.E. 1018], but Debtor's counsel ultimately withdrew the Motion a few hours before the hearing was scheduled to take place [D.E. 1020]. This withdrawal was apparently based upon the Association's preliminary agreement, via e-mail, that it would accept the reduced-

**Haber Law, P.A.**

by-half Plan Payments for the 2021 year upon entry of an Agreed Order confirming same along with certain other terms. Debtor did not want to submit an Agreed Order to the Court documenting this modification to the Association's Plan Payments, but rather wanted to keep it "confidential so other creditors will not have to see it", despite having filed a Motion in the first place. Ultimately, the Association simply accepted the reduced Plan Payments during the 2021 year because of the unnecessary attorney's fees and costs it would be forced to incur to litigate with the Debtor over these issues, who has on multiple prior occasions attempted to bully and intimidate the Association and its counsel, and who has seemingly delighted in running up the Association's legal bills with years' worth of litigation over her basic obligation to pay maintenance assessments to her homeowners' association.

**C.   Debtor's Failure to Pay April 2022 Plan Payment and Association's Notice of Default and Demand to Cure.**

7.     According to the e-mails exchanged between the parties, the reduced-by-half Plan Payments were supposed to continue only for 2021, with Plan Payments in the original amount of $20,312.50 to resume in 2022, the first of which was due on April 2, 2022. Despite recognizing in her filings in this Court that the April 2022 payment was coming due [*see* D.E. 1068 filed on March 10, 2022, at p. 1], Debtor failed to pay same, nor did Debtor even bother to contact the Association about the upcoming payment. As such, on April 6, 2022, undersigned counsel sent Debtor a Notice of Default and Demand to Cure as required under the Stipulation. A copy of the Notice of Default is attached hereto as **Exhibit "C"**.

8.     In response, Debtor filed the instant Motion on an emergency basis, despite any "emergency" being a situation clearly of Debtor's own creation. Debtor and her counsel then proceeded to hound Association counsel with a barrage of e-mails requesting the Association accept one more reduced Plan Payment for April 2022, blaming her failure to pay on Chris

3

**Haber Law, P.A.**

Kosachuk. In her Motion, Debtor also continues to blame Covid-19 for her failure to make her Plan Payments. But neither Kosachuk nor Covid should excuse Debtor from making the payments required under the Plan to the Association, nor should Debtor be permitted to further extend the deadline for full payment to the Association under the Plan.

## II.    OBJECTION TO DEBTOR'S EMERGENCY MOTION TO REDUCE AND EXTEND PLAN PAYMENTS DUE TO THE ASSOCIATION

9.    To date, Debtor has made five (5) of the ten (10) Plan Payments required under the Stipulation after the Effective Date under the Plan, as well as the annual interest payments due in July 2019, July 2020, and July 2021. Debtor also made three (3) additional, reduced Plan Payments for the 2021 year in half the amount required under the Plan. As of the date of this filing, Debtor still owes $60,715.80 under the Plan, which includes interest through April 2022 but does not include attorney's fees and costs related to her failure to pay the April 2022 Plan Payment. *See* ledger attached hereto as **Exhibit "D"**.

10.    The Plan approved by this Court required Debtor to pay the Association in full by June 2022. *See* **Composite Exhibit "A"** at Paragraph 6. **That date has never been modified by an Order of this Court**. When Debtor claimed Covid hardship for the first time and chose to reduce her Plan payments to the Association by half for the 2021 year (despite never obtaining a Court Order permitting this modification), the date for full payment was pushed from June 2022 to February 2023, assuming Debtor would resume the full Plan Payment amount starting with the April 2022 payment. Now, Debtor is asking this Court to reduce all remaining Plan Payments by half for the remainder of the Plan, thereby extending the Plan's deadline to pay the Association in full yet another fifteen (15) months, **through May 2024** - - even though the underlying claim being paid by the Plan is for **past-due maintenance assessments which date back as far as 2012.**

4

**Haber Law, P.A.**

11.     In addition, **Debtor notably omits from her Motion that she has not timely or fully paid the Ongoing Assessments owed to the Association from around August 2019 to the present date, totaling approximately $70,000 at this time and increasing about $2,500 every month in additional assessments, interest, and late fees**. As permitted by the Stipulation (*see* **Exhibit "A"** at Paragraph 7), the Association has now filed a foreclosure action in state court for the post-petition Ongoing Assessments and charges related thereto (the "Foreclosure Action"), which Debtor agreed to pay as part of the Stipulation and by virtue of her ownership of the property itself which is subject to the Association's Declaration and Chapter 720, Florida Statutes. A copy of the Association's Complaint filed in the Foreclosure Action is attached hereto as **Exhibit "E"**, without its exhibits due to size.

12.     Debtor cites 11 U.S.C 1127(e)(1)-(3) for the proposition that she should be allowed to modify her Plan Payments; however, 11 U.S.C. 1127(f) further states that "Sections 1121 through 1128 [11 USCS §§ 1121–1128] and the requirements of section 1129 [11 USCS § 1129] apply to any modification under subsection (e)." Debtor has not even attempted to explain, much less actually show, how her request to reduce or extend the Plan Payments to the Association meet the foregoing requirements under the Code.

13.     Further, as to Debtor's first complaint that she cannot pay the Association due to the actions of Kosachuk/NLG, this obviously has nothing to do with the Association. The Association has no involvement in the litigation between Debtor and Kosachuk/NLG. It is the Debtor's responsibility to comply with her Plan, and there is no reason that the Association should have to be punished (including with additional fees and costs) because Debtor has a contentious ongoing dispute with Kosachuk and NLG which has allegedly resulted in her being unable to close on a refinance of the property.

14.     Regarding this alleged refinance, the Association was strangely never contacted regarding a payoff in connection with the purported loan, despite Debtor's stating in her Motion that she "has negotiated short payoffs with all the lien holders and is ready to close on her loan" [D.E. 1097 at p. 2] and that the loan was going to be used to pay the Association in full. If this actually was the purpose of the loan, then why has the Association not been asked for a payoff amount for either the remaining Plan Payments or the Ongoing Assessments, and why would those amounts not be paid at a closing? In fact, there is no assurance whatsoever that, if the Debtor gets the extension she seeks and is able to close on the loan, she will then actually pay the Association what is owed.

15.     **In short, the Association should not be compelled to act as Debtor's bank while she tries to resolve her issues with Kosachuk and NLG**. Debtor lives in a multi-million dollar house on Fisher Island, located in one of the most expensive and wealthiest zip codes in the Unites States. Parked outside of the house is a Bentley which Debtor's husband uses to drive her around. Debtor claims she has "millions of dollars in equity" in the property and that she is "actively marketing her house and is offering it for sale and does have a few serious potential buyers." [D.E. 1097 at pp. 2 and 4.] However, this appears to be just another unsubstantiated claim by Debtor, since she failed to attach any evidence whatsoever of her purported "active marketing" efforts or the "few serious potential buyers" to her Motion. Further, the house has not been listed on the MLS since 2016, nor do there appear to be any other listings or marketing attempts elsewhere on the internet.

16.     If Debtor needs funds to pay the Association or other creditors, she certainly has the means to obtain those funds, including, for example, by taking out a loan with a private lender which will not be impacted by Kosachuk's filings. **Debtor has presented absolutely no evidence**

**Haber Law, P.A.**

**or support for why the Association should have to continue acting as her bank, to its detriment and to the detriment of her neighbors who have been paying for her to live on Fisher Island for over ten years**.

17.     Similarly, the claim that Debtor is suffering from Covid-19 hardship is nonsense. The CARES Act permits modifications if a "debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID–19) pandemic." In her Motion, Debtor makes only conclusory statements about having "suffered financial hardship caused by Covid-19" but fails to specify any actual hardship she has purportedly suffered due to Covid. **Debtor's claim of "financial hardship" due to Covid-19 is frankly offensive considering the millions of people who have suffered real hardship such as losing their jobs and homes, while Debtor continues to reside in a 4,000+ square-foot house worth millions of dollars located on a private island with a Bentley parked in her driveway**.

18.     Further, Debtor is not seeking a brief extension to tide her over through alleged financial hardship and until she closes her loan (again, with no guarantee that the loan would actually be used to pay the Association). She is seeking to extend the amounts owed to the Association for the full seven (7) year period provided in the CARES ACT, i.e. - - until June 2025. Again, the debt comprising Claim 10 already dates back to 2012. To allow the Debtor the extension she has requested would mean the Association will have to wait **thirteen (13) years** for Debtor to finish paying her old debt - - which does not even include the tens of thousands of dollar she currently owes in post-petition assessments to the Association. This would be utterly unfair and would cause additional harm to the Association and its other Unit Owners - - none of whom have been excused from payments due to the Association because of Covid or otherwise.

19.     The Association is a non-profit organization and is dependent upon homeowners paying their share of the Common Expenses. Debtor's neighbors should not have to put up with her games for an additional five (5) years until 2025 - - she has already been living off their largesse for some eight (8) years at this point, and she should not get to continue doing so by obtaining an extension under the CARES Act or due to the actions of Kosachuk/NLG

### III.     ASSOCIATION'S MOTION FOR STAY RELIEF TO PROCEED TO AUCTION IN STATE COURT FORECLOSURE ACTION ON POST-PETITION ASSESSMENTS

20.     Debtor currently owes approximately $70,000.00 in post-petition assessments, interest, late fees, attorney's fees, and costs to the Association because she has failed and/or refused to fully and timely pay her maintenance since approximately August of 2019. As allowed under the Stipulation, the Association has filed the Foreclosure Action on this post-petition debt.

21.     However, the Stipulation is silent regarding whether the Foreclosure Action may proceed to an eventual foreclosure sale without further Order of this Court. The Association requests that the Court enter an Order clarifying that the Association may pursue the Foreclosure Action through auction of the property in order to recover the post-petition debt for the Ongoing Assessments.

22.     Debtor has lived on Fisher Island at a massive discount for over a decade. These circumstances should not be allowed to continue, especially when she herself admits she has "millions of dollars in equity" in the home. There is no need for more "breathing room" under the automatic stay. She obtained a settlement of pre-petition debt to be paid under a Plan that she has already once modified informally and without Court approval, yet she still cannot comply with the Plan for her pre-petition debt dating back to 2010 or even stay current on her Ongoing Assessments. If there are "millions of dollars in equity" in the house, Debtor will be entitled to

seek to recover the surplus proceeds after a foreclosure sale through which the Association is paid at least for the Ongoing Assessments. The Association and Debtor's neighbors have suffered her antics long enough.

WHEREFORE, the Association respectfully requests that this Court enter an Order:

A. Sustaining the Association's Objection to Debtor's Amended Emergency Motion to Reduce and Extend Plan Payments to the Association, denying Debtor's request for such reduction and/or extension for the reasons set forth herein;

B. Ordering Debtor to make the required Plan Payment to the Association in the amount of $20,312.50 which was due on April 2, 2022, within two (2) days of the Court's Order, and further ordering that if she fails to do so, all remaining Plan Payments are considered accelerated and immediately due, and the Association shall have stay relief to pursue enforcement of its Judgment Lien and Enforcement Attorney's Fees, as was previously agreed to by the Parties in the Stipulation at Paragraph 10;

C. Granting the Association's request for stay relief to proceed with an eventual auction of the Property in the Foreclosure Action currently pending in State Court due to Debtor's failure to pay the Ongoing Assessments and related charges;

D. Awarding the Association its attorney's fees and costs in having to defend Debtor's latest meritless Motion and once again seek to enforce her payment obligations, as authorized by the Stipulation at Paragraph 10, the Association's recorded Declaration at Sections 6.8, 9.2, and 14.4, and Fla. Stat. 720.305; and

E. Awarding any such other and further relief this Court may deem just and proper.

[CERTIFICATE OF SERVICE TO FOLLOW]

9

**Haber Law, P.A.**

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing was furnished by CM/ECF to all electronic notice parties on the CM/ECF service list on April 29, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
251 NW 23rd Street
Miami, FL 33127
(305) 379-2400
(305) 379-1106 (fax)
service@haber.law


By:      /s/ Rebecca Casamayor
**DAVID B. HABER, ESQ.**
Florida Bar No. 435368
dhaber@haber.law
**REBECCA N. CASAMAYOR, ESQ.**
Fla. Bar No. 99070
RCasamayor@haber.law
JFelipe@haber.law

10
**Haber Law, P.A.**

Exhibit "A"

### UNITED STATES BANKRUPTCY COURT
### THE SOUTHERN DISTRICT OF
### FLORIDA MIAMI DIVISION
**www.flsb.uscourts.gov**

IN RE:

                                              **CaseNo:16-10389AJC**
                                              **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR._____/**

### STIPULATION OF SETTLEMENT CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

    A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

    B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

    C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees & costs absent a breach by Debtor as referenced below in Paragraph 10 so long*

7. Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8. Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9. Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10. If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11. Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*Valencia state court action, claims, counterclaims. All defenses, proposed counterclaims + proposed third party claims against Valencia, it's agents, managers, attorneys, members & officers, raised or unraised, are released & waived.*

stipulated treatment.

12. This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor


s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan


**Certificate Of Service**


**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### THE SOUTHERN DISTRICT OF
### FLORIDA MIAMI DIVISION

**www.flsb.uscourts.gov**

IN RE:

                                    **CaseNo:16-10389AJC**
                                    **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.**                          /

---

### AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10 (Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter the "Stipulation"). The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

Exhibit "B"

## ARTICLE 6.

### COVENANT FOR MAINTENANCE ASSESSMENTS

6.1.  **Creation of the Lien and Personal Obligation of the Assessments.** Except as provided elsewhere herein, the Developer (and each party joining in any supplemental declaration), for all Lots within the Neighborhood, hereby covenants and agrees, and each Owner of any Lot by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association annual assessments and charges for the operation of the Association and the maintenance, management, operation and insurance of the Common Properties as provided elsewhere herein, including such reasonable reserves as the Association may deem necessary, capital improvement assessments as provided elsewhere herein, assessments for maintenance, bulk cable and/or satellite television or communications charges and all other charges and assessments hereinafter referred to or lawfully imposed by the Association, all such assessments to be fixed, established and collected from time to time as herein provided. In addition, special assessments may be levied against particular Owners and Lots for fines, expenses incurred against particular Lots and/or Owners to the exclusion of others and other charges against specific Lots or Owners as contemplated in this Declaration. The annual, special and other assessments, together with interest thereon and costs of collection thereof as are hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with such interest thereon and costs of collection thereof as are hereinafter provided, shall also be the personal obligation of the person who is the Owner of such property at the time when the assessment fell due and all subsequent Owners until paid, except as provided in Section 6.9 below.

6.2.  **Rate of Assessment.** Except as provided herein with respect to special assessments which may be imposed on one or more Lots or Homes and Owners to the exclusion of others and in Section 6.9 below, all assessments imposed by the Association shall be imposed against all Lots subject to its jurisdiction in accordance with the percentages set forth on **Exhibit "E"** attached hereto and made a part hereof. Reference herein to assessments shall be understood to include reference to any and all of said charges whether or not specifically mentioned.

6.3.  **Purpose of Assessments.** The regular assessments levied by the Association shall be used exclusively for the purposes expressed in Section 6.1 above.

6.4.  **Special Assessments.** In addition to the regular and capital improvement assessments which are or may be levied hereunder, the Association (through the Board of Directors) shall have the right to levy special assessments against an Owner(s) to the exclusion of other Owners for: (a) the repair or replacement of damage to any portion of the Common Properties (including, without limitation, improvements and landscaping thereon) caused by the misuse, negligence or other action or inaction of an Owner or such Owner's Members' Permittee(s); or (b) the costs of work performed by the Association in accordance with Article **4** and/or Article **5** of this Declaration. Any such special assessment shall be subject to all of the applicable provisions of this Article including, without limitation, lien filing and foreclosure procedures and late charges and interest. Any special assessment levied hereunder shall be due within the time specified by the Board of Directors in the action imposing such assessment.

6.5.  **Capital Improvements.** Funds which, in the aggregate, exceed twenty percent (20%) of the total amount of the current operating budget of the Association in any one fiscal year, and are necessary for the addition of capital improvements (as distinguished from

OFF. REC BK.

21004PG0401

repairs and maintenance) relating to the Common Properties and which have not previously been collected as reserves or are not otherwise available to the Association (other than by borrowing), shall be levied by the Association as special assessments only upon approval of a majority of the Board of Directors of the Association and upon approval by two-thirds (2/3) favorable vote of the Members of the Association voting at a meeting or by ballot as may be provided in the By-Laws of the Association. Additionally, the Association may adopt a capital improvement assessment upon approval of a majority of the Board of Directors of the Association for reconstruction as provided in Section 11.1 below.

6.6.  Date of Commencement of Annual Assessments; Due Dates.  The annual regular assessments provided for in this Article shall commence on the first day of the month next following the recordation of these covenants and shall be applicable through September 30 of such year. Each subsequent annual assessment shall be imposed for the year beginning October 1 and ending September 30. The annual assessments shall be payable in advance, in monthly installments, or in annual, semi-annual or quarterly installments if so determined by the Board of Directors of the Association (absent which determination they shall be payable monthly). The assessment amount (and applicable installments) may be changed at any time by said Board from that originally stipulated or from any other assessment that is in the future adopted. The original assessment for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, every six (6) months), but the amount of any revised assessment to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year. The due date of any special assessment or capital improvement assessment shall be fixed in the Board resolution authorizing such assessment.  Notwithstanding anything herein contained to the contrary, no Lot shall be subject to assessment until such time as a Home has been constructed thereon and received a certificate of occupancy from the applicable governmental authority.

6.7.  Duties of the Board of Directors.  The Board of Directors of the Association shall fix the date of commencement and the amount of the assessment against each Lot subject to the Association's jurisdiction for each assessment period, to the extent practicable, at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the Lots and assessments applicable thereto which shall be kept in the office of the Association and shall be open to inspection by any Owner. Written notice of the assessment shall thereupon be sent to every Owner subject thereto thirty (30) days prior to payment of the first installment thereof, except as to special assessments. In the event no such notice of a change in the assessments for a new assessment period is given, the amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein.  Subject to other provisions hereof, the Association shall upon demand at any time furnish to any Owner liable for an assessment a certificate in writing signed by an officer of the Association, setting forth whether such assessment has been paid as to any particular Lot.  Such certificate shall be conclusive evidence of payment of any assessment to the Association therein stated to have been paid. The Association, through the action of its Board of Directors, shall have the power, but not the obligation, to enter into an agreement or agreements from time to time with one or more persons, firms or corporations (including affiliates of the Developer) for management services.  The Association shall have all other powers provided in its Articles of Incorporation and By-Laws.

6.8.  Effect of Non-Payment of Assessment; the Personal Obligation; the Lien; Remedies of the Association.  If the assessments (or installments) provided for herein are not paid on the date(s) when due (being the date(s) specified herein), then such assessments (or installments) shall become delinquent and shall, together with late charges, interest and

OFF. REC BK. 21004PG0402

the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the Lot which shall bind such property in the hands of the then Owner, his heirs, personal representatives, successors and assigns. Except as provided in Section 6.9 below to the contrary, the personal obligation of the then Owner to pay such assessment shall pass to his successors in title and recourse may be had against either or both. If any installment of an assessment is not paid within fifteen (15) days after the due date, at the option of the Association, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest as provided herein but shall not be subject to additional late charges, provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid), or the next twelve (12) months' worth of installments may be accelerated and become immediately due and payable in full and all such sums shall bear interest from the dates when due until paid at the highest lawful rate and the Association may bring an action at law against the Owner(s) personally obligated to pay the same, may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the Lot on which the assessments and late charges are unpaid, may foreclose the lien against the Lot on which the assessments and late charges are unpaid, or may pursue one or more of such remedies at the same time or successively, and attorneys' and paralegals' fees and costs actually incurred preparing and filing the claim of lien and the complaint, if any, and prosecuting same, in such action (and any appeals therefrom) shall be added to the amount of such assessments, late charges and interest, and in the event a judgment is obtained, such judgment shall include all such sums as above provided and attorneys' and paralegals' fees actually incurred together with the costs of the action, through all applicable appellate levels. In the case of an acceleration of the next twelve (12) months' worth of installments, each installment so accelerated shall be deemed, initially, equal to the amount of the then most current delinquent installment, provided that if any such installment so accelerated would have been greater in amount by reason of a subsequent increase in the applicable budget, the Owner of the Lot whose installments were so accelerated shall continue to be liable for the balance due by reason of such increase and special assessments against such Lot shall be levied by the Association for such purpose. In addition to the rights of collection of assessments stated in this Section, any and all persons acquiring title to or an interest in a Lot as to which the assessment is delinquent, including without limitation persons acquiring title by operation of law and by judicial sales, shall not be entitled to the occupancy of such Lot or the enjoyment of the Common Properties until such time as all unpaid and delinquent assessments due and owing from the selling Owner have been fully paid; provided, however, that the provisions of this sentence shall not be applicable to the mortgagees and purchasers contemplated by Section 6.9 below. It shall be the legal duty and responsibility of the Association to enforce payment of the assessments hereunder. Failure of the Association to send or deliver bills shall not, however, relieve Owners from their obligations hereunder. All assessments, late charges, interest, penalties, fines, attorney's fees and other sums provided for herein shall accrue to the benefit of the Association. Owners shall be obligated to deliver the documents originally received from the Developer, containing this and other declarations and documents, to any grantee of such Owner.

6.9.    Subordination of the Lien. The lien of the assessments provided for in this Article shall be subordinate to real property tax liens and to the lien of any first mortgage recorded prior to recordation by the Association of a claim of lien held by a Mortgage Lender and which is now or hereafter placed upon any property subject to assessment; provided, however, that any such Mortgage Lender when in possession or any receiver, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any such Mortgage Lender acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under such purchaser or Mortgage Lender, shall hold title subject to the liability and lien

OFF. REC BK.

21004PG0403

of any assessment coming due after such foreclosure (or conveyance in lieu of foreclosure). Any unpaid assessment which cannot be collected as a lien against any Lot by reason of the provisions of this Section shall be deemed to be an assessment divided equally among, payable by and a lien against all Lots subject to assessment by the Association, including the Lots as to which the foreclosure (or conveyance in lieu of foreclosure) took place.

6.10.    Effect on Developer. Notwithstanding any provision to the contrary contained in this Declaration, for as long as Developer (or any of its affiliates) is the Owner of any Lot, Developer shall have the option, in its sole discretion, to (a) pay assessments on the Lots owned by it in like manner as paid by other Owners; or (b) not paying assessments on Lots owned by Developer, and in lieu thereof, funding any resulting deficit in the Association's operating expenses (exclusive of any capital costs and reserves) not produced by assessments receivable from Owners other than Developer and any other income receivable by the Association. The deficit to be paid under option (b) above shall be the difference between (i) actual operating expenses of the Association (exclusive of capital improvement costs and reserves) and (ii) the sum of all monies receivable by the Association (including, without limitation, assessments, interest, late charges, fines and incidental income) and any surplus carried forward from the preceding year(s). Developer may from time to time change the option stated above under which Developer is making payments to the Association by written notice to such effect to the Association. When all Lots within the Neighborhood are sold and conveyed to purchasers, neither the Developer, nor its affiliates, shall have further liability of any kind to the Association for the payment of assessments, deficits or contributions.

6.11.    Association Funds. The portion of all regular assessments collected by the Association for reserves for future expenses, if any, and the entire amount of all special assessments, shall be held by the Association for the Owners of all Lots, as their interests may appear, and may be invested in interest bearing accounts or in certificates of deposit or other like instruments or accounts available at banks or savings and loan institutions the deposits of which are insured by an agency of the United States.

**ARTICLE 7.**

**CERTAIN RULES AND REGULATIONS**

7.1.    Applicability. The provisions of this Article **7** shall be applicable to all of the Lots, Homes and Common Properties of the Neighborhood.

7.2.    Land Use and Building Type. No Lot shall be used except for single family residential purposes, unless otherwise approved by the Developer. No building constructed on a Lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any Lot other than one Home and one cabana house. Temporary uses by Developer and its affiliates for model homes, guest accommodations, sales displays, parking lots, sales offices and other offices, or any one or combination of such uses, shall be permitted at all times. No improvements may be made to a Lot, or changes thereafter made (unless such changes are made by the Developer) without the consent of the Architectural Control Board (as hereinafter defined).

7.3.    Construction Activity. Unless otherwise approved in advance by the Architectural Control Board, no construction or construction related activities may be undertaken: (a) on legal holidays recognized by the Federal Government (or other holidays designated as such by Declarant), (b) Sundays, or (c) outside the hours of 8:00 a.m through 6:00 p.m., Monday through Friday, or 9:00 a.m through 6:00 p.m. on Saturdays.

Exhibit "C"



REBECCA N. CASAMAYOR, ESQ.
305-379-2400 Ext.117
rcasamayor@haber.law

## NOTICE OF DEFAULT AND DEMAND TO CURE

April 6, 2022

**VIA E-MAIL ONLY:**
David Langley, Esq.
E-mail: dave@flalawyer.com

**VIA E-MAIL ONLY:**
Joel Aresty, Esq.
E-mail: Aresty@Mac.com

RE:    **In re: Liza Hazan, Debtor**
       **Case No.: 16-10389-AJC – Chapter 11**

Dear Messrs. Langley and Aresty:

As you know, this Law Firm represents the interests of Valencia Estates Homeowners' Association, Inc. (the "Association") in the above-styled bankruptcy proceeding filed by your client, Elizabeth Hazan ("Hazan").

Pursuant to Paragraph 6 of the Stipulation of Settlement Claim 10 executed by Hazan and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Court on November 17, 2016 [D.E. 302] (the "Stipulation"), Hazan was to make payments to the Association under her bankruptcy plan (the "Plan") in the amount of $20,312.50 every five (5) months following the Effective Date (hereinafter the "Plan Payments"). A copy of the Stipulation and Order approving same are attached hereto as **Composite Exhibit "1"** for your reference.[1]

As you know, this is not the first Notice of Default the Association has had to send as a result of Hazan's failure to comply with the terms of the Stipulation and Plan. **Hazan has now failed to make the latest Plan Payment in the amount of $20,312.50, which was due on April 2, 2022.[2] As such, Hazan is clearly in default of the Stipulation and the Plan.**

Pursuant to Paragraph 10 of the Stipulation, this correspondence shall constitute the Association's notice and demand for Hazan to cure her default within fourteen (14) days of the date of this letter, i.e. - - on or before April 20, 2022 ("Cure Period"). Wire instructions for our Law Firm's Trust Account for the purpose of forwarding payment are included below.

---

[1] Hazan was also required under the Stipulation and Plan to pay all ongoing monthly and/or special assessments to the Association ("Ongoing Assessments"). *See* **Composite Exhibit "1"** at Paragraph 7. As you may be aware, Hazan has failed to fully and timely pay her Ongoing Assessments to the Association since on or about August 2019 to present, resulting in the Association filing a Claim of Lien against the property. However, our understanding is that neither of you represent Hazan with respect to her failure to pay the Ongoing Assessments and/or the Association's Claim of Lien in connection with same, so we are not including those maters in this letter.
[2] While Hazan reduced her Plan payments to $10,156.25 for the 2021 year due to alleged financial hardship caused by Covid-19, those Plan payments were to revert to the original amount under the Stipulation starting in 2022.

*HAZAN - NOTICE OF DEFAULT AND DEMAND TO CURE*
*April 6, 2022*
*Page 2 of 2*

Should Hazan fail to pay the $20,312.50 Plan payment within the Cure Period, pursuant to Paragraph 10 of the Stipulation, the remaining balance due of the Plan Payments shall be automatically accelerated, and the Association shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default, along with a request for reasonable attorney's fees and costs for its enforcement of the Stipulation. Under Paragraph 10 of the Stipulation, Hazan has already waived any and all defenses to the foregoing.

This correspondence reserves all rights of the Association, without limitation.

Sincerely,

**HABER LAW, P.A.**

/s/ *Rebecca Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

cc:     Mercy Rodriguez, Property Manager [via e-mail]
        Jason Giller, Board Member [via e-mail]


**WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

First Horizon Bank
165 Madison Avenue
Memphis, TN 38103

ABA #: 084 000 026
ACCOUNT: 003-5040167
SWIFT#: FTBMUS44

RE:     3706.005 (Hazan)

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

IN RE:

                                                **CaseNo:16-10389AJC**
                                                **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.**           **/**

**STIPULATION OF SETTLEMENT CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

      2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

      3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

      4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

      5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

            A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

            B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

            C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

      6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 include's pre-petition and post-petition attorney's fees & costs absent a breach by Debtor as referenced below in paragraph 10 so long [?]* E.H

7. Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8. Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9. Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10. If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11. Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the *Valencia State Court Action, claims, counterclaims. All defenses, proposed counterclaims + proposed third party claims against Valencia, it's agents, managers, attorneys, members + officers, raised or unraised, are released & waived.* E.H

stipulated treatment.

12.  This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor


s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan


**Certificate Of Service**


**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.



**ORDERED in the Southern District of Florida on November 17, 2016.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF
FLORIDA MIAMI DIVISION

www.flsb.uscourts.gov

IN RE:

CaseNo:16-10389AJC
Chapter 11

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.** _____/

### AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10

(Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter

the "Stipulation"). The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

Exhibit D

**Valencia Estates - Hazan Plan Payments**

| Date | Item | Assessment | Interest | Balance | Pymt |
|------|------|-----------:|---------:|--------:|-----:|
| 7/2/2018 | Opening Balance | $ - | $ - | $ - | $ - |
| 7/2/2018 | Claim 10 | 195,000.00 | | 195,000.00 | |
| 7/2/2018 | Effective Date Payment | (4,062.00) | | 190,938.00 | 4,062.00 |
| 7/31/2018 | July Interest | | 557.54 | 191,495.54 | |
| 8/31/2018 | August Interest | | 557.54 | 192,053.08 | |
| 9/30/2018 | September Interest | | 557.54 | 192,610.62 | |
| 10/12/2018 | First Payment | (20,312.50) | | 172,298.12 | 20,312.50 |
| 10/31/2018 | October Interest | | 498.23 | 172,796.34 | |
| 11/30/2018 | November Interest | | 498.23 | 173,294.57 | |
| 12/31/2018 | December Interest | | 498.23 | 173,792.80 | |
| 1/31/2019 | January Interest | | 498.23 | 174,291.02 | |
| 2/28/2019 | February Interest | | 498.23 | 174,789.25 | |
| 3/31/2019 | March Interest | | 498.23 | 175,287.48 | |
| 4/30/2019 | April Interest | | 498.23 | 175,785.70 | |
| 5/3/2019 | Second Payment | (20,312.50) | | 155,473.20 | 20,312.50 |
| 5/31/2019 | May Interest | | 438.91 | 155,912.12 | |
| 6/30/2019 | June Interest | | 438.91 | 156,351.03 | |
| 7/30/2019 | Interest Payment | | (6,038.03) | 150,313.00 | 6,038.03 |
| 7/31/2019 | July Interest | | 438.91 | 150,751.91 | |
| 8/31/2019 | August Interest | | 438.91 | 151,190.83 | |
| 9/30/2019 | September Interest | | 438.91 | 151,629.74 | |
| 10/8/2019 | Third Payment | (20,312.50) | | 131,317.24 | 20,312.50 |
| 10/31/2019 | October Interest | | 379.60 | 131,696.84 | |
| 11/30/2019 | November Interest | | 379.60 | 132,076.44 | |
| 12/31/2019 | December Interest | | 379.60 | 132,456.05 | |
| 1/31/2020 | January Interest | | 379.60 | 132,835.65 | |
| 2/29/2020 | February Interest | | 379.60 | 133,215.25 | |
| 3/13/2020 | Fourth Payment | (20,312.50) | | 112,902.75 | 20,312.50 |
| 3/31/2020 | March Interest | | 320.29 | 113,223.04 | |
| 4/30/2020 | April Interest | | 320.29 | 113,543.33 | |
| 5/31/2020 | May Interest | | 320.29 | 113,863.62 | |
| 6/30/2020 | June Interest | | 320.29 | 114,183.91 | |
| 7/27/2020 | Interest Payment | | (4,495.91) | 109,688.00 | 4,495.91 |
| 7/31/2020 | July Interest | | 320.29 | 110,008.28 | |
| 8/14/2020 | Fifth Payment | (20,312.50) | | 89,695.78 | 20,312.50 |
| 8/30/2020 | August Interest | | 260.98 | 89,956.76 | |
| 9/30/2020 | September Interest | | 260.98 | 90,217.74 | |
| 10/31/2020 | October Interest | | 260.98 | 90,478.71 | |
| 11/30/2020 | November Interest | | 260.98 | 90,739.69 | |
| 12/31/2020 | December Interest | | 260.98 | 91,000.67 | |
| 12/31/2020 | Reduced Sixth Payment | (10,156.25) | | 80,844.42 | 10,156.25 |
| 1/31/2021 | January Interest | | 231.32 | 81,075.74 | |
| 2/28/2021 | February Interest | | 231.32 | 81,307.06 | |
| 3/31/2021 | March Interest | | 231.32 | 81,538.38 | |
| 4/30/2021 | April Interest | | 231.32 | 81,769.70 | |
| 5/31/2021 | May Interest | | 231.32 | 82,001.02 | |
| 6/3/2021 | Reduced Seventh Payment (1) | (10,000.00) | | 72,001.02 | 10,000.00 |
| 6/10/2021 | Reduced Seventh Payment (2) | (156.25) | | 71,844.77 | 156.25 |
| 6/30/2021 | June Interest | | 201.66 | 72,046.43 | |
| 7/8/2021 | Interest Payment | | (2,983.43) | 69,063.00 | 2,983.43 |
| 7/31/2021 | July Interest | | 201.66 | 69,264.67 | |
| 8/31/2021 | August Interest | | 201.66 | 69,466.33 | |
| 9/30/2021 | September Interest | | 201.66 | 69,667.99 | |
| 10/29/2021 | Reduced Eighth Plan Payment | (10,156.25) | | 59,511.74 | 10,156.25 |
| 10/31/2021 | October Interest | | 172.01 | 59,683.75 | |

| 11/30/2021 | November Interest | | | 172.01 | 59,855.76 | |
| 12/31/2021 | December Interest | | | 172.01 | 60,027.77 | |
| 1/31/2022 | January Interest | | | 172.01 | 60,199.77 | |
| 2/28/2022 | February Interest | | | 172.01 | 60,371.78 | |
| 3/31/2022 | March Interest | | | 172.01 | 60,543.79 | |
| 4/30/2022 | April Interest | | | 172.01 | 60,715.80 | |
| **TOTAL DUE:** | | $ | 58,906.75 | $ 1,809.05 | | |

Exhibit "E"

Filing # 146288525 E-Filed 03/23/2022 03:37:12 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

      Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

      Defendants.

_____/

## COMPLAINT

    Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., a Florida not-

for-profit corporation ("ASSOCIATION" or "Plaintiff"), by and through its undersigned counsel,

hereby sues the Defendants, ELIZABETH HAZAN ("HAZAN"), an individual; SEAN NEIL

MEEHAN, as spouse of HAZAN ("MEEHAN") an individual; 6913 VALENCIA, LLC ("6913

VALENCIA"), a Florida limited liability company; and JOHN DOE and JANE DOE, as unknown

tenants or occupants ("TENANTS"), and alleges as follows:

## GENERAL ALLEGATIONS

    1.    This Honorable Court has jurisdiction pursuant to § 26.012(2), Fla. Stat., as this is

an action to foreclose a claim of lien for unpaid assessments.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

2.     The ASSOCIATION is a Florida corporation not-for-profit, operating pursuant to the provisions of Chapter 720, Florida Statutes. The ASSOCIATION is responsible for managing the affairs of Valencia Estates, a residential community in Miami-Dade County, Florida, pursuant to its Declaration of Covenants and Restrictions ("Declaration"), recorded in the Public Records of Miami-Dade County, Florida, on February 6, 2003, at ORB 21004, Page 390, as amended from time to time.

3.     Defendant HAZAN, is over the age of eighteen (18) years, is a resident of Miami-Dade County, Florida, and is otherwise *sui juris.* HAZAN is the record owner of the real property forming the subject of this action.

4.     Defendant MEEHAN is HAZAN's spouse, is over the age of eighteen (18) years, is believed to be a resident of Miami-Dade County, Florida, and is otherwise *sui juris.*

5.     Defendant 6913 VALENCIA is a Florida limited liability company that is believed to still own and hold a second mortgage on the Subject Property, recorded in the public records of Miami-Dade County, Florida. According to online Florida public records, Defendant 6913 VALENCIA's Manager and Authorized Representative is Defendant HAZAN.

6.     Defendants, TENANTS, if such persons exist, are residents of Miami-Dade County, Florida, who are over the age of eighteen (18) years, and are otherwise *sui juris*.

7.     Venue is appropriate in Miami-Dade County, Florida because:

(a)     The real property forming the subject of this action is located in Miami-Dade County, Florida;

(b)     The causes of action asserted herein arose in Miami-Dade County, Florida;

(c)     HAZAN is the owner of the Subject Property (hereinafter defined), and as such is a member of the ASSOCIATION;

    (d)    Defendants, MEEHAN and 6913 VALENCIA, hold or may claim to hold interests encumbering the Subject Property which is located in Miami-Dade County, Florida;

    (e)    Defendants, TENANTS, if they exist, reside in the Subject Property; and

    (f)    This is an action to foreclose a Claim of Lien upon on the following described real property located in Miami-Dade County, Florida (the "Subject Property"):

> Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

> a/k/a 6913 Valencia Drive, Fisher Island, FL 33109.

8.    Pursuant to § 720.3085, Fla. Stat. and Article 6 of the Association's Declaration, HAZAN is required to pay all assessments that are levied by the ASSOCIATION against the Subject Property as they become due and payable. A true and correct copy of Article 6 of the Declaration is attached hereto as **Exhibit "1"** and incorporated herein by reference.

9.    Additionally, § 720.3085, Fla. Stat. and Article 6 of the Declaration require that HAZAN pay interest at the rate of eighteen percent (18%) per annum on the balance of all unpaid maintenance assessments, along with administrative late fees in the amount of $25.00 for each monthly assessment installment that is not paid within fifteen (15) days of its due date, plus costs and attorney's fees incurred by the ASSOCIATION incident to the collections process. *See* **Exhibit "1"**.

10.    On or about August 2, 2013, JPMorgan Chase Bank, N.A. ("JPMorgan") filed an action against HAZAN to foreclose the first mortgage on the Subject Property, Case No.: 2013-

025902-CA-01 ("Bank Foreclosure"). The Bank Foreclosure is still pending in Miami-Dade County Circuit Court.

11.     On or about January 11, 2016, HAZAN filed for Chapter 11 bankruptcy in the Southern District of Florida, Case No. 16-10389-AJC ("Bankruptcy Action"). In the Bankruptcy Action, the ASSOCIATION and HAZAN entered into an agreement regarding the ASSOCIATION's claim for past-due assessments and related charges due at that time. True and correct copies of the Stipulation of Settlement for Claim 10 executed by the ASSOCIATION and HAZAN on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (hereinafter collectively the "Stipulation") are attached hereto as **Composite Exhibit "2"** and incorporated herein by reference.

12.     In addition to her obligations under Article 6 of the Association's Declaration and § 720.3085, Fla. Stat., the Stipulation further requires HAZAN to continue to pay all post-petition, ongoing monthly and/or special assessments to the ASSOCIATION. *See* **Composite Exhibit "2"** at Para. 6. Failure to pay such amounts entitles the ASSOCIATION to "all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at Para. 7.

13.     Thus, even though the Bankruptcy Action is still pending in that HAZAN is still making payments pursuant to her Bankruptcy Plan, the parties have already agreed and the Bankruptcy Court has already approved the filing of a new lien and foreclosure action with respect to post-petition assessments, which is what the ASSOCIATION's seeks herein.

14.     HAZAN has failed or otherwise refused to fully and timely pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount

currently exceeding $61,000.00, after application of payments received to date in accordance with § 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

15.     All conditions precedent to the filing of this action have been performed, occurred, or were otherwise waived.

16.     As a result of HAZAN's failure to pay assessments and related charges resulting from such nonpayment, the ASSOCIATION has been required to retain the undersigned counsel and is obligated to pay a reasonable fee thereto.

17.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., and the Association's Declaration at Article 6, the ASSOCIATION is entitled to be reimbursed its attorney's fees and costs incurred in this action.

## COUNT I
## FORECLOSURE OF LIEN

18.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 above as if fully set forth herein.

19.     This is an action to foreclose the Claim of Lien (hereinafter defined) against the Subject Property.

20.     HAZAN has failed or otherwise refused to pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount currently exceeding $61,000.00, after application of payments received to date in accordance with § 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

21.     On or about January 4, 2021, and in accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Notice of Intent to File/Record a Claim

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

of Lien ("Notice of Intent to Lien") to the Subject Property, which is also HAZAN's last address

on file with the ASSOCIATION. A true and correct copy of the Notice of Intent to Lien is attached

hereto as **Exhibit "3"** and incorporated herein by reference.

22.     HAZAN failed or otherwise refused to pay the amounts set forth in the Notice of

Intent to Lien within forty-five (45) days thereof. As a result, and in accordance with § 720.3085,

Fla. Stat. and the Declaration, on March 24, 2021, the ASSOCIATION recorded a Claim of Lien

against the Subject Property in ORB 32413 at Pages 4637-38, of the public records of Miami-Dade

County, Florida (the "Claim of Lien"). A true and correct copy of the Claim of Lien is attached

hereto as **Exhibit "4"** and incorporated herein by reference.

23.     Pursuant to F.S. §720.3085(5)(b), the ASSOCIATION was not required to send

HAZAN a forty-five (45) day Notice of Intent to Foreclose its Claim of Lien due to the pending

Bank Foreclosure as well as the pending Bankruptcy. Nonetheless, on or about April 5, 2021, in

accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned

counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail,

a Notice of Intent to Foreclose Claim of Lien ("Notice of Intent to Foreclose") to the Subject

Property, which is also HAZAN's last address on file with the ASSOCIATION. A true and correct

copy of the Notice of Intent to Foreclose is attached hereto as **Exhibit "5"** and incorporated herein

by reference.

24.     In addition, on February 7, 2022, the ASSOCIATION sent HAZAN, by regular

U.S. and certified mail, return receipt requested, and via e-mail, a Supplemental Notice of Intent

to Foreclose Claim of Lien ("Supplemental Notice of Intent to Foreclose") to the Subject Property,

which is also HAZAN's last address on file with the ASSOCIATION. A true and correct copy of

**HABER LAW, P.A.**

the Supplemental Notice of Intent to Foreclose is attached hereto as **Exhibit "6"** and incorporated herein by reference.

25.     As set forth in § 720.3085, Fla. Stat. and the Declaration, the Claim of Lien secures all unpaid assessments, interest, late fees, collection costs, and attorneys' fees and costs incident to the collections process set forth therein and that have and will come due subsequent to its recording through the entry of a final judgment in this action.

26.     Further, pursuant to § 720.3085(1), the ASSOCIATION's lien rights and Claim of Lien are effective from and shall relate back to the date of recording of the ASSOCIATION's original Declaration, i.e. - - February 6, 2003.

27.     To date, HAZAN has failed or otherwise refused to satisfy the Claim of Lien, and thus pursuant to § 720.3085, Fla. Stat. and Article 6 of the Declaration, the ASSOCIATION is now entitled to foreclose the Claim of Lien in the same manner that a mortgage is foreclosed.

28.     The ASSOCIATION's interest in the Subject Property pursuant to the Declaration and the Claim of Lien is superior to any right, title or interest of Defendant or any party claiming by, through or under HAZAN to the Subject Property.

29.     Defendant MEEHAN may claim some interest in or lien upon the Subject Property as an occupant or having a homestead interest in same. However, MEEHAN's specific interest in the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

30.     Defendant, 6913 VALENCIA may claim an interest in the Subject Property by virtue of a Second Mortgage recorded on March 14, 2012 in ORB 28034, at Page 4869 of the Public Records of Miami Dade County, Florida. However, 6913 VALENCIA's specific interest in

the Subject Property and any other right, title or interest to and in the Subject Property is junior,

inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

31.    Defendants TENANTS may claim an interest in the Subject Property by virtue of

possession of the Subject Property as tenants under a lease or otherwise as occupants. However,

TENANTS' specific interest in the Subject Property and any other right, title or interest to and in

the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant

to the Claim of Lien.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION,

INC., respectfully requests that this Honorable Court enter judgment in its favor and against

Defendants, and in so doing award the following relief:

A.    Take jurisdiction of this cause and of the parties to this action;

B.    Ascertain the amount of money including assessments, interest, late fees,

expenses, costs and attorney's fees and costs which ASSOCIATION is entitled to recover

in this action and award such amounts pursuant to the Declaration and § 720.385, Fla. Stat.;

C.    Find that ASSOCIATION be decreed to have a lien upon the Subject

Property of Defendant HAZAN as described herein for the sum of money found to be due,

and that said lien be decreed superior to the rights, title and interest of all of the Defendants

named herein;

D.    Find that such lien be foreclosed in accordance with the Declaration and the

established rules and practices of the Court, that upon default of the payment to

ASSOCIATION of the amounts so found to be due, and that said real estate be sold by the

Clerk of Court to satisfy ASSOCIATION's lien in accordance with provisions of Chapter

720 of the Florida Statutes;

**HABER LAW, P.A.**

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

    E.    Find that the Final Judgment of Foreclosure incorporate an order dispossessing the Defendants, and requiring that the purchaser at the foreclosure sale, his representatives or all of the assigns, be let into possession of the Subject Property;

    F.    Reserve jurisdiction to enter a Writ of Possession in favor of the person or entity acquiring title to the Subject Property as a result of the public sale ordered by the Court;

    G.    Reserve jurisdiction to award the ASSOCIATION a deficiency judgment in the event the sale of the Subject Property produces insufficient funds to satisfy the ASSOCIATION's judgment; and

    H.    Award such other and further relief as ASSOCIATION may be entitled to receive.

## COUNT II
## BREACH OF DECLARATION

32.    Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 as if fully set forth herein.

33.    The ASSOCIATION's Declaration allows the ASSOCIATION to levy assessments and charges related thereto against the Subject Property, which HAZAN is required to pay. *See* **Exhibit "1"**.

34.    The Declaration is a contract by and between the ASSOCIATION and HAZAN, which strictly governs the relationship between them.

35.    Pursuant to §§ 720.305 and 720.3085, Fla. Stat., HAZAN is required to comply with the terms and conditions of the Declaration.

36.     Despite multiple demands from the ASSOCIATION, HAZAN still has not made payment for the assessments and related charges due and owing to the ASSOCIATION. *See* **Exhibits "3"**, **"5"**, and **"6"**.

37.     HAZAN materially breached the Declaration by failing or otherwise refusing to pay assessments levied by the ASSOCIATION against the Subject Property as same became due and payable.

38.     HAZAN further materially breached the Declaration by failing or otherwise refusing to pay the interest, late fees, collection costs, and attorneys' fees and costs incurred by the ASSOCIATION incident to the collections process, resulting from HAZAN's failure to pay the assessments levied by the ASSOCIATION against the Subject Property.

39.     As a direct and proximate result of such breaches, the ASSOCIATION has been damaged.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ELIZABETH HAZAN, and in so doing award the ASSOCIATION the actual damages it has sustained in this regard, along with pre-judgment and post-judgment interest and the reasonable attorneys' fees and costs incurred in this regard, together with such other and further relief deemed just and proper.

[SIGNATURE PAGE TO FOLLOW]

**HABER LAW, P.A.**

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

Dated this 23rd day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
251 NW 23rd Street
Miami, Florida 33127
(305) 379-2400
(305) 379-1106 (fax)
service@haber.law

By: ___/s/ Rebecca N. Casamayor_____
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfelipe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law



**ORDERED in the Southern District of Florida on May 2, 2022.**

_A. Jay Cristol, Judge_
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:

LIZA HAZAN,                                             CASE NO. 16-10389-AJC
a/k/a ELIZABETH HAZAN

           Debtor.                                  CHAPTER 11

_____/

## ORDER DENYING MOTION TO COMPEL

THIS CAUSE came before the Court upon Chris Kosochuk's Motion to Compel Timely,

Legible and Complete Post-Confirmation Quarterly Operating Reports and Proof of Insurance and

Compliance Going Forward (ECF 1075). Movant is not a creditor in this case nor is he an interested party

who has a stake in the outcome of this case or in the administration of the bankruptcy estate. Accordingly,

Chris Kosochuk is without standing to seek the relief requested in the motion. Moreover, for the same

reasons this Court previously denied similar requests by NLG LLC, this motion is denied without merit. It

is

        ORDERED AND ADJUDGED that Chris Kosochuk's Motion to Compel Timely, Legible

and Complete Post-Confirmation Quarterly Operating Reports and Proof of Insurance and

Compliance Going Forward (ECF 1075) is DENIED.

                         ###

Copies furnished by Clerk of Court to:

Chris Kosochuk
David Langley, Esq.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,               Chapter 11

      Debtor,

_____/

## <u>NOTICE OF APPEAL</u>

Chris Kosachuk, *pro se,* appeals under 28 U.S.C. § 158(a) to the United States District Court for the Southern District of Florida from the Order Denying Motion to Compel [D.E. 1106], filed on May 2, 2022, of U.S. Bankruptcy Judge A. Jay Cristol and entered on the docket on May 3, 2022 in this case (the "Order") a copy of which is attached to this Notice of Appeal.

This Notice of Appeal is related to a pending appeal before the Honorable Robert N. Scola, captioned as*, NLG, LLC, v. Liza Hazan* under case number 18-20186-CIV-SCOLA which is an appeal of the Discharge Order in this same bankruptcy.

In appealing from this Order, Mr. Kosachuk appeals from all orders and decisions antecedent and ancillary thereto, including all interlocutory judgments, decrees, rulings, reports, recommendations and opinions that merged into and became part of the Order, that shaped the Order, that are related to the Order and upon which the Order is based.

The names of all parties to the judgment, order or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

## **Part 1. Identify the appellant:**

1. Name of Appellant:  Chris Kosachuk

2. Position of Appellant: Interested Party

**Appellant: Chris Kosachuk**                    **Attorneys**

Chris Kosachuk                                   Chris Kosachuk
854 Pheasant Run Road                            Pro Se Appellant
West Chester, PA 19382                           854 Pheasant Run Road
                                                 West Chester, PA 19382

## PART 2. Identify the subject of this appeal:

1.  Describe the judgment, order or decree appealed from:

Order Denying Motion to Compel [D.E. 1106].

2.  State the date on which the Order was entered on the docket: May 3, 2022

## PART 3: Identify the other parties to the appeal

**Party: Debtor/Appellee**                       **Attorney**

Liza Hazan a/k/a Elizabeth Hazan                 Joe M. Grant
6913 Valencia Drive                              MARSHALL SOCARRAS GRANT, P.L.
Fisher Island, FL 33109                          197 South Federal Highway, Suite 300
                                                 Boca Raton, FL 33432
                                                 Telephone No. 561-361-1000
                                                 Facsimile No. 561-672-7581
                                                 Email: jgrant@msglaw.com

                                                 David W. Langley
                                                 LAW OFFICES OF DAVID W. LANGLEY
                                                 8551 W. Sunrise Blvd.
                                                 Suite 303
                                                 Fort Lauderdale, FL 33322
                                                 Telephone No. 954-356-0450
                                                 Fax No. 954-356-0451
                                                 Email: dave@flalawyer.com

**Party: Debtor/Appellee**                    **Attorney**

Daniel A. Bushell
BUSHELL LAW, P.A.
6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220
dan@bushellappellatelaw.com

JOEL M. ARESTY, P.A.
309 1st Ave S
Tierra Verde FL 33715
Tel 305--904--1903
Fax 800--559--1870
E--mail Aresty@Mac.com

May 12, 2022.

Respectfully submitted,

/s/ Chris Kosachuk
Chris Kosachuk
*Pro Se Appellant*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed

to the Clerk of Court for electronic filing on this 12th day of May, 2022 pursuant to Administrative

Order 2021-10 .

Respectfully submitted,

**Chris Kosachuk**
<u>*/s/ Chris Kosachuk*</u>
*Pro Se Appellant*
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## <u>SERVICE LIST</u>

<u>*Served via CM/ECF or Email*</u>

All parties of record

Guy A. Van Baalen
Office of the US Trustee for Region 21
guy.a.vanbaalen@usdoj.gov



**ORDERED in the Southern District of Florida on May 2, 2022.**

_____

A. Jay Cristol, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:

LIZA HAZAN,                                  CASE NO. 16-10389-AJC
a/k/a ELIZABETH HAZAN

              Debtor.                        CHAPTER 11
_____/

## ORDER DENYING MOTION TO COMPEL

THIS CAUSE came before the Court upon Chris Kosochuk's Motion to Compel Timely, Legible and Complete Post-Confirmation Quarterly Operating Reports and Proof of Insurance and Compliance Going Forward (ECF 1075). Movant is not a creditor in this case nor is he an interested party who has a stake in the outcome of this case or in the administration of the bankruptcy estate. Accordingly, Chris Kosochuk is without standing to seek the relief requested in the motion. Moreover, for the same reasons this Court previously denied similar requests by NLG LLC, this motion is denied without merit. It is

ORDERED AND ADJUDGED that Chris Kosochuk's Motion to Compel Timely, Legible and Complete Post-Confirmation Quarterly Operating Reports and Proof of Insurance and Compliance Going Forward (ECF 1075) is DENIED.

###

Copies furnished by Clerk of Court to:

Chris Kosochuk
David Langley, Esq.