**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | **16-10389** |

☐ Check if this is an amended filing

## Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:   Summarize Your Assets

| | **Your assets** Value of what you own |
|---|---|

1. **Schedule A/B: Property** (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from Schedule A/B.................................................... $   **12,000,000.00**

   1b. Copy line 62, Total personal property, from Schedule A/B........................................ $   **327,500.00**

   1c. Copy line 63, Total of all property on Schedule A/B................................................ $   **12,327,500.00**

### Part 2:   Summarize Your Liabilities

| | **Your liabilities** Amount you owe |
|---|---|

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D*... $   **7,479,019.78**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................. $   **398,964.24**

   3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... $   **918,255.05**

   **Your total liabilities** $   **8,796,239.07**

### Part 3:   Summarize Your Income and Expenses

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I*................................................ $   **27,000.00**

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22c of *Schedule J*.......................................................... $   **6,145.00**

### Part 4:   Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Debtor 1 | **Liza Hazan** | Case number *(if known)* | **16-10389** |

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$ _____ **25,000.00**

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ 398,964.24 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ _____ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ 0.00 |

9g. **Total.** Add lines 9a through 9f.

$ _____ **398,964.24**

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number | **16-10389** |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
■ Yes. Where is the property?

| 1.1 | | What is the property? Check all that apply | |
|---|---|---|---|
| **6913 Valencia Drive** | | ■ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | | ☐ Duplex or multi-unit building | |
| | | ☐ Condominium or cooperative | |
| **Miami Beach    FL    33109-0000** | | ☐ Manufactured or mobile home | **Current value of the entire property?**    **Current value of the portion you own?** |
| City    State    ZIP Code | | ☐ Land | **$12,000,000.00**    **$12,000,000.00** |
| | | ☐ Investment property | |
| | | ☐ Timeshare | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | | ☐ Other | |
| | | **Who has an interest in the property?** Check one | **Fee simple** |
| **Miami-Dade** | | ■ Debtor 1 only | |
| County | | ☐ Debtor 2 only | ☐ Check if this is community property (see instructions) |
| | | ☐ Debtor 1 and Debtor 2 only | |
| | | ☐ At least one of the debtors and another | |
| | | Other information you wish to add about this item, such as local property identification number: | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................=>**    **$12,000,000.00**

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

■ No
☐ Yes

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | Liza Hazan | Case number (if known) | 16-10389 |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

| 4.1 | Make: _____ | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: _____ | ■ Debtor 1 only | |
| | Year: _____ | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Other information: | ☐ Debtor 1 and Debtor 2 only | | |
| | **Golf Cart** | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property | **Unknown** | **Unknown** |
| | | (see instructions) | | |

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...............................................................=>  **$0.00**

| **Part 3:** | **Describe Your Personal and Household Items** |

**Do you own or have any legal or equitable interest in any of the following items?**

**Current value of the portion you own?** Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes.  Describe.....

| Household Furniture | $150,000.00 |
| Household Dishes/China | $5,000.00 |

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes.  Describe.....

| Household Electronics | $7,500.00 |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ■ Yes.  Describe.....

| 1 Piano | **Unknown** |

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes.  Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes.  Describe.....

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | Liza Hazan | Case number (if known) | 16-10389 |

| Women's Clothing, Shoes, and Accessories. | $115,000.00 |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
■ Yes. Describe.....

| Women's Jewelry | $20,000.00 |

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses

■ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☐ No
■ Yes. Give specific information.....

| Household Artwork | $5,000.00 |
| Household Fixtures | $25,000.00 |
| Household Health Aids | Unknown |

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................................

$327,500.00

| Part 4: | Describe Your Financial Assets |

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

■ No
☐ Yes.................................................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes........................

Institution name:

| 17.1. | Checking | Bank of America<br>Account ending in 9220 | $0.00 |
| 17.2. | Checking | TD Canada Trust Bank<br>Account ending in 0079 | $0.00 |
| 17.3. | Checking | TD Canada Trust Bank<br>Account ending in 4686 | $0.00 |
| 17.4. | Checking | TD Cananda Trust Bank<br>Account ending in 7132 | $0.00 |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com  Best Case Bankruptcy

| Debtor 1 | Liza Hazan | Case number *(if known)* | 16-10389 |
|---|---|---|---|

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

   ☐ No

   ☐ Yes..................      Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

   ☐ No

   ☐ Yes. Give specific information about them...................

| | | % of ownership: | |
|---|---|---|---|
| Name of entity: | | | |
| **Interest in Holding Trust Management Group, LLC. LLC's only asset is a 2007 Mercedes Benz S550 with 75,000 miles. The car is valued at approximately $19,000.00 and is encumbered by a lien of $24,970.70.** | | **100** % | **$0.00** |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

   ☐ No

   ☐ Yes. Give specific information about them
        Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

   ☐ No

   ☐ Yes. List each account separately.
        Type of account:      Institution name:

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

   ☐ No

   ☐ Yes. .....................      Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

   ☐ No

   ☐ Yes.............      Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

   ☐ No

   ☐ Yes.............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

   ☐ No

   ☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

   ☐ No

   ☐ Yes. Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

   ☐ No

   ☐ Yes. Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

| Debtor 1 | Liza Hazan | Case number *(if known)* | 16-10389 |

**28. Tax refunds owed to you**

■ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

_____

**29. Family support**

*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No

☐ Yes. Give specific information......

**30. Other amounts someone owes you**

*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No

☐ Yes. Give specific information..

**31. Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No

☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |

**32. Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No

☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☐ No

■ Yes. Describe each claim.........

| Various causes of action. | **Unknown** |

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No

☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**

■ No

☐ Yes. Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................................. | **$0.00**

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes. Go to line 38.

| Part 6: | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes. Go to line 47.

**Current value of the**

| Debtor 1 | **Liza Hazan** | Case number *(if known)* | **16-10389** |

> **portion you own?**
> Do not deduct secured
> claims or exemptions.

| Part 7: | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership

    ■ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ...................................  **$0.00**

| Part 8: | **List the Totals of Each Part of this Form** |

| | | |
|---|---|---:|
| 55. | **Part 1: Total real estate, line 2** ............................................................................ | **$12,000,000.00** |
| 56. | **Part 2: Total vehicles, line 5** | **$0.00** |
| 57. | **Part 3: Total personal and household items, line 15** | **$327,500.00** |
| 58. | **Part 4: Total financial assets, line 36** | **$0.00** |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** |
| 61. | **Part 7: Total other property not listed, line 54** + | **$0.00** |
| 62. | **Total personal property.** Add lines 56 through 61... **$327,500.00** Copy personal property total | **$327,500.00** |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62 | **$12,327,500.00** |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                      Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | **16-10389** |

☐ Check if this is an amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt
**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim.** One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:**    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **6913 Valencia Drive Miami Beach, FL 33109 Miami-Dade County**<br>Line from *Schedule A/B*: **1.1** | $12,000,000.00 | ■    100%<br>☐ 100% of fair market value, up to any applicable statutory limit | **Fla. Const. art. X, § 4(a)(1); Fla. Stat. Ann. §§ 222.01 & 222.02** |
| **Women's Clothing, Shoes, and Accessories.**<br>Line from *Schedule A/B*: **11.1** | $115,000.00 | ■    $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Fla. Const. art. X, § 4(a)(2)** |

3. **Are you claiming a homestead exemption of more than $155,675?**
   (Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No

   ■ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ■ No

        ☐ Yes

**Fill in this information to identify your case:**

| Debtor 1 | Liza Hazan | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse if, filing) | | | |
| | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF FLORIDA

Case number (if known)   16-10389

☐ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** | **Unsecured portion** If any |

| 2.1 | 6913 Valencia, LLC | | | |
|---|---|---|---|---|

Creditor's Name

**3839 NW Boca Raton Boulevard**
**West Palm Beach, FL 33413**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred

**Describe the property that secures the claim:**   $2,000,000.00   $12,000,000.00   $0.00

**6913 Valencia Drive Miami Beach, FL 33109  Miami-Dade County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Mortgage**

Last 4 digits of account number   **na**

| 2.2 | Chase Bank, NA | | $5,200,000.00 | $12,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**c/o Jennifer Kopf, Esq. Shapiro, Fishman & Gashe, LLP**
**2424 N. Federal Highway, Suite 360**
**Boca Raton, FL 33431**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Describe the property that secures the claim:**

**6913 Valencia Drive Miami Beach, FL 33109  Miami-Dade County**

**As of the date you file, the claim is:** Check all that apply.

☑ Contingent
☑ Unliquidated
☑ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **First Mortgage**

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

Debtor 1    **Liza Hazan**

First Name        Middle Name        Last Name

Case number (if know)    **16-10389**

Date debt was incurred    **2007**      Last 4 digits of account number    **3314**

---

| 2.3 | **Fisher Island Community Ass'n, Inc.** | Describe the property that secures the claim: | $148,943.34 | $12,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**6913 Valencia Drive Miami Beach, FL 33109  Miami-Dade County**

**One Fisher Island Drive Miami Beach, FL 33109**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

■ Contingent
■ Unliquidated
■ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Homeowners' Association Fee Lien**

Date debt was incurred    _____    Last 4 digits of account number    **na**

---

| 2.4 | **Miami Dade Water & Sewer Department** | Describe the property that secures the claim: | $1,399.30 | $12,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**6913 Valencia Drive Miami Beach, FL 33109  Miami-Dade County**

**PO Box 026055 Miami, FL 33102-6055**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred    **2015**    Last 4 digits of account number    **na**

---

| 2.5 | **Select Advisors Group, LLC** | Describe the property that secures the claim: | $0.00 | $12,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**6499 Powerline Road, Suite 304 Fort Lauderdale, FL 33309-2043**

Number, Street, City, State & Zip Code

**6913 Valencia Drive Miami Beach, FL 33109  Miami-Dade County**

As of the date you file, the claim is: Check all that apply.

■ Contingent
■ Unliquidated
■ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

---

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

Debtor 1 **Liza Hazan**
    First Name             Middle Name           Last Name

Case number (if known) **16-10389**

☐ Check if this claim relates to a community debt

☐ Other (including a right to offset) **Judgment Satisfied by Court Order in Miami-Dade Case No. 14-10475 CA (10)**

Date debt was incurred **2007**     Last 4 digits of account number **na**

---

| 2.6 | **Valencia Estates Community Ass'n, Inc.** | Describe the property that secures the claim: | $128,677.14 | $12,000,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**c/o David Haber, Esq. 201 South Biscayne Boulevard, Suite 1205 Miami, FL 33131**

Describe the property that secures the claim:

**6913 Valencia Drive Miami Beach, FL 33109 Miami-Dade County**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☑ Contingent
☑ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset) **Homeowner's Association Fee Lien**

Date debt was incurred _____     Last 4 digits of account number **na**

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $7,479,019.78 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $7,479,019.78 |

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name Address

**NLG, LLC c/o Juan Ramirez, Esq. Diaz, Reus & Targ LLP 100 SE 2nd Street, Suite 3400 Miami, FL 33131**

On which line in Part 1 did you enter the creditor? **2.5**

Last 4 digits of account number _____

---

☐ Name Address

**Valencia Estates Homeowners' Ass'n, Inc. 42205 Fisher Island Drive Miami Beach, FL 33109**

On which line in Part 1 did you enter the creditor? **2.6**

Last 4 digits of account number _____

---

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com           Best Case Bankruptcy

| **Fill in this information to identify your case:** | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | **16-10389** |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List All of Your PRIORITY Unsecured Claims

**1. Do any creditors have priority unsecured claims against you?**

☐ No. Go to Part 2.

■ Yes.

**2. List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|
| **2.1** | **Internal Revenue Service** | **$374,526.2 4** | **$374,526.24** | **$0.00** |

| 2.1 | Internal Revenue Service | | |
|---|---|---|---|
| | Priority Creditor's Name | Last 4 digits of account number | na |
| | P.O. Box 7317 Philadelphia, PA 19101 | When was the debt incurred? | 2003-2010 |
| | Number Street City State Zip Code | | |

**Who incurred the debt?** Check one.

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**As of the date you file, the claim is:** Check all that apply

■ Contingent

■ Unliquidated

■ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations

■ Taxes and certain other debts you owe the government

☐ Claims for death or personal injury while you were intoxicated

☐ Other. Specify _____

                    **Federal Income Taxes**

Debtor 1  **Liza Hazan**                                    Case number *(if know)*   **16-10389**

| 2.2 | **Internal Revenue Service** | Last 4 digits of account number | **na** | **$24,438.00** | **$24,438.00** | **$0.00** |
|-----|---|---|---|---|---|---|

Priority Creditor's Name
**PO Box 7346**
**Philadelphia, PA 19101-7346**

Number Street City State ZIp Code

When was the debt incurred?   **2014**

**Who incurred the debt?** Check one.

☑ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No

☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations

☐ Taxes and certain other debts you owe the government

☐ Claims for death or personal injury while you were intoxicated

☐ Other. Specify _____

**Federal Income Taxes**

---

| Part 2: | List All of Your NONPRIORITY Unsecured Claims |
|---|---|

3. Do any creditors have nonpriority unsecured claims against you?

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☑ Yes.

4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  |  |  | **Total claim** |
|---|---|---|---|---|

| 4.1 | **900 North Michigan, LLC** | Last 4 digits of account number | **na** | **$432,000.00** |
|-----|---|---|---|---|

Nonpriority Creditor's Name
**c/o W. Allen Woolley, Esq.**
**Wildman Harrold Allens Dixon, LLP**
**225 West Wacker Drive, Suite 3000**
**Chicago, IL 60606**

Number Street City State ZIp Code

When was the debt incurred?   **n/a**

**Who incurred the debt?** Check one.

☑ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No

☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

☑ Other. Specify   **Judgment**

---

| 4.2 | **Allied Collection Service** | Last 4 digits of account number | **na** | **$318.00** |
|-----|---|---|---|---|

Nonpriority Creditor's Name
**1607 Central Ave**
**Columbus, IN 47201**

Number Street City State ZIp Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No

☐ Yes

When was the debt incurred?   **n/a**

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

☑ Other. Specify   **Hotel Bill**

---

Debtor 1   **Liza Hazan**                                     Case number (*if know*)   **16-10389**

---

| 4.3 | **ATT Mobility** | | Last 4 digits of account number | **na** | $3,910.00 |

Nonpriority Creditor's Name
**PO Box 536216**
**Atlanta, GA 30353**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**   **n/a**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Telephone Bill**

---

| 4.4 | **Bank of America** | | Last 4 digits of account number | **na** | $3,301.00 |

Nonpriority Creditor's Name
**19645 Biscayne Boulevard**
**Miami, FL 33180**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**   **2008 - present**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Safety Deposit Box Fee**

---

| 4.5 | **Direct TV** | | Last 4 digits of account number | **na** | $461.00 |

Nonpriority Creditor's Name
**PO Box 6550**
**Englewood, CO 80155-6550**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**When was the debt incurred?**   **n/a**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Cable Bill**

---

Debtor 1  **Liza Hazan**                                    Case number *(if know)*   **16-10389**

---

| 4.6 | **Enhanced Recovery Company** | Last 4 digits of account number | **na** | $123.00 |

Nonpriority Creditor's Name

**8014 Bayberry Rd**
**Jacksonville, FL 32256**
Number Street City State Zip Code

**When was the debt incurred?**    **n/a**

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Telephone Bill**

---

| 4.7 | **First National Collection Bureau, Inc.** | Last 4 digits of account number | **4558** | $246.08 |

Nonpriority Creditor's Name

**610 Waltham Way**
**Sparks, NV 89434**
Number Street City State Zip Code

**When was the debt incurred?**    **n/a**

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Bank Fees**

---

| 4.8 | **Florida Power & Light** | Last 4 digits of account number | **na** | $2,906.00 |

Nonpriority Creditor's Name

**General Mail Facility**
**Miami, FL 33188**
Number Street City State Zip Code

**When was the debt incurred?**    **2015**

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Utilities**

---

| Debtor 1 | **Liza Hazan** | Case number (if know) | **16-10389** |
|---|---|---|---|

---

| 4.9 | **Focus Management** | **Last 4 digits of account number** | **na** | **$772.00** |

Nonpriority Creditor's Name

**10284 NW 47th St**
**Fort Lauderdale, FL 33351**

Number Street City State Zip Code

**When was the debt incurred?** **n/a**

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Cable Bill**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

---

| 4.10 | **HSBC Bank USA, NA** | **Last 4 digits of account number** | **na** | **$1,070.66** |

Nonpriority Creditor's Name

**PO Box 2013**
**Buffalo, NY 14240**

Number Street City State Zip Code

**When was the debt incurred?** **2008 - present**

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Safe Deposit Box Fee**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

---

| 4.11 | **Marzec Law Firm** | **Last 4 digits of account number** | **na** | **$0.00** |

Nonpriority Creditor's Name

**225 Broadway, Suite 3000**
**New York, NY 10007**

Number Street City State Zip Code

**When was the debt incurred?** **2008 - Present**

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Legal Fees**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Debtor 1  **Liza Hazan**                                          Case number (if know)  **16-10389**

---

| 4.12 | **Mount Sinai Medical Center** | | Last 4 digits of account number | **0065** | | **$31,414.15** |

Nonpriority Creditor's Name
**PO Box 403429**
**Miami Beach, FL 33140**
Number Street City State Zip Code

When was the debt incurred?  **2015**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

■ Contingent
■ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Medical Bill**

---

| 4.13 | **Mount Sinai Medical Center** | | Last 4 digits of account number | **3615** | | **$3,240.00** |

Nonpriority Creditor's Name
**PO Box 403429**
**Miami Beach, FL 33140**
Number Street City State Zip Code

When was the debt incurred?  **11/2015**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Medical Bill**

---

| 4.14 | **Mount Sinai Medical Center** | | Last 4 digits of account number | **0491** | | **$295.91** |

Nonpriority Creditor's Name
**PO Box 403429**
**Miami Beach, FL 33140**
Number Street City State Zip Code

When was the debt incurred?  **11/2015**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify  **Medical Bill**

---

Debtor 1    **Liza Hazan**                                                    Case number (*if know*)    **16-10389**

---

| 4.15 | **Ray Garcia P.A.** | | Last 4 digits of account number | **na** | | **$7,026.15** |

Nonpriority Creditor's Name
**14850 SW 26th Street, Suite 204**
**Miami, FL 33185**
Number Street City State Zip Code

**When was the debt incurred?**    **2015**

Who incurred the debt? Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

Is the claim subject to offset?

■ No
☐ Yes

■ Other. Specify    **Legal Bills**

---

| 4.16 | **Real Time Solutions** | | Last 4 digits of account number | **na** | | **$300,000.00** |

Nonpriority Creditor's Name
**PO Box 36655**
**Dallas, TX 75235-1655**
Number Street City State Zip Code

**When was the debt incurred?**    **12/2005**

Who incurred the debt? Check one.

**As of the date you file, the claim is:** Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

Is the claim subject to offset?

■ No
☐ Yes

■ Other. Specify    **Potential Personal Mortgage Liability**

---

| 4.17 | **Simon & Sigalos** | | Last 4 digits of account number | **na** | | **$0.00** |

Nonpriority Creditor's Name
**c/o Michael Simon, Esq.**
**3839 NW Boca Raton Boulevard, Suite 100**
**Boca Raton, FL 33431**
Number Street City State Zip Code

**When was the debt incurred?**    **n/a**

Who incurred the debt? Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

Is the claim subject to offset?

☐ No
■ Yes

■ Other. Specify    **Legal Fees**

---

Debtor 1    **Liza Hazan**                                                Case number (if know)   **16-10389**

---

| 4.18 | **Southeast Financial, LLC** | | **Last 4 digits of account number** | **na** | | **$24,970.70** |

Nonpriority Creditor's Name

**4000 N. Federal Highway, Suite 200**
**Boca Raton, FL 33431**

**When was the debt incurred?**    **6/2012**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and another

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a  community debt**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify   **Potential Guaranty Liability on Vehicle Loan.**

---

| 4.19 | **Spencer Condominium** | | **Last 4 digits of account number** | **na** | | **$100,000.00** |

Nonpriority Creditor's Name

**d/b/a Halstead Management Co., LLC**
**c/o David A. Tane, Esq.**
**120 Broadway, Suite 948**
**New York, NY 10271**

**When was the debt incurred?**    **n/a**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

**As of the date you file, the claim is:** Check all that apply

☐ Debtor 2 only

■ Contingent

☐ Debtor 1 and Debtor 2 only

■ Unliquidated

■ At least one of the debtors and another

■ Disputed

☐ **Check if this claim is for a  community debt**

**Type of NONPRIORITY unsecured claim:**

**Is the claim subject to offset?**

☐ Student loans

☐ No

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ Yes

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Condominium Association Fees**

---

| 4.20 | **Sterling Emergency Serv. of Miami Beach** | | **Last 4 digits of account number** | **1086** | | **$2,445.30** |

Nonpriority Creditor's Name

**PO Box 975213**
**Dallas, TX 75397-5213**

**When was the debt incurred?**    **11/2015**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

■ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and another

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a  community debt**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify   **Medical Bill**

---

Debtor 1    **Liza Hazan**                                                Case number (if known)    **16-10389**

---

**4.21**   **Sterling Emergency Serv. of Miami Beach**          Last 4 digits of account number    **1086**                    $1,997.10

Nonpriority Creditor's Name
**PO Box 975213**
**Dallas, TX 75397-5213**                                    When was the debt incurred?    **2015**

Number Street City State Zip Code

**Who incurred the debt?** Check one.                        **As of the date you file, the claim is:** Check all that apply

☑ Debtor 1 only                                             ☐ Contingent
☐ Debtor 2 only                                             ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only                                ☐ Disputed
☐ At least one of the debtors and another                   **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**           ☐ Student loans

**Is the claim subject to offset?**                         ☐ Obligations arising out of a separation agreement or divorce that you did not
                                                             report as priority claims
☑ No
☐ Yes                                                        ☐ Debts to pension or profit-sharing plans, and other similar debts

                                                             ☑ Other. Specify   **Medical Bills**

---

**4.22**   **US Bank, NA**                                   Last 4 digits of account number    **7569**                    $0.00

Nonpriority Creditor's Name
**c/o Select Portfolio Servicing, Inc.**
**ATTN: Bankruptcy Department**                              When was the debt incurred?    **12/2005**
**PO Box 65250**
**Salt Lake City, UT 84165**

Number Street City State Zip Code                            **As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.
                                                             ☑ Contingent
☐ Debtor 1 only
☐ Debtor 2 only                                             ☑ Unliquidated
☐ Debtor 1 and Debtor 2 only                                ☑ Disputed
☑ At least one of the debtors and another                   **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**           ☐ Student loans

**Is the claim subject to offset?**                         ☐ Obligations arising out of a separation agreement or divorce that you did not
                                                             report as priority claims
☑ No
                                                             ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes
                                                             ☑ Other. Specify   **Potential Personal Liability on Mortgage Loan**

---

**4.23**   **Verizon**                                       Last 4 digits of account number    **na**                       $1,758.00

Nonpriority Creditor's Name
**PO Box 1100**
**Albany, NY 12250-0001**                                    When was the debt incurred?    **n/a**

Number Street City State Zip Code

**Who incurred the debt?** Check one.                        **As of the date you file, the claim is:** Check all that apply

☑ Debtor 1 only                                             ☐ Contingent
☐ Debtor 2 only                                             ☐ Unliquidated
☐ Debtor 1 and Debtor 2 only                                ☐ Disputed
☐ At least one of the debtors and another                   **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**           ☐ Student loans

**Is the claim subject to offset?**                         ☐ Obligations arising out of a separation agreement or divorce that you did not
                                                             report as priority claims
☑ No
                                                             ☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Yes
                                                             ☑ Other. Specify   **Telephone Bill**

---

**Part 3:**   **List Others to Be Notified About a Debt That You Already Listed**

5. **Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

Name and Address                              On which entry in Part 1 or Part 2 did you list the original creditor?
**Scott Paul Mackoff, Esq.**                  Line **4.19** of (Check one):    ☐ Part 1: Creditors with Priority Unsecured Claims

---

| Debtor 1 | **Liza Hazan** | | Case number (if know) | **16-10389** |
|---|---|---|---|---|

**Mitofsky, Shapiro, Neville & Hazen
LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016**

■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number — **na**

Name and Address
**Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.19** of (Check one):

☐ Part 1: Creditors with Priority Unsecured Claims

■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number — **na**

---

### Part 4: Add the Amounts for Each Type of Unsecured Claim

6. **Total the amounts of certain types of unsecured claims.** This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | | Total claim |
|---|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ | 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ | 398,964.24 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ | 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ | 0.00 |
| | 6e. | **Total.** Add lines 6a through 6d. | 6e. | $ | 398,964.24 |

| | | | | | Total Claim |
|---|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ | 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ | 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ | 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 918,255.05 |
| | 6j. | **Total.** Add lines 6f through 6i. | 6j. | $ | 918,255.05 |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Liza Hazan | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA | | |
| Case number | 16-10389 | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ■ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|
| Name, Number, Street, City, State and ZIP Code | |
| **2.1** | |
| Name | |
| Number          Street | |
| City          State          ZIP Code | |
| **2.2** | |
| Name | |
| Number          Street | |
| City          State          ZIP Code | |
| **2.3** | |
| Name | |
| Number          Street | |
| City          State          ZIP Code | |
| **2.4** | |
| Name | |
| Number          Street | |
| City          State          ZIP Code | |
| **2.5** | |
| Name | |
| Number          Street | |
| City          State          ZIP Code | |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | **16-10389** |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

☐ No
■ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors.** Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.

| Column 1: **Your codebtor** <br> Name, Number, Street, City, State and ZIP Code | Column 2: **The creditor to whom you owe the debt** <br> Check all schedules that apply: |
|---|---|
| 3.1    **Real Estate Holdings Group, LDC** <br> **60 Market Square** <br> **PO Box 364** <br> **Belize City, Belize** | ☐ Schedule D, line _____ <br> ■ Schedule E/F, line ___**4.16**___ <br> ☐ Schedule G _____ <br> **Real Time Solutions** |
| 3.2    **Real Estate Holdings Group, LDC** <br> **60 Market Square** <br> **PO Box 364** <br> **Belize City, Belize** | ☐ Schedule D, line _____ <br> ■ Schedule E/F, line ___**4.19**___ <br> ☐ Schedule G _____ <br> **Spencer Condominium** |
| 3.3    **Real Estate Holdings Group, LDC** <br> **60 Market Square** <br> **PO Box 364** <br> **Belize City, Belize** | ☐ Schedule D, line _____ <br> ■ Schedule E/F, line ___**4.22**___ <br> ☐ Schedule G _____ <br> **US Bank, NA** |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (If known) | **16-10389** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I

# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ☑ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | **Self Employed** | |
| | **Employer's name** | | |
| | **Employer's address** | | |
| | How long employed there? | **20 years** | |

### Part 2:    Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ **25,000.00** | $ **N/A** |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ **0.00** | +$ **N/A** |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. | $ **25,000.00** | $ **N/A** |

Debtor 1    **Liza Hazan**                                                          Case number (*if known*)    **16-10389**

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| **Copy line 4 here** | 4. | $ | **25,000.00** | $ **N/A** |

**5. List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. $ **0.00** | $ **N/A** |
| 5b. | Mandatory contributions for retirement plans | 5b. $ **0.00** | $ **N/A** |
| 5c. | Voluntary contributions for retirement plans | 5c. $ **0.00** | $ **N/A** |
| 5d. | Required repayments of retirement fund loans | 5d. $ **0.00** | $ **N/A** |
| 5e. | Insurance | 5e. $ **0.00** | $ **N/A** |
| 5f. | Domestic support obligations | 5f. $ **0.00** | $ **N/A** |
| 5g. | Union dues | 5g. $ **0.00** | $ **N/A** |
| 5h. | Other deductions. Specify: _____ | 5h.+ $ **0.00** + $ | **N/A** |

**6. Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.  6.  $ **0.00**    $ **N/A**

**7. Calculate total monthly take-home pay.** Subtract line 6 from line 4.  7.  $ **25,000.00**    $ **N/A**

**8. List all other income regularly received:**

8a. **Net income from rental property and from operating a business, profession, or farm**
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.    8a.  $ **0.00**    $ **N/A**

8b. **Interest and dividends**    8b.  $ **0.00**    $ **N/A**

8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c.  $ **0.00**    $ **N/A**

8d. **Unemployment compensation**    8d.  $ **0.00**    $ **N/A**

8e. **Social Security**    8e.  $ **0.00**    $ **N/A**

8f. **Other government assistance that you regularly receive**
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify: _____    8f.  $ **0.00**    $ **N/A**

8g. **Pension or retirement income**    8g.  $ **0.00**    $ **N/A**

8h. **Other monthly income. Specify:  Family/Friend Gifts**    8h.+ $ **2,000.00** + $ **N/A**

**9. Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.  9.  $ **2,000.00**    $ **N/A**

**10. Calculate monthly income.** Add line 7 + line 9.  10.  $ **27,000.00** + $ **N/A** = $ **27,000.00**
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

**11. State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____    11.  +$ **0.00**

**12. Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies    12.  $ **27,000.00**
**Combined monthly income**

**13. Do you expect an increase or decrease within the year after you file this form?**
☑ No.
☐ Yes. Explain: _____

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (If known) | **16-10389** |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Your Household

**1. Is this a joint case?**

■ No. Go to line 2.
☐ Yes. **Does Debtor 2 live in a separate household?**

☐ No
☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

**2. Do you have dependents?** ■ No

Do not list Debtor 1 and Debtor 2.

☐ Yes. Fill out this information for each dependent..............

Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |

**3. Do your expenses include expenses of people other than yourself and your dependents?**

■ No
☐ Yes

## Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

**Your expenses**

| | | |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 0.00 |
| **If not included in line 4:** | | |
| 4a. Real estate taxes | 4a. $ | 0.00 |
| 4b. Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. Homeowner's association or condominium dues | 4d. $ | 0.00 |
| 5. Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

| Debtor 1 | **Liza Hazan** | | | | Case number (if known) | **16-10389** | |

6. **Utilities:**

| | | | |
|---|---|---|---|
| 6a. | Electricity, heat, natural gas | 6a. $ | 800.00 |
| 6b. | Water, sewer, garbage collection | 6b. $ | 150.00 |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 500.00 |
| 6d. | Other. Specify: | 6d. $ | 0.00 |

| | | | |
|---|---|---|---|
| 7. | **Food and housekeeping supplies** | 7. $ | 3,000.00 |
| 8. | **Childcare and children's education costs** | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | 0.00 |
| 10. | **Personal care products and services** | 10. $ | 0.00 |
| 11. | **Medical and dental expenses** | 11. $ | 25.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | 400.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | 1,000.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ | 0.00 |

15. **Insurance.**
Do not include insurance deducted from your pay or included in lines 4 or 20.

| | | | |
|---|---|---|---|
| 15a. | Life insurance | 15a. $ | 0.00 |
| 15b. | Health insurance | 15b. $ | 0.00 |
| 15c. | Vehicle insurance | 15c. $ | 270.00 |
| 15d. | Other insurance. Specify: | 15d. $ | 0.00 |

| | | | |
|---|---|---|---|
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ | 0.00 |

17. **Installment or lease payments:**

| | | | |
|---|---|---|---|
| 17a. | Car payments for Vehicle 1 | 17a. $ | 0.00 |
| 17b. | Car payments for Vehicle 2 | 17b. $ | 0.00 |
| 17c. | Other. Specify: | 17c. $ | 0.00 |
| 17d. | Other. Specify: | 17d. $ | 0.00 |

| | | | |
|---|---|---|---|
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. $ | 0.00 |

20. **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.***

| | | | |
|---|---|---|---|
| 20a. | Mortgages on other property | 20a. $ | 0.00 |
| 20b. | Real estate taxes | 20b. $ | 0.00 |
| 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| 20e. | Homeowner's association or condominium dues | 20e. $ | 0.00 |

| | | | |
|---|---|---|---|
| 21. | **Other:** Specify: | 21. +$ | 0.00 |

22. **Calculate your monthly expenses**

| | | |
|---|---|---|
| 22a. Add lines 4 through 21. | $ | 6,145.00 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 6,145.00 |

23. **Calculate your monthly net income.**

| | | | |
|---|---|---|---|
| 23a. | Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 27,000.00 |
| 23b. | Copy your monthly expenses from line 22c above. | 23b. -$ | 6,145.00 |
| 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | 20,855.00 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes. | Explain here: |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name　　　　Middle Name　　　　Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name　　　　Middle Name　　　　Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number | **16-10389** |
| (if known) | |

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

| X **/s/ Liza Hazan** | X |
|---|---|
| **Liza Hazan** | Signature of Debtor 2 |
| Signature of Debtor 1 | |

| Date **February 10, 2016** | Date |
|---|---|

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com　　　Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | 16-10389 |

☐ Check if this is an amended filing

# Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy          12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1. **What is your current marital status?**

   ■ Married
   ☐ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**

   ■ No
   ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

   ■ No
   ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2      Explain the Sources of Your Income**

4. **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
   Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
   If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

   ☐ No
   ■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | $0.00 | ☐ Wages, commissions, bonuses, tips | |
| | ■ Operating a business | | ☐ Operating a business | |

Debtor 1    **Liza Hazan**                                    Case number *(if known)*   16-10389

|  | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
|  | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and<br>exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions<br>and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2015 ) | ☐ Wages, commissions,<br>bonuses, tips<br>■ Operating a business | $15,000.00 | ☐ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2014 ) | ☐ Wages, commissions,<br>bonuses, tips<br>■ Operating a business | $392,018.00 | ☐ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | |

5.  **Did you receive any other income during this year or the two previous calendar years?**
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    ☐ No
    ■ Yes. Fill in the details.

|  | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
|  | **Sources of income**<br>Describe below.. | **Gross income**<br>(before deductions and<br>exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions<br>and exclusions) |
| **For the calendar year before that:**<br>(January 1 to December 31, 2014 ) | **Rental Income (9 days)** | $29,000.00 | | |

### Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
    ☐ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,225* or more?
    ☐ No.    Go to line 7.
    ☐ Yes    List below each creditor to whom you paid a total of $6,225* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
    * Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.

    ■ Yes.    **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

    ■ No.    Go to line 7.
    ☐ Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount<br>paid | Amount you<br>still owe | Was this payment for ... |
|---|---|---|---|---|
| | | | | |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                                              Best Case Bankruptcy

| Debtor 1 | Liza Hazan | Case number (if known) | 16-10389 |
|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

### Part 4:   Identify Legal Actions, Repossessions, and Foreclosures

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| JP Morgan Chase Bank, NA v. Hazan 2013-025902-CA01 | Residential Foreclosure | Circuit Court of Miami-Dade County 73 West Flagler Street Miami, FL 33130 | ■ Pending ☐ On appeal ☐ Concluded |
| NLG (LLC) v. Hazan 2011-042770-CA-01 | Residential Foreclosure | Miami-Dade County Circuit Court 73 West Flagler Street Miami, FL 33130 | ■ Pending ☐ On appeal ☐ Concluded |
| Valencia Estates Homowners Ass'n, Inc. v. Hazan 2010-056030-CA-01 | Unpaid Condominium Association Fees | Miami-Dade County Circuit Court 73 West Flagler Street Miami, FL 33130 | ■ Pending ☐ On appeal ☐ Concluded |
| NLG (LLC) v. Hazan 2007-019532-CA-01 | Contract & Indebtedness | Miami-Dade County Circuit Court 73 West Flagler Street Miami, FL 33130 | ■ Pending ☐ On appeal ☐ Concluded |
| Board of Managers of the Spencer Condominium v. Hazan, et al. 154149-2012 | Unpaid Condominium Association Fees | Supreme Court of New York County 60 Centre Street New York, NY 10007 | ☐ Pending ☐ On appeal ■ Concluded |
| | | | **Settled and Stayed** |

| Debtor 1 | Liza Hazan | | Case number *(if known)* | 16-10389 |

| Case title Case number | Nature of the case | Court or agency | Status of the case | |
|---|---|---|---|---|
| **Real Estate Holdings Group, LLC v. Spencer Condominium** 159254-2013 | **Breach of Contract** | **Supreme Court of New York County 60 Centre Street New York, NY 10007** | ☐ Pending ☐ On appeal ■ Concluded **Settled and Stayed** | |
| **US Bank, NA v. Hazan, et al.** 850240-2014 | **Residential Foreclosure** | **Supreme Court of New York County 60 Centre Street New York, NY 10007** | ■ Pending ☐ On appeal ☐ Concluded | |
| **Newman Ferrara LLP v. Hazan, et al.** 028100-2014 | **Contract & Indebtedness** | **Supreme Court of New York County 60 Centre Street New York, NY 10007** | ■ Pending ☐ On appeal ☐ Concluded | |
| **S&S Collections, Inc. v. Hazan** 2015-CA-008231 | **Contract & Indebtedness** | **Palm Beach County Circuit Court 205 N. Dixie Highway West Palm Beach, FL 33401** | ■ Pending ☐ On appeal ☐ Concluded | |
| **Spencer Condominium v. Hazan** 111644-2009 | **Unpaid Condominium Fees** | **Supreme Court of New York County 60 Centre Street New York, NY 10007** | ☐ Pending ☐ On appeal ■ Concluded **Settled and Stayed** | |
| **Fisher Island Homeowners Assoc. v. Hazan** 2008-004519-CA-01 | **Unpaid Homeowners Association Fees** | **Miami-Dade County Circuit Court 73 West Flagler Street Miami, FL 33132** | ☐ Pending ☐ On appeal ■ Concluded **Settled and Stayed** | |

10. Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied? Check all that apply and fill in the details below.

☐ No
■ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property Explain what happened | Date | Value of the property |
|---|---|---|---|
| **Presidential Auto Leasing & Sales 3201 South Federal Highway Delray Beach, FL 33483** | **2007 Aston Martin** ■ Property was repossessed. ☐ Property was foreclosed. ☐ Property was garnished. ☐ Property was attached, seized or levied. | **6/2015** | **$57,000.00** |

11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?

■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

| Debtor 1 | **Liza Hazan** | Case number *(if known)* | 16-10389 |

---

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☑ No
☐ Yes

**Part 5:   List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☑ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
| --- | --- | --- | --- |
| | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity**

☑ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that  total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
| --- | --- | --- | --- |
| | | | |

**Part 6:   List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☑ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
| --- | --- | --- | --- |
| | | | |

**Part 7:   List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
☑ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |
| Aaronson Schantz Beiley P.A.<br>100 SE 2nd Street, 27th Floor<br>Miami, FL 33131<br>www.aspalaw.com<br>Portefolio Onesource Advisor, LLC | $5,000.00 in cash and prepetition assignment of $15,000.00 account receivable. | 1/11/2015 | $20,000.00 |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com

Debtor 1 **Liza Hazan**  Case number *(if known)* **16-10389**

---

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

| Person Who Was Paid Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☑ No
☐ Yes. Fill in the details.

| Person Who Received Transfer Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
| --- | --- | --- | --- |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

☑ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
| --- | --- | --- |

**Part 8:** List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☐ No
☑ **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
| --- | --- | --- | --- | --- |
| **Chase Bank**<br>**270 Park Avenue**<br>**(Corporate Mailing Address)**<br>**New York, NY 10017** | **XXXX-8162** | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **November 10.**<br>**2015** | **$100.56** |
| **HSBC Bank**<br>**301 West 41st Street**<br>**Miami Beach, FL 33140** | **XXXX-4471** | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **January 7, 2016** | **$0.00** |
| **Wells Fargo Bank**<br>**1901 Alton Road**<br>**Miami Beach, FL 33139** | **XXXX-9019** | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **Account closed**<br>**by bank within**<br>**last year.** | **Unknown** |

| Debtor 1 | Liza Hazan | Case number (*if known*) | 16-10389 |
|---|---|---|---|

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| Chase Bank<br>270 Park Avenue<br>(Corporate Mailing Address)<br>New York, NY 10017 | XXXX-6730 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | March 3, 2015 | $513.33 |
| Wells Fargo Bank<br>1901 Alton Road<br>Miami Beach, FL 33139 | XXXX-7960 | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | Account closed by bank with last year. | Unknown |
| Wells Fargo Bank<br>1901 A;tpm Road<br>Miami Beach, FL 33139 | XXXX-9254 | ☐ Checking<br>■ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | Account closed by bank within last year. | Unknown |
| Wells Fargo Bank<br>1901 Alton Road<br>Miami Beach, FL 33139 | XXXX-4108 | ☐ Checking<br>■ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other__ | Account closed by bank within last year. | Unknown |

21. Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

☐ No
■ Yes. Fill in the details.

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|
| Bank of America<br>19645 Biscayne Boulevard<br>Miami, FL 33180 | Elizabeth Hazan<br>6913 Valencia Drive<br>Miami Beach, Florida 33109 | Safe Deposit Box Numbers: 001022027640; 001022053199; 001022053201; 001022002816<br><br>The Debtor is unaware of the contents of the safe deposit box as she has not had access for several years. | ☐ No<br>■ Yes |
| HSBC<br>452 Fifth Avenue<br>New York, NY 10018 | Elizabeth Hazan<br>6913 Fisher Island Drive<br>Miami Beah, Florida 33109 | Safe Deposit Box Number 1-0610-0000451-9<br><br>The Debtor is unaware of the contents of the safe deposit box as she has not had access for several years. | ☐ No<br>■ Yes |
| BB&T Bank<br>1691 Michigan Avenue, Suite 100<br>Miami Beach, FL 33139 | Elizabeth Hazan<br>6913 Fisher Island Drive<br>Miami Beach, Florida 33109 | Unknown. Contents of safety deposit box were escheated to State of Florida in 2015. | ■ No<br>☐ Yes |

Debtor 1    **Liza Hazan**                                                              Case number *(if known)*    **16-10389**

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy**

☐ **No**
☑ **Yes. Fill in the details.**

| Name of Storage Facility<br>**Address** (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>**Address** (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|
| **Manhattan Mini-Storage**<br>**420 E. 62 Street**<br>**New York, NY 10065** | **Elizabeth Hazan**<br>**6913 Fisher Island Drive**<br>**Miami Beach, Florida**<br>**33109**<br><br>**Sean Meehan**<br>**6913 Fisher Island Drive**<br>**Miami Beach, Florida**<br>**33109** | **Clothes, shoes, documents, and other personal items. Contents of storage unit were removed and shipped back to Debtor in August 2015. All contents are listed on Debtor's Schedule B.** | ☑ **No**<br>☐ **Yes** |

**Part 9:    Identify Property You Hold or Control for Someone Else**

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

☑ **No**
☐ **Yes. Fill in the details.**

| Owner's Name<br>**Address** (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:    Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

☑ **No**
☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

☑ **No**
☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

Debtor 1   Liza Hazan                                                    Case number (if known)   16-10389

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|
| | | | |

**Part 11:**   Give Details About Your Business or Connections to Any Business

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies.  Go to Part 12.

■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| Holding Trust Management Group, LLC<br>3839 NW Boca Raton Boulevard<br>Boca Raton, FL 33431 | Holding Company<br><br>n/a | EIN:   80-0896540<br><br>From-To   2012 - Present |
| Crystal Holdings Group, LLC<br>311 West Third Street<br>Carson City, NV 89703 | Nightclub Developer<br><br>n/a | EIN:   n/a<br><br>From-To   2013 - present |
| Amercian Hospitality Group, Inc.<br>1 East 62nd Street, Apt. 1a<br>New York, NY 10065 | Hospitality - Debtor's relationship with business ended in 2013<br><br>n/a | EIN:   900817890<br><br>From-To   2013 - present |
| American Hospitality Holdings, LLC<br>800 Delaware Avenue, 10th Floor<br>PO Box 8702<br>Wilmington, DE 19899 | Hospitality Holding Company - Debtor's relationship with business ended in 2013<br><br>n/a | EIN:   5213770<br><br>From-To   2012 - present |
| American Hospitality Holdings Group, LLC<br>1 East 62nd Street, APT 1a<br>New York, NY 10065 | Hospitality - Debtor's relationship with business ended in 2013<br><br>n/a | EIN:   900817890<br><br>From-To   2013 - present |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ No
☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1    **Liza Hazan**                                          Case number *(if known)*   **16-10389**

---

**Part 12:    Sign Below**

**I have read the answers on this** *Statement of Financial Affairs* **and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.**
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**/s/ Liza Hazan**
_____                    _____
**Liza Hazan**                                                             **Signature of Debtor 2**
**Signature of Debtor 1**

Date    **February 10, 2016**                                    Date    _____
_____

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**
■ **No**
☐ **Yes**

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
■ **No**
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

# Notice Required by 11 U.S.C. § 342(b) for
# Individuals Filing for Bankruptcy (Form 2010)

**This notice is for you if:**

> **You are an individual filing for bankruptcy,** and

> **Your debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan for family farmers or fishermen

Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
| --- | --- |
| $245 | filing fee |
| $75 | administrative fee |
| + $15 | trustee surcharge |
| $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their nonexempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

## Chapter 11: Reorganization

|   | $1,167 | filing fee |
|---|---|---|
| + | $550 | administrative fee |
|   | $1,717 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|---|---|
| + | $75 | administrative fee |
|   | $275 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

---

### Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|---|---|
| + | $75 | administrative fee |
|   | $310 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

**Warning: File Your Forms on Time**

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

### Bankruptcy crimes have serious consequences

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

### Make sure the court has your mailing address

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

### Understand which services you could receive from credit counseling agencies

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html.

In Alabama and North Carolina, go to: http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyResources/ApprovedCredit AndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

## United States Bankruptcy Court
### Southern District of Florida

In re   **Liza Hazan**                                                         Case No.   **16-10389**

                                                        Debtor(s)            Chapter    **11**

## VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:   **February 10, 2016**                   **/s/ Liza Hazan**

                                                     **Liza Hazan**

                                                     Signature of Debtor

**Fill in this information to identify your case:**

Debtor 1 __Liza Hazan__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: __Southern District of Florida__

Case number __16-10389__
(if known)

☐ Check if this is an amended filing

## Official Form 122B
## Chapter 11 Statement of Your Current Monthly Income
12/15

You must file this form if you are an individual and are filing for bankruptcy under Chapter 11. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On top of any additional pages, write your name and case number (if known).

| **Part 1:** | **Calculate Your Current Monthly Income** |
| --- | --- |

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married**. Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☑ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

**Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case.** 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

|  |  | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
| --- | --- | --- | --- |
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 25,000.00 | $ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ 0.00 | $ |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | |
| --- | --- | --- | --- | --- |
| Gross receipts (before all deductions) | $ | 0.00 | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | |
| Net monthly income from a business, profession, or farm | $ | 0.00 | Copy here -> $ 0.00 | $ |

6. **Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | |
| --- | --- | --- | --- | --- |
| Gross receipts (before all deductions) | $ | 0.00 | | |
| Ordinary and necessary operating expenses | -$ | 0.00 | | |
| Net monthly income from rental or other real property | $ | 0.00 | Copy here -> $ 0.00 | $ |

Debtor 1   **Liza Hazan**                                    Case number (*if known*)   **16-10389**

| | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
|---|---|---|
| 7.  **Interest, dividends, and royalties** | $          0.00 | $ |
| 8.  **Unemployment compensation** | $          0.00 | $ |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you ................................................................ $ _____ **0.00**

For your spouse ...................................... $ _____

9.  **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act.

$          0.00    $

10.  **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism.

If necessary, list other sources on a separate page and put the total below.

| | | |
|---|---|---|
| | $ _____ | $ _____ |
| | $          0.00 | $ _____ |
| Total amounts from separate pages, if any. | + $          0.00 | $ _____ |

11.  **Calculate your total current monthly income.**

Add lines 2 through 10 for each column.

Then add the total for Column A to the total for Column B.

$   **25,000.00**   + $ _____   = $   **25,000.00**

Debtor 1    **Liza Hazan**                                          Case number (*if known*)    **16-10389**

---

| **Part 2:** | **Sign Below** |

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

**X** **/s/ Liza Hazan**

    **Liza Hazan**
    Signature of Debtor 1

Date    **February 17, 2016**
    MM / DD  / YYYY

---

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| IN RE:<br>**LIZA HAZAN**<br>*aka* **ELIZABETH HAZAN**<br><br>      **DEBTOR.** | **CASE NO.: 16-10389-AJC**<br><br>**CHAPTER: 11** |

## NOTICE OF FILING AND SUPPLEMENTAL RESPONSE
## TO NLG'S MOTION FOR RELIEF FROM AUTOMATIC STAY

LIZA HAZAN a/k/a ELIZABETH HAZAN, Debtor ("Hazan"), by and through her undersigned counsel, by way of Supplemental Response to Motion for Relief from Stay filed by NLG, LLC ("NLG"), hereby files certain documents, and respectfully states:

### APPRAISAL

1.    Attached as **Exhibit "A"** is Debtor's appraisal of the property.

### TRANSCRIPT

2.    Attached as **Exhibit "B"** is the full transcript of hearing on November 10, 2015, before the Miami-Dade Circuit Court, Case No. 14-10475 CA (01) (10), Judge Peter Lopez, on "Defendant, NLG, LLC's Motion to Reconsider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and for Order Impleading Third Party" wherein, *AFTER* the issuance of the 3rd DCA Decision and Mandate, NLG asserted the very same arguments it now asserts in this Court to no avail. Judge Lopez reasserted that the NLG claim had been judicially assigned and that Selective had stepped into the shoes of NLG in respect to the appeal.

> THE COURT: That judgment that I assigned to them or that interest in that judgment was up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win or lose, whatever happens, now these people own it instead of you. The Third came back and said, too bad, you get to foreclose, they

1

[Selective] now own that judgment or note if that's what merged into it, they [Selective] get to go and foreclose. I had nothing to do –

MR. RAMIREZ: It's the same people, Judge.

THE COURT: It doesn't matter to me who they were, what they were. That's not my fight…

Pg. 26 of Transcript, Exh "B."

## SUPPLEMENTAL RESPONSE TO REPLY

3.      NLG asserts that it is in first position on the property.  Aside from the fact that NLG has *NO* position, as it was judicially assigned to Selective, the Selective position is subject to the first mortgage rights of JPMorgan Chase Bank N.A. and the rights of Valencia Estates Homeowners' Association, Inc. and Fisher Island Community Association, Inc.

4.      There clearly is equity in the property. Selective has satisfied the former NLG mortgage (assigned to Selective).  The Debtor's appraisal would indicate at least $3.5 Million dollars in equity in the property.

5.      Not only would a Plan be feasible by the sale or refinance of the house, but the Debtor has demonstrated an ability to earn well over $400,000 a year in consulting income, funds sufficient to maintain and carry the property pending a sale or refinance.  A plan is clearly feasible in this case.

WHEREFORE, the NLG Motion for Stay Relief should be denied, and the Court should enter any other and further relief it deems appropriate under these circumstances.

//
//
//
//
//
//
//
//

2

Respectfully submitted,

Aaronson Schantz Beiley P.A.

/s/ Geoffrey S Aaronson
Geoffrey S Aaronson, Esq.
Florida Bar No. 349623
Miami Tower
100 S.E. 2nd Street, Floor 27
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Debtor*

**APPRAISAL 1 Inc.**
**8233 NW 200 terrace Hialeah Fl. 33015**



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

6913 Valencia Dr
See attached addenda.
Miami Beach, FL 33109

## FOR:

N/A

## AS OF:

04/20/2016

## BY:

Negasi S. Abraha, Cert Res RD 4731

# RESIDENTIAL APPRAISAL REPORT

File No.: 1605-002

## SUBJECT

| | |
|---|---|
| Property Address: 6913 Valencia Dr | City: Miami Beach   State: FL   Zip Code: 33109 |

County: Miami-Dade     Legal Description: See attached addenda.

Assessor's Parcel #: 30-4209-016-0070

Tax Year: 2015   R.E. Taxes $ 57,649   Special Assessments: $ 0   Borrower (if applicable): N/A

Current Owner of Record: Elizabeth Hazan    Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing

Project Type: ☒ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe)    HOA: $ 0   ☐ per year ☒ per month

Market Area Name: Lindisfarne    Map Reference: 33124    Census Tract: 0045.00

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: The Intended Use is to evaluate the property that is the subject of this appraisal to ascertain market value only, subject to the stated Scope of Work, purpose of this appraisal, reporting requirements of this appraisal report form, and Definition of Market Value.

Intended User(s) (by name or type): Owner

Client: N/A    Address: N/A

Appraiser: Negasi S. Abraha, Cert Res RD 4731    Address: 8233 NW 200 terrace, Hialeah, FL 33015

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | | Change in Land Use | |
|---|---|---|---|---|---|---|---|---|
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit | 80 % | ☒ Not Likely | |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner 90 | 3mil Low | 05 | 2-4 Unit | 5 % | ☐ Likely * | ☐ In Process * |
| Property values: | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant 10 | 15 mil High | 65 | Multi-Unit | 5 % | * To: | |
| Demand/supply: | ☐ Shortage ☒ In Balance ☐ Over Supply | ☐ Vacant (0-5%) | 8 mil Pred | 40 | Comm'l | 10 % | | |
| Marketing time: | ☐ Under 3 Mos. ☒ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | | | | % | | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): See attached addenda. The Subject property is bounded by MacArthur Causeway to the North, Fishermans Channel to the West, South Pointe Park to the East, and Norris Cut St to the South.

## SITE DESCRIPTION

Dimensions: (Not Available)    Site Area: 12,393 sf

Zoning Classification: RU-4A    Description: Single Family Residential

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown   Have the documents been reviewed? ☐ Yes ☒ No   Ground Rent (if applicable) $ /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Single Family Residential    Use as appraised in this report: Residential

Summary of Highest & Best Use: (See addendum)

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Typical |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Public | Street | Asphalt | ☐ | ☒ | Size | 12,393 sf |
| Gas | ☒ | ☐ | Natural Gas | Curb/Gutter | Concrete | ☐ | ☒ | Shape | Rectangular |
| Water | ☒ | ☐ | Public | Sidewalk | None | ☐ | ☐ | Drainage | Adequate |
| Sanitary Sewer | ☒ | ☐ | Public | Street Lights | Electric | ☐ | ☒ | View | B;Glfvw; |
| Storm Sewer | ☒ | ☐ | Public | Alley | None | ☐ | ☐ | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☒ Yes ☐ No   FEMA Flood Zone AE   FEMA Map # 12086C0319L   FEMA Map Date 09/11/2009

Site Comments: There are no apparent adverse easements or encroachments observed at the time of inspection. There are no known special assessments and zoning issues (Subject to survey and title report). The current use is considered the highest and best use of the subject property.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | FWA |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 ☐ Acc.Unit | Foundation | Concrete/Avg | Slab | Yes | Area Sq. Ft. | 0 | Type | Central |
| # of Stories | 1 | Exterior Walls | CBS Avg. | Crawl Space | None | % Finished | 0 | Fuel | Ntl. Gas |
| Type ☒ Det. ☐ Att. ☐ | | Roof Surface | Barrel/Avg | Basement | None | Ceiling | | | |
| Design (Style) Traditional | | Gutters & Dwnspts. | Alumin/avg | Sump Pump ☐ | | Walls | | Cooling | CA |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Single hung/Avg | Dampness ☐ | | Floor | | Central | X |
| Actual Age (Yrs.) 13 | | Storm/Screens | Yes/Yes | Settlement | None | Outside Entry | | Other | |
| Effective Age (Yrs.) 06 | | | | Infestation | None | | | | |

| Interior Description | | Appliances | | Attic ☐ None | Amenities | | Car Storage | ☒ None |
|---|---|---|---|---|---|---|---|---|
| Floors | Marble/Avg | Refrigerator ☒ | Stairs ☐ | Fireplace(s) # 1 | Woodstove(s) # 0 | Garage # of cars ( 4 Tot.) | |
| Walls | Drywall/Avg. | Range/Oven ☒ | Drop Stair ☐ | Patio Patio | | Attach. 2 | |
| Trim/Finish | Wood/Avg | Disposal ☐ | Scuttle ☒ | Deck None | | Detach. | |
| Bath Floor | Tile Avg | Dishwasher ☐ | Doorway ☐ | Porch None | | Blt.-In | |
| Bath Wainscot | Tile/Avg | Fan/Hood ☒ | Floor ☒ | Fence None | | Carport | |
| Doors | Wood./Avg | Microwave ☐ | Heated ☐ | Pool Pool | | Driveway 2 | |
| | | Washer/Dryer ☒ | Finished ☐ | | | Surface Concrete | |

Finished area above grade contains: 6 Rooms   3 Bedrooms   3.1 Bath(s)   3,893 Square Feet of Gross Living Area Above Grade

Additional features: Any notable additional features not elsewhere addressed in the body of this report are discussed in the supplemental addendum section under the heading "Additional Features".

Describe the condition of the property (including physical, functional and external obsolescence): C4; updates in the last 10 years;Physical depreciation is the result of normal wear and tear. No functional floor plan inadequacies were considered to exist in the subject's floor plan. No external obsolescence was considered to exist within the subject's neighborhood. Appraiser was retained to estimate market value. No warranties are implied to structural or mechanical componets on property.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

# RESIDENTIAL APPRAISAL REPORT

File No.: 1605-002

## TRANSFER HISTORY

| | |
|---|---|
| My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. | |
| Data Source(s): Fares/Public Record | |
| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: All Sales of the Subject and Comparable |
| Date: | within the last 3 years are noted in the above Appraisal Grid. |
| Price: | |
| Source(s): MLS,Public Rec | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

## SALES COMPARISON APPROACH

**SALES COMPARISON APPROACH TO VALUE (if developed)** ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 6913 Valencia Dr | 295 N Coconut Ln | | 1600 w 25 st | | 429 N Hibiscus Dr | |
| | Miami Beach, FL 33109 | Miami Beach, FL 33139 | | Miami Beach, FL 33139 | | Miami Beach, FL 33139 | |
| Proximity to Subject | | 1.80 miles NW | | 2.60 miles N | | 1.88 miles NW | |
| Sale Price | $ 15,000,000 | | $ 5,580,000 | | $ 8,200,000 | | $ 6,450,000 |
| Sale Price/GLA | $ 3,853.07 /sq.ft. | $ 1,230.43 /sq.ft. | | $ 2,260.20 /sq.ft. | | $ 1,532.07 /sq.ft. | |
| Data Source(s) | Inspection | SEF/MLS#A2208115;DOM 42 | | SEF/MLS#A2012619;DOM 248 | | SEF/MLS#;DOM | |
| Verification Source(s) | Assessor/Realto | Assessor/Realtor | | Assessor/Realtor | | Assessor/Realtor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | 0 | Arms Length | | Arms Length | | ArmLth | |
| Concessions | | Cash;0 | | Conv;0 | | Cash;0 | |
| Date of Sale/Time | Unknown | s01/16;c01/16 | +153,000 | s08/15;c06/15 | +601,000 | s06/15;Unk | +591,000 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Site | 12,393 sf | 8,828 sf | +20,000 | 24,080 sf | -70,000 | 13,781 sf | 0 |
| View | B;Glfvw; | B;Wtr; | | B;Wtr; | | B;Wtr; | |
| Design (Style) | Traditional | Traditional | | Traditional | | Ranch | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Age | 13 | 62 | +490,000 | 65 | +520,000 | 22 | +90,000 |
| Condition | C4 | C4 | | C4 | | C4 | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6 3 3.1 | 7 4 4.1 | -10,000 | 7 4 4 | -5,000 | 8 5 4 | -5,000 |
| Gross Living Area | 3,893 sq.ft. | 4,535 sq.ft. | -80,200 | 3,628 sq.ft. | +33,100 | 4,210 sq.ft. | -39,600 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/ CA | FWA/ CA | | FWA/ CA | | FWA/ CA | |
| Energy Efficient Items | Typical Items | Typical Items | | Typical Items | | Typical Items | |
| Garage/Carport | 2 Car Garage | None | +20,000 | None | +20,000 | 2 Car Garage | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Kitchen Equipment | Standard | Standard | | Standard | | Standard | |
| Pool | Pool | Pool | | Pool | | Pool | |
| DOM | 152 | 42 | | 42 | | | 0 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 592,800 | ☒ + ☐ - | $ 1,099,100 | ☒ + ☐ - | $ 636,400 |
| Adjusted Sale Price of Comparables | | | $ 6,172,800 | | $ 9,299,100 | | $ 7,086,400 |

Summary of Sales Comparison Approach    The market data show a range in value from $6,172,800 to $15,272,000 All these sales are similar to the
Subject and given equal consideration, give a very accurate estimate of the Subject Property.
Market data obtained from the MLS is assumed to be correct. In the event square footage is not available on the MLS, county assessor
records are used. Site adjustments, if any, are made according to site value and not necessarily  to site size. Specific comments concerning
the appraiser's approach to market value including specific comments concerning this property are located in the supplemental addenda.

Indicated Value by Sales Comparison Approach $    9,500,000

**GP** RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3/2007

# RESIDENTIAL APPRAISAL REPORT

File No.: 1605-002

**COST APPROACH TO VALUE (if developed)** ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):    N/A

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | |
|---|---|---|---|---|
| Source of cost data: | DWELLING | Sq.Ft. @ $ | =$ | |
| Quality rating from cost service:    Effective date of cost data: | 0 Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | =$ | |
| | | Sq.Ft. @ $ | =$ | |
| | | Sq.Ft. @ $ | =$ | |
| | | | =$ | |
| | Garage/Carport | Sq.Ft. @ $ | =$ | |
| | Total Estimate of Cost-New | | =$ | |
| | Less    Physical | Functional | External | |
| | Depreciation | | =$( | ) |
| | Depreciated Cost of Improvements | | =$ | |
| | "As-is" Value of Site Improvements | | =$ | |
| | | | =$ | |
| | | | =$ | |
| Estimated Remaining Economic Life (if required):    54 Years | **INDICATED VALUE BY COST APPROACH** | | =$ | 0 |

**INCOME APPROACH TO VALUE (if developed)** ☒ The Income Approach was not developed for this appraisal.

| Estimated Monthly Market Rent $    0    X Gross Rent Multiplier    = $    **Indicated Value by Income Approach** |
|---|

Summary of Income Approach (including support for market rent and GRM):

**PROJECT INFORMATION FOR PUDs (if applicable)** ☒ The Subject is part of a Planned Unit Development.

Legal Name of Project:    Lindisfarne

Describe common elements and recreational facilities:

| Indicated Value by: Sales Comparison Approach $ 9,500,000    Cost Approach (if developed) $ 0    Income Approach (if developed) $ |
|---|

Final Reconciliation    It is the opinion of the appraiser that the Sales Comparison Approach to Value, supported by the Cost Approach, gives the most accurate estimate of the Subject's current Market Value.  This area is primarily owner occupied and there is little or no rental data to substantiate the use of the Income Approach.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed,  ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:    Personal property is not considered in this report.  No liability is assumed for property structural or mechanical elements. It is assumed that the mechanical and electrical systems on the property are in working order.

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

**Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:  $      9,500,000      , as of:      04/20/2016      , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.  See attached addenda.**

A true and complete copy of this report contains _____ pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Scope of Work        ☐ Limiting Cond./Certifications    ☐ Narrative Addendum    ☒ Photograph Addenda    ☒ Sketch Addendum
☒ Map Addenda         ☒ Additional Sales         ☐ Cost Addendum        ☐ Flood Addendum        ☐ Manuf. House Addendum
☐ Hypothetical Conditions    ☐ Extraordinary Assumptions

Client Contact:  Elizabeth Hazan        Client Name:    N/A

E-Mail:  Sean Meehan <seannmeehan@gmail.com>    Address:    N/A

**APPRAISER**

**SUPERVISORY APPRAISER (if required)
or CO-APPRAISER (if applicable)**

Appraiser Name:    Negasi S. Abraha, Cert Res RD 4731
Company:    Appraisal 1 Inc.
Phone:  786-234-8393        Fax:  855-450-1192
E-Mail:  appraisal1inc@yahoo.com
Date of Report (Signature):    May 25, 2016
License or Certification #:    RD 4731        State:  FL
Designation:
Expiration Date of License or Certification:    11/30/2016
Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None
Date of Inspection:        04/20/2016

Supervisory or
Co-Appraiser Name:
Company:
Phone:            Fax:
E-Mail:
Date of Report (Signature):
License or Certification #:            State:
Designation:
Expiration Date of License or Certification:
Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☐ None
Date of Inspection:

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                3/2007

## ADDITIONAL COMPARABLE SALES

File No.: 1605-002

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 6913 Valencia Dr | 350 S Hibiscus Dr | | 6919 Valencia Dr | | 1620 W 21st St | |
| | Miami Beach, FL 33109 | Miami Beach, FL 33139 | | Miami Beach, FL 33109 | | Miami Beach, FL 33140 | |
| Proximity to Subject | | 1.72 miles NW | | 0.03 miles S | | 2.31 miles N | |
| Sale Price | $ 15,000,000 | $ 7,050,000 | | $ 15,500,000 | | $ 13,900,000 | |
| Sale Price/GLA | $ 3,853.07 /sq.ft. | $ 1,658.43 /sq.ft. | | $ 2,718.82 /sq.ft. | | $ 2,392.43 /sq.ft. | |
| Data Source(s) | Inspection | SEF/MLS#A2041873;DOM 154 | | SEF/MLS#A10071427;DOM 30 | | SEF/MLS#A2166858;DOM 267 | |
| Verification Source(s) | Assessor/Realto | Assessor/Realtor | | Assessor/Realtor | | Assessor/Realtor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | ArmLth | | Listing | | Listing | |
| Concessions | 0 | Cash;0 | | Active;0 | | Active;0 | |
| Date of Sale/Time | Unknown | s05/15;c05/15 | +710,000 | Active | | Active | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Site | 12,393 sf | 15,750 sf | -15,000 | 11,628 sf | 0 | 8,700 sf | +20,000 |
| View | B;Glfvw; | B;Wtr; | | B;Glfvw; | | B;Wtr; | |
| Design (Style) | Traditional | Split Level | | Traditional | | Traditional | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Age | 13 | 40 | +270,000 | 14 | | 26 | +130,000 |
| Condition | C4 | C4 | | C4 | | C4 | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 6 / 3 / 3.1 | 10 / 7 / 6 | -25,000 | 8 / 5 / 5.1 | -2,000 | 9 / 6 / 6.1 | -30,000 |
| Gross Living Area | 3,893 sq.ft. | 4,251 sq.ft. | -44,800 | 5,701 sq.ft. | -226,000 | 5,810 sq.ft. | -239,600 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/ CA | FWA/ CA | | FWA/ CA | | FWA/ CA | |
| Energy Efficient Items | Typical Items | Typical Items | | Typical Items | | Typical Items | |
| Garage/Carport | 2 Car Garage | 2 Car Carport | +15,000 | 2 Car Garage | | None | +20,000 |
| Porch/Patio/Deck | Patio | Patio | | Patio/Deck | | Patio/Deck | |
| Kitchen Equipment | Standard | Standard | | Standard | | Standard | |
| Pool | Pool | Pool | | Pool | | Pool | |
| DOM | 152 | 154 | 0 | 30 | | 267 | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 910,200 | ☐ + ☒ - | $ -228,000 | ☐ + ☒ - | $ -99,600 |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | | $ 7,960,200 | | $ 15,272,000 | | $ 13,800,400 |

Summary of Sales Comparison Approach

*(SALES COMPARISON APPROACH)*

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

Form GPRES2.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3/2007

# USPAP Compliance Addendum

Loan #
File # 1605-002

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 6913 Valencia Dr |
| City | Miami Beach | County Miami-Dade | State FL | Zip Code 33109 |
| Lender | N/A |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☒ Appraisal Report — This report was prepared in accordance with the requirements of the Appraisal Report option of USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with the requirements of the Restricted Appraisal Report option of USPAP Standards Rule 2-2(b). The intended user of this report is limited to the identified client. This is a Restricted Appraisal Report and the rationale for how the appraiser arrived at the opinions and conclusions set forth in the report may not be understood properly without the additional information in the appraiser's workfile.

## ADDITIONAL CERTIFICATIONS

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The report analyses, opinions, and conclusions are limited only by the reported assumptions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or specified) personal interest with respect to the parties involved.

- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analyses, opinions, and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- This appraisal report was prepared in accordance with the requirements of Title XI of FIRREA and any implementing regulations.

## PRIOR SERVICES

☒ I have **NOT** performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I **HAVE** performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

## PROPERTY INSPECTION

☐ I have **NOT** made a personal inspection of the property that is the subject of this report.

☒ I **HAVE** made a personal inspection of the property that is the subject of this report.

## APPRAISAL ASSISTANCE

Unless otherwise noted, no one provided significant real property appraisal assistance to the person signing this certification. If anyone **did provide significant** assistance, they **are** hereby identified along with a summary of the extent of the assistance provided in the report.

## ADD

Additional USPAP related issues requiring disclosure and/or any state mandated requirements:

## MAR

☒ A reasonable marketing time for the subject property is _30_ day(s) utilizing market conditions pertinent to the **appraisal assignment**.

☒ A reasonable exposure time for the subject property is _30_ day(s).

## APP NLY IF REQUIRED)

| | |
|---|---|
| Signature | Signature |
| Name Negasi S. Abraha, Cert Res RD 4731 | Name |
| Date of Signature May 25, 2016 | Date of Signature |
| State Certification # RD 4731 | State Certification # |
| or State License # | or State License # |
| State FL | State |
| Expiration Date of Certification or License 11/30/2016 | Expiration Date of Certification or License |
| | Supervisory Appraiser Inspection of Subject Property |
| Effective Date of Appraisal 04/20/2016 | ☐ Did Not  ☐ Exterior-only from Street  ☐ Interior and Exterior |

USPAP Compliance Addendum 2014

Page 1 of 1

## Supplemental Addendum

File No. 1605-002

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |

### HIGHEST AND BEST USE AND ZONING:

The highest and best use analysis employed herein is based on the following:

Highest and best use can be defined as the reasonably probable and legal use of vacant land or an improved property, that is physically possible, legally permissible, financially feasible, and that results in the highest value.

The present use is deemed to meet that test as of the effective date of the appraisal report.

The specific zoning classification and description provided, shows the use of the property. Typically this is also the zoning classification. This however does not mean that this is the zoning classification. The Appraiser states that every effort was made to find the specific zoning classification and that the provided Zoning is believed to be accurate.

### • GP Residential : Neighborhood - Description

The employment stability and general economy of the market area in which the subject is located, is considered to be stable to moderately increasing. Schools, places of worship,recreational areas,downtown business district and other amenities are all within one mile of the subject property. Access to employment centers,a shopping mall,community college, regional airport, hospitals, state parks, and interstate highway systems gives the area good appeal.

### • GP Residential : Neighborhood - Market Conditions

Marketing time is considered to be 90-120 days in most sub markets,based on information obtained from the MLS,which is assumed to be correct. Supply and demand are in balance, however the market appears  to have been stable over the last 12 months. Mortgage money is available at competitive interest rates to qualified buyers.The financing for the subject property is consistent with financing in the local market area. Loan discounts, interest buy downs and concessions are not prevalent in the subject's sub market.

### ADVERSE ENVIORNMENTAL CONDITIONS:

No environmental hazards or potential problems were noted by the appraiser at the time of inspection. The appraiser, however, is not an expert in the field of environmental hazards or toxic wastes, and makes no claims to possess such knowledge. It is the responsibility of the appraiser only to make note of and point out any obvious hazards or conditions. If the client has any questions, concerns or suspicions about the possible existence of any potentially hazardous conditions, then an expert in the field should be obtained to render a qualified opinion. Furthermore, the appraiser is not a qualified engineer or land surveyor and makes no claims to be. Any determination of flood zone location should be made by a qualified professional. If there are any questions regarding the exact location of any flood zone or zones, a qualified land surveyor should be retained for such an establishment.

### CONDITIONS OF APPRAISAL:

This is a Complete Appraisal Report written in a Summary Format which is intended to comply with the reporting requirements set forth under Standards Rule 2 - 2(b) of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. As such, it represents only summary discussions of the data, reasoning and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation that is not provided within the report concerning the data, reasoning and analyses is retained in the appraiser's file. The depth of the discussion contained in this report is specific to the needs of the client and for the intended use stated in the report. The appraiser is not responsible for unauthorized use of this report.

This appraisal report may contain an electronic signature(s). Electronic signatures were implemented for the convenience of this firm and at our clients' requests. Electronic signatures are individually password protected.

This appraisal report may contain Multiple Listing Service photographs. In the event that MLS photos have been utilized, the appraiser certifies that he/she has driven by the property and that the comparable photos used are accurate representations of the comparable sale as of the date of sale of the comparable property.

The Date of the Report is the date the report was signed.

### SUBJECT SECTION:

The subject's appraised value includes only the tax parcel with the residence and does not include any vacant or adjoining sites. It is the responsibility of the lender that prior to the completion of this report to indicate if any additional land is to be given contributory value.

### THE APPRAISER IS NOT A HOME INSPECTOR:

This report should not be relied upon to disclose any conditions present in the subject property.  The appraisal report does not guarantee that the property is free of defects.  A professional home inspection is recommended.

### NOTE TO HOME MEASUREMENTS:

This Appraiser personally inspected and measured the subject property.  The gross living area is derived from exterior measurements of the subject's review.  Since this Appraiser personally measured the subject, this Appraiser's measurements in calculating gross living area will be used.

### FLOOD INFORMATION:

The flood map information was determined by an outside vendor.

## Supplemental Addendum

File No. 1605-002

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |

**GP Residential: Appraiser Signature**

 **Appraisal 1** employs the use of digital signatures and the electronically transmitted report meets USPAP reporting requirements. The appraiser took reasonable steps to protect the data integrity of the transmitted report. The software program provided a signature security feature for all the appraisers signing the report. The electronic signature carries the same level of authenticity and responsibility as an ink signature on a paper copy report.

**Supplemental Addendum:**

   These supplements to the appraisal have been added in accordance with Standards Rule 2-2 of thm Standards of Professional Appraisal Practice (USPAP) and therefore supported by certification #3 of the `attached Appraiser's Certification.
   The appraiser's inspection of the property consisted of viewing all readily accessible interior spaces, the exterior of the property, the roof viewed from ground level, the site, as well as the adjoining street under the allowable weather condition. Although the appraiser has observed these areas and reported any visible physical deficiencies, these features will be analyzed to extract the appraised value only. This is an appraisal assignment and should not be used for, or in replacement of a home inspection. The scope of work involved in this assignment is used to determine market value only.


 **Home Valuation Code of Conduct:**

**The Appraiser has prepared  in compliance with the Home Valuation Code of Conduct and has not performed, participated in, or been Associated with any activity in violation of the code.**

**Additional Certification:**

I have performed no other services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding acceptance of this assignment.

**Intended user:**
**THE INTENDED USER OF THIS APPRAISAL IS THE OWNER ,  THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A  PERSONAL USE, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE.  NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.**

**Subject Neighborhood:**
**The Subject property is located in Fisher Island, which is one of the most beautifull and exclusive neighborhood in the World and the highest per capital income of any place in the United States.**
**It is located about three miles off shore of mainland South Florida, It is only accessible by Boat or Helicopter, there is no road that connects the Island with mainland.**
**The Island is strategicaly located close by to the world famouse South Beach, Bayside, and the port of Miami.**
**There are only 8 Single Family homes, and several luxurious Condos in Fisher Island.**
**The subject's area consist of a wide range of properties types, varying in size, quality, condition and price.The range of property values is typical of the area and marketability on all the value ranges is Good.**

 **It was determined that the subject property is not an over or under improvement for the subject's market area.**
**- The subject property is currently being sold as an "Arm's Length Transaction".**
**- The subject property is a single family home containing 3 bedrooms and 3.1 baths measuring 3,893 square feet.**
**Real Estate Data for Miami:**

**According to the Miami Herald, The Miami market trends indicate an increase of 9% in median home sales over the past year.**

**Trulia reported that "Fisher Island " market trends indicate an increase of $425,000 (11%) in median home sales over the past year.**


**The appraiser has made an extensive search of the subject neighborhood and nearby neighborhoods in order to select the best comparable sales available. Due to the limited market activity of comparable properties in Fisher Island, the Appraiser expanded to the nearby neighborhoods of Star Island, Hibiscus Island and McArthur Island.**

**Reconciliation of Sales Approach to Value**
**Most emphasis was given to Closed Comparable sales. The other sales provided are being used as supporters when arriving at the subject's final market value estimate. All the comparable sales were arranged in the market grid in order of relevance taking into consideration proximity and date of sale.**

## Subject Photo Page

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



### Subject Front

| | |
|---|---|
| 6913 Valencia Dr | |
| Sales Price | 15,000,000 |
| Gross Living Area | 3,893 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.1 |
| Location | N;Res; |
| View | B;Glfvw; |
| Site | 12,393 sf |
| Quality | Q4 |
| Age | 13 |



**Subject Rear**



**Subject Street**

## Subject Photo Page

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



### Subject Rear View

6913 Valencia Dr

| | |
|---|---|
| Sales Price | 15,000,000 |
| Gross Living Area | 3,893 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.1 |
| Location | N;Res; |
| View | B;Glfvw; |
| Site | 12,393 sf |
| Quality | Q4 |
| Age | 13 |



### Subject Rear View



### Subject Rear View

## Interior Photos

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |










## Interior Photos

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | | County | Miami-Dade | State | FL | Zip Code 33109 |
| Lender | N/A | | | | | | |

 

 

 

## Comparable Photo Page

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



### Comparable 1

295 N Coconut Ln

| | |
|---|---|
| Prox. to Subject | 1.80 miles NW |
| Sales Price | 5,580,000 |
| Gross Living Area | 4,535 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 8,828 sf |
| Quality | Q4 |
| Age | 62 |



### Comparable 2

1600 w 25 st

| | |
|---|---|
| Prox. to Subject | 2.60 miles N |
| Sales Price | 8,200,000 |
| Gross Living Area | 3,628 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 24,080 sf |
| Quality | Q4 |
| Age | 65 |



### Comparable 3

429 N Hibiscus Dr

| | |
|---|---|
| Prox. to Subject | 1.88 miles NW |
| Sales Price | 6,450,000 |
| Gross Living Area | 4,210 |
| Total Rooms | 8 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 13,781 sf |
| Quality | Q4 |
| Age | 22 |

## Comparable Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | |
| City | Miami Beach | County Miami-Dade | State FL | Zip Code 33109 | |
| Lender | N/A | | | | |



### Comparable 4

350 S Hibiscus Dr

| | |
|---|---|
| Prox. to Subject | 1.72 miles NW |
| Sales Price | 7,050,000 |
| Gross Living Area | 4,251 |
| Total Rooms | 10 |
| Total Bedrooms | 7 |
| Total Bathrooms | 6 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 15,750 sf |
| Quality | Q4 |
| Age | 40 |



### Comparable 5

6919 Valencia Dr

| | |
|---|---|
| Prox. to Subject | 0.03 miles S |
| Sales Price | 15,500,000 |
| Gross Living Area | 5,701 |
| Total Rooms | 8 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | N;Res; |
| View | B;Glfvw; |
| Site | 11,628 sf |
| Quality | Q4 |
| Age | 14 |



### Comparable 6

1620 W 21st St

| | |
|---|---|
| Prox. to Subject | 2.31 miles N |
| Sales Price | 13,900,000 |
| Gross Living Area | 5,810 |
| Total Rooms | 9 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 8,700 sf |
| Quality | Q4 |
| Age | 26 |

**2015 License**



**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**

FLORIDA REAL ESTATE APPRAISAL BD          850-487-1395
1940 N. MONROE ST.
TALLAHASSEE          FL 32399-0783

ABRAHA, NEGASI S
8233 NW 200 TERR
HIALEAH          FL 33015

Congratulations! With this license you become one of the nearly
one million Floridians licensed by the Department of Business and
Professional Regulation. Our professionals and businesses range
from architects to yacht brokers, from boxers to barbeque restaurants,
and they keep Florida's economy strong.

Every day we work to improve the way we do business in order to
serve you better. For information about our services, please log onto
**www.myfloridalicense.com**. There you can find more information
about our divisions and the regulations that impact you, subscribe
to department newsletters and learn more about the Department's
initiatives.

Our mission at the Department is: License Efficiently, Regulate Fairly.
We constantly strive to serve you better so that you can serve your
customers. Thank you for doing business in Florida,
and congratulations on your new license!



**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND**
**PROFESSIONAL REGULATION**

RD4731          ISSUED: 11/30/2014

CERTIFIED RESIDENTIAL APPRAISER
ABRAHA, NEGASI S

IS CERTIFIED under the provisions of Ch 475 FS.
Expiration date: NOV 30, 2016          L1411300002487

RICK SCOTT, GOVERNOR          KEN LAWSON, SECRETARY

DETACH HERE

**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**
**FLORIDA REAL ESTATE APPRAISAL BD**

**LICENSE NUMBER**
RD4731

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date: NOV 30, 2016

ABRAHA, NEGASI S
26 DIPLOMAT PARKWAY
HALLANDALE          FL 33009




ISSUED: 11/30/2014          DISPLAY AS REQUIRED BY LAW          SEQ # L1411300002487

**E & O 2015–2016**



**301 E. Fourth Street, Cincinnati, OH 45202**

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below:  (A capital stock corporation)

☒   Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:  **RAP4116982-15**                    Renewal of:

Program Administrator:          **Herbert H. Landy Insurance Agency Inc.**
**75 Second Ave Suite 410  Needham, MA 02494-2876**

Item 1. **Named Insured**:          **Negasi Abraha**

Item 2. **Mailing Address**:          **8233 NW 200 Terrace**
City, State, Zip Code:     **Hialeah, FL 33015**

Item 3. **Policy Period**: From     **08/31/2015**     To     **08/31/2016**
*(Month, Day, Year)        (Month, Day, Year)*
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability**:

A. $    **1,000,000**     **Damages** Limit of Liability – Each **Claim**

B. $    **1,000,000**     **Claim Expenses** Limit of Liability – Each **Claim**

C. $    **1,000,000**     **Damages** Limit of Liability – Policy Aggregate

D. $    **1,000,000**     **Claim Expenses** Limit of Liability – Policy Aggregate

Item 5. **Deductible** (Inclusive of **Claim Expenses**):

A. $    **500**     Each **Claim**

B. $    **1,000**     Aggregate

Item 6. **Premium**: $     **864.00**

Item 7. **Retroactive Date** (if applicable):     **08/01/2014**

Item 8. **Forms, Notices and Endorsements attached**:
**D42100 (05/13)  D42300 FL (05/13)**
**D42402 (05/13) D42403 (05/13)**

*Betsey A. Thompson*

Authorized Representative

D42101  (05/13)                                                                   Page 1 of 1

## Building Sketch

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | N/A | | | | | |
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code 33109 |
| Lender | N/A | | | | | |



# Building Sketch

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code 33109 |
| Lender | N/A | | | | | |

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 3957.36 Sq ft | 0.5 × 4 × 4 | = 8 |
| | | 0.5 × 4 × 4 | = 8 |
| | | 7 × 4 | = 28 |
| | | 0.5 × 2 × 2 | = 2 |
| | | 21 × 2 | = 42 |
| | | 0.5 × 2 × 2 | = 2 |
| | | 0.5 × 2 × 2 | = 2 |
| | | 3 × 2 | = 6 |
| | | 24 × 4 | = 96 |
| | | 0.5 × 2 × 1.73 | = 1.73 |
| | | 33 × 1.73 | = 57.13 |
| | | 65 × 2 | = 130 |
| | | 103 × 12 | = 1236 |
| | | 0.5 × 4 × 4 | = 8 |
| | | 90 × 4 | = 360 |
| | | 46 × 8 | = 368 |
| | | 50 × 4 | = 200 |
| | | 64 × 1 | = 64 |
| | | 0.5 × 9 × 9 | = 40.5 |
| | | 64 × 9 | = 576 |
| | | 73 × 6 | = 438 |
| | | 0.5 × 4 × 4 | = 8 |
| | | 69 × 4 | = 276 |
| Open | -64.75 Sq ft | Arc | = 25.48 |
| | | Arc | = 39.27 |
| **Total Living Area (Rounded):** | **3893 Sq ft** | | |
| **Non-living Area** | | | |
| Garage | 656 Sq ft | 22 × 24 | = 528 |
| | | 16 × 8 | = 128 |
| Undefined Area | 223.5 Sq ft | 12 × 13 | = 156 |
| | | 9 × 3 | = 27 |
| | | 0.5 × 9 × 9 | = 40.5 |

# Location Map

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



**FROM:**

Appraisal 1 Inc.
8233 NW 200 Terrace
6913 Valencia Dr
Miami Beach
**Telephone Number:** Miami-Dade     **Fax Number:**

# INVOICE

| INVOICE NUMBER |
|---|
| |
| **DATE** |
| 5/23/2016 |

| REFERENCE | |
|---|---|
| Internal Order #: | 1605-002 |
| Lender Case #: | |
| Client File #: | 1605-002 |
| Main File # on form: | 1605-002 |
| Other File # on form: | |
| Federal Tax ID: | 26-0150166 |
| Employer ID: | |

**TO:**

Elizabeth Hazan
N/A

,

**Telephone Number:**     **Fax Number:**
**Alternate Number:**     **E-Mail:**

## DESCRIPTION

| | | | |
|---|---|---|---|
| **Lender:** N/A | | **Client:** N/A | |
| **Purchaser/Borrower:** N/A | | | |
| **Property Address:** 6913 Valencia Dr | | | |
| **City:** Miami Beach | | | |
| **County:** Miami-Dade | | **State:** FL | **Zip:** 33109 |
| **Legal Description:** See attached addenda. | | | |

| FEES | AMOUNT |
|---|---|
| All invoices are net 30 days:<br>All past due invoices subject to 1.5% services charge per month | |
| **SUBTOTAL** | |

| PAYMENTS | AMOUNT |
|---|---|
| **Check #:**     **Date:**     **Description:** | |
| **Check #:**     **Date:**     **Description:** | |
| **Check #:**     **Date:**     **Description:** | |
| **SUBTOTAL** | |
| **TOTAL DUE** | $        0 |

                              IN THE CIRCUIT COURT OF THE
                              11th JUDICIAL CIRCUIT IN AND
                              FOR MIAMI-DADE COUNTY, FLORIDA
                              CASE NO. 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP,          )
LLC, AS ASSIGNEE OF 9197-5904      )
QUEBEC, INC.,                      )
                                   )
          Plaintiff,               )
                                   )
vs.                                )
                                   )
NLG, LLC, a Delaware limited       )
liability company,                 )
                                   )
          Defendant.               )
_____)


          DATE TAKEN:    November 10th, 2015
          TIME:          2:01 p.m. to 2:27 p.m.
          PLACE:         73 West Flagler Street
                         Miami, Florida
          BEFORE:        JUDGE LOPEZ


     This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:

              Dawn Jobe, Court Reporter
     Taylor, Jonovic, White, Gendron, Kircher-Echarte
          2455 East Sunrise Boulevard, Suite 1200
              Fort Lauderdale, Florida 33304
                     (954) 759-4560

2

APPEARANCES:

      On behalf of the Plaintiff:
            By:  MARK D. COHEN, ESQUIRE
            MARK D. COHEN, P.A.
            4000 Hollywood Boulevard
            Suite 435 South
            Hollywood, Florida 33021
            (954) 962-1166

      On behalf of the Defendant:
            By:  JUAN RAMIREZ, ESQUIRE
            DIAZ, REUS, & TARG
            100 Southeast 2nd Street
            Suite 3400
            Miami, Florida 33131
            (305) 375-9220

ALSO PRESENT

      CHRIS KOSACHUK

3

```
 1        (Thereupon the following proceedings were
 2   had:)
 3        THE COURT:  We're back again, Select
 4   Advisors/NLG.
 5        MR. COHEN:  Your Honor, you closed the
 6   case.
 7        THE COURT:  Well, I know; but he filed a
 8   motion to reconsider.  I wanted to have him air
 9   it out.  I'm not sure where we're supposed to
10   go.
11        MR. RAMIREZ:  You want our appearances?
12   Juan Ramirez on behalf of NLG.
13        MR. COHEN:  Mark Cohen on behalf of the
14   plaintiff.
15        THE COURT:  Okay.
16        MR. RAMIREZ:  Judge, basically we're
17   seeking you to reconsider a nonfinal order that
18   you issued back in August 20th, 2014.  In their
19   response, they never really challenged all the
20   history of it.  It's obvious, if you look at
21   all the stuff I submitted, that basically they
22   got you to domesticate a judgment that was
23   fraudulently obtained.
24        MR. COHEN:  I'm going to object.
25        THE COURT:  He can make his record.
```

4

1        MR. RAMIREZ:  I gave you case law on it.
2    You can go behind the obtaining of a judgment
3    when the defendant never got due process, never
4    got notice, an opportunity to be heard.  What
5    they did was they bought a judgment that had
6    been obtained by Ms. Lorette.  I call that the
7    Lorette judgment.  And they went from New York,
8    where the judgment was issued, to Pennsylvania
9    and they domesticated the judgment in
10   Pennsylvania.  Somehow they got the
11   Pennsylvania court to accept that as being
12   against NLG.
13        The judgment was not against NLG, just
14   against Chris Kosachuk individually, and they
15   got a charging order against NLG.  Then they
16   turned around, went back to New York, where
17   they got a consent judgment where they -- same
18   guy, Ramon Hoo, acted for the plaintiff and the
19   defendant.  This is all documented, and every
20   court that's looked at this has came out with
21   the same conclusion that this was fraudulent.
22        He went to a bankruptcy judge in
23   Philadelphia, who, nunc pro tunc, eliminated
24   that Lorette judgment and they went through --
25   they even tried to do an end run within New

5

 1  York to go to Suffolk County, and I just moved

 2  to take judicial notice of this new development

 3  because the judge in Suffolk County says, well,

 4  wait a minute, this is all wrong.  I'm not

 5  going to declare that this judgment is valid.

 6  They got no due process.

 7       And now -- the argument that I don't think

 8  was ever made in front of you when you issued

 9  that order on August 20th, 2014, this matter

10  was under appeal in the Third District.  So you

11  had no jurisdiction basically because by

12  allowing this judgment to be assigned, you

13  deprived the Third District of jurisdiction,

14  that was the crux of the foreclosure.  They

15  found a foreclosure by using that judgment.

16       THE COURT:  That wasn't before me.  The

17  foreclosure was in another --

18       MR. RAMIREZ:  The foreclosure was in

19  another division.  But they --

20       THE COURT:  So how did my assignment or

21  order granting an assignment --

22       MR. RAMIREZ:  Because that was under

23  appeal, we had a trial with NLG against Hazan,

24  it went two days with Judge Eig.

25       THE COURT:  Right, right.

6

 1      MR. RAMIREZ:  Part of the -- the count was

 2   we have this judgment, Judge, now we want to

 3   foreclose on the mortgage.  They were using

 4   that judgment to foreclose.  Judge Eig ruled

 5   for the defendant.  So he basically took away

 6   our rights under that judgment to foreclose.

 7      THE COURT:  Which was reversed.

 8      MR. RAMIREZ:  But while it's on appeal --

 9   while the matter is pending in the Third

10   District, they come to you and try to get you

11   to assign that very same judgment that was

12   under appeal in the Third District.

13      THE COURT:  No, I don't think so.  But go

14   ahead.  That's okay.  I don't see how I had

15   anything -- I don't understand how my

16   assignment had anything to do with what was on

17   appeal.

18      MR. RAMIREZ:  Because once you assigned

19   that judgment, it makes the appeal moot.

20      THE COURT:  No.

21      MR. RAMIREZ:  Because that was the entire

22   matter under appeal.

23      THE COURT:  No, they proceeded on a

24   foreclosure with Judge Eig, if I remember

25   correctly; it had nothing to do with me at the

7

1   time.

2       MR. RAMIREZ:  But --

3       THE COURT:  When I read all of this,

4   that's why I was curious why you said I had no

5   jurisdiction to do what I did.

6       MR. RAMIREZ:  Because if you look at the

7   foreclosure petition --

8       THE COURT:  Let me finish my train of

9   thought for a moment.  I granted an assignment

10  of whatever rights I granted in a judgment,

11  that has no effect on what Judge Eig may or may

12  not do with it, what the legalities of the

13  parties may or may not do with it.

14      The fact that it's up on appeal, even more

15  so, they can't do anything with that assignment

16  until the appeal is resolved.  If the appeal

17  was affirmed, they're stuck with an assignment

18  with nothing to do.  If the appeal got

19  reversed, they now have a claim that says I

20  have a judgment to go against you.

21      I didn't deprive or have anything to do

22  with the appellate jurisdiction.  I was

23  interested in hearing why I lacked jurisdiction

24  to do what I did.  Because that can be raised

25  at any time.

8

1      MR. RAMIREZ:  That's our argument, Judge.

2      THE COURT:  Okay.

3      MR. RAMIREZ:  Because that was the crux of

4  the matter under appeal, you basically said to

5  NLG, NLG, you no longer own this judgment even

6  though that same -- very same judgment is the

7  crux of the appeal.  The first ruling by the

8  appellate court was to say that that judgment

9  was valid.  I forget what the words are, but

10  the first issue that they resolved was the

11  assignment of that --

12      THE COURT:  Not my assignment.

13      MR. RAMIREZ:  Rule on the validity of that

14  judgment.

15      THE COURT:  It was a note and a mortgage

16  or something --

17      MR. COHEN:  Yes.

18      THE COURT:  -- and Judge Eig didn't let

19  them foreclose --

20      MR. COHEN:  It was bifurcated basically.

21      THE COURT:  Whatever -- I just read the

22  appellate opinion.

23      MR. RAMIREZ:  Yeah, the opinion --

24      THE COURT:  I didn't even know what was

25  going on until some other issue.

9

1      MR. RAMIREZ:  The appellate opinion talks

2  about -- the first thing they talk about when

3  they start talking about the law is that

4  judgment.

5      THE COURT:  Yeah, that he should have

6  allowed them to foreclose.

7      MR. COHEN:  Correct.

8      THE COURT:  But he didn't.  I thought

9  that's what they came down with.

10     MR. COHEN:  That's exactly it.

11     THE COURT:  He allowed the judgment on the

12  note, that they would --

13     MR. RAMIREZ:  I don't --

14     THE COURT:  Wasn't it?

15     MR. COHEN:  Alternative remedy.  The

16  question was whether or not you had to pick

17  your remedies at the time --

18     MR. RAMIREZ:  And they --

19     MR. COHEN:  -- or you didn't, and that was

20  the only issue that the appellate court

21  decided.

22     MR. RAMIREZ:  How can you assign a

23  judgment that's being decided on the issue of

24  election of remedies?

25     THE COURT:  But I didn't assign that

10

1   judgment.

2       MR. COHEN:  Correct.

3       THE COURT:  I assigned --

4       MR. RAMIREZ:  You assigned the judgment

5   that was the crux of the foreclosure that had

6   become an issue under appeal whether they

7   elected their remedy or not.

8       THE COURT:  I thought they sued on a note.

9       MR. RAMIREZ:  They sued on that judgment.

10      THE COURT:  To execute against the

11  property in Fisher Island.

12      MR. RAMIREZ:  They used the judgment --

13      THE COURT:  That wasn't what the issue

14  was.  I thought it was a promissory note.

15      MR. COHEN:  Right.

16      MR. RAMIREZ:  It was also a promissory

17  note.

18      THE COURT:  They foreclosed on a note and

19  Judge Eig said you can't do the foreclosure.

20      MR. RAMIREZ:  Well, I mean, wouldn't have

21  done it the way they did it.  The fact is they

22  did sue on that judgment.  They said we have

23  this judgment and we want to execute on that

24  judgment against the note.  We also have this

25  mortgage -- so it was alternative remedy and

11

```
 1   they said, wait a minute, you can't do both,
 2   you have to elect your remedy.  Either sue
 3   under the judgment or sue under --
 4        THE COURT:  No, that's not how I read the
 5   Third District's opinion.
 6        MR. COHEN:  No.
 7        THE COURT:  I thought they sued on a note
 8   that was given by the owner, they went to
 9   foreclose as well, and for some reason Judge
10   Eig said, no.  It had nothing to do with the
11   judgment in New York.  All I did --
12        MR. RAMIREZ:  It had to do with the
13   judgment they obtained.
14        THE COURT:  Where?
15        MR. RAMIREZ:  Judgment by --
16        THE COURT:  Where's the opinion?  Where's
17   the NLG opinion?
18        MR. RAMIREZ:  The default judgment that
19   you assigned.
20        THE COURT:  In New York.
21        MR. RAMIREZ:  No, that you assigned.  The
22   default judgment here --
23        THE COURT:  Right.
24        MR. RAMIREZ:  That NLG obtained against
25   Hazan.
```

12

1      THE COURT:  Whatever was before me, I

2  assigned that interest to somebody else.

3      MR. RAMIREZ:  Yes.

4      THE COURT:  That was the extent of my

5  work.

6      MR. RAMIREZ:  NLG had sued on that default

7  judgment.  They had said, no, you can't sue

8  under that, you have to elect your remedy, you

9  either sue on the promissory note --

10     THE COURT:  Do you have the case here, the

11 NLG appellate opinion?  Is it here?

12     MR. RAMIREZ:  Yes.

13     THE COURT:  Let me look at the facts of

14 that case.  When you mentioned jurisdiction,

15 obviously, that can be raised at any time, so

16 I'm curious.  That's not my recollection of

17 what happened.

18     MR. COHEN:  It's not, Your Honor.

19     THE COURT:  Give him a chance.  I love

20 seeing you guys.

21     MR. COHEN:  Your Honor --

22     THE COURT:  Hold on.

23     MR. COHEN:  If I may, the case is closed.

24 You can't sue --

25     THE COURT:  Did he file this within --

13

1       MR. COHEN:  No.

2       THE COURT:  -- 30 days of me closing the

3    case?

4       MR. COHEN:  It's 15 days.

5       MR. RAMIREZ:  No, he filed a motion for

6    rehearing and withdrew it this morning.  I

7    don't know --

8       THE COURT:  You filed a motion for

9    rehearing?

10      MR. COHEN:  The only reason is because he

11   kept on saying the word "dismissed"; you used

12   the word "dismissed" or "closed."

13      THE COURT:  If he filed it within 30 days,

14   I technically have jurisdiction.

15      MR. COHEN:  Fifteen.

16      THE COURT:  Fifteen is for rehearing.  I

17   have jurisdiction on my cases for 30 days

18   technically.  A rehearing --

19      MR. COHEN:  I don't even think he --

20      THE COURT:  There's a 15-day window to

21   appeal.

22      MR. COHEN:  He didn't file it --

23      THE COURT:  Let me get to the merits of

24   it.

25      MR. COHEN:  I may be wrong.

14

1      THE COURT:  Technically, I still have
2  jurisdiction to reconsider what I've done,
3  because, I mean, it's -- his appellate time has
4  run.  This isn't an authorized --
5      MR. RAMIREZ:  It's a nonfinal order,
6  Judge.
7      THE COURT:  You're talking about the
8  jurisdictional order before.  My case is
9  closed.  How do I revisit what I did in a
10  closed case?
11      MR. RAMIREZ:  Because they're trying to
12  enforce --
13      THE COURT:  Procedurally, how do I go back
14  now to a case which I have ended my
15  jurisdiction and undo something I did back
16  then?
17      MR. RAMIREZ:  Because they filed a motion
18  for rehearing, that would be one way.
19      THE COURT:  But that's off the table.  His
20  motion doesn't piggyback to you.  He's asking
21  me to take a look at something overlooked.
22      MR. COHEN:  I withdrew it.
23      THE COURT:  Now, he withdrew it.
24      MR. RAMIREZ:  You want me to file a dec
25  action?

15

```
 1         THE COURT:  You do what you have to do.
 2         MR. RAMIREZ:  I'm saying --
 3         THE COURT:  Explain to me --
 4         MR. RAMIREZ:  We have an order that was
 5    entered as you say -- if you had no
 6    jurisdiction --
 7         THE COURT:  I didn't say that, you said
 8    that.
 9         MR. RAMIREZ:  I'm saying that.
10         THE COURT:  I think I had jurisdiction.  I
11    don't think what I did affected the appeal.
12         MR. RAMIREZ:  But if --
13         THE COURT:  I didn't even know it was
14    ongoing to begin with.
15         MR. RAMIREZ:  Well, I --
16         THE COURT:  Forget that part.
17         MR. RAMIREZ:  -- wasn't the lawyer.
18         THE COURT:  Nobody brought it to my
19    attention, I'm sure you might have brought that
20    argument up at that point in time.  Show me
21    where the appellate opinion -- show me what
22    went on before Judge Eig that had to do with
23    the foreclosing of my judgment, which is what
24    you're telling me.
25         You can tell me what's on your own mind.
```

16

1   If you're going to whisper in his ear -- just

2   help me out.

3        MR. KOSACHUK:  NLG obtained judgment

4   against Ms. Hazan for not paying in '07.  What

5   was filed in '07 under the case number 19532.

6        THE COURT:  Right.

7        MR. KOSACHUK:  That judgment was for

8   breach of the promissory note.

9        THE COURT:  Okay.  They had a judgment on

10  a note.

11       MR. KOSACHUK:  NLG had a judgment against

12  Ms. Hazan, his other client.

13       THE COURT:  On a note.

14       MR. KOSACHUK:  On a promissory note,

15  correct.

16       THE COURT:  Which then they went to try to

17  foreclose.

18       MR. KOSACHUK:  We used that judgment as

19  a -- which also had a mortgage attached to it

20  because there was a settlement agreement before

21  that said the note, the judgment and the

22  mortgage, all three instruments are in full

23  force and effect until paid or satisfied.

24       THE COURT:  Correct.

25       MR. KOSACHUK:  Then we moved to -- in 2011

17

1    to foreclose out the judgment and the mortgage.

2        THE COURT:  You foreclosed the mortgage,

3    not judgment.

4        MR. COHEN:  Correct.

5        MR. KOSACHUK:  We foreclosed the

6    mortgage --

7        THE COURT:  Judge Eig said no.

8        MR. KOSACHUK:  Correct.  Then what we did

9    was we appealed.

10       THE COURT:  Correct.

11       MR. KOSACHUK:  And the central issue on

12   appeal was the enforceability of that judgment

13   that you had assigned on August 20th, 2014.

14       THE COURT:  No.

15       MR. COHEN:  No.

16       THE COURT:  Go ahead.

17       MR. KOSACHUK:  The central --

18       THE COURT:  Where is the appellate

19   opinion?  That will clarify it for me.

20       MR. KOSACHUK:  I know also in the -- in

21   the actual foreclosure itself, we attached this

22   judgment and we said that this judgment is the

23   basis for our foreclosure because it is secured

24   by a mortgage on this property.

25       THE COURT:  A judgment isn't secured by a

18

1   mortgage.

2       MR. KOSACHUK:   In this particular

3   instance, it was, because of the agreement that

4   had occurred.

5       THE COURT:   Again, find me the appellate

6   opinion.

7       MR. RAMIREZ:   I guess I just cited it.

8       THE COURT:   Do you have the cite?   I'll

9   look it up.

10      MR. KOSACHUK:   It's a 2013 case and the

11  Case Number is 0684.

12      THE COURT:   You talking about the

13  appellate case?

14      MR. KOSACHUK:   Appellate opinion, yes.

15      THE COURT:   I need the appellate case

16  number.   Hold on a second.

17      MR. COHEN:   151 So.3d, Your Honor, 455.

18      MR. KOSACHUK:   No.   That was the first

19  appeal of the judgment itself.   We're now on

20  the appeal of the mortgage foreclosure.

21      THE COURT:   Give me Judge Eig's opinion.

22      MR. KOSACHUK:   2013 case, appellate case

23  number 0684.

24      THE COURT:   Hold on.

25      MR. KOSACHUK:   Opinion issued on September

19

```
 1  3rd, 2014, appellate mandate on November 25th,
 2  2014.
 3       MR. RAMIREZ:  151 So.3d --
 4       MR. COHEN:  That's what I just said and I
 5  got blasted for it.
 6       MR. KOSACHUK:  That's not --
 7       MR. COHEN:  That's the one --
 8       MR. KOSACHUK:  That's the first one.
 9       MR. RAMIREZ:  Yeah, that's the one, 151.
10       MR. KOSACHUK:  No.
11       MR. COHEN:  455.
12       THE COURT:  Is that the one from Judge
13  Eig's case?
14       MR. COHEN:  Yes.
15       MR. RAMIREZ:  Yes.
16       THE COURT:  Hold on.  Let me figure it
17  out.
18       MR. COHEN:  It basically says it was not
19  an election of remedies precluding the later
20  enforcement of the mortgage.  That's it.  The
21  only issue was the mortgage.
22       THE COURT:  151 So.3d.
23       MR. RAMIREZ:  455.
24       THE COURT:  NLG versus Hazan.
25       MR. RAMIREZ:  Right.
```

20

1      MR. COHEN:  Your Honor --

2      THE COURT:  Hold on.

3      MR. COHEN:  Not to be difficult, but it's

4  a corporation and, therefore, I don't believe

5  he can really talk in the matter.

6      THE COURT:  He's not, I just wanted to

7  hear the factual issues.  I'm trying to find

8  out what happened as to whether there was a

9  note or not.

10      MR. COHEN:  No.

11      THE COURT:  I agree with you.

12      MR. COHEN:  In their paragraph 29, they

13  specifically say it.

14      THE COURT:  All right.

15      MR. RAMIREZ:  Exhibit M is complaint for

16  foreclosure.

17      THE COURT:  I'll make copies if I have to.

18  I got NLG versus Hazan 151 So.3d 455.  What I

19  get from the facts, NLG sold the home to

20  Ms. Hazan for 5,100,000, took back a note and

21  mortgage for 1.275, required an installment

22  payment and it was supposed to mature, they

23  weren't forthcoming, NLG filed a lawsuit for

24  collection of the note.  Settlement agreement

25  was entered into, they were not made.  April of

21

1    '08, in accordance with the settlement, a

2    default judgment on the note was entered

3    against Ms. Hazan in favor of NLG in the amount

4    of 1.618, which would have been the mortgage

5    amount.

6        MR. RAMIREZ:  That's the default --

7        THE COURT:  That's the default judgment

8    for the note and mortgage amount, because the

9    note was 1.275.

10       MR. RAMIREZ:  Right.

11       THE COURT:  That was recorded, then they

12   got new counsel and they attempted to execute

13   on the judgment against the Fisher Island home

14   by a writ, right?  That was vacated because she

15   claimed it was homestead.

16       MR. RAMIREZ:  Right.

17       THE COURT:  So that was done.  Then they

18   filed suit to foreclose on the mortgage based

19   on the judgment?

20       MR. RAMIREZ:  Right.

21       THE COURT:  And the note for 1.2, which

22   had merged, right?  Let's call it a merged

23   judgment and note.  So they were foreclosing on

24   the note.  Judge Eig said no, you elected your

25   remedy.  Then the appellate court, Third

22

1   District, reverses and said no, they can go

2   forward and foreclose.

3        Where does that take into account the $5.1

4   million judgment or whatever judgment I had in

5   my division?

6        MR. RAMIREZ:  Because --

7        THE COURT:  How does that reflect on this?

8        MR. RAMIREZ:  Because this judgment, that

9   was the basis and it's an integral part of the

10  foreclosure, that judgment was assigned by you.

11       THE COURT:  What judgment, the 1.2 --

12       MR. RAMIREZ:  The default --

13       THE COURT:  The 1.6.

14       MR. RAMIREZ:  The 1.6.

15       THE COURT:  I assigned the New York

16  judgment.

17       MR. RAMIREZ:  You assigned this judgment.

18       THE COURT:  Which one did I assign?

19       MR. COHEN:  We filed a domestication.

20       THE COURT:  For some number up in New

21  York --

22       MR. COHEN:  $5 million.

23       THE COURT:  After that, you said, I want

24  to take over this judgment.

25       MR. COHEN:  Correct.  That's it.  We

23

1    executed on it.

2        THE COURT:  Hold on.

3        MR. RAMIREZ:  So this is a judgment --

4        THE COURT:  They took -- I assigned that

5    over to them, they took over that judgment

6    subject to whatever would happen in Judge Eig's

7    division.  How does that affect what's up on

8    appeal?

9        MR. RAMIREZ:  Because that was the central

10   issue on appeal.  Did we elect the remedies,

11   did we have a right to collect on this note.

12   How can -- if they have an issue with that

13   judgment, the proper place to answer that would

14   be in the foreclosure division, not in your

15   division.

16       THE COURT:  They didn't challenge the

17   judgment, the debt was affirmed.  The note that

18   led to the 1.2 or 1.6 judgment, which is what

19   they foreclosed upon, was affirmed previously

20   by the Third District.  The issue in this case

21   was whether they could foreclose on that note

22   and mortgage.

23       MR. RAMIREZ:  Exactly.  While that's

24   pending, you basically took the rug out from

25   under our feet by saying you no longer own that

24

1   judgment, now it's Quebec that owns that

2   judgment.

3        THE COURT:  Okay, so I assigned your

4   interest in it to them, which had nothing to do

5   with what's going up on appeal.

6        MR. COHEN:  Correct.

7        MR. RAMIREZ:  How can you say that, Judge?

8        THE COURT:  I just did.

9        MR. RAMIREZ:  I know you just did.  The

10  whole thing is, did we elect a remedy --

11       THE COURT:  That has nothing to do with

12  me.  My case was who -- Selective against NLG.

13  Selective sued, right, saying we bought this

14  judgment, right?  We want to domesticate a New

15  York judgment.  They filed here, they wanted to

16  domesticate it against NLG, which was the

17  judgment debtor up in New York.

18       MR. RAMIREZ:  Right.

19       MR. KOSACHUK:  No, NLG was never a

20  judgment debtor.

21       MR. RAMIREZ:  It was a judgment debtor by

22  fraud.

23       THE COURT:  I don't care by fraud, that's

24  for New York to decide.

25       MR. RAMIREZ:  No, Judge, you had --

25

```
 1      THE COURT:  Had you posted a bond, I would
 2  have dealt with it.
 3      MR. RAMIREZ:  You have the right to look
 4  at whether they got due process or not.  Be
 5  that as it may, the jurisdictional issue is the
 6  one I'm pursuing.
 7      THE COURT:  Let's go back and trace this
 8  again.  Selective Advisors domesticated a
 9  judgment, they say we took over from Quebec who
10  had a judgment up in New York against NLG.
11      MR. RAMIREZ:  Right.
12      THE COURT:  For some millions of dollars.
13  NLG came in and it's fraud, it's this, it's
14  that; I said, you know what, you have every
15  right to do that, put up a bond; they chose not
16  to.  Correct?
17      MR. RAMIREZ:  Five-million-dollar bond.
18      THE COURT:  I'm not saying it's easy.  I
19  don't have $5 million, I understand that.  Then
20  we turn around and they went in and enforced
21  the judgment.  I assigned whatever interest NLG
22  had in the judgment apparently now and took
23  over the 1.7 and gave them full credit for the
24  1.7 off the 5 million in New York.  I think
25  that's what I did, something like that, right?
```

26

1          MR. COHEN:  Yes.

2          MR. RAMIREZ:  Right.

3          THE COURT:  That judgment that I assigned

4   to them or that interest in that judgment was

5   up on appeal.  I didn't affect the validity of

6   what's up on appeal.  I just said, if you win

7   or lose, whatever happens, now these people own

8   it instead of you.  The Third came back and

9   said, too bad, you get to foreclose, they now

10  own that judgment or note if that's what merged

11  into it, they get to go and foreclose.  I had

12  nothing to do --

13         MR. RAMIREZ:  It's the same people, Judge.

14         THE COURT:  It doesn't matter to me who

15  they were, what they were.  That's not my

16  fight.  Now, it's been paid off.  How do I undo

17  something that's been paid off?

18         MR. RAMIREZ:  It was all fraud.

19         THE COURT:  It may have been.  How do I

20  undo --

21         MR. RAMIREZ:  How can you condone a fraud

22  by judicial --

23         THE COURT:  Very simply, I did not deal

24  with the fraud issue until they posted a bond

25  and they kept promising me New York is going to

27

1  vacate this, New York is going --

2      MR. RAMIREZ:  We've been trying to do that

3  and they keep delaying.

4      THE COURT:  They delayed and delayed and

5  then somebody paid it off.

6      MR. RAMIREZ:  They used that judgment to

7  say that they paid it off.

8      THE COURT:  It's been satisfied.

9      MR. RAMIREZ:  By defrauding us.  Judge --

10     THE COURT:  My judgment was satisfied.

11     MR. RAMIREZ:  They never were entitled to

12 penny one.  The Lorette judgment that started

13 this whole thing has been vacated nunc pro

14 tunc.  In fact, he got damages of --

15     THE COURT:  Hold on.  How was my judgment

16 satisfied?

17     MR. COHEN:  It was satisfied --

18     THE COURT:  They paid it or just because

19 of the assignment transfer of interest?

20     MR. COHEN:  No, they've resolved it

21 somehow up there between Select --

22     THE COURT:  Somebody up in New York issued

23 a satisfaction of judgment?

24     MR. COHEN:  Correct.

25     MR. RAMIREZ:  Select is her husband, is

28

1   Hazan's husband.

2        THE COURT:  I don't care who it is.

3        MR. RAMIREZ:  It is.  It's important

4   because they've done all this to prevent us

5   from foreclosing on the mortgage in front of

6   Judge --

7        THE COURT:  Your Honor, the judgment in

8   New York was satisfied of record, correct?

9   They worked it out, somebody issued a

10  satisfaction of judgment?

11       MR. RAMIREZ:  Right.  And now --

12       THE COURT:  As far as I'm concerned,

13  whatever's happening here is done, it's been

14  paid off.  There's nothing I can do.

15       MR. COHEN:  Can we get an order just --

16       THE COURT:  We're done.  My order --

17       MR. KOSACHUK:  The domestication of this

18  New York $5 million judgment is now gone,

19  correct?

20       THE COURT:  No, it's been satisfied.

21  There's a difference.  It's satisfied in the

22  public records in Florida, it shows it was

23  sought to be domesticated, an action was taken

24  by me, my case is closed and now you record a

25  satisfaction of judgment in Florida.  That

29

1  should take care of any interest in my matter.

2  You paid it off.

3       MR. KOSACHUK:  So they no longer have the

4  right to go forward and try to collect on that

5  judgment.

6       THE COURT:  If it's been paid off, that's

7  up to you guys.  I don't know why it was

8  satisfied.

9       MR. COHEN:  Your Honor --

10      THE COURT:  That's all.  He can tell you

11 better than I, he's been through this many

12 times before.

13      MR. COHEN:  The motion is denied?  Your

14 Honor, just for curiosity, you say the Court

15 retains jurisdiction for 30 days; under 1.540,

16 I only see 15 days.

17      THE COURT:  Fifteen days is a rehearing.

18      MR. COHEN:  You show me 1.540 --

19      THE COURT:  Go ahead, take a look at it.

20 I keep jurisdiction --

21      MR. RAMIREZ:  Fifteen is rehearing.  It's

22 moot, you denied the motion.

23      THE COURT:  Nobody is appealing my case.

24      MR. COHEN:  I just want to know --

25      THE COURT:  Yes, the motion is denied for

30

1    everything we discussed here.

2        MR. COHEN:  For my own knowledge --

3        THE COURT:  Because the 15 is your

4    appellate time.

5        MR. COHEN:  No, 30 is appellate.

6        THE COURT:  How much time do you have to

7    file a notice of appeal usually?

8        MR. COHEN:  Thirty days from the date of

9    denial of the motion for rehearing.

10       THE COURT:  No, 30 days -- if you don't

11   file a motion for rehearing, how much time do

12   you have to file an appeal?

13       MR. COHEN:  Thirty days.

14       THE COURT:  Thank you.

15       MR. COHEN:  But you only have 15 days --

16       THE COURT:  Counsel, please, if you don't

17   file the rehearing, it doesn't suspend the

18   appellate time.  My case lingers for 30 days.

19   That's my jurisdiction.

20       MR. COHEN:  I was just more curious than

21   anything.

22       (Thereupon, the proceeding concluded at

23   2:27 p.m.)

24

25

31

<pre>
 1                   CERTIFICATE OF REPORTER

 2

 3  STATE OF FLORIDA)
    COUNTY OF BROWARD)

 4

 5

 6        I, DAWN JOBE, Florida Professional Reporter, do

 7  hereby certify that I was authorized to and did

 8  stenographically report the foregoing proceedings,

 9  and that the foregoing transcript, pages 1 through

10  31, is a true and correct record of my stenographic

11  notes.

12

13        DATED this 15th day of November, 2015 at Fort

14  Lauderdale, Broward County, Florida.

15

16

17

18

19
          _____
20              DAWN JOBE, Court Reporter

21

22

23

24

25
</pre>

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| IN RE:<br>LIZA HAZAN<br>*aka* ELIZABETH HAZAN<br><br>DEBTOR. | CASE NO.: 16-10389-AJC<br><br>CHAPTER: 11 |

## NOTICE OF FILING AND SUPPLEMENTAL RESPONSE
## TO NLG'S MOTION FOR RELIEF FROM AUTOMATIC STAY

LIZA HAZAN a/k/a ELIZABETH HAZAN, Debtor ("Hazan"), by and through her undersigned counsel, by way of Supplemental Response to Motion for Relief from Stay filed by NLG, LLC ("NLG"), hereby files certain documents, and respectfully states:

### APPRAISAL

1.      Attached as **Exhibit "A"** is Debtor's appraisal of the property.

### TRANSCRIPT

2.      Attached as **Exhibit "B"** is the full transcript of hearing on November 10, 2015, before the Miami-Dade Circuit Court, Case No. 14-10475 CA (01) (10), Judge Peter Lopez, on "Defendant, NLG, LLC's Motion to Reconsider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and for Order Impleading Third Party" wherein, *AFTER* the issuance of the 3rd DCA Decision and Mandate, NLG asserted the very same arguments it now asserts in this Court to no avail.  Judge Lopez <u>reasserted that the NLG claim had been judicially assigned</u> and that Selective had stepped into the shoes of NLG in respect to the appeal.

> THE COURT: That judgment that I assigned to them or that interest in that judgment was up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win or lose, whatever happens, now these people own it instead of you. The Third came back and said, too bad, you get to foreclose, they

1

[Selective] now own that judgment or note if that's what merged into it, they [Selective] get to go and foreclose. I had nothing to do –

MR. RAMIREZ: It's the same people, Judge.

THE COURT: It doesn't matter to me who they were, what they were. That's not my fight…

Pg. 26 of Transcript, Exh "B."

## **SUPPLEMENTAL RESPONSE TO REPLY**

3.       NLG asserts that it is in first position on the property.  Aside from the fact that NLG has *NO* position, as it was judicially assigned to Selective, the Selective position is subject to the first mortgage rights of JPMorgan Chase Bank N.A. and the rights of Valencia Estates Homeowners' Association, Inc. and Fisher Island Community Association, Inc.

4.       There clearly is equity in the property. Selective has satisfied the former NLG mortgage (assigned to Selective).  The Debtor's appraisal would indicate at least $3.5 Million dollars in equity in the property.

5.       Not only would a Plan be feasible by the sale or refinance of the house, but the Debtor has demonstrated an ability to earn well over $400,000 a year in consulting income, funds sufficient to maintain and carry the property pending a sale or refinance.  A plan is clearly feasible in this case.

WHEREFORE, the NLG Motion for Stay Relief should be denied, and the Court should enter any other and further relief it deems appropriate under these circumstances.

//
//
//
//
//
//
//
//

2

Respectfully submitted,

Aaronson Schantz Beiley P.A.

/s/ Geoffrey S Aaronson
Geoffrey S Aaronson, Esq.
Florida Bar No. 349623
Miami Tower
100 S.E. 2nd Street, Floor 27
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Debtor*

3

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | 786.594.3000 | Fax 305.424.9336

**APPRAISAL 1 Inc.**

**8233 NW 200 terrace Hialeah Fl. 33015**



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

6913 Valencia Dr
See attached addenda.
Miami Beach, FL 33109

## FOR:

N/A

## AS OF:

04/20/2016

## BY:

Negasi S. Abraha, Cert Res RD 4731

# RESIDENTIAL APPRAISAL REPORT

File No.: 1605-002

## SUBJECT

| | |
|---|---|
| Property Address: 6913 Valencia Dr | City: Miami Beach   State: FL   Zip Code: 33109 |

County: Miami-Dade     Legal Description: See attached addenda.

Assessor's Parcel #: 30-4209-016-0070

Tax Year: 2015    R.E. Taxes: $ 57,649    Special Assessments: $ 0    Borrower (if applicable): N/A

Current Owner of Record: Elizabeth Hazan     Occupant: ☐ Owner ☒ Owner ☐ Tenant ☐ Vacant    ☐ Manufactured Housing

Project Type: ☒ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe)     HOA: $ 0    ☐ per year ☒ per month

Market Area Name: Lindisfarne     Map Reference: 33124     Census Tract: 0045.00

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: The Intended Use is to evaluate the property that is the subject of this appraisal to ascertain market value only, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value.

Intended User(s) (by name or type): Owner

Client: N/A     Address: N/A

Appraiser: Negasi S. Abraha, Cert Res RD 4731     Address: 8233 NW 200 terrace, Hialeah, FL 33015

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit 80 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner 90 | 3mil Low 05 | | 2-4 Unit 5 % | ☐ Likely * ☐ In Process * |
| Property values: | ☒ Increasing ☐ Stable ☐ Declining | ☐ Tenant 10 | 15 mil High 65 | | Multi-Unit 5 % | * To: |
| Demand/supply: | ☐ Shortage ☒ In Balance ☐ Over Supply | ☒ Vacant (0-5%) | 8 mil Pred 40 | | Comm'l 10 % | |
| Marketing time: | ☐ Under 3 Mos. ☒ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | | | % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): See attached addenda. The Subject property is bounded by MacArthur Causeway to the North, Fishermans Channel to the West, South Pointe Park to the East, and Norris Cut St to the South.

## SITE DESCRIPTION

Dimensions: (Not Available)     Site Area: 12,393 sf

Zoning Classification: RU-4A     Description: Single Family Residential

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown    Have the documents been reviewed? ☐ Yes ☒ No    Ground Rent (if applicable) $     /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Single Family Residential     Use as appraised in this report: Residential

Summary of Highest & Best Use: (See addendum)

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Typical |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Public | Street | Asphalt | ☐ | ☒ | Size | 12,393 sf |
| Gas | ☒ | ☐ | Natural Gas | Curb/Gutter | Concrete | ☐ | ☒ | Shape | Rectangular |
| Water | ☒ | ☐ | Public | Sidewalk | None | ☐ | ☒ | Drainage | Adequate |
| Sanitary Sewer | ☒ | ☐ | Public | Street Lights | Electric | ☐ | ☒ | View | B;Glfvw; |
| Storm Sewer | ☒ | ☐ | Public | Alley | None | ☐ | ☒ | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☒ Yes ☐ No   FEMA Flood Zone AE   FEMA Map # 12086C0319L   FEMA Map Date 09/11/2009

Site Comments: There are no apparent adverse easements or encroachments observed at the time of inspection. There are no known special assessments or zoning issues (Subject to survey and title report). The current use is considered the highest and best use of the subject property.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | FWA |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 ☐ Acc.Unit | Foundation | Concrete/Avg | Slab | Yes | Area Sq. Ft. | 0 | Type | Central |
| # of Stories | 2 | Exterior Walls | CBS Avg. | Crawl Space | None | % Finished | 0 | Fuel | Ntl. Gas |
| Type ☒ Det. ☐ Att. ☐ | | Roof Surface | Barrel/Avg | Basement | None | Ceiling | | | |
| Design (Style) | Traditional | Gutters & Dwnspts. | Alumin/avg | Sump Pump ☐ | | Walls | | Cooling | CA |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Single hung/Avg | Dampness ☐ | | Floor | | Central | X |
| Actual Age (Yrs.) | 13 | Storm/Screens | Yes/Yes | Settlement | None | Outside Entry | | Other | |
| Effective Age (Yrs.) | 06 | | | Infestation | None | | | | |

| Interior Description | | Appliances | | Attic ☐ None | | Amenities | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|
| Floors | Marble/Avg | Refrigerator ☒ | | Stairs ☐ | | Fireplace(s) # 1 | Woodstove(s) # 0 | Garage # of cars ( 4 Tot.) | |
| Walls | Drywall/Avg. | Range/Oven ☒ | | Drop Stair ☐ | | Patio Patio | | Attach. 2 | |
| Trim/Finish | Wood/Avg | Disposal ☒ | | Scuttle ☐ | | Deck None | | Detach. | |
| Bath Floor | Tile Avg | Dishwasher ☒ | | Doorway ☐ | | Porch None | | Blt.-In | |
| Bath Wainscot | Tile/Avg | Fan/Hood ☒ | | Floor ☐ | | Fence None | | Carport | |
| Doors | Wood./Avg | Microwave ☒ | | Heated ☐ | | Pool Pool | | Driveway 2 | |
| | | Washer/Dryer ☒ | | Finished ☐ | | | | Surface Concrete | |

Finished area above grade contains: 6 Rooms    3 Bedrooms    3.1 Bath(s)    3,893 Square Feet of Gross Living Area Above Grade

Additional features: Any notable additional features not elsewhere addressed in the body of this report are discussed in the supplemental addendum section under the heading "Additional Features."

Describe the condition of the property (including physical, functional and external obsolescence): C4; updates in the last 10 years; Physical depreciation is the result of normal wear and tear. No functional floor plan inadequacies were considered to exist in the subject's floor plan. No external obsolescence was considered to exist within the subject's neighborhood. Appraiser was retained to estimate market value. No warranties are implied to structural or mechanical componets on property.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

# RESIDENTIAL APPRAISAL REPORT

File No.: 1605-002

| | |
|---|---|
| My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. | |

**TRANSFER HISTORY**

| | |
|---|---|
| Data Source(s): | Fares/Public Record |
| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: **All Sales of the Subject and Comparable** |
| Date: | within the last 3 years are noted in the above Appraisal Grid. |
| Price: | |
| Source(s): MLS,Public Rec | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

**SALES COMPARISON APPROACH TO VALUE (if developed)** ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 6913 Valencia Dr | 295 N Coconut Ln | | 1600 w 25 st | | 429 N Hibiscus Dr | |
| | Miami Beach, FL 33109 | Miami Beach, FL 33139 | | Miami Beach, FL 33139 | | Miami Beach, FL 33139 | |
| Proximity to Subject | | 1.80 miles NW | | 2.60 miles N | | 1.88 miles NW | |
| Sale Price | $ 15,000,000 | | $ 5,580,000 | | $ 8,200,000 | | $ 6,450,000 |
| Sale Price/GLA | $ 3,853.07 /sq.ft. | $ 1,230.43 /sq.ft. | | $ 2,260.20 /sq.ft. | | $ 1,532.07 /sq.ft. | |
| Data Source(s) | Inspection | SEF/MLS#A2208115;DOM 42 | | SEF/MLS#A2012619;DOM 248 | | SEF/MLS#;DOM | |
| Verification Source(s) | Assessor/Realto | Assessor/Realtor | | Assessor/Realtor | | Assessor/Realtor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | Arms Length | | Arms Length | | ArmLth | |
| Concessions | 0 | Cash;0 | | Conv;0 | | Cash;0 | |
| Date of Sale/Time | Unknown | s01/16;c01/16 | +153,000 | s08/15;c06/15 | +601,000 | s06/15;Unk | +591,000 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Site | 12,393 sf | 8,828 sf | +20,000 | 24,080 sf | -70,000 | 13,781 sf | 0 |
| View | B;Glfvw; | B;Wtr; | | B;Wtr; | | B;Wtr; | |
| Design (Style) | Traditional | Traditional | | Traditional | | Ranch | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Age | 13 | 62 | +490,000 | 65 | +520,000 | 22 | +90,000 |
| Condition | C4 | C4 | | C4 | | C4 | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6  3  3.1 | 7  4  4.1 | -10,000 | 7  4  4 | -5,000 | 8  5  4 | -5,000 |
| Gross Living Area | 3,893 sq.ft. | 4,535 sq.ft. | -80,200 | 3,628 sq.ft. | +33,100 | 4,210 sq.ft. | -39,600 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/ CA | FWA/ CA | | FWA/ CA | | FWA/ CA | |
| Energy Efficient Items | Typical Items | Typical Items | | Typical Items | | Typical Items | |
| Garage/Carport | 2 Car Garage | None | +20,000 | None | +20,000 | 2 Car Garage | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Kitchen Equipment | Standard | Standard | | Standard | | Standard | |
| Pool | Pool | Pool | | Pool | | Pool | |
| DOM | 152 | 42 | | 42 | | | 0 |
| Net Adjustment (Total) | | ☒ + ☐ - $ 592,800 | | ☒ + ☐ - $ 1,099,100 | | ☒ + ☐ - $ 636,400 | |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | $ 6,172,800 | | $ 9,299,100 | | $ 7,086,400 | |

Summary of Sales Comparison Approach    The market data show a range in value from $6,172,800 to $15,272,000 All these sales are similar to the Subject and given equal consideration, give a very accurate estimate of the Subject Property.

Market data obtained from the MLS is assumed to be correct. In the event square footage is not available on the MLS, county assessor records are used. Site adjustments, if any, are made according to site value and not necessarily  to site size. Specific comments concerning the appraiser's approach to market value including specific comments concerning this property are located in the supplemental addenda.

Indicated Value by Sales Comparison Approach $   9,500,000

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                    3/2007

# RESIDENTIAL APPRAISAL REPORT

File No.: 1605-002

**COST APPROACH TO VALUE (if developed)**  ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):  N/A

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ |
| Source of cost data: | DWELLING | Sq.Ft. @ $ | | =$ |
| Quality rating from cost service: Effective date of cost data: | 0 | Sq.Ft. @ $ | | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | | =$ |
| | | Sq.Ft. @ $ | | =$ |
| | | Sq.Ft. @ $ | | =$ |
| | | | | =$ |
| | Garage/Carport | Sq.Ft. @ $ | | =$ |
| | Total Estimate of Cost-New | | | =$ |
| | Less Physical | Functional | External | |
| | Depreciation | | | =$( ) |
| | Depreciated Cost of Improvements | | | =$ |
| | "As-is" Value of Site Improvements | | | =$ |
| | | | | =$ |
| | | | | =$ |
| Estimated Remaining Economic Life (if required): 54 Years | INDICATED VALUE BY COST APPROACH | | | =$ 0 |

**INCOME APPROACH TO VALUE (if developed)**  ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $  0  X Gross Rent Multiplier  = $  **Indicated Value by Income Approach**

Summary of Income Approach (including support for market rent and GRM):

**PROJECT INFORMATION FOR PUDs (if applicable)**  ☒ The Subject is part of a Planned Unit Development.

Legal Name of Project:  Lindisfarne

Describe common elements and recreational facilities:

Indicated Value by: Sales Comparison Approach $ 9,500,000  Cost Approach (if developed) $ 0  Income Approach (if developed) $

Final Reconciliation  It is the opinion of the appraiser that the Sales Comparison Approach to Value, supported by the Cost Approach, gives the most accurate estimate of the Subject's current Market Value.  This area is primarily owner occupied and there is little or no rental data to substantiate the use of the Income Approach.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed,  ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:  Personal property is not considered in this report.  No liability is assumed for property structural or mechanical elements. It is assumed that the mechanical and electrical systems on the property are in working order.

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:  $  9,500,000  , as of:  04/20/2016  , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.  See attached addenda.

A true and complete copy of this report contains _____ pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:
☒ Scope of Work  ☐ Limiting Cond./Certifications  ☐ Narrative Addendum  ☒ Photograph Addenda  ☒ Sketch Addendum
☒ Map Addenda  ☒ Additional Sales  ☐ Cost Addendum  ☐ Flood Addendum  ☐ Manuf. House Addendum
☒ Hypothetical Conditions  ☐ Extraordinary Assumptions

Client Contact:  Elizabeth Hazan  Client Name:  N/A
E-Mail:  Sean Meehan <seannmeehan@gmail.com>  Address:  N/A

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| | |
| Appraiser Name:  Negasi S. Abraha, Cert Res RD 4731 | Supervisory or Co-Appraiser Name: |
| Company:  Appraisal 1 Inc. | Company: |
| Phone:  786-234-8393  Fax: 855-450-1192 | Phone:  Fax: |
| E-Mail:  appraisal1inc@yahoo.com | E-Mail: |
| Date of Report (Signature):  May 25, 2016 | Date of Report (Signature): |
| License or Certification #:  RD 4731  State:  FL | License or Certification #:  State: |
| Designation: | Designation: |
| Expiration Date of License or Certification:  11/30/2016 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection:  04/20/2016 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE  3/2007

# ADDITIONAL COMPARABLE SALES

File No.: 1605-002

| FEATURE | SUBJECT | COMPARABLE SALE #4 | +(-) $ Adjust. | COMPARABLE SALE #5 | +(-) $ Adjust. | COMPARABLE SALE #6 | +(-) $ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 6913 Valencia Dr Miami Beach, FL 33109 | 350 S Hibiscus Dr Miami Beach, FL 33139 | | 6919 Valencia Dr Miami Beach, FL 33109 | | 1620 W 21st St Miami Beach, FL 33140 | |
| Proximity to Subject | | 1.72 miles NW | | 0.03 miles S | | 2.31 miles N | |
| Sale Price | $ 15,000,000 | $ 7,050,000 | | $ 15,500,000 | | $ 13,900,000 | |
| Sale Price/GLA | $ 3,853.07 /sq.ft. | $ 1,658.43 /sq.ft. | | $ 2,718.82 /sq.ft. | | $ 2,392.43 /sq.ft. | |
| Data Source(s) | Inspection | SEF/MLS#A2041873;DOM 154 | | SEF/MLS#A10071427;DOM 30 | | SEF/MLS#A2166858;DOM 267 | |
| Verification Source(s) | Assessor/Realto | Assessor/Realtor | | Assessor/Realtor | | Assessor/Realtor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | 0 | ArmLth Cash;0 | | Listing Active;0 | | Listing Active;0 | |
| Date of Sale/Time | Unknown | s05/15;c05/15 | +710,000 | Active | | Active | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Site | 12,393 sf | 15,750 sf | -15,000 | 11,628 sf | 0 | 8,700 sf | +20,000 |
| View | B;Glfvw; | B;Wtr; | | B;Glfvw; | | B;Wtr; | |
| Design (Style) | Traditional | Split Level | | Traditional | | Traditional | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Age | 13 | 40 | +270,000 | 14 | | 26 | +130,000 |
| Condition | C4 | C4 | | C4 | | C4 | |
| Above Grade | Total 6 Bdrms 3 Baths 3.1 | Total 10 Bdrms 7 Baths 6 | -25,000 | Total 8 Bdrms 5 Baths 5.1 | -2,000 | Total 9 Bdrms 6 Baths 6.1 | -30,000 |
| Gross Living Area | 3,893 sq.ft. | 4,251 sq.ft. | -44,800 | 5,701 sq.ft. | -226,000 | 5,810 sq.ft. | -239,600 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/ CA | FWA/ CA | | FWA/ CA | | FWA/ CA | |
| Energy Efficient Items | Typical Items | Typical Items | | Typical Items | | Typical Items | |
| Garage/Carport | 2 Car Garage | 2 Car Carport | +15,000 | 2 Car Garage | | None | +20,000 |
| Porch/Patio/Deck | Patio | Patio | | Patio/Deck | | Patio/Deck | |
| Kitchen Equipment | Standard | Standard | | Standard | | Standard | |
| Pool | Pool | Pool | | Pool | | Pool | |
| DOM | 152 | 154 | 0 | 30 | | 267 | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 910,200 | ☐ + ☒ - | $ -228,000 | ☐ + ☒ - | $ -99,600 |
| Adjusted Sale Price of Comparables | | | $ 7,960,200 | | $ 15,272,000 | | $ 13,800,400 |

SALES COMPARISON APPROACH

Summary of Sales Comparison Approach

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL

Form GPRES2.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3/2007

# USPAP Compliance Addendum

Loan #
File # 1605-002

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State FL | Zip Code | 33109 |
| Lender | N/A | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☒ Appraisal Report — This report was prepared in accordance with the requirements of the Appraisal Report option of USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with the requirements of the Restricted Appraisal Report option of USPAP Standards Rule 2-2(b). The intended user of this report is limited to the identified client. This is a Restricted Appraisal Report and the rationale for how the appraiser arrived at the opinions and conclusions set forth in the report may not be understood properly without the additional information in the appraiser's workfile.

## ADDITIONAL CERTIFICATIONS

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The report analyses, opinions, and conclusions are limited only by the reported assumptions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or specified) personal interest with respect to the parties involved.

- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analyses, opinions, and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- This appraisal report was prepared in accordance with the requirements of Title XI of FIRREA and any implementing regulations.

## PRIOR SERVICES

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

## PROPERTY INSPECTION

☐ I have NOT made a personal inspection of the property that is the subject of this report.

☒ I HAVE made a personal inspection of the property that is the subject of this report.

## APPRAISAL ASSISTANCE

Unless otherwise noted, no one provided significant real property appraisal assistance to the person signing this certification. If anyone did provide significant assistance, they are hereby identified along with a summary of the extent of the assistance provided in the report.

## ADD

Additional USPAP related issues requiring disclosure and/or any state mandated requirements:

## MAR

☒ A reasonable marketing time for the subject property is ___30___ day(s) utilizing market conditions pertinent to the appraisal assignment.

☒ A reasonable exposure time for the subject property is ___30___ day(s).

## APP (NLY IF REQUIRED)

| | |
|---|---|
| Signature | Signature |
| Name  Negasi S. Abraha, Cert Res RD 4731 | Name |
| Date of Signature  May 25, 2016 | Date of Signature |
| State Certification #  RD 4731 | State Certification # |
| or State License # | or State License # |
| State  FL | State |
| Expiration Date of Certification or License  11/30/2016 | Expiration Date of Certification or License |
| Effective Date of Appraisal  04/20/2016 | Supervisory Appraiser Inspection of Subject Property |
| | ☐ Did Not  ☐ Exterior-only from Street  ☐ Interior and Exterior |

USPAP Compliance Addendum 2014

Page 1 of 1

## Supplemental Addendum

File No. 1605-002

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code 33109 |
| Lender | N/A | | | | | |

### HIGHEST AND BEST USE AND ZONING:

The highest and best use analysis employed herein is based on the following:
Highest and best can be defined as the reasonably probable and legal use of vacant land or an improved property, that is physically possible, legally permissible, financially feasible, and that results in the highest value.
The present use is deemed to meet that test as of the effective date of the appraisal report.

The specific zoning classification and description provided, shows the use of the property. Typically this is also the zoning classification. This however does not mean that this is the zoning classification. The Appraiser states that every effort was made to find the specific zoning classification and that the provided Zoning is believed to be accurate.

### • GP Residential : Neighborhood - Description

The employment stability and general economy of the market area in which the subject is located, is considered to be stable to moderately increasing. Schools, places of worship,recreational areas,downtown business district and other amenities are all within one mile of the subject property. Access to employment centers,a shopping mall,community college, regional airport, hospitals, state parks, and interstate highway systems gives the area good appeal.

### • GP Residential : Neighborhood - Market Conditions

Marketing time is considered to be 90-120 days in most sub markets,based on information obtained from the MLS,which is assumed to be correct. Supply and demand are in balance, however the market appears  to have been stable over the last 12 months. Mortgage money is available at competitive interest rates to qualified buyers.The financing for the subject property is consistent with financing in the local market area. Loan discounts, interest buy downs and concessions are not prevalent in the subject's sub market.

### ADVERSE ENVIORNMENTAL CONDITIONS:

No environmental hazards or potential problems were noted by the appraiser at the time of inspection. The appraiser, however, is not an expert in the field of environmental hazards or toxic wastes, and makes no claims to possess such knowledge. It is the responsibility of the appraiser only to make note of and point out any obvious hazards or conditions. If the client has any questions, concerns or suspicions about the possible existence of any potentially hazardous conditions, then an expert in the field should be obtained to render a qualified opinion. Furthermore, the appraiser is not a qualified engineer or land surveyor and makes no claims to be. Any determination of flood zone location should be made by a qualified professional. If there are any questions regarding the exact location of any flood zone or zones, a qualified land surveyor should be retained for such an establishment.

### CONDITIONS OF APPRAISAL:

This is a Complete Appraisal Report written in a Summary Format which is intended to comply with the reporting requirements set forth under Standards Rule 2 - 2(b) of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. As such, it represents only summary discussions of the data, reasoning and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation that is not provided within the report concerning the data, reasoning and analyses is retained in the appraiser's file. The depth of the discussion contained in this report is specific to the needs of the client and for the intended use stated in the report. The appraiser is not responsible for unauthorized use of this report.

This appraisal report may contain an electronic signature(s). Electronic signatures were implemented for the convenience of this firm and at our clients' requests. Electronic signatures are individually password protected.

This appraisal report may contain Multiple Listing Service photographs. In the event that MLS photos have been utilized, the appraiser certifies that he/she has driven by the property and that the comparable photos used are accurate representations of the comparable sale as of the date of sale of the comparable property.
The Date of the Report is the date the report was signed.

### SUBJECT SECTION:

The subject's appraised value includes only the tax parcel with the residence and does not include any vacant or adjoining sites. It is the responsibility of the lender that prior to the completion of this report to indicate if any additional land is to be given contributory value.

### THE APPRAISER IS NOT A HOME INSPECTOR:

This report should not be relied upon to disclose any conditions present in the subject property.  The appraisal report does not guarantee that the property is free of defects.  A professional home inspection is recommended.

### NOTE TO HOME MEASUREMENTS:

This Appraiser personally inspected and measured the subject property.  The gross living area is derived from exterior measurements of the subject's review.  Since this Appraiser personally measured the subject, this Appraiser's measurements in calculating gross living area will be used.

### FLOOD INFORMATION:

The flood map information was determined by an outside vendor.

## Supplemental Addendum

File No. 1605-002

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |

**GP Residential: Appraiser Signature**

 **Appraisal 1** employs the use of digital signatures and the electronically transmitted report meets USPAP reporting requirements. The appraiser took reasonable steps to protect the data integrity of the transmitted report. The software program provided a signature security feature for all the appraisers signing the report. The electronic signature carries the same level of authenticity and responsibility as an ink signature on a paper copy report.

**Supplemental Addendum:**
   These supplements to the appraisal have been added in accordance with Standards Rule 2-2 of thm Standards of Professional Appraisal Practice (USPAP) and therefore supported by certification #3 of the `attached Appraiser's Certification.
    The appraiser's inspection of the property consisted of viewing all readily accessible interior spaces, the exterior of the property, the roof viewed from ground level, the site, as well as the adjoining street under the allowable weather condition. Although the appraiser has observed these areas and reported any visible physical deficiencies, these features will be analyzed to extract the appraised value only. This is an appraisal assignment and should not be used for, or in replacement of a home inspection. The scope of work involved in this assignment is used to determine market value only.


 **Home Valuation Code of Conduct:**

**The Appraiser has prepared  in compliance with the Home Valuation Code of Conduct and has not performed, participated in, or been Associated with any activity in violation of the code.**

**Additional Certification:**

I have performed no other services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding acceptance of this assignment.

**Intended user:**
**THE INTENDED USER OF THIS APPRAISAL IS THE OWNER ,  THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A  PERSONAL USE, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE.  NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.**

**Subject Neighborhood:**
**The Subject property is located in Fisher Island, which is one of the most beautifull and exclusive neighborhood in the World and the highest per capital income of any place in the United States.**
**It is located about three miles off shore of mainland South Florida, It is only accessible by Boat or Helicopter, there is no road that connects the Island with mainland.**
**The Island is strategicaly located close by to the world famouse South Beach, Bayside, and the port of Miami.**
**There are only 8 Single Family homes, and several luxurious Condos in Fisher Island.**
**The subject's area consist of a wide range of properties types, varying in size, quality, condition and price.The range of property values is typical of the area and marketability on all the value ranges is Good.**

 **It was determined that the subject property is not an over or under improvement for the subject's market area.**
**- The subject property is currently being sold as an "Arm's Length Transaction".**
**- The subject property is a single family home containing 3 bedrooms and 3.1 baths measuring 3,893 square feet.**
**Real Estate Data for Miami:**

**According to the Miami Herald, The Miami market trends indicate an increase of 9% in median home sales over the past year.**

**Trulia reported that "Fisher Island " market trends indicate an increase of $425,000 (11%) in median home sales over the past year.**


**The appraiser has made an extensive search of the subject neighborhood and nearby neighborhoods in order to select the best comparable sales available. Due to the limited market activity of comparable properties in Fisher Island, the Appraiser expanded to the nearby neighborhoods of Star Island, Hibiscus Island and McArthur Island.**

**Reconciliation of Sales Approach to Value**
**Most emphasis was given to Closed Comparable sales. The other sales provided are being used as supporters when arriving at the subject's final market value estimate. All the comparable sales were arranged in the market grid in order of relevance taking into consideration proximity and date of sale.**

## Subject Photo Page

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | | County | Miami-Dade | State | FL | Zip Code 33109 |
| Lender | N/A | | | | | | |



### Subject Front

| | |
|---|---|
| 6913 Valencia Dr | |
| Sales Price | 15,000,000 |
| Gross Living Area | 3,893 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.1 |
| Location | N;Res; |
| View | B;Glfvw; |
| Site | 12,393 sf |
| Quality | Q4 |
| Age | 13 |



**Subject Rear**



**Subject Street**

# Subject Photo Page

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 6913 Valencia Dr |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A |



### Subject Rear View

| | |
|---|---|
| 6913 Valencia Dr | |
| Sales Price | 15,000,000 |
| Gross Living Area | 3,893 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.1 |
| Location | N;Res; |
| View | B;Glfvw; |
| Site | 12,393 sf |
| Quality | Q4 |
| Age | 13 |



### Subject Rear View



### Subject Rear View

[Miami File No. 1803-002] Page #11

# Interior Photos

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code 33109 |
| Lender | N/A | | | | | |










[Miami File No. 1803-002] Page #12

## Interior Photos

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | |










## Comparable Photo Page

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



### Comparable 1

| | |
|---|---|
| 295 N Coconut Ln | |
| Prox. to Subject | 1.80 miles NW |
| Sales Price | 5,580,000 |
| Gross Living Area | 4,535 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 8,828 sf |
| Quality | Q4 |
| Age | 62 |



### Comparable 2

| | |
|---|---|
| 1600 w 25 st | |
| Prox. to Subject | 2.60 miles N |
| Sales Price | 8,200,000 |
| Gross Living Area | 3,628 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 24,080 sf |
| Quality | Q4 |
| Age | 65 |



### Comparable 3

| | |
|---|---|
| 429 N Hibiscus Dr | |
| Prox. to Subject | 1.88 miles NW |
| Sales Price | 6,450,000 |
| Gross Living Area | 4,210 |
| Total Rooms | 8 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 13,781 sf |
| Quality | Q4 |
| Age | 22 |

## Comparable Photo Page

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



### Comparable 4

350 S Hibiscus Dr

| | |
|---|---|
| Prox. to Subject | 1.72 miles NW |
| Sales Price | 7,050,000 |
| Gross Living Area | 4,251 |
| Total Rooms | 10 |
| Total Bedrooms | 7 |
| Total Bathrooms | 6 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 15,750 sf |
| Quality | Q4 |
| Age | 40 |



### Comparable 5

6919 Valencia Dr

| | |
|---|---|
| Prox. to Subject | 0.03 miles S |
| Sales Price | 15,500,000 |
| Gross Living Area | 5,701 |
| Total Rooms | 8 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | N;Res; |
| View | B;Glfvw; |
| Site | 11,628 sf |
| Quality | Q4 |
| Age | 14 |



### Comparable 6

1620 W 21st St

| | |
|---|---|
| Prox. to Subject | 2.31 miles N |
| Sales Price | 13,900,000 |
| Gross Living Area | 5,810 |
| Total Rooms | 9 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 8,700 sf |
| Quality | Q4 |
| Age | 26 |

Case 1:22-cv-21485-FNS-TGS... Document 85-1 Entered on FLSD Docket 06/14/2022 Page 119 of 799 [Main File No. 1805-002] Page #15]

**2015 License**



**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**

FLORIDA REAL ESTATE APPRAISAL BD          850-487-1395
1940 N. MONROE ST.
TALLAHASSEE          FL 32399-0783

ABRAHA, NEGASI S
8233 NW 200 TERR
HIALEAH          FL 33015

Congratulations! With this license you become one of the nearly
one million Floridians licensed by the Department of Business and
Professional Regulation. Our professionals and businesses range
from architects to yacht brokers, from boxers to barbeque restaurants,
and they keep Florida's economy strong.

Every day we work to improve the way we do business in order to
serve you better. For information about our services, please log onto
**www.myfloridalicense.com**. There you can find more information
about our divisions and the regulations that impact you, subscribe
to department newsletters and learn more about the Department's
initiatives.

Our mission at the Department is: License Efficiently, Regulate Fairly.
We constantly strive to serve you better so that you can serve your
customers. Thank you for doing business in Florida,
and congratulations on your new license!



**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND**
**PROFESSIONAL REGULATION**

RD4731          ISSUED:   11/30/2014

CERTIFIED RESIDENTIAL APPRAISER
ABRAHA, NEGASI S

IS CERTIFIED under the provisions of Ch 475 FS.
Expiration date : NOV 30, 2016          L1411300002487

RICK SCOTT, GOVERNOR                    KEN LAWSON, SECRETARY

- - - - - - - - - - - - - - - - - - DETACH HERE - - - - - - - - - - - - - - - - - -

**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**
**FLORIDA REAL ESTATE APPRAISAL BD**

LICENSE NUMBER
RD4731

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date:  NOV 30, 2016



ABRAHA, NEGASI S
26 DIPLOMAT PARKWAY
HALLANDALE          FL 33009



ISSUED:   11/30/2014          DISPLAY AS REQUIRED BY LAW          SEQ #  L1411300002487

**E & O 2015–2016**



**301 E. Fourth Street, Cincinnati, OH 45202**

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below:  (A capital stock corporation)

☒   Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:   **RAP4116982-15**                    Renewal of:

Program Administrator:        **Herbert H. Landy Insurance Agency Inc.**
**75 Second Ave Suite 410  Needham, MA 02494-2876**

Item 1. **Named Insured**:        **Negasi Abraha**

Item 2. **Mailing Address**:        **8233 NW 200 Terrace**

City, State, Zip Code:        **Hialeah, FL 33015**

Item 3. **Policy Period**: From        **08/31/2015**        To        **08/31/2016**
*(Month, Day, Year)*        *(Month, Day, Year)*
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability**:

A. $    **1,000,000**        **Damages** Limit of Liability – Each **Claim**

B. $    **1,000,000**        **Claim Expenses** Limit of Liability – Each **Claim**

C. $    **1,000,000**        **Damages** Limit of Liability – Policy Aggregate

D. $    **1,000,000**        **Claim Expenses** Limit of Liability – Policy Aggregate

Item 5. **Deductible** (Inclusive of **Claim Expenses**):

A. $    **500**        Each **Claim**

B. $    **1,000**        Aggregate

Item 6. **Premium**: $        **864.00**

Item 7. **Retroactive Date** (if applicable):        **08/01/2014**

Item 8. **Forms, Notices and Endorsements attached**:
**D42100 (05/13)  D42300 FL (05/13)**
**D42402 (05/13) D42403 (05/13)**

*Betsey a. magnuson*

Authorized Representative

D42101  (05/13)                                                                 Page 1 of 1

## Building Sketch

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 6913 Valencia Dr |
| City | Miami Beach |
| County | Miami-Dade |
| State | FL |
| Zip Code | 33109 |
| Lender | N/A |



First Floor
[3957.37 Sq ft]

Open
[64.75 Sq ft]

Garage
[656 Sq ft]

TOTAL Sketch by a la mode, inc.

# Building Sketch

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | |

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 3957.36 Sq ft | $0.5 \times 4 \times 4$ | = 8 |
| | | $0.5 \times 4 \times 4$ | = 8 |
| | | $7 \times 4$ | = 28 |
| | | $0.5 \times 2 \times 2$ | = 2 |
| | | $21 \times 2$ | = 42 |
| | | $0.5 \times 2 \times 2$ | = 2 |
| | | $0.5 \times 2 \times 2$ | = 2 |
| | | $3 \times 2$ | = 6 |
| | | $24 \times 4$ | = 96 |
| | | $0.5 \times 2 \times 1.73$ | = 1.73 |
| | | $33 \times 1.73$ | = 57.13 |
| | | $65 \times 2$ | = 130 |
| | | $103 \times 12$ | = 1236 |
| | | $0.5 \times 4 \times 4$ | = 8 |
| | | $90 \times 4$ | = 360 |
| | | $46 \times 8$ | = 368 |
| | | $50 \times 4$ | = 200 |
| | | $64 \times 1$ | = 64 |
| | | $0.5 \times 9 \times 9$ | = 40.5 |
| | | $64 \times 9$ | = 576 |
| | | $73 \times 6$ | = 438 |
| | | $0.5 \times 4 \times 4$ | = 8 |
| | | $69 \times 4$ | = 276 |
| Open | -64.75 Sq ft | Arc | = 25.48 |
| | | Arc | = 39.27 |
| **Total Living Area (Rounded):** | **3893 Sq ft** | | |
| Non-living Area | | | |
| Garage | 656 Sq ft | $22 \times 24$ | = 528 |
| | | $16 \times 8$ | = 128 |
| Undefined Area | 223.5 Sq ft | $12 \times 13$ | = 156 |
| | | $9 \times 3$ | = 27 |
| | | $0.5 \times 9 \times 9$ | = 40.5 |

## Location Map

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6913 Valencia Dr | | | | | | |
| City | Miami Beach | County | Miami-Dade | State | FL | Zip Code | 33109 |
| Lender | N/A | | | | | | |



**INVOICE**

**FROM:**

Appraisal 1 Inc.
8233 NW 200 Terrace
6913 Valencia Dr
Miami Beach
Telephone Number: Miami-Dade     Fax Number:

| INVOICE NUMBER | |
|---|---|
| | |
| **DATE** | |
| 5/23/2016 | |

**TO:**

Elizabeth Hazan
N/A

,

Telephone Number:     Fax Number:
Alternate Number:     E-Mail:

| REFERENCE | |
|---|---|
| Internal Order #: | 1605-002 |
| Lender Case #: | |
| Client File #: | 1605-002 |
| Main File # on form: | 1605-002 |
| Other File # on form: | |
| Federal Tax ID: | 26-0150166 |
| Employer ID: | |

---

**DESCRIPTION**

Lender: N/A                              Client: N/A
Purchaser/Borrower: N/A
Property Address: 6913 Valencia Dr
City: Miami Beach
County: Miami-Dade               State: FL               Zip: 33109
Legal Description: See attached addenda.

---

| FEES | AMOUNT |
|---|---|
| All invoices are net 30 days:<br>All past due invoices subject to 1.5% services charge per month | |
| **SUBTOTAL** | |

---

| PAYMENTS | AMOUNT |
|---|---|
| Check #:     Date:     Description: | |
| Check #:     Date:     Description: | |
| Check #:     Date:     Description: | |
| **SUBTOTAL** | |
| **TOTAL DUE** | $        0 |

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP,           )
LLC, AS ASSIGNEE OF 9197-5904       )
QUEBEC, INC.,                       )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )
                                    )
NLG, LLC, a Delaware limited        )
liability company,                  )
                                    )
          Defendant.                )
_____ )


        DATE TAKEN:      November 10th, 2015
        TIME:            2:01 p.m. to 2:27 p.m.
        PLACE:           73 West Flagler Street
                         Miami, Florida
        BEFORE:          JUDGE LOPEZ


     This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:

              Dawn Jobe, Court Reporter
   Taylor, Jonovic, White, Gendron, Kircher-Echarte
       2455 East Sunrise Boulevard, Suite 1200
            Fort Lauderdale, Florida 33304
                   (954) 759-4560

2

APPEARANCES:

    On behalf of the Plaintiff:
        By:  MARK D. COHEN, ESQUIRE
        MARK D. COHEN, P.A.
        4000 Hollywood Boulevard
        Suite 435 South
        Hollywood, Florida 33021
        (954) 962-1166

    On behalf of the Defendant:
        By:  JUAN RAMIREZ, ESQUIRE
        DIAZ, REUS, & TARG
        100 Southeast 2nd Street
        Suite 3400
        Miami, Florida 33131
        (305) 375-9220

ALSO PRESENT

    CHRIS KOSACHUK

3

```
 1        (Thereupon the following proceedings were
 2   had:)
 3        THE COURT:  We're back again, Select
 4   Advisors/NLG.
 5        MR. COHEN:  Your Honor, you closed the
 6   case.
 7        THE COURT:  Well, I know; but he filed a
 8   motion to reconsider.  I wanted to have him air
 9   it out.  I'm not sure where we're supposed to
10   go.
11        MR. RAMIREZ:  You want our appearances?
12   Juan Ramirez on behalf of NLG.
13        MR. COHEN:  Mark Cohen on behalf of the
14   plaintiff.
15        THE COURT:  Okay.
16        MR. RAMIREZ:  Judge, basically we're
17   seeking you to reconsider a nonfinal order that
18   you issued back in August 20th, 2014.  In their
19   response, they never really challenged all the
20   history of it.  It's obvious, if you look at
21   all the stuff I submitted, that basically they
22   got you to domesticate a judgment that was
23   fraudulently obtained.
24        MR. COHEN:  I'm going to object.
25        THE COURT:  He can make his record.
```

4

1          MR. RAMIREZ:  I gave you case law on it.

2     You can go behind the obtaining of a judgment

3     when the defendant never got due process, never

4     got notice, an opportunity to be heard.  What

5     they did was they bought a judgment that had

6     been obtained by Ms. Lorette.  I call that the

7     Lorette judgment.  And they went from New York,

8     where the judgment was issued, to Pennsylvania

9     and they domesticated the judgment in

10    Pennsylvania.  Somehow they got the

11    Pennsylvania court to accept that as being

12    against NLG.

13         The judgment was not against NLG, just

14    against Chris Kosachuk individually, and they

15    got a charging order against NLG.  Then they

16    turned around, went back to New York, where

17    they got a consent judgment where they -- same

18    guy, Ramon Hoo, acted for the plaintiff and the

19    defendant.  This is all documented, and every

20    court that's looked at this has came out with

21    the same conclusion that this was fraudulent.

22         He went to a bankruptcy judge in

23    Philadelphia, who, nunc pro tunc, eliminated

24    that Lorette judgment and they went through --

25    they even tried to do an end run within New

5

1    York to go to Suffolk County, and I just moved

2    to take judicial notice of this new development

3    because the judge in Suffolk County says, well,

4    wait a minute, this is all wrong.  I'm not

5    going to declare that this judgment is valid.

6    They got no due process.

7         And now -- the argument that I don't think

8    was ever made in front of you when you issued

9    that order on August 20th, 2014, this matter

10   was under appeal in the Third District.  So you

11   had no jurisdiction basically because by

12   allowing this judgment to be assigned, you

13   deprived the Third District of jurisdiction,

14   that was the crux of the foreclosure.  They

15   found a foreclosure by using that judgment.

16        THE COURT:  That wasn't before me.  The

17   foreclosure was in another --

18        MR. RAMIREZ:  The foreclosure was in

19   another division.  But they --

20        THE COURT:  So how did my assignment or

21   order granting an assignment --

22        MR. RAMIREZ:  Because that was under

23   appeal, we had a trial with NLG against Hazan,

24   it went two days with Judge Eig.

25        THE COURT:  Right, right.

6

1          MR. RAMIREZ:  Part of the -- the count was

2    we have this judgment, Judge, now we want to

3    foreclose on the mortgage.  They were using

4    that judgment to foreclose.  Judge Eig ruled

5    for the defendant.  So he basically took away

6    our rights under that judgment to foreclose.

7          THE COURT:  Which was reversed.

8          MR. RAMIREZ:  But while it's on appeal --

9    while the matter is pending in the Third

10   District, they come to you and try to get you

11   to assign that very same judgment that was

12   under appeal in the Third District.

13         THE COURT:  No, I don't think so.  But go

14   ahead.  That's okay.  I don't see how I had

15   anything -- I don't understand how my

16   assignment had anything to do with what was on

17   appeal.

18         MR. RAMIREZ:  Because once you assigned

19   that judgment, it makes the appeal moot.

20         THE COURT:  No.

21         MR. RAMIREZ:  Because that was the entire

22   matter under appeal.

23         THE COURT:  No, they proceeded on a

24   foreclosure with Judge Eig, if I remember

25   correctly; it had nothing to do with me at the

7

 1  time.

 2      MR. RAMIREZ:  But --

 3      THE COURT:  When I read all of this,

 4  that's why I was curious why you said I had no

 5  jurisdiction to do what I did.

 6      MR. RAMIREZ:  Because if you look at the

 7  foreclosure petition --

 8      THE COURT:  Let me finish my train of

 9  thought for a moment.  I granted an assignment

10  of whatever rights I granted in a judgment,

11  that has no effect on what Judge Eig may or may

12  not do with it, what the legalities of the

13  parties may or may not do with it.

14      The fact that it's up on appeal, even more

15  so, they can't do anything with that assignment

16  until the appeal is resolved.  If the appeal

17  was affirmed, they're stuck with an assignment

18  with nothing to do.  If the appeal got

19  reversed, they now have a claim that says I

20  have a judgment to go against you.

21      I didn't deprive or have anything to do

22  with the appellate jurisdiction.  I was

23  interested in hearing why I lacked jurisdiction

24  to do what I did.  Because that can be raised

25  at any time.

8

```
 1          MR. RAMIREZ:  That's our argument, Judge.
 2          THE COURT:  Okay.
 3          MR. RAMIREZ:  Because that was the crux of
 4   the matter under appeal, you basically said to
 5   NLG, NLG, you no longer own this judgment even
 6   though that same -- very same judgment is the
 7   crux of the appeal.  The first ruling by the
 8   appellate court was to say that that judgment
 9   was valid.  I forget what the words are, but
10   the first issue that they resolved was the
11   assignment of that --
12          THE COURT:  Not my assignment.
13          MR. RAMIREZ:  Rule on the validity of that
14   judgment.
15          THE COURT:  It was a note and a mortgage
16   or something --
17          MR. COHEN:  Yes.
18          THE COURT:  -- and Judge Eig didn't let
19   them foreclose --
20          MR. COHEN:  It was bifurcated basically.
21          THE COURT:  Whatever -- I just read the
22   appellate opinion.
23          MR. RAMIREZ:  Yeah, the opinion --
24          THE COURT:  I didn't even know what was
25   going on until some other issue.
```

9

1      MR. RAMIREZ:  The appellate opinion talks

2  about -- the first thing they talk about when

3  they start talking about the law is that

4  judgment.

5      THE COURT:  Yeah, that he should have

6  allowed them to foreclose.

7      MR. COHEN:  Correct.

8      THE COURT:  But he didn't.  I thought

9  that's what they came down with.

10      MR. COHEN:  That's exactly it.

11      THE COURT:  He allowed the judgment on the

12  note, that they would --

13      MR. RAMIREZ:  I don't --

14      THE COURT:  Wasn't it?

15      MR. COHEN:  Alternative remedy.  The

16  question was whether or not you had to pick

17  your remedies at the time --

18      MR. RAMIREZ:  And they --

19      MR. COHEN:  -- or you didn't, and that was

20  the only issue that the appellate court

21  decided.

22      MR. RAMIREZ:  How can you assign a

23  judgment that's being decided on the issue of

24  election of remedies?

25      THE COURT:  But I didn't assign that

10

1    judgment.

2         MR. COHEN:  Correct.

3         THE COURT:  I assigned --

4         MR. RAMIREZ:  You assigned the judgment

5    that was the crux of the foreclosure that had

6    become an issue under appeal whether they

7    elected their remedy or not.

8         THE COURT:  I thought they sued on a note.

9         MR. RAMIREZ:  They sued on that judgment.

10        THE COURT:  To execute against the

11   property in Fisher Island.

12        MR. RAMIREZ:  They used the judgment --

13        THE COURT:  That wasn't what the issue

14   was.  I thought it was a promissory note.

15        MR. COHEN:  Right.

16        MR. RAMIREZ:  It was also a promissory

17   note.

18        THE COURT:  They foreclosed on a note and

19   Judge Eig said you can't do the foreclosure.

20        MR. RAMIREZ:  Well, I mean, wouldn't have

21   done it the way they did it.  The fact is they

22   did sue on that judgment.  They said we have

23   this judgment and we want to execute on that

24   judgment against the note.  We also have this

25   mortgage -- so it was alternative remedy and

11

 1   they said, wait a minute, you can't do both,

 2   you have to elect your remedy.  Either sue

 3   under the judgment or sue under --

 4        THE COURT:  No, that's not how I read the

 5   Third District's opinion.

 6        MR. COHEN:  No.

 7        THE COURT:  I thought they sued on a note

 8   that was given by the owner, they went to

 9   foreclose as well, and for some reason Judge

10   Eig said, no.  It had nothing to do with the

11   judgment in New York.  All I did --

12        MR. RAMIREZ:  It had to do with the

13   judgment they obtained.

14        THE COURT:  Where?

15        MR. RAMIREZ:  Judgment by --

16        THE COURT:  Where's the opinion?  Where's

17   the NLG opinion?

18        MR. RAMIREZ:  The default judgment that

19   you assigned.

20        THE COURT:  In New York.

21        MR. RAMIREZ:  No, that you assigned.  The

22   default judgment here --

23        THE COURT:  Right.

24        MR. RAMIREZ:  That NLG obtained against

25   Hazan.

12

```
 1        THE COURT:  Whatever was before me, I
 2   assigned that interest to somebody else.
 3        MR. RAMIREZ:  Yes.
 4        THE COURT:  That was the extent of my
 5   work.
 6        MR. RAMIREZ:  NLG had sued on that default
 7   judgment.  They had said, no, you can't sue
 8   under that, you have to elect your remedy, you
 9   either sue on the promissory note --
10        THE COURT:  Do you have the case here, the
11   NLG appellate opinion?  Is it here?
12        MR. RAMIREZ:  Yes.
13        THE COURT:  Let me look at the facts of
14   that case.  When you mentioned jurisdiction,
15   obviously, that can be raised at any time, so
16   I'm curious.  That's not my recollection of
17   what happened.
18        MR. COHEN:  It's not, Your Honor.
19        THE COURT:  Give him a chance.  I love
20   seeing you guys.
21        MR. COHEN:  Your Honor --
22        THE COURT:  Hold on.
23        MR. COHEN:  If I may, the case is closed.
24   You can't sue --
25        THE COURT:  Did he file this within --
```

13

1        MR. COHEN:  No.

2        THE COURT:  -- 30 days of me closing the

3   case?

4        MR. COHEN:  It's 15 days.

5        MR. RAMIREZ:  No, he filed a motion for

6   rehearing and withdrew it this morning.  I

7   don't know --

8        THE COURT:  You filed a motion for

9   rehearing?

10       MR. COHEN:  The only reason is because he

11  kept on saying the word "dismissed"; you used

12  the word "dismissed" or "closed."

13       THE COURT:  If he filed it within 30 days,

14  I technically have jurisdiction.

15       MR. COHEN:  Fifteen.

16       THE COURT:  Fifteen is for rehearing.  I

17  have jurisdiction on my cases for 30 days

18  technically.  A rehearing --

19       MR. COHEN:  I don't even think he --

20       THE COURT:  There's a 15-day window to

21  appeal.

22       MR. COHEN:  He didn't file it --

23       THE COURT:  Let me get to the merits of

24  it.

25       MR. COHEN:  I may be wrong.

14

1      THE COURT:  Technically, I still have
2  jurisdiction to reconsider what I've done,
3  because, I mean, it's -- his appellate time has
4  run.  This isn't an authorized --
5      MR. RAMIREZ:  It's a nonfinal order,
6  Judge.
7      THE COURT:  You're talking about the
8  jurisdictional order before.  My case is
9  closed.  How do I revisit what I did in a
10  closed case?
11      MR. RAMIREZ:  Because they're trying to
12  enforce --
13      THE COURT:  Procedurally, how do I go back
14  now to a case which I have ended my
15  jurisdiction and undo something I did back
16  then?
17      MR. RAMIREZ:  Because they filed a motion
18  for rehearing, that would be one way.
19      THE COURT:  But that's off the table.  His
20  motion doesn't piggyback to you.  He's asking
21  me to take a look at something overlooked.
22      MR. COHEN:  I withdrew it.
23      THE COURT:  Now, he withdrew it.
24      MR. RAMIREZ:  You want me to file a dec
25  action?

15

1      THE COURT:  You do what you have to do.

2      MR. RAMIREZ:  I'm saying --

3      THE COURT:  Explain to me --

4      MR. RAMIREZ:  We have an order that was

5  entered as you say -- if you had no

6  jurisdiction --

7      THE COURT:  I didn't say that, you said

8  that.

9      MR. RAMIREZ:  I'm saying that.

10      THE COURT:  I think I had jurisdiction.  I

11  don't think what I did affected the appeal.

12      MR. RAMIREZ:  But if --

13      THE COURT:  I didn't even know it was

14  ongoing to begin with.

15      MR. RAMIREZ:  Well, I --

16      THE COURT:  Forget that part.

17      MR. RAMIREZ:  -- wasn't the lawyer.

18      THE COURT:  Nobody brought it to my

19  attention, I'm sure you might have brought that

20  argument up at that point in time.  Show me

21  where the appellate opinion -- show me what

22  went on before Judge Eig that had to do with

23  the foreclosing of my judgment, which is what

24  you're telling me.

25      You can tell me what's on your own mind.

16

1   If you're going to whisper in his ear -- just

2   help me out.

3       MR. KOSACHUK:  NLG obtained judgment

4   against Ms. Hazan for not paying in '07.  What

5   was filed in '07 under the case number 19532.

6       THE COURT:  Right.

7       MR. KOSACHUK:  That judgment was for

8   breach of the promissory note.

9       THE COURT:  Okay.  They had a judgment on

10  a note.

11      MR. KOSACHUK:  NLG had a judgment against

12  Ms. Hazan, his other client.

13      THE COURT:  On a note.

14      MR. KOSACHUK:  On a promissory note,

15  correct.

16      THE COURT:  Which then they went to try to

17  foreclose.

18      MR. KOSACHUK:  We used that judgment as

19  a -- which also had a mortgage attached to it

20  because there was a settlement agreement before

21  that said the note, the judgment and the

22  mortgage, all three instruments are in full

23  force and effect until paid or satisfied.

24      THE COURT:  Correct.

25      MR. KOSACHUK:  Then we moved to -- in 2011

17

```
 1   to foreclose out the judgment and the mortgage.
 2        THE COURT:  You foreclosed the mortgage,
 3   not judgment.
 4        MR. COHEN:  Correct.
 5        MR. KOSACHUK:  We foreclosed the
 6   mortgage --
 7        THE COURT:  Judge Eig said no.
 8        MR. KOSACHUK:  Correct.  Then what we did
 9   was we appealed.
10        THE COURT:  Correct.
11        MR. KOSACHUK:  And the central issue on
12   appeal was the enforceability of that judgment
13   that you had assigned on August 20th, 2014.
14        THE COURT:  No.
15        MR. COHEN:  No.
16        THE COURT:  Go ahead.
17        MR. KOSACHUK:  The central --
18        THE COURT:  Where is the appellate
19   opinion?  That will clarify it for me.
20        MR. KOSACHUK:  I know also in the -- in
21   the actual foreclosure itself, we attached this
22   judgment and we said that this judgment is the
23   basis for our foreclosure because it is secured
24   by a mortgage on this property.
25        THE COURT:  A judgment isn't secured by a
```

18

1    mortgage.

2         MR. KOSACHUK:  In this particular

3    instance, it was, because of the agreement that

4    had occurred.

5         THE COURT:  Again, find me the appellate

6    opinion.

7         MR. RAMIREZ:  I guess I just cited it.

8         THE COURT:  Do you have the cite?  I'll

9    look it up.

10        MR. KOSACHUK:  It's a 2013 case and the

11   Case Number is 0684.

12        THE COURT:  You talking about the

13   appellate case?

14        MR. KOSACHUK:  Appellate opinion, yes.

15        THE COURT:  I need the appellate case

16   number.  Hold on a second.

17        MR. COHEN:  151 So.3d, Your Honor, 455.

18        MR. KOSACHUK:  No.  That was the first

19   appeal of the judgment itself.  We're now on

20   the appeal of the mortgage foreclosure.

21        THE COURT:  Give me Judge Eig's opinion.

22        MR. KOSACHUK:  2013 case, appellate case

23   number 0684.

24        THE COURT:  Hold on.

25        MR. KOSACHUK:  Opinion issued on September

19

```
 1   3rd, 2014, appellate mandate on November 25th,
 2   2014.
 3         MR. RAMIREZ:  151 So.3d --
 4         MR. COHEN:  That's what I just said and I
 5   got blasted for it.
 6         MR. KOSACHUK:  That's not --
 7         MR. COHEN:  That's the one --
 8         MR. KOSACHUK:  That's the first one.
 9         MR. RAMIREZ:  Yeah, that's the one, 151.
10         MR. KOSACHUK:  No.
11         MR. COHEN:  455.
12         THE COURT:  Is that the one from Judge
13   Eig's case?
14         MR. COHEN:  Yes.
15         MR. RAMIREZ:  Yes.
16         THE COURT:  Hold on.  Let me figure it
17   out.
18         MR. COHEN:  It basically says it was not
19   an election of remedies precluding the later
20   enforcement of the mortgage.  That's it.  The
21   only issue was the mortgage.
22         THE COURT:  151 So.3d.
23         MR. RAMIREZ:  455.
24         THE COURT:  NLG versus Hazan.
25         MR. RAMIREZ:  Right.
```

20

```
 1        MR. COHEN:  Your Honor --

 2        THE COURT:  Hold on.

 3        MR. COHEN:  Not to be difficult, but it's

 4   a corporation and, therefore, I don't believe

 5   he can really talk in the matter.

 6        THE COURT:  He's not, I just wanted to

 7   hear the factual issues.  I'm trying to find

 8   out what happened as to whether there was a

 9   note or not.

10        MR. COHEN:  No.

11        THE COURT:  I agree with you.

12        MR. COHEN:  In their paragraph 29, they

13   specifically say it.

14        THE COURT:  All right.

15        MR. RAMIREZ:  Exhibit M is complaint for

16   foreclosure.

17        THE COURT:  I'll make copies if I have to.

18   I got NLG versus Hazan 151 So.3d 455.  What I

19   get from the facts, NLG sold the home to

20   Ms. Hazan for 5,100,000, took back a note and

21   mortgage for 1.275, required an installment

22   payment and it was supposed to mature, they

23   weren't forthcoming, NLG filed a lawsuit for

24   collection of the note.  Settlement agreement

25   was entered into, they were not made.  April of
```

21

 1   '08, in accordance with the settlement, a

 2   default judgment on the note was entered

 3   against Ms. Hazan in favor of NLG in the amount

 4   of 1.618, which would have been the mortgage

 5   amount.

 6        MR. RAMIREZ:  That's the default --

 7        THE COURT:  That's the default judgment

 8   for the note and mortgage amount, because the

 9   note was 1.275.

10        MR. RAMIREZ:  Right.

11        THE COURT:  That was recorded, then they

12   got new counsel and they attempted to execute

13   on the judgment against the Fisher Island home

14   by a writ, right?  That was vacated because she

15   claimed it was homestead.

16        MR. RAMIREZ:  Right.

17        THE COURT:  So that was done.  Then they

18   filed suit to foreclose on the mortgage based

19   on the judgment?

20        MR. RAMIREZ:  Right.

21        THE COURT:  And the note for 1.2, which

22   had merged, right?  Let's call it a merged

23   judgment and note.  So they were foreclosing on

24   the note.  Judge Eig said no, you elected your

25   remedy.  Then the appellate court, Third

22

1   District, reverses and said no, they can go

2   forward and foreclose.

3       Where does that take into account the $5.1

4   million judgment or whatever judgment I had in

5   my division?

6       MR. RAMIREZ:  Because --

7       THE COURT:  How does that reflect on this?

8       MR. RAMIREZ:  Because this judgment, that

9   was the basis and it's an integral part of the

10  foreclosure, that judgment was assigned by you.

11      THE COURT:  What judgment, the 1.2 --

12      MR. RAMIREZ:  The default --

13      THE COURT:  The 1.6.

14      MR. RAMIREZ:  The 1.6.

15      THE COURT:  I assigned the New York

16  judgment.

17      MR. RAMIREZ:  You assigned this judgment.

18      THE COURT:  Which one did I assign?

19      MR. COHEN:  We filed a domestication.

20      THE COURT:  For some number up in New

21  York --

22      MR. COHEN:  $5 million.

23      THE COURT:  After that, you said, I want

24  to take over this judgment.

25      MR. COHEN:  Correct.  That's it.  We

23

 1  executed on it.

 2       THE COURT:  Hold on.

 3       MR. RAMIREZ:  So this is a judgment --

 4       THE COURT:  They took -- I assigned that

 5  over to them, they took over that judgment

 6  subject to whatever would happen in Judge Eig's

 7  division.  How does that affect what's up on

 8  appeal?

 9       MR. RAMIREZ:  Because that was the central

10  issue on appeal.  Did we elect the remedies,

11  did we have a right to collect on this note.

12  How can -- if they have an issue with that

13  judgment, the proper place to answer that would

14  be in the foreclosure division, not in your

15  division.

16       THE COURT:  They didn't challenge the

17  judgment, the debt was affirmed.  The note that

18  led to the 1.2 or 1.6 judgment, which is what

19  they foreclosed upon, was affirmed previously

20  by the Third District.  The issue in this case

21  was whether they could foreclose on that note

22  and mortgage.

23       MR. RAMIREZ:  Exactly.  While that's

24  pending, you basically took the rug out from

25  under our feet by saying you no longer own that

24

1  judgment, now it's Quebec that owns that

2  judgment.

3      THE COURT:  Okay, so I assigned your

4  interest in it to them, which had nothing to do

5  with what's going up on appeal.

6      MR. COHEN:  Correct.

7      MR. RAMIREZ:  How can you say that, Judge?

8      THE COURT:  I just did.

9      MR. RAMIREZ:  I know you just did.  The

10  whole thing is, did we elect a remedy --

11      THE COURT:  That has nothing to do with

12  me.  My case was who -- Selective against NLG.

13  Selective sued, right, saying we bought this

14  judgment, right?  We want to domesticate a New

15  York judgment.  They filed here, they wanted to

16  domesticate it against NLG, which was the

17  judgment debtor up in New York.

18      MR. RAMIREZ:  Right.

19      MR. KOSACHUK:  No, NLG was never a

20  judgment debtor.

21      MR. RAMIREZ:  It was a judgment debtor by

22  fraud.

23      THE COURT:  I don't care by fraud, that's

24  for New York to decide.

25      MR. RAMIREZ:  No, Judge, you had --

25

1      THE COURT:  Had you posted a bond, I would

2  have dealt with it.

3      MR. RAMIREZ:  You have the right to look

4  at whether they got due process or not.  Be

5  that as it may, the jurisdictional issue is the

6  one I'm pursuing.

7      THE COURT:  Let's go back and trace this

8  again.  Selective Advisors domesticated a

9  judgment, they say we took over from Quebec who

10  had a judgment up in New York against NLG.

11      MR. RAMIREZ:  Right.

12      THE COURT:  For some millions of dollars.

13  NLG came in and it's fraud, it's this, it's

14  that; I said, you know what, you have every

15  right to do that, put up a bond; they chose not

16  to.  Correct?

17      MR. RAMIREZ:  Five-million-dollar bond.

18      THE COURT:  I'm not saying it's easy.  I

19  don't have $5 million, I understand that.  Then

20  we turn around and they went in and enforced

21  the judgment.  I assigned whatever interest NLG

22  had in the judgment apparently now and took

23  over the 1.7 and gave them full credit for the

24  1.7 off the 5 million in New York.  I think

25  that's what I did, something like that, right?

26

1      MR. COHEN:  Yes.

2      MR. RAMIREZ:  Right.

3      THE COURT:  That judgment that I assigned

4  to them or that interest in that judgment was

5  up on appeal.  I didn't affect the validity of

6  what's up on appeal.  I just said, if you win

7  or lose, whatever happens, now these people own

8  it instead of you.  The Third came back and

9  said, too bad, you get to foreclose, they now

10  own that judgment or note if that's what merged

11  into it, they get to go and foreclose.  I had

12  nothing to do --

13      MR. RAMIREZ:  It's the same people, Judge.

14      THE COURT:  It doesn't matter to me who

15  they were, what they were.  That's not my

16  fight.  Now, it's been paid off.  How do I undo

17  something that's been paid off?

18      MR. RAMIREZ:  It was all fraud.

19      THE COURT:  It may have been.  How do I

20  undo --

21      MR. RAMIREZ:  How can you condone a fraud

22  by judicial --

23      THE COURT:  Very simply, I did not deal

24  with the fraud issue until they posted a bond

25  and they kept promising me New York is going to

27

1   vacate this, New York is going --

2        MR. RAMIREZ:  We've been trying to do that

3   and they keep delaying.

4        THE COURT:  They delayed and delayed and

5   then somebody paid it off.

6        MR. RAMIREZ:  They used that judgment to

7   say that they paid it off.

8        THE COURT:  It's been satisfied.

9        MR. RAMIREZ:  By defrauding us.  Judge --

10       THE COURT:  My judgment was satisfied.

11       MR. RAMIREZ:  They never were entitled to

12   penny one.  The Lorette judgment that started

13   this whole thing has been vacated nunc pro

14   tunc.  In fact, he got damages of --

15       THE COURT:  Hold on.  How was my judgment

16   satisfied?

17       MR. COHEN:  It was satisfied --

18       THE COURT:  They paid it or just because

19   of the assignment transfer of interest?

20       MR. COHEN:  No, they've resolved it

21   somehow up there between Select --

22       THE COURT:  Somebody up in New York issued

23   a satisfaction of judgment?

24       MR. COHEN:  Correct.

25       MR. RAMIREZ:  Select is her husband, is

28

1  Hazan's husband.

2       THE COURT:  I don't care who it is.

3       MR. RAMIREZ:  It is.  It's important

4  because they've done all this to prevent us

5  from foreclosing on the mortgage in front of

6  Judge --

7       THE COURT:  Your Honor, the judgment in

8  New York was satisfied of record, correct?

9  They worked it out, somebody issued a

10  satisfaction of judgment?

11       MR. RAMIREZ:  Right.  And now --

12       THE COURT:  As far as I'm concerned,

13  whatever's happening here is done, it's been

14  paid off.  There's nothing I can do.

15       MR. COHEN:  Can we get an order just --

16       THE COURT:  We're done.  My order --

17       MR. KOSACHUK:  The domestication of this

18  New York $5 million judgment is now gone,

19  correct?

20       THE COURT:  No, it's been satisfied.

21  There's a difference.  It's satisfied in the

22  public records in Florida, it shows it was

23  sought to be domesticated, an action was taken

24  by me, my case is closed and now you record a

25  satisfaction of judgment in Florida.  That

1  should take care of any interest in my matter.
2  You paid it off.
3       MR. KOSACHUK:  So they no longer have the
4  right to go forward and try to collect on that
5  judgment.
6       THE COURT:  If it's been paid off, that's
7  up to you guys.  I don't know why it was
8  satisfied.
9       MR. COHEN:  Your Honor --
10      THE COURT:  That's all.  He can tell you
11  better than I, he's been through this many
12  times before.
13      MR. COHEN:  The motion is denied?  Your
14  Honor, just for curiosity, you say the Court
15  retains jurisdiction for 30 days; under 1.540,
16  I only see 15 days.
17      THE COURT:  Fifteen days is a rehearing.
18      MR. COHEN:  You show me 1.540 --
19      THE COURT:  Go ahead, take a look at it.
20  I keep jurisdiction --
21      MR. RAMIREZ:  Fifteen is rehearing.  It's
22  moot, you denied the motion.
23      THE COURT:  Nobody is appealing my case.
24      MR. COHEN:  I just want to know --
25      THE COURT:  Yes, the motion is denied for

30

1   everything we discussed here.

2        MR. COHEN:  For my own knowledge --

3        THE COURT:  Because the 15 is your

4   appellate time.

5        MR. COHEN:  No, 30 is appellate.

6        THE COURT:  How much time do you have to

7   file a notice of appeal usually?

8        MR. COHEN:  Thirty days from the date of

9   denial of the motion for rehearing.

10       THE COURT:  No, 30 days -- if you don't

11  file a motion for rehearing, how much time do

12  you have to file an appeal?

13       MR. COHEN:  Thirty days.

14       THE COURT:  Thank you.

15       MR. COHEN:  But you only have 15 days --

16       THE COURT:  Counsel, please, if you don't

17  file the rehearing, it doesn't suspend the

18  appellate time.  My case lingers for 30 days.

19  That's my jurisdiction.

20       MR. COHEN:  I was just more curious than

21  anything.

22       (Thereupon, the proceeding concluded at

23  2:27 p.m.)

24

25

31

                    CERTIFICATE OF REPORTER


STATE OF FLORIDA)
COUNTY OF BROWARD)



     I, DAWN JOBE, Florida Professional Reporter, do
hereby certify that I was authorized to and did
stenographically report the foregoing proceedings,
and that the foregoing transcript, pages 1 through
31, is a true and correct record of my stenographic
notes.


     DATED this 15th day of November, 2015 at Fort
Lauderdale, Broward County, Florida.









     _____
                DAWN JOBE, Court Reporter

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 16-10389-AJC
Chapter 11

IN RE:

Liza Hazan
a/k/a Elizabeth Hazan,

     Debtor.

_____/

## NOTICE OF FILING AFFIDAVIT IN SUPPORT OF NLG'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY [DE 66]

COMES NOW Secured Creditor NLG, LLC (hereinafter "NLG"), by and through its undersigned counsel, and gives notice that it is this day filing the attached Affidavit in Support of NLG's Motion for Relief from Automatic Stay executed by Juan Ramirez, Jr., Esq.

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 20th day of June, 2016.  I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

**LAW OFFICE OF ALEXIS GONZALEZ, P.A.**
3162 Commodore Plaza, Suite 3E
Coconut Grove, FL 33133
Tel.: (305) 223-9999
Fax: (305) 223-1880
Primary Email:  eservice@aglawpa.com
Secondary Email:  aorizondo@aglawpa.com

BY: */s/ Alberto H. Orizondo*
   Alberto H. Orizondo, Esq.
   Fla. Bar. No. 70176
   aorizondo@aglawpa.com

### SERVICE LIST FOR CASE NUMBER 16-10389-AJC

Geoffrey S. Aaronson, Esq.
Jeremy D. Evans, Esq.
Tamara D. McKeown, Esq.
**Aaronson Schantz Beiley P.A.**
Email:  gaaronson@aspalaw.com; jevans@aspalaw.com; tdmckeown@mckeownpa.com
*Attorneys for Debtor Liza Hazan a/k/a Elizabeth Hazan*

Kevin L. Hing, Esq.
**Shapiro, Fishman & Gache, LLP**
Email: khing@logs.com
*Attorneys for Creditor JPMorgan Chase Bank, N.A.*

David B. Haber, Esq.
**Haber Slade, P.A.**
Email: dhaber@dhaberlaw.com
*Attorney for Creditor Valencia Estates Homeowners' Association, Inc.*

Robert A. Gusrae, Esq.
Email: robert.gusrae@gmail.com
*Attorney for Creditor Fisher Island Community Association, Inc.*

Jeffrey S. Fraser, Esq.
**Albertelli Law**
Email: bkfl@albertellilaw.com
*Attorney for Creditor Southeast Financial, LLC*

Elizabeth J. Campbell, Esq.
**Locke Lord LLP**
Email: ecampbell@lockelord.com
*Attorney for Creditor JMB/Urban 900 Development Partners, LLC*

Robert C. Furr, Esq.
**Furr and Cohen, P.A.**
Email: rfurr@furrcohen.com
*Attorney for Creditor Board of Managers of Spencer Condominium*

Adam A. Diaz
**SHD Legal Group, P.A.**
Email: adiaz@shdlegalgroup.com
*Attorney for Creditor U.S. Bank National Association*

Office of the US Trustee
51 SW 1st Ave.
Suite 1204
Miami, Florida 33130
Email: USTPRegion21.MM.ECF@usdoj.gov
*U.S. Trustee*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT COURT OF FLORIDA
MIAMI DIVISION

IN RE:
LIZA HAZAN                              CASE NO.: 16-10389-AJC
aka ELIZABETH HAZAN

DEBTOR,                                 CHAPTER: 11

_____/

## AFFIDAVIT IN SUPPORT OF NLG'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

BEFORE ME, the undersigned authority, personally appeared, Juan Ramirez, Jr.,
who, after being first duly sworn, deposes and says:

1.      The deponent has been representing NLG, LLC since October 7, 2014,
when he filed a Notice of Appearance in Case No. 3D13-0684, with the Third District
Court of Appeal.

2.      This Notice was filed after the Third District had issued a detailed written
opinion on September 3, 2014, reciting extensively the facts and legal basis for its
decision. The Court concluded as follows:

> Accordingly, we reverse the final judgment and remand the case
> for further proceedings, including **the enforcement of NLG's
> mortgage** and the reinstatement of the lis pendens and amended lis
> pendens previously vacated by the final judgment. (emphasis added).

*NLG, LLC v. Hazan*, 151 So. 3d 455, 457 (Fla. 3d DCA 2014).

3.      The deponent finds it outrageous that a member in good standing with the
Florida Bar, Geoffrey Stuart Aaronson, Bar #349623, would be advancing the same

arguments that had been explicitly rejected multiple times, but more shocking is that he knew or should have known that these arguments were based on forged signatures, fraudulent filings, and unethical conduct by other attorneys, all engaged in reprehensible tactics intended to delay NLG's rightful enforcement of a mortgage pursuant to a mandate of the state court having ultimate jurisdiction in this matter.

4.      Mr. Aaronson's first argument was that on February 20, 2007, Chris Kosachuk had executed a "Gift Equity Letter." If Mr. Aaronson had read this so-called letter, he would have immediately seen it as a fraud, as it recites that Hazan and Kosachuk are cousins. He knew perfectly well that these two individuals are not related in any way. Additionally, the mortgage executed by Hazan is dated March 8, 2007, which would be **after** this so-called gift. Furthermore, this so-called nine-year-old "gift" has never been recognized by any court during the extensive litigation between the parties. It was rejected by the trial judge, Spencer Eig, during the bench trial concluded on January 2, 2013, and Hazan never challenged this finding by a cross appeal to the Third District, nor even as an argument during the appeal. It is being resurrected by Mr. Aaronson in an effort to obfuscate NLG's simple motion for relief from the automatic stay in this case.

5.      Next, Hazan's counsel seeks to obfuscate again by arguing something that was rejected by Judge Monica Gordo, the trial judge having jurisdiction over the post-mandate order of the Third District—the NLG mortgage. This argument centers on a Default Judgment entered in April 2008, by Judge Robert Scola, which was discussed by the Third District in its opinion. The Court specifically rejected Hazan's argument that the prior 2008 judgment constituted an election of remedy. Because NLG is not attempting to enforce the Default Judgment entered by Judge Scola, Hazan's long,

convoluted arguments that this judgment was judicially assigned are totally irrelevant. NLG's foreclosure in front of Judge Gordo was not based on that judgment, but was based on the mortgage.

6.    The Third District specifically mandated the enforcement of NLG's mortgage, not the Default Judgment. Hazan repeatedly attempted to delay this enforcement by using the same arguments Mr. Aaronson advanced in the hearing before this Court. These arguments were all rejected by Judge Gordo. Hazan even tried to have Judge Lopez enjoin the foreclosure sale on the day before it was to take effect and he refused to intervene in Judge Gordo's case. The proper forum for relief from Judge Gordo's judgment was the Third District Court of Appeal. And in fact, Hazan filed such an appeal in Case No. 3D16-0315, only to file a voluntary dismissal on April 5, 2016. The Order recognizing the voluntary dismissal is attached as Exhibit "A." In fact, the Third District even awarded attorney's fees under section 57.105 for filing a frivolous appeal. See Exhibit "B."

7.    Another line of argument advanced by Mr. Aaronson is derived from a judgment obtained by an entity referred to as Quebec. This is the same entity that filed a Petition for Involuntary Bankruptcy in Case No. 12-16438 (JKF) against Mr. Kosachuk in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. The case is under seal, except for an Order and Final Judgment entered by the Honorable Jean K. FitzSimon on March 24, 2015. The order grants Kosachuk's motion to declare the involuntary bankruptcy petition a bad faith filing, for costs, compensatory and punitive damages. After awarding sanctions of $192,173.71 against Quebec, it awarded $960,968.55 as punitive damages. This judgment was filed on May 7, 2015, in the Miami

3

Division under Case No. 15-00101-AJC. See Exhibit "C." It is incredible that despite this, Mr. Aaronson would seek to resurrect the Quebec judgment in another bankruptcy proceeding.

8.     Not only is this Quebec judgment and its progenies fraudulent, but also Hazan's repeated arguments to that effect in state court have been uniformly rejected—(1) by the Third District with Hazan's motion for rehearing; (2) with Hazan's motion to amend before Judge Gordo after the mandate; (3) by Selective Advisor's untimely motion to intervene in the Judge Gordo proceeding; and (4) by Judge Lopez's refusal to meddle in the Judge Gordo foreclosure.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Juan Ramirez, Jr.

STATE OF FLORIDA                )

COUNTY OF MIAMI-DADE            )

SWORN TO and subscribed before me this 16th day of June 2016, by Juan Ramirez, Jr., who is (✓) personally know by me; or ( ) produced _____ as identification.

_____
NOTARY PUBLIC, STATE OF FLORIDA



HEATHER RICE
MY COMMISSION # FF 090777
EXPIRES: February 9, 2018
Bonded Thru Notary Public Underwriters

4

# EXHIBIT "A"

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 05, 2016

ELIZABETH HAZAN,
Appellant(s)/Petitioner(s),
vs.
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

CASE NO.:   3D**16-0315**

L.T. NO.:    11-42770

      ORDERED that appellant's notice of voluntary dismissal is

recognized by the Court, and this appeal from the Circuit Court for Miami-Dade

County, Florida is hereby dismissed.



cc:  Robert P. Lithman       Juan Ramirez, Jr.
      Miami-Dade Clerk       Hon. Monica Gordo

ns

# EXHIBIT "B"

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 26, 2016

ELIZABETH HAZAN,
Appellant(s)/Petitioner(s),
vs.
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

CASE NO.:  3D**16-0315**

L.T. NO.:    11-42770

      Upon consideration of the motion for attorney's fees pursuant to

section 57.105, Florida Statutes and Rule 9.410 Fla. R. App. P. filed by appellee, it

is ordered that said motion is granted and remanded to the trial court to fix amount.

      SUAREZ, C.J., and SHEPHERD and SALTER, JJ., concur.



cc:    Robert P. Lithman      Juan Ramirez, Jr.      Hon. Monica Gordo
       Miami-Dade Clerk

la

# EXHIBIT "C"

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                       Chapter 7

Christopher Kosachuk A/K/A Chris Kosachuk
    Debtor                 Bankruptcy No. 12-16438-JKF

### CERTIFICATION OF JUDGMENT FOR
### REGISTRATION IN ANOTHER DISTRICT

I, Timothy B. McGrath, Clerk of the Bankruptcy Court of this district do certify that the attached judgment is a true and correct copy of the original judgment entered in the above entitled proceeding on March 24, 2015 as it appears of record in my office, and that:

(X)    No notice of appeal from this judgment has been filed, and no motion of the kind set forth in Federal Rule of Civil Procedure 60, as made applicable by Bankruptcy Rule 9024, has been filed.

( )    No notice of appeal from this judgment has been filed, and any motions of the kind set forth in Federal Rule of Civil Procedure 60, as made applicable by Bankruptcy Rule 9024, have been disposed of, the latest order disposing of such a motion having been entered on .

( )    An appeal was taken from this judgment, and the judgment was affirmed by mandate of the issued on .

( )    An appeal was taken from this judgment, and the appeal was dismissed by order entered on .

Timothy B. McGrath
CLERK

By: Freda Ford

_____5/5/15_____

Date                 Deputy Clerk

C:\Users\ALFRED~1\AppData\Local\Temp\notes95E17C\12-16438 cert. of judgment.docx

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) **\*SEALED\*** |
| CHRISTOPHER    KOSACHUK,    a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |

A TRUE COPY CERTIFIED
TO FROM THE RECORD
DATED: _____
ATTEST: _____
Deputy Clerk
U. S. Bankruptcy Court

## ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary

Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal

the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the

arguments of counsel and evidence admitted at the trial conducted before this Court on March

18, 2015, it is **ORDERED, ADJUDGED AND DECREED**:

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the

Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of \$192,173.71 pursuant to

11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred

by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc.,

plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of \$ _760,968.55_ pursuant to

11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is

awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post

judgment interest at the federal judgment rate.

118113055_1

4.      Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Technologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.      This Final Judgment may be recorded as a matter of public record.

6.      This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.      Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. Fitzsimon
United States Bankruptcy Judge

118113055_1



**ORDERED in the Southern District of Florida on July 6, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 16-10389-AJC |
| LIZA HAZAN<br>*a/k/a* ELIZABETH HAZAN,<br><br>        DEBTOR. | CHAPTER: 11 |

### ORDER GRANTING DEBTOR'S FIRST MOTION TO EXTEND
### EXCLUSIVITY PERIOD PURSUANT TO 11 U.S.C. §1121(d)

THIS CAUSE came before the Court on May 26, 2016 on the *Motion for Extension of Exclusivity Period* [ECF 63] ("Motion") filed by Debtor Liza Hazan a/k/a Elizabeth Hazan ("Debtor") pursuant to 11 U.S.C. §1121(d), and the Court, having reviewed the Motion and having heard argument of counsel, there being no opposition to the Motion, and being otherwise fully advised, and good cause having been shown, orders that:

1.        The Debtor's Motion is GRANTED.

2.    The Debtor's exclusive period under 11 U.S.C. §1121(d) within which to file its Plan of Reorganization and Disclosure Statement is extended by sixty (60) days, to and including July 11, 2016; and

3.    The Debtor's exclusive period under 11 U.S.C. §1121(d) within which to obtain acceptances to the Plan also is extended by sixty (60) days, to and including September 8, 2016.

\*  \*  \*

Submitted by:

Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
Miami Tower, 27th Floor
100 S.E. 2nd Street
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
gaaronson@aspalaw.com
*Attorney for Debtor*

Attorney Aaronson is directed to serve all parties with a copy of this executed Order and to file a Certificate of Service.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                      Case No: 16-10389 AJC
                                                              Chapter 11
**Liza Hazan**
 **Debtor.                              /**

### PLAN OF REORGANIZATION

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtor (the "Debtor") from sources of payment, such as equity in properties and future income.

Debtor has an exclusive period during only debtor may propose a plan. The exclusive period was extended through July 11, 2016 by motion filed 5/10/16 at DE 63 and granted at hearing 5/26/16 without objection and ordered 7/7/16 at DE 99.

This Plan provides classes of claims;  classes of priority claims, classes of secured claims, and  classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to 60 months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

This Plan also provides for the payment of administrative claims. If payment is not in full on the effective date of this Plan with respect to any such claim (to the extent permitted by the Code or the claimant's agreement), the paragraphs below will identify such claim and briefly summarize the proposed treatment.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01     This Plan includes a class of priority claims, classes of secured claims, classes of unsecured claims., and a class of equity interests.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Counsel for Debtor Geoffrey Aaronson and Joel Aresty will be paid $  outside plan and have agreed to such treatment.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid by terms of treatment consistent with §1129(a)(9)(C) of the Code.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6)(U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Admin | Description | Treatment |
|---|---|---|
| | **Geoffrey Aaronson** | **paid as awarded or agreed** |
| | **Joel Aresty** | **paid as awarded or agreed** |
| | **US Trustee** | **paid in full at confirmation** |

### Priority Claims

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| <u>1</u> | **IRS**<br><br>**claim 3** | **yes** | **$49,663 including disputed $25,000 for 2015 return on extension – undisputed or allowed claim will be paid within five years of the petition date. Payments every 3 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%** |

**Secured Claims**
**Valencia Property**

| | | | | | |
|---|---|---|---|---|---|
| **3** | **Chase Bank** | **no** | **yes** | **First Mortgage - Original note for $3,825,000 signed 3/07 Washington Mutual Bank. Chase Bank recently filed an Assignment of mortgage on 5/26/16 ; Debtor to continue state court litigation regarding default, standing issues.  If State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest at note rate 2% per annum amortization to original maturity date commencing 30 days after entry of the final order.** | |
| **4** | **Selective Advisors Group** | **yes** | **yes** | **Selective Advisors Group is the rightful assignee of the second mortgage holder NLG's promissory note, mortgage and Judgment against Debtor in the amount of $1,618,068.00  plus interest at 11% per annum; recorded Satisfaction of Mortgage and judgment against Debtor and her property.** | |

| 5 | 6913 Valencia LLC | yes | yes | **Third Secured Mortgage in the amount of $2,000.000.00.**<br><br>**The Debtor does not contest the validity or extent of claim. Notwithstanding, the Secured Creditor shall record a satisfaction of their lien upon Plan Confirmation and receive an unsecured claim.** | |
| 6 | **Valencia Estates Community Assn, Inc**<br><br>claim 10 | no | yes | Claim of $195,072.14. Judge in state court ordered that $128,677.14 was due, plus attorneys fees to be determined.<br><br>The Debtor disputes the amount of the Claim, The Debtor will be filing an appeal of the state court order by July 16, 2016. Debtor has substantial Claims against Valencia Estates Homeowners Association Inc which might offset all their Claims.<br><br>Upon resolution of All State Court Litigation Debtor will pay in the Plan at 4.75 judgment interest over 5 years. | |
| 7 | **Fisher Island Community Ass'n, Inc** | no | yes | $148,943.34 - Disputed "No Payment thru Plan Fisher Island Community Association, Inc. did not file a proof of claim.<br><br>The Debtor disputes the amount of the Claim,<br><br>No payment through Plan. | |
| 8 | **Miami-Dade Water and Sewer**<br><br>claim 7 | no | yes | **Claim 7 $1502.54 paid on the Effective Date of Plan** | |

| 9 | IRS claim 3 | no | yes | 393,985.17 - Secured claim Shall be paid over 60 months with interest Payments every 3 months to include interest on any unpaid claim amounts after the effective date of the plan at 3% | |

**Other Disputed Claims**

| Class # | Description | Insider | Impaired | Treatment | |
|---------|-------------|---------|----------|-----------|---|
| 10 | Real Time Resolutions, Inc  claim 8 | no | yes | **claim 8 $322,846.72 is disputed statute of limitations has run** The Debtor disputes the amount of the Claim, disputes the Debt and this claim is unsecured. The Default occurred on June 2007, The owner of this debt has accelerated the loan in 2007, therefore this Claim is barred by the Statute of Limitations. | |

| Class # | Description | Insider | Impaired | Treatment | |
|---------|-------------|---------|----------|-----------|---|
| 11 | Board of Managers Spencer Condominium claim 14 | no | yes | The Debtor disputes the Claim. The parties in 2015 reached a confidential settlement in New York that must be enforced.  Debtor will agree to stay relief to enforce the settlement in State Court in New York. | |

**Vehicle**
**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impaired | Treatment |
|---|---|---|---|---|
| 12 | Southeast Financial LLC | no | yes | Stipulation DE 98 approved DE 101<br><br>vehicle owned by HTMG guaranteed by debtor<br><br>secured claim allowed $17,000 value paid 5.25% for 48 months payments $393 begin August 1, 2016 |

**Undisputed Unsecured Claims**
**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**
**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment | |
|---|---|---|---|---|---|
| 13 | IRS claim 3 | no | x | 1085 | |
| | American InfoSource T Mobile claim 2 | no | x | 1130 | |
| | American InfoSource Direct TV claim 9 | no | x | 461 | |
| | FPL claim 11 | no | x | 2906.93 | |
| | JMB Urban 900 Dev. claim 4* | no | X | 275,000 | |
| | Mount Sinai | no | x | 3,240 | |
| | Mount Sinai | no | x | 295.91 | |
| | HSBC Bank USA NA | no | x | 1070.66 | |
| | Sterling Emerg Svc | no | x | 2445.30 | |
| | Bank of America NA | no | x | 3301 | |
| | Wells Fargo claim 12 | no | x | 323.24 | |
| | 6913 Valencia LLC** | yes | X | 2,000,000 | |
| | total | | | 2,291,259.04 | |

*claim 4 subject of adversary case 16-01188 AJC settlement pending at 41% of claim convenience class of 100% for all other undisputed unsecured creditors
** insider claim will be subordinated and not paid until all other allowed claims
 but reserves right to vote for the plan

**Disputed Unsecured Claims**
**not paid until and unless allowed**
**and then paid within 5 years after confirmation**

| | | | | |
|---|---|---|---|---|
| <u>14</u> | **Cross & Simon**<br>**claim 1** | <u>no</u> | <u>yes</u> | **$11,023.83 Legal bill**<br>**Legal work for Corporation**<br>**other than the Debtor.**<br>**Debtor is disputing this claim.** |

| | | | | |
|---|---|---|---|---|
| <u>15</u> | **Real Time Resolutions**<br>**claim 5** | | | **$188,416.67**<br>**disputed**<br>**case 08-47664-CA01 dismissed**<br>**Complaint filed in 2008.**<br>**Case dismissed in 2009.**<br>**Claim barred by Statute of Limitations.** |

| | | | | |
|---|---|---|---|---|
| <u>16</u> | **S&S Collections**<br>**Simon & Sigalos**<br>**claim 13** | | | **$21,242  Half of Bill is invoiced against**<br>**6913 Valencia LLC.  Attorneys bill**<br>**disputed. Attorney failed to appear at**<br>**hearing resulting in entry of default**<br>**judgment in NLG case 4/08.**<br><br>**Debtor has very substantial Claims**<br>**against Michael Simon Simon and his**<br>**firm Simon Sigalos P.A.** |
| <u>17</u> | **Newman Ferrara LLP**<br>**claim 15** | | | **Disputed Proof of Claims filed after Bar**<br>**date. $24,818.44 not allowed.** |

**Unsecured Scheduled Disputed and No Claim Filed**
**Therefore Disallowed**

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | 0 |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| **18** | **Equity Individual interest holder** | no | retained |

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan: none.

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## GENERAL PROVISIONS

7.01    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.02    <u>Effective Date of Plan</u>. The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

# ARTICLE VIII
# <u>DISCHARGE</u>

8.01.  **Debtor is an individual.**

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section <u>1325</u> <u>(b)(2)</u>) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar Debtor has provided for payments not less than Projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

<u>Discharge</u>. In a case in which the debtor is an individual—
**(A)**unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)**at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—
**(i)**the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
**(ii)**modification of the plan under section 1127 is not practicable; and
**(iii)**subparagraph (C) permits the court to discharge; and
**(C)**(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)**section522(q)(1) may be applicable to the debtor; and
**(ii)**there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to Class 20 unsecured and deficiency creditors.  Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.
(a)	Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:
(b)	The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of

the Initial Payment (defined in the Plan) to unsecured creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d) During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the
treatment of creditor claims that existed as of the bankruptcy petition date, that being 1/11/16, as long as the Debtor continues to be in compliance
with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection
Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e) Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to unsecured creditors.

(f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to unsecured creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).


Respectfully submitted, 7/11/16


By: /s/ Liza Hazan
      The Plan Proponent
By: /s/ Joel M. Aresty, Esq.
      Attorney for the Plan Proponent

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                        Case No: 16-10389 AJC
                                              Chapter 11
Liza Hazan
 Debtor. _____/

## DISCLOSURE STATEMENT

### Table of Contents

| | | |
|---|---|---|
| I. | **INTRODUCTION** | **page 2** |
| | A. **Purpose of This Document** | |
| | B. **Deadlines for Voting and Objecting;** | |
| | **Date of Plan Confirmation Hearing** | |
| | C. **Disclaimer** | |
| II. | **BACKGROUND** | **page 3** |
| | A. **Description and History of the Debtor's Business** | |
| | B. **Insiders of the Debtor** | |
| | C. **Management of the Debtor Before and During the Bankruptcy** | |
| | D. **Events Leading to Chapter 11 Filing** | |
| | E. **Significant Events During the Bankruptcy Case** | |
| | F. **Projected Recovery of Avoidable Transfers** | |
| | G. **Claims Objections** | |
| | H. **Current and Historical Financial Conditions** | |
| III. | **SUMMARY OF THE PLAN OF REORGANIZATION** | **page 6** |
| | **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** | |
| | A. **What is the Purpose of the Plan of Reorganization?** | |
| | B. **Unclassified Claims** | |
| |     1. *Administrative Expenses* | |
| |     2. *Priority Tax Claims* | |
| | C. **Classes of Claims and Equity Interests** | |
| |     1. *Classes of Secured Claims* | |
| |     2. *Classes of Priority Unsecured Claims* | |
| |     3. *Class[es]of General Unsecured Claims* | |
| |     4. *Class[es] of Equity Interest Holders* | |
| | D. **Means of Implementing the Plan** | |
| | E. **Risk Factors** | |
| | F. **Executory Contracts and Unexpired Leases** | |
| | G. **Tax Consequences of Plan** | |
| IV. | **CONFIRMATION REQUIREMENTS AND PROCEDURES** | **page 15** |
| | A. **Who May Vote or Object** | |

B.     **Votes Necessary to Confirm the Plan**
    1.    *Votes Necessary for a Class to Accept the Plan*
    2.    *Treatment of Nonaccepting Classes*
C.     **Liquidation Analysis**
D.     **Feasibility**
    1.    *Ability to Initially Fund Plan*
    2.    *Ability to Make Future Plan Payments*
       *And Operate Without Further Reorganization*

V.     **EFFECT OF CONFIRMATION OF PLAN**                    page 18
A.     **Discharge Of Debtor**
B.     **Modification of Plan**
C.     **Final Decree**

**EXHIBITS**
**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

**INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the (the "Plan") filed by the Debtor on same date. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to 60 months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

A.     **Purpose of This Document**

This Disclosure Statement describes:

    The Debtor and significant events during the bankruptcy case,
    How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*,what you will receive on your claim or equity interest if the plan is confirmed),
    Who can vote on or object to the Plan,
    What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
    Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. Clyde Atkins United States Courthouse 301 North Miami Avenue, Room 150 Miami, FL 33128. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and] Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served pursuant to orders served herewith.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Joel Aresty, counsel for Debtor, 305-904-1903 or email at Aresty@me.com.

C.      **Disclaimer**

*The Court must approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

II.     **BACKGROUND**

A.      **Description and History of the Debtor's Business**

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 a year.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and

clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Debtor has the ability to rent her Fisher Island property for short periods at very high rental rates adding up to $300,000 per year.

Additionally the equity in Fisher Island would support a refinancing, which could also be used support funding a plan if necessary.

B.      **Insiders of the Debtor**

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

C.      **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Debtor.

The Managers of the Debtor during the Debtor's chapter 11 case has been: Debtor.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: Debtor.

D.      **Events Leading to Chapter 11 Filing**

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtor's equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") now valued at $12 million for $5.1 million from NLG through its principal Chris Kosachuk. NLG made an "equity contribution" of $1,275,000 on the closing statement but then obtained a note and mortgage for that amount from Debtor.

NLG sued within four months of the closing, and has pursued Debtor to this date in an attempt to get the property back.   The battles between the parties that have now spanned at  least four states, multiple courts and nearly a decade, and continue in this court, costing Debtor millions in legal fees, adversely affecting her health and her career , and putting her in the financial position of having to seek relief in a chapter 11 reorganization.

Presently NLG moved for stay relief in this court, but Selective Advisors Group, LLC, an affiliate of Debtor's husband, claims to own the claim through execution of a judgment against NLG.

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, and short term rental, or if necessary refinancing.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.     **Significant Events During the Bankruptcy Case**

*     Date of Order for Relief under chapter 11 on 1/11/16

*     Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM
*     Deadline for complaint re dischargeability was 4/18/16

*     Professionals approved by the court
      Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date
      Joel Aresty to be appointed counsel for Debtor in Possession

*     Contested claim disallowance proceedings: pending; see claim treatments.

*     Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

*     Description of any steps taken to improve operations and profitability of the Debtors: Debtor has managed her affairs to enhance value. Post petition, the bankruptcy filing, has allowed Debtor to reorganize allowing Debtor to propose a plan for payment of creditors.

F.     **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute 726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 which has a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonable equivalent value, which facts are not relevant to the plan in this case.

G.     **Claims Objections**

The Debtor has not completed claim objections but the current plan reflects the objections contemplated.

H.     **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to this statement. Debtor is source of and Debtor's experience with her assets is the basis of valuation.
Debtor's income based on consulting and periodic rental is not a regular monthly income which would lend itself to making monthly payments. Paydays are further and farther between, so that payments should be considered on between quarterly payments every three months and payments every six months.

I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

III.   **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.   **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.   **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.   *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1  below

C.   **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are

subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|-------|-------------|-----------|
| | **Geoffrey Aaronson** | **paid as awarded or agreed** |
| | **Joel Aresty** | **paid as awarded or agreed** |
| | **US Trustee** | **paid in full at confirmation** |

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | IRS<br><br>claim 3 | yes | **$49,663 including disputed $25,000 for 2015 return on extension – undisputed or allowed claim will be paid within five years of the petition date. Payments every 3 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%** |

**Secured Claims**
**Valencia Property**

| | | | | | |
|---|---|---|---|---|---|
| <u>3</u> | **Chase Bank** | **no** | **yes** | **First Mortgage - Original note for $3,825,000 signed 3/07 Washington Mutual Bank. Chase Bank recently filed an Assignment of mortgage on 5/26/16 ; Debtor to continue state court litigation regarding default, standing issues.  If State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest at note rate 2% per annum amortization to original maturity date commencing 30 days after entry of the final order.** | |
| <u>4</u> | **Selective Advisors Group** | **yes** | **yes** | **Selective Advisors Group is the rightful assignee of the second mortgage holder NLG's promissory note, mortgage and Judgment against Debtor in the amount of $1,618,068.00  plus interest at 11% per annum; recorded Satisfaction of Mortgage and judgment against Debtor and her property.** | |

| Class # | Description | Insider? (Yes or No) | Impaired | treatment | |
|---|---|---|---|---|---|
| **5** | **6913 Valencia LLC** | **yes** | **yes** | **Third Secured Mortgage in the amount of $2,000.000.00.**<br><br>**The Debtor does not contest the validity or extent of claim. Notwithstanding, the Secured Creditor shall record a satisfaction of their lien upon Plan Confirmation and receive an unsecured claim.** | |
| **6** | **Valencia Estates Community Assn, Inc**<br><br>**claim 10** | **no** | **yes** | **Claim of $195,072.14. Judge in state court ordered that $128,677.14 was due, plus attorneys fees to be determined.**<br><br>**The Debtor disputes the amount of the Claim, The Debtor will be filing an appeal of the state court order by July 16, 2016. Debtor has substantial Claims against Valencia Estates Homeowners Association Inc which might offset all their Claims.**<br><br>**Upon resolution of All State Court Litigation Debtor will pay in the Plan at 4.75 judgment interest over 5 years.** | |
| **Class #** | **Description** | **Insider? (Yes or No)** | **Impaired** | **treatment** | |
| **7** | **Fisher Island Community Ass'n, Inc** | **no** | **yes** | **$148,943.34 - Disputed "No Payment thru Plan Fisher Island Community Association, Inc. did not file a proof of claim.**<br><br>**The Debtor disputes the amount of the Claim,**<br><br>**No payment through Plan.** | |

| 8 | Miami-Dade Water and Sewer claim 7 | no | yes | Claim 7 $1502.54 paid on the Effective Date of Plan | |
|---|---|---|---|---|---|
| 9 | IRS claim 3 | no | yes | 393,985.17 - Secured claim Shall be paid over 60 months with interest Payments every 3 months to include interest on any unpaid claim amounts after the effective date of the plan at 3% | |

**Other Disputed Claims**

| Class # | Description | Insider | Impaired | Treatment | |
|---|---|---|---|---|---|
| 10 | Real Time Resolutions, Inc claim 8 | no | yes | claim 8 $322,846.72 is disputed statute of limitations has run<br><br>The Debtor disputes the amount of the Claim, disputes the Debt and this claim is unsecured.<br>The Default occurred on June 2007,<br>The owner of this debt has accelerated<br>the loan in 2007, therefore this Claim<br>is barred by the Statute of Limitations. | |

| Class # | Description | Insider | Impaired | Treatment | |
|---|---|---|---|---|---|
| 11 | Board of Managers Spencer Condominium claim 14 | no | yes | The Debtor disputes the Claim.<br>The parties in 2015 reached a confidential settlement in New York that must be enforced.<br><br>Debtor will agree to stay relief to enforce the settlement in State Court in New York. | |

**Vehicle**
**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impaired | Treatment |
|---------|-------------|---------|----------|-----------|
| 12 | Southeast Financial LLC | no | yes | Stipulation DE 98 approved DE 101<br>vehicle owned by HTMG guaranteed by debtor<br>secured claim allowed $17,000 value paid 5.25% for 48 months payments $393 begin August 1, 2016 |

**Undisputed Unsecured Claims**
**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**
**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment | |
|---------|-------------|----------------------|----------|-----------|---|
| 13 | IRS claim 3 | no | x | 1085 | |
| 13 | American InfoSource T Mobile claim 2 | no | x | 1130 | |
| 13 | American InfoSource Direct TV claim 9 | no | x | 461 | |
| 13 | FPL claim 11 | no | x | 2906.93 | |
| 13 | JMB Urban 900 Dev. claim 4* | no | X | 275,000 | |
| 13 | Mount Sinai | no | x | 3,240 | |
| 13 | Mount Sinai | no | x | 295.91 | |
| 13 | HSBC Bank USA NA | no | x | 1070.66 | |
| 13 | Sterling Emerg Svc | no | x | 2445.30 | |
| 13 | Bank of America NA | no | x | 3301 | |
| 13 | Wells Fargo claim 12 | no | x | 323.24 | |
| 13 | 6913 Valencia LLC** | yes | X | 2,000,000 | |
| | total | | | 2,291,259.04 | |

*claim 4 subject of adversary case 16-01188 AJC settlement pending at 41% of claim
convenience class of 100% for all other undisputed unsecured creditors
** insider claim will be subordinated and not paid until all other allowed claims
 but reserves right to vote for the plan

**Disputed Unsecured Claims**
**not paid until and unless allowed**
**and then paid within 5 years after confirmation**

| 14 | Cross & Simon<br>claim 1 | no | yes | $11,023.83 Legal bill<br>Legal work for Corporation<br>other than the Debtor.<br>Debtor is disputing this claim. | |
|----|--------------------------|----|-----|------------------------------------------------------------------------------------------------------------------|---|
| 15 | Real Time Resolutions<br>claim 5 | | | $188,416.67<br>disputed<br>case 08-47664-CA01 dismissed<br>Complaint filed in 2008.<br>Case dismissed in 2009.<br>Claim barred by Statute of Limitations. | |
| 16 | S&S Collections<br>Simon & Sigalos<br>claim 13 | | | $21,242  Half of Bill is invoiced against 6913 Valencia LLC.  Attorneys bill disputed. Attorney failed to appear at hearing resulting in entry of default judgment in NLG case 4/08.<br>Debtor has very substantial Claims against Michael Simon Simon and his firm Simon Sigalos P.A. | |
| 17 | Newman Ferrara LLP<br>claim 15 | | | Disputed Proof of Claims filed after Bar date. $24,818.44 not allowed. | |

**Unsecured Scheduled Disputed and No Claim Filed**
**Therefore Disallowed**

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | 0 |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| **18** | **Equity Individual interest holder** | **no** | **retained** |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 a year.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Debtor has the ability to rent her Fisher Island property for short periods at very high rental rates adding up to $300,000 per year.

Additionally the equity in Fisher Island would support a refinancing, which could also be used support funding a plan if necessary

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|---------------------|----------|-------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E. **Risk Factors**

The proposed Plan has the following risks:

Several risk factors exist that might affect the Debtor's ability to make payments and other distributions required under the Plan: Significant unforeseen changes or occurrences, such as further orders of Courts in pending contested matters, including the NLG matter.

F. **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. There are none. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is*** no later than thirty (30) days after the date of the order confirming this Plan. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G. **Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income tax consequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims and Interests

who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities have been obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes or Class 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than Projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

A.   **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.   *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 for government units.***

2.   *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.   *Who is* **Not** *Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

•   holders of claims and equity interests that have been disallowed by an order of the Court;
•   holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

        4.   *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

        2.   *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the

need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

        1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibits C and D.

        2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.   **EFFECT OF CONFIRMATION OF PLAN**

### A.   **DISCHARGE OF DEBTOR**

Discharge. In a case in which the debtor is an individual—

**(A)**unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

**(B)**at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—

**(i)**the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

**(ii)**modification of the plan under section 1127 is not practicable; and

**(iii)**subparagraph (C) permits the court to discharge; and

**(C)**(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—

**(i)**section 522(q)(1) may be applicable to the debtor; and

**(ii)**there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon the satisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on

the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns.  The Motion to Close shall certify that each of the above conditions have been met.

(c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties.  The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)     During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, , as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured and priority creditors, as contemplated under the Plan.

(e)     Upon the satisfaction of all payments required under the Plan to creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to creditors.

(f)     Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to creditors have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

B.     **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

7/11/16

Respectfully submitted,

By: /s/ Liza Hazan
        The Plan Proponent
By: /s/ Joel M. Aresty, Esq.
        Attorney for the Plan Proponent

**EXHIBITS**
**Exhibit  A** Historical earnings and assets
**Exhibit  B** Liquidation Analysis
**Exhibit  C** Cash on hand on the effective date of the Plan
**Exhibit  D** Projections of Cash Flow and Earnings for Post-Confirmation Period **Exhibit**
**Exhibit  E** Ballot

## Exhibit A

## Historical Earnings and Assets

Debtor's  educational background includes Academy Of Paris Brevet De Technicienne Superieure Informatique De Gestion 07/03/1992  Academy De Bordeaux 06/28/1989 Baccalaureat De L'enseignement Du Second Degre Mathematiques & Sciences De La Nature,  and University Of Montreal  Law School 1995-1996 .

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $400,000 a year.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Debtor has the ability to rent her Fisher Island property at very high rental rates adding up to $420,000 per year.

Additionally the equity in the Fisher Island homestead would support a refinancing, which could also be used support funding a plan if necessary.

Debtor's income based on consulting and is not a regular monthly income which would lend itself to making monthly payments. Paydays are further between, so that payments should be considered on between quarterly payments every three months and payments every six months.

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization which will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets.

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured

and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work and short term rental, or if necessary refinancing.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting and rental income for the eventual benefit of her estate and creditors.

Debtor is concentrating on maximizing both her consulting income and income from the future rental of her homestead, and she has never made less than $400,000 from consulting.

Exhibit D below is five year projections showing the feasibility of making the payments required under the plan if rental income is maximized along with consulting income, from projected net income of approximately $350,000 per year to $420,000.

Receipts of consulting income are not regular monthly payments, which is why payments range from quarterly to every six months, or even less frequently, in the plan.

### Exhibit B
Liquidation Analysis

### *Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. Cash on hand    at the effective date | | $ 120,000 |
| b. Accounts receivable | | $ 400,000 |
| c. Inventory    (personal property) | | $  327,000 |
| d. Office furniture & equipment (**its included in personal property**) | | |
| e. Machinery & equipment    (**its included in personal property**) | | |
| f. Automobiles | **S550** | $17,000 |
| g. Building & Land | **12,500 sf** | |
| **LAND ON FISHER ISLAND** | | **$ 12,000,000** |
| h. Customer list | **none** | $ |
| i. Investment property (such as stocks, bonds or other n/a | | $ |

financial assets)          **none**

j. Lawsuits or other claims against third-parties

indeterminate claims against Chris Kosachuk

and NLG

claim against attorney Michael Simon and his firm Simon Sigalos

k. Other intangibles (such as avoiding powers actions)          $0.00

 

|  | |
|---|---|
| ***Total Assets at Liquidation Value*** | **$12,864,000** |

**Less:**

Secured creditors recoveries

| | |
|---|---|
| SE Financial | **($17,000)** |
| **Miami-Dade Tax** | **($57,649)** |
| **Chase Bank** | **($3,825,000)** |
| **Selective Advisors** | **($0)** |
| **6913 Valencia LLC** | **($2,000,000)** |
| **Valencia Estates** | **($128,677.14)** |
| **Fisher Island Com. Assoc.** | **($148,944)** |
| IRS | **($393,985)** |

**Less:**

| | |
|---|---|
| **Ch 7 liquidation expenses** | **($400,000)** |
| **real estate broker** | **($600,000)** |

**Less:**

| | | |
|---|---|---|
| Chapter 11 administrative expenses - | Geoffrey Aaronson | ($150,000) disputed |
| | Joel Aresty | ($50,000) |

**Less:**

Priority claims, excluding administrative expense claims ($50,000)

 **[Less:**

Debtor's claimed exemptions]

($12,000,000) exemption not included here

homestead exempt 6913 Valencia drive Miami fl 33109

(1) Balance for unsecured claims

(2) Total dollar amount of unsecured claims ($2,600,000)*
*from claims docket

*Total Exempt Secured, unsecured and admin expense* **($9,871,255.14)**


**Sub total** **$2,992,744.86**

**less homestead exemption – secured claims**

**$12,000,000   - $1,533,152   = $5,445,745**

**LIQUIDATION VALUE TOTAL** **($2,453,000.14)**

**Plan provides 41% to 100% to allowed claims**

### *Exhibit C*
### Cash on hand on the effective date of the Plan

**Cash on hand on effective date of the Plan**:                 $120,000

*Less* --

        Amount of administrative expenses payable on effective date of        -
        the Plan TBD

        Amount of statutory costs and charges UST TBD             -

        Plan Payments due on effective date of the Plan: TBD

        Balance after paying these amounts...............        $TBD

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated
as follows:

      $        Cash in Debtor's bank account now
                $20,178

      +        Additional cash Debtor will accumulate from
                net earnings between now and effective date of the Plan [state the
                basis for such projections]        $100,000
$

                (Basis for projection is anticipated  income)    see exhibit D below

      +        Borrowing [separately state terms of repayment]

      +        **Capital Contributions**        w

      +        Other

      $        Total
                $120,000

**Exhibit D**


# PROJECTED DISPOSABLE INCOME – FIVE
# YEAR PLAN - MONTHLY CASH FLOW

**ELIZABETH HAZAN**
**NOVEMBER 15, 2016 - OCTOBER 14, 2017**

| | TOTAL | November 2016 | December 2016 | January 2017 | February 2017 | March 2017 | April 2017 | May 2017 | June 2017 | July 2017 | August 2017 | September 2017 | October 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| RENTAL INCOME - FISHER ISLAND | 420,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| BUSINESS INCOME | 348,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 |
| OTHER | 0 | | | | | | | | | | | | |
| **TOTAL** | 768,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 |
| | | | | | | | | | | | | | |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 36,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 3,600 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 3,300 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 18,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 6,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 8,400 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 60,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 13,452 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 26,180 | 0 | 0 | 6,545 | 0 | | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 |
| INSURANCE (FISHER ISLAND) | 17,093 | 0 | 0 | 0 | 0 | 17,093 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAXES (FISHER ISLAND) | 57,000 | 57,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 30,540 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 30,540 |
| **TOTAL** | 279,565 | 69,396 | 12,396 | 18,941 | 12,396 | 29,489 | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 49,481 |
| | | | | | | | | | | | | | |
| **NET RESULT** | 488,435 | -5,396 | 51,604 | 45,059 | 51,604 | 34,511 | 45,059 | 51,604 | 51,604 | 45,059 | 51,604 | 51,604 | 14,519 |
| | | | | | | | | | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **LIST** | 111,930 | 11,786 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 |
| | | | | | | | | | | | | | |
| **NET** | 376,505 | -17,182 | 42,500 | 35,955 | 42,500 | 25,407 | 35,955 | 42,500 | 42,500 | 35,955 | 42,500 | 42,500 | 5,415 |
| | | | | | | | | | | | | | |
| **CUMULATIVE NET AMOUNT** | 376,505 | -17,182 | 25,318 | 61,273 | 103,773 | 129,180 | 165,135 | 207,635 | 250,135 | 286,090 | 328,590 | 371,090 | 376,505 |

| LIST OF PAYMENTS TO CREDITORS | TOTAL | November 2016 | December 2016 | January 2017 | February 2017 | March 2017 | April 2017 | May 2017 | June 2017 | July 2017 | August 2017 | September 2017 | October 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (60 MONTHS) - CLASS 9 | 78,792 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 |
| IRS  24 663 CLASS 1 - YEAR 2014 | 0 | | | | | | | | | | | | |
| MIAMI-DADE WATER AND SEWER 1502.54 | 1,503 | 1,503 | | | | | | | | | | | |
| VALENCIA ESTATE COMMUNITY 128,677 - 60 M | 25,740 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 5,895 | 1,572 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 |
| | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 16, 259- JAN 2018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| **TOTAL** | 111,930 | 11,786 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 |

**ELIZABETH HAZAN**
**NOVEMBER 15, 2017 - OCTOBER 14, 2018**

| | TOTAL | November 2017 | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| RENTAL INCOME - FISHER ISLAND | 441,000 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 |
| BUSINESS INCOME | 360,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| OTHER | 0 | | | | | | | | | | | | |
| **TOTAL** | 801,000 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 | 66,750 |
| | | | | | | | | | | | | | |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 36,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 3,600 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 3,300 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 18,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 6,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 8,400 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 60,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 13,452 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 26,180 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 |
| INSURANCE (FISHER ISLAND) | 17,093 | 0 | 0 | 0 | 0 | 17,093 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAXES (FISHER ISLAND) | 57,000 | 57,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 162,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 162,000 |
| **TOTAL** | 411,025 | 69,396 | 12,396 | 18,941 | 12,396 | 29,489 | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 180,941 |
| | | | | | | | | | | | | | |
| **NET RESULT** | 389,975 | -2,646 | 54,354 | 47,809 | 54,354 | 37,261 | 47,809 | 54,354 | 54,354 | 47,809 | 54,354 | 54,354 | -114,191 |
| | | | | | | | | | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **LIST** | 425,170 | 33,767 | 9,104 | 300,363 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 |
| | | | | | | | | | | | | | |
| **NET** | -35,195 | -36,413 | 45,250 | -252,554 | 45,250 | 28,157 | 38,705 | 45,250 | 45,250 | 38,705 | 45,250 | 45,250 | -123,295 |
| | | | | | | | | | | | | | |
| **CUMULATIVE NET AMOUNT** | 341,310 | 340,092 | 385,342 | 132,788 | 178,038 | 206,195 | 244,900 | 290,150 | 335,400 | 374,105 | 419,355 | 464,605 | 341,310 |

**LIST OF PAYMENTS TO CREDITORS**

| LIST OF PAYMENTS TO CREDITORS | TOTAL | November 2017 | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (60 MONTHS) - CLASS 9 | 78,792 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 |
| IRS  24 663 CLASS 1 - YEAR 2014 | 24,663 | 24,663 | | | | | | | | | | | |
| MIAMI-DADE WATER AND SEWER 1502.54 | 0 | | | | | | | | | | | | |
| VALENCIA ESTATE COMMUNITY 128,677 | 25,740 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 4,716 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 |
| | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 275,000 | 0 | 0 | 275,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 16, 259 | 16,259 | 0 | 0 | 16,259 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| TOTAL | 425,170 | 33,767 | 9,104 | 300,363 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 |

**ELIZABETH HAZAN**
**NOVEMBER 15, 2018 - OCTOBER 14, 2019**

| | TOTAL | November 2018 | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| RENTAL INCOME - FISHER ISLAND | 463,056 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 | 38,588 |
| BUSINESS INCOME | 375,000 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 |
| OTHER | 0 | | | | | | | | | | | | |
| **TOTAL** | 838,056 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 | 69,838 |
| | | | | | | | | | | | | | |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 36,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 3,600 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 3,300 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 18,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 6,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 8,400 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 60,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 13,452 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 26,180 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 |
| INSURANCE (FISHER ISLAND) | 17,093 | 0 | 0 | 0 | 0 | 17,093 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAXES (FISHER ISLAND) | 57,000 | 57,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 171,300 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 171,300 |
| **TOTAL** | 420,325 | 69,396 | 12,396 | 18,941 | 12,396 | 29,489 | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 190,241 |
| | | | | | | | | | | | | | |
| **NET RESULT** | 417,731 | 442 | 57,442 | 50,897 | 57,442 | 40,349 | 50,897 | 57,442 | 57,442 | 50,897 | 57,442 | 57,442 | -120,403 |
| | | | | | | | | | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **LIST** | 109,248 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 |
| | | | | | | | | | | | | | |
| **NET** | 308,483 | -8,662 | 48,338 | 41,793 | 48,338 | 31,245 | 41,793 | 48,338 | 48,338 | 41,793 | 48,338 | 48,338 | -129,507 |
| | | | | | | | | | | | | | |
| **CUMULATIVE NET AMOUNT** | 649,793 | 332,648 | 380,986 | 422,779 | 471,117 | 502,362 | 544,155 | 592,493 | 640,831 | 682,624 | 730,962 | 779,300 | 649,793 |

**LIST OF PAYMENTS TO CREDITORS**

| | TOTAL | November 2018 | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (60 MONTHS) - CLASS 9 | 78,792 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 |
| IRS  24 663 CLASS 1 - YEAR 2014 | 0 | | | | | | | | | | | | |
| MIAMI-DADE WATER AND SEWER 1502.54 | 0 | | | | | | | | | | | | |
| VALENCIA ESTATE COMMUNITY 128,677 | 25,740 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 4,716 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 |
| | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 16, 259 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| TOTAL | 109,248 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 |

**ELIZABETH HAZAN**
**NOVEMBER 15, 2019 - OCTOBER 14, 2020**

| | TOTAL | November 2019 | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| RENTAL INCOME - FISHER ISLAND | 486,204 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 | 40,517 |
| BUSINESS INCOME | 390,000 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 |
| OTHER | 0 | | | | | | | | | | | | |
| **TOTAL** | 876,204 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 | 73,017 |
| | | | | | | | | | | | | | |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 36,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 3,600 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 3,300 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 18,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 6,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 8,400 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 60,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 13,452 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 26,180 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 |
| INSURANCE (FISHER ISLAND) | 17,093 | 0 | 0 | 0 | 0 | 17,093 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAXES (FISHER ISLAND) | 57,000 | 57,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 180,800 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 180,800 |
| **TOTAL** | 429,825 | 69,396 | 12,396 | 18,941 | 12,396 | 29,489 | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 199,741 |
| | | | | | | | | | | | | | |
| **NET RESULT** | 446,379 | 3,621 | 60,621 | 54,076 | 60,621 | 43,528 | 54,076 | 60,621 | 60,621 | 54,076 | 60,621 | 60,621 | -126,724 |
| | | | | | | | | | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **LIST** | 108,069 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 8,711 | 8,711 | 8,711 |
| | | | | | | | | | | | | | |
| **NET** | 338,310 | -5,483 | 51,517 | 44,972 | 51,517 | 34,424 | 44,972 | 51,517 | 51,517 | 44,972 | 51,910 | 51,910 | -135,435 |
| | | | | | | | | | | | | | |
| **CUMULATIVE NET AMOUNT** | 988,103 | 644,310 | 695,827 | 740,799 | 792,316 | 826,740 | 871,712 | 923,229 | 974,746 | 1,019,718 | 1,071,628 | 1,123,538 | 988,103 |

**LIST OF PAYMENTS TO CREDITORS**

| | TOTAL | November 2019 | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (60 MONTHS) - CLASS 9 | 78,792 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 |
| IRS  24 663 CLASS 1 - YEAR 2014 | 0 | | | | | | | | | | | | |
| MIAMI-DADE WATER AND SEWER 1502.54 | 0 | | | | | | | | | | | | |
| VALENCIA ESTATE COMMUNITY 128,677 | 25,740 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 3,537 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | | | |
| | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 16, 259 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| TOTAL | 108,069 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 9,104 | 8,711 | 8,711 | 8,711 |

**ELIZABETH HAZAN**
**NOVEMBER 15, 2020 - OCTOBER 14, 2021**

| | TOTAL | November 2020 | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| RENTAL INCOME - FISHER ISLAND | 510,516 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 | 42,543 |
| BUSINESS INCOME | 399,960 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 |
| OTHER | 0 | | | | | | | | | | | | |
| **TOTAL** | 910,476 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 | 75,873 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 36,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 3,600 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 3,300 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 18,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 6,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 8,400 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 60,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 13,452 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 26,180 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 |
| INSURANCE (FISHER ISLAND) | 17,093 | 0 | 0 | 0 | 0 | 17,093 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAXES (FISHER ISLAND) | 57,000 | 57,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 189,400 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 189,400 |
| **TOTAL** | 438,425 | 69,396 | 12,396 | 18,941 | 12,396 | 29,489 | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 208,341 |
| **NET RESULT** | 472,051 | 6,477 | 63,477 | 56,932 | 63,477 | 46,384 | 56,932 | 63,477 | 63,477 | 56,932 | 63,477 | 63,477 | -132,468 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| **LIST** | 104,532 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 |
| **NET** | 367,519 | -2,234 | 54,766 | 48,221 | 54,766 | 37,673 | 48,221 | 54,766 | 54,766 | 48,221 | 54,766 | 54,766 | -141,179 |
| **CUMULATIVE NET AMOUNT** | 1,355,622 | 985,869 | 1,040,635 | 1,088,856 | 1,143,622 | 1,181,295 | 1,229,516 | 1,284,282 | 1,339,048 | 1,387,269 | 1,442,035 | 1,496,801 | 1,355,622 |

**LIST OF PAYMENTS TO CREDITORS**

| | TOTAL | November 2020 | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (60 MONTHS) - CLASS 9 | 78,792 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 | 6,566 |
| IRS  24 663 CLASS 1 - YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| MIAMI-DADE WATER AND SEWER 1502.54 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE COMMUNITY 128,677 | 25,740 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 | 2,145 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 16, 259 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | |
| TOTAL | 104,532 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 | 8,711 |

**Exhibit E**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                                      **Case No: 16-10389 AJC**
                                                            **Chapter 11**

**Liza Hazan**
 **Debtor.** _____/

**BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN**

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE (AS SET PURSUANT TO LOCAL RULE 3018-1)*

*The plan filed by Debtor can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*Creditor:* _____ *for the following type of claim placed in the indicated class in the indicated amount:*

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| Secured | | $ |
| Unsecured | | $ |
| Equity Security Holder | | $ |

The undersigned [Check One Box] __ Accepts                    __ Rejects
the plan for reorganization of the above-named debtor.

        Signed:
        Print Name:
        Address:
        Phone:
        Date:
### FILE THIS BALLOT ON OR BEFORE

with:   **Office of the Clerk C. Clyde Atkins United States Courthouse  301 North Miami Avenue, Room 150 Miami, FL 33128**
        and JOEL ARESTY aresty@icloud.com

        **If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote. Contact the plan proponent regarding incorrect or insufficient ballot(s).**



**ORDERED in the Southern District of Florida on July 12, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                        Case No. 16-10389-BKC-AJC
                                              Chapter 11

Liza Hazan,

_____Debtor_____/

### ORDER (I) SETTING HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT; (II) SETTING DEADLINE FOR FILING OBJECTIONS TO DISCLOSURE STATEMENT; AND (III) DIRECTING PLAN PROPONENT TO SERVE NOTICE

DISCLOSURE HEARING:

_August 17, 2016_ at _10:30_ m.

LOCATION:

**United States Bankruptcy Court
301 North Miami Avenue, Courtroom 7
Miami, FL 33128**

DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN:

_July 18, 2016_ (30 days before Disclosure Hearing)

DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT:

_August 10, 2016_ (seven days before Disclosure Hearing)

PLAN PROPONENT:

**Liza Hazan**
**Joel M. Aresty, Esquire**
**309 1st Avenue S**
**Tierra Verde, FL 33715**

A Disclosure Statement and Plan were filed pursuant to 11 U.S.C. §§1121 and 1125 on _July 11, 2016_ by the plan proponent named above. This order sets a hearing to consider approval of the disclosure statement ("disclosure hearing"), and sets forth the deadlines and requirements relating to the disclosure statement provided in the Bankruptcy Code, Bankruptcy Rules and Local Rules of this court.

The disclosure statement is on file with the court, and may be accessed electronically or you may obtain a copy at your expense from the clerk or view a copy at the public terminals in the clerk's office. Copies also may be obtained from the plan proponent by written request, pursuant to paragraph 3(B) of this order.

1. **HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT**

The court has set a hearing to consider approval of the disclosure statement for the date and time indicated above as "DISCLOSURE HEARING". The disclosure hearing may be continued to a future date by notice given in open court at the disclosure hearing. At the disclosure hearing, the court will consider the disclosure statement, and any modifications or objections to it.

2. **DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT**

The last day for filing and serving objections to the disclosure statement is indicated above as "DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT". Objections

LF-32A (rev. 12/01/09)  Page 2 of 4

to the disclosure statement shall be filed with the court and served on (i) the debtor; (ii) the plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or examiner that has been appointed; and (v) the U.S. Trustee. Pursuant to Local Rule 3017-1(A), any objecting party shall confer with the plan proponent's counsel at least three business days before the disclosure hearing in an effort to resolve any objections to the disclosure statement.

### 3.  PLAN PROPONENT TO SERVE NOTICE

**(A)**    On or before the date indicated above as "DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN", the Plan Proponent shall serve a copy of this order on (i) all creditors; (ii) all equity security holders; (iii) all persons who have requested notice; and (iv) all other interested parties, pursuant to Bankruptcy Rules 2002, and 3017 (including those entities as described in Bankruptcy Rule 3017(f)), and Local Rule 3017-1(B) and including those on a Master Service List required to be filed pursuant to Local Rule 2002-1(H).  The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

**(B)**    On or before the date indicated above as "DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN", the plan proponent shall serve a copy of the disclosure statement and plan, together with this order, on (i) the debtor; (ii) all committees that have been appointed; (iii) any chapter 11 trustee or examiner that has been appointed; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the U.S. Trustee; and (vii) any party in interest who requests in writing a copy of the disclosure statement and plan, pursuant to Bankruptcy Rule 3017(a), and Local Rule 3017-1(B).

The plan proponent shall file a certificate of service as required under Local Rule

2002-1(F).

If the plan proponent does not timely comply with any of the requirements of this order, the court may impose sanctions at the disclosure hearing without further notice, including dismissal, conversion of the case to chapter 7, or the striking of the plan. The court will also consider dismissal or conversion at the disclosure hearing at the request of any party that has requested such relief in a timely filed objection or on the court's own motion.

### 

**Submitted by:**

Joel M. Aresty Esquire
309 1st Avenue S
Tierra Verde, FL 33715

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                    Case No: 16-10389 AJC
                                                          Chapter 11
Liza Hazan
 Debtor.                                    /

### NOTICE OF FILING OF SUPPLEMENTAL AUTHORITY
### RE NLG MOTION FOR STAY RELIEF ECF 66

.
        There is presently before the court under advisement a Motion for Relief from
Automatic Stay filed by NLG, LLC (hereinafter "NLG") [ECF 66] (the "Motion"). Debtor
LIZA HAZAN a/k/a ELIZABETH HAZAN ("Hazan" or "Debtor") filed an Opposition
Response [ECF 76]. Secured creditor Selective Advisors Group, LLC ("Selective") filed
an Opposition Response and Joinder in Debtor's Opposition Response [ECF 77]. NLG
filed a Reply to Debtor's and Selective's Responses [ECF 79], and the Debtor thereafter
filed Supplemental Responses [ECF 81 and 82]. The Court heard argument on May 26,
2016. Nearly a month after the hearing, on June 20, 2016, counsel for NLG filed an
Affidavit in Support of NLG's Motion for Relief from Automatic Stay [ECF 92 and 92-1].

        Subsequent to the filing of this case, NLG has apparently violated the stay (without
getting relief from stay) and gone to the USDC in the SDNY in connection with the New
York State Supreme Court determination that Quebec's judgment (assigned to Selective,
and thereafter satisfied) was valid. NLG sought yet again (this is about the sixth or
seventh time, in addition to their effort in this Court) to invalidate the Quebec judgment
against NLG.

        Debtor files as supplemental authority the ruling entered July 20, 2016 of the USDC
SDNY, attached hereto as exhibit "A", which includes an order to show cause why NLG's
attorney should not be personally sanctioned for filing an "utterly frivolous matter."

        WHEREFORE, the debtor respectfully requests the court to consider the attached
as supplemental authority in opposition to NLG's motion under advisement.

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

JOEL M. ARESTY, P.A.
Joel M. Aresty
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

9197-5904 QUEBEC, INC.,

        Plaintiff,

    -against-                   16 Civ. 695 (CM)(JCF)

NLG LLC,

        Defendant.

_____x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/16

## ORDER "REMANDING" CASE

McMahon, CJ:

Herewith the history of this action:

On February 2012, the defendant confessed judgment in this action, brought by the plaintiff in the New York State Supreme Court, New York County.

On May 14, 2014, over two years later, defendant sought to vacate the confession of judgment.

On June 6, 2014, the Supreme Court denied the application for vacatur and marked the order "final disposition."

On June 17, 2014, plaintiff assigned its judgment to an entity known as Selective Advisors Group.

On September 4, 2015, Selective filed a satisfaction of judgment with the New York County Clerk.

On or about November 16, 2015, defendant – having paid the judgment – sought once again to have it vacated.

On December 21, 2015, the Supreme Court entered an order denying this application. No appeal was taken from this order.

On January 29, 2016, defendant filed a notice of removal to have the action transferred to this court.

Exhibits documenting the foregoing statements of fact will be found at Docket #1 and Docket #11 of the official docket of this action.

The Notice of Removal is a nullity. There was no live action to remove. The New York State Supreme Court entered judgment in this matter some years ago. That judgment has been satisfied. The case is over. A closed case cannot be removed.

According to defendant's counsel, who appeared at a conference before this court, defendant believes that the judgment was procured by fraud, and so made application to re-open the satisfied judgment. Its motion was denied. Instead of filing an appeal, defendant sent the case here. But this court does not sit as a Court of Appeals over the New York State Supreme Court.

The clerk of court is directed to return the file in this matter to the County Clerk, New York County and to close out the case on the court's docket.

Defendant's counsel has 14 days to show cause why he should not be personally sanctioned for wasting the court's time with this utterly frivolous matter.

Dated: July 20, 2016

_____
Chief Judge

BY ECF TO ALL COUNSEL

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

IN RE::                                                    Case    No:    **16-10389    AJC**

                                                          **Chapter 11**

Liza Hazan
**a/k/a ELIZABETH HAZAN**

**DEBTOR.                    /**

## STIPULATION OF SETTLEMENT OF CLAIM 5

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Real Time Resolutions, Inc., as agent for The Bank of New York Mella FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2006-F (Proof of Claim # 5) (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim 5, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16 the debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code.

      2.    On 3/19/16 Creditor filed claim #5 in the amount of $188,416.67 as an unsecured claim.

      3.    Parties agree claim 5 shall be paid in the amount of $12,000.00 on or before the effective date of the Chapter 11 Plan, creditor agrees to vote its $188,416.67 claim in favor of Debtor's plan of reorganization with the stipulated treatment.

      4.    This stipulation shall be submitted to the court for ratification and approval.

WHEREFORE, the debtor respectfully requests an order ratifying and approving this stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

/s/ Ashley Prager Popowitz, Esq.
Managing Attorney, Florida Bankruptcy
McCalla Raymer Pierce, LLC
110 S.E. 6th Street, Suite 2400 Fort Lauderdale, FL 33301
Office: (754) 263-1065 / Ext. 61065
Ashley.Popowitz@mrpllc.com
counsel for Creditor Real Time Resolutions, Inc.

and

/s/: Joel M. Aresty, Esq
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

Form CGFCRD3 (12/1/15)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:**

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## RENOTICE OF HEARING

**NOTICE IS HEREBY GIVEN** that a hearing will be held on **September 1, 2016** at **10:30 AM** at the following location:

**C. Clyde Atkins U.S. Courthouse**
**301 North Miami Avenue**
**Courtroom 7**
**Miami FL 33128**

to consider the following:

**Motion to Approve Stipulation of Settlement of Claim #5 Filed by Debtor Liza Hazan.**

**THIS MATTER HAS BEEN SET ON THE COURT'S MOTION CALENDAR FOR A NON–EVIDENTIARY HEARING. THE ALLOTTED TIME FOR THIS MATTER IS TEN MINUTES.**

**THE MOVANT (OR MOVANT'S COUNSEL if represented by an attorney) SHALL SERVE A COPY OF THIS NOTICE OF HEARING** and, unless previously served, the above–described pleading on all required parties within the time frames required by the Bankruptcy Rules, Local Rules, or orders of the Court, and shall file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B). Any party who fails to properly serve any pleadings or other paper may be denied the opportunity to be heard thereon.

**PLEASE NOTE:** Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), iPads, tablets, pagers, personal data assistants (PDA), laptop computers, radios, tape–recorders, etc., **are not permitted** in the courtroom, chambers or other environs of this court. These restrictions **(except for cameras not integrated into a cell phone device)** do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. **No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshal's Service. See Local Rule 5072–2.**

Dated: <u>8/5/16</u>

**CLERK OF COURT**
By: <u>Barbara Cargill</u>
Courtroom Deputy

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                                    Case No: 16-10389 AJC
                                                          Chapter 11
Liza Hazan
 Debtor._____/

### Amended Motion to continue Hearing
### Re disclosure statement

Debtor   moves to continue the disclosure statement hearing set for 8/17/16, and
respectfully represents the following to the court:

1.      Debtor requests a continuance of the disclosure hearing and more time to amend
disclosure and plan and negotiate with remaining creditors

2.      On 7/7/16 ECF 99 the court extended exclusivity to 7/11/16 and 1121(d) period to
obtain acceptances was extended by 60 days to September 8, 2016. That date would have been
insufficient in any event, since even if disclosure was approved 8/17/16 there would be
insufficient time to solicit acceptances. Rule 2002 (b) requires 28 days notice. The order on
disclosure statement ECF 107 set on August 17, 2016 for hearing and required objections by
August 10.

3.       Debtor has already settled JMB, Real Time Resolutions and Southeast financial
claims for a total amount of claims exceeding the amount of $1,200,000 of unsecured claims.

4.       Five objections to Debtor's disclosure have been received.

a.      **Valencia ECF 138** Valencia Estate Homeowners Association is in active
negotiations with debtor regarding plan treatment, and settlement of their claim. Debtor
has already paid the post petition amounts estimated in Valencia's motion for adequate
protection.

b.      **NLG ECF 140** seeks disclosure of validity of its alleged second mortgage
that was assigned and satisfied per the Final Order of Assignment of NLG's Judgment
against Debtor by Judge Peter Lopez. United States District Court Southern District of
New York Chief Judge McMahon just issued a ruling on July 21, 2016 in the 6th or 7th
NLG's attempt to invalidate Selective Advisors Group's Judgment against NLG that
ruled that the Selective Advisors Group judgment against NLG is a good judgment and

not a fraud as alleged by NLG. This matter is which is a contested matter before the court under advisement, since no proof of claim was filed, and NLG is not scheduled as a creditor of Debtor. NLG is not a party of interest or has standing in this case. Selective Advisors Group LLC scheduled as a creditor in Debtor's schedules is the real party in interest and they are not interested to foreclose.

   c. **Chase ECF 139** claims to be the secured first mortgage on Debtor's Homestead property located on Fisher Island. Chase hired counsel the day objections were due, who then left for vacation for three weeks. Debtor is negotiating stay relief to determine amount and validity in state court and to treat allowed secured claim in the plan.

   d. **Spencer ECF 136 NY** condo claims to have an unsecured claim but in reality has an overly secured lien on a property in NY which is not property of the estate. Debtor is in active settlement negotiations with Spencer and the owner of the property, The NY property is the subject of active NY litigation over a confidential settlement agreement. Motions for stay relief, mandatory abstention, and to seal for in camera review the NY settlement matters are set for hearing September 1, 2016. A resolution will be reached very soon.

   e. **Fuerst Ittleman David & Joseph, P.L. ECF 143** filed on 8/12/16 Objection to exemption is not meritorious as Debtor's property is the Homestead of the Debtor at the time of the filing of the petition. Moreover their objection to Debtor's disclosure is late as it was due on 8/10. Their proof of claim was filed after the bar date which was May 17, 2016. Fuerst Ittleman David & Joseph, P.L. is apparently the assignee of David joseph PA who was the former attorney representing NLG in State Court proceedings. Fuerst Ittleman David & Joseph, P.L. claim appears to have a claim against NLG for unpaid legal fees but is not a creditor of the debtor.

   5. Debtor has been actively negotiating with **Chase, Valencia and Spencer** as well as numerous other creditors in this case. **Fuerst Ittleman David & Joseph, P.L.** just filed a motion for late claim and NLG is already before the court under advisement.

   6. Debtor requires more time to negotiate with creditors for a consensual plan and disclosure, and therefore respectfully requests that this Court, pursuant to section 1121(d) of the Bankruptcy Code, extend by 60 days the exclusive period for Debtor to solicit acceptances, to November 7, 2016.

7.      Section 1121(d) of the Bankruptcy Code provides, in part, as follows: "…

[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause ... increase the 120-day period ... referred to in this section." 11 U.S.C. § 1121(d). Congress provides for exclusivity to afford a debtor a meaningful opportunity to develop and confirm a consensual plan of reorganization and reorganize under chapter 11. See In re Ames Dep't Stores Inc., 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors"); H.R. REP. NO. 95-595, 92 Cong. 2d. Sess. 232.

Wherefore Debtor is respectfully asking for continuance

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

JOEL M. ARESTY, P.A.
Joel M. Aresty
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                    Case No: 16-10389 AJC
                                                          Chapter 11
Liza Hazan
 Debtor.                                    /

**Amended Motion for extension of time re Exclusivity**
**to amend plan and disclosure statement**

Debtor moves for extension of time of exclusive period to amend plan and disclosure statement , and respectfully represents the following to the court:

1.      Debtor requests more time to amend disclosure and plan and negotiate with remaining creditors

2.      On 7/7/16 ECF 99 the court extended exclusivity to 7/11/16 and 1121(d) period to obtain acceptances was extended by 60 days to September 8, 2016. That date would have been insufficient in any event, since even if disclosure was approved 8/17/16 there would be insufficient time to solicit acceptances. Rule 2002 (b) requires 28 days notice. The order on disclosure statement ECF 107 set on August 17, 2016 for hearing and required objections by August 10.

3.       Debtor has already settled JMB, Real Time Resolutions and Southeast financial claims for a total amount of claims exceeding the amount of $1,200,000 of unsecured claims.

4.       Five objections to Debtor's disclosure have been received.

         a.      **Valencia ECF 138** Valencia Estate Homeowners Association is in active negotiations with debtor regarding plan treatment, and settlement of their claim. Debtor has already paid the post petition amounts estimated in Valencia's motion for adequate protection.

         b.      **NLG ECF 140** seeks disclosure of validity of its alleged second mortgage that was assigned and satisfied per the Final Order of Assignment of NLG's Judgment against Debtor by Judge Peter Lopez. United States District Court Southern District of New York Chief Judge McMahon just issued a ruling on July 21, 2016 in the 6th or 7th NLG's attempt to invalidate Selective Advisors Group's Judgment against NLG that ruled that the Selective Advisors Group judgment against NLG is a good judgment and not a fraud as alleged by NLG. This matter is which is a contested matter before the court

under advisement, since no proof of claim was filed, and NLG is not scheduled as a creditor of Debtor. NLG is not a party of interest or has standing in this case. Selective Advisors Group LLC scheduled as a creditor in Debtor's schedules is the real party in interest and they are not interested to foreclose.

      c.     **Chase ECF 139** claims to be the secured first mortgage on Debtor's Homestead property located on Fisher Island. Chase hired counsel the day objections were due, who then left for vacation for three weeks. Debtor is negotiating stay relief to determine amount and validity in state court and to treat allowed secured claim in the plan.

      d.     **Spencer ECF 136 NY** condo claims to have an unsecured claim but in reality has an overly secured lien on a property in NY which is not property of the estate. Debtor is in active settlement negotiations with Spencer and the owner of the property, The NY property is the subject of active NY litigation over a confidential settlement agreement. Motions for stay relief, mandatory abstention, and to seal for in camera review the NY settlement matters are set for hearing September 1, 2016. A resolution will be reached very soon.

      e.     **Fuerst Ittleman David & Joseph, P.L. ECF 143** filed on 8/12/16 Objection to exemption is not meritorious as Debtor's property is the Homestead of the Debtor at the time of the filing of the petition. Moreover their objection to Debtor's disclosure is late as it was due on 8/10. Their proof of claim was filed after the bar date which was May 17, 2016. Fuerst Ittleman David & Joseph, P.L. is apparently the assignee of David joseph PA who was the former attorney representing NLG in State Court proceedings. Fuerst Ittleman David & Joseph, P.L. claim appears to have a claim against NLG for unpaid legal fees but is not a creditor of the debtor.

      5.     Debtor has been actively negotiating with **Chase, Valencia and Spencer** as well as numerous other creditors in this case. **Fuerst Ittleman David & Joseph, P.L.** just filed a motion for late claim and NLG is already before the court under advisement.

      6.     Debtor requires more time to negotiate with creditors for a consensual plan and disclosure, and therefore respectfully requests that this Court, pursuant to section 1121(d) of the Bankruptcy Code, extend by 60 days the exclusive period for Debtor to solicit acceptances, to November 7, 2016.

      7.     Section 1121(d) of the Bankruptcy Code provides, in part, as follows: "…

[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause ... increase the 120-day period ... referred to in this section." 11 U.S.C. § 1121(d). Congress provides for exclusivity to afford a debtor a meaningful opportunity to develop and confirm a consensual plan of reorganization and reorganize under chapter 11. See In re Ames Dep't Stores Inc., 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors"); H.R. REP. NO. 95-595, 92 Cong. 2d. Sess. 232.

Wherefore Debtor is respectfully asking for a 60 days extension of exclusivity to November 7, 2016 within which to negotiate with creditors and amend plan and disclosure statement, and solicit acceptances.

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

JOEL M. ARESTY, P.A.
Joel M. Aresty
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

UNITED STATES BANRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:                              CASE NO.:  16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN              CHAPTER 11

DEBTOR
_____/


# NOTICE OF FILING OF SUPPLEMENTAL FACTS AND AUTHORITY ON BEHALF OF SELECTIVE ADVISORS GROUP

Selective Advisor's Group ("Selective"), through its undersigned counsel,

by way of this filing, respectfully states:

## DECLARATION

1. Attached as Exhibit '1' is the Supplemental Statement of Facts and
   Authority of Selective Advisors Group.

2. Attached as Exhibit '2' is the list of Exhibits to the Supplemental
   Statement of Facts and Authority of Selective Advisors Group.

WHEREFORE, the NLG Motion for Stay Relief should be denied, and the

Court should enter any other further relief it deems appropriate under these

circumstances.

1

Respectfully Submitted,

/s/          Sheleen G. Khan

Sheleen G. Khan

13499 Biscayne Blvd #3

North Miami, FL 33181

(305) 454-9126

And

I hereby certify that the undersigned attorney is appearing pro hac vice in this matter pursuant to court order dated 8/16/16 (ECF151)

/s/          Todd M. Mosser

Todd M. Mosser, Esquire

1500 JFK Boulevard, Suite 1723

Philadelphia, PA 19102

215-567-1220

**EXHIBIT '1'**

## SUPPLEMENTAL STATEMENT OF FACTS AND AUTHORITY ON

## BEHALF OF SELECTIVE ADVISORS GROUP, LLC

1. NLG's filings in this Bankruptcy case are verified by and through its alleged manager Chris Kosachuk ("Kosachuk").

2. Kosachuk has no standing to bring any pleadings on NLG's behalf. Kosachuk has stated, in depositions, that: (1) he has no ownership interest in NLG, LLC ("NLG"); (2) the sole owner of NLG is an entity named Meridian Trust Company, LTD ("Meridian"); (3) he does not keep in regular contact with Meridian and cannot name the people he deals with at Meridian; (4) although he is the Manager of NLG his responsibilities are limited; and (5) he receives no salary or other payment for managing NLG and, in fact, did not receive payment for selling his interest in NLG to Meridian. Even in making these claims, Kosachuk's story about who owns NLG is inconsistent. At one point he claimed, in a deposition taken under oath, he sold his interest in NLG to a company called Luxcom Financial ("Luxcom") and was able to provide details about the business relationship with Luxcom. However, he later stated, again in a deposition, that Luxcom never owned membership units in NLG.

3.   The relevant deposition transcripts are contained below:

> Q     So between 2002 when it was formed and 2007, you continued to own 100 percent of the interest of NLG?
>
> A     Correct.
>
> Q     Who was it transferred to?
>
> A     Luxcom Financial.
>
> Q     I'm sorry?
>
> A     Luxcom Financial.
>
> Q     Can you spell that, please?
>
> A     Luxcom, L-U-X-C-O-M.
>
> Q     And is Luxcom two words?
>
> A     No.
>
> Q     One word?
>
> A     Yes.
>
> Q     L-U-X-C-O-M Financial?

(**Exhibit A**. 56: 11-35.) Not only did Kosachuk state that Luxcom acquired 100% of the interest in NLG, he also provided specifics regarding the transfer. He     was asked about the person he dealt with at Luxcom and he gave the name "Alexia Kovalev". (Id. at 57: 14-19.) He was asked how much he was paid  for his interest in NLG and he stated, "Money was owed, so I used it to   satisfy debts," and he generally stated

that the debt was incurred on      improvements to a Florida property.
(<u>Id.</u> at 58: 14-15; 68: 19-24.) Kosachuk also knew the date of the closing
of the sale of his interest in NLG, stating that it took place in March 2007.
(<u>Id.</u> at 67: 11-17.)

4. However, when pressed about documentation regarding his relationship
with Luxcom he claimed he did not retain any documents:

```
            Q      Were there any documents that were
   written to identify these transactions?
            A      Which transactions?
            Q      The Luxcom transactions?
            A      Yes.
            Q      What kind of documents?
            A      I don't recall the documents, I didn't
   retain them.
            Q      Did you give them to any lawyer to hold?
            A      No.
            Q      So when you received them, at what point
   were they discarded?
            A      Immediately.

            ****************************
```

5. When asked how he communicated with Luxcom he answered "Telephone" but could not recall the number. (<u>Id.</u> at 75: 9-11.) This inability to recall important facts and retain key documents regarding a business relationship with the alleged owner of an LLC he is managing would be repeated in later sworn statements from Kosachuk.

6. At one point during the 2010 deposition, Kosachuk was asked what gave him "[a]uthority to represent yourself as a manager for NLG" and he responded, "The Operating Agreement." (Id. 82: 19-21.) Kosachuk was then shown a copy of NLG's Operating Agreement and asked where, in the Operating Agreement, he was provided that authority:

> Do you have the portion, sir, that you're referencing?
>
> A    Yes.
>
> Q    Where is that?
>
> A    7.01.
>
> Q    "The Company shall be managed by one Manager, Chris Kosachuk.  The Manager shall serve at the will of the Members and shall be selected and may be replaced by a vote of at least 80% of the Voting Interests."

7. Importantly, at no point did Kosachuk claim that the Operating Agreement he was shown was not the current Operating Agreement and, in fact, he continued answering questions based on the Operating Agreement.

8. Later in the deposition, Kosachuk was directly asked whether Luxcom still (i.e., in 2010) owned 100% of NLG and he stated "I assume so." (Id. at 132: 20-22.) Kosachuk reiterated that his interest in NLG was transferred to Luxcom and not any other company:

"Q. That's it, no other designation, company or …

A. Nope."

(Id. at 133: 1-9.)

**The April 12, 2012 Deposition**

9. On April 12, 2012, Kosachuk sat for a sworn deposition in the Pennsylvania Litigation. The transcript of the April 12, 2012 deposition is attached hereto as **Exhibit B**. During the Deposition, Kosachuk was shown an Amended Operating Agreement for NLG that had an effective date of June 1, 2007. The Amended Operating Agreement showed that Meridian – not Luxcom – owned 100% of NLG. Kosachuk could not state the name of the attorney who drafted the Amended Operating Agreement but, when he was asked when it was prepared (as opposed to its effective date) he answered "probably shortly there before, probably May 2007." (**Exhibit B**

14: 17-21.) Kosachuk was then asked whether the Amended Operating Agreement was correct in its representation that he transferred 100% of his interest in NLG to Meridian:

A    Correct.

Q    Where are they located?

A    The British Virgin Islands.

Q    What is their address?

A    I don't know it.

Q    What is their phone number?

A    I don't know it.

Q    What is their fax number?

A    I don't know it.

Q    What is their e-mail address?

A    I don't know it.

Q    What is their web site address?

A    I don't know if they have a web site.

Q    Well, can you give me the name of a person who I might contact if I wanted to contact somebody at the Meridian Trust Company, LTD in the British Virgin Islands?

A    Off the top of my head, no.

Q    Do you know what Island it's on?  And you'll have to excuse me, I don't know the Carribean, but I think there are several British Virgin Islands.  Do you know there which one?

A    No.

10.   Again, when asked to provide basic details on an important transaction

   pursuant to which he gave up 100% of his interest in a company, Kosachuk

could not provide answers. Incredibly, when he was asked whether he, as manager of NLG, contacted Meridian concerning the Charging Order – an order that effectively transferred control of NLG to Quebec – he stated that he had not. (Id. at 16: 4-15.)

11.   It is important to note that Kosachuk claimed (as he would in another deposition) that the Amended Operating Agreement was drafted in March 2007. However, in the 2010 deposition, when he was shown a copy of the "Operating Agreement", he was shown the version dated November 19, 2002. We know that is the case because the section he cites to in the 2010 deposition, Section 7.01, was amended in the Amended Operating Agreement. In the Amended Operating Agreement, Section 7.01 reads: "The Company shall be managed by one Manager, CHRIS KOSACHUK. The manager cannot be removed or replaced."  The Section 7.01 that was read aloud to Kosachuk in the 2010 deposition is from the 2002 Operating Agreement. At no point, when reviewing the Operating Agreement in 2010, did Kosachuk state that the Operating Agreement was not the current operating agreement for the LLC; i.e., in 2012 he testified that the Amended Operating Agreement was drafted in 2007, yet he does not mention it during the 2010 deposition nor does it appear to be part of the

record.[1]  Furthermore, the date of the alleged transfer of interest to Luxcom or Meridian changes from March 2007 to June 2007. (Attached as **Exhibit C** is a copy of the NLG Operating Agreement and Attached as **Exhibit D** is a copy of the NLG Amended Operating Agreement).

12. At a time when the transfer of his interest should have been clearer in his mind (i.e., 2010), Kosachuk was adamant that he transferred his interest in NLG to Luxcom. Two years later he had to explain the discrepancy between his two depositions. His response, when asked about this discrepancy, was to simply state, "Meridian owns Luxcom, and so the shares are actually transferred to Meridian." (Id. at 24: 5-6.) However, when pressed on the issue he could not recall basic details of this ownership structure:

---

[1] If the Amended Operating Agreement actually existed in 2010, as Kosachuk claims it did, then it is puzzling as to why it was not referenced at all in the 2010 deposition. The Amended Operating Agreement shows Meridian as owner of all of the units of NLG and, as such, would have been helpful to Kosachuk (if it indeed existed) in getting his story straight about whether his interest was transferred to Luxcom or Meridian.

Q    How do you know Meridian owns Luxcom?  Because you testified earlier that you really didn't know anybody at Meridian.

A    Because I was told by the people at Meridian.

Q    Who?

A    When this was all done five years ago.

Q    Not when.  Who?  Just give me a name.

A    I don't recall the name of the person.

13.  It was not only the name of the company that Kosachuk transferred the membership units to, but also the consideration he received in the transaction that changed. In 2010, Kosachuk stated that the consideration he received was the forgiveness of a debt. By 2012, Kosachuk's story had changed:

```
Q      You will forgive me, I hope and Court will
forgive me if I asked you this question, did Luxcom or
Meridian or anybody else pay you anything for your
transfer of your interest in NLG to any other entity?
      A      There was approximately, I believe it was
$50,000 was paid.
      Q      They paid you when?  In 2007?
      A      I believe.
      Q      Who paid you then?
      A      I think it came from Luxcom.
      Q      Was it by check?
      A      I don't recall how I received it.
```

**The February 15, 2014 Deposition**

14. On February 25, 2014, Kosachuk sat for a sworn deposition in the case *NLG, LLC v. Marzec*, No. 2514 (Ct. Comm Pleas, Philadelphia Co. Pa.) (the "Philadelphia Litigation"). The transcript of the February 25, 2014 deposition is attached hereto as **Exhibit E**. Again, Kosachuk's story about the alleged transfer of his interest in NLG changed. Whereas, in 2012, he stated that he received $50,000.00 as consideration for his interest in NLG, in the 2014 deposition, his stated reason for transferring the units was different:

Q.      How is it that Meridian Trust Company Limited came to be a member of NLG?

A.      I transferred my units to them.

Q.      Why did you transfer your units to them?

…

A.      Estate planning.

…

Q.      Okay. Your personal estate planning?

A.      No.

Q.      Whose estate planning?

A.      Family.

Q.      Okay. And when you say "family," who in the family?

A.      Family.

Q.      It was estate planning for somebody, Mr. Kosachuk, who?

A.      I'm sorry?

Q.      It was estate planning for some individual, who?

A.      Family members.

Q.      Who?

A.      I don't recall exactly.

(**Exhibit. E** 20: 1-25; 21: 1.) As in previous depositions, Kosachuk could not provide details of the alleged transaction with Meridian, including the details of the estate planning, who, specifically, the estate planning benefitted, or the people at Meridian with whom he negotiated the membership unit transfer. When pressed to provide names of people he knew at Meridian he could only come up with "Bernie Dover" and "Kantesha Dawson". (Id. at 35: 12-17.) When asked "even though you have no ownership interest whatsoever in NLG,[2] you have complete authority to do whatever you want

---

[2] Kosachuk was asked whether he had any interest in Meridian, he stated that he did not. (Ex. C 30: 7-10.) He also stated that he had no financial interest in Luxcom. (Id. at 65: 15-17.)

with regard to the assets of NLG?" he responded "Yes" but could not
provide the name of anyone at Meridian who gave him that authority. (Id. at
37: 6-22.) When asked whether anyone at Meridian authorized the filing of
the Philadelphia Litigation he stated "I don't recall." (Id. at 43: 12-16.) He
also did not recall communicating with Meridian regarding the Charging
Order. (Id. at 44: 3.)

15.     As in 2012, Kosachuk had to answer for his statement in 2010 that he
transferred all of his interest in NLG to Luxcom. He was asked directly
whether Luxcom had any ownership interest in NLG, he stated that it did
not. (Id. at 65: 18-20.) Kosachuk was asked about his problematic 2010
deposition:

Q.     So you are telling me that under oath in a deposition you were mistaken
about the entity to which you had transferred your entire interest in NLG?
A.     That's correct.

(Id. at 67: 7-11.)

16.     In 2012, Kosachuk claimed that he received $50,000.00 from
Meridian for his interest in NLG. However, in the 2014 deposition, when
asked about the consideration he received, Kosachuk stated that he did not
receive any money.

Q.     Why did you tell me in the underlying litigation that you got $50,000
for it [i.e., his interest in NLG]?
A.     Because I was wrong at the time.

(Id. at 106: 13-15.)

## Beyond the Depositions

17. As the above exploration of Kosachuk's depositions shows, Kosachuk is neither consistent nor, frankly, truthful when it comes to providing testimony under oath. This can be further shown by his careful selection of facts he chose to provide this Court in connection with NLG's pleadings. Quebec has sued Kosachuk and NLG in Florida State Court. *9197-5904 Quebec, Inc. v. Kosachuk*, No.: 07-8365 CA-13 (Fla. Cir. Ct.) (the "Florida Litigation"). On March 17, 2014, the Court in the Florida Litigation ordered that sanctions be imposed upon Kosachuk for failure to comply with Court orders. As described in the order (attached hereto as **Exhibit F**):

> This action was heard on March 12, 2014, on the Motion for Sanctions against Defendant, Chris Kosachuk, for willfully failing to comply with Orders of this Court of June 20, 2012, July 2, 2012 and January 2, 2014, directing Defendant, Chris Kosachuk to produce records, answer Interrogatories, deposit funds into the Court Registry and appear before General Master, Elizabeth Schwabedissen on January 28, 2014….

(**Ex. F** 1.) The Court, in its order, found that Kosachuk willfully failed to comply with court orders and directed that a Writ of Bodily Attachment be issued against Kosachuk, "The Miami-Dade County Sheriff or any law enforcement agency is hereby directed, upon delivery to it of a duly certified

copy of this order, and a Writ of Bodily Attachment to take Chris Kosachuk into custody and be held in accordance with this order." (Id.) A recent Writ of Bodily Attachment, dated May 15, 2014, is attached hereto as **Exhibit G** and shows, on its face, that Kosachuk has yet to comply with court orders in Florida.

**Kosachuk's Interest in NLG**

18.     Kosachuk claims to be the manager of NLG. Not only that, he is – according to Section 7.01 of the Amended Operating Agreement[3] -- the manager for life because, "The manager cannot be removed or replaced." He is the manager for life but he receives no compensation for managing NLG. (See, e.g., **Exhibit. B** 18: 2-11; Ex. E 32: 1-9.)

19.     Kosachuk allegedly transferred his interest in NLG to Meridian for no consideration other than keeping his job as manager – a manager that receives no compensation. With regard to his duties as manager, he has testified that he does not keep in contact with the owner and, in fact, is hard pressed to name anybody at Meridian that he speaks to. For example, he

---

[3] It is important to note that Quebec, Hazan, NLG, Kosachuk and Selective have been involved in extensive litigation over at least three different states over the last decade or so; however, it was not until 2012 – five years after it was allegedly drafted – that the Amended Operating Agreement for NLG made its appearance in this litigation.

cannot recall whether he provided the judgment that was entered against NLG in the Pennsylvania Litigation to Meridian:

Q.     Okay. Did you send to the owners of NLG a copy of that judgment?
A.     I don't recall if I did.
Q.     Okay. Would you still have the documents that would memorialize any such communications?
A.     No.
Q.     Why not?
A.     Several years ago. I don't retain documents.

(**Ex. E**   45: 2-11.) Kosachuk, although he is the manager for life of NLG, does not file tax returns for NLG and is not even aware if Meridian does. (Id. at 52-53.) He does not report to Meridian quarterly nor annually about the state of affairs of NLG, but rather reports to ownership "as-needed." (Id. at 53: 15-18.) When he does report to ownership, Kosachuk does not provide them with anything in writing. (Id. at 53: 19-24; 54: 1-11.)

20.     Kosachuk claims that he transferred all of his interest in NLG to Meridian in 2007. However, in 2010, only three years after that alleged transaction, he stated, on the record, that he sold his interest to a company named Luxcom and was able to provide a few details regarding the transaction. A Google search of "Luxcom Financial" brings up nothing but references to litigation involving Quebec and Kosachuk in New York. Attached as **Exhibit H** is the result of a company search in the Russian Federation for "Luxcom Financial" that shows that there is no such company

registered in Russia. With regard to Meridian, as the Affidavit of Attorney Darius Marzec (attached hereto as **Exhibit I**) shows, according to Ernie Dover (not "Bernie", which is the name Kosachuk used in the 2014 deposition), the Managing Director of Meridian, he has never heard of NLG. (Ex. I ¶).[4]

21.    Given the foregoing, Kosachuck lacks standing to assert anything on behalf of NLG. *See*, *Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir. 1978), (explaining that derivative actions contains two discrete standing requirements: (1) the plaintiff must have owned stock in the defendant corporation at the time of the transaction of which he complains, the . . . 'contemporaneous ownership' requirement, and (2) *the plaintiff must be a shareholder of the defendant corporation at the time suit is brought.*" Under these requirements, "[o]nly a shareholder, by virtue of his 'proprietary interest in the corporate enterprise'" is permitted to "step into the corporation's shoes and . . . seek in its right the restitution he could not demand in his own." *Id.* (*quoting Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 321 (1936); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)). The *Schilling* court noted that "the ownership requirement continues

---

[4]    Attorneys Cross & Simon who represented Quebec also contacted Mr. Dover regarding Meridian's interest in NLG. We were told, "Unfortunately, the information you are seeking is not on the public record in Nevis, and as such, we can not assist."

throughout the life of the suit ***and that the action will abate if the plaintiff ceases to be a shareholder before the litigation ends.***" *Id.*

22. Moreover, based on Kosachuk's ever changing stories, it appears that he comes to this Court with unclean hands.

23. As such, NLG *vis a vis* Kosachuk should be denied relief as a function of Kosachuk's unclean hands. *Accord*, *Matter of Garfinkle*, 672 F.2d 1340, 1347 n.7 (11th Cir. 1982) ("The doctrine [of unclean hands] is applicable in a court of equity to deny a plaintiff the relief he seeks even though his claim might otherwise be meritorious. The principles of equity govern the exercise of a bankruptcy court's jurisdiction.").

## SELECTIVE IS THE OWNER OF NLG'S JUDGMENT AND MORTGAGE AGAINST DEBTOR.

26. On August 20, 2014 Florida State Court Judge Peter Lopez assigned all NLG's claims, Judgment and Mortgage and against Debtor to Selective Advisors Group (**Exhibit J,** Judge Lopez Order of Assignment). All of NLG's attempts to set aside Judge Lopez' final order were unsuccessful. For example, On November 10, 2015, Judge Lopez denied NLG's last attempt to strike the assignment of NLG's judgment against Debtor to Selective Advisors Group. Judge Lopez, New York state court Judges Barbara Jaffe and Shlomo Hagler, as well as Pennsylvania Judge Griffith, all concur that Selective Advisors Group's Judgment against NLG is a

valid Judgment against NLG, and that all the steps taken by Selective to execute on its judgment against NLG were valid and proper. Thus, there ca be no real question that Selective is the rightful owner of NLG's judgment and mortgage against Debtor Hazan. (Attached as **Exhibit K** are the multiple Orders). Kosachuk did convince Florida state court Judge Monica Gordo on October 3, 2015 that NLG would be successful in setting aside Selective Judgment. However, On **July 21, 2016** Chief Judge Colleen McMahon of the Southern District of New York concluded that Selective's judgment against NLG was not a fraud (despite NLG's pleading to the contrary) but was a good, valid and final judgment against NLG entered years ago.

### NLG'S SPURIOUS ATTEMPTS TO ATTACK SELECTIVE'S JUDGMENT IN NEW YORK, PENNSYLVANIA AND FLORIDA AND ATTEMPTS TO SET ASIDE ASSIGNMENT OF JUDGMENT AGAINST DEBTOR TO SELECTIVE

27. As demonstrated above, all of NLG's attempts to attack Selective's judgment that is the subject of this litigation had been soundly rebuffed by the Federal and State courts in New York, Florida and Pennsylvania.

28. As detailed in Debtor's **July 21, 2016** Supplemental authority filing, Chief Judge McMahon of the United States District Court for the

Southern District of New York denied NLG's attempt to attack the

validity of Selective's judgment against NLG, which effectively denied

NLG's attempt to set aside the assignment of NLG's judgment and

mortgage against Debtor Hazan. *See,* **Exhibit L.**

29. NLG has violated the bankruptcy stay by filing a new action in the

Southern District of New York in January 2016 after Debtor's

Bankruptcy filing.

30. The reasons therefore are contained in the Debtor's July 21, 2016

filing, but it is worth noting, as the undersigned was present when it

happened, that Chief Judge McMahon was furious that NLG had

attempted to "remove" to the federal court the Selective Judgment against

NLG, as the judgment had been satisfied and closed in the New York

state courts years prior. NLG's attempt to "remove" a closed matter was

clearly frivolous and vexatious. As such, its 6th or 7th attempt to

invalidate the Selective judgment failed, as it had countless times before

in multiple forums. NLG's complaint that Selective's judgment is a

"fraud" could have been litigated through appeal in the New York state

courts, but, tellingly, NLG refused to do so. Thus, the notion that

Selective's judgment is a "fraud" is utter nonsense. Selective's judgment

is in fact a valid judgment. Her Honor contemplated imposing sanctions

on NLG's counsel for his bogus attempt to revive the "fraud" argument for "wasting the court's time."

31. Thus, in addition to Kosachuk having no legal standing to act on behalf of NLG, NLG's efforts at opening the underlying judgment in this matter have been repeatedly rejected.

32. As such, it is respectfully requested that NLG's Motion for Stay Relief be denied.

Respectfully Submitted,

/s/              Sheleen G. Khan
Sheleen G. Khan
13499 Biscayne Blvd #3
North Miami, FL 33181
(305) 454-9126
And
I hereby certify that the undersigned attorney is appearing pro hac vice in this matter pursuant to court order dated 8/16/16 (ECF151)

/s/              Todd M. Mosser
Todd M. Mosser, Esquire
1500 JFK Boulevard, Suite 1723
Philadelphia, PA 19102
215-567-1220

**UNITED STATES BANRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsb.uscourts.gov

IN RE:                                    CASE NO.:  16-10389-AJC

**LIZA HAZAN**
**a/k/a ELIZABETH HAZAN**                 CHAPTER 11

**DEBTOR**
_____/

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of:

NOTICE OF FILING OF SUPPLEMENTAL FACTS AND
AUTHORITY ON BEHALF OF SELECTIVE ADVISORS GROUP

was furnished to all parties in this case by CM/ECF on all electronic notice

parties on the CM/ECF service list below on August 18, 2016.

Respectfully Submitted,
/s/          Sheleen G. Khan
Sheleen G. Khan
13499 Biscayne Blvd #3
North Miami, FL 33181
(305) 454-9126
And
I hereby certify that the undersigned attorney is appearing pro hac vice in this
matter pursuant to court order dated 8/16/16 (ECF151)

/s/          Todd M. Mosser
Todd M. Mosser, Esquire
1500 JFK Boulevard, Suite 1723
Philadelphia, PA 19102
215-567-1220

• Geoffrey S. Aaronson gaaronson@aspalaw.com

• Elizabeth J Campbell ecampbell@lockelord.com, marian.scott@lockelord.com

• Adam A Diaz adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

• Jeffrey S Fraser bkfl@albertellilaw.com

• Robert C Furr bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

•JoeM.Grant,jgrant@msglaw.com,efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

• Robert A Gusrae ROBERT.GUSRAE@GMAIL.COM

•DavidB.Haber,dhaber@dhaberlaw.com,ngomez@dhaberlaw.com;dpodein@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpas ervice@dhaberlaw.com

• Kevin L Hing khing@logs.com, electronicbankruptcynotices@logs.com

• Tamara D McKeown tdmckeown@mckeownpa.com

• Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

• Alberto H Orizondo aorizondo@aglawpa.com, bfernandez@aglawpa.com

# EXHIBIT '2'

# EXHIBIT A

1

1          IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
               IN AND FOR MIAMI-DADE COUNTY, FLORIDA

2

3                       CASE NO.# 07-8365-CA-13

4

5     EUGENIA LORRET and NINA GOGITIDZE

6          Plaintiffs,

7     vs.

8     CHRIS KOSACHUK and NLG, LLC.

9          Defendants.

10     _____

11

12            PURSUANT TO NOTICE OF TAKING DEPOSITION

13               DEPOSITION OF CHRIS KOSACHUK

14

15     Location:        Aventura Corporate Center
                        20801 Biscayne Boulevard
16                      Suite 403
                        Miami, Florida 33180
17

18     Date:            April 27, 2010

19

20     Time:            10:10 - 2:25 p.m.

21

22     Taken By:        Cindi Carparotta,
                        Court Reporter and Notary Public
23                      in and for the State of Florida
                        at Large
24

25

1      APPEARANCES:

2

3          LAW OFFICES OF CARVO & EMERY, P.A.
           BY:   CARYN GOLDENBERG CARVO, ESQUIRE
4          888 South Andrews Avenue
           Suite 201
5          Fort Lauderdale, Florida 33316
           Appearing on behalf of the Plaintiff.
6
           CHRIS KOSACHUK, PRO SE
7          201 South Biscayne Boulevard
           28th Floor
8          Miami, Florida 33131

9
                             I N D E X
10
       WITNESS                                        PAGE
11
       CHRIS KOSACHUK
12

13
                        DIRECT EXAMINATION            03
14                      BY: MS. GOLDENBERG CARVO

15
                           E X H I B I T S
16
       PLAINTIFF'S                                    PAGE
17
       No. 1      Plaintiff's Notice of Service of        28
18                Interrogatories Propounded to Defendant

19
       No. 2      Request for Production                  28
20
       No. 3      Motion for Protective Order and Sanctions  39
21
       No. 4      March 9th, 2010 letter                  41
22
       No. 5      Ex Parte Motion for Charging Order       83
23
       No. 6      Notice of Entry of Judgment Modified    102
24                Pursuant to Order

25

```
 1                Q    And how many units did you own?

 2                A    I owned 100 percent.

 3                Q    So when it was formed, you were, in

 4     fact, a member or owner of the LLC?

 5                A    Yes.

 6                Q    And at what point did you stop being a

 7     member of the NLG?

 8                A    Back in 2007.

 9                Q    And how did that get accomplished?

10                A    My units were transferred.

11                Q    So between 2002 when it was formed and

12     2007, you continued to own 100 percent of the interest

13     of NLG?

14                A    Correct.

15                Q    Who was it transferred to?

16                A    Luxcom Financial.

17                Q    I'm sorry?

18                A    Luxcom Financial.

19                Q    Can you spell that, please?

20                A    Luxcom, L-U-X-C-O-M.

21                Q    And is Luxcom two words?

22                A    No.

23                Q    One word?

24                A    Yes.

25                Q    L-U-X-C-O-M Financial?
```

```
 1              A    Correct.
 2              Q    Does it have an Inc., an LLC, after it
 3    or any other designation?
 4              A    No.
 5              Q    What is Luxcom Financial?
 6              A    It's a company.
 7              Q    From where?
 8              A    Moscow, Russia.
 9              Q    So it is a Russian established company?
10              A    Yes.
11              Q    And who is, who are the principals
12    and/or officers of Luxcom Financial?
13              A    Currently?
14              Q    Well, let's start at the time that it
15    was transferred in 2007?
16              A    Alexia Kovalev.
17              Q    Can you spell the last name?
18              A    K-O, K-O-V-A-L-E-V, I think, Kovalev,
19    yeah, I think that's it.
20              Q    Was that the only principal you were
21    aware of?
22              A    Yeah, he's the only person I dealt with.
23              Q    Is that the person you personally
24    transferred the shares to at the time that they were
25    transferred to Luxcom?
```

58

```
 1                A    He was representing Luxcom.
 2                Q    How did you meet Luxcom?
 3                A    Mutual friends.
 4                Q    Who?
 5                A    I don't remember who exactly introduced
 6      me to him.
 7                Q    And how much was the -- And were all the
 8      units transferred to Luxcom?
 9                A    Yes.
10                Q    How much was the payment to NLG for such
11      units -- Withdrawn.
12                     How much were the payments to you for
13      such interest?
14                A    Money was owed, so I used it to satisfy
15      debts.
16                Q    You owed money to somebody?
17                A    To Luxcom.
18                Q    How did that come about, how did you end
19      up --
20                A    From all his business dealing around his
21      house.
22                Q    How is Luxcom involved with the NLG,
23      with the, I guess the house is the Fisher Island house?
24                A    The Fisher Island house, correct.
25                Q    How did Luxcom get involved with the
```

67

```
 1   funds?
 2                A    Very little.
 3                Q    When was that -- The acquisition of the
 4   house in Fisher Island was what year?
 5                A    2003.
 6                Q    And the sale to Elizabeth in Fisher
 7   Island was what year?
 8                A    2007.
 9                Q    Approximately when in 2007?
10                A    March.
11                Q    And the sale of your interest in NLG to
12   Luxcom was when in 2007?
13                A    Just after the closing.
14                Q    So it would be somewhere in March or
15   April?
16                A    March.
17                Q    Was it almost simultaneous?
18                A    Yes.
19                Q    What happened to the money that NLG
20   received from the Hazan sale?
21                A    We ended up spending it on lawyers.
22                Q    Subsequent to or prior to?
23                A    Thereafter because we had to sue Hazan.
24   Hazan didn't pay so we had to spend more money on
25   lawyers to get her to pay, and that's where the money
```

68

```
 1    went.
 2              Q     How much of the 5.1 million or I guess
 3    it's 2.1 million if you talk about there was 3 million
 4    from financing through a mortgage --
 5              A     Correct.
 6              Q     How much of the 2.1 million did NLG put
 7    into its account at that time?
 8              A     At the closing.
 9              Q     At the closing?
10              A     Maybe a hundred thousand bucks.
11              Q     And it went into the NLG account?
12              A     Correct.
13              Q     And the NLG account is where, the ones
14    that this hundred thousand went into?
15              A     I don't recall exactly where it went.
16              Q     Did NLG have more than one financial
17    account?
18              A     I don't know, I don't remember.
19              Q     So my question is:  How did Luxcom
20    Financial in March of 2007, how is there a pre-existing
21    debt relating to Fisher Island?
22              A     From various other things from the
23    improvements to the house, other things that I had
24    fronted personal.
25              Q     And you had fronted it as the owner as
```

75

```
1                 Q     Did you sign anything?

2                 A     I'm sure I did.

3                 Q     And did you communicate with Luxcom

4       through e-mail?

5                 A     No.

6                 Q     How did you communicate with Luxcom in

7       order for this --

8                 A     Telephone.

9                 Q     And where would you have the phone

10      number of Luxcom?

11                A     I don't know if I do.

12                Q     What phone did you use in order to make

13      the phone calls?

14                A     Don't remember.

15                Q     Do you presently have a cell phone?

16                A     Yes.

17                Q     What is your cell phone number?

18                A     305-490-5700.

19                Q     And what carrier is that with?

20                A     AT&T.

21                Q     Have you previously had other cell

22      phones?

23                A     Nope.

24                Q     Has that been the same number that you

25      had throughout your time with AT&T?
```

82

```
 1              A    I pursue the debt with Elizabeth Hazan.
 2              Q    Is that your only role?
 3              A    Pretty much.
 4              Q    How do you get your instructions?
 5              A    Well, I've been told to collect, do
 6     anything I need to do to collect, that's the
 7     instructions.
 8              Q    How is it determined when and how much
 9     money you need to be funded by Luxcom in order to pursue
10     this venture?
11              A    When the bills come I tell them what the
12     bills are.
13              Q    What records exist of NLG corporate
14     records?
15              A    I don't know.
16              Q    So as the manager, are you a manager
17     with a written contract?
18              A    No.
19              Q    And what gives you authority to
20     represent yourself as a manager for NLG?
21              A    The Operating Agreement.
22              Q    I'm showing you a copy of the Operating
23     Agreement, and I believe that document was attached to a
24     pleading in this matter.  Take a look at that Operating
25     Agreement and tell me, please, where --
```

```
 1                    A     No.
 2                    Q     Other than payment of your credit cards
 3        does it give you any other in kind type of payments?
 4                    A     No.
 5                    Q     Then why do you continue to --
 6        Withdrawn.
 7                          Have you been promised a piece of any
 8        monies that you collect from Elizabeth Hazan?
 9                    A     No.
10                    Q     Has Mr. David been promised a piece of
11        any monies that were collected from Elizabeth Hazan?
12                    A     No.
13                    Q     Does anybody else other than --
14        Withdrawn.
15                          Other than NLG and its owner, Luxcom,
16        does anyone have an interest or expectation of an
17        interest in any collection from Elizabeth Hazan in that
18        lawsuit by NLG?
19                    A     I don't know.
20                    Q     Does Luxcom still own the 100 percent of
21        the units in NLG?
22                    A     I assume so.
23                    Q     Have you been notified or told of any
24        change of that ownership?
25                    A     No.
```

133

```
 1                 Q     What was the name on the entity to whom

 2      the shares were transferred?

 3                 A     We went over that already, Luxcom

 4      Financial.

 5                 Q     That's it, no other designation, company

 6      or --

 7                 A     Nope.

 8                 Q     Just that?

 9                 A     Correct.

10                 Q     And Alexia was to whom it was, the

11      paperwork was handled?

12                 A     Correct.

13                 Q     Do you presently have any lawsuits

14      pending?

15                 A     No.

16                 Q     Any lawsuit that has been settled within

17      the past year?

18                 A     Yes.

19                 Q     What lawsuit?

20                 A     A lawsuit with Good Energy.

21                 Q     When was that settled?

22                 A     Last summer.

23                 Q     And that was the one where you

24      personally served Mr. Hoover, you personally sued Mr.

25      Hoover in Good Energy?
```

# EXHIBIT B

IN THE COURT OF COMMON PLEAS
OF CHESTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

~ ~ ~

EVGUENIA LORRET et al,            :        NO. 2012-00057-JD
                                  :
                Plaintiff,        :
                                  :
        -VS-                      :
                                  :
CHRISTOPHER KOSACHUK et al,       :
                                  :
                Defendant.        :

~ ~ ~

BEFORE:     THE HONORABLE JUDGE EDWARD GRIFFITH

~ ~ ~

Thursday, 12 April, 2012

~ ~ ~

Chester County Justice Center
Courtroom 11
West Chester, Pennsylvania

APPEARANCES:

BY: GUY A. DONATELLI, ESQUIRE

    Attorney for the Plaintiff


BY: RANDALL C. SCHAUER, ESQUIRE

    Attorney for the Defendant


                    Cara M. Fitzpatrick
                    Official Court Reporter

I-N-D-E-X

| DEFENDANT'S WITNESS | D | C | RD |
|---|---|---|---|
| CHRISTOPHER KOSACHUK | 5 | 13 | 42 |

| EXHIBITS | MARKED | ADMITTED |
|---|---|---|
| J-1 DOCUMENT | 4 | 43 |
| D-1 DOCUMENT | 5 | 43 |
| D-2 DOCUMENT | 11 | 43 |
| P-1 DOCUMENT | 29 | 43 |

14

1    A    NLG has several lawyers.

2    Q    How many lawyers does NLG use?

3    A    NLG has Mr. Schauer, Chris David in Florida, and

4    James Costo in New York.

5    Q    Did Mr. Schauer prepare Exhibit D-1?

6    A    No.

7    Q    How about Mr. David, did he prepare D-1?

8    A    I don't recall.

9    Q    Where did you get this document, D-1?

10   A    From NLG's files.

11   Q    And where is that?  In your home?

12   A    Yes.

13   Q    854 Pheasant Run?

14   A    Yes.

15   Q    But you don't recall who drafted it?

16   A    Correct.

17   Q    Your testimony was that, I thought you said that

18   it was effective in June of 2007.  When was this

19   document prepared?

20   A    Approximately, probably shortly there before,

21   probably May of 2007.

22   Q    You transferred your one hundred percent

23   interest in NLG to a company called Meridian Trust

24   Company, LTD?

16

1    since January 1st of this year, have you contacted

2    anyone at Meridian Trust Company, LTD?

3        A    No.

4        Q    You didn't contact anybody down there explaining

5    to them, as manager of NLG, that somebody had filed a

6    charging lien and charging order against all of their

7    membership interests?

8        A    I was waiting to see what the determination of

9    the Court was on all of this and then I was going to act

10   accordingly.

11       Q    So the answer to my question is, yes,

12   Mr. Donatelli, I never informed anyone at Meridian of

13   these proceedings?

14       A    I have not informed anyone at Meridian of these

15   proceedings.

16       Q    Other than this document, do you have any other

17   documents here today which would indicate or provide the

18   Court with any information regarding Meridian Trust

19   Company, LTD?

20       A    No.

21       Q    Do you have your cell phone here today?

22       A    Yes.

23       Q    Do you have a phone number plugged into your

24   cell phone with respect to Meridian Trust Company, LTD?

24

1    Meridian Financial is operating.  So the shares were
2    ultimately held by Meridian Trust Company.
3              THE COURT:  You lost me there.
4              MR. DONATELLI:  Me too.
5              THE WITNESS:  Meridian owns Luxcom, and so
6    the shares are actually transferred to Meridian.
7    BY MR. DONATELLI:
8        Q    How do you know Meridian owns Luxcom?  Because
9    you testified earlier that you really didn't know
10   anybody at Meridian.
11       A    Because I was told by the people at Meridian.
12       Q    Who?
13       A    When this was all done five years ago.
14       Q    Not when.  Who?  Just give me a name.
15       A    I don't recall the name of the person.
16       Q    Question, what is Luxcom Financial?  Answer, it
17   is a company.  Question, from where?  Answer, Moscow,
18   Russia.  Is that where Luxcom is located?
19       A    Luxcom is based in Moscow, yes.
20       Q    So it is a Russian established company?  Answer,
21   yes.  Right?
22       A    Yes.
23       Q    Who is Alexia, A-L-E-X-I-A, first name, second
24   name Kovalez, K-O-V-A-L-E-Z?  Who is Alexia Kovalez?

18

1       A    Yes.  Continued employment of NLG.

2       Q    Anything other than allowing you to continue as

3   the manager of NLG?  Do they pay you?  Do you get a

4   salary?

5       A    I receive no salary.

6       Q    Do you get any benefits?

7       A    No.

8       Q    Does NLG pay any of your personal or your

9   business related expenses?

10      A    NLG pays expenses related to litigation of NLG

11  versus Elizabeth Hazan.

12      Q    Other than the ownership that you've testified

13  NLG has in a mortgage and piece of property, does NLG do

14  anything else?

15      A    NLG is actively involved in litigation to

16  collect approximately $2.3 million dollars that is owed

17  to NLG pursuant to a Florida judgment against Ms. Hazan

18  for defaulting on her mortgage.

19      Q    Does it do anything other than that?

20      A    I think that is a pretty big task, so, no.

21      Q    Other than your efforts for NLG, are you

22  employed?

23      A    No.

24      Q    What is Luxcom?  What is Luxcom?

# EXHIBIT C

OPERATING AGREEMENT
OF
NLG, LLC
A DELAWARE LIMITED LIABILITY COMPANY

ARTICLE I

DEFINITIONS

The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a) "Articles of Organization" shall mean the Articles of Organization of NLG, LLC as filed with the Delaware Secretary of State on November 19, 2002, as the same may be amended or restated from time to time.

(b) "Capital Account" as of any given date shall mean the capital account to be established and maintained for each Member in accordance with Article 5.03.

(c) "Capital Contribution" shall mean any contribution to the capital of the Company in cash or property by a Member whenever made. "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to this Operating Agreement and Exhibit A.

(d) "Capital Interest" shall mean the proportion that a Member's Capital Contributions (adjusted for withdrawals) bears to the aggregate Capital Contributions of all Members.

(e) "Closing" shall mean a closing of the sale of interests in the Company at which time subscriptions will be accepted and investors will be admitted to the Company as Members.

(f) "Code" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal revenue laws.

(g) "Company" shall refer to NLG, LLC.

(h) "Deficit Capital Account" shall mean with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the taxable year.

(i) "Distributable Cash" means all cash, revenues and funds received by the Company from Company operations, less the sum of the following to the extent paid or set aside by the Company: (i) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders; (ii) all cash expenditures incurred incident to the normal operation of the Company's business; (iii) such Reserves as the Manager deem reasonably necessary to the proper operation of the Company's business.

(j) "Economic Interest" shall mean a Member's or Economic Interest Owner's share of one or more of the Company's net profits, net losses and distributions of the Company's assets pursuant to this Operating Agreement and the Delaware Act, as set forth in Exhibit A attached hereto, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to or otherwise participate in any decision of the Members or Manager.

(k) "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

(l) "Fiscal Year" shall mean the company's fiscal year, which shall be the calendar year.

(m) "Initial Closing Date" shall mean November 15, 2002, subject to extension at the discretion of the Company for up to 90 days, or such earlier date as the Company shall select.

2.05 Term. The Company shall be perpetual existence, unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the Delaware Act.

## ARTICLE III

## BUSINESS OF COMPANY

3.01 Permitted Businesses. The only business of the Company shall be:

(a) To invest in such financial endeavors the Manager deems desirable for the benefit of the Company;

(b) To accomplish any lawful business or purpose whatsoever and to engage in any lawful business, which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets; and

(c) To exercise all other powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the Delaware Act.

The Company shall engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

## ARTICLE IV

## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are as set forth in Exhibit A.

## ARTICLE V

## CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

5.01 Capital Contributions.

(a) The founding Member of the Company is Chris Kosachuk ("Kosachuk"). Kosachuk has made a capital contribution of $1,000 and has been issued 1,000 Class A Membership Interests in the Company ("Class A Interests).

(b) The Company is hereby authorized to issue a minimum of 1 ranging to a maximum of 25 Units of Class A Interests. Each Unit shall consist of 100 Class A Interests. On the Initial Closing Date and at subsequent closings, subscriptions will be accepted and investors purchasing Units will be admitted to the Company as Members. Subsequent Closings shall occur at such time and in such order as is determined by the Company in its sole discretion.

(c) The Company is authorized to issue up to 5,000 Class A Membership Interests.

5.02 Nature of Contributions: No Member shall be required or obligated (a) to contribute any capital to the Company other than as provided in Section 5.01 or 5.02 hereof, or (b) to lend any funds to the Company. No interest shall be paid on any capital contributed to the Company and, except as otherwise provided herein, no Member may withdraw his Capital Contribution. None of the terms, covenants, obligations or rights contained in this Section is or shall be deemed to be for the benefit of any person or entity other than the Members and the Company, and no such third person shall under any circumstances have any right to compel any actions or payments by the Manager and/or the Members.

5.03 Capital Accounts.

(a) A separate Capital Account will be maintained for each Member. Each Member's Capital Account will be increased by (1) the amount of money, if any, contributed by such Member to the Company; (2) the fair market value of property contributed by such Member to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to); and (3) allocations to such Member of Net Profits. Each Member's Capital Account will be decreased by (1) the amount of money distributed to such Member by the Company; (2) the fair market value of property distributed to such Member by the Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to); and (3) allocations to the account of such Member of Company losses and deductions as set forth in the Treasury Regulations, taking into account adjustments to reflect book value.

(b) The manner in which Capital Accounts are to be maintained pursuant to this Section 5.03 is intended to comply with the requirements of Section 704(b) of the Code and the Treasury Regulations promulgated thereunder.

(c) Upon liquidation of the Company (or any Member's Membership Interest), liquidating distributions will be made in accordance with the positive Capital Account balances of the Members, as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs. Liquidating distributions may be made in cash or property.

(d) Except as otherwise required in the Delaware Act (and subject to Sections 5.01 and 5.02), no Member shall have any liability to restore all or any portion of a deficit balance in such Member's Capital Account.

## ARTICLE VI

## ALLOCATIONS INCOME TAX DISTRIBUTIONS ELECTIONS AND REPORTS

6.01 Allocations of Profits and Losses from Operations. The Net Profits and Net Losses of the Company for each fiscal year will be allocated to the Members in proportion to the number of Membership Interests held by the Member. Each Class A Interest shall have equal rights to allocations of profits and losses .

6.02 Distributions. Except as provided in Section 5.03(c), all distributions of profits shall be made to the Members in proportion to the number of Membership Interests held by the Member. Each Class A Interest shall have equal rights to allocations of distributions.

6.03 Limitation Upon Distributions. No distribution shall be declared and paid unless, after the distribution is made, the assets of the Company are in excess of all liabilities of the Company, except liabilities to Members on account of their contributions.

6.04 Accounting Principles. The profits and losses of the Company shall be determined in accordance with accounting principles applied on a consistent basis. It is intended that the Company will elect those accounting methods which provide the Company with the greatest tax benefits. Initially, the cash method of accounting shall be used by the Company.

6.05 Loans to Company. Nothing in this Operating Agreement shall prevent any Member from making secured or unsecured loans to the Company by agreement with the Company, all of which loans shall be treated by the Company in the same manner as loans from independent third parties, provided, however, that all such loans fully comply with the limitations set forth in the Certificate of Formation.

6.06 Records. At the expense of the Company, the Manager shall maintain records and accounts of all operations and expenditures of the Company. At a minimum the Company shall keep at its principal place of business the following records:

(a) A current list of the full name and last known business, residence, or mailing address of each Member and the Manager, both past and present;

(b) A copy of the Certificate of Formation of the Company and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(c) Copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years or if such returns or statements were not prepared for any reason, copies of the information and statements necessary to enable the Members to prepare their own federal, state and local tax returns for such period;

(d) Copies of the Company's past and present Operating Agreement and amendments;

(e) Copies of any financial statements of the Company for the three most recent years;

(f) Minutes of every annual and special meeting;

(g) Any written consents obtained from Members for actions taken by Members without a meeting;

(h) A current statement of the capital contributions made by each Member specifying the amount of cash and the agreed value of other property received by the Company and the agreed value of services as a capital contribution that each Member has contributed to the Company;

(i) A statement of the cash, property and services that each Member has agreed to contribute or render to the Company in the future and of the principal balance outstanding under any promissory note payable in respect of a contribution, and of the amount of the capital contribution with which each such Member shall be credited upon receipt of such cash, property or services or any part thereof;

(j) Documents or other writings required to be made available to Members by this Operating Agreement.

6.07 Returns And Other Elections. For the sole purpose of representing the Company for determination of federal tax treatment of Company items under the Code, CHRIS KOSACHUK shall be designated as the Tax Matters Manager. If such designation shall be found to be contrary to the Regulations promulgated by the Treasury Department, such Regulations shall control the designation of the Tax Matters Manager. The Tax Matters Manager shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year.

## ARTICLE VII

## RIGHTS AND DUTIES OF THE MANAGER

7.01 Identity and Replacement. The Company shall be managed by one Manager, CHRIS KOSACHUK. The Manager shall serve at the will of the Members and shall be selected and may be replaced by a vote of at least 80% of the Voting Interests.

7.02 Management. The business and affairs of the Company shall be managed by its Manager who shall have the authority, from time to time, to appoint such officers of the Company as they deem appropriate. The Manager shall direct, manage and control the business of the Company to the best of his ability. Except for situations in which the approval of the Members is expressly required by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.

7.03 <u>Powers of the Manager</u>. Without limiting the generality of Section 7.02, the Manager shall have power and authority, on behalf of the Company:

(a) To borrow money for the Company from banks, other lending institutions, Members, or affiliates of the Manager or Members on such terms as the Manager deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of the Company to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except by the Manager, or to the extent permitted under the Delaware Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by the Manager;

(b) To purchase liability and other insurance to protect the Company's property and business;

(c) To hold and own any Company real and/or personal properties in the name of the Company;

(d) To invest any Company funds;

(e) To guaranty the obligations of entities in which the Company is a shareholder, member or partner, and other entities which in the opinion of the Manager will be in the interest of the Company or its Members;

(f) To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; leases, partnership agreements, guarantees, operating agreements of other limited liability companies; and any other instruments or documents necessary in the opinion of the Manager, to the business of the Company;

(g) To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(h) To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve; and

(i) To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

Unless authorized to do so by this Operating Agreement or by the Manager, no Member, attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose. No Member shall have any power or authority to bind the Company unless the Member has been authorized by the Manager to act as an agent of the Company in accordance with the previous sentence.

7.04 <u>Liability for Certain Acts</u>. The Manager shall perform their duties as Manager in good faith, in a manner they reasonably believe to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager who so performs the duties as Manager shall not have any liability by reason of being or having been a Manager of the Company. A Manager does not, in any way, guarantee the return of the Members' Capital Contributions or a profit for the Members from the operations of the Company. The Manager and Members shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct or a wrongful taking by the Manager or Member.

7.05 <u>Manager Has No Exclusive Duty to Company</u>. A Manager shall not be required to manage the Company as his sole and exclusive function and the Manager may have other business interests and may engage in other activities in addition to those relating to the Company. The Manager shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture.

7.06 Bank Accounts. The Manager may from time to time open bank accounts in the name of the Company, and any one of the Manager or a designated agent may be the sole signatory thereon.

7.07 Indemnity of the Manager and Members. Subject to the limitations of Section 7.04 the Company shall indemnify the Manager and any Member for judgments, settlements, penalties, fines or expenses incurred in a proceeding to which such person is a party because he or it is or was a Member or Manager, and shall indemnify such Member or Manager for advancement of expenses, including costs of defense, prior to final disposition of such proceeding.

7.08 Resignation. The Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

7.09 List of Members. Upon written request of any Member, the Manager shall provide a list showing the names, addresses and Membership Interests of all Members.

7.10 Company Books. The Manager shall maintain and preserve, during the term of the Company, all accounts, books, and other relevant Company documents. Upon reasonable request, each Member shall have the right, during ordinary business hours, to inspect and copy such Company documents at the requesting Member's expense.

7.11 Delegation of Duties. The Manager may elect such officers of the Company, including a President, one or more Vice Presidents, a Treasurer and a Secretary, and other subordinate or assistant officers, as they deem necessary or appropriate.

(a) Subject to the control of the Manager, the President shall be responsible for the day to day general supervision, direction and control of the business and affairs of the Company and shall have the general powers and duties of management, and shall have such other powers and duties as may be prescribed by the Manager or this Operating Agreement, which powers shall include but shall not be limited to the following actions which shall not require the consent of the Manager: (i) to employ accountants, legal counsel, or other professionals and experts to perform services for the Company and to compensate them from Company funds; (ii) to establish the salaries and terms of employment of employees and officers other than the President and to hire and fire all such employees; and (iii) to enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve.

(b) In the absence or upon the disability of the President, the Vice-Presidents, in order of their rank as fixed by the Manager, or if not ranked, the Vice President or Vice Presidents designated by the Manager, shall perform all the duties of the President, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the President. The Vice Presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the President, the Manager or this Operating Agreement.

(c) The Secretary shall keep, or cause to be kept, a book of minutes at the principal office or such other place as the Manager may order, of all meetings of Manager and Members, with the time and place of holding, whether regular or special, and if special, how authorized, the notice thereof given, the names of those present at Manager' meetings, the Company Interests present or represented at Members' meetings and the proceedings thereof. The Secretary shall keep, or cause to be kept, at the principal office a transfer record showing the names of the Members and their addresses and the Company Interests held by each. The Secretary shall give, or cause to be given, notice of all the meetings of the Members and of the Manager required by this Agreement or by law to be given, and shall have such other powers and perform such other duties as may be prescribed by the President, the Manager or this Operating Agreement.

(d) The Treasurer shall keep and maintain or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the Company, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, and capital accounts. The books of account shall at all reasonable times be open to inspection by any Manager or Member. The Treasurer shall deposit all monies and other valuables in the name and to the credit of the Company with such depositories as may be designated by the Manager. The Treasurer also shall disburse the funds of the Company as may be ordered by the President or the Manager, shall render to the President and the Manager, whenever they may request, an account of all of the transactions as Treasurer and of the financial condition of the Company, and shall have such other powers and perform such other duties as may be prescribed by President, the Manager or this Agreement.

(e) The officers of the company shall be elected annually by the Manager. Each officer shall hold office until a successor shall have been duly elected and qualified or until the officer's death or until the officer shall resign or shall have been removed in the manner hereinafter provided, whichever occurs first. One person may hold more than one office. Except for the President, officers need not be Manager.

(f) Any officer may be removed by the Manager, either with or without cause, at any regular or special meeting, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Any officer may resign at any time upon written notice to the Company.

(g) A vacancy in the office of any officer, whether as a result of death, resignation, removal, disqualification or any other cause, may be filled by the Manager at any regular or special meeting.

(h) Officers of the Company shall receive such salaries or other compensation as shall be determined by resolution of the Manager, adopted in advance or after the rendering of the services, or by employment contracts entered into by the Manager. The power to establish salaries of officers, other than that of the President, may be delegated by resolution to the President. Election or appointment of any officer or any other employee shall not of itself create contract rights or any rights to compensation hereunder.

## ARTICLE VIII

### RIGHTS AND OBLIGATIONS OF MEMBERS

8.01 Limitation of Liability. The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debt, obligation and liability of the Company and not of the Member or the Manager. Each Member's liability shall be limited as set forth in this Operating Agreement, the Delaware Act and other applicable law.

8.02 Certificates of Membership Interest. A Member's Membership Interest in the Company will be evidenced by a Certificate of Membership Interest issued by the Company ("Membership Certificate"), which interest shall not be transferable except as set forth herein. However, a Member shall have the right to pledge his or its Economic Interest as set forth in this Operating Agreement and in the Delaware Act.

8.03 No Priority and Return of Capital. Except as provided for above in paragraph 5.03, no Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Profits, Net Losses or Company distributions; provided that this Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company within the limitations of the Articles of Organization.

8.04 Liability of a Member or Manager for Improper Distribution. A Member or Manager who votes for, approves or consents to any distribution that violates any provision of this Operating Agreement or the Delaware Act shall be liable to the Company jointly, but not severally, with all other Members or Manager so voting, approving or consenting, for the amount of the distribution that exceeds what could have been distributed without violating the Delaware Act or this Operating Agreement, unless the Member or Manager based their determination

that the distribution did not violate such provisions on financial statements prepared on the basis of accounting practices and principals that are reasonable under the circumstances or any other valuation method that is reasonable under the circumstances, and the Member or Manager had no actual knowledge that rendered their reliance on such statements, valuation or method to be unwarranted.

8.05 Members Not Authorized. Unless a Member is also a Manager, a Member is not authorized to execute any document to bind the Company or to manage the Company in any respect, except upon express authorization by the Manager.

## ARTICLE IX

## MEETINGS OF MEMBERS

9.01  Special Meetings. Special meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by any one of the Manager or by Members holding at least 20% of the Voting Interests.

9.02  Place of Meetings/Telephonic Meetings.  The Members may designate any place within the State of Delaware as the place of meeting for any meeting of the Members. Meetings may also take place telephonically.

9.03  Notice of Meetings. Except as provided in Section 9.10, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than 10 nor more than 50 days before the date of the meeting, either personally or by mail, by or at the direction of the Manager or Person calling the meeting, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered 3 calendar days after being deposited in the United States mail, addressed to the Member at its address as it appears on the books of the Company, with postage thereon prepaid.

9.04  Meeting of All Members. If all of the Members shall meet at any time and place, and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

9.05  Record Date. For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

9.06  Quorum. Members holding at least one-half of all Voting Interests, represented in person or by proxy, shall constitute a quorum at any meeting of Members. In the absence of a quorum at any such meeting, a majority of the Voting Interests so represented may adjourn the meeting for a period not to exceed 60 days.

9.07  Manner of Acting. If a quorum is present, the affirmative vote of Members holding a Majority Interest shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Delaware Act, by the Articles of Organization, or by this Operating Agreement.

9.08  Proxies. At all meetings of Members a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Manager of the Company before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

9.09  Action by Members Without a Meeting. Action required or permitted to be taken at a meeting of Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Member entitled to vote and delivered to the Manager of the Company for inclusion in the minutes or for filing with the Company records. Action taken under this Section is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date.

9.10  Waiver of Notice. When any notice is required to be given to any Member, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

## ARTICLE X

### TRANSFER

10.01  Status of Transferee. Any transferee acquiring a Membership Interest in a transaction pursuant to Article X hereof shall be deemed a Member under this Operating Agreement and shall be bound by the obligations of a Member hereunder, including the terms and conditions hereof relating to the future disposition of his, her or its Membership Interest. The transferee, upon transfer of the Membership Interest to the transferee, shall acknowledge in writing that he, she or it is bound by the terms and provisions of this Operating Agreement.

10.02  Membership Certificates as Collateral. Whenever the Company or any Member purchases a Membership Interest pursuant to this Operating Agreement, the withdrawing Member or his or her legal representatives (unless the Purchase Price is paid entirely in cash at the closing) shall maintain possession of the Membership Certificates representing such Membership Interest in accordance with the terms hereof until the entire Purchase Price shall have been paid. The Company or any Member who purchased such Membership Interest shall sign a pledge agreement granting a security interest in such Membership Interest to the withdrawing Member or the legal representatives of a deceased Member. While such Membership Interests are so pledged, the purchaser shall be entitled to all voting right, income and dividends with respect to such Membership Interest whether or not the Purchase Price has been paid in full provided there is not a default by such purchaser under the terms of any note delivered in payment of the Purchase Price.

## ARTICLE XI

### DISSOLUTION AND TERMINATION

11.01  Dissolution.

(a) The Company shall be dissolved upon the occurrence of any of the following events:

(i) by the written agreement of 80% of the Voting Interests; or

(b) Notwithstanding anything to the contrary in this Operating Agreement, if a Member or Members owning Membership Interests which in the aggregate constitute not less than 90% of the Voting Interests to dissolve the Company at a meeting of the Company, then all of the Members shall agree in writing to dissolve the Company as soon as possible thereafter.

(c) As soon as possible following the occurrence of any of the events specified in this Section effecting the dissolution of the Company, the appropriate representative of the Company shall execute the Articles of Dissolution in such form as shall be prescribed by the State of Delaware shall file the same with the Department of State.

(d) If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his or her person or his or her property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling his or her estate or administering his or her property.

11.02  Effect of Filing of Articles of Dissolution. Upon the filing of the Articles of Dissolution, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business.

11.03  Winding Up, Liquidation and Distribution of Assets.

(a) Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Manager shall immediately proceed to wind up the affairs of the Company.

(b) If the Company is dissolved and its affairs are to be wound up, the Manager shall:

(i)  Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Manager may determine to distribute any assets to the Members in kind),

(ii) Pay or provide for the payment of all of the Company's liabilities and liquidating expenses and obligations. If assets are to be distributed to the Members in kind, Members shall accept the assets subject to their proportionate Membership Interest share of the Company's losses,

(iii) Pay pro rata any loans or advances that may have been made by any of the Members to the Company,

(iv) Allocate any profit or loss resulting from such sales to the Members' Capital Accounts,

(v) Establish such Reserves as may be reasonably necessary to provide for contingent liabilities of the Company,

(vi) Distribute the remaining assets in the following order:

(A) If any assets of the Company are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by independent appraisal or by agreement of the Members. Such assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the Capital Accounts of the Members and Economic Interest Owners shall be adjusted pursuant to the provisions of Section 5.03 of this Operating Agreement to reflect such deemed sale.

(B) The positive balance (if any) of each Member's and Economic Interest Owner's Capital Account (as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs) shall be distributed to the Members, either in cash or in kind, as determined by the Manager, with any assets distributed in kind being valued for this purpose at their fair market value as determined pursuant to Section 11.03(b)(i). Any such distributions to the Members in respect of their Capital Accounts shall be made in accordance with the time requirements set forth in Section 1.704-1 (b)(2)(ii)(b)(2) of the Treasury Regulations.

(C) Notwithstanding anything to the contrary in this Operating Agreement, upon a liquidation, if any Member has a Deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(D) A reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the discharge of the liabilities to creditors so as to enable the Manager to minimize the normal losses attendant upon a liquidation. Upon completion of

the winding up, liquidation and distribution of the assets, the Company shall be deemed terminated.

(E) The Manager shall comply with any applicable requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

## ARTICLE XII

### DISPUTE RESOLUTION

Any controversy or claim arising out of or relating to this Operating Agreement or any breach thereof shall be settled by submitting the controversy to mediation before an appropriate mediation center or alternative dispute resolution center. In the event the parties are not able to resolve their differences through such mediation within 30 days, unless extended by agreement of the parties, any such claim or controversy shall be settled by arbitration in Delaware, Delaware before the American Arbitration Association in accordance with the rules then in effect. Such arbitration shall be binding, and judgment upon the award rendered shall be entered in any court having jurisdiction thereof.

## ARTICLE XIII

### AMENDMENTS

This Operating Agreement may not be amended except by an affirmative vote of the holders of a Majority Interest.

## ARTICLE XIV

### MISCELLANEOUS PROVISIONS

14.01 Notices. Any notice, demand, or communication required or permitted to be given by any provision of this Operating Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the party or to an executive officer or manager of the party to whom the same is directed or, if sent by registered or certified mail, postage and charges prepaid, addressed to the Member's address, as appropriate, which is set forth in this Operating Agreement. Except as otherwise provided herein, any such notice shall be deemed to be given three business days after the date on which the same was deposited in the United States mail, addressed and sent as aforesaid, or upon delivery if delivered personally.

14.02 Books of Account and Records. Proper and complete records and books of account shall be kept or shall be caused to be kept by the Manager in which shall be entered fully and accurately all transactions and other matters relating to the Company's business in such detail and completeness as is customary and usual for businesses of the type engaged in by the Company. Such books and records shall be at all times maintained at the principal executive office of the Company and shall be open to the reasonable inspection and examination of the Members or their duly authorized representatives during reasonable business hours.

14.03 Application of Delaware Law. This Operating Agreement and the application or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Delaware, and specifically the Delaware Act.

14.04 Waiver of Action for Partition. Each Member and Economic Interest Owner irrevocably waives during the term of the Company any right that he, she or it may have to maintain any action for partition with respect to the property of the Company.

14.05 Execution of Additional Instruments. Each Member hereby agrees to execute such other and further statements of interests and holdings, designations, powers of attorney and other instruments necessary to comply with any laws, rules or regulations.

14.06 Construction. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

14.07 Headings. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Operating Agreement or any provision hereof.

14.08 Waivers. The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

14.09 Rights and Remedies Cumulative. The rights and remedies provided by this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

14.10 Severability. If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

14.11 Heirs, Successors and Assigns. Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors and assigns.

14.12 Creditors. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

14.13 Entire Agreement. This Operating Agreement sets forth the entire agreement between the parties and supercedes all prior agreements and understandings between the parties.

14.14 Investment Representations. The undersigned Members understand (1) that the Membership Interests evidenced by this Operating Agreement have not been registered under the Securities Act of 1933, the Delaware Securities Act or any other state securities laws (the "Securities Acts") because the Company is issuing these Membership Interests in reliance upon the exemptions from the registration requirements of the Securities Acts providing for issuance of securities not involving a public offering, (2) that the Company has relied upon the fact that the Membership Interests are to be held by each Member for investment, and (3) that exemption from registrations under the Securities Acts would not be available if the Membership Interests were acquired by a Member with a view to distribution. Accordingly, each Member hereby confirms to the Company that such Member is acquiring the Membership Interests for such own Member's account, for investment and not with a view to the resale or distribution thereof.

## CERTIFICATE

The undersigned hereby agree, acknowledge and certify that the foregoing Operating Agreement constitutes the Operating Agreement of NLG, LLC adopted by the Members of the Company as of November 19, 2002.

FOUNDING MEMBER:

Chris Kosachuk

By: _____
Chris Kosachuk
Manager and President

EXHIBIT A

| Members | Economic Interest | Voting Interest |
|---|---|---|
| Chris Kosachuk | 1,000 Class A | 1,000 votes |
| 800 West Avenue, #631 | Interests | |
| Miami Beach, FL 33139 | | |

NOV. 20. 2002 12:17PM   PART'S INC.                                    NO. 7570   P. 2



# Delaware PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "NLG, LLC", FILED IN THIS OFFICE ON THE NINETEENTH DAY OF NOVEMBER, A.D. 2002, AT 9 O'CLOCK A.M.

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

3592957   8100

020713058

AUTHENTICATION: 2099035

DATE: 11-19-02

NOV. 20. 2002 12:10PM    PARCELS INC.

NO. 7570    P. 3

NOV. 19. 2002 4:05PM    PARCELS INC.

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 11/19/2002
020713058 - 3592957

## STATE OF DELAWARE
## LIMITED LIABILITY COMPANY
## CERTIFICATE OF FORMATION
## OF
## NLG, LLC

### First

The name of the limited liability company is NLG, LLC.

### Second

The address of its Registered Offices in the State of Delaware is 32

Loockerman Square, Suite 109, City of Dover, County of Kent 19904.

The registered agent at such address is First State Corporate Services,

Inc.

### Third

The limited liability company is to have perpetual existence.

In Witness Whereof, the undersigned have executed this Certificate of

Formation this 18th day of November 2002, AD.

By: _____

Chris Kosachuk
Authorized Person

# EXHIBIT D

AMENDED OPERATING AGREEMENT
OF
NLG, LLC
A DELAWARE LIMITED LIABILITY COMPANY

### ARTICLE I

### DEFINITIONS

The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein);

(a) "Articles of Organization" shall mean the Articles of Organization of NLG, LLC as filed with the Delaware Secretary of State on November 19, 2002, as the same may be amended or restated from time to time.

(b) "Capital Account" as of any given date shall mean the capital account to be established and maintained for each Member in accordance with Article 5.03.

(c) "Capital Contribution" shall mean any contribution to the capital of the Company in cash or property by a Member whenever made. "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to this Operating Agreement and Exhibit A.

(d) "Capital Interest" shall mean the proportion that a Member's Capital Contributions (adjusted for withdrawals) bears to the aggregate Capital Contributions of all Members.

(e) "Closing" shall mean a closing of the sale of interests in the Company at which time subscriptions will be accepted and investors will be admitted to the Company as Members.

(f) "Code" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal revenue laws.

(g) "Company" shall refer to NLG, LLC.

(h) "Deficit Capital Account" shall mean with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the taxable year.

(i) "Distributable Cash" means all cash, revenues and funds received by the Company from Company operations, less the sum of the following to the extent paid or set aside by the Company: (i) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders; (ii) all cash expenditures incurred incident to the normal operation of the Company's business; (iii) such Reserves as the Manager deem reasonably necessary to the proper operation of the Company's business.

(j) "Economic Interest" shall mean a Member's or Economic Interest Owner's share of one or more of the Company's net profits, net losses and distributions of the Company's assets pursuant to this Operating Agreement and the Delaware Act, as set forth in Exhibit A attached hereto, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to or otherwise participate in any decision of the Members or Manager.

(k) "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

(l) "Fiscal Year" shall mean the company's fiscal year, which shall be the calendar year.

(m) "Initial Closing Date" shall mean November 15, 2002, subject to extension at the discretion of the Company for up to 90 days, or such earlier date as the Company shall select.

(n) "Majority Interest" shall mean votes of the Members which taken together exceed 50% of the Voting Interests of all Members.

(o) "Manager" shall mean CHRIS KOSACHUK ("Kosachuk").

(p) "Member" shall mean each of the parties who executes a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become Members.

(q) "Membership Interest" shall mean a Member's interest in the Company.

(r) "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the accounting methods followed by the Company for income tax purposes.

(s) "Delaware Act" shall mean the Delaware Limited Liability Company Act, as amended from time to time.

(t) "Operating Agreement" shall mean this Operating Agreement as originally executed and as amended from time to time.

(u) "Persons" shall mean any individual or entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

(v) "Reserves" shall mean, with respect to any fiscal period, funds set aside or amounts allocated during such period to reserves which shall be maintained in amounts deemed sufficient by the Manager for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership, growth or operation of the Company's business.

(w) "Treasury Regulations" shall include proposed, temporary and final regulations promulgated under the Code in effect as of the date of filing the Articles of Organization and the corresponding sections of any regulations subsequently issued that amend or supersede such regulations.

(x) "Voting Interest" shall mean a Member's right to vote on, consent to or otherwise participate in any decision of the Members.

## ARTICLE II

## FORMATION OF COMPANY

2.01  Name. The name of the Company is NLG, LLC.

2.02  Formation. On November 19, 2002, the company was organized by executing and delivering the Certificate of Formation to the Secretary of State in accordance with and pursuant to the Delaware Act.

2.03  Principal Place of Business. The principal place of business of the Company within the State of Delaware shall be 32 Loockerman Square, Suite 109, Dover, DE 19904. The Company may locate its places of business and registered office at any other place or places as the Manager may from time to time deem advisable.

2.04  Registered Office and Registered Agent. The Company's initial registered office shall be 32 Loockerman Square, Suite 109, Dover, DE 19904, and its registered agent at such address shall be First State Corporate Services. The registered office and registered agent may be changed from time to time by filing the address of the new registered office and/or the name of the new registered agent with the Secretary of State pursuant to the Delaware Act.

2.05 Term. The Company shall be perpetual existence, unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the Delaware Act.

## ARTICLE III

### BUSINESS OF COMPANY

3.01 Permitted Businesses. The only business of the Company shall be:

(a) To invest in such financial endeavors the Manager deems desirable for the benefit of the Company;

(b) To accomplish any lawful business or purpose whatsoever and to engage in any lawful business, which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets; and

(c) To exercise all other powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the Delaware Act.

The Company shall engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

## ARTICLE IV

### NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are as set forth in Exhibit A.

## ARTICLE V

### CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

5.01 Capital Contributions.

(a) The founding Member of the Company is Chris Kosachuk ("Kosachuk"). Kosachuk has made a capital contribution of $1,000 and has been issued 1,000 Class A Membership Interests in the Company ("Class A Interests).

(b) The Company is hereby authorized to issue a minimum of 1 ranging to a maximum of 25 Units of Class A Interests. Each Unit shall consist of 100 Class A Interests. On the Initial Closing Date and at subsequent closings, subscriptions will be accepted and investors purchasing Units will be admitted to the Company as Members. Subsequent Closings shall occur at such time and in such order as is determined by the Company in its sole discretion. All units are issued at the sole discretion of the Manager.

(c) The Company is authorized to issue up to 5,000 Class A Membership Interests.

5.02 Nature of Contributions: No Member shall be required or obligated (a) to contribute any capital to the Company other than as provided in Section 5.01 or 5.02 hereof, or (b) to lend any funds to the Company. No interest shall be paid on any capital contributed to the Company and, except as otherwise provided herein, no Member may withdraw his Capital Contribution. None of the terms, covenants, obligations or rights contained in this Section is or shall be deemed to be for the benefit of any person or entity other than the Members and the Company, and no such third person shall under any circumstances have any right to compel any actions or payments by the Manager and/or the Members.

5.03 Capital Accounts.

(a) A separate Capital Account will be maintained for each Member. Each Member's Capital Account will be increased by (1) the amount of money, if any, contributed by such Member to the Company; (2) the fair market value of property contributed by such Member to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to); and (3) allocations to such Member of Net Profits. Each Member's Capital Account will be decreased by (1) the amount of money distributed to such Member by the Company; (2) the fair market value of property distributed to such Member by the Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to); and (3) allocations to the account of such Member of Company losses and deductions as set forth in the Treasury Regulations, taking into account adjustments to reflect book value.

(b) The manner in which Capital Accounts are to be maintained pursuant to this Section 5.03 is intended to comply with the requirements of Section 704(b) of the Code and the Treasury Regulations promulgated thereunder.

(c) Upon liquidation of the Company (or any Member's Membership Interest), liquidating distributions will be made in accordance with the positive Capital Account balances of the Members, as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs. Liquidating distributions may be made in cash or property.

(d) Except as otherwise required in the Delaware Act (and subject to Sections 5.01 and 5.02), no Member shall have any liability to restore all or any portion of a deficit balance in such Member's Capital Account.

## ARTICLE VI

### ALLOCATIONS INCOME TAX. DISTRIBUTIONS. ELECTIONS AND REPORTS

6.01 Allocations of Profits and Losses from Operations. The Net Profits and Net Losses of the Company for each fiscal year will be allocated to the Members in proportion to the number of Membership Interests held by the Member. Each Class A Interest shall have equal rights to allocations of profits and losses .

6.02 Distributions. Except as provided in Section 5.03(c), all distributions of profits shall be made to the Members in proportion to the number of Membership Interests held by the Member. Each Class A Interest shall have equal rights to allocations of distributions.

6.03 Limitation Upon Distributions. No distribution shall be declared and paid unless, after the distribution is made, the assets of the Company are in excess of all liabilities of the Company, except liabilities to Members on account of their contributions.

6.04 Accounting Principles. The profits and losses of the Company shall be determined in accordance with accounting principles applied on a consistent basis. It is intended that the Company will elect those accounting methods which provide the Company with the greatest tax benefits. Initially, the cash method of accounting shall be used by the Company.

6.05 Loans to Company. Nothing in this Operating Agreement shall prevent any Member from making secured or unsecured loans to the Company by agreement with the Company, all of which loans shall be treated by the Company in the same manner as loans from independent third parties, provided, however, that all such loans fully comply with the limitations set forth in the Certificate of Formation.

6.06 Records. At the expense of the Company, the Manager shall maintain records and accounts of all operations and expenditures of the Company. At a minimum the Company shall keep at its principal place of business the following records:

(a) A current list of the full name and last known business, residence, or mailing address of each Member and the Manager, both past and present;

(b) A copy of the Certificate of Formation of the Company and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(c) Copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years or if such returns or statements were not prepared for any reason, copies of the information and statements necessary to enable the Members to prepare their own federal, state and local tax returns for such period;

(d) Copies of the Company's past and present Operating Agreement and amendments;

(e) Copies of any financial statements of the Company for the three most recent years;

(f) Minutes of every annual and special meeting;

(g) Any written consents obtained from Members for actions taken by Members without a meeting;

(h) A current statement of the capital contributions made by each Member specifying the amount of cash and the agreed value of other property received by the Company and the agreed value of services as a capital contribution that each Member has contributed to the Company;

(i) A statement of the cash, property and services that each Member has agreed to contribute or render to the Company in the future and of the principal balance outstanding under any promissory note payable in respect of a contribution, and of the amount of the capital contribution with which each such Member shall be credited upon receipt of such cash, property or services or any part thereof;

(j) Documents or other writings required to be made available to Members by this Operating Agreement.

6.07 Returns And Other Elections. For the sole purpose of representing the Company for determination of federal tax treatment of Company items under the Code, CHRIS KOSACHUK shall be designated as the Tax Matters Manager. If such designation shall be found to be contrary to the Regulations promulgated by the Treasury Department, such Regulations shall control the designation of the Tax Matters Manager. The Tax Matters Manager shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year.

## ARTICLE VII

### RIGHTS AND DUTIES OF THE MANAGER

7.01 Identity and Replacement. The Company shall be managed by one Manager, CHRIS KOSACHUK. The Manager cannot be removed or replaced.

7.02 Management. The business and affairs of the Company shall be managed by its Manager who shall have the authority, from time to time, to appoint such officers of the Company as they deem appropriate. The Manager shall direct, manage and control the business of the Company to the best of his ability. Except for situations in which the approval of the Members is expressly required by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.

7.03 Powers of the Manager. Without limiting the generality of Section 7.02, the Manager shall have power and authority, on behalf of the Company:

(a) To borrow money for the Company from banks, other lending institutions, Members, or affiliates of the Manager or Members on such terms as the Manager deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of the Company to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except by the Manager, or to the extent permitted under the Delaware Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by the Manager;

(b) To purchase liability and other insurance to protect the Company's property and business;

(c) To hold and own any Company real and/or personal properties in the name of the Company;

(d) To invest any Company funds;

(e) To guaranty the obligations of entities in which the Company is a shareholder, member or partner, and other entities which in the opinion of the Manager will be in the interest of the Company or its Members;

(f) To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; leases, partnership agreements, guarantees, operating agreements of other limited liability companies; and any other instruments or documents necessary in the opinion of the Manager, to the business of the Company;

(g) To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(h) To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve; and

(i) To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

Unless authorized to do so by this Operating Agreement or by the Manager, no Member, attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose. No Member shall have any power or authority to bind the Company unless the Member has been authorized by the Manager to act as an agent of the Company in accordance with the previous sentence.

7.04 Liability for Certain Acts. The Manager shall perform their duties as Manager in good faith, in a manner they reasonably believe to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager who so performs the duties as Manager shall not have any liability by reason of being or having been a Manager of the Company. A Manager does not, in any way, guarantee the return of the Members' Capital Contributions or a profit for the Members from the operations of the Company. The Manager and Members shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct or a wrongful taking by the Manager or Member.

7.05 Manager Has No Exclusive Duty to Company. A Manager shall not be required to manage the Company as his sole and exclusive function and the Manager may have other business interests and may engage in other activities in addition to those relating to the Company. The Manager shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture.

7.06 Bank Accounts. The Manager may from time to time open bank accounts in the name of the Company, and any one of the Manager or a designated agent may be the sole signatory thereon.

7.07 Indemnity of the Manager and Members. Subject to the limitations of Section 7.04 the Company shall indemnify the Manager and any Member for judgments, settlements, penalties, fines or expenses incurred in a proceeding to which such person is a party because he or it is or was a Member or Manager, and shall indemnify such Member or Manager for advancement of expenses, including costs of defense, prior to final disposition of such proceeding.

7.08 Resignation. The Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

7.09 List of Members. Upon written request of any Member, the Manager shall provide a list showing the names, addresses and Membership Interests of all Members.

7.10 Company Books. The Manager shall maintain and preserve, during the term of the Company, all accounts, books, and other relevant Company documents. Upon reasonable request, each Member shall have the right, during ordinary business hours, to inspect and copy such Company documents at the requesting Member's expense.

7.11 Delegation of Duties. The Manager may elect such officers of the Company, including a President, one or more Vice Presidents, a Treasurer and a Secretary, and other subordinate or assistant officers, as they deem necessary or appropriate.

(a) Subject to the control of the Manager, the President shall be responsible for the day to day general supervision, direction and control of the business and affairs of the Company and shall have the general powers and duties of management, and shall have such other powers and duties as may be prescribed by the Manager or this Operating Agreement, which powers shall include but shall not be limited to the following actions which shall not require the consent of the Manager: (i) to employ accountants, legal counsel, or other professionals and experts to perform services for the Company and to compensate them from Company funds; (ii) to establish the salaries and terms of employment of employees and officers other than the President and to hire and fire all such employees; and (iii) to enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve.

(b) In the absence or upon the disability of the President, the Vice-Presidents, in order of their rank as fixed by the Manager, or if not ranked, the Vice President or Vice Presidents designated by the Manager, shall perform all the duties of the President, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the President. The Vice Presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the President, the Manager or this Operating Agreement.

(c) The Secretary shall keep, or cause to be kept, a book of minutes at the principal office or such other place as the Manager may order, of all meetings of Manager and Members, with the time and place of holding, whether regular or special, and if special, how authorized, the notice thereof given, the names of those present at Manager' meetings, the Company Interests present or represented at Members' meetings and the proceedings thereof. The Secretary shall keep, or cause to be kept, at the principal office a transfer record showing the names of the Members and their addresses and the Company Interests held by each. The Secretary shall give, or cause to be given, notice of all the meetings of the Members and of the Manager required by this Agreement or by law to be given, and shall have such other powers and perform such other duties as may be prescribed by the President, the Manager or this Operating Agreement.

7.06 Bank Accounts. The Manager may from time to time open bank accounts in the name of the Company, and any one of the Manager or a designated agent may be the sole signatory thereon.

7.07 Indemnity of the Manager and Members. Subject to the limitations of Section 7.04 the Company shall indemnify the Manager and any Member for judgments, settlements, penalties, fines or expenses incurred in a proceeding to which such person is a party because he or it is or was a Member or Manager, and shall indemnify such Member or Manager for advancement of expenses, including costs of defense, prior to final disposition of such proceeding.

7.08 Resignation. The Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

7.09 List of Members. Upon written request of any Member, the Manager shall provide a list showing the names, addresses and Membership Interests of all Members.

7.10 Company Books. The Manager shall maintain and preserve, during the term of the Company, all accounts, books, and other relevant Company documents. Upon reasonable request, each Member shall have the right, during ordinary business hours, to inspect and copy such Company documents at the requesting Member's expense.

7.11 Delegation of Duties. The Manager may elect such officers of the Company, including a President, one or more Vice Presidents, a Treasurer and a Secretary, and other subordinate or assistant officers, as they deem necessary or appropriate.

(a) Subject to the control of the Manager, the President shall be responsible for the day to day general supervision, direction and control of the business and affairs of the Company and shall have the general powers and duties of management, and shall have such other powers and duties as may be prescribed by the Manager or this Operating Agreement, which powers shall include but shall not be limited to the following actions which shall not require the consent of the Manager: (i) to employ accountants, legal counsel, or other professionals and experts to perform services for the Company and to compensate them from Company funds; (ii) to establish the salaries and terms of employment of employees and officers other than the President and to hire and fire all such employees; and (iii) to enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve.

(b) In the absence or upon the disability of the President, the Vice-Presidents, in order of their rank as fixed by the Manager, or if not ranked, the Vice President or Vice Presidents designated by the Manager, shall perform all the duties of the President, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the President. The Vice Presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the President, the Manager or this Operating Agreement.

(c) The Secretary shall keep, or cause to be kept, a book of minutes at the principal office or such other place as the Manager may order, of all meetings of Manager and Members, with the time and place of holding, whether regular or special, and if special, how authorized, the notice thereof given, the names of those present at Manager' meetings, the Company Interests present or represented at Members' meetings and the proceedings thereof. The Secretary shall keep, or cause to be kept, at the principal office a transfer record showing the names of the Members and their addresses and the Company Interests held by each. The Secretary shall give, or cause to be given, notice of all the meetings of the Members and of the Manager required by this Agreement or by law to be given, and shall have such other powers and perform such other duties as may be prescribed by the President, the Manager or this Operating Agreement.

(d) The Treasurer shall keep and maintain or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the Company, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, and capital accounts. The books of account shall at all reasonable times be open to inspection by any Manager or Member. The Treasurer shall deposit all monies and other valuables in the name and to the credit of the Company with such depositories as may be designated by the Manager. The Treasurer also shall disburse the funds of the Company as may be ordered by the President or the Manager, shall render to the President and the Manager, whenever they may request, an account of all of the transactions as Treasurer and of the financial condition of the Company, and shall have such other powers and perform such other duties as may be prescribed by President, the Manager or this Agreement.

(e) The officers of the company shall be elected annually by the Manager. Each officer shall hold office until a successor shall have been duly elected and qualified or until the officer's death or until the officer shall resign or shall have been removed in the manner hereinafter provided, whichever occurs first. One person may hold more than one office. Except for the President, officers need not be Manager.

(f) Any officer may be removed by the Manager, either with or without cause, at any regular or special meeting, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Any officer may resign at any time upon written notice to the Company.

(g) A vacancy in the office of any officer, whether as a result of death, resignation, removal, disqualification or any other cause, may be filled by the Manager at any regular or special meeting.

(h) Officers of the Company shall receive such salaries or other compensation as shall be determined by resolution of the Manager, adopted in advance or after the rendering of the services, or by employment contracts entered into by the Manager. The power to establish salaries of officers, other than that of the President, may be delegated by resolution to the President. Election or appointment of any officer or any other employee shall not of itself create contract rights or any rights to compensation hereunder.

## ARTICLE VIII

### RIGHTS AND OBLIGATIONS OF MEMBERS

8.01 Limitation of Liability. The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debt, obligation and liability of the Company and not of the Member or the Manager. Each Member's liability shall be limited as set forth in this Operating Agreement, the Delaware Act and other applicable law.

8.02 Certificates of Membership Interest. A Member's Membership Interest in the Company will be evidenced by a Certificate of Membership Interest issued by the Company ("Membership Certificate"), which interest shall not be transferable except as set forth herein. However, a Member shall have the right to pledge his or its Economic Interest as set forth in this Operating Agreement and in the Delaware Act.

8.03 No Priority and Return of Capital. Except as provided for above in paragraph 5.03, no Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Profits, Net Losses or Company distributions; provided that this Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company within the limitations of the Articles of Organization.

8.04 Liability of a Member or Manager for Improper Distribution. A Member or Manager who votes for, approves or consents to any distribution that violates any provision of this Operating Agreement or the Delaware Act shall be liable to the Company jointly, but not severally, with all other Members or Manager so voting, approving or consenting, for the amount of the distribution that exceeds what could have been distributed without violating the Delaware Act or this Operating Agreement, unless the Member or Manager based their determination that the distribution did not violate such provisions on financial statements prepared on the basis of accounting

practices and principals that are reasonable under the circumstances or any other valuation method that is reasonable under the circumstances, and the Member or Manager had no actual knowledge that rendered their reliance on such statements, valuation or method to be unwarranted.

8.05 Members Not Authorized. Unless a Member is also a Manager, a Member is not authorized to execute any document to bind the Company or to manage the Company in any respect, except upon express authorization by the Manager.

### ARTICLE IX

### MEETINGS OF MEMBERS

9.01 Special Meetings. Special meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by any one of the Manager or by Members holding at least 20% of the Voting Interests.

9.02 Place of Meetings/Telephonic Meetings. The Members may designate any place within the State of Delaware as the place of meeting for any meeting of the Members. Meetings may also take place telephonically.

9.03 Notice of Meetings. Except as provided in Section 9.10, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than 10 nor more than 50 days before the date of the meeting, either personally or by mail, by or at the direction of the Manager or Person calling the meeting, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered 3 calendar days after being deposited in the United States mail, addressed to the Member at its address as it appears on the books of the Company, with postage thereon prepaid.

9.04 Meeting of All Members. If all of the Members shall meet at any time and place, and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

9.05 Record Date. For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

9.06 Quorum. Members holding at least one-half of all Voting Interests, represented in person or by proxy, shall constitute a quorum at any meeting of Members. In the absence of a quorum at any such meeting, a majority of the Voting Interests so represented may adjourn the meeting for a period not to exceed 60 days.

9.07 Manner of Acting. If a quorum is present, the affirmative vote of Members holding a Majority Interest shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Delaware Act, by the Articles of Organization, or by this Operating Agreement.

9.08 Proxies. At all meetings of Members a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Manager of the Company before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

9.09 Action by Members Without a Meeting. Action required or permitted to be taken at a meeting of Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Member entitled to vote and delivered to the Manager of the Company for inclusion in the minutes or for filing with the Company records. Action taken under this Section is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date.

9.10  Waiver of Notice.  When any notice is required to be given to any Member, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

## ARTICLE X

### TRANSFER

10.01  Status of Transferee.  Any transferee acquiring a Membership Interest in a transaction pursuant to Article X hereof shall be deemed a Member under this Operating Agreement and shall be bound by the obligations of a Member hereunder, including the terms and conditions hereof relating to the future disposition of his, her or its Membership Interest.  The transferee, upon transfer of the Membership Interest to the transferee, shall acknowledge in writing that he, she or it is bound by the terms and provisions of this Operating Agreement.  Any transfer of units must be approved in writing by the Manager who has complete discretion to accept or reject the transfer of units.

10.02  Membership Certificates as Collateral.  Whenever the Company or any Member purchases a Membership Interest pursuant to this Operating Agreement, the withdrawing Member or his or her legal representatives (unless the Purchase Price is paid entirely in cash at the closing) shall maintain possession of the Membership Certificates representing such Membership Interest in accordance with the terms hereof until the entire Purchase Price shall have been paid.  The Company or any Member who purchased such Membership Interest shall sign a pledge agreement granting a security interest in such Membership Interest to the withdrawing Member or the legal representatives of a deceased Member.  While such Membership Interests are so pledged, the purchaser shall be entitled to all voting right, income and dividends with respect to such Membership Interest whether or not the Purchase Price has been paid in full provided there is not a default by such purchaser under the terms of any note delivered in payment of the Purchase Price.

## ARTICLE XI

### DISSOLUTION AND TERMINATION

11 .01  Dissolution.

(a)  The Company shall be dissolved upon the occurrence of any of the following events:

(i)  by the written agreement of 80% of the Voting Interests; or

(b)  Notwithstanding anything to the contrary in this Operating Agreement, if a Member or Members owning Membership Interests which in the aggregate constitute not less than 90% of the Voting Interests to dissolve the Company at a meeting of the Company, then all of the Members shall agree in writing to dissolve the Company as soon as possible thereafter.

(c)  As soon as possible following the occurrence of any of the events specified in this Section effecting the dissolution of the Company, the appropriate representative of the Company shall execute the Articles of Dissolution in such form as shall be prescribed by the State of Delaware shall file the same with the Department of State.

(d)  If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his or her person or his or her property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling his or her estate or administering his or her property.

11.02  Effect of Filing of Articles of Dissolution.  Upon the filing of the Articles of Dissolution, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business.

the winding up, liquidation and distribution of the assets, the Company shall be deemed terminated.

(E) The Manager shall comply with any applicable requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

### ARTICLE XII

### DISPUTE RESOLUTION

Any controversy or claim arising out of or relating to this Operating Agreement or any breach thereof shall be settled by submitting the controversy to mediation before an appropriate mediation center or alternative dispute resolution center. In the event the parties are not able to resolve their differences through such mediation within 30 days, unless extended by agreement of the parties, any such claim or controversy shall be settled by arbitration in Delaware, Delaware before the American Arbitration Association in accordance with the rules then in effect. Such arbitration shall be binding, and judgment upon the award rendered shall be entered in any court having jurisdiction thereof.

### ARTICLE XIII

### AMENDMENTS

This Operating Agreement may not be amended except by an affirmative vote of the holders of a Majority Interest.

### ARTICLE XIV

### MISCELLANEOUS PROVISIONS

14.01 Notices. Any notice, demand, or communication required or permitted to be given by any provision of this Operating Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the party or to an executive officer or manager of the party to whom the same is directed or, if sent by registered or certified mail, postage and charges prepaid, addressed to the Member's address, as appropriate, which is set forth in this Operating Agreement. Except as otherwise provided herein, any such notice shall be deemed to be given three business days after the date on which the same was deposited in the United States mail, addressed and sent as aforesaid, or upon delivery if delivered personally.

14.02 Books of Account and Records. Proper and complete records and books of account shall be kept or shall be caused to be kept by the Manager in which shall be entered fully and accurately all transactions and other matters relating to the Company's business in such detail and completeness as is customary and usual for businesses of the type engaged in by the Company. Such books and records shall be at all times maintained at the principal executive office of the Company and shall be open to the reasonable inspection and examination of the Members or their duly authorized representatives during reasonable business hours.

14.03 Application of Delaware Law. This Operating Agreement and the application or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Delaware, and specifically the Delaware Act.

14.04 Waiver of Action for Partition. Each Member and Economic Interest Owner irrevocably waives during the term of the Company any right that he, she or it may have to maintain any action for partition with respect to the property of the Company.

11.03  Winding Up, Liquidation and Distribution of Assets.

(a) Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Manager shall immediately proceed to wind up the affairs of the Company.

(b) If the Company is dissolved and its affairs are to be wound up, the Manager shall:

(i) Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Manager may determine to distribute any assets to the Members in kind),

(ii) Pay or provide for the payment of all of the Company's liabilities and liquidating expenses and obligations. If assets are to be distributed to the Members in kind, Members shall accept the assets subject to their proportionate Membership Interest share of the Company's losses,

(iii) Pay pro rata any loans or advances that may have been made by any of the Members to the Company,

(iv) Allocate any profit or loss resulting from such sales to the Members' Capital Accounts,

(v) Establish such Reserves as may be reasonably necessary to provide for contingent liabilities of the Company,

(vi) Distribute the remaining assets in the following order:

(A) If any assets of the Company are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by independent appraisal or by agreement of the Members. Such assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the Capital Accounts of the Members and Economic Interest Owners shall be adjusted pursuant to the provisions of Section 5.03 of this Operating Agreement to reflect such deemed sale.

(B) The positive balance (if any) of each Member's and Economic Interest Owner's Capital Account (as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs) shall be distributed to the Members, either in cash or in kind, as determined by the Manager, with any assets distributed in kind being valued for this purpose at their fair market value as determined pursuant to Section 11.03(b)(i). Any such distributions to the Members in respect of their Capital Accounts shall be made in accordance with the time requirements set forth in Section 1.704-1 (b)(2)(ii)(b)(2) of the Treasury Regulations.

(C) Notwithstanding anything to the contrary in this Operating Agreement, upon a liquidation, if any Member has a Deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(D) A reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the discharge of the liabilities to creditors so as to enable the Manager to minimize the normal losses attendant upon a liquidation. Upon completion of

14.05 Execution of Additional Instruments. Each Member hereby agrees to execute such other and further statements of interests and holdings, designations, powers of attorney and other instruments necessary to comply with any laws, rules or regulations.

14.06 Construction. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

14.07 Headings. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Operating Agreement or any provision hereof.

14.08 Waivers. The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

14.09 Rights and Remedies Cumulative. The rights and remedies provided by this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

14.10 Severability. If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

14.11 Heirs, Successors and Assigns. Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors and assigns.

14.12 Creditors. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

14.13 Entire Agreement. This Operating Agreement sets forth the entire agreement between the parties and supercedes all prior agreements and understandings between the parties.

14.14 Investment Representations. The undersigned Members understand (1) that the Membership Interests evidenced by this Operating Agreement have not been registered under the Securities Act of 1933, the Delaware Securities Act or any other state securities laws (the "Securities Acts") because the Company is issuing these Membership Interests in reliance upon the exemptions from the registration requirements of the Securities Acts providing for issuance of securities not involving a public offering, (2) that the Company has relied upon the fact that the Membership Interests are to be held by each Member for investment, and (3) that exemption from registrations under the Securities Acts would not be available if the Membership Interests were acquired by a Member with a view to distribution. Accordingly, each Member hereby confirms to the Company that such Member is acquiring the Membership Interests for such own Member's account, for investment and not with a view to the resale or distribution thereof.

## CERTIFICATE

The undersigned hereby agree, acknowledge and certify that the foregoing Operating Agreement constitutes the Operating Agreement of NLG, LLC adopted by the Members of the Company as of June 1, 2007.

Chris Kosachuk

By: _____

Chris Kosachuk
Manager and President

D-1

EXHIBIT A

| Members | Economic Interest | Voting Interest |
|---|---|---|
| Meridian Trust Company, LTD | 1,000 Class A Interests | 1,000 votes |

# EXHIBIT E

Christopher Kosachuk

Page 1

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

| | | |
|---|---|---|
| NLG, LLC | : | |
| | : | AUGUST TERM, |
| Plaintiff | : | 2012 |
| | : | |
| -VS- | : | |
| | : | |
| DARIUS MARZEC, MARZEC LAW FIRM, | : | |
| P.C., GUY A. DONATELLI, LAMB | : | |
| MCERLANE, P.C. and 9197-5904 | : | |
| QUEBEC, INC., | : | |
| | : | |
| Defendants | : | NO. 2514 |
| | : | |

\* \* \* \* \*

TUESDAY, FEBRUARY 25, 2014

\* \* \* \* \*

Oral deposition of CHRISTOPHER KOSACHUK, was
taken at the law offices of Edwin P. Smith, 1528
Walnut Street, Philadelphia, Pennsylvania, before
Renee Schumann, a Notary Public of the State of New
Jersey and Notary Public of the Commonwealth of
Pennsylvania, on the above date, commencing at 10:26
a.m.

STREHLOW & ASSOCIATES
COURT REPORTERS - VIDEOGRAPHERS
258 SOUTH STATE STREET
REAR BUILDING, FIRST FLOOR
NEWTOWN, PENNSYLVANIA 18940
WWW.STREHLOWCOURTREPORTING.COM
(215) 504-4622 FAX (215) 504-7155

Strehlow & Associates, Inc.
(215) 504-4622

Christopher Kosachuk

## Page 18

1 is something that's going to be relevant in
2 this case.
3        MR. SMITH: He's here as a corporate
4 designee as you requested. He's not here as a
5 litigant, as a personal litigant. He's not a
6 party here.
7        MS. MEYER: I'm having trouble with
8 where that's going to take you?
9        MR. TROY: Let me go to a different
10 area and do it this way.
11 BY MR. TROY:
12    Q.   What was -- what is NLG currently
13 today?
14    A.   It's a Delaware limited liability
15 company.
16    Q.   When was it formed?
17    A.   November of 2002.
18    Q.   Okay. And who formed it?
19    A.   I filed the certificate of formation.
20    Q.   And at the time you filed the
21 certificate of formation, were you the sole
22 shareholder of NLG?
23        MR. SMITH: Objection. LLCs don't have
24 shares.

## Page 19

1 BY MR. TROY:
2    Q.   Were you the only member?
3    A.   Yes.
4    Q.   And for what business purpose was it
5 formed?
6    A.   To acquire a house in Fisher Island,
7 Florida.
8    Q.   Who owned the house in Fisher Island,
9 Florida that you were seeking to acquire?
10    A.   The developer. Fisher Island Holdings,
11 I believe it was called or is called.
12    Q.   Have there ever been any other members
13 of NLG besides you since its formation?
14    A.   Yes.
15    Q.   Who are -- what other members have
16 there been since its formation?
17    A.   Meridian Trust Company Limited.
18    Q.   Any others?
19    A.   No.
20    Q.   Where is Meridian Trust Company Limited
21 registered?
22    A.   Nevis.
23    Q.   Who are the owners of Meridian Trust
24 Company Limited?

## Page 20

1    A.   I don't know.
2    Q.   How is it that Meridian Trust Company
3 Limited came to be a member of NLG?
4    A.   I transferred my units to them.
5    Q.   Why did you transfer your units to
6 them?
7        MR. SMITH: Objection as to --
8        MS. MEYER: Overruled.
9        THE WITNESS: Estate planning.
10 BY MR. TROY:
11    Q.   Okay. Your personal estate planning?
12    A.   No.
13    Q.   Whose estate planning?
14    A.   Family.
15    Q.   Okay. And when you say "family," who
16 in the family?
17    A.   Family.
18    Q.   It was estate planning for somebody,
19 Mr. Kosachuk, who?
20    A.   I'm sorry?
21    Q.   It was estate planning for some
22 individual, who?
23    A.   Family members.
24    Q.   Who?

## Page 21

1    A.   I don't recall exactly.
2    Q.   Who are the members of your -- what are
3 your parents' names?
4    A.   Walter and Carol.
5    Q.   Where do they reside?
6    A.   West Chester.
7    Q.   Same address as you?
8    A.   Yes.
9    Q.   Do you have any brothers or sisters?
10    A.   Yes.
11    Q.   And what are their names?
12        MR. SMITH: Objection.
13        We're so far afield now.
14        MR. TROY: I'm forced to by the lack of
15 answers.
16        MS. MEYER: The witness doesn't
17 remember what family or members -- what member
18 this estate planning involved. So if he can
19 identify the members of his family --
20        MR. SMITH: I don't know how that could
21 lead to admissible evidence in our Dragonetti
22 claim.
23        MR. TROY: The claim is that NLG was
24 something of tremendous value and that value

6  (Pages 18 to 21)

Christopher Kosachuk

Page 22

1   was harmed here in this case.
2       MR. SMITH: Our claim is it was for
3   specific things that were disposed of. Our
4   claim is for attorneys fees that resulted in
5   the reversal of those activities, my people
6   on -- or taking control of NLG. They
7   disposed -- they satisfied certain mortgages
8   and judgments in Florida. We were able to
9   reverse that and our claim is for the
10  attorneys fees and punitive damages.
11      MS. MEYER: The entire claim is for
12  under a $100,000, it's not a claim for damages
13  to NLG other than the discrete attorneys fees?
14      MR. SMITH: Correct.
15      MR. TROY: It was in the complaint,
16  damages to NLG.
17      MS. MEYER: That paragraph has been
18  withdrawn.
19      MR. TROY: The reputation part, but NLG
20  is the main plaintiff in this case and I think
21  it's a completely fair question for me to
22  learn about NLG.
23      I have just been told that this
24  gentleman is the corporate designee of NLG

Page 23

1   even though all of his interest in NLG has
2   been transferred to some other entity for
3   which he does not tell me who the owners of
4   that entity are, even though it is part of a
5   family estate plan.
6       MR. SMITH: Our Answers to
7   Interrogatories specifically state that our
8   claim is for attorneys fees, to which we have
9   already had the attorneys testify, and for
10  punitive damages, period.
11      MS. MEYER: Let's look at the complaint
12  for a moment. Guy?
13      MR. DONATELLI: Thank you. Again, this
14  isn't my fight but I'm going to ask a similar
15  question for a different reason. One of the
16  things that I respectfully suggested needs to
17  be proven here is that the attorneys even acted
18  without any probable cause. So when you're
19  pursuing a judgment in a matter against
20  Mr. Kosachuk -- is it Kosachuk or Kosachuk?
21      THE WITNESS: You can call me Chris.
22      MS. MEYER: That's not an answer to the
23  question.
24      MR. DONATELLI: I'll accept that.

Page 24

1       THE WITNESS: He's never been able to
2   pronounce it so I don't think it will make any
3   difference now.
4       MR. DONATELLI: In pursuing a matter
5   against Chris where the theory was that
6   somehow we were trying to grab this
7   tremendously valuably asset when the judgment
8   against him as it existed and as it exists was
9   only about 50 grand with interest really does
10  impact significantly in my view on the
11  argument the attorneys in the case had
12  probably cause to pursue that line. So that
13  is the argument I would make.
14      It's got nothing to do with damages,
15  it's got everything to do with -- when a
16  lawyer looks at a case and decides how he or
17  she is going to collect on a judgment, what he
18  or she knows at the time and what he or she is
19  told at the time.
20      MR. SMITH: But this goes as to NLG.
21  The judgment against NLG, not against
22  Mr. Kosachuk.
23      MR. DONATELLI: I respectfully
24  disagree, it does because Mr. Kosachuk

Page 25

1   testified in the Chester County action that he
2   sold his entire interest in NLG for 50 grand.
3   Now we hear the value of this company is in
4   the millions, so when I looked at this case or
5   other folks looked at this case, the
6   underlying matter, and knew that.
7       The argument now that it was somehow a
8   ruse to collect on a much larger value asset I
9   think is relevant. It's relevant to my
10  defense. I think it would be prejudice if I
11  didn't have a right to make that argument.
12      MR. SMITH: It has nothing to do with
13  who his relatives are, who he intended to
14  protect with regard to family planning. The
15  fact is NLG is an LLC and assets of NLG, LLC
16  were disposed of by these defendants in
17  Florida in amounts far beyond the claim
18  against Mr. Kosachuk or far beyond the
19  judgment that they improperly obtained against
20  NLG which was some $48,000 plus costs and they
21  disposed of assets of NLG having a value of $3
22  million or so.
23      MS. MEYER: The value of NLG is at
24  issue because --

7  (Pages 22 to 25)

Christopher Kosachuk

Page 34

1  MS. MEYER: Who?
2  THE WITNESS: The unit holder, sorry.
3  BY MR. TROY:
4  Q.  The what?
5  A.  The unit holder.
6  Q.  Who is the unit holder?
7  A.  You've asked this already. You don't
8  recall?
9  Q.  No. Who is the human being who told
10  you to do that?
11  A.  There is no human being, it's Meridian
12  Trust.
13  Q.  Does Meridian Trust have any employees?
14  A.  Yes.
15  Q.  Who?
16  A.  I don't know them by name.
17  Q.  Do you ever speak with any of them?
18  A.  Yes.
19  Q.  When you speak with them, are you --
20  have you ever met with any of them?
21  A.  In person?
22  Q.  Yes.
23  A.  No.
24  Q.  Okay. Where are they located?

Page 35

1  A.  I believe they're in Nevis, but they
2  could be elsewhere. I don't know their exact
3  locations.
4  Q.  Sitting here today under oath even
5  though you've been a manager of this company for
6  going on seven years now, you don't know the names of
7  any of the employees of Meridian Trust Company?
8  A.  That's not the question you asked.
9  MS. MEYER: Well, answer the question
10  that was just asked.
11  BY MR. TROY:
12  Q.  Do you know the names of any of the
13  employees of Meridian Trust Company?
14  A.  Yes.
15  Q.  Who?
16  A.  Bernie Dover. I think there's a
17  Kamiesha Dawson. Those are the two that I remember.
18  Q.  In transferring NLG's assets to
19  Meridian Trust Company, what did Meridian Trust
20  Company, if anything, provide you?
21  A.  I don't believe they provided anything.
22  Q.  Well --
23  A.  I take that back. They provided me to
24  continue to work there.

Page 36

1  Q.  Okay. Who was it at NLG that
2  designated you to be the corporate designee today,
3  who made that decision?
4  A.  I don't understand your question.
5  Q.  Today you're testifying as the
6  corporate designee, you have been designated by NLG
7  to testify today, who is it at NLG that designated
8  you, that gave you that authority?
9  A.  I'm the manager, so I have the
10  authority to testify on their behalf.
11  Q.  Okay. Did you have the authority to
12  sign the verification to the complaint in this case?
13  A.  Yes, I did.
14  Q.  Okay. And do you have to consult with
15  anyone from NLG in making decisions concerning this
16  litigation?
17  MR. SMITH: You're talking about this
18  litigation?
19  MR. TROY: This litigation.
20  BY MR. TROY:
21  Q.  Do you have to consult with anybody
22  from NLG or Meridian Trust Company?
23  A.  I'm allowed to make the decisions on
24  behalf of NLG as to how to proceed with the

Page 37

1  litigation.
2  Q.  How about the other litigation that NLG
3  is pursuing concerning these judgments, do you have
4  full authority to make all decisions?
5  A.  Yes.
6  Q.  So that even though you have no
7  ownership interest whatsoever in NLG, you have
8  complete authority to do whatever you want with
9  regard to the assets of NLG?
10  MR. SMITH: Objection. Asked and
11  answered.
12  MS. MEYER: The witness can answer the
13  question.
14  THE WITNESS: Yes.
15  BY MR. TROY:
16  Q.  And who is it at Meridian Trust
17  Company, the owner of NLG, that has given you that
18  authority?
19  A.  I don't recall the person's name. It's
20  on the assignment.
21  Q.  Do you have any contract with NLG?
22  A.  No.
23  Q.  What skills or experience do you have
24  related to the management of an LLC?

10  (Pages 34 to 37)

Christopher Kosachuk

Page 42

```
1      Q.   Is there anyone other than you as
2  manager then who could personally accept service on
3  behalf of NLG?
4      A.   Yes.
5      Q.   Who?
6      A.   NLG has a registered agent in Delaware.
7      Q.   And what is that registered agent in
8  Delaware?
9      A.   I believe it's Parcels, Inc.
10     Q.   What is the address for service?
11     A.   Off the top of my head, I don't recall,
12 but I believe it's in Dover, Dover, Delaware.
13     Q.   Where did you register them as an
14 agent -- where did NLG register them as an agent for
15 service?
16     A.   From the day of inception.
17     Q.   Who prepared the operating agreement
18 for NLG?
19          MR. DONATELLI:  The first one?
20          MR. TROY:  The first one, yes.
21          THE WITNESS:  Some lawyer, I don't
22 recall who.
23 BY MR. TROY:
24     Q.   Who prepared the amended operating
```

Page 43

```
1  agreement for NLG?
2      A.   Another lawyer.
3      Q.   You don't remember who?
4      A.   No.
5      Q.   Okay. Have you ever been diagnosed
6  with a traumatic brain injury or anything that would
7  affect your memory?
8          MR. SMITH:  Objection.
9          MS. MEYER:  Overruled.
10         THE WITNESS:  No.
11 BY MR. TROY:
12     Q   Has any officer or member of NLG or
13 any -- well, has any -- there are no officers of NLG
14 apparently. Has anyone at Meridian authorized this
15 lawsuit?
16     A.   I don't recall.
17     Q.   Okay. Do you communicate with any
18 members of Meridian other than by phone?
19     A.   It's typically phone primarily.
20     Q.   And by what other means do you
21 communicate with them?
22     A.   They may send e-mails from time to
23 time.
24     Q.   Did you ever communicate with any
```

Page 44

```
1  members of Meridian concerning the judgment that was
2  filed in Chester County?
3      A.   I don't recall.
4      Q.   Well, as manager of NLG, if a judgment
5  gets filed in Chester County against NLG, are you
6  supposed to tell the owners that?
7      A.   Since I successfully got it vacated, it
8  was a moot point.
9      Q.   But the entire time that you claim a
10 judgment existed against NLG, my question is in
11 Chester County did you ever communicate the existence
12 of that judgment --
13     A.   I never claimed there was a judgment
14 against NLG. Your clients claim that there was a
15 judgment against NLG when the judgment on its face
16 was clearly against me personally. So either it was
17 had faith of the highest order or sheer ineptitude in
18 the inability to read the English language.
19     Q.   During the time that the judgment was
20 filed in Chester County up until the time it was
21 vacated, did you, as manager of NLG, ever communicate
22 to the owners at Meridian that such a judgment had
23 been filed?
24     A.   I may have communicated that there was
```

Page 45

```
1  a judgment that I had to deal with, yes.
2      Q.   Okay. Did you send to the owners of
3  NLG a copy of that judgment?
4      A.   I don't recall if I did.
5      Q.   Okay. Would you still have the
6  documents that would memorialize any such
7  communications?
8      A.   No.
9      Q.   Why not?
10     A.   Several years ago. I don't retain
11 documents.
12     Q.   I see. When would you have destroyed
13 such documents?
14     A.   It probably would have been destroyed
15 automatically.
16     Q.   What do you mean destroyed
17 automatically?
18     A.   My e-mail purges automatically. If
19 there's any written documents, they are deleted.
20     Q.   When you communicate with Meridian
21 concerning NLG matters, from what computer do you
22 communicate with them?
23     A.   Whichever computer I need. Whichever
24 is handy.
```

12 (Pages 42 to 45)

Christopher Kosachuk

| Page 50 | Page 52 |
|---|---|

**Page 50**

1　exist because your client filed fraudulent documents
2　with the Secretary of State in Delaware.
3　　Q.　Does NLG, LLC have a bank account?
4　　MR. SMITH: Objection. Now they're
5　doing asset research.
6　　MR. TROY: I haven't gotten there yet
7　and there's a reason I'm getting into it. I
8　don't know if you're going to require me to
9　lead to that right away, but all I've asked is
10　do they have a bank account.
11　　MS. MEYER: Overruled.
12　　THE WITNESS: Yes.
13　BY MR. TROY:
14　　Q.　And are you the only person, as
15　manager, who has authority to deposit or withdraw or
16　transfer funds from that account?
17　　A.　Anybody can deposit funds to NLG's
18　account and I invite you to deposit funds to NLG's
19　account should you feel so inclined after having
20　spent a deposition with me.
21　　Q.　Does anybody else have the ability to
22　withdraw funds -- is authorized to withdraw funds
23　from NLG's account other than you?
24　　A.　No.

**Page 51**

1　　Q.　Did you personally set up that account?
2　　A.　Yes.
3　　Q.　Okay. When all of the assets of NLG
4　were transferred to Meridian, how did NLG get funds
5　to be put in the account?
6　　MR. SMITH: Let me object. There's no
7　evidence that he transferred assets. He
8　transferred the units to Meridian.
9　　MS. MEYER: Do you want to explore
10　that?
11　　MR. TROY: Sure.
12　BY MR. TROY:
13　　Q.　When the units were transferred to
14　Meridian, did Meridian then also become the owner of
15　whatever assets NLG had in their bank account?
16　　A.　Yes.
17　　Q.　Now, with Meridian owning that then and
18　that was seven years ago, where does NLG get its
19　funds to operate?
20　　MR. SMITH: Objection. This has
21　nothing to do with NLG's lawsuit against these
22　parties on the Dragonetti case.
23　　This may have to do with some of their
24　lawsuits involved and I think that's where

**Page 52**

1　this discovery is going, but has nothing to do
2　with this case and cannot lead to admissible
3　evidence in this case.
4　　MR. TROY: There's an allegation that
5　NLG spent money on attorneys here. I'm
6　entitled to track down whose money that was
7　and I'm getting there.
8　　MS. MEYER: Overruled.
9　　THE WITNESS: NLG spent NLG's money.
10　BY MR. TROY:
11　　Q.　My question was where does NLG get its
12　funds to operate?
13　　A.　From the judgment collection
14　activities.
15　　Q.　Okay. So does NLG -- has NLG filed tax
16　returns in its own name, federal and state tax
17　returns, from 2007 to the present?
18　　A.　I don't believe so.
19　　Q.　As manager of NLG why not?
20　　A.　Because Meridian does it.
21　　Q.　Okay. But Meridian does it in NLG's
22　name?
23　　A.　I'm not sure how Meridian handles its
24　taxes.

**Page 53**

1　　Q.　Have you ever seen any tax returns
2　filed since 2007 by NLG?
3　　A.　No.
4　　Q.　Would anyone -- would there be
5　anyone -- if NLG does not have any other employees or
6　agents, would there be anyone other than you who
7　would have authority to file that return?
8　　A.　The owner.
9　　Q.　Okay. So your testimony is that the
10　owner gives you full authority to do whatever you
11　want with NLG's assets, but that the owner files the
12　tax returns for NLG and signs them, not you?
13　　A.　I would assume the owner's accountant
14　does it, but I don't.
15　　Q.　As manager of NLG, do you have to
16　report to ownership annually, quarterly, whatever it
17　is about the affairs of NLG?
18　　A.　I report to ownership as-needed.
19　　Q.　Okay. When you report to ownership
20　as-needed, do you provide ownership with written
21　reports as to how NLG is doing on its collection and
22　judgment activities?
23　　A.　No.
24　　Q.　Never?

14　(Pages 50 to 53)

Christopher Kosachuk

Page 54

1    A.   Not that I recall.
2    Q.   Do you ever advise ownership as to
3    NLG -- the status of NLG's assets including its bank
4    account?
5    A.   Yes.
6    Q.   And when you make those reports is it
7    purely verbally?
8    A.   Yes.
9    Q.   And these owners, they don't ask you a
10   thing, they don't ask you for anything in writing?
11   A.   Nope.
12   Q.   The attorneys fees that the complaint
13   claims were paid in this case, were they paid by
14   check?
15   A.   In this particular case.
16   Q.   In the -- I'm sorry, in the Chester
17   County litigation concerning the judgment there is an
18   allegation in the complaint that attorneys fees were
19   paid -- were required to be paid because of the
20   judgment in Chester County?
21   A.   That's correct.
22   Q.   Were those attorneys fees paid by NLG?
23   A.   Yes.
24   Q.   And were the fees paid by NLG solely

Page 55

1    for litigation concerning the judgment against NLG or
2    were they also paid for litigation concerning the
3    judgment against Chris Kosachuk?
4    A.   But for the judgment against NLG, I
5    would not have hired counsel. I have successfully
6    represented myself in this Lorret judgment action in
7    both New York and Florida. The only reason that I
8    had to hire anybody in Chester County was because of
9    the judgment that your client and Mr. Donatelli
10   prosecuted against NLG wrongly when no such judgment
11   existed.
12   Q.   Do you have a law degree?
13   A.   No.
14   Q.   But if I heard your testimony, you felt
15   completely competent to defend yourself, the judgment
16   against yourself, but you did not feel competent to
17   defend the judgment against NLG?
18       MR. SMITH:   Objection. He cannot
19   represent an LLC in Pennsylvania when he's not
20   an attorney. It's not lawful.
21       THE WITNESS:   That's exactly correct.
22   I cannot represent an LLC because I'm not a
23   lawyer.
24   BY MR. TROY:

Page 56

1    Q.   Okay. And the money that was spent --
2    to go back two questions ago, the funds that were
3    expended by NLG for their attorneys, were their
4    attorneys only working on the judgment against NLG or
5    were they also providing legal services regarding the
6    judgment against Chris Kosachuk?
7    A.   They were representing both me and NLG,
8    but solely because it was interrelated, but I would
9    never have hired an attorney independently but for
10   the wrongful judgment recorded against NLG by your
11   client.
12   Q.   So in all litigation against you
13   personally, have you ever hired an attorney to
14   represent you?
15   A.   I don't believe I ever have.
16   Q.   Okay.
17   A.   You know what, I take that back. I did
18   hire a firm in Wilmington, Delaware on the litigation
19   involving Latin Advisor.
20   Q.   So the fees which were paid to counsel
21   to deal with the judgment in Chester County, were
22   those attorneys paid by check?
23   A.   I don't recall how they were paid, it
24   might have been check.

Page 57

1    Q.   How else would it have been?
2    A.   Cash.
3    Q.   So attorneys fees that were alleged to
4    be over $50,000, if I recall, may have been paid in
5    cash?
6    A.   Parts of them, yes.
7    Q.   Who at NLG facilitated those payments,
8    whether they were check or cash?
9    A.   I did.
10   Q.   Were all of your attorneys who
11   represented NLG in this matter, were all their bills
12   in the Chester County judgment matter, were all of
13   their bills paid in their entirety?
14   A.   No.
15   Q.   Okay. Describe to me, if you will,
16   what bills were not paid in there entirety?
17       MR. SMITH:   Let me object. The
18   attorneys' deposition have already been taken
19   and all this information has already been
20   obtained by counsel.
21       MR. DONATELLI:   I was at that
22   deposition, that's not entirely accurate.
23       MR. SMITH:   He testified as to the
24   balances that remained unpaid.

15   (Pages 54 to 57)

Christopher Kosachuk

Page 62

1 just trying to get proof of that.
2 MR. SMITH: There has been no request
3 that I'm aware of, that I recall, for checks
4 in corroboration of the payments to the
5 attorneys.
6 MS. MEYER: But it's a fair question.
7 MR. SMITH: I don't think it is a fair
8 question because it doesn't matter how much
9 has been paid and how much is stilled owed.
10 He's still entitled to recover that whole
11 thing.
12 MS. MEYER: Aren't the defendants
13 entitled to know what has, in fact, been paid
14 to assure that that is the damage claim?
15 MR. SMITH: The amount that's been
16 incurred is the damage claim.
17 MS. MEYER: I'm not quite sure what
18 incurred means.
19 MR. SMITH: Incurred means whether they
20 owe it – if they owe it, it's still damages
21 incurred.
22 MS. MEYER: The witness has not been
23 very clear on that point of whether he doesn't
24 know what is incurred and doesn't seem to know

Page 63

1 if NLG owes money to attorneys.
2 MR. SMITH: Well, off the top of his
3 head he doesn't recall –
4 THE WITNESS: I don't know the exact
5 amount. I didn't testify that NLG doesn't owe
6 the money. NLG indeed owes the money to
7 Mr. Schauer's firm.
8 MS. MEYER: The objection is overruled.
9 Do you need the question repeated?
10 THE WITNESS: Yes.
11 BY MR. TROY:
12 Q. What banks does NLG have accounts?
13 A. Wells Fargo and Regions.
14 Q. And at what branches are those accounts
15 registered?
16 A. Anywhere there's either of those
17 branches.
18 Q. How did you go about setting up the
19 account at Wells Fargo?
20 A. I believe it was set up at Wachovia
21 Bank which was the predecessor of Wells Fargo Bank.
22 Q. How about Regions Bank?
23 A. Formed the account when NLG borrowed
24 money from Regions Bank.

Page 64

1 Q. And when you set up those accounts, are
2 you representing to me you did this all
3 electronically or by phone without actually walking
4 into a bank?
5 A. The Regions Bank I believe I went in
6 and I think I probably did it at Wachovia too, but I
7 just don't recall because that one has been so long
8 ago.
9 Q. How long ago?
10 A. I believe I opened the account in --
11 some time shortly after the company was formed.
12 Q. Okay. And you have no idea where the
13 branch was, what state it was or anything?
14 A. I believe it was in Pennsylvania, but I
15 don't recall specifically.
16 Q. Never went back there after that?
17 A. As I said, I don't recall specifically
18 which branch I went to, but since Wells Fargo is a
19 national bank, you can walk into any Wells Fargo
20 where you have an account and access the money that's
21 being held on that entity's behalf.
22 Q. How about the Regions Bank where you
23 set up the account, do you remember where that branch
24 was?

Page 65

1 A. That would have been in Florida.
2 Q. And where in Florida?
3 A. I believe it was at the private bank in
4 Coral Gables.
5 Q. Are you familiar with a company called
6 Luxcom Financial?
7 A. Yes.
8 Q. What is Luxcom Financial?
9 A. It's a company in Russia.
10 Q. How do you know about it?
11 A. That's about what I know.
12 Q. I see. How did you come to learn about
13 it?
14 A. I don't recall.
15 Q. Do you have any ownership interest
16 whatsoever in Luxcom Financial?
17 A. No.
18 Q. Does Luxcom Financial have any
19 ownership interest in NLG?
20 A. No.
21 Q. Does, to your knowledge, Meridian have
22 any business transactions with Luxcom?
23 A. I believe so.
24 Q. And how is it that you believe so?

17 (Pages 62 to 65)

Christopher Kosachuk

Page 66

1    A.   There were business dealings between
2 the two of them, but I'm not so sure of the exact
3 details.
4    Q.   Okay. How is it that you came to learn
5 anything about Luxcom or these transactions?
6    A.   Probably from somebody at Luxcom.
7    Q.   Okay. What caused you to even speak to
8 anybody at some Russian company?
9    A.   I don't recall.
10    Q.   They just happened to call you one day?
11    A.   As I said, I don't recall.
12    Q.   Did you ever file any paperwork with
13 the State of Delaware indicating that you had
14 transferred your shares in NLG to Luxcom?
15    A.   It's not required.
16    Q.   Had you transferred any shares in NLG
17 or any interest in NLG to Luxcom?
18    A.   No.
19    Q.   Have you ever testified under oath that
20 you transferred your shares or your interest in NLG
21 to Luxcom Financial rather than Meridian?
22    A.   Yes.
23    Q.   Why -- when did you testify to such a
24 thing?

Page 67

1    A.   In a deposition and I was wrong.
2    Q.   Okay. What caused you to testify
3 previously that you would have transferred shares or
4 interest in a company you owned entirely to Luxcom
5 rather than Meridian?
6    A.   As I said, I was wrong.
7    Q.   So you are telling me that under oath
8 in a deposition you were mistaken about the entity to
9 which you had transferred your entire interest in
10 NLG?
11    A.   That's correct.
12    Q.   What caused Luxcom to come up in your
13 mind when you gave that testimony rather than IBM or
14 Microsoft?
15    A.   I don't recall.
16    Q.   Who is Alexiu Kovalev?
17    A.   He's a representative for Luxcom.
18    Q.   How do you know him?
19    A.   Through mutual friends.
20    Q.   Did you ever transfer any interest in
21 NLG to Mr. Kovalev?
22    A.   No.
23    Q.   Where does Mr. Kovalev reside?
24    A.   I believe in Russia.

Page 68

1    Q.   Have you ever dealt with anyone at
2 Luxcom other than Mr. Kovalev?
3    A.   Not that I recall.
4    Q.   Regarding NLG, as manager of NLG, where
5 are NLG's business documents, the documents of their
6 business affairs stored, let's start with hard paper
7 copies, do any hard paper copies exist today, to your
8 knowledge, of any of NLG's business affairs?
9    A.   Yes.
10    Q.   Okay. And who is the custodian of
11 those records, who keeps them?
12    A.   I do.
13    Q.   And where do you keep them?
14    A.   In Pennsylvania.
15    Q.   And where do you keep them in
16 Pennsylvania?
17    A.   At the house.
18    Q.   Did a Christopher David ever maintain
19 NLG's documents for you?
20    A.   He's maintained documents on behalf of
21 NLG as NLG's attorney.
22    Q.   Does he still do so?
23    A.   I don't know what he does or doesn't
24 have, but I'm sure he's got a big file.

Page 69

1    Q.   Okay. Do you recall who it was who
2 signed the certification of formation for NLG, LLC?
3    A.   Yes.
4    Q.   And who was it?
5    A.   I already answered this. I did.
6    Q.   Did you ever -- I've mentioned NLG,
7 LLC. Is there a different entity named NLG, LLC?
8    A.   Yes, there is.
9    Q.   So up to this point in the deposition,
10 have your answers to all of my questions about NLG,
11 LLC been in regard to NLG, no comma, LLC?
12    A.   There are two entities formed in
13 Delaware. When your client fraudulently cancelled
14 NLG with the Secretary of State in Delaware, they
15 then went and formed a new NLG, which I don't recall
16 whether it has the comma or doesn't have the comma,
17 but one of them does and one of them doesn't.
18     One of them was formed in 2002. The
19 one that's formed is 2002 is the one that we're
20 talking about, the one with the millions of dollars
21 in assets that your client fraudulently satisfied for
22 no consideration. That's the NLG that we're talking
23 about.
24     The other NLG I'm not so sure about

18 (Pages 66 to 69)

Christopher Kosachuk

Page 106

1  transfer of the units in NLG, LLC —
2      A.  I don't believe that's what I testified
3  to.
4      Q.  Why don't you tell me how much you
5  received to transfer the NLG units to Meridian.
6      A.  I don't believe I received anything.
7      Q.  So you gave it away?
8      A.  No, I transferred it.
9      Q.  For how much?
10     A.  I just answered the question.
11     Q.  For nothing?
12     A.  I just answered the question.
13     Q.  Why did you tell me in the underlying
14  litigation that you got $50,000 for it?
15     A.  Because I was wrong at the time.
16     Q.  Why did you tell me in the underlying
17  litigation that Meridian was owned by Luxcom?
18     A.  Because that's still true.
19     Q.  You were asked whether you had any
20  written agreement with NLG, LLC and you said no, I
21  believe?
22     A.  There's the assignment.
23     Q.  I think you were asked if you had any
24  written agreement with Meridian and you said no?

Page 107

1      A.  There is an assignment and that
2  assignment provides me the authority to operate as
3  the manager.
4      Q.  And has that assignment been produced
5  in your production on Friday?
6      A.  Yes, it has.
7      Q.  And you testified that you're pursuing
8  roughly $10 million in litigation on behalf of NLG,
9  LLC against Elizabeth Hazan in New York and --
10     A.  The underlying judgment against
11  Ms. Hazan in favor of NLG is approximately $4
12  million. Ms. Hazan fraudulently conveyed her $2.4
13  million condominium located at 1 East 62nd Street,
14  New York, New York which coincidentally happens to be
15  the same building which comedian Joan Rivers is the
16  president and lives in the penthouse.
17         In an effort not to pay NLG, Ms. Hazan
18  fraudulently conveyed the apartment to Raymond Houle
19  and fraudulently — then Mr. Houle fraudulently
20  conveyed it to another Quebec entity and then the
21  Quebec entity fraudulently conveyed it to something
22  called Real Estate Holdings Group, LDC and a
23  disciplinary action has been filed in New York and it
24  is seeking to vacate each of the fraudulent

Page 108

1  conveyances, restore Hazan back to title so then NLG
2  can execute on the assets and then when you make a
3  fraudulent conveyance in New York, they have punitive
4  laws to keep you from doing that.
5         So NLG is going to seek a judgment of
6  $2.4 million which is the value of the apartment that
7  was transferred to each of those fraudulent
8  conveyces.
9      Q.  That gets you about $10 million bucks?
10     A.  If gets NLG $10 million if it receives
11  full collection on everything, yes.
12     Q.  Fair enough. When is the last time you
13  reported to Meridian that you were pursuing a $10
14  million claim on its behalf?
15     A.  I don't recall.
16     Q.  Do you recall how much you paid the
17  firm I guess it's David & Joseph in Florida?
18         MR. SMITH:  Actually paid?
19         MR. DONATELLI:  Yeah, actually paid.
20         THE WITNESS:  No, probably somewhere
21  between 50 and $100,000 which NLG paid for
22  their services.
23  BY MR. DONATELLI:
24     Q.  Would that have been related to the

Page 109

1  effort to unwind the effect of the charging order
2  that was entered against you?
3      A.  One of the aspects of what they were
4  handling was the unwinding of your client's
5  fraudulent self-satisfaction of judgment and
6  dismissal of the litigation of the judgment
7  complaint, dismissal of foreclosure, satisfaction of
8  the mortgage.
9      Q.  How much of that was related to —
10     A.  I believe Mr. David has already
11  provided testimony as to the breakdown of his bills.
12  I'll defer to Mr. David.
13     Q.  Do you have any documents which would
14  show how much of those bills were actually paid by
15  NLG, LLC?
16     A.  The bills themselves.
17     Q.  So to the extent that payments are
18  shown on there or not shown on there, you will accept
19  that?
20     A.  Yes.
21     Q.  All right. Last question. Was the
22  estate planning that you testified was part and
23  parcel to transfer the units of NLG, was any of it
24  for you personally?

28 (Pages 106 to 109)

Christopher Kosachuk

Page 30

1    Did any family member besides you have
2  any interest whatsoever in NLG?
3        A.  No.
4        Q.  Okay. So you're the only one that had
5  any interest in NLG?
6        A.  Yes.
7        Q.  And do you or have you ever had any
8  ownership interest whatsoever in Meridian Trust
9  Company Limited?
10       A.  No.
11       Q.  Are there individuals who have
12  ownership in Meridian Trust Company Limited?
13       A.  I don't know.
14       Q.  Who represented Meridian Trust Company
15  Limited in the transaction?
16       A.  I don't recall.
17       Q.  Okay. Do you still have the paperwork
18  in which NLG's interest was transferred to Meridian
19  Trust Company Limited?
20       A.  Yes.
21           MR. SMITH: We already supplied that.
22  BY MR. TROY:
23       Q.  Were those documents drafted by your
24  attorney or Meridian's attorney?

Page 31

1        A.  I don't recall.
2        Q.  What year was it that the transfer
3  occurred?
4        A.  2007.
5        Q.  Okay. As part of that transfer, did
6  you retain any title in NLG, any position?
7        A.  Yes.
8        Q.  What position was that?
9        A.  Manager.
10       Q.  And were you to be compensated for that
11  position?
12       A.  What do you mean by compensated?
13       Q.  Paid. Are you doing it for free, for
14  these mysterious people at Meridian Trust Company?
15           MR. SMITH: Objection.
16           MS. MEYER: What's your objection?
17           MR. SMITH: He's making snide comments.
18           MS. MEYER: We'll strike the
19  mysterious.
20  BY MR. TROY:
21       Q.  Were you acting as manager for Meridian
22  Trust Company for free?
23       A.  I've never acted as the manager for
24  Meridian Trust Company.

Page 32

1        O.  Were you acting as manager of NLG owned
2  by Meridian Trust Company for free?
3        A.  Yes.
4        Q.  Because?
5        A.  Because.
6        Q.  Because why?
7        A.  Because I have a right to work for
8  whomever I like for whatever amount I'd like to.
9  I'll offer my services to you if you'd like them.
10       Q.  No thank you.
11           For how many years have you worked as a
12  manager for NLG since the 2007 transfer?
13       A.  All of them.
14       Q.  All of them. Have you ever been paid
15  for any of those services as manager?
16       A.  No.
17       Q.  What are your duties as manager?
18       A.  NLG is the owner of a judgment against
19  an Elizabeth Hazan which the principal amount is
20  approximately $4 million as of today. That judgment
21  is secured by a mortgage on the Fisher Island
22  property which has a value in excess of $5 million
23  and NLG is in the process of foreclosing on that
24  property and NLG has domesticated that judgment in

Page 33

1  New York City and is in the process of taking
2  Ms. Hazan's condominium which she fraudulently
3  conveyed three times, so that's why NLG had to file
4  that disciplinary action to vacate the fraudulent
5  conveyances.
6           It's also seeking $2.4 million in
7  judgment amount against each party to the fraudulent
8  conveyance which are Mr. Houle, another numbered
9  Quebec company, it was like 9221-0880 Quebec, Inc.
10  which is another one of these sham shell companies
11  and then a Belize shell company called Real Estate
12  Holdings Group, LDC.
13           So in total NLG will have $4 million
14  that Ms. Hazan owes plus $2.4 million times each of
15  those three defendants, so in excess of $10 million
16  in assets.
17       Q.  Okay. My question was – so you've
18  told me they have all these mortgages and things
19  they're trying to do, what are your duties?
20       A.  To collect on each and every one of
21  those items.
22       Q.  Who directed you to do that?
23       A.  The shareholder.
24       Q.  Okay.

9  (Pages 30 to 33)

# EXHIBIT F

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICAL CIRCUIT IN
AND FOR MIAMI-DADE, FLORIDA

CASE NO.:    07-8365 CA-13

9197-5904 QUEBEC, INC.

    Plaintiffs,

vs.

CHRIS KOSACHUK and NLG, LLC.,

    Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS

This action was heard on March 12, 2014, on the Motion for Sanctions against Defendant, Chris Kosachuk, for willfully failing to comply with Orders of this Court of June 20, 2012, July 2, 2012 and January 2, 2014, directing Defendant, Chris Kosachuk to produce records, answer Interrogatories, deposit funds into the Court Registry and appear before General Master, Elizabeth Schwabedissen on January 28, 2014 and the Court, having reviewed the file in this matter and being apprised that Defendant, Chris Kosachuk was on notice of this hearing, but failed to personally appear

**IT IS ORDERED, ADJUDGED AND DECREED** that said Motion is hereby Granted and the Court orders as follows:

1.    The Court finds that Defendant, Chris Kosachuk willfully failed to comply with this Courts Orders as listed above and directs that a Writ of Bodily Attachment be issued against Defendant, Chris Koachuk for failing to comply with the Court Orders listed above.

2.    The Miami-Dade County Sheriff or any other law enforcement agency is hereby directed, upon delivery to it of a duly certified copy of this order, and a Writ of Bodily Attachment to take Chris Kosachuk into custody and be held in accordance with this order.

3.    The Defendant, Chris Kosachuk shall be held until such time as he complies with the Court Orders listed above and produce to Plaintiff all records in response to Plaintiff's Request for Production, brought current through the current year; answers the Interrogatories previously submitted to him, makes himself available for deposition and deposits into the Court Registry the sum of Forty Eight


TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO.:   07-8365 CA-13

Thousand Two Hundred Ninety Three and 54/100 ($48,293.54) Dollars, plus interest from November 25,

2002 through the current date, at the rate of Nine (9%) percent, per annum.

4.      Defendant shall be permitted to be released upon depositing a bond in the amount of Fifty

Thousand ($50,000.00) Dollars.

ORDERED at Miami, Florida on ____ day of March 2014.

CIRCUIT COURT JUDGE

DARYL TRAWICK
Circuit Court Judge

Copies furnished:
Arthur R. Rosenberg, Esq.
Mark Cohen, Esquire
Chris Kosachuk via email at chriskosachuk@gmail and to
854 Pheasant Run Road, West Chester, PA 19382

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office
HARVEY RUVIN, Clerk, of Circuit and County Courts

Deputy Clerk

# EXHIBIT G

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA.
IN THE COUNTY COURT IN AND FOR DADE COUNTY, FLORIDA.

| _ION<br>CIVIL<br>OTHER | CIVIL WRIT OF BODILY ATTACHMENT<br>(Writ to Apprehend a Person) | CASE NUMBER<br>07-8365-CA-01 (13) |
|---|---|---|

IFORMATION TO BE COMPLETED BY COUNSEL

ime address of Defendant/Respondent

165 N. HIBISCUS DRIVE, MAIMI BEACH, FL 33139 *

ork address of Defendant/Respondent

| lephone #<br>305.490.5700 | Race<br>W | Sex<br>M | DOB<br>12/11/72 | SS# | Eyes<br>B |
|---|---|---|---|---|---|

| iir<br>B | Height<br>5' 9" | Weight<br>170 | Nicknames | | |
|---|---|---|---|---|---|

Ordered in Dade County, Florida on the ____
day of MAY ____ 20 14

COURT JUDGE

Name: Arthur R. Rosenberg
Address: 6499 N Powerline Rd Suit 304
Telephone Ft. Lauderdale, FL 33309
954.772.5151

* Such other locations he may be found

THE ORIGINAL
FILED ON
MAY 15 2014
IN THE OFFICE OF
CLERK OF COURT DADE CO FL

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION | |
|---|---|
| X CIVIL | CIVIL WRIT OF BODILY ATTACHMENT |
| [ ] OTHER | (Writ to Apprehend a Person) |

| PLAINTIFF(S)/ PETITIONER(S) 9197-5904 QUEBEC INC | DEFENDANT(S)/ RESPONDENT(S) CHRIS KOSACHUK and NLG, LLC |
|---|---|

CASE NUMBER: 07-8365 CA 01 (13)

## TO EACH SHERIFF OF THE STATE OF FLORIDA:

You are hereby commanded to take into your custody:
CHRIS KOSACHUK and

X Place him/her in the Miami-Dade County Jail until such time as (s)he may be brought before Judge TRAWICK located at:
73 WEST FLAGLER STREET, ROOM DDC1001, MIAMI, FL 33130

[ ] Bring him/her before Judge _____ located at _____

Instanter, for the following reason(s):

[ ] To answer the Defendant(s)/Respondent(s) failure to appear at a hearing for contempt on: _____, 20 ___, of which Defendant/Respondent was noticed: __

and/or FAILURE TO COMPLY WITH COURT ORDERS

## DIRECTIONS TO SHERIFF

This Writ shall be promptly served and executed between the hours of 8:00 a.m. and 3:00 p.m., Monday through Friday (legal holidays excluded), and shall expire and terminate if not served sixty (60) days from the date of this Order. In rare instances when the Defendant/Respondent is taken into custody during normal Court hours but cannot, after diligent effort be brought before a Judge on the same date this Writ is served, said Defendant/Respondent may be confined in the Miami-Dade County Jail until the earliest possible time that he can be brought before the Court. However, Defendant/Respondent may secure release pursuant to the conditions specified below. (Check appropriate box). This Writ shall not expire or be terminated pursuant to order attached

X Defendant/Respondent may be released upon the posting of a bond in the amount of $ $50,000.00

(SPECIFY OTHER CONDITIONS OF RECOGNIZANCE)

[ ] There is reason to believe that Defendant/Respondent is not subject to attachment during the above hours. Accordingly, the Defendant/Respondent may be taken into custody at such time as he is located and apprehended and may be confined in the Miami-Dade County Jail until the earliest possible time that Respondent/Defendant can be brought before aforesaid Judge, or , in his absence, before any of the other Judges of the CIRCUIT Court, for the reasons specified herein. However, the Respondent/Defendant may secure release pursuant to the foregoing conditions. Upon execution of this Writ, the sheriff shall promptly notify, by telephone, the following:



| DIVISION | CIVIL WRIT OF BODILY ATTACHMENT (Writ to Apprehend a Person) | |
|---|---|---|
| [X] CIVIL | | |
| [ ] OTHER | | |

IN THE CIRCUIT COURT OF THE ELEVENTH JU... CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| PLAINTIFF(S)/ PETITIONER(S)<br><br>9197-5904 QUEBEC INC | DEFENDANT(S)/ RESPONDENT(S)<br>CHRIS KOSACHUK and NLG, LLC |
|---|---|

CASE NUMBER: 07-8365 CA 01 (13)

**TO EACH SHERIFF OF THE STATE OF FLORIDA:**

2014 MAY 15 PM 3:29

THE ORIGINAL
FILED ON
MAY 15 2014

# EXHIBIT H



# COMPANY DOCUMENTS LTD

29 Harley Street, London W1G 9QR, United Kingdom
Tel: +44 (0)20 7383 4477    Fax: +44 (0)20 7383 4488
info@companydocuments.com
www.companydocuments.com

01 May 2012

## Company Name Search Report

Ref: CD42272

## RE: LUXCOM FINANCIAL – RUSSIAN FEDERATION.

Our local agent has undertaken the requested corporate research in the Russian Federation and we can now provide the following report details;

On 30th April 2012 I can confirm that our agent has reported that following his inspection of official corporate records there is no company registered within Russia with the exact name "LUXCOM FINANCIAL" (Лукском Финанс).

Further research is underway to provide a full list of all companies registered starting with the word "LUXCOM"

End of Report.

Information in the above report and any attachments has been provided by our local agents and it is believed to be accurate and factual as of the above date.
We have no reason to doubt any of the information supplied, however we accept no responsibility for any errors within this report.

Ref: **Meridian Trust Company, Ltd**
*Original Certificate*

## APOSTILLE

### (Convention de la Haye du 5 Octobre 1961)

1. Country: British Virgin Islands

    This public document

2. has been signed by Mrs. Myrna Herbert

3. acting in the capacity of Registrar of Corporate Affairs

4. bears the seal/stamp of the Registrar of Corporate Affairs

### CERTIFIED

5. at Road Town, Tortola, British Virgin Islands

6. the ⌒ day of May, 2012

7. by: REGISTRAR, SUPREME COURT

8. No. H-03815

9. Seal/stamp

10. Signature

    REGISTRAR, SUPREME COURT



British Virgin Islands Financial Services Commission
Registry of Corporate Affairs
P.O. Box 418, Road Town, Tortola, British Virgin Islands • Tel 284 494 5355/6 • Fax 284 494 6351 • Email corporateregistry@bvifsc.vg

# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## BVI BUSINESS COMPANIES ACT, 2004

### CERTIFICATE

### Meridian Trust Company, Ltd

The Registrar of Corporate Affairs of the British Virgin Islands HEREBY CERTIFIES that ACCORDING TO OUR RECORDS, as at the date of this certificate:-

1. The company is not a company registered in the British Virgin Islands and therefore does not exist on the Register of Companies as a BVI Business Company.

Dated this 30th day of April, 2012

Myrna P. Herbert
Registrar of Corporate Affairs
BVI Financial Services Commission

# EXHIBIT I

# IN THE CHANCERY COURT OF THE STATE OF DELAWARE

IN THE MATTER OF NLG, LLC )
                              )       C.A. No. 9628-VCP
                              )

## AFFIDAVIT OF DARIUS A. MARZEC, ESQ.

STATE OF NEW YORK       :
                            :   SS
COUNTY OF NEW YORK   :

        I, Darius A. Marzec, Esq., being duly sworn, depose and state as follows:

        1.    My name is Darius A. Marzec and I am an attorney licensed to practice in the State of New York. In my capacity as an attorney, I have represented 9197-5904 Quebec, Inc.

        2.    In a sworn deposition dated February 25, 2014, in response to a question related to his claim that Meridian Trust Company, LTD ("Meridian") owned 100% of the membership interest in NLG, LLC, Mr. Christopher Kosachuk stated that a "Bernie Dover" was an employee at Meridian with whom he was familiar. Research following that deposition showed that a Mr. Ernie Dover is the Managing Director of Meridian.

        3.    On April 24, 2014, I was involved in a phone conversation with Ernie Dover, the Managing Director of Meridian. On that phone conversation, Mr. Dover stated that he had never heard of NLG, LLC. Mr. Dover further stated that he vaguely remembered the name Chris Kosachuk but had not spoken to him in many years.



1

Sworn to and subscribed before me this 28th day of May, 2014.

Sylvia M. Wronowski
Notary Public State of New York
No. 01WR6272811 - Qualified in
Queens County
Commission Expires 11-26-2016

Notary Public:

My Commission Expires: 11/26/2016

2

# EXHIBIT J

CFN 2014R0583040
OR Bk 29277 Pgs 3289 - 32925 (4pg)
RECORDED 08/20/2014 14:11:06
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (10)

SELECTIVE ADVISORS GROUP, LLC,
AS ASSIGNEE OF 9197-5904
QUEBEC, INC.,

    Plaintiff,

vs.

NLG, LLC, a Delaware Limited
Liability Company,

    Defendant,
and

ELIZABETH HAZAN

    Additional Defendant.

_____/

## ORDER GRANTING
### PLAINTIFF'S MOTION FOR PROCEEDINGS SUPPLEMENTARY AND FOR ORDER IMPLEADING THIRD PARTY

THIS CAUSE having come on for hearing on August 12, 2014, and August 15, 2014, on the Plaintiff's Motion for Proceedings Supplementary, etc., and the court having examined the court file, including the unrebutted affidavit filed on behalf of the Plaintiff on July 2, 2014, having taken judicial notice of the judgments and lien certificates referenced below, and having heard arguments of counsel, makes the following finds of fact and conclusions of law:

## FINDINGS OF FACT

1. On April 28, 2008, a default final judgment was entered under Case No. 07-19532-CA-11 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in favor of NLG, LLC, and against ELIZABETH HAZAN in the amount of $1,618,071.29, plus interest at the statutory rate of 11 percent per annum. ("Ha

Final Judgment"). The judgment was recorded on May 2, 2008 at Book Number 26357, Pages 3948-3949, Document Number 20080361591 and re-recorded on June 2, 2008 at Book Number 26406, Pages 3259-3260, Document Number 2008R0446831.

2. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on May 27, 2008, under document filing number J08900007653.

3. A second judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on July 1, 2013, under document filing number J13001162651. The "money amount remaining unpaid" listed on the second judgment lien certificate is $3,749,569.51. Said amount seems to be based on an interest rate of 24 percent instead of the 11 percent judgment rate.

4. On February 22, 2012, 9197-5904 QUEBEC, INC., a foreign corporation, obtained a judgment against the Defendant, NLG, LLC, a Delaware Limited Liability Company, in New York State Supreme Court, County of New York, index number 101875-2012. Said judgment was domesticated and recorded on April 21, 2014, in Miami-Dade County, State of Florida, under the above-stated case number. Document number 2014R0298781, Book number 29124, pages 4766-4772.

5. On April 30, 2014, the subject judgment was assigned to the Plaintiff by 9197-5904 QUEBEC, INC., requiring the Defendant to pay the Plaintiff the sum of $5,000,225.00, plus statutory interest. The assignment was recorded at Book Number 29137, Pages 3128-3131, Document Number 2014R0322571.

6. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on June 16, 2014, under document filing number J14000718030.

7. The Plaintiff is entitled to step in the shoes of NLG, LLC with respect to the claims, rights, and benefits held by NLG, LLC, so as to be entitled to recover all proceeds attributable to the Hazan Final Judgment against ELIZABETH HAZAN with

NLG, LLC receiving a credit for all sums so received.

8. The execution is valid and remains outstanding.

## CONCLUSIONS OF LAW

1. The Court orders that the Hazan Final Judgment held by NLG, LLC against ELIZABETH HAZAN, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against ELIZABETH HAZAN are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.

2. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, ELIZABETH HAZAN, with NLG, LLC receiving credit for all sums so received.

3. Plaintiff, SELECTIVE ADVISORS GROUP, LLC, shall give a credit to Defendant, NLG, LLC, in the sum of $2,746,953.34, which amount includes principal and interest through August 31, 2014 at the 11% judgment amount without prejudice to Defendant establishing at further hearing why the credited amount should be greater.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 08/20/14.

PETER R. LOPEZ
CIRCUIT COURT JUDGE

No Further Judicial Action Required on THIS
MOTION
CLERK TO RECLOSE CASE IF POST
JUDGMENT

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Copies furnished to:
Mark D. Cohen, Esq.
Megan Wells, Esq.

# EXHIBIT K

FILED: NEW YORK COUNTY CLERK 11/05/2014 03:26 PM    INDEX NO. 101288/2013

NYSCEF DOC. NO. 148                                 RECEIVED NYSCEF: 11/05/2014

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: ___JAFFE___                                    PART ___12___

_Justice_

NLG, LLC,                                               INDEX NO. 101288/13

-v-                                                     MOTION DATE _____

Hazan                                                   MOTION SEQ. NO. 005

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____     | No(s). 123-144

Answering Affidavits — Exhibits _____     | No(s). _____

Replying Affidavits _____     | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH**
**ACCOMPANYING DECISION / ORDER**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____
FOR THE FOLLOWING REASON(S): _____

Dated: __10/31/14__                                      _____, J.S.C.
                                                              BARBARA JAFFE
                                                                    J.S.C.

1. CHECK ONE: .....................................    ☐ CASE DISPOSED       ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: .............MOTION IS: ☒ GRANTED  ☐ DENIED  ☐ GRANTED IN PART   ☐ OTHER

3. CHECK IF APPROPRIATE: ..........................    ☐ SETTLE ORDER              ☐ SUBMIT ORDER

                                                      ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  :  IAS PART 12
------------------------------------------------------------------x

NLG, LLC,                                                     Index No. 101288/13

                            Plaintiff,     Mot. seq. no. 005

        - against -                              **DECISION AND ORDER**

ELIZABETH HAZAN,

                          Defendant.
------------------------------------------------------------------x

BARBARA JAFFE, J.:

        For defendant:
        Darius A. Marzec, Esq.
        Marzec Law Firm, PC
        225 Broadway, Ste. 3000
        New York, NY 10007
        212-267-0200

        By order to show cause, defendant moves for an order: (1) amending the caption to

change the plaintiff's name from NLG, LLC to Selective Advisors Group, LLC to reflect an

assignment of judgment; (2) directing the New York County Clerk to accept for filing the Florida

Circuit Court order of assignment, judicially assigning the underlying Florida judgment from

plaintiff to Selective; (3) directing the County Clerk to reflect on the docket of this case that the

Florida judgment between plaintiff against defendant, which has been domesticated, has been

satisfied; (4) directing the County Clerk to accept for filing the Satisfaction of Judgment or other

appropriate satisfaction piece; and (5) directing the County Clerk to remove and strike any

judgments of record in this action and in the action under Index No. 108020/08.

        The order to show cause was returnable on October 15, 2014. By email to court staff

dated October 9, 2014, Christopher Kosachuk, plaintiff's principal, sought an adjournment of the

oral argument on the motion on the ground that a motion was scheduled to be heard on

November 10, 2014 in a companion case before a different judge. As plaintiff and Kosachuk are represented by counsel, I rejected his email and directed him to communicate through his attorney. By email later that day, attorney Ari Mor, purporting to represent plaintiff, requested the adjournment. Mor, however, had not and has not entered an appearance on behalf of plaintiff, nor has plaintiff's current counsel withdrawn or been substituted. I thus declined the request for an adjournment.

On October 15, 2014, Mor appeared with Kosachuk at oral argument and again sought an adjournment. Given the circumstances attending Mor's appearance and the lack of candor reflected therein, I denied the request, and denied Kosachuk's request to speak to me as he is not a party in this action, nor may he, as a non-attorney, represent plaintiff.

The motion is thus submitted without opposition. Defendant has submitted proof that the foreign judgment entered against her and domesticated here was assigned, by order dated August 20, 2014 in the Florida Circuit Court, from plaintiff to Selective, and that by order of the same day, a satisfaction of judgment was filed reflecting that plaintiff's judgment against her had been satisfied. Thus, as defendant's motion has merit, it is

ORDERED, that defendant's motion is granted in its entirety; it is further

ORDERED, that the caption of this action is changed to substitute Selective Advisors Group, LLC in place of NLG, LLC; it is further

ORDERED, that the New York County Clerk is directed to accept for filing the Florida Circuit Court order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further

ORDERED, that the County Clerk is directed to reflect on the docket of this case that the

2

Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further

ORDERED, that the County Clerk is directed to accept for filing the Satisfaction of Judgment or other appropriate satisfaction piece; and it is further

ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action and in the action under Index No. 108020/08.

ENTER:

Barbara Jaffe, JSC

DATED:       October 30, 2014
             New York, New York

3

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

SHLOMO HAGLER
J.S.C.

PRESENT: _____
                    Justice

PART 17

9197-5904 Quebec, Inc

INDEX NO. 101875/12

MOTION DATE _____

MOTION SEQ. NO. 008

NLG, LLC

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____    No(s). _____

Answering Affidavits — Exhibits _____    No(s). _____

Replying Affidavits _____    No(s). _____

Upon the foregoing papers, it is ordered that this motion is denied

non-appearance at reconsider

FILED

RECEIVED

DEC 2 2 2015

NEW YORK
COUNTY CLERKS OFFICE

2:

GENERAL CLERK'S OFFICE
NYS SUPREME COURT - CIVIL

SHLOMO HAGLER
_____, J.S.C.
J.S.C.

Dated: 12/24/15

CHECK ONE: ..................................................    ☐ CASE DISPOSED    ☑ NON-FINAL DISPOSITION

CHECK AS APPROPRIATE: ....................MOTION IS:  ☐ GRANTED  ☑ DENIED    ☐ GRANTED IN PART    ☐ OTHER

CHECK IF APPROPRIATE: ...................................    ☐ SETTLE ORDER    ☐ SUBMIT ORDER

                                          ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

Scanned by CamScanner

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP, LLC,
AS ASSIGNEE OF 9197-5904
QUEBEC, INC.,

        Plaintiff.

vs.

NLG, LLC, a Delaware Limited
Liability Company,

        Defendant.

## ORDER ON DEFENDANT'S MOTION TO
## RECONSIDER OR RESCIND NON-FINAL ORDER GRANTING PLAINTIFF'S
## MOTION FOR PROCEEDINGS SUPPLEMENTARY AND FOR ORDER
## IMPLEADING THIRD PARTY AND PLAINTIFF'S MOTION TO STRIKE
## "DEFENDANT'S MOTION TO RECONSIDER OR RESCIND NON-FINAL
## ORDER GRANTING PLAINTIFF'S MOTION FOR PROCEEDINGS
## SUPPLEMENTARY AND FOR ORDER IMPLEADING THIRD PARTY"
## FOR LACK OF JURISDICTION

THIS CAUSE having come before the Court on November 10, 2015 on

Defendant's Motion to Reconsider or Rescind Non-Final Order Granting Plaintiff's

Motion for Proceedings Supplementary and for Order Impleading Third Party; *and*

Plaintiff's Motion to Strike "Defendant's Motion to Reconsider or Rescind Non-Final

Order Granting Plaintiff's Motion for Proceedings Supplementary and for Order

Impleading Third Party" for Lack of Jurisdiction, and after the Court hearing argument of

counsel, reviewing the pleadings on file and otherwise being fully advised in the

premises, it is hereby:

**ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Re-consider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and for Order Impleading Third Party is hereby **DENIED**.

2. Plaintiff's Motion to Strike "Defendant's Motion to Re-consider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and for Order Impleading Third Party" for Lack of Jurisdiction is hereby **MOOT**.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 11/16/15.

PETER R. LOPEZ
CIRCUIT COURT JUDGE

No Further Judicial Action Required on THIS
MOTION
CLERK TO RECLOSE CASE IF POST
JUDGMENT

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Copies furnished to:
Mark D. Cohen, Esq.

Juan Ramirez, Esq.

# EXHIBIT L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

9197-5904 QUEBEC, INC.,

Plaintiff,

-against-                                          16 Civ. 695 (CM)(JCF)

NLG LLC,

Defendant.

—————————————————————— x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/16

## ORDER "REMANDING" CASE

McMahon, CJ:

Herewith the history of this action:

On February 2012, the defendant confessed judgment in this action, brought by the plaintiff in the New York State Supreme Court, New York County.

On May 14, 2014, over two years later, defendant sought to vacate the confession of judgment.

On June 6, 2014, the Supreme Court denied the application for vacatur and marked the order "final disposition."

On June 17, 2014, plaintiff assigned its judgment to an entity known as Selective Advisors Group.

On September 4, 2015, Selective filed a satisfaction of judgment with the New York County Clerk.

On or about November 16, 2015, defendant – having paid the judgment – sought once again to have it vacated.

On December 21, 2015, the Supreme Court entered an order denying this application. No appeal was taken from this order.

On January 29, 2016, defendant filed a notice of removal to have the action transferred to this court.

Exhibits documenting the foregoing statements of fact will be found at Docket #1 and Docket #11 of the official docket of this action.

The Notice of Removal is a nullity. There was no live action to remove. The New York State Supreme Court entered judgment in this matter some years ago. That judgment has been satisfied. The case is over. A closed case cannot be removed.

According to defendant's counsel, who appeared at a conference before this court, defendant believes that the judgment was procured by fraud, and so made application to re-open the satisfied judgment. Its motion was denied. Instead of filing an appeal, defendant sent the case here. But this court does not sit as a Court of Appeals over the New York State Supreme Court.

The clerk of court is directed to return the file in this matter to the County Clerk, New York County and to close out the case on the court's docket.

Defendant's counsel has 14 days to show cause why he should not be personally sanctioned for wasting the court's time with this utterly frivolous matter.

Dated: July 20, 2016

Chief Judge

BY ECF TO ALL COUNSEL

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 16-10389-AJC
Chapter 11

IN RE:

Liza Hazan
a/k/a Elizabeth Hazan,

     Debtor.

_____/

**SECURED CREDITOR NLG, LLC'S REPLY TO NOTICE OF FILING OF**
**SUPPLEMENTAL FACTS AND AUTHORITY ON**
**BEHALF OF SELECTIVE ADVISORS GROUP**

COMES NOW Secured Creditor NLG, LLC (hereinafter "NLG"), by and through its undersigned counsel, and briefly replies to Selective Advisors Group's (hereinafter "Selective") Notice of Filing Supplemental Facts and Authority on Behalf of Selective Advisors Group [ECF No. 169] and states as follows:

1.     On August 19, 2016, Selective filed, obviously at the behest of its principal's wife the Debtor Liza Hazan a/k/a Elizabeth Hazan (hereinafter "Hazan")[1], supplemental facts and authority on its behalf and in opposition to NLG's Stay Relief Motion.

2.     In a fashion similar to Hazan, Selective alleges and raises arguments contesting NLG's standing to enforce its Foreclosure Judgment that were previously submitted to and repeatedly rejected by the Third District Court of Appeals of Florida and, upon remand and mandate, by Judge Monica Gordo of the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida. *See Exhibit "B" to NLG's Stay Relief Motion* [ECF No. 66-2] *and Exhibit 1 to NLG's Reply* [ECF No. 79-2].

---

[1] Selective's principal is Hazan's husband and, upon information and belief, resides in the subject property.

3.     In addition, and for the first time in these proceedings, Selective argues NLG's manager Chris Kosachuk has no "standing to bring any pleadings on NLG's behalf" and that he is not a proper representative of NLG.  However, these allegations and arguments were likewise presented to and rejected almost two years ago by the Third District Court of Appeals which specifically stated:

> "Regarding Ms. Hazan's affirmative defenses to the effect that NLG and its representative at trial lacked standing because of an internal dispute among the members, the trial court explicitly stated in the January 2, 2013, transcript (incorporated by the final judgment) that **NLG did have standing and that its representative (Mr. Kosachuk) was a proper representative of NLG**.

*See NLG, LLC v. Hazan*, 151 So. 3d 455, 457 (Fla. 3d DCA 2014) *and Exhibit "B" to NLG's Stay Relief Motion* [ECF No. 66-2].

4.     At hearings and via documents filed in these proceedings, that Hazan and now Selective have repeatedly presented arguments as to NLG's standing which are merely attempts to re-litigate matters in this Court that have already been decided upon by state courts of competent jurisdiction, namely the Circuit Court and the Third District Court of Appeals, and that resulted in the entry of a Final Judgment of Mortgage Foreclosure in favor of NLG which, to this date, remains unsatisfied.  *See Exhibit "A" to NLG's Stay Relief Motion* [ECF No. 66-1].

5.     The law on this issue is that "[f]ederal courts are required to give state records and judicial proceedings full faith and credit pursuant to 28 U.S.C. § 1738 and **federal courts will not allow a matter to be relitigated in federal court after the state court has entered a foreclosure judgment**.  *Collado v. Onewest Bank, FSB (In re Collado)*, 2010 Bankr. LEXIS 2859 (Bankr. S.D. Fla. 2010); *see United States v. Warford,* 791 F.2d 1519 (11th Cir. 1986).

6.     Despite the multitude of documents filed of record in these proceedings and knowing the current status of the law, Hazan, Selective, and their respective attorneys continue

to raise these already decided-upon matters in hopes of further delaying these proceedings as part of a collective campaign intended on delaying NLG's ability to finalize the foreclosure of the subject property by way its foreclosure sale. Such efforts not only frustrate the objective of these bankruptcy proceedings to the detriment of the creditor body, they may constitute grounds for sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, NLG respectfully submits that this Court grant its Motion for Relief from Automatic Stay [ECF No. 66] for all of the reasons set forth in the records of these proceedings; reserve ruling on an issuance of sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure to allow NLG an opportunity to file the appropriate motion(s); and grant any other and further relief this Court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and with the Clerk of Court using the CM/ECF system served on all parties on the attached service list on this 19th day of August, 2016.

**LAW OFFICE OF ALEXIS GONZALEZ, P.A.**
3162 Commodore Plaza, Suite 3E
Coconut Grove, FL 33133
Tel.: (305) 223-9999
Fax: (305) 223-1880

BY: */s/ Alberto H. Orizondo*
      Alberto H. Orizondo, Esq.
      Fla. Bar. No. 70176
      aorizondo@aglawpa.com

### SERVICE LIST FOR CASE NUMBER 16-10389-AJC

| | |
|---|---|
| Joel M. Aresty, Esq.<br>**Joel M. Aresty, P.A.**<br>aresty@mac.com<br>*Attorneys for Debtor Liza Hazan a/k/a Elizabeth Hazan* | Kevin L. Hing, Esq.<br>**Shapiro, Fishman & Gache, LLP**<br>Email: khing@logs.com<br>*Attorneys for Creditor JPMorgan Chase Bank, N.A.* |
| David B. Haber, Esq.<br>**Haber Slade, P.A.**<br>Email: dhaber@dhaberlaw.com<br>*Attorney for Creditor Valencia Estates Homeowners' Association, Inc.* | Robert A. Gusrae, Esq.<br>Email: robert.gusrae@gmail.com<br>*Attorney for Creditor Fisher Island Community Association, Inc.* |
| Jeffrey S. Fraser, Esq.<br>**Albertelli Law**<br>Email: bkfl@albertellilaw.com<br>*Attorney for Creditor Southeast Financial, LLC* | Elizabeth J. Campbell, Esq.<br>**Locke Lord LLP**<br>Email: ecampbell@lockelord.com<br>*Attorney for Creditor JMB/Urban 900 Development Partners, LLC* |
| Robert C. Furr, Esq.<br>**Furr and Cohen, P.A.**<br>Email: rfurr@furrcohen.com<br>*Attorney for Creditor Board of Managers of Spencer Condominium* | Adam A. Diaz, Esq.<br>**SHD Legal Group, P.A.**<br>Email: adiaz@shdlegalgroup.com<br>*Attorney for Creditor U.S. Bank National Association* |
| Office of the US Trustee<br>51 SW 1st Ave.<br>Suite 1204<br>Miami, Florida 33130<br>Email: USTPRegion21.MM.ECF@usdoj.gov<br>*U.S. Trustee* | Sheleen G. Khan, Esq.<br>**Law Office of Sheleen G. Khan**<br>Email: sgklaw@icloud.com<br><br>Todd M. Mosser, Esq.<br>**Mosser Legal, PLLC**<br>Email: todd@mosserlegal.com<br><br>*Attorneys for Selective Advisors Group, LLC* |
| Courtesy copy to:<br><br>Geoffrey S. Aaronson, Esq.<br>Jeremy D. Evans, Esq.<br>Tamara D. McKeown, Esq.<br>**Aaronson Schantz Beiley P.A.**<br>Email:  gaaronson@aspalaw.com;<br>jevans@aspalaw.com;<br>tdmckeown@mckeownpa.com | |

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:

LIZA HAZAN                                          Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,
                                                   Chapter 11

      Debtor.
_____/

SELECTIVE ADVISORS GROUP, LLC,
                                                   ADV. NO.:

      Plaintiffs,

v.

NLG, LLC, a Delaware limited liability
company,

      Defendant.
_____/

## COMPLAINT

Plaintiff SELECTIVE ADVISORS GROUP, LLC ("Plaintiff"), through undersigned counsel and pursuant to Rules 7001, *et seq.*, of the Federal Rules of Bankruptcy Procedure, and 11 U.S.C. §§ 105, 363, 541, 542 and 544, sues Defendant, NLG, LLC and states and alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This is an adversary proceeding for declaratory relief, for determination of the validity, priority and extent of lien(s) asserted by NLG, LLC and to avoid said lien(s) pursuant to 11 U.S.C. § 544.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

3.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), and (O).

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

## II.      PARTIES

5.      Selective Advisors Group, LLC ("Selective Advisors") is a Delaware limited liability company.

6.      NLG, LLC ("NLG") is a Delaware limited liability company.

7.      NLG is a wholly owned subsidiary of Meridian Trust Company, LTD, a Nevis Company with an address of Hunkins Plaza, Main Street, Suite 556, Charlestown, Nevis, West Indies.

## III.      BACKGROUND

8.      Debtor Liza Hazan's main asset is real property located at 6913 Valencia Drive, Miami Beach, FL 33109 (the "Property").

9.      NLG's claim against the Debtor arises from an alleged promissory note and mortgage in the amount of $1,275,000 on the Property. The alleged note and mortgage in favor of NLG were the subject of lengthy state and federal court litigation, in multiple States. NLG obtained a Judgment of Foreclosure on December 4, 2015. The alleged note and mortgage in favor of NLG were judicially assigned to Selective.

10.     Selective is the judicial owner of NLG's Judgment of foreclosure.

11.     On or about April 21, 2014, 9197-5904 Quebec Inc, as a judgment creditor of NLG, brought an action against NLG in Miami-Dade County Circuit Court, Case No. 14-10475, seeking to domesticate a final judgment entered in New York in favor of 9197-5904 Quebec, Inc.

in the amount of $5,000,225.00 plus statutory interest and against NLG and for proceedings supplementary to execute upon this foreign judgment.

12.    On or about May 5, 2014, the lawfully acquired foreign judgment against NLG was assigned to Selective Advisors. The assignment was recorded in Official Records Book 29137 at Pages 3128-3131 of the public Records of Miami-Dade County Florida. A copy of the Assignment of Judgment is attached hereto as Exhibit A.

13.    On June 16, 2014, Judge Peter Lopez ordered NLG to post a bond in the amount of $5,450,000.

14.    After no bond was posted, the State Court ordered execution on the $5,000,225.00 plus interest and ordered that Selective Advisors has all rights to execute.

15.    The state court inquired into all of the issues relating to said assignment including consideration therefor and made specific determinations that NLG would be credited against the amount of the New York Judgment with the sum of approximately $2,746,953.34 being the value and/or amount of a prior judgment and/or promissory note and mortgage NLG was claiming to hold against the Debtor in Miami-Dade County, Florida.

16.    The State Court held in his final Order dated August 20, 2014 that: "The Hazan final judgment held by NLG, LLC against Elizabeth Hazan and all of NLG, LLC's rights, Claims and Benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-Assignee Selective Advisors Group, LLC, a Delaware Limited Liability Company. Plaintiff-Assignee, Selective Advisors Group, LLC shall stand in the shoes of NLG, LLC with respect to all claims, rights and benefits held by NLG, LLC, so as to be entitled to recover all amounts attributable to said judgment against Elizabeth Hazan, with NLG, LLC receiving credit for all sums so received. Plaintiff, Selective Advisors Group, LLC, shall give a credit to Defendant

3

NLG, LLC in the sum of $2,746,953.34, which amount included principal and interest through August 31, 2014, at the 11% judgment rate without prejudice to Defendant establishing at further hearing why the credited amount should be greater."

17.     Numerous hearings were held by the state court and all parties were afforded an opportunity to present evidence on the subject of the Foreign Judgment and proceedings supplementary resulting in numerous orders being entered by the state court.  Honorable Judge Peter Lopez specifically judicially assigned on August 20, 2014 the judgment, rights, claims and Benefits held by NLG against the Debtor to Selective Advisors. A copy of the Order granting Selective Advisors Motion for Proceedings Supplementary Proceedings is attached hereto as Exhibit B.

18.      On or about August 20, 2014 Selective Advisors satisfied the NLG judgment, mortgage against the Debtor and released the Debtor from all NLG'S claims. Selective Advisors gave a credit of $2,746,953.34 to NLG as per Judge Lopez's Court Order dated August 20, 2014.

19.     On October 30, 2014, NY Judge Barbara Jaffee recognized the Judge Lopez Order of assignment of NLG's judgment and mortgage against Elizabeth Hazan and had all NLG's judgments against the Debtor stricken of record and changed the caption in the action from NLG to Selective Advisors Group.On November 13, 2014, Judge Jaffee dismissed NLG's lis pendens and recognized the Selective Advisors' satisfaction of judgment against Elizabeth Hazan recorded in FL by Selective Advisors Group

20.     On or about September 30, 2015, Selective Advisors filed a Satisfaction of Judgment wherein Selective Advisors acknowledged partial payments by NLG, as per the order of the state court dated August 20, 2014, whereby all of NLG's judgment, rights and benefits

against the Debtor to Selective Advisors were paid in full and satisfied. A copy of the Satisfaction of Judgment is attached hereto as Exhibit C.

21.     On October 1, 2105, NLG, LLC moved to vacate and cancel Foreign Judgment and close the case. Based on the pleadings on file and the arguments of counsel, Judge Lopez entered an Order essentially denying said motion thereby, once again, confirming the rights of Creditor Selective Advisors.

22.     On October 26, 2015, NLG, LLC filed a motion to Reconsider or Rescind the Order Granting Selective Advisors's Motion for Proceedings Supplementary, and Strike The assignment of NLG's judgment against the Debtor to Selective Advisors once again, after notice, argument of counsel, and the State Court ruled on November 16, 2015 that "Defendant's Motion to Re-Consider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and Order Impleading Supplementary and Order Impleading Third Party is hereby Denied. Plaintiff's Motion to Strike Defendant's Motion to Reconsider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and for Order Impleading Third Party for Lack of Jurisdiction is hereby moot".

23.     On December 21, 2015, NLG's motion to restore its motion to vacate the Selective judgment was also denied.

24.     On January 11, 2016 Debtor filed for Chapter 11 bankruptcy protection

25.     On January 29, 2016, NLG violated the bankruptcy stay by filing a new action in United States Court New York Southern District Court to set aside for the 6th or 7th time the Selective lawful valid final judgment against NLG hoping to prevail in striking the assignment of NLG's judgment and mortgage against Debtor Hazan to Selective.

26.     On July 21, 2016 Honorable Chief Judge Colleen McMahon ruled in favor of Selective and against NLG validating one more time Selective's judgment against NLG and resolving all the fraud NLG's allegations.

27.      During the course of multi-state execution proceedings, it has become clear that Mr. Kosachuk has no authority to act on behalf of NLG, LLC.

28.     Meridian Trust Company is the only proper party to bind NLG.

29.     Kosachuk has no standing to represent NLG.

30.     On July 20, 2016, the District Court for the Southern District of New York entered an Order "Remanding" Case and holding that the judgment properly held by Selective was satisfied and the case was over.  The Court further held that the Defendant must show cause as to why it should not be sanctioned for wasting the Court's time.  A true and correct copy of the Order "Remanding" Case is attached hereto as Exhibit C.

## IV.     CAUSES OF ACTION

### COUNT I – TO DETERMINE THE EXTENT, VALIDITY AND PRIORITY OF NLG, LLC'S CLAIM OF LIEN

31.     The Plaintiff incorporates and realleges paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32.     Plaintiff requests a determination by this Court of the amount, extent, validity, perfection, priority and enforceability of NLG, LLC's lien right(s) on the Property.

33.     A determination by this Court of the amount, extent, validity, perfection, priority and enforceability of the lien claimed by NLG is necessary for the proper administration of this estate.

34.     All conditions precedent to bringing this action have been performed or have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order:

(a)  determining the extent, validity, perfection, priority, and enforceability of Defendant, NLG, LLC's lien rights on the Property.

(b)  determining that the Defendant, NLG, LLC holds no lien on the Property;

(c)  determining, alternatively, that the Defendant, NLG, LLC's lien rights are inferior to Selective Advisors; and

(d)  granting such other and further relief as this Honorable Court deems just and proper.

## COUNT II – AVOIDANCE OF NLG, LLC'S SECURITY INTEREST PURSUANT TO 11 U.S.C. § 544

35.  Plaintiffs incorporates and realleges paragraphs 1 through 30 of this Complaint as though fully set forth herein.

36.  Chris Kosachuk has no authority to bind NLG

37.  NLG's Final Judgment against the Debtor and all rights, claims and benefits held against the Debtor were judicially assigned to Selective Advisors by operation of law.

38.  Selective Advisors stood in the shoes of NLG, LLC with respect to judgment, all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against Debtor.

39.  On August 31, 2014, Selective Advisors gave a credit to NLG, LLC in the sum of $2,746,953.34.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order determining avoidance of NLG, LLC's security interest pursuant to 11. U.S.C. § 544 and granting such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

**MARSHALL SOCARRAS GRANT, P.L.**
197 South Federal Highway, Suite 300
Boca Raton, Florida  33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email:  jgrant@msglaw.com


By:   /s/ Joe M. Grant
       JOE M. GRANT
       Florida Bar No. 137758
       ADAM D. MARSHALL
       Florida Bar No. 579823

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA

9197-5904 QUEBEC INC

Plaintiff,

CASE No.: 14-10475CA10

-against-

NLG, LLC

Defendant.

## Assignment of Judgment

In exchange for Ten Dollars ($10.00) and other valuable consideration received, receipt of which is acknowledged, I, 9197-5904 Quebec, Inc., a foreign corporation, located at 5552 Queen Mary Road suite #4 Hampstead, Quebec, HJX 1V9, Canada ("Assignor"), assigns to Selective Advisors Group,LLC , of Delaware, ("Assignee"), located at 16192 Coastal Highway Lewes, DE 19958 County of Sussex, all of Assignor's rights, entitlements, title, interests, and remedies in and to that certain judgment entered in NYC Supreme Court on February 22nd 2012 index number 101875-2012 and which Judgment was recorded on April 21, 2014 in Miami-Dade County, State of Florida , under case number 2014-10475-CA-01.

Assignor represents and warrants that the Judgment is unsatisfied and it has not been assigned, transferred, hypothecated in whole or in part to any other party outside of this Assignment.

This assignment is without recourse, and Assignor does not guarantee payment of the judgment assigned. However, Assignor does agree that it will not release or discharge this judgment, and that in the event any payment under the judgment is made to it, it will promptly transmit it to Assignee.

Dated: 04/30/2014

Assignor
9197-5904 Quebec, Inc.

By: _Raymond Houle_

RAYMOND HOULE, President

ACKNOWLEDGMENT

Province de Québec

STATE OF                    )
                           ) :SS
COUNTY OF                  )   d'Mvg- HeGoa.
Comté d'Mvg- HeGoa.

On the 30th day of April 2014 before me personally appeared RAYMOND HOULE to be known and known to me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that he executed the same.

In Witness Thereof The Assignors Set Their Hand And Seal the day and year first written above:

Assignor:9197-5904 Quebec, Inc

_____           _____
By: RAYMOND HOULE, President        Witness:

Notary Public:

_____

The foregoing instrument was acknowledged before me this 30 day of April 2014 by Raymond Houle, President of 9197-5904 Quebec, Inc, who is personally known to me or who presented _____ as identification, and who did execute the aforesaid Assignment of Judgment.

AFFIRMATION SOLENNELLE
SOLEMN AFFIRMATION
Signée à Montréal
Signed at Montreal
DATE: 30/04/2014
_____
PIERRETTE TARDIF
Commissaire à l'assermentation
Commissioner of Oaths
No. 198836

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP, LLC,
AS ASSIGNEE OF 9197-5904 QUEBEC, INC.

    Plaintiff,

vs.

NLG, LLC

    Defendant.

_____/

### SATISFACTION OF JUDGMENT

KNOW ALL MEN BY THESE PRESENTS that Plaintiff SELECTIVE ADVISORS GROUP,

LLC, a Delaware Limited Liability Company, as Assignee of 9197-5904 Quebec, Inc's judgment against

NLG, LLC in this action, of the Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County,

Florida, which said judgment was domesticated from New York in Florida on April 21, 2014. The

judgment was entered in New York on February 22, 2015 in the original amount of **$5,000,225.00** against

the Defendant, NLG, LLC. Said judgment being recorded in the minutes of this court and a copy thereof

having been recorded on April 25, 2014 in Official Records **Document number CFN2014R0298781**

**Book 29124 Pages 4766-4772** of the public records of Miami-Dade **County, Florida**, Said judgment

was assigned by 9197-5904 Quebec, Inc to Selective Advisors Group, LLC on April 30, 2014 and

recorded on May 05, 2014 in Official Records **Document number CFN2014R0322571 Book 29137**

**Pages 3128-3131** of the public records of Miami-Dade County, Florida. Said judgment being recorded in

the minutes of said court and a copy thereof having been recorded on April 25, 2014 in Official Records

**Document number CFN2014R0298781 Book number 29124 Pages 4766-4772** of the public records of

Miami-Dade **County, Florida,** does hereby acknowledge partial payments by NLG, LLC as per Court

Order dated August 20, 2014 by Honorable Judge Peter Lopez assigning all NLG, LLC judgment, rights

and benefits against Elizabeth Hazan to Selective Advisors Group, LLC deemed as full payment and

satisfaction thereof and hereby consents that the same shall be satisfied of record.

Witness our hand and seal this $\overset{th}{30}$ day of September 2015.

By: _____

SELECTIVE ADVISORS GROUP, LLC
As PLAINFTIFF –ASSIGNEE
Manager Sean Neil Meehan

STATE OF FLORIDA )
                 : SS
COUNTY OF migmi Qsbe )

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP, LLC, who is personally known to me or who has produced her drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at migmi Besdy County of migmi Osle , Florida, on this $\overset{th}{30}$ day of September 2015.

NOTARY PUBLIC

My commission expires: 03 - 06 2060

RAUL L. CHAVARRIA
MY COMMISSION # EE 173519
EXPIRES: March 6, 2016
Bonded Thru Budget Notary Services

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————x

9197-5904 QUEBEC, INC.,

        Plaintiff,

     -against-                          16 Civ. 695 (CM)(JCF)

NLG LLC,

        Defendant.

————————————————————————————x

ORDER "REMANDING" CASE

McMahon, CJ:

     Herewith the history of this action:

     On February 2012, the defendant confessed judgment in this action, brought by the plaintiff in the New York State Supreme Court, New York County.

     On May 14, 2014, over two years later, defendant sought to vacate the confession of judgment.

     On June 6, 2014, the Supreme Court denied the application for vacatur and marked the order "final disposition."

     On June 17, 2014, plaintiff assigned its judgment to an entity known as Selective Advisors Group.

     On September 4, 2015, Selective filed a satisfaction of judgment with the New York County Clerk.

     On or about November 16, 2015, defendant – having paid the judgment – sought once again to have it vacated.

     On December 21, 2015, the Supreme Court entered an order denying this application. No appeal was taken from this order.

On January 29, 2016, defendant filed a notice of removal to have the action transferred to this court.

Exhibits documenting the foregoing statements of fact will be found at Docket #1 and Docket #11 of the official docket of this action.

The Notice of Removal is a nullity. There was no live action to remove. The New York State Supreme Court entered judgment in this matter some years ago. That judgment has been satisfied. The case is over. A closed case cannot be removed.

According to defendant's counsel, who appeared at a conference before this court, defendant believes that the judgment was procured by fraud, and so made application to re-open the satisfied judgment. Its motion was denied. Instead of filing an appeal, defendant sent the case here. But this court does not sit as a Court of Appeals over the New York State Supreme Court.

The clerk of court is directed to return the file in this matter to the County Clerk, New York County and to close out the case on the court's docket.

Defendant's counsel has 14 days to show cause why he should not be personally sanctioned for wasting the court's time with this utterly frivolous matter.

Dated: July 20, 2016

_____
Chief Judge

BY ECF TO ALL COUNSEL

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

In re:

                                          Chapter 11

LIZA HAZAN
a/k/a ELIZABETH HAZAN,                      Case No. 16-10389-AJC

        Debtor,
_____/

## CREDITOR SELECTIVE ADVISORS GROUP, LLC'S RESPONSE TO REPLY FILED BY NLG TO NOTICE OF FILING OF SUPPLEMENTAL FACTS AND AUTHORITY ON BEHALF OF SELECTIVE ADVISORS GROUP, LLC

Creditor, Selective Advisors Group, LLC ("Selective"), by and through its undersigned counsel, by way of this filing, respectfully states:

NLG, LLC does not and cannot deny that Chief Judge McMahon of the Southern District of New York, on July 21, 2016, has held that (i) the underlying Judgment against NLG, LLC was assigned on June 2014 to Selective Advisors Group, LLC and (ii) that the Selective judgment against NLG was a good, valid judgment and not a fraud as alleged by NLG. Neither does NLG deny (nor can it) that Chief Judge McMahon's order reflects that all attempts made by NLG to vacate the Selective Judgment were denied. Attached hereto as Exhibit "A" is the Order "Remanding" Case. Moreover, NLG does not deny (and cannot deny) that NLG violated the bankruptcy stay by filing this action in the Southern District of New York, hoping to set aside the assignment of the NLG mortgage and Judgment against Debtor to Selective after Debtor's bankruptcy filing without seeking relief from stay from this Honorable bankruptcy court. Thus, NLG should be held in contempt for violating the bankruptcy stay.

## SELECTIVE ADVISORS GROUP, LLC SATISFIED
## THE NLG JUDGMENT AGAINST DEBTOR

On August 20, 2014, Selective became the assignee of the NLG's Judgment on the promissory note signed by debtor in 2007 also secured by a mortgage on debtor fisher island residence ("the Scola judgment"). All the NLG's claims, benefits and rights against the debtor were also assigned to Debtor and Selective provided a credit of the Scola judgment entered on April 28, 2008 at 11% in a total amount of $2,746,953.34 to NLG. Selective satisfied the NLG's judgment and mortgage against debtor. Attached as Exhibit "B" true and correct copies of the satisfactions of the judgment and mortgage filed of record by Selective of NLG's judgment and mortgage against the debtor.

## SELECTIVE IS THE SCHEDULED SECURED CREDITOR ON
## DEBTOR'S SCHEDULES AND NLG IS MERELY A NOTICE PARTY

NLG in its reply attempts to distract this Court by making arguments that have already been disclosed to this Court. The fact that Selective is owned by Debtor's husband is totally irrelevant and has already been disclosed by both Debtor and Selective.

NLG is not a scheduled creditor but was listed for notice purposes only. Selective is the secured creditor in this bankruptcy case and the balance is zero as Selective filed satisfactions of the Mortgage and the Judgment. NLG also did not file a proof of claim, is not an interested party and is not a creditor in this case.

The moving party must have standing to seek relief from stay. It must be the "real party in interest." Generally, the "real party in interest" is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit. *Coe v. United States District Court for the District of Colorado,* 676 F.2d 411, 415 (10th Cir.1982); *see Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 256-57 (5th Cir.1980); *Virginia Electric & Power Co. v. Westinghouse Electric Corp.,* 485 F.2d 78, 83 (4th

2

Cir.1973), *cert. denied,* 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974); *Weniger v. Union Center Plaza Associates,* 387 F.Supp. 849, 855 (S.D.N.Y.1974); *seegenerally* 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 17.07 (2d ed. 1979); 6 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1543-1544 (1971); *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983). In this Court, assuming proper jurisdiction over the debtor, the issue of standing is one to be determined by this Court. *See In re Miller*, *supra.*

NLG lacks standing in this case for various reasons. Its claim was judicially assigned by the Florida Circuit Court to Selective. Selective, not NLG, is the real party in interest, and all rights and interests in the NLG foreclosure action passed to Selective. The benefits of the NLG appeal, and the right to proceed to foreclose has been judicially assigned, and is now assigned, to Selective. Moreover, NLG is not a scheduled creditor of this case, and has not filed a claim against this estate, and therefore lacks standing as a "party in interest." *In re E.S. Bankest, L.C.* 321 B.R. 590 (Bankr. S.D. Fla. 2005).

Selective has satisfied the judgment and mortgage therefore the Debtor has equity in this property and needs the property to proceed with its reorganization. Courts have held that a defendant in an adversary proceeding, unscheduled, and without a proof of claim, does not have standing to participate in a bankruptcy proceeding. *Forman v. Youngman*, No. CIV. 13-5877, 2014 WL 2763608, at *3 (D.N.J. June 17, 2014), *appeal dismissed* (Feb. 10, 2015); *See In re FBN Food Servs.,* 1995 WL 230958 (N.D.Ill.1995) (holding that a defendant in an adversary proceeding does not have standing to object to a creditor's claim in the main case); *In re MarketXT Holdings Corp.,* 336 B.R. 67 (Bankr.S.D.N.Y.2006) ("An entity's status as a defendant in an adversary proceeding does not make it a 'party in interest' entitled to intervene in other adversary proceedings...."); *See also In re O'Brien Environmental Energy, Inc.,* 181 F.3d

527, 531 (3d Cir.1991) (finding that even prospective purchasers of property lack standing to object to a sale).

### NLG LACKS STANDING TO FILE ANY PLEADINGS IN THIS CASE

NLG relies upon an Order dated September 3, 2014 in the Hazan/NLG legal proceedings (*NOT* SELECTIVE/NLG proceedings), that "Kosachuk is the proper NLG spokesman by citing the following: "NLG did have standing and that its representative (Mr. Kosachuk) was a proper representative of NLG".

This argument lacks candor. Those NLG/HAZAN proceedings cited by Kosachuk have nothing to do with Selective's rights to pursue under their lawful judgment who the real owner of NLG is and to depose Chris Kosachuk and to pursue discovery available to it in judgment execution proceedings. NLG fails to disclose that Selective continued pursuing collection efforts in multiple states and served discovery requests to produce documents upon NLG's counsel in Florida and New York in 2014 and 2015**,** as Kosachuk's ever changing stories and lies about NLG's ownership continued and remain unresolved**.** Selective served discovery requests upon NLG and its counsel to produce documents related to ownership of NLG in September, October and December 2014 and 2015 and also continued same in 2015 in the New York proceedings. Since 2009, Kosachuk never produced any responsive documents, when Quebec (judgment predecessor) then Selective started collection efforts in multiple states. Chris Kosachuk has never produced a shred of evidence in any court, which has led to him being held in contempt of courts. Kosachuk said he could not recall who he is talking to at NLG, he does not have a phone number at Meridian Trust Company (alleged owner of NLG) in Nevis, or Luxcom (another alleged owner of NLG) or some mysterious Companies in the British Virgin Islands. All the research and efforts made by Quebec and Selective to discover whether Luxcom, Merdian exist have revealed that Kosachuk has utterly fabricated NLG's ownership history. Kosachuk also

4

testified that NLG does not file tax returns.

WHEREFORE, the NLG Motion for Relief should be denied, and the Court should enter any other further relief it deems appropriate under these circumstances.

Respectfully submitted,

**MARSHALL SOCARRAS GRANT, P.L.**
*Attorneys for Creditor,*
*Selective Advisors Group, LLC*
197 South Federal Highway, Suite 200
Boca Raton, Florida 33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email: jgrant@msglaw.com

By: /s/ *Joe M. Grant*
      JOE M. GRANT
      Florida Bar No. 137758

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system and served on all parties listed on the attached service list on this 22nd day of August, 2016.

/s/ *Joe M. Grant*
      JOE M. GRANT

**SERVICE LIST**

**VIA CM/ECF**

Joel M. Aresty, Esq.
aresty@mac.com

Kevin L Hing, Esq.
khing@logs.com

David B. Harber, Esq.
dhaber@dhaberlaw.com

Robert A. Gusrae, Esq.
Robert.gusrae@gmail.com

Jeffrey S. Fraser, Esq.
bkfl@albertellilaw.com

Elizabeth J. Campbell, Esq.
ecampbell@lockelord.com

Robert C. Furr, Esq.
rfurr@furrcohen.com

Adam A. Diaz, Esq.
adiaz@shdlegalgroup.com

Office of the U.S. Trustee
USTPRegion21.MM.ECF@usdoj.gov

Sheleen G. Khan, Esq.
sgklaw@icloud.com

Todd M. Mosser, Esq.
todd@mosserlegal.com

**VIA U.S. MAIL**

All creditors and interested parties on the attached Court matrix

IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA

9197-5904 QUEBEC INC

        Plaintiff,

                                      CASE No.: 14-10475CA10

-against-

NLG, LLC

               Defendant.

## Assignment of Judgment

In exchange for Ten Dollars ($10.00) and other valuable consideration received, receipt of which is acknowledged, I, 9197-5904 Quebec, Inc., a foreign corporation, located at 5552 Queen Mary Road suite #4 Hampstead, Quebec, H3X 1V9, Canada ("Assignor"), assigns to Selective Advisors Group,LLC , of Delaware, ("Assignee"), located at 16192 Coastal Highway Lewes, DE 19958 County of Sussex, all of Assignor's rights, entitlements, title, interests, and remedies in and to that certain judgment entered in NYC Supreme Court on February 22ⁿᵈ 2012 index number 101875-2012 and which Judgment was recorded on April 21, 2014 in Miami-Dade County, State of Florida , under case number 2014-10475-CA-01.

Assignor represents and warrants that the Judgment is unsatisfied and it has not been assigned, transferred, hypothecated in whole or in part to any other party outside of this Assignment.

This assignment is without recourse, and Assignor does not guarantee payment of the judgment assigned. However, Assignor does agree that it will not release or discharge this judgment, and that in the event any payment under the judgment is made to it, it will promptly transmit it to Assignee.

Dated: 04/30/2014

Assignor
9197-5904 Quebec, Inc.

By: _____

RAYMOND HOULE, President

ACKNOWLEDGMENT

Province de Québec

STATE OF )

County d'Mey - HeGaa :SS
COUNTY OF )

On the 30th day of April 2014 before me personally appeared RAYMOND HOULE to be known and known to me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that he executed the same.

In Witness Thereof The Assignors Set Their Hand And Seal the day and year first written above:

Assignor:9197-5904 Quebec, Inc

By: RAYMOND HOULE, President

Witness:

Notary Public:

The foregoing instrument was acknowledged before me this 30 day of April 2014 by Raymond Houle, President of 9197-5904 Quebec, Inc, who is personally known to me or who presented _____ as identification, and who did execute the aforesaid Assignment of Judgment.

AFFIRMATION SOLENNELLE
SOLEMN AFFIRMATION
Signée à Montréal
Signed at Montreal
DATE: 30/04/2014

PIERRETTE TARDIF
Commissaire à l'assermentation
Commissioner of Oaths
No. 198836

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP, LLC,
AS ASSIGNEE OF 9197-5904 QUEBEC, INC.

Plaintiff,

vs.

NLG, LLC

Defendant.

_____/

## SATISFACTION OF JUDGMENT

KNOW ALL MEN BY THESE PRESENTS that Plaintiff SELECTIVE ADVISORS GROUP,

LLC, a Delaware Limited Liability Company, as Assignee of 9197-5904 Quebec, Inc's judgment against

NLG, LLC in this action, of the Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County,

Florida, which said judgment was domesticated from New York in Florida on April 21, 2014. The

judgment was entered in New York on February 22, 2015 in the original amount of $5,000,225.00 against

the Defendant, NLG, LLC. Said judgment being recorded in the minutes of this court and a copy thereof

having been recorded on April 25, 2014 in Official Records **Document number CFN2014R0298781**

**Book 29124 Pages 4766-4772** of the public records of Miami-Dade **County, Florida,** Said judgment

was assigned by 9197-5904 Quebec, Inc to Selective Advisors Group, LLC on April 30, 2014 and

recorded on May 05, 2014 in Official Records **Document number CFN2014R0322571 Book 29137**

**Pages 3128-3131** of the public records of Miami-Dade County, Florida. Said judgment being recorded in

the minutes of said court and a copy thereof having been recorded on April 25, 2014 in Official Records

**Document number CFN2014R0298781 Book number 29124 Pages 4766-4772** of the public records of

Miami-Dade **County, Florida,** does hereby acknowledge partial payments by NLG, LLC as per Court

Order dated August 20, 2014 by Honorable Judge Peter Lopez assigning all NLG, LLC judgment, rights

and benefits against Elizabeth Hazan to Selective Advisors Group, LLC deemed as full payment and

satisfaction thereof and hereby consents that the same shall be satisfied of record.

Witness our hand and seal this 30th day of September 2015.

By: _____

SELECTIVE ADVISORS GROUP, LLC
As PLAINFTIFF –ASSIGNEE
Manager Sean Neil Meehan

STATE OF FLORIDA          )
                          : SS
COUNTY OF miqm· Osle      )

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP, LLC, who is personally known to me or who <u>has produced her drivers' license</u> as identification and who did take an oath.

WITNESS my hand and official seal at m·iymi Berd, County of miami Osle , Florida, on this 30th day of September 2015.

_____
NOTARY PUBLIC

My commission expires: 03 - 06·2d/0

RAUL L. CHAVARRIA
MY COMMISSION # EE 173519
EXPIRES: March 6, 2016
Bonded Thru Budget Notary Services

CFN 2014R0585096
OR Bk 29278 Pgs 3967 - 3973; (7pgs)
RECORDED 08/21/2014 11:00:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# DOCUMENT COVER PAGE

For those documents not providing the **required**
space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to
prohibit its transference to another document.

An additional recording fee for this page must be remitted.

(Space above this line reserved for recording office use)

**Document Title:** _Satisfaction of Mortgage_
(Mortgage, Deed, Construction Lien, Etc.)

**Executing Party:** _____

_____

**Legal Description:** _____
(If Applicable)

As more fully described in above described document.

**Return Document To / Prepared By:**

_____

_____

_____

---

**F.S. 695.26 Requirements for recording instruments affecting real property—**

**(Relevant excerpts of statute)**

(1) No instrument by which the title to real property or any interest therein is
conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the
clerk of the circuit court unless:

(e) **A 3-inch by 3-inch space at the top right-hand corner on the first page**
and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page
are reserved for use by the clerk of the court...

CLK/CT 155 Rev. 04/11

https://www2.miami-dadeclerk.com/officialrecords/PrintDocument.aspx?QS=YaoUfOzxry396xbv017wsCH7paMSQ2J5PhPkZ8JSLyr6FB0Nd%2fslucejZNIQrf...    1/7

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

NLG,LLC, a Delaware Limited
Liability Company
      Plaintiff,

CASE NO: 07-19532 CA(11)

Vs.

**SATISFACTION OF MORTGAGE**

ELIZABETH HAZAN,
      Defendant.
_____/

**SATISFACTION OF MORTGAGE**

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company, as Assignee of NLG, LLC's Judgment and All Rights, Claims and Benefits against Elizabeth Hazan in this action, pursuant to the Court Order dated August 20, 2014 in Case number **14-10475 CA(10)** of the Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County, Florida, and attached herein, said judicial judgment and All Rights, Claims and Benefits assignment being recorded on August 20, 2014 in Official Book **29277 Pages 3289-3292 Document number 2014R0583040** of the Public records of Miami-Dade County, Florida, the judgment and All Rights, Claims and Benefits Assignee, wherein a Promissory Note and Mortgage in the face amount of $1,275,000.00 were dated March 8, 2007, signed by ELIZABETH HAZAN in the Favor of NLG,LLC and being recorded in the minutes of said court and a copy thereof having been recorded on April 24, 2007 in Official Records **Document number CFN2007R0410013 Books 25559 Page 4266-4272** of the public records of **Miami-Dade County, Florida**, of the public records of Miami-Dade County, Florida, does hereby acknowledge full payment of the Promisory Note and mortgage and satisfaction thereof and hereby consents that the same shall be satisfied of record.

https://www2.miami-dadeclerk.com/officialrecords/PrintDocument.aspx?QS=YaoUfOzxry396xbv017wsCH7paMSQ2J5PhPkZ8JSLyr6FB0Nd%2fslucejZNIQrf...    2/7

Witness our hand and seal this 21th day of August 2014.

By: _____

SELECTIVE ADVISORS GROUP, LLC
Judgment-All Rights,Claims and Benefits Assignee
Sean Neil Meehan, Manager

STATE OF FLORIDA 
: SS
COUNTY OF ~~DADE~~ Miami-Dade

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP,LLC as PLAINTIFF NLG, LLC's Assignee who is personally known to me or who has produced his drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at ___Miami___, County of ___Dade___, Florida, on this _21_ th day of August 2014.

_____
NOTARY PUBLIC

My commission expires:

LINDA M. LALANI
Notary Public - State of Florida
My Comm. Expires Dec 2, 2016
Commission #: EE 855056

Book29278/Page3969    CFN#20140585096          Page 3 of 7

CFN 2014R0583040
OR Bk 29277 Pss 3289 - 3292; (4pss)
RECORDED 08/20/2014 14:11:06
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (10)

SELECTIVE ADVISORS GROUP, LLC,
AS ASSIGNEE OF 9197-5904
QUEBEC, INC.,

     Plaintiff,

vs.

NLG, LLC, a Delaware Limited
Liability Company,

     Defendant,

and

ELIZABETH HAZAN

     Additional Defendant.

_____/

### ORDER GRANTING
### PLAINTIFF'S MOTION FOR PROCEEDINGS SUPPLEMENTARY
### AND FOR ORDER IMPLEADING THIRD PARTY

THIS CAUSE having come on for hearing on August 12, 2014, and August 15, 2014, on the Plaintiff's Motion for Proceedings Supplementary, etc., and the court having examined the court file, including the unrebutted affidavit filed on behalf of the Plaintiff on July 2, 2014, having taken judicial notice of the judgments and lien certificates referenced below, and having heard arguments of counsel, makes the following finds of fact and conclusions of law:

### FINDINGS OF FACT

1. On April 28, 2008, a default final judgment was entered under Case No. 07-19532-CA-11 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in favor of NLG, LLC, and against ELIZABETH HAZAN in the amount of $1,618,071.29, plus interest at the statutory rate of 11 percent per annum. ("Ha[zan]

https://www2.miami-dadeclerk.com/officialrecords/PrintDocument.aspx?QS=YaoUfOzxry396xbv017wsCH7paMSQ2J5PhPkZ8JSLyr6FB0Nd%2fslucejZNIQrf...  4/7

Final Judgment"). The judgment was recorded on May 2, 2008 at Book Number 26357, Pages 3948-3949, Document Number 20080361591 and re-recorded on June 2, 2008 at Book Number 26406, Pages 3259-3260, Document Number 2008R0446831.

2. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on May 27, 2008, under document filing number J08900007653.

3. A second judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on July 1, 2013, under document filing number J13001162651. The "money amount remaining unpaid" listed on the second judgment lien certificate is $3,749,569.51. Said amount seems to be based on an interest rate of 24 percent instead of the 11 percent judgment rate.

4. On February 22, 2012, 9197-5904 QUEBEC, INC., a foreign corporation, obtained a judgment against the Defendant, NLG, LLC, a Delaware Limited Liability Company, in New York State Supreme Court, County of New York, index number 101875-2012. Said judgment was domesticated and recorded on April 21, 2014, in Miami-Dade County, State of Florida, under the above-stated case number. Document number 2014R0298781, Book number 29124, pages 4766-4772.

5. On April 30, 2014, the subject judgment was assigned to the Plaintiff by 9197-5904 QUEBEC, INC., requiring the Defendant to pay the Plaintiff the sum of $5,000,225.00, plus statutory interest. The assignment was recorded at Book Number 29137, Pages 3128-3131, Document Number 2014R0322571.

6. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on June 16, 2014, under document filing number J14000718030.

7. The Plaintiff is entitled to step in the shoes of NLG, LLC with respect to the claims, rights, and benefits held by NLG, LLC, so as to be entitled to recover all proceeds attributable to the Hazan Final Judgment against ELIZABETH HAZAN with

https://www2.miami-dadeclerk.com/officialrecords/PrintDocument.aspx?QS=YaoUfOzxry396xbv017wsCH7paMSQ2J5PhPkZ8JSLyr6FB0Nd%2fslucejZNIQrf... 5/7

NLG, LLC receiving a credit for all sums so received.

8.  The execution is valid and remains outstanding.

### CONCLUSIONS OF LAW

1.  The Court orders that the Hazan Final Judgment held by NLG, LLC against ELIZABETH HAZAN, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against ELIZABETH HAZAN are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.

2.  Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, ELIZABETH HAZAN, with NLG, LLC receiving credit for all sums so received.

3.  Plaintiff, SELECTIVE ADVISORS GROUP, LLC, shall give a credit to Defendant, NLG, LLC, in the sum of $2,746,953.34, which amount includes principal and interest through August 31, 2014 at the 11% judgment amount without prejudice to Defendant establishing at further hearing why the credited amount should be greater.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 08/20/14.

PETER R. LOPEZ
CIRCUIT COURT JUDGE

> **No Further Judicial Action Required on THIS MOTION**
> **CLERK TO RECLOSE CASE IF POST JUDGMENT**

OR BK 29277 PG 3292
LAST PAGE

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Copies furnished to:
Mark D. Cohen, Esq.
Megan Wells, Esq.

STATE OF FLORIDA, COUNTY OF DADE
*I HEREBY CERTIFY that this is a true copy of the original filed in this office on_____ day of*
AUG 2 0 2014 _____, A D 20___
*WITNESS my hand and Official Seal.*
HARVEY RUVIN, CLERK, *of Circuit and County Courts*
By NICOLE DAVIS #79943 _____ D.C.



**ORDERED in the Southern District of Florida on August 31, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                  Case No: **16-10389 AJC**

**LIZA HAZAN**                                          Chapter 11
**a/k/a Elizabeth Hazan**

      **Debtor.**

_____/

### ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 8

THIS CAUSE came before the Court upon the Stipulation of Settlement between Debtor-In-

Possession, Liza Hazan ("Hazan" or "Debtor") and Real Time Resolutions, Inc. as agent for The

Bank of New York Mellon FKA The Bank of New York, as Successor to JPMorgan Chase Bank,

N.A/, as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series

2005-M (the "Creditor") (collectively the "Parties"). By and through their counsel the Parties have

agreed to the treatment of Creditor's claim, as set forth below.

1. With regard to Claim No. 8 filed on April 25, 2016 in the amount of $322,846.72 as a

secured claim on property at 1 E 62 St 1A New York, New York 10021, the Creditor shall have

relief from stay without further court order.

2. Creditor is permitted to exercise its rights and/or to negotiate for loss mitigation or other

relief with regard to Claim No. 8.

3. Creditor has agreed to vote its $322,846.67 claim in favor of Debtor's plan of

reorganization with the stipulated treatment.

The Court being fully advised, it is

ORDERED:

The stipulation is APPROVED.

# # #

Copy to:

Ashley Prager Popowitz, Esq.
Managing Attorney, Florida Bankruptcy
McCalla Raymer Pierce, LLC
110 S.E. 6th Street, Suite 2400 Fort Lauderdale, FL 33301
Office: (754) 263-1065 / Ext. 61065
Ashley.Popowitz@mrpllc.com
Counsel for Creditor Real Time Resolutions, Inc.

Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
Counsel for Debtor Liza Hasan

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,                                CASE NO.:  16-10389 AJC

      Debtor.                              CHAPTER 11

_____/

## AMENDED PLAN OF REORGANIZATION

## ARTICLE I

## SUMMARY

This Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtor (the "Debtor") from sources of payment, such as equity in properties and future income.

Debtor has an exclusive period during which only debtor may propose a plan. The exclusive period was extended through July 11, 2016 by motion filed 5/10/16 at DE 63 and granted at hearing 5/26/16 without objection and ordered 7/7/16 at DE 99, and again extended through November 7, 2016, by Order entered August 22, 2016 (DE 173).

This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at a dividend of 41% to 100% of total allowed claims over up to 60 months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

This Plan also provides for the payment of administrative claims. If payment is not in full on the effective date of this Plan with respect to any such claim (to the extent permitted by the Code or the claimant's agreement), the paragraphs below will identify such claim and briefly summarize the proposed treatment.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    This Plan includes a class of priority claims, classes of secured claims,classes of unsecured claims., and a class of equity interests.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under section §1123(a)(1), administrative expense claims, [õgapö period claims inan involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 ofthe Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such otherterms as may be agreed upon by the holder of the claim and the Debtor. Counsel for Debtor Geoffrey Aaronson, JoelArestyand David W. Langley will be paid outside of the plan and have agreed to such treatment.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid by terms of treatment consistent with§1129(a)(9)(C) of the Code.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6)(U.S. Trustee Fees)will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | paid as awarded or agreed |
| | Joel Aresty | paid as awarded or agreed |
| | David W. Langley | Paid as awarded or agreed |
| | US Trustee | paid in full at confirmation |

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | IRS<br><br>Claim 3 | yes | The $24,663.00 priority tax claim (not including the $25,000.00 placeholder claim for not filing the 2015 return) will be paidwithin five years of the petition date. Payments every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3% |

**Secured Claims**

**Valencia Property**

| | | | |
|---|---|---|---|
| 2 | Chase Bank | no<br><br>yes | **Alleged First Mortgage –**<br>The claims bar date has passed in this case, and Chase has not filed a claim. Chase had sufficient notice of these proceedings to timely file a claim but apparently chose not to do so. Because Chase was scheduled as disputed, contingent and unliquidated, and did not file a claim against this estate, Chase lacks standing as a õparty in interest.ö In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).<br><br>**Original note for $3,825,000 signed 3/07 Washington Mutual Bank. Chase Bank recentlyfiled an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor is seeking stay relief to continue state court litigation regardingthe alleged default, ownership of the loan and standing issues. If the State Court enters a** |

| | | | | |
|---|---|---|---|---|
| | | | | **final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the modified note rate of 3% per annum amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after entry of the final order.** <br><br> **Pending adjudication of Chase's interest in the loan and the subject property it shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan. See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996).** |
| 3 | Selective Advisors Group | yes | yes | Selective Advisors Group is the rightful assignee of the second mortgage holder NLG's promissory note, mortgage and Judgment against Debtor in the amount of $1,618,068.00 plus interest at 11% per annum; recorded Satisfaction of Mortgage and judgment against Debtor and her property. |
| 4 | 6913 Valencia LLC | yes <br><br> yes | | Third Mortgage on Debtor's homestead in the amount of $2,000.000.00 plus accrued interest from March 14, 2012. <br><br> The Debtor does not contest the validity or extent of claim. Notwithstanding, the Secured Creditor shall record a satisfaction of their lien upon Plan Confirmation and receive an unsecured claim. |
| 5 | Valencia Estates Community Assn, Inc claim 10 | no <br><br> yes | | **Claim of $195,072.14. Treated in settlement:** |

|   |   |   |   |   |
|---|---|---|---|---|
|   |   |   |   | **1. Debtor paid $2,193.17 Aug 17 for due maintenance.**<br><br>**2. Debtor pays 4 months $4,484 Sept 15.**<br><br>**3. Debtor pays assessment of $6250 by 10/15/16**<br><br>**4. Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3 .5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.** |
| 6 | Fisher Island Community Ass'n, Inc | no | yes | **$148,943.34 - Disputed "No Payment thru Plan Fisher Island Community Association, Inc. did not file a proof of claim despite being scheduled as contingent unliquidated and disputed.**<br><br>**The Debtor disputes the amount of the Claim, , there is an issue as to** whether Fisher Island lacks standing as a õparty in interest.ö In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).<br><br>**No payment through Plan.** |
| 7 | Miami-Dade Water and Sewer claim 7 | no | yes | Claim 7 $1502.54 paid on the EffectiveDate of Plan |
| 8 | IRS claim 3 | no | yes | 393,985.17 - Secured claim shall be paidover ten years with interest paymentsevery 6 months to include interest on anyunpaid claim amounts after the effectivedate of the plan at 3% |
|   |   |   |   |   |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 9 | Real Time Resolutions,Inc claim 8 | no | yes | Claim 8 $322,846.72 secured is disputed. Creditor has agreed to complete stay relief in settlement of this claim in this case (ECF 163) and has agreed to support Debtor's reorganization. |

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | Board of Managers Spencer Condominium claim 14 | no | yes | The Debtor disputes the Claim.The parties reached a confidential settlement in 2015 in New York State Court that must beenforced. The Debtor will seek stay relief to enforce the settlement in State Court in New York. |

**Vehicle**

**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | Southeast Financial LLC | no | yes | Stipulation DE 98 approved DE 101 vehicle owned by HTMG guaranteed by debtor secured claim allowed $17,000 value paid 5.25% for 48 months payments $393 begin August 1, 2016 |

**Convenience Class Undisputed Unsecured Small Claims**
**Paid in full over 18 months beginning month 6 after confirmation with equal payments every 6 months**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 12 | IRS claim 3 | no | X | 1085.00 |
|  | American InfoSource T Mobile claim 2 | no | X | 1130.00 |
|  | American InfoSource Direct TV claim 9 | no | X | 461.00 |
|  | FPL claim 11 | no | X | 2906.93 |
|  | Mount Sinai | no | X | 3,240.00 |
|  | Mount Sinai | no | X | 295.91 |
|  | HSBC Bank USA NA | no | X | 1070.66 |
|  | Sterling Emerg Svc | no | X | 2445.30 |
|  | Bank of America NA | no | X | 3301.00 |
|  | Wells Fargo claim 12 | no | X | 323.24 |
|  | Real Time Res. | no | X | 12,000.00 |
|  | total |  |  | 28,259.04 |
|  |  |  |  |  |

**Settled Unsecured Claims**
**Allowed Undisputed Unsecured Claims will be paid within two years of petition date 1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment | |
|---|---|---|---|---|---|
| 13 | **JMB Urban 900 Dev. claim 4*** | **no** | **X** | **275,000.00** | |
| 14 | **6913 Valencia LLC\*\*** | **yes** | **X** | **2,000,000.00** | |
|  | **(unsecured claim)** |  |  |  | |
|  | **total** |  |  | **2,275,000.00** | |

*claim 4 subject of adversary case 16-01188 AJC settlement pending at 41% of claim
** insider claim will subordinate and not be paid until all other allowed claims
but reserves right to vote for the plan

**Disputed Unsecured Claims**

**not paid until and unless allowed**

**and then paid within 5 years after confirmation**

| 15 | Cross & Simon Claim 1 | no | yes | $11,023.83 Legal bill Legal work for Corporation other than the Debtor. Debtor is disputing this claim. |
|---|---|---|---|---|

| 16 | S&S Collections Simon &Sigalos claim 13 | | | $21,242 Half of Bill is invoiced against 6913 Valencia LLC. Attorneys bill disputed. Attorney failed to appear at hearing resulting in entry of default judgment in NLG case 4/08. Debtor has very substantial Claims against Michael Simon Simon and his firm Simon Sigalos P.A. |
|---|---|---|---|---|
| 17 | Newman Ferrara LLP claim 15 | | | Disputed Proof of Claims filed after Bar Date date. $24,818.44 not allowed. |
| 18 | FuerstItlleman Claim 16 | | | Disputed Proof of Claims filed after Bar Date. It is not a creditor of this Debtor. Debtor has filed an objection to this claim. **No payment through plan** |

**Unsecured Scheduled Disputed and No Claim Filed**

**Therefore Disallowed**

| Allied Collection | 318 |
|---|---|
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |

| US Bank NA | 0 |
| Total | 45453.38 |

## Equity

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 19 | Equity Individual interestholder | no | retained |

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a finalnon-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtoror another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor hasscheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of adisputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle andcompromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules ofBankruptcy Procedure.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effectiveupon the date of the entry of the order confirming this Plan: none.

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/orunexpired leases not expressly assumed under section 6.01(a) above, or before the date of the entry of the orderconfirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired leaseunder this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII

## GENERAL PROVISIONS

7.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.02    Effective Date of Plan. The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

## ARTICLE VIII

## <u>DISCHARGE</u>

### 8.01.   **Debtor is an individual.**

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan ô

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar Debtor has provided for payments not less than Projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

Discharge. In a case in which the debtor is an individual ô

(A)unless after notice and a hearing the court orders otherwise for cause, confirmation of the plandoes not discharge any debt provided for in the plan until the court grants a discharge on completionof all payments under the plan;

(B)at any time after the confirmation of the plan, and after notice and a hearing, the court may grant adischarge to the debtor who has not completed payments under the plan ifô

(i)the value, as of the effective date of the plan, of property actually distributed under the plan onaccount of each allowed unsecured claim is not less than the amount that would have been paid onsuch claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii)modification of the plan under section 1127 is not practicable; and

(iii)subparagraph (C) permits the court to discharge; and

(C)(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days beforethe date of the entry of the order granting the discharge, the court finds that there is no reasonablecause to believe thatô

(i)section522(q)(1) may be applicable to the debtor; and

(ii)there is pending any proceeding in which the debtor may be found guilty of a felony of the kinddescribed in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); andif the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,upon completion all payments required under the Plan to Class 20 unsecured and deficiencycreditors. Upon the satisfaction of all payments required under the Plan to unsecured creditors, theReorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case onthe Court approved local form.

(a) Notwithstanding the above, the Debtor may request that the Court close this bankruptcyproceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b) The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry ofOrder of Discharge (the õMotion to Closeö) after the following events have occurred: (I) payment ofthe Initial Payment (defined in the Plan) to unsecured creditors; (ii) payment of all outstandingquarterly United States Trustee Fees as of the date of the Order approving the Motion to TemporarilyClose; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shallcertify that each of the above conditions have been met.

(c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors andinterested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if eachof the above conditions have been met.

(d) During the time that this bankruptcy case is temporarily closed, the provisions of theconfirmation order shall remain in effect with respect to thetreatment of creditor claims that existed as of the bankruptcy petition date, that being 1/11/16, as longas the Debtor continues to

be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e) Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to unsecured creditors.

(f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to unsecured creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

Respectfully submitted, 9/6/16

By: /s/ Liza Hazan

The Plan Proponent

By: /s/ David W. Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954‐356-0450
By: /s/David W. Langley
Attorney for the Plan Proponent

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
### www.flsb.uscourts.gov

In re:

          CASE NO.: 16-10389-AJC

LIZA HAZAN,
      Debtor.                  CHAPTER 11

_____/

## AMENDED DISCLOSURE STATEMENT

### *Table of Contents*

I.     **INTRODUCTION**        **page 2**
    A.     **Purpose of This Document**
    B.     **Deadlines for Voting and Objecting;**
           **Date of Plan Confirmation Hearing**
    C.     **Disclaimer**

II.    **BACKGROUND**        **page 3**
    A.     **Description and History of the Debtor's Business**
    B.     **Insiders of the Debtor**
    C.     **Management of the Debtor Before and During the Bankruptcy**
    D.     **Events Leading to Chapter 11 Filing**
    E.     **Significant Events During the Bankruptcy Case**
    F.     **Projected Recovery of Avoidable Transfers**
    G.     **Claims Objections**
    H.     **Current and Historical Financial Conditions**

III.   **SUMMARY OF THE PLAN OF REORGANIZATION**     **page 8**
     **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
    A.     **What is the Purpose of the Plan of Reorganization?**
    B.     **Unclassified Claims**
        1.    *Administrative Expenses*
        2.    *Priority Tax Claims*
    C.     **Classes of Claims and Equity Interests**
        1.    *Classes of Secured Claims*
        2.    *Classes of Priority Unsecured Claims*
        3.    *Class[es]of General Unsecured Claims*
        4.    *Class[es] of Equity Interest Holders*
    D.     **Means of Implementing the Plan**
    E.     **Risk Factors**
    F.     **Executory Contracts and Unexpired Leases**
    G.     **Tax Consequences of Plan**

IV.   **CONFIRMATION REQUIREMENTS AND PROCEDURES**     **page 20**
    A.     **Who May Vote or Object**

    B.      **Votes Necessary to Confirm the Plan**
         1.      *Votes Necessary for a Class to Accept the Plan*
         2.      *Treatment of Nonaccepting Classes*
    C.      **Liquidation Analysis**
    D.      **Feasibility**
         1.      *Ability to Initially Fund Plan*
         2.      *Ability to Make Future Plan Payments*
               *And Operate Without Further Reorganization*
V.     **EFFECT OF CONFIRMATION OF PLAN**        **page 23**
    A.      **Discharge Of Debtor**
    B.      **Modification of Plan**
    C.      **Final Decree**

**EXHIBITS**
**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

## INTRODUCTION

This is the amended disclosure statement (the ōDisclosure Statementö) in the Chapter 11 case of Liza Hazan (the ōDebtorö). This Disclosure Statement contains information about the Debtor and describes the Amended Plan of Reorganization (the ōPlanö) filed by the Debtor on same date. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

    A.      **Purpose of This Document**

This Disclosure Statement describes:

          The Debtor and significant events during the bankruptcy case,
          How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
          Who can vote on or object to the Plan,
          What factors the Bankruptcy Court (the ōCourtö) will consider when deciding whether to confirm the Plan,
          Why the Proponent believes the Plan is feasible, and how the treatment

of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B. **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. Clyde Atkins United States Courthouse 301 North Miami Avenue, Room 150 Miami, FL 33128. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served pursuant to orders served herewith.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

C. **Disclaimer**

***The Court must approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court***

*has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.   BACKGROUND

### A.   Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has historically earned in excess of $350,000 per year.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Debtor has the ability to rent her Fisher Island property for short periods at very high rental rates adding up to $300,000 per year. Additionally the equity in Fisher Island would support a refinancing, which could also be used supporting funding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group LDC which owns a condominium in New York City in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group LDC has committed to contribute funds from the proceeds of refinancing to Debtor's estate to fund the plan in order to assure completion of the plan.

### B.   Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

### C.   Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case has been: Debtor.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: Debtor.

### D.   Events Leading to Chapter 11 Filing

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to

fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtor's equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") now valued at $12 million for $5.1 million from NLG through its principal Chris Kosachuk

## Chase Bank

In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington Mutual. JP Morgan Chase Bank claims to own the Washington Mutual promissory note and mortgage signed by Debtor in March 7, 2007.

Chase filed a foreclosure in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

Because Chase was scheduled as disputed, contingent and unliquidated, and did not file a claim against this estate, there is an issue as to whether Chase lacks standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).

## NLG

NLG claims to have provided an "equity contribution" of $1,275,000 to the Debtor on the closing statement and a note and second mortgage on the Fisher Island property for that amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtor's property. Litigation between the parties has occurred in four states, multiple courts and has continued for nearly a decade, and continues in this court, costing Debtor millions in legal fees, adversely affecting her health and her career, and putting her in the financial position of having to seek relief in a Chapter 11 reorganization.

Chris Kosachuk asserts that he is the manager and representative of NLG. From prior to that purchase date, more than nine years ago, to today, the parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and is now in this Court.

NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176). Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution of a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176. This Honorable Court ruled as follows:

First, NLG is not a scheduled creditor in this case. The Debtor scheduled Selective as its secured creditor, relying on the judicial assignment in the Proceedings Supplementary Order, pursuant to the

Scola judgment. NLG was listed solely as a notice party. and second The claims bar date has passed in this case, and NLG has not filed a claim. NLG indeed had sufficient notice of these proceedings to timely file a claim (both NLG's counsel and Kosachuk himself appeared and questioned the Debtor at the 341 meeting), but apparently chose not to. Because NLG has not been scheduled and did not file a claim against this estate, there is an issue as to whether NLG lacks standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).

…

The Debtor's Schedules indicate a disputed first mortgage on the property for $ 5.2 million dollars to Chase Bank N.A.; a mortgage for $2.0 million dollars to an entity owned by her mother that Debtor and her mother represented may be subordinated and/or satisfied in connection with a plan, and various other miscellaneous liens less than $300,000.The Debtor values the Selective lien at zero, because Selective, as judicial assignee of NLG, is owned by her husband and has filed a Satisfaction of Judgment and a Satisfaction of Mortgage.

…

The Debtor also asserts the Property is necessary to an effective reorganization. She resides on the Property with her husband and has declared the Property to be her homestead. The Debtor is a financial consultant who earns her income from consulting fees in connection with placing high-end retail and restaurant businesses in certain top-tier shopping locations. She entertainsprospects at home. She also asserts significant equity in the home sufficient to refinance and/or collateralize the payment of her unsecured debt."

The Debtor has filed with the Court an appraisal of the Property for $9.5 million, and asserts: (1) that the Debtor is negotiating with Chase regarding various issues; (ii) that NLG's right to foreclose was judicially assigned to Selective, which has satisfied the Hazan mortgage in partial satisfaction of its judgment against NLG; and (iii) that the mortgage held by Debtor's mother's company will be subordinated or satisfied as part a plan. The Court believes the Debtor has presumptively established the prospect of equity in the Property for the benefit of creditors, and further believes the Debtor has established the Property is necessary for an effective reorganization as

she uses the Property for business purposes and any plan filed in this
case will be premised upon, at least in part, future business income.

**<u>Reorganization</u>**

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consultingwork, and short term rental, or if necessary refinancing and contributions from her husbandøs company.

To date, the Debtorøs efforts have focused on negotiating resolutions with several creditors, litigatingwith two other creditors, conferring with counsel to begin formulating the structure and terms of a proposedPlan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.       **Significant Events During the Bankruptcy Case**

       \*       Date of Order for Relief under Chapter 11 on 1/11/16

       \*       Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM

       \*       Deadline for complaint re dischargeability was 4/18/16

       \*       Professionals approved by the court
                Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date
                Joel Arestywas substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126)
                David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and is awaiting approval by the Court

       \*       Contested claim disallowance proceedings: pending; see claim treatments.

       \*       Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

       \*       Debtor hasmanaged her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor toreorganize allowing Debtor to propose a plan for payment of creditors.

F.       **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 whichhas a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonableequivalent value, which facts are not relevant to the plan in this case.

### G.  Claims Objections

The Debtor has not completed claim objections but the current plan reflects the objectionscontemplated.

### H.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to thisstatement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting and periodic rental is not a regular monthly income which wouldlend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

### I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

## III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS

### A.  What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describesthe treatment each class will receive. The Plan also states whether each class of claims or equity interests isimpaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by thePlan.

### B.  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are notconsidered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in theirview, their treatment under the Plan does not comply with that required by the Code. As such, the PlanProponent has *not* placed the following claims in any class:

#### 1.  *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case whichare allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold tothe Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcypetition. The Code requires that all administrative

expenses be paid on the effective date of the Plan, unless aparticular claimant agrees to a different treatment.

       2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of theCode. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the presentvalue of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

### C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receiveunder the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are requiredto be placed in classes. The Code requires that each holder of such a claim receive cash on the effective dateof the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote toaccept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of theCode and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that aresubject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateralor setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will[be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposedtreatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priorityunder §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claimsagainst the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | paid as awarded or agreed |
| | Joel Aresty | paid as awarded or agreed |
| | David W. Langley | paid as awarded or agreed |
| | US Trustee | paid in full at confirmation |

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | IRS<br><br>Claim 3 | yes | The $24,663.00 priority tax claim not including the $25,000.00 placeholder claim for not filing the 2015 return) will be paid within five years of the petition date. Payments every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3% |

**Secured Claims**

**Valencia Property**

| 2 | Chase Bank | | no / yes | | **Alleged First Mortgage –** The claims bar date has passed in this case, and Chase has not filed a claim. Chase had sufficient notice of these proceedings to timely file a claim but apparently chose not to do so. Because Chase was scheduled as disputed, contingent and unliquidated, and did not file a claim against this estate, Chase lacks standing as a õparty in interest.ö In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). **Original note for $3,825,000.00 signed 3/07 Washington Mutual Bank. Chase Bank recently filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor is seeking stay relief to continue state court litigation regarding the alleged default, ownership of the loan and standing issues. If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the modified note rate of 3% per annum amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after entry of the final order.** |

| | | | | Pending adjudication of Chase's interest in the loan and the subject property it shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan. See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). |
|---|---|---|---|---|
| 3 | Selective Advisors Group | yes | yes | Selective Advisors Group is the rightful assignee of the second mortgage holder NLG's promissory note, mortgage and Judgment against Debtor in the amount of $1,618,068.00 plus interest at 11% per annum; recorded Satisfaction of Mortgage and judgment against Debtor and her property. |
| 4 | 6913 Valencia LLC | yes | yes | Third Secured Mortgage in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of claim. Notwithstanding, the Secured Creditor shall record a satisfaction of their lien upon Plan Confirmation and receive an unsecured claim. |
| 5 | Valencia Estates Community Assn, Inc claim 10 | no | yes | Claim of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17 for due maintenance.<br><br>2. Debtor pays 4 months $4,484.00 Sept 15.<br><br>3. Debtor pays assessment of $6250.00 by 10/15/16<br><br>4. Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3 .5% interest in the |

| | | | | Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month. |
|---|---|---|---|---|
| 6 | Fisher Island Community Ass'n, Inc | no | yes | $148,943.34 - Disputed "No Payment thru Plan Fisher Island Community Association, Inc. did not file a proof of claim despite being scheduled as contingent unliquidated and disputed.<br><br>The Debtor disputes the amount of the Claim, there is an issue as to whether Fisher Island lacks standing as a õparty in interest.ö In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).<br><br>No payment through Plan. |
| 7 | Miami-Dade Water and Sewer claim 7 | no | yes | Claim 7 $1502.54 paid on the EffectiveDate of Plan |
| 8 | IRS claim 3 | no | yes | $393,985.17 - Secured claim Shall be paidover ten years with interest Paymentsevery 6 months to include interest on anyunpaid claim amounts after the effectivedate of the plan at 3% |
| | | | | |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 9 | Real Time Resolutions, Inc | | yes | Claim 8 $322,846.72 secured is disputed. |

| | claim 8 | no | | Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case (ECF 163) and has agreed to support Debtor's reorganization |
|---|---|---|---|---|

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | Board of Managers Spencer Condominium claim 14 | no | yes | The Debtor disputes the Claim. The parties reached a confidential settlement in 2015 in New York State Court that must be enforced.Debtor will seek stay relief to enforce the settlement in State Court in New York. |

**Vehicle**

**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | Southeast Financial LLC | no | yes | Stipulation DE 98 approved DE 101 vehicle owned by HTMG guaranteed by debtorsecured claim allowed $17,000 value paid5.25% for 48 months payments $393 begin August 1, 2016 |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full over 18 months beginning month 6 after confirmation with equal payments every 6 months**

| Class # | Description | Insider? (Yes or | Impairment | Treatment |
|---|---|---|---|---|

| | | **No)** | | |
|---|---|---|---|---|
| 12 | IRS claim 3 | no | X | 1085.00 |
| | American InfoSource T Mobile claim 2 | no | X | 1130.00 |
| | American InfoSource Direct TV claim 9 | no | X | 461.00 |
| | FPL claim 11 | no | X | 2906.93 |
| | Mount Sinai | no | X | 3,240.00 |
| | Mount Sinai | no | X | 295.91 |
| | HSBC Bank USA NA | no | X | 1070.66 |
| | Sterling Emerg Svc | no | X | 2445.30 |
| | Bank of America NA | no | X | 3301.00 |
| | Wells Fargo claim 12 | no | X | 323.24 |
| | Real Time Resolutions #5 | no | X | 12,000.00 |
| | total | | | 28,259.04 |
| | | | | |

## Settled Unsecured Claims

**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**

**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| **Class #** | **Description** | **Insider?** **(Yes or No)** | **Impaired** | **treatment** | |
|---|---|---|---|---|---|
| **13** | **JMB Urban 900 Dev.** **claim 4*** | **no** | **X** | **$664,380.47 will be paid 41% or275,000.00 per settlement** | |
| **14** | **6913 Valencia LLC**** | **yes** | **X** | **2,000,000.00** | |
| | **total** | | | **2,275,000.00** | |
| | | | | | |

*claim 4 subject of adversary case 16-01188 AJC settlement pending at 41% of claim

** insider claim will subordinate and not be paid until all other allowed claims

but reserves right to vote for the plan

## Disputed Unsecured Claims

## not paid until and unless allowed

## and then paid within 5 years after confirmation

| 15 | Cross & Simon Claim 1 | no | yes | $11,023.83 Legal bill Legal work for Corporation other than the Debtor. Debtor is disputing this claim. |

| 16 | S&S Collections Simon &Sigalos claim 13 | | | $21,242 Half of Bill is invoiced against6913 Valencia LLC. Attorneys billdisputed. Attorney failed to appear athearing resulting in entry of default judgment in NLG case 4/08. Debtor has very substantial Claims against Michael Simon Simon and his firm Simon Sigalos P.A. |
|----|----|----|----|----|
| 17 | Newman Ferrara LLP claim 15 | | | Disputed Proof of Claims filed after Bardate. $24,818.44 not allowed. |
| 18 | FuerstIttleman Caim 16 | | | Disputed Proof of Claims filed after Bar Date. It is not a creditor of this Debtor. Debtor has filed an objection to this claim. **No payment through plan** |

## Unsecured Scheduled Disputed and No Claim Filed

## Therefore Disallowed

| Allied Collection | 318 |
|----|----|
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |

| Mount Sinai Medical | 31414.15 |
|---|---|
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | 0 |
| Total | 45453.38 |

**Equity**

| <u>Class #</u> | <u>Description</u> | <u>Impairment</u> | <u>Treatment</u> |
|---|---|---|---|
| 19 | Equity Individual interest holder | no | retained |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 per year.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Debtor has the ability to rent her Fisher Island property for short periods at very high rental rates adding up to $300,000 per year.

Additionally the equity in Fisher Island would support a refinancing, which could also be used support funding a plan if necessary

2.    *Post-confirmation Management*

<u>The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:</u>

| <u>Name</u> | <u>Affiliations</u> | <u>Insider (yes or no)?</u> | <u>Position</u> | <u>Compensation</u> |
|---|---|---|---|---|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E.    **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases.  If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.  This Plan bears the risk that the Debtor's income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to

make payments under this Plan.  However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE.  CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F.      **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. There are none. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is* no later than thirty (30) days after the date of the order confirming this Plan. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.      **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

A summary description of certain United States (õU.S.ö) federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income tax consequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims and Interests who are

entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought orobtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this DisclosureStatement. No rulings or determinations of the Internal Revenue Service (the õIRSö) or any other tax authorities havebeen obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not bindingupon the IRS or such other authorities. No representations are being made regarding the particular tax consequencesof the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes orClass 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, adifferent position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the InternalRevenue Code of 1986,as amended (the õTax Codeö), Treasury Regulations promulgated and proposed thereunder, judicial decisions, andadministrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the datehereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future couldalter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any taxlegislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the taxconsequences to the holders of Claims. Any such changes or interpretations may be retroactive and couldsignificantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAXCONSEQUENCES OFTHE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAXCONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGNENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH ASPARTNERSHIPS ANDHOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS,MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESSINVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITESTRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATEAND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TOTHEALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OFTHE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TOCONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL ANDFOREIGN TAXCONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. Theseinclude the requirements that: the Plan must be proposed in good faith; at least one

impaired class of claimsmust accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equityinterest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidationcase, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.These requirements are not the only requirements listed in §1129, and they are not the only requirements forconfirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder ofan allowed unsecured claim objects to the confirmation of the planô
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account ofsuch claim is not less than the amount of such claim; or
(B) the value of the property to be distributed under the plan is not less than the projected disposable incomeof the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the datethat the first payment is due under the plan, or during the period for which the plan provides payments,whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of thedebtor during a five year period beginning with the first payment due under the plan.

## A.      Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that therequirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor orequity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder hasa claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each ofthese classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes thatclasses are unimpaired and that holders of claims in each of these classes, therefore, do not have the right tovote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the rightto vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled theclaim on the Debtorôs schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated,or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proofof claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holderholding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules theobjection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the FederalRules of Bankruptcy Procedure.

**_The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16_**
**_forgovernment units._**

### _2. What Is an Impaired Claim or Impaired Equity Interest?_

As noted above, the holder of an allowed claim or equity interest has the right to vote
only if it is in aclass that is _impaired_ under the Plan. As provided in §1124 of the Code, a class is
considered impaired if thePlan alters the legal, equitable, or contractual rights of the members of
that class.

### 3. _Who is **Not** Entitled to Vote_

The holders of the following five types of claims and equity interests are _not_ entitled to
vote:

Éholders of claims and equity interests that have been disallowed by an order of the
Court;
Éholders of other claims or equity interests that are not õallowed claimsö or õallowed
equityinterestsö (as discussed above), unless they have been õallowedö for voting
purposes.
Éholders of claims or equity interests in unimpaired classes;
Éholders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the
Code; and
Éholders of claims or equity interests in classes that do not receive or retain any value
under thePlan;
Éadministrative expenses.

**_Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the_**
**_Confirmation of thePlan [and to the Adequacy of the Disclosure Statement]._**

### 4. _Who Can Vote in More Than One Class_

A creditor whose claim has been allowed in part as a secured claim and in part as an
unsecured claim,or who otherwise hold claims in multiple classes, is entitled to accept or reject a
Plan in each capacity, andshould cast one ballot for each claim.

### B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one
impaired class ofcreditors has accepted the Plan without counting the votes of any insiders within
that class, and (2) all impairedclasses have voted to accept the Plan, unless the Plan is eligible to
be confirmed by õcram downö on nonacceptingclasses, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more
than one-half (1/2) ofthe allowed claims in the class, who vote, cast their votes to accept the

Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.  **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

### D.  **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibits C and D.

### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

Discharge. In a case in which the debtor is an individualô

**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan ifô

**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

**(ii)** modification of the plan under section 1127 is not practicable; and

**(iii)** subparagraph (C) permits the court to discharge; and

**(C)** (*)the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe thatô

**(i)** section 522(q)(1) may be applicable to the debtor; and

**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon the satisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the õMotion to Closeö) after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)     The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)    During the time that this bankruptcy case is temporarily closed, the provisions of theconfirmation order shall remain in effect with respect to thetreatment of creditor claims that existed as of the bankruptcy petition date, , as long as the Debtorcontinues to be in compliance with the Plan and the Courts Order Confirming Debtors Plan ofReorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of thepayments to unsecured and priority creditors, as contemplated under the Plan.

(e)    Upon the satisfaction of all payments required under the Plan to creditors, the Debtormay file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk ofCourt fees associated with filing of the motion to reopen shall be waived. The motion to reopen shallbe verified and served upon all creditors and parties in interest and shall demonstrate that the Debtorhas made all of the payments contemplated under the Plan to creditors.

(f)    Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a FinalReport of Estate and Motion for Final Decree Closing Case on the Court-approved local form, whichshall certify that all payments required under the Plan to creditors have been made. The Court maythen grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

## B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, theCourt may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Planhas not been substantially consummated *and* (2) the Court authorizes the proposed modifications after noticeand a hearing.

## C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules ofBankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the PlanConfirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively,the Court may enter such a final decree on its own motion.

Respectfully submitted September 6, 2016:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954  356-0450
By: /s/*David W. Langley*

Attorney for the Plan Proponent

**EXHIBIT A: Historical Earnings and Assets**

Debtor's educational background includes:

- 07/03/1992-Academy Of Paris Brevet De Technicienne Superieure Informatique De Gestion
- 06/28/1989-Academy De Bordeaux
- 1995-1996-Baccalaureat De L'enseignement Du Second Degre Mathematiques & Sciences De La Nature, and University Of Montreal Law School

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $400,000.00/year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") with a scheduled value of $12,000,000.00. Additionally, Debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Debtor has the ability to rent her Fisher Island property at very high rental rates adding up to $420,000.00/year based on comparable rental listings on the Island prepared for the Debtor by the primary real estate agency for the Island. Additionally, the equity in the Fisher Island homestead could support refinancing, which could be used in funding a plan if necessary.

The Debtor earns significant income as a consultant. However, her receipt of funds is irregular. For this reason, proposed plan payments are scheduled every six (6) months.

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization which will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets. The Debtor intends to reorganize her debts and liabilities through a combination of:

(a) negotiating and/or litigating as may be necessary, resolutions with certain secured creditors Case 16-10389-AJC Doc 103 Filed 07/11/16 Page 21 of 37, and unsecured creditors; and

(b) making distributions funded by her assets and income from her consulting work and short term rental, or if necessary refinancing. To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two (2) other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting and rental income for the eventual benefit of her estate and creditors. Debtor is concentrating on maximizing both her consulting income and income from the future rental of her homestead, and she has never made less than $400,000.00/year from consulting.

Exhibit D below is a five (5) year projection showing the feasibility of making the payments required under the plan if rental income is maximized along with consulting income, from projected net income of approximately $350,000.00 to $420,000.00 per year. Receipts of consulting income are not regular monthly payments, which is why payments range from quarterly to every six (6) months, or even less frequently, in the plan.

**Exhibit B Liquidation Analysis**

**Plan Proponent's Estimated Liquidation Value of Assets**

**Assets**

| | |
|---|---|
| a. Cash on hand at the effective date | $65,000.00 |
| b. Accounts receivable | $400,000.00 |
| c. Personal property including office furniture & equipment | $327,500.00 |
| d. Automobiles | $17,000.00 |
| e. Real Estate – Homestead on Fisher Island – appraised at$ 9.500,000 | |
|       Non-exempt value | $0 |
| f. Lawsuits or other claims against third-parties: | |
|       Potential claims against Chris Kosachuk and NLG | $ unknown |
|       Claim against attorney Michael Simon and Simon Sigalos | $ unknown |
| k. Other intangibles (such as avoiding powers actions) | $0.00 |

| | |
|---|---|
| **Total Non-exempt Assets at Liquidation Value** | **$809,500.00** |

**Less:**

| | |
|---|---|
| IRS Priority claim | ($24,663.00) |
| SE Financial lien on vehicle(secured portion of 24,970.70 claim) | ($17,000.00) |
| Chapter 7 estimated liquidation expenses | ($50,000.00) |
| Costs of sale (auctioneer fees) | ($32,750.00) |
| Chapter 11 administrative expenses - Geoffrey Aaronson (disputed) | ($150,000.00) |
|       Joel Aresty | ($35,000.00) |
|       David W. Langley | ($30,000.00) |
| Amount available for distribution to unsecured creditors | **$470,087.00** |
| Percentage distribution to unsecured creditors | |
| (Total dollar amount of unsecured claims is $2,600,000 from claims docket) | **18% Distribution** |

The Amended Plan provides 41% to 100% distribution to allowed unsecured claims

**Exhibit C: Cash on hand on the effective date of the Plan**

| | |
|---|---|
| **Cash on hand on effective date of the Plan**: | $65,178 |

*Less --*

| | |
|---|---|
| Amount of administrative expenses payable on effective date of the Plan | TBD |
| Amount of statutory costs and charges UST | TBD |
| Plan Payments due on effective date of the Plan | TBD |
| Balance after paying these amounts | TBD |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| Cash in Debtor's bank account now | $20,178 |
| + Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan | $45,000 |

(Basis for projection in anticipated income) see Exhibit D

| | |
|---|---|
| Total | $65,178 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2016 - NOVEMBER 30, 2017**

| | December 2016 | January 2017 | February 2017 | March 2017 | April 2017 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 |
| BUSINESS INCOME | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 |
| **TOTAL** | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 12,396 | 12,396 | 18,941 | 12,396 | 29,489 |
| **NET RESULT** | 44,604 | 44,604 | 38,059 | 44,604 | 27,511 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| **LIST OF PAYMENTS TO CREDITORS** | 16,455 | 393 | 393 | 393 | 393 |
| **NET RESULT** | 28,149 | 44,211 | 37,666 | 44,211 | 27,118 |
| **BEGINNING OF THE YEAR** | | | | | |
| **CUMULATIVE NET AMOUNT** | 28,149 | 72,360 | 110,026 | 154,237 | 181,355 |

| | December 2016 | January 2017 | February 2017 | March 2017 | April 2017 |
|---|---|---|---|---|---|
| **LIST OF PAYMENTS TO CREDITORS** | | | | | |
| **SECURISED** | | | | | |
| *IRS - 393,985.17 (120 months) with 3% interest* | 0 | 0 | 0 | 0 | 0 |
| *IRS  24 663 - YEAR 2014* | 0 | 0 | 0 | 0 | 0 |
| *VALENCIA ESTATE COMMUNITY 195,000 - 48M* | 4,062 | 0 | 0 | 0 | 0 |
| *VALENCIA ESTATE - ANNUAL INTEREST* | | | | | |
| *SOUTH EAST FINANCIAL - CAR 48 MONTHS* | 393 | 393 | 393 | 393 | 393 |
| **UNSECURED** | | | | | |
| *JBM URBAN 900  275,000.00 - Janv 11, 2018* | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 12,000 | 0 | 0 | 0 | 0 |
| **TOTAL** | 16,455 | 393 | 393 | 393 | 393 |

| | May 2017 | June 2017 | July 2017 | August 2017 | September 2017 | October 2017 | November 2017 | total |
|---|---|---|---|---|---|---|---|---|
| | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 336,000 |
| | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 348,000 |
| | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 684,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 15,226 | 15,226 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 34,167 | 207,251 |
| | 38,059 | 44,604 | 44,604 | 38,059 | 44,604 | 44,604 | 22,833 | 476,749 |
| | 20,705 | 34,145 | 393 | 393 | 393 | 20,705 | 393 | 95,154 |
| | 17,354 | 10,459 | 44,211 | 37,666 | 44,211 | 23,899 | 22,440 | 381,595 |
| | | | | | | | | 0 |
| | 198,709 | 209,168 | 253,379 | 291,045 | 335,256 | 359,155 | 381,595 | 381,595 |

| | May 2017 | June 2017 | July 2017 | August 2017 | September 2017 | October 2017 | November 2017 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 |
| | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 |
| | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 0 | 44,686 |
| | | | | | | | | 0 |
| | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 8,130 | 0 | 0 | 0 | 0 | 0 | 20,130 |
| | 20,705 | 34,145 | 393 | 393 | 393 | 20,705 | 393 | 95,154 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2017 - NOVEMBER 30, 2018**

| | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 29,400 | 29,400 | 29,400 | 29,400 | 29,400 |
| BUSINESS INCOME | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| OTHER | | | | | |
| **TOTAL** | 59,400 | 59,400 | 59,400 | 59,400 | 59,400 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -10,645 | 47,004 | 40,459 | 47,004 | 29,911 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| LIST OF PAYMENTS TO CREDITORS | 32,052 | 283,522 | 393 | 20,705 | 393 |
| | | | | | |
| **NET** | -42,697 | -236,518 | 40,066 | 26,299 | 29,518 |
| **PREVIOUS YEAR** | 381,595 | | | | |
| **CUMULATIVE NET AMOUNT** | 338,898 | 102,380 | 142,446 | 168,745 | 198,263 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 |
|---|---|---|---|---|---|
| **LIST OF PAYMENTS TO CREDITORS** | | | | | |
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interest | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 20,312 | 0 |
| VALENCIA ESTATES ANNUAL INTEREST | 6,037 | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 275,000 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 8,129 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 32,052 | 283,522 | 393 | 20,705 | 393 |

| | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | total |
|---|---|---|---|---|---|---|---|---|
| | 29,400 | 29,400 | 29,400 | 29,400 | 29,400 | 29,400 | 29,400 | 352,800 |
| | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 360,000 |
| | 59,400 | 59,400 | 59,400 | 59,400 | 59,400 | 59,400 | 59,400 | 712,800 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 156,600 | 156,600 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 175,541 | 406,274 |
| | 40,459 | 47,004 | 47,004 | 40,459 | 47,004 | 47,004 | -116,141 | 306,526 |
| | 393 | 26,015 | 393 | 20,705 | 393 | 393 | 393 | 385,750 |
| | 40,066 | 20,989 | 46,611 | 19,754 | 46,611 | 46,611 | -116,534 | -79,224 |
| | | | | | | | | 381,595 |
| | 238,329 | 259,318 | 305,929 | 325,683 | 372,294 | 418,905 | 302,371 | 302,371 |

| | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 40,624 |
| | | | | | | | | 6,037 |
| | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 275,000 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,129 |
| | 393 | 26,015 | 393 | 20,705 | 393 | 393 | 393 | 385,750 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2018 - NOVEMBER 30, 2019**

| | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 30,870 | 30,870 | 30,870 | 30,870 | 30,870 |
| BUSINESS INCOME | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 |
| OTHER | | | | | |
| **TOTAL** | 62,120 | 62,120 | 62,120 | 62,120 | 62,120 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -7,925 | 49,724 | 43,179 | 49,724 | 32,631 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| LIST | 30,387 | 20,705 | 393 | 393 | 393 |
| | | | | | |
| **NET** | -38,312 | 29,019 | 42,786 | 49,331 | 32,238 |
| **PREVIOUS YEAR** | 302,371 | | | | |
| **CUMULATIVE NET AMOUNT** | 264,059 | 293,078 | 335,864 | 385,195 | 417,433 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663  YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 20,312 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 4,372 | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900   275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 30,387 | 20,705 | 393 | 393 | 393 |

| May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | total |
|---|---|---|---|---|---|---|---|
| 30,870 | 30,870 | 30,870 | 30,870 | 30,870 | 30,870 | 30,870 | 370,440 |
| 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 375,000 |
| 62,120 | 62,120 | 62,120 | 62,120 | 62,120 | 62,120 | 62,120 | 745,440 |
| 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| 0 | 0 | 0 | 0 | 0 | 0 | 165,700 | 165,700 |
| 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 184,641 | 415,374 |
| 43,179 | 49,724 | 49,724 | 43,179 | 49,724 | 49,724 | -122,521 | 330,066 |
| 393 | 46,327 | 393 | 393 | 393 | 393 | 20,705 | 121,268 |
| 42,786 | 3,397 | 49,331 | 42,786 | 49,331 | 49,331 | -143,226 | 208,798 |
| | | | | | | | 302,371 |
| 460,219 | 463,616 | 512,947 | 555,733 | 605,064 | 654,395 | 511,169 | 511,169 |

| May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | total |
|---|---|---|---|---|---|---|---|
| 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 60,936 |
| | | | | | | | 4,372 |
| 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 393 | 46,327 | 393 | 393 | 393 | 393 | 20,705 | 121,268 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2019 - NOVEMBER 30, 2020**

| | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 32,414 | 32,414 | 32,414 | 32,414 | 32,414 |
| BUSINESS INCOME | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 |
| OTHER | | | | | |
| **TOTAL** | 64,914 | 64,914 | 64,914 | 64,914 | 64,914 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -5,131 | 52,518 | 45,973 | 52,518 | 35,425 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 28,610 | 393 | 393 | 393 | 20,705 |
| | | | | | |
| **NET** | -33,741 | 52,125 | 45,580 | 52,125 | 14,720 |
| **PREVIOUS YEAR** | 511,169 | | | | |
| **CUMULATIVE NET AMOUNT** | 477,428 | 529,553 | 575,133 | 627,258 | 641,978 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 20,312 |
| VALENCIA ESTATE ANNUAL INTEREST | 2,595 | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 28,610 | 393 | 393 | 393 | 20,705 |

| | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | total |
|---|---|---|---|---|---|---|---|---|
| | 32,414 | 32,414 | 32,414 | 32,414 | 32,414 | 32,414 | 32,414 | 388,968 |
| | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 390,000 |
| | 64,914 | 64,914 | 64,914 | 64,914 | 64,914 | 64,914 | 64,914 | 778,968 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 175,100 | 175,100 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 194,041 | 424,774 |
| | 45,973 | 52,518 | 52,518 | 45,973 | 52,518 | 52,518 | -129,127 | 354,194 |
| | 393 | 26,015 | 393 | 0 | 20,312 | 0 | 0 | 97,607 |
| | 45,580 | 26,503 | 52,125 | 45,973 | 32,206 | 52,518 | -129,127 | 256,587 |
| | | | | | | | | 511,169 |
| | 687,558 | 714,061 | 766,186 | 812,159 | 844,365 | 896,883 | 767,756 | 767,756 |

| | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 40,624 |
| | | | | | | | | 2,595 |
| | 393 | 393 | 393 | | | | | 3,144 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 393 | 26,015 | 393 | 0 | 20,312 | 0 | 0 | 97,607 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2020 - NOVEMBER 30, 2021**

| | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 34,035 | 34,035 | 34,035 | 34,035 | 34,035 |
| BUSINESS INCOME | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 |
| OTHER | | | | | |
| **TOTAL** | 67,365 | 67,365 | 67,365 | 67,365 | 67,365 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -2,680 | 54,969 | 48,424 | 54,969 | 37,876 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 26,700 | 0 | 8,150 | 0 | 0 |
| | | | | | |
| **NET** | -29,380 | 54,969 | 40,274 | 54,969 | 37,876 |
| **PREVIOUS YEAR** | 767,756 | | | | |
| **CUMULATIVE NET AMOUNT** | 738,376 | 793,345 | 833,619 | 888,588 | 926,464 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663  - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 8,126 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 1,078 | | 24 | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 26,700 | 0 | 8,150 | 0 | 0 |

| | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | total |
|---|---|---|---|---|---|---|---|---|
| | 34,035 | 34,035 | 34,035 | 34,035 | 34,035 | 34,035 | 34,035 | 408,420 |
| | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 33,330 | 399,960 |
| | 67,365 | 67,365 | 67,365 | 67,365 | 67,365 | 67,365 | 67,365 | 808,380 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 183,300 | 183,300 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 202,241 | 432,974 |
| | 48,424 | 54,969 | 54,969 | 48,424 | 54,969 | 54,969 | -134,876 | 375,406 |
| | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 60,472 |
| | 48,424 | 29,347 | 54,969 | 48,424 | 54,969 | 54,969 | -134,876 | 314,934 |
| | | | | | | | | 767,756 |
| | 974,888 | 1,004,235 | 1,059,204 | 1,107,628 | 1,162,597 | 1,217,566 | 1,082,690 | 1,082,690 |

| | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,126 |
| | | | | | | | | 1,102 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 60,472 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2021 - NOVEMBER 30, 2022**

| | December 2021 | January 2022 | February 2022 | March 2022 | April 2022 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| BUSINESS INCOME | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| OTHER | | | | | |
| **TOTAL** | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -45 | 57,604 | 51,059 | 57,604 | 40,511 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 25,622 | 0 | 0 | 0 | 0 |
| | | | | | |
| **NET** | -25,667 | 57,604 | 51,059 | 57,604 | 40,511 |
| **PREVIOUS YEAR** | 1,082,690 | | | | |
| **CUMULATIVE NET AMOUNT** | 1,057,023 | 1,114,627 | 1,165,686 | 1,223,290 | 1,263,801 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2021 | January 2022 | February 2022 | March 2022 | April 2022 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900   275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 25,622 | 0 | 0 | 0 | 0 |

| May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | total |
|---|---|---|---|---|---|---|---|
| 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| 0 | 0 | 0 | 0 | 0 | 0 | 192,200 | 192,200 |
| 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 211,141 | 441,874 |
| 51,059 | 57,604 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 398,126 |
| 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,570 |
| 51,059 | 34,656 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 349,556 |
| | | | | | | | 1,082,690 |
| 1,314,860 | 1,349,516 | 1,407,120 | 1,458,179 | 1,515,783 | 1,573,387 | 1,432,246 | 1,432,246 |

| May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | total |
|---|---|---|---|---|---|---|---|
| 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,674 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | 0 |
| 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,570 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2022 - NOVEMBER 30, 2023**

| | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| BUSINESS INCOME | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| OTHER | | | | | |
| **TOTAL** | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -45 | 57,604 | 51,059 | 57,604 | 40,511 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 22,948 | 0 | 0 | 0 | 0 |
| | | | | | |
| **NET** | -22,993 | 57,604 | 51,059 | 57,604 | 40,511 |
| **PREVIOUS YEAR** | 1,432,246 | | | | |
| **CUMULATIVE NET AMOUNT** | 1,409,253 | 1,466,857 | 1,517,916 | 1,575,520 | 1,616,031 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663 - YEAR 2014 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900   275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 22,948 | 0 | 0 | 0 | 0 |

| | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | total |
|---|---|---|---|---|---|---|---|---|
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 192,200 | 192,200 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 211,141 | 441,874 |
| | 51,059 | 57,604 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 398,126 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 51,059 | 34,656 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 352,230 |
| | | | | | | | | 1,432,246 |
| | 1,667,090 | 1,701,746 | 1,759,350 | 1,810,409 | 1,868,013 | 1,925,617 | 1,784,476 | 1,784,476 |

| | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | 0 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2023 - NOVEMBER 30, 2024**

| | December 2023 | January 2024 | February 2024 | March 2024 | April 2024 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| BUSINESS INCOME | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| OTHER | | | | | |
| **TOTAL** | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -45 | 57,604 | 51,059 | 57,604 | 40,511 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 22,948 | 0 | 0 | 0 | 0 |
| | | | | | |
| **NET** | -22,993 | 57,604 | 51,059 | 57,604 | 40,511 |
| **PREVIOUS YEAR** | 1,784,476 | | | | |
| **CUMULATIVE NET AMOUNT** | 1,761,483 | 1,819,087 | 1,870,146 | 1,927,750 | 1,968,261 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2023 | January 2024 | February 2024 | March 2024 | April 2024 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663 - YEAR 2014 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900   275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 22,948 | 0 | 0 | 0 | 0 |

| | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | total |
|---|---|---|---|---|---|---|---|---|
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 192,200 | 192,200 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 211,141 | 441,874 |
| | 51,059 | 57,604 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 398,126 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 51,059 | 34,656 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 352,230 |
| | | | | | | | | 1,784,476 |
| | 2,019,320 | 2,053,976 | 2,111,580 | 2,162,639 | 2,220,243 | 2,277,847 | 2,136,706 | 2,136,706 |

| | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | total |
|---|---|---|---|---|---|---|---|---|
| O | | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2024 - NOVEMBER 30, 2025**

| | December 2024 | January 2025 | February 2025 | March 2025 | April 2025 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| BUSINESS INCOME | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| OTHER | | | | | |
| **TOTAL** | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -45 | 57,604 | 51,059 | 57,604 | 40,511 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 22,948 | 0 | 0 | 0 | 0 |
| | | | | | |
| **NET** | -22,993 | 57,604 | 51,059 | 57,604 | 40,511 |
| **PREVIOUS YEAR** | 2,136,706 | | | | |
| **CUMULATIVE NET AMOUNT** | 2,113,713 | 2,171,317 | 2,222,376 | 2,279,980 | 2,320,491 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2024 | January 2025 | February 2025 | March 2025 | April 2025 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663  YEAR 2014 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900   275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 22,948 | 0 | 0 | 0 | 0 |

| | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | total |
|---|---|---|---|---|---|---|---|---|
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 192,200 | 192,200 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 211,141 | 441,874 |
| | 51,059 | 57,604 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 398,126 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 51,059 | 34,656 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 352,230 |
| | | | | | | | | 2,136,706 |
| | 2,371,550 | 2,406,206 | 2,463,810 | 2,514,869 | 2,572,473 | 2,630,077 | 2,488,936 | 2,488,936 |

| | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

**ELIZABETH HAZAN**
**DECEMBER 1, 2025 - NOVEMBER 30, 2026**

| | December 2025 | January 2026 | February 2026 | March 2026 | April 2026 |
|---|---|---|---|---|---|
| **RECEIPTS** | | | | | |
| RENTAL INCOME - FISHER ISLAND | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| BUSINESS INCOME | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| OTHER | | | | | |
| **TOTAL** | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| | | | | | |
| **DISBURSMENTS** | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 |
| RENTAL OF NEW HOUSING | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,545 | 0 | 0 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 17,093 |
| TAXES (FISHER ISLAND) | 57,649 | 0 | 0 | 0 | 0 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 70,045 | 12,396 | 18,941 | 12,396 | 29,489 |
| | | | | | |
| **NET RESULT** | -45 | 57,604 | 51,059 | 57,604 | 40,511 |
| | | | | | |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | |
| | | | | | |
| **LIST** | 22,948 | 0 | 0 | 0 | 0 |
| | | | | | |
| **NET** | -22,993 | 57,604 | 51,059 | 57,604 | 40,511 |
| **PREVIOUS YEAR** | 2,488,936 | | | | |
| **CUMULATIVE NET AMOUNT** | 2,465,943 | 2,523,547 | 2,574,606 | 2,632,210 | 2,672,721 |

**LIST OF PAYMENTS TO CREDITORS**

| | December 2025 | January 2026 | February 2026 | March 2026 | April 2026 |
|---|---|---|---|---|---|
| **SECURISED** | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 |
| IRS  24 663 - YEAR 2014 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| **UNSECURED** | | | | | |
| JBM URBAN 900  275,000.00 - JAN 2018 | 0 | 0 | 0 | 0 | 0 |
| *LIST OF UNSECURED CLAIMS 28 259.04* | 0 | 0 | 0 | 0 | 0 |
| | | | | | |
| TOTAL | 22,948 | 0 | 0 | 0 | 0 |

| | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | total |
|---|---|---|---|---|---|---|---|---|
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 26,180 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,093 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 57,649 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 192,200 | 192,200 |
| | 18,941 | 12,396 | 12,396 | 18,941 | 12,396 | 12,396 | 211,141 | 441,874 |
| | 51,059 | 57,604 | 57,604 | 51,059 | 57,604 | 57,604 | -141,141 | 398,126 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |
| | 51,059 | 34,656 | 57,604 | 51,059 | 57,604 | 57,604 | -164,089 | 329,282 |
| | | | | | | | | 2,488,936 |
| | 2,723,780 | 2,758,436 | 2,816,040 | 2,867,099 | 2,924,703 | 2,982,307 | 2,818,218 | 2,818,218 |

| | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | total |
|---|---|---|---|---|---|---|---|---|
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                          Case No. 16-10389-AJC
                                                   Chapter 11

_____Debtor_____/

### BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN

***TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]***

*The plan filed by Liza Hazan on September 6, 2016 can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*This ballot is for creditor _____ for the following type of claim placed in the indicated class in the indicated amount:*

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| ☐ General Secured | | $ |
| ☐ General Unsecured | | $ |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]        ☐ Accepts        ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed:

Print Name:

Address:

Phone:

Date:

### ★ ★ ★ FILE THIS BALLOT ON OR BEFORE ★ ★ ★

with:    Clerk of Bankruptcy Court
         ✓  301 N. Miami Ave., Room 150, Miami, FL 33128
         ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
         ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

**If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote.   Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)



**ORDERED in the Southern District of Florida on September 7, 2016.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                           Case No: 16-10389 AJC
                                                 Chapter 11
Liza Hazan
 Debtor.                    /

AGREED ORDER APPROVING STIPULATION (ECF 128)
Claim 5 Real Time Resolutions, Inc.

THIS CAUSE came on before the court September 1, 2016 at 10:30 AM upon the stipulation of settlement of claim 5, (ECF 128), which is upon the agreement of the parties, debtor and Creditor Real Time Resolutions, Inc., it is therefore

ORDERED that the stipulation is ratified and approved, and the parties are ordered to comply with its provisions.

### ###

Submitted by: Joel M. Aresty; Joel M. Aresty, Esq., is directed to serve a copy of this order on the parties.

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
www.flsb.uscourts.gov

In re:
**LIZA HAZAN**                                             **CASE NO.:  16-10389 AJC**

         Debtor.                                          **CHAPTER 11**
_____/

## DEBTOR'S MOTION TO SELL ASSETS
## AND APPROVE SALES PROCEDURES

Debtor-in-possession, Liza Hazan, moves for authority to sell Debtor's personal property pursuant to §363 of the Bankruptcy Code and for the entry of an Order establishing reasonable sales procedures, and says:

### I. BACKGROUND

1)  On January 11, 2016, Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code.

2)  The Debtor is managing her affairs as Debtor-in-possession.

3)  No trustee, examiner or committee has been appointed.

4)  The Debtor filed an Amended Plan (D.E. 189) and Amended Disclosure Statement (D.E. 190) on September 6, 2016

5)  The Debtor seeks to sell personal items such as jewelry, accessories, purses, designer shoes, designer and vintage haute couture clothing, furniture and antiques, in order to assist the Debtor in funding the Effective Date payments anticipated by her Amended Plan. (D.E. 189).

6)  The Debtor believes and represents that the sale of her personal property is in the best interest of the Debtor and all creditors as the sale will generate substantial funds that can be used to satisfy claims and make payments required under her Plan.

## II. TERMS OF THE PROPOSED SALE

7)   Section 363 of the Bankruptcy Code provides that a Debtor-in-possession after notice and hearing may use, sale or lease, other than in the ordinary course of business, property of the estate. Section 363(f) authorizes the Debtor-in-possession to sell its property free and clear of all claims, liens and encumbrances.

8)   Although the Debtor does not believe that any of her personal property is subject to any liens of creditors, in abundance of caution, the Debtor seeks the Court's approval of this proposed sale of personal property to recognized dealers, brokers, consigners and auctioneers and request that this Court approve specific sale procedures in order to obtain the highest and best offers for the assets and make certain the Debtor's estate obtains the maximum benefit for the sale of the assets.

9)   All notice requirements of Bankruptcy Code § 363 and Bankruptcy Rules 2002, 6004 and 9014 will be satisfied.  The Debtors will give adequate notice of this proposed sale and the bidding and sales procedures in the manner specified by the Court to all creditors and interested parties.

WHEREFORE, the Debtor-in-possession, Liza Hazan, respectfully requests the Court enter an Order authorizing the sale of assets of the Debtor free and clear of liens pursuant to § 363 of the Bankruptcy Code and establishing bidding and sales procedures as set forth above, and granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served electronically or by mail to: U.S. Trustee, and all interested parties on this 13th day of September, 2016.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
Tel: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
By: ____/s/ *David W. Langley*_____
David W. Langley, Esq.
Florida Bar Number: 348279

Label Matrix for local noticing
113C-1
Case 16-10389-AJC
Southern District of Florida
Miami
Tue Aug 30 15:56:38 EDT 2016

Board of Managers of Spencer Condominium
c/o Robert C. Furr Esq
Furr and Cohen PA
2255 Glades Rd #337W
Boca Raton, FL 33431-7379

Fisher Island Community Association, Inc.
c/o PeytonBolin
3343 West Commercial Blvd, Suite 100
Fort Lauderdale, FL 33309-3425

JMB/Urban 900 Development Partners, Ltd
JMB/Urban 900 Development Partners, Ltd
900 North Michigan Ave
Chicago, IL 60611-1542

JPMorgan Chase Bank, National Association
Shapiro, Fishman & Gache, LLP
c/o Kevin L Hing
4630 Woodland Corporate Blvd.#100
Tampa, FL 33614-2429

NLG, LLC
c/o Alberto H Orizondo
3162 Commodore Plaza #3E
Miami, FL 33133-5815

Selective Advisors Group, LLC
c/o Marshall Socarras Grant, P.L.
197 S. Federal Highway
Suite 300
Boca Raton, FL 33432-4946

SouthEast Financial, LLC
Albertelli Law
c/o Jeffrey S. Fraser
PO Box 23028
Tampa, FL 33623-2028

U.S. Bank National Association
SHD Legal Group, P.A.
PO BOX 19519
Fort Lauderdale, FL 33318-0519

Valencia Estates Homeowners' Associatio
c/o Haber Slade, P.A.
201 S. Biscayne Blvd.
Suite 201
Miami, FL 33131-4324

6913 Valencia, LLC
3839 NW Boca Raton Boulevard
West Palm Beach, FL 33413

900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-3007

ATT Mobility
PO Box 536216
Atlanta, GA 30353-6216

Allied Collection Service
1607 Central Ave
Columbus, IN 47201-5370

American InfoSource LP as agent for
DIRECTV, LLC
PO Box 5008
Carol Stream, IL   60197-5008

American InfoSource LP as agent for
T Mobile/T-Mobile USA Inc
PO Box 248848
Oklahoma City, OK   73124-8848

Board of Managers of Spencer Condominium
c/o Robert C. Furr Esq
2255 Glades Rd #337W
Boca Raton, FL 33431-7379

Chase Bank, NA
c/o Jennifer Kopf, Esq.
Shapiro, Fishman & Gashe, LLP
2424 N. Federal Highway, Suite 360
Boca Raton, FL 33431-7701

Cross & Simon, LLC
c/o David Holmes, Esq.
1105 North Market ST, Suite 901
Wilmington, DE 19801-1202

Cross & Simon, LLC
David G. Holmes, Esquire
1105 North Market Street
Suite 901
Wilmington, DE 19801-1202

David J. Fischer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606-4409

(p)DIRECTV LLC
ATTN BANKRUPTCIES
PO BOX 6550
GREENWOOD VILLAGE CO 80155-6550

Enhanced Recovery Company
8014 Bayberry Rd
Jacksonville, FL 32256-7412

First National Collection Bureau, Inc.
610 Waltham Way
Sparks, NV 89434-6695

Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319-2877

Florida Power & Light
ATTN: General Mailing Facility
Miami, FL 33188-0001

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351-7967

Fuerst Ittleman David & Joseph, P.L.
c/o Robert P. Charbonneau, Esq.
501 Brickell Key Drive, Suite 300
Miami, FL 33131-2624

HSBC Bank USA, NA
PO Box 2013
Buffalo, NY 14240-2013

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JMB/Urban 900 Development Partners, Ltd.
David J. Fischer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606-4409

Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007-3067

Miami Dade Water & Sewer Department
Attn: Collection Branch/Bankruptcy Unit
P.O. Box 149089 Coral Gables, FL 33114

Miami-Dade County Tax Collector
Attn: Paralegal Bankruptcy Unit
200 NW 2 Ave, suite 430
Miami, Fla 33128-1735

Miami-Dade Water & Sewer Department
PO Box 026055
Miami, FL 33102-6055

(c)MICHAEL W. SIMON, ESQ.
SIMON & SIGALOS, LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140-1429

NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131-2122

Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, NY 10001-3717

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185-5931

Real Estate Holdings Group, LDC
60 Market Square
PO Box 364
Belize City, Belize

Real Time Resolutions, Inc.
1349 Empire Central Drive, Suite #1
Dallas, Texas 75247-4029

Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247-4029

(c)S & S COLLECTIONS, INC.
MICHAEL W. SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016-5424

Select Advisors Group, LLC
6499 Powerline Road, Suite 304
Fort Lauderdale, FL 33309-2043

(c)SIMON & SIGALOS
C/O MICHAEL SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431-4527

Spencer Condominium
d/b/a Halstead Management Co., LLC
c/o David A. Tane, Esq.
120 Broadway, Suite 948
New York, NY 10271-0996

Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213

Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017-8515

US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706-8369

Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131-4317

Valencia Estates Homeowners Assn, Inc.
42205 Fisher Island Drive
Miami Beach, FL 33109-1291

Verizon
PO Box 1100
Albany, NY 12250-0001

Wells Fargo Bank
Box 5058 MAC P6053-021
Portland, OR 97208-5058

Joel M. Aresty Esq.
309 1st Ave S
Tierra Verde, FL 33715-2231

Liza Hazan
6913 Valencia Drive
Miami Beach, FL 33109-0601

Tamara D McKeown
100 SE. 2 St # 2700
Miami, FL 33131-2122

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Direct TV
PO Box 6550
Englewood, CO 80155-6550

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

| | | |
|---|---|---|
| Michael W. Simon, Esq. | S & S Collections, Inc. | Simon & Sigalos |
| Simon & Sigalos, LLP | Michael W. Simon, Esq. | c/o Michael Simon, Esq. |
| 3839 NW Boca Raton Blvd., Suite 100 | 3839 NW Boca Raton Blvd., Suite 100 | 3839 NW Boca Raton Boulevard, Suite 100 |
| Boca Raton, FL 33431 | Boca Raton, FL 33431 | Boca Raton, FL 33431 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Fuerst, Ittleman David & Joseph, P.L. | (u)Real Time Resolutions, Inc. | (u)Miami |
| (u)Car Southeast Financial, LLC<br>Per DE#23 | (u)Cross Simon<br>Per DE #23 | (u)Halsted Management Company<br>Per DE #23 |
| (u)Jacobs Keeley, PLLC<br>Per DE #23 | (u)Mark D. Cohen, PA<br>Per DE #23 | (u)Mercedes Benz Financial Services<br>Per DE #23 |
| (u)Newman Ferrara, LLP<br>Per DE #23 | (d)Newman Ferrara, LLp<br>1250 Broadway, 27th Floor<br>New York, NY 10001-3717 | (u)Presidential Auto Leasing & Sales<br>Per DE #23 |

(u)Robert P. Lithman P.A.
Per DE #23

(u)Select Portfolio Servicing, Inc.
Per DE #23

End of Label Matrix
Mailable recipients    60
Bypassed recipients    14
Total                  74

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                         CASE NO.: 16-10389 AJC

LIZA HAZAN,
        Debtor.                       CHAPTER 11
_____/

### Debtor's Motion for Extension of Exclusivity Period

### [Hearing Requested Prior to November 7, 2016]

Debtor, Liza Hazan, moves for an extension of the exclusivity period to file and confirm her Chapter 11 plan of reorganization, and in support thereof states:

1. On August 16, 2016, Debtor filed an Amended Motion for Extension of Time re Exclusivity to amend plan and disclosure statement. The exclusivity period was continued to November 7, 2016. (ECF 159).

2. Debtor filed an Amended Disclosure Statement (ECF 190), and an Amended Plan (ECF 189) on September 6, 2016.

3. A disclosure hearing is scheduled for November 16, 2016.

4. The confirmation hearing will take place at least forty-five (45) days after the disclosure hearing, or sometime in January, 2017.

5. Debtor requires more time to negotiate with creditors for a consensual plan, and respectfully requests that this court extend the exclusivity period for Debtor to January 30, 2017.

WHEREFORE, Debtor respectfully request an extension of the exclusivity period to January 30, 2017, and such other relief as the Court deems proper.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served electronically and by mail to all interested parties on attached service list on this 15th day of October, 2016.

LAW OFFICES OF DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Blvd., Suite 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com

By: ____*/s/ David W. Langley* _____
         David W. Langley, Esq.
         Florida Bar Number: 348279

## <u>SERVICE LIST</u>

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.

rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of Creditor NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*



**ORDERED in the Southern District of Florida on October 18, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
### www.flsb.uscourts.gov

In re:

LIZA HAZAN,
    Debtor.

_____/

CASE NO.: 16-10389-AJC

CHAPTER 11

### ORDER GRANTING DEBTOR'S MOTION TO SELL ASSETS
### [D.E. 199]

**THIS MATTER** having come before the court on October 11, 2016 at 11:00 a.m. on

Debtor-in-Possession's, LIZA HAZAN (Debtor), Motion to Sell Assets [D.E. 199] and the court

having reviewed the file and otherwise being fully advised , it is:

**ORDERED:**

The Debtor's Motion is **GRANTED.**The Debtor is authorized to sell her personal

property as requested in her Motion, Docket Entry 199.

**###**

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:    954-356-0450
Fax:             954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

www.flsb.uscourts.gov

IN RE:

                                        **CaseNo:16-10389AJC**
                                        **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.** _____/

**AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

      THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10 (Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter the "Stipulation").  The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                    CASE NO.:  16-10389-AJC

LIZA HAZAN,
          Debtor.                         CHAPTER 11
_____/

## AGREED MOTION TO APPROVE STIPULATION OF SETTLEMENT OF CLAIM 13
## S & S Collections, Inc.

Debtor, Liza Hazan, by and through undersigned counsel, with the consent of opposing counsel, hereby files this Motion to Approve Stipulation entered into between the parties, Liza Hazan and S & S Collections, Inc., and in support thereof, states as follows:

1. The Debtor, Liza Hazan, and S & S Collections, Inc. agreed to enter into a written stipulation resolving the disputes among the parties.

2. The Stipulation, attached to this Motion as Exhibit "A," was submitted for this Court's approval on November 15, 2016, [ECF 293].

3. A proposed agreed order approving the Stipulation is attached as Exhibit "B".

WHEREFORE, Debtor, requests that this Court approve the Stipulation and grant any other relief just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above

document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 23rd day of November, 2016.

> DAVID W. LANGLEY
> *Attorney for Debtor*
> 8551 W. Sunrise Blvd., Ste 303
> Plantation, Florida 33322
> Telephone:    954-356-0450
> Facsimile:    954-356-0451
> E-mail: dave@flalawyer.com
> By: ___/s/_David W. Langley_____
>     David W. Langley, Esq.
>     Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
www.flsb.uscourts.gov

In re:
LIZA HAZAN                                              CASE NO.:  16-10389-AJC

    Debtor.                                        CHAPTER 11
_____/

STIPULATION OF SETTLEMENT OF CLAIM 13

    Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and S & S Collections, Inc. as agent for Michael Simon, Esq. (Proof of Claim # 13) (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim #13, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

1. On 1/11/16 the debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code.

2. On 5/16/16 Creditor filed claim #13  in the amount of $21,242.71 as an unsecured claim.

3. The Debtor has disputed this claim but in an effort to avoid further litigation expense agrees to pay Creditor. Debtor now stipulates that Debtor is personally responsible for payment of all fees and costs asserted in Claim #13.  Creditor agrees to accept, in full settlement of all claims presented or presentable by Creditor, the sum of $8,709.00 to be paid by Debtor on or before 18 months from the Petition Date. Full settlement is conditioned on Creditor's receipt of payment full payment of $8709.00, on or before 18 months from the Petition Date.

4.  Creditor agrees to vote the full amount of its Proof of Claim in favor of Debtor's plan of reorganization.

5. Debtor withdraws the allegations made in her Disclosure Statements and Plans, including but not limited to the allegations that Debtor has claims against Michael W. Simon and Simon & Sigalos, LLP, as amended regarding the treatment of Claim 13.

6. Creditor withdraws its objections to Debtor's disclosure filed on 11/09/16 as ECF 283 and agrees to withdraw its objections to Debtor's disclosure filed on 11/10/16 as ECF 284.

7. This stipulation shall be submitted to the court for ratification and approval.

WHEREFORE, the debtor respectfully requests an order ratifying and approving this stipulation.

Agreed to by

 s/s: Liza Hazan, Debtor

Simon & Sigalos, LLP
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431
561.447.0017 – Phone
561.447.0018 – Facsimile
Email: msimon@simonsigalos.com
FBN 776394
Attorneys for S & S Collections, Inc.
s/s: Michael W. Simon

and

David W. Langley
Attorney for Debtor
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document

was filed electronically and served via CM/ECF and by mail to attached service list to all parties

of interest on this 15th day of November, 2016.

> DAVID W. LANGLEY
> Attorney for Debtor
> 8551 W. Sunrise Blvd., Ste 303
> Plantation, Florida 33322
> Telephone:     954-356-0450
> Facsimile:     954-356-0451
> E-mail: dave@flalawyer.com
> By: ___/s/_David W. Langley_____
>        David W. Langley, Esq.
>        Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

_16-10389-AJC Notice will not be electronically mailed to:_

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,
     Debtor.

CASE NO.: 16-10389-AJC

CHAPTER 11

_____/

## AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 13
## S & S Collections, Inc.

**THIS MATTER** came before the Court upon the Stipulation of Settlement of Claim 13 (S & S Collections, Inc.) [ECF 293] (the "Stipulation"). The Court has been advised of the agreement of the Parties and has review the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1. The Stipulation [ECF 293] is approved and ratified by the Court.

2. S & S's Objection to Amended Disclosure Statement [ECF 283, 284] is considered resolved pursuant to the terms of the Stipulation.

3. S & S's Claim # 13 is considered resolved pursuant to the terms of the Stipulation.

4. S & S's withdraws its Objection to Amended Disclosure Statement [ECF 283, 284].

5. This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

###

**Submitted by:**

    DAVID W. LANGLEY
    *Attorney for Debtor*
    8551 W. Sunrise Boulevard, Suite 303
    Plantation, Florida 33322
    Telephone:    954-356-0450
    Fax:        954-356-0451
    E-mail: dave@flalawyer.com
    Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

INRE:                                         Case No: 16-10389 AJC

                                                   Chapter11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR.                                                    /

## STIPULATION OF SETTLEMENT OF CLAIMS

Debtor-In-Possession, Liza Hazan (öHazanö or öDebtorö) and Creditor US Bank (öCreditorö) (collectively the öPartiesö), by and through undersigned counsel, hereby agree to a stipulation as to the relief from automatic stay asset forth below and respectfully represents the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

1.      On January 11, 2016 the debtor filed a voluntary petition under chapter 11of the United States Bankruptcy Code.

2.      Parties stipulate to complete stay relief for creditor to proceed in New York to exercise its alleged rights and/or to negotiate for loss mitigation or other relief, *nunc pro tunc* to January 2016.

3.      Parties agree that the property at 1 East 62nd Street York Apt 1A New York deeded to Real Estate Holdings Group, L.D.C. is not a property of the estate. This stipulation shall be submitted to the court for ratification and approval.

**WHEREFORE**, the debtor respectfully requests an order ratifying and approving this stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: Adam Alexander Diaz, Esq
Managing Attorney, Florida Bankruptcy
**SHD LEGAL GROUP, P.A.**
Office:(954)564-0071/Ext.213
adiaz@shdlegalgroup.com, counsel
for Creditor US Bank

and

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Blvd. Ste303
Plantation, Florida 33322
Telephone:  954-356-0450
Facsimile:  954-3560451
Email:dave@flalawyer.com
By:*/s/  David W.Langley*_____
David W. Langley, Esq.
Florida Bar Number: 348279

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 15thday of December, 2016.

DAVID W. LANGLEY
*Attorney for Debtor*
 8551 W. Sunrise Blvd. Ste303
 Plantation, Florida 33322
 Telephone:  954-356-0450
 Facsimile:  954-3560451
 Email:dave@flalawyer.com
 By:_____*/s/  David W.Langley*_____
        David W. Langley, Esq.
        Florida Bar Number: 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza
Hazanaresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza
Hazanaresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com; marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com;marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptc
y.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
a diaz@shdlegalgroup.com;southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com; atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com;
efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com;
file@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@
dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com;electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza
Hazantdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza
Hazantdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com;flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

CASE NO.: 16-10389 AJC

LIZA HAZAN,
        Debtor.

CHAPTER 11

_____/

**Debtor's Motion for Extension of Exclusivity Period**

**[Hearing Requested Prior to January 30, 2017]**

Debtor, Liza Hazan, moves for an extension of the exclusivity period to file and confirm her Chapter 11 plan of reorganization, and in support thereof states:

1. On August 16, 2016, Debtor filed an Amended Motion for Extension of Time re Exclusivity to amend plan and disclosure statement. The exclusivity period was continued to November 7, 2016. (ECF 159).

2. Debtor filed an Amended Disclosure Statement (ECF 190), and an Amended Plan (ECF 189)on September 6, 2016.

3. A disclosure hearing was scheduled for November 16, 2016.

4. The Debtor resolved all objections to the Disclosure Statement with the exception of that raised by NLG, LLC.

5. By Order dated December 2, 2016, the Court set for hearing the objection to Disclosure Statement of NLG, LLC for December 7, 2016 (D.E. 242).

6. At the hearing on December 7, 2016, the Court indicated that the issue of NLG's standing must be resolved before the Court will consider other matters. A subsequent hearing on standing took place on December 21, 2016, and proposed orders are due January 20, 2017.

7. A further hearing on disclosure cannot take place until the Court rules on NLG's standing sometime after January 20, 2017. The confirmation hearing will take place at least forty-five (45) days or, at the earliest, sometime in March, 2017.

8. Debtor respectfully requests that this court extend the exclusivity period for Debtor to April 30, 2017.

WHEREFORE, Debtor respectfully request an extension of the exclusivity period to April 30, 2017, and such other relief as the Court deems proper.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served electronically and by mail to all interested parties on attached service list on this 6th day of January, 2017.

> LAW OFFICES OF DAVID W. LANGLEY
> *Attorney for Debtor*
> 8551 W. Sunrise Blvd., Suite 303
> Plantation, Florida 33322
> Telephone:    954-356-0450
> Facsimile:      954-356-0451
> E-mail: dave@flalawyer.com
>
> By:    */s/ David W. Langley*
>           David W. Langley, Esq.
>           Florida Bar Number: 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com


Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Michael A. Friedman, mfriedman@gjb-law.comon behalf of NLG, LLC

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*



**ORDERED in the Southern District of Florida on January 17, 2017.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

CASE NO.: 16-10389-AJC

LIZA HAZAN,
     Debtor.

CHAPTER 11

_____/

<u>**AGREED ORDER APPROVING STIPULATION OF SETTLEMENT [D.E. 350]**</u>

    **THIS MATTER** came before the Court upon the Agreed Motion to Approve Stipulation of Settlement [ECF 345] (the "Stipulation"). The Court has been advised of the agreement of the Parties and has reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

    **ORDERED** as follows**:**

    1.  The Stipulation [ECF 345] is approved and ratified by the Court.

2. The Third Paragraph of the Stipulation [ECF 345] is not binding on any other creditor.

3. This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

### ###

**Submitted by:**

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on January 25, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
### www.flsb.uscourts.gov

In re:

LIZA HAZAN,
    Debtor.

_____/

CASE NO.: 16-10389-AJC

CHAPTER 11

### ORDER GRANTING DEBTOR'S MOTION FOR EXTENSION OF EXCLUSIVITY PERIOD [D.E. 364]

**THIS MATTER** having come before the court on January 11, 2017 at 10:30 AM on Debtor's Motion for Extension of Exclusivity Period [D.E. 364] and the court having reviewed the file and otherwise being fully advised , it is:

**ORDERED:**

The Debtor's Motion is **GRANTED.** The exclusivity period for the Debtor to file a plan is extended to April 30, 2017.

### ###

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:     954-356-0450
Fax:             954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                                       CASE NO.:  16-10389-AJC

LIZA HAZAN,
        Debtor.                                     CHAPTER 11
_____/

## THIRD AMENDED DISCLOSURE STATEMENT

### *Table of Contents*

I.      **INTRODUCTION**                                     **page 2**
      A.     **Purpose of This Document**
      B.     **Deadlines for Voting and Objecting;**
               **Date of Plan Confirmation Hearing**
      C.     **Disclaimer**
II.     **BACKGROUND**                                       **page 4**
      A.     **Description and History of the Debtor's Business**
      B.     **Insiders of the Debtor**
      C.     **Management of the Debtor Before and During the Bankruptcy**
      D.     **Events Leading to Chapter 11 Filing**
      E.     **Significant Events During the Bankruptcy Case**
      F.     **Projected Recovery of Avoidable Transfers**
      G.     **Claims Objections**
      H.     **Current and Historical Financial Conditions**
III.    **SUMMARY OF THE PLAN OF REORGANIZATION**        **page 13**
      **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
      A.     **What is the Purpose of the Plan of Reorganization?**
      B.     **Unclassified Claims**
            1.    *Administrative Expenses*
            2.    *Priority Tax Claims*
      C.     **Classes of Claims and Equity Interests**
            1.    *Classes of Secured Claims*
            2.    *Classes of Priority Unsecured Claims*
            3.    *Class[es]of General Unsecured Claims*
            4.    *Class[es] of Equity Interest Holders*
      D.     **Means of Implementing the Plan**
      E.     **Risk Factors**
      F.     **Executory Contracts and Unexpired Leases**
      G.     **Tax Consequences of Plan**
IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**     **page 27**
      A.     **Who May Vote or Object**

B. **Votes Necessary to Confirm the Plan**
    1. *Votes Necessary for a Class to Accept the Plan*
    2. *Treatment of Non accepting Classes*
C. **Liquidation Analysis**
D. **Feasibility**
    1. *Ability to Initially Fund Plan*
    2. *Ability to Make Future Plan Payments*
      *And Operate Without Further Reorganization*
V. **EFFECT OF CONFIRMATION OF PLAN**           **page 31**
A. **Discharge Of Debtor**
B. **Modification of Plan**
C. **Final Decree**

**EXHIBITS**

**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

## INTRODUCTION

This is the third amended disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Second Amended Plan of Reorganization (the "Plan") filed by the Debtor on same date. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

A. **Purpose of This Document**

This Disclosure Statement describes:

        The Debtor and significant events during the bankruptcy case,
        How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
        Who can vote on or object to the Plan,
        What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
        Why the Proponent believes the Plan is feasible, and how the treatment

of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B. **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. Clyde Atkins United States Courthouse 301 North Miami Avenue, Room 150 Miami, FL 33128. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served pursuant to orders served herewith.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
Counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

C. **Disclaimer**

***The Court must approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court***

3

*has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.     BACKGROUND

### A.     Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has historically earned in excess of $350,000 per year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele. The Debtor has several projects under contract that will provide sufficient income to confirm and fund her plan. The Debtor presently has closed contracts that will earn her significant funds (comparable to past earnings) in the next six months.

Debtor works with other major hospitality brands, restaurants, lounges and nightclubs that will earn her millions of dollars of income in the near future.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in the Fisher Island Property would support a refinancing, which could also be used to support funding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group, L.D.C. which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group, L.D.C. has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

### B.     Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

### C.     Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were the Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case have been: The Debtor.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or

4

successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: The Debtor.

### D. Events Leading to Chapter 11 Filing

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtor's equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") now scheduled at $12 million for $5.1 million from NLG, LLC ("NLG") through its then claimed principal Chris Kosachuk. The Debtor has been involved in litigation with NLG and Kosachuk since that time as more fully described below.

The NLG's self titled manager Chris Kosachuk has signed a gift of equity letter stating that Debtor does not have to pay back the amount of $1,275,000. In the closing statement NLG provided a seller contribution in the amount of $1,275,000 to Debtor. Chris Kosachuk has thereafter testified that he transferred ownership of NLG in 2007 to Luxcom, a Russian company (that Debtor has determined does not exist) in 2010. In 2012 Chris Kosachuk testified that NLG is now owned by Meridian Trust Company located in the British Virgin Islands, but he could not recall who he reported to or which island in BVI is Meridian Trust Company located. In 2014 Chris Kosachuk in a sworn deposition alleged that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover.

In October 2008, NLG, through Chris Kosachuk, broke into Debtor's homestead property located on Fisher Island and resided in the Debtor's home for two months. Debtor, who was out of the country, after learning of the incident, filed an emergency motion to vacate the fraudulent Sheriff's deed obtained by NLG. Judge Scola granted Debtor's emergency motion, finding Chris Kosachuk's actions "unconscionable". After Judge Scola ordered Chris Kosachuk and NLG to vacate the premises, Kosachuk refused to vacate Debtor's home and moved for an enlargement of time. Judge Scola denied NLG's motion and forced Chris Kosachuk to vacate the premises. Police reports of the incident document that Chris Kosachuk stole Debtor's furniture and her seven plasma TVS. Judge Scola has ruled as follows:

"The Sheriff's Sale is set aside and vacated and the Sheriff's Deed dated November 19, 2008, for the property is vacated and the Sheriff's Deed is hereby SET ASIDE. The title of Defendant, Elizabeth Hazan, to the following described real property in Miami-Dade County, Florida:

**Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County, Florida.**

is a good title against the claims or purported claims of Plaintiff, NLG, LLC, and all other parties claiming by through, under or against it and those claims or purported claims are cancelled and the title to the property is forever quieted to Elizabeth Hazan as to NLG, LLC.

B. NLG, LLC and Chris Kosachuck, and all parties having or claiming to have any rights of possession of the property through NLG, LLC or Chris Kosachuck and all those parties since the filing of the Notice of Lis Pendens in this cause are to vacate the property located at 6913 Valencia Drive, Fisher Island, Florida 33109 ("premises"), on or before noon on December 21, 2008, and deliver the keys to Hazan or her agents, and leave the premises in good condition. The Clerk of this Court is directed to issue a Writ of Possession after December 21, 2008, to the Sheriff of Miami-Dade County, directing him to put Elizabeth Hazan in possession of the aforesaid premises after twenty-four hours notice has been conspicuously posted on said premises all for which let execution issue.

Chris Kosachuk has stolen Debtor's mail. Kosachuk has stalked the Debtor and harassed her and called her a 'whore and a f_ _ _ ing Jew". Chris Kosachuk has threatened Debtor's lawyers. Chris Kosachuk pushed her New York attorney Darius Marzec's to the ground and has emailed him "Soon you will find yourself square in the cross-hairs and won't be able to hide behind all of your lawyering bullshit". Chris Kosachuk has impersonated Debtor and called her banks to find out personal information. Chris Kosachuk has intimidated Debtor's previous clients, ruined her business and caused her millions of dollars of lost of income. Kosachuk has harassed her clients, has defamed her character and damaged her reputation, defaming her in numerous newspapers, calling her a zero and a loser and other names.

NLG and Chris Kosachuk have caused the Debtor to suffer emotionally for over a decade and have caused her to lose income and to incur substantial attorneys' fees to defend herself against Chris Kosachuk's nefarious actions.

Chris Kosachuk has sent Debtor an email stating "your days are numbered" and told her that he would burry her alive.

Debtor filed numerous police reports and reports with Fisher island security who have physically removed Kosachuk from Debtor's property. Chris Kosachuk has impersonated other residents and used their Fisher Island security code to access Fisher Island and has lied to Fisher Island security to gain access to Fisher Island to come to the Island, intimidate, stalk, harass and physically and emotionally harm the Debtor.

**<u>Chase Bank</u>**

In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington Mutual Bank in the amount of $3,825,000. JP Morgan Chase Bank claims to now own the Washington Mutual Bank promissory note and mortgage signed by Debtor in March 7, 2007.

Chase filed a foreclosure in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

**<u>NLG</u>**

**NLG FL litigation**

NLG's self titled manager Chris Kosachuk. provided a gift of equity or an "equity contribution" of $1,275,000 stating that Debtor does not have to pay back the amount of $1,275,00 on the closing statement and also had Debtor execute a note and second mortgage on the Fisher Island property for that same amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtor's property. Litigation between the parties has occurred in four states, multiple courts and has continued for over a decade, and continues in this court, costing Debtor millions in legal fees, adversely affecting her health and her career, and putting her in the financial position of having to seek relief in a Chapter 11 reorganization.

Chris Kosachuk asserts that he is the manager and representative of NLG. Kosachuk has testified that he transferred NLG in 2007 to Luxcom, a Russian company. In 2012 Chris Kosachuk testified that NLG is now owned by Meridian Trust Company located in BVI but he could not recall to whom he reported. In 2014 Chris Kosachuk testified in deposition that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover. From prior to the purchase date, more than a decade ago, to today, the parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and is now in this Court.

NLG obtained a judgment on the promissory note signed by Debtor on April 28, 2008. ("The Scola Judgment"). NLG also sued Debtor for foreclosure in 2011. In 2014, Judge Peter Lopez assigned NLG's judgment against Debtor, the Scola Judgment along with all NLG's rights, claims and benefits against Debtor to Selective Advisors Group, LLC. ("Selective") and also ordered Selective to provide a partial credit in the amount of $2,746,953.34 which amount includes principal and interest through August 31, 2014 (representing the full amount of the Scola judgment) at the 11% interest per annum. Selective did so.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a secured creditor in this case. Selective is listed in Debtor's schedule as her secured creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016. Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176. This Honorable Court ruled as follows:

> First, NLG is not a scheduled creditor in this case. The Debtor scheduled Selective as its secured creditor, relying on the judicial assignment in the Proceedings Supplementary Order, pursuant to the Scola judgment. NLG was listed solely as a notice party. The claims bar date has passed in this case, and NLG has not filed a claim. NLG indeed had sufficient notice of these proceedings to timely file a claim (both NLG's counsel and Kosachuk himself appeared and questioned

the Debtor at the 341 meeting), but apparently chose not to. Because NLG has not been scheduled and did not file a claim against this estate, there is an issue as to whether NLG lacks standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).

…

The Debtor's Schedules indicate a disputed first mortgage on the property for $ 5.2 million dollars to Chase Bank N.A.; a mortgage for $2.0 million dollars to an entity owned by her mother that Debtor and her mother represented may be subordinated and/or satisfied in connection with a plan, and various other miscellaneous liens less than $300,000. The Debtor values the Selective lien at zero, because Selective, as judicial assignee of NLG, is owned by her husband and has filed a Satisfaction of Judgment and a Satisfaction of Mortgage.

…

The Debtor also asserts the Property is necessary to an effective reorganization. She resides on the Property with her husband and has declared the Property to be her homestead. The Debtor is a financial consultant who earns her income from consulting fees in connection with placing high-end retail and restaurant businesses in certain top-tier shopping locations. She entertains prospects at home. She also asserts significant equity in the home sufficient to refinance and/or collateralize the payment of her unsecured debt".

The Debtor has filed with the Court an appraisal (D.E. 82-1) of the Property for $9.5 million, and asserts: (1) that the Debtor is negotiating with Chase regarding various issues; (ii) that NLG's right to foreclose was judicially assigned to Selective, which has satisfied the Hazan mortgage in partial satisfaction of its judgment against NLG; and (iii) that the mortgage held by Debtor's mother's company will be subordinated or satisfied as part a plan. The Court believes the Debtor has presumptively established the prospect of equity in the Property for the benefit of creditors, and further believes the Debtor has established the Property is necessary for an effective reorganization as she uses the Property for business purposes and any plan filed in this case will be premised upon, at least in part, future business income.

### NLG NY Litigation

NLG domesticated the judgment obtained against debtor on April 28, 2008 ("the Scola Judgment") in New York in 2014. New York Supreme Court Judge Barbara Jaffee, having recognized the Miami-Dade Judge Peter Lopez Order of Assignment of the NLG's Judgment ("The Scola Judgment") against the Debtor to Selective Advisors Group, LLC ("Selective") and having accepted the Selective's Satisfaction of NLG's Judgment against the Debtor Ordered on November 5, 2014:

> "That the caption of the case, *NLG, LLC vs Elizabeth Hazan,* be changed to substitute Selective Advisors Group, LLC as Plaintiff in place of NLG and that the New York County Clerk is directed to accept for filing the Florida Court Order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further
>
> ORDERED, that the County Clerk is directed to reflect on the docket of this case that the Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further
>
> ORDERED, that the County Clerk is directed to accept for filing the satisfaction of Judgment or other appropriate satisfaction piece; and it is further
>
> ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action under Index No. 108020/08."

NLG also filed a lawsuit in New York alleging Debtor fraudulently transferred the New York condo (described below). On November 2014, Hon. Judge Barbara Jaffee dismissed both claims filed by NLG.

### **Spencer Condominium**

Debtor bought a condominium in New York City on Fifth Avenue and 62nd Street on December 2005 in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065 ("The New York Condominium"). Debtor transferred this NY condominium on August 2011. The Board of Managers alleges that the transfer was made without the consent of Spencer Condominium. Debtor's husband controls the corporation, Real Estate Holdings Group LDC which now owns the condominium. The Spencer Condominium Board of Managers has been involved with The Debtor and REHG in litigation since 2008 resulting in a confidential settlement agreement executed in March 2015. Spencer Condominium disputes that the Settlement Agreement is enforceable at this time, but Judge Singh of the New York Supreme Court has recently ordered the parties to comply with the Settlement Agreement; The settlement includes a resolution of the following lawsuits:

> *Board of Managers of Spencer Condominium v. Elizabeth Hazen, et al;*
> No. 111644/09.
> *Real Estate Holding Group, LDC v. Board of Managers of Spencer Condominium et al*;
> No. 154149/2012
> *Real Estate Holdings Group, vs. Spencer Condominium*
> No. 159254/2013

All three cases have been dismissed and settled and REHG is presently hiring a real estate broker to list the condominium unit for sale to pay off the settled reduced amounts of the first mortgage in favor of U.S. Bank and to satisfy the second mortgage in favor of Real Time

Resolutions (both alleged creditors of this Debtor) as well as to resolve the assessments allegedly due the Board of Managers. The unit will be listed for sale.

On July 21, 2016 Debtor filed the following motions: Motion for Relief from Stay Spencer Condominium, (D.E. 115), Motion to Seal or for in Camera Review (D.E. 116) and Motion for Abstention (D.E. 117). All three Debtor's Motions have been withdrawn without prejudice. On February 24, 2017 Debtor filed three new motions in this case: A Motion to Seal, D.E. 387, A Motion for Abstention D.E. 388, A Motion for Relief from Stay D.E. 389 and An Amended Motion for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 390. Debtor also filed an objection to Spencer's Proof of Claim. On March 1, 2017, This Court granted the agreed Order granting Debtors' Amended Motion for Order for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 392. The Court ruled as follows: "The Debtor's Motion is granted. The automatic Stay is lifted solely for the purpose of permitting the New York Supreme Court to exercise jurisdiction over the litigation between the Debtor and Spencer Condominium and related parties and the stipulation for settlement therein. The 14 day Stay period pursuant to Bankruptcy Rule 4001(a)(3) is waived. No property of the estate will be affected by this Order".

In the case of *Real Estate Holdings Group, vs. Spencer Condominium* No. 159254/2013 on July 27, 2016, Real Estate Holdings Group, L.D.C. ("REHG") Owner of The New York Condominium filed an Order to Show Cause to enforce the confidential Stipulation of settlement executed by the parties on March 2015. On March 2, 2017, Honorable Judge Singh granted Plaintiff REHG's Motion to enforce the Confidential Settlement with Spencer Condominium as the stay has been vacated and ordered the parties to comply with the terms of the settlement within 30 days of the Order. The matter is adjourned to April 25, 2017 (2:30 pm) to monitor compliance.

In the case of *Board of Managers of Spencer Condominium v. Elizabeth Hazan* No. 109083/2008 Spencer has obtained an award in the amount of $109,554.86. This award was never converted to a judgment entered or recorded in any court. However the parties have agreed that this amount of alleged money owed by the Debtor to Spencer prior to her transfer of ownership of the New York condo in 2011 almost 6 years ago shall be paid by REHG and not by the Debtor in the plan. Spencer has no standing to object to the Debtor's plan or object to her confirmation and is bound by their in full force and effect confidential Stipulation of Settlement executed on March 2015.

### Reorganization

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, or if necessary, refinancing and contributions from her husband's companies.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.    **Significant Events During the Bankruptcy Case**

    *     Date of Order for Relief under Chapter 11 on 1/11/16.

    *     Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM.

    *     Deadline for complaint re dischargeability was 4/18/16.

    *     Professionals approved by the court
           Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date.
           Joel Aresty was substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126).
           David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and was approved by the Court on October 19, 2016.

    *     Contested claim disallowance proceedings: pending; see claim treatments.

    *     Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

    *     Debtor has managed her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor to reorganize allowing Debtor to propose a plan for payment of creditors.


     **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC**

     On August 21, 2016 Selective filed an Adv. Case No. 16-1439-AJC D.E.1. On 10/21/2016 Debtor moved to amend the Complaint to add Debtor, Liza Hazan as Plaintiff. On October 20, 2016. D.E.8. NLG filed their answer and their counterclaims. D.E5 and D.E 6.

     On 11/08/16 Plaintiffs Selective and Hazan filed their motions to dismiss Count I and Count II of NLG's counterclaims and Motion for Judgment on the pleading D.E. 11 and D.E. 12. On December 6, 2016 Plaintiffs Selective and Hazan filed their Motion for leave to file Amended Complaint against NLG to add a count under Florida Statute § 65.08 and Florida Statute § 65.011for quieting title and a count for damages. D.E. 32. On December 19, 2016 This Court ordered the parties to submit Orders on Plaintiffs' motions to dismiss NLG's counterclaims and Plaintiffs' motions for Judgment on the Pleadings. On December 23, 2016 Debtor Hazan amended her Complaint to add additional Counts D.E. 40. On 12/30/2016 This Court entered an Order granting Plaintiff's Motion to amend and allowing Second Amended Complaint. On January 3, 2017 Plaintiffs filed their Second Motion to Amend Complaint to add additional Tort claims, D.E 47 and D.E 48, adding additional torts.

     On 01/13/17 NLG's counsel, Michael Friedman, filed his expedited Motion to Withdraw as attorney of record for NLG citing irreconcilable differences D.E 54. On 01/23/17 this Court granted Michael Friedman's Motion to Withdraw, D.E 61, and also granted Plaintiffs Selective and Hazan's Second Motion to amend Complaint. D.E 62.

On 02/22/17 NLG's third counsel filed his notice of appearance - James Miller, D.E.75. On 03/01/17 NLG's third counsel filed his expedited motion to withdraw citing once again irreconcilable differences and also filed his motion to allow NLG to extend time to meet the Court's deadlines. D.E. 76. On 03/03/2017 Plaintiffs Selective and Hazan filed their Motion for Default against NLG for failing to answer Plaintiffs' Third Amended Complaint. D.E. 85. On 03/10/17 this court denied NLG's motion to extend time. D.E. 94.

On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG and denied Plaintiffs' motion for judgment on pleadings as moot because of the subsequent filings and amendments. This Court granted a Default in favor of Plaintiffs and against Defendant NLG and ruled as follows:

> The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court set deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100.

**Valencia Estates Homeowners' Association**

The Debtor has entered into a Stipulation for Settlement with Valencia Estates Homeowners' Association, Inc. The Debtor has agreed to approval of the stipulation by this Court and the Association has agreed to support the Debtor's reorganization.

F. **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute 726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 which has a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonable equivalent value, which facts are not relevant to the plan in this case.

G. **Claims Objections**

The Debtor has not completed claim objections but the current plan reflects the objections contemplated.

H. **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to this statement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting is not a regular monthly income which would lend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

## III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS

### A.   What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.   Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.   *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

### C.   Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
|  | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim. |
|  | Joel Aresty | Mr. Aresty has agreed to accept $35,000.00 in fees and |

|  |  | $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement (submitted but not yet entered) followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. |
|  | David W. Langley | Paid as awarded or agreed. |
|  | US Trustee | paid in full at confirmation |

## Priority Claims

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | **IRS**<br><br>**Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Payments every six months to include interest on any unpaid claim amounts after the effective date of the plan at 3% |

## Secured Claims

### 6913 Valencia Drive Property Fisher Island Florida

| 2 | **Chase Bank** | | no | yes | **First Secured Mortgage –**<br><br>The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim.  Chase was scheduled as disputed, contingent and unliquidated.<br><br>Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 with Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan.  Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues.  If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final.<br><br>Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan.  See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996).<br><br>**Chase has agreed to withdraw all objection to this Disclosure** |

| | | | | Statement and the Debtor has agreed that any objections to confirmation are preserved. |
|---|---|---|---|---|
| 3 | **Selective Advisors Group, LLC** | yes | yes | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainst The Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008, |
| | | | | Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014. per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014. |
| | | | | NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a scheduled creditor in this case. Selective is listed in Debtor's schedule as her creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016. Selective, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. **On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.** |

17

| | | | | On August 21, 2016, Selective sued NLG in this bankruptcy Court **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January 3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend their Complaint to add a count seeking to Quiet Title to the property, and a number of tort claims, which motion was granted on January 23, 2016. **On March 20, 2017 The Court awarded a default in favor of Plaintiffs Selective and Hazan and against Defendant NLG, LLC. (D.E. 100.)** The Court granted a Default in favor of Plaintiffs and against Defendant NLG, LLC and ruled as follows: "The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court sets deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default..."D.E 100 |
| 4 | **6913 Valencia LLC** | | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012. The Debtor does not contest the validity or extent of 6913 Valencia |
| | | Yes | | |

| | | | | LLC's Mortgage on her Homestead property claim. |
|---|---|---|---|---|
| 5 | **Valencia Estates Community Assn, Inc claim #10** | no | yes | **Valencia Estates Community Association's ("Valencia")** Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2. Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00 as per the Stipulation.<br><br>3. Debtor has paid the 2016 special assessment in the amount of $6250.00 as per the Stipulation.<br><br>4. The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.<br><br>**Valencia Estates Community Association, Inc withdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan**.<br><br>**Claim settled.**<br><br>Agreed Order Approving Stipulation of Settlement of Claim 10 filed by Valencia Estates Homeowners' |

| | | | | |
|---|---|---|---|---|
| | | | | Association entered on 11/18/16 D.E 302. |
| 6 | **Fisher Island Community Ass'n, Inc Claim #18** | no | yes | Late filed Proof Of Claim in the amount of $216,278.97 on 10/20/16 – **Disputed by Debtor and Disallowed by this Court.**<br><br>The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been denied on November 16, 2016.<br><br>Claimant 3343 West Commercial Blvd. 100 (Fisher Island Community Association).<br>Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16<br>**Claim Disallowed Claim by this Court. No payment through Plan.** |
| 7 | **Miami-Dade Water and Sewer claim #7** | no | yes | **Claim #7 $1502.54 to be paid on the Effective Date of The Plan** |
| 8 | **IRS claim #3** | no | yes | $393,985.17 - Secured claim shall be paid over ten years with interest payments every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |

| 9 | **Miami-Dade County Tax Collector**<br><br>**Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6  paid in full**. |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim 8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br><br>Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed to support Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163)<br><br>**Claim settled.** |

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|
| 11 | **Board of Managers Spencer Condominium claim #14** | | yes | The Debtor disputes the Claim #14 filed by The Board of Managers Spencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New |

| | | | | York. The Debtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance fees owed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065. This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"), the owner of the New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlement executed in March 2015 ("Settlement"). The vast remaining portion of the Spencer Condo Board of Managers' claim is to be paid by the owner of the unit, REHG, per the Settlement executed in March 2015 by the parties. **On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowing the New York Court to exercise jurisdiction over and enforce the confidential Settlement Agreement.** **On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce The Confidential** |
|---|---|---|---|---|
| | | no | | |

|  |  |  |  | Stipulation entered in March 2015 between the parties.<br><br>No payment through the plan. Claim settled. |
|---|---|---|---|---|

**Vehicle**

**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 12 | **Southeast Financial LLC** | no | yes | Stipulation Of Settlement DE 98 approved by this Court DE 101.<br><br>Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor.<br><br>Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current.<br><br>**Claim settled.** |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full over 18 months beginning month 6 after confirmation with equal**

**payments every 6 months**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| 13 | IRS Claim #3 | no | X | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | X | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | X | 461.00 |
| | FPL Claim #11 | no | X | 2906.93 |
| | Mount Sinai | no | X | 3,240.00 |
| | Mount Sinai | no | X | 295.91 |
| | HSBC Bank USA NA | no | X | 1070.66 |
| | Sterling Emerg Svc | no | X | 2445.30 |
| | Bank of America NA | no | X | 3301.00 |
| | Wells Fargo Claim #12 | no | X | 323.24 |
| | Real Time Resolutions Claim #5 | no | X | 12,000.00 |
| | Total | | | 28,259.04 |
| | | | | |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**

**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment |
|---------|-------------|----------------------|----------|-----------|
| **14** | **JMB Urban 900 Dev. claim #4*** | **no** | **X** | $664,380.47 will be paid 41% or 275,000.00 per settlement 18 months from the petition date. **Adversary proceedings 16-01188-AJC closed on 7/22/16 and Case settled 16-01188-AJC.** |

| | | | | |
|---|---|---|---|---|
| | **S&S Collections Simon & Sigalos claim #13** | **no** | **X** | $21,242 **Claim settled** for 41% per stipulation to be paid 18 months from petition date.<br><br>**Claim settled** |
| | **Newman Ferrara LLP claim #15** | **no** | **X** | $24,818.44 Legal bill Legal work for Corporation other than the Debtor.<br><br>**The Claim bar date has passed. Unallowed claim.** |
| | | | | |

*claim 4 subject of adversary case 16-01188 AJC settlement at 41% of claim

** insider claim will subordinate and not be paid until all other allowed claims but reserves right to vote for the plan

## Disputed Unsecured Claims

### not paid until and unless allowed

### and then paid within 5 years after confirmation

| | | | | |
|---|---|---|---|---|
| 15 | **Cross & Simon Claim #1** | no | X | $11,023.83<br>Legal Bill for corporation other than Debtor.<br><br>**Unallowed claim.**<br><br>**No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| 16 | **Fuerst Ittleman David & Joseph, P.L.**<br><br>**Claim #16** | no | X | Disputed Proof of Claim filed after Claim Bar Date. Fuerst Ittleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. Fuerst Ittleman David & |

| | | | | Joseph, P.L. have agreed that they are not a creditor of this estate.<br><br>**No payment through plan.**<br>**Unallowed Claim.** |
|---|---|---|---|---|

## Unsecured Scheduled Disputed and No Claim Filed

## Therefore Disallowed

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown<br><br>The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371.<br><br>US Bank did not file a proof of claim and will not be paid through the Plan. **Claim settled.** |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and **NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**. |

| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
|---|---|
| | NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor. |
| | **On May 13, 2016 NLG, LLC moved for stay relief in this court (D.E. 66).** Selective, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG, LLC. **On August 23, 2016 the bankruptcy court entered its decision denying NLG, LLC's motion for relief from the automatic stay. ECF 176** |
| | **On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG, LLC in the Adversary, Case No. 16-1439 Selective Advisors Group, LLC and Liza Hazan AKA Elizabeth Hazan Liza Hazan AKA Elizabeth Hazan V. Defendant NLG, LLC in the Adversary. See D.E. 100. This Court granted a Default in favor of Plaintiffs Selective Advisors Group, LLC and Debtor Liza Hazan AKA Elizabeth Hazan and against Defendant NLG, LLC** |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 17 | Equity Individual interest holder | no | retained |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 per year and in 2014 a personal income of $420,000.

Debtor has executed in the last quarter of 2016 contracts that have earned her income comparable to past years, to be paid in installments, and additional payments throughout the construction phase, and the last remaining portion upon opening of the clients for business.

Debtor has contracts to expand a nationwide and worldwide very high end retail operator that has already over 50 existing stores and is planning to open over 100 new locations in the next five years.

Debtor has also exclusive contracts with high end restaurants and is responsible for their expansion nationwide. Debtor is in charge of finding new locations and is also responsible of their construction, architectural plans etc all the way through their opening of their new locations.

Debtor's husband controls a company called Real Estate Holdings Group, L.D.C. ("REHG") which owns a New York condominium on Fifth Avenue and 62nd street New York Apt 1 A NYC NY 10065 appraised at $4,500,000.00 that has in excess of $2,500,000.00 in equity. The company, REHG, has agreed to refinance and also sell the condominium to fund the plan in order to assure successful reorganization and completion of the plan.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in Fisher Island would also support a refinancing, which could also be used support funding a plan if necessary.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|------------|--------------------|----------|-------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E.    **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases.  If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.  This Plan bears the risk that the Debtor's income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to make payments under this Plan.  However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE.  CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F.    **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. There are none. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is*** no later than thirty (30) days after the date of the order confirming this Plan. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income tax consequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims and Interests who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement. No rulings or determinations of the Internal Revenue Service

(the "IRS") or any other tax authorities have been obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes or Class 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NON RESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

## A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 for government units.***

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

31

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

• holders of claims and equity interests that have been disallowed by an order of the Court;
• holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
• holders of claims or equity interests in unimpaired classes;
• holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
• holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
• administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.      **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court can not confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non accepting classes, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a*** "***cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

D.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables

showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibits C and D.

### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit D.

**_You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections._**

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

Discharge. In a case in which the debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and
**(iii)** subparagraph (C) permits the court to discharge; and
**(C)**(*) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the debtor; and
**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon the satisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)     The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)     During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured and priority creditors, as contemplated under the Plan.

(e)     Upon the satisfaction of all payments required under the Plan to creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to creditors.

(f)     Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

## B.     **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

## C.     **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted March 27, 2017:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954—356-0450
By: /s/ *David W. Langley*

Attorney for the Plan Proponent

**Exhibit A: Historical Earnings and assets**

**EXHIBIT A: Historical Earnings and Assets**

Debtor's educational background includes:

- 07/03/1992-Academy Of Paris Brevet De Technicienne Superieure Informatique De Gestion

- 06/28/1989-Academy De Bordeaux Baccalaureat De L'enseignement Du Second Degre Mathematiques & Sciences De La Nature

-1995-1996- University Of Montreal Law School

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has generally earned approximately $400,000.00 per year with the exception of the year preceding the filing of this Chapter 11 case following a period of declined income due to temporary health issues. The Debtor is now again earning at rates comparable to previous years. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") with a scheduled value of $12,000,000.00. Additionally, Debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Additionally, the equity in the Fisher Island homestead could support refinancing, which could be used in funding a plan if necessary.

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization which will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets. The Debtor intends to reorganize her debts and liabilities through a combination of:

(a) negotiating and/or litigating as may be necessary, resolutions with certain secured creditors, and unsecured creditors; and

(b) making distributions funded by her assets and income from her consulting work, or if necessary refinancing. To date, the Debtor's efforts have focused on settling with all her legitimate creditors, obtaining Stay relief from this Court in order to have the New York Court enforce her Confidential Settlement with Spencer, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

Exhibit D below is a projection showing the feasibility of making the payments required under the plan, from projected net income of approximately $450,000.00 to $650,000.00 per year. Receipts of consulting income are not regular monthly payments, which is why payments range from quarterly to every six (6) months, or even less frequently, in the plan.

She sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country by bringing all matters into a single forum, and to fashion a Plan of Reorganization that will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings group, L.D.C. ("REHG") which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. REHG has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

**Exhibit B Liquidation Analysis**

**Plan Proponent's Estimated Liquidation Value of Assets**

**Assets**

| | |
|---|---|
| a. Cash on hand at the effective date | $65,000.00 |
| b. Accounts receivable | $400,000.00 |
| c. Personal property including office furniture & equipment | $327,500.00 |
| d. Automobiles | $17,000.00 |
| e. Real Estate – Homestead on Fisher Island – appraised at $ 9,500,000 | |
|     Non-exempt value | $0 |
| f. Lawsuits or other claims against third-parties: | |
|     Potential claims against NLG, LLC | $ unknown |
| k. Other intangibles (such as avoiding powers actions) | $0.00 |
| | |
| **Total Non-exempt Assets at Liquidation Value** | **$809,500.00** |

**Less:**

| | |
|---|---|
| IRS Priority claim | ($24,663.00) |
| SE Financial lien on vehicle(secured portion of 24,970.70 claim) | ($17,000.00) |
| Chapter 7 estimated liquidation expenses | ($50,000.00) |
| Costs of sale (auctioneer fees) | ($32,750.00) |
| Chapter 11 administrative expenses - Geoffrey Aaronson | ($150,000.00) |
|     Joel Aresty | ($35,000.00) |
|     David W. Langley | ($30,000.00) |
| Amount available for distribution to unsecured creditors | **$470,087.00** |
| Percentage distribution to unsecured creditors | |
| (Total dollar amount of unsecured claims is $2,600,000 from claims docket) | **18% Distribution** |

The Amended Plan provides 41% to 100% distribution to allowed unsecured claims

**Exhibit C: Cash on hand on the effective date of the Plan**

| | |
|---|---|
| **Cash on hand on effective date of the Plan**: | $65,178 |

*Less --*

| | |
|---|---|
| Amount of administrative expenses payable on effective date of the Plan | TBD |
| Amount of statutory costs and charges UST | TBD |
| Plan Payments due on effective date of the Plan | TBD |
| Balance after paying these amounts | TBD |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| Cash in Debtor's bank account now | $20,178 |
| + Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan | $45,000 |

(Basis for projection in anticipated income) see Exhibit D

| | |
|---|---|
| Total | $65,178 |

**ELIZABETH HAZAN**
**MAY 1, 2017 - APRIL 30,, 2018**

| | May 2017 | june 2017 | July 2017 | August 2017 | September 2017 | October 2017 | November 2017 | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 100,000 | 25,000 | 100,000 | 50,000 | 160,000 | 50,000 | 50,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 735,000 |
| **TOTAL** | 100,000 | 25,000 | 100,000 | 50,000 | 160,000 | 50,000 | 50,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 735,000 |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 10,339 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 30,000 | 0 | 0 | 0 | 0 | 30,000 |
| **TOTAL** | 7,396 | 13,941 | 7,396 | 7,396 | 13,941 | 8,873 | 8,873 | 45,418 | 8,873 | 63,490 | 15,418 | 8,873 | 209,888 |
| **NET RESULT** | 92,604 | 11,059 | 92,604 | 42,604 | 146,059 | 41,127 | 41,127 | -5,418 | 31,127 | -23,490 | 24,582 | 31,127 | 525,112 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| **LIST OF PAYMENTS TO CREDITORS** | 22,955 | 1,893 | 276,893 | 1,893 | 10,602 | 22,205 | 35,645 | 1,893 | 1,893 | 6,609 | 22,205 | 1,893 | 406,579 |
| **NET RESULT** | 69,649 | 9,166 | -184,289 | 40,711 | 135,457 | 18,922 | 5,482 | -7,311 | 29,234 | -30,099 | 2,377 | 29,234 | 118,533 |
| **BEGINNING OF THE YEAR** | | | | | | | | | | | | | 0 |
| **CUMULATIVE NET AMOUNT** | 69,649 | 78,815 | -105,474 | -64,763 | 70,694 | 89,616 | 95,098 | 87,787 | 117,021 | 86,922 | 89,299 | 118,533 | 118,533 |

| | May 2017 | june 2017 | July 2017 | August 2017 | September 2017 | October 2017 | November 2017 | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIST OF PAYMENTS TO CREDITORS PRE-PETITION** | | | | | | | | | | | | | |
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interest CLAIM 3 | 0 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 |
| IRS  24 663 - YEAR 2014 - Claim 3 | 0 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 |
| VALENCIA ESTATES COMMUNITY 195,000 - 48M CLAIM 10 | 4,062 | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 0 | 44,686 |
| VALENCIA ESTATES - ANNUAL INTEREST | | | | | | | | | | 4,716 | | | 4,716 |
| SOUTHEAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 275,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 275,000 |
| S&S COLLECTIONS - SIMON & SIGALOS CLAIM 13 | | | | | 8,709 | | | | | | | | 8,709 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 12,000 | 0 | 0 | 0 | 0 | 0 | 8,130 | 0 | 0 | 0 | 0 | 0 | 20,130 |
| **ADMINISTRATIVE CLAIM** | | | | | | | | | | | | | |
| JOEL ARESTY | 6,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 23,000 |
| **TOTAL** | 22,955 | 1,893 | 276,893 | 1,893 | 10,602 | 22,205 | 35,645 | 1,893 | 1,893 | 6,609 | 22,205 | 1,893 | 406,579 |

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN         Case No. 16-10389-AJC
             Chapter 11

_____ Debtor _____/

**BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN**

***TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]***

*The plan filed by Liza Hazan on September 6, 2016 can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*This ballot is for creditor _____ for the following type of claim placed in the indicated class in the indicated amount:*

| *TYPE OF CLAIM* | *CLASS IN PLAN* | *AMOUNT OF CLAIM* |
|---|---|---|
| ☐ General Secured | | $ |
| ☐ General Unsecured | | $ |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]    ☐ Accepts      ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed:

Print Name:

Address:

Phone:

Date:

    ★ ★ ★ **FILE THIS BALLOT ON OR BEFORE** ★ ★ ★

with:   Clerk of Bankruptcy Court
     ✓  301 N. Miami Ave., Room 150, Miami, FL 33128
     ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
     ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

    **If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote. Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
#### www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                    CASE NO.:  16-10389 AJC

      Debtor.                                    CHAPTER 11

_____/

## SECOND AMENDED PLAN OF REORGANIZATION

### ARTICLE I

### SUMMARY

This Second Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtor (the "Debtor") from sources of payment, such as equity in properties and future income.

Debtor has an exclusive period during which only debtor may propose a plan. The exclusive period was extended through July 11, 2016 by motion filed on 5/10/16 at DE 63 and granted at hearing on 5/26/16 without objection and ordered on 7/7/16 at DE 99, and again extended through November 7, 2016, by Order entered on August 22, 2016 (DE 173), and again extended through April 30, 2017 by Order entered on January 26, 2017, D.E. 373.

This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at a dividend of 41% to 100% of total allowed claims over up to 60 months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

This Plan also provides for the payment of administrative claims. If payment is not made in full on the effective date of this Plan with respect to any such claim (to the extent permitted by the Code or the claimant's agreement), the paragraphs below will identify such claim and briefly summarize the proposed treatment.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01     This Plan includes a class of priority claims, classes of secured claims, classes of unsecured claims, and a class of equity interests.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims. Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes.

3.02     Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Counsels for Debtor Geoffrey Aaronson, Joel Aresty and David W. Langley will be paid outside of the plan and have agreed to such treatment.

3.03     Priority Tax Claims. Each holder of a priority tax claim will be paid by terms of treatment consistent with §1129(a)(9)(C) of the Code.

3.04     United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6)(U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01     Claims and interests shall be treated as follows under this Plan:

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim. |
| | Joel Aresty | Mr. Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as |

| | | |
|---|---|---|
| | | follows: $3000 within 5 days of entry of Order Approving Settlement (submitted but not yet entered) followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. |
| | David W. Langley | Paid as awarded or agreed. |
| | US Trustee | Paid in full at confirmation |

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | **IRS**<br><br>**Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Payments every six months to include interest on any unpaid claim amounts after the effective date of the plan at 3% |

**Secured Claims**

**6913 Valencia Drive Property Fisher Island , LLCFlorida**

| | | | | |
|---|---|---|---|---|
| 2 | **Chase Bank** | no | yes | **First Secured Mortgage –**<br>The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim. Chase was scheduled as disputed, contingent and unliquidated.<br><br>Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 with Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, |

| | | | | ownership of the loan and standing issues. If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final. |
| | | | | Pending adjudication of Chase's alleged interest in the loan and the subject property, Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan. See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). **Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.** |
| 3 | **Selective Advisors Group, LLC** | yes | yes | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG against The Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008. |
| | | | | Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014 per the Final Order of Assignment of Hon. |

Judge Peter Lopez entered on August 20, 2014.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a scheduled creditor in this case. Selective is listed in Debtor's schedule as her creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016. Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.

On August 21, 2016, Selective sued NLG in this bankruptcy Court **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claim lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida On January 3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend their Complaint to add a count seeking to Quiet Title to the property, and a number of tort claims, which motion was granted on January 23, 2016.

**On March 20,2017 The Court awarded a default in favor of Plaintiffs Selective and Hazan and against Defendant NLG, LLC. (D.E. 100.)** The Court granted a Default in favor of Plaintiffs and against Defendant NLG, LLC and ruled as follows: "The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not

| | | | | |
|---|---|---|---|---|
| | | | | constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court sets deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100 |
| 4 | **6913 Valencia LLC** | yes | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLC's Mortgage on her Homestead property. |
| 5 | **Valencia Estates Community Assn, Inc claim #10** | no | yes | **Valencia Estates Community Association ("Valencia")**'s Claim #10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2. Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00 as per the Stipulation.<br><br>3. Debtor has paid the 2016 special assessment in the amount of $6250.00 as per the Stipulation.<br><br>4. The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid |

| | | | | |
|---|---|---|---|---|
| | | | | in full, with the interest payments to be made annually on the twelfth month. **Valencia Estate Community Association withdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan.** <u>**Claim settled**</u>. Agreed Order Approving Stipulation of Settlement of Claim 10 filed by Valencia Estates Homeowners' Association entered on 11/18/16 D.E 302**.** |
| 6 | **<u>Fisher Island Community Ass'n, Inc Claim #18</u>** | no | yes | Late filed Proof Of Claim in the amount of $216,278.97 on 10/20/16 - **<u>Disputed by Debtor and disallowed by this court</u>**. The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been denied on November 16, 2016. Claimant 3343 West Commercial Blvd. 100 (Fisher Island Community Association). Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16 **<u>Claim Disallowed by this Court. No payment through Plan.</u>** |
| 7 | **<u>Miami-Dade Water and Sewer</u>** | no | yes | **<u>Claim #7 $1502.54 to be paid on the Effective Date of The Plan</u>** |

| | | | | |
|---|---|---|---|---|
| | claim #7 | | | |
| 8 | **IRS claim #3** | no | yes | 393,985.17 - Secured claim shall be paid over ten years with interest payments every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6 paid in full** |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim 8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br><br>Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed to support Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163).<br><br>**Claim settled.** |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  |  |

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | no | yes | The Debtor disputes the Claim #14 filed by The Board of Managers Spencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement executed in March 2015 in New York. The Debtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance fees owed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065. This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"), the owner of the New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Hazan and other parties are bound by the Confidential Stipulation of Settlement executed in March 15, 2015 ("Settlement"). The vast remaining portion of the Spencer Condo Board of Managers' claim is to be paid by the owner of the unit, REHG, per the Settlement executed in March 2015 by the parties. |

|  |  |  |  | On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowing the New York Court to exercise jurisdiction over and enforce the confidential Settlement Agreement. |
|---|---|---|---|---|
|  |  |  |  | On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce The Confidential Stipulation entered in March 2015 between the parties. |
|  |  |  |  | No payment through the plan. Claim settled. |

**Vehicle**

**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 12 | **Southeast Financial LLC** | no | yes | Stipulation Of Settlement DE 98 approved by this court DE 101. Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor. Secured claim allowed $17,000 value paid at 5.25% for 48 months payments in the amount of |

| | | | | $393 began on August 1, 2016 and are current. **Claim settled** |
|---|---|---|---|---|
| | | | | |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full over 18 months beginning month 6 after confirmation with equal payments**

**every 6 months**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 13 | IRS claim #3 | no | X | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | X | 1130.00 |
| | American InfoSource Direct TV Claim #9 | no | X | 461.00 |
| | FPL Claim #11 | no | X | 2906.93 |
| | Mount Sinai | no | X | 3,240.00 |
| | Mount Sinai | no | X | 295.91 |
| | HSBC Bank USA NA | no | X | 1070.66 |
| | Sterling Emerg Svc | no | X | 2445.30 |
| | Bank of America NA | no | X | 3301.00 |
| | Wells Fargo Claim #12 | no | X | 323.24 |
| | Real Time Resolution Claim #5. | no | X | 12,000.00 |
| | Total | | | 28,259.04 |
| | | | | |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**

**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment |
|---|---|---|---|---|
| **14** | **JMB Urban 900 Dev.** <br><br> **claim #4\*** | **no** | **X** | $664,380.47 will be paid 41% or 275,000.00 per settlement 18 months from the petition date. **Adversary proceedings 16-01188-AJC closed on 7/22/16 and Case settled 16-01188-AJC** |
| | **S&S Collections Simon &Sigalos claim #13** | **no** | **X** | $21,242 **claim settled** for 41% per stipulation to be paid 18 months from petition date. |
| | **Newman Ferrara LLP claim #15** | **no** | **X** | $24,818.44 Legal bill Legal work for Corporation other than the Debtor. <br><br> **The Claim bar date has passed. Unallowed claim.** |
| | | | | |
| | | | | |

*claim 4 subject of adversary case 16-01188 AJC settlement at 41% of claim

** insider claim will subordinate and not be paid until all other allowed claims but reserves right to vote for the plan

### Disputed Unsecured Claims

### not paid until and unless allowed

### and then paid within 5 years after confirmation

| | | | | |
|---|---|---|---|---|
| 15 | **Cross & Simon Claim #1** | **no** | **X** | $11,023.83 <br> Legal Bill for corporation other than Debtor. <br> **Unallowed claim.** <br><br> **No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| 16 | **Fuerst Ittleman David & Joseph, P.L. Claim #16** | **no** | **X** | Disputed Proof of Claim filed after Claim Bar Date. Fuerst Ittleman David & Joseph, P.L. is not a creditor of this |

| | | | | Debtor. Debtor has filed an objection to this claim. Fuerst Ittleman David & Joseph, P.L. has agreed that they are not a creditor of this estate.<br><br>**No payment through plan.**<br>**Unallowed Claim** |
|---|---|---|---|---|
| | | | | |
| | | | | |

### Unsecured Scheduled Disputed and No Claim Filed

### Therefore Disallowed

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown<br><br>The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371.<br><br>US Bank did not file a proof of claim and will not be paid through the Plan. **Claim settled.** |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and **NLG, LLC's alleged Claim has been judicially assigned** per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan.** |

| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
|---|---|
| | NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a scheduled creditor in this case. Selective is listed in Debtor's schedule as her creditor. |
| | **On May 13, 2016 NLG, LLC moved for stay relief in this court (D.E. 66).** Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG, LLC's claim through execution on a judgment against NLG, LLC. **On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176** |
| | **On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG, LLC in the Adversary, Case No. 16-1439 Selective Advisors Group, LLC and Liza Hazan AKA Elizabeth Hazan V. Defendant NLG, LLC. See D.E. 100**. **This Court granted a Default in favor of Plaintiffs Selective Advisors Group, LLC and Debtor Liza Hazan AKA Elizabeth Hazan and against Defendant NLG, LLC** |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 17 | Equity Individual interest holder | no | retained |

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan: none.

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII

## GENERAL PROVISIONS

7.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.02    Effective Date of Plan. The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII

## DISCHARGE

8.01.   **Debtor is an individual.**

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In this case the Debtor has provided for payments not less than Projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

Discharge. In a case in which the debtor is an individual—

(A)unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B)at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—

(i)the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii)modification of the plan under section 1127 is not practicable; and

(iii)subparagraph (C) permits the court to discharge; and

(C)(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—

(i)section522(q)(1) may be applicable to the debtor; and

16

(ii)there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to all unsecured and deficiency creditors. **Upon payment of all required Plan payments the Debtor shall be discharged of all allowed and disallowed claims**. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a) Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b) The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d) During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, that being 1/11/16, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e) Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to unsecured creditors.

(f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to unsecured creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

Respectfully submitted, 3/27/17

By: /s/ Liza Hazan

The Plan Proponent

By: /s/ David W. Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954—356-0450
By: /s/ *David W. Langley*
Attorney for the Plan Proponent

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:
**LIZA HAZAN**                                               **CASE NO.: 16-10389 AJC**

Debtor.                                                      **CHAPTER 11**
_____/

## NOTICE OF FILING OF SUPPLEMENTAL EXHIBITS

PLEASE TAKE NOTICE that the Debtor, Liza Hazan, hereby files the attached

Supplemental Exhibits, in support of Debtor's Third Amended Disclosure Statement [DE 416]:

1. Attached as Exhibit "A" is Supplemental Projections of Cash Flow and Earnings for

Post-Confirmation Period.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court

for the Southern District of Florida, and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above

document was filed electronically and served electronically or by mail to: U.S. Trustee, and all

interested parties on this 28th day of March, 2017.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
Tel: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
By: ___/s/ David W. Langley_____
David W. Langley, Esq.
Florida Bar Number: 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

**ELIZABETH HAZAN**
**MAY 1, 2017 - APRIL 30,, 2018**

| | May 2017 | June 2017 | July 2017 | August 2017 | September 2017 | October 2017 | November 2017 | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 100,000 | 25,000 | 100,000 | 50,000 | 160,000 | 50,000 | 50,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 735,000 |
| **TOTAL** | 100,000 | 25,000 | 100,000 | 50,000 | 160,000 | 50,000 | 50,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 735,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 10,339 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 30,000 | 0 | 0 | 0 | 0 | 30,000 |
| **TOTAL** | 7,396 | 13,941 | 7,396 | 7,396 | 13,941 | 8,873 | 8,873 | 45,418 | 8,873 | 63,490 | 15,418 | 8,873 | 209,888 |
| **NET RESULT** | 92,604 | 11,059 | 92,604 | 42,604 | 146,059 | 41,127 | 41,127 | -5,418 | 31,127 | -23,490 | 24,582 | 31,127 | 525,112 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST OF PAYMENTS TO CREDITORS | 22,955 | 1,893 | 276,893 | 1,893 | 10,602 | 22,205 | 35,645 | 1,893 | 1,893 | 6,609 | 22,205 | 1,893 | 406,579 |
| **NET RESULT** | 69,649 | 9,166 | -184,289 | 40,711 | 135,457 | 18,922 | 5,482 | -7,311 | 29,234 | -30,099 | 2,377 | 29,234 | 118,533 |
| BEGINNING OF THE YEAR | | | | | | | | | | | | | 0 |
| CUMULATIVE NET AMOUNT | 69,649 | 78,815 | -105,474 | -64,763 | 70,694 | 89,616 | 95,098 | 87,787 | 117,021 | 86,922 | 89,299 | 118,533 | 118,533 |

| LIST OF PAYMENTS TO CREDITORS PRE-PETITION | May 2017 | June 2017 | July 2017 | August 2017 | September 2017 | October 2017 | November 2017 | December 2017 | January 2018 | February 2018 | March 2018 | April 2018 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interest CLAIM 3 | 0 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 |
| IRS  24 663 - YEAR 2014 - Claim 3 | 0 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 |
| VALENCIA ESTATES COMMUNITY 195,000 - 48M CLAIM 10 | 4,062 | 0 | 0 | 0 | 0 | 20,112 | 0 | 0 | 0 | 0 | 20,112 | 0 | 44,686 |
| VALENCIA ESTATES - ANNUAL INTEREST | | | | | | | | | | 4,716 | | | 4,716 |
| SOUTHEAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| IBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 275,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 275,000 |
| S&S COLLECTIONS - SIMON & SIGALOS CLAIM 13 | | | | | 8,709 | | | | | | | | 8,709 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 12,000 | 0 | 0 | 0 | 0 | 0 | 8,130 | 0 | 0 | 0 | 0 | 0 | 20,130 |
| **ADMINISTRATIVE CLAIM** | | | | | | | | | | | | | |
| JOEL ARESTY | 6,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 23,000 |
| **TOTAL** | 22,955 | 1,893 | 276,893 | 1,893 | 10,602 | 22,205 | 35,645 | 1,893 | 1,893 | 6,609 | 22,205 | 1,893 | 406,579 |

**ELIZABETH HAZAN**
**MAY 1, 2018 - APRIL 30., 2019**

| | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 186,300 | 0 | 0 | 0 | 0 | 186,300 |
| **TOTAL** | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 201,718 | 8,873 | 63,490 | 15,418 | 8,873 | 373,573 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -160,018 | 32,827 | -21,790 | 26,282 | 32,827 | 126,827 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST OF PAYMENTS TO CREDITORS | 27,515 | 10,022 | 1,893 | 22,205 | 1,893 | 1,893 | 27,515 | 393 | 20,705 | 5,121 | 393 | 393 | 119,941 |
| **NET** | 5,312 | 16,260 | 30,934 | 10,622 | 24,389 | 30,934 | 5,312 | -160,411 | 12,122 | -26,911 | 25,889 | 32,434 | 6,886 |
| PREVIOUS YEAR | 118,533 | | | | | | | | | | | | 118,533 |
| CUMULATIVE NET AMOUNT | 123,845 | 140,105 | 171,039 | 181,661 | 206,050 | 236,984 | 242,296 | 81,885 | 94,007 | 67,096 | 92,985 | 125,419 | 125,419 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 | February 2019 | March 2019 | April 2019 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIST OF PAYMENTS TO CREDITORS** | | | | | | | | | | | | | |
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interest | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 40,624 |
| VALENCIA ESTATES ANNUAL INTEREST | 0 | | | | | | | | | 4,728 | | | 4,728 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900   275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 8,129 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,129 |
| **ADMINISTRATIVE CLAIM** | | | | | | | | | | | | | |
| JOEL ARESTY | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | | | | 10,500 |
| TOTAL | 27,515 | 10,022 | 1,893 | 22,205 | 1,893 | 1,893 | 27,515 | 393 | 20,705 | 5,121 | 393 | 393 | 119,941 |

ELIZABETH HAZAN
MAY 1, 2019 - APRIL 30,, 2020

| | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| **TOTAL** | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 26,015 | 20,705 | 393 | 393 | 393 | 393 | 46,327 | 393 | 393 | 3,462 | 393 | 20,705 | 119,965 |
| **NET** | 6,812 | 5,577 | 32,434 | 32,434 | 25,889 | 32,434 | -13,500 | -109,219 | 32,434 | -25,252 | 25,889 | 12,122 | 58,054 |
| PREVIOUS YEAR | 125,419 | | | | | | | | | | | | 125,419 |
| CUMULATIVE NET AMOUNT | 132,231 | 137,808 | 170,242 | 202,676 | 228,565 | 260,999 | 247,499 | 138,280 | 170,714 | 145,462 | 171,351 | 183,473 | 183,473 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | December 2019 | January 2020 | February 2020 | March 2020 | April 2020 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| VALENCIA ESTATE 195,000 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 60,936 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | 3,069 | | | 3,069 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **TOTAL** | 26,015 | 20,705 | 393 | 393 | 393 | 393 | 46,327 | 393 | 393 | 3,462 | 393 | 20,705 | 119,965 |

ELIZABETH HAZAN
MAY 1, 2020 - APRIL 30,, 2021

| | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| TOTAL | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| TOTAL | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| NET RESULT | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 26,015 | 393 | 393 | 0 | 20,312 | 0 | 25,622 | 0 | 0 | 21,864 | 0 | 0 | 94,599 |
| NET | 6,812 | 25,889 | 32,434 | 32,827 | 5,970 | 32,827 | 7,205 | -108,826 | 32,827 | -43,654 | 26,282 | 32,827 | 83,420 |
| PREVIOUS YEAR | 183,473 | | | | | | | | | | | | 183,473 |
| CUMULATIVE NET AMOUNT | 190,285 | 216,174 | 248,608 | 281,435 | 287,405 | 320,232 | 327,437 | 218,611 | 251,438 | 207,784 | 234,066 | 266,893 | 266,893 |

LIST OF PAYMENTS TO CREDITORS

| | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 40,624 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | 1,552 | | | 1,552 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 393 | 393 | 393 | 0 | 0 | | | | | | | | 1,179 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 26,015 | 393 | 393 | 0 | 20,312 | 0 | 25,622 | 0 | 0 | 21,864 | 0 | 0 | 94,599 |

**ELIZABETH HAZAN**
**MAY 1, 2021 - APRIL 30,, 2022**

| | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | January 2022 | February 2022 | March 2022 | April 2022 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| **TOTAL** | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 25,622 | 0 | 8,126 | 0 | 0 | 0 | 25,622 | 0 | 0 | 95 | 0 | 0 | 59,465 |
| **NET** | 7,205 | 26,282 | 24,701 | 32,827 | 26,282 | 32,827 | 7,205 | -108,826 | 32,827 | -21,885 | 26,282 | 32,827 | 118,554 |
| PREVIOUS YEAR | 266,893 | | | | | | | | | | | | 266,893 |
| CUMULATIVE NET AMOUNT | 274,098 | 300,380 | 325,081 | 357,908 | 384,190 | 417,017 | 424,222 | 315,396 | 348,223 | 326,338 | 352,620 | 385,447 | 385,447 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | January 2022 | February 2022 | March 2022 | April 2022 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 8,126 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,126 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | 95 | | | 95 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 25,622 | 0 | 8,126 | 0 | 0 | 0 | 25,622 | 0 | 0 | 95 | 0 | 0 | 59,465 |

**ELIZABETH HAZAN**
**MAY 1, 2022 - APRIL 30,, 2023**

| | May 2022 | june 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATE COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| TOTAL | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 25,622 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,570 |
| **NET** | 7,205 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 9,879 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 129,449 |
| PREVIOUS YEAR | 385,447 | | | | | | | | | | | | 385,447 |
| CUMULATIVE NET AMOUNT | 392,652 | 418,934 | 451,761 | 484,588 | 510,870 | 543,697 | 553,576 | 444,750 | 477,577 | 455,787 | 482,069 | 514,896 | 514,896 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2021 | june 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 - YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,674 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | 0 |
| TOTAL | 25,622 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,570 |

**ELIZABETH HAZAN**
**MAY 1, 2023 - APRIL 30,, 2024**

| | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | February 2024 | March 2024 | April 2024 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| **TOTAL** | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| **NET** | 9,879 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 9,879 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 132,123 |
| PREVIOUS YEAR | 514,896 | | | | | | | | | | | | 514,896 |
| CUMULATIVE NET AMOUNT | 524,775 | 551,057 | 583,884 | 616,711 | 642,993 | 675,820 | 685,699 | 576,873 | 609,700 | 587,910 | 614,192 | 647,019 | 647,019 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | February 2024 | March 2024 | April 2024 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS  24 663 - YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | | 0 |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

**ELIZABETH HAZAN**
**MAY 1, 2024 - APRIL 30,, 2025**

| | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | December 2024 | January 2025 | February 2025 | March 2025 | April 2025 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| **TOTAL** | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| **NET** | 9,879 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 9,879 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 132,123 |
| PREVIOUS YEAR | 647,019 | | | | | | | | | | | | 647,019 |
| CUMULATIVE NET AMOUNT | 656,898 | 683,180 | 716,007 | 748,834 | 775,116 | 807,943 | 817,822 | 708,996 | 741,823 | 720,033 | 746,315 | 779,142 | 779,142 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | December 2024 | January 2025 | February 2025 | March 2025 | April 2025 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 0 | | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 - YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

ELIZABETH HAZAN
MAY 1, 2025 - APRIL 30,, 2026

| | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | February 2026 | March 2026 | April 2026 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| TOTAL | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 135,108 | 0 | 0 | 0 | 0 | 135,108 |
| TOTAL | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 150,526 | 8,873 | 63,490 | 15,418 | 8,873 | 322,381 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 178,019 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| **NET** | 9,879 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 9,879 | -108,826 | 32,827 | -21,790 | 26,282 | 32,827 | 132,123 |
| PREVIOUS YEAR | 779,142 | | | | | | | | | | | | 779,142 |
| CUMULATIVE NET AMOUNT | 789,021 | 815,303 | 848,130 | 880,957 | 907,239 | 940,066 | 949,945 | 841,119 | 873,946 | 852,156 | 878,438 | 911,265 | 911,265 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | February 2026 | March 2026 | April 2026 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS  24 663  YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

**ELIZABETH HAZAN**
**MAY 1, 2026 - APRIL 30,, 2027**

| | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | December 2026 | January 2027 | February 2027 | March 2027 | April 2027 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| OTHER | | | | | | | | | | | | | |
| **TOTAL** | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 41,700 | 500,400 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 3,300 |
| TRAVEL AND ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| VALENCIA ESTATE COMMUNITY ASS | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 1,121 | 13,452 |
| FISHER ISLAND COMMUNITY ASS | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 0 | 6,545 | 0 | 26,180 |
| INSURANCE (FISHER ISLAND) | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 1,477 | 17,724 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 0 | 0 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 8,873 | 15,418 | 8,873 | 63,490 | 15,418 | 8,873 | 187,273 |
| **NET RESULT** | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | -21,790 | 26,282 | 32,827 | 313,127 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| **NET** | 9,879 | 26,282 | 32,827 | 32,827 | 26,282 | 32,827 | 9,879 | 26,282 | 32,827 | -21,790 | 26,282 | 32,827 | 267,231 |
| PREVIOUS YEAR | 911,265 | | | | | | | | | | | | 911,265 |
| CUMULATIVE NET AMOUNT | 921,144 | 947,426 | 980,253 | 1,013,080 | 1,039,362 | 1,072,189 | 1,082,068 | 1,108,350 | 1,141,177 | 1,119,387 | 1,145,669 | 1,178,496 | 1,178,496 |

**LIST OF PAYMENTS TO CREDITORS**

| | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | December 2026 | January 2027 | February 2027 | March 2027 | April 2027 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURISED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interes | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 195,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,000.00 - Janv 11, 2017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS 28 259.04 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

| VALENCIA PAYMENTS | | | | 3.5% | | |
|---|---|---|---|---|---|---|
| | | | | | PLUS INTEREST | |
| BALANCE PAYABLE | | | CAPITAL | 195,000.00 | | |
| 1 | 5 | 2017 | 4,062.00 | 190,938.00 | | |
| 1 | 6 | 2017 | | 190,938.00 | 556.90 | |
| 1 | 7 | 2017 | | 190,938.00 | 556.90 | |
| 1 | 8 | 2017 | | 190,938.00 | 556.90 | |
| 1 | 9 | 2017 | | 190,938.00 | 556.90 | |
| 1 | 10 | 2017 | 20,312.50 | 170,625.50 | 497.66 | |
| 1 | 11 | 2017 | | 170,625.50 | 497.66 | |
| 1 | 12 | 2017 | | 170,625.50 | 497.66 | |
| 1 | 1 | 2018 | | 170,625.50 | 497.66 | |
| 1 | 2 | 2018 | | 170,625.50 | 497.66 | 4,715.90 |
| 1 | 3 | 2018 | 20,312.50 | 150,313.00 | 438.41 | |
| 1 | 4 | 2018 | | 150,313.00 | 438.41 | |
| 1 | 5 | 2018 | | 150,313.00 | 438.41 | |
| 1 | 6 | 2018 | | 150,313.00 | 438.41 | |
| 1 | 7 | 2018 | | 150,313.00 | 438.41 | |
| 1 | 8 | 2018 | 20,312.50 | 130,000.50 | 379.17 | |
| 1 | 9 | 2018 | | 130,000.50 | 379.17 | |
| 1 | 10 | 2018 | | 130,000.50 | 379.17 | |
| 1 | 11 | 2018 | | 130,000.50 | 379.17 | |
| 1 | 12 | 2018 | | 130,000.50 | 379.17 | |
| 1 | 1 | 2019 | 20,312.50 | 109,688.00 | 319.92 | |
| 1 | 2 | 2019 | | 109,688.00 | 319.92 | 4,727.75 |
| 1 | 3 | 2019 | | 109,688.00 | 319.92 | |
| 1 | 4 | 2019 | | 109,688.00 | 319.92 | |
| 1 | 5 | 2019 | | 109,688.00 | 319.92 | |
| 1 | 6 | 2019 | 20,312.50 | 89,375.50 | 260.68 | |
| 1 | 7 | 2019 | | 89,375.50 | 260.68 | |
| 1 | 8 | 2019 | | 89,375.50 | 260.68 | |
| 1 | 9 | 2019 | | 89,375.50 | 260.68 | |
| 1 | 10 | 2019 | | 89,375.50 | 260.68 | |
| 1 | 11 | 2019 | 20,312.50 | 69,063.00 | 201.43 | |
| 1 | 12 | 2019 | | 69,063.00 | 201.43 | |
| 1 | 1 | 2020 | | 69,063.00 | 201.43 | |
| 1 | 2 | 2020 | | 69,063.00 | 201.43 | 3,068.90 |
| 1 | 3 | 2020 | | 69,063.00 | 201.43 | |
| 1 | 4 | 2020 | 20,312.50 | 48,750.50 | 142.19 | |
| 1 | 5 | 2020 | | 48,750.50 | 142.19 | |
| 1 | 6 | 2020 | | 48,750.50 | 142.19 | |
| 1 | 7 | 2020 | | 48,750.50 | 142.19 | |
| 1 | 8 | 2020 | | 48,750.50 | 142.19 | |
| 1 | 9 | 2020 | 20,312.50 | 28,438.00 | 82.94 | |
| 1 | 10 | 2020 | | 28,438.00 | 82.94 | |
| 1 | 11 | 2020 | | 28,438.00 | 82.94 | |
| 1 | 12 | 2020 | | 28,438.00 | 82.94 | |
| 1 | 1 | 2021 | | 28,438.00 | 82.94 | |
| 1 | 2 | 2021 | 20,312.50 | 8,125.50 | 23.70 | 1,552.23 |
| 1 | 3 | 2021 | | 8,125.50 | 23.70 | |
| 1 | 4 | 2021 | | 8,125.50 | 23.70 | |
| 1 | 5 | 2021 | | 8,125.50 | 23.70 | |
| 1 | 4 | 2021 | | 8,125.50 | 23.70 | |
| 1 | 5 | 2021 | 8,125.50 | 0.00 | 0.00 | 94.80 |

IRS CLAIM 3                                         3.0%

| BALANCE | PAYABLE | | TOTAL | CAPITAL | INTEREST | 393,985.17 |
|---|---|---|---|---|---|---|
| 1 | 5 | 2017 | | | | 393,985.17 |
| 1 | 6 | 2017 | | | | 393,985.17 |
| 1 | 7 | 2017 | | | | 393,985.17 |
| 1 | 8 | 2017 | | | | 393,985.17 |
| 1 | 9 | 2017 | | | | 393,985.17 |
| 1 | 10 | 2017 | | | | 393,985.17 |
| 1 | 11 | 2017 | 22,948.00 | 17,038.22 | 5,909.78 | 376,946.95 |
| 1 | 12 | 2017 | | | | 376,946.95 |
| 1 | 1 | 2018 | | | | 376,946.95 |
| 1 | 2 | 2018 | | | | 376,946.95 |
| 1 | 3 | 2018 | | | | 376,946.95 |
| 1 | 4 | 2018 | | | | 376,946.95 |
| 1 | 5 | 2018 | 22,948.00 | 17,293.80 | 5,654.20 | 359,653.15 |
| 1 | 6 | 2018 | | | | 359,653.15 |
| 1 | 7 | 2018 | | | | 359,653.15 |
| 1 | 8 | 2018 | | | | 359,653.15 |
| 1 | 9 | 2018 | | | | 359,653.15 |
| 1 | 10 | 2018 | | | | 359,653.15 |
| 1 | 11 | 2018 | 22,948.00 | 17,553.20 | 5,394.80 | 342,099.95 |
| 1 | 12 | 2018 | | | | 342,099.95 |
| 1 | 1 | 2019 | | | | 342,099.95 |
| 1 | 2 | 2019 | | | | 342,099.95 |
| 1 | 3 | 2019 | | | | 342,099.95 |
| 1 | 4 | 2019 | | | | 342,099.95 |
| 1 | 5 | 2019 | 22,948.00 | 17,816.50 | 5,131.50 | 324,283.45 |
| 1 | 6 | 2019 | | | | 324,283.45 |
| 1 | 7 | 2019 | | | | 324,283.45 |
| 1 | 8 | 2019 | | | | 324,283.45 |
| 1 | 9 | 2019 | | | | 324,283.45 |
| 1 | 10 | 2019 | | | | 324,283.45 |
| 1 | 11 | 2019 | 22,948.00 | 18,083.75 | 4,864.25 | 306,199.70 |
| 1 | 12 | 2019 | | | | 306,199.70 |
| 1 | 1 | 2020 | | | | 306,199.70 |
| 1 | 2 | 2020 | | | | 306,199.70 |
| 1 | 3 | 2020 | | | | 306,199.70 |

| 1 | 4 | 2020 | | | | 306,199.70 |
|---|---|---|---|---|---|---|
| 1 | 5 | 2020 | 22,948.00 | 18,355.00 | 4,593.00 | 287,844.70 |
| 1 | 6 | 2020 | | | | 287,844.70 |
| 1 | 7 | 2020 | | | | 287,844.70 |
| 1 | 8 | 2020 | | | | 287,844.70 |
| 1 | 9 | 2020 | | | | 287,844.70 |
| 1 | 10 | 2020 | | | | 287,844.70 |
| 1 | 11 | 2020 | 22,948.00 | 18,630.33 | 4,317.67 | 269,214.37 |
| 1 | 12 | 2020 | | | | 269,214.37 |
| 1 | 1 | 2021 | | | | 269,214.37 |
| 1 | 2 | 2021 | | | | 269,214.37 |
| 1 | 3 | 2021 | | | | 269,214.37 |
| 1 | 4 | 2021 | | | | 269,214.37 |
| 1 | 5 | 2021 | 22,948.00 | 18,909.78 | 4,038.22 | 250,304.59 |
| 1 | 6 | 2021 | | | | 250,304.59 |
| 1 | 7 | 2021 | | | | 250,304.59 |
| 1 | 8 | 2021 | | | | 250,304.59 |
| 1 | 9 | 2021 | | | | 250,304.59 |
| 1 | 10 | 2021 | | | | 250,304.59 |
| 1 | 11 | 2021 | 22,948.00 | 19,193.43 | 3,754.57 | 231,111.16 |
| 1 | 12 | 2021 | | | | 231,111.16 |
| 1 | 1 | 2022 | | | | 231,111.16 |
| 1 | 2 | 2022 | | | | 231,111.16 |
| 1 | 3 | 2022 | | | | 231,111.16 |
| 1 | 4 | 2022 | | | | 231,111.16 |
| 1 | 5 | 2022 | 22,948.00 | 19,481.33 | 3,466.67 | 211,629.83 |
| 1 | 6 | 2022 | | | | 211,629.83 |
| 1 | 7 | 2022 | | | | 211,629.83 |
| 1 | 8 | 2022 | | | | 211,629.83 |
| 1 | 9 | 2022 | | | | 211,629.83 |
| 1 | 10 | 2022 | | | | 211,629.83 |
| 1 | 11 | 2022 | 22,948.00 | 19,773.55 | 3,174.45 | 191,856.28 |
| 1 | 12 | 2022 | | | | 191,856.28 |
| 1 | 1 | 2023 | | | | 191,856.28 |
| 1 | 2 | 2023 | | | | 191,856.28 |
| 1 | 3 | 2023 | | | | 191,856.28 |
| 1 | 4 | 2023 | | | | 191,856.28 |
| 1 | 5 | 2023 | 22,948.00 | 20,070.16 | 2,877.84 | 171,786.12 |
| 1 | 6 | 2023 | | | | 171,786.12 |
| 1 | 7 | 2023 | | | | 171,786.12 |
| 1 | 8 | 2023 | | | | 171,786.12 |

| | | | | | |
|---|---|---|---|---|---|
| 1 | 9 | 2023 | | | 171,786.12 |
| 1 | 10 | 2023 | | | 171,786.12 |
| 1 | 11 | 2023 | 22,948.00 | 20,371.21 | 2,576.79 | 151,414.91 |
| 1 | 12 | 2023 | | | 151,414.91 |
| 1 | 1 | 2024 | | | 151,414.91 |
| 1 | 2 | 2024 | | | 151,414.91 |
| 1 | 3 | 2024 | | | 151,414.91 |
| 1 | 4 | 2024 | | | 151,414.91 |
| 1 | 5 | 2024 | 22,948.00 | 20,676.78 | 2,271.22 | 130,738.13 |
| 1 | 6 | 2024 | | | 130,738.13 |
| 1 | 7 | 2024 | | | 130,738.13 |
| 1 | 8 | 2024 | | | 130,738.13 |
| 1 | 9 | 2024 | | | 130,738.13 |
| 1 | 10 | 2024 | | | 130,738.13 |
| 1 | 11 | 2024 | 22,948.00 | 20,986.93 | 1,961.07 | 109,751.20 |
| 1 | 12 | 2024 | | | 109,751.20 |
| 1 | 1 | 2025 | | | 109,751.20 |
| 1 | 2 | 2025 | | | 109,751.20 |
| 1 | 3 | 2025 | | | 109,751.20 |
| 1 | 4 | 2025 | | | 109,751.20 |
| 1 | 5 | 2025 | 22,948.00 | 21,301.73 | 1,646.27 | 88,449.47 |
| 1 | 6 | 2025 | | | 88,449.47 |
| 1 | 7 | 2025 | | | 88,449.47 |
| 1 | 8 | 2025 | | | 88,449.47 |
| 1 | 9 | 2025 | | | 88,449.47 |
| 1 | 10 | 2025 | | | 88,449.47 |
| 1 | 11 | 2025 | 22,948.00 | 21,621.26 | 1,326.74 | 66,828.21 |
| 1 | 12 | 2025 | | | 66,828.21 |
| 1 | 1 | 2026 | | | 66,828.21 |
| 1 | 2 | 2026 | | | 66,828.21 |
| 1 | 3 | 2026 | | | 66,828.21 |
| 1 | 4 | 2026 | | | 66,828.21 |
| 1 | 5 | 2026 | 22,948.00 | 21,945.58 | 1,002.42 | 44,882.63 |
| 1 | 6 | 2026 | | | 44,882.63 |
| 1 | 7 | 2026 | | | 44,882.63 |
| 1 | 8 | 2026 | | | 44,882.63 |
| 1 | 9 | 2026 | | | 44,882.63 |
| 1 | 10 | 2026 | | | 44,882.63 |
| 1 | 11 | 2026 | 22,948.00 | 22,274.76 | 673.24 | 22,607.87 |
| 1 | 12 | 2026 | | | 22,607.87 |
| 1 | 1 | 2027 | | | 22,607.87 |

| 1 | 2 | 2027 | | | | 22,607.87 |
|---|---|------|------------|------------|-----------|-----------|
| 1 | 3 | 2027 | | | | 22,607.87 |
| 1 | 4 | 2027 | | | | 22,607.87 |
| 1 | 5 | 2027 | 22,948.00 | 22,607.87 | 340.13 | 0.00 |
| 121 | | | 458,960.00 | 393,985.17 | 64,974.83 | |

IRS CLAIM 1                                      3.0%

| BALANCE | PAYABLE | | TOTAL | CAPITAL | INTEREST | 24,663.00 |
|---|---|---|---|---|---|---|
| 1 | 12 | 2016 | | | | 24,663.00 |
| 1 | 1 | 2017 | | | | 24,663.00 |
| 1 | 2 | 2017 | | | | 24,663.00 |
| 1 | 3 | 2017 | | | | 24,663.00 |
| 1 | 4 | 2017 | | | | 24,663.00 |
| 1 | 5 | 2017 | | | | 24,663.00 |
| 1 | 6 | 2017 | 2,674.34 | 2,304.39 | 369.95 | 22,358.61 |
| 1 | 7 | 2017 | | | | 22,358.61 |
| 1 | 8 | 2017 | | | | 22,358.61 |
| 1 | 9 | 2017 | | | | 22,358.61 |
| 1 | 10 | 2017 | | | | 22,358.61 |
| 1 | 11 | 2017 | | | | 22,358.61 |
| 1 | 12 | 2017 | 2,674.34 | 2,338.96 | 335.38 | 20,019.65 |
| 1 | 1 | 2018 | | | | 20,019.65 |
| 1 | 2 | 2018 | | | | 20,019.65 |
| 1 | 3 | 2018 | | | | 20,019.65 |
| 1 | 4 | 2018 | | | | 20,019.65 |
| 1 | 5 | 2018 | | | | 20,019.65 |
| 1 | 6 | 2018 | 2,674.34 | 2,374.05 | 300.29 | 17,645.60 |
| 1 | 7 | 2018 | | | | 17,645.60 |
| 1 | 8 | 2018 | | | | 17,645.60 |
| 1 | 9 | 2018 | | | | 17,645.60 |
| 1 | 10 | 2018 | | | | 17,645.60 |
| 1 | 11 | 2018 | | | | 17,645.60 |
| 1 | 12 | 2018 | 2,674.34 | 2,409.66 | 264.68 | 15,235.94 |
| 1 | 1 | 2019 | | | | 15,235.94 |
| 1 | 2 | 2019 | | | | 15,235.94 |
| 1 | 3 | 2019 | | | | 15,235.94 |
| 1 | 4 | 2019 | | | | 15,235.94 |
| 1 | 5 | 2019 | | | | 15,235.94 |
| 1 | 6 | 2019 | 2,674.34 | 2,445.80 | 228.54 | 12,790.14 |
| 1 | 7 | 2019 | | | | 12,790.14 |
| 1 | 8 | 2019 | | | | 12,790.14 |
| 1 | 9 | 2019 | | | | 12,790.14 |
| 1 | 10 | 2019 | | | | 12,790.14 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | 11 | 2019 | | | | 12,790.14 |
| 1 | 12 | 2019 | 2,674.34 | 2,482.49 | 191.85 | 10,307.65 |
| 1 | 1 | 2020 | | | | 10,307.65 |
| 1 | 2 | 2020 | | | | 10,307.65 |
| 1 | 3 | 2020 | | | | 10,307.65 |
| 1 | 4 | 2020 | | | | 10,307.65 |
| 1 | 5 | 2020 | | | | 10,307.65 |
| 1 | 6 | 2020 | 2,674.34 | 2,519.73 | 154.61 | 7,787.92 |
| 1 | 7 | 2020 | | | | 7,787.92 |
| 1 | 8 | 2020 | | | | 7,787.92 |
| 1 | 9 | 2020 | | | | 7,787.92 |
| 1 | 10 | 2020 | | | | 7,787.92 |
| 1 | 11 | 2020 | | | | 7,787.92 |
| 1 | 12 | 2020 | 2,674.34 | 2,557.52 | 116.82 | 5,230.40 |
| 1 | 1 | 2021 | | | | 5,230.40 |
| 1 | 2 | 2021 | | | | 5,230.40 |
| 1 | 3 | 2021 | | | | 5,230.40 |
| 1 | 4 | 2021 | | | | 5,230.40 |
| 1 | 5 | 2021 | | | | 5,230.40 |
| 1 | 6 | 2021 | 2,674.34 | 2,595.88 | 78.46 | 2,634.52 |
| 1 | 7 | 2021 | | | | 2,634.52 |
| 1 | 8 | 2021 | | | | 2,634.52 |
| 1 | 9 | 2021 | | | | 2,634.52 |
| 1 | 10 | 2021 | | | | 2,634.52 |
| 1 | 11 | 2021 | | | | 2,634.52 |
| 1 | 12 | 2021 | 2,674.34 | 2,634.52 | 39.82 | 0.00 |
| 61 | | | 24,069.06 | 22,028.48 | 2,040.58 | |



**ORDERED in the Southern District of Florida on March 30, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION
### www.flsb.uscourts.gov

In re:

CASE NO.: 16-10389-AJC

LIZA HAZAN,
    Debtor.

CHAPTER 11

_____/

### ORDER (I) SETTING HEARING TO CONSIDER APPROVAL OF THIRD AMENDED DISCLOSURE STATEMENT; (II) SETTING DEADLINE FOR FILING OBJECTIONS TO THIRD AMENDED DISCLOSURE STATEMENT; AND (III) DIRECTING PLAN PROPONENT TO SERVE NOTICE

DISCLOSURE HEARING:

<u>      **May 4, 2017**      </u> at <u>11:30</u> am.

LOCATION:
C. Clyde Atkins U.S.
Courthouse
301 North Miami Avenue
Courtroom 7
Miami FL 33128

DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN:

<u>      **April 4, 2017**      </u>(30 days before Disclosure Hearing)

DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT:

<u>      **April 27, 2017**      </u> (seven days before Disclosure Hearing)

PLAN PROPONENT:

    Liza Hazan        (name of Plan Proponent)

    David W. Langley    (name and address of Plan Proponent's Attorney)
    8551 W. Sunrise Blvd., Ste 303, Plantation, FL 33322

A Third Amended Disclosure Statement and Second Amended Plan were filed pursuant to 11 U.S.C. §§1121 and 1125 on March 27, 2017 by the plan proponent named above. This order sets a hearing to consider approval of the third amended disclosure statement ("disclosure hearing"), and sets forth the deadlines and requirements relating to the third amended disclosure statement provided in the Bankruptcy Code, Bankruptcy Rules and Local Rules of this court.

The third amended disclosure statement is on file with the court, and may be accessed electronically or you may obtain a copy at your expense from the clerk or view a copy at the public terminals in the clerk's office. Copies also may be obtained from the plan proponent by written request, pursuant to paragraph 3(B) of this order.

## 1. HEARING TO CONSIDER APPROVAL OF THIRD AMENDED DISCLOSURE STATEMENT

The court has set a hearing to consider approval of the third amended disclosure statement for the date and time indicated above as "DISCLOSURE HEARING". The disclosure hearing may be continued to a future date by notice given in open court at the disclosure hearing. At the disclosure hearing, the court will consider the third amended disclosure statement, and any modifications or objections to it.

## 2. DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT

The last day for filing and serving objections to the third amended disclosure statement is indicated above as "DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT". Objections to the third amended disclosure statement shall be filed with

LF-32A (rev. 12/01/09)            Page 2 of 4

the court and served on (i) the debtor; (ii) the plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or examiner that has been appointed; and (v) the U.S. Trustee. Pursuant to Local Rule 3017-1(A), any objecting party shall confer with the plan proponent's counsel at least three business days before the disclosure hearing in an effort to resolve any objections to the third amended disclosure statement.

### 3. PLAN PROPONENT TO SERVE NOTICE

**(A)** On or before the date indicated above as "DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN", the Plan Proponent shall serve a copy of this order on (i) all creditors; (ii) all equity security holders; (iii) all persons who have requested notice; and (iv) all other interested parties, pursuant to Bankruptcy Rules 2002, and 3017 (including those entities as described in Bankruptcy Rule 3017(f)), and Local Rule 3017-1(B) and including those on a Master Service List required to be filed pursuant to Local Rule 2002-1(H). The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

**(B)** On or before the date indicated above as "DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN", the plan proponent shall serve a copy of the third amended disclosure statement and second amended plan, together with this order, on (i) the debtor; (ii) all committees that have been appointed; (iii) any chapter 11 trustee or examiner that has been appointed; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the U.S. Trustee; and (vii) any party in interest who requests in writing a copy of the third amended disclosure statement and second amended plan, pursuant to Bankruptcy Rule 3017(a), and Local Rule 3017-1(B).

The plan proponent shall file a certificate of service as required under Local Rule

2002-1(F).

If the plan proponent does not timely comply with any of the requirements of this order, the court may impose sanctions at the disclosure hearing without further notice, including dismissal, conversion of the case to chapter 7, or the striking of the plan. The court will also consider dismissal or conversion at the disclosure hearing at the request of any party that has requested such relief in a timely filed objection or on the court's own motion.

###

**Submitted by:**

DAVID W. LANGLEY

8551 W. Sunrise Blvd.

Suite 303

Plantation, Florida 33322

Telephone: (305) 356-0450

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,
      Debtor.

CASE NO.: 16-10389 AJC

CHAPTER 11

_____/

### Debtor's Motion for Extension of Exclusivity Period

### [Hearing Requested Prior to April 30, 2017]

Debtor, Liza Hazan, moves for an extension of the exclusivity period to file and confirm her Chapter 11 plan of reorganization, and in support thereof states:

1. On August 16, 2016, Debtor filed an Amended Motion for Extension of Time re Exclusivity to amend plan and disclosure statement. The exclusivity period was continued to November 7, 2016. (ECF 159).

2. Debtor filed an Amended Disclosure Statement (ECF 190), and an Amended Plan (ECF 189) on September 6, 2016.

3. A disclosure hearing was scheduled for November 16, 2016.

4. The Debtor resolved all objections to the Disclosure Statement with the exception of that raised by NLG, LLC.

5. By Order dated December 2, 2016, the Court set for hearing the objection to Disclosure Statement of NLG, LLC for December 7, 2016 (D.E. 242).

6. At the hearing on December 7, 2016, the Court indicated that the issue of NLG's standing must be resolved before the Court will consider other matters. A subsequent hearing on

standing took place on December 21, 2016, and proposed orders were originally due January 20, 2017.

7. On prior motion [D.E. 364] the exclusivity period was extended through April 30, 2017.

8. A further hearing on disclosure has been set for May 4, 2017. The confirmation hearing will take place at least forty-five (45) days or, at the earliest, sometime in June, 2017.

9. Debtor respectfully requests that this court extend the exclusivity period for Debtor to July 30, 2017.

WHEREFORE, Debtor respectfully request an extension of the exclusivity period to July 30, 2017, and such other relief as the Court deems proper.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served electronically and by mail to all interested parties on attached service list on this 10th day of April, 2017.

LAW OFFICES OF DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Blvd., Suite 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com

By:   */s/ David W. Langley*
          David W. Langley, Esq.
          Florida Bar Number: 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com


Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Michael A. Friedman, mfriedman@gjb-law.comon behalf of  NLG, LLC

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*

Form CGFCRD3  (12/1/15)

# United States Bankruptcy Court
### Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:**

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN**  that a hearing will be held on **April 26, 2017** at **11:30 AM** at the following location:

**C. Clyde Atkins U.S. Courthouse**
**301 North Miami Avenue**
**Courtroom 7**
**Miami FL 33128**

to consider the following:

**Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement Filed by Debtor Liza Hazan**

**THIS MATTER HAS BEEN SET ON THE COURT'S MOTION CALENDAR FOR A NON–EVIDENTIARY HEARING. THE ALLOTTED TIME FOR THIS MATTER IS TEN MINUTES.**

**THE MOVANT (OR MOVANT'S COUNSEL if represented by an attorney) SHALL SERVE A COPY OF THIS NOTICE OF HEARING** and, unless previously served, the above–described pleading on all required parties within the time frames required by the Bankruptcy Rules, Local Rules, or orders of the Court, and shall file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B). Any party who fails to properly serve any pleadings or other paper may be denied the opportunity to be heard thereon.

**PLEASE NOTE:** Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), iPads, tablets, pagers, personal data assistants (PDA), laptop computers, radios, tape–recorders, etc., **are not permitted** in the courtroom, chambers or other environs of this court. These restrictions **(except for cameras not integrated into a cell phone device)** do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. **No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshal's Service. See Local Rule 5072–2.**

**Dated: 4/11/17**

**CLERK OF COURT**
By: Barbara Cargill
Courtroom Deputy

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                          Chapter 11
_____/

### SECURED CREDITOR NLG, LLG's
### OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, objects to the Third

Amended Disclosure Statement [ECF 416] (the "Third Amended Disclosure Statement") filed by

Elizabeth Hazan (the "Debtor") on March 27, 2017, and states as follows:

### BACKGROUND

1.      The Debtor filed her Chapter 11 Petition on January 11, 2016 (the "Petition

Date"), the day before the Miami-Dade County Clerk was set to auction the Debtor's Property

pursuant to NLG's Foreclosure Judgment.  Fifteen months later, as of March 31, 2017, the

Debtor had only $19,143 in cash on hand per her monthly operating report. [ECF 422]. Although

the Debtor claims in the Third Amended Disclosure Statement that she earns between $350,000

and $400,000 per year, she earned only a fraction of that (about $125,000) through the calendar

year of 2016. *Id.* Incredibly the Debtor claims projected income of $735,000 in the financial

projections attached to the Third Amended Disclosure Statement.

2.      The Debtor's primary asset is her residence located at 6913 Valencia Drive,

Fisher Island, Florida (the "Property"). The Debtor has filed an appraisal in this case valuing the

Property at $9.5 million, and has scheduled claims secured by the Property, including NLG's

claim, totaling over $12 million. [ECF 20, 81-1].

1

3.     The Debtor and her husband's solely-owned company, Selective Advisors Group, LLC ("Selective"), have filed an adversary proceeding challenging NLG's secured claim (the "NLG Adversary"),[1] but each and every issue raised in the NLG Adversary was decided in NLG's favor pre-petition in Miami-Dade Circuit Court, *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 2011-42770-CA-01 (02) (the "Foreclosure Action"). The Foreclosure Action resulted in NLG obtaining a Final Judgment of Foreclosure with respect to the Property in the amount of $4,876,654.29 (the "Foreclosure Judgment") on December 2, 2015.  [See ECF 66-1].  The tort claims raised in the adversary were previously dismissed with prejudice by the Debtor in 2008 in Miami-Dade Circuit Court, *Elizabeth Hazan v. Christopher Kosachuk and NLG, LLC.*, Case No. 08-31557 CA (22). [See Case No. 16-1439-AJC- ECF 99].

4.     The Foreclosure Judgment is final, no longer subject to appeal, and conclusively determinative of NLG's rights in the Property.

5.     The Third Amended Disclosure Statement fails to mention the Foreclosure Action, the Foreclosure Judgment, the pending NLG Adversary, or a host of other issues material to this case. Indeed, the Third Amended Disclosure Statement fails to remedy any of the defects that resulted in the Court denying the Debtor's initial disclosure statement on August 22, 2016 [ECF 173]. The Court should deny the Debtor's Third Amended Disclosure Statement for all the reasons it denied the Debtor's prior disclosure statements,[2] and for the reasons discussed in detail below.

**ARGUMENT**

6.     Section 1125(b) of the Bankruptcy Code requires a disclosure statement to provide "adequate information," that is, "information of a kind, and in sufficient detail, as far as

---

[1] *Hazan, et al. v. NLG, LLC*, Adv. No. 16-1439-AJC.
[2]  NLG incorporates herein the objections to the Debtor's initial disclosure and amended statements. *See* [ECFs 136, 138, 139, 140, 143, 278, 279, 281, 282, 283 and 284].

is reasonably practicable in light of the nature and history of the debtor and the condition of debtor's books and records … that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(b). Mere allegations or opinions unsupported by factual information do not meet the "adequate information" standard of Section 1125. *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981). The Debtor's Third Amended Disclosure Statement falls well short of this standard and must be denied.

**Inadequate Disclosures Concerning
the Debtor's Income and other Sources of Plan Funding**

7.      First, the Third Amended Disclosure Statement fails to provide any meaningful information about the income with which the Debtor intends to fund her plan. *See In re Newkirk*, 2012 WL 830552, *3 (Bankr. E.D.N.C. March 9, 2012) (disclosure statement must provide adequate information of the debtor's ability to fund and maintain a proposed plan). The Debtor states that she intends to fund a plan through (a) her income as a "business consultant specializing in identifying locations for high-end restaurants and retailers round the world," and (b) refinancing the Property and refinancing the New York Condo. [ECF 416 p. 37]. These claims are dubious at best.  Specifically the Debtor has no ability to refinance either property because of her insufficient income, bad credit and debts to creditors already secured by those properties.  Even her phantom $735,000 per year of income as outlined in the Third Amended Disclosure Statement is insufficient to support the multi-million dollar refinancing needed to pay off her creditors.

8.      With respect to her consulting income, the Debtor claims variously and inconsistently in the Third Amended Disclosure Statement that she either earns "in excess of $350,000 per year," that she "has always earned at least $400,000/year," and that she "has always earned at least $350,000 per year" [ECF 416 pp. 4, 28]. The financial projections

3

attached to the Third Amended Disclosure Statement project $735,000 in annual income [ECF 416 p. 41]. Meanwhile, as noted above, the Debtor earned roughly $125,000 through the calendar year of 2016 [ECF 374]. The Debtor makes no effort at all to explain this inconsistency between the claims concerning her income in the Third Amended Disclosure Statement and the reality that she has earned only a fraction of that amount in 2016. Further, the Debtor has provided no records, such as tax returns, evidencing her alleged high-income earning potential. The Debtor needs to demonstrate her significant earning capacity has some basis in reality if she proposes to fund a plan with it.

9.     The disparity between the Third Amended Disclosure Statement and the income disclosed in the Debtor's monthly operating reports is particularly troubling considering that according to the Debtor, she intends to begin contributing between $25,000 and $150,000 per month—consistently, every month—to plan payments starting May 2017 (*i.e.*, less than 10 days from now). That projection is totally detached from reality in light of the Debtor's monthly operating reports, but if the Debtor intends to fund her plan using this income, she needs to disclose, for example, what clients the Debtor currently has that she believes will yield income of $25,000 to $150,000 per month starting less than 10 days from now.

10.     Additionally, the Debtor has indicated that Real Estate Holdings Group LDC, an entity controlled by the Debtor's husband, has committed to contribute funds from the proceeds of refinancing of a condominium in New York to Debtor's estate in order to fund a plan. [ECF 416 p. 4]. Yet the Debtor offers no real information whatsoever concerning this source of plan funding: how much has the Debtor's husband (through an entity he controls) "committed" to contributing? What is the nature of that commitment—a note? A mortgage? What is the value of the condo that is being refinanced? Is the refinancing already in place or is this source of funding

4

contingent on the ability to find a lender? Is there a financing commitment for a lender already in place? None of this necessary information is included in the Amended Disclosure Statement.

## Inadequate Disclosures Concerning the Litigation Regarding the Property

11. The Third Amended Disclosure Statement should be denied because it fails to provide adequate information concerning the NLG Adversary and other actions that will impact the equity in the Property and the Debtor's ability to use the Property to confirm a plan. *See In re Fierman,* 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982) (a disclosure statement must provide a factual basis to support any valuations of real property and must disclose the existence of any litigation and explain the possible effect these lawsuits may have on the feasibility of a plan).

12. As noted above, the Third Amended Disclosure Statement does not discuss the NLG Adversary at all nor its potential impact on the Property. Yet, if NLG prevails in that action, then according to the Debtor's own appraisal, the Property will be significantly underwater.[3] This is critical, among other reasons, because the Debtor proposes to fund a plan, if necessary, by refinancing and using the equity from the Property. Simply put, there is *no* equity in the Property. The Third Amended Disclosure Statement mentions none of this.

13. The Third Amended Disclosure Statement does not discuss JP Morgan Chase's pending foreclosure action which this Court granted stay relief to JP Morgan to pursue a final judgment of foreclosure [ECF 315] and to NLG to defend itself in that foreclosure action. If JP Morgan is successful in its foreclosure action then there is no equity at all in the Property and such a judgment would decimate the entire proposed plan of reorganization. The Third Amended Disclosure Statement mentions none of this.

---

[3] The Debtor claims throughout the Third Amended Disclosure Statement that the Property is worth $12 million even though her own appraisal of record in this bankruptcy case values the Property at $9.5 million. The Debtor fails to acknowledge or explain this discrepancy in the Third Amended Disclosure Statement.

**Inadequate Disclosures Concerning NLG's Secured Claim**

14.     The Third Amended Disclosure Statement also fails to discuss the treatment of NLG's $4,876,654.29 secured claim (claim number 17-1) which is based on the Foreclosure Judgment. The Third Amended Disclosure Statement needs to explain how the Debtor will pay will pay NLG the full amount due under the non-appealable Foreclosure Judgment.   The Third Amended Disclosure Statement completely ignores NLG's Foreclosure Judgment and wants to dupe this Court into believing that it simply does not exist or that the Foreclosure Judgment was assigned to Selective Advisors.   There is no assignment of NLG's Foreclosure Judgment to Selective Advisors and there is no satisfaction of NLG's Foreclosure Judgment either.   There is no assignment of NLG's Mortgage to Selective Advisors contrary to the Debtor's self-serving misrepresentations.   This Court must sanction the Debtor and her counsel for these blatant misrepresentations to the Court.

15.     Section 1123(b)(5) of the Bankruptcy Code states that an individual chapter 11 debtor may not modify a claim secured by a security interest in real property that is the debtor's principal residence (which is precisely what this Debtor is trying to do to both NLG and JP Morgan). In turn, section 1129(a)(1) provides that for a plan to be confirmed, it must comply with the provisions of the Bankruptcy Code.

16.     Because the Plan on its face violates section 1123(b)(5), it cannot be confirmed under section 1129(a)(1). On this basis alone, the Court should deny approval of the Disclosure Statement. In I*n re Dakota Rail, Inc*., 104 B.R. 138 (Bankr. D. Minn. 1989), for instance, the bankruptcy court denied approval of the disclosure statement, reasoning that "[w]here the disclosure statement on its face relates to a plan that cannot be confirmed . . . the court [has] an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of

6

the plan … Allowing a facially non-confirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation.

17.    It should also be noted that, even if NLG does not have standing to object to the Plan (and NLG does have standing), the Court would have an independent duty to determine that the Plan complies with all of the provisions of the Bankruptcy Code in order for the Plan to be confirmed. *See*, 11 U.S.C. §1129(a)(1); *Ala. Dep't of Econ. &Cmty. Affairs v. Ball Healthcare– Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1229 (11th Cir.2011) ("Importantly, the Bankruptcy Code envisions a bankruptcy court exercising an independent duty to ensure that the strictures of §1129(b) are met with regard to impaired dissenting classes of creditors in a Chapter 11 cram down.") Because the Plan as drafted cannot be confirmed, the Court should deny approval of the Third Amended Disclosure Statement.

## The Debtor's Undisclosed Asset and Transfer

18.    Prior to August 15, 2011, the Debtor owned a residential condo unit located at 1East 62nd Street No. 1A, New York, New York (the "New York Condo"). On August 15, 2011, the Debtor transferred the New York Condo out of her name and into the name of an individual named Raymond Houle for no consideration (the "New York Condo Transfer").[4] *See* Deed [ECF 290 pages 15 – 23] Mr. Houle eventually transferred the condo to Real Estate Holding Group, LDC, an entity controlled by the Debtor's husband, Sean Meehan. *See* Deed and Affidavit by Mr. Meehan [ECF 290 pages 24 – 37], respectively.

19.    The New York Condo Transfer occurred just a little over four years prior to the Petition Date. Although that is outside the four-year statute of limitations under Chapter 726 of

---

[4] Mr. Houle is the same individual that obtained a fraudulent judgment against NLG in New York state court as part of the Debtor's efforts to frustrate NLG's attempts to exercise its lien rights in certain property owned by the Debtor. *See* NLG's Counterclaim [ECF 5] in *Selective Advisors Group, LLC v. NLG, LLC*, Adv. No. 16-1439-AJC

the Florida Statutes, it is well within the six-year statute of limitations period applicable to fraudulent transfers under the law of New York, where the transfer occurred.[5] Also, the Debtor owes substantial tax liability to the IRS (about $374,526) that was incurred before the New York Condo Transfer. *See* [ECF 21 p. 13]. In addition to being actionable under New York law, the New York Condo Transfer may also be avoidable under Florida law and Section 544(b) under the holding of *In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016), which holds that a trustee may stand in the shoes of the IRS to avoid a transfer that occurred outside of the four-year look back period under Florida law.

20.     Although the Debtor claims in the Third Amended Disclosure Statement that she has completed her investigation into potentially avoidable transfers, the New York Condo Transfer is not mentioned at all in her Third Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [ECF 190 p. 8 and ECFs 21, 90].

## Other Inadequate Disclosures

21.     The exhibits that the Debtor has provided in support of the Third Amended Disclosure Statement reflect a variety of defects that must be explained before the document can be considered for approval:

- The Debtor had about $19,143 in cash on hand at the end of February 2017, but her Disclosure Statement states that she will have $65,000 on hand on the effective date of the Plan. What will be the source of those funds?

- The Debtor is on her third bankruptcy attorney since she filed this case 15 months ago in January 2016, and has accumulated well over $200,000 in unpaid attorney's fees according to the Third Amended Disclosure Statement—far more than the $65,000

---

[5] *See In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 229-30 (Bankr. S.D.N.Y. 2011) (citing NYCPLR § 213).

that the Debtor claims she will have on hand on the effective date. [ECF 416-2]. How does she propose to pay those administrative claims as required to confirm a plan?

- The Debtor lists as assets two "potential" claims against NLG and other defendants of an "unknown" value. *Id.* What is the nature of those claims, how will the Debtor prosecute them if at all, and why can she offer no estimate of their potential value?

- The Debtor's plan refuses to pay various creditors who filed proofs of claim without any ruling from the Court on those same claims. [See Claims 1-1, 3-1, 14-1 and 17-1].

- The Debtor discloses a $400,000 account receivable without explanation. What is the nature of that receivable and what is the Debtor doing to collect it? The Debtor disclosed this same $400,000 account receivable in her original plan filed on July 11, 2016 [ECF 103 p. 22] and nine months later has still not collected a penny of this receivable. It is obvious that this $400,000 account receivable is pure fantasy and a blatant misrepresentation to this Court and all the creditors.

- The Debtor proposes to make payments under the plan in a "range" of monthly to every six months to "even less frequently." How much less frequently? Further, this statement cannot be reconciled with the projections in the Third Amended Disclosure Statement indicating that the Debtor will make plan payments of about $60,000 every month, as opposed to every quarter or six months as the Debtor claims elsewhere in the Third Amended Disclosure Statement.

- According to the Debtor's own projections, the plan is negative to the tune of $105,000 in July 2017. So just three months into the proposed reorganization, the Debtor won't be able to make payments to the Creditors as proposed in her own plan.

The plan also projects December 2017 to be negative as well [ECF 416 p. 41].
Negative cash projections simply mean that creditors won't be paid even though the
plan calls for the payments, rendering the plan patently unconfirmable on its face.

**This Disclosure Statement should be Denied and this Case should be
Dismissed or Converted because the Debtor's Plan is Patently Unconfirmable**

22.     For the reasons explained in NLG's objections to the Debtor's prior disclosure
statements as well as all the other objections raised to the previous disclosure statements by other
creditors, the Third Disclosure Statement should be denied because it was not filed in good faith
and is patently unconfirmable. *See* [ECF 140 pp. 9-12]. The inadequacies of the Third Amended
Disclosure Statement demonstrate that the Debtor plainly has no realistic ability or intent to
propose a confirmable plan in this bankruptcy case.

23.     A plan accompanying a disclosure statement which clearly does not meet the
requirements of 11 U.S.C. § 1129 should not proceed to certain defeat at confirmation. Instead,
courts may consider confirmation issues at the hearing on approval of the disclosure statement if
"the plan is so fatally and obviously flawed that confirmation is impossible." *In re Mahoney
Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) (citation omitted); *see also In re Am.
Capital Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) (bankruptcy court may address confirmability
at disclosure statement stage if it is patently obvious that the plan described by the disclosure
statement cannot be confirmed.); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr.
S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly fruitless venture is a
waste of the time of the Court and the parties.").

24.     A plan is not confirmable if it is not feasible, which requires the Court to consider
"whether the things to be done under the plan can be done as a practical matter under the facts."
*In re M & S Assocs., Ltd.*, 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992) (citations omitted).

Additionally, in considering feasibility, "a bankruptcy court must evaluate the possible impact of the debtor's ongoing civil litigation," and a "plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *Am. Capital Equip.*, 688 F.3d at 156 (citations omitted).

25.     Here, the plan is infeasible and unconfirmable on its face: it is premised on a regular stream of consecutive $25,000 to $150,000 monthly payments totaling over $735,000 per year, yet the Debtor has disclosed that she is *incapable* of making consistent monthly payments because her income is irregular. Further, the Debtor has earned only a fraction (about $125,000) through all of 2016 of the roughly $735,000 that she purportedly intends to contribute towards the plan on annual basis. Very simply, the Debtor's plan is premised on a high six-figure income that the Debtor has admitted (through her filings in this case) does not actually exist.

26.     Further, the Debtor's plan hinges on her success in the NLG Foreclosure (where NLG already has a Foreclosure Judgment) and the JP Morgan Foreclosure: if she loses the JP Morgan foreclosure then there is no equity in the Property according to the Debtor's own appraisal. That means that there will be no equity for the Debtor to borrow against to fund the plan, and no basis to deny NLG relief from the automatic stay to continue its foreclosure sale under the Foreclosure Judgment. The Debtor's plan, premised entirely on her success in pending litigation, is not confirmable, and so the Third Amended Disclosure Statement should be denied.

27.     NLG incorporates its pending Motion to Dismiss [ECF 290] as if fully rewritten herein and does hereby request that the Court dismiss this bankruptcy with prejudice as to NLG.

### The Disclosure Statement and Plan were not submitted in good faith as required by 11 U.S.C. § 1129(a)(3).

28.     In order to be confirmed, a Chapter 11 reorganization plan must be submitted in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). "While the

11

Bankruptcy Code does not define the term, courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir.1995).

29.     Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied. *Kane v. Johns-Manville Corp*., 843 F.2d 636, 649 (2nd Cir.1988); *In re Sun Country Development, Inc*., 764 F.2d 406, 408 (5th Cir.1985); *In re Mulberry Phosphates, Inc.*, 149 B.R. 702, 707 (Bankr.M.D.Fla.1993).

30.     The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan, *Block Shim*, 939 F.2d at 292; *Madison Hotel*, 749 F.2d at 425, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start. Sun Country, 764 F.2d at 408.

31.     To be in good faith, a plan must have "a true purpose and fact-based hope of either `preserving [a] going concern' or `maximizing property available to satisfy creditors.'" *S. Beach Sec.,* 606 F.3d at 376 (*quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999)). To find that a plan does not comply with § 1129(a)(3) generally requires "misconduct in bankruptcy proceedings, such as fraudulent misrepresentation or serious nondisclosures of material facts to the court." *In re *342 River Vill. Assocs.,* 161 B.R. 127, 140 (Bankr.E.D.Pa.1993), *aff'd,* 181 B.R. 795 (E.D.Pa.1995).

32.     The Debtor has committed just this type of misconduct in this bankruptcy proceeding by misrepresenting numerous facts to this Court in regards to NLG's Foreclosure

Judgment and is impermissibly seeking that this Court vacate NLG's Foreclosure Judgment as detailed herein.

33.     The Debtor has concealed her second most significant asset, that being the New York Condo with an approximate value of $3.4 million.  [See ECF 384].  This asset concealment alone is reason enough to deny the Third Amended Disclosure Statement.

34.     Clearly the Third Amended Disclosure Statement and Plan were not submitted in good faith as they seek to ignore NLG's Foreclosure Judgment (which this Court has no authority or jurisdiction to do), modify a security interest in the debtor's principal residence (which is specifically prohibited by the Bankruptcy Code), not pay back any creditor what they are actually owed and conceal a multi-million dollar apartment beneficially owned by the Debtor.

35.     The Debtor is seeking to defraud this Court the same way that she has defrauded other courts over the years of litigation with her creditors.

**The Third Amended Disclosure Statement and Plan were submitted in bad faith**

36.     Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors." Id. *SE Property Holdings, LLC v. Seaside Engineering & Surveying, Inc*. (citing *In re Seaside Engineering & Surveying, Inc.*), No. 14-11590 (11th Cir. March 12, 2015)  (citing *In re Albany Partners, Ltd*., 749 F.2d 670, 674 (11th Cir .1984)).

37.     This bankruptcy was filed the day before the foreclosure sale of the Debtor's Property pursuant to NLG's Foreclosure Judgment.  It is very clear that the sole purpose of this bankruptcy has been to delay and frustrate secured creditor NLG's efforts to foreclosure on its collateral; the Property.

13

38.      None of the filed disclosure statements and plans put forth even a remotely feasible plan of reorganization nor were they proposed in good faith as required by the Code. Quite frankly they were all proposed in bad faith.  The income to fund the plan is suspect at best and more accurately a blatant misrepresentation to the Court as detailed herein. The financial projections are hogwash and not supported by any document in the record.  This entire bankruptcy and the related adversary manifest the extreme bad faith of the Debtor and her counsel.

## CONCLUSION

39.      For the reasons explained above, the Court should deny the Third Amended Disclosure Statement and dismiss or convert this case.

Dated:  April 24, 2017.

Respectfully submitted,

/s/Nicholas B. Bangos
Nicholas B. Bangos
Florida Bar No. 0834238
100 S.E. 2nd Street, Suite 3400
Miami, FL 33131
(305) 375-9220
(305) 375-8050 facsimile
nbangos@diazreus.com
*Attorneys for NLG, LLC*

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 24th day of April, 2017. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

/s/Nicholas B. Bangos
Nicholas B. Bangos

## SERVICE LIST

***Served via CM/ECF***

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

15

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                          Case No: 16-10389 AJC
                                                Chapter 11
LIZA HAZAN;

 Debtor. /

### DEBTOR'S RESPONSE TO NLG, LLC'S OBJECTION TO DEBTOR'S MOTION FOR EXTENSION OF EXCLUSIVITY PERIOD [D.E. 432]

Debtor, Liza Hazan, responds to NLG, LLC's (NLG) Objection to Debtor's Motion for Extension of Exclusivity Period (D.E. 432), and respectfully represents:

1.      On 1/11/16 the debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code.

2.      On prior motion [D.E. 364] the Debtor's exclusivity period was extended through April 30, 2017.

3.      The basis for the Debtor to again seek an extension of the exclusivity period was the Court's ruling at the hearing on disclosure on December 7, 2016, that the issue of NLG's standing must be resolved before the Court will consider other matters.

4.      The Court resolved the issue of NLG's standing by entering a default against NLG in the related Adversary Proceeding (Case No. 16-1439), Docket Entry 100, in which the Court ruled:

> ORDERED AND ADJUDGED that:
> 1. The Motion to Dismiss and Motion for Judgment on the Pleadings [D.E. 12] is DENIED as moot.
>
> 2. The Plaintiffs' Motion for Entry of Default Final Judgment [D.E. 85] is GRANTED IN PART and the Court enters DEFAULT in favor of the Plaintiffs and against the Defendant NLG, LLC. The request for a default final judgment is DENIED WITHOUT PREJUDICE, pending further proceedings.

5.      "A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.2d 1298 (11th Cir. 2009),

citing *Nishimatsu Const. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975); *Buchanan v. Bowman,* 820 F.2d at 361. See also *Ohio Central Railroad Company v. Central Trust Company of New York,* 1889, 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561; *Thomson v. Wooster,* 1884, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105; *Trans World Airlines, Inc. v. Hughes,* 2 Cir. 1971, 449 F.2d 51, 63-64, rev'd on other grounds, 1973, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed 577.4

6.  Based on the well pleaded allegations in Counts I, II and III of the Third Amended Complaint NLG has no lien on the Debtor's property, no claim in this Chapter 11 proceeding and no standing to object to the requested extension of Exclusivity.

7.  This Court addressed a similar issue in *In re Bankest, L.C.,* 321 B.R. 590 (Bankr. S.D.Fla. 2005), where the Court stated:

> Because there is no precise definition of the phrase party-in-interest, courts are to make this determination on a case by case basis. *In re Amatex,* 755 F.2d 1034, 1042 (3d Cir.1985). "An entity may be [a] real party in interest and have standing in one respect while he may lack standing in another respect." *In re Ofty Corp.,* 44 B.R. 479, 481 (Bankr.D.Del.1984); see also *In re Rimsat, Ltd.,* 193 B.R. 499, 503 (Bankr.N.D.Ind.1996) ("...the right to appear and be heard is not the same as standing and § 1109(b) does not necessarily mean that every party in interest can seek relief on every issue."). "The determination [of] whether an entity qualifies as a party in interest should be made within the specific reorganization process context for which the determination is sought." *In re River Bend–Oxford Assocs.,* 114 B.R. 111, 113 (Bankr.D.Md.1990). In that regard, it is appropriate for a court to examine the motivation of the party asserting party-in-interest standing. *Peachtree Lane Assocs., Ltd v. Granader (In re Peachtree Lane Assocs., Ltd.),* 188 B.R. 815, 827 (N.D.Ill.1995). The Bankruptcy Code is replete with examples where a creditor may not have standing to object. For example, creditors whose rights are unimpaired under a plan have no right to vote on the plan, 11 U.S.C. § 1126(f), and lack standing to object to a chapter 11 confirmation process. *In re Orlando Invs., L.P.,* 103 B.R. 593, 596 (Bankr.E.D.Pa.1989). Moreover, creditors lack standing to challenge those portions of a reorganization plan that do not affect their direct interests. Id. at 596–97.

8.  NLG lacks standing to object to Debtor's Chapter 11 proceeding or to her request to extend exclusivity. It has no claim against this Debtor.

9.  Ironically, now that the question of NLG's standing has been resolved and the case can proceed to confirmation, NLG objects to the extension of time the Debtor is required to request as a result of NLG's prior wrongful actions.

10.    The Debtor has stated a valid basis to extend the exclusivity period and NLG's objection to the extension should be overruled.

WHEREFORE, the debtor respectfully requests the Court grant the Motion for Extension of the exclusivity period and grant such other relief as is proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 25th day of April, 2017.

DAVID W. LANGLEY
Attorney for Debtor
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:    954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com
By: ____/s/  David W. Langley_____
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN                                        Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,
                                                  Chapter 11
Debtor.

_____/

### PLAINTIFFS' MOTION TO STRIKE NLG, LLC'S OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT [D.E. 431] And REQUEST FOR EXPEDITED HEARING

### BASIS FOR REQUEST FOR EXPEDITED HEARING

**Debtor, Liza Hazan's Third Amended Disclosure Statement is presently set for hearing on May 4, 2017 at 11:30 am. NLG has been defaulted in Adversary Proceeding 16-1439-AJC. It has objected to the Disclosure Statement yet has no standing to do so. The Debtor does not want the hearing on her Disclosure Statement delayed by NLG's arguments and respectfully requests a hearing on this Motion prior to May 4, 2017.**

Debtor, LIZA HAZAN (Hazan), by and through her undersigned attorney, moves to strike

NLG, LLC's (NLG) Objection to Third Amended Disclosure Statement (D.E. 431), and in support

thereof states as follows:

1) The Court entered a default against NLG in Adversary Proceeding 16-1439-AJC on March

20, 2017, Docket Entry 100, in which the Court ruled:

ORDERED AND ADJUDGED that:

1. The Motion to Dismiss and Motion for Judgment on the Pleadings [D.E. 12] is

DENIED as moot.

1

2. The Plaintiffs' Motion for Entry of Default Final Judgment [D.E. 85] is GRANTED IN PART and the Court enters DEFAULT in favor of the Plaintiffs and against the Defendant NLG, LLC. The request for a default final judgment is DENIED WITHOUT PREJUDICE, pending further proceedings.

2) The Default was entered because "the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines."

3) NLG moved to vacate the default (D.E. 104) but that relief was denied. (D.E. 112).

4) As stated in *Taylor v. City of Ballwin*, 859 F.2d 1330 (8th Cir. 1988), "By choosing not to respond, [Defendant] Brouk Ziegler will not now be heard to deny this claim; nor will they be allowed to raise a counterclaim for set-off.

5) NLG has no defense to the relief sought in the Third Amended Complaint, including Plaintiffs' request for a determination that NLG has no claim in this case and no standing in this case, as "Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law. *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) citing *Trans World Airlines, Inc. v. Hughes*, S.D.N.Y., 38 F.R.D. 499, 501, aff'd 2 Cir., 449 F.2d 51, rev'd on other grounds 405 U.S. 915, 92 S.Ct. 960, 30 L.Ed.2d 785.

6) NLG's Objection to Disclosure Statement is improper as the Court has already determined that NLG has no remaining claim in this case.

7) The Objection to Third Amended Disclosure statement (D.E. 431) should be stricken.

WHEREFORE, Debtor Liza Hazan Advisors, requests that this Court strike NLG's Objection to Third Amended Disclosure statement (D.E. 431) and grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 28th day of April, 2017.

> DAVID W. LANGLEY
> Attorney for Debtor
> 8551 W. Sunrise Blvd., Ste 303
> Plantation, Florida 33322
> Telephone:     954-356-0450
> Facsimile:     954-356-0451
> E-mail: dave@flalawyer.com
> By:     /s/ David W. Langley
>           David W. Langley, Esq.
>           Florida Bar Number 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:



**ORDERED in the Southern District of Florida on May 1, 2017.**

_____

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION

In re:

                                   CASE NO.:  16-10389-AJC

LIZA HAZAN,
      Debtor.                         CHAPTER 11
_____/

### ORDER GRANTING DEBTOR'S MOTION FOR EXTENSION OF EXCLUSIVITY PERIOD [D.E. 428]

**THIS MATTER** came before the Court for hearing on April 26, 2017 at 11:30 AM upon

Debtor's Motion for Extension of Exclusivity Period [D.E. 428]. The Court having reviewed the

motion, having heard the proffers and representations of counsel, and having considered the

record in the case, it is

**ORDERED AND ADJUDGED** that the Debtor's Motion is GRANTED, and the

exclusivity period for the Debtor to file a plan is extended to July 30, 2017.

**###**

**Submitted by:**

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:    954-356-0450
Fax:             954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
www.flsb.uscourts.gov

In re:
**LIZA HAZAN**                                    **CASE NO.: 16-10389 AJC**

Debtor.                                             **CHAPTER 11**
_____/

## NOTICE OF FILING

PLEASE TAKE NOTICE that the Debtor, Liza Hazan, hereby files the attached:

1. Attached as Exhibit ÷Aø is the Order dated 04/25/17 in the Real Estate Holdings Group

vs. Board of Managers of Spencer Condominium case filed in the Supreme Court of the state of

New York, New York County.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court

for the Southern District of Florida, and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above

document was filed electronically and served electronically or by mail to: U.S. Trustee, and all

interested parties on this 2nd day of May, 2017.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
Tel: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
By: ____/s/_David W. Langley_____
David W. Langley, Esq.
Florida Bar Number: 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ **ANIL C. SINGH** _____         PART 45
                              *Justice*

REAL ESTATE HOLDINGS GROUP          INDEX NO. 159254/13

                                    MOTION DATE _____

BOARD OF MANAGERS OF                MOTION SEQ. NO. 009
SPENCER CONDOMINIUM, et al.
                                    MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion by plaintiff to enforce
the terms of settlement agreement dated 3/2015
is granted. After a conference held today the Court
finds that all parties are in compliance with the
terms of stipulation dated 3/2015.

All communications by e-mail from the listing
broker shall be made to the following persons:
donna@fmcnyc.com (the managing agent for the unit);
abruno@halstead.com (Spencer Condominium Manager); and
seanmeehan@gmail.com (Real Estate Holdings Group,
owner). The listing agent should cooperate with the
aforementioned individuals.

Dated: April 25, 2017          [signature]          J.S.C.
                               ANIL C. SINGH

Check one: ☐ **FINAL DISPOSITION** ☒ **NON-FINAL DISPOSITION**

Check if appropriate: ☐ **DO NOT POST** ☐ **REFERENCE**

☐ **SUBMIT ORDER/ JUDG.** ☐ **SETTLE ORDER/ JUDG.**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

```
Label Matrix for local noticing          Aaronson Schantz Beiley P.A.              Board of Managers of Spencer Condominium
113C-1                                    c/o Geoffrey S. Aaronson                   c/o Robert C. Furr Esq
Case 16-10389-AJC                         100 SE 2nd Street 27th Floor               Furr and Cohen PA
Southern District of Florida              Miami, FL 33131-2122                       2255 Glades Rd #337W
Miami                                                                               Boca Raton, FL 33431-7379
Fri Mar 31 12:04:18 EDT 2017

Fisher Island Community Association, Inc. JMB/Urban 900 Development Partners, Ltd    JPMorgan Chase Bank, National Association
c/o PeytonBolin                           JMB/Urban 900 Development Partners, Ltd    Shapiro, Fishman & Gache, LLP
3343 West Commercial Blvd, Suite 100      900 North Michigan Ave                     c/o Steve Powrozek
Fort Lauderdale, FL 33309-3425            Chicago, IL 60611-1542                     4630 Woodland Corporate Blvd.#100
                                                                                    Tampa, FL 33614-2429

Joel M. Aresty P.A.                       NLG, LLC                                   (c)S&S COLLECTIONS, INC.
Joel M. Aresty, Esq.                      Nicholas B. Bangos, P.A.                   SIMON & SIGALOS, LLP
309 1st Ave S                             c/o Nicholas B. Bangos                     3839 NW 2ND AVE STE 100
Tierra Verde, FL 33715-2231               100 S.E. 2nd Street, Suite 3400            BOCA RATON FL  33431-5862
                                          Miami, FL 33131-2122

Selective Advisors Group, LLC             SouthEast Financial, LLC                   U.S. Bank National Association
c/o Marshall Socarras Grant, P.L.         Albertelli Law                            SHD Legal Group, P.A.
197 S. Federal Highway                    c/o Jeffrey S. Fraser                      PO BOX 19519
Suite 300                                 PO Box 23028                               Fort Lauderdale, FL 33318-0519
Boca Raton, FL 33432-4946                 Tampa, FL 33623-2028

Valencia Estates Homeowners' Associatio   3343 West Commercial Blvd, 100             6913 Valencia, LLC
c/o Haber Slade, P.A.                      3343 West Commercial Blvd, 10              3839 NW Boca Raton Boulevard
201 S. Biscayne Blvd.                      Fort Lauderdale, FL 33309-3425             West Palm Beach, FL 33413
Suite 201
Miami, FL 33131-4324

900 North Michigan, LLC                   ATT Mobility                               Allied Collection Service
c/o W. Allen Woolley, Esq.                PO Box 536216                              1607 Central Ave
Wildman Harrold Allens Dixon, LLP         Atlanta, GA 30353-6216                     Columbus, IN 47201-5370
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-3007

American InfoSource LP as agent for       American InfoSource LP as agent for        Board of Managers of Spencer Condominium
DIRECTV, LLC                              T Mobile/T-Mobile USA Inc                  c/o Robert C. Furr Esq
PO Box 5008                               PO Box 248848                              2255 Glades Rd #337W
Carol Stream, IL  60197-5008              Oklahoma City, OK  73124-8848              Boca Raton, FL 33431-7379

Chase Bank, NA                            Cross & Simon, LLC                         Cross & Simon, LLC
c/o Jennifer Kopf, Esq.                   c/o David Holmes, Esq.                     David G. Holmes, Esquire
Shapiro, Fishman & Gashe, LLP             1105 North Market ST, Suite 901            1105 North Market Street
2424 N. Federal Highway, Suite 360        Wilmington, DE 19801-1202                  Suite 901
Boca Raton, FL 33431-7701                                                            Wilmington, DE 19801-1202

David J. Fischer                          (p)DIRECTV LLC                             Enhanced Recovery Company
Locke Lord LLP                            ATTN BANKRUPTCIES                          8014 Bayberry Rd
111 South Wacker Drive                    PO BOX 6550                                Jacksonville, FL 32256-7412
Chicago, IL 60606-4409                    GREENWOOD VILLAGE CO 80155-6550

First National Collection Bureau, Inc.    Fisher Island Community Association        Florida Power & Light
610 Waltham Way                           c/o Danielle Schneider, Esq.               ATTN: General Mailing Facility
Sparks, NV 89434-6695                     Peyton Bolin, PL                           Miami, FL 33188-0001
                                          4758 W. Commerical Boulevard
                                          Fort Lauderdale, FL 33319-2877
```

```
Focus Management                        Fuerst Ittleman David & Joseph, P.L.    HSBC Bank USA, NA
10284 NW 47th St                        c/o Robert P. Charbonneau, Esq.         PO Box 2013
Fort Lauderdale, FL 33351-7967          501 Brickell Key Drive, Suite 300       Buffalo, NY 14240-2013
                                        Miami, FL 33131-2624


Internal Revenue Service                Internal Revenue Service                JMB/Urban 900 Development Partners, Ltd.
P.O. Box 7317                           PO Box 7346                             David J. Fischer
Philadelphia, PA 19101-7317             Philadelphia, PA 19101-7346             Locke Lord LLP
                                                                                111 South Wacker Drive
                                                                                Chicago, IL 60606-4409


Marzec Law Firm                         Miami Dade Water & Sewer Department     Miami-Dade County Tax Collector
225 Broadway, Suite 3000                Attn: Collection Branch/Bankruptcy Unit Attn: Paralegal Bankruptcy Unit
New York, NY 10007-3067                 P.O. Box 149089 Coral Gables, FL 33114  200 NW 2 Ave, suite 430
                                                                                Miami, Fla 33128-1735


Miami-Dade Water & Sewer Department     (c)MICHAEL W. SIMON, ESQ.               Mount Sinai Medical Center
PO Box 026055                           SIMON & SIGALOS, LLP                    PO Box 403429
Miami, FL 33102-6055                    3839 NW 2ND AVE STE 100                 Miami Beach, FL 33140-1429
                                        BOCA RATON FL  33431-5862


NLG, LLC                                Newman Ferrara LLP                      Office of the US Trustee
c/o Juan Ramirez, Esq.                  1250 Broadway, 27th Floor               51 S.W. 1st Ave.
Diaz, Reus, & Targ LLP                  New York, NY 10001-3717                 Suite 1204
100 SE 2nd Street, Suite 3400                                                   Miami, FL 33130-1614
Miami, FL 33131-2122


Ray Garcia P.A.                         Real Estate Holdings Group, LDC         Real Time Resolutions, Inc.
14850 SW 26th Street, Suite 204         60 Market Square                        1349 Empire Central Drive, Suite #1
Miami, FL 33185-5931                    PO Box 364                              Dallas, Texas 75247-4029
                                        Belize City, Belize


Real Time Solutions                     Robert A Gusrae                        (c)S & S COLLECTIONS, INC.
1349 Empire Central Drive               3343 West Commercial Blvd, 100          MICHAEL W. SIMON, ESQ.
Suite 150                               Fort Lauderdale, FL 33309-3425          3839 NW 2ND AVE STE 100
Dallas, TX 75247-4029                                                           BOCA RATON FL  33431-5862


Scott Paul Mackoff, Esq.                Select Advisors Group, LLC             (c)SIMON & SIGALOS
Mitofsky, Shapiro, Neville & Hazen LLP  6499 Powerline Road, Suite 304          C/O MICHAEL SIMON, ESQ.
152 Madison Avenue, 3rd Floor           Fort Lauderdale, FL 33309-2043          3839 NW 2ND AVE STE 100
New York, NY 10016-5424                                                         BOCA RATON FL  33431-5862


Southeast Financial, LLC                Spencer Condominium                     Sterling Emergency Serv. of Miami Beach
4000 N. Federal Highway, Suite 200      d/b/a Halstead Management Co., LLC      PO Box 975213
Boca Raton, FL 33431-4527               c/o David A. Tane, Esq.                 Dallas, TX 75397-5213
                                        120 Broadway, Suite 948
                                        New York, NY 10271-0996


Tracy Peterson, Esq.                    US Bank                                 Valencia Estates
Braverman Greenspun, PC                 c/o Lawrence Lambert, Esq.              c/o Jonathan Scott Goldstein, Esq.
110 East 42nd Street, 17th Floor        Frankel Lambert LLP                     Haber Slade
New York, NY 10017-8515                 53 Gibson Street                        201 S. Biscayne Boulevard, Suite 1205
                                        Bay Shore, NY 11706-8369                Miami, FL 33131-4317
```

Valencia Estates Homeowners Assn, Inc.
42205 Fisher Island Drive
Miami Beach, FL 33109-1291

Verizon
PO Box 1100
Albany, NY 12250-0001

Wells Fargo Bank
Box 5058 MAC P6053-021
Portland, OR 97208-5058

David W. Langley
8551 W Sunrise Blvd # 303
Fort Lauderdale, FL 33322-4007

Liza Hazan
6913 Valencia Drive
Miami Beach, FL 33109-0601

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Direct TV
PO Box 6550
Englewood, CO 80155-6550

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

S&S Collections, Inc.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd
Suite 100
Boca Raton, FL 33431

Michael W. Simon, Esq.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

S & S Collections, Inc.
Michael W. Simon, Esq.
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Fuerst, Ittleman David & Joseph, P.L.

(u)Real Time Resolutions, Inc.

(u)Miami

(u)Car Southeast Financial, LLC
Per DE#23

(u)Cross Simon
Per DE #23

(u)Halsted Management Company
Per DE #23

(u)Jacobs Keeley, PLLC
Per DE #23

(u)Mark D. Cohen, PA
Per DE #23

(u)Mercedes Benz Financial Services
Per DE #23

(u)Newman Ferrara, LLP
Per DE #23

(d)Newman Ferrara, LLp
1250 Broadway, 27th Floor
New York, NY 10001-3717

(u)Presidential Auto Leasing & Sales
Per DE #23

(u)Robert P. Lithman P.A.
Per DE #23

(u)Select Portfolio Servicing, Inc.
Per DE #23

(u)Michael Friedman

End of Label Matrix
Mailable recipients    64
Bypassed recipients    15
Total                  79

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN               Chapter 11
_____/

### SECURED CREDITOR NLG, LLG's
### OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT AS REVISED

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, objects to the Third Amended Disclosure Statement as Revised [but not docketed] (the "Revised Statement") emailed by counsel for Elizabeth Hazan (the "Debtor") on May 5, 2017, and states as follows:

### BACKGROUND

1.      NLG incorporates its Objection to the Third Amended Disclosure Statement [ECF 431] as if fully rewritten herein.

2.      At the disclosure statement hearing on May 4, 2017, the Court instructed the Debtor to amend the Third Amended Disclosure Statement to include further information about NLG's Final Judgment of Foreclosure (the "Foreclosure Judgment") and NLG's Counterclaim, the Spencer Condo conveyance and the Income of the Debtor.

3.      On May 5, 2017, counsel for the Debtor emailed counsel for NLG a copy of a Revised Statement with a date of May 9, 2017 and attached hereto as Exhibit 1.

### NLG'S FORECLOSURE JUDGMENT AND COUNTERCLAIMS

4.      The Revised Statement again fails to address NLG's Foreclosure Judgment. In fact, it does not even mention the words. The Debtor just wants to ignore the Foreclosure Judgment and pretend that it simply does not exist.

1

5.      On pages 11 and 12 of the Revised Statement, the Debtor mentions the word "Counterclaims" but fails to provide any meaningful information about NLG's Counterclaims which are wholly based on its final and non-appealable Foreclosure Judgment.

6.      The Court also was concerned whether Selective Advisors ("Selective") had an opportunity to be heard in the underlying state court foreclosure action.  Indeed Selective was heard at numerous hearings before Judge Gordo over the period of approximately one year. In fact, Selective was heard over NLG's objection that it lacked standing, as it had not moved to intervene. Nevertheless, both Judge Gordo and Judge Lopez allowed Selective to make its arguments. The Foreclosure Judgment was finally entered after multiple hearings and filings by Selective wherein Judge Gordo carefully considered Selective's arguments and position.  Judge Gordo rejected all of them as a matter of law leaving both Selective and the Debtor with appellate remedies if they chose to pursue them.

7.      Selective failed to file an appeal of Judge Gordo's Foreclosure Judgment and Debtor Hazan filed an appeal but voluntarily dismissed it.   Accordingly Judge Gordo's Foreclosure Judgment is now the "law of the case."

8.      Attached hereto as Exhibit 2, is Judge Gordo's Order Granting Foreclosure (the "Foreclosure Order").

9.       Contrary to the Debtor and Selective's sanctionable misrepresentations to this Court, NLG's Foreclosure Judgment was never assigned to Selective and Judge Gordo confirmed this in her Foreclosure Order.  [See Exhibit 2 page 7 to 10].

10.     Selective was represented by attorneys Mark Cohen, Esq. (who was also representing Debtor Hazan simultaneously in the NLG Foreclosure Action as well as in the

Appeal before the Third District[1] [See Exhibit 2 page 4], Bruce Jacobs, Esq. (who was also representing Debtor Hazan simultaneously in the NLG Foreclosure Action) and Daniel Milian, Esq. in the Foreclosure Action pending before Judge Gordo. These same attorneys also appeared before Judge Lopez representing the Debtor and Selective.

11.    In the Foreclosure Order Judge Gordo dedicated pages 4 to 14 addressing Selective's claims, why they were meritless and why she rejected them all. To further support her ruling, Judge Gordo attached Exhibits A and B from pages 16 to 46.

12.    As can be seen from a reading of the Foreclosure Order, Judge Gordo fully adjudicated the Foreclosure as well as the Debtor's and Selective's arguments which are now unassailable law of the case.

### The SPENCER CONDO FRAUDULENT CONVEYANCE AND CONCEALMENT

13.    The Debtor did add language about the fraudulent conveyance of the Spencer Condo to an offshore entity controlled by the Debtor's husband but again fails to explain that it was a fraudulent conveyance, subject to recovery in by the bankruptcy estate and being concealed from this bankruptcy under the guise of being owned by the Debtor's husband.

14.    The Debtor knows full well that the Spencer Condo was conveyed to her husband for zero consideration which is a hallmark of a fraudulent conveyance.

15.    The Board of Managers of the Spencer Condo has also expressed a concern about the Spencer Condo being concealed from this bankruptcy in its Motion to Convert [ECF 384].

16.    The Motion to Convert states in paragraph 1:

> Cause exists to convert this Chapter 11 Case to a case under Chapter 7 of the
> Bankruptcy Code, pursuant to Section 1112(b) of the Bankruptcy Code, or, in the

---

[1] If Selective were really an independent third party with legitimate rights of a creditor of the Debtor and not the husband of the Debtor trying to thwart NLG's Foreclosure Judgment, the same attorney could not represent both parties because of an obvious conflict of interest. See Florida Bar Rule 4-1.7(a).

alternative appoint a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code due to **the fraud and dishonesty of Liza Hazan a/k/a Elizabeth Hazan** (the "**Debtor**" or "**Hazan**")

17.     The Motion to Convert states in paragraph 2:

The need for conversion or the appointment of a Chapter 11 trustee is exemplified by the numerous, material misstatements - detailed herein - in the Debtor's petition and schedules and **the debtor's fraudulent concealment of her interest in a valuable condominium in New York City's Upper East Side, Lenox Hill Neighborhood**. The various misstatements and concealment clearly demonstrate that the Debtor cannot be trusted to faithfully carry out the statutory duties of a Chapter 11 debtor in possession.

18.     Accordingly it is both NLG and the Board of Managers of the Spencer Condo who are concerned about the fraudulent concealment of a $4.25 million asset.

## THE DEBTOR'S INCOME

19.     As for the Debtor's Income, the Court instructed the Debtor to include an addendum with the nature of the contracts generating her income and information about them. The Debtor has failed to include this addendum.

20.     Additionally a review of the Debtor's most recently filed Monthly Operating Report [ECF 437] shows total monthly income of $847. *Id.*

21.     It is impossible to approve the Debtor's Third Amended Disclosure Statement as Revised because it puts forth a plan which is wholly inadequate in disclosure and promotes a plan that is unfeasible and surely poised to fail.

## CONCLUSION

22.     For the reasons explained above, the Court should deny the Third Amended Disclosure Statement as Revised and dismiss or convert this case.

4

Dated: May 8, 2017

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 8th day of May 2017. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

5

## SERVICE LIST

***Served via CM/ECF***

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION
### www.flsb.uscourts.gov

In re:

                                              CASE NO.:  16-10389-AJC

LIZA HAZAN,
        Debtor.                                  CHAPTER 11
_____/

### <u>THIRD AMENDED DISCLOSURE STATEMENT as Revised</u>

### *Table of Contents*

I.      **INTRODUCTION**                             **page 2**
      A.    **Purpose of This Document**
      B.    **Deadlines for Voting and Objecting;**
            **Date of Plan Confirmation Hearing**
      C.    **Disclaimer**
II.     **BACKGROUND**                              **page 4**
      A.    **Description and History of the Debtor's Business**
      B.    **Insiders of the Debtor**
      C.    **Management of the Debtor Before and During the Bankruptcy**
      D.    **Events Leading to Chapter 11 Filing**
      E.    **Significant Events During the Bankruptcy Case**
      F.    **Projected Recovery of Avoidable Transfers**
      G.    **Claims Objections**
      H.    **Current and Historical Financial Conditions**
III.    **SUMMARY OF THE PLAN OF REORGANIZATION**       **page 13**
          **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
      A.    **What is the Purpose of the Plan of Reorganization?**
      B.    **Unclassified Claims**
          1.    *Administrative Expenses*
          2.    *Priority Tax Claims*
      C.    **Classes of Claims and Equity Interests**
          1.    *Classes of Secured Claims*
          2.    *Classes of Priority Unsecured Claims*
          3.    *Class[es]of General Unsecured Claims*
          4.    *Class[es] of Equity Interest Holders*
      D.    **Means of Implementing the Plan**
      E.    **Risk Factors**
      F.    **Executory Contracts and Unexpired Leases**
      G.    **Tax Consequences of Plan**
IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**     **page 27**
      A.    **Who May Vote or Object**

      B.      **Votes Necessary to Confirm the Plan**
            1.       *Votes Necessary for a Class to Accept the Plan*
            2.       *Treatment of Non accepting Classes*
      C.      **Liquidation Analysis**
      D.      **Feasibility**
            1.       *Ability to Initially Fund Plan*
            2.       *Ability to Make Future Plan Payments*
                   *And Operate Without Further Reorganization*
V.      **EFFECT OF CONFIRMATION OF PLAN**        **page 31**
      A.      **Discharge Of Debtor**
      B.      **Modification of Plan**
      C.      **Final Decree**

**EXHIBITS**

**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

**INTRODUCTION**

      This is the third amended disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Second Amended Plan of Reorganization (the "Plan") filed by the Debtor on March 27, 2017. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

      A.      **Purpose of This Document**

This Disclosure Statement describes:

                The Debtor and significant events during the bankruptcy case,
                How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
                Who can vote on or object to the Plan,
                What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
                Why the Proponent believes the Plan is feasible, and how the treatment

of your claim or equity interest under the Plan compares to what you would
receive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement
describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This
section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to [Finally Approve This Disclosure
        Statement and] Confirm the Plan*

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return
the ballot in the enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. Clyde Atkins
United States Courthouse 301 North Miami Avenue, Room 150 Miami, FL 33128. See section
IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be
counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and
        Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed
with the Court and served pursuant to orders served herewith.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
Counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

C.      **Disclaimer**

*The Court must approve this Disclosure Statement as containing adequate information
to enable parties affected by the Plan to make an informed judgment about its terms. The Court*

*has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.   BACKGROUND

### A.   Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has historically earned in excess of $350,000 per year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele. The Debtor has several projects under contract that will provide sufficient income to confirm and fund her plan. The Debtor presently has closed contracts that will earn her significant funds (comparable to past earnings) in the next six months.

Debtor works with other major hospitality brands, restaurants, lounges and nightclubs that will earn her millions of dollars of income in the near future.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in the Fisher Island Property would support a refinancing, which could also be used to support funding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group, L.D.C. which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group, L.D.C. has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan. **The New York Condominium is presently listed for sale for $4,250,000 and is being actively marketed and shown to prospective buyers.**

### B.   Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

### C.   Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were the Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case have been: The Debtor.

4

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: The Debtor.

### D.     Events Leading to Chapter 11 Filing

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtor's equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") now scheduled at $12 million for $5.1 million from NLG, LLC ("NLG") through its then claimed principal Chris Kosachuk. The Debtor has been involved in litigation with NLG and Kosachuk since that time as more fully described below.

The NLG's self titled manager Chris Kosachuk has signed a gift of equity letter stating that Debtor does not have to pay back the amount of $1,275,000. In the closing statement NLG provided a seller contribution in the amount of $1,275,000 to Debtor. Chris Kosachuk has thereafter testified that he transferred ownership of NLG in 2007 to Luxcom, a Russian company (that Debtor has determined does not exist) in 2010. In 2012 Chris Kosachuk testified that NLG is now owned by Meridian Trust Company located in the British Virgin Islands, but he could not recall who he reported to or which island in BVI is Meridian Trust Company located. In 2014 Chris Kosachuk in a sworn deposition alleged that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover.

In October 2008, NLG, through Chris Kosachuk, broke into Debtor's homestead property located on Fisher Island and resided in the Debtor's home for two months. Debtor, who was out of the country, after learning of the incident, filed an emergency motion to vacate the fraudulent Sheriff's deed obtained by NLG. Judge Scola granted Debtor's emergency motion, finding Chris Kosachuk's actions "unconscionable". After Judge Scola ordered Chris Kosachuk and NLG to vacate the premises, Kosachuk refused to vacate Debtor's home and moved for an enlargement of time. Judge Scola denied NLG's motion and forced Chris Kosachuk to vacate the premises. Police reports of the incident document that Chris Kosachuk stole Debtor's furniture and her seven plasma TVS. Judge Scola has ruled as follows:

"The Sheriff's Sale is set aside and vacated and the Sheriff's Deed dated November 19, 2008, for the property is vacated and the Sheriff's Deed is hereby SET ASIDE. The title of Defendant, Elizabeth Hazan, to the following described real property in Miami-Dade County, Florida:

**Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County, Florida.**

is a good title against the claims or purported claims of Plaintiff, NLG, LLC, and all other parties

claiming by through, under or against it and those claims or purported claims are cancelled and the title to the property is forever quieted to Elizabeth Hazan as to NLG, **LLC**.

        B.      NLG, LLC and Chris Kosachuck, and all parties having or claiming to have any rights of possession of the property through NLG, LLC or Chris Kosachuck and all those parties since the filing of the Notice of Lis Pendens in this cause are to vacate the property located at 6913 Valencia Drive, Fisher Island, Florida 33109 ("premises"), on or before noon on December 21, 2008, and deliver the keys to Hazan or her agents, and leave the premises in good condition. The Clerk of this Court is directed to issue a Writ of Possession after December 21, 2008, to the Sheriff of Miami-Dade County, directing him to put Elizabeth Hazan in possession of the aforesaid premises after twenty-four hours notice has been conspicuously posted on said premises all for which let execution issue.

      Chris Kosachuk has stolen Debtor's mail. Kosachuk has stalked the Debtor and harassed her and called her a 'whore and a f_ _ _ ing Jew". Chris Kosachuk has threatened Debtor's lawyers. Chris Kosachuk pushed her New York attorney Darius Marzec's to the ground and has emailed him "Soon you will find yourself square in the cross-hairs and won't be able to hide behind all of your lawyering bullshit". Chris Kosachuk has impersonated Debtor and called her banks to find out personal information. Chris Kosachuk has intimidated Debtor's previous clients, ruined her business and caused her millions of dollars of lost of income. Kosachuk has harassed her clients, has defamed her character and damaged her reputation, defaming her in numerous newspapers, calling her a zero and a loser and other names.

      NLG and Chris Kosachuk have caused the Debtor to suffer emotionally for over a decade and have caused her to lose income and to incur substantial attorneys' fees to defend herself against Chris Kosachuk's nefarious actions.

      Chris Kosachuk has sent Debtor an email stating "your days are numbered" and told her that he would burry her alive.

      Debtor filed numerous police reports and reports with Fisher island security who have physically removed Kosachuk from Debtor's property. Chris Kosachuk has impersonated other residents and used their Fisher Island security code to access Fisher Island and has lied to Fisher Island security to gain access to Fisher Island to come to the Island, intimidate, stalk, harass and physically and emotionally harm the Debtor.

**Chase Bank**

      In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington Mutual Bank in the amount of $3,825,000. JP Morgan Chase Bank claims to now own the Washington Mutual Bank promissory note and mortgage signed by Debtor in March 7, 2007.

      Chase filed a foreclosure in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

6

## NLG

### NLG FL litigation

NLG's self titled manager Chris Kosachuk. provided a gift of equity or an "equity contribution" of $1,275,000 stating that Debtor does not have to pay back the amount of $1,275,00 on the closing statement and also had Debtor execute a note and second mortgage on the Fisher Island property for that same amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtor's property. Litigation between the parties has occurred in four states, multiple courts and has continued for over a decade, and continues in this court, costing Debtor millions in legal fees, adversely affecting her health and her career, and putting her in the financial position of having to seek relief in a Chapter 11 reorganization.

Chris Kosachuk asserts that he is the manager and representative of NLG. Kosachuk has testified that he transferred NLG in 2007 to Luxcom, a Russian company. In 2012 Chris Kosachuk testified that NLG is now owned by Meridian Trust Company located in BVI but he could not recall to whom he reported. In 2014 Chris Kosachuk testified in deposition that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover. From prior to the purchase date, more than a decade ago, to today, the parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and is now in this Court.

NLG obtained a judgment on the promissory note signed by Debtor on April 28, 2008. ("The Scola Judgment"). NLG also sued Debtor for foreclosure in 2011. In 2014, Judge Peter Lopez assigned NLG's judgment against Debtor, the Scola Judgment along with all NLG's rights, claims and benefits against Debtor to Selective Advisors Group, LLC. ("Selective")  and also ordered Selective to provide a partial credit in the amount of $2,746,953.34 which amount includes principal and interest through August 31, 2014 (representing the full amount of the Scola judgment) at the 11% interest per annum. Selective did so.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a secured creditor in this case. Selective is listed in Debtor's schedule as her secured creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016.  Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176. This Honorable Court ruled as follows:

> First, NLG is not a scheduled creditor in this case. The Debtor scheduled Selective as its secured creditor, relying on the judicial assignment in the Proceedings Supplementary Order, pursuant to the Scola judgment.  NLG was listed solely as a notice party. The claims bar date has passed in this case, and NLG has not filed a claim.  NLG

indeed had sufficient notice of these proceedings to timely file a claim (both NLG's counsel and Kosachuk himself appeared and questioned the Debtor at the 341 meeting), but apparently chose not to. Because NLG has not been scheduled and did not file a claim against this estate, there is an issue as to whether NLG lacks standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).

…

The Debtor's Schedules indicate a disputed first mortgage on the property for $ 5.2 million dollars to Chase Bank N.A.; a mortgage for $2.0 million dollars to an entity owned by her mother that Debtor and her mother represented may be subordinated and/or satisfied in connection with a plan, and various other miscellaneous liens less than $300,000. The Debtor values the Selective lien at zero, because Selective, as judicial assignee of NLG, is owned by her husband and has filed a Satisfaction of Judgment and a Satisfaction of Mortgage.

…

The Debtor also asserts the Property is necessary to an effective reorganization. She resides on the Property with her husband and has declared the Property to be her homestead. The Debtor is a financial consultant who earns her income from consulting fees in connection with placing high-end retail and restaurant businesses in certain top-tier shopping locations. She entertains prospects at home. She also asserts significant equity in the home sufficient to refinance and/or collateralize the payment of her unsecured debt".

The Debtor has filed with the Court an appraisal (D.E. 82-1) of the Property for $9.5 million, and asserts: (1) that the Debtor is negotiating with Chase regarding various issues; (ii) that NLG's right to foreclose was judicially assigned to Selective, which has satisfied the Hazan mortgage in partial satisfaction of its judgment against NLG; and (iii) that the mortgage held by Debtor's mother's company will be subordinated or satisfied as part a plan.   The Court believes the Debtor has presumptively established the prospect of equity in the Property for the benefit of creditors, and further believes the Debtor has established the Property is necessary for an effective reorganization as she uses the Property for business purposes and any plan filed in this case will be premised upon, at least in part, future business income.

**NLG NY Litigation**

NLG domesticated the judgment obtained against debtor on April 28, 2008 ("the Scola Judgment") in New York in 2014. New York Supreme Court Judge Barbara Jaffee, having recognized the Miami-Dade Judge Peter Lopez Order of Assignment of the NLG's Judgment ("The Scola Judgment") against the Debtor to Selective Advisors Group, LLC ("Selective") and having accepted the Selective's Satisfaction of NLG's Judgment against the Debtor Ordered on November 5, 2014:

> "That the caption of the case, *NLG, LLC vs Elizabeth Hazan,* be changed to substitute Selective Advisors Group, LLC as Plaintiff in place of NLG and that the New York County Clerk is directed to accept for filing the Florida Court Order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further
>
> ORDERED, that the County Clerk is directed to reflect on the docket of this case that the Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further
>
> ORDERED, that the County Clerk is directed to accept for filing the satisfaction of Judgment or other appropriate satisfaction piece; and it is further
>
> ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action under Index No. 108020/08."

NLG also filed a lawsuit in New York alleging Debtor fraudulently transferred the New York condo (described below). On November 2014, Hon. Judge Barbara Jaffee dismissed both claims filed by NLG.

### Spencer Condominium

Debtor bought a condominium in New York City on Fifth Avenue and 62nd Street on December 2005 in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065 ("The New York Condominium").

**Debtor transferred this New York Condominium on August 2011. The Board of Managers alleges that the transfer was made without the consent of Spencer Condominium. The Board of Managers has agreed to the approval of this Disclosure Statement. The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest the transfer has not yet run, but IRS has taken no such position and has not appeared in the case other than the filing of a Proof of Claim. The New York Condominium had no equity at the time of the transfer.**

Debtor's husband controls the corporation, Real Estate Holdings Group LDC which now owns the condominium. The Spencer Condominium Board of Managers has been involved with The Debtor and REHG in litigation since 2008 resulting in a confidential settlement agreement executed in March 2015. Spencer Condominium disputes that the Settlement Agreement is enforceable at this time, but Judge Singh of the New York Supreme Court has recently ordered the parties to comply with the Settlement Agreement; The settlement includes a resolution of the following lawsuits:

*Board of Managers of Spencer Condominium v. Elizabeth Hazan, et al;*
> No. 111644/09.

*Real Estate Holding Group, LDC v. Board of Managers of Spencer Condominium et al*;
> No. 154149/2012

*Real Estate Holdings Group, vs. Spencer Condominium*
        No. 159254/2013

All three cases have been dismissed and settled and REHG is presently hiring a real estate broker to list the condominium unit for sale to pay off the settled reduced amounts of the first mortgage in favor of U.S. Bank and to satisfy the second mortgage in favor of Real Time Resolutions (both alleged creditors of this Debtor) as well as to resolve the assessments allegedly due the Board of Managers. The unit will be listed for sale.

On July 21, 2016 Debtor filed the following motions: Motion for Relief from Stay Spencer Condominium, (D.E. 115), Motion to Seal or for in Camera Review (D.E. 116) and Motion for Abstention (D.E. 117). All three Debtor's Motions have been withdrawn without prejudice. On February 24, 2017 Debtor filed three new motions in this case: A Motion to Seal, D.E. 387, A Motion for Abstention D.E. 388, A Motion for Relief from Stay D.E. 389 and An Amended Motion for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 390. Debtor also filed an objection to Spencer's Proof of Claim. On March 1, 2017, This Court granted the agreed Order granting Debtors' Amended Motion for Order for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 392. The Court ruled as follows: "The Debtor's Motion is granted. The automatic Stay is lifted solely for the purpose of permitting the New York Supreme Court to exercise jurisdiction over the litigation between the Debtor and Spencer Condominium and related parties and the stipulation for settlement therein. The 14 day Stay period pursuant to Bankruptcy Rule 4001(a)(3) is waived. No property of the estate will be affected by this Order".

In the case of *Real Estate Holdings Group, vs. Spencer Condominium* No. 159254/2013 on July 27, 2016, Real Estate Holdings Group, L.D.C. ("REHG") Owner of The New York Condominium filed an Order to Show Cause to enforce the confidential Stipulation of settlement executed by the parties on March 2015. On March 2, 2017, Honorable Judge Singh granted Plaintiff REHG's Motion to enforce the Confidential Settlement with Spencer Condominium as the stay has been vacated and ordered the parties to comply with the terms of the settlement within 30 days of the Order. The matter is adjourned to April 25, 2017 (2:30 pm) to monitor compliance.

In the case of *Board of Managers of Spencer Condominium v. Elizabeth Hazan* No. 109083/2008 Spencer has obtained an award in the amount of $109,554.86. This award was never converted to a judgment entered or recorded in any court. However the parties have agreed that this amount of alleged money owed by the Debtor to Spencer prior to her transfer of ownership of the New York condo in 2011 almost 6 years ago shall be paid by REHG and not by the Debtor in the plan. Spencer has no standing to object to the Debtor's plan or object to her confirmation and is bound by their in full force and effect confidential Stipulation of Settlement executed on March 2015.

**The New York Condominium is presently listed for sale for $4,250,000.00 and is being actively marketed and shown to prospective buyers.**

**<u>Reorganization</u>**

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, or if necessary, refinancing and contributions from her husband's companies.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.     **Significant Events During the Bankruptcy Case**

\*     Date of Order for Relief under Chapter 11 on 1/11/16.

\*     Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM.

\*     Deadline for complaint re dischargeability was 4/18/16.

\*     Professionals approved by the court
       Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date.
       Joel Aresty was substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126).
       David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and was approved by the Court on October 19, 2016.

\*     Contested claim disallowance proceedings: pending; see claim treatments.

\*     Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

\*     Debtor has managed her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor to reorganize allowing Debtor to propose a plan for payment of creditors.

\*     **The Debtor obtained a Default against NLG, LLC in Adversary Case No. 16-1439-AJC on March 17, 2017.**


**ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC**

On August 21, 2016 Selective filed an Adv. Case No. 16-1439-AJC D.E.1. On 10/21/2016 Debtor moved to amend the Complaint to add Debtor, Liza Hazan as Plaintiff. On October 20, 2016. D.E.8. NLG filed their answer and their counterclaims. D.E5 and D.E 6.

On 11/08/16 Plaintiffs Selective and Hazan filed their motions to dismiss Count I and Count II of NLG's counterclaims and Motion for Judgment on the pleading D.E. 11 and D.E. 12. On December 6, 2016 Plaintiffs Selective and Hazan filed their Motion for leave to file Amended

Complaint against NLG to add a count under Florida Statute § 65.08 and Florida Statute § 65.011for quieting title and a count for damages. D.E. 32. On December 19, 2016 This Court ordered the parties to submit Orders on Plaintiffs' motions to dismiss NLG's counterclaims and Plaintiffs' motions for Judgment on the Pleadings. On December 23, 2016 Debtor Hazan amended her Complaint to add additional Counts D.E. 40. On 12/30/2016 This Court entered an Order granting Plaintiff's Motion to amend and allowing Second Amended Complaint. On January 3, 2017 Plaintiffs filed their Second Motion to Amend Complaint to add additional Tort claims, D.E 47 and D.E 48, adding additional torts.

On 01/13/17 NLG's counsel, Michael Friedman, filed his expedited Motion to Withdraw as attorney of record for NLG citing irreconcilable differences D.E 54. On 01/23/17 this Court granted Michael Friedman's Motion to Withdraw, D.E 61, and also granted Plaintiffs Selective and Hazan's Second Motion to amend Complaint. D.E 62.

On 02/22/17 NLG's third counsel filed his notice of appearance - James Miller, D.E.75. On 03/01/17 NLG's third counsel filed his expedited motion to withdraw citing once again irreconcilable differences and also filed his motion to allow NLG to extend time to meet the Court's deadlines. D.E. 76. On 03/03/2017 Plaintiffs Selective and Hazan filed their Motion for Default against NLG for failing to answer Plaintiffs' Third Amended Complaint. D.E. 85. On 03/10/17 this court denied NLG's motion to extend time. D.E. 94.

On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG and denied Plaintiffs' motion for judgment on pleadings as moot because of the subsequent filings and amendments. This Court granted a Default in favor of Plaintiffs and against Defendant NLG and ruled as follows:

> The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court set deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100.

**NLG moved to vacate the default on March 24, 2017 (D.E. 104). The Court denied the Motion on April 20, 2017 (D.E. 112).**

**Present counsel for NLG (its fourth) filed an Expedited Motion to Withdraw on May 4, 2017.  This follows an expedited Motion to Withdraw filed by prior counsel, James Miller, on March 1, 2017 which followed an Expedited Motion to Withdraw filed by the Genovese firm on January 12, 2017. NLG's initial counsel moved to withdraw in the main case on September 12, 2016.**

**Valencia Estates Homeowners' Association**

The Debtor has entered into a Stipulation for Settlement with Valencia Estates Homeowners' Association, Inc.  The Debtor has agreed to approval of the stipulation by this Court and the Association has agreed to support the Debtor's reorganization.

F.     **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute 726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 which has a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonable equivalent value, which facts are not relevant to the plan in this case.

**The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest a transfer is ten years and has not yet run. IRS has not challenged any transfers in this case and has not appeared in the case other than to file of a Proof of Claim. Debtor transferred the New York Condominium on August 2011. The Debtor contends that the New York Condominium had no equity at the time of the transfer.**

G.    **Claims Objections**

The Debtor has not completed claim objections but the current plan reflects the objections contemplated.

H.    **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to this statement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting is not a regular monthly income which would lend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS**

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

    1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

    2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

## C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim. |
| | Joel Aresty | Mr. Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement (submitted but not yet entered) followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. |
| | David W. Langley | Paid as awarded or agreed. |
| | US Trustee | paid in full at confirmation |

**Priority Claims**

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | **IRS**  **Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Payments every six months to include interest on any unpaid claim amounts after the effective date of the plan at 3% |

**Secured Claims**

**6913 Valencia Drive Property Fisher Island Florida**

| | | | | |
|---|---|---|---|---|
| 2 | **Chase Bank** | | yes | **First Secured Mortgage –**  The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim. Chase was scheduled as disputed, contingent and unliquidated.  Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 with Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues. If the State Court enters a final order finding and determining the |
| | | | no | |

| | | | | |
|---|---|---|---|---|
| | | | | validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final. |
| | | | | Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan. See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). |
| | | | | **Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.** |
| 3 | **Selective Advisors Group, LLC** | yes | yes | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainst The Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008,

Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August |

20, 2014 and August 21, 2014. per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a scheduled creditor in this case. Selective is listed in Debtor's schedule as her creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016. Selective, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. **On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.**

On August 21, 2016, Selective sued NLG in this bankruptcy Court **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January 3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend their Complaint to add a count seeking to Quiet Title to the property, and a number of tort claims, which motion was granted on January 23, 2016.

**On March 20, 2017 The Court awarded a default in favor of Plaintiffs Selective and Hazan and against Defendant NLG, LLC. (D.E. 100.)** The Court granted a Default in favor of Plaintiffs and against

| | | | | Defendant NLG, LLC and ruled as follows: "The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court sets deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100 |
|---|---|---|---|---|
| 4 | **6913 Valencia LLC** | Yes | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLC's Mortgage on her Homestead property claim. |
| 5 | **Valencia Estates Community Assn, Inc claim #10** | | yes<br><br>no | **Valencia Estates Community Association's ("Valencia")** Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2. Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00 as per the Stipulation.<br><br>3. Debtor has paid the 2016 special assessment in the amount of $6250.00 as per the Stipulation.<br><br>4. The Parties agreed that Claim Number 10 shall be paid in the amount |

| | | | | |
|---|---|---|---|---|
| | | | | of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month. **Valencia Estates Community Association, Inc withdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan.** **Claim settled.** Agreed Order Approving Stipulation of Settlement of Claim 10 filed by Valencia Estates Homeowners' Association entered on 11/18/16 D.E 302. |
| 6 | **Fisher Island Community Ass'n, Inc Claim #18** | | yes  no | Late filed Proof Of Claim in the amount of $216,278.97 on 10/20/16 – **Disputed by Debtor and Disallowed by this Court.** The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been denied on November 16, 2016. |

| | | | | Claimant 3343 West Commercial Blvd. 100 (Fisher Island Community Association). Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16 **Claim Disallowed Claim by this Court. No payment through Plan.** |
|---|---|---|---|---|
| 7 | **Miami-Dade Water and Sewer claim #7** | no | yes | **Claim #7 $1502.54 to be paid on the Effective Date of The Plan** |
| 8 | **IRS claim #3** | no | yes | $393,985.17 - Secured claim shall be paid over ten years with interest payments every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full. **Claim #6 paid in full**. |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim 8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor. Alleged Creditor has agreed to complete stay relief in settlement of this |

| | | | | claim in this case and has agreed to support Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163) **Claim settled.** |
|---|---|---|---|---|

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | no | yes | The Debtor disputes the Claim #14 filed by The Board of Managers Spencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York. The Debtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance fees owed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065. This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"), the owner of the New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlement executed in March 2015 ("Settlement"). The vast |

| | | | | remaining portion of the Spencer Condo Board of Managers' claim is to be paid by the owner of the unit, REHG, per the Settlement executed in March 2015 by the parties. **On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowing the New York Court to exercise jurisdiction over and enforce the confidential Settlement Agreement.** **On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce The Confidential Stipulation entered in March 2015 between the parties.** **No payment through the plan. Claim settled.** |
|---|---|---|---|---|

**Vehicle**

**2007 Mercedes-Benz S550**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 12 | **Southeast Financial LLC** | | yes | Stipulation Of Settlement DE 98 approved by this Court DE 101. |

|  |  | no |  | Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor.<br><br>Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current.<br><br>**Claim settled.** |

### Convenience Class Undisputed Unsecured Small Claims

### Paid in full over 18 months beginning month 6 after confirmation with equal payments every 6 months

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| 13 | IRS Claim #3 | no | X | 1085.00 |
|  | American InfoSource T Mobile Claim #2 | no | X | 1130.00 |
|  | American InfoSource Direct TV Claim # 9 | no | X | 461.00 |
|  | FPL Claim #11 | no | X | 2906.93 |
|  | Mount Sinai | no | X | 3,240.00 |
|  | Mount Sinai | no | X | 295.91 |
|  | HSBC Bank USA NA | no | X | 1070.66 |
|  | Sterling Emerg Svc | no | X | 2445.30 |
|  | Bank of America NA | no | X | 3301.00 |
|  | Wells Fargo Claim #12 | no | X | 323.24 |
|  | Real Time Resolutions Claim #5 | no | X | 12,000.00 |

|  | Total |  |  | 28,259.04 |
|  |  |  |  |  |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**

**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment |
|---|---|---|---|---|
| **14** | **JMB Urban 900 Dev. claim #4*** | **no** | **X** | $664,380.47 will be paid 41% or 275,000.00 per settlement 18 months from the petition date. **Adversary proceedings 16-01188-AJC closed on 7/22/16 and Case settled 16-01188-AJC.** |
|  | **S&S Collections Simon & Sigalos claim #13** | **no** | **X** | $21,242 **Claim settled** for 41% per stipulation to be paid 18 months from petition date. **Claim settled** |
|  | **Newman Ferrara LLP claim #15** | **no** | **X** | $24,818.44 Legal bill Legal work for Corporation other than the Debtor. **The Claim bar date has passed. Unallowed claim.** |
|  |  |  |  |  |

*claim 4 subject of adversary case 16-01188 AJC settlement at 41% of claim

** insider claim will subordinate and not be paid until all other allowed claims but reserves right to vote for the plan

**Disputed Unsecured Claims**

**not paid until and unless allowed**

**and then paid within 5 years after confirmation**

| 15 | **Cross & Simon<br>Claim #1** | no | X | $11,023.83<br>Legal Bill for corporation other than Debtor.<br><br>**Unallowed claim.**<br><br>**No payment through Plan** |
|----|----|----|----|----|

|  |  |  |  |  |
|----|----|----|----|----|
|  |  |  |  |  |
| 16 | **Fuerst Ittleman David & Joseph, P.L.**<br><br>**Claim #16** | no | X | Disputed Proof of Claim filed after Claim Bar Date. Fuerst Ittleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. Fuerst Ittleman David & Joseph, P.L. have agreed that they are not a creditor of this estate.<br><br>**No payment through plan.**<br>**Unallowed Claim.** |

**Unsecured Scheduled Disputed and No Claim Filed**

**Therefore Disallowed**

| Allied Collection | 318 |
|----|----|
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |

| | |
|---|---|
| Verizon | 1758 |
| US Bank NA | Unknown |
| | The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |
| | US Bank did not file a proof of claim and will not be paid through the Plan. **Claim settled.** |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and **NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**. |
| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
| | NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor. |
| | **On May 13, 2016 NLG, LLC moved for stay relief in this court (D.E. 66).** Selective, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG, LLC. **On August 23, 2016 the bankruptcy court entered its decision denying NLG, LLC's motion for relief from the automatic stay. ECF 176** |
| | **On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG, LLC in the Adversary, Case No. 16-1439 Selective Advisors Group, LLC and Liza Hazan AKA Elizabeth Hazan Liza Hazan AKA Elizabeth Hazan V. Defendant NLG, LLC in the Adversary. See D.E. 100. This Court granted a Default in** |

| | favor of Plaintiffs Selective Advisors Group, LLC and Debtor Liza Hazan AKA Elizabeth Hazan and against Defendant NLG, LLC |
|---|---|
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 17 | Equity Individual interest holder | no | retained |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 per year and in 2014 a personal income of $420,000.

Debtor has executed in the last quarter of 2016 contracts that have earned her income comparable to past years, to be paid in installments, and additional payments throughout the construction phase, and the last remaining portion upon opening of the clients for business.

Debtor has contracts to expand a nationwide and worldwide very high end retail operator that has already over 50 existing stores and is planning to open over 100 new locations in the next five years.

Debtor has also exclusive contracts with high end restaurants and is responsible for their expansion nationwide. Debtor is in charge of finding new locations and is also responsible of their construction, architectural plans etc all the way through their opening of their new locations.

Debtor's husband controls a company called Real Estate Holdings Group, L.D.C. ("REHG") which owns a New York condominium on Fifth Avenue and 62nd street New York Apt 1 A NYC NY 10065 appraised at $4,500,000.00 that has in excess of $2,500,000.00 in equity. The company, REHG, has agreed to refinance and also sell the condominium to fund the plan in order to assure successful reorganization and completion of the plan.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in Fisher Island would also support a refinancing, which could also be used support funding a plan if necessary.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|---------------------|----------|--------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E.    **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases.  If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.  This Plan bears the risk that the Debtor's income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to make payments under this Plan.  However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE.  CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F.    **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. There are none. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is*** no later than thirty (30) days after the date of the order confirming this Plan. <u>Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.</u>

### G.     Tax Consequences of Plan

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income tax consequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims and Interests who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities have been obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes or Class 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NON RESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL**

**BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

A.     **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

31

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 for government units.**

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

• holders of claims and equity interests that have been disallowed by an order of the Court;
• holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
• holders of claims or equity interests in unimpaired classes;
• holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
• holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
• administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].**

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court can not confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non accepting classes, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

*2. Treatment of Non accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibits C and D.

### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit D.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.   **EFFECT OF CONFIRMATION OF PLAN**

### A.   **DISCHARGE OF DEBTOR**

Discharge. In a case in which the debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and
**(iii)** subparagraph (C) permits the court to discharge; and
**(C)**(*) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the debtor; and
**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon the satisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)     The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)     During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured and priority creditors, as contemplated under the Plan.

(e)     Upon the satisfaction of all payments required under the Plan to creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to creditors.

(f)     Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

## B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

C.     **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted May 9, 2017:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954—356-0450
By: /s/ *David W. Langley*

Attorney for the Plan Proponent

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

## ORDER GRANTING FORECLOSURE

      THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second

Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil

Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,

ORDERS AND ADJUDGES as follows:

The history of the litigation between the parties was set out in detail when the matter went up on appeal to the Third District. The facts and procedural history recited in the opinion constitute the law of the case. In its opinion, the Third District stated as follows:

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

*NLG, LLC v. Hazan,* 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### Status of the Pleadings After Mandate

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

3

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

4

property which was then the subject of a mortgage foreclosure action and accompanying lis

pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention.  In

*Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test

to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*,

75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the
> matter in litigation, and of such a direct and immediate character that the
> intervenor will either gain or lose by the direct legal operation and effect of the
> judgment. In other words, the interest must be that created by a claim to the
> demand in suit or some part thereof, or a claim to, or lien upon, the property or
> some part thereof, which is the subject of litigation."

Carlisle, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any

interest in the litigation.  The Wherefore Clause merely requests intervention.  But if Selective is

trying to collect on the Judgment by Confession, it is undisputed that the judgment has been

satisfied.  Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to

assert its rights, but to obstruct the foreclosure of his wife's property.  To allow intervention by

Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction.  As the Third District

recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if

Selective were allowed to intervene, they would take "the procedural posture of the case as it

stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking

Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the

then-existing claims in the lawsuit."  The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id*.

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

### Selective Advisors' Arguments

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

7

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

8

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

9

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action...").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District. Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

satisfied.    On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part.  Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014.  The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015.  This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court.  On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession.  The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband).  The Court appointed Marc Pergament as Trustee for the Estate.

11

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..." The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG. Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); *Williams*, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is hereby GRANTED. The Court will hereafter enter a Final Judgment of Foreclosure upon the presentation of updated affidavits.

ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.

_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In Re:                                                Chapter 7

Selective Advisors Group LLC,                         Case No. 815-72153-A736

         Debtor.                                      Affirmation in Support

-----------------------------------------------------------X

Marc A. Pergament, duly affirms under the penalties of perjury as follows:

1.      I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

2.      I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

3.      This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

4.      On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

5.    I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015.  A further request for an adjournment of the § 341(a) meeting was declined.

6.    On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.    My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.    Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.    The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012. A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC. The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment. A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

10.    After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.    As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.    Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.    Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.    I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

3

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15. Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16. The dispute with respect to the Judgment is evident.

17. As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18. NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19. I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

20.    For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered.  A copy of the Stipulation is annexed hereto as Exhibit "D."

21.    I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.    It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.    No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:  Garden City, New York
        August 6, 2015

_____
Marc A. Pergament

5

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x
9197-5904 QUEBEC INC
  Plaintiff,

                -against-


NLG LLC
                Defendant.
-------------------------------------------------------------

Index No. 101875/2012

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,


WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.


NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.


Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

*Raymond Houle*

RAYMOND HOULE, president

## ACKNOWLEGEMENT

State of _____Quebec_____

County of _____D'Arcy McGee_____ ss.:

On the ____3____ day of ____June____ in the year 2014, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*Pierrette Tardif*

Notary Public

*Raymond Houle*

Raymond Houle

## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 3/ 2014.   *Pierrette Tardif*

NOTARY PUBLIC
NAME:

PIERRETTE
TARDIF
# 198036

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

     **Plaintiff,**

Index No.:

**JUDGMENT BY
CONFESSION**

 **against**

NLG, LLC, a Delaware Limited Liability Company,

     **Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

  The undersigned, Attorney at Law of the State of New York, affirms that he is the

attorney of record for the Plaintiff herein and states that the disbursements specified are correct

and true and have been or will necessarily be made or incurred herein and are reasonable in

amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

MARZEC LAW FIRM, PC

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

JUDGMENT entered the **22nd** day of **February**, 2012.

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is

ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, *as taxed by the clerk* amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

Norman Goodman

CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

*Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10875/12

9197-5904 Quebec, Inc.,

                              Plaintiff,

        against

NLG, LLC, A Delaware LIMITED
LIABILITY COMPANY,
                              Defendant.

**AFFIDAVIT OF CONFESSION OF JUDGMENT**

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK

COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against

defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida

33309; Defendant authorizes entry of judgment in New York County, New York, if said

residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for
$1,500.00 or less of any commodities for any use other than a commercial or business use
upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed, subsequent to the time a default occurred in the payment of an
installment thereunder.

Sworn to before me this
1b day of Febru, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

NOTARY PUBLIC

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC,

Defendant.

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

RAYMOND HOULE

Sworn to before me on the 21 day of February, 2012.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                     Index No.

9197-5904 Quebec, Inc.,

                         Plaintiff,

        against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                COMPANY,

                         Defendant.

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**
FEB 2 2 2012
AT    10:25 A M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

EXHIBIT A

EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER    KOSACHUK,    a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of $ *960,968.55* pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

Case 1:22-cv-20485-BB Document 23 Entered 05/05/21 on FLSD Docket 06/744/2022 Page 698 of 799
Case 8-15-72153-reg Doc 11-3 Filed 08/06/15 Entered 08/06/15 14:29:22

Case 12-16438-jkf*SEALED* Doc 211 *SEALED* Filed 03/24/15 Entered 03/24/15 15:32:21 Desc Main Document Page 2 of 2

4.    Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.    This Final Judgment may be recorded as a matter of public record.

6.    This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.    Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

In Re:                                           Chapter 7

Selective Advisors Group LLC,                    Case No. 815-72153-A736

         Debtor.                                 Stipulation of Settlement

-----------------------------------------------------X

        Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code,

        Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the Bankruptcy Code,

        Whereas, the Trustee having raised issues as to whether this filing was a good faith bankruptcy filing by the Debtor,

        Whereas, there is an issue concerning whether the Debtor has any creditors in this bankruptcy case,

        Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having expended substantial time and effort in trying to understand this bankruptcy case and all of the related litigation between the Debtor and NLG LLC,

        It is hereby Stipulated and Agreed as follows:

        1.       This bankruptcy case is dismissed with prejudice.

        2.       The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross & Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by the Debtor in the bankruptcy petition and related State Court lawsuits.

3.      This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.      The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
       July 23, 2015

Weinberg, Gross & Pergament LLP
Attorneys for Trustee

By: _____
Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York 11530
(516) 877-2424

Vlahadamis & Hillen, LLP
Attorneys for Debtor

By: _____
Evans M. Hillen
148 East Montauk Highway, Suite 3
Hampton Bays, New York 11946
(631) 655-4115

"So Ordered"

2

# EXHIBIT "B"

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

EVANS M. HILLEN
evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc

      Plaintiff,        Index No: 101875/2012

                                     **NOTICE OF FILING
SATISFACTION OF
JUDGMENT**

        - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                         Defendant.
-------------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York

Vlahadamis & Hillen, LLP

                        By:    /s/ James F. Vlahadamis
                                    James F. Vlahadamis, Esq.
                                    148 E. Montauk Highway
                                    Suite 3
                                    Hampton Bays, New York 11946

TO:    THE LAW OFFICES OF ARI MOR, ESQ
        347 E 65th Street, Suite 2RW
        New York, New York 2RW
        (347) 850-0578
        ari.mor.esq@gmail.com

        ATTORNEY FOR DEFENDANT
        NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
As assignee of 1997-5001 Quebec, Inc.

                                    Plaintiff,

                        Index No. 101875/2012
                        SATISFACTION OF
                        JUDGMENT

NBG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

                                    Defendant.

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action on February 24, 2012 in

favor of 1997-5001 Quebec, Inc. against NBG, LLC in the amount of $6,000,000.00 plus

interest of $23,00 and costs of $2,000.00 ...

WHEREAS, as docketed in the office of the Clerk of the County of New York on February

24, 2012; and

WHEREAS, said judgment was duly assigned on April 30, 2014 to Selective Advisors

...

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                              Plaintiff,             Index No: 101875/2012
                                          SATISFACTION OF
                                          JUDGMENT

       - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                              Defendant.
-------------------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean Neil Meehan, manager

ACKNOWLEGEMENT

COUNTY OF _Onondaga_

On the 3rd day of September the year 2015 before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 3th 2015

_____
NOTARY PUBLIC
NAME:

AFFIRMATION OF SERVICE

STATE OF NEW YORK   )
                    )   SS.:
COUNTY OF NEW YORK  )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York. On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:     THE LAW OFFICES OF ART MOR, ESQ
        347 E 65th Street, Suite 2RW
        New York, New York 2RW
        (347) 850-0578
        art.mor.esq@gmail.com

        ATTORNEY FOR DEFENDANT
        NLG, LLC, a Delaware Limited Company

        JONATHAN M. BORG BEDELL & FORMAN LLP
        44 Wall Street, 10th Floor
        (646) 219-7551
        jborg@bedell-forman.com

        ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Vlahadamis & Hillen, LLP

                        By:     /s/ James F. Vlahadamis
                                James F. Vlahadamis, Esq.
                                148 E. Montauk Highway
                                Suite 3
                                Hampton Bays, New York 11946

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                Chapter 11
_____/

### SECURED CREDITOR NLG, LLG's
### OBJECTION TO THIRD AMENDED DISCLOSURE STATEMENT AS REVISED

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, objects to the Third Amended Disclosure Statement as Revised [but not docketed] (the "Revised Statement") emailed by counsel for Elizabeth Hazan (the "Debtor") on May 5, 2017, and states as follows:

### BACKGROUND

1.      NLG incorporates by reference its Objection to the Third Amended Disclosure Statement [ECF 431] as if fully rewritten herein.

2.      At the disclosure statement hearing on May 4, 2017, the Court instructed the Debtor to amend the Third Amended Disclosure Statement to include further information about NLG's Final Judgment of Foreclosure (the "Foreclosure Judgment") and NLG's Counterclaim, the Spencer Condo conveyance and the Income of the Debtor.

3.      On May 5, 2017, counsel for the Debtor emailed counsel for NLG a copy of a Revised Statement with a date of May 9, 2017 and attached hereto as Exhibit 1, pages 8 to 43.

### NLG'S FORECLOSURE JUDGMENT AND COUNTERCLAIMS

4.      The Revised Statement again fails to address NLG's Foreclosure Judgment. In fact, it does not even mention the words.  The Debtor just wants to ignore the Foreclosure Judgment and pretend that it simply does not exist.

5.      On pages 18 and 19 herein of the Revised Statement, the Debtor mentions the word "Counterclaims" but fails to provide any meaningful information about NLG's Counterclaims which are wholly based on its final and non-appealable Foreclosure Judgment.

6.      The Court also was concerned whether Selective Advisors ("Selective") had an opportunity to be heard in the underlying state court foreclosure action.  Indeed Selective was heard at numerous hearings before Judge Gordo over the period of approximately one year. In fact, Selective was heard over NLG's objection that it lacked standing, as it had not moved to intervene. Nevertheless, both Judge Gordo and Judge Lopez allowed Selective to make its arguments. The Foreclosure Judgment was finally entered after multiple hearings and filings by Selective wherein Judge Gordo carefully considered Selective's arguments and position.  Judge Gordo rejected all of them as a matter of law leaving both Selective and the Debtor with appellate remedies if they chose to pursue them.

7.      Selective failed to file an appeal of Judge Gordo's Foreclosure Judgment and Debtor Hazan filed an appeal but voluntarily dismissed it.   Accordingly Judge Gordo's Foreclosure Judgment is now the "law of the case."

8.      Attached hereto as Exhibit 2, is Judge Gordo's Order Granting Foreclosure (the "Foreclosure Order") pages 44 to 89 herein.

9.       Contrary to the Debtor and Selective's sanctionable misrepresentations to this Court, NLG's Foreclosure Judgment was never assigned to Selective and Judge Gordo confirmed this in her Foreclosure Order.  [See Exhibit 2 pages 50 to 53 herein].

10.      Selective was represented by attorneys Mark Cohen, Esq. (who was also representing Debtor Hazan simultaneously in the NLG Foreclosure Action as well as in the

Appeal before the Third District[1]) [See Exhibit 2 page 47 herein], Bruce Jacobs, Esq. (who was also representing Debtor Hazan simultaneously in the NLG Foreclosure Action) and Daniel Milian, Esq. in the Foreclosure Action pending before Judge Gordo. These same attorneys also appeared before Judge Lopez representing the Debtor and Selective.

11.     In the Foreclosure Order Judge Gordo dedicated pages 47 to 57 herein addressing Selective's claims, why they were meritless and why she rejected them all. To further support her ruling, Judge Gordo attached Exhibits A and B from pages 59 to 89 herein.

12.     As can be seen from a reading of the Foreclosure Order, Judge Gordo fully adjudicated the Foreclosure as well as the Debtor's and Selective's arguments which are now unassailable law of the case.

### The SPENCER CONDO FRAUDULENT CONVEYANCE AND CONCEALMENT

13.     The Debtor did add language about the fraudulent conveyance of the Spencer Condo to an offshore entity controlled by the Debtor's husband but again fails to explain that it was a fraudulent conveyance, subject to recovery in by the bankruptcy estate and being concealed from this bankruptcy under the guise of being owned by the Debtor's husband.

14.     The Debtor knows full well that the Spencer Condo was conveyed to her husband for zero consideration which is a hallmark of a fraudulent conveyance.

15.     The Board of Managers of the Spencer Condo has also expressed a concern about the Spencer Condo being concealed from this bankruptcy in its Motion to Convert [ECF 384].

16.     The Motion to Convert states in paragraph 1:

Cause exists to convert this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, pursuant to Section 1112(b) of the Bankruptcy Code, or, in the

---

[1] If Selective were really an independent third party with legitimate rights of a creditor of the Debtor and not the husband of the Debtor trying to thwart NLG's Foreclosure Judgment, the same attorney could not represent both parties because of an obvious conflict of interest. See Florida Bar Rule 4-1.7(a).

alternative appoint a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code due to **the fraud and dishonesty of Liza Hazan a/k/a Elizabeth Hazan** (the "**Debtor**" or "**Hazan**")

17.     The Motion to Convert states in paragraph 2:

The need for conversion or the appointment of a Chapter 11 trustee is exemplified by the numerous, material misstatements - detailed herein - in the Debtor's petition and schedules and **the debtor's fraudulent concealment of her interest in a valuable condominium in New York City's Upper East Side, Lenox Hill Neighborhood**. The various misstatements and concealment clearly demonstrate that the Debtor cannot be trusted to faithfully carry out the statutory duties of a Chapter 11 debtor in possession.

18.     Accordingly it is both NLG and the Board of Managers of the Spencer Condo who are concerned about the fraudulent concealment of a $4.25 million asset.

## THE DEBTOR'S INCOME

19.     As for the Debtor's Income, the Court instructed the Debtor to include an addendum with the nature of the contracts generating her income and information about them. The Debtor has failed to include this addendum.

20.     Additionally a review of the Debtor's most recently filed Monthly Operating Report [ECF 437] shows total monthly income of $847. *Id.*

21.     It is impossible to approve the Debtor's Third Amended Disclosure Statement as Revised because it puts forth a plan which is wholly inadequate in disclosure and promotes a plan that is unfeasible and surely poised to fail.

## CONCLUSION

22.     For the reasons explained above, the Court should deny the Third Amended Disclosure Statement as Revised and dismiss or convert this case.

Dated: May 8, 2017

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 8th day of May 2017. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## <u>SERVICE LIST</u>

### <u>*Served via CM/ECF*</u>

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Case 16-10389-AJC Doc 451 Filed 05/08/17 Page 1 of 28

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
#### www.flsb.uscourts.gov

In re:

                                       CASE NO.: 16-10389-AJC

LIZA HAZAN,
        Debtor.                               CHAPTER 11

_____/

## THIRD AMENDED DISCLOSURE STATEMENT as Revised

### Table of Contents

I.     **INTRODUCTION**                                   **page 2**
      A.     **Purpose of This Document**
      B.     **Deadlines for Voting and Objecting;**
                **Date of Plan Confirmation Hearing**
      C.     **Disclaimer**

II.    **BACKGROUND**                                   **page 4**
      A.     **Description and History of the Debtor's Business**
      B.     **Insiders of the Debtor**
      C.     **Management of the Debtor Before and During the Bankruptcy**
      D.     **Events Leading to Chapter 11 Filing**
      E.     **Significant Events During the Bankruptcy Case**
      F.     **Projected Recovery of Avoidable Transfers**
      G.     **Claims Objections**
      H.     **Current and Historical Financial Conditions**

III.   **SUMMARY OF THE PLAN OF REORGANIZATION**         **page 13**
      **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
      A.     **What is the Purpose of the Plan of Reorganization?**
      B.     **Unclassified Claims**
            1.     *Administrative Expenses*
            2.     *Priority Tax Claims*
      C.     **Classes of Claims and Equity Interests**
            1.     *Classes of Secured Claims*
            2.     *Classes of Priority Unsecured Claims*
            3.     *Class[es]of General Unsecured Claims*
            4.     *Class[es] of Equity Interest Holders*
      D.     **Means of Implementing the Plan**
      E.     **Risk Factors**
      F.     **Executory Contracts and Unexpired Leases**
      G.     **Tax Consequences of Plan**

IV.   **CONFIRMATION REQUIREMENTS AND PROCEDURES**     **page 27**
      A.     **Who May Vote or Object**

EXHIBIT 1

    B.    **Votes Necessary to Confirm the Plan**
        1.    *Votes Necessary for a Class to Accept the Plan*
        2.    *Treatment of Non accepting Classes*
    C.    **Liquidation Analysis**
    D.    **Feasibility**
        1.    *Ability to Initially Fund Plan*
        2.    *Ability to Make Future Plan Payments*
               *And Operate Without Further Reorganization*
V.    **EFFECT OF CONFIRMATION OF PLAN**        **page 31**
    A.    **Discharge Of Debtor**
    B.    **Modification of Plan**
    C.    **Final Decree**

**EXHIBITS**

**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

## INTRODUCTION

This is the third amended disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Second Amended Plan of Reorganization (the "Plan") filed by the Debtor on March 27, 2017. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% within two years of the petition date, or by 1/11/18.

    A.    **Purpose of This Document**

This Disclosure Statement describes:

        The Debtor and significant events during the bankruptcy case,
        How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
        Who can vote on or object to the Plan,
        What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
        Why the Proponent believes the Plan is feasible, and how the treatment

**EXHIBIT 1**

of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.**     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

      1.     *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

      2.     *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. Clyde Atkins United States Courthouse 301 North Miami Avenue, Room 150 Miami, FL 33128. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

      3.     *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served pursuant to orders served herewith.

      4.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
Counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

**C.**     **Disclaimer**

***The Court must approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court***

EXHIBIT 1

*has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has historically earned in excess of $350,000 per year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele. The Debtor has several projects under contract that will provide sufficient income to confirm and fund her plan. The Debtor presently has closed contracts that will earn her significant funds (comparable to past earnings) in the next six months.

Debtor works with other major hospitality brands, restaurants, lounges and nightclubs that will earn her millions of dollars of income in the near future.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in the Fisher Island Property would support a refinancing, which could also be used to support funding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group, L.D.C. which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group, L.D.C. has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan. **The New York Condominium is presently listed for sale for $4,250,000 and is being actively marketed and shown to prospective buyers.**

### B.    Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were the Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case have been: The Debtor.

EXHIBIT 1

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: The Debtor.

### D.    Events Leading to Chapter 11 Filing

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtor's equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") now scheduled at $12 million for $5.1 million from NLG, LLC ("NLG") through its then claimed principal Chris Kosachuk. The Debtor has been involved in litigation with NLG and Kosachuk since that time as more fully described below.

The NLG's self titled manager Chris Kosachuk has signed a gift of equity letter stating that Debtor does not have to pay back the amount of $1,275,000. In the closing statement NLG provided a seller contribution in the amount of $1,275,000 to Debtor. Chris Kosachuk has thereafter testified that he transferred ownership of NLG in 2007 to Luxcom, a Russian company (that Debtor has determined does not exist) in 2010. In 2012 Chris Kosachuk testified that NLG is now owned by Meridian Trust Company located in the British Virgin Islands, but he could not recall who he reported to or which island in BVI is Meridian Trust Company located. In 2014 Chris Kosachuk in a sworn deposition alleged that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover.

In October 2008, NLG, through Chris Kosachuk, broke into Debtor's homestead property located on Fisher Island and resided in the Debtor's home for two months. Debtor, who was out of the country, after learning of the incident, filed an emergency motion to vacate the fraudulent Sheriff's deed obtained by NLG. Judge Scola granted Debtor's emergency motion, finding Chris Kosachuk's actions "unconscionable". After Judge Scola ordered Chris Kosachuk and NLG to vacate the premises, Kosachuk refused to vacate Debtor's home and moved for an enlargement of time. Judge Scola denied NLG's motion and forced Chris Kosachuk to vacate the premises. Police reports of the incident document that Chris Kosachuk stole Debtor's furniture and her seven plasma TVS. Judge Scola has ruled as follows:

"The Sheriff's Sale is set aside and vacated and the Sheriff's Deed dated November 19, 2008, for the property is vacated and the Sheriff's Deed is hereby SET ASIDE. The title of Defendant, Elizabeth Hazan, to the following described real property in Miami-Dade County, Florida:
**Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County, Florida.**

is a good title against the claims or purported claims of Plaintiff, NLG, LLC, and all other parties

**EXHIBIT 1**

claiming by through, under or against it and those claims or purported claims are cancelled and the title to the property is forever quieted to Elizabeth Hazan as to NLG, **LLC**.

        B.      NLG, LLC and Chris Kosachuck, and all parties having or claiming to have any rights of possession of the property through NLG, LLC or Chris Kosachuck and all those parties since the filing of the Notice of Lis Pendens in this cause are to vacate the property located at 6913 Valencia Drive, Fisher Island, Florida 33109 ("premises"), on or before noon on December 21, 2008, and deliver the keys to Hazan or her agents, and leave the premises in good condition. The Clerk of this Court is directed to issue a Writ of Possession after December 21, 2008, to the Sheriff of Miami-Dade County, directing him to put Elizabeth Hazan in possession of the aforesaid premises after twenty-four hours notice has been conspicuously posted on said premises all for which let execution issue.

        Chris Kosachuck has stolen Debtor's mail. Kosachuk has stalked the Debtor and harassed her and called her a 'whore and a f_ _ _ ing Jew". Chris Kosachuck has threatened Debtor's lawyers. Chris Kosachuck pushed her New York attorney Darius Marzec's to the ground and has emailed him "Soon you will find yourself square in the cross-hairs and won't be able to hide behind all of your lawyering bullshit". Chris Kosachuk has impersonated Debtor and called her banks to find out personal information. Chris Kosachuck has intimidated Debtor's previous clients, ruined her business and caused her millions of dollars of lost of income. Kosachuk has harassed her clients, has defamed her character and damaged her reputation, defaming her in numerous newspapers, calling her a zero and a loser and other names.

        NLG and Chris Kosachuk have caused the Debtor to suffer emotionally for over a decade and have caused her to lose income and to incur substantial attorneys' fees to defend herself against Chris Kosachuk's nefarious actions.

        Chris Kosachuk has sent Debtor an email stating "your days are numbered" and told her that he would burry her alive.

        Debtor filed numerous police reports and reports with Fisher island security who have physically removed Kosachuk from Debtor's property. Chris Kosachuk has impersonated other residents and used their Fisher Island security code to access Fisher Island and has lied to Fisher Island security to gain access to Fisher Island to come to the Island, intimidate, stalk, harass and physically and emotionally harm the Debtor.

### Chase Bank

        In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington Mutual Bank in the amount of $3,825,000. JP Morgan Chase Bank claims to now own the Washington Mutual Bank promissory note and mortgage signed by Debtor in March 7, 2007.

        Chase filed a foreclosure in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

**EXHIBIT 1**

**NLG**

**NLG FL litigation**

NLG's self titled manager Chris Kosachuk. provided a gift of equity or an "equity contribution" of $1,275,000 stating that Debtor does not have to pay back the amount of $1,275,00 on the closing statement and also had Debtor execute a note and second mortgage on the Fisher Island property for that same amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtor's property. Litigation between the parties has occurred in four states, multiple courts and has continued for over a decade, and continues in this court, costing Debtor millions in legal fees, adversely affecting her health and her career, and putting her in the financial position of having to seek relief in a Chapter 11 reorganization.

Chris Kosachuk asserts that he is the manager and representative of NLG. Kosachuk has testified that he transferred NLG in 2007 to Luxcom, a Russian company. In 2012 Chris Kosachuk testified that NLG is now owned by Meridian Trust Company located in BVI but he could not recall to whom he reported. In 2014 Chris Kosachuk testified in deposition that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover. From prior to the purchase date, more than a decade ago, to today, the parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and is now in this Court.

NLG obtained a judgment on the promissory note signed by Debtor on April 28, 2008. ("The Scola Judgment"). NLG also sued Debtor for foreclosure in 2011. In 2014, Judge Peter Lopez assigned NLG's judgment against Debtor, the Scola Judgment along with all NLG's rights, claims and benefits against Debtor to Selective Advisors Group, LLC. ("Selective")  and also ordered Selective to provide a partial credit in the amount of $2,746,953.34 which amount includes principal and interest through August 31, 2014 (representing the full amount of the Scola judgment) at the 11% interest per annum. Selective did so.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a secured creditor in this case. Selective is listed in Debtor's schedule as her secured creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016.  Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176. This Honorable Court ruled as follows:

> First, NLG is not a scheduled creditor in this case. The Debtor
> scheduled Selective as its secured creditor, relying on the judicial
> assignment in the Proceedings Supplementary Order, pursuant to the
> Scola judgment.  NLG was listed solely as a notice party. The claims
> bar date has passed in this case, and NLG has not filed a claim.  NLG

**EXHIBIT 1**

indeed had sufficient notice of these proceedings to timely file a claim (both NLG's counsel and Kosachuk himself appeared and questioned the Debtor at the 341 meeting), but apparently chose not to. Because NLG has not been scheduled and did not file a claim against this estate, there is an issue as to whether NLG lacks standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005).

…

The Debtor's Schedules indicate a disputed first mortgage on the property for $ 5.2 million dollars to Chase Bank N.A.; a mortgage for $2.0 million dollars to an entity owned by her mother that Debtor and her mother represented may be subordinated and/or satisfied in connection with a plan, and various other miscellaneous liens less than $300,000. The Debtor values the Selective lien at zero, because Selective, as judicial assignee of NLG, is owned by her husband and has filed a Satisfaction of Judgment and a Satisfaction of Mortgage.

…

The Debtor also asserts the Property is necessary to an effective reorganization. She resides on the Property with her husband and has declared the Property to be her homestead. The Debtor is a financial consultant who earns her income from consulting fees in connection with placing high-end retail and restaurant businesses in certain top-tier shopping locations. She entertains prospects at home. She also asserts significant equity in the home sufficient to refinance and/or collateralize the payment of her unsecured debt".

The Debtor has filed with the Court an appraisal (D.E. 82-1) of the Property for $9.5 million, and asserts: (1) that the Debtor is negotiating with Chase regarding various issues; (ii) that NLG's right to foreclose was judicially assigned to Selective, which has satisfied the Hazan mortgage in partial satisfaction of its judgment against NLG; and (iii) that the mortgage held by Debtor's mother's company will be subordinated or satisfied as part a plan. The Court believes the Debtor has presumptively established the prospect of equity in the Property for the benefit of creditors, and further believes the Debtor has established the Property is necessary for an effective reorganization as she uses the Property for business purposes and any plan filed in this case will be premised upon, at least in part, future business income.

**NLG NY Litigation**

EXHIBIT 1

NLG domesticated the judgment obtained against debtor on April 28, 2008 ("the Scola Judgment") in New York in 2014. New York Supreme Court Judge Barbara Jaffee, having recognized the Miami-Dade Judge Peter Lopez Order of Assignment of the NLG's Judgment ("The Scola Judgment") against the Debtor to Selective Advisors Group, LLC ("Selective") and having accepted the Selective's Satisfaction of NLG's Judgment against the Debtor Ordered on November 5, 2014:

> "That the caption of the case, *NLG, LLC vs Elizabeth Hazan,* be changed to substitute Selective Advisors Group, LLC as Plaintiff in place of NLG and that the New York County Clerk is directed to accept for filing the Florida Court Order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further
>
> ORDERED, that the County Clerk is directed to reflect on the docket of this case that the Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further
>
> ORDERED, that the County Clerk is directed to accept for filing the satisfaction of Judgment or other appropriate satisfaction piece; and it is further
>
> ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action under Index No. 108020/08."

NLG also filed a lawsuit in New York alleging Debtor fraudulently transferred the New York condo (described below). On November 2014, Hon. Judge Barbara Jaffee dismissed both claims filed by NLG.

### Spencer Condominium

Debtor bought a condominium in New York City on Fifth Avenue and 62nd Street on December 2005 in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065 ("The New York Condominium").

**Debtor transferred this New York Condominium on August 2011. The Board of Managers alleges that the transfer was made without the consent of Spencer Condominium. The Board of Managers has agreed to the approval of this Disclosure Statement. The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest the transfer has not yet run, but IRS has taken no such position and has not appeared in the case other than the filing of a Proof of Claim. The New York Condominium had no equity at the time of the transfer.**

Debtor's husband controls the corporation, Real Estate Holdings Group LDC which now owns the condominium. The Spencer Condominium Board of Managers has been involved with The Debtor and REHG in litigation since 2008 resulting in a confidential settlement agreement executed in March 2015. Spencer Condominium disputes that the Settlement Agreement is enforceable at this time, but Judge Singh of the New York Supreme Court has recently ordered the parties to comply with the Settlement Agreement; The settlement includes a resolution of the following lawsuits:

> *Board of Managers of Spencer Condominium v. Elizabeth Hazan, et al;*
> No. 111644/09.
> *Real Estate Holding Group, LDC v. Board of Managers of Spencer Condominium et al*;
> No. 154149/2012

EXHIBIT 1

*Real Estate Holdings Group, vs. Spencer Condominium*
No. 159254/2013

All three cases have been dismissed and settled and REHG is presently hiring a real estate broker to list the condominium unit for sale to pay off the settled reduced amounts of the first mortgage in favor of U.S. Bank and to satisfy the second mortgage in favor of Real Time Resolutions (both alleged creditors of this Debtor) as well as to resolve the assessments allegedly due the Board of Managers. The unit will be listed for sale.

On July 21, 2016 Debtor filed the following motions: Motion for Relief from Stay Spencer Condominium, (D.E. 115), Motion to Seal or for in Camera Review (D.E. 116) and Motion for Abstention (D.E. 117). All three Debtor's Motions have been withdrawn without prejudice. On February 24, 2017 Debtor filed three new motions in this case: A Motion to Seal, D.E. 387, A Motion for Abstention D.E. 388, A Motion for Relief from Stay D.E. 389 and An Amended Motion for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 390. Debtor also filed an objection to Spencer's Proof of Claim. On March 1, 2017, This Court granted the agreed Order granting Debtors' Amended Motion for Order for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 392. The Court ruled as follows: "The Debtor's Motion is granted. The automatic Stay is lifted solely for the purpose of permitting the New York Supreme Court to exercise jurisdiction over the litigation between the Debtor and Spencer Condominium and related parties and the stipulation for settlement therein. The 14 day Stay period pursuant to Bankruptcy Rule 4001(a)(3) is waived. No property of the estate will be affected by this Order".

In the case of *Real Estate Holdings Group, vs. Spencer Condominium* No. 159254/2013 on July 27, 2016, Real Estate Holdings Group, L.D.C. ("REHG") Owner of The New York Condominium filed an Order to Show Cause to enforce the confidential Stipulation of settlement executed by the parties on March 2015. On March 2, 2017, Honorable Judge Singh granted Plaintiff REHG's Motion to enforce the Confidential Settlement with Spencer Condominium as the stay has been vacated and ordered the parties to comply with the terms of the settlement within 30 days of the Order. The matter is adjourned to April 25, 2017 (2:30 pm) to monitor compliance.

In the case of *Board of Managers of Spencer Condominium v. Elizabeth Hazan* No. 109083/2008 Spencer has obtained an award in the amount of $109,554.86. This award was never converted to a judgment entered or recorded in any court. However the parties have agreed that this amount of alleged money owed by the Debtor to Spencer prior to her transfer of ownership of the New York condo in 2011 almost 6 years ago shall be paid by REHG and not by the Debtor in the plan. Spencer has no standing to object to the Debtor's plan or object to her confirmation and is bound by their in full force and effect confidential Stipulation of Settlement executed on March 2015.

**The New York Condominium is presently listed for sale for $4,250,000.00 and is being actively marketed and shown to prospective buyers.**

**<u>Reorganization</u>**

EXHIBIT 1

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, or if necessary, refinancing and contributions from her husband's companies.

To date, the Debtor's efforts have focused on negotiating resolutions with several creditors, litigating with two other creditors, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

     E.     **Significant Events During the Bankruptcy Case**

* Date of Order for Relief under Chapter 11 on 1/11/16.

* Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM.

* Deadline for complaint re dischargeability was 4/18/16.

* Professionals approved by the court
Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date.
Joel Aresty was substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126).
David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and was approved by the Court on October 19, 2016.

* Contested claim disallowance proceedings: pending; see claim treatments.

* Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

* Debtor has managed her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor to reorganize allowing Debtor to propose a plan for payment of creditors.

* **The Debtor obtained a Default against NLG, LLC in Adversary Case No. 16-1439-AJC on March 17, 2017.**

     **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC**

On August 21, 2016 Selective filed an Adv. Case No. 16-1439-AJC D.E.1. On 10/21/2016 Debtor moved to amend the Complaint to add Debtor, Liza Hazan as Plaintiff. On October 20, 2016. D.E.8. NLG filed their answer and their counterclaims. D.E5 and D.E 6.
On 11/08/16 Plaintiffs Selective and Hazan filed their motions to dismiss Count I and Count II of NLG's counterclaims and Motion for Judgment on the pleading D.E. 11 and D.E. 12. On December 6, 2016 Plaintiffs Selective and Hazan filed their Motion for leave to file Amended

**EXHIBIT 1**

Complaint against NLG to add a count under Florida Statute § 65.08 and Florida Statute § 65.011for quieting title and a count for damages. D.E. 32. On December 19, 2016 This Court ordered the parties to submit Orders on Plaintiffs' motions to dismiss NLG's counterclaims and Plaintiffs' motions for Judgment on the Pleadings. On December 23, 2016 Debtor Hazan amended her Complaint to add additional Counts D.E. 40. On 12/30/2016 This Court entered an Order granting Plaintiff's Motion to amend and allowing Second Amended Complaint. On January 3, 2017 Plaintiffs filed their Second Motion to Amend Complaint to add additional Tort claims, D.E 47 and D.E 48, adding additional torts.

On 01/13/17 NLG's counsel, Michael Friedman, filed his expedited Motion to Withdraw as attorney of record for NLG citing irreconcilable differences D.E 54. On 01/23/17 this Court granted Michael Friedman's Motion to Withdraw, D.E 61, and also granted Plaintiffs Selective and Hazan's Second Motion to amend Complaint. D.E 62.

On 02/22/17 NLG's third counsel filed his notice of appearance - James Miller, D.E.75. On 03/01/17 NLG's third counsel filed his expedited motion to withdraw citing once again irreconcilable differences and also filed his motion to allow NLG to extend time to meet the Court's deadlines. D.E. 76. On 03/03/2017 Plaintiffs Selective and Hazan filed their Motion for Default against NLG for failing to answer Plaintiffs' Third Amended Complaint. D.E. 85. On 03/10/17 this court denied NLG's motion to extend time. D.E. 94.

On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG and denied Plaintiffs' motion for judgment on pleadings as moot because of the subsequent filings and amendments. This Court granted a Default in favor of Plaintiffs and against Defendant NLG and ruled as follows:

> The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court set deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100.

**NLG moved to vacate the default on March 24, 2017 (D.E. 104). The Court denied the Motion on April 20, 2017 (D.E. 112).**

**Present counsel for NLG (its fourth) filed an Expedited Motion to Withdraw on May 4, 2017. This follows an expedited Motion to Withdraw filed by prior counsel, James Miller, on March 1, 2017 which followed an Expedited Motion to Withdraw filed by the Genovese firm on January 12, 2017. NLG's initial counsel moved to withdraw in the main case on September 12, 2016.**

**Valencia Estates Homeowners' Association**

The Debtor has entered into a Stipulation for Settlement with Valencia Estates Homeowners' Association, Inc. The Debtor has agreed to approval of the stipulation by this Court and the Association has agreed to support the Debtor's reorganization.

F. **Projected Recovery of Avoidable Transfers**

EXHIBIT 1

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute 726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 which has a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonable equivalent value, which facts are not relevant to the plan in this case.

**The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest a transfer is ten years and has not yet run. IRS has not challenged any transfers in this case and has not appeared in the case other than to file of a Proof of Claim. Debtor transferred the New York Condominium on August 2011. The Debtor contends that the New York Condominium had no equity at the time of the transfer.**

### G. Claims Objections

The Debtor has not completed claim objections but the current plan reflects the objections contemplated.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to this statement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting is not a regular monthly income which would lend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

### I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

EXHIBIT 1

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

      1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

      2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

## C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

EXHIBIT 1

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim. |
| | Joel Aresty | Mr. Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement (submitted but not yet entered) followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. |
| | David W. Langley | Paid as awarded or agreed. |
| | US Trustee | paid in full at confirmation |

**Priority Claims**

EXHIBIT 1

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | **IRS** <br><br> **Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Payments every six months to include interest on any unpaid claim amounts after the effective date of the plan at 3% |

**Secured Claims**

**6913 Valencia Drive Property Fisher Island Florida**

| | | | | |
|---|---|---|---|---|
| 2 | **Chase Bank** | | yes | **First Secured Mortgage –** <br> The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim. Chase was scheduled as disputed, contingent and unliquidated. <br><br> Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 with Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues. If the State Court enters a final order finding and determining the |
| | | | no | |

EXHIBIT 1

| | | | | |
|---|---|---|---|---|
| | | | | validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final. |
| | | | | Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan. See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). |
| | | | | **Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.** |
| 3 | **Selective Advisors Group, LLC** | yes | yes | Selective Advisors Group, LLC ("<u>Selective</u>") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainst The Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008, |
| | | | | Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August |

EXHIBIT 1

20, 2014 and August 21, 2014. per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a scheduled creditor in this case. Selective is listed in Debtor's schedule as her creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016. Selective, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. **On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.**

On August 21, 2016, Selective sued NLG in this bankruptcy Court **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January 3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend their Complaint to add a count seeking to Quiet Title to the property, and a number of tort claims, which motion was granted on January 23, 2016.

**On March 20, 2017 The Court awarded a default in favor of Plaintiffs Selective and Hazan and against Defendant NLG, LLC. (D.E. 100.)** The Court granted a Default in favor of Plaintiffs and against

EXHIBIT 1

| | | | | |
|---|---|---|---|---|
| | | | | Defendant NLG, LLC and ruled as follows: "The Court also finds that the withdrawal and retention of multiple counsel by the Defendant does not constitute "cause" or "excusable neglect" warranting an extension of time to comply with filing requirements. The Court sets deadlines in this case for the filing of pleadings, specifically the filing of a responsive pleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause exists to extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default…"D.E 100 |
| 4 | **6913 Valencia LLC** | Yes | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLC's Mortgage on her Homestead property claim. |
| 5 | **Valencia Estates Community Assn, Inc claim #10** | | yes<br><br><br><br><br>no | **Valencia Estates Community Association's ("Valencia")** Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1. Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2. Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00 as per the Stipulation.<br><br>3. Debtor has paid the 2016 special assessment in the amount of $6250.00 as per the Stipulation.<br><br>4. The Parties agreed that Claim Number 10 shall be paid in the amount |

EXHIBIT 1

| | | | | of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.<br><br>**Valencia Estates Community Association, Inc withdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan.**<br><br>**Claim settled.**<br><br>Agreed Order Approving Stipulation of Settlement of Claim 10 filed by Valencia Estates Homeowners' Association entered on 11/18/16 D.E 302. |
|---|---|---|---|---|
| 6 | **Fisher Island Community Ass'n, Inc Claim #18** | | yes<br><br>no | Late filed Proof Of Claim in the amount of $216,278.97 on 10/20/16 – **<u>Disputed by Debtor and Disallowed by this Court.</u>**<br><br>The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been denied on November 16, 2016. |

EXHIBIT 1

|  |  |  |  | Claimant 3343 West Commercial Blvd. 100 (Fisher Island Community Association).<br><br>Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16<br><br>**Claim Disallowed Claim by this Court. No payment through Plan.** |
|---|---|---|---|---|
| 7 | **Miami-Dade Water and Sewer claim #7** | no | yes | **Claim #7  $1502.54 to be paid on the Effective Date of The Plan** |
| 8 | **IRS claim #3** | no | yes | $393,985.17 - Secured claim shall be paid over ten years with interest payments every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6  paid in full**. |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim 8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br><br>Alleged Creditor has agreed to complete stay relief in settlement of this |

EXHIBIT 1

| | | | | claim in this case and has agreed to support Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163) **Claim settled.** |
|---|---|---|---|---|

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | no | yes | The Debtor disputes the Claim #14 filed by The Board of Managers Spencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York. The Debtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance fees owed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065. This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"), the owner of the New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlement executed in March 2015 ("Settlement"). The vast |

EXHIBIT 1

| | | | | remaining portion of the Spencer Condo Board of Managers' claim is to be paid by the owner of the unit, REHG, per the Settlement executed in March 2015 by the parties.<br><br>**On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowing the New York Court to exercise jurisdiction over and enforce the confidential Settlement Agreement.**<br><br>**On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce The Confidential Stipulation entered in March 2015 between the parties.**<br><br>**No payment through the plan. Claim settled.** |

### Vehicle

### 2007 Mercedes-Benz S550

| Class # | Description | Insider | Impairment | Treatment |
|---------|-------------|---------|------------|-----------|
| 12 | **Southeast Financial LLC** | | yes | Stipulation Of Settlement DE 98 approved by this Court DE 101. |

EXHIBIT 1

| | | | | Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLC's Secured Lien is guaranteed by the Debtor. |
|---|---|---|---|---|
| | | no | | |
| | | | | Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current. |
| | | | | **Claim settled.** |

### Convenience Class Undisputed Unsecured Small Claims

### Paid in full over 18 months beginning month 6 after confirmation with equal

### payments every 6 months

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 13 | IRS Claim #3 | no | X | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | X | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | X | 461.00 |
| | FPL Claim #11 | no | X | 2906.93 |
| | Mount Sinai | no | X | 3,240.00 |
| | Mount Sinai | no | X | 295.91 |
| | HSBC Bank USA NA | no | X | 1070.66 |
| | Sterling Emerg Svc | no | X | 2445.30 |
| | Bank of America NA | no | X | 3301.00 |
| | Wells Fargo Claim #12 | no | X | 323.24 |
| | Real Time Resolutions Claim #5 | no | X | 12,000.00 |

EXHIBIT 1

| | Total | | | 28,259.04 |
|---|---|---|---|---|
| | | | | |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims will be paid within two years of petition date**

**1/11/18 payments beginning month 6 after confirmation and every 6 months**

| Class # | Description | Insider? (Yes or No) | Impaired | treatment |
|---|---|---|---|---|
| **14** | **JMB Urban 900 Dev. claim #4*** | **no** | **X** | $664,380.47 will be paid 41% or 275,000.00 per settlement 18 months from the petition date. **Adversary proceedings 16-01188-AJC closed on 7/22/16 and Case settled 16-01188-AJC.** |
| | **S&S Collections Simon & Sigalos claim #13** | **no** | **X** | $21,242 **Claim settled** for 41% per stipulation to be paid 18 months from petition date. **Claim settled** |
| | **Newman Ferrara LLP claim #15** | **no** | **X** | $24,818.44 Legal bill Legal work for Corporation other than the Debtor. **The Claim bar date has passed. Unallowed claim.** |
| | | | | |

*claim 4 subject of adversary case 16-01188 AJC settlement at 41% of claim

** insider claim will subordinate and not be paid until all other allowed claims but reserves right to vote for the plan

**Disputed Unsecured Claims**

**not paid until and unless allowed**

EXHIBIT 1

**and then paid within 5 years after confirmation**

| 15 | **Cross & Simon Claim #1** | no | **X** | $11,023.83<br>Legal Bill for corporation other than Debtor.<br><br>**Unallowed claim.**<br><br>**No payment through Plan** |
|----|----------------------------|-----|-------|--------------------|

| | | | | |
|---|---|---|---|---|
| | | | | |
| 16 | **Fuerst Ittleman David & Joseph, P.L.**<br><br>**Claim #16** | **no** | **X** | Disputed Proof of Claim filed after Claim Bar Date. Fuerst Ittleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. Fuerst Ittleman David & Joseph, P.L. have agreed that they are not a creditor of this estate.<br><br>**No payment through plan.**<br>**Unallowed Claim.** |

**Unsecured Scheduled Disputed and No Claim Filed**

**Therefore Disallowed**

| Allied Collection | 318 |
|-------------------|-----|
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |

EXHIBIT 1

| | |
|---|---|
| Verizon | 1758 |
| US Bank NA | Unknown |
| | The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |
| | US Bank did not file a proof of claim and will not be paid through the Plan. **Claim settled.** |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and **NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**. |
| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
| | NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor. |
| | **On May 13, 2016 NLG, LLC moved for stay relief in this court (D.E. 66).** Selective, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG, LLC. **On August 23, 2016 the bankruptcy court entered its decision denying NLG, LLC's motion for relief from the automatic stay. ECF 176** |
| | **On 03/17/17 this Court granted in part Plaintiff's Motion for Default against Defendant NLG, LLC in the Adversary, Case No. 16-1439 Selective Advisors Group, LLC and Liza Hazan AKA Elizabeth Hazan Liza Hazan AKA Elizabeth Hazan V. Defendant NLG, LLC in the Adversary. See D.E. 100. This Court granted a Default in** |

EXHIBIT 1

| | favor of Plaintiffs Selective Advisors Group, LLC and Debtor Liza Hazan AKA Elizabeth Hazan and against Defendant NLG, LLC |
|---|---|
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 17 | Equity Individual interest holder | no | retained |

D.  **Means of Implementing the Plan**

  1.  *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has always earned at least $350,000 per year and in 2014 a personal income of $420,000.

Debtor has executed in the last quarter of 2016 contracts that have earned her income comparable to past years, to be paid in installments, and additional payments throughout the construction phase, and the last remaining portion upon opening of the clients for business.

Debtor has contracts to expand a nationwide and worldwide very high end retail operator that has already over 50 existing stores and is planning to open over 100 new locations in the next five years.

Debtor has also exclusive contracts with high end restaurants and is responsible for their expansion nationwide. Debtor is in charge of finding new locations and is also responsible of their construction, architectural plans etc all the way through their opening of their new locations.

Debtor's husband controls a company called Real Estate Holdings Group, L.D.C. ("REHG") which owns a New York condominium on Fifth Avenue and 62nd street New York Apt 1 A NYC NY 10065 appraised at $4,500,000.00 that has in excess of $2,500,000.00 in equity. The company, REHG, has agreed to refinance and also sell the condominium to fund the plan in order to assure successful reorganization and completion of the plan.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

EXHIBIT 1

The equity in Fisher Island would also support a refinancing, which could also be used support funding a plan if necessary.

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|--------------|----------------------|----------|--------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E. **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases. If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case. This Plan bears the risk that the Debtor's income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to make payments under this Plan. However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE. CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F. **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. There are none. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

EXHIBIT 1

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**_The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is_** no later than thirty (30) days after the date of the order confirming this Plan. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.     **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income tax consequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims and Interests who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities have been obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes or Class 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NON RESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL**

EXHIBIT 1

**BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

## A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

EXHIBIT 1

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 for government units.***

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

• holders of claims and equity interests that have been disallowed by an order of the Court;
• holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
• holders of claims or equity interests in unimpaired classes;
• holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
• holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
• administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

### 4. *Who Can Vote in More Than One Class*

EXHIBIT 1

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.     **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court can not confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non accepting classes, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### *2. Treatment of Non accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a*** "***cramdown*" ***confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.     **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

D.     **Feasibility**

EXHIBIT 1

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibits C and D.

### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit D.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.   **EFFECT OF CONFIRMATION OF PLAN**

### A.   **DISCHARGE OF DEBTOR**

Discharge. In a case in which the debtor is an individual—

**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—

**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

**(ii)** modification of the plan under section 1127 is not practicable; and

**(iii)** subparagraph (C) permits the court to discharge; and

**(C)**(*) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—

**(i)** section 522(q)(1) may be applicable to the debtor; and

**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

**EXHIBIT 1**

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon the satisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)       Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)       The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)       The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)       During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured and priority creditors, as contemplated under the Plan.

(e)       Upon the satisfaction of all payments required under the Plan to creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to creditors.

(f)       Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

## B.       Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

EXHIBIT 1

C.      **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted May 9, 2017:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954—356-0450
By: /s/ *David W. Langley*

Attorney for the Plan Proponent

EXHIBIT 1

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02


NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

## ORDER GRANTING FORECLOSURE

      THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second

Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil

Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,

ORDERS AND ADJUDGES as follows:

**EXHIBIT 2**

The history of the litigation between the parties was set out in detail when the matter went up on appeal to the Third District. The facts and procedural history recited in the opinion constitute the law of the case. In its opinion, the Third District stated as follows:

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

2

**EXHIBIT 2**

*NLG, LLC v. Hazan,* 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### *Status of the Pleadings After Mandate*

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage.  NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015.  On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing.  He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment.  On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing.  On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend.  Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District.  In fact, it would be error to do otherwise.  *See Bank of Am., N.A. v. Lukas,* 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n,* 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

**EXHIBIT 2**

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

4

EXHIBIT 2

property which was then the subject of a mortgage foreclosure action and accompanying lis pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention. In *Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation."

Carlisle, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any interest in the litigation. The Wherefore Clause merely requests intervention. But if Selective is trying to collect on the Judgment by Confession, it is undisputed that the judgment has been satisfied. Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to assert its rights, but to obstruct the foreclosure of his wife's property. To allow intervention by Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction. As the Third District recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if Selective were allowed to intervene, they would take "the procedural posture of the case as it stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the then-existing claims in the lawsuit." The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

EXHIBIT 2

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id*.

### *Substitution*

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

**EXHIBIT 2**

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

### Selective Advisors' Arguments

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

7

EXHIBIT 2

amended complaint.  In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment.  In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG.  The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time.  The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment.  The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment.  The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013.  That was the judgment which was appealed to the Third District.  The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014.  It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

**EXHIBIT 2**

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

9

**EXHIBIT 2**

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action...").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District. Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

**EXHIBIT 2**

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

11

**EXHIBIT 2**

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate…" The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

EXHIBIT 2

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

**EXHIBIT 2**

Houle was acting for both Quebec and NLG.  Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); *Williams*, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

EXHIBIT 2

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is hereby GRANTED. The Court will hereafter enter a Final Judgment of Foreclosure upon the presentation of updated affidavits.

ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.


_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

**EXHIBIT 2**

# EXHIBIT "A"

EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In Re:                                               Chapter 7

Selective Advisors Group LLC,                        Case No. 815-72153-A736

       Debtor.                                       <u>Affirmation in Support</u>

---------------------------------------------------------------X

       Marc A. Pergament, duly affirms under the penalties of perjury as follows:

       1.     I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

       2.     I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

       3.     This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice:  (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

       4.     On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

**EXHIBIT 2**

5.     I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015.  A further request for an adjournment of the § 341(a) meeting was declined.

6.     On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.     My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.     Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.     The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012.  A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC.  The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment.  A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

**EXHIBIT 2**

10. After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11. As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12. Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13. Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14. I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

3

**EXHIBIT 2**

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted.  A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.    Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.    The dispute with respect to the Judgment is evident.

17.    As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.    NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.    I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC.  I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import.  Mr. Meehan was unable to provide any explanation.

4

EXHIBIT 2

20.    For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered.  A copy of the Stipulation is annexed hereto as Exhibit "D."

21.    I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.    It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.    No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:   Garden City, New York
         August 6, 2015

_____
Marc A. Pergament

5

**EXHIBIT 2**

# EXHIBIT A

EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

-----------------------------------------------------------------x

9197-5904 QUEBEC INC
  Plaintiff,

        -against-

NLG LLC

               Defendant.

-----------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec Inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,

WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec Inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of  $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.   .

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.

Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

EXHIBIT 2

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

_Raymond Houle_

RAYMOND HOULE, president


## ACKNOWLEGEMENT

Province
State of _____ Quebec _____

ss.:

County of _____ D'Arcy McGee _____

On the _3_ day of _June_ in the year 2014, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_Pierrette Tardif_

Notary Public

_Raymond Houle_

Raymond Houle


## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3, 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 3/ 2014.

_Pierrette Tardif_

NOTARY PUBLIC
NAME:



PIERRETTE
TARDIF
# 198836

**EXHIBIT 2**

# EXHIBIT B

EXHIBIT 2

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

**JUDGMENT BY
CONFESSION**

**against**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

**MARZEC LAW FIRM, PC**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

EXHIBIT 2

JUDGMENT entered the _22nd_ day of _February_, 2012.

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is

ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of NLG, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk     amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

Norman Goodman

CLERK

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187/12

9197-5904 Quebec, Inc.,

                                    Plaintiff,

            against

NLG, LLC, A Delaware Limited
Liability Company,
                                    Defendant.

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

**F I L E D**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**          ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against

defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida

33309; Defendant authorizes entry of judgment in New York County, New York, if said

residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for
$1,500.00 or less of any commodities for any use other than a commercial or business use
upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed, subsequent to the time a default occurred in the payment of an
installment thereunder.

Sworn to before me this
1b day of Febny, 2012

.................................................
9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

NOTARY PUBLIC

**EXHIBIT A**

**EXHIBIT 2**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC,

Defendant.

AFFIDAVIT OF
RAYMOND HOULE
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK          ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies.  All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant.  The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

EXHIBIT 2

*Raymond Houle* (signature)

RAYMOND HOULE

Sworn to before me on the _21_ day of _February_, 20_12_.

_Notary Public_

Darius A. Marzac
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 _12_

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

EXHIBIT 2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                        Index No.

9197-5904 Quebec, Inc.,

                                    **Plaintiff,**

        against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                COMPANY,

                                    **Defendant.**

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**
FEB 2 2 2012
AT  10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200



DOCKETED BY

EXHIBIT A                              EXHIBIT 2

EXHIBIT C

EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER    KOSACHUK,    a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |
| | : |

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of $ 910,918.55 pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

**EXHIBIT 2**

4.    Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.    This Final Judgment may be recorded as a matter of public record.

6.    This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.    Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

**EXHIBIT 2**

# EXHIBIT D

EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                                        Chapter 7

Selective Advisors Group LLC,                                 Case No. 815-72153-A736

      Debtor.                     <u>Stipulation of Settlement</u>

--------------------------------------------------------X

      Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code,

      Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the

Bankruptcy Code,

      Whereas, the Trustee having raised issues as to whether this filing was a good

faith bankruptcy filing by the Debtor,

      Whereas, there is an issue concerning whether the Debtor has any creditors in this

bankruptcy case,

      Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having

expended substantial time and effort in trying to understand this bankruptcy case and all of the

related litigation between the Debtor and NLG LLC,

      It is hereby Stipulated and Agreed as follows:

      1.      This bankruptcy case is dismissed with prejudice.

      2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross &

Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by

the Debtor in the bankruptcy petition and related State Court lawsuits.

**EXHIBIT 2**

3.      This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.      The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
       July 23, 2015

                              Weinberg, Gross & Pergament LLP
                              Attorneys for Trustee

By:                           _____
                              Marc A. Pergament
                              400 Garden City Plaza, Suite 403
                              Garden City, New York  11530
                              (516) 877-2424

                              Vlahadamis & Hillen, LLP
                              Attorneys for Debtor

By:                           _____
                              Evans M. Hillen
                              148 East Montauk Highway, Suite 3
                              Hampton Bays, New York  11946
                              (631) 655-4115

"So Ordered"

**EXHIBIT 2**

# EXHIBIT "B"

EXHIBIT 2

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

EVANS M. HILLEN
evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

**EXHIBIT 2**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec Inc
    Plaintiff,          Index No: 101875/2012

                                              **NOTICE OF FILING
                                              SATISFACTION OF
                                              JUDGMENT**

             - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                            Defendant.
-------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York


Vlahadamis & Hillen, LLP


                                By:    _/s/ James F. Vlahadamis_
                                      James F. Vlahadamis, Esq.
                                      148 E. Montauk Highway
                                      Suite 3
                                      Hampton Bays, New York 11946


TO:    THE LAW OFFICES OF ARI MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0578
       ari.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company


**EXHIBIT 2**

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

EXHIBIT 2



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
As assignee of 919-5th Avenue, Inc.

Plaintiff,                    Index No. 101375/2012
                              SATISFACTION OF
                              JUDGMENT

NBG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

Defendant.

SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above-entitled action on February 28, 2012 in favor of 919-5th Avenue, Inc. against NBG, LLC in the amount of $3,000,000.00 plus costs of $25,011 and costs $3,000,223.00 judgment.

WHEREAS, said judgment was docketed in the office of the Clerk of the County of New York on February 28, 2012; and

WHEREAS, said judgment was transferred by Selective Advisors...

EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                         Plaintiff,          Index No: 101875/2012

                                              SATISFACTION OF
                                              JUDGMENT

      - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                        Defendant.
------------------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

EXHIBIT 2

It is certified that there is no outstanding execution with the Sheriff or Marshal within the
State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been
assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is
hereby authorized and directed to make an entry of said satisfaction on the docket of said
judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the
day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

_Sean Neil Meehan_, manager

ACKNOWLEGEMENT

COUNTY OF _Quincaster_

On the 3rd day of _September_ in the year 2015 before me, Sean Neil Meehan, the
undersigned, personally appeared personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacities and that by his/her/their signature(s) on the instrument, the

EXHIBIT 2

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 5, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 5th 2015

_____
NOTARY PUBLIC
NAME:

**EXHIBIT 2**

AFFIRMATION OF SERVICE


STATE OF NEW YORK      )
                       )      SS.:
COUNTY OF NEW YORK  )


I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York. On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:


TO:      THE LAW OFFICES OF ART MOR, ESQ
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0578
         art.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

         JONATHAN M. BORG BEDELL & FORMAN LLP
         44 Wall Street, 10th Floor
         (646) 219-7551
         jborg@bedell-forman.com

         ATTTORNEY FOR ADR MIAMI LLC ("ADRM")



Vlahadamis & Hillen, LLP

                              By:     /s/ James F. Vlahadamis
                                      James F. Vlahadamis, Esq.
                                      148 E. Montauk Highway
                                      Suite 3
                                      Hampton Bays, New York 11946


EXHIBIT 2