# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                            Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,        Chapter 11

      Debtor,

_____/

## AMENDED NOTICE OF FILING AND ASSERTING CHARGING LIEN
## BY GENOVESE JOBLOVE & BATTISTA, P.A. FOR ATTORNEYS' FEES AND COSTS

**NOTICE IS GIVEN** that Genovese Joblove & Battista, P.A. ("GJB") asserts an attorney's charging lien on any recovery or judgment rendered in connection with this bankruptcy case and adversary proceeding number 16-01439-AJC, and on all money due from any and all counterclaim defendants in the adversary proceeding on such judgment, and any and all assets, property, money or proceeds retained, received or recovered by or to be distributed to NLG, LLC ("NLG"), or any of its assigns, in connection with the adversary proceeding or this bankruptcy case. This charging lien claims attorney's fees and costs in the amount of $42,270.93, plus interest at 4.75% per year from June 20, 2017, pursuant to a Final Judgment entered by the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on such date.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of foregoing was served to all parties

registered to receive electronic service through CM/ECF on the <u>29</u>th day of June, 2017.

GENOVESE JOBLOVE & BATTISTA, P.A.
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Tel.: (305) 349-2300
Fax.: (305) 349-2310

By: <u>/s/ Michael Friedman</u>
    Michael A. Friedman, Esq. (FBN 0071828)
    mfriedman@gjb-law.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                    CASE NO.: 16-10389 AJC

LIZA HAZAN,
      Debtor.                          CHAPTER 11
_____/

**DEBTOR'S MOTION FOR EXTENSION OF EXCLUSIVITY PERIOD**

**[Hearing Requested Prior to July 30, 2017]**

Debtor, Liza Hazan, moves for an extension of the exclusivity period to file and confirm her Chapter 11 plan of reorganization, and in support thereof states:

1. On August 16, 2016, Debtor filed an Amended Motion for Extension of Time re Exclusivity to amend plan and disclosure statement. The exclusivity period was continued to November 7, 2016. (ECF 159).

2. Debtor filed an Amended Disclosure Statement (ECF 190), and an Amended Plan (ECF 189) on September 6, 2016.

3. A disclosure hearing was scheduled for November 16, 2016.

4. The Debtor resolved all objections to the Disclosure Statement with the exception of that raised by NLG, LLC.

5. By Order dated December 2, 2016, the Court set for hearing the objection to Disclosure Statement of NLG, LLC for December 7, 2016 (D.E. 242).

6. At the hearing on December 7, 2016, the Court indicated that the issue of NLG's standing must be resolved before the Court will consider other matters.  A subsequent hearing on

standing took place on December 21, 2016, and proposed orders were originally due January 20, 2017.

7.  On prior motion [D.E. 364] the exclusivity period was extended through April 30, 2017.

8.  A further hearing on disclosure was set for May 4, 2017.

9.  On April 10, 2017, Debtor filed another Motion for Extension of Exclusivity Period [D.E. 428] and a hearing was held on April 26, 2017.

10. The Order Granting Motion for Extension of Exclusivity Period [D.E. 441] was entered on May 2, 2017 and the exclusivity period was extending through July 30, 2017.

11. The Court heard the trial on the pending Adversary Proceeding, Case No. 16-1439, on July 13, 2017. Proposed Orders are due in 30 days and confirmation must be delayed until some period after the Court rules on the adversary.

12. Debtor respectfully requests that this court extend the exclusivity period for Debtor to October 30, 2017 in order to allow the Debtor to proceed to confirmation on the filed Plan.

WHEREFORE, Debtor respectfully request an extension of the exclusivity period to October 30, 2017, and such other relief as the Court deems proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served electronically and by mail to all interested parties on attached service list on this 19th day of July, 2017.

LAW OFFICES OF DAVID W. LANGLEY
*Attorney for Debtor*

8551 W. Sunrise Blvd., Suite 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com

By:     /s/ David W. Langley
        David W. Langley, Esq.
        Florida Bar Number: 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Astrid Gabbe on behalf of NLG, LLC
astridgabbe@gmail.com

Juan Ramirez, Esq., Jr., Diaz, Reus, Targ, LLP,
jramirez@diazreus.com, jr@adrmiami.com

**ORDERED in the Southern District of Florida on** _August 3, 2017_

Laurel Myerson Isicoff, Chief Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION
## www.flsb.uscourts.gov

In re:

LIZA HAZAN,
    Debtor.

_____ /

CASE NO.: 16-10389-AJC

CHAPTER 11

## ORDER GRANTING DEBTOR'S MOTION FOR EXTENSION OF EXCLUSIVITY PERIOD [D.E. 507]

**THIS MATTER** having come before the Court on July 27, 2017 at 09:30 AM on Debtor's Motion for Extension of Exclusivity Period [D.E. 507] and the court having reviewed the file and otherwise being fully advised, it is:

**ORDERED:**

The Debtor's Motion is **GRANTED.** The exclusivity period for the Debtor to file a plan is extended to September 11, 2017 for the reasons stated on the record.

### ###

**Submitted by:**
    DAVID W. LANGLEY
    *Attorney for Debtor*
    8551 W. Sunrise Boulevard, Suite 303
    Plantation, Florida 33322
    Telephone:    954-356-0450
    Fax:        954-356-0451
    E-mail: dave@flalawyer.com
    Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on December 6, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:                                     Case No.16-10389-BKC-AJC
                                           Chapter 11

Liza Hazan

_____Debtor_____/

**ORDER (I) SETTING HEARING TO CONSIDER APPROVAL OF
DISCLOSURE STATEMENT; (II) SETTING DEADLINE FOR
FILING OBJECTIONS TO DISCLOSURE STATEMENT; AND
(III) DIRECTING PLAN PROPONENT TO SERVE NOTICE**

DISCLOSURE HEARING:

_____January 11, 2018_____ at _____11:00 a.m.

LOCATION:
United States Bankruptcy Court
301 North Miami Ave, Courtroom 7
Miami, FLorida 33128

DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN:

_____December 12, 2017___ (30 days before Disclosure Hearing)

DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT:

_____January 4, 2018_____ (seven days before Disclosure Hearing)

PLAN PROPONENT:

Liza Hazan

c/o David Langley

8551 W Sunrise Blvd #303; Fort Lauderdale, FL 33322

A Disclosure Statement and Plan were filed pursuant to 11 U.S.C. §§1121 and 1125 on _November 15, 2017_ by the plan proponent named above. This order sets a hearing to consider approval of the disclosure statement ("disclosure hearing"), and sets forth the deadlines and requirements relating to the disclosure statement provided in the Bankruptcy Code, Bankruptcy Rules and Local Rules of this court.

The disclosure statement is on file with the court, and may be accessed electronically or you may obtain a copy at your expense from the clerk or view a copy at the public terminals in the clerk's office. Copies also may be obtained from the plan proponent by written request, pursuant to paragraph 3(B) of this order.

## 1. HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT

The court has set a hearing to consider approval of the disclosure statement for the date and time indicated above as "DISCLOSURE HEARING". The disclosure hearing may be continued to a future date by notice given in open court at the disclosure hearing. At the disclosure hearing, the court will consider the disclosure statement, and any modifications or objections to it.

## 2. DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT

The last day for filing and serving objections to the disclosure statement is indicated above as "DEADLINE FOR OBJECTIONS TO DISCLOSURE STATEMENT". Objections to the disclosure statement shall be filed with the court and served on (i) the debtor; (ii) the

plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or examiner that has been appointed; and (v) the U.S. Trustee. Pursuant to Local Rule 3017-1(A), any objecting party shall confer with the plan proponent's counsel at least three business days before the disclosure hearing in an effort to resolve any objections to the disclosure statement.

### 3. PLAN PROPONENT TO SERVE NOTICE

**(A)** On or before the date indicated above as "DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN", the Plan Proponent shall serve a copy of this order on (i) all creditors; (ii) all equity security holders; (iii) all persons who have requested notice; and (iv) all other interested parties, pursuant to Bankruptcy Rules 2002, and 3017 (including those entities as described in Bankruptcy Rule 3017(f)), and Local Rule 3017-1(B) and including those on a Master Service List required to be filed pursuant to Local Rule 2002-1(H). The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

**(B)** On or before the date indicated above as "DEADLINE FOR SERVICE OF ORDER, DISCLOSURE STATEMENT AND PLAN", the plan proponent shall serve a copy of the disclosure statement and plan, together with this order, on (i) the debtor; (ii) all committees that have been appointed; (iii) any chapter 11 trustee or examiner that has been appointed; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the U.S. Trustee; and (vii) any party in interest who requests in writing a copy of the disclosure statement and plan, pursuant to Bankruptcy Rule 3017(a), and Local Rule 3017-1(B).

The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

If the plan proponent does not timely comply with any of the requirements of this order, the court may impose sanctions at the disclosure hearing without further notice, including dismissal, conversion of the case to chapter 7, or the striking of the plan.  The court will also consider dismissal or conversion at the disclosure hearing at the request of any party that has requested such relief in a timely filed objection or on the court's own motion.

<div align="center">

**###**

</div>

**Copies:**
Attorney, David Langley is directed to serve a conformed copy of this order on all interested parties immediately upon receipt thereof and file a certificate of service. Local Rule 2002-1(F).

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                      Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                             Chapter 11
_____/

**SECURED CREDITOR NLG, LLG'S**
**OBJECTION TO FIFTH AMENDED DISCLOSURE STATEMENT**

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, objects to the Fifth

Amended Disclosure Statement [ECF 562] (the "Fifth Amended Disclosure Statement") filed by

Elizabeth Hazan (the "Debtor") on November 15, 2017, and states as follows:

**BACKGROUND**

1.      The Debtor filed her Chapter 11 Petition on January 11, 2016 (the "Petition

Date"), the day before the Miami-Dade County Clerk was set to auction the Debtor's Property

pursuant to NLG's Foreclosure Judgment.  Twenty three months later, as of November 22, 2017,

the Debtor had only **$375.43 in cash** on hand per her monthly operating report. [ECF 564].

Although the Debtor claims in the Fifth Amended Disclosure Statement that she earns in excess

of $350,000 per year, [ECF 562 p. 4], she earned only a fraction of that (about $125,000) through

the calendar year of 2016 and even less in 2017. *Id.* Incredibly the Debtor claims projected

income of $810,000 in the financial projections attached to the Fifth Amended Disclosure

Statement. [*See* ECF 562-4].

2.      The Debtor's primary asset is her residence located at 6913 Valencia Drive,

Fisher Island, Florida (the "Property"). The Debtor has filed an appraisal in this case valuing the

Property at $9.5 million, and has scheduled claims secured by the Property, including NLG's

claim, totaling over $12 million. [ECF 20, 81-1].

1

3.     The Debtor and her husband's solely-owned company, Selective Advisors Group, LLC ("Selective"), have filed an adversary proceeding challenging NLG's secured claim (the "NLG Adversary"),[1] but each and every issue raised in the NLG Adversary was decided in NLG's favor pre-petition in Miami-Dade Circuit Court, *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 2011-42770-CA-01 (02) (the "Foreclosure Action"). The Foreclosure Action resulted in NLG obtaining a Final Judgment of Foreclosure with respect to the Property in the amount of $4,876,654.29 (the "Foreclosure Judgment") on December 2, 2015.  [*See* ECF 66-1].  This Court entered judgment in favor of the Debtor and Selective in the adversary (a judgment which directly conflicts with the Foreclosure Judgment) and NLG has filed an appeal.  The Debtor fails to mention that NLG has filed an appeal even though the appeal was filed before the Fifth Amended Disclosure Statement.

4.     The Fifth Amended Disclosure Statement fails to mention the Foreclosure Action, the Foreclosure Judgment, the pending appeal of the NLG Adversary, or a host of other issues material to this case. Indeed, the Fifth Amended Disclosure Statement fails to remedy any of the defects that resulted in the Court denying all of the Debtor's previous disclosure statements. The Court should deny the Debtor's Fifth Amended Disclosure Statement for all the reasons it denied the Debtor's prior disclosure statements,[2] and for the reasons discussed in detail below.

## ARGUMENT

5.     Section 1125(b) of the Bankruptcy Code requires a disclosure statement to provide "adequate information," that is, "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of debtor's books and records … that would enable such a hypothetical investor of the relevant

---

[1] *Hazan, et al. v. NLG, LLC*, Adv. No. 16-1439-AJC.
[2]  NLG incorporates herein the objections to the Debtor's initial disclosure and amended statements. *See* [ECFs 136, 138, 139, 140, 143, 278, 279, 281, 282, 283, 284, 431, 547 and 569].

class to make an informed judgment about the plan." 11 U.S.C. § 1125(b). Mere allegations or opinions unsupported by factual information do not meet the "adequate information" standard of Section 1125. *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981). The Debtor's Third Amended Disclosure Statement falls well short of this standard and must be denied.

## Inadequate Disclosures Concerning
## the Debtor's Income and other Sources of Plan Funding

6.       First, the Fifth Amended Disclosure Statement fails to provide any meaningful information about the income with which the Debtor intends to fund her plan. *See In re Newkirk*, 2012 WL 830552, *3 (Bankr. E.D.N.C. March 9, 2012) (disclosure statement must provide adequate information of the debtor's ability to fund and maintain a proposed plan). The Debtor states that she intends to fund a plan through (a) her income as a "business consultant specializing in identifying locations for high-end restaurants and retailers round the world," and (b) refinancing the Property and refinancing the New York Condo. [ECF 562 pp. 29-30]. These claims are dubious at best.  Specifically the Debtor has no ability to refinance either property because of her insufficient income, bad credit and debts to creditors already secured by those properties.  Even her phantom $810,000 per year of income as outlined in the Fifth Amended Disclosure Statement is insufficient to support the multi-million dollar refinancing needed to pay off her creditors.

7.       With respect to her consulting income, the Debtor claims variously and inconsistently in the Fifth Amended Disclosure Statement that she either earns "in excess of $350,000 per year," that she "has always earned at least $400,000/year," and that she "has always earned at least $350,000 per year" [ECF 562 pp. 4, 29]. Without any explanation, the financial projections attached to the Fifth Amended Disclosure Statement project $810,000 in annual income [ECF 562-1].  Meanwhile, as noted above, the Debtor earned roughly $125,000

through the calendar year of 2016 [ECF 374] and approximately $70,000 in 2017. The Debtor makes no effort at all to explain this inconsistency between the claims concerning her income in the Fifth Amended Disclosure Statement and the reality that she has earned only a fraction of that amount in 2016 or 2017. Further, the Debtor has provided no records, such as tax returns, evidencing her alleged high-income earning potential. The Debtor needs to demonstrate her significant earning capacity has some basis in reality if she proposes to fund a plan with it.

8.      The disparity between the Fifth Amended Disclosure Statement and the income disclosed in the Debtor's monthly operating reports is particularly troubling considering that according to the Debtor, she intends to begin contributing between $50,000 and $120,000 per month—consistently, every month—to plan payments starting February 2018 (*i.e.*, less than 2 months from now). That projection is totally detached from reality in light of the Debtor's monthly operating reports, but if the Debtor intends to fund her plan using this income, she needs to disclose, for example, what clients the Debtor currently has that she believes will yield income of $50,000 to $120,000 per month starting less than 2 months from now.

9.      Additionally, the Debtor has indicated that Real Estate Holdings Group LDC, an entity controlled by the Debtor's husband, has committed to contribute funds from the proceeds of refinancing of a condominium in New York to Debtor's estate in order to fund a plan. [ECF 562 p. 4]. Yet the Debtor offers no real information whatsoever concerning this source of plan funding: how much has the Debtor's husband (through an entity he controls) "committed" to contributing? What is the nature of that commitment—a note? A mortgage? What is the value of the condo that is being refinanced? Is the refinancing already in place or is this source of funding contingent on the ability to find a lender? Is there a financing commitment for a lender already in

place? None of this necessary information is included in the Fifth Amended Disclosure Statement.

**Inadequate Disclosures Concerning the Litigation Regarding the Property**

10. The Fifth Amended Disclosure Statement should be denied because it fails to provide adequate information concerning the NLG Adversary, the NLG Appeal and other actions that will impact the equity in the Property and the Debtor's ability to use the Property to confirm a plan. *See In re Fierman,* 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982) (a disclosure statement must provide a factual basis to support any valuations of real property and must disclose the existence of any litigation and explain the possible effect these lawsuits may have on the feasibility of a plan).

11. As noted above, the Fifth Amended Disclosure Statement does not discuss the appeal of the NLG Adversary at all nor their potential impact on the Property. Yet, when NLG prevails in the appeal, then according to the Debtor's own appraisal, the Property will be significantly underwater.[3] This is critical, among other reasons, because the Debtor proposes to fund a plan, if necessary, by refinancing and using the equity from the Property. Simply put, there is *no* equity in the Property and the Debtor has no ability to refinance anything. The Fifth Amended Disclosure Statement mentions none of this.

12. The Fifth Amended Disclosure Statement does not discuss JP Morgan Chase's pending foreclosure action which this Court granted stay relief to JP Morgan to pursue a final judgment of foreclosure [ECF 315] and to NLG to defend itself in that foreclosure action. If JP Morgan is successful in its foreclosure action then there is no equity at all in the Property and

---

[3] The Debtor claims throughout the Fifth Amended Disclosure Statement that the Property is worth $12 million even though her own appraisal of record in this bankruptcy case values the Property at $9.5 million. The Debtor fails to acknowledge or explain this discrepancy in the Fifth Amended Disclosure Statement.

such a judgment would decimate the entire proposed plan of reorganization. The Fifth Amended Disclosure Statement mentions none of this.

**Inadequate Disclosures Concerning NLG's Secured Claim**

13.     The Fifth Amended Disclosure Statement also fails to discuss the treatment of NLG's $4,876,654.29 secured claim (claim number 17-1) which is based on the Foreclosure Judgment. The Fifth Amended Disclosure Statement needs to explain how the Debtor will pay will pay NLG the full amount due under the non-appealable Foreclosure Judgment upon adjudication of the NLG Appeal.   The Fifth Amended Disclosure Statement completely ignores NLG's Foreclosure Judgment and the NLG Appeal.

14.     Section 1123(b)(5) of the Bankruptcy Code states that an individual chapter 11 debtor may not modify a claim secured by a security interest in real property that is the debtor's principal residence (which is precisely what this Debtor is trying to do to both NLG and JP Morgan). In turn, section 1129(a)(1) provides that for a plan to be confirmed, it must comply with the provisions of the Bankruptcy Code.

15.     Because the Plan on its face violates section 1123(b)(5), it cannot be confirmed under section 1129(a)(1). On this basis alone, the Court should deny approval of the Disclosure Statement. In I*n re Dakota Rail, Inc*., 104 B.R. 138 (Bankr. D. Minn. 1989), for instance, the bankruptcy court denied approval of the disclosure statement, reasoning that "[w]here the disclosure statement on its face relates to a plan that cannot be confirmed . . . the court [has] an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan … Allowing a facially non-confirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation.

6

16.     It should also be noted that, even if NLG does not have standing to object to the Plan (and NLG does have standing), the Court would have an independent duty to determine that the Plan complies with all of the provisions of the Bankruptcy Code in order for the Plan to be confirmed. *See*, 11 U.S.C. §1129(a)(1); *Ala. Dep't of Econ. & Cmty. Affairs v. Ball Healthcare–Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1229 (11th Cir.2011) ("Importantly, the Bankruptcy Code envisions a bankruptcy court exercising an independent duty to ensure that the strictures of §1129(b) are met with regard to impaired dissenting classes of creditors in a Chapter 11 cram down.") Because the Plan as drafted cannot be confirmed, the Court should deny approval of the Fifth Amended Disclosure Statement.

## The Debtor's Undisclosed Asset and Transfer

17.     Prior to August 15, 2011, the Debtor owned a residential condo unit located at 1East 62nd Street No. 1A, New York, New York (the "New York Condo"). On August 15, 2011, the Debtor transferred the New York Condo out of her name and into the name of an individual named Raymond Houle for no consideration (the "New York Condo Transfer").[4] *See* Deed [ECF 290 pages 15 – 23] Mr. Houle eventually transferred the condo to Real Estate Holding Group, LDC, an entity controlled by the Debtor's husband, Sean Meehan. *See* Deed and Affidavit by Mr. Meehan [ECF 290 pages 24 – 37], respectively.

18.     The New York Condo Transfer occurred just a little over four years prior to the Petition Date. Although that is outside the four-year statute of limitations under Chapter 726 of the Florida Statutes, it is well within the six-year statute of limitations period applicable to

---

[4] Mr. Houle is the same individual that obtained a fraudulent judgment against NLG in New York state court as part of the Debtor's efforts to frustrate NLG's attempts to exercise its lien rights in certain property owned by the Debtor. *See* NLG's Counterclaim [ECF 5] in *Selective Advisors Group, LLC v. NLG, LLC*, Adv. No. 16-1439-AJC

fraudulent transfers under the law of New York, where the transfer occurred.[5] Also, the Debtor owes substantial tax liability to the IRS (about $374,526) that was incurred before the New York Condo Transfer. *See* [ECF 21 p. 13]. In addition to being actionable under New York law, the New York Condo Transfer may also be avoidable under Florida law and Section 544(b) under the holding of *In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016), which holds that a trustee may stand in the shoes of the IRS to avoid a transfer that occurred outside of the four-year look back period under Florida law.

19.     Although the Debtor claims in the Fifth Amended Disclosure Statement that she has completed her investigation into potentially avoidable transfers, the New York Condo Transfer is not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [ECF 190 p. 8 and ECFs 21, 90].

### Other Inadequate Disclosures

20.     The exhibits that the Debtor has provided in support of the Fifth Amended Disclosure Statement reflect a variety of defects which must be explained before the document can be considered for approval:

- The Debtor had about **$375 in cash** on hand at the end of November 2017, but her Disclosure Statement states that she will have $65,000 on hand on the effective date of the Plan. What will be the source of those funds? Curiously every disclosure statement claimed the debtor will have $65,000 on hand at confirmation, yet the maximum amount of cash that the debtor every had in her DIP account was $29,000 on July 8, 2016.

---

[5] *See In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 229-30 (Bankr. S.D.N.Y. 2011) (citing NYCPLR § 213).

- The Debtor is on her third bankruptcy attorney since she filed this case 23 months ago in January 2016, and has accumulated well over $200,000 in unpaid attorney's fees according to the Fifth Amended Disclosure Statement—far more than the $65,000 that the Debtor claims she will have on hand on the effective date. [ECF 562-2]. How does she propose to pay those administrative claims as required to confirm a plan?

- The Debtor lists as assets two "potential" claims against NLG and other defendants of an "unknown" value. *Id.* What is the nature of those claims, how will the Debtor prosecute them if at all, and why can she offer no estimate of their potential value?

- The Debtor's plan refuses to pay various creditors who filed proofs of claim without any ruling from the Court on those same claims. [See Claims 1-1, 3-1, 14-1 and 17-1].

- The Debtor discloses a $400,000 account receivable without explanation. What is the nature of that receivable and what is the Debtor doing to collect it? The Debtor disclosed this same $400,000 account receivable in her original plan filed on July 11, 2016 [ECF 103 p. 22] and 14 months later has still not collected a penny of this receivable. It is obvious that this $400,000 account receivable is pure fantasy and a blatant misrepresentation to this Court and all the creditors.

- The Debtor proposes to make payments under the plan in a "range" of monthly to every six months to "even less frequently." How much less frequently? Further, this statement cannot be reconciled with the projections in the Fifth Amended Disclosure Statement indicating that the Debtor will make plan payments of about $60,000 every month, as opposed to every quarter or six months as the Debtor claims elsewhere in the Fifth Amended Disclosure Statement.

- The Debtor fails to address the $62,500 due to the Valencia Estates Homeowner's Association which must be paid before a plan can be confirmed. Pursuant to an Order of this Court [ECF 302], a plan can't be confirmed if the HOA is not current which indeed the Valencia Estates HOA is not.

### This Disclosure Statement should be Denied and this Case should be Dismissed or Converted because the Debtor's Plan is Patently Unconfirmable

21.     For the reasons explained in NLG's objections to the Debtor's prior disclosure statements as well as all the other objections raised to the previous disclosure statements by other creditors, the Fifth Disclosure Statement should be denied because it was not filed in good faith and is patently unconfirmable. *See* [ECF 140 pp. 9-12]. The inadequacies of the Fifth Amended Disclosure Statement demonstrate that the Debtor plainly has no realistic ability or intent to propose a confirmable plan in this bankruptcy case.

22.     A plan accompanying a disclosure statement which clearly does not meet the requirements of 11 U.S.C. § 1129 should not proceed to certain defeat at confirmation. Instead, courts may consider confirmation issues at the hearing on approval of the disclosure statement if "the plan is so fatally and obviously flawed that confirmation is impossible." *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) (citation omitted); *see also In re Am. Capital Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) (bankruptcy court may address confirmability at disclosure statement stage if it is patently obvious that the plan described by the disclosure statement cannot be confirmed.); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly fruitless venture is a waste of the time of the Court and the parties.").

23.     A plan is not confirmable if it is not feasible, which requires the Court to consider "whether the things to be done under the plan can be done as a practical matter under the facts."

*In re M & S Assocs., Ltd.*, 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992) (citations omitted). Additionally, in considering feasibility, "a bankruptcy court must evaluate the possible impact of the debtor's ongoing civil litigation," and a "plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *Am. Capital Equip.*, 688 F.3d at 156 (citations omitted).

24.     Here, the plan is infeasible and unconfirmable on its face: it is premised on a regular stream of consecutive $50,000 to $120,000 monthly payments totaling over $800,000 per year, yet the Debtor has disclosed that she is *incapable* of making consistent monthly payments because her income is irregular. Further, the Debtor has earned only a fraction (about $70,000) through all of 2017 of the roughly $800,000 that she purportedly intends to contribute towards the plan on annual basis. Very simply, the Debtor's plan is premised on a high six-figure income that the Debtor has admitted (through her filings in this case) does not actually exist.

25.     Further, the Debtor's plan hinges on her success in the NLG Appeal (where NLG already has a Foreclosure Judgment) and the JP Morgan Foreclosure: if she loses the JP Morgan foreclosure then there is no equity in the Property according to the Debtor's own appraisal. That means that there will be no equity for the Debtor to borrow against to fund the plan, and no basis to deny NLG relief from the automatic stay to continue its foreclosure sale under the Foreclosure Judgment. The Debtor's plan, premised entirely on her success in pending litigation, is not confirmable, and so the Fifth Amended Disclosure Statement should be denied.

26.     NLG incorporates its pending Motion to Dismiss or Convert [ECF 462] and its pending Motion to Appoint Chapter 11 Trustee [ECF 481] as if fully rewritten herein and does hereby move the Court to dismiss or convert or appoint Chapter 11 Trustee.

**The Disclosure Statement and Plan were not submitted in good faith as required by
11 U.S.C. § 1129(a)(3).**

27.     In order to be confirmed, a Chapter 11 reorganization plan must be submitted in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). "While the Bankruptcy Code does not define the term, courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir.1995).

28.     Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied. *Kane v. Johns-Manville Corp*., 843 F.2d 636, 649 (2nd Cir.1988); *In re Sun Country Development, Inc*., 764 F.2d 406, 408 (5th Cir.1985); *In re Mulberry Phosphates, Inc.*, 149 B.R. 702, 707 (Bankr.M.D.Fla.1993).

29.     The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan, *Block Shim*, 939 F.2d at 292; *Madison Hotel*, 749 F.2d at 425, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start. Sun Country, 764 F.2d at 408.

30.     To be in good faith, a plan must have "a true purpose and fact-based hope of either `preserving [a] going concern' or `maximizing property available to satisfy creditors.'" *S. Beach Sec.,* 606 F.3d at 376 (*quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999)). To find that a plan does not comply with § 1129(a)(3) generally requires "misconduct in bankruptcy proceedings, such as fraudulent misrepresentation or serious nondisclosures of material facts to the court." *In re* *342 River Vill. Assocs.,* 161 B.R. 127, 140 (Bankr.E.D.Pa.1993), *aff'd,* 181 B.R. 795 (E.D.Pa.1995).

31.     The Debtor has committed just this type of misconduct in this bankruptcy proceeding by misrepresenting numerous facts to this Court in regards to NLG's Foreclosure Judgment and is impermissibly seeking that this Court vacate NLG's Foreclosure Judgment as detailed herein.

32.     The Debtor has concealed her second most significant asset, that being the New York Condo with an approximate value of $3.4 million.  [*See* ECF 384].  This asset concealment alone is reason enough to deny the Fifth Amended Disclosure Statement.

33.     Clearly the Fifth Amended Disclosure Statement and Plan were not submitted in good faith as they seek to ignore NLG's Foreclosure Judgment (which this Court has no authority or jurisdiction to do), modify a security interest in the debtor's principal residence (which is specifically prohibited by the Bankruptcy Code), not pay back any creditor what they are actually owed and conceal a multi-million dollar apartment beneficially owned by the Debtor.

34.     The Debtor is seeking to defraud this Court the same way that she has defrauded other courts over the years of litigation with her creditors.

**The Fifth Amended Disclosure Statement and Plan were submitted in bad faith**

35.     Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors." Id. *SE Property Holdings, LLC v. Seaside Engineering & Surveying, Inc*. (citing *In re Seaside Engineering & Surveying, Inc.*), No. 14-11590 (11th Cir. March 12, 2015)  (citing *In re Albany Partners, Ltd*., 749 F.2d 670, 674 (11th Cir .1984)).

36.     This bankruptcy was filed the day before the foreclosure sale of the Debtor's Property pursuant to NLG's Foreclosure Judgment.  It is very clear that the sole purpose of this

13

bankruptcy has been to delay and frustrate secured creditor NLG's efforts to foreclosure on its collateral; the Property.

37.     None of the filed disclosure statements and plans put forth even a remotely feasible plan of reorganization nor were they proposed in good faith as required by the Code. Quite frankly they were all proposed in bad faith.  The income to fund the plan is suspect at best and more accurately a blatant misrepresentation to the Court as detailed herein. The financial projections are hogwash and not supported by any document in the record.  This entire bankruptcy and the related adversary manifest the extreme bad faith of the Debtor and her counsel.

## CONCLUSION

38.     For the reasons explained above, the Court should deny the Fifth Amended Disclosure Statement and dismiss or convert or appoint a Chapter 11 Trustee in this case.

Dated:  December 8, 2017

Respectfully submitted,

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 8th day of December, 2017.  I also certify

that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF

system to the parties on the attached service list.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

***Served via CM/ECF***

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

16

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com, rross@stearnsweaver.com; larrazola@stearnsweaver.com;
cgraver@stearnsweaver.com

# UNITED STATES BANKRUPTCY COURT
### Southern District of Florida

Case No. 16-10389 AJC
Chapter 11 Proceeding

**In re:**

Liza Hazan
*Debtor(s)*                                /

### MIAMI DADE COUNTY TAX COLLECTOR'S NOTICE OF WITHDRAWAL OF PROOF OF CLAIM

Marcus Saiz de la Mora, as Tax Collector of Miami-Dade County, Florida, hereby gives notice of the withdrawal of the Miami-Dade County Tax Collector's proof of claim number  Claim 6-1   filed on April 05, 2016 and requests that said claim in the amount of $57,649.47 be disregarded. Property taxes for the aforementioned claim have been paid in full.

Respectfully submitted this 14th day of December 2017.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via U.S. mail or e-mail this day to:
**David W. Langley, Esq.** dave@flalawyer.com
**Office of the United States Trustee** ustpregion21.at.ecf@usdoj.gov

Marcus Saiz de la Mora, Tax Collector
Miami-Dade County, FL
Finance Department
Tax Collection Division-Bankruptcy Unit
200 NW 2 Avenue, Suite 430
Miami, FL 33128
**305-375-5707, Fax No. 305-375-4601**

By: _____/S/_____
         Alexis R. Gonzalez
         Paralegal Collection Specialist
         E-mail: alexisg@miami-dade.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                     CASE NO.:   16-10389 AJC

         Debtor.                                CHAPTER 11
_____/

### OBJECTION TO CLAIM OF REAL TIME RESOLUTIONS, INC CLAIM # 8

**IMPORTANT NOTICE TO CREDITOR:**
**THIS IS AN OBJECTION TO YOUR CLAIM**

　　　　This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf.   Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.

　　　　If you disagree with the objection or the recommended treatment, you must file a written response WITHIN THIRTY (30) DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned [attorney][trustee] OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.

　　　　If your entire claim is objected to and this is a Chapter 11 case, you will <u>not</u> have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.

　　　　The written response must contain the case name and case number, and must be filed with the Clerk of the United States Bankruptcy Court.

　　　Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1, the Debtor objects to the following claims filed in this case:

| Claim No. | Name of Claimant | Amount of Claim | Basis for Objection and Recommended Disposition |
|---|---|---|---|
| 8 | REAL TIME RESOLUTIONS, INC. | $322,846.72 | This claim was listed by the Debtor as contingent, unliquidated and disputed. The Statute of limitations has run. Ten years from the last alleged default in 2007. Home Equity line of credit with different lender in the amount of $187,500.00 secured lien in a New York apartment located at 1 East 62nd Street apt 1 A NYC NY 10065 that is not owned by the Debtor since august |

2011.The claim should be
disallowed in its entirety.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District

Court for the Southern District of Florida, and I am in compliance with the additional

qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the

above document was filed electronically and served all parties of interest as specified on the

attached service list on this 15th day of December, 2017.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:    954-356-0450
Facsimile:    954-356-0451
E-mail: dave@flalawyer.com
By: _____/s/_David W. Langley_____
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley PragerPopowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Astrid Gabbe on behalf of Defendant/Counter-Claimant NLG, LLC;astridgabbe@gmail.com

Juan Ramirez, Jr., Esquire on behalf of NLG, LLC; jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,

*16-10389-AJC Notice will not be electronically mailed to:*

Chris Kosachuk
c/o NLG

854 Pheasant Run Rd
West Chester, PA 19382

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                          CASE NO.:   16-10389 AJC

      Debtor.                                          CHAPTER 11
_____/

### OBJECTION TO CLAIM OF REAL TIME RESOLUTIONS, INC CLAIM # 5

**IMPORTANT NOTICE TO CREDITOR:**
**THIS IS AN OBJECTION TO YOUR CLAIM**

      **This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf.  Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.**

      **If you disagree with the objection or the recommended treatment, you must file a written response WITHIN THIRTY (30) DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned [attorney][trustee] OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.**

      **If your entire claim is objected to and this is a Chapter 11 case, you will <u>not</u> have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.**

      **The written response must contain the case name and case number,and must be filed with the Clerk of the United States Bankruptcy Court.**

      Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1, the Debtor objects to the following claims filed in this case:

| Claim No. | Name of Claimant | Amount of Claim | Basis for Objection and Recommended Disposition |
|---|---|---|---|
| 5 | REAL TIME RESOLUTIONS, INC. | $188,416.67 | This claim was listed by the Debtor as contingent, unliquidated and disputed. Although Debtor settled this claim for $12,000 after misrepresentations made by alleged creditor Real Time Resolutions that it had a valid claim this is not a a valid claim as the Statute of limitations has run. Lawsuit brought against Debtor in 2008 was dismissed in 2010 in |

Miami-Dade Court. Case
08-47664 CA32. Claim #5 is not a
valid claim. The claim # 5 should
be disallowed in its entirety.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District

Court for the Southern District of Florida, and I am in compliance with the additional

qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the

above document was filed electronically and served all parties of interest as specified on the

attached service list on this 15th day of December, 2017.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:    954-356-0450
Facsimile:    954-356-0451
E-mail: dave@flalawyer.com
By:    */s/ David W. Langley*
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.

rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley PragerPopowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Astrid Gabbe on behalf of Defendant/Counter-Claimant NLG, LLC;astridgabbe@gmail.com

Juan Ramirez, Jr., Esquire on behalf of NLG, LLC; jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,

_16-10389-AJC Notice will not be electronically mailed to:_

Chris Kosachuk
c/o NLG
854 Pheasant Run Rd
West Chester, PA 19382

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                    CASE NO.:  16-10389 AJC

    Debtor.                                    CHAPTER 11

_____/

### OBJECTION TO CLAIM OF CROSS & SIMON, LLC

**IMPORTANT NOTICE TO CREDITOR:
THIS IS AN OBJECTION TO YOUR CLAIM**

**This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf.  Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.**

**If you disagree with the objection or the recommended treatment, you must file a written response WITHIN THIRTY (30) DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned [attorney][trustee] OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.**

**If your entire claim is objected to and this is a Chapter 11 case, you will <u>not</u> have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.**

**The written response must contain the case name and case number,and must be filed with the Clerk of the United States Bankruptcy Court.**

Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1, the Debtor objects to the following claims filed in this case:

| Claim No. | Name of Claimant | Amount of Claim | Basis for Objection and Recommended Disposition |
|---|---|---|---|
| 1 | CROSS & SIMON, LLC | $11,023.83 | This Claim was filed 1/21/16. The claim is allegedly against a company and not the Debtor. The claim was listed by the Debtor as contingent, unliquidated and disputed. The claim should be disallowed in its entirety. |

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District

Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served all parties of interest as specified on the attached service list on this 15th day of December, 2017.

> DAVID W. LANGLEY
> *Attorney for Debtor-in-Possession*
> 8551 W. Sunrise Blvd., Ste 303
> Plantation, Florida 33322
> Telephone:   954-356-0450
> Facsimile:   954-356-0451
> E-mail: dave@flalawyer.com
> By: ____/s/ David W. Langley_____
>      David W. Langley, Esq.
>      Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Astrid Gabbe on behalf of Defendant/Counter-Claimant NLG, LLC;astridgabbe@gmail.com

Juan Ramirez, Jr., Esquire on behalf of NLG, LLC; jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,

_16-10389-AJC Notice will not be electronically mailed to:_

Chris Kosachuk
c/o NLG
854 Pheasant Run Rd
West Chester, PA 19382

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                    CASE NO.:   16-10389 AJC

        Debtor.                              CHAPTER 11

_____/

## OBJECTION TO CLAIM OF NEWMAN FERRARA, LLP

**IMPORTANT NOTICE TO CREDITOR:**
**THIS IS AN OBJECTION TO YOUR CLAIM**

       **This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf.   Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.**

       **If you disagree with the objection or the recommended treatment, you must file a written response WITHIN THIRTY (30) DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned [attorney][trustee] OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.**

       **If your entire claim is objected to and this is a Chapter 11 case, you will <u>not</u> have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.**

       **The written response must contain the case name and case number,and must be filed with the Clerk of the United States Bankruptcy Court.**

       Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1, the Debtor objects to the following claims filed in this case:

| Claim No. | Name of Claimant | Amount of Claim | Basis for Objection and Recommended Disposition |
|---|---|---|---|
| 15 | NEWMAN FERRARA, LLP | $24,818.44 | The Claim was not timely filed. The Bar Date was 5/17/16, the Claim was filed 6/22/16. This claim was listed by the Debtor as contingent, unliquidated and disputed. The claim should be disallowed in its entirety. |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served all parties of interest as specified on the attached service list on this 15th day of December, 2017.

DAVID W. LANGLEY
*Attorney for Debtor-in-Possession*
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com
By: ____/s/ David W. Langley_____
        David W. Langley, Esq.
        Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Alberto H Orizondo on behalf of NLG, LLC
aorizondo@aglawpa.com, bfernandez@aglawpa.com

Ashley PragerPopowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Astrid Gabbe on behalf of Defendant/Counter-Claimant NLG, LLC;astridgabbe@gmail.com

Juan Ramirez, Jr., Esquire on behalf of NLG, LLC; jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,

*16-10389-AJC Notice will not be electronically mailed to:*

Chris Kosachuk
c/o NLG
854 Pheasant Run Rd
West Chester, PA 19382

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

IN RE:

                                                    Case No. 16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN,                              Chapter 11

        Debtor.
_____/

### **NOTICE OF FILING**

        Creditor, Selective Advisors Group, LLC, gives notice of filing the attached Exhibit B to

*Notice of Filing and Supplemental Response to NLG's Motion for Relief from Automatic Stay*

[ECF No. 81].

### **CERTIFICATE OF SERVICE**

        **I HEREBY CERTIFY** that on this 19th day of December, 2017, I electronically filed the
foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing
document is being served this day on all counsel of record or pro se parties identified on the
attached Service List in the manner specified, either via transmission of Notices of Electronic
Filing generated by CM/ECF or in some other authorized manner for those counsel or parties
who are not authorized to receive electronically Notices of Filing.

                                Respectfully submitted,

                                **MARSHALL SOCARRAS GRANT, P.L.**
                                *Attorneys for Creditor,*
                                *Selective Advisors Group, LLC*
                                197 South Federal Highway, Suite 200
                                Boca Raton, Florida  33432
                                Telephone No. 561.361.1000
                                Facsimile No. 561.672.7581
                                Email: jgrant@msglaw.com

                                By:  /s/ Joe M. Grant
                                        JOE M. GRANT
                                        Florida Bar No. 137758

## SERVICE LIST

**16-10389-AJC Notice will be electronically mailed to:**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.;
gaaronson@aspalaw.com
Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.; aresty@mac.com
Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com
Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com, nsocorro@ecclegal.com; bankruptcy@ecclegal.com;
bankruptcy.ecc@ecf.courtdrive.com
Adam A Diaz on behalf of Creditor U.S. Bank National Association; adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com
Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC; bkfl@albertellilaw.com
Michael A Friedman on behalf of Creditor NLG, LLC; mfriedman@gjb-law.com, gjbecf@gjb-
law.com; jsardina@gjb-law.com
Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com
Astrid Gabbe on behalf of Creditor NLG, LLC; astridgabbe@gmail.com
Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.;
robert.gusrae@gmail.com
David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com, ngomez@dhaberlaw.com; rcasamayor@dhaberlaw.com;
dbhpaservice@dhaberlaw.com
David W. Langley on behalf of Debtor Liza Hazan; dave@flalawyer.com,
emily@flalawyer.com; monica@flalawyer.com
Tamara D McKeown on behalf of Defendant Liza Hazan; tdmckeown@mckeownpa.com
James B Miller on behalf of Counter-Claimant NLG, LLCl; bkcmiami@gmail.com
Office of the US Trustee; USTPRegion21.MM.ECF@usdoj.gov
Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.;
Ashley.popowitz@mccalla.com, flbkecf@mccalla.com
Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com
Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com
Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com



IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP,          )
LLC, AS ASSIGNEE OF 9197-5904      )
QUEBEC, INC.,                      )
                                   )
          Plaintiff,               )
                                   )
vs.                                )
                                   )
NLG, LLC, a Delaware limited       )
liability company,                 )
                                   )
          Defendant.               )
_____    )


          DATE TAKEN:        November 10th, 2015
          TIME:              2:01 p.m. to 2:27 p.m.
          PLACE:             73 West Flagler Street
                             Miami, Florida
          BEFORE:            JUDGE LOPEZ


     This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:

              Dawn Jobe, Court Reporter
   Taylor, Jonovic, White, Gendron, Kircher-Echarte
      2455 East Sunrise Boulevard, Suite 1200
           Fort Lauderdale, Florida 33304
                  (954) 759-4560

2

APPEARANCES:

    On behalf of the Plaintiff:
        By:  MARK D. COHEN, ESQUIRE
        MARK D. COHEN, P.A.
        4000 Hollywood Boulevard
        Suite 435 South
        Hollywood, Florida 33021
        (954) 962-1166

    On behalf of the Defendant:
        By:  JUAN RAMIREZ, ESQUIRE
        DIAZ, REUS, & TARG
        100 Southeast 2nd Street
        Suite 3400
        Miami, Florida 33131
        (305) 375-9220

ALSO PRESENT

  CHRIS KOSACHUK

3

```
 1        (Thereupon the following proceedings were
 2   had:)
 3        THE COURT:  We're back again, Select
 4   Advisors/NLG.
 5        MR. COHEN:  Your Honor, you closed the
 6   case.
 7        THE COURT:  Well, I know; but he filed a
 8   motion to reconsider.  I wanted to have him air
 9   it out.  I'm not sure where we're supposed to
10   go.
11        MR. RAMIREZ:  You want our appearances?
12   Juan Ramirez on behalf of NLG.
13        MR. COHEN:  Mark Cohen on behalf of the
14   plaintiff.
15        THE COURT:  Okay.
16        MR. RAMIREZ:  Judge, basically we're
17   seeking you to reconsider a nonfinal order that
18   you issued back in August 20th, 2014.  In their
19   response, they never really challenged all the
20   history of it.  It's obvious, if you look at
21   all the stuff I submitted, that basically they
22   got you to domesticate a judgment that was
23   fraudulently obtained.
24        MR. COHEN:  I'm going to object.
25        THE COURT:  He can make his record.
```

4

1       MR. RAMIREZ: I gave you case law on it.
2   You can go behind the obtaining of a judgment
3   when the defendant never got due process, never
4   got notice, an opportunity to be heard. What
5   they did was they bought a judgment that had
6   been obtained by Ms. Lorette. I call that the
7   Lorette judgment. And they went from New York,
8   where the judgment was issued, to Pennsylvania
9   and they domesticated the judgment in
10  Pennsylvania. Somehow they got the
11  Pennsylvania court to accept that as being
12  against NLG.

13      The judgment was not against NLG, just
14  against Chris Kosachuk individually, and they
15  got a charging order against NLG. Then they
16  turned around, went back to New York, where
17  they got a consent judgment where they -- same
18  guy, Ramon Hoo, acted for the plaintiff and the
19  defendant. This is all documented, and every
20  court that's looked at this has came out with
21  the same conclusion that this was fraudulent.

22      He went to a bankruptcy judge in
23  Philadelphia, who, nunc pro tunc, eliminated
24  that Lorette judgment and they went through --
25  they even tried to do an end run within New

5

1  York to go to Suffolk County, and I just moved

2  to take judicial notice of this new development

3  because the judge in Suffolk County says, well,

4  wait a minute, this is all wrong.  I'm not

5  going to declare that this judgment is valid.

6  They got no due process.

7      And now -- the argument that I don't think

8  was ever made in front of you when you issued

9  that order on August 20th, 2014, this matter

10  was under appeal in the Third District.  So you

11  had no jurisdiction basically because by

12  allowing this judgment to be assigned, you

13  deprived the Third District of jurisdiction,

14  that was the crux of the foreclosure.  They

15  found a foreclosure by using that judgment.

16      THE COURT:  That wasn't before me.  The

17  foreclosure was in another --

18      MR. RAMIREZ:  The foreclosure was in

19  another division.  But they --

20      THE COURT:  So how did my assignment or

21  order granting an assignment --

22      MR. RAMIREZ:  Because that was under

23  appeal, we had a trial with NLG against Hazan,

24  it went two days with Judge Eig.

25      THE COURT:  Right, right.

6

```
 1      MR. RAMIREZ:  Part of the -- the count was
 2   we have this judgment, Judge, now we want to
 3   foreclose on the mortgage.  They were using
 4   that judgment to foreclose.  Judge Eig ruled
 5   for the defendant.  So he basically took away
 6   our rights under that judgment to foreclose.
 7      THE COURT:  Which was reversed.
 8      MR. RAMIREZ:  But while it's on appeal --
 9   while the matter is pending in the Third
10   District, they come to you and try to get you
11   to assign that very same judgment that was
12   under appeal in the Third District.
13      THE COURT:  No, I don't think so.  But go
14   ahead.  That's okay.  I don't see how I had
15   anything -- I don't understand how my
16   assignment had anything to do with what was on
17   appeal.
18      MR. RAMIREZ:  Because once you assigned
19   that judgment, it makes the appeal moot.
20      THE COURT:  No.
21      MR. RAMIREZ:  Because that was the entire
22   matter under appeal.
23      THE COURT:  No, they proceeded on a
24   foreclosure with Judge Eig, if I remember
25   correctly; it had nothing to do with me at the
```

1  time.

2      MR. RAMIREZ:  But --

3      THE COURT:  When I read all of this,

4  that's why I was curious why you said I had no

5  jurisdiction to do what I did.

6      MR. RAMIREZ:  Because if you look at the

7  foreclosure petition --

8      THE COURT:  Let me finish my train of

9  thought for a moment.  I granted an assignment

10  of whatever rights I granted in a judgment,

11  that has no effect on what Judge Eig may or may

12  not do with it, what the legalities of the

13  parties may or may not do with it.

14      The fact that it's up on appeal, even more

15  so, they can't do anything with that assignment

16  until the appeal is resolved.  If the appeal

17  was affirmed, they're stuck with an assignment

18  with nothing to do.  If the appeal got

19  reversed, they now have a claim that says I

20  have a judgment to go against you.

21      I didn't deprive or have anything to do

22  with the appellate jurisdiction.  I was

23  interested in hearing why I lacked jurisdiction

24  to do what I did.  Because that can be raised

25  at any time.

8

1       MR. RAMIREZ:  That's our argument, Judge.

2          THE COURT:  Okay.

3       MR. RAMIREZ:  Because that was the crux of

4   the matter under appeal, you basically said to

5   NLG, NLG, you no longer own this judgment even

6   though that same -- very same judgment is the

7   crux of the appeal.  The first ruling by the

8   appellate court was to say that that judgment

9   was valid.  I forget what the words are, but

10  the first issue that they resolved was the

11  assignment of that --

12      THE COURT:  Not my assignment.

13      MR. RAMIREZ:  Rule on the validity of that

14  judgment.

15      THE COURT:  It was a note and a mortgage

16  or something --

17      MR. COHEN:  Yes.

18      THE COURT:  -- and Judge Eig didn't let

19  them foreclose --

20      MR. COHEN:  It was bifurcated basically.

21      THE COURT:  Whatever -- I just read the

22  appellate opinion.

23      MR. RAMIREZ:  Yeah, the opinion --

24      THE COURT:  I didn't even know what was

25  going on until some other issue.

9

1          MR. RAMIREZ:  The appellate opinion talks

2   about -- the first thing they talk about when

3   they start talking about the law is that

4   judgment.

5          THE COURT:  Yeah, that he should have

6   allowed them to foreclose.

7          MR. COHEN:  Correct.

8          THE COURT:  But he didn't.  I thought

9   that's what they came down with.

10         MR. COHEN:  That's exactly it.

11         THE COURT:  He allowed the judgment on the

12  note, that they would --

13         MR. RAMIREZ:  I don't --

14         THE COURT:  Wasn't it?

15         MR. COHEN:  Alternative remedy.  The

16  question was whether or not you had to pick

17  your remedies at the time --

18         MR. RAMIREZ:  And they --

19         MR. COHEN:  -- or you didn't, and that was

20  the only issue that the appellate court

21  decided.

22         MR. RAMIREZ:  How can you assign a

23  judgment that's being decided on the issue of

24  election of remedies?

25         THE COURT:  But I didn't assign that

```
 1   judgment.
 2        MR. COHEN:   Correct.
 3        THE COURT:   I assigned --
 4        MR. RAMIREZ:   You assigned the judgment
 5   that was the crux of the foreclosure that had
 6   become an issue under appeal whether they
 7   elected their remedy or not.
 8        THE COURT:   I thought they sued on a note.
 9        MR. RAMIREZ:   They sued on that judgment.
10        THE COURT:   To execute against the
11   property in Fisher Island.
12        MR. RAMIREZ:   They used the judgment --
13        THE COURT:   That wasn't what the issue
14   was.   I thought it was a promissory note.
15        MR. COHEN:   Right.
16        MR. RAMIREZ:   It was also a promissory
17   note.
18        THE COURT:   They foreclosed on a note and
19   Judge Eig said you can't do the foreclosure.
20        MR. RAMIREZ:   Well, I mean, wouldn't have
21   done it the way they did it.   The fact is they
22   did sue on that judgment.   They said we have
23   this judgment and we want to execute on that
24   judgment against the note.   We also have this
25   mortgage -- so it was alternative remedy and
```

11

1   they said, wait a minute, you can't do both,

2   you have to elect your remedy.  Either sue

3   under the judgment or sue under --

4         THE COURT:  No, that's not how I read the

5   Third District's opinion.

6         MR. COHEN:  No.

7         THE COURT:  I thought they sued on a note

8   that was given by the owner, they went to

9   foreclose as well, and for some reason Judge

10  Eig said, no.  It had nothing to do with the

11  judgment in New York.  All I did --

12        MR. RAMIREZ:  It had to do with the

13  judgment they obtained.

14        THE COURT:  Where?

15        MR. RAMIREZ:  Judgment by --

16        THE COURT:  Where's the opinion?  Where's

17  the NLG opinion?

18        MR. RAMIREZ:  The default judgment that

19  you assigned.

20        THE COURT:  In New York.

21        MR. RAMIREZ:  No, that you assigned.  The

22  default judgment here --

23        THE COURT:  Right.

24        MR. RAMIREZ:  That NLG obtained against

25  Hazan.

12

```
 1        THE COURT:  Whatever was before me, I

 2   assigned that interest to somebody else.

 3        MR. RAMIREZ:  Yes.

 4        THE COURT:  That was the extent of my

 5   work.

 6        MR. RAMIREZ:  NLG had sued on that default

 7   judgment.  They had said, no, you can't sue

 8   under that, you have to elect your remedy, you

 9   either sue on the promissory note --

10        THE COURT:  Do you have the case here, the

11   NLG appellate opinion?  Is it here?

12        MR. RAMIREZ:  Yes.

13        THE COURT:  Let me look at the facts of

14   that case.  When you mentioned jurisdiction,

15   obviously, that can be raised at any time, so

16   I'm curious.  That's not my recollection of

17   what happened.

18        MR. COHEN:  It's not, Your Honor.

19        THE COURT:  Give him a chance.  I love

20   seeing you guys.

21        MR. COHEN:  Your Honor --

22        THE COURT:  Hold on.

23        MR. COHEN:  If I may, the case is closed.

24   You can't sue --

25        THE COURT:  Did he file this within --
```

13

1        MR. COHEN:  No.

2        THE COURT:  -- 30 days of me closing the

3   case?

4        MR. COHEN:  It's 15 days.

5        MR. RAMIREZ:  No, he filed a motion for

6   rehearing and withdrew it this morning.  I

7   don't know --

8        THE COURT:  You filed a motion for

9   rehearing?

10        MR. COHEN:  The only reason is because he

11   kept on saying the word "dismissed"; you used

12   the word "dismissed" or "closed."

13        THE COURT:  If he filed it within 30 days,

14   I technically have jurisdiction.

15        MR. COHEN:  Fifteen.

16        THE COURT:  Fifteen is for rehearing.  I

17   have jurisdiction on my cases for 30 days

18   technically.  A rehearing --

19        MR. COHEN:  I don't even think he --

20        THE COURT:  There's a 15-day window to

21   appeal.

22        MR. COHEN:  He didn't file it --

23        THE COURT:  Let me get to the merits of

24   it.

25        MR. COHEN:  I may be wrong.

14

1      THE COURT: Technically, I still have

2 jurisdiction to reconsider what I've done,

3 because, I mean, it's -- his appellate time has

4 run. This isn't an authorized --

5      MR. RAMIREZ: It's a nonfinal order,

6 Judge.

7      THE COURT: You're talking about the

8 jurisdictional order before. My case is

9 closed. How do I revisit what I did in a

10 closed case?

11      MR. RAMIREZ: Because they're trying to

12 enforce --

13      THE COURT: Procedurally, how do I go back

14 now to a case which I have ended my

15 jurisdiction and undo something I did back

16 then?

17      MR. RAMIREZ: Because they filed a motion

18 for rehearing, that would be one way.

19      THE COURT: But that's off the table. His

20 motion doesn't piggyback to you. He's asking

21 me to take a look at something overlooked.

22      MR. COHEN: I withdrew it.

23      THE COURT: Now, he withdrew it.

24      MR. RAMIREZ: You want me to file a dec

25 action?

15

1       THE COURT:  You do what you have to do.

2         MR. RAMIREZ:  I'm saying --

3       THE COURT:  Explain to me --

4       MR. RAMIREZ:  We have an order that was

5    entered as you say -- if you had no

6    jurisdiction --

7       THE COURT:  I didn't say that, you said

8    that.

9       MR. RAMIREZ:  I'm saying that.

10      THE COURT:  I think I had jurisdiction.  I

11   don't think what I did affected the appeal.

12      MR. RAMIREZ:  But if --

13      THE COURT:  I didn't even know it was

14   ongoing to begin with.

15      MR. RAMIREZ:  Well, I --

16      THE COURT:  Forget that part.

17      MR. RAMIREZ:  -- wasn't the lawyer.

18      THE COURT:  Nobody brought it to my

19   attention, I'm sure you might have brought that

20   argument up at that point in time.  Show me

21   where the appellate opinion -- show me what

22   went on before Judge Eig that had to do with

23   the foreclosing of my judgment, which is what

24   you're telling me.

25       You can tell me what's on your own mind.

16

 1  If you're going to whisper in his ear -- just
 2  help me out.
 3       MR. KOSACHUK: NLG obtained judgment
 4  against Ms. Hazan for not paying in '07. What
 5  was filed in '07 under the case number 19532.
 6       THE COURT: Right.
 7       MR. KOSACHUK: That judgment was for
 8  breach of the promissory note.
 9       THE COURT: Okay. They had a judgment on
10  a note.
11       MR. KOSACHUK: NLG had a judgment against
12  Ms. Hazan, his other client.
13       THE COURT: On a note.
14       MR. KOSACHUK: On a promissory note,
15  correct.
16       THE COURT: Which then they went to try to
17  foreclose.
18       MR. KOSACHUK: We used that judgment as
19  a -- which also had a mortgage attached to it
20  because there was a settlement agreement before
21  that said the note, the judgment and the
22  mortgage, all three instruments are in full
23  force and effect until paid or satisfied.
24       THE COURT: Correct.
25       MR. KOSACHUK: Then we moved to -- in 2011

17

1   to foreclose out the judgment and the mortgage.

2          THE COURT: You foreclosed the mortgage,

3   not judgment.

4          MR. COHEN: Correct.

5          MR. KOSACHUK: We foreclosed the

6   mortgage --

7          THE COURT: Judge Eig said no.

8          MR. KOSACHUK: Correct. Then what we did

9   was we appealed.

10         THE COURT: Correct.

11         MR. KOSACHUK: And the central issue on

12  appeal was the enforceability of that judgment

13  that you had assigned on August 20th, 2014.

14         THE COURT: No.

15         MR. COHEN: No.

16         THE COURT: Go ahead.

17         MR. KOSACHUK: The central --

18         THE COURT: Where is the appellate

19  opinion? That will clarify it for me.

20         MR. KOSACHUK: I know also in the -- in

21  the actual foreclosure itself, we attached this

22  judgment and we said that this judgment is the

23  basis for our foreclosure because it is secured

24  by a mortgage on this property.

25         THE COURT: A judgment isn't secured by a

1  mortgage.

2       MR. KOSACHUK:  In this particular

3  instance, it was, because of the agreement that

4  had occurred.

5       THE COURT:  Again, find me the appellate

6  opinion.

7       MR. RAMIREZ:  I guess I just cited it.

8       THE COURT:  Do you have the cite?  I'll

9  look it up.

10      MR. KOSACHUK:  It's a 2013 case and the

11  Case Number is 0684.

12      THE COURT:  You talking about the

13  appellate case?

14      MR. KOSACHUK:  Appellate opinion, yes.

15      THE COURT:  I need the appellate case

16  number.  Hold on a second.

17      MR. COHEN:  151 So.3d, Your Honor, 455.

18      MR. KOSACHUK:  No.  That was the first

19  appeal of the judgment itself.  We're now on

20  the appeal of the mortgage foreclosure.

21      THE COURT:  Give me Judge Eig's opinion.

22      MR. KOSACHUK:  2013 case, appellate case

23  number 0684.

24      THE COURT:  Hold on.

25      MR. KOSACHUK:  Opinion issued on September

19

1   3rd, 2014, appellate mandate on November 25th,

2   2014.

3        MR. RAMIREZ:  151 So.3d --

4        MR. COHEN:  That's what I just said and I

5   got blasted for it.

6        MR. KOSACHUK:  That's not --

7        MR. COHEN:  That's the one --

8        MR. KOSACHUK:  That's the first one.

9        MR. RAMIREZ:  Yeah, that's the one, 151.

10       MR. KOSACHUK:  No.

11       MR. COHEN:  455.

12       THE COURT:  Is that the one from Judge

13  Eig's case?

14       MR. COHEN:  Yes.

15       MR. RAMIREZ:  Yes.

16       THE COURT:  Hold on.  Let me figure it

17  out.

18       MR. COHEN:  It basically says it was not

19  an election of remedies precluding the later

20  enforcement of the mortgage.  That's it.  The

21  only issue was the mortgage.

22       THE COURT:  151 So.3d.

23       MR. RAMIREZ:  455.

24       THE COURT:  NLG versus Hazan.

25       MR. RAMIREZ:  Right.

```
 1        MR. COHEN:  Your Honor --
 2        THE COURT:  Hold on.
 3        MR. COHEN:  Not to be difficult, but it's
 4  a corporation and, therefore, I don't believe
 5  he can really talk in the matter.
 6        THE COURT:  He's not, I just wanted to
 7  hear the factual issues.  I'm trying to find
 8  out what happened as to whether there was a
 9  note or not.
10        MR. COHEN:  No.
11        THE COURT:  I agree with you.
12        MR. COHEN:  In their paragraph 29, they
13  specifically say it.
14        THE COURT:  All right.
15        MR. RAMIREZ:  Exhibit M is complaint for
16  foreclosure.
17        THE COURT:  I'll make copies if I have to.
18  I got NLG versus Hazan 151 So.3d 455.  What I
19  get from the facts, NLG sold the home to
20  Ms. Hazan for 5,100,000, took back a note and
21  mortgage for 1.275, required an installment
22  payment and it was supposed to mature, they
23  weren't forthcoming, NLG filed a lawsuit for
24  collection of the note.  Settlement agreement
25  was entered into, they were not made.  April of
```

21

1  '08, in accordance with the settlement, a

2  default judgment on the note was entered

3  against Ms. Hazan in favor of NLG in the amount

4  of 1.618, which would have been the mortgage

5  amount.

6       MR. RAMIREZ: That's the default --

7       THE COURT: That's the default judgment

8  for the note and mortgage amount, because the

9  note was 1.275.

10       MR. RAMIREZ: Right.

11       THE COURT: That was recorded, then they

12  got new counsel and they attempted to execute

13  on the judgment against the Fisher Island home

14  by a writ, right? That was vacated because she

15  claimed it was homestead.

16       MR. RAMIREZ: Right.

17       THE COURT: So that was done. Then they

18  filed suit to foreclose on the mortgage based

19  on the judgment?

20       MR. RAMIREZ: Right.

21       THE COURT: And the note for 1.2, which

22  had merged, right? Let's call it a merged

23  judgment and note. So they were foreclosing on

24  the note. Judge Eig said no, you elected your

25  remedy. Then the appellate court, Third

1   District, reverses and said no, they can go

2   forward and foreclose.

3       Where does that take into account the $5.1

4   million judgment or whatever judgment I had in

5   my division?

6       MR. RAMIREZ:  Because --

7       THE COURT:  How does that reflect on this?

8       MR. RAMIREZ:  Because this judgment, that

9   was the basis and it's an integral part of the

10  foreclosure, that judgment was assigned by you.

11      THE COURT:  What judgment, the 1.2 --

12      MR. RAMIREZ:  The default --

13      THE COURT:  The 1.6.

14      MR. RAMIREZ:  The 1.6.

15      THE COURT:  I assigned the New York

16  judgment.

17      MR. RAMIREZ:  You assigned this judgment.

18      THE COURT:  Which one did I assign?

19      MR. COHEN:  We filed a domestication.

20      THE COURT:  For some number up in New

21  York --

22      MR. COHEN:  $5 million.

23      THE COURT:  After that, you said, I want

24  to take over this judgment.

25      MR. COHEN:  Correct.  That's it.  We

23

1  executed on it.

2      .   THE COURT:   Hold on.

3      MR. RAMIREZ:   So this is a judgment --

4      THE COURT:   They took -- I assigned that

5  over to them, they took over that judgment

6  subject to whatever would happen in Judge Eig's

7  division.   How does that affect what's up on

8  appeal?

9      MR. RAMIREZ:   Because that was the central

10  issue on appeal.   Did we elect the remedies,

11  did we have a right to collect on this note.

12  How can -- if they have an issue with that

13  judgment, the proper place to answer that would

14  be in the foreclosure division, not in your

15  division.

16      THE COURT:   They didn't challenge the

17  judgment, the debt was affirmed.   The note that

18  led to the 1.2 or 1.6 judgment, which is what

19  they foreclosed upon, was affirmed previously

20  by the Third District.   The issue in this case

21  was whether they could foreclose on that note

22  and mortgage.

23      MR. RAMIREZ:   Exactly.   While that's

24  pending, you basically took the rug out from

25  under our feet by saying you no longer own that

24

1   judgment, now it's Quebec that owns that

2   judgment.

3       THE COURT: Okay, so I assigned your

4   interest in it to them, which had nothing to do

5   with what's going up on appeal.

6       MR. COHEN: Correct.

7       MR. RAMIREZ: How can you say that, Judge?

8       THE COURT: I just did.

9       MR. RAMIREZ: I know you just did. The

10  whole thing is, did we elect a remedy --

11      THE COURT: That has nothing to do with

12  me. My case was who -- Selective against NLG.

13  Selective sued, right, saying we bought this

14  judgment, right? We want to domesticate a New

15  York judgment. They filed here, they wanted to

16  domesticate it against NLG, which was the

17  judgment debtor up in New York.

18      MR. RAMIREZ: Right.

19      MR. KOSACHUK: No, NLG was never a

20  judgment debtor.

21      MR. RAMIREZ: It was a judgment debtor by

22  fraud.

23      THE COURT: I don't care by fraud, that's

24  for New York to decide.

25      MR. RAMIREZ: No, Judge, you had --

1      THE COURT: Had you posted a bond, I would

2   have dealt with it.

3      MR. RAMIREZ: You have the right to look

4   at whether they got due process or not. Be

5   that as it may, the jurisdictional issue is the

6   one I'm pursuing.

7      THE COURT: Let's go back and trace this

8   again. Selective Advisors domesticated a

9   judgment, they say we took over from Quebec who

10  had a judgment up in New York against NLG.

11     MR. RAMIREZ: Right.

12     THE COURT: For some millions of dollars.

13  NLG came in and it's fraud, it's this, it's

14  that; I said, you know what, you have every

15  right to do that, put up a bond; they chose not

16  to. Correct?

17     MR. RAMIREZ: Five-million-dollar bond.

18     THE COURT: I'm not saying it's easy. I

19  don't have $5 million, I understand that. Then

20  we turn around and they went in and enforced

21  the judgment. I assigned whatever interest NLG

22  had in the judgment apparently now and took

23  over the 1.7 and gave them full credit for the

24  1.7 off the 5 million in New York. I think

25  that's what I did, something like that, right?

1    MR. COHEN: Yes.

2    MR. RAMIREZ: Right.

3    THE COURT: That judgment that I assigned

4 to them or that interest in that judgment was

5 up on appeal. I didn't affect the validity of

6 what's up on appeal. I just said, if you win

7 or lose, whatever happens, now these people own

8 it instead of you. The Third came back and

9 said, too bad, you get to foreclose, they now

10 own that judgment or note if that's what merged

11 into it, they get to go and foreclose. I had

12 nothing to do --

13    MR. RAMIREZ: It's the same people, Judge.

14    THE COURT: It doesn't matter to me who

15 they were, what they were. That's not my

16 fight. Now, it's been paid off. How do I undo

17 something that's been paid off?

18    MR. RAMIREZ: It was all fraud.

19    THE COURT: It may have been. How do I

20 undo --

21    MR. RAMIREZ: How can you condone a fraud

22 by judicial --

23    THE COURT: Very simply, I did not deal

24 with the fraud issue until they posted a bond

25 and they kept promising me New York is going to

27

1   vacate this, New York is going --

2       MR. RAMIREZ:  We've been trying to do that

3   and they keep delaying.

4       THE COURT:  They delayed and delayed and

5   then somebody paid it off.

6       MR. RAMIREZ:  They used that judgment to

7   say that they paid it off.

8       THE COURT:  It's been satisfied.

9       MR. RAMIREZ:  By defrauding us.  Judge --

10      THE COURT:  My judgment was satisfied.

11      MR. RAMIREZ:  They never were entitled to

12  penny one.  The Lorette judgment that started

13  this whole thing has been vacated nunc pro

14  tunc.  In fact, he got damages of --

15      THE COURT:  Hold on.  How was my judgment

16  satisfied?

17      MR. COHEN:  It was satisfied --

18      THE COURT:  They paid it or just because

19  of the assignment transfer of interest?

20      MR. COHEN:  No, they've resolved it

21  somehow up there between Select --

22      THE COURT:  Somebody up in New York issued

23  a satisfaction of judgment?

24      MR. COHEN:  Correct.

25      MR. RAMIREZ:  Select is her husband, is

28

1   Hazan's husband.

2        THE COURT: I don't care who it is.

3        MR. RAMIREZ: It is. It's important

4   because they've done all this to prevent us

5   from foreclosing on the mortgage in front of

6   Judge --

7        THE COURT: Your Honor, the judgment in

8   New York was satisfied of record, correct?

9   They worked it out, somebody issued a

10  satisfaction of judgment?

11       MR. RAMIREZ: Right. And now --

12       THE COURT: As far as I'm concerned,

13  whatever's happening here is done, it's been

14  paid off. There's nothing I can do.

15       MR. COHEN: Can we get an order just --

16       THE COURT: We're done. My order --

17       MR. KOSACHUK: The domestication of this

18  New York $5 million judgment is now gone,

19  correct?

20       THE COURT: No, it's been satisfied.

21  There's a difference. It's satisfied in the

22  public records in Florida, it shows it was

23  sought to be domesticated, an action was taken

24  by me, my case is closed and now you record a

25  satisfaction of judgment in Florida. That

29

1  should take care of any interest in my matter.
2  You paid it off.
3      MR. KOSACHUK:  So they no longer have the
4  right to go forward and try to collect on that
5  judgment.
6      THE COURT:  If it's been paid off, that's
7  up to you guys.  I don't know why it was
8  satisfied.
9      MR. COHEN:  Your Honor --
10     THE COURT:  That's all.  He can tell you
11  better than I, he's been through this many
12  times before.
13     MR. COHEN:  The motion is denied?  Your
14  Honor, just for curiosity, you say the Court
15  retains jurisdiction for 30 days; under 1.540,
16  I only see 15 days.
17     THE COURT:  Fifteen days is a rehearing.
18     MR. COHEN:  You show me 1.540 --
19     THE COURT:  Go ahead, take a look at it.
20  I keep jurisdiction --
21     MR. RAMIREZ:  Fifteen is rehearing.  It's
22  moot, you denied the motion.
23     THE COURT:  Nobody is appealing my case.
24     MR. COHEN:  I just want to know --
25     THE COURT:  Yes, the motion is denied for

30

1  everything we discussed here.

2      MR. COHEN:  For my own knowledge --

3      THE COURT:  Because the 15 is your

4  appellate time.

5      MR. COHEN:  No, 30 is appellate.

6      THE COURT:  How much time do you have to

7  file a notice of appeal usually?

8      MR. COHEN:  Thirty days from the date of

9  denial of the motion for rehearing.

10     THE COURT:  No, 30 days -- if you don't

11  file a motion for rehearing, how much time do

12  you have to file an appeal?

13     MR. COHEN:  Thirty days.

14     THE COURT:  Thank you.

15     MR. COHEN:  But you only have 15 days --

16     THE COURT:  Counsel, please, if you don't

17  file the rehearing, it doesn't suspend the

18  appellate time.  My case lingers for 30 days.

19  That's my jurisdiction.

20     MR. COHEN:  I was just more curious than

21  anything.

22     (Thereupon, the proceeding concluded at

23  2:27 p.m.)

24

25

Case 1:22-cv-21485-RNS-JJ08-Judent Doc 588 red-Filed FLSD Docke Page 4/20231 Page 79 of 291

31

1                    CERTIFICATE OF REPORTER

2

3    STATE OF FLORIDA)
     COUNTY OF BROWARD)
4

5

6        I, DAWN JOBE, Florida Professional Reporter, do

7    hereby certify that I was authorized to and did

8    stenographically report the foregoing proceedings,

9    and that the foregoing transcript, pages 1 through

10   31, is a true and correct record of my stenographic

11   notes.

12

13       DATED this 15th day of November, 2015 at Fort

14   Lauderdale, Broward County, Florida.

15

16

17

18

19

20               DAWN JOBE, Court Reporter

21

22

23

24

25

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

IN RE:

                               Case No. 16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN,               Chapter 11

      Debtor.
_____/

**<u>NOTICE OF FILING</u>**

     Creditor, Selective Advisors Group, LLC, gives notice of filing the attached Exhibit B to

*Notice of Filing and Supplemental Response to NLG's Motion for Relief from Automatic Stay*

[ECF No. 82].

**<u>CERTIFICATE OF SERVICE</u>**

     **I HEREBY CERTIFY** that on this 19th day of December, 2017, I electronically filed the
foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing
document is being served this day on all counsel of record or pro se parties identified on the
attached Service List in the manner specified, either via transmission of Notices of Electronic
Filing generated by CM/ECF or in some other authorized manner for those counsel or parties
who are not authorized to receive electronically Notices of Filing.

                      Respectfully submitted,

                      **MARSHALL SOCARRAS GRANT, P.L.**
                      *Attorneys for Creditor,*
                      *Selective Advisors Group, LLC*
                      197 South Federal Highway, Suite 200
                      Boca Raton, Florida  33432
                      Telephone No. 561.361.1000
                      Facsimile No. 561.672.7581
                      Email: jgrant@msglaw.com

                    By:  */s/ Joe M. Grant*           
                        JOE M. GRANT
                        Florida Bar No. 137758

## SERVICE LIST

**16-10389-AJC Notice will be electronically mailed to:**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.;
gaaronson@aspalaw.com
Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.; aresty@mac.com
Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com
Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com, nsocorro@ecclegal.com; bankruptcy@ecclegal.com;
bankruptcy.ecc@ecf.courtdrive.com
Adam A Diaz on behalf of Creditor U.S. Bank National Association; adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com
Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC; bkfl@albertellilaw.com
Michael A Friedman on behalf of Creditor NLG, LLC; mfriedman@gjb-law.com, gjbecf@gjb-
law.com; jsardina@gjb-law.com
Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com
Astrid Gabbe on behalf of Creditor NLG, LLC; astridgabbe@gmail.com
Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.;
robert.gusrae@gmail.com
David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com, ngomez@dhaberlaw.com; rcasamayor@dhaberlaw.com;
dbhpaservice@dhaberlaw.com
David W. Langley on behalf of Debtor Liza Hazan; dave@flalawyer.com,
emily@flalawyer.com; monica@flalawyer.com
Tamara D McKeown on behalf of Defendant Liza Hazan; tdmckeown@mckeownpa.com
James B Miller on behalf of Counter-Claimant NLG, LLCl; bkcmiami@gmail.com
Office of the US Trustee; USTPRegion21.MM.ECF@usdoj.gov
Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.;
Ashley.popowitz@mccalla.com, flbkecf@mccalla.com
Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com
Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com
Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (01) (10)

SELECTIVE ADVISORS GROUP,          )
LLC, AS ASSIGNEE OF 9197-5904      )
QUEBEC, INC.,                      )
                                   )
          Plaintiff,               )
                                   )
vs.                                )
                                   )
NLG, LLC, a Delaware limited       )
liability company,                 )
                                   )
          Defendant.               )
_____)


          DATE TAKEN:        November 10th, 2015
          TIME:              2:01 p.m. to 2:27 p.m.
          PLACE:             73 West Flagler Street
                             Miami, Florida
          BEFORE:            JUDGE LOPEZ


     This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were reported by:

               Dawn Jobe, Court Reporter
    Taylor, Jonovic, White, Gendron, Kircher-Echarte
        2455 East Sunrise Boulevard, Suite 1200
             Fort Lauderdale, Florida 33304
                    (954) 759-4560

2

APPEARANCES:

    On behalf of the Plaintiff:
        By: MARK D. COHEN, ESQUIRE
        MARK D. COHEN, P.A.
        4000 Hollywood Boulevard
        Suite 435 South
        Hollywood, Florida 33021
        (954) 962-1166

    On behalf of the Defendant:
        By: JUAN RAMIREZ, ESQUIRE
        DIAZ, REUS, & TARG
        100 Southeast 2nd Street
        Suite 3400
        Miami, Florida 33131
        (305) 375-9220

ALSO PRESENT

   CHRIS KOSACHUK

3

```
 1        (Thereupon the following proceedings were
 2   had:)
 3        THE COURT:  We're back again, Select
 4   Advisors/NLG.
 5        MR. COHEN:  Your Honor, you closed the
 6   case.
 7        THE COURT:  Well, I know; but he filed a
 8   motion to reconsider.  I wanted to have him air
 9   it out.  I'm not sure where we're supposed to
10   go.
11        MR. RAMIREZ:  You want our appearances?
12   Juan Ramirez on behalf of NLG.
13        MR. COHEN:  Mark Cohen on behalf of the
14   plaintiff.
15        THE COURT:  Okay.
16        MR. RAMIREZ:  Judge, basically we're
17   seeking you to reconsider a nonfinal order that
18   you issued back in August 20th, 2014.  In their
19   response, they never really challenged all the
20   history of it.  It's obvious, if you look at
21   all the stuff I submitted, that basically they
22   got you to domesticate a judgment that was
23   fraudulently obtained.
24        MR. COHEN:  I'm going to object.
25        THE COURT:  He can make his record.
```

4

1    MR. RAMIREZ: I gave you case law on it.
2  You can go behind the obtaining of a judgment
3  when the defendant never got due process, never
4  got notice, an opportunity to be heard. What
5  they did was they bought a judgment that had
6  been obtained by Ms. Lorette. I call that the
7  Lorette judgment. And they went from New York,
8  where the judgment was issued, to Pennsylvania
9  and they domesticated the judgment in
10  Pennsylvania. Somehow they got the
11  Pennsylvania court to accept that as being
12  against NLG.

13    The judgment was not against NLG, just
14  against Chris Kosachuk individually, and they
15  got a charging order against NLG. Then they
16  turned around, went back to New York, where
17  they got a consent judgment where they -- same
18  guy, Ramon Hoo, acted for the plaintiff and the
19  defendant. This is all documented, and every
20  court that's looked at this has came out with
21  the same conclusion that this was fraudulent.

22    He went to a bankruptcy judge in
23  Philadelphia, who, nunc pro tunc, eliminated
24  that Lorette judgment and they went through --
25  they even tried to do an end run within New

5

1  York to go to Suffolk County, and I just moved

2  to take judicial notice of this new development

3  because the judge in Suffolk County says, well,

4  wait a minute, this is all wrong.  I'm not

5  going to declare that this judgment is valid.

6  They got no due process.

7       And now -- the argument that I don't think

8  was ever made in front of you when you issued

9  that order on August 20th, 2014, this matter

10  was under appeal in the Third District.  So you

11  had no jurisdiction basically because by

12  allowing this judgment to be assigned, you

13  deprived the Third District of jurisdiction,

14  that was the crux of the foreclosure.  They

15  found a foreclosure by using that judgment.

16       THE COURT:  That wasn't before me.  The

17  foreclosure was in another --

18       MR. RAMIREZ:  The foreclosure was in

19  another division.  But they --

20       THE COURT:  So how did my assignment or

21  order granting an assignment --

22       MR. RAMIREZ:  Because that was under

23  appeal, we had a trial with NLG against Hazan,

24  it went two days with Judge Eig.

25       THE COURT:  Right, right.

6

1       MR. RAMIREZ:  Part of the -- the count was

2   we have this judgment, Judge, now we want to

3   foreclose on the mortgage.  They were using

4   that judgment to foreclose.  Judge Eig ruled

5   for the defendant.  So he basically took away

6   our rights under that judgment to foreclose.

7       THE COURT:  Which was reversed.

8       MR. RAMIREZ:  But while it's on appeal --

9   while the matter is pending in the Third

10  District, they come to you and try to get you

11  to assign that very same judgment that was

12  under appeal in the Third District.

13      THE COURT:  No, I don't think so.  But go

14  ahead.  That's okay.  I don't see how I had

15  anything -- I don't understand how my

16  assignment had anything to do with what was on

17  appeal.

18      MR. RAMIREZ:  Because once you assigned

19  that judgment, it makes the appeal moot.

20      THE COURT:  No.

21      MR. RAMIREZ:  Because that was the entire

22  matter under appeal.

23      THE COURT:  No, they proceeded on a

24  foreclosure with Judge Eig, if I remember

25  correctly; it had nothing to do with me at the

1  time.

2      MR. RAMIREZ:  But --

3      THE COURT:  When I read all of this,

4  that's why I was curious why you said I had no

5  jurisdiction to do what I did.

6      MR. RAMIREZ:  Because if you look at the

7  foreclosure petition --

8      THE COURT:  Let me finish my train of

9  thought for a moment.  I granted an assignment

10  of whatever rights I granted in a judgment,

11  that has no effect on what Judge Eig may or may

12  not do with it, what the legalities of the

13  parties may or may not do with it.

14      The fact that it's up on appeal, even more

15  so, they can't do anything with that assignment

16  until the appeal is resolved.  If the appeal

17  was affirmed, they're stuck with an assignment

18  with nothing to do.  If the appeal got

19  reversed, they now have a claim that says I

20  have a judgment to go against you.

21      I didn't deprive or have anything to do

22  with the appellate jurisdiction.  I was

23  interested in hearing why I lacked jurisdiction

24  to do what I did.  Because that can be raised

25  at any time.

8

```
1        MR. RAMIREZ:  That's our argument, Judge.

2        THE COURT:  Okay.

3        MR. RAMIREZ:  Because that was the crux of

4   the matter under appeal, you basically said to

5   NLG, NLG, you no longer own this judgment even

6   though that same -- very same judgment is the

7   crux of the appeal.  The first ruling by the

8   appellate court was to say that that judgment

9   was valid.  I forget what the words are, but

10  the first issue that they resolved was the

11  assignment of that --

12       THE COURT:  Not my assignment.

13       MR. RAMIREZ:  Rule on the validity of that

14  judgment.

15       THE COURT:  It was a note and a mortgage

16  or something --

17       MR. COHEN:  Yes.

18       THE COURT:  -- and Judge Eig didn't let

19  them foreclose --

20       MR. COHEN:  It was bifurcated basically.

21       THE COURT:  Whatever -- I just read the

22  appellate opinion.

23       MR. RAMIREZ:  Yeah, the opinion --

24       THE COURT:  I didn't even know what was

25  going on until some other issue.
```

1    MR. RAMIREZ: The appellate opinion talks
2 about -- the first thing they talk about when
3 they start talking about the law is that
4 judgment.
5    THE COURT: Yeah, that he should have
6 allowed them to foreclose.
7    MR. COHEN: Correct.
8    THE COURT: But he didn't. I thought
9 that's what they came down with.
10    MR. COHEN: That's exactly it.
11    THE COURT: He allowed the judgment on the
12 note, that they would --
13    MR. RAMIREZ: I don't --
14    THE COURT: Wasn't it?
15    MR. COHEN: Alternative remedy. The
16 question was whether or not you had to pick
17 your remedies at the time --
18    MR. RAMIREZ: And they --
19    MR. COHEN: -- or you didn't, and that was
20 the only issue that the appellate court
21 decided.
22    MR. RAMIREZ: How can you assign a
23 judgment that's being decided on the issue of
24 election of remedies?
25    THE COURT: But I didn't assign that

1    judgment.

2         MR. COHEN:   Correct.

3         THE COURT:   I assigned --

4         MR. RAMIREZ:   You assigned the judgment

5    that was the crux of the foreclosure that had

6    become an issue under appeal whether they

7    elected their remedy or not.

8         THE COURT:   I thought they sued on a note.

9         MR. RAMIREZ:   They sued on that judgment.

10        THE COURT:   To execute against the

11   property in Fisher Island.

12        MR. RAMIREZ:   They used the judgment --

13        THE COURT:   That wasn't what the issue

14   was.  I thought it was a promissory note.

15        MR. COHEN:   Right.

16        MR. RAMIREZ:   It was also a promissory

17   note.

18        THE COURT:   They foreclosed on a note and

19   Judge Eig said you can't do the foreclosure.

20        MR. RAMIREZ:   Well, I mean, wouldn't have

21   done it the way they did it.  The fact is they

22   did sue on that judgment.  They said we have

23   this judgment and we want to execute on that

24   judgment against the note.  We also have this

25   mortgage -- so it was alternative remedy and

11

1   they said, wait a minute, you can't do both,

2   you have to elect your remedy.  Either sue

3   under the judgment or sue under --

4        THE COURT:  No, that's not how I read the

5   Third District's opinion.

6        MR. COHEN:  No.

7        THE COURT:  I thought they sued on a note

8   that was given by the owner, they went to

9   foreclose as well, and for some reason Judge

10  Eig said, no.  It had nothing to do with the

11  judgment in New York.  All I did --

12       MR. RAMIREZ:  It had to do with the

13  judgment they obtained.

14       THE COURT:  Where?

15       MR. RAMIREZ:  Judgment by --

16       THE COURT:  Where's the opinion?  Where's

17  the NLG opinion?

18       MR. RAMIREZ:  The default judgment that

19  you assigned.

20       THE COURT:  In New York.

21       MR. RAMIREZ:  No, that you assigned.  The

22  default judgment here --

23       THE COURT:  Right.

24       MR. RAMIREZ:  That NLG obtained against

25  Hazan.

12

1        THE COURT:  Whatever was before me, I

2  assigned that interest to somebody else.

3        MR. RAMIREZ:  Yes.

4        THE COURT:  That was the extent of my

5  work.

6        MR. RAMIREZ:  NLG had sued on that default

7  judgment.  They had said, no, you can't sue

8  under that, you have to elect your remedy, you

9  either sue on the promissory note --

10        THE COURT:  Do you have the case here, the

11  NLG appellate opinion?  Is it here?

12        MR. RAMIREZ:  Yes.

13        THE COURT:  Let me look at the facts of

14  that case.  When you mentioned jurisdiction,

15  obviously, that can be raised at any time, so

16  I'm curious.  That's not my recollection of

17  what happened.

18        MR. COHEN:  It's not, Your Honor.

19        THE COURT:  Give him a chance.  I love

20  seeing you guys.

21        MR. COHEN:  Your Honor --

22        THE COURT:  Hold on.

23        MR. COHEN:  If I may, the case is closed.

24  You can't sue --

25        THE COURT:  Did he file this within --

13

1       MR. COHEN:   No.
2          THE COURT:   -- 30 days of me closing the
3    case?
4       MR. COHEN:   It's 15 days.
5       MR. RAMIREZ:   No, he filed a motion for
6    rehearing and withdrew it this morning.   I
7    don't know --
8       THE COURT:   You filed a motion for
9    rehearing?
10      MR. COHEN:   The only reason is because he
11   kept on saying the word "dismissed"; you used
12   the word "dismissed" or "closed."
13      THE COURT:   If he filed it within 30 days,
14   I technically have jurisdiction.
15      MR. COHEN:   Fifteen.
16      THE COURT:   Fifteen is for rehearing.   I
17   have jurisdiction on my cases for 30 days
18   technically.   A rehearing --
19      MR. COHEN:   I don't even think he --
20      THE COURT:   There's a 15-day window to
21   appeal.
22      MR. COHEN:   He didn't file it --
23      THE COURT:   Let me get to the merits of
24   it.
25      MR. COHEN:   I may be wrong.

14

1       THE COURT: Technically, I still have
2   jurisdiction to reconsider what I've done,
3   because, I mean, it's -- his appellate time has
4   run. This isn't an authorized --
5       MR. RAMIREZ: It's a nonfinal order,
6   Judge.
7       THE COURT: You're talking about the
8   jurisdictional order before. My case is
9   closed. How do I revisit what I did in a
10  closed case?
11      MR. RAMIREZ: Because they're trying to
12  enforce --
13      THE COURT: Procedurally, how do I go back
14  now to a case which I have ended my
15  jurisdiction and undo something I did back
16  then?
17      MR. RAMIREZ: Because they filed a motion
18  for rehearing, that would be one way.
19      THE COURT: But that's off the table. His
20  motion doesn't piggyback to you. He's asking
21  me to take a look at something overlooked.
22      MR. COHEN: I withdrew it.
23      THE COURT: Now, he withdrew it.
24      MR. RAMIREZ: You want me to file a dec
25  action?

15
1        THE COURT:  You do what you have to do.
2        MR. RAMIREZ:  I'm saying --
3        THE COURT:  Explain to me --
4        MR. RAMIREZ:  We have an order that was
5   entered as you say -- if you had no
6   jurisdiction --
7        THE COURT:  I didn't say that, you said
8   that.
9        MR. RAMIREZ:  I'm saying that.
10       THE COURT:  I think I had jurisdiction.  I
11  don't think what I did affected the appeal.
12       MR. RAMIREZ:  But if --
13       THE COURT:  I didn't even know it was
14  ongoing to begin with.
15       MR. RAMIREZ:  Well, I --
16       THE COURT:  Forget that part.
17       MR. RAMIREZ:  -- wasn't the lawyer.
18       THE COURT:  Nobody brought it to my
19  attention, I'm sure you might have brought that
20  argument up at that point in time.  Show me
21  where the appellate opinion -- show me what
22  went on before Judge Eig that had to do with
23  the foreclosing of my judgment, which is what
24  you're telling me.
25       You can tell me what's on your own mind.

16
1   If you're going to whisper in his ear -- just
2   help me out.
3       MR. KOSACHUK:  NLG obtained judgment
4   against Ms. Hazan for not paying in '07.  What
5   was filed in '07 under the case number 19532.
6       THE COURT:  Right.
7       MR. KOSACHUK:  That judgment was for
8   breach of the promissory note.
9       THE COURT:  Okay.  They had a judgment on
10  a note.
11      MR. KOSACHUK:  NLG had a judgment against
12  Ms. Hazan, his other client.
13      THE COURT:  On a note.
14      MR. KOSACHUK:  On a promissory note,
15  correct.
16      THE COURT:  Which then they went to try to
17  foreclose.
18      MR. KOSACHUK:  We used that judgment as
19  a -- which also had a mortgage attached to it
20  because there was a settlement agreement before
21  that said the note, the judgment and the
22  mortgage, all three instruments are in full
23  force and effect until paid or satisfied.
24      THE COURT:  Correct.
25      MR. KOSACHUK:  Then we moved to -- in 2011

17

1    to foreclose out the judgment and the mortgage.

2          THE COURT:  You foreclosed the mortgage,

3    not judgment.

4          MR. COHEN:  Correct.

5          MR. KOSACHUK:  We foreclosed the

6    mortgage --

7          THE COURT:  Judge Eig said no.

8          MR. KOSACHUK:  Correct.  Then what we did

9    was we appealed.

10         THE COURT:  Correct.

11         MR. KOSACHUK:  And the central issue on

12   appeal was the enforceability of that judgment

13   that you had assigned on August 20th, 2014.

14         THE COURT:  No.

15         MR. COHEN:  No.

16         THE COURT:  Go ahead.

17         MR. KOSACHUK:  The central --

18         THE COURT:  Where is the appellate

19   opinion?  That will clarify it for me.

20         MR. KOSACHUK:  I know also in the -- in

21   the actual foreclosure itself, we attached this

22   judgment and we said that this judgment is the

23   basis for our foreclosure because it is secured

24   by a mortgage on this property.

25         THE COURT:  A judgment isn't secured by a

18

1   mortgage.

2        MR. KOSACHUK:  In this particular

3   instance, it was, because of the agreement that

4   had occurred.

5        THE COURT:  Again, find me the appellate

6   opinion.

7        MR. RAMIREZ:  I guess I just cited it.

8        THE COURT:  Do you have the cite?  I'll

9   look it up.

10       MR. KOSACHUK:  It's a 2013 case and the

11  Case Number is 0684.

12       THE COURT:  You talking about the

13  appellate case?

14       MR. KOSACHUK:  Appellate opinion, yes.

15       THE COURT:  I need the appellate case

16  number.  Hold on a second.

17       MR. COHEN:  151 So.3d, Your Honor, 455.

18       MR. KOSACHUK:  No.  That was the first

19  appeal of the judgment itself.  We're now on

20  the appeal of the mortgage foreclosure.

21       THE COURT:  Give me Judge Eig's opinion.

22       MR. KOSACHUK:  2013 case, appellate case

23  number 0684.

24       THE COURT:  Hold on.

25       MR. KOSACHUK:  Opinion issued on September

19

1   3rd, 2014, appellate mandate on November 25th,

2   2014.

3        MR. RAMIREZ:   151 So.3d --

4        MR. COHEN:   That's what I just said and I

5   got blasted for it.

6        MR. KOSACHUK:   That's not --

7        MR. COHEN:   That's the one --

8        MR. KOSACHUK:   That's the first one.

9        MR. RAMIREZ:   Yeah, that's the one, 151.

10        MR. KOSACHUK:   No.

11        MR. COHEN:   455.

12        THE COURT:   Is that the one from Judge

13   Eig's case?

14        MR. COHEN:   Yes.

15        MR. RAMIREZ:   Yes.

16        THE COURT:   Hold on.  Let me figure it

17   out.

18        MR. COHEN:   It basically says it was not

19   an election of remedies precluding the later

20   enforcement of the mortgage.  That's it.  The

21   only issue was the mortgage.

22        THE COURT:   151 So.3d.

23        MR. RAMIREZ:   455.

24        THE COURT:   NLG versus Hazan.

25        MR. RAMIREZ:   Right.

20

```
 1        MR. COHEN:  Your Honor --
 2        THE COURT:  Hold on.
 3        MR. COHEN:  Not to be difficult, but it's
 4  a corporation and, therefore, I don't believe
 5  he can really talk in the matter.
 6        THE COURT:  He's not, I just wanted to
 7  hear the factual issues.  I'm trying to find
 8  out what happened as to whether there was a
 9  note or not.
10        MR. COHEN:  No.
11        THE COURT:  I agree with you.
12        MR. COHEN:  In their paragraph 29, they
13  specifically say it.
14        THE COURT:  All right.
15        MR. RAMIREZ:  Exhibit M is complaint for
16  foreclosure.
17        THE COURT:  I'll make copies if I have to.
18  I got NLG versus Hazan 151 So.3d 455.  What I
19  get from the facts, NLG sold the home to
20  Ms. Hazan for 5,100,000, took back a note and
21  mortgage for 1.275, required an installment
22  payment and it was supposed to mature, they
23  weren't forthcoming, NLG filed a lawsuit for
24  collection of the note.  Settlement agreement
25  was entered into, they were not made.  April of
```

21

1    '08, in accordance with the settlement, a

2    default judgment on the note was entered

3    against Ms. Hazan in favor of NLG in the amount

4    of 1.618, which would have been the mortgage

5    amount.

6         MR. RAMIREZ:  That's the default --

7         THE COURT:  That's the default judgment

8    for the note and mortgage amount, because the

9    note was 1.275.

10        MR. RAMIREZ:  Right.

11        THE COURT:  That was recorded, then they

12   got new counsel and they attempted to execute

13   on the judgment against the Fisher Island home

14   by a writ, right?  That was vacated because she

15   claimed it was homestead.

16        MR. RAMIREZ:  Right.

17        THE COURT:  So that was done.  Then they

18   filed suit to foreclose on the mortgage based

19   on the judgment?

20        MR. RAMIREZ:  Right.

21        THE COURT:  And the note for 1.2, which

22   had merged, right?  Let's call it a merged

23   judgment and note.  So they were foreclosing on

24   the note.  Judge Eig said no, you elected your

25   remedy.  Then the appellate court, Third

22

1  District, reverses and said no, they can go
2  forward and foreclose.
3       Where does that take into account the $5.1
4  million judgment or whatever judgment I had in
5  my division?
6       MR. RAMIREZ:  Because --
7       THE COURT:  How does that reflect on this?
8       MR. RAMIREZ:  Because this judgment, that
9  was the basis and it's an integral part of the
10 foreclosure, that judgment was assigned by you.
11      THE COURT:  What judgment, the 1.2 --
12      MR. RAMIREZ:  The default --
13      THE COURT:  The 1.6.
14      MR. RAMIREZ:  The 1.6.
15      THE COURT:  I assigned the New York
16 judgment.
17      MR. RAMIREZ:  You assigned this judgment.
18      THE COURT:  Which one did I assign?
19      MR. COHEN:  We filed a domestication.
20      THE COURT:  For some number up in New
21 York --
22      MR. COHEN:  $5 million.
23      THE COURT:  After that, you said, I want
24 to take over this judgment.
25      MR. COHEN:  Correct.  That's it.  We

23

1  executed on it.

2      .   THE COURT: Hold on.

3          MR. RAMIREZ: So this is a judgment --

4          THE COURT: They took -- I assigned that

5  over to them, they took over that judgment

6  subject to whatever would happen in Judge Eig's

7  division. How does that affect what's up on

8  appeal?

9          MR. RAMIREZ: Because that was the central

10 issue on appeal. Did we elect the remedies,

11 did we have a right to collect on this note.

12 How can -- if they have an issue with that

13 judgment, the proper place to answer that would

14 be in the foreclosure division, not in your

15 division.

16         THE COURT: They didn't challenge the

17 judgment, the debt was affirmed. The note that

18 led to the 1.2 or 1.6 judgment, which is what

19 they foreclosed upon, was affirmed previously

20 by the Third District. The issue in this case

21 was whether they could foreclose on that note

22 and mortgage.

23         MR. RAMIREZ: Exactly. While that's

24 pending, you basically took the rug out from

25 under our feet by saying you no longer own that

24

1   judgment, now it's Quebec that owns that

2   judgment.

3        THE COURT: Okay, so I assigned your

4   interest in it to them, which had nothing to do

5   with what's going up on appeal.

6        MR. COHEN: Correct.

7        MR. RAMIREZ: How can you say that, Judge?

8        THE COURT: I just did.

9        MR. RAMIREZ: I know you just did. The

10  whole thing is, did we elect a remedy --

11       THE COURT: That has nothing to do with

12  me. My case was who -- Selective against NLG.

13  Selective sued, right, saying we bought this

14  judgment, right? We want to domesticate a New

15  York judgment. They filed here, they wanted to

16  domesticate it against NLG, which was the

17  judgment debtor up in New York.

18       MR. RAMIREZ: Right.

19       MR. KOSACHUK: No, NLG was never a

20  judgment debtor.

21       MR. RAMIREZ: It was a judgment debtor by

22  fraud.

23       THE COURT: I don't care by fraud, that's

24  for New York to decide.

25       MR. RAMIREZ: No, Judge, you had --

25

1      THE COURT: Had you posted a bond, I would
2  have dealt with it.

3      MR. RAMIREZ: You have the right to look
4  at whether they got due process or not. Be
5  that as it may, the jurisdictional issue is the
6  one I'm pursuing.

7      THE COURT: Let's go back and trace this
8  again. Selective Advisors domesticated a
9  judgment, they say we took over from Quebec who
10  had a judgment up in New York against NLG.

11      MR. RAMIREZ: Right.

12      THE COURT: For some millions of dollars.
13  NLG came in and it's fraud, it's this, it's
14  that; I said, you know what, you have every
15  right to do that, put up a bond; they chose not
16  to. Correct?

17      MR. RAMIREZ: Five-million-dollar bond.

18      THE COURT: I'm not saying it's easy. I
19  don't have $5 million, I understand that. Then
20  we turn around and they went in and enforced
21  the judgment. I assigned whatever interest NLG
22  had in the judgment apparently now and took
23  over the 1.7 and gave them full credit for the
24  1.7 off the 5 million in New York. I think
25  that's what I did, something like that, right?

26

 1         MR. COHEN:  Yes.

 2         MR. RAMIREZ:  Right.

 3         THE COURT:  That judgment that I assigned

 4    to them or that interest in that judgment was

 5    up on appeal.  I didn't affect the validity of

 6    what's up on appeal.  I just said, if you win

 7    or lose, whatever happens, now these people own

 8    it instead of you.  The Third came back and

 9    said, too bad, you get to foreclose, they now

10    own that judgment or note if that's what merged

11    into it, they get to go and foreclose.  I had

12    nothing to do --

13         MR. RAMIREZ:  It's the same people, Judge.

14         THE COURT:  It doesn't matter to me who

15    they were, what they were.  That's not my

16    fight.  Now, it's been paid off.  How do I undo

17    something that's been paid off?

18         MR. RAMIREZ:  It was all fraud.

19         THE COURT:  It may have been.  How do I

20    undo --

21         MR. RAMIREZ:  How can you condone a fraud

22    by judicial --

23         THE COURT:  Very simply, I did not deal

24    with the fraud issue until they posted a bond

25    and they kept promising me New York is going to

27

```
 1  vacate this, New York is going --
 2      MR. RAMIREZ:  We've been trying to do that
 3  and they keep delaying.
 4      THE COURT:  They delayed and delayed and
 5  then somebody paid it off.
 6      MR. RAMIREZ:  They used that judgment to
 7  say that they paid it off.
 8      THE COURT:  It's been satisfied.
 9      MR. RAMIREZ:  By defrauding us.  Judge --
10      THE COURT:  My judgment was satisfied.
11      MR. RAMIREZ:  They never were entitled to
12  penny one.  The Lorette judgment that started
13  this whole thing has been vacated nunc pro
14  tunc.  In fact, he got damages of --
15      THE COURT:  Hold on.  How was my judgment
16  satisfied?
17      MR. COHEN:  It was satisfied --
18      THE COURT:  They paid it or just because
19  of the assignment transfer of interest?
20      MR. COHEN:  No, they've resolved it
21  somehow up there between Select --
22      THE COURT:  Somebody up in New York issued
23  a satisfaction of judgment?
24      MR. COHEN:  Correct.
25      MR. RAMIREZ:  Select is her husband, is
```

28

1   Hazan's husband.

2           THE COURT:  I don't care who it is.

3       MR. RAMIREZ:  It is.  It's important

4   because they've done all this to prevent us

5   from foreclosing on the mortgage in front of

6   Judge --

7       THE COURT:  Your Honor, the judgment in

8   New York was satisfied of record, correct?

9   They worked it out, somebody issued a

10  satisfaction of judgment?

11          MR. RAMIREZ:  Right.  And now --

12          THE COURT:  As far as I'm concerned,

13  whatever's happening here is done, it's been

14  paid off.  There's nothing I can do.

15          MR. COHEN:  Can we get an order just --

16          THE COURT:  We're done.  My order --

17          MR. KOSACHUK:  The domestication of this

18  New York $5 million judgment is now gone,

19  correct?

20          THE COURT:  No, it's been satisfied.

21  There's a difference.  It's satisfied in the

22  public records in Florida, it shows it was

23  sought to be domesticated, an action was taken

24  by me, my case is closed and now you record a

25  satisfaction of judgment in Florida.  That

29

1  should take care of any interest in my matter.
2  You paid it off.
3      MR. KOSACHUK:  So they no longer have the
4  right to go forward and try to collect on that
5  judgment.
6      THE COURT:  If it's been paid off, that's
7  up to you guys.  I don't know why it was
8  satisfied.
9      MR. COHEN:  Your Honor --
10     THE COURT:  That's all.  He can tell you
11 better than I, he's been through this many
12 times before.
13     MR. COHEN:  The motion is denied?  Your
14 Honor, just for curiosity, you say the Court
15 retains jurisdiction for 30 days; under 1.540,
16 I only see 15 days.
17     THE COURT:  Fifteen days is a rehearing.
18     MR. COHEN:  You show me 1.540 --
19     THE COURT:  Go ahead, take a look at it.
20 I keep jurisdiction --
21     MR. RAMIREZ:  Fifteen is rehearing.  It's
22 moot, you denied the motion.
23     THE COURT:  Nobody is appealing my case.
24     MR. COHEN:  I just want to know --
25     THE COURT:  Yes, the motion is denied for

30

1  everything we discussed here.

2      .  MR. COHEN:   For my own knowledge --

3         THE COURT:   Because the 15 is your

4  appellate time.

5         MR. COHEN:   No, 30 is appellate.

6         THE COURT:   How much time do you have to

7  file a notice of appeal usually?

8         MR. COHEN:   Thirty days from the date of

9  denial of the motion for rehearing.

10        THE COURT:   No, 30 days -- if you don't

11 file a motion for rehearing, how much time do

12 you have to file an appeal?

13        MR. COHEN:   Thirty days.

14        THE COURT:   Thank you.

15        MR. COHEN:   But you only have 15 days --

16        THE COURT:   Counsel, please, if you don't

17 file the rehearing, it doesn't suspend the

18 appellate time.   My case lingers for 30 days.

19 That's my jurisdiction.

20        MR. COHEN:   I was just more curious than

21 anything.

22        (Thereupon, the proceeding concluded at

23 2:27 p.m.)

24

25

31

1              CERTIFICATE OF REPORTER

2

3   STATE OF FLORIDA)
    COUNTY OF BROWARD)
4

5

6        I, DAWN JOBE, Florida Professional Reporter, do

7   hereby certify that I was authorized to and did

8   stenographically report the foregoing proceedings,

9   and that the foregoing transcript, pages 1 through

10  31, is a true and correct record of my stenographic

11  notes.

12

13       DATED this 15th day of November, 2015 at Fort

14  Lauderdale, Broward County, Florida.

15

16

17

18

19

20             DAWN JOBE, Court Reporter

21

22

23

24

25

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE: | **Case No.: 16-10389-AJC** |
| **LIZA HAZAN** a/k/a Elizabeth Hazan, | **Chapter 11** |
| Debtor. | |

<u>CREDITOR, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.'S:</u>

<u>(A) OBJECTION TO CONFIRMATION OF DEBTOR'S FOURTH AMENDED PLAN
OF REORGANIZATION; AND</u>

<u>(B) MOTION TO CONVERT OR DISMISS CASE, OR ALTERNATIVELY, MOTION
FOR STAY RELIEF TO FILE ADDITIONAL LIEN</u>

  Creditor, Valencia Estates Homeowners' Association, Inc. (the "Association"), by and through its undersigned counsel, hereby files this its: (A) Objection to Confirmation of the Debtor's Fourth Amended Plan of Reorganization [D.E. 563], and (B) its Motion to Convert or Dismiss Case, or Alternatively, Motion for Stay Relief to File Additional Lien, and in support thereof, states the following:

<u>SUMMARY OF OBJECTION AND MOTION</u>

  1. The Association objects to the Debtor's Fourth Amended Plan of Reorganization[1] (the "Plan") because **the Debtor is in violation of the Stipulation previously entered by this Court as between Debtor and the Association**. A copy of the Stipulation is attached hereto and incorporated herein as **Exhibit "A"** (the "Stipulation").

---

[1] The Association previously filed an Objection to Debtor's Fifth Amended Disclosure Statement and Motion to Dismiss/Convert [D.E. 566]; however, on December 11, 2017, the Court vacated its prior Order Setting Hearing on Approval of Disclosure Statement (*see* D.E. 574 and 576) and entered instead an Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan (D.E. 580). Accordingly, the Association now files this Objection to Confirmation of the Plan.

2. The Stipulation requires Debtor to pay all monthly and/or special assessments on an ongoing basis as required by the Association's Declaration of Covenants (the "Ongoing Assessments"), and if she fails to do so, **the Stipulation provides the Plan will not be confirmed**. Exhibit "A" at ¶ 9. Furthermore, the Association has the right to file and foreclose upon a new lien against the Subject Property if Debtor fails to pay the Ongoing Assessments. *See* **Exhibit "A"** at ¶¶ 7 and 9.

3. Debtor has failed to pay the Special Assessment (defined below) despite notice and demand, and Debtor is therefore in violation of the Stipulation. **Indeed, Debtor even admits in her recent filings that she has not paid the Special Assessment.** D.E. 562 at pp. 22-23; D.E. 563 at p. 12. Accordingly, pursuant to the Stipulation entered by this Court, Debtor's Plan cannot be confirmed, and the Association is entitled to stay relief to file a new lien and seek enforcement thereof against the Subject Property.

4. **The Debtor's games have gone on long enough, and cause exists under 11 U.S.C. § 1112(b)(4) to dismiss or convert this case to a Chapter 7 proceeding**. This Bankruptcy Action was filed almost two (2) years ago in January 2016. During that time, Debtor has filed **six (6) different Disclosure Statements and five (5) different proposed Plans**, and nearly all of them have been attacked by objections from various creditors.

5. In each Disclosure Statement and proposed Plan since December of 2016, Debtor states she will soon earn "significant funds (comparable to past earnings) in the next six months", which past earnings she claims are historically in excess of $350,000.00. She proposes to fund her Plan by using this mysterious consulting income, despite the fact that **she has received $0.00 in business income from January 2017 to present**. Her monthly Debtor-in-Possession Operating Reports demonstrate that her alleged expected business income is non-existent, if not an outright

2

**Haber Slade, P.A.**

fabrication, as she consistently receives $0.00 in business income per month. *See* D.E. 394, 422,

437, 461, 493, 515, 530, 558, 559, and 564. She receives only some amounts of household income

per month (anywhere from $800/month to $12,000/month) - - the majority of which is not earned

income, but rather appears to be monetary gifts from her husband. *See id.*

6.      Debtor's creditors, including the Association, should be paid what they are owed

through conversion of this Action to a Chapter 7 proceeding, followed by liquidation of the

Debtor's primary asset, i.e. - - the Subject Property.

## BACKGROUND

7.      The Association previously objected [D.E. 138] to Debtor's original Disclosure

Statement [D.E. 103] for several reasons, including because Debtor failed to adequately describe

Debtor's alleged consulting and rental incomes which were to fund the Plan, and which, to date,

do not appear to have materialized or have been misdirected elsewhere.

8.      On or about August 17, 2016, Debtor and the Association entered into a Stipulation

for Settlement of the Association's Claim #10, as well as the Association's pending Motion for

Adequate Protection [D.E. 94], both of which were set to be heard by the Court on August 17,

2016. The Stipulation for Settlement was signed by the Debtor outside the courtroom to resolve

the Association's Motion for Adequate Protection, as well as to solicit the vote of the Association

in favor of the Debtor's eventual amended plan. *See* **Exhibit "A"** at ¶¶ 5, 11.

9.      On or about November 17, 2016, the Court entered an Agreed Order approving the

Stipulation, a copy of which is attached hereto and incorporated herein as **Exhibit "B"**.

10.     The Stipulation clearly requires that Debtor pay Ongoing Assessments, failing

which her plan will not be approved. *See* **Exhibit "A"** at ¶¶ 7, 9. Furthermore, pursuant to the

Stipulation, in the event of non-payment by the Debtor for the Ongoing Assessments, the

Association has "the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at ¶ 7.

11.     On or about August 9, 2017, the Association passed a special assessment for certain site plan and landscape improvements to the Common Elements of the Association (the "Special Assessment").  Debtor was notified of same in accordance with the Association's standard procedures.  *See* a copy of the Notice to Owners dated August 14, 2017, attached hereto and incorporated herein as **Exhibit "C"**.

12.     The Board voted that each Owner's contribution to the Special Assessment was to be paid in one (1) lump sum payment on or before September 15, 2017.  *See* **Exhibit "C"**. Specifically, Debtor's portion of the Special Assessment to be paid on or before September 15, 2017, was $62,500.00.

13.     On or about August 22, 2017, the undersigned law firm wrote to Debtor's counsel regarding Debtor's failures to maintain and repair the Subject Property in accordance with the Association's Covenants, and also to remind Debtor's counsel that the Special Assessment in the amount of $62,500.00 was coming due from Debtor on or before September 15, 2017.  A copy of said correspondence is attached hereto and incorporated herein as **Exhibit "D"**.

14.     **Despite Debtor's clear obligations under the Stipulation and the Association's Declaration, and despite multiple notices of same, Debtor failed to pay the Special Assessment.** Therefore, Debtor is in clear violation of the Stipulation, and per the Stipulation, Debtor's proposed plan must be denied.  Additionally, under the Stipulation, the Association is entitled to initiate and purse a new collections action against Debtor's Subject Property, and should be provided stay relief for same.

## BASES FOR OBJECTION, CONVERSION/DISMISSAL, AND/OR STAY RELIEF

### A.  Objection to Confirmation

15.     The Stipulation, which was executed by the Debtor well over a year ago, and also approved and adopted by this Court, is crystal clear in that if Debtor fails to fulfill her obligations under the Stipulation, her Plan must be denied. *See* **Exhibits "A" and "B"**.

16.     In her most recent Fifth Amended Disclosure Statement and Fourth Amended Plan, Debtor **admits** that she has not paid the Special Assessment, and offers to pay same in installments over five (5) years as part of her Plan.  *See* D.E. 562 at p. 22; D.E. 563 at p. 12.

17.     This offer to pay in installments over time was **not** agreed to, and was indeed, **specifically rejected** by the Association on August 23, 2017 and on August 31, 2017, since no other Owner at the Association was permitted to pay over time, and no exceptions would or could be made for Debtor without treating the Debtor differently than all of the other Owners.  Indeed, such a regime would not only be unfair to the other Unit Owners, but would fall woefully short of the financial needs of the Association to complete the renovations, which are notably already underway.

18.     The Debtor then goes on in her proposed Plan to concoct a completely bogus story about damage to her fence, which she claims must be reimbursed by the Association and/or by the Fisher Island Community Association, Inc. ("FICA").  Her theory is that this reimbursement would offset the Special Assessment amount owed by Debtor to the Association, as well as other amounts owed by Debtor to FICA.  She offers no legal support which would authorize such an "offset", especially in light of the fact that Debtor has no pending claim against the Association for any damage to the fence.

19. To be clear, the Association did not cause any damage to Debtor's fence. Hurricane Irma caused a tree on Debtor's Subject Property to fall on the fence, and when FICA removed the tree during post-hurricane clean-up, the fence was already broken. Photos of the broken fence, as well as a report dated October 21, 2017, describing that the tree fell during Hurricane Irma, are attached hereto and incorporated herein as **Composite Exhibit "E"**.

20. Furthermore, it is Debtor's responsibility to maintain her fence and landscaping. Pursuant to the Association's Covenants at Section 5.1, Owners are responsible for maintaining all structures located on their Lots, including fences, which must be kept "in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance" of the Valencia Estates community. A copy of Section 5 of the Covenants is attached hereto and incorporated herein as **Exhibit "F"**. Owners are also responsible for maintaining their trees, shrubbery, grass and landscaping on their Lots, and keeping same in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. *See id.* at Section 5.2. So, at best, Hurricane Irma caused the damage to the fence, and Debtor needs to submit an insurance claim like everyone else - - or, at worst, perhaps the fence was already broken due to Debtor's tree before Hurricane Irma, due to Debtor's neglect of the Subject Property, and Debtor is now once again trying to avoid responsibility to maintain and repair the Subject Property.

21. In light of the above, Debtor has no claim for a "setoff" to excuse her failure to pay the Special Assessment, in clear and direct violation of the Stipulation. Thus, unless and until she pays the Special Assessment due and owing to the Association, her Plan cannot be confirmed. *See* **Exhibit "A"** at ¶ 9.

22. Further, pursuant to 11 USC § 1129, one of the requirements to confirm a plan is that the plan is "not likely to be followed by the liquidation, or the need for further financial

**Haber Slade, P.A.**

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan, unless such liquidation or reorganization is proposed in the plan."

23.     Here, Debtor's monthly Operating Reports reflect that her proposed Plan is **not feasible**.  Her Plan states that she will have $65,000.00 in cash on hand at confirmation, and depends on her obtaining being paid $120,000.00 in business income in February 2018; $100,000.00 in March 2018; $80,000.00 in April, May and June 2018, and then $50,000.00 per month in business income for the rest of the year.  But, in the past year, she has earned **$0.00 business income**, and appears to be subsisting solely on handouts from her husband.  This is simply not feasible, nor is fair or equitable to Debtor's creditors to allow her charade to continue while she lives in the Subject Property without paying all assessments coming due on same.  *See, e.g., In re Glades Health Care, Ltd.,* 88 B.R. 439 (Bankr. S.D. Fla. 1988) (holding that Chapter 11 plan was not feasible, and thus would not be confirmed, where funding for plan would require 150% increase in operating profit from previous year's experience, while there had been no change from pre-bankruptcy circumstances affecting debtor's income and expenses).

24.     Thus, not only has Debtor **stipulated** that her Plan cannot be confirmed if she defaults under the parties' stipulation, but the requirements for confirmation under 11 USC § 1129 are also not met here.

**B.  Request for Dismissal or Conversion of Case to Chapter 7**

25.     Debtor's transparent attempt to avoid payment of the Special Assessment, and to avoid the clear remedies under the Stipulation for her non-payment, is just the latest example in a long saga of shenanigans and misrepresentations made by the Debtor to this and other Courts to avoid complying with her legal obligations.

**Haber Slade, P.A.**

26. **Debtor simply believes that the rules do not apply to her. This Court should remind her that she must comply with the rules just as anyone else.** Her cavalier attitude and wanton disregard of Court Orders and the Stipulation is knowing and willful and should not be tolerated.

27. Debtor's creditors, including the Association, have been severely prejudiced by Debtor's manipulation efforts and non-stop litigation tactics. With respect to the Association specifically, the Association is a non-profit organization and is dependent upon homeowners paying their share of the Common Expenses. The Association has not been timely paid maintenance assessments by Debtor **since 2007**, all the while the Debtor has resided in the Property for free, at great cost to the Association's other members. Now, Debtor is refusing to pay her portion of the Special Assessment, and fabricating claims against the Association for damages to her fence to try to avoid payment - - once again seeking to have the other Unit Owners pay her financial obligations. At what point will she actually be held responsible for her obligations?

28. It is simply inequitable to continue to allow Debtor to take advantage of and manipulate the judicial system, including this Bankruptcy Court, in this manner. *See, e.g., In re On the Ocean, Inc.,* No. 16-16204-BKC-RBR, 2016 WL 8539791, at *3 (Bankr. S.D. Fla. June 6, 2016) (noting that "[c]ourts have routinely found bad faith and dismissed cases in circumstances where debtors have filed to purposely delay a creditor's inevitable recovery of its property" and that "[t]he law requires more of a Chapter 11 Debtor than the mere desire to stay pending litigation or use the bankruptcy to gain a tactical litigation advantage.").

29. Her monthly Operating Reports reflect that her proposed Plan is not feasible. She has earned **$0.00 business income** in the past year, and appears to be subsisting solely on handouts from her husband! Now, with her clear violation of the Stipulation, her Plan cannot be confirmed

**Haber Slade, P.A.**

regardless of its lack of feasibility. Accordingly, the Court should dismiss or convert the case to a

Chapter 7 proceeding.

30. Pursuant to 11 U.S.C. § 1112(b)(1):

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate**, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. [Emphasis added.]

31. Under 11 U.S.C. § 1112(b)(4), cause includes numerous conditions or

circumstances, including the following instances which are relevant here:

> a) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and

> e) failure to comply with an order of the court.

32. Debtor has failed to comply with the Stipulation, which was ratified by Court Order.

That alone is enough to dismiss or convert this case, especially in light of the Stipulation's

provision that Debtor's Plan **cannot be confirmed** if she violates the Stipulation. *See, e.g., In re*

*Efron,* 529 B.R. 396, 412 (B.A.P. 1st Cir. 2015) (upholding grounds for dismissal where debtor

failed to comply with Court orders directing him to make post-petition payments, and noting that

"[w]ithout question and despite his objections, the debtor was nonetheless obligated to comply

with the DSO Order and the subsequent orders directing him to commence the monthly DSO

payments."). In addition, the Bankruptcy Court for the Eastern District of New York described

when cause arises under 11 U.S.C. § 1112(b)(4)(E) in the following manner:

> This Section gives effect to the notion that compliance with court orders is a fundamental obligation of any party, and a debtor's failure to comply with a court order is a troubling matter indeed. As one court noted, "[b]ecause ... violations [of a court's orders] are disrespectful to the Court, they are disrespectful to the judicial process." *Babakitis v. Robino (In re Robino),*

**Haber Slade, P.A.**

243 B.R. 472, 487 (Bankr.N.D.Ala.1999). And Section 1112(b)(4)(E) also reflects the fact that the protections that a debtor gains under the Bankruptcy Code travel in tandem with many obligations that the debtor must meet. **As the *Robino* court noted, "[i]n the bankruptcy context, if a debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide by the orders a court enters." *Id.* Notably, Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud**.

*In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) (emphasis added).

33.    In addition, it is more than clear at this stage that Debtor does not have the ability to fund her Plan as she proposes - - the "consulting income" she claims she will earn is nothing but a fairytale, causing this matter to be drawn out for almost two (2) years with no real relief for the creditors.  Debtor's Plan is not feasible, and her continuous delay and manipulation of the judicial system is harmful to her creditors, many of whom, like the Association, have been trying to collect from her for multiple years.  Thus, the case should be dismissed or converted to a Chapter 7 proceeding.  *See, e.g., In re Brooks*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013) ("[A] **debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors**…and which is adequate justification, in and of itself, for dismissal of a Chapter 11 case for cause.") (citations omitted) (emphasis added); *In re Erkins*, 351 B.R. 218, 219 (Bankr.M.D.Fla.2006) (upholding original order to dismiss, which was based on the debtor's failure to propose a plan over a three year period, thus indicating little potential for successfully effectuating such a plan and creating delay that was unreasonably prejudicial to the creditor); *In re Tucker*, 411 B.R. 530 (Bankr. S.D. Ga. 2009) (Upon determining that "cause" existed to dismiss or convert debtor's individual Chapter 11 case based on his continued delay in filing monthly operating reports, and based on inaccurate or misleading nature of such schedules and reports as debtor filed, bankruptcy court would exercise its authority to convert case to Chapter 7 rather than to dismiss, where case

10

**Haber Slade, P.A.**

had been pending for more than one year, during which time debtor had benefited from automatic stay despite his failure to adhere to his duties as debtor-in-possession); *In re Babayoff*, 445 B.R. 64 (Bankr. E.D.N.Y. 2011) (Cause to convert or dismiss Chapter 11 case arose from debtor's **inability to effectuate a plan**; debtor's creditors had objected to the plan, these objections presented an insurmountable obstacle to confirmation, and **the long history of the case showed that debtor had been unable to formulate a plan of reorganization or to make meaningful progress toward confirmation**, as neither of debtor's proposed plans was complete or satisfied the requirements of the Bankruptcy Code, and the disclosure statement similarly omitted required information, including a meaningful liquidation analysis or description of the risk factors or tax consequences under the plan).

34.     Additionally, there are no "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" under 11 U.S.C. § 1112(b)(2), and moreover, even if there were such "unusual circumstances" (which there are not), Debtor cannot meet the requirements of subsection (b)(2)(A) and (B) to avoid the Court's mandatory dismissal or conversion of this action.

35.     In light of the foregoing, the Court must dismiss or convert this proceeding, as there is plain cause to do so under 11 U.S.C. § 1112(b)(4).

**C.  Request for Stay Relief to Pursue New Collections Action**

36.     Again, the Stipulation is clear that the Association is entitled to initiate and pursue a new collection and foreclosure action, including a lien upon the Subject Property, if the Debtor fails to pay the Ongoing Assessments. *See* **Exhibit "A"** at ¶ 7.

37. However, for the avoidance of doubt and in light of the Debtor's prior bad-faith litigation tactics, the Association seeks the Court's permission to pursue same, but only in the event this action is not dismissed and/or converted to Chapter 7.

WHEREFORE, the Association respectfully requests that this Court enter an Order:

A. Sustaining the Association's Objection to, and denying confirmation of, the Debtor's Fourth Amended Plan for the reasons set forth herein; and

B. Ordering that the case be dismissed, or converted to a Chapter 7 proceeding so that the Subject Property can be sold, since Debtor's proposed Plan cannot be confirmed, is not feasible, and is continuing to cause severe prejudice to her Creditors; or

C. Alternatively, awarding stay relief to the Association to pursue an additional collections and foreclosure action due to Debtor's non-payment of the Special Assessment; and

D. Awarding the Association, per the Stipulation, attorney's fees and costs incurred in seeking enforcement of the Stipulation, as well as any such other and further relief this Court may deem just and proper.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing was furnished by CM/ECF to all electronic notice parties on the CM/ECF service list on December 20, 2017.

Respectfully submitted,

**HABER SLADE, P.A.**
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
(305) 379-2400
(305) 376-1106 (fax)
dbhpaservice@dhaberlaw.com

By: _/s/ David B. Haber, Esq._
**DAVID B. HABER, ESQ.**
Florida Bar No.: 435368
dhaber@dhaberlaw.com
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@dhaberlaw.com
cpla@dhaberlaw.com

**Haber Slade, P.A.**

Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:

                                                CaseNo:16-10389AJC
                                                Chapter 11

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR._____/**

### STIPULATION OF SETTLEMENT CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

      2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

      3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

      4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

      5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

          A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

          B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

          C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

      6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees costs absent a breach bcf Debtor as referenced below*

7.     Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.     Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.     Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.     If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.     Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*Valencia state court action, claims, counterclaims, + proposed third party claims against Valencia, it's agents, managers, attorneys, members + officers, raised on unraised, are released + waived. All defenses, proposed counterclaims + proposed third party*

stipulated treatment.

     12.   This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

EXHIBIT "B"



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### THE SOUTHERN DISTRICT OF
### FLORIDA MIAMI DIVISION
#### www.flsb.uscourts.gov

IN RE:

                                          **CaseNo:16-10389AJC**
                                          **Chapter 11**

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.** _____/

---

### AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10

(Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter

the "Stipulation").  The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\*   \*   \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

EXHIBIT "C"



VALENCIA ESTATES
AT FISHER ISLAND

August 14, 2017

Dear Residents,

On Wednesday, August 9, 2017 the Association held a special meeting of the Board of Directors to consider and vote on the approval of an updated proposed new site plan and treescape landscaping modifications, both at the Associations front entrance and Valencia Drive. The membership approved the Special Assessment in the total amount of $750,000.00 to fund theses two projects.

A one time lump sum payment is due on September 15, 2017. Included with this letter you will find a payment coupon indicating the amount to be paid.

Please send your payment and the coupon to the address notated on the coupon.

Valencia Estates

c/o Marquis Association Management

PO. Box 521056

Miami, FL33152-1056

Valencia Estates continues to enjoy one of the lowest Operating Budgets of Fisher Island and continues to limit increases to monthly maintenance assessments.

The Board of Directors looks forward to continuing this precedent of careful and conservative fiscal management and appreciates your understanding as we ensure the Association's financial steadiness through the balance of the budget year.

If you should have any questions regarding the foregoing, please feel free to contact me at mercy.rodriguez@marquishoa.com or on my cell phone 305-962-2537.

Very truly yours,

_____

Mercy V Rodriguez, LCAM
On Behalf of the Board of Directors
Valencia Estates Home Owners Association, Inc.

EXHIBIT "D"



**REBECCA NEWMAN CASAMAYOR, Esq.**
305.379.2400 ext. 134
rcasamayor@dhaberlaw.com

August 22, 2017

**VIA E-MAIL ONLY:**
David Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
E-mail: dave@flalawyer.com

      RE:    **In re: Liza Hazan, Debtor**
               **Case No.: 16-10389-AJC – Chapter 11**

Dear Mr. Langley:

    As you know, this law firm represents Valencia Estates Homeowners' Association, Inc. (the "Association") in the above-styled case (hereinafter the "Bankruptcy") filed by your client, Elizabeth Hazan (the "Debtor"). We write to notify you of two (2) major issues involving the Debtor and her home at Valencia Estates (hereinafter the "Subject Property"), which must be addressed forthwith.

**I. FIVE (5) DAY DEMAND TO REPAIR/MAINTAIN EXTERIOR OF SUBJECT PROPERTY**

    The Debtor is failing to maintain the exterior of the Subject Property, including but not necessarily limited to, the landscaping, trees, and the pool. The exterior landscaping around the Subject Property is extremely overgrown, and the roots of the large tree in the front of the house are causing damage to the driveway. Photos of the front of the Subject Property, depicting the overgrown landscaping and the tree roots growing into and lifting up the driveway, are attached hereto as **Composite Exhibit "1"**. In addition, the pool maintenance personnel have reported that the Debtor's pool has not been properly maintained (despite their weekly routine maintenance efforts) and is consistently a green color, which is believed to be caused by the Debtor turning off the pool mechanical equipment and/or potentially another defect with the equipment, which is the Debtor's responsibility to maintain, repair and replace. These factors are both unsightly and well afoul of the acceptable standards set by the Association (and most probably, in violation of applicable zoning and housing codes).

    Pursuant to the Association's Declaration of Covenants and Restrictions (the "Covenants") at Section 5.2, Owners are responsible for maintaining trees, shrubbery, landscaping, sidewalks, driveways, and their pools, which must be kept "in good working condition and all in a neat, orderly and attractive manner consistent with the general appearance of Fisher Island as a whole." A copy of Section 5 of the Covenants is attached hereto for you reference as **Exhibit "2"**. While the Association provides some basic routine services for these items, such as cutting the lawn and chemically treating/skimming the pool, Owners are responsible for landscape replacements, as well as for pool mechanical and surface repairs and maintenance. The Debtor has ignored those responsibilities, and the Subject Property is

visibly deteriorating, devaluing the Association as a whole and otherwise impairing the Members' rights to reside in a well-kept community.

In accordance with Section 5.3 of the Covenants, the Association hereby notifies the Debtor that if the Debtor fails to correct these issues and provide for the proper maintenance of the Subject Property within **five (5) days** of the date of this correspondence, the Association reserves its right to enter onto the Subject Property and cause the work to be performed, in order to bring the Subject Property into compliance with the Covenants. The costs of this work, as well as a twenty-five percent (25%) surcharge, will be specially assessed against the Subject Property, as permitted by Section 5.4 of the Covenants.

As an alternative to performing the work and specially assessing the costs and surcharge for same against the Subject Property, the Association also reserves its right to move for the appointment of a Trustee in the Bankruptcy Action, and to seek the Court's approval for the Trustee to cause the work to be performed and/or to liquidate the Subject Property. There can be no doubt that the Subject Property is the primary, if not the sole, asset of the Debtor in the Bankruptcy proceeding, yet the Debtor is nonetheless inexplicably failing to maintain and preserve that asset for the benefit of her numerous creditors, including the Association, and is otherwise materially wasting same. We anticipate that the Bankruptcy Court, and the other creditors, will have no patience for this. Despite the Debtor's petulance she must either conform her behavior or be prepared to lose the protection the Court is temporarily graciously affording her.

## II. SPECIAL ASSESSMENT PASSED AUGUST 9, 2017 AND DUE SEPTEMBER 15, 2017

As the Debtor should be aware, on August 9, 2017, the Association held a Special Meeting of the Board of Directors to consider and vote on: (i) the approval of the updated proposed New Site Plan ("New Site Plan") and Treescape Landscaping Modifications ("Treescape Improvements"), both at the Association's front entrance and Valencia Drive (collectively, the "Project"); and (ii) the authorization of the Board of Directors to pay for the Project using the Association's operating account (the "Funding Authorization"), through a special assessment of up to, but not to exceed $750,000.00, and/or through a loan of up to, and not to exceed, $750,000.00.

The votes for the Project and the Funding Authorization both passed. With respect to the Funding Authorization, the Board voted that each Owner's contribution to same shall be paid in one (1) lump sum payment on or before September 15, 2017. The Debtor's lump sum amount due on or before September 15, 2017 is $62,500.00 (the "Project Assessment").

Pursuant to the Stipulation of Settlement of Claim 10, executed by the Parties on August 17, 2016 and thereafter approved and ratified by the Bankruptcy Court (the "Stipulation"), the Debtor is responsible to pay all ongoing monthly and/or special assessments, which would include both of the special assessments referenced herein (i.e. - - the costs and surcharge if the Association is forced to carry out repair and maintenance work to the exterior of the Subject Property, and the $62,500.00 Project Assessment). *See* Stipulation at Paragraph 7.

In the event that the Debtor fails to pay these special assessment amounts, she will be in violation of the Stipulation, in which case **her proposed Plan cannot be confirmed**. *See id.* at Paragraph 9. Therefore, we suggest that you immediately address these issues with the Debtor, in order to ensure that

*Demand Letter – Elizabeth Hazan*
*August 22, 2017*
*Page 3 of 3*

she remains in compliance with both the Covenants and the Stipulation, and advise us of same.  Failure to comply will result in the Association exercising any and/or all of its legal and equitable remedies pertaining to same.

       This correspondence reserves all rights of the Association, without limitation and/or reservation.

       PLEASE GOVERN YOURSELF ACCORDINGLY.

               Sincerely,

               **HABER SLADE, P.A.**

               */s/ Rebecca N. Casamayor*

               DAVID B. HABER, ESQ.
               REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures:  As noted
cc:    Elizabeth Hazan [via FedEx]
        Tracking Number 770083435236

**HABER SLADE, P.A.**
**MIAMI CENTER | SUITE 1205 | 201 S. BISCAYNE BLVD. | MIAMI, FLORIDA  33131 | T: 305.379.2400 | F: 305.379.1106 | www.dhaberlaw.com**

# Exhibit 1













# Exhibit 2

OFF. REC BK.
21004PG0398

from time to time sooner at the sole election of the Developer), be conveyed by quit claim deed to the Association, which shall automatically be deemed to have accepted such conveyance. Beginning from the date this Declaration is recorded, the Association shall be responsible for the maintenance, insurance and administration of such Common Properties (whether or not then conveyed to the Association), all of which is to be performed in a continuous and satisfactory manner without cost to the general taxpayers of the County. It is intended that all real estate taxes assessed against that portion of the Common Properties owned or to be owned by the Association shall be (or have been, because the purchase prices of the Lots and Homes have already taken into account their rights in and to the Common Properties) proportionally assessed against and payable as part of the taxes of the applicable Lots within the Neighborhood. However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Properties, the Association shall be responsible for the payment of same (subject to protest or appeal before or after payment), including taxes on any improvements and any personal property located thereon, which taxes accrue from and after the date this Declaration is recorded, and such taxes shall be prorated between Developer and the Association as of the date of such recordation. Developer and its affiliates shall have the right from time to time to enter upon the Common Properties and other portions of the Neighborhood for the purpose of the installation, construction, reconstruction, repair, maintenance, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Properties or elsewhere within Fisher Island that Developer and its affiliates elect to effect, and to use the Common Properties and other portions of the Neighborhood for sales, displays and signs or for any other purpose during the period of construction and sale of any portion of the Neighborhood. Without limiting the generality of the foregoing, the Developer and its affiliates shall have the specific right to maintain upon any portion of the Neighborhood, sales, administrative, construction and/or other offices without charge, and appropriate easements of access and use are expressly reserved unto the Developer and its affiliates, and its and their successors, assigns, employees and contractors, for this purpose. Any obligation to complete portions of the Common Properties shall, at all times, be subject and subordinate to these rights and easements and to the above-referenced activities. Accordingly, the Developer shall not be liable for delays in such completion to the extent resulting from the need to finish the above-referenced activities prior to such completion.

## ARTICLE 5.

### MAINTENANCE OF HOMES AND LOTS

5.1.    Homes. Each Owner shall be solely responsible for maintaining all structures (including the Home) located on his Lot, all screens, fences, walls and glass surfaces on or within the Lot, and all mechanical components serving such structures (including, without limitation, air conditioning, electrical and plumbing, and wiring, panels and conduits for any alarms, monitoring or security devices, if any, installed in a Home) in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance of The Neighborhood. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of Fisher Island as initially constructed and otherwise improved by Developer (taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Control Board). Each Owner shall repaint or restain, as appropriate, the exterior portions of his Home (with the same colors as initially used on the Home or as otherwise approved by the Architectural Control Board) as often as is necessary to comply with the foregoing standards. Notwithstanding the foregoing, however, the Association shall, approximately once every five (5) years, repaint the exteriors of each Home (with the costs thereof to be paid for through assessments).

- 9 -

OFF. REC BK.
21004PG0399

5.2.  **Lots.** Each Owner shall be solely responsible for maintaining his Lot, including, without limitation, the trees, shrubbery, grass and other landscaping thereon, the irrigation system, the sidewalks and driveways thereon and the swimming pool thereon, in good working condition and all in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. The minimum (though not sole) standard for the foregoing shall be the general appearance of Fisher Island as initially constructed and otherwise improved by Developer, and as to landscaping, as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of applicable landscaping, as properly trimmed and maintained). The foregoing maintenance obligations of the Owner shall also apply to the land up to the centerline of any unimproved road right of way which a Lot abuts, unless the Association assumes such maintenance responsibilities. Notwithstanding the foregoing, the Association shall provide the following services to each Lot: routine lawn cutting, weed pulling and hedge trimming and routine pool chemical treatment and skimming. Any and all other necessary or desired landscape or pool maintenance shall be performed solely by the Owner, at the Owner's sole cost and expense, including, without limitation, seasonal plantings, landscape replacements, pool mechanical repairs, maintenance and replacements and pool surface repairs, maintenance and replacements.

5.3.  **Remedies for Noncompliance.** In the event of the failure of an Owner to maintain his Home or Lot in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon the Owner's Lot and perform such work as is necessary to bring the Lot or Home, as applicable, into compliance with the standards set forth in this Article. The remedies provided for herein shall be cumulative with all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

5.4.  **Costs of Remedial Work; Surcharges.** In the event that the Association performs any remedial work on a Home or Lot pursuant to this Article, the costs and expenses thereof shall be deemed a special assessment under Section 6.4 of this Declaration and may be immediately imposed by the Board of Directors. In order to discourage Owners from abandoning certain duties hereunder for the purpose of forcing the Association to assume same, and, additionally, to reimburse the Association for administrative expenses incurred, the applicable entity may impose a surcharge of not more than twenty-five percent (25%) of the cost of the applicable remedial work, such surcharge to be a part of the aforesaid special assessment. No bids need be obtained for any of the work performed pursuant to this Article and the person(s) or company performing such work may be selected by the Association in the sole discretion of the Board.

5.5.  **Right of Entry.** There is hereby created an easement in favor of the Association and its applicable designees over each Lot for the purpose of entering onto such Lot in the performance of the work herein described.

5.6.  **Limited Exemption.** To the extent that a Home on a Lot is under construction by the Developer or a builder bound to comply with construction-related requirements or restrictions imposed by the Developer, the provisions of this Article shall not apply to such Lot until such time as the construction of the Home is completed as evidenced by the issuance of a certificate of occupancy therefor.

- 10 -



**Fisher Island**

1 Fisher Island Drive

Miami Beach, FL 33109

**Case Report**

| | | | |
|---|---|---|---|
| **Report Type:** | **Complaint** | **Case #:** | **17-10-0069** |
| **Location:** | **6913 - FICA HOT LIST Valencia Drive** | | |
| **Submitted:** | **10/21/2017 6:00:51 PM** | | |
| **Written By:** | **Juan Meza** | | |
| **Caller:** | **Mobile Initiation** | | |

| Mobile Unit Event | Timestamp | User |
|---|---|---|
| Arrival | 10/21/2017 6:00:51 PM | Juan Meza |
| Departure | 10/21/2017 6:15:36 PM | Juan Meza |

| Mobile Unit Question | Response |
|---|---|
| Occurence Date/Time | 10/21/2017 06:00:07 PM |
| Name(s) of parties involved? | Elizabeth Haven |
| Describe Exact Location | Backyard in unit 6913. |
| Narrative | Elizabeth Hazen complained about the removal of her fence in her backyard. Elizabeth said she approved the removal of fallen trees that were in her property but not her fence. Pictures were taken.<br><br>Sergio Ortiz said the fence was part of debris and damage caused by Hurricane Irma. Sergio said removal of debris was authorized by property management and FICA.<br><br>Property manager Mercy Rodriguez was advised on complaint. Mercy said she'll contact Elizabeth on Monday. |
| Did you get any written statements? | No |
| Reporting Party - Contact Details | First Name: Elizabeth<br>Last Name: Haven<br>Custom: NA |
| Person Notified | First Name: Mercy<br>Last Name: Rodriguez<br>Company Name: Marquis<br>Custom: NA |

| **Attached Media Below** |
|---|





| Attached Media | Download |
|---|---|
| 10/21/2017 5:59:29 PM | https://pulse2.abdi.net/gTour/get/?i=063B391D-E2A1-4A76-B455-EA9F79832E33 |



10/21/2017 File Upload by Juan Meza (JPG) : 6913 backyard fence (Uploaded by: Juan Meza)

| 10/21/2017 6:25:40 PM | https://pulse2.abdi.net/gTour/get/?i=727EE2E4-AAF2-4C2F-9B9A-B534363DCA5E |



10/21/2017 File Upload by Juan Meza (JPG) : debris removed from 6913 (Uploaded by: Juan Meza)

















# EXHIBIT "F"

OFF. REC. BK.

2 1 0 0 4 PG 0 3 9 8

from time to time sooner at the sole election of the Developer), be conveyed by quit claim deed to the Association, which shall automatically be deemed to have accepted such conveyance. Beginning from the date this Declaration is recorded, the Association shall be responsible for the maintenance, insurance and administration of such Common Properties (whether or not then conveyed to the Association), all of which is to be performed in a continuous and satisfactory manner without cost to the general taxpayers of the County. It is intended that all real estate taxes assessed against that portion of the Common Properties owned or to be owned by the Association shall be (or have been, because the purchase prices of the Lots and Homes have already taken into account their rights in and to the Common Properties) proportionally assessed against and payable as part of the taxes of the applicable Lots within the Neighborhood. However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Properties, the Association shall be responsible for the payment of same (subject to protest or appeal before or after payment), including taxes on any improvements and any personal property located thereon, which taxes accrue from and after the date this Declaration is recorded, and such taxes shall be prorated between Developer and the Association as of the date of such recordation. Developer and its affiliates shall have the right from time to time to enter upon the Common Properties and other portions of the Neighborhood for the purpose of the installation, construction, reconstruction, repair, maintenance, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Properties or elsewhere within Fisher Island that Developer and its affiliates elect to effect, and to use the Common Properties and other portions of the Neighborhood for sales, displays and signs or for any other purpose during the period of construction and sale of any portion of the Neighborhood. Without limiting the generality of the foregoing, the Developer and its affiliates shall have the specific right to maintain upon any portion of the Neighborhood, sales, administrative, construction and/or other offices without charge, and appropriate easements of access and use are expressly reserved unto the Developer and its affiliates, and its and their successors, assigns, employees and contractors, for this purpose. Any obligation to complete portions of the Common Properties shall, at all times, be subject and subordinate to these rights and easements and to the above-referenced activities. Accordingly, the Developer shall not be liable for delays in such completion to the extent resulting from the need to finish the above-referenced activities prior to such completion.

## ARTICLE 5.

### MAINTENANCE OF HOMES AND LOTS

5.1.    <u>Homes</u>. Each Owner shall be solely responsible for maintaining all structures (including the Home) located on his Lot, all screens, fences, walls and glass surfaces on or within the Lot, and all mechanical components serving such structures (including, without limitation, air conditioning, electrical and plumbing, and wiring, panels and conduits for any alarms, monitoring or security devices, if any, installed in a Home) in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance of The Neighborhood. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of Fisher Island as initially constructed and otherwise improved by Developer (taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Control Board). Each Owner shall repaint or restain, as appropriate, the exterior portions of his Home (with the same colors as initially used on the Home or as otherwise approved by the Architectural Control Board) as often as is necessary to comply with the foregoing standards. Notwithstanding the foregoing, however, the Association shall, approximately once every five (5) years, repaint the exteriors of each Home (with the costs thereof to be paid for through assessments). 

- 9 -



OFF. REC. BK.

21004PG0399

5.2. **Lots.** Each Owner shall be solely responsible for maintaining his Lot, including, without limitation, the trees, shrubbery, grass and other landscaping thereon, the irrigation system, the sidewalks and driveways thereon and the swimming pool thereon, in good working condition and all in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. The minimum (though not sole) standard for the foregoing shall be the general appearance of Fisher Island as initially constructed and otherwise improved by Developer, and as to landscaping, as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of applicable landscaping, as properly trimmed and maintained). The foregoing maintenance obligations of the Owner shall also apply to the land up to the centerline of any unimproved road right of way which a Lot abuts, unless the Association assumes such maintenance responsibilities. Notwithstanding the foregoing, the Association shall provide the following services to each Lot: routine lawn cutting, weed pulling and hedge trimming and routine pool chemical treatment and skimming. Any and all other necessary or desired landscape or pool maintenance shall be performed solely by the Owner, at the Owner's sole cost and expense, including, without limitation, seasonal plantings, landscape replacements, pool mechanical repairs, maintenance and replacements and pool surface repairs, maintenance and replacements.

5.3. **Remedies for Noncompliance.** In the event of the failure of an Owner to maintain his Home or Lot in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon the Owner's Lot and perform such work as is necessary to bring the Lot or Home, as applicable, into compliance with the standards set forth in this Article. The remedies provided for herein shall be cumulative with all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

5.4. **Costs of Remedial Work; Surcharges.** In the event that the Association performs any remedial work on a Home or Lot pursuant to this Article, the costs and expenses thereof shall be deemed a special assessment under Section 6.4 of this Declaration and may be immediately imposed by the Board of Directors. In order to discourage Owners from abandoning certain duties hereunder for the purpose of forcing the Association to assume same, and, additionally, to reimburse the Association for administrative expenses incurred, the applicable entity may impose a surcharge of not more than twenty-five percent (25%) of the cost of the applicable remedial work, such surcharge to be a part of the aforesaid special assessment. No bids need be obtained for any of the work performed pursuant to this Article and the person(s) or company performing such work may be selected by the Association in the sole discretion of the Board.

5.5. **Right of Entry.** There is hereby created an easement in favor of the Association and its applicable designees over each Lot for the purpose of entering onto such Lot in the performance of the work herein described.

5.6. **Limited Exemption.** To the extent that a Home on a Lot is under construction by the Developer or a builder bound to comply with construction-related requirements or restrictions imposed by the Developer, the provisions of this Article shall not apply to such Lot until such time as the construction of the Home is completed as evidenced by the issuance of a certificate of occupancy therefor.

- 10 -

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                    Case No. 16-10389-AJC
                                              Chapter 11

_____ Debtor _____/

### BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE*
*DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]*

*The plan filed by Liza Hazan on November 15, 2017 can be confirmed by the court and thereby made*
*binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of*
*claims in each class and the holders of two-thirds in amount of equity security interests in each class*
*voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless*
*confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*This ballot is for creditor 6913 Valencia LLC for the following type of claim placed in the indicated class in*
*the indicated amount:*

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| ☒ General Secured | 4 | $ 4,779,726.03 |
| ☐ General Unsecured | | $ |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]    ☒ Accepts          ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed: _____

Print Name: 6913 VALENCIA, LLC

Address: 3839 NW BOCA RATON BLVD SUITE 100
BOCA RATON FL 33431

Phone:

Date: 12/29/17

### ★★★FILE THIS BALLOT ON OR BEFORE★★★

with:     Clerk of Bankruptcy Court
          ✓ 301 N. Miami Ave., Room 150, Miami, FL 33128
          ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
          ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

**If you have more than one type of claim against this debtor, separate ballots must**
**be filed and you should receive a ballot for each type of claim eligible to vote.**
**Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                                Case No. 16-10389-AJC
                                                         Chapter 11

_____ Debtor _____/

## BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]*

*The plan filed by Liza Hazan on November 15, 2017 can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

This ballot is for creditor 6913 Valencia LLC for the following type of claim placed in the indicated class in the indicated amount:

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| ☒ General Secured | 3 | $ 4,878,654.29 |
| ☐ General Unsecured | | $ |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]   ☒ Accepts          ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed: _Dan M Mulen_

Print Name: SELECTIVE ADVISORS GROUP, LLC

Address:     197 S. FEDERAL HIGHWAY SUITE 200 BOCA RATON FL 33432

Phone:

Date:     DECEMBER 29, 2017

### ★★★FILE THIS BALLOT ON OR BEFORE★★★

with:   Clerk of Bankruptcy Court
          ✓ 301 N. Miami Ave., Room 150, Miami, FL 33128
          ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
          ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

**If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote. Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN                                               Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,

                                                        Chapter 11
Debtor.

_____/

## DEBTOR'SMOTION TO STRIKE NLG, LLC'S OBJECTION TO CONFIRMATION [D.E. 592] AND OBJECTION TO AMENDED DISCLOSURE STATEMENT [D.E. 578]

Debtor,LIZA HAZAN (Hazan),by and through her undersigned attorney, movesto strike NLG, LLCøs (NLG) Objection to Confirmation (D.E. 592) and Objection to Amended Disclosure Statement (D.E. 578), and in support thereof states as follows:

1) The Court entered a Final Judgment against NLGin Adversary Proceeding 16-1439-AJC on November 1, 2017, Docket Entry 289, in which the Court ruled:

ORDERED AND ADJUDGED that Count I, II and III of Plaintifføs Third Amended Complaint and NLGøs Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1.      NLG, LLCøs judgment on the promissory note, the Scola Judgment, recorded at Book 26406 Page 3259-3260 CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN2008361591 the Note and the Mortgage recorded at Book 25559 Pages 4266-4272CFN200R0410013 NLG, LLCøs foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015 the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtorøs homestead Property known

as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida. Have been satisfied and paid, and are deemed SATISFIED OF RECORD and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2.          NLGøs proof of claim #17 is disallowed and **NLG, LLC has no claim against the Debtor** Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. D.E 238 in Adv. case 16-01439-AJC. (Emphasis supplied).

D.E. 289 in Adversary case 16-01439-AJC.

2)  NLG subsequently filed the above objections which the Court had previously disallowed and for which NLG has no standing.

3)  NLGøs Objection to Confirmation and Objection to Disclosure Statement are improper as the Court has already determined that NLG has no remaining claim in this case and no standing in this case.

4)  The Objection to Confirmation (D.E. 592) and Objection to Amended Disclosure Statement (D.E. 578) should be stricken.

WHEREFORE, Debtor,Liza Hazan, requests the Court strike Objection to Confirmation (D.E. 592) andObjection to Amended Disclosure statement (D.E. 578) and grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court

for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 8th day of January, 2018.

DAVID W. LANGLEY
Attorney for Debtor
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com
By:     /s/ David W. Langley
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will be emailed to:

Astrid Gabbe on behalf of NLG, LLC
astridgabbe@gmail.com

Juan Ramirez, Esq., Jr., Diaz, Reus, Targ, LLP,
jramirez@diazreus.com, jr@adrmiami.com

Form CGFCRD3 (12/1/15)

# United States Bankruptcy Court
### Southern District of Florida
#### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

In re:

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN** that a hearing will be held on **January 24, 2018** at **02:30 PM** at the following location:

**C. Clyde Atkins U.S. Courthouse**
**301 North Miami Avenue**
**Courtroom 7**
**Miami FL 33128**

to consider the following:

**Motion to Strike 578 Objection, 592 Objection to Confirmation of Plan Filed by Debtor Liza Hazan. ECF#599**

**THIS MATTER HAS BEEN SET ON THE COURT'S MOTION CALENDAR FOR A NON–EVIDENTIARY HEARING. THE ALLOTTED TIME FOR THIS MATTER IS TEN MINUTES.**

**THE MOVANT (OR MOVANT'S COUNSEL if represented by an attorney) SHALL SERVE A COPY OF THIS NOTICE OF HEARING** and, unless previously served, the above–described pleading on all required parties within the time frames required by the Bankruptcy Rules, Local Rules, or orders of the Court, and shall file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B). Any party who fails to properly serve any pleadings or other paper may be denied the opportunity to be heard thereon.

**PLEASE NOTE:** Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), iPads, tablets, pagers, personal data assistants (PDA), laptop computers, radios, tape–recorders, etc., **are not permitted** in the courtroom, chambers or other environs of this court. These restrictions **(except for cameras not integrated into a cell phone device)** do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. **No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshal's Service. See Local Rule 5072–2.**

**Dated: 1/9/18**

**CLERK OF COURT**
By: Susan Gutierrez
Courtroom Deputy

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

LIZA HAZAN,                                        Case No.: 16-10389-AJC

                                                   Chapter: 11

      Debtor.

_____/

## RESPONSE TO OBJECTION TO CLAIM NO. 5

Real Time Resolutions, Inc., as agent for The Bank of New York Mellon FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2006-F ("Secured Creditor"), by and through undersigned counsel, hereby files its response to the Debtor's Objection to Claim #5 (the "Objection") (Doc. No. 584), and in support thereof states:

1.     <u>Debtor's Bankruptcy Case:</u>   This case was commenced by the filing of a voluntary Chapter 11 petition on January 11, 2016 (the "Petition Date") by Liza Hazan (the "Debtor").

2.     <u>Collateral:</u>   Secured Creditor holds a mortgage lien against the Debtor's real property located at 3201 NE 183rd Street # 2904-2905, Aventura, FL 33160 (the "Property").

3.     <u>Secured Creditor's Claim:</u>   Secured Creditor timely filed Proof of Claim # 5.

4.     <u>Objection:</u>   The Debtor is seeking to disallow the claim in its entirety. However, the Debtor and Secured Creditor entered into a Stipulation of Settlement of Claim 5 (Doc. No. 128) on August 4, 2016. The Court entered an Agreed Order Approving Stipulation (Doc. No. 192) on September 8, 2016. The Stipulation of Settlement and Agreed Order are attached as **Exhibit A**.

5.     <u>Objection:</u>   The Debtor's Objection was filed in bad faith and the Debtor is

willingly disobeying a court order. The Objection was improperly filed, as there is already a court order on the matter and there has been no change in facts.

6. <u>Attorney Fees</u>: Secured Creditor requests that the attorney fees and costs are recoverable pursuant to 28 U.S.C. § 1927. Secured Creditor has expended additional resources to defend this Objection.

7. <u>Response</u>: Secured Creditor reserves the right to supplement and/or amend this Response.

WHEREFORE, the Secured Creditor requests that the Court enter an order overruling the Debtor's Objection to Claim, and for such other and further relief as the Court deems just and proper.

<div style="margin-left:40%">

McCalla Raymer Leibert Pierce, LLC

By: _/s/ Ashley Prager Popowitz_
Ashley Prager Popowitz
Florida Bar No. 72341
Attorney for Creditor
110 S.E. 6th Street, Suite 2400
Ft. Lauderdale, FL 33301
Phone: 754-263-1065
Fax: 754-263-1065
Email: Ashley.Popowitz@mccalla.com

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on January 10, 2018 to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference), and via U.S. Mail, First Class to Liza Hazan,  6913 Valencia Drive, Miami Beach, FL 33109.

By:     _/s/ Ashley Prager Popowitz_
        Ashley Prager Popowitz


Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com
Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com
Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com
Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com
Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com, nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com
Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com
Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com
Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com
Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com
Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com
Astrid Gabbe on behalf of Counter-Claimant NLG, LLC
astridgabbe@gmail.com
Astrid Gabbe on behalf of Creditor NLG, LLC
astridgabbe@gmail.com
Astrid Gabbe on behalf of Defendant NLG, LLC
astridgabbe@gmail.com
Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, jenna-munsey-6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com
Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, jenna-munsey-6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com
Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM
David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com, rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com;cpla@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com
James B Miller on behalf of Counter-Claimant NLG, LLC
bkcmiami@gmail.com
Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov
Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com, flbkecf@mccalla.com
Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com
Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,
rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com
Michael W Simon on behalf of Creditor S&S Collections, Inc.
ppaoletti@simonsigalos.com, dgasser@simonsigalos.com
Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

IN RE::                                                          Case    No:    **16-10389**    **AJC**

                                                                **Chapter 11**

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR.                    /

## STIPULATION OF SETTLEMENT OF CLAIM 5

        Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Real Time Resolutions, Inc., as agent for The Bank of New York Mella FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2006-F (Proof of Claim # 5) (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim 5, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

        1.      On 1/11/16 the debtor filed a voluntary petition under chapter 11 of the United States

Bankruptcy Code.

        2.      On 3/19/16 Creditor filed claim #5 in the amount of $188,416.67 as an unsecured

claim.

        3.      Parties agree claim 5 shall be paid in the amount of $12,000.00 on or before the effective date of the Chapter 11 Plan, creditor agrees to vote its $188,416.67 claim in favor of Debtor's plan of reorganization with the stipulated treatment.

        4.      This stipulation shall be submitted to the court for ratification and approval.

WHEREFORE, the debtor respectfully requests an order ratifying and approving this stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

/s/ Ashley Prager Popowitz, Esq.
Managing Attorney, Florida Bankruptcy
McCalla Raymer Pierce, LLC
110 S.E. 6th Street, Suite 2400 Fort Lauderdale, FL 33301
Office: (754) 263-1065 / Ext. 61065
Ashley.Popowitz@mrpllc.com
counsel for Creditor Real Time Resolutions, Inc.

and

/s/: Joel M. Aresty, Esq
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.



**ORDERED in the Southern District of Florida on September 7, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                    Case No: 16-10389 AJC
                                          Chapter 11
Liza Hazan
 Debtor.                    /

AGREED ORDER APPROVING STIPULATION (ECF 128)
Claim 5 Real Time Resolutions, Inc.

THIS CAUSE came on before the court September 1, 2016 at 10:30 AM upon the stipulation of settlement of claim 5, (ECF 128), which is upon the agreement of the parties, debtor and Creditor Real Time Resolutions, Inc., it is therefore

ORDERED that the stipulation is ratified and approved, and the parties are ordered to comply with its provisions.

### ###

Submitted by: Joel M. Aresty; Joel M. Aresty, Esq., is directed to serve a copy of this order on the parties.

1

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                                         Case

                                    No. 16-10389-AJC
                                    Chapter 11

_____Debtor_____/

### BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]*

*The plan filed by Liza Hazan on September 6, 2016 can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*This ballot is for creditor **JMB Urban 900 Dev.** .for the following type of claim placed in the indicated class in the indicated amount:*

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| ☐ General Secured | | $ |
| **X** General Unsecured | 13 | $664,380.47 |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]          ☒ Accepts         ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed: *David Fischer attorney in fact*

Print Name: DAVID FISCHER

Address: 111 S Wacker Dr Chicago 60606

Phone: 312-201-2641

Date: 1-10-18

### ★★★FILE THIS BALLOT ON OR BEFORE 1/10/18★★★

with:     Clerk of Bankruptcy Court
            ✓   301 N. Miami Ave., Room 150, Miami, FL 33128
            ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
            ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

         **If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote. Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

LIZA HAZAN,                                        Case No.:  16-10389-AJC

                                                   Chapter:  11

      Debtor.

_____ /

## RESPONSE TO OBJECTION TO CLAIM NO. 8

Real Time Resolutions, Inc., as agent for The Bank of New York Mellon FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2005-M ("Secured Creditor"), by and through undersigned counsel, hereby files its response to the Debtor's Objection to Claim #8 (the "Objection") (Doc. No. 583), and in support thereof states:

1.    <u>Debtor's Bankruptcy Case:</u>  This case was commenced by the filing of a voluntary Chapter 11 petition on January 11, 2016 (the "Petition Date") by Liza Hazan (the "Debtor").

2.    <u>Collateral:</u>  Secured Creditor holds a mortgage lien against the Debtor's real property located at 3201 NE 183rd Street # 2904-2905, Aventura, FL 33160 (the "Property").

3.    <u>Secured Creditor's Claim:</u>  Secured Creditor timely filed Proof of Claim # 8.

4.    <u>Objection:</u>  The Debtor is seeking to disallow the claim in its entirety. However, the Debtor and Secured Creditor entered into a Stipulation of Settlement of Claim 8 (Doc. No. 163) on August 16, 2016.  The Court entered an Order Approving Stipulation of Settlement of Claim 8 (Doc. No. 183) on August 31, 2016.  The Stipulation of Settlement and Order are attached as **Exhibit A**.

5.    <u>Agreement:</u>  Secured Creditor and the Debtor agreed that Secured Creditor has

relief from stay effective upon the filing of the Stipulation, August 16, 2016.

6. <u>Fifth Amended Plan</u>: The Fifth Amended Plan (Doc. No. 562) filed on November 15, 2017 provides for the treatment as outlined in the Stipulation of Settlement.

7. <u>Objection</u>: The Debtor's Objection was filed in bad faith and the Debtor is willingly disobeying a court order. The Objection was improperly filed, as there is already a court order on the matter and there has been no change in facts.

8. <u>Attorney Fees</u>: Secured Creditor requests that the attorney fees and costs are recoverable pursuant to 28 U.S.C. § 1927. Secured Creditor has expended additional resources to defend this Objection.

9. <u>Response</u>: Secured Creditor reserves the right to supplement and/or amend this Response.

WHEREFORE, the Secured Creditor requests that the Court enter an order overruling the Debtor's Objection to Claim, and for such other and further relief as the Court deems just and proper.

McCalla Raymer Leibert Pierce, LLC

By: _/s/ Ashley Prager Popowitz_
Ashley Prager Popowitz
Florida Bar No. 72341
Attorney for Creditor
110 S.E. 6th Street, Suite 2400
Ft. Lauderdale, FL 33301
Phone: 754-263-1065
Fax: 754-263-1065
Email: Ashley.Popowitz@mccalla.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on January 12, 2018 to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference), and via U.S. Mail, First Class to Liza Hazan,  6913 Valencia Drive, Miami Beach, FL 33109.

By:      /s/ Ashley Prager Popowitz
Ashley Prager Popowitz

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com
Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com
Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com
Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com
Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com
Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com, nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com
Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com
Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com
Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com
Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com
Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com
Astrid Gabbe on behalf of Counter-Claimant NLG, LLC
astridgabbe@gmail.com
Astrid Gabbe on behalf of Creditor NLG, LLC
astridgabbe@gmail.com
Astrid Gabbe on behalf of Defendant NLG, LLC
astridgabbe@gmail.com
Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, jenna-munsey-6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com
Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, jenna-munsey-6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com
Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com, rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com;cpla@dhaberlaw.com
David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com
James B Miller on behalf of Counter-Claimant NLG, LLC
bkcmiami@gmail.com
Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov
Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com, flbkecf@mccalla.com
Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com
Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,
rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com
Michael W Simon on behalf of Creditor S&S Collections, Inc.
ppaoletti@simonsigalos.com, dgasser@simonsigalos.com
Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

| | |
|---|---|
| **IN RE::** | **Case No: 16-10389 AJC** |
| | **Chapter 11** |
| Liza Hazan | |
| **a/k/a ELIZABETH HAZAN** | |
| **DEBTOR.                    /** | |

## STIPULATION OF SETTLEMENT OF CLAIM 8

     Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Real Time Resolutions, Inc. as agent for The Bank of New York Mellon FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A/, as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2005-M (Proof of Claim # 8) (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim 8, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

1.    On 1/11/16 the debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code.

2.    On 4/25/16 Creditor filed claim #8 in the amount of $322,846.72 as a secured claim on property at 1 E 62 St 1A New York, New York 10021.

3.    The Creditor shall have relief from stay without further court order upon the filing of the Stipulation of Settlement of Claims.

4.    Secured Creditor shall be permitted to exercise its alleged rights and/or to negotiate for loss mitigation or other relief with regards to Claim # 8. Creditor agrees to vote its $322,846.67 claim in favor of Debtor's plan of reorganization with the stipulated treatment.

5.    This stipulation shall be submitted to the court for ratification and approval.

WHEREFORE, the debtor respectfully requests an order ratifying and approving this stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

/s/ Ashley Prager Popowitz, Esq.
Managing Attorney, Florida Bankruptcy
McCalla Raymer Pierce, LLC
110 S.E. 6th Street, Suite 2400 Fort Lauderdale, FL 33301
Office: (754) 263-1065 / Ext. 61065
Ashley.Popowitz@mrpllc.com
counsel for Creditor Real Time Resolutions, Inc.

and

/s/: Joel M. Aresty, Esq
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as
indicated below, unless said party is a registered CM/ECF participant who has consented to
electronic notice, and the notice of electronic filing indicates that notice was electronically
mailed to said party.



**ORDERED in the Southern District of Florida on August 31, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                    Case No: 16-10389 AJC

LIZA HAZAN                                              Chapter 11
a/k/a Elizabeth Hazan

     Debtor.
_____/

**ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 8**

THIS CAUSE came before the Court upon the Stipulation of Settlement between Debtor-In-

Possession, Liza Hazan ("Hazan" or "Debtor") and Real Time Resolutions, Inc. as agent for The

Bank of New York Mellon FKA The Bank of New York, as Successor to JPMorgan Chase Bank,

N.A/, as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series

2005-M (the "Creditor") (collectively the "Parties"). By and through their counsel the Parties have

agreed to the treatment of Creditor's claim, as set forth below.

1. With regard to Claim No. 8 filed on April 25, 2016 in the amount of $322,846.72 as a

secured claim on property at 1 E 62 St 1A New York, New York 10021, the Creditor shall have

relief from stay without further court order.

2. Creditor is permitted to exercise its rights and/or to negotiate for loss mitigation or other relief with regard to Claim No. 8.

3. Creditor has agreed to vote its $322,846.67 claim in favor of Debtor's plan of reorganization with the stipulated treatment.

The Court being fully advised, it is

ORDERED:

The stipulation is APPROVED.

# # #

Copy to:

Ashley Prager Popowitz, Esq.
Managing Attorney, Florida Bankruptcy
McCalla Raymer Pierce, LLC
110 S.E. 6th Street, Suite 2400 Fort Lauderdale, FL 33301
Office: (754) 263-1065 / Ext. 61065
Ashley.Popowitz@mrpllc.com
Counsel for Creditor Real Time Resolutions, Inc.

Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
Counsel for Debtor Liza Hasan

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN                                              Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,

                                                        Chapter 11

Debtor.

_____/

**DEBTOR'S OMNIBUS MOTION TO STRIKE ALL FILINGS BY NLG, LLC**

Debtor, LIZA HAZAN (Hazan), by and through her undersigned attorney, moves to strike all filings by NLG, LLC's (NLG), or its claimed principal, Chris Kosachuk, and in support thereof states as follows: omnibus

1)   The Court entered a Final Judgment against NLG in Adversary Proceeding 16-1439-AJC on November 1, 2017, Docket Entry 289, in which the Court ruled, in part:

> This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that ***NLG has no standing in this case*** based upon the Note, Mortgage, claim or lien emanating therefrom. … (emphasis supplied).

D.E. 289 in Adversary case 16-01439-AJC.

2)   NLG and Kosachuk have filed the following objections and motions in this case for which they have no standing to prosecute:

- D.E. 290 - Motion to Convert Chapter 11 to Chapter 7 or Motion to Dismiss Case

- D.E. 328 – Motion for Sanctions Against Debtor

- D.E. 462 - Ex Parte Motion to Dismiss Case

- D.E. 465 - Motion to Convert Chapter 11 Case to Chapter 7 Case or Dismiss

- D.E. 481 - Motion to Appoint Trustee

- D.E. 489 - Motion to Compel Timely, Legible and Complete Monthly Operating Reports

- D.E. 531 - Second Motion to Compel Timely Monthly Operating Reports

- D.E. 555 – Motion to Strike Abusive, Defamatory Statements filed by Chris Kosachuk

- D.E. 578 - Objection to Amended Disclosure Statement

- D.E. 592 - Objection to Confirmation

- D.E. 606- Objection to Confirmation\

- D.E. 607 – Motion to Strike Chapter 11 Ballot

3) NLG has filed the following motion in Adversary Case No. 16-1439-AJC for which it has no standing to prosecute:

- D.E. 173 – Third Motion for Sanctions

4) NLG's filings are improper as the Court has already determined that NLG has no remaining claim in this case and no standing in this case.

5) NLG argues that the Court cannot confirm a Plan while an appeal of the Final Judgment is pending. This is incorrect. As NLG did not seek a stay pending appeal, there is no legal impediment to confirmation. *In re Tucker,* 1996 WL 139228, at 3 (Bankr. M.D. Fla. 1996), aff'd sub nom. *United States v. Tucker*, 96-292-CIV-T-21B, 1996 WL 741510 (M.D. Fla. Oct. 3, 1996).

6)  All such filings by NLG or Kosachuk and all future flings by NLG or Kosachukshould be stricken.

7)  The Debtor further requests an Order to Show Cause to NLG directing NLG and its counsel to show cause why they should not be sanctioned for these improper filings.

WHEREFORE, Debtor,Liza Hazan, requests the Court strike all motions and objections set forth above, order NLG and its counsel to show cause why they should not be sanctioned for these improper filings, and grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served via CM/ECF and by mail to attached service list to all parties of interest on this 19th day of January, 2018.

DAVID W. LANGLEY
Attorney for Debtor
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com
By: _____/s/ David W. Langley_____
              David W. Langley, Esq.
              Florida Bar Number 348279


## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan

tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will be emailed to:

Astrid Gabbe on behalf of NLG, LLC
astridgabbe@gmail.com

Juan Ramirez, Esq., Jr., Diaz, Reus, Targ, LLP,
jramirez@diazreus.com, jr@adrmiami.com

Page 1

```
 1                UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2

 3

 4
     IN RE:                    CASE NO. 16-10389-AJC
 5
     LIZA HAZAN,
 6
                Debtor.
 7   _____/

 8               ECF #519, 531, 543, 555

 9                   October 3, 2017

10               The above-entitled cause came on for hearing

11   before the Honorable A. JAY CRISTOL, one of the Judges in

12   the UNITED STATES BANKRUPTCY COURT, in and for the

13   SOUTHERN DISTRICT OF FLORIDA, at 301 North Miami Avenue,

14   Miami, Miami-Dade County, Florida on October 3, 2017,

15   commencing at or about 2:00 p.m., and the following

16   proceedings were had.

17

18

19

20

21

22          Transcribed from a digital recording by:
                 Cheryl L. Jenkins, RPR, RMR
23

24

25
```

Page 2

1

2

                          APPEARANCES:

3

4                  DAVID LANGLEY, Esquire
                  On behalf of the Debtor

5

6              MARSHALL SOCARRAS GRANT, by
              JOE M. GRANT, Esquire (via telephone)
7             On behalf of Selective Advisors Group

8

                   LUKE FORD, Esquire
9                 On behalf of NLG, LLC

10

                   STEARNS WEAVER, by
11                 ERIC SILVER, Esquire
              On behalf of Drew Dillworth, Receiver

12

13                 FURR & COHEN, by
                  ROBERT FURR, Esquire
14    On behalf of board the Managers of Spencer Condominium

15

              JOHANNA ARMENGOL, Trial Attorney
16               Office of the U.S. Trustee
                  Department of Justice

17

18                  ALSO PRESENT

19               Liza Hazan, Debtor

20           Chris Kosachuk (via telephone)

21       ECRO - Electronic Court Reporting Operator

22

                      - - - - - - -

23

24

25

Page 3

```
 1                  THE COURT:  2:30 calendar, Liza Hazan.
 2                  Counsel may state their appearances.  Let's
 3  start with those in the courtroom.
 4                  MR. LANGLEY:  Good afternoon, your Honor,
 5  David Langley here for Ms. Hazan, and she is in the
 6  courtroom with us today.
 7                  MR. FORD:  Good morning, Judge.  Luke Ford
 8  on behalf of NLG, LLC.  I'm here as a courtesy to former
 9  Judge Ramirez, who is out of the country and cannot attend
10  the hearing.
11                  THE COURT:  Okay.  Spell your last name for
12  our electronic recorder.
13                  MR. FORD:  Ford, F-o-r-d, like the car.
14                  THE COURT:  Ford.
15                  MR. FORD:  No relation.
16                  THE COURT:  And you represent -- and who is
17  your client?
18                  MR. FORD:  NLG, LLC, secured creditor.
19                  THE COURT:  NLG, thank you.
20                  Okay.  Who else?
21                  MS. ARMENGOL:  Johanna Armengol,
22  A-r-m-e-n-g-o-l, for the U.S. Trustee.  Good afternoon,
23  your Honor.
24                  THE COURT:  Very well.  Anyone else?
25                  MR. SILVER:  Good afternoon, your Honor.
```

1   Eric Silver, S-i-l-v-e-r, of Stearns Weaver, on behalf of

2   the court appointed receiver for NLG, LLC, that's

3   Mr. Drew Dillworth.  We're here just to observe today,

4   your Honor, and if you have any questions.

5               THE COURT:  Very well.  Now, out in

6   telephone land, Mr. Robert Forr (sic), are you out there?

7               MR. FURR:  Yes, Judge, Robert Furr, F-u-r-r,

8   attorney for Board the Managers of Spencer Condominium.

9               THE COURT:  Very well.  I'm sorry, it looked

10  like Forr here, but I know who you are, Mr. Furr.

11              MR. FURR:  Yes, sir.  Thank you.

12              THE COURT:  Mr. Grant, are you out there?

13              OPERATOR:  Your Honor, this is the operator.

14  Mr. Grant was connected and his line just dropped.  So I'm

15  hoping he'll dial back.

16              THE COURT:  Okay, and Chris Kosachuk, are

17  you out there?

18              MR. KOSACHUK:  Yes, your Honor.

19  Chris Kosachuk, K-o-s-a-c-h-u-k, on behalf of myself.

20              THE COURT:  Very well, and we'll see if

21  Mr. Grant comes back.  We have a number of matters here.

22  So let's start.

23              The first matter on the calendar was a

24  motion to dismiss the case filed by Mr. Chris Kosachuk.

25  You may proceed, Mr. Kosachuk.

Page 5

```
1                    Oh, pardon me, did I ---
2                    MR. LANGLEY:  Well, I was just going to
3     request that we do these in reverse order.
4                    THE COURT:  Oh.
5                    MR. LANGLEY:  Because I think if you hear
6     the argument on the motion to extend exclusivity, it
7     really deals with the repetitive filings by Mr. Kosachuk
8     and NLG, that has been nothing but disruptive in this
9     case, and we had a ruling from you back on December 7th
10    that none of those issues would be -- all the issues that
11    were set by Kosachuk and NLG for today have been heard
12    before, and you've ruled that you're not going to deal
13    with them until we resolve the issue of standing, and that
14    was what we tried before your Honor on July 13th, and
15    we're just waiting on the ruling.
16                   THE COURT:  Well --
17                   MR. LANGLEY:  My argument would be ---
18                   THE COURT:  -- as to the trial, we were
19    working on that order, but a little thing called some
20    hurricanes interfered with our ability to complete that.
21    Hopefully it would have been completed before today, but
22    it will be coming out in the immediate future, I hope, and
23    so unfortunately that doesn't resolve some of those
24    issues, but ---
25                   MR. GRANT:  Your Honor?
```

Page 6

```
 1                    THE COURT:  Is that you, Mr. Kosachuk?

 2                    MR. GRANT:  No.  Your Honor, this is

 3    Joe Grant appearing telephonically on behalf of Selective

 4    Advisors.  I had trouble with CourtCall.  I just wanted to

 5    make my appearance for the record.

 6                    THE COURT:  Okay.  Spell your last name for

 7    the electronic recorder.

 8                    MR. GRANT:  It's G-r-a-n-t on behalf of

 9    Selective Advisors.

10                    THE COURT:  Thank you.  Okay.

11                    MR. GRANT:  Thank you, your Honor.

12                    THE COURT:  So, there has been a request to

13    go in reverse order on this.

14                    Since Mr. Kosachuk has the first item on the

15    calendar, do you have any objection to going ahead with

16    the other matters, or do you wish to proceed with your

17    matter?

18                    MR. KOSACHUK:  Your Honor, I wish to proceed

19    with the motion to dismiss in the event that

20    (inaudible) --

21                    THE COURT:  All right.  Proceed, go ahead.

22                    MR. KOSACHUK:  -- then the rest of these

23    others motions become moot.

24                    THE COURT:  Well, go ahead, make your --

25    proceed with your motion.
```

1          MR. KOSACHUK:  Okay.  Your Honor, Bankruptcy

2    Code 1112(b) states that on request of a party in

3    interest, and after notice and a hearing, the Court shall

4    convert a case under this chapter to a case under

5    Chapter 7, or dismiss a case under this chapter, whichever

6    is in the best interest of the creditors and the estate

7    for cause unless the Court determines that the appointment

8    under Section 1104(a) of a trustee or examiner is in the

9    best interest of the creditors.

10          Section 1112(b) sets forth a non-exhaustive

11   list of circumstances that constitute cause to either

12   dismiss or convert the case, including substantial or

13   continuing loss, or diminution of the estate in the

14   absence of likelihood of rehabilitation.  The standard

15   applies when the debtor is cash flow negative, and

16   declining asset values are present, which we have both

17   here.  Also the debtor is unlikely to return to sound

18   financial footing within a reasonable period of time.  As

19   such cause exists in this case.

20          As of the most recent monthly operating

21   report, which is ECF 558, filed on September 26th, 2017,

22   this debtor has $3,096 in the debtor-in-possession bank

23   account.

24          Of the 20 operating reports, monthly

25   operating reports filed by this debtor, 15 of these

Page 8

```
 1   operating reports show negative cash flow.  For 2017 the
 2   debtor has negative cash flow of $32,349.
 3             Also, inside these monthly operating
 4   reports, it is disclosed that the debtor has gone to the
 5   debtor-in-possession bank and cashed over $50,000 worth of
 6   counter checks without any explanation whatsoever.
 7             THE COURT:  Anything further?
 8             MR. KOSACHUK:  Yes, your Honor.  Sorry, I
 9   lost track on my notes.
10             The additional reason for cause is an
11   undisclosed asset transfer, which the debtor has done in
12   the form of the Spencer condominium, and I believe
13   Mr. Furr is here representing the Spencer condo.
14             In regards to other issues for cause to
15   dismiss this case are the following:  The debtor has
16   failed to file monthly operating reports on time every
17   month but one time.  This constitutes cause for dismissal
18   under 1112(b)(4)(F).
19             The debtor has failed to pay taxes owed
20   after the date of the petition, which is January 11th,
21   2016, and these would be real estate and income taxes,
22   which constitutes cause for dismissal under 1112(b)(4)(I).
23             The debtor has failed to approve a
24   disclosure statement before the expiration of the
25   exclusivity period, i.e., that was July 11th, 2017, which
```

Page 9

1   constitutes cause for dismissal under 1112(b)(4)(J).

2             The debtor has an inability to consummate

3   substantial confirmation of a plan, which constitutes

4   cause for dismissal under 1112(b)(4)(M).

5             And then finally the debtor has -- the main

6   asset in this case is a property located at 6913 Valencia

7   Drive, the Fisher Island property.  In the beginning of

8   this case the debtor had filed in her schedules that this

9   asset was worth $12 million.  About five months later, in

10  May, the debtor filed an appraisal that listed the value

11  of this asset at $9.5 million.  Earlier this summer the

12  neighbor's house, at 6919 Valencia Drive, so just two

13  houses away, sold for $6.45 million.

14            Accordingly, so in the past 20 months, while

15  this case has languished in bankruptcy, the main asset of

16  this bankruptcy estate has diminished in value by

17  approximately $5.5 million.  Thereby, this asset is

18  completely underwater at this point in time.

19            And the final cause for dismissal has to do

20  with the New York City apartment, which I mentioned

21  earlier, which the debtor owned back in August of 2011,

22  and fraudulently conveyed the title to her friend,

23  Mr. Houle, who ultimately conveyed it to the debtor's

24  husband, Mr. Meehan.  Mr. Meehan is now busy in New York

25  trying to sell this apartment for approximately

1    $4 million.  None of this is disclosed.  They're trying to

2    abscond with funds that are property of the estate, and

3    this Court must stop this.

4                       Thank you, your Honor.

5                       THE COURT:  Thank you.

6                       Who else wishes to be heard?  Let's start

7    with the attorneys in the courtroom.

8                       MR. LANGLEY:  Yes, Judge.  David Langley for

9    Ms. Hazan.

10                      I don't know where to begin, Judge, there is

11   so much ---

12                      THE COURT:  Well, find a place and start.

13                      MR. LANGLEY:  Okay.  Well, first of all,

14   Mr. Meehan is not in New York.  He's right here in the

15   courtroom.  I guess second, and most important, is that

16   Mr. Kosachuk has absolutely no standing to raise any issue

17   in this case.  He's not a creditor.  He's testified under

18   oath in deposition that he conveyed any interest he held

19   in NLG many years ago, so he's not a shareholder of NLG.

20                      NLG, you haven't yet determined whether they

21   have any standing, and I would point out that this is the

22   fourth time they've tried to file this same motion, Docket

23   Entry 462 was an NLG ex parte motion to dismiss.  Docket

24   Entry 465, motion to convert or dismiss, Docket Entry 481,

25   motion to appoint a trustee, the same arguments, and

Page 11

1    Docket Entry 519, motion to dismiss or convert.

2                    When this was argued the last time,

3    your Honor ruled -- and it was then at least by NLG,

4    represented by competent counsel, and you ruled that

5    nothing was going to be determined on that motion until we

6    resolve the trial issue, which from what we're very happy

7    to hear, Judge, is that that's going to be resolved fairly

8    soon.

9                    Kosachuk has absolutely no standing here to

10   raise any issue.  He filed that because you already denied

11   the same motion filed by NLG, and what I would further

12   point out, Judge, we had that hearing on December 7.  We

13   had motions similar to what have been set for today.

14   There was Docket Entry 316, our motion for protective

15   order, because NLG was asking for discovery.  It's the

16   reverse, basically the identical issues as in Docket

17   Entry 531 set for today, you already ruled on that back in

18   December.  We filed a -- they filed a motion to strike

19   some of the allegations that they claim are false and

20   frivolous.  They filed that same thing before in response

21   to our motion for a protective order, and we filed a

22   reply, Docket Entry 332, where we went through the issues

23   that they raised -- that they're raising here today, we

24   went through those same issues point by point, where

25   they're saying it was false that we claimed, for example,

Page 12

1    that Mr. Kosachuk attacked one of Ms. Hazan's counsel,

2    Darius Marzec.

3                Well, we already responded to that back in

4    December, and filed an affidavit of a witness who saw

5    Mr. Kosachuk attack Mr. Marzec, and on and on.  That's

6    been raised.

7                Also scheduled later in this month is their

8    -- an identical motion for contempt, that was identical to

9    Docket Entry 290 that you already heard.

10               So, on December 7th, when we were here, and

11   we had all these same arguments from Mr. Kosachuk, at that

12   time through counsel, what your Honor ruled was that we

13   had to -- that there was still this outstanding issue of

14   standing.

15               And I brought the -- we have filed the

16   transcript, and in the transcript you stated that until

17   that issue of standing was resolved, you weren't going to

18   hear any of these matters.

19               So they keep bringing them up and, in fact,

20   what they have filed since you said we're not going to

21   hear any of those issues, they have filed in this

22   adversary case a fourth motion, a motion for default, and

23   when the clerk entered defaults you set those aside and

24   said that they had been improvidently entered.

25               That didn't stop them from filing another

Page 13

```
 1   motion for default, Docket Entry 191, Docket Entry 173, a
 2   third motion for sanctions, Docket Entry 226, a fourth
 3   motion for sanctions.  These are just repetitive filings
 4   by NLG and Mr. Kosachuk since you said we're not going to
 5   hear any of those issues until the main issues are
 6   resolved.
 7                In the main case they filed an objection to
 8   the disclosure statement, the same as what has been filed
 9   today, that was Docket Entry 431.  You already ruled on
10   that.  They're bringing that up again today.
11                432, an objection to our attempt to extend
12   exclusivity, you ruled against that.
13                450, they filed another objection to
14   disclosure statement, then they filed the four attempts to
15   dismiss that I discussed.
16                In the main case they filed a -- oh, we
17   filed the motion for contempt and sanctions because they
18   went back to the state court, after being denied stay
19   relief, and filed a motion in Judge Gordo's case, in the
20   state court.  So we filed a motion for sanctions.
21                So they filed another motion for stay
22   relief, after you had denied their first motion.  They
23   also filed a motion to appoint a trustee.  They filed
24   another motion to compel, identical to the one that's been
25   set for today, and a motion to strike.
```

Page 14

1        So we've had more than a dozen frivolous

2   filings by Mr. Kosachuk and NLG since you told them we're

3   not going to hear any of these issues until the main case

4   was resolved.

5        We had to drag them to trial kicking and

6   screaming, and we finally did get to trial on July 13th,

7   and until that is resolved, I would ask the Court, number

8   one, not to consider or hear any of these issues raised by

9   Mr. Kosachuk or by NLG; number two, to cancel the hearing

10  that's set on December 18th, and one more ---

11        THE COURT:  December 18th?

12        MR. LANGLEY:  October 18th, I'm sorry,

13  October 18th, on one of their frivolous motions, and we

14  obtained -- the last order extending exclusivity was

15  obtained in your absent from Judge Isicoff.  That took us

16  through September 11th.  The hurricane order extending

17  deadlines puts that out another month, but we still have a

18  concern that -- hopefully we'll have, and from what you're

19  telling us we'll have the ruling very soon, but until we

20  get a ruling, the timeframe under 1126 to extend

21  exclusivity as to everyone, we recognize has expired, but

22  under Section 105 your Honor has the ability to enjoin

23  parties from disrupting the bankruptcy case.

24        There are many cases that say where

25  Section 362 does not apply to a specific party, the Court

Page 15

1    can still enjoin that party, essentially put them under an

2    automatic stay using Section 105.

3                        We're asking for that same treatment as to

4    Mr. Kosachuk and NLG, that they be enjoined, or prescribed

5    from, or prohibited from filing a plan until we get a

6    ruling on whether they have any standing.  That's our

7    motion to extend that's filed today.

8                        On their three motions that are set for

9    today, I would ask that you not rule on any of those, and

10   one final issue, Judge, that's also a very big issue, as

11   you heard from Mr. Silver, a trustee was appointed in the

12   state court.  A judgment was obtained against NLG.  The

13   state court judge appointed Drew Dillworth as receiver

14   over NLG, and states that only Mr. Dillworth has the right

15   to come before any court and argue any motion.

16                       So, anything filed by NLG should be put on

17   hold until something is resolved in the state court and we

18   find out who is in charge, and it shouldn't be counsel in

19   the courtroom today, and it certainly shouldn't be

20   Mr. Kosachuk, who has absolutely no standing to argue

21   anything, and he's not a licensed attorney, and he can't

22   speak on behalf of NLG.

23                       THE COURT:  Thank you, Mr. Langley.  Let's

24   move down the line.  The next person in the courtroom is

25   -- is that Mr. Ford?

```
 1                  MR. FORD:  Yes, Judge, Mr. Ford.
 2                  I apologize, as I said, I'm here as a
 3       courtesy to Judge Ramirez.
 4                  I was prepared to argue the motion to compel
 5       timely, legible and complete the monthly operating
 6       reports.
 7                  I don't -- I'm not ready to argue, or I'm
 8       unable to argue the other motions that may be set for NLG,
 9       I wasn't aware of those.
10                  THE COURT:  And what I heard from
11       Mr. Langley, there is a question of whether or not NLG can
12       be represented, or whether Mr. Dillworth is now NLG, but
13       we'll get to that eventually.
14                  Let's move on to Mr. -- pardon me, to the
15       United States Trustee.
16                  MS. ARMENGOL:  Thank you, your Honor.
17       Johanna Armengol.  Several comments with regards to
18       Mr. Kosachuk's allegations in his motion.
19                  As to feasibility, your Honor, of the plan,
20       I believe that is an issue.  However, that's a
21       confirmation issue, and at the time of confirmation the
22       debtor will have to show that, in fact, the plan can be
23       funded if the votes are -- if enough votes are generated.
24                  With regards to exclusivity, your Honor, I
25       believe that if the debtor had until September 11th, it
```

Page 17

1   falls within the extension given by the administrative

2   order of this Court extending deadlines.  So ---

3                   THE COURT:  Yes, I think the hurricane

4   pushes that out.

5                   MS. ARMENGOL:  Correct, your Honor.

6                   So, I believe -- you know, the feasibility

7   is a big issue with our office, but that does not have to

8   be decided today.

9                   THE COURT:  Thank you, Ms. Armengol.

10                  Mr. Silver.

11                  MR. SILVER:  Thank you, your Honor.

12                  As I stated in my notice of appearance, I'm

13  just here to observe today.  I represent Mr. Dillworth,

14  who is the court appointed receiver of NLG.  That

15  receivership was instituted postjudgment.

16                  There has been a challenge to the judgment

17  in the state court proceeding in which Mr. Dillworth was

18  appointed.  We had originally filed a motion to substitute

19  as the party in interest in the adversary proceeding, but

20  withdrew it pending adjudication of that matter.

21                  I have talked to Mr. Dillworth.  He

22  understands that NLG, the entity for which he represents,

23  is being represented both in the main case and the

24  adversary by other counsel.  He's not asking me to

25  substitute in as counsel of interest -- or counsel for NLG

```
 1   in either the adversary or the main case as of yet.

 2               So, with respect to your comment as to

 3   authority to act for NLG, that's where we stand today.

 4               If your Honor has any more questions of the

 5   receiver, I'm happy to answer them.

 6               THE COURT:  No, thank you.

 7               All right.  Mr. Furr.

 8               MR. FURR:  Judge, Robert Furr for the Board

 9   of Governors of Spencer Condominium.  We don't have a

10   position on the motion today.

11               THE COURT:  No position.

12               As to Mr. Grant?

13               MR. GRANT:  Yes, your Honor, Joe Grant on

14   behalf of Selective Advisors.

15               We think it's premature to rule on any issue

16   to convert the case until the Court rules on the issues

17   that were heard at trial in mid-July.

18               Obviously we understand how complex the

19   issues and the facts were that we're dealing with in

20   respect of that trial, but I just think -- I agree with

21   Mr. Langley that I think it's a lack of standing issue,

22   number one, and, number two, I think whatever the Court

23   rules is going to dictate how this case moves forward,

24   depending on what that ruling is.

25               So I'd ask that, if anything, it should be
```

1    denied without prejudice, or dealt with after the Court

2    issues an order on the trial.

3                    THE COURT:  Very well.  I believe everyone

4    that has made an appearance has been heard.

5                    The Court has listened to the arguments, and

6    the Court believes, as just recently stated a couple of

7    times, that this matter is premature pending the outcome

8    of the order on the 13 July trial.  Therefore, I'm going

9    to direct that this will be a pending matter, and any of

10   the parties who have appeared here today may submit

11   proposed orders 15 days after the 13 July trial order is

12   entered and docketed.

13                   Now, we'll move on to the next page.  The

14   first one is the motion of Mr. Kosachuk to strike.

     Mr. Kosachuk, Court Paper 555, what say you?

15

16                   (No verbal response.)

17                   THE COURT:  Mr. Kosachuk?

18                   MR. KOSACHUK:  Yes, your Honor, I'm here.

19   This is Chris Kosachuk speaking.

20                   This is a motion to strike the abusive,

21   defamatory and irrelevant statements in the fourth amended

22   disclosure statement that the borrower and borrower's

23   counsel saw fit to include in this.

24                   As to the -- the nature of this, it's truly

25   bizarre.  They go on a personal attack of me.  They

Page 20

1    mention my name over 30 times in this disclosure statement

2    personally, yet they don't even mention NLG's final

3    judgment of foreclosure even once.

4                I believe that the Court should strike all

5    of the allegations that are contained in the disclosure

6    statement in regards to me, there are several pages of

7    them, including but not limited to those that I put right

8    in the motion, that I broke into the debtor's homestead on

9    Fisher Island, which I never did, I never stole the

10   debtor's mail, I didn't break into the debtor's attorney's

11   office, and it just continues on for pages and pages of a

12   personal attack against me that is not germane to the

13   issue at hand as to whether this debtor can put forth a

14   confirmable plan.

15               So I would ask the Court to strike the

16   portions of the disclosure statement that are personal

17   attacks on me.

18               Thank you.

19               THE COURT:  Well, Mr. Kosachuk, the

20   statements are made by one side, and denied my another.

21   That creates an issue of fact.  Whether they are

22   appropriate or they're not appropriate, that cannot be

23   resolved by a motion .  If you feel that we need to have a

24   trial on the validity or the right of those issues, I will

25   recommend that you communicate with Mr. Langley and see

1  what you can resolve, or if and when you'd like to have an
2  evidentiary hearing on those issues.

3          And so when you have an opportunity to
4  confer with him, you can either submit an agreed order, if
5  such can be reached, either resolving the matter, or
6  setting the matter for a trial, spelling out what issues
7  are to be tried.

8          Now, let's move on to the next matter.

9          MS. ARMENGOL:  Your Honor?

10          THE COURT:  Yes.

11          MS. ARMENGOL:  Johanna Armengol, and I rise
12  in hopes to facilitate some agreement with regards to the
13  motion to strike.

14          Looking at the disclosure statement as
15  needing sufficient information for a creditor to make a
16  decision whether to vote or not for the plan, a lot of the
17  statements that Mr. Kosachuk is referring to may not be
18  needed in order to accomplish that.

19          So, to the extent that the language is not
20  needed for a creditor to decide whether or not to vote for
21  the plan, I agree with Mr. Kosachuk, that language should
22  be stricken.

23          THE COURT:  All right.  Well, then United
24  States Trustee, I'm going to ask you to prepare an order
25  selecting those items which you deem are not necessary,

Page 22

1    and directing they be stricken, and if there remain any

2    other matters that are not resolved by that, then

3    Mr. Kosachuk and Mr. Langley will get together to either

4    agree on something or set them for trial.

5                    MR. LANGLEY:  Well, Judge, David Langley for

6    Ms. Hazan.  If I can be heard on this, Judge?

7                    I would respectfully disagree with

8    Ms. Armengol and, again, would point out, number one,

9    Mr. Kosachuk certainly has no standing to raise any issue

10   in a disclosure statement.  You stated that in the Bankest

11   opinion.  He's not treated in the plan.  He has nothing to

12   do with this disclosure statement, and he has no standing.

13                   Number two, these same facts have been in

14   every disclosure statement we have filed, and you heard

15   this before.  If you look at Docket Entry 332, it goes

16   through these allegations, the exact same allegations, A,

17   Allegation A in the motion set for hearing today, that

18   Mr. Kosachuk broke into debtor's homestead; allegation

19   addressed in 332, that Kosachuk broke into debtor's

20   homestead, documentation attached and filed in Docket

21   Entry 332, Exhibit A, order on Hazan's emergency motion to

22   vacate, directing Kosachuk to put Elizabeth Hazan in

23   possession of her premises.  We filed documentation in

24   332, documenting every single allegation, and these are

25   critical allegations.  This is an issue of fact as to

Page 23

1   whether -- fact questions, and an issue of believability

2   as to Mr. Kosachuk, and he really did break into the home.

3   We have a court order directing him to get out of the

4   house.  He really did push Mr. Marzec down into the snow.

5   We have an affidavit of a witness that we have filed that

6   saw that and can testify.

7              THE COURT:  Well, then, as I said, if you

8   can agree that those matters are agreed, then you and

9   Mr. Kosachuk can come up with an agreed order, and if you

10  cannot agree, then we'll set the matter for trial.

11             The fact that you have an affidavit doesn't

12  mean that it is established one way or the other.  If

13  necessary, if we have to have a trial on those matters,

14  we'll try them.

15             And in the meantime, since the United States

16  Trustee, in the trustee's expertise, believes that some of

17  those items are not significant for the purposes of the

18  disclosure statement, she's going to submit an order

19  striking them.

20             Thank you.

21             MR. LANGLEY:  I would just ask that

22  Ms. Armengol review Docket Entry 332.

23             THE COURT:  You are free to -- I'll ask

24  Ms. Armengol not to do this for at least five days, to

25  give either you or Mr. Kosachuk an opportunity to send her

Page 24

1    a memo as to what you think, or why you think certain

2    things should be deleted or kept.

3                    MR. LANGLEY:  Thank you, Judge.

4                    THE COURT:  Okay.  The next matter is,

5    motion to compel timely, legible and complete monthly

6    operating reports.  That's filed by NLG and, Counsel, you

7    said that you're not able to argue the other motions, is

8    that correct?

9                    MR. FORD:  Yes, I apologize, Judge, I wasn't

10   aware that the other motions were on the calendar.

11                   THE COURT:  All right, then we'll reset that

12   matter, and I'll direct you to get a date and reset it,

13   and obviously just no sooner than two weeks.  Okay.

14                   MR. FORD:  Thank you, Judge.

15                   THE COURT:  That brings us down to the last

16   matter, the motion to extend exclusivity.  As a matter of

17   hurricane law, it's already extended, and let's see,

18   United States Trustee, approximately when would you think

19   it would be due under the hurricane extension?

20                   MS. ARMENGOL:  Your Honor, Johanna Armengol.

21   I believe the day was October 12.

22                   THE COURT:  All right, and so that's the --

23   the date is extended to October 12th, and you want to go

24   further than that, Mr. Langley?

25                   MR. LANGLEY:  I wanted to go until after the

Page 25

```
 1    Court rules.  It sounds like we will be fine with
 2    October 12th.  I can always renew the motion if ---
 3                    THE COURT:  Well, that's only a few days
 4    away, isn't it?  I mean, let's not waste time coming back.
 5                    MR. LANGLEY:  Okay.
 6                    THE COURT:  Let's see, that ---
 7                    MR. LANGLEY:  I would say 30 days after a
 8    ruling is issued on the trial.
 9                    THE COURT:  So, then we'll indicate by
10    virtue of the hurricane and the pending motion -- I mean,
11    the pending order on trial, that we'll extend the time to
12    14 days after the order for trial -- the order on the
13    trial is entered and docketed.  You'll draw that order,
14    Mr. Langley?
15                    MR. LANGLEY:  Yes.
16                    THE COURT:  Very well, then I think we've
17    taken care of Hazan for the day.  Thank you all, and we'll
18    disconnect the phone folks and move on to the next matter
19    on the calendar, Legum versus Enbar.
20                    MR. LANGLEY:  Judge, just for clarification,
21    did you want me to draft the order on, delaying hearing on
22    the other matters until after you rule, or is the Court
23    doing that?
24                    THE COURT:  On that matter everyone -- all
25    right, yes, I think that's the simplest thing to do, you
```

1   just draw the order indicating that we'll -- orders are to

2   be submitted, proposed orders are to be submitted by

3   anyone who wants to submit one, that could be you,

4   Mr. Kosachuk, Mr. Furr, Mr. Grant, the U.S. Trustee,

5   Mr. Ford, Mr. Silver, if anyone wants to get on that

6   train, the orders are due 15 days after the trial order is

7   entered and docketed, and you'll draw that order,

8   Mr. Langley.

9           Thank you all.

10          MR. FORD:  Judge, also a quick clarification

11  on the NLG motions, you wanted them to be heard within two

12  weeks, or just reset within two weeks?

13          THE COURT:  Well, you can reset it whenever

14  you'd like.  If it's something that is not effected by the

15  pending order on the trial, you can set is it whenever

16  you'd like.  If it's impacted by the trial order, then you

17  want to wait until after the trial order comes out.  So

18  I'll leave that to your judgment.

19          MR. LANGLEY:  I believe what your Honor said

20  was not earlier than two weeks, not within two weeks, but

21  not earlier than two weeks.

22          THE COURT:  Yes.

23          MR. FORD:  Thank you.

24          THE COURT:  Yes, I said not to set it

25  earlier than two weeks, not earlier than two weeks, but if

Page 27

1    you think it needs to wait until after the trial, you can

2    make that decision.

3                    Thank you all, and now let's talk about

4    Legum versus Enbar.

5

6

7

8                    (Thereupon, the hearing was concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1

2

3                    CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE   :

7

8              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14              WITNESS my hand this 4th day of February,

15   2018.

16

17

18        _____

19             CHERYL L. JENKINS, RPR, RMR

20           Court Reporter and Notary Public
          in and for the State of Florida at Large
21             Commission #GG 138863
                December 27, 2021

22

23

24

25

Form CGFD17  (10/15/10)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:**

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE REGARDING FILING OF TRANSCRIPT AND DEADLINE FOR FILING NOTICE OF INTENT OR MOTIONS TO REQUEST REDACTION OF TRANSCRIPT

Notice is hereby given that an official transcript of a proceeding held on 10/3/2017 has been filed on 2/9/2018 by the court reporter in the above captioned matter.

Pursuant to the "Bankruptcy Court Guidelines on Electronic Availability of Transcripts and Procedures for Transcript Redaction", the parties have until **02/16/2018** to file with the court a local form "Notice of Intent to Request Redaction of Transcript." Parties timely filing the local form "Notice of Intent to Request Redaction of Transcript" shall, within 21 days of the date the transcript was docketed, unless otherwise ordered by the court, file a "Statement of Personal Data Identifier Redaction Request" which shall indicate, by page and line number, the location of the personal data identifiers for which redaction is being requested.

Parties seeking to review the unredacted transcript filed with the court may either (1) purchase a copy of the transcript from the court reporter: Ouellette and Mauldin Court Reporters, 28 West Flagler St., Suite 808, Miami, Florida 33130, (305) 358–8875; or (2) view a copy of the transcript at no charge in any of the clerk's three divisional offices.

If a "Statement of Personal Data Identifier Redaction Request" is filed, the redacted transcript is due **03/12/2018**.

Absent the filing of a timely motion related to redaction, or further order of the court, the transcript will be made available after **05/10/2018** for remote electronic access and at the clerk's office public terminals for viewing and printing.

**Dated: 2/12/18**

**CLERK OF COURT**
By: Lucie Fleurimond
Deputy Clerk

The clerk shall serve a copy of this notice on all case participants listed as appearances on the transcript.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:

LIZA HAZAN                                    Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,

                                             Chapter 11

          Debtor.
_____/

## MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF CONTROVERSY

> *Any interested party who fails to file and serve a written response to this motion within 21 days after the date of service stated in this motion shall, pursuant to Local Rule 9013-1(D), be deemed to have consented to the entry of an order in the form attached to this motion. Any scheduled hearing may then be canceled.*

Debtor, LIZA HAZAN a/k/a ELIZABETH HAZAN ("Debtor"), through undersigned counsel, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Local Rule 9013-1(D), files this Motion to Approve Compromise and Settlement of Controversy between the Plaintiff and Defendant in the related Adversary Proceeding titled LIZA HAZAN a/k/a ELIZABETH HAZAN, Plaintiff, vs. Fisher Island Community Association, Inc., Defendant, Case No. 18-01008-AJC, and states as follows:

1.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 11, 2016, Case No. 16-10389.

2.      The Debtor filed the above-referenced Adversary Complaint on January 9, 2018.

3.      The Debtor and the Defendant have agreed to settle this matter pursuant to the attached stipulation (the "Stipulation") and seek Court approval pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

4.       Rule 9019(a) of the Bankruptcy Rules provides that a court may approve a proposed settlement of a claim after notice and hearing. Acceptance or rejection of a compromise lies within the sound discretion of this Court. *In re Arrow Air, Inc.*, 85 B.R. 886, 890-91 (Bankr. S.D. Fla. 1988); *GMGRSST, LTD. V. Menotte (Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005).

5.       In ruling, the Court must determine whether a proposed settlement is fair or equitable. *Chira v. Saal (In re Chora)*, 367 B.R. 888, 896 (S.D. Fla. 2007). The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S & I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) (citing In re Bicoastal Corp., 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993)); *In re Arrow Air, Inc.*, 85 B.R. at 886.

6.       The case of *Justice Oaks II*[1] established a four-part test as to whether a proposed compromise should be approved: (i) the probability of success in litigation, (ii) the difficulties, if any, to be encountered in the matter of collection, (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessary attending it, and (iv) the paramount interest of the creditors and a proper defense to their reasonable views in the premises.

7.       Applying the foregoing, the proposed settlement satisfies the requirements of Bankruptcy Rule 9019. Notwithstanding a likelihood of success in the potential litigation, the resultant expense, inconvenience and delay would be contrary to the best interests of the parties.

8.       The parties submit that resolution in this manner set forth in **Exhibit "A"** is reasonable as required by Bankruptcy Rule 9019 and applicable law.

**WHEREFORE**, the Debtor/Plaintiff, requests that this Court enter an order (i) granting this Motion, (ii) authorizing the compromise and settlement as set forth herein by entering the

---

[1]*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).

proposed form of order attached hereto as **Exhibit "B"**, in the event that no written objections are filed within the time prescribed by Local Rule 9013-1(D), and (iii) granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States Bankruptcy Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that true and correct copy of the foregoing was filed electronically and served electronically or by mail to: Debtor, trustee, and all interested parties on this 5th day of March, 2018

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:     954-356-0450
Fax:     954-356-0451
E-mail: dave@flalawyer.com

By: ___*/s/ David W. Langley*_____
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*
Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Michael A. Friedman, mfriedman@gjb-law.com on behalf of NLG, LLC

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                    Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,

                                              Chapter 11

Debtor.
_____/

LIZA HAZAN a/k/a ELIZABETH HAZAN,

                                              ADV. NO.: 18-01008-AJC
Plaintiffs,

v.

Fisher Island Community Association, Inc.

Defendant.
_____/

## STIPULATION FOR SETTLEMENT

Plaintiff, LIZA HAZAN a/k/a ELIZABETH HAZAN ("Plaintiff"), through undersigned counsel and Defendant, FISHER ISLAND COMMUNITY ASSOCIATION, INC, LLC ("FICA"), through counsel, and allege as follows:

WHEREAS, on January 9, 2018, the Debtor filed an Adversary Complaint against FICA in the United States Bankruptcy Court for the Southern District of Florida, Case No. 18-01008-AJC;

WHEREAS, FICA timely responded and in said proceedings;

WHEREAS, the Parties have participated in good faith settlement negotiations and have reached an agreement to compromise the claims of the Debtor;

1

WHEREAS, in order to avoid the high costs and uncertainties of litigation, and without any of the Parties admitting any fault or liability, the Parties desire to settle this matter amicably; and

WHEREAS, the Parties wish to set forth the terms of their agreement in this Agreement.

NOW, THEREFORE, in consideration of the premises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      Recitals Incorporated. Recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Agreement.

2.      Pre-Petition Assessments. The Parties stipulate that FICA's claim for pre-petition assessments, if any, is only in rem. The Debtor is not personally liable for any pre-petition assessments. Any in rem liability on the pre-petition assessments only shall be determined in the Circuit Court for Miami-Dade County.

3.      Post-Petition Assessments. The Parties stipulate that FICA's claim for post-petition assessments shall be determined in the Circuit Court for Miami-Dade County. Post-Petition assessments are both collectible in rem and in personam, to the extent they are determined in the Circuit Court for Miami-Dade County.

4.      Motion to Reinstate Stay. As further consideration for this Stipulation, the Debtor shall withdraw her Motion to Reinstate Stay, D.E. 602 pending in the Main Case, Case No. 16-10389. Should FICA obtain a Final Judgment in a State Court case before Confirmation of the Debtor's Chapter 11 Plan, FICA will not be permitted to go to Foreclosure Sale after the entry of a Final Judgment by the Circuit Court for Miami-Dade County without a specific order allowing, pursuant to Judge Cristol's Order of November 23, 2016, D.E. 305 in the Main Case.

2

Should FICA obtain a Final Judgment in a State Court case after entry of a Confirmation Order on the Debtor's Chapter 11 Plan, FICA will be permitted to go to Foreclosure Sale after the entry of a Final Judgment by the Circuit Court for Miami-Dade County absent further order of the Bankruptcy Court.

5.      Objection to Confirmation. As further consideration for this Stipulation, FICA shall withdraw its Objection to Confirmation, D.E.598 pending in the Main Case, Case No. 16-10389.

6.      Debtor's Plan. The Debtor hereby modifies her Fourth Amended Plan, D.E. 563 in the Main Case, Case No. 16-10389, to remove any language concerning payment to FICA and to provide that all issues concerning FICA shall be resolved in the Circuit Court for Miami-Dade County. The Debtor will treat the secured portion of the alleged claim Direct, and Outside the Plan to the extent they are determined in the Circuit Court for Miami-Dade County.

7.      Debtor's Fence Damage Claim. The Parties agree that Debtor/Plaintiff Ms Hazan's claim against FICA for damage to her Homestead residence's fence shall be litigated in the Circuit Court for Miami-Dade County. This shall not be construed as an admission of liability or responsibility to either party.

8.      Fees and Costs. Each of the Parties agrees to bear its own attorneys' fees and costs with respect to this Agreement and this Adversary Proceeding.

9.      Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

3

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this

Agreement to be executed on the dates shown below:

By: _____ Date: 2/26/18
Liza Hazan aka Elizabeth Hazan
Debtor-in-Possession/Plaintiff

By: _____ Date: 2/23/18
_____ for Fisher Island Community Association, Inc.
Gary Snider, Pres. ; CEO

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States Bankruptcy

Court for the Southern District of Florida, and I am in compliance with the additional

qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that true

and correct copy of the foregoing was filed electronically and served electronically or by

mail to: Debtor, trustee, and all interested parties on this 16th day of February, 2018

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com

By: */s/ David W. Langley*
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
530 Lavers Cir #158 Delray Beach FL 33444
ROBERT.GUSRAE@GMAIL.COM

5

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN                                    Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,

                                             Chapter 11

        Debtor.
_____/


<u>**ORDER GRANTING MOTION TO APPRVE COMPROMISE AND**</u>
<u>**SETTLEMENT OF CONTROVERSY [D.E.   ]**</u>

**THIS  CAUSE**  came  on  before  the  court  on Debtor/Plaintiff's  Motion  to  Approve

Compromise and Settlement of Controversy [D.E.     ], and the Court having been advised of

agreement reached between the parties, and otherwise being fully advised in the premises, it is

**ORDERED**:

1. The Motion to Approve Compromise and Settlement of Controversy is **GRANTED**.

2. That the Settlement Agreement dated February 26, 2018, is approved by this Court and incorporated herein as this Court's Order, and the parties are ordered to comply with it.

3. The adversary proceeding, Case No. 18-1008-AJC, shall be dismissed without prejudice by separate order.

<div align="center">###</div>

**Submitted by:**

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:      954-356-0450
Fax:            954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on April 4, 2018.**

_A. Jay Cristol_

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION
### www.flsb.uscourts.gov

In re:

LIZA HAZAN,
     Debtor.

_____/

CASE NO.:  16-10389-AJC

CHAPTER 11

## ORDER GRANTING DEBTOR'S MOTION TO CONTINUE HEARING SET FOR

## 3/9/2018 ON ALL PENDING MATTERS [D.E. 660]

**THIS MATTER** came before the Court on March 9, 2018 at 2:00 p.m., upon the Debtors

Motion to Continue Hearings Set for 3/9/18 on all Pending Matters [D.E. 660]. The Court being

fully advised in the premises, it is

**ORDERED:**

1.  The Debtors Motion to Continue Hearings Set for 3/9/18 on all Pending Matters [D.E.

660] is GRANTED.

2. The following Motions are CONTINUED to May 8, 2018 at 3:00 p.m. at C. Clyde Atkins U.S. Courthouse, 301 North Miami Avenue, Courtroom 7, Miami, FL 33128.

  a. Fourth Amended Chapter 11 Plan of Reorganization filed by Debtor Liza Hazan D.E. 563

  b. Objection to Confirmation of Amended Chapter 11 Plan Filed by Creditor Valencia Estates Homeowners' Association, Inc. D.E. 590

  c. Motion to Strike NLG's Objection to Disclosure and Objection to Confirmation of Plan Filed by Debtor Liza Hazan. D.E. 599

  d. Motion to Reinstate Stay as to Fisher Island Community Association Filed by Debtor Liza Hazan. D.E. 602

  e. First Interim Fee Application for Compensation for David W. Langley, Attorney for Debtor, D.E. 605

  f. Motion to Strike Chapter 11 Ballot of Non-Creditor 6913 Valencia LLC Filed by Creditor NLG, LLC. D.E.607

  g. Motion to Strike Objection to Confirmation of Plan Filed by Debtor Liza Hazan D.E. 610

3. All Confirmation deadlines are extended.

###

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:    954-356-0450
Fax:         954-356-0451
E-mail: dave@flalawyer.com

Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming to Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on April 20, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                          Case No. 16-10389-AJC

LIZA HAZAN                                                  Chapter 11
a/k/a ELIZABETH HAZAN,

     Debtor.

_____/

**ORDER GRANTING MOTION TO APPROVE COMPROMISE AND**
**SETTLEMENT OF CONTROVERSY [D.E. 658]**

    **THIS CAUSE** came on before the Court upon Debtor Motion to Approve Compromise and

Settlement of Controversy [ECF #658] (the "Motion"). The Court having been advised of agreement

between the parties, and otherwise being fully advised in the premises, it is

    **ORDERED:**

    1. The Motion is **GRANTED**.

    2. The Settlement Agreement dated February 26, 2018, is approved by this Court and

incorporated herein as this Court's Order. The parties are directed to comply with terms thereof.

3. Adversary Proceeding No. 18-1008-AJC shall be dismissed without prejudice by separate order.

# # #

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

Attorney Langley is directed to serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on May 11, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                  CASE NO. 16-10389-AJC

LIZA HAZAN,                                             Chapter 11

      Debtor.

_____/

### ORDER CONTINUING HEARINGS HELD MAY 8, 2018 ON ALL PENDING MATTERS

**THIS MATTER** came before the Court on May 8, 2018 upon the Court's Order Granting

Debtors Motion to Continue Hearings on all Pending Matters [D.E. 663]. For the reasons stated on the

record, it is

**ORDERED:**

1. Hearings on the following Motions are **CONTINUED** to **May 30, 2018 at 2:00 p.m.** at C.

Clyde Atkins U.S. Courthouse, 301 North Miami Avenue, Courtroom 7, Miami, FL 33128.

    a.    Fourth Amended Chapter 11 Plan of Reorganization filed by Debtor Liza Hazan, D.E. 563;

    b.    Objection to Confirmation of Amended Chapter 11 Plan Filed by Creditor Valencia Estates Homeowners' Association, Inc., D.E. 590;

     c.     Motion to Strike NLG's Objection to Disclosure and Objection to Confirmation of Plan Filed by Debtor Liza Hazan, D.E. 599;

     d.     Motion to Strike Chapter 11 Ballot of Non-Creditor 6913 Valencia LLC Filed by Creditor NLG, LLC, D.E.607;

     e.     Motion to Strike Objection to Confirmation of Plan Filed by Debtor Liza Hazan, D.E. 610;

2. All Confirmation deadlines are extended.

<div align="center"># # #</div>

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279
The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming to Local Rule 2002-1(F).
**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

Page 1

1           UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF FLORIDA
2                  MIAMI DIVISION

3

4

5

    IN RE:                      CASE NO. 16-10389-AJC
6
    LIZA HAZAN,
7
            Debtor.
8   _____/

9

10

11          ECF# 563, 590, 599, 605, 607, 610

12

13                   May 8, 2018

14

15           The above-entitled cause came on for hearing

16   before the Honorable A. JAY CRISTOL, one of the Judges in

17   the  UNITED  STATES  BANKRUPTCY  COURT,  in  and  for  the

18   SOUTHERN  DISTRICT  OF FLORIDA, at 301 North Miami Avenue,

19   Miami, Miami-Dade County, Florida on Tuesday, May 8, 2018,

20   commencing  at  or  about  3:04 p.m.,  and  the  following

21   proceedings were had:

22

23

24      Transcribed from a Backup Digital Audio Recording by:
                Margaret Franzen, Court Reporter
25

Page 2

```
 1                        APPEARANCES:

 2

 3                DAVID W. LANGLEY, ESQUIRE
                  On behalf of the Debtor

 4

 5

                     FURR & COHEN, by
 6            ROBERT C. FURR, ESQUIRE (CourtCall)
     On behalf of the Board of Managers of Spencer Condominium

 7

 8

               MARSHALL SOCARRAS GRANT, by
 9            JOE M. GRANT, ESQUIRE (CourtCall)
              On behalf of Selective Advisors Group

10

11

                  DAVID B. HABER, P.A., by
12            DAVID B. HABER, ESQUIRE (CourtCall)
        On behalf of Valencia Estates Homeowners' Association

13

14

               JUAN RAMIREZ, ESQUIRE (CourtCall)
15                 On behalf of NLG, LLC

16

17         OFFICE OF THE UNITED STATES TRUSTEE, by
              JOHANNA ARMENGOL, ATTORNEY-AT-LAW
18                    Attorney/Advisor
              On behalf of the United States Trustee

19

20

                      ALSO PRESENT:
21

22

                    LIZA HAZAN, Debtor
23        ECRO - Electronic Court Reporting Operator

24

                     - - - - - - -

25
```

Page 3

1          THE COURT:  Good afternoon.  Be seated,
2   please.  Three o'clock calendar, appearances.
3          Robert Furr is reported to be out in
4   telephone land, are you out there?
5          MR. FURR:  Yes.  Good afternoon, Your Honor.
6   Robert Furr, attorney for the Board of Governors of the
7   Spencer Condominium.
8          THE COURT:  Very well.  Joe Grant?
9          MR. GRANT:  Good afternoon, Your Honor.
10  Joe Grant on behalf of Selective Advisors.
11         THE COURT:  You need to spell your last name
12  for the electronic recorder.
13         MR. GRANT:  Yes, Your Honor, G-r-a-n-t.
14         THE COURT:  Did I get your spelling,
15  Mr. Furr?  I didn't.
16         MR. FURR:  Sir, you did not.  Robert Furr,
17  F-u-r-r.
18         THE COURT:  And David Haber, are you out
19  there?
20         MR. HABER:  Your Honor, David Haber,
21  H-a-b-e-r, on behalf of Valencia Estates.
22         THE COURT:  Very well, and in the courtroom,
23  appearances.
24         MS. ARMENGOL:  Good afternoon, Your Honor.
25  Johanna Armengol, A-r-m-e-n-g-o-l, for the U.S. Trustee.

Page 4

```
 1                    MR. LANGLEY:  And good afternoon,
 2   Your Honor.  David Langley for the ---
 3                    MR. RAMIREZ:  Your Honor --
 4                    THE COURT:  Hello.  Is someone ---
 5                    MR. RAMIREZ:  -- I -- I was having trouble
 6   with the -- the CourtCall.  Juan Ramirez, R-a-m-i-r-e-z,
 7   for NLG.
 8                    THE COURT:  Oh, okay.  Mr. Ramirez, and who
 9   do you represent?
10                    MR. RAMIREZ:  NLG, LLC.
11                    THE COURT:  Okay.  You didn't appear on the
12   list, and welcome.
13                    And now in the courtroom, Mr. Langley, your
14   appearance.
15                    MR. LANGLEY:  Yes, Your Honor, thank you.
16   David Langley here for the debtor, Elizabeth Hazan, and
17   she's here in the courtroom with us today.
18                    THE COURT:  Very well, and we have a number
19   of matters on the calendar, and let's -- let's proceed
20   with them.
21                    Do you have a particular order, Mr. Langley?
22   I see the first matter, 590, was filed by David Haber,
23   that's an objection to confirmation that we have an
24   amended Chapter -- plan, 563, filed by you, Mr. Langley.
25                    MR. LANGLEY:  Yes, Judge.
```

Page 5

```
1                   THE COURT:  599, objection to confirmation.
2      Then we have 610, objection to confirmation; and then
3      we've got a fee application, 605; and we have a motion to
4      strike a ballot, 607; and I think that pretty well covers
5      it.
6                   What are we going to do first, Mr. Langley?
7                   MR. LANGLEY:  My preference, Your Honor, if
8      it's okay with you, those first two I think we can deal
9      with together, and I'd like to take those last and just go
10     through the -- the other motions and things that are set.
11                  THE COURT:  All right.  Well, tell me which
12     one and we'll talk about it.
13                  MR. LANGLEY:  599 --
14                  THE COURT:  599 --
15                  MR. LANGLEY:  -- that's a motion to strike.
16                  THE COURT:  -- objection to confirmation.
17                  MR. LANGLEY:  It's a motion to strike an
18     objection to confirmation.
19                  THE COURT:  To strike.  Okay.
20                  MR. LANGLEY:  And the basis of our motion to
21     strike NLG's objection, Judge, is the ruling in the
22     adversary of November 1 that found that -- and it's quoted
23     in our motion to strike, but that the title to the
24     property, the debtor's property, is forever quieted as to
25     all claims of NLG, and later in your final order, NLG has
```

Page 6

```
 1    no claim against the debtor, Liza Hazan, and has no
 2    standing.
 3              So we've got NLG with no claim, no standing,
 4    no lien and after that ruling, they filed Docket Entry
 5    592, an objection to the disclosure statement, which has
 6    already been approved by Your Honor.  I'm sorry, that was
 7    the objection to confirmation.
 8              They filed an objection to the amended
 9    disclosure statement, 578, and then related to this is our
10    motion to strike, 610, which raises that same argument as
11    to NLG's amended objection to confirmation.
12              So since the finding that they have no
13    standing, they have filed three objections, which we
14    believe should all be stricken, 592, 578 and 606, we would
15    request all be stricken.
16              THE COURT:  And, Mr. Ramirez, is that
17    your -- your response?
18              MR. RAMIREZ:  Yes, Judge.  We, as
19    Mr. Langley knows, have appealed the order, and I find it
20    ironic that Mr. Langley would call that a final order
21    because you just filed a pleading with Judge Gayles saying
22    that it was not final, and now he's saying it's final.
23    He's -- he's playing the system here, Judge.
24              THE COURT:  Well, have the -- if the orders
25    are on appeal, was -- was a supersedeas posted?  Is it --
```

Page 7

1    are the -- are the orders stayed or are they not?

2                    MR. LANGLEY:  No motion to stay, no bond

3    posted and the appeal has been dismissed.

4                    THE COURT:  Oh, really?  Are you aware,

5    Mr. Ramirez, Mr. Langley says the appeal has been

6    dismissed, is that accurate?

7                    MR. RAMIREZ:  No, the motion ---

8                    MR. LANGLEY:  There's a motion to reinstate

9    the appeal, but the appeal stands --

10                   MR. RAMIREZ:  (Inaudible.)

11                   MR. LANGLEY:  -- as dismissed as of this

12   moment.

13                   THE COURT:  Pardon me, one at a time,

14   Mr. Langley.

15                   Go ahead, Mr. Ramirez.

16                   MR. RAMIREZ:  Yeah, we filed a motion for

17   relief from the dismissal because it was based on an order

18   of a receiver in the state court action now that has been

19   vacated nunc pro tunc, so we anticipate the appeal will be

20   reinstated.

21                   And Mr. Langley called our appeal premature

22   because the order you signed was not a final order, now

23   that -- now he's saying that it is final.  I wish he would

24   make up his mind.

25                   THE COURT:  Well, if the appeal was

1  dismissed, that sort of makes it final.

2          Then you say that there's a motion to

3  reconsider the dismissal; is that ---

4          MR. RAMIREZ:  That is correct, that's the

5  motion to reconsider filed timely, and it's been under

6  advisement with Judge Gayles for two or three weeks.

7          MR. LANGLEY:  Judge, I ---

8          THE COURT:  All right.  When you're

9  finished, Mr. Ramirez, we'll hear Mr. Langley's response.

10          MR. LANGLEY:  Yes, Judge.  I refer to it as

11  a final judgment because the title of the document is a

12  final judgment.

13          The finality for appellate purposes is

14  obviously something very different, but you just hit the

15  nail on the head.

16          The order -- order out of the adversary says

17  they have no standing, they have no claim, and until an

18  appellate court says otherwise, that's the law of the

19  case, and they have not moved for a stay and they have not

20  posted a bond.

21          So they have no -- and we cited the Tucker

22  case in our motion that specifically says that without a

23  motion to stay, without an order staying the effect of the

24  order or judgment, they have no standing and they have no

25  right to be objecting to confirmation, and they're raising

Page 9

1    frivolous issues, in any event.

2                    And, Judge, as we've mentioned to you a

3    number of times, there are, I believe, five motions for

4    sanctions filed by NLG.  There -- NLG has been the subject

5    of several motions for violating the automatic stay and

6    now after we win the adversary proceeding, they file three

7    more objections in the case, just trying to cause the

8    debtor to incur additional fees, and we need --

9                    THE COURT:  These objections are filed --

10                   MR. LANGLEY:  -- to ask the Court to ---

11                   THE COURT:  -- in the District Court; is

12   that correct?

13                   I mean, the -- the appeal was in the

14   District Court; is that correct?

15                   MR. LANGLEY:  Yes, and we filed back in

16   November, I believe it was, a motion to dismiss, which was

17   granted in the ---

18                   THE COURT:  What's pending over there, is

19   that -- you said that's Judge Gayles?

20                   MR. LANGLEY:  Judge Gayles.  We filed a

21   motion to dismiss, he granted it.

22                   They have filed a motion for reconsideration

23   of the dismissal, that has not been ruled on, that's

24   pending before Judge Gayles, but ---

25                   THE COURT:  Anything scheduled for hearing

Page 10

1    in the District Court?

2                    MR. LANGLEY:  Not to my knowledge, no.

3                    THE COURT:  How about you, Mr. Ramirez,

4    anything scheduled for hearing?

5                    MR. RAMIREZ:  Not (inaudible).  We're

6    waiting for a ruling on the motion for relief from the

7    dismissal.

8                    THE COURT:  All right.  Well, there's a

9    question of whether or not -- of course, if the

10   reinstatement is granted, we have a different situation

11   then if it is denied.

12                   So we'll hold off ruling on 599 and 607 and

13   610 pending what comes out of the District Court.

14                   Let's move on to the other matters on the

15   calendar.

16                   MR. LANGLEY:  Also, Judge, just related to

17   that is the very last one, 607, that's NLG's motion to

18   strike a ballot, and again, if they have no standing, they

19   have no right to be objecting to a ballot.  The ballot

20   is ---

21                   THE COURT:  607 and 610 --

22                   MR. LANGLEY:  That is their motion to

23   strike.

24                   THE COURT:  -- and 6 -- and 599, all three

25   of them are objections, and if the order is final, then

Page 11

```
 1    the objections should be overruled.

 2                    MR. LANGLEY:  Okay.

 3                    THE COURT:  If the order is -- if the

 4    District Court takes the matter up, then we have to wait

 5    and see what comes out of it.

 6                    So as I said, I'm going to defer ruling on

 7    those three matters pending a report from the

 8    District Court as to how they're going to deal with it.

 9                    MR. RAMIREZ:  Thank you, Judge.

10                    THE COURT:  So I'm going to mark it, mark

11    599, 610, and 607 as deferred.

12                    Now, what's next, Mr. Langley?

13                    MR. LANGLEY:  We've got 605, which is a fee

14    application.

15                    THE COURT:  All right.  Tell me about it.

16                    MR. LANGLEY:  This was actually filed some

17    time ago, it's come up a couple of times, you just haven't

18    ruled on it yet.

19                    Fees, net fees, in the amount of

20    $129,377.50, and costs of $813.89.

21                    THE COURT:  Very well.  Has the

22    United States Trustee reviewed this matter?

23                    MS. ARMENGOL:  Johanna Armengol.  Yes, Your

24    Honor.  We do not have an objection with an 80 percent

25    award and a -- a holdback.
```

Page 12

```
 1              THE COURT:  Anyone else need to be heard on
 2  that matter?
 3              Very well, then, we'll approve subject to
 4  80 percent for fees and a hundred percent on costs.
 5              Okay.  What's next?
 6              MR. LANGLEY:  Well, Judge, that brings us to
 7  the plan and to confirmation.
 8              So where we stand with that, setting aside
 9  NLG for a moment, the only party that was -- that we had a
10  concern with about this is Valencia represented by
11  Mr. Haber, who's on the phone.
12              We've been speaking with him on and off,
13  including about ten minutes ago, and where we stand on
14  confirmation, Judge, is after two years and all this
15  litigation and successful outcomes on two adversaries, and
16  working out resolutions with just about everybody else,
17  and now very, very, very close with Mr. Haber and his
18  client, we're in a position to be ready for a consensual
19  confirmation, but we're a few days away from some funds
20  being released to the debtor to pay Mr. Haber's client and
21  to be able to say we have effective date payment money
22  sitting there.
23              So what we came here today to request, is
24  that we go through the confirmation process today.  We're
25  working with Mr. Haber to -- we agree that his client is
```

1   due the special assessment of 62,500.  We're a few dollars

2   apart on agreeing on attorney's fees, so we've agreed to

3   submit on paper to Your Honor to work out the attorney's

4   fees.

5              What we're asking for is to give us until

6   Friday to work this out with Mr. Haber and get his okay,

7   get him to remove his objection, which is 590, by paying

8   his client an agreed amount or whatever the Court says,

9   file the affidavits showing -- of the debtor showing that

10  the funds are on hand to pay all the effective date

11  payments, and then some, and administrative expenses, and

12  with everybody's consent, upload an order confirming the

13  plan.

14             THE COURT:  Well, Friday is the 11th and on

15  the 11th I'm getting on a plane to California to go to my

16  granddaughter's graduation, so I'm not sure if the 11th is

17  a workable date.

18             Can that maybe done on the 10th or the ---

19             MS. ARMENGOL:  Your Honor, if I may?

20             THE COURT:  Yes, Madam United States

21  Trustee.

22             MS. ARMENGOL:  Johanna Armengol.

23  Your Honor, we cannot support a conditional confirmation

24  today --

25             THE COURT:  Oh, I would agree.

Page 14

```
 1              MS. ARMENGOL:  -- because the funds are not
 2   there, it's putting the cart before the horse.
 3              THE COURT:  I agree.  We'll just ---
 4              MS. ARMENGOL:  So we -- we would have to
 5   come back.
 6              THE COURT:  We'll have to roll the
 7   confirmation.
 8              As I say, if we can do it on the 10th, or
 9   else we'll roll it to when I come back, which is -- I
10   think I come back on the 16th, is that right, Sue?
11              ECRO:  You'll be here on the 17th, Judge.
12              THE COURT:  I'll be here on the 17th.
13   So what works for you, Mr. Langley, the 10th or the 17th?
14              MR. HABER:  Your Honor, may I -- this is
15   Mr. Haber.
16              May I be heard on the issue of ---
17              THE COURT:  Certainly, Mr. Haber, you may be
18   heard.  What do you wish to be heard about?
19              MR. HABER:  There is a difference between
20   what Mr. Langley has said and what the Court's prior order
21   is.
22              It says that we have to be paid the $62,500,
23   and it was not timely paid pursuant to stipulation and
24   court order approving same, as well as the declaration,
25   but we're also entitled to interest from the date the
```

Page 15

1  payment was due, as well as obviously whatever association

2  charges, late charges there are, which they have in the

3  estoppel letter.

4              And then, of course, there's the $14,000 of

5  fees that we've agreed to submit no more than three pages

6  explaining why we feel we should get it, and why they feel

7  they shouldn't have to pay.

8              But I want to make sure Mr. Langley

9  understands, it's not just the $62,500, but it's the other

10  amounts in the estoppel, including interest until the date

11  of confirmation, the late fees to the association, as well

12  as an amount of attorney's fees that Your Honor awards.

13              THE COURT:  What about it, Mr. Langley?

14              MR. LANGLEY:  Well, Judge, up until ten

15  minutes before the hearing started, Mr. Haber and I were

16  just talking about 62.5, plus fees.  So without going back

17  and going through everything he said to us, I'm not sure

18  how significant the interest is.  This is the first I've

19  heard about late fees.

20              THE COURT:  Well, in any event, we're not

21  ready to go forward today anyhow, so it will give you time

22  to work with Mr. Haber --

23              MR. LANGLEY:  Sure.

24              THE COURT:  -- and come up with a number

25  that solves the problem if you're able to do so.

```
 1                  MR. LANGLEY:  And we can always include that

 2   in our three-page submission.

 3                  MR. HABER:  Your Honor, this is Mr. Haber

 4   again.

 5                  THE COURT:  Yes.

 6                  MR. HABER:  We have a court order requiring

 7   them to pay the interest.  They have received an estoppel

 8   that gives them a per diem on the interest.  This is not

 9   rocket science, and I don't need to be repeating it to

10   Mr. Langley because he and his client are well aware of

11   the stipulation, and the last three times we were in court

12   they have reconfirmed the same issue that says we're

13   entitled to pay -- be paid the late fees, as well as the

14   interest.

15                  And there's been no objection to that

16   previously, and the Court has even admonished Mr. Langley

17   and his client, and said whatever the deal you struck was

18   and the court order approved and your client signed,

19   that's the deal you're stuck with whether you like it or

20   not, good deal, bad deal, that's the deal she made.

21                  So to now say, well, we don't know that we

22   have got to pay interest, is just ridiculous.

23                  THE COURT:  Well, Mr. Haber, if that's the

24   status of the court order, that is what it is.

25                  However, since we're not going ahead with
```

Page 17

1    confirmation today, we can wait until we come back and

2    determine whether you resolve your other problems with

3    Mr. Langley, and if you have, and this remains -- still

4    remains a problem and the order says what you say it says,

5    then that would be a further impediment.

6              On the other hand, if Mr. Langley knows

7    something I don't know, you know, perhaps he can discuss

8    that with you, and this is an opportunity for the two of

9    you to get together and come up with whatever number is

10   necessary to solve the problem.

11             MR. LANGLEY:  If nothing else, Judge, we

12   would just like to know the amount.  The letter that I --

13   the last letter I have from Mr. Haber is addressed to me

14   and Ms. Hazan, and it gives that amount, 62,500, it gives

15   the 14,392 in attorney's fees, and $14.04 in costs, and no

16   mention of ---

17             THE COURT:  $14.04 in costs?

18             MR. LANGLEY:  Yes.

19             THE COURT:  What are you doing, Mr. Haber --

20             MR. LANGLEY:  We're going to ---

21             THE COURT:  -- riding first class on the

22   airlines?

23             MR. LANGLEY:  We're going to fight him on

24   that, Judge, but it doesn't mention interest or --

25             MR. HABER:  (Inaudible.)  Your Honor.

```
1              MR. LANGLEY:  -- it doesn't mention anything
2    else.
3              MR. HABER:  I was driving a NASCAR in
4    Daytona at a hundred fifty-five miles an hour.
5              THE COURT:  Wow.  Well, be careful, we want
6    to make sure you get back to collect your money.
7              MR. HABER:  I am on my way back, and I
8    survived it.  If I can survive confirmation of this case,
9    it will be more difficult than riding at a hundred
10   fifty-five miles an hour, but thank you, Your Honor,
11   for -- for being worried about my safety.
12             THE COURT:  Okay.  So, anyhow, did we select
13   a date, are we doing the 10th or the 16th?
14             MR. LANGLEY:  Your Honor ---
15             THE COURT:  I mean, on the 17th.
16             MR. LANGLEY:  Judge, Ms. Hazan is going to
17   be out of town after your return until May 27th.
18             THE COURT:  Well, by then I've got to go to
19   Jacksonville for another granddaughter's graduation.
20   Let's see, I'm trying to remember when I leave on that.  I
21   think I ---
22             MR. LANGLEY:  The 28th is Memorial Day.
23             THE COURT:  The 28th is Memorial Day and --
24   well, what about the 30th?
25             MR. HABER:  Your Honor, is there any way for
```

Page 19

1   you to do it by phone?  I have been told you'll extend the

2   hearings by phone when you're out of town, when we're all

3   here.  I would hate to see another month go by when we're

4   already two and a half years in.

5                   THE COURT:  Well, we're not talking about

6   another month, we're talking about a few more days.  I'm

7   back on the 29th or 30th, am I not?

8                   ECRO:  You're back on the 29th.

9                   THE COURT:  29th, and when -- when does

10  Ms. Hazan get in?

11                  MR. LANGLEY:  The 27th, so the 30th would be

12  fine with us.

13                  THE COURT:  30th or the 29th?

14                  MS. HAZAN:  The 30th.

15                  MR. LANGLEY:  30th.

16                  THE COURT:  All right.  Mr. Haber, the 30th

17  work for you?

18                  MR. HABER:  I'm checking right now,

19  Your Honor, hold on one second.

20                  MR. LANGLEY:  And what time would that be?

21                  THE COURT:  Well, let's find out if it's

22  going to work first.

23                  MR. HABER:  I have a mediation that day,

24  Your Honor, but what time, and I will break out and either

25  appear by phone or in person?

```
 1                    THE COURT:  Well, what works best for you,
 2    morning or afternoon?
 3                    MR. HABER:  I would either want it first
 4    thing in the morning at nine o'clock or at the end --
 5    towards the end of the day --
 6                    THE COURT:  All right.  How about
 7    three o'clock?
 8                    MR. HABER:  -- or first thing after lunch.
 9                    THE COURT:  How about three o'clock on the
10    30th, does that work?
11                    MR. HABER:  That's fine.
12                    THE COURT:  Does that work for you,
13    Mr. Langley?
14                    MR. LANGLEY:  Yes, Judge, that's terrific.
15    Thank you.
16                    THE COURT:  All right.  So then we're set to
17    30 May ---
18                    ECRO:  Your Honor, you have an evidentiary
19    hearing at three o'clock.
20                    THE COURT:  Oh, I do?  Hold on, and well,
21    then ---
22                    ECRO:  We can do the eleven o'clock, if the
23    attorneys are available.
24                    MR. LANGLEY:  Would two o'clock work?
25                    THE COURT:  Would two o'clock work,
```

Page 21

```
 1    Mr. Haber?

 2                    MR. HABER:  Yes.

 3                    THE COURT:  Do you think we can get it done

 4    in an hour?

 5                    MR. LANGLEY:  Yes.

 6                    THE COURT:  Two o'clock.  Okay.

 7                    MR. HABER:  (Inaudible.)

 8                    THE COURT:  2:00 p.m., and Mr. Langley will

 9    draw that order subject to no objection by the

10    United States Trustee.

11                    MS. ARMENGOL:  No objection, Your Honor.

12                    THE COURT:  Very well.  Okay.  So that takes

13    care of that matter, and 563 is the amended plan, so now

14    they're together.

15                    Now, what else do we have to do here today?

16                    MR. LANGLEY:  That's it, Judge.

17                    THE COURT:  And Ms. United States Trustee,

18    anything to add?

19                    MS. ARMENGOL:  Johanna Armengol.  No,

20    Your Honor.

21                    THE COURT:  All right, and Mr. Haber?

22                    MR. HABER:  This is Mr. Haber.  I would just

23    like to be able to appear by phone on the 30th

24    (inaudible).

25                    THE COURT:  Well, that's -- no objection,
```

Page 22

1  and -- and you know how to do it, you're out there now.

2              MR. HABER:  Yes.  Thank you.

3              THE COURT:  How about Mister -- Mr. Grant,

4  anything to add?

5              MR. GRANT:  Nothing to add, Your Honor.

6  Thank you.

7              THE COURT:  Mr. Furr?

8              MR. FURR:  No, sir, Judge.  That time is

9  fine with me.

10             THE COURT:  Mr. Ramirez?

11             MR. RAMIREZ:  Nothing, Judge.

12             THE COURT:  Very well.  Then we'll adjourn

13  this hearing and we'll look forward to seeing you all on

14  the 30th at two o'clock.

15             MR. LANGLEY:  Thank you, Judge.

16             THE COURT:  If we don't do it then, we'll do

17  it in 2021 or 2023.

18             Thank you all.

19             (Thereupon, the hearing was concluded.)

20

21

22

23

24

25

Page 23

1

2

3                          CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE   :

7

8                I, Margaret Franzen, Court Reporter and

9    Notary Public in and for the State of Florida at Large, do

10   hereby certify that the foregoing proceedings were

11   transcribed by me from a digital recording held on the

12   date and from the place as stated in the caption hereto on

13   Page 1 to the best of my ability.

14                WITNESS my hand this 11th day of May 2018.

15

16

17        _____

18                    MARGARET FRANZEN

19            Court Reporter and Notary Public
             in and for the State of Florida at Large
20                  Commission #GG187411
                     April 14, 2022

21

22

23

24

25

Form CGFD17 (10/15/10)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:**

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE REGARDING FILING OF TRANSCRIPT AND DEADLINE FOR FILING NOTICE OF INTENT OR MOTIONS TO REQUEST REDACTION OF TRANSCRIPT

Notice is hereby given that an official transcript of a proceeding held on 05/08/2018 has been filed on 5/18/2018 by the court reporter in the above captioned matter.

Pursuant to the "Bankruptcy Court Guidelines on Electronic Availability of Transcripts and Procedures for Transcript Redaction", the parties have until **05/25/2018** to file with the court a local form "Notice of Intent to Request Redaction of Transcript." Parties timely filing the local form "Notice of Intent to Request Redaction of Transcript" shall, within 21 days of the date the transcript was docketed, unless otherwise ordered by the court, file a "Statement of Personal Data Identifier Redaction Request" which shall indicate, by page and line number, the location of the personal data identifiers for which redaction is being requested.

Parties seeking to review the unredacted transcript filed with the court may either (1) purchase a copy of the transcript from the court reporter: Ouellette and Mauldin Court Reporters, 28 West Flagler St., Suite 808, Miami, Florida 33130, (305) 358–8875; or (2) view a copy of the transcript at no charge in any of the clerk's three divisional offices.

If a "Statement of Personal Data Identifier Redaction Request" is filed, the redacted transcript is due **06/18/2018**.

Absent the filing of a timely motion related to redaction, or further order of the court, the transcript will be made available after **08/16/2018** for remote electronic access and at the clerk's office public terminals for viewing and printing.

**Dated: 5/21/18**

**CLERK OF COURT**
By: Randy Eisenberg
Deputy Clerk

The clerk shall serve a copy of this notice on all case participants listed as appearances on the transcript.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
www.flsb.uscourts.gov

In re:
LIZA HAZAN                                              CASE NO.:16-10389-AJC

    Debtor.                                            CHAPTER 11
_____/

## NOTICE OF WITHDRAWAL OF NOTICE OF DEADLINE TO OBJECT TO DEBTOR'S STATEMENT [D.E 685]

PLEASE TAKE NOTICE that the Debtor, Liza Hazan, hereby withdraws the Notice of

Deadline to Object to Debtor's Statement [DE 685].

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court

for the Southern District of Florida, and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above

document was filed electronically and served via CM/ECF and by mail to attached service list to

all parties of interest on this 1st day of June, 2018.

> DAVID W. LANGLEY
> Attorney for Debtor
> 8551 W. Sunrise Blvd., Ste 303
> Plantation, Florida 33322
> Telephone:    954-356-0450
> Facsimile:    954-356-0451
> E-mail: dave@flalawyer.com
> By: ____/s/ David W. Langley_____
>         David W. Langley, Esq.
>         Florida Bar Number 348279

## SERVICE LIST

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

James B Miller on behalf of NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will be emailed to:

Astrid Gabbe on behalf of NLG, LLC
astridgabbe@gmail.com

Juan Ramirez, Esq., Jr., Diaz, Reus, Targ, LLP,
jramirez@diazreus.com, jr@adrmiami.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No: 16-ˇ10389 AJC
                                                Chapter 11
Liza Hazan
Debtor.

_____/

### INDIVIDUAL DEBTOR CERTIFICATE FOR CONFIRMATION REGARDING PAYMENT OF DOMESTIC SUPPORT OBLIGATIONS AND [FOR CHAPTER 11 CASES] FILING OF REQUIRED TAX RETURNS

As required under Local Rule 3020-1(B), the debtor in the above captioned matter certifies as follows:

1.  Payment of all postpetition domestic support obligations (check which paragraph applies).

    _X_ A.  Since the filing of this bankruptcy, the debtor has not been required by a judicial or administrative order, or by statute to pay any domestic support obligation as defined in 11 U.S.C. §101(14A); or

    _____ B.  As required by 11 U.S.C. §1129(a)(14) for chapter 11 cases or 11 U.S.C. §1225(a)(7) for chapter 12 cases, the debtor has paid, either directly or through the assigned trustee, all amounts that are required to be paid under a domestic support obligation and that first became payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation.

2.  As required by section 1228(b) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, all requested tax documents have been filed with the court.

I declare under penalty of perjury that the information provided in this certificate is true and correct.

Dated: 5/24/18
Joint Debtor's Signatures:
/s Liza Hazan

LF-71 (12/01/09)

United States Bankruptcy Court
Southern District of Florida

In re:                                                                    Case No. 16-10389-AJC
Liza Hazan                                                                Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 113C-1          User: cgrimm          Page 1 of 4          Date Rcvd: Jun 13, 2018
                             Form ID: pdf004        Total Noticed: 61

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 15, 2018.
```
db           +Liza Hazan,   6913 Valencia Drive,   Miami Beach, FL 33109-0601
cr           #+Aaronson Schantz Beiley P.A.,   c/o Geoffrey S. Aaronson,   100 SE 2nd Street 27th Floor,
               Miami, FL 33131-2122
cr           #+Board of Managers of Spencer Condominium,   c/o Robert C. Furr Esq,   Furr and Cohen PA,
               2255 Glades Rd #337W,   Boca Raton, FL 33431-7379
intp          Chris Kosachuk,   854 Pheasant Run Rd,   West Chester, PA 19382-8144
cr           +Fisher Island Community Association, Inc.,   c/o PeytonBolin,
               3343 West Commercial Blvd, Suite 100,   Fort Lauderdale, FL 33309-3425
cr           +JMB/Urban 900 Development Partners, Ltd,   JMB/Urban 900 Development Partners, Ltd,
               900 North Michigan Ave,   Chicago, IL 60611-1542
cr           +JPMorgan Chase Bank, National Association,   Shapiro, Fishman & Gache, LLP,
               c/o Steve Powrozek,   4630 Woodland Corporate Blvd.#100,   Tampa, FL 33614-2429
cr           +Joel M. Aresty P.A.,   Joel M. Aresty Esq.,   309 1st Ave S,   Tierra Verde, FL 33715-2231
cr            Miami-Dade County Tax Collector,   c/o Alexis Gonzalez,   200 NW 2nd Avenue, Suite 430,
               Miami, FL 33128-1733
cr         ++++S&S COLLECTIONS, INC.,   SIMON & SIGALOS, LLP,   3839 NW 2ND AVE STE 100,
               BOCA RATON FL 33431-5862
              (address filed with court: S&S Collections, Inc.,   Simon & Sigalos, LLP,
               3839 NW Boca Raton Blvd,   Suite 100,   Boca Raton, FL 33431)
cr           +Selective Advisors Group, LLC,   c/o Marshall Socarras Grant, P.L.,   197 S. Federal Highway,
               Suite 300,   Boca Raton, FL 33432-4946
cr           +SouthEast Financial, LLC,   Albertelli Law,   c/o Jeffrey S. Fraser,   PO Box 23028,
               Tampa, FL 33623-2028
cr           +U.S. Bank National Association,   SHD Legal Group, P.A.,   PO BOX 19519,
               Fort Lauderdale, FL 33318-0519
cr           +Valencia Estates Homeowners' Association, Inc.,   c/o Haber Slade, P.A.,
               201 S. Biscayne Blvd.,   Suite 201,   Miami, FL 33131-4324
93782387    +3343 West Commercial Blvd, 100,   3343 West Commercial Blvd, 10,
               Fort Lauderdale, FL 33309-3425
93430814     6913 Valencia, LLC,   3839 NW Boca Raton Boulevard,   West Palm Beach, FL 33413
93387507    +900 North Michigan, LLC,   c/o W. Allen Woolley, Esq.,   Wildman Harrold Allens Dixon, LLP,
               225 West Wacker Drive, Suite 3000,   Chicago, IL 60606-3007
93387508    +Allied Collection Service,   1607 Central Ave.,   Columbus, IN 47201-5370
93566115     American InfoSource LP as agent for,   DIRECTV, LLC,   PO Box 5008,
               Carol Stream, IL  60197-5008
93576621    +Board of Managers of Spencer Condominium,   c/o Robert C. Furr Esq,   2255 Glades Rd #337W,
               Boca Raton, FL 33431-7379
93387511    +Chase Bank, NA,   c/o Jennifer Kopf, Esq.,   Shapiro, Fishman & Gashe, LLP,
               2424 N. Federal Highway, Suite 360,   Boca Raton, FL 33431-7701
93400155    +Cross & Simon, LLC,   David G. Holmes, Esquire,   1105 North Market Street,   Suite 901,
               Wilmington, DE 19801-1202
93618098    +Cross & Simon, LLC,   c/o David Holmes, Esq.,   1105 North Market ST, Suite 901,
               Wilmington, DE 19801-1202
93387513    ++DIRECTV LLC,   ATTN BANKRUPTCIES,   PO BOX 6550,   GREENWOOD VILLAGE CO 80155-6550
              (address filed with court: Direct TV,   PO Box 6550,   Englewood, CO 80155-6550)
93486867    +David J. Fischer,   Locke Lord LLP,   111 South Wacker Drive,   Chicago, IL 60606-4409
93387515    ++FIRST NATIONAL COLLECTION BUREAU,   50 W LIBERTY ST,   STE 250,   RENO NV 89501-1973
              (address filed with court: First National Collection Bureau, Inc.,   610 Walham Way,
               Sparks, NV 89434)
93387516    +Fisher Island Community Association,   c/o Danielle Schneider, Esq.,   Peyton Bolin, PL,
               4758 W. Commerical Boulevard,   Fort Lauderdale, FL 33319-2877
93387517    +Focus Management,   10284 NW 47th St,   Fort Lauderdale, FL 33351-7967
93696048    +Fuerst Ittleman David & Joseph, P.L.,   c/o Robert P. Charbonneau, Esq.,
               501 Brickell Key Drive, Suite 300,   Miami, FL 33131-2624
93430816    +HSBC Bank USA, NA,   PO Box 2013,   Buffalo, NY 14240-2013
93486803    +JMB/Urban 900 Development Partners, Ltd.,   David J. Fischer,   Locke Lord LLP,
               111 South Wacker Drive,   Chicago, IL 60606-4409
93574744   ++++MICHAEL W. SIMON, ESQ.,   SIMON & SIGALOS, LLP,   3839 NW 2ND AVE STE 100,
               BOCA RATON FL 33431-5862
              (address filed with court: Michael W. Simon, Esq.,   Simon & Sigalos, LLP,
               3839 NW Boca Raton Blvd.,   Suite 100,   Boca Raton, FL 33431)
93532401     Miami Dade Water & Sewer Department,   Attn: Collection Branch/Bankruptcy Unit,
               P.O. Box 149089 Coral Gables, FL 33114
93514332     Miami-Dade County Tax Collector,   Attn: Paralegal Bankruptcy Unit,   200 NW 2 Ave, suite 430,
               Miami, Fla. 33128-1733
93387524    +Mount Sinai Medical Center,   PO Box 403429,   Miami Beach, FL 33140-1429
93387526    +NLG, LLC,   c/o Juan Ramirez, Esq.,   Diaz, Reus, & Targ LLP,   100 SE 2nd Street, Suite 3400,
               Miami, FL 33131-2122
93618099    +Newman Ferrara, LLp,   1250 Broadway, 27th Floor,   New York, NY 10001-3717
93387528    +Ray Garcia P.A.,   14850 SW 26th Street, Suite 204,   Miami, FL 33185-5931
93430820     Real Estate Holdings Group, LDC,   60 Market Square,   PO Box 364,   Belize City, Belize
93782386    +Robert A Gusrae,   3343 West Commercial Blvd, 100,   Fort Lauderdale, FL 33309-3425
```

District/off: 113C-1          User: cgrimm          Page 2 of 4          Date Rcvd: Jun 13, 2018
                             Form ID: pdf004        Total Noticed: 61

```
93574745   ++++S & S COLLECTIONS, INC.,   MICHAEL W. SIMON, ESQ.,   3839 NW 2ND AVE STE 100,
             BOCA RATON FL  33431-5862
             (address filed with court: S & S Collections, Inc.,   Michael W. Simon, Esq.,
             3839 NW Boca Raton Blvd., Suite 100,   Boca Raton, FL 33431)
93387533   ++++SIMON & SIGALOS,   C/O MICHAEL SIMON, ESQ.,   3839 NW 2ND AVE STE 100,
             BOCA RATON FL  33431-5862
             (address filed with court: Simon & Sigalos,   c/o Michael Simon, Esq.,
             3839 NW Boca Raton Boulevard, Suite 100,   Boca Raton, FL 33431)
93387531   +Scott Paul Mackoff, Esq.,   Mitofsky, Shapiro, Neville & Hazen LLP,
             152 Madison Avenue, 3rd Floor,   New York, NY 10016-5424
93430821    Select Advisors Group, LLC,   6499 Powerline Road, Suite 304,   Fort Lauderdale, FL 33309-2043
93430822   +Southeast Financial, LLC,   4000 N. Federal Highway, Suite 200,   Boca Raton, FL 33431-4527
93430823   +Spencer Condominium,   d/b/a Halstead Management Co., LLC,   c/o David A. Tane, Esq.,
             120 Broadway, Suite 948,   New York, NY 10271-0996
93387534    Sterling Emergency Serv. of Miami Beach,   PO Box 975213,   Dallas, TX 75397-5213
93387535   +Tracy Peterson, Esq.,   Braverman Greenspun, PC,   110 East 42nd Street, 17th Floor,
             New York, NY 10017-8515
93387536   +US Bank,   c/o Lawrence Lambert, Esq.,   Frankel Lambert LLP,   53 Gibson Street,
             Bay Shore, NY 11706-8369
93387537   +Valencia Estates,   c/o Jonathan Scott Goldstein, Esq.,   Haber Slade,
             201 S. Biscayne Boulevard, Suite 1205,   Miami, FL 33131-4317
93430824   +Valencia Estates Homeowners Assn, Inc.,   42205 Fisher Island Drive,
             Miami Beach, FL 33109-1291
93574593   +Wells Fargo Bank,   Box 5058 MAC P6053-021,   Portland, OR 97208-5058

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
93387509   +E-mail/Text: g20956@att.com Jun 14 2018 00:39:27     AT&T Mobility,   PO Box 536216,
             Atlanta, GA 30353-6216
93403145    E-mail/PDF: EBN_AIS@AMERICANINFOSOURCE.COM Jun 14 2018 00:45:31
             American InfoSource LP as agent for,   T Mobile/T-Mobile USA Inc,   PO Box 248848,
             Oklahoma City, OK  73124-8848
93387514   +E-mail/Text: bknotice@ercbpo.com Jun 14 2018 00:38:56     Enhanced Recovery Company,
             8014 Bayberry Rd,   Jacksonville, FL 32256-7412
93430815   +E-mail/Text: Bankruptcy@fpl.com Jun 14 2018 00:37:32     Florida Power & Light,
             ATTN: General Mailing Facility,   Miami, FL 33188-0001
93387519   +E-mail/Text: cio.bncmail@irs.gov Jun 14 2018 00:37:45     Internal Revenue Service,
             P.O. Box 7317,   Philadelphia, PA 19101-7317
93430819    E-mail/Text: collectionbranchlist@miamidade.gov Jun 14 2018 00:39:25
             Miami-Dade Water & Sewer Department,   PO Box 026055,   Miami, FL 33102-6055
93487331    E-mail/Text: bkdepartment@rtresolutions.com Jun 14 2018 00:39:04
             Real Time Resolutions, Inc.,   1349 Empire Central Drive, Suite #150,
             Dallas, Texas 75247-4029
93387529   +E-mail/Text: bkdepartment@rtresolutions.com Jun 14 2018 00:39:04     Real Time Solutions,
             1349 Empire Central Drive,   Suite 150,   Dallas, TX 75247-4029
93387538    E-mail/Text: wfmelectronicbankruptcynotifications@verizonwireless.com Jun 14 2018 00:37:28
             Verizon,   PO Box 1100,   Albany, NY 12250-0001
                                                                          TOTAL: 9


           ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
93387510    Car Southeast Financial, LLC,   Per DE#23
93387512    Cross Simon,   Per DE #23
93387518    Halsted Management Company,   Per DE #23
93387520    Jacobs Keeley, PLLC,   Per DE #23
93387521    Mark D. Cohen, PA,   Per DE #23
93387523    Mercedes Benz Financial Services,   Per DE #23
93387525    Newman Ferrara, LLP,   Per DE #23
93387527    Presidential Auto Leasing & Sales,   Per DE #23
93387530    Robert P. Lithman P.A.,   Per DE #23
93387532    Select Portfolio Servicing, Inc.,   Per DE #23
93430818*   Internal Revenue Service,   PO Box 7346,   Philadelphia, PA 19101-7346
93626630*  +Newman Ferrara LLP,   1250 Broadway, 27th Floor,   New York, NY 10001-3717
93544648*   Real Time Resolutions, Inc.,   1349 Empire Central Drive, Suite #150,
             Dallas, Texas 75247-4029
cr         ##+NLG, LLC,   Nicholas B. Bangos, P.A.,   c/o Nicholas B. Bangos,
             100 S.E. 2nd Street, Suite 3400,   Miami, FL 33131-2122
93387522   ##+Marzec Law Firm,   225 Broadway, Suite 3000,   New York, NY 10007-3067
                                                                 TOTALS: 10, * 3, ## 2
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

Addresses marked '++' were redirected to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.PR.2002(g)(4).

Addresses marked '++++' were corrected as required by the USPS Locatable Address Conversion System (LACS).

```
District/off: 113C-1          User: cgrimm          Page 3 of 4          Date Rcvd: Jun 13, 2018
                             Form ID: pdf004         Total Noticed: 61
```

***** BYPASSED RECIPIENTS (continued) *****

Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately.

Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable. Notices will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed. The debtor's attorney or pro se debtor was advised that the specified notice was undeliverable.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 15, 2018                    Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 13, 2018 at the address(es) listed below:

```
          Adam A Diaz    on behalf of Creditor    U.S. Bank National Association adiaz@shdlegalgroup.com,
          southerndistrict@shdlegalgroup.com
          Andrew D. Zaron, Esq.    on behalf of Creditor    JPMorgan Chase Bank, National Association
          azaron@leoncosgrove.com, jgomez@leoncosgrove.com
          Ashley Prager Popowitz    on behalf of Creditor    Real Time Resolutions, Inc.
          Ashley.popowitz@mccalla.com, flbkecf@mccalla.com
          Astrid Gabbe    on behalf of Creditor    NLG, LLC astridgabbe@gmail.com
          Astrid Gabbe    on behalf of Counter-Claimant    NLG, LLC astridgabbe@gmail.com
          Astrid Gabbe    on behalf of Defendant    NLG, LLC astridgabbe@gmail.com
          David B. Haber, Esq.    on behalf of Creditor    Valencia Estates Homeowners' Association, Inc.
          dhaber@dhaberlaw.com, rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com;cpla@dhaberlaw.com
          David W. Langley    on behalf of Plaintiff    Selective Advisors Group, LLC dave@flalawyer.com,
          emily@flalawyer.com;monica@flalawyer.com
          David W. Langley    on behalf of Debtor Liza  Hazan dave@flalawyer.com,
          emily@flalawyer.com;monica@flalawyer.com
          David W. Langley    on behalf of Plaintiff Liza  Hazan dave@flalawyer.com,
          emily@flalawyer.com;monica@flalawyer.com
          David W. Langley    on behalf of Counter-Defendant Liza  Hazan dave@flalawyer.com,
          emily@flalawyer.com;monica@flalawyer.com
          Elizabeth J Campbell    on behalf of Plaintiff    JMB/Urban 900 Development Partners, Ltd
          ecampbell@lockelord.com, marian.scott@lockelord.com
          Elizabeth J Campbell    on behalf of Creditor    JMB/Urban 900 Development Partners, Ltd
          ecampbell@lockelord.com, marian.scott@lockelord.com
          Eric J Silver    on behalf of Other Professional Drew  Dillworth esilver@stearnsweaver.com,
          rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsw
          eaver.com
          Geoffrey S. Aaronson    on behalf of Creditor    Aaronson Schantz Beiley P.A. gaaronson@aspalaw.com,
          5408891420@filings.docketbird.com
          James B Miller    on behalf of Counter-Claimant    NLG, LLC bkcmiami@gmail.com
          Jeffrey S Fraser    on behalf of Creditor    SouthEast Financial, LLC bkfl@albertellilaw.com,
          anhsalaw@infoex.com
          Joe M. Grant, Esq.    on behalf of Plaintiff    Selective Advisors Group, LLC jgrant@msglaw.com,
          jenna-munsey-6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com
          Joe M. Grant, Esq.    on behalf of Creditor    Selective Advisors Group, LLC jgrant@msglaw.com,
          jenna-munsey-6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com
          Joel M. Aresty, Esq.    on behalf of Creditor    Joel M. Aresty P.A. aresty@mac.com
          Joel M. Aresty, Esq.    on behalf of Creditor Liza  Hazan aresty@mac.com
          Joel M. Aresty, Esq.    on behalf of Plaintiff Liza  Hazan aresty@mac.com
          Michael A Friedman    on behalf of Creditor    NLG, LLC mfriedman@gjb-law.com,
          gjbecf@gjb-law.com;jsardina@gjb-law.com;gjbecf@ecf.courtdrive.com
          Michael A Friedman    on behalf of Attorney Michael  Friedman mfriedman@gjb-law.com,
          gjbecf@gjb-law.com;jsardina@gjb-law.com;gjbecf@ecf.courtdrive.com
          Michael W Simon    on behalf of Creditor    S&S Collections, Inc. ppaoletti@simonsigalos.com,
          dgasser@simonsigalos.com
          Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
          Rebecca N Casamayor    on behalf of Creditor    Valencia Estates Homeowners' Association, Inc.
          rcasamayor@dhaberlaw.com
          Robert A Gusrae    on behalf of Defendant    Fisher Island Community Association, Inc.
          ROBERT.GUSRAE@GMAIL.COM
          Robert A Gusrae    on behalf of Creditor    Fisher Island Community Association, Inc.
          ROBERT.GUSRAE@GMAIL.COM
```

```
District/off: 113C-1          User: cgrimm              Page 4 of 4          Date Rcvd: Jun 13, 2018
                              Form ID: pdf004           Total Noticed: 61
```

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)

       Robert C Furr, Esq   on behalf of Creditor   Board of Managers of Spencer Condominium
          ltitus@furrcohen.com,  atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com
       Robert P. Charbonneau, Esq.   on behalf of Creditor   Fuerst, Ittleman David & Joseph, P.L.
          rpc@agentislaw.com,
          nsocorro@agentislaw.com;bankruptcy@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com
       Steven G. Powrozek, Esq.   on behalf of Creditor   JPMorgan Chase Bank, National Association
          spowrozek@logs.com,  electronicbankruptcynotices@logs.com
       Tamara D McKeown   on behalf of Defendant Liza  Hazan tdmckeown@mckeownpa.com

                                               TOTAL: 33



**ORDERED in the Southern District of Florida on June 12, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,
     Debtor.

_____/

CASE NO.:  16-10389-AJC

CHAPTER 11

### <u>AGREED ORDER GRANTING REORGANIZED DEBTOR'S ORE TENUS MOTION TO ADMINISTRATIVELY CLOSE INDIVIDUAL CHAPTER 11 CASE AFTER CONFIRMATION</u>

THIS CAUSE came on before the court on May 30. 2018 upon the Reorganized Debtor's Ore Tenus Motion to Administratively Close Chapter 11 Case after confirmation and prior to the entry of an Order of Discharge, ("Reorganized Debtor's Motion") and all parties being in agreement and the Court having reviewed the file and otherwise being fully advised in the premises, it is:

ORDERED, Reorganized Debtor's motion is **GRANTED**.

The instant individual Chapter 11 case shall be administratively closed upon entry of this Order, without prejudice to the Reorganized Debtor filing a motion to reopen this bankruptcy case upon the satisfaction of all payments under the Reorganized Debtor's Fourth Amended Plan of Reorganization Doc 563 ("the confirmed Plan") to unsecured creditors and seeking the entry of an Order of Discharge at that time.

During the time that this bankruptcy is temporarily closed, the provisions of this Court's Order confirming Plan Of Reorganization, entered at Doc. 691; ("the Confirmation Order") shall remain in effect with respect to the treatment of creditors' claims that existed as, the bankruptcy petition date, as long as the Reorganized Debtor continues to be in compliance with the plan and the Confirmation Order.

If and when the Reorganized Debtor chooses to file a motion to reopen this bankruptcy case, any clerk of Court fees with the filing of the motion to reopen shall be waived.

Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the unsecured creditors have been made. The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C § 1141(d)(5) if all other conditions are satisfied.

The Court retains jurisdiction to enforce any and all terms of the Plan, the Confirmation Order and this Order.

<div align="center">###</div>

**Submitted by:**

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Reorganized Debtor*
8551 W. Sunrise Boulevard, Suite 303

Plantation, Florida 33322
Telephone:       954-356-0450
Fax:              954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming to Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                        Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,             Chapter 11

     Debtor,

_____/

### <u>NOTICE OF APPEAL</u>

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, appeals under 28 U.S.C. § 158(a) to the United States District Court for the Southern District of Florida from the ORDER CONFIRMING PLAN OF REORGANIZATION [ECF No. 691] signed on June 11, 2018, by U.S. Bankruptcy Judge A. Jay Cristol and entered on the docket on June 12, 2018 in this case a copy of which is attached to this Notice of Appeal and AGREED ORDER GRANTING REORGANIZED DEBTOR'S ORE TENUS MOTION TO ADMINISTRATIVELY CLOSE INDIVIDUAL CHAPTER 11 CASE AFTER CONFIRMATION [ECF No. 692] signed on June 12, 2018 by U.S. Bankruptcy Judge A. Jay Cristol and entered on the docket on June 13, 2018 in this case a copy of which is attached to this Notice of Appeal.

This Notice of Appeal relates directly to a pending appeal before the Honorable Darrin P. Gayles, captioned as *NLG, LLC, Appellant/Defendant v. Selective Advisors Group, LLC and Liza Hazan, Appellees/Plaintiffs* under case number 17-24127-DPG which stems from an adversary proceeding in this bankruptcy captioned as *Selective Advisors Group, LLC and Liza Hazan v. NLG, LLC,* case number 16-1439-AJC.

The names of all parties to the judgment, order or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

## Part 1. Identify the appellant

1. Name of Appellant: <u>NLG, LLC</u>

2. Position of Appellant: <u>SECURED CREDITOR</u>

**Appellant: NLG, LLC**
**Secured Creditor**

NLG, LLC
854 Pheasant Run Road
West Chester, PA 19382

**Attorneys**

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

Juan Ramirez, Jr.
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

## PART 2. Identify the subject of this appeal:

**1.** Describe the judgment, order or decree appealed from:

ORDER CONFIRMING PLAN OF REORGANIZATION [ECF No. 691] signed on June 11, 2018, by U.S. Bankruptcy Judge A. Jay Cristol and entered on the docket on June 12, 2018.

**2.** State the date on which the order was entered: <u>June 12, 2018</u>

## PART 3: Identify the other parties to the appeal

**1. Party:**

**Plaintiff and Counter Claim Defendant**          **Attorney**

Selective Advisors Group, LLC                    Joe M. Grant

c/o Marshall Socarras Grant, P.L.  
197 S. Federal Highway  
Suite 300  
Boca Raton, FL 33432

MARSHALL SOCARRAS GRANT, P.L.  
197 South Federal Highway, Suite 300  
Boca Raton, FL 33432  
Telephone No. 561-361-1000  
Facsimile No. 561-672-7581  
Email: jgrant@msglaw.com

### 2. Party:

**Debtor**

Liza Hazan a/k/a Elizabeth Hazan  
6913 Valencia Drive  
Fisher Island, FL 33109

**Attorney**

David W. Langley  
LAW OFFICES OF DAVID W. LANGLEY  
8551 W. Sunrise Blvd.  
Suite 303  
Fort Lauderdale, FL 33322  
Telephone No. 954-356-0450  
Fax No. 954-356-0451  
Email: dave@flalawyer.com

June 25, 2018.

### CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Respectfully submitted,

/s/ Astrid E. Gabbe  
The Law Office of Astrid E. Gabbe, P.A.  
Florida Bar No. 635383  
P.O. Box 4216  
Hollywood, FL 33083  
Tel. (954) 303-9882  
Fax. (954) 983-1427  
astridgabbe@gmail.com  
*Attorneys for NLG, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of foregoing was served via CM/ECF, email or U.S. Mail to the parties on the attached service list as indicated on this 25th day of June 2018.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

**Via CM/ECF/Email**

Joe M. Grant, Esq. on behalf of Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com; mg197ecfbox@gmail.com;sleary@msglaw.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Juan Ramirez, Jr. Esq. on behalf of Secured Creditor NLG, LLC
jr@adrmiami.com



**ORDERED in the Southern District of Florida on June 11, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                           Case No: 16-10389 AJC
                                                 Chapter 11
Liza Hazan
 Debtor.                          /

ORDER CONFIRMING PLAN OF REORGANIZATION

    THIS MATTER came before the Court on May 30, 2018 at 2:00 PM. upon Doc 563 Liza Hazan a/k/a Elizabeth Hazan's Fourth Amended Plan of Reorganization and Doc 562 Liza Hazan a/k/a Elizabeth Hazan's Fifth Amended Disclosure Statement both filed 11/15/17 proposed by (the "Debtor" or "Proponent") and Order Approving Amended Disclosure Statement and Setting Hearing on Confirmation of Plan entered 12/13/17 Doc 580.

    In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i) *Certificate on Acceptance of Plan and Tabulation of Ballots Filed by Debtor Doc 681 ,* (the "Ballot Certificate") and (ii) *Confirmation Affidavit Filed by Debtor Doc 680,* (the "Confirmation Affidavit"). The Court has also: (i) reviewed and considered the entire record in this Chapter 11 Case, including the *Proponent's Disclosure Statement* and the Plan; (ii) considered the argument of counsel; (iii) considered the testimony of the Debtor as set forth in the Confirmation Affidavit which was proffered at the Confirmation Hearing without objection, and representations of counsel at the hearing, and (iv) considered the other evidence presented at the hearing.

    The only creditors who previously objected to or voted against the plan were present, and announced that they were changing their votes to support the plan or had no objection.

# I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure. Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises,* 256 B.R. 377, 385 n,2 (Bankr. N.J, 2000); *In re Antar,* 122 B,R, 788, 789 (Bankr. S.D. Fla. 1990).

    A. The Court conducted a hearing to consider approval of the Disclosure Statement and Plan filed by the Debtor.

    B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan. Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

    C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(I) and (b)(2)(L), 1334(a) and (b), the United States District Court's general Order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

    D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

    E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

    F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly), satisfies section 1123(a)(1) of the Bankruptcy Code;

    G. Articles II through V of the Plan specify any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfy section 1123(a)(2) and (3) of the Bankruptcy Code;

    H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment, if applicable, and accordingly, satisfies section 1123(a)(4) of the Bankruptcy Code;

    I. The Disclosure Statement Article III sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code; the Plan will be funded through funds from the ongoing operation of the Debtor's properties and jobs;

    J. Each of the Voting Classes have accepted the Plan in the requisite number of

2

ballots, and in the requisite dollar amount, as required pursuant to 11 U.S.C
§ 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly set forth the tabulation of votes, as required by the
Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the
Southern District of Florida;

L. The Plan was voted on by all Classes of Impaired Claims that were entitled to
vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation
Procedures Order;

M. The Ballot Certificate and evidence at the hearing reflects that all Classes have accepted or
not rejected the Plan;

N. All other objections to confirmation were announced to be settled at the Confirmation
Hearing;

O. The Plan complies with all applicable provisions of the Bankruptcy Code,
including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under
the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the
Debtor as the Proponent;

P. The Proponents of the Plan complied with all applicable provisions of the
Bankruptcy Code, including 11 U.S.C. § 1129;

Q. The Plan has been proposed and submitted to all Creditors and Interest Holders in good
faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R. All payments made, or to be made, by the Debtor in connection with this Chapter 11 case or
in connection with the Plan either have been approved by or are subject to the approval of the
Bankruptcy Court, including applications for compensation and reimbursement of expenses
and, therefore, the Plan satisfies the requirements of 11 U .S.C. § 1129(a)(4);

S. The Proponent of the Plan has disclosed the identity of the individual Reorganized Debtor,
who will serve after the Confirmation Date and, therefore, the Plan satisfies the requirements
of II U.S.C. § 1129(a)(5);

T. The Plan does not discriminate unfairly, is fair and equitable, and otherwise
complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to
each Class of Claims or Interests that are impaired under the Plan, including without limitation,
creditors holding Unsecured Claims who will receive more on account of their Claims under
this Plan, than they would receive in a chapter 7 liquidation;

U. The Plan and Disclosure Statement were accompanied by projections that support the
financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11U.S.C. §
1129(a)(11) are satisfied;

V. The ongoing operation of the properties and incomes of Debtor will provide sufficient funds available for the payment in whole of: (i) Allowed Administrative Expense Claims (unclassified), which will be paid on the Effective Date; (ii) United States Trustee's Fees (unclassified); secured claims and a dividend to unsecured creditors.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS**:

1**.** The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129.

2. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All of the Terms and provisions of the Disclosure Statement and Plan are approved.

4. There are no allowed Administrative Expense Claims other than those of the Debtor's professionals and US Trustee fees. Administrative Expense Claims related to professional fees and costs shall be awarded by separate order of the Court.

5. Discharge. Because the Debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the Court may grant a discharge to the Debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and **(iii)** subparagraph (C) permits the court to discharge; and **(C)** the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the Debtor; and **(ii)** there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

6. As of the Effective Date all pre-petition property of the estate shall re-vest in the Reorganized Debtor.

7. Any judgment obtained in any court other than this Court is null and void as a determination of the individual liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 USC § 1141.

8.  All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived

9. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

10. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within ten (10) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a order by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

11. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and upon this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court approved local form.

12. The Reorganized Debtor shall pay all allowed claims at such time an in such amounts as provided for in the Plan.

13. The failure to reference or address all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, except as otherwise provided herein.

14. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacation of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

15. The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the

Plan, the Disclosure Statement, the Modification, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Orders and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). The Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

16. **All executory contracts and unexpired leases listed in Article VI of the Plan are deemed either assumed or rejected as indicated in the Plan as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as they deem appropriate in the exercise her business judgment without the need for a motion and hearing in this Court.**

17. The Bankruptcy Court shall retain jurisdiction:

(a) To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b) To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c) To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d) To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e) To determine the validity, extent and priority of all liens, if any, against property of the estate;

(f) To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

(g) To determine all objections to Administrative Claims;

(h) To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

(i) Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

(j) To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

(k) To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(l) To determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(m) To enforce any and all injunctions created pursuant to the terms of the Plan;

(n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(o) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

18.      Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,

6

upon completion all payments required under the Plan to unsecured creditors. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)    Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)    The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Unsecured Creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns.  The Motion to Close shall certify that each of the above conditions have been met.

(c)    The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties.  The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)    During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the
treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e)    Upon the satisfaction of all payments required under the Plan to Unsecured Creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Unsecured Creditors.

(f)    Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Unsecured Creditors have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

###

Submitted by: David W. Langley who will serve copies to: all creditors and appearances.

Case 1:16-cv-10894-WGY Document 96-691 Filed 06/12/18 Page 8 of 8



**ORDERED in the Southern District of Florida on June 12, 2018.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,
     Debtor.
_____/

CASE NO.:  16-10389-AJC

CHAPTER 11

## AGREED ORDER GRANTING REORGANIZED DEBTOR'S ORE TENUS MOTION TO ADMINISTRATIVELY CLOSE INDIVIDUAL CHAPTER 11 CASE AFTER CONFIRMATION

THIS CAUSE came on before the court on May 30. 2018 upon the Reorganized Debtor's Ore Tenus Motion to Administratively Close Chapter 11 Case after confirmation and prior to the entry of an Order of Discharge, ("Reorganized Debtor's Motion") and all parties being in agreement and the Court having reviewed the file and otherwise being fully advised in the premises, it is:

ORDERED, Reorganized Debtor's motion is **GRANTED**.

The instant individual Chapter 11 case shall be administratively closed upon entry of this Order, without prejudice to the Reorganized Debtor filing a motion to reopen this bankruptcy case upon the satisfaction of all payments under the Reorganized Debtor's Fourth Amended Plan of Reorganization Doc 563 ("the confirmed Plan") to unsecured creditors and seeking the entry of an Order of Discharge at that time.

During the time that this bankruptcy is temporarily closed, the provisions of this Court's Order confirming Plan Of Reorganization, entered at Doc. 691; ("the Confirmation Order") shall remain in effect with respect to the treatment of creditors' claims that existed as, the bankruptcy petition date, as long as the Reorganized Debtor continues to be in compliance with the plan and the Confirmation Order.

If and when the Reorganized Debtor chooses to file a motion to reopen this bankruptcy case, any clerk of Court fees with the filing of the motion to reopen shall be waived.

Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the unsecured creditors have been made. The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C § 1141(d)(5) if all other conditions are satisfied.

The Court retains jurisdiction to enforce any and all terms of the Plan, the Confirmation Order and this Order.

<div align="center">###</div>

**Submitted by:**

**Submitted by:**
    DAVID W. LANGLEY
    *Attorney for Reorganized Debtor*
    8551 W. Sunrise Boulevard, Suite 303

Plantation, Florida 33322
Telephone:    954-356-0450
Fax:    954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming to Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: LIZA HAZAN

CASE NO: 16-10389 AJC

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11
ECF Docket Reference No. 702

On 7/5/2018, I did cause a copy of the following documents, described below,

MOTION TO REOPEN, FINAL REPORT AND MOTION FOR DISCHARGE, AND MOTION FOR ENTRY OF FINAL
DECREE AND TO RECLOSE ECF Docket Reference No. 702

Notice of Deadline to Object to Debtor's Statement Re: 11 U.S.C. §522(q)(1) Applicability, Payment of Domestic Support
Obligations, and [For Chapter 11 Cases Only] Applicability of Financial Management Course and Statement Regarding
Eligibility to Re 704

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with
sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and
incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com,
an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.
Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if fully set forth
herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served
electronically with the documents described herein per the ECF/PACER system.

DATED: 7/5/2018

/s/ Joel M. Aresty
Joel M. Aresty  197483

Joel M. Aresty PA
309 1st Ave S
Tierra Verde, FL  33715
305 904 1903

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: LIZA HAZAN

CASE NO: 16-10389 AJC

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 11
ECF Docket Reference No. 702

On 7/5/2018, a copy of the following documents, described below,

MOTION TO REOPEN, FINAL REPORT AND MOTION FOR DISCHARGE, AND MOTION FOR ENTRY OF FINAL DECREE AND TO RECLOSE ECF Docket Reference No. 702

Notice of Deadline to Object to Debtor's Statement Re: 11 U.S.C. §522(q)(1) Applicability, Payment of Domestic Support Obligations, and [For Chapter 11 Cases Only] Applicability of Financial Management Course and Statement Regarding Eligibility to Re 704

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document (s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 7/5/2018

Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Joel M. Aresty
Joel M. Aresty PA
309 1st Ave S
Tierra Verde, FL 33715

CASE INFO
LABEL MATRIX FOR LOCAL NOTICING
113C1
CASE 16-10389-AJC
SOUTHERN DISTRICT OF FLORIDA
MIAMI
THU JUL 5 09-45-10 EDT 2018

AARONSON SCHANTZ BEILEY PA
CO GEOFFREY S AARONSON
100 SE 2ND STREET 27TH FLOOR
MIAMI FL 33131-2122

BOARD OF MANAGERS OF SPENCER
CONDOMINIUM
CO ROBERT C FURR ESQ
FURR AND COHEN PA
2255 GLADES RD 337W
BOCA RATON FL 33431-7379

FISHER ISLAND COMMUNITY ASSOCIATION
INC
CO PEYTONBOLIN
3343 WEST COMMERCIAL BLVD SUITE 100
FORT LAUDERDALE FL 33309-3425

JMBURBAN 900 DEVELOPMENT PARTNERS LTD
JMBURBAN 900 DEVELOPMENT PARTNERS LTD
900 NORTH MICHIGAN AVE
CHICAGO IL 60611-1542

JPMORGAN CHASE BANK NATIONAL
ASSOCIATION
SHAPIRO FISHMAN  GACHE LLP
CO STEVE POWROZEK
4630 WOODLAND CORPORATE BLVD100
TAMPA FL 33614-2429

JOEL M ARESTY PA
JOEL M ARESTY ESQ
309 1ST AVE S
TIERRA VERDE FL 33715-2231

MIAMI DADE COUNTY TAX COLLECTOR
CO ALEXIS GONZALEZ
200 NW 2ND AVENUE SUITE 430
MIAMI FL 33128-1733

NLG LLC
NICHOLAS B BANGOS PA
CO NICHOLAS B BANGOS
100 SE 2ND STREET SUITE 3400
MIAMI FL 33131-2122

CSS COLLECTIONS INC
SIMON  SIGALOS LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL 33431-5862

SELECTIVE ADVISORS GROUP LLC
CO MARSHALL SOCARRAS GRANT PL
197 S FEDERAL HIGHWAY
SUITE 300
BOCA RATON FL 33432-4946

SOUTHEAST FINANCIAL LLC
ALBERTELLI LAW
CO JEFFREY S FRASER
PO BOX 23028
TAMPA FL 33623-2028

US BANK NATIONAL ASSOCIATION
SHD LEGAL GROUP PA
PO BOX 19519
FORT LAUDERDALE FL 33318-0519

VALENCIA ESTATES HOMEOWNERS ASSOCIATIO
CO HABER SLADE PA
201 S BISCAYNE BLVD
SUITE 201
MIAMI FL 33131-4324

3343 WEST COMMERCIAL BLVD 100
3343 WEST COMMERCIAL BLVD 10
FORT LAUDERDALE FL 33309-3425

6913 VALENCIA LLC
3839 NW BOCA RATON BOULEVARD
WEST PALM BEACH FL 33413

900 NORTH MICHIGAN LLC
CO W ALLEN WOOLLEY ESQ
WILDMAN HARROLD ALLENS DIXON LLP
225 WEST WACKER DRIVE SUITE 3000
CHICAGO IL 60606-3007

ATT MOBILITY
PO BOX 536216
ATLANTA GA 30353-6216

ALLIED COLLECTION SERVICE
1607 CENTRAL AVE
COLUMBUS IN 47201-5370

AMERICAN INFOSOURCE LP AS AGENT FOR
DIRECTV LLC
PO BOX 5008
CAROL STREAM IL 60197-5008

AMERICAN INFOSOURCE LP AS AGENT FOR
T MOBILETMOBILE USA INC
PO BOX 248848
OKLAHOMA CITY OK 73124-8848

BOARD OF MANAGERS OF SPENCER
CONDOMINIUM
CO ROBERT C FURR ESQ
2255 GLADES RD 337W
BOCA RATON FL 33431-7379

CHASE BANK NA
CO JENNIFER KOPF ESQ
SHAPIRO FISHMAN  GASHE LLP
2424 N FEDERAL HIGHWAY SUITE 360
BOCA RATON FL 33431-7701

CROSS  SIMON LLC
CO DAVID HOLMES ESQ
1105 NORTH MARKET ST SUITE 901
WILMINGTON DE 19801-1202

CROSS  SIMON LLC
DAVID G HOLMES ESQUIRE
1105 NORTH MARKET STREET
SUITE 901
WILMINGTON DE 19801-1202

DAVID J FISCHER
LOCKE LORD LLP
111 SOUTH WACKER DRIVE
CHICAGO IL 60606-4409

DIRECTV LLC
ATTN BANKRUPTCIES
PO BOX 6550
GREENWOOD VILLAGE CO 80155-6550

PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

ENHANCED RECOVERY COMPANY
8014 BAYBERRY RD
JACKSONVILLE FL 32256-7412

FIRST NATIONAL COLLECTION BUREAU
50 W LIBERTY ST
STE 250
RENO NV 89501-1973

FISHER ISLAND COMMUNITY ASSOCIATION
CO DANIELLE SCHNEIDER ESQ
PEYTON BOLIN PL
4758 W COMMERICAL BOULEVARD
FORT LAUDERDALE FL 33319-2877

FLORIDA POWER  LIGHT
ATTN GENERAL MAILING FACILITY
MIAMI FL 33188-0001

FOCUS MANAGEMENT
10284 NW 47TH ST
FORT LAUDERDALE FL 33351-7967

FUERST ITTLEMAN DAVID  JOSEPH PL
CO ROBERT P CHARBONNEAU ESQ
501 BRICKELL KEY DRIVE SUITE 300
MIAMI FL 33131-2624

HSBC BANK USA NA
PO BOX 2013
BUFFALO NY 14240-2013

INTERNAL REVENUE SERVICE
PO BOX 7317
PHILADELPHIA PA 19101-7317

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA PA 19101-7346

JMBURBAN 900 DEVELOPMENT PARTNERS LTD
DAVID J FISCHER
LOCKE LORD LLP
111 SOUTH WACKER DRIVE
CHICAGO IL 60606-4409

MARZEC LAW FIRM
225 BROADWAY SUITE 3000
NEW YORK NY 10007-3067

MIAMI DADE WATER  SEWER DEPARTMENT
ATTN COLLECTION BRANCHBANKRUPTCY UNIT
PO BOX 149089 CORAL GABLES FL 33114

MIAMI DADE COUNTY TAX COLLECTOR
ATTN PARALEGAL BANKRUPTCY UNIT
200 NW 2 AVE SUITE 430
MIAMI FLA 33128-1733

MIAMI DADE WATER  SEWER DEPARTMENT
PO BOX 026055
MIAMI FL 33102-6055

CMICHAEL W SIMON ESQ
SIMON  SIGALOS LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL 33431-5862

MOUNT SINAI MEDICAL CENTER
PO BOX 403429
MIAMI BEACH FL 33140-1429

NLG LLC
CO JUAN RAMIREZ ESQ
DIAZ REUS  TARG LLP
100 SE 2ND STREET SUITE 3400
MIAMI FL 33131-2122

NEWMAN FERRARA LLP
1250 BROADWAY 27TH FLOOR
NEW YORK NY 10001-3717

~~EXCLUDE~~
~~OFFICE OF THE US TRUSTED~~
~~51 SW 1ST AVE~~
~~SUITE 1204~~
~~MIAMI FL 33130-1614~~

RAY GARCIA PA
14850 SW 26TH STREET SUITE 204
MIAMI FL 33185-5931

INTERNATIONAL
REAL ESTATE HOLDINGS GROUP LDC
60 MARKET SQUARE
PO BOX 364
BELIZE CITY BELIZE

REAL TIME RESOLUTIONS INC
1349 EMPIRE CENTRAL DRIVE SUITE 1
DALLAS TEXAS 75247-4029

REAL TIME SOLUTIONS
1349 EMPIRE CENTRAL DRIVE
SUITE 150
DALLAS TX 75247-4029

ROBERT A GUSRAE
3343 WEST COMMERCIAL BLVD 100
FORT LAUDERDALE FL 33309-3425

CS  S COLLECTIONS INC
MICHAEL W SIMON ESQ
3839 NW 2ND AVE STE 100
BOCA RATON FL 33431-5862

SCOTT PAUL MACKOFF ESQ
MITOFSKY SHAPIRO NEVILLE  HAZEN LLP
152 MADISON AVENUE 3RD FLOOR
NEW YORK NY 10016-5424

SELECT ADVISORS GROUP LLC
6499 POWERLINE ROAD SUITE 304
FORT LAUDERDALE FL 33309-2043

PARTIES SUMMARIZED UP TO THE FIRST 30 ADDRESSES. THIS IS PRECEDED BY A '+'
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

CSIMON SIGALOS
CO MICHAEL SIMON ESQ
3839 NW 2ND AVE STE 100
BOCA RATON FL 33431-5862

SOUTHEAST FINANCIAL LLC
4000 N FEDERAL HIGHWAY SUITE 200
BOCA RATON FL 33431-4527

SPENCER CONDOMINIUM
DBA HALSTEAD MANAGEMENT CO LLC
CO DAVID A TANE ESQ
120 BROADWAY SUITE 948
NEW YORK NY 10271-0996

STERLING EMERGENCY SERV OF MIAMI BEACH
PO BOX 975213
DALLAS TX 75397-5213

TRACY PETERSON ESQ
BRAVERMAN GREENSPUN PC
110 EAST 42ND STREET 17TH FLOOR
NEW YORK NY 10017-8515

US BANK
CO LAWRENCE LAMBERT ESQ
FRANKEL LAMBERT LLP
53 GIBSON STREET
BAY SHORE NY 11706-8369

VALENCIA ESTATES
CO JONATHAN SCOTT GOLDSTEIN ESQ
HABER SLADE
201 S BISCAYNE BOULEVARD SUITE 1205
MIAMI FL 33131-4317

VALENCIA ESTATES HOMEOWNERS ASSN INC
42205 FISHER ISLAND DRIVE
MIAMI BEACH FL 33109-1291

VERIZON
PO BOX 1100
ALBANY NY 12250-0001

WELLS FARGO BANK
BOX 5058 MAC P6053021
PORTLAND OR 97208-5058

CHRIS KOSACHUK
854 PHEASANT RUN RD
WEST CHESTER PA 19382-8144

DAVID W LANGLEY
8551 W SUNRISE BLVD  303
FORT LAUDERDALE FL 33322-4007

DEBTOR

LIZA HAZAN
6913 VALENCIA DRIVE
MIAMI BEACH FL 33109-0601

Form CGFCRD3 (12/1/15)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:**

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN** that a hearing will be held on **July 19, 2018** at **11:00 AM** at the following location:

**C. Clyde Atkins U.S. Courthouse**
**301 North Miami Avenue**
**Courtroom 7**
**Miami FL 33128**

to consider the following:

**Motion to Reopen Chapter 11 Case, Debtor's Motion for Discharge Prior to Completion of All Payments Under the Plan Pursuant to 11 U.S.C. 1141(d)(5), Application for Final Decree Filed by Debtor Liza Hazan. (Aresty, Joel) (702)**

**THIS MATTER HAS BEEN SET ON THE COURT'S MOTION CALENDAR FOR A NON–EVIDENTIARY HEARING. THE ALLOTTED TIME FOR THIS MATTER IS TEN MINUTES.**

**THE MOVANT (OR MOVANT'S COUNSEL if represented by an attorney) SHALL SERVE A COPY OF THIS NOTICE OF HEARING** and, unless previously served, the above–described pleading on all required parties within the time frames required by the Bankruptcy Rules, Local Rules, or orders of the Court, and shall file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B). Any party who fails to properly serve any pleadings or other paper may be denied the opportunity to be heard thereon.

**PLEASE NOTE:** Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), iPads, tablets, pagers, personal data assistants (PDA), laptop computers, radios, tape–recorders, etc., **are not permitted** in the courtroom, chambers or other environs of this court. These restrictions **(except for cameras not integrated into a cell phone device)** do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. **No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshal's Service. See Local Rule 5072–2.**

**Dated: 7/6/18**

**CLERK OF COURT**
By: Pamela Shuler
Courtroom Deputy

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                    Case No: 16-10389 AJC
                                                              Chapter 11

Liza Hazan
 Debtor.                        /

## CORRECTED MOTION TO REOPEN,
## FINAL REPORT AND MOTION FOR DISCHARGE,
## AND MOTION FOR ENTRY OF FINAL DECREE AND TO RECLOSE

        Reorganized Debtor Liza Hazan a/k/a Elizabeth Hazan, by and through her undersigned counsel, files this Motion to Administratively Reopen Individual Chapter 11 Case to Obtain Discharge and Final Decree and to reclose ("Motion") and Pursuant to Local Rule 3022-1(A), the undersigned files this Final Report and Motion for discharge and Final Decree and represents:

        1. On May 30, 2018, the Court granted the Confirmation of the Chapter 11 Plan. The Order granting confirmation of the Fourth amended plan filed on November 15, 2017 ("Doc 563") was entered on June 12, 2018 and was docketed at Doc 691. The plan provided for 41% payment of the unsecured allowed claims. On June 13, 2018 the Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation docketed at Doc 692.

        2. As evidenced by the attached detailed accounting, the reorganized Debtor has now completed all payments called for under the Confirmed Plan and Confirmation Order. The payments required by the plan have been distributed and all matters to be completed upon the effective date of the confirmed plan have been fulfilled or completed; Doc 684 Declaration of Disbursements.

        3. Having completed all plan payments, the reorganized Debtor is now eligible to discharge pursuant to §1141 (d)(5)(A).

        4. There is no reasonable cause to believe that §522(q)(1) is applicable to the reorganized Debtor, and there is no pending proceeding in which the reorganized Debtor may be found guilty of a felony of the kind described in §522(q)(1)(A) or liable for a debt of the kind described in §522(q)(1)(B).

        5 . All administrative claims and expenses have been paid in full, or appropriate arrangements have been made for the full payment thereof. A summary of fees and expenses is as follows:

        $  n/a Trustee Compensation (If trustee received compensation under more than one chapter)

$ <u>n/a</u> Fee for Attorney for Trustee

$ arranged -Fees for Attorneys for Reorganized Debtor, awarded and appropriate arrangements have been made

$ paid U.S. Trustee (fees required by 28 U.S.C. §1930)

$ <u>paid</u> Clerk of Court (fees required by 28 U.S.C. §1930)

$ <u>n/a All</u> expenses, including Trustee's

6. Attached as Exhibit A is a distribution report detailing the payments made under the plan on and after the effective date.

7. Pursuant to Fed. R. Bankr. P.1007(b)(7), the undersigned represents that 11 U.S.C. § 1141(d)(3) is not applicable to the reorganized Debtor, or the reorganized Debtor has filed a statement of completion of the personal financial management course.

WHEREFORE, The reorganized Debtor respectfully requests that this court (1) grant this Motion and administratively reopen this case, (2) enter a discharge of the reorganized Debtor, (3) enter a final decree closing this fully administered individual Chapter 11 case, and (4) grant such other and further relief as the Court deems appropriate..

I certify that a copy of this report and attachments was emailed to the U.S. Trustee's office on 7/7/18.

JOEL M. ARESTY, P.A.
Counsel for
Reorganized Debtor
Liza Hazan
309 1st Ave S
Tierra Verde, FL
33715
Phone: 305-904-1903
Fax: 800-559-1870
E-mail: Aresty@Mac.com
By: <u>/s/Joel M. Aresty</u>
Fla. Bar No. 197483

**EXHIBIT  A**

LIST ALL PAYMENTS MADE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN,
OR IF INDIVIDUAL CHAPTER 11, ALL PAYMENTS MADE UNDER THE PLAN.*
SEPARATE CLAIMANTS BY CLASSIFICATION UNDER THE PLAN AND PROVIDE A
TOTAL FOR EACH CLASSIFICATION. LIST THE NAME OF EACH RECIPIENT,
AMOUNT OF THE ALLOWED CLAIM AND THE AMOUNT THAT WAS PAID (USE
CONTINUATION PAGE IF NECESSARY).

| Name Of Creditor | Claim Number | Class Number | Payment In Plan |
|---|---|---|---|
| IRS priority | Claim # 3 | Class 1 | $2,674.34  Paid  at Confirmation |
| Valencia Estates Community Association, Inc. | Claim # 10 | Class 5 | $4,062.00 Paid at confirmation |
| Miami-Dade Water & Sewer Department | Claim # 7 | Class 7 | $1,502.54 Paid at confirmation |
| IRS secured | Claim # 3 | Class 8 | $22,948.00 Paid after confirmation |
| American InfoSource TMobile Class 12 | Claim # 2 | Class 12 | $1,130.00 Paid at confirmation |
| S&S Collections | Claim # 13 | Class 13 | $6,968.04 Paid after confirmation |
| IRS unsecured | Claim # 3 | Class 12 | $1,085.00  Paid  at confirmation |
| American info Source Direct TV Class 12 | Claim # 9 | Class 12 | $461.00  Paid  at Confirmation |
| FPL Class 12 | Claim # 11 | Class 12 | $2,906.93 Paid at Confirmation |
| Sterling Emer Svcs | | Class 12 | $2,445.30  Paid  at Confirmation |

| | | | Confirmation |
|---|---|---|---|
| Mount Sinai Phys Practice | | Class 12 | $295.91 Paid at Confirmation |
| | | | $3,240.00 Paid at Confirmation |
| HSBC Bank USA NA | | Class 12 | $1,070.66 Paid at Confirmation |
| Wells Fargo | Claim # **12** | Class 12 | $323.24 Paid at Confirmation |
| Total class 12 Total Total | | | $12,958.04 Paid at Confirmation $651.07 Paid at Confirmation $51,764.03 |

*Class **13 JMB Urban 900** in the amount of $275,000 is the subject of a **Non-dischargeable Judgment** and therefore is not sought to be discharged.

Form CGFCRD3  (12/1/15)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

In re:

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN**  that a hearing will be held on **August 9, 2018** at **10:30 AM** at the following location:

**C. Clyde Atkins U.S. Courthouse
301 North Miami Avenue
Courtroom 7
Miami FL 33128**

to consider the following:

**Amended (702 Motion to Reopen Chapter 11 Case [NO FEE DUE], Debtor's Motion for Discharge Prior to Completion of All Payments Under the Plan Pursuant to 11 U.S.C. 1141(d)(5), Application for Final Decree ) Filed by Debtor Liza Hazan. ECF#713**

**THIS MATTER HAS BEEN SET ON THE COURT'S MOTION CALENDAR FOR A NON–EVIDENTIARY HEARING. THE ALLOTTED TIME FOR THIS MATTER IS TEN MINUTES.**

**THE MOVANT (OR MOVANT'S COUNSEL if represented by an attorney) SHALL SERVE A COPY OF THIS NOTICE OF HEARING** and, unless previously served, the above–described pleading on all required parties within the time frames required by the Bankruptcy Rules, Local Rules, or orders of the Court, and shall file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B). Any party who fails to properly serve any pleadings or other paper may be denied the opportunity to be heard thereon.

**PLEASE NOTE:** Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), iPads, tablets, pagers, personal data assistants (PDA), laptop computers, radios, tape–recorders, etc., **are not permitted** in the courtroom, chambers or other environs of this court. These restrictions **(except for cameras not integrated into a cell phone device)** do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. **No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshal's Service. See Local Rule 5072–2.**

**Dated: _7/13/18_**

**CLERK OF COURT**
By: _Susan Gutierrez_
Courtroom Deputy