# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 16-10389-AJC |
| | ) | |
| LIZA HAZAN a/k/a ELIZABETH HAZAN, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

## DEBTOR'S EXPEDITED MOTION FOR CONTEMPT, SANCTIONS, DAMAGES, AND PUNITIVE DAMAGES AND INCORPORATED MEMORANDUM OF LAW

Debtor Liza Hazan a/k/a Elizabeth Hazan moves this Court for an order holding NLG, LLC and its counsel, Juan Ramirez, Esq., in contempt of court for willful violation of this Court's Order Confirming Plan of Reorganization entered on June 12, 2018 [ECF 691] and the automatic stay imposed by 11 U.S.C. §362 and awarding sanctions, damages, punitive damages, costs, attorney's fees, and other relief, as follows:

1. On June 12, 2018, this Court entered its Order Confirming Plan of Reorganization (Confirmation Order). [ECF No. 691].

2. Paragraph 8 of the Confirmation Order contains an injunction prohibiting creditors whose claims were extinguished from pursuing such claims against the debtor:

> All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

3. Paragraph 9 of the Confirmation Order contains an injunction prohibiting all creditors from taking any action to collect any prepetition debt or to enforce any lien against the debtor's property based on a prepetition claim:

1

All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

4.     NLG filed a late proof of claim, which was later completely disallowed by this court in a November 1, 2017 order in Adversary Case No. 16-01439. [*See* Case No. 16-01439 ECF No. 238].

5.     In the Adversary Case, this Court held a trial on July 13, 2017, and on November 1, 2017, entered a Final Judgment on Counts I, II and III in favor of Ms. Hazan. *Id*. It declared that NLG's claim against the debtor had been satisfied and that NLG had no further claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. *Id*. And this Court forever quieted the Debtor's title to her property as against all claims by NLG:

> NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:
>
> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida
>
> have been satisfied and paid, and are deemed SATISFIED OF RECORD, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

Case No. 16-01439 ECF No. 238 at 14.

2

6.  In direct contravention of Paragraphs 8 and 9 of the Confirmation Order, on August 9, 2018, NLG, through its counsel Juan Ramirez, Esq., recorded a Notice of Lis Pendens against the debtor's home. *See* Attachment 1 to this Motion.

7.  Ms. Hazan recently learned of the Lis Pendens filed by NLG through a title insurance company with which she is working in contemplation of selling or refinancing her home.

8.  One of Ms. Hazan's attorneys immediately contacted Mr. Ramirez to advise him that his and NLG's conduct violated the Court's orders. In a September 29, 2018 email, Ms. Hazan's counsel, Joel Aresty, Esq., warned Mr. Ramirez that Ms. Hazan would bring this matter to the Court if the Lis Pendens was not promptly withdrawn. *See* Attachment 2 to this Motion.

9.  Instead of withdrawing the Lis Pendens, NLG, through Mr. Ramirez, took additional steps in violation of the Court's orders and the automatic stay by filing a cross-claim against Ms. Hazan in *JP Morgan Bank, NA v. Elizabeth Hazan a/k/a Liza Hazan, et al.*, Case No. 2013-25902 (Fla. 11th Cir. Ct.) on October 1, 2018. *See* Attachment 3 to this Motion. In the cross-claim, NLG alleges that it "has a valid lien on the [debtor's home] for the total amount specified in the Foreclosure Judgment" and seeks to foreclose on that purported lien. *Id*. at 9-10.

## ARGUMENT AND MEMORANDUM OF LAW

This Court has jurisdiction to enforce the injunctions in the Confirmation Order as well as to remedy violations of the automatic stay. In Paragraph 17 of the Confirmation Order, this Court specifically reserved jurisdiction over enforcement:

> The Bankruptcy Court shall retain jurisdiction:
>
> ***
> (m) To enforce any and all injunctions created pursuant to the terms of the Plan;

3

      (n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

      (o) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

      (p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

ECF No. 691 at 6. Moreover, even without such an express reservation, "the court that enters an injunctive order retains jurisdiction to enforce its order." *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012).

Under Eleventh Circuit precedent, this Court is authorized to impose sanctions on NLG both for its violation of the Court's injunctions as well as for its statutory violations:

      Bankruptcy judges, like district judges, have the power to coerce compliance with injunctive orders. In the bankruptcy context, "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge."

*Alderwoods*, 682 F.3d at 966 (quoting *Cox v. Zale Del., Inc.,* 239 F.3d 910, 915 (7th Cir. 2001)).

Although Ms. Hazan has not yet received a discharge, the automatic stay remains in place and prohibits NLG's conduct. In a Chapter 11 case, such as this case, the automatic stay remains in place until "the time a discharge is granted or denied." § 362(c)(2)(C).

NLG and Mr. Ramirez's conduct violated the automatic stay. The automatic stay prohibits, among other things:

      (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title,

or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title…

§ 362(a).

Section 362(k)(1) directs the Court to remedy violations of the automatic stay through monetary sanctions, stating that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Because NLG and Mr. Ramirez have repeatedly and willfully violated the automatic stay, the Court should order them to pay damages, including punitive damages, costs, and attorney's fees to Ms. Hazan.

A creditor engages in a "willful violation" of the automatic stay when the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Willfulness does require that the creditor had "'a specific intent to violate the automatic stay,' but only that the defendant knew of the automatic stay and intended the acts that violated the stay." *Id*. (quoting *In re Goodman*, 991 F.2d 613, 618 (9th Cir.1993)).

NLG and Mr. Ramirez's violations of the automatic stay were willful. First, there can be no question that they knew the automatic stay had been invoked. Indeed, this is not the first time that the debtor has been forced to move for sanctions as a result of NLG's violations of the automatic stay. *See* ECF No. 469.

It is true that in November 2016, the Court granted relief from the automatic stay "to litigate *the foreclosure claim of Chase* in the Foreclosure Action to the point of judgment, but not to conduct a foreclosure sale of the Property." ECF No. 315 (emphasis added). But it did *not* grant relief from the automatic stay for NLG to file a cross-claim for foreclosure against Ms. Hazan seeking a result directly contrary to the Court's Final Judgment on Counts I, II, and III in the Adversary Case and the treatment of NLG's claim under the Plan of Reorganization.

NLG (through Mr. Ramirez) has twice moved the Court for relief from the automatic stay to pursue foreclosure of Ms. Hazan's home—and both times the Court denied NLG such relief. The Court denied NLG's first motion for relief from stay on August 22, 2016. ECF No. 176. When NLG asked for more limited relief from the automatic stay (after the debtor moved for contempt based on violations of the automatic when NLG took other actions to enforce a purported foreclosure judgment, ECF No. 469), the Court entered an order again denying NLG relief from the automatic stay. *See* ECF No. 500.

So it cannot be credibly disputed that NLG and Mr. Ramirez had actual knowledge of the automatic stay. And even if it could be possible that they lacked knowledge when they recorded the Lis Pendens, they certainly could not have lacked knowledge when they filed the cross-claim after being expressly warned by Ms. Hazan's attorney to cease and desist. As such, NLG and Mr. Ramirez's violations of the automatic stay were willful.

In addition to its authority to remedy violations of the automatic stay, the Court also "possesses the inherent power to sanction contempt of its orders," including for violating the injunctive provisions of a plan confirmation order. *Alderwoods*, 682 F.3d at 970. The Court should impose sanctions on NLG on that basis as well. Paragraphs 8 and 9 of the Confirmation Order unambiguously enjoin creditors from pursuing collection of prepetition debts and from imposing liens based on those debts. NLG and Mr. Ramirez violated those injunctions in recording the Notice of Lis Pendens and filing the cross-claim.

Their conduct has caused significant damage to the debtor and has impeded her in effectuating the Plan of Reorganization and obtaining a fresh start. The wrongful Lis Pendens has slandered the debtor's title to her property and prevented her from selling or refinancing the property, which would enable her to resolve the Chase foreclosure litigation and pay off secured creditors.

Section 362 of the Bankruptcy Code provides "for recovery of actual damages, attorney's fees, costs, and punitive damages, where appropriate, for a willful violation of the automatic stay." *In re: Dynamic Tours*, 359 B.R. 336, 342 (Bankr. M.D. Fla. 2006). And the Court may impose additional sanctions for a party's non-compliance with the Court's injunctions, including "traditional sanctions for coercing compliance with an injunction—incarceration or financial penalty," as well as entering "orders to obviate conduct that stands to frustrate administration of the Bankruptcy Code," or "'any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code.'"

To remedy NLG and Mr. Ramirez's violations of the injunctions contained in the Confirmation Order as well as of the automatic stay, the Court should order them to immediately withdraw or dismiss their cross-claim with prejudice as well as to withdraw, dismiss, cancel, or

otherwise remove the Lis Pendens with prejudice. Only then can their conduct's deleterious effects on the debtor's efforts to successfully reorganize be mitigated.

In addition, the Court should award actual damages, including the attorney's fees that Ms. Hazan has incurred to obtain relief from NLG and Mr. Ramirez's wrongful conduct. See *In re Omine*, 329 B.R. 343 (Bankr. M.D. Fla. 2005), *aff'd*, 2006 WL 319162 (M.D. Fla. 2006) (explaining that attorney's fees are an element of actual damages for a stay violation). In fact, the Court may award attorney's fees even if they are the only actual damages established by the debtor. *In re Hedetneimi*, 297 B.R. 837 (Bankr. M.D. Fla. 2003).

Moreover, NLG and Mr. Ramirez have engaged in repeated violations of the automatic stay and plan injunctions even after facing motions for contempt for previous conduct, and even after being warned by the debtor's counsel that their conduct was wrongful. As such, additional sanctions are necessary to deter NLG and Mr. Ramirez from taking additional actions in state court to foreclose on the debtor's home. Accordingly, Ms. Hazan requests that the Court award punitive damages as well.

WHEREFORE, the debtor respectfully requests that the Court enter an order: (a) finding NLG and Mr. Ramirez have violated the automatic stay and injunctions contained in the Confirmation Order; (b) finding NLG and Mr. Ramirez in contempt of court; (c) ordering the immediate removal with prejudice of the Lis Pendens and dismissal or withdrawal with prejudice of the cross-claim; (d) enjoining NLG and Mr. Ramirez (and their officers, agents, representatives) from taking any action judicially or otherwise in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adversary Case 16-01439-AJC [ECF 238] or the Confirmation Order entered on June 12, 2018 [ECF 691], barring NLG and Mr.

Ramirez and their officers (and their officers, agents, and representatives) from attempting to re-litigate in any other forum the issues and claims tried in Adversary Case 16-01439-AJC, including but not limited to the validity of any of the judgments and/or underlying state court proceedings considered; (e) awarding damages in favor of the debtor and jointly and severally against NLG and Mr. Ramirez including actual damages, attorney's fees, and punitive damages; and (f) granting such other and further relief as the Court deems just and proper.

### CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Respectfully submitted,

BUSHELL LAW, P.A.
Counsel for Liza Hazan
6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220

By:   /s/ Daniel A. Bushell
Daniel A. Bushell
Florida Bar No. 0043442
dan@bushellappellatelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 4, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Daniel A. Bushell
Daniel A. Bushell

# SERVICE LIST

## Case No. 16-10389-AJC

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A. aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman mfriedman@gjb-law.com,
gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC astridgabbe@gmail.com

Astrid Gabbe on behalf of NLG, LLC

astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc. ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc. dhaber@dhaberlaw.com, ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC bkcmiami@gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc. Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association spowrozek@logs.com, electronicbankruptcynotices@logs.com

Juan Ramirez, Jr., Esq. jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth esilver@stearnsweaver.com, rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Miami-Dade County Tax Collector c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430 Miami, FL 33128-1733

CFN 2018R0483358
OR BK 31094 Pgs 3318-3319 (2Pgs)
RECORDED 08/09/2018 11:44:59
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

---

Space above reserved for recording information

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

### CASE NO. 2013-25902 CA 01

JP Morgan Chase Bank, National Association
Successor in interest by purchase from the FDIC as
Receiver of Washington Mutual Bank F/K/A
Washington Mutual Bank, FA

       Plaintiff,

vs.

ELIZABETH HAZAN a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Assocation,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants
       Defendants.

_____/

### NOTICE OF LIS PENDENS

**TO THE ABOVE STYLED DEFENDANTS AND ALL OTHERS TO WHOM IT MAY CONCERN:**

**YOU ARE HEREBY NOTIFIED** of the institution of a cross-claim for foreclosure by Defendant/Crossclaim Plaintiff NLG, LLCpursuant to its Final Judgment of Foreclosure recorded in Official Records Book 29902 at Pages 3737 - 3742 on the following property in Miami-Dade County, Florida:

Lot 7, Block 2, OF LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County,

Physical Address: 6913 Valencia Drive, Fisher Island, FL 33109

including the buildings, appurtenances, and fixtures located thereon.

JUAN RAMIREZ, JR.
ADR Miami LLC
1172 So. Dixie Hwy. #341
Coral Gables, FL 44146  33146
(305) 667-6609
_/s/ Juan Ramirez, Jr._
Juan Ramirez, Jr.
(Florida Bar No. 201952)
jr@adrmiami.com
_Counsel for Defendant/Crossclaim Plaintiff_



From: **Juan Ramirez, Jr., Former Chief Judge** jr@adrmiami.com 🖉
Subject: Re: lis pendens filed in case 2013-25902 CA 01 JP Morgan Chase Bank
Date: October 1, 2018 at 1:15 PM
To: JOEL ARESTY aresty@icloud.com

Joel:

Thank you for the heads up, but Judge Cristol granted relief from the automatic stay to JP Morgan and all other parties to litigate the foreclosure on that mortgage.

You were right that we had not filed a crossclaim and we delayed filing it because first Hazan had not been served and then she had not answered, but I agree we had to file it if the lis pendens was to remain. I am attaching what we filed this morning.

All the lis pendens does is give the world notice of the litigation. If someone is going to buy her home, they should have notice that the Cristol order is not final, as Judge Gayles ruled. Even if it were, we're appealing. We're not violating Judge Cristol's order because he said we could litigate the case, just not take it to a judicial sale.



Answer Affirmative
Defenses C…sclaim.pdf

*Juan Ramirez Jr*., **FCIArb**
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
**ADR Miami LLC**
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com









On Oct 1, 2018, at 12:14 PM, JOEL ARESTY <aresty@icloud.com> wrote:

Juan

please let me know your intentions
if you remove it no harm no foul

if you do not I have to file motion Thursday


**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

Aresty@Mac.com
http://www.Joelaresty.com


**This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.**

On Sep 29, 2018, at 4:32 PM, JOEL ARESTY <aresty@icloud.com> wrote:

Juan

You filed a lis pendens in case 2013-25902 CA 01 JP Morgan Chase Bank
and recorded it 8/9/18 OR book 31094 Pgs 3318-3319
saying it was notice of a cross claim

we found out about this yesterday from a title insurance company

you did not file a cross claim in the case
and the lis pendens is an illegal  cloud on the title of the Fisher Island property

this email is a warning that the lis pendens constitutes a significant violation
of Bar and Court rules for the following reasons

1.    the lack of cross claim makes the instrument a fallacy on its face

2.    the reference to the final judgment OR 29902 pages 3737-3742
      is wrongful because that judgment has been voided by Judge Cristol

3.    the lis pendens violates the plan injunction in the Hazan bankruptcy
      doc 91 6/12/18 which the court retained jurisdiction to enforce

4.    the lis pendens constitutes a significant slander of title and is damaging Ms. Hazan's
      efforts to sell the subject property

Juan
unless the lis pendens is cancelled by a filing in the court and recording in the public records
by Wednesday October 3, 2018 at 5pm
we will file a motion for contempt before Judge Cristol
asking for sanctions including attorneys' fees, damages and punitive damages
and a separate action will lie for slander of titleland a complaint to the Florida Bar

please be governed accordingly

thanks
sincerely

Joel

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

Aresty@Mac.com
http://www.Joelaresty.com

http://www.cool.resty.com

This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

### CASE NO. 2013-25902 CA 01

JP Morgan Bank, NA

     Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

     Defendants.

_____/

## NLG, LLC'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND CROSSCLAIM

     Defendant/Counterclaim and Crossclaimant, NLG, LLC ("NLG"), through undersigned

counsel, files this Answer,  Affirmative Defenses, Counterclaim and Crossclaim to the

Foreclosure Complaint (the "Complaint") filed by JP Morgan Chase Bank, NA ("JP Morgan").

## ANSWER AND AFFIRMATIVE DEFENSES

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 11

1.      Paragraph 1 of the Complaint describes the nature of the purported claims asserted by JP Morgan in the Complaint and does not require a response. To the extent a response is required, the allegations are admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Denied.

6.      Denied.

7.      Admitted.

8.      Denied.

9.      NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

10.      NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

11.      Denied.

12.      Denied.

13.      Denied.

14.      NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

15.      Denied.  6913 Valencia LLC's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

16.      Denied.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 11

17.     Denied.  Fisher Island Community Association's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

18.     Denied.  Valencia Estates' interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

19.     Denied.

20.     Denied.

## AFFIRMATIVE DEFENSES

21.     As its first affirmative defense, NLG states that Plaintiff's claims are barred by the doctrine of res judicata for the reasons set forth in NLG's crossclaim.

22.     As its second affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of collateral estoppel for the reasons set forth in NLG's crossclaim.

23.     As its third affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of estoppel for the reasons set forth in NLG's crossclaim.

24.     As a fourth affirmative defense, NLG states that the Plaintiffs' claims are barred by previous dismissals of the same causes of action by the Plaintiff in 2008 and 2011.

25.     As a fifth affirmative defense, NLG states that the Plaintiffs' claims are barred by their respective statutes of limitation.

26.     As a sixth affirmative defense, NLG is without knowledge whether Plaintiff complied with paragraph 22 of the mortgage, which requires notice of acceleration and therefor alleges that Plaintiff failed to comply with the notice requirement, subject to conducting discovery.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 4 of 11

27.     As a seventh affirmative defense, NLG asserts that the Plaintiff lacked standing at the time this action was filed as the mortgagee listed in the Complaint is JP Morgan, but the mortgagee was Washington Mutual Bank at the time of filing.

28.     As an eight affirmative defense, NLG asserts that Plaintiff has failed to record and pay documentary stamps on the Loan Modification Agreement mentioned in the Complaint.

## COUNTERCLAIM

29.     Plaintiff alleges that on March 7, 2007, Defendant Hazan executed a promissory note and mortgage recorded in Official Records Book 25450, Page 2835, of the Public Records of Miami-Dade County, Florida. The mortgage listed the lender as "Washington Mutual Bank, FA." The mortgage was attached to the Complaint as Exhibit B and is incorporated by reference herein.

30.     The Complaint does not allege that this mortgage was ever assigned to Plaintiff.

31.     On March 8, 2007, Hazan executed and delivered to NLG a promissory note in the principal amount of $1,275,000, secured by a Mortgage of even date recorded in Official Records Book 25559, Page 4266, of the Public Records of Miami-Dade County, Florida. Attached is the Note as Exhibit "A" and the Mortgage as Exhibit "B".

32.     The Complaint alleges that Hazan executed a Loan Modification Agreement. The Loan Modification was attached to the Complaint as Exhibit C and is incorporated by reference herein. Exhibit C was dated June 20, 2011, and shows it was in favor of Plaintiff, JPMORGAN CHASE BANK, N.A., with an effective date of August 1, 2011, increasing the Principal Balance to $4,282,432.36.  It does not show that the Loan Modification was ever recorded.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 5 of 11

33. NLG never agreed to subordinate its interest to Plaintiff and neither Hazan nor Plaintiff alerted NLG to the loan modification. NLG only learned of the loan modification when it was attached to the Complaint in this case.

34. As such, Plaintiff JP Morgan and/or Washington Mutual lost its priority position with respect to NLG when it entered into the Loan Modification Agreement with Hazan and did not obtain NLG's consent.

35. NLG has retained undersigned counsel to represent it in this Counterclaim, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Plaintiff.

36. All conditions precedent to the filing of this Counterclaim have been performed, have been waived, have occurred or have been satisfied.

**WHEREFORE**, NLG prays that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment, plus per diem interest and legal fees after the date of entry, superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

## CROSSCLAIM

Cross-claimant NLG, through undersigned counsel, hereby files this Crossclaim against all named Defendants and alleges as follows:

### Preliminary Statement

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 6 of 11

37.     NLG is the holder of a valid lien against the Property, superior in dignity to any interest of any Defendant and Plaintiff herein, under an Order Granting Foreclosure (the "Foreclosure Order") entered on December 1, 2015, and a Final Judgment of Foreclosure (the "Foreclosure Judgment") entered in December 4, 2015 by Circuit Judge Monica Gordo in the case of *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 11-42770-CA 02 in Miami-Dade County Circuit Court (the "Foreclosure Action"). The Final Judgment was recorded at Official Records Book 29902, Page 3737, of the Public Records of Miami-Dade County, Florida. Correct copies of the Foreclosure Order and Foreclosure Judgment are attached as Exhibits "C" and "D."

38.     Judge Gordo ruled in NLG's favor on all of all issues in a detailed fifteen page (plus exhibits) Order Granting Foreclosure on December 1, 2015, which was followed by the entry of the Foreclosure Judgment on December 4, 2015.

39.     Defendant Hazan filed a Notice of Appeal to the Third District Court of these orders and was assigned a Case No. 3D16-0315. On February 10, 2016, NLG filed its Motion to Dismiss the appeal. Hazan filed four motions for extension of time before filing a Response to the Motion to Dismiss on March 28, 2016. NLG filed its Reply on April 4, 2016. Two and a half hours later, Hazan filed a Notice of Voluntary Dismissal. On the next day, the Third District dismissed the appeal.

40.     On April 26, 2016, the Court granted NLG's motion for attorney's fees pursuant to section 57.105, Florida Statutes and Rule 9.410 of the Fla. R. App. P.

41.     This rendered both the Order Granting Foreclosure on December 1, 2015, and the Foreclosure Judgment on December 4, 2015, to be the "law of the case."

**Factual Allegations**

**A. The Note, Note Judgment, Mortgage and Foreclosure Action.**

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 7 of 11

42.     In 2007, NLG sold a home located at 6913 Valencia Drive, Fisher Island, Florida 33109 to Hazan for $5,100,000, and received a purchase money note and mortgage on the Property in the amount of $1,275,000. Correct copies of the Note and the Mortgage are attached as Exhibits "A" and "B."

43.     On April 28, 2008, based on the Debtor's default under a settlement agreement stemming from the Debtor's default under the Note, NLG obtained a default final judgment against the Debtor for $1,618,071.29 plus post-judgment interest (the "Default Final Judgment") in the case of *NLG, LLC v. Hazan*, Case No. 07-19532, which was affirmed on appeal twice.

44.     After entry of the Default Final Judgment, NLG and Hazan entered into a second settlement agreement, which Hazan defaulted in February 2009.

45.     On December 21, 2011, NLG filed a complaint to foreclose its Mortgage on the Property in the case of *NLG, LLC v. Elizabeth Hazan, et al.* (*i.e.*, the NLG Foreclosure Action), under Case No. 11-42770-CA 02.

46.     On January 2, 2013, the circuit court judge then presiding over the NLG Foreclosure Action entered judgment in favor of Hazan. That judgment was reversed on appeal in a detailed written opinion reported under *NLG, LLC v. Hazan*, 151 So. 3d 455 (Fla. 3d DCA 2014).

**B. The Third DCA issues its Opinion and Mandate in the NLG Appeal.**

47.     On September 3, 2014, the Third District issued its Opinion in *NLG v. Hazan*, 151 So. 3d 455, reversing the judgment in favor of Hazan in the Foreclosure Action and adjudicating the following issues:

        a. The entry of the Default Final Judgment in NLG's favor did not preclude NLG's later enforcement of the Mortgage in the NLG Foreclosure Action;

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 8 of 11

      b.  NLG's Mortgage had not been extinguished; and

      c.  NLG had standing to pursue the NLG Foreclosure Action, with its manager Chris Kosachuk (the same manager through which it acts today) being a proper representative of NLG.

48.     The Third District denied motions for rehearing and rehearing *en banc*, and entered its Mandate in accordance with its opinion on November 25, 2014. A correct copy of the Third District's Opinion and Mandate is attached as Exhibit "E" to this Crossclaim.

49.     After over a year of additional litigation, on December 1, 2015, Judge Gordo entered her Order Granting Foreclosure, which took into consideration the material facts and disputes between NLG and Hazan, including the facts alleged above, and determined that NLG was entitled to foreclose its valid Mortgage on the Property.

50.     On December 4, 2015, Judge Gordo entered her Foreclosure Judgment, entering in rem relief in favor of NLG and adjudicating that NLG holds a lien on the Property in the amount of $4,876,654.29. On February 3, 2016, the Debtor filed a Notice of Appeal, but voluntarily dismissed her appeal on April 4, 2016. The Foreclosure Judgment is now final, non-appealable and the "law of the case."

51.     Judge Gordo set a foreclosure sale for January 12, 2016. Hazan filed her Bankruptcy Case on January 11, 2016 to stay the foreclosure sale.

52.     On November 29, 2016, the Bankruptcy Court granted relief from the automatic stay to all parties to this action, including NLG. The relief was granted to litigate the foreclosure claim "to the point of judgment, but not to conduct a foreclosure sale of the Property."

53.     NLG has retained undersigned counsel to represent it in this action, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Selective and the Debtor.

54.     All conditions precedent to the filing of this action have been performed, have been waived, have occurred or have been satisfied.

## COUNT I

55.     NLG incorporates the allegations of paragraphs 37 through 54 of the Crossclaim as though fully set forth herein.

56.     This is an action by NLG against the named Crossclaim Defendants.

57.     The NLG Foreclosure Judgment is a final non-appealable judgment of a state court of competent jurisdiction which is binding upon all of the parties to this action and cannot be revisited by this Court under principles of res judicata, collateral estoppel or otherwise. Furthermore, it is the law of the case as between and among all parties herein.

58.     In accordance with the Foreclosure Judgment, NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment "superior in dignity to any right, title, interest or claim of the Defendants [in the NLG Foreclosure Action], and all persons, corporations, or other entities claiming by, through or under the defendants or any of them," plus per diem interest since the date of entry of the NLG Foreclosure Judgment and attorneys' fees incurred thereafter.

59.     For the reasons stated above, NLG prays that this Court should enter judgment in NLG's favor confirming that Judge Gordo's final, non-appealable Foreclosure Judgment is binding on the parties to this action and confirming that NLG holds a valid lien against the

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 10 of 11

Property superior in dignity to any interest in the Property held by the Crossclaim and Counterclaim Defendants.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

Dated:  October 1, 2018

Respectfully submitted,

ADR Miami LLC
1172 So. Dixie Hwy. #341
Coral Gables, Florida 33146
Tel: (305) 667-6609
Fax: (800) 380-4155

By:  ____/s/ Juan Ramirez, Jr._____
**Juan Ramirez, Jr.**
Florida Bar No. 201952
jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 1st day of October, 2018, on all counsel or parties of record on the Service List below.

By:  ____/s/ Juan Ramirez, Jr._____
Attorney for Defendant and Crossclaimant, NLG, LLC

## SERVICE LIST

Robin Reyes

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 11 of 11

*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community*
*Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 1 of 72

# EXHIBIT A

NOTE

U.S. $1,275,000.00

Miami, Florida
March 6, 2007

FOR VALUE RECEIVED the undersigned, and if more than one, jointly and severally ("Maker"), promises to pay to the order of NLG, LLC ("Holder"), or to its successors or assigns, ONE MILLION DOLLARS TWO HUNDRED SEVENTY-FIVE THOUSANDAND ZERO CENTS ($1,275,000.00) in lawful money of the United States, with interest, payable as follows:

1.  THREE HUNDRED THOUSAND DOLLARS AND ZERO DOLLARS ($300,000.00) of principal shall be due and payable on April 10, 2007;
2.  THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on September 10, 2007; and,
3.  FOUR HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($400,000.00) of principal shall be due and payable on January 10, 2008.
4.  TWO HUNDRED SEVENTY-FIVE THOUSAND AND ZERO CENTS ($275,000.00) of principal shall be due and payable on September 10, 2008

Interest at the rate of TEN percent (10%) per annum shall accrue on the outstanding principal balance. Accrued and unpaid interest shall be paid in a single installment on September 10, 2008.

The payments due hereunder shall be payable by wire transfer to Wachovia Bank, N.A., Account # 2000015278142, ABA # 031201467, or such other place as Holder may designate in writing for the benefit of NLG, LLC.

The full balance of principal, along with all accrued and unpaid interest, shall be due and payable, unless sooner paid in one lump sum payment on March 10, 2008. This Note may be prepaid in whole or in part at any time without penalty, together with accrued interest on the principal prepaid to the date of payment. Any partial prepayment shall be applied first to the payment of interest on the unpaid principal amount at the interest rate, and the remainder thereof to payment on account of principal.

The principal amount of this Note may be prepaid in whole or in part at any time without penalty. Any partial prepayment shall be applied against the next maturing payment of principal.

The Maker waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold Maker liable.

The Maker further agrees to pay all costs of collection, including reasonable attorney's fees in case the principal of this Note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

If any installment of interest or principal under this Note is not paid within ten (10) days from the due date, the entire principal amount outstanding hereunder and accrued and unpaid interest at the default interest rate of twenty-four percent (24%) per annum thereon (the "default interest rate") shall at once become due and payable, at the option of the Holder.

This Note is to be construed and enforced according to the laws of the State of Florida.

Ex "A"

Notwithstanding anything herein to the contrary, it is not the intention of the parties to charge or receive nor shall there at any time be charged any interest which would result in a rate of interest being charged which is in excess of the maximum rate permitted to be charged by law; and in the event that any sum in excess of the maximum legal rate of interest is paid or charged, the same shall, immediately upon discovery thereof, be deemed to have been a prepayment of principal (which prepayment shall be permitted, and be without premium or penalty) as of the date of such receipt, and all payments made thereafter shall be appropriately reapplied to interest and principal to give effect to the maximum rate permitted by law, and after such reapplication, any excess payment shall be immediately refunded to Maker.

This Note is secured by a Florida Real Estate Purchase Money Second Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), dated of even date herewith, encumbering property situated in the State of Florida, which Mortgage was granted by the Maker to the Holder, to which reference is hereby made for a description of the mortgaged property, the nature and extent of the security, the rights of the Holder in respect thereof and the terms and conditions upon which this Note is issued. The unpaid balance of the principal amount, plus accrued interest, shall become immediately due and payable at the option of the Holder upon the happening of an event by which said balance shall or may become due and payable under the terms of the Mortgage.

Maker:

_____
ELIZABETH HAZAN, a single woman

# EXHIBIT B

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaims...
Case No...
Page 5 of 72

PREPARED BY AND RECORDED COPIES
SHOULD BE RETURNED TO:
Thomas M. David, Esq.
Weisenfeld & Associates, P.A.
2900 S.W. 28 Terrace, Penthouse
Miami, Florida 33133

```
CFN  2007R0410013
OR Bk 25559 Pgs 4266 - 4272 (7pgs)
RECORDED 04/24/2007 12:37:00
MTG DOC TAX 4,462.50
INTANG TAX 2,550.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

## PURCHASE MONEY SECOND MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS PURCHASE MONEY SECOND MORTGAGE AND SECURITY AGREEMENT (hereinafter the ("Mortgage") executed the 8th day of March, 2007 by ELIZABETH HAZAN, a single woman (hereinafter referred to as "Mortgagor"), to NLG, LLC, a Delaware Limited Liability Company, (hereinafter referred to as "Mortgagee").

### WITNESSETH:

FOR GOOD AND VALUABLE CONSIDERATION, and also in consideration of the aggregate sum named in the Note of even date herewith (the "Note"), hereinafter described, the said Mortgagor grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the said Mortgagee, its successors and assigns, in fee simple, all that certain real property of which Mortgagor is now seized and possessed, and in actual possession, situated in the county of Miami-Dade, State of Florida, to-wit:

Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

TOGETHER WITH ALL structures and improvements now and hereafter located on said real property and all licenses and permits used or required in connection with the use of said real property, and all leases of said property now or hereafter entered into and all right, title and interest of the Mortgagor thereunder, including without limitation, rents, issues, proceeds and profits accruing and to accrue from said real property, all of which are included within the foregoing description. Also, all gas, steam, electric, water and other heating, plumbing, ventilating, security, irrigating and power, extensions, appliances, fixtures, and appurtenances, including air conditioning, ducts, machinery and equipment, which are now or may hereafter pertain to or be used with, in or on said real property, though they be either detached or detachable (the real property and tangible and intangible personal property as described above, are hereinafter collectively referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the same together with the tenements, hereditaments, and appurtenances, unto the said Mortgagee, its successors and assigns, in fee simple.

AND the said Mortgagor, for itself and its successors and assigns, covenants with the said Mortgagee, its successors and assigns, that the said Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that there is a dedicated public right of ingress and egress to the Mortgaged Property; that the said Mortgagor has full power and lawful right to the Mortgaged Property in fee simple as aforesaid; that the Mortgaged Property is free from all encumbrances except as may be set forth elsewhere herein; that the lien hereof is a second mortgage lien on the Mortgaged Property; and that the said Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same against the lawful claims of all person whomsoever, subject only as set forth herein.

1

Case 1:22-cv-21485-RNS Document B-5c-742 Entered on FLSD Docket 04/14/2023 Page 36 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25909 CA 01
Page 6 of 72

PROVIDED ALWAYS, that if the said Mortgagor, its successors or assigns, shall pay unto the said Mortgagee, its successors or assigns, all of the amount under that certain Note from Mortgagor to Mortgagee of even date herewith in the principal amount of ONE MILLION TWO HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 ($1,275,000.00) with the final payment due as provided in the Note on March 10, 2008 and shall further perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the said Note and of this Mortgage, then this Mortgage and the estate thereby created shall cease and be null and void, and this instrument shall be released by the Mortgagee. All release documentation shall be prepared and recorded at the expense of Mortgagor and shall be furnished by Mortgagor to Mortgagee for execution.

AND the Mortgagor, for itself and its successors and assigns, hereby covenants and agrees:

1. To pay all and singular, the principal and interest and other sums of money payable by virtue of the aforementioned Note and this Mortgage, or either, promptly when due.

2. To pay all and singular taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Mortgaged Property promptly and prior to the time the same shall become delinquent. The Mortgagor shall deliver to the Mortgagee receipts evidencing the payment of said taxes, assessments, levies, etc., immediately upon the payment thereof as required in this Paragraph; provided, however, that the receipt evidencing payment of the ad valorem taxes lawfully imposed for the preceding calendar year shall be delivered to Mortgagee no later than March 15 of each year.

3. To pay all and singular the costs, charges and expenses, including reasonable attorneys' fees and costs of abstracts of title examination, incurred or paid at any time by the Mortgagee, its successors or assigns, because of the failure on the part of the Mortgagor, its successors or assigns, to perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants of the aforementioned Note and this Mortgage, or either of same.

4. To perform, comply with and abide by each and every stipulation, agreement, condition and covenant in the aforesaid Note and this Mortgage.

5. To permit, commit, or suffer no waste, impairment, abandonment, or deterioration of the Mortgaged Property, or any part thereof, and upon the failure of the Mortgagor to keep the buildings or any other item of security hereunder now or hereafter located on the Mortgaged Property in good condition or repair, the Mortgagee may demand the immediate repair of said buildings or such other security, or an increase in the amount of security, or the immediate repayment of the debt secured hereunder.

6. (a) To keep any and all buildings now or hereafter on the Mortgaged Property insured under policies of all-risk insurance (which shall include, but not be limited to, fire, extended coverage and vandalism), in a sum acceptable to the Mortgagee, but in no event less than the total of the principal balance of the Note plus the principal balance of the note secured by any prior mortgage encumbering the Mortgaged Property, in a company or companies acceptable to the Mortgagee, and the premiums for all such insurance shall be paid by the Mortgagor not later than fifteen (15) days before same are due. The original of such policy or policies, or a certificate of insurance, shall be delivered to and held by the Mortgagee and monies due thereunder shall be made payable to the Mortgagee, his successors or assigns, to the extent of his interest, by having attached or contained in the policy or policies a loss-payable clause and proper endorsements;

(b) Subject to the rights of the holder of a prior mortgage encumbering the Mortgaged Property, in the event any sum of money becomes payable under the insurance policy or policies, the Mortgagee, its successors or assigns, shall have the

2

Case 1:22-cv-21485-RNS Document 65-7 Entered on FLSD Docket 04/14/2023 Page 37 of 650

Exhibits to NH G. Lee's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case Note 2021-2022 Mortgage
Page 7 of 12

option to receive and apply the same on account of the indebtedness hereby secured or permit the Mortgagor to receive and use all or any part thereof for other purposes, without thereby waiving or impairing any equity, lien or right under or by virtue of this Mortgage;

(c)  Notwithstanding anything to the contrary contained herein and so long as Mortgagor is not in default hereunder, Mortgagee agrees that, in the event of a casualty loss to the Mortgaged Property, or any portion thereof, Mortgagee will permit Mortgagor to use any and all insurance proceeds to repair, replace or restore the Mortgaged Property to the condition it was prior to such casualty; provided that Mortgagor provides Mortgagee with certification from an architect or engineer as to the cost of such repair, replacement or restoration and that, to the extent that the insurance proceeds are not sufficient to cover such costs, Mortgagor agrees to disburse and expend the funds necessary to cover the costs of repairing, replacing or restoring the Mortgaged Property that exceed their available insurance proceeds prior to using said proceeds;

(d)  Upon the failure of Mortgagor to obtain required insurance, the placing of such insurance and the paying of the premium of such insurance or any part thereof by the Mortgagee shall not be deemed to waive or affect any right of the Mortgagee hereunder, including the right to foreclose this Mortgage, and each and every payment of insurance so made by the Mortgagee shall be considered additional principal due under the Note and shall bear interest from the date of payment thereof at the rate of twenty-four percent (24%) per annum, and this Mortgage shall secure the payment of same; Every such payment shall be deemed additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore, and shall be secured by the lien of this Mortgage;

(e)  If the Mortgagee acquires title to the Mortgaged Property by foreclosure proceedings or otherwise, any unearned premiums on a hazard insurance policy covering the Mortgaged Property and held by the Mortgagee are hereby assigned to and shall belong to the Mortgagee. If at any time during the lien of the Mortgage any insurance policies shall be cancelled and returned premiums available, these returned premiums shall belong to the Mortgagee and at the option of the Mortgagee shall be credited by the Mortgagee against the indebtedness secured hereunder. Any rights of the Mortgagee to any insurance proceeds shall in no way be affected or impaired by reason of the fact that the Mortgagee may have instituted foreclosure proceedings hereunder.

7.  To further secure payment of the indebtedness of the Mortgagor to the Mortgagee, the Mortgagor does hereby sell, assign, transfer and set over unto the Mortgagee all of the leases, rents, issues and profits of the Mortgaged Property. This assignment shall become operative upon any default being made by the Mortgagor under the terms of the Mortgage or the Note secured hereby, the aforementioned first mortgage, or either of same and shall remain in full force and effect so long as any default continues to exist in the making of any of the payments or the performance of any of the covenants of this Mortgage or the Note secured hereby, and the Mortgagee shall have the right to enter upon the Mortgaged Property and collect same directly from persons in possession.  In the event that the Mortgagor should further assign the leases, rents, issues and profits of the Mortgaged Property, or any part thereof, without the consent of Mortgagee, then the entire principal sum secured hereby, with accrued and unpaid interest and any other charges shall, at the option of the Mortgagee, become immediately due and payable.  Any subsequent assignment of the rents, deposits, revenues and profits of the Mortgaged Property, or any part thereof, approved by Mortgagee, shall at all times be inferior and subordinate to the assignment granted hereby and to the rights of the Mortgagee hereunder.

8.  In the event the Mortgagor fails to pay any tax or other charge or obligation required to be paid by the Mortgagor hereunder, within the time set forth for such payment, the Mortgagee shall have the right, but shall not be required to pay such charge or obligation without waiving or affecting the option of the Mortgagee to consider this Mortgage in default.  Every such payment so made shall be considered additional

3

principal due under the Note and shall bear interest from the date thereof at the rate of twenty-four percent (24%) per annum.  Every such payment shall be deemed additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore, and shall be secured by the lien of this Mortgage.

9.   If any of the sums of money due on the Note or otherwise herein referred to are not promptly and fully paid or if any of the stipulations, agreements, conditions and covenants contained in the Note and this Mortgage, or either of same, are not duly performed, complied with and abided by, within ten (10) days after an applicable due date, the same shall be considered a default of this Mortgage and the Note; and the aggregate sum set forth in the Note then remaining unpaid, with interest accrued and unpaid, and all monies secured hereby, shall become due and payable forthwith, or thereafter, at the option of the Mortgagee, as fully and completely as if all the said sums of money were originally stipulated to be paid on such day, anything in the Note or in this Mortgage to the contrary notwithstanding; and thereupon or thereafter, at the  option of the Mortgagee, without notice or demand, foreclosure proceedings or other suit at law or in equity may be prosecuted as if all monies secured hereby had matured prior to its institution.

10.   The following shall be considered additional acts of default, which, upon occurrence, shall allow the Mortgagee to pursue the various remedies for default hereunder; (a)  The filing by the Mortgagor of a voluntary petition in bankruptcy or the Mortgagor's adjudication as a bankrupt or insolvent; or (b)  The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Mortgagor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or further federal or state law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains unvacated and unstayed for sixty (60) days from the date of entry thereof; (c)  an event of default under the aforementioned first Mortgage; or, (d) if foreclosure proceedings are instituted with regard to any other lien against the Mortgaged Property whether prior to or inferior to the lien of this Mortgage; or, (e) the creation or allowance of any additional mortgage encumbrance secured by the Mortgaged Property whether prior to or inferior to the lien of this Mortgage.

11.  That in the event the Mortgaged Property or any part thereof, shall be condemned and taken for public use under the power of eminent domain, the Mortgagee shall have the right to require that all damages awarded for the taking of or damages to the Mortgaged Property, including interest thereon, shall be paid to the Mortgagee, not to exceed the then unpaid balance of this Mortgage and the Note secured hereby, together with all interest and charges then outstanding, and, at the option of the Mortgagee the same may be applied to payments of principal in the inverse order of maturity.

12.  That no extensions of the time or modification of the terms of payment of the Note by the Mortgagee shall release, relieve, or discharge the Mortgagor from the payment of any of the sums hereby secured, but in such event the Mortgagor shall nevertheless be eligible to pay such sums according to the terms of such extension or modification unless specifically released and discharged in writing by the Mortgagee. Any acceptance by the Mortgagee of part payment of any installment of principal or interest, or both, or of part performance of any covenant, or delay by the Mortgagee for any period of time in exercising the option to mature the entire debt secured hereby, shall not operate as a waiver of the right to exercise such option to mature the entire debt secured hereby.

13.  In the event of a suit being instituted to foreclose this Mortgage, the Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Mortgaged Property, and of all rents, incomes, profits, issues and revenues thereof, from whatever source derived; and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint such receiver with  the usual powers and duties of receivers in like cases; and said appointment shall be made by the court as a matter of strict right to the Mortgagee, and without reference to the adequacy or

4

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. _____
Page 9 of 72

14. That if any action or proceeding shall be commenced by any person other than the Mortgagee (except an action to foreclose this Mortgage, or to collect the debt secured hereby) to which action, or proceeding, the mortgagee is made a party or in which it shall become necessary to defend, or uphold, the lien of this mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute, or defend the rights and lien created by this Mortgage (including court costs and reasonable attorneys' fees at all trial and appellate levels), shall be paid by the Mortgagor, together with interest thereon at the rate of twenty-four percent (24%) per annum and any such sum and the interest thereon, shall be a claim upon the Mortgaged Property, attaching or accruing, subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and shall be deemed an additional payment obligation under the Note secured hereby. The sums paid by the holder hereof in accordance with the terms of this paragraph shall be paid by the Mortgagor unto the holder hereof within fifteen (15) days of said payment, without demand. Upon failure of Mortgagor to make said payment, the Mortgagee, at its option may declare this Mortgage and the Note secured hereby to be in default, thereupon maturing all of the unpaid indebtedness, including the sums advanced hereunder. In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured hereby, the provisions of law and this Mortgage respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

15. Upon the occurrence of a default hereunder, the principal amount of the Note secured hereby, together with all accrued and unpaid interest, and together with all sums which may have been advanced by Mortgagee and which are secured hereby, shall bear interest at the lesser of twenty-four percent (24%) or the highest rate permitted by the laws of the State of Florida, until paid in full.

16. No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other agreement executed as a part of the loan evidenced by the Note is exclusive of any other right, power or remedy, and each and every right, power and remedy given hereunder or under the Note or any other instrument securing the Note or now or hereafter existing at law, in equity or by statute, shall be cumulative, at the option of Mortgagee. A waiver in one or more instances of any of the terms, covenants, conditions or provisions hereof, or of the Note or obligations secured hereby, shall apply to the particular instance or instances and at the particular time or times only, and no such waiver shall be deemed a continuing waiver, but all of the terms, covenants, conditions and other provisions of this Mortgage and of the Note secured hereby shall survive and continue to remain in full force and effect.

17. To the extent that the Mortgaged Property shall be deemed to be personal property, this Mortgage shall serve as a "security agreement" within the meaning of the Uniform Commercial Code as adopted in the State of Florida. Mortgagor hereby grants to Mortgagee a security interest in and to all of those portions of the Mortgaged Property which may ultimately be held to be personal property. With respect to such personal property, Mortgagee shall have all rights afforded secured parties by the Uniform Commercial Code, as adopted in the State of Florida, and as may hereafter be modified or amended, in addition to, but not in limitation of, the other rights afforded the Mortgagee hereunder.

18. If all or any part of the Mortgaged Property, or any interest therein, is sold, conveyed, transferred (including a transfer by agreement for deed or land contract) or further encumbered by Mortgagor without Mortgagee's prior written consent, then, and in that event, Mortgagor shall be deemed in default and Mortgagee may declare all sums secured by this Mortgage immediately due and payable. Any and all leases of all or part of the Mortgaged premises shall be subordinate to the lien of the Mortgagee arising pursuant to this Mortgage.

19. The mailing of a written notice of demand, addressed to the owner of record of the Mortgaged Property, directed to the said owner at the last address actually

5

furnished to the Mortgagee, or directed to said owner at the Mortgaged Property, and mailed by United States mail, shall be sufficient notice and demand in any case arising under this instrument and required by the provision hereof or by law; provided, however, that the provisions of this Paragraph shall not be construed as requiring notice from the Mortgagee to the Mortgagor unless specifically provided by other provisions hereof or by provisions of the Note.

20. All payments received by the Mortgagee shall be applied first to accrued and unpaid interest and then to the principal of the Note.

21. Notwithstanding anything to the contrary contained herein and/or in the Note, it is the intention of the parties that any and all interest charged, collected and/or paid shall not exceed the maximum effective rate of interest allowed under applicable law. Should any amounts, characterized as interest, in excess of said maximum rate, be charged, collected and/or paid, such excess shall be refunded to the Mortgagor or credited against the sums due the Mortgagee pursuant to the terms of this Mortgage and the Note secured hereby.

22. This Mortgage is and shall be a Second Purchase Money Mortgage of the Mortgaged Property, subject and subordinate only to that certain first Mortgage given by Mortgagor to Washington Mutual Bank, F.A., in the original principal amount of THREE MILLION EIGHT HUNDRED TWENTY-FIVE THOUSAND AND NO/100 ($3,825,000.00).

23. The Mortgagor shall from time to time with ten (10) days after written demand by the Mortgagee, execute in such form as shall be required by the Mortgagee, an estoppel certificate, duly acknowledged, setting forth the amount of principal and interest unpaid under the Note and the general status of this Mortgage. Failure of the Mortgagor to make and deliver the estoppel certificate within the required time shall constitute a breach of this Mortgage and a default hereunder.

24. Any abstract or abstracts of title covering the Mortgaged Property shall be delivered to Mortgagee or his designated agent, which shall at all times during the term of this Mortgage, remain in the possession of the Mortgagee, and in the event of the foreclosure of this mortgage or other transfer of title, all right, title and interest of the Mortgagor in and to such abstract or abstracts of title shall pass to the purchaser or grantee.

25. This Mortgage and the Note shall be governed by the substantive and procedural laws of the State of Florida. The terms "Mortgagor" and "Mortgagee" whenever used herein shall include the heirs, personal representatives, successors and assigns of the respective parties hereto. Whenever used the singular number shall include the plural and the plural the singular, and the use of any gender shall included all genders.

26. In the event any one or more of the provisions contained in this Mortgage or in the Note secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, and if the deletion thereof would not adversely affect the receipt of any material benefit by and to any party hereunder or substantially increase the burden of any party hereto, such validity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provision of this Mortgage.

27. The Mortgagor hereby waives any right it may have to a jury trial in any action which may be brought under the Mortgage or the Note secured hereby.

6

Case No. 2013-25902 CA 01

Page 1 of 72

LAST PAGE

28. This Mortgage constitutes the complete agreement between the parties hereto as to the subject matter hereof; and it may not be amended, changed or modified orally, except by a writing signed by the party to be charged by said amendment, change or modification.

IN WITNESS WHEREOF, the said Mortgagor has caused these presents to be duly executed as of the day and year first above.

Signed, sealed and delivered
in the presence of:

_Lourdes Marrero_
Print or Type Name

_Melbis Avila_
Print or Type Name

MORTGAGOR:

_____
ELIZABETH HAZAN, a single woman

STATE OF FLORIDA )
                 )
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me, the undersigned, this 8th day of March, 2007, by Elizabeth Hazan.

NOTARY PUBLIC-STATE OF FLORIDA
Melbis Avila
Commission # DD522194
Expires: FEB. 23, 2010
Bonded Thru Atlantic Bonding Co., Inc.

[NOTARIAL SEAL]

_Melbis Avila_
NOTARY PUBLIC

Personally Known _____ OR Produced Identification ✓

Type of Identification Produced _Florida Drivers License_

7

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

     Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

     Defendants

_____/

## ORDER GRANTING FORECLOSURE

     THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second

Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil

Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,

ORDERS AND ADJUDGES as follows:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 14 of 72

The history of the litigation between the parties was set out in detail when the matter went up on appeal to the Third District. The facts and procedural history recited in the opinion constitute the law of the case. In its opinion, the Third District stated as follows:

**Facts and Procedural Background**

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

*NLG, LLC v. Hazan*, 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### Status of the Pleadings After Mandate

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 16 of 72

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### *Intervention*

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

4

Case 1:22-cv-21485-RNS Document 85c-T42 Entered on FLSD Docket 04/22/2023 Page 47 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 17 of 72

property which was then the subject of a mortgage foreclosure action and accompanying lis pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention. In *Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation."

*Carlisle*, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any interest in the litigation. The Wherefore Clause merely requests intervention. But if Selective is trying to collect on the Judgment by Confession, it is undisputed that the judgment has been satisfied. Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to assert its rights, but to obstruct the foreclosure of his wife's property. To allow intervention by Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction. As the Third District recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if Selective were allowed to intervene, they would take "the procedural posture of the case as it stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the then-existing claims in the lawsuit." The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id.*

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

### Selective Advisors' Arguments

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

Case 1:22-cv-21485-RNS Document Doc 742 Entered Filed FLSD 04/08 Docket Page 4/20/23 Page 51 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 21 of 72

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.*, 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk*, 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action...").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District. Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

Case 1:22-cv-21485-RNS Document 65-7 Entered on FLSD Docket 04/14/2023 Page 53 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 23 of 72

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..." The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 25 of 72

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG. Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); Williams, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

### Conclusion

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is hereby GRANTED. The Court will hereafter enter a Final Judgment of Foreclosure upon the presentation of updated affidavits.

ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.

_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 28 of 72

# EXHIBIT "A"

Case 1:22-cv-21485-RNS Document 85 Entered on FLSD Docket 04/20/23 Page 59 of 650
Exhibits to Ans. to Affirmative Defense, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 29 of 72

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                          Chapter 7

Selective Advisors Group LLC,                   Case No. 815-72153-A736

      Debtor.                                   <u>Affirmation in Support</u>

--------------------------------------------------------X

        Marc A. Pergament, duly affirms under the penalties of perjury as follows:

        1.     I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

        2.     I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

        3.     This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

        4.     On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

Case 1:22-cv-21485-RNS Document 95 Entered on FLSD Docket 04/14/2023 Page 60 of 650
Case 9:15-72153-769    Doc 11    Filed 08/06/15    Entered 08/06/15 14:29:22
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 30 of 72

5.     I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015.  A further request for an adjournment of the § 341(a) meeting was declined.

6.     On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.     My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.     Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.     The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012.  A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC.  The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment.  A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

Case 1:22-cv-21485-RNS Document 65 742-3 Filed FLSD Docket 04/20/23 Page 61 of 650
Exhibits to SEC 8-15-7 Answer, Affirmative Defenses, Counterclaim and Crossclaim 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 31 of 72

10.     After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.     As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC.  I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence.  Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.     Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.     Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.     I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

Case 1:22-cv-21485-RNS Document 85c 723 Entered on FLSD Docket 04/20/23 Page 62 of 650
Exhibits to NPG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 32 of 72

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.     Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.     The dispute with respect to the Judgment is evident.

17.     As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.     NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.     I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

Case 1:22-cv-21485-RNS Document 85c 742 Filed FLSD Docket 04/04/2023 Page 63 of 650
Exhibits to Case 8-15-72152 Affirmance Defense conclusions and conclusions 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 33 of 72

20.     For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered.  A copy of the Stipulation is annexed hereto as Exhibit "D."

21.     I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.     It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.     No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:   Garden City, New York
         August 6, 2015

_____
Marc A. Pergament

Exhibits to SEC's Answer, Affirmative Defenses, Counterclaims and Crossclaims
Case 8-15-cv-24553-JEG Doc. 11-4 Filed 08/06/15 Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 34 of 72

# EXHIBIT A

Case 1:22-cv-21485-RNS Document 85-7 Entered on FLSD Docket 04/24/2023 Page 65 of 650
Exhibits to NLG's Reply to Answer, Affirmative Defenses, Counterclaim and Entered 08/06/15 14:29:22
Case 8:15-72153-reg Doc 11-1 Filed 08/06/15
Case No. 2013-25902 CA 01
Page 35 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

-----------------------------------------------------------------x

9197-5904 QUEBEC INC
  Plaintiff,

                          -against-

NLG LLC
                          Defendant.

----------------------------------------------------------------

ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes, Delaware 19958 County of Sussex, party of the second part,

WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.

Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

Case 1:22-cv-21485-RNS Document 85c-3 Entered on FLSD Docket 04/20/2023 Page 66 of 650
Case 8-15-72153-reg Doc 1-1 Filed 08/06/15 Entered 08/06/15 14:29:22
Exhibits to NBSC HK's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 36 of 72

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

RAYMOND HOULE, president

## ACKNOWLEGEMENT

Province

State of _____ Quebec _____

County of __ D'Arcy McGee __ ss.:

On the __3__ day of __June__ in the year 2014, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Raymond Houle

## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 3/ 2014

NOTARY PUBLIC
NAME:

COMMISSAIRE A L'ASSERMENTATION
PIERRETTE
TARDIF
# 198836

Case 1:22-cv-21485-RNS Document 35-2 Entered on FLSD Docket 06/14/2023 Page 67 of 650

Case 8:15-72153-reg   Doc 11-2   Filed 08/06/15   Entered 08/06/15 14:29:22
Exhibits to SEC's Answer, Affirmative Defenses, Counterclaims and Crossclaim
Case No. 2013-25902 CA 01
Page 37 of 72

# EXHIBIT B

Case 1:22-cv-21485-RNS Document 55-72 3edFiledFLSD Docket 06/44/2023 Page 68 of 650
Exhibit 8.15-7213 wagAffiDaoi11-Defenses Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 38 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

                **Plaintiff,**

Index No.:

**JUDGMENT BY CONFESSION**

    against

NLG, LLC, a Delaware Limited Liability Company,

               **Defendant.**

1 2 1 0 1 8 7 5

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

MARZEC LAW FIRM, PC

I HEREBY CERTIFY THAT I HAVE ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

Case 1:22-cv-21485-RNS Document 85 Entered on FLSD Docket 04/20/23 Page 69 of 650
Exhibit 6-15-72153-reg Affidavit 2 Defendant Counterclaims and Entering
Case No. 2013-25902 CA 01
Page 39 of 72

JUDGMENT entered the __22nd__ day of __February__, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,


**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is


ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of NLG, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.


_Norman Goodman_
CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK


\* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT A

Case 1:22-cv-21485-RNS Document 85 Entered on FLSD Docket 05/12/23 Page 70 of 650
Exhibits Case 8:15-72153-reg Affirm Mov 1 Defenses subd...ed and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 40 of 72

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187 5/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

**AFFIDAVIT OF CONFESSION OF JUDGMENT**

NLG, LLC, A Delaware Limited Liability Company,

Defendant.

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**    ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.

Sworn to before me this
1½ day of Febnry, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

NOTARY PUBLIC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

EXHIBIT A

Case 1:22-cv-21485-RNS Document 85 Entered on FLSD Docket 05/20/23 Page 71 of 650
Exhibits Case 8-15-72453-reg Doc 1 Defense Schedule 08/06/15 and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 41 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10875/12

9197-5904 Quebec, Inc.,

                                   **Plaintiff,**

**AFFIDAVIT OF RAYMOND HOULE REGARDING FACTS SUPPORTING JUDGMENT**

        against

NLG, LLC,

                                  **Defendant.**

STATE OF NEW YORK

COUNTY OF NEW YORK      **ss.:**

      Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

      This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

Exhibits to NJ Cr LLC's Answer, Affirmative Defenses Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 42 of 72

*RAYMOND HOULE*
RAYMOND HOULE

Sworn to before me on the 21 day of February, 2012.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20.

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

Supreme Court Records OnLine Library - page 5 of 6

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                  Index No.

9197-5904 Quebec, Inc.,

                                       Plaintiff,

    against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                 COMPANY,

                                       Defendant.

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**

FEB 22 2012

AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

EXHIBIT A

# EXHIBIT C

Case 1:22-cv-21485-BB Document 85-3 Entered on FLSD Docket 08/06/15 14:29:22 Page 75 of 650

Exhibits to N.C.C, LPC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 45 of 72

Case 12-16438-jkf*SEALED*    Doc 211 *SEALED*    Filed 03/24/15    Entered 03/24/15
15:32:21    Desc Main Document    Page 1 of 2

## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
|  | : |
|  | : CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER    KOSACHUK,    a.k.a. | : |
| CHRIS KOSACHUK | : |
|  | : |
|  | : |

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of $ 96,086.55, pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

Case 1:22-cv-21485-BB Document 55-3 Entered on FLSD Docket 05/20/23 Page 76 of 650
Exhibits to NEO, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 46 of 72 Case 12-16438-jkf *SEALED* Doc 211 *SEALED* Filed 03/24/15 Entered 03/24/15
15:32:21 Desc Main Document Page 2 of 2

4. Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5. This Final Judgment may be recorded as a matter of public record.

6. This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7. Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

Case 8:15-72485-JFD Doc 11-4 Filed 08/06/15 Entered 08/06/15 14:29:22

Exhibits to NEG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 47 of 72

# EXHIBIT D

Case 1:22-cv-21485-BB Document 85-7 Entered on FLSD Docket 04/20/23 Page 78 of 650
Case 8-15-72153-reg Doc 114 Filed 08/06/15 Entered 08/06/15 14:29:22
Exhibits to NLG, LPC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 48 of 72

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In Re:                                          Chapter 7

Selective Advisors Group LLC,                   Case No. 815-72153-A736

            Debtor.                             Stipulation of Settlement

-----------------------------------------------------------X

       Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code,

       Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the Bankruptcy Code,

       Whereas, the Trustee having raised issues as to whether this filing was a good faith bankruptcy filing by the Debtor,

       Whereas, there is an issue concerning whether the Debtor has any creditors in this bankruptcy case,

       Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having expended substantial time and effort in trying to understand this bankruptcy case and all of the related litigation between the Debtor and NLG LLC,

       It is hereby Stipulated and Agreed as follows:

       1.      This bankruptcy case is dismissed with prejudice.

       2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross & Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by the Debtor in the bankruptcy petition and related State Court lawsuits.

Case 1:22-cv-21485-RNS Document B5c 772-3 FiledEILGD4l08keDo04 6R0d223 Page 79 of 650
Exhibits to SEG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 49 of 72

3.     This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.     The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
       July 23, 2015

                                        Weinberg, Gross & Pergament LLP
                                        Attorneys for Trustee

By:     _____
                                        Marc A. Pergament
                                        400 Garden City Plaza, Suite 403
                                        Garden City, New York  11530
                                        (516) 877-2424

                                        Vlahadamis & Hillen, LLP
                                        Attorneys for Debtor

By:     _____
                                        Evans M. Hillen
                                        148 East Montauk Highway, Suite 3
                                        Hampton Bays, New York  11946
                                        (631) 655-4115

"So Ordered"

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 50 of 72

# EXHIBIT "B"

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

---

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

EVANS M. HILLEN
evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc

      Plaintiff,          Index No: 101875/2012

                                       **NOTICE OF FILING
                                       SATISFACTION OF
                                       JUDGMENT**

                - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                           Defendant.
----------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York


Vlahadamis & Hillen, LLP


                            By:    /s/ James F. Vlahadamis
                                    James F. Vlahadamis, Esq.
                                    148 E. Montauk Highway
                                    Suite 3
                                    Hampton Bays, New York 11946


TO:     THE LAW OFFICES OF ARI MOR, ESQ
        347 E 65th Street, Suite 2RW
        New York, New York 2RW
        (347) 850-0378
        ari.mor.esq@gmail.com

        ATTORNEY FOR DEFENDANT
        NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTORNEY FOR ADR MIAMI LLC ("ADRM")

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 54 of 72



Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 55 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK.

------------------------------------------------------------X

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                               Plaintiff,         Index No. 101875/2012
                                                   SATISFACTION OF
                                                       JUDGMENT

       - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                                 Defendant.

------------------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed In the Office of the Clerk of the County of New York. On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

It is certified that there is no outstanding execution with the Sheriff or Marshal within the

State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been

assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is

hereby authorized and directed to make an entry of said satisfaction on the docket of said

judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the
day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean    Neil    Meehan , manager

ACKNOWLEGEMENT

COUNTY OF _Onondaga_

On the _3rd_ day of _September_ the year _2015_ before me, Sean Neil Meehan, the
undersigned, personally appeared personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacities and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 3th 2015

NOTARY PUBLIC
NAME:

## AFFIRMATION OF SERVICE

STATE OF NEW YORK      )
                       )      SS.:
COUNTY OF NEW YORK     )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York. On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:      THE LAW OFFICES OF ART MOR, ESQ
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0578
         art.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

         JONATHAN M. BORG BEDELL & FORMAN LLP
         44 Wall Street, 10th Floor
         (646) 219-7551
         jborg@bedell-forman.com

         ATTTORNEY FOR ADR MIAMI LLC ("ADRM")


Vlahadamis & Hillen, LLP

                              By:      /s/ James F. Vlahadamis
                                       James F. Vlahadamis, Esq.
                                       148 E. Montauk Highway
                                       Suite 3
                                       Hampton Bays, New York 11946

# EXHIBIT D

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 60 of 72

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015 01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

GENERAL JURISDICTION DIVISION

2011-42770 CA 01

CASE NO.:~~2011-42270 CA~~ (02)



**FILED**

DEC 04 2015

CLERK CIRCUIT & COUNTY COURTS

### FINAL JUDGMENT OF FORECLOSURE
### (Pursuant to Administrative Order 09-09)

      **THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on mandate from the Third District Court of Appeals on November 25, 2014;

      **IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service of process has been duly and regularly obtained over all Defendants in this action and this Court has jurisdiction over the parties in this action and the subject matter herein.

1.    **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following from Defendant ELIZABETH HAZAN:

      Principal due on the note secured by the mortgage foreclosed, as set forth in the Opinion of the Third District Court of Appeal:

          **$1,618,071.29.**

      Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion of the Third District Court:

Case 1:22-cv-21485-RNS Document 55-7 Filed 08/04/23 Page 91 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 61 of 72

CFN: 20150812181 BOOK 29902 PAGE 3738

**$2,953,489.91**

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015
until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the
action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

| | |
|---|---|
| Property Maintenance | $21,333.14 |

**GRAND TOTAL: $4,876,654.29**

2.     **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment**
against the Defendants.  With the exception that any deficiency is hereby taxed against
Defendant ELIZABETH HAZAN, there are no in personam damages against said other
Defendants.

3.     **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West
Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein.
The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the
Defendants, and all persons, corporations, or other entities claiming by, through, or under
the defendants or any of them and the property will be sold free and clear of all claims of

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 62 of 72

CFN: 20150812181 BOOK 29902 PAGE 3739

the defendants. The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on ~~December~~ *January 12, 2016* ~~, 2015,~~ to the highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6. **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8. **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

Case 1:22-cv-21485-RNS-03389-Ament B-5c-742-3-edFiled-FLSD-Docket-06-14/2023 Page 93 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 63 of 72

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9. **Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10. **NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA

Case 1:22-cv-21485-RNS Document 5c-2 Entered on FLSD Docket 06/14/2023 Page 94 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 64 of 72

CFN: 20150812181 BOOK 29902 PAGE 3741

**(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

11.     **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 65 of 72

CFN: 20150812181 BOOK 29902 PAGE 3742

> **FINAL ORDERS AS TO ALL PARTIES**
> **SRS DISPOSITION NUMBER   12**
>
> THE COURT DISMISSES THIS CASE AGAINST
> ANY PARTY NOT LISTED IN THIS FINAL ORDER
> OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
> AS TO ALL PARTIES.
>
> **Judge's Initials   MG**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

**Copies furnished: Parties of record**

# EXHIBIT E

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 67 of 72

# M A N D A T E

### from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## THIRD DISTRICT

This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.

WITNESS the Honorable Frank A. Shepherd, Chief Judge of the District Court of Appeal of the State of Florida, Third District, and seal of the said Court at Miami, Florida on this day.

**DATE:** November 25, 2014

**CASE NO.:** 13-0684

**COUNTY OF ORIGIN:** Dade

**T.C. CASE NO.:** 11-42770

**STYLE:** NLG, LLC, etc.,      v.     ELIZABETH HAZAN,



**ORIGINAL TO:** Miami-Dade Clerk

cc: Mark D. Cohen      Allan S. Reiss      Megan K. Wells

la

# Third District Court of Appeal

## State of Florida

Opinion filed September 3, 2014.
Not final until disposition of timely filed motion for rehearing.

———————

No. 3D13-684
Lower Tribunal No. 11-42770

———————

## NLG, LLC,

Appellant

vs.

## Elizabeth Hazan,

Appellee

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Megan K. Wells (Miramar), for appellant.

Levine & Partners and Allan S. Reiss; Mark D. Cohen (Hollywood), for appellee.

Before SUAREZ, SALTER and LOGUE, JJ.

SALTER, J.

A mortgage lender, NLG, LLC (NLG), appeals a final judgment for the mortgagor, Elizabeth Hazan. Finding no basis in the pleadings or applicable law

for the positions advanced by the borrower, we reverse and remand for further proceedings.

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. Hazan v. NLG, LLC, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. Hazan v. NLG, LLC, 19 So. 3d 319 (Fla. 3d DCA 2009).

2

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

Analysis

3

Case 1:22-cv-21485-RNS Document 574-2 Entered on FLSD Docket 06/84/2022 Page 101 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 71 of 72

A review of Ms. Hazan's pleadings, applicable law, and the transcript of the trial court's January 2, 2013, hearing, discloses no basis for denying foreclosure to NLG. Default in payment was undisputed (conceded in writing, as it was, in the various settlement agreements, which also included waivers of any defenses). The two arguments advanced by Ms. Hazan's counsel were flawed.

First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage. Junction Bit & Tool Co. v. Village Apartments, Inc., 262 So. 2d 659 (Fla. 1972) (unsatisfied judgment on a promissory note secured by mortgage did not constitute a remedy or a bar to a suit to foreclose the mortgage). See also Royal Palm Corporate Ctr. Ass'n, Ltd. v. PNC Bank, NA, 89 So. 3d 923 (Fla. 4th DCA 2012).

As to the second argument advanced by Ms. Hazan's counsel, the December 2008 order "quieting title" did not extinguish the mortgage or its lien. That order quieted title in Ms. Hazan only to the extent it vacated the sheriff's deed obtained by NLG and disentitled anyone in possession (other than Ms. Hazan) to remain in possession. Neither the motion nor the order support the extinguishment of an unpaid purchase money lien on the home (now exceeding $2,000,000.00), a lien senior to the junior mortgage granted by Ms. Hazan as these proceedings unfolded. Because there is no legal basis for such relief in Ms. Hazan's pleadings, the trial

4

court's final judgment must be reversed. <u>BAC Home Loans Servicing, Inc. v.</u> <u>Headley</u>, 130 So. 3d 703, 705 (Fla. 3d DCA 2013); <u>Mullne v. Sea-Tech Constr.</u> <u>Inc.</u>, 84 So. 3d 1247, 1249 (Fla. 4th DCA 2012).

Regarding Ms. Hazan's affirmative defenses to the effect that NLG and its representative at trial lacked standing because of an internal dispute among the members, the trial court explicitly stated in the January 2, 2013, transcript (incorporated by the final judgment) that NLG did have standing and that its representative (Mr. Kosachuk) was a proper representative of NLG.

Accordingly, we reverse the final judgment and remand the case for further proceedings, including the enforcement of NLG's mortgage and the reinstatement of the lis pendens and amended lis pendens previously vacated by the final judgment.

Reversed and remanded.

Bk 29406 Pg 563 CFN 20140815112 11/26/2014 08:37:24 Pg 6 of 6 Mia-Dade Cty, FL

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                              )     Case No. 16-10389-AJC
                                                    )
LIZA HAZAN a/k/a ELIZABETH HAZAN,                   )     Chapter 11
                                                    )
   Debtor.                                         )
                                                    )
                                                    )
_____            )

**DEBTOR'S *AMENDED[1]* EXPEDITED MOTION FOR CONTEMPT, SANCTIONS,
DAMAGES, AND PUNITIVE DAMAGES AND MEMORANDUM OF LAW**

     Debtor Liza Hazan a/k/a Elizabeth Hazan moves this Court for an order holding NLG,

LLC, its alleged manager Chris Kosachuk, and its counsel, Juan Ramirez, Esq., in contempt of

court for willful violation of this Court's Order Confirming Plan of Reorganization entered on

June 12, 2018 [ECF  691] and the automatic stay imposed by 11 U.S.C. §362 and awarding

sanctions, damages, punitive damages, costs, attorney's fees, and other relief, as follows:

     1.     On June 12, 2018, this Court entered its Order Confirming Plan of Reorganization

(Confirmation Order). [ECF No. 691].

     2.     Paragraph 8 of the Confirmation Order contains an injunction prohibiting

creditors whose claims were extinguished from pursuing such claims against the debtor:

> All creditors whose judgments are declared null and void (if any)
> are enjoined from commencing, continuing, or employing any
> action, process, or act to collect, recover, or offset any such debts
> as personal liability of the Debtor, or from property of the Debtor,
> whether or not discharge of such Debtor is waived.

---

[1]  Amended to specify additional conduct of NLG and Ramirez as well as conduct of Chris
Kosachuk in violation of the automatic stay and the Confirmation Order's injunctions.

1

3. Paragraph 9 of the Confirmation Order contains an injunction prohibiting all creditors from taking any action to collect any prepetition debt or to enforce any lien against the debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

4. NLG filed a late proof of claim, which was later completely disallowed by this Court in a November 1, 2017 order in Adversary Case No. 16-01439. [*See* Case No. 16-01439 ECF No. 238].

5. In the Adversary Case, this Court held a trial on July 13, 2017, and on November 1, 2017, entered a Final Judgment on Counts I, II and III in favor of Ms. Hazan. *Id*. It declared that NLG's claim against the debtor had been satisfied and that NLG had no further claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. *Id*. And this Court forever quieted the Debtor's title to her property as against all claims by NLG:

> NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:
>
> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida
>
> have been satisfied and paid, and are deemed SATISFIED OF RECORD, and Debtor has good title to said Property against the

2

claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

Case No. 16-01439 ECF No. 238 at 14.

6.  In direct contravention of Paragraphs 8 and 9 of the Confirmation Order, on August 9, 2018, NLG, through its counsel Juan Ramirez, Esq., recorded a Notice of Lis Pendens against the debtor's home. *See* Exhibit 1 to this Motion.

7.  Ms. Hazan recently learned of the Lis Pendens filed by NLG through a title insurance company with which she is working in contemplation of selling or refinancing her home.

8.  One of Ms. Hazan's attorneys immediately contacted Mr. Ramirez to advise him that his and NLG's conduct violated the Court's orders. In a September 29, 2018 email, Ms. Hazan's counsel, Joel Aresty, Esq., warned Mr. Ramirez that Ms. Hazan would bring this matter to the Court if the Lis Pendens was not promptly withdrawn. *See* Exhibit 2 to this Motion.

9.  Instead of withdrawing the Lis Pendens, NLG, through Mr. Ramirez, took additional steps in violation of the Court's orders and the automatic stay by filing a cross-claim against Ms. Hazan in *JP Morgan Bank, NA v. Elizabeth Hazan a/k/a Liza Hazan, et al.*, Case No. 2013-25902 (Fla. 11th Cir. Ct.) on October 1, 2018. *See* Exhibit 3 to this Motion. In the cross-claim, NLG alleges that it "has a valid lien on the [debtor's home] for the total amount specified in the Foreclosure Judgment" and seeks to foreclose on that purported lien. *Id*. at 9-10.

10.  In addition, NLG has continued to prosecute other lawsuits related to the debtor's property, including a suit styled as a declaratory judgment action against Selective Advisors Group, LLC, which is pending in the United States District Court for the Southern District of Florida as *NLG, LLC v. Selective Advisors Group, LLC*, Case No. 1:18-cv-21398-JEM. In that

case, NLG prays for the court to vacate the New York judgment against NLG that was subsequently assigned to Selective Advisors.

11.    That judgment is integral to this case and the debtor's Plan of Reorganization. In its Final Judgment as to Counts I, II and III, this Court found that in proceedings supplemental brought to enforce the New York judgment, Florida Circuit Court Judge Peter Lopez judicially assigned NLG's claims against the debtor to Selective Advisors. *See* ECF No. 238 in Adversary Case No. 16-01439, pp. 3-4. It was based on the judicial assignment of the New York judgment that this Court concluded that NLG's claim was satisfied and the property had been redeemed. *Id.* at 12-13.

12.    Despite the Court's entry of the Confirmation Order, NLG, through its counsel Mr. Ramirez, has continued to prosecute its claim in Case No. 1:18-cv-21398-JEM, including filing a motion for summary judgment verified by Mr. Kosachuk. *See* Exhibit 4 hereto.

13.    Similarly, despite the Confirmation Order, NLG has moved the New York Supreme Court to vacate the New York judgment. *See* Exhibit 5 hereto.

14.    Mr. Kosachuk is the purported principal of NLG and has submitted an affidavit to advance NLG's efforts to vacate the New York judgment, in which he claims to be a creditor of NLG and states that the New York judgment "is preventing NLG from foreclosing on its collateral, which is a mansion on Fisher Island worth approximately $10 million." *See* Exhibit 6 hereto.

15.    Mr. Ramirez has likewise filed an affidavit in support of vacating the New York judgment, claiming to be a creditor of NLG and that the New York judgment was preventing him from collecting payment from NLG. *See* Exhibit 7 hereto.

4

## ARGUMENT AND MEMORANDUM OF LAW

This Court has jurisdiction to enforce the injunctions in the Confirmation Order as well as

to remedy violations of the automatic stay. In Paragraph 17 of the Confirmation Order, this Court

specifically reserved jurisdiction over enforcement:

> The Bankruptcy Court shall retain jurisdiction:
>
> ***
>
> (m) To enforce any and all injunctions created pursuant to the terms
> of the Plan;
>
> (n) To modify the Plan or to remedy any defect or omission or
> reconcile any inconsistencies in the Plan either before or after
> the entry of the Confirmation Order;
>
> (o) To hear and determine all controversies, suits, and disputes that
> may arise in connection with the interpretation or enforcement
> of the Plan;
>
> (p) To make such orders as are necessary or appropriate to carry
> out the provisions of the Plan.

ECF No. 691 at 6. Moreover, even without such an express reservation, "the court that enters an

injunctive order retains jurisdiction to enforce its order." *Alderwoods Group, Inc. v. Garcia*, 682

F.3d 958, 970 (11th Cir. 2012).

Under Eleventh Circuit precedent, this Court is authorized to impose sanctions on NLG,

Mr. Ramirez, and Mr. Kosachuk for their violation of the Court's injunctions as well as for their

statutory violations:

> Bankruptcy judges, like district judges, have the power to coerce
> compliance with injunctive orders. In the bankruptcy context, "the
> creditor who attempts to collect a discharged debt is violating not
> only a statute but also an injunction and is therefore in contempt of
> the bankruptcy court that issued the order of discharge."

*Alderwoods*, 682 F.3d at 966 (quoting *Cox v. Zale Del., Inc.,* 239 F.3d 910, 915 (7th Cir. 2001)).

Although Ms. Hazan has not yet received a discharge, the automatic stay remains in place and prohibits NLG, Mr. Ramirez, and Mr. Kosachuk's conduct. In a Chapter 11 case, such as this case, the automatic stay remains in place until "the time a discharge is granted or denied." § 362(c)(2)(C).

The automatic stay prohibits, among other things:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> (4) any act to create, perfect, or enforce any lien against property of the estate;

> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title…

§ 362(a).

NLG, Chris Kosachuk, and Mr. Ramirez's conduct in recording the Lis Pendens and filing a cross-claim in the Chase litigation violated the automatic stay. Their conduct in prosecuting the declaratory judgment action, which seeks to invalidate the underlying New York judgment in order to obtain the ability to foreclose on the debtor's home, likewise violated the

automatic stay. And the conduct of NLG, Mr. Kosachuk, and Mr. Ramirez in the New York Supreme Court, seeking the same end, similarly violated the automatic stay.

The Court should remedy these violations. Section 362(k)(1) directs the Court to remedy violations of the automatic stay through monetary sanctions, stating that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Because NLG and Mr. Ramirez have repeatedly and willfully violated the automatic stay, the Court should order them to pay damages, including punitive damages, costs, and attorney's fees to Ms. Hazan.

A creditor engages in a "willful violation" of the automatic stay when the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Willfulness does require that the creditor had "'a specific intent to violate the automatic stay,' but only that the defendant knew of the automatic stay and intended the acts that violated the stay." *Id*. (quoting *In re Goodman*, 991 F.2d 613, 618 (9th Cir.1993)).

NLG and Mr. Ramirez's violations of the automatic stay were willful. First, there can be no question that they knew that the automatic stay had been invoked. Indeed, this is not the first time that the debtor has been forced to move for sanctions as a result of NLG's violations of the automatic stay. *See* ECF No. 469.

It is true that in November 2016, the Court granted relief from the automatic stay "to litigate *the foreclosure claim of Chase* in the Foreclosure Action to the point of judgment, but not to conduct a foreclosure sale of the Property." ECF No. 315 (emphasis added). But it did *not* grant relief from the automatic stay for NLG to file a cross-claim for foreclosure against Ms.

Hazan seeking a result directly contrary to the Court's Final Judgment on Counts I, II, and III in the Adversary Case and the treatment of NLG's claim under the Plan of Reorganization.

Indeed, NLG (through Mr. Ramirez) has twice moved the Court for relief from the automatic stay to pursue foreclosure of Ms. Hazan's home—and both times the Court denied NLG such relief. The Court denied NLG's first motion for relief from stay on August 22, 2016. ECF No. 176. When NLG asked for more limited relief from the automatic stay (after the debtor moved for contempt based on violations of the automatic when NLG took other actions to enforce a purported foreclosure judgment, ECF No. 469), the Court entered an order again denying NLG relief from the automatic stay. *See* ECF No. 500.

So it cannot be credibly disputed that NLG, Mr. Ramirez, and Mr. Kosachuk had actual knowledge of the automatic stay. And even if it could have been possible for them to have lacked knowledge previously, they certainly could not have lacked knowledge when they filed the cross-claim after being expressly warned by Ms. Hazan's attorney to cease and desist. As such, NLG, Mr. Ramirez, and Mr. Kosachuk's violations of the automatic stay were willful.

In addition to its authority to remedy violations of the automatic stay, this Court also "possesses the inherent power to sanction contempt of its orders," including for violating the injunctive provisions of a plan confirmation order. *Alderwoods*, 682 F.3d at 970. The Court should impose sanctions on NLG and Mr. Ramirez on that basis as well. Paragraphs 8 and 9 of the Confirmation Order unambiguously enjoin creditors from pursuing collection of prepetition debts and from imposing liens based on those debts. NLG, Chris Kosachuk, and Mr. Ramirez violated those injunctions in recording the Notice of Lis Pendens and filing the cross-claim.

Their conduct has caused significant damage to the debtor and has impeded her in effectuating the Plan of Reorganization and obtaining a fresh start. The wrongful Lis Pendens

has slandered the debtor's title to her property and prevented her from selling or refinancing the property, which would enable her to resolve the Chase foreclosure litigation and pay off secured creditors.

Section 362 of the Bankruptcy Code provides "for recovery of actual damages, attorney's fees, costs, and punitive damages, where appropriate, for a willful violation of the automatic stay." *In re: Dynamic Tours*, 359 B.R. 336, 342 (Bankr. M.D. Fla. 2006). And the Court may impose additional sanctions for a party's non-compliance with the Court's injunctions, including "traditional sanctions for coercing compliance with an injunction—incarceration or financial penalty," as well as entering "orders to obviate conduct that stands to frustrate administration of the Bankruptcy Code," or "'any type of order, whether injunctive, compensatory or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code.'"

To remedy NLG, Mr. Ramirez, and Mr. Kosachuk's violations of the injunctions contained in the Confirmation Order as well as of the automatic stay, the Court should order them to immediately withdraw or dismiss their cross-claim with prejudice as well as to withdraw, dismiss, cancel, or otherwise remove the Lis Pendens with prejudice. It should also order them to dismiss their suit pending as Case No. 1:18-cv-21398-JEM (S.D. Fla.) with prejudice and to discontinue prosecution of their motions, pleadings and pending Orders to Show cause with prejudice in the New York Supreme Court in Case No. 2012-101875. Such actions are necessary to mitigate the deleterious effects of their violations on the debtor's efforts to successfully reorganize and obtain a fresh start.

In addition, the Court should award actual damages, including the attorney's fees that Ms. Hazan has incurred to defend herself and obtain relief from the wrongful conduct of NLG, Mr. Kosachuk, and Mr. Ramirez. *See In re Omine*, 329 B.R. 343 (Bankr. M.D. Fla. 2005), *aff'd*, 2006

9

WL 319162 (M.D. Fla. 2006) (explaining that attorney's fees are an element of actual damages for a stay violation). In fact, the Court may award attorney's fees even if they are the only actual damages established by the debtor. *In re Hedetneimi*, 297 B.R. 837 (Bankr. M.D. Fla. 2003).

Moreover, NLG, Mr Kosachuk, and Mr. Ramirez have engaged in repeated violations of the automatic stay and plan injunctions even after facing motions for contempt for previous conduct, and even after being warned by the debtor's counsel that their conduct was wrongful. As such, additional sanctions are necessary to deter NLG, Mr. Kosachuk, and Mr. Ramirez from taking additional actions in state court to foreclose on the debtor's home. Accordingly, Ms. Hazan requests that the Court award punitive damages as well.

WHEREFORE, the debtor respectfully requests that the Court enter an order: (a) finding NLG, Mr. Kosachuk, and Mr Ramirez have violated the automatic stay and injunctions contained in the Confirmation Order; (b) finding NLG, Mr. Kosachuk, and Mr. Ramirez in contempt of court; (c) ordering the immediate removal with prejudice of the Lis Pendens, dismissal or withdrawal with prejudice of the cross-claim, dismissal with prejudice of Case No. 1:18-cv-21398-JEM (S.D. Fla.), and withdrawal of all pending motions, Orders to Show Cause or other pleadings in Case No. 2012-101875 (N.Y. Sup. Ct.); (d) enjoining NLG and Mr. Ramirez (and their officers, agents, representatives) from taking any other action judicially or otherwise in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adversary Case 16-01439-AJC [ECF 238] or the Confirmation Order entered on June 12, 2018 [ECF 691], barring NLG, Chris Kosachuk and Mr. Ramirez and their officers (and their officers, agents, and representatives) from attempting to re-litigate in any other forum the issues and claims tried in Adversary Case 16-01439-AJC, including but not limited to the validity of any of

10

the judgments and/or underlying state court proceedings considered; (e) awarding damages in favor of the debtor and jointly and severally against NLG, Chris Kosachuk, and Mr. Ramirez including actual damages, attorney's fees and costs, and punitive damages; and (f) granting such other and further relief as the Court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Respectfully submitted,

BUSHELL LAW, P.A.
Counsel for Liza Hazan
6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220

By:    /s/ Daniel A. Bushell
     Daniel A. Bushell
     Florida Bar No. 0043442
     dan@bushellappellatelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 18, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

     /s/ Daniel A. Bushell
     Daniel A. Bushell

11

# SERVICE LIST

## Case No. 16-10389-AJC

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A. gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A. aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc. rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L. rpc@ecccounsel.com, nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium mortman@furrcohen.com, atty_furrcohen@bluestylus.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC astridgabbe@gmail.com

Astrid Gabbe on behalf of NLG, LLC

astridgabbe@gmail.com

12

Astrid Gabbe on behalf of Defendant NLG, LLC astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc. ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc. dhaber@dhaberlaw.com, ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC bkcmiami@gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc. Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association spowrozek@logs.com, electronicbankruptcynotices@logs.com

Juan Ramirez, Jr., Esq. jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth esilver@stearnsweaver.com, rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Miami-Dade County Tax Collector c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430 Miami, FL 33128-1733

CFN 2018R0483358
OR BK 31094 Pgs 3318-3319 (2Pgs)
RECORDED 08/09/2018 11:44:59
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

---

Space above reserved for recording information

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

### CASE NO. 2013-25902 CA 01

JP Morgan Chase Bank, National Association
Successor in interest by purchase from the FDIC as
Receiver of Washington Mutual Bank F/K/A
Washington Mutual Bank, FA

       Plaintiff,

vs.

ELIZABETH HAZAN a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Assocation,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants
       Defendants.

_____/

### NOTICE OF LIS PENDENS

**TO THE ABOVE STYLED DEFENDANTS AND ALL OTHERS TO WHOM IT MAY CONCERN:**

**YOU ARE HEREBY NOTIFIED** of the institution of a cross-claim for foreclosure by Defendant/Crossclaim Plaintiff NLG, LLCpursuant to its Final Judgment of Foreclosure recorded in Official Records Book 29902 at Pages 3737 - 3742 on the following property in Miami-Dade County, Florida:

Lot 7, Block 2, OF LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County,

Physical Address: 6913 Valencia Drive, Fisher Island, FL 33109

including the buildings, appurtenances, and fixtures located thereon.

JUAN RAMIREZ, JR.
ADR Miami LLC
1172 So. Dixie Hwy. #341
Coral Gables, FL 44146  33146
(305) 667-6609
____/s/ Juan Ramirez, Jr.
Juan Ramirez, Jr.
(Florida Bar No. 201952)
jr@adrmiami.com
*Counsel for Defendant/Crossclaim Plaintiff*

**From:** **Juan Ramirez, Jr., Former Chief Judge** jr@adrmiami.com  🔗
**Subject:** Re: lis pendens filed in case 2013-25902 CA 01 JP Morgan Chase Bank
**Date:** October 1, 2018 at 1:15 PM
**To:** JOEL ARESTY aresty@icloud.com



Joel:

Thank you for the heads up, but Judge Cristol granted relief from the automatic stay to JP Morgan and all other parties to litigate the foreclosure on that mortgage.

You were right that we had not filed a crossclaim and we delayed filing it because first Hazan had not been served and then she had not answered, but I agree we had to file it if the lis pendens was to remain. I am attaching what we filed this morning.

All the lis pendens does is give the world notice of the litigation. If someone is going to buy her home, they should have notice that the Cristol order is not final, as Judge Gayles ruled. Even if it were, we're appealing. We're not violating Judge Cristol's order because he said we could litigate the case, just not take it to a judicial sale.



Answer Affirmative
Defenses C…sclaim.pdf

*Juan Ramirez Jr*., *FCIArb*
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
**ADR Miami LLC**
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com









On Oct 1, 2018, at 12:14 PM, JOEL ARESTY <aresty@icloud.com> wrote:

Juan

please let me know your intentions
if you remove it no harm no foul

if you do not I have to file motion Thursday


**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

Aresty@Mac.com
http://www.Joelaresty.com

**This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.**


On Sep 29, 2018, at 4:32 PM, JOEL ARESTY <aresty@icloud.com> wrote:

Juan

You filed a lis pendens in case 2013-25902 CA 01 JP Morgan Chase Bank
and recorded it 8/9/18 OR book 31094 Pgs 3318-3319
saying it was notice of a cross claim

we found out about this yesterday from a title insurance company

you did not file a cross claim in the case
and the lis pendens is an illegal  cloud on the title of the Fisher Island property

this email is a warning that the lis pendens constitutes a significant violation
of Bar and Court rules for the following reasons

1.    the lack of cross claim makes the instrument a fallacy on its face

2.    the reference to the final judgment OR 29902 pages 3737-3742
       is wrongful because that judgment has been voided by Judge Cristol

3.    the lis pendens violates the plan injunction in the Hazan bankruptcy
       doc 91 6/12/18 which the court retained jurisdiction to enforce

4.    the lis pendens constitutes a significant slander of title and is damaging Ms. Hazan's
       efforts to sell the subject property

Juan
unless the lis pendens is cancelled by a filing in the court and recording in the public records
by Wednesday October 3, 2018 at 5pm
we will file a motion for contempt before Judge Cristol
asking for sanctions including attorneys' fees, damages and punitive damages
and a separate action will lie for slander of titleand a complaint to the Florida Bar

please be governed accordingly

thanks
sincerely

Joel

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

Aresty@Mac.com
http://www.JoelAresty.com

http://www.coolarbcity.com

This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION**

**CASE NO. 2013-25902 CA 01**

JP Morgan Bank, NA

      Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

      Defendants.

_____/

**NLG, LLC'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND
CROSSCLAIM**

    Defendant/Counterclaim and Crossclaimant, NLG, LLC ("NLG"), through undersigned

counsel, files this Answer,  Affirmative Defenses, Counterclaim and Crossclaim to the

Foreclosure Complaint (the "Complaint") filed by JP Morgan Chase Bank, NA ("JP Morgan").

**ANSWER AND AFFIRMATIVE DEFENSES**

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 11

1.    Paragraph 1 of the Complaint describes the nature of the purported claims asserted by JP Morgan in the Complaint and does not require a response. To the extent a response is required, the allegations are admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Denied.

6.    Denied.

7.    Admitted.

8.    Denied.

9.    NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

10.    NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

11.    Denied.

12.    Denied.

13.    Denied.

14.    NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

15.    Denied. 6913 Valencia LLC's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

16.    Denied.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 11

17.     Denied.  Fisher Island Community Association's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

18.     Denied.  Valencia Estates' interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

19.     Denied.

20.     Denied.

## AFFIRMATIVE DEFENSES

21.     As its first affirmative defense, NLG states that Plaintiff's claims are barred by the doctrine of res judicata for the reasons set forth in NLG's crossclaim.

22.     As its second affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of collateral estoppel for the reasons set forth in NLG's crossclaim.

23.     As its third affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of estoppel for the reasons set forth in NLG's crossclaim.

24.     As a fourth affirmative defense, NLG states that the Plaintiffs' claims are barred by previous dismissals of the same causes of action by the Plaintiff in 2008 and 2011.

25.     As a fifth affirmative defense, NLG states that the Plaintiffs' claims are barred by their respective statutes of limitation.

26.     As a sixth affirmative defense, NLG is without knowledge whether Plaintiff complied with paragraph 22 of the mortgage, which requires notice of acceleration and therefor alleges that Plaintiff failed to comply with the notice requirement, subject to conducting discovery.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 4 of 11

27.     As a seventh affirmative defense, NLG asserts that the Plaintiff lacked standing at the time this action was filed as the mortgagee listed in the Complaint is JP Morgan, but the mortgagee was Washington Mutual Bank at the time of filing.

28.     As an eight affirmative defense, NLG asserts that Plaintiff has failed to record and pay documentary stamps on the Loan Modification Agreement mentioned in the Complaint.

## COUNTERCLAIM

29.     Plaintiff alleges that on March 7, 2007, Defendant Hazan executed a promissory note and mortgage recorded in Official Records Book 25450, Page 2835, of the Public Records of Miami-Dade County, Florida. The mortgage listed the lender as "Washington Mutual Bank, FA." The mortgage was attached to the Complaint as Exhibit B and is incorporated by reference herein.

30.     The Complaint does not allege that this mortgage was ever assigned to Plaintiff.

31.     On March 8, 2007, Hazan executed and delivered to NLG a promissory note in the principal amount of $1,275,000, secured by a Mortgage of even date recorded in Official Records Book 25559, Page 4266, of the Public Records of Miami-Dade County, Florida. Attached is the Note as Exhibit "A" and the Mortgage as Exhibit "B".

32.     The Complaint alleges that Hazan executed a Loan Modification Agreement. The Loan Modification was attached to the Complaint as Exhibit C and is incorporated by reference herein. Exhibit C was dated June 20, 2011, and shows it was in favor of Plaintiff, JPMORGAN CHASE BANK, N.A., with an effective date of August 1, 2011, increasing the Principal Balance to $4,282,432.36.  It does not show that the Loan Modification was ever recorded.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 5 of 11

33.     NLG never agreed to subordinate its interest to Plaintiff and neither Hazan nor Plaintiff alerted NLG to the loan modification.  NLG only learned of the loan modification when it was attached to the Complaint in this case.

34.     As such, Plaintiff JP Morgan and/or Washington Mutual lost its priority position with respect to NLG when it entered into the Loan Modification Agreement with Hazan and did not obtain NLG's consent.

35.     NLG has retained undersigned counsel to represent it in this Counterclaim, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Plaintiff.

36.     All conditions precedent to the filing of this Counterclaim have been performed, have been waived, have occurred or have been satisfied.

**WHEREFORE**, NLG prays that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment, plus per diem interest and legal fees after the date of entry, superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

## CROSSCLAIM

Cross-claimant NLG, through undersigned counsel, hereby files this Crossclaim against all named Defendants and alleges as follows:

### Preliminary Statement

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 6 of 11

37.     NLG is the holder of a valid lien against the Property, superior in dignity to any interest of any Defendant and Plaintiff herein, under an Order Granting Foreclosure (the "Foreclosure Order") entered on December 1, 2015, and a Final Judgment of Foreclosure (the "Foreclosure Judgment") entered in December 4, 2015 by Circuit Judge Monica Gordo in the case of *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 11-42770-CA 02 in Miami-Dade County Circuit Court (the "Foreclosure Action"). The Final Judgment was recorded at Official Records Book 29902, Page 3737, of the Public Records of Miami-Dade County, Florida. Correct copies of the Foreclosure Order and Foreclosure Judgment are attached as Exhibits "C" and "D."

38.     Judge Gordo ruled in NLG's favor on all of all issues in a detailed fifteen page (plus exhibits) Order Granting Foreclosure on December 1, 2015, which was followed by the entry of the Foreclosure Judgment on December 4, 2015.

39.     Defendant Hazan filed a Notice of Appeal to the Third District Court of these orders and was assigned a Case No. 3D16-0315. On February 10, 2016, NLG filed its Motion to Dismiss the appeal. Hazan filed four motions for extension of time before filing a Response to the Motion to Dismiss on March 28, 2016. NLG filed its Reply on April 4, 2016. Two and a half hours later, Hazan filed a Notice of Voluntary Dismissal. On the next day, the Third District dismissed the appeal.

40.     On April 26, 2016, the Court granted NLG's motion for attorney's fees pursuant to section 57.105, Florida Statutes and Rule 9.410 of the Fla. R. App. P.

41.     This rendered both the Order Granting Foreclosure on December 1, 2015, and the Foreclosure Judgment on December 4, 2015, to be the "law of the case."

**Factual Allegations**

**A.  The Note, Note Judgment, Mortgage and Foreclosure Action.**

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 7 of 11

42.　　In 2007, NLG sold a home located at 6913 Valencia Drive, Fisher Island, Florida 33109 to Hazan for $5,100,000, and received a purchase money note and mortgage on the Property in the amount of $1,275,000. Correct copies of the Note and the Mortgage are attached as Exhibits "A" and "B."

43.　　On April 28, 2008, based on the Debtor's default under a settlement agreement stemming from the Debtor's default under the Note, NLG obtained a default final judgment against the Debtor for $1,618,071.29 plus post-judgment interest (the "Default Final Judgment") in the case of *NLG, LLC v. Hazan*, Case No. 07-19532, which was affirmed on appeal twice.

44.　　After entry of the Default Final Judgment, NLG and Hazan entered into a second settlement agreement, which Hazan defaulted in February 2009.

45.　　On December 21, 2011, NLG filed a complaint to foreclose its Mortgage on the Property in the case of *NLG, LLC v. Elizabeth Hazan, et al.* (*i.e.*, the NLG Foreclosure Action), under Case No. 11-42770-CA 02.

46.　　On January 2, 2013, the circuit court judge then presiding over the NLG Foreclosure Action entered judgment in favor of Hazan. That judgment was reversed on appeal in a detailed written opinion reported under *NLG, LLC v. Hazan*, 151 So. 3d 455 (Fla. 3d DCA 2014).

**B. The Third DCA issues its Opinion and Mandate in the NLG Appeal.**

47.　　On September 3, 2014, the Third District issued its Opinion in *NLG v. Hazan*, 151 So. 3d 455, reversing the judgment in favor of Hazan in the Foreclosure Action and adjudicating the following issues:

　　　a.　The entry of the Default Final Judgment in NLG's favor did not preclude NLG's later enforcement of the Mortgage in the NLG Foreclosure Action;

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 8 of 11

      b.   NLG's Mortgage had not been extinguished; and

      c.   NLG had standing to pursue the NLG Foreclosure Action, with its manager Chris Kosachuk (the same manager through which it acts today) being a proper representative of NLG.

48.    The Third District denied motions for rehearing and rehearing *en banc*, and entered its Mandate in accordance with its opinion on November 25, 2014. A correct copy of the Third District's Opinion and Mandate is attached as Exhibit "E" to this Crossclaim.

49.    After over a year of additional litigation, on December 1, 2015, Judge Gordo entered her Order Granting Foreclosure, which took into consideration the material facts and disputes between NLG and Hazan, including the facts alleged above, and determined that NLG was entitled to foreclose its valid Mortgage on the Property.

50.    On December 4, 2015, Judge Gordo entered her Foreclosure Judgment, entering in rem relief in favor of NLG and adjudicating that NLG holds a lien on the Property in the amount of $4,876,654.29. On February 3, 2016, the Debtor filed a Notice of Appeal, but voluntarily dismissed her appeal on April 4, 2016. The Foreclosure Judgment is now final, non-appealable and the "law of the case."

51.    Judge Gordo set a foreclosure sale for January 12, 2016. Hazan filed her Bankruptcy Case on January 11, 2016 to stay the foreclosure sale.

52.    On November 29, 2016, the Bankruptcy Court granted relief from the automatic stay to all parties to this action, including NLG. The relief was granted to litigate the foreclosure claim "to the point of judgment, but not to conduct a foreclosure sale of the Property."

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 9 of 11

53.     NLG has retained undersigned counsel to represent it in this action, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Selective and the Debtor.

54.     All conditions precedent to the filing of this action have been performed, have been waived, have occurred or have been satisfied.

## COUNT I

55.     NLG incorporates the allegations of paragraphs 37 through 54 of the Crossclaim as though fully set forth herein.

56.     This is an action by NLG against the named Crossclaim Defendants.

57.     The NLG Foreclosure Judgment is a final non-appealable judgment of a state court of competent jurisdiction which is binding upon all of the parties to this action and cannot be revisited by this Court under principles of res judicata, collateral estoppel or otherwise. Furthermore, it is the law of the case as between and among all parties herein.

58.     In accordance with the Foreclosure Judgment, NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment "superior in dignity to any right, title, interest or claim of the Defendants [in the NLG Foreclosure Action], and all persons, corporations, or other entities claiming by, through or under the defendants or any of them," plus per diem interest since the date of entry of the NLG Foreclosure Judgment and attorneys' fees incurred thereafter.

59.     For the reasons stated above, NLG prays that this Court should enter judgment in NLG's favor confirming that Judge Gordo's final, non-appealable Foreclosure Judgment is binding on the parties to this action and confirming that NLG holds a valid lien against the

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 10 of 11

Property superior in dignity to any interest in the Property held by the Crossclaim and Counterclaim Defendants.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

Dated:  October 1, 2018

Respectfully submitted,

ADR Miami LLC
1172 So. Dixie Hwy. #341
Coral Gables, Florida 33146
Tel: (305) 667-6609
Fax: (800) 380-4155

By:  ____/s/ Juan Ramirez, Jr._____
**Juan Ramirez, Jr.**
Florida Bar No. 201952
jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 1st day of October, 2018, on all counsel or parties of record on the Service List below.

By:  ____/s/ Juan Ramirez, Jr._____
Attorney for Defendant and Crossclaimant, NLG, LLC

## SERVICE LIST

Robin Reyes

Case 1:22-cv-21485-RNS Document 6-4 Entered on FLSD Docket 06/14/2022 Page 133 of 650

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 11 of 11

*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia
Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia
Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community
Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 1 of 72

# EXHIBIT A

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/14/2022 Page 135 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 72

*Exhibit "A"*

NOTE

U.S. $1,275,000.00

Miami, Florida
March 6, 2007

    FOR VALUE RECEIVED the undersigned, and if more than one, jointly and severally ("Maker"), promises to pay to the order of NLG, LLC ("Holder"), or to its successors or assigns, ONE MILLION DOLLARS TWO HUNDRED SEVENTY-FIVE THOUSAND AND ZERO CENTS ($1,275,000.00) in lawful money of the United States, with interest, payable as follows:

1. THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on April 10, 2007;
2. THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on September 10, 2007; and,
3. FOUR HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($400,000.00) of principal shall be due and payable on January 10, 2008.
4. TWO HUNDRED SEVENTY-FIVE THOUSAND AND ZERO CENTS ($275,000.00) of principal shall be due and payable on September 10, 2008

    Interest at the rate of TEN percent (10%) per annum shall accrue on the outstanding principal balance. Accrued and unpaid interest shall be paid in a single installment on September 10, 2008.

    The payments due hereunder shall be payable by wire transfer to Wachovia Bank, N.A., Account # 2000015278142, ABA # 031201467, or such other place as Holder may designate in writing for the benefit of NLG, LLC.

    The full balance of principal, along with all accrued and unpaid interest, shall be due and payable, unless sooner paid in one lump sum payment on March 10, 2008. This Note may be prepaid in whole or in part at any time without penalty, together with accrued interest on the principal prepaid to the date of payment. Any partial prepayment shall be applied first to the payment of interest on the unpaid principal amount at the interest rate, and the remainder thereof to payment on account of principal.

    The principal amount of this Note may be prepaid in whole or in part at any time without penalty. Any partial prepayment shall be applied against the next maturing payment of principal.

    The Maker waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold Maker liable.

    The Maker further agrees to pay all costs of collection, including reasonable attorney's fees in case the principal of this Note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

    If any installment of interest or principal under this Note is not paid within ten (10) days from the due date, the entire principal amount outstanding hereunder and accrued and unpaid interest at the default interest rate of twenty-four percent (24%) per annum thereon (the "default interest rate") shall at once become due and payable, at the option of the Holder.

    This Note is to be construed and enforced according to the laws of the State of Florida.

*Ex "A"*

Notwithstanding anything herein to the contrary, it is not the intention of the parties to charge or receive nor shall there at any time be charged any interest which would result in a rate of interest being charged which is in excess of the maximum rate permitted to be charged by law; and in the event that any sum in excess of the maximum legal rate of interest is paid or charged, the same shall, immediately upon discovery thereof, be deemed to have been a prepayment of principal (which prepayment shall be permitted, and be without premium or penalty) as of the date of such receipt, and all payments made thereafter shall be appropriately reapplied to interest and principal to give effect to the maximum rate permitted by law, and after such reapplication, any excess payment shall be immediately refunded to Maker.

This Note is secured by a Florida Real Estate Purchase Money Second Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), dated of even date herewith, encumbering property situated in the State of Florida, which Mortgage was granted by the Maker to the Holder, to which reference is hereby made for a description of the mortgaged property, the nature and extent of the security, the rights of the Holder in respect thereof and the terms and conditions upon which this Note is issued. The unpaid balance of the principal amount, plus accrued interest, shall become immediately due and payable at the option of the Holder upon the happening of an event by which said balance shall or may become due and payable under the terms of the Mortgage.

Maker:

_____
ELIZABETH HAZAN, a single woman

2

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 4 of 72

# EXHIBIT B

PREPARED BY AND RECORDED COPIES
SHOULD BE RETURNED TO:
Thomas M. David, Esq.
Weisenfeld & Associates, P.A.
2900 S.W. 28 Terrace, Penthouse
Miami, Florida 33133

CFN 2007R0410013
OR Bk 25559 Pgs 4266 - 4272 (7pgs)
RECORDED 04/24/2007 12:37:00
MTG DOC TAX 4,462.50
INTANG TAX 2,550.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## PURCHASE MONEY SECOND MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS PURCHASE MONEY SECOND MORTGAGE AND SECURITY AGREEMENT (hereinafter the "Mortgage") executed the 8th day of March, 2007 by ELIZABETH HAZAN, a single woman (hereinafter referred to as "Mortgagor"), to NLG, LLC, a Delaware Limited Liability Company, (hereinafter referred to as "Mortgagee").

## W I T N E S S E T H:

FOR GOOD AND VALUABLE CONSIDERATION, and also in consideration of the aggregate sum named in the Note of even date herewith (the "Note"), hereinafter described, the said Mortgagor grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the said Mortgagee, its successors and assigns, in fee simple, all that certain real property of which Mortgagor is now seized and possessed, and in actual possession, situated in the county of Miami-Dade, State of Florida, to-wit:

Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

TOGETHER WITH ALL structures and improvements now and hereafter located on said real property and all licenses and permits used or required in connection with the use of said real property, and all leases of said property now or hereafter entered into and all right, title and interest of the Mortgagor thereunder, including without limitation, rents, issues, proceeds and profits accruing and to accrue from said real property, all of which are included within the foregoing description. Also, all gas, steam, electric, water and other heating, plumbing, ventilating, security, irrigating and power, extensions, appliances, fixtures, and appurtenances, including air conditioning, ducts, machinery and equipment, which are now or may hereafter pertain to or be used with, in or on said real property, though they be either detached or detachable (the real property and tangible and intangible personal property as described above, are hereinafter collectively referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the same together with the tenements, hereditaments, and appurtenances, unto the said Mortgagee, its successors and assigns, in fee simple.

AND the said Mortgagor, for itself and its successors and assigns, covenants with the said Mortgagee, its successors and assigns, that the said Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that there is a dedicated public right of ingress and egress to the Mortgaged Property; that the said Mortgagor has full power and lawful right to the Mortgaged Property in fee simple as aforesaid; that the Mortgaged Property is free from all encumbrances except as may be set forth elsewhere herein; that the lien hereof is a second mortgage lien on the Mortgaged Property; and that the said Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same against the lawful claims of all person whomsoever, subject only as set forth herein.

1

PROVIDED ALWAYS, that if the said Mortgagor, its successors or assigns, shall pay unto the said Mortgagee, its successors or assigns, all of the amount under that certain Note from Mortgagor to Mortgagee of even date herewith in the principal amount of ONE MILLION TWO HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 ($1,275,000.00) with the final payment due as provided in the Note on March 10, 2008 and shall further perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the said Note and of this Mortgage, then this Mortgage and the estate thereby created shall cease and be null and void, and this instrument shall be released by the Mortgagee. All release documentation shall be prepared and recorded at the expense of Mortgagor and shall be furnished by Mortgagor to Mortgagee for execution.

AND the Mortgagor, for itself and its successors and assigns, hereby covenants and agrees:

1. To pay all and singular, the principal and interest and other sums of money payable by virtue of the aforementioned Note and this Mortgage, or either, promptly when due.

2. To pay all and singular taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Mortgaged Property promptly and prior to the time the same shall become delinquent. The Mortgagor shall deliver to the Mortgagee receipts evidencing the payment of said taxes, assessments, levies, etc., immediately upon the payment thereof as required in this Paragraph; provided, however, that the receipt evidencing payment of the ad valorem taxes lawfully imposed for the preceding calendar year shall be delivered to Mortgagee no later than March 15 of each year.

3. To pay all and singular the costs, charges and expenses, including reasonable attorneys' fees and costs of abstracts of title examination, incurred or paid at any time by the Mortgagee, its successors or assigns, because of the failure on the part of the Mortgagor, its successors or assigns, to perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants of the aforementioned Note and this Mortgage, or either of same.

4. To perform, comply with and abide by each and every stipulation, agreement, condition and covenant in the aforesaid Note and this Mortgage.

5. To permit, commit, or suffer no waste, impairment, abandonment, or deterioration of the Mortgaged Property, or any part thereof, and upon the failure of the Mortgagor to keep the buildings or any other item of security hereunder now or hereafter located on the Mortgaged Property in good condition or repair, the Mortgagee may demand the immediate repair of said buildings or such other security, or an increase in the amount of security, or the immediate repayment of the debt secured hereunder.

6. (a) To keep any and all buildings now or hereafter on the Mortgaged Property insured under policies of all-risk insurance (which shall include, but not be limited to, fire, extended coverage and vandalism), in a sum acceptable to the Mortgagee, but in no event less than the total of the principal balance of the Note plus the principal balance of the note secured by any prior mortgage encumbering the Mortgaged Property, in a company or companies acceptable to the Mortgagee, and the premiums for all such insurance shall be paid by the Mortgagor not later than fifteen (15) days before same are due. The original of such policy or policies, or a certificate of insurance, shall be delivered to and held by the Mortgagee and monies due thereunder shall be made payable to the Mortgagee, his successors or assigns, to the extent of his interest, by having attached or contained in the policy or policies a loss-payable clause and proper endorsements;

(b) Subject to the rights of the holder of a prior mortgage encumbering the Mortgaged Property, in the event any sum of money becomes payable under the insurance policy or policies, the Mortgagee, its successors or assigns, shall have the

2

Exhibits to NLG LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case Note 2007-04-09 Mortgage
Page 7 of 12

tion to receive and apply the same on account of the indebtedness hereby secured or permit the Mortgagor to receive and use all or any part thereof for other purposes, without thereby waiving or impairing any equity, lien or right under or by virtue of this Mortgage;

(c) Notwithstanding anything to the contrary contained herein and so long as Mortgagor is not in default hereunder, Mortgagee agrees that, in the event of a casualty loss to the Mortgaged Property, or any portion thereof, Mortgagee will permit Mortgagor to use any and all insurance proceeds to repair, replace or restore the Mortgaged Property to the condition it was prior to such casualty; provided that Mortgagor provides Mortgagee with certification from an architect or engineer as to the cost of such repair, replacement or restoration and that, to the extent that the insurance proceeds are not sufficient to cover such costs, Mortgagor agrees to disburse and expend the funds necessary to cover the costs of repairing, replacing or restoring the Mortgaged Property that exceed their available insurance proceeds prior to using said proceeds;

(d) Upon the failure of Mortgagor to obtain required insurance, the placing of such insurance and the paying of the premium of such insurance or any part thereof by the Mortgagee shall not be deemed to waive or affect any right of the Mortgagee hereunder, including the right to foreclose this Mortgage, and each and every payment of insurance so made by the Mortgagee shall be considered additional principal due under the Note and shall bear interest from the date of payment thereof at the rate of twenty-four percent (24%) per annum, and this Mortgage shall secure the payment of same; Every such payment shall be deemed additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore, and shall be secured by the lien of this Mortgage;

(e) If the Mortgagee acquires title to the Mortgaged Property by foreclosure proceedings or otherwise, any unearned premiums on a hazard insurance policy covering the Mortgaged Property and held by the Mortgagee are hereby assigned to and shall belong to the Mortgagee. If at any time during the lien of the Mortgage any insurance policies shall be cancelled and returned premiums available, these returned premiums shall belong to the Mortgagee and at the option of the Mortgagee shall be credited by the Mortgagee against the indebtedness secured hereunder. Any rights of the Mortgagee to any insurance proceeds shall in no way be affected or impaired by reason of the fact that the Mortgagee may have instituted foreclosure proceedings hereunder.

7. To further secure payment of the indebtedness of the Mortgagor to the Mortgagee, the Mortgagor does hereby sell, assign, transfer and set over unto the Mortgagee all of the leases, rents, issues and profits of the Mortgaged Property. This assignment shall become operative upon any default being made by the Mortgagor under the terms of the Mortgage or the Note secured hereby, the aforementioned first mortgage, or either of same and shall remain in full force and effect so long as any default continues to exist in the making of any of the payments or the performance of any of the covenants of this Mortgage or the Note secured hereby, and the Mortgagee shall have the right to enter upon the Mortgaged Property and collect same directly from persons in possession. In the event that the Mortgagor should further assign the leases, rents, issues and profits of the Mortgaged Property, or any part thereof, without the consent of Mortgagee, then the entire principal sum secured hereby, with accrued and unpaid interest and any other charges shall, at the option of the Mortgagee, become immediately due and payable. Any subsequent assignment of the rents, deposits, revenues and profits of the Mortgaged Property, or any part thereof, approved by Mortgagee, shall at all times be inferior and subordinate to the assignment granted hereby and to the rights of the Mortgagee hereunder.

8. In the event the Mortgagor fails to pay any tax or other charge or obligation required to be paid by the Mortgagor hereunder, within the time set forth for such payment, the Mortgagee shall have the right, but shall not be required to pay such charge or obligation without waiving or affecting the option of the Mortgagee to consider this Mortgage in default. Every such payment so made shall be considered additional

3

Exhibits to SJC Sub Under Affirmative Defenses Counterclaim and Crossclaim
Case No. 07-10586 CA 06
Page 8 of 70

principal due under the Note and shall bear interest from the date thereof at the rate of twenty four percent (24%) per annum. Every such payment shall be deemed additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore, and shall be secured by the lien of this Mortgage.

9. If any of the sums of money due on the Note or otherwise herein referred to are not promptly and fully paid or if any of the stipulations, agreements, conditions and covenants contained in the Note and this Mortgage, or either of same, are not duly performed, complied with and abided by, within ten (10) days after an applicable due date, the same shall be considered a default of this Mortgage and the Note; and the aggregate sum set forth in the Note then remaining unpaid, with interest accrued and unpaid, and all monies secured hereby, shall become due and payable forthwith, or thereafter, at the option of the Mortgagee, as fully and completely as if all the said sums of money were originally stipulated to be paid on such day, anything in the Note or in this Mortgage to the contrary notwithstanding; and thereupon or thereafter, at the option of the Mortgagee, without notice or demand, foreclosure proceedings or other suit at law or in equity may be prosecuted as if all monies secured hereby had matured prior to its institution.

10. The following shall be considered additional acts of default, which, upon occurrence, shall allow the Mortgagee to pursue the various remedies for default hereunder; (a) The filing by the Mortgagor of a voluntary petition in bankruptcy or the Mortgagor's adjudication as a bankrupt or insolvent; or (b) The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Mortgagor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or further federal or state law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains unvacated and unstayed for sixty (60) days from the date of entry thereof; (c) an event of default under the aforementioned first Mortgage; or, (d) if foreclosure proceedings are instituted with regard to any other lien against the Mortgaged Property whether prior to or inferior to the lien of this Mortgage; or, (e) the creation or allowance of any additional mortgage encumbrance secured by the Mortgaged Property whether prior to or inferior to the lien of this Mortgage.

11. That in the event the Mortgaged Property or any part thereof, shall be condemned and taken for public use under the power of eminent domain, the Mortgagee shall have the right to require that all damages awarded for the taking of or damages to the Mortgaged Property, including interest thereon, shall be paid to the Mortgagee, not to exceed the then unpaid balance of this Mortgage and the Note secured hereby, together with all interest and charges then outstanding, and, at the option of the Mortgagee the same may be applied to payments of principal in the inverse order of maturity.

12. That no extensions of the time or modification of the terms of payment of the Note by the Mortgagee shall release, relieve, or discharge the Mortgagor from the payment of any of the sums hereby secured, but in such event the Mortgagor shall nevertheless be eligible to pay such sums according to the terms of such extension or modification unless specifically released and discharged in writing by the Mortgagee. Any acceptance by the Mortgagee of part payment of any installment of principal or interest, or both, or of part performance of any covenant, or delay by the Mortgagee for any period of time in exercising the option to mature the entire debt secured hereby, shall not operate as a waiver of the right to exercise such option to mature the entire debt secured hereby.

13. In the event of a suit being instituted to foreclose this Mortgage, the Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Mortgaged Property, and of all rents, incomes, profits, issues and revenues thereof, from whatever source derived; and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases; and said appointment shall be made by the court as a matter of strict right to the Mortgagee, and without reference to the adequacy or

4

14. That if any action or proceeding shall be commenced by any person other than the Mortgagee (except an action to foreclose this Mortgage, or to collect the debt secured hereby) to which action, or proceeding, the mortgagee is made a party or in which it shall become necessary to defend, or uphold, the lien of this mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute, or defend the rights and lien created by this Mortgage (including court costs and reasonable attorneys' fees at all trial and appellate levels), shall be paid by the Mortgagor, together with interest thereon at the rate of twenty-four percent (24%) per annum and any such sum and the interest thereon, shall be a claim upon the Mortgaged Property, attaching or accruing, subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and shall be deemed an additional payment obligation under the Note secured hereby. The sums paid by the holder hereof in accordance with the terms of this paragraph shall be paid by the Mortgagor unto the holder hereof within fifteen (15) days of said payment, without demand. Upon failure of Mortgagor to make said payment, the Mortgagee, at its option may declare this Mortgage and the Note secured hereby to be in default, thereupon maturing all of the unpaid indebtedness, including the sums advanced hereunder. In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured hereby, the provisions of law and this Mortgage respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

15. Upon the occurrence of a default hereunder, the principal amount of the Note secured hereby, together with all accrued and unpaid interest, and together with all sums which may have been advanced by Mortgagee and which are secured hereby, shall bear interest at the lesser of twenty-four percent (24%) or the highest rate permitted by the laws of the State of Florida, until paid in full.

16. No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other agreement executed as a part of the loan evidenced by the Note is exclusive of any other right, power or remedy, and each and every right, power and remedy given hereunder or under the Note or any other instrument securing the Note or now or hereafter existing at law, in equity or by statute, shall be cumulative, at the option of Mortgagee. A waiver in one or more instances of any of the terms, covenants, conditions or provisions hereof, or of the Note or obligations secured hereby, shall apply to the particular instance or instances and at the particular time or times only, and no such waiver shall be deemed a continuing waiver, but all of the terms, covenants, conditions and other provisions of this Mortgage and of the Note secured hereby shall survive and continue to remain in full force and effect.

17. To the extent that the Mortgaged Property shall be deemed to be personal property, this Mortgage shall serve as a "security agreement" within the meaning of the Uniform Commercial Code as adopted in the State of Florida. Mortgagor hereby grants to Mortgagee a security interest in and to all of those portions of the Mortgaged Property which may ultimately be held to be personal property. With respect to such personal property, Mortgagee shall have all rights afforded secured parties by the Uniform Commercial Code, as adopted in the State of Florida, and as may hereafter be modified or amended, in addition to, but not in limitation of, the other rights afforded the Mortgagee hereunder.

18. If all or any part of the Mortgaged Property, or any interest therein, is sold, conveyed, transferred (including a transfer by agreement for deed or land contract) or further encumbered by Mortgagor without Mortgagee's prior written consent, then, and in that event, Mortgagor shall be deemed in default and Mortgagee may declare all sums secured by this Mortgage immediately due and payable. Any and all leases of all or part of the Mortgaged premises shall be subordinate to the lien of the Mortgagee arising pursuant to this Mortgage.

19. The mailing of a written notice of demand, addressed to the owner of record of the Mortgaged Property, directed to the said owner at the last address actually

Case 1:22-cv-21485-RNS Document 6-574 Entered on FLSD Docket 06/14/2022 Page 143 of

Exhibits this LG to the Mortgagee, or directed to said owner at the Mortgaged Property, and
Case No. 2017-2590 ... registered States mail, shall be sufficient notice and demand in any case arising
Page 10 of 7

this instrument and required by the provision hereof or by law; provided, however,
that the provisions of this Paragraph shall not be construed as requiring notice from the
Mortgagee to the Mortgagor unless specifically provided by other provisions hereof or
by provisions of the Note.

20. All payments received by the Mortgagee shall be applied first to
accrued and unpaid interest and then to the principal of the Note.

21. Notwithstanding anything to the contrary contained herein and/or in
the Note, it is the intention of the parties that any and all interest charged, collected
and/or paid shall not exceed the maximum effective rate of interest allowed under
applicable law. Should any amounts, characterized as interest, in excess of said
maximum rate, be charged, collected and/or paid, such excess shall be refunded to the
Mortgagor or credited against the sums due the Mortgagee pursuant to the terms of this
Mortgage and the Note secured hereby.

22. This Mortgage is and shall be a Second Purchase Money Mortgage
of the Mortgaged Property, subject and subordinate only to that certain first Mortgage
given by Mortgagor to Washington Mutual Bank, F.A., in the original principal amount of
THREE MILLION EIGHT HUNDRED TWENTY-FIVE THOUSAND AND NO/100
($3,825,000.00).

23. The Mortgagor shall from time to time with ten (10) days after written
demand by the Mortgagee, execute in such form as shall be required by the Mortgagee,
an estoppel certificate, duly acknowledged, setting forth the amount of principal and
interest unpaid under the Note and the general status of this Mortgage. Failure of the
Mortgagor to make and deliver the estoppel certificate within the required time shall
constitute a breach of this Mortgage and a default hereunder.

24. Any abstract or abstracts of title covering the Mortgaged Property
shall be delivered to Mortgagee or his designated agent, which shall at all times during
the term of this Mortgage, remain in the possession of the Mortgagee, and in the event
of the foreclosure of this mortgage or other transfer of title, all right, title and interest
of the Mortgagor in and to such abstract or abstracts of title shall pass to the purchaser or
grantee.

25. This Mortgage and the Note shall be governed by the substantive and
procedural laws of the State of Florida. The terms "Mortgagor" and "Mortgagee"
whenever used herein shall include the heirs, personal representatives, successors and
assigns of the respective parties hereto. Whenever used the singular number shall
include the plural and the plural the singular, and the use of any gender shall included
all genders.

26. In the event any one or more of the provisions contained in this
Mortgage or in the Note secured hereby shall for any reason be held to be invalid, illegal
or unenforceable in any respect, and if the deletion thereof would not adversely affect
the receipt of any material benefit by and to any party hereunder or substantially
increase the burden of any party hereto, such validity, illegality or unenforceability shall,
at the option of the Mortgagee, not affect any other provision of this Mortgage.

27. The Mortgagor hereby waives any right it may have to a jury trial in
any action which may be brought under the Mortgage or the Note secured hereby.

6

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim

Case No. 2013-25902 CA 01

Page 1 of 72

LAST PAGE

28. This Mortgage constitutes the complete agreement between the parties hereto as to the subject matter hereof; and it may not be amended, changed or modified orally, except by a writing signed by the party to be charged by said amendment, change or modification.

IN WITNESS WHEREOF, the said Mortgagor has caused these presents to be duly executed as of the day and year first above.

Signed, sealed and delivered
in the presence of:

_Lourdes Marrero_
Print or Type Name

_Melbis Avila_
Print or Type Name

MORTGAGOR:

ELIZABETH HAZAN, a single woman

STATE OF FLORIDA            )
                           )
COUNTY OF MIAMI-DADE       )

The foregoing instrument was acknowledged before me, the undersigned, this 8th day of March, 2007, by Elizabeth Hazan.

NOTARY PUBLIC-STATE OF FLORIDA
Melbis Avila
Commission # DD522194
Expires: FEB. 23, 2010
Bonded Thru Atlantic Bonding Co., Inc.

[NOTARIAL SEAL]

NOTARY PUBLIC

Personally Known _____ OR Produced Identification ____✓____

Type of Identification Produced _Florida Drivers License_

7

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 12 of 72

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

## ORDER GRANTING FORECLOSURE

THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS, ORDERS AND ADJUDGES as follows:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 14 of 72

The history of the litigation between the parties was set out in detail when the matter

went up on appeal to the Third District. The facts and procedural history recited in the opinion

constitute the law of the case. In its opinion, the Third District stated as follows:

**Facts and Procedural Background**

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for
$5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms.
Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment
payment of $300,000.00 one month after the sale, and the note was to mature six months after
the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the
collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was
entered into, but required payments again were not made. In April 2008, and in accordance
with the settlement agreement, a default final judgment on the promissory note was entered
against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That
judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan
v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and
moved to vacate the judgment on the promissory note. The motion was denied and Ms.
Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d
DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its
judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property
was her homestead. The then-assigned circuit judge entered an order in December 2008
"quieting title," although Ms. Hazan's motion and the record establish that the order merely
extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the
quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan
made three of the specified payments before defaulting again in February 2009. After
additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its
mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a
defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this
mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her
mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final
judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2,
2013) into the final judgment "as though set forth herein." This appeal followed.

*NLG, LLC v. Hazan*, 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### *Status of the Pleadings After Mandate*

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

3

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 16 of 72

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene.  Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband.  After this Court denied Hazan's motion to amend, Selective still did not move to intervene.  It was not until October 7, 2015, that Selective Advisors first moved to intervene.  A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan.  Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below.  The motion may be rejected as a matter of law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation."  Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation.  The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

property which was then the subject of a mortgage foreclosure action and accompanying lis

pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention. In

*Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test

to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*,

75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the
> matter in litigation, and of such a direct and immediate character that the
> intervenor will either gain or lose by the direct legal operation and effect of the
> judgment. In other words, the interest must be that created by a claim to the
> demand in suit or some part thereof, or a claim to, or lien upon, the property or
> some part thereof, which is the subject of litigation."

Carlisle, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any

interest in the litigation. The Wherefore Clause merely requests intervention. But if Selective is

trying to collect on the Judgment by Confession, it is undisputed that the judgment has been

satisfied. Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to

assert its rights, but to obstruct the foreclosure of his wife's property. To allow intervention by

Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction. As the Third District

recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if

Selective were allowed to intervene, they would take "the procedural posture of the case as it

stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking

Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the

then-existing claims in the lawsuit." The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 18 of 72

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent

remedy in the sense **that an intervenor may not inject a new issue into the case**. . . .

Furthermore, the rights of an intervenor are conditional in that they exist only so long as the

litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505.

(emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has

been entered. The narrow exception to the rule prohibiting post-judgment intervention arises

when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys.,*

*Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the

case did not align with the circumstances in *Wags* to meet the narrow exception to the general

rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter

of zoning, not foreclosure. *Id.*

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an

alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final

order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014.  As will be

discussed later, that judgment was judicially assigned while its enforceability was pending in an

appeal of this case.  It is significant that Selective waited over a year since the opinion of the

Third District was announced to claim that NLG's interest in the litigation had been transferred

and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is

undisputed that there is no outstanding judgment against NLG.  Nothing prevented Selective

6

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

*Selective Advisors' Arguments*

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 20 of 72

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

8

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 21 of 72

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

it altered a judgment on appeal.") (citing numerous cases).  *And see Fulton v. Poston Bridge &*

*Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that

"the lower court has no jurisdiction, pending an appeal by amendment of the record or

proceedings or otherwise, to change the status of the case or to interfere with the rights of

parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967)

("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further

action…").

It is axiomatic that this Court in whose division the foreclosure action had been filed

since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as

the validity and enforceability of the judgment was pending before the Third District.  Thus,

while the foreclosure suit was pending before the Third District, the only proper remedy for

Selective to pursue would have been to seek leave from the appellate court to relinquish

jurisdiction for the purpose of judicially assigning the judgment.  Selective chose not to elect

that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012.

None of the nine affirmative defenses mentioned the New York Judgment by Confession.

Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to

enforce the aforementioned Consent Judgment from the New York State Court that was

domesticated in Miami-Dade County under Case No. 14-10475.  It is undisputed that that the

Domesticated New York Judgment has been dismissed as the underlying judgment has been

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/14/2022 Page 156 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim 650
Case No. 2013-25902 CA 01
Page 23 of 72

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 24 of 72

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..." The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG. Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); *Williams*, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 27 of 72

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is

hereby GRANTED.  The Court will hereafter enter a Final Judgment of Foreclosure upon the

presentation of updated affidavits.


ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.


_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

# EXHIBIT "A"

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 04/2022 Page 162 of
Exhibits to Answer Affirmative Defenses and Counterclaim Filed 08/06/15 Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 29 of 72

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In Re:                                              Chapter 7

Selective Advisors Group LLC,                       Case No. 815-72153-A736

     Debtor.                                       <u>Affirmation in Support</u>

----------------------------------------------------------X

       Marc A. Pergament, duly affirms under the penalties of perjury as follows:

       1.     I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

       2.     I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

       3.     This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

       4.     On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

Case 1:22-cv-21485-BN Document 57 Entered on FLSD Docket 06/14/2022 Page 163 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 30 of 72

5.      I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015. A further request for an adjournment of the § 341(a) meeting was declined.

6.      On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.      My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.      Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.      The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012. A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC. The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment. A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

Case 1:22-cv-21485-RNS Document 54 Entered on FLSD Docket 04/4/2022 Page 164 of
Exhibits to Case 8-15-72153-reg Answer Affirm Defense Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 31 of 72

10.     After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.     As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.     Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.     Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.     I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15. Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16. The dispute with respect to the Judgment is evident.

17. As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18. NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19. I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 04/2022 Page 166 of
Exhibits to Case 8-15-71534 reaffirmance Defense Materials and Enter 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 33 of 72

20.    For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered. A copy of the Stipulation is annexed hereto as Exhibit "D."

21.    I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.    It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.    No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:   Garden City, New York
         August 6, 2015

_____
Marc A. Pergament

# EXHIBIT A

Case 1:22-cv-21485-RNS Document 6-4 Entered on FLSD Docket 06/14/2022 Page 168 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 35 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                          Index No. 101875/2012
--------------------------------------------------------------x

9197-5904 QUEBEC INC
  Plaintiff,

                        -against-


NLG LLC
                        Defendant.
--------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,


WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec Inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.


NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.


Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 06/14/2022  Page 169 of
Case 8:15-cv-02453-J...  Doc 11-1  Filed 08/06/15  Entered 08/06/15 14:29:22
Exhibits to SEC's Answer... Affirmative Defenses... Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 36 of 72

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

RAYMOND HOULE, president

## ACKNOWLEGEMENT

State of _____Quebec_____

County of ___D'Arcy McGee____ ss.:

On the ___3___ day of ___June___ in the year 2014, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Raymond Houle

## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 3/ 2014

NOTARY PUBLIC
NAME:

COMMISSAIRE A L'ASSERMENTATION
PIERRETTE
TARDIF
# 198036

# EXHIBIT B

Case 1:22-cv-21485-RNS Document 6-574 Entered on FLSD Docket 04/2022 Page 171 of
Exhibit Case 6:15-72153 weg Affidavit - Defenses Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 38 of 72

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Address of Plaintiff:
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

         **Plaintiff,**

Index No.:

**JUDGMENT BY
CONFESSION**

    **against**

NLG, LLC, a Delaware Limited Liability Company,

        **Defendant.**

1·2·1·0·1·8·7·5

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

    The undersigned, Attorney at Law of the State of New York, affirms that he is the

attorney of record for the Plaintiff herein and states that the disbursements specified are correct

and true and have been or will necessarily be made or incurred herein and are reasonable in

amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 2 2 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 2 2 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

JUDGMENT entered the **22nd** day of **February**, 20**12**

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is

ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC, *Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

**$225.00** costs and disbursements, as taxed by the clerk amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

_Norman Goodman_

CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full Name is:
NLG, LLC, a Delaware Limited
Liability Company

Case 1:22-cv-21485-RNS Document 34 Entered on FLSD Docket 07/14/2022 Page 173 of
Exhibits Case 8:15-72153-reg Filed 08/06/15 and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 40 of 72

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187 5/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC, A Delaware LIMITED
LIABILITY Company,

Defendant.

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK

COUNTY OF NEW YORK         ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against

defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida

33309; Defendant authorizes entry of judgment in New York County, New York, if said

residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for
$1,500.00 or less of any commodities for any use other than a commercial or business use
upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed, subsequent to the time a default occurred in the payment of an
installment thereunder.

Sworn to before me this

16 day of Febary, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

NOTARY PUBLIC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

EXHIBIT A

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 07/14/2022  Page 174 of
Exhibits Case 8-15-72453-reg Affirm in Doc 1 Defense Filed 08/06/15 and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 41 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. $10875/12$

9197-5904 Quebec, Inc.,

                                        **Plaintiff,**

            against

NLG, LLC,

                                        **Defendant.**

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

Exhibits to NJ Gr LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 42 of 72

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20.

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                              Index No.

9197-5904 Quebec, Inc.,

                              Plaintiff,

        against

NLG, LLC., A DELAWARE LIMITED LIABILITY
            COMPANY,
                              Defendant.

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

ATTORNEYS FOR PLAINTIFF
Marzec Law Firm, P.C,
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND
DOCKETED**
FEB 22 2012
AT   10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

# EXHIBIT A

# EXHIBIT C

Case 1:22-cv-21485-BB Document 6-57 Entered on FLSD Docket 06/14/2022 Page 178 of
Exhibits to REC, LPC's Answer, Affirmative Defenses, Counterclaim and Crossclaim 650
Case No. 2013-25902 CA 01
Page 45 of 72
Case 12-16438-jkf*SEALED*    Doc 211 *SEALED*    Filed 03/24/15    Entered 03/24/15
15:32:21    Desc Main Document    Page 1 of 2

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:                                          :    DISMISSED CHAPTER 7 INVOLUNTARY
                                                :
                                                :    CASE NO. 12-16438(JKF) *SEALED*
CHRISTOPHER    KOSACHUK,    a.k.a.    :
CHRIS KOSACHUK                                  :
                                                :
                                                :

## ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary

Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal

the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the

arguments of counsel and evidence admitted at the trial conducted before this Court on March

18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.      The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the

Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.      Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to

11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred

by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc.,

plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.      Final Judgment for monetary sanctions in the amount of $ 960,968.55 pursuant to

11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is

awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post

judgment interest at the federal judgment rate.

118113055_1

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 06/24/2022 Page 179 of
Exhibits to NEG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 46 of 72   Case 12-16438-jkf*SEALED*   Doc 211 *SEALED*   Filed 03/24/15   Entered 03/24/15
15:32:21   Desc Main Document   Page 2 of 2

4.     Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.     This Final Judgment may be recorded as a matter of public record.

6.     This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.     Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:                                          Chapter 7

Selective Advisors Group LLC,                   Case No. 815-72153-A736

                Debtor.                         <u>Stipulation of Settlement</u>

------------------------------------------------------------X

Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code,

Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the

Bankruptcy Code,

Whereas, the Trustee having raised issues as to whether this filing was a good

faith bankruptcy filing by the Debtor,

Whereas, there is an issue concerning whether the Debtor has any creditors in this

bankruptcy case,

Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having

expended substantial time and effort in trying to understand this bankruptcy case and all of the

related litigation between the Debtor and NLG LLC,

It is hereby Stipulated and Agreed as follows:

1.      This bankruptcy case is dismissed with prejudice.

2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross &

Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by

the Debtor in the bankruptcy petition and related State Court lawsuits.

Case 1:22-cv-21485-BB Document 57-4 Entered on FLSD Docket 08/04/2022 Page 182 of
Exhibits to SPEO, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim 650
Case No. 2013-25902 CA 01
Page 49 of 72

3.    This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.    The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
      July 23, 2015

Weinberg, Gross & Pergament LLP
Attorneys for Trustee

By: _____

Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York 11530
(516) 877-2424

Vlahadamis & Hillen, LLP
Attorneys for Debtor

By: _____

Evans M. Hillen
148 East Montauk Highway, Suite 3
Hampton Bays, New York 11946
(631) 655-4115

"So Ordered"

2

# EXHIBIT "B"

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 51 of 72

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

---

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

EVANS M. HILLEN
evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: <u>9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC</u>
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 52 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc
     Plaintiff,             Index No: 101875/2012

                                           **NOTICE OF FILING
SATISFACTION OF
JUDGMENT**

            - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                      Defendant.
-----------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff-Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York

Vlahadamis & Hillen, LLP

                          By:     /s/ James R. Vlahadamis
                                 James R. Vlahadamis, Esq.
                                 148 E. Montauk Highway
                                 Suite 3
                                 Hampton Bays, New York 11946

TO:    THE LAW OFFICES OF ARI MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0578
       ari.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 54 of 72



Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 55 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

Plaintiff,                    Index No: 101875/2012
                              **SATISFACTION OF**
                              **JUDGMENT**

- against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

Defendant.
-------------------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 56 of 72

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean Neil Meehan, manager

ACKNOWLEGEMENT

COUNTY OF _Onacler_

On the _3rd_ day of _September_ in the year _2015_ before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 57 of 72

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 3th 2015

_____
NOTARY PUBLIC
NAME:

## AFFIRMATION OF SERVICE

STATE OF NEW YORK    )
                            )   SS.:
COUNTY OF NEW YORK )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York.  On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:     THE LAW OFFICES OF ART MOR, ESQ
          347 E 65th Street, Suite 2RW
          New York, New York 2RW
          (347) 850-0578
          art.mor.esq@gmail.com

          ATTORNEY FOR DEFENDANT
          NLG, LLC, a Delaware Limited Company

          JONATHAN M. BORG BEDELL & FORMAN LLP
          44 Wall Street, 10th Floor
          (646) 219-7551
          jborg@bedell-forman.com

          ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Vlahadamis & Hillen, LLP

                                By:    /s/ James F. Vlahadamis
                                         James F. Vlahadamis, Esq.
                                         148 E. Montauk Highway
                                         Suite 3
                                         Hampton Bays, New York 11946

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 59 of 72

# EXHIBIT D

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 09/14/2022 Page 193 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 60 of 72

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015 01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

GENERAL JURISDICTION DIVISION

CASE NO.: ~~2011-42270 CA~~ (02)  2011-42770 CA 01



FILED

DEC 04 2015

CLERK CIRCUIT & COUNTY COURTS

_____/

**FINAL JUDGMENT OF FORECLOSURE**
**(Pursuant to Administrative Order 09-09)**

      **THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on mandate from the Third District Court of Appeals on November 25, 2014;

      **IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service of process has been duly and regularly obtained over all Defendants in this action and this Court has jurisdiction over the parties in this action and the subject matter herein.

1.    **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following from Defendant ELIZABETH HAZAN:

      Principal due on the note secured by the mortgage foreclosed, as set forth in the Opinion of the Third District Court of Appeal:

        **$1,618,071.29.**

      Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion of the Third District Court:

Case 1:22-cv-21485-RNS Document 6-4 Entered on FLSD Docket 09/14/2022 Page 194 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 61 of 72

CFN: 20150812181 BOOK 29902 PAGE 3738

### $2,953,489.91

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015 until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

| | |
|---|---|
| Property Maintenance | $21,333.14 |

### GRAND TOTAL: $4,876,654.29

2.    **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment** against the Defendants. With the exception that any deficiency is hereby taxed against Defendant ELIZABETH HAZAN, there are no in personam damages against said other Defendants.

3.    **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of

CFN: 20150812181 BOOK 29902 PAGE 3739

the defendants. The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on December ____, 2015, to the highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6. **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8. **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9.   **Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10.   **NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA

Case 1:22-cv-21485-RNS Document 574 Entered on FLSD Docket 05/4/2022  Page 197 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
650
Case No. 2013-25902 CA 01
Page 64 of 72

CFN: 20150812181 BOOK 29902 PAGE 3741

**(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

11.    **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 65 of 72

CFN: 20150812181 BOOK 29902 PAGE 3742

> **FINAL ORDERS AS TO ALL PARTIES**
> **SRS DISPOSITION NUMBER   12**
>
> THE COURT DISMISSES THIS CASE AGAINST
> ANY PARTY NOT LISTED IN THIS FINAL ORDER
> OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
> AS TO ALL PARTIES.
>
> **Judge's Initials   MG**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

**Copies furnished: Parties of record**

# EXHIBIT E

Case 1:22-cv-21485-RNS Document 57-43 Entered on FLSD Docket 08/04/2022 Page 200 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 67 of 72

# M A N D A T E

### from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## THIRD DISTRICT

This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.

WITNESS the Honorable Frank A. Shepherd, Chief Judge of the District Court of Appeal of the State of Florida, Third District, and seal of the said Court at Miami, Florida on this day.

| | |
|---|---|
| **DATE:** | November 25, 2014 |
| **CASE NO.:** | **13-0684** |
| **COUNTY OF ORIGIN:** | **Dade** |
| **T.C. CASE NO.:** | **11-42770** |

**STYLE:**    NLG, LLC, etc.,        v.    ELIZABETH HAZAN,



**ORIGINAL TO:**    Miami-Dade Clerk

cc:  Mark D. Cohen        Allan S. Reiss        Megan K. Wells

la

# Third District Court of Appeal

## State of Florida

Opinion filed September 3, 2014.
Not final until disposition of timely filed motion for rehearing.

———————————

No. 3D13-684
Lower Tribunal No. 11-42770

———————————

## NLG, LLC,

Appellant

vs.

## Elizabeth Hazan,

Appellee

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Megan K. Wells (Miramar), for appellant.

Levine & Partners and Allan S. Reiss; Mark D. Cohen (Hollywood), for appellee.

Before SUAREZ, SALTER and LOGUE, JJ.

SALTER, J.

A mortgage lender, NLG, LLC (NLG), appeals a final judgment for the

mortgagor, Elizabeth Hazan.  Finding no basis in the pleadings or applicable law

for the positions advanced by the borrower, we reverse and remand for further proceedings.

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. Hazan v. NLG, LLC, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. Hazan v. NLG, LLC, 19 So. 3d 319 (Fla. 3d DCA 2009).

2

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

Analysis

A review of Ms. Hazan's pleadings, applicable law, and the transcript of the trial court's January 2, 2013, hearing, discloses no basis for denying foreclosure to NLG. Default in payment was undisputed (conceded in writing, as it was, in the various settlement agreements, which also included waivers of any defenses). The two arguments advanced by Ms. Hazan's counsel were flawed.

First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage. Junction Bit & Tool Co. v. Village Apartments, Inc., 262 So. 2d 659 (Fla. 1972) (unsatisfied judgment on a promissory note secured by mortgage did not constitute a remedy or a bar to a suit to foreclose the mortgage). See also Royal Palm Corporate Ctr. Ass'n, Ltd. v. PNC Bank, NA, 89 So. 3d 923 (Fla. 4th DCA 2012).

As to the second argument advanced by Ms. Hazan's counsel, the December 2008 order "quieting title" did not extinguish the mortgage or its lien. That order quieted title in Ms. Hazan only to the extent it vacated the sheriff's deed obtained by NLG and disentitled anyone in possession (other than Ms. Hazan) to remain in possession. Neither the motion nor the order support the extinguishment of an unpaid purchase money lien on the home (now exceeding $2,000,000.00), a lien senior to the junior mortgage granted by Ms. Hazan as these proceedings unfolded. Because there is no legal basis for such relief in Ms. Hazan's pleadings, the trial

4

Case 1:22-cv-21485-RNS Document 6-4 Entered on FLSD Docket 06/03/2022 Page 205 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 72 of 72

court's final judgment must be reversed. <u>BAC Home Loans Servicing, Inc. v.</u>
<u>Headley</u>, 130 So. 3d 703, 705 (Fla. 3d DCA 2013); <u>Mullne v. Sea-Tech Constr.</u>
<u>Inc.</u>, 84 So. 3d 1247, 1249 (Fla. 4th DCA 2012).

Regarding Ms. Hazan's affirmative defenses to the effect that NLG and its representative at trial lacked standing because of an internal dispute among the members, the trial court explicitly stated in the January 2, 2013, transcript (incorporated by the final judgment) that NLG did have standing and that its representative (Mr. Kosachuk) was a proper representative of NLG.

Accordingly, we reverse the final judgment and remand the case for further proceedings, including the enforcement of NLG's mortgage and the reinstatement of the lis pendens and amended lis pendens previously vacated by the final judgment.

Reversed and remanded.

Bk 29406 Pg 563 CFN 20140815112 11/26/2014 08:37:24 Pg 6 of 6 Mia-Dade Cty, FL

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### Case No. 18-cv-21398-JEM

NLG, LLC,

      Plaintiff

v.

SELECTIVE ADVISORS GROUP, LLC,

      Defendant

_____/

## NLG, LLC'S VERIFIED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

    NLG, LLC ("NLG"), through undersigned counsel, in accordance with this Court's inherent authority and Rule 56 of the Federal Rules of Civil Procedure, files this Verified Motion for Summary Judgment (the "Motion") as to Count I of NLG's Amended Verified Complaint [ECF No. 13] against Selective Advisors Group, LLC ("Selective").

    NLG files this Verified Motion for Summary Judgment and Memorandum of Law in support of NLG's Verified Amended Complaint for Declaratory Judgment: pursuant to 28 U.S.C. § 2201 (Declaratory Judgment Act), NY CPLR § 3218 and NY CPLR § 5015 (a) to vacate, set aside and strike from the public records of New York County, NY and Miami-Dade County, FL, a $5,000,000.00 judgment by confession (the "Judgment by Confession") *nunc pro tunc* to date of entry as obtained in violation of NLG's right to due process and by committing a fraud on the court; (b) to grant attorneys' fees, costs, and disbursements; and (c) grant NLG such other relief as that this Court deems just and proper.

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 2 of 21

NLG incorporates by reference the affidavit of NLG's manager, Chris Kosachuk, as if fully rewritten herein. NLG also incorporates the Verified Amended Complaint and its exhibits as if fully rewritten herein.

NLG seeks a Final Declaratory Judgment from this Court vacating, setting aside and striking the Judgment by Confession *nunc pro tunc* to date of entry on the basis that the entry was procedurally defective and fraudulent. (*See* Kosachuk Affidavit, at ¶¶ 2-10).

Therefore, NLG is entitled to a Final Declaratory Judgment via Summary Judgment as a matter of law.

## Introduction

NLG filed its Amended Verified Complaint for Declaratory Judgment [ECF No. 13] seeking to vacate, strike and set aside a fraudulently obtained a Judgment by Confession, *nunc pro tunc* to date of entry, in which the same individual, Raymond Houle, acted for both the plaintiff, 9197-5904 Quebec Inc. ("Quebec") and the defendant, NLG, LLC ("NLG"), without notice or opportunity to be heard by NLG and without authority from NLG. Selective does not challenge this Court's jurisdiction to adjudicate the matter.

No court has ever ruled against NLG on these issues. Thus, Selective cannot show any ruling from any court in any state adjudicating the merits of the Amended Complaint filed in this case. On the other hand, three judges have ruled in favor of NLG, but none of them had the authority to grant the relief requested in this action.

The Judgment by Confession obtained by Houle's corporation, Quebec, was assigned for no consideration to Selective [ECF No. 22-2 p. 19], where Elizabeth Hazan's husband is the managing member. Hazan was the defendant in a mortgage foreclosure action brought by NLG, which resulted in a Final Judgment of Foreclosure of almost $5 million signed by State Circuit

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 3 of 21

Judge Monica Gordo. [*See* ECF No. 22-1]. Before entering the Foreclosure Judgment, Judge

Gordo signed a very detailed Order Granting Foreclosure (the "Foreclosure Order") [ECF No.

22-2] rejecting the same arguments Selective raised in its motion to dismiss this case.

Hazan filed for voluntary bankruptcy on January 11, 2016, the evening before the Miami-

Dade County Clerk was set to auction her Fisher Island Property pursuant to Judge Gordo's

Foreclosure Judgment. Hazan then filed an appeal of the Foreclosure Judgment after filing

bankruptcy [ECF No. 22-3 is the Notice of Appeal of the Foreclosure Judgment]. Shortly

thereafter, the Third District Court of Appeal recognized Ms. Hazan's voluntarily dismissal of

the Foreclosure Judgment Appeal [ECF 22-8 is the Order dismissing the appeal]. As such, the

Foreclosure Order and Foreclosure Judgment are the "law of the case."

After Judge Gordo rejected all of Selective's arguments surrounding the Judgment by

Confession, Hazan and Selective filed an Adversary Proceeding raising those same arguments in

front of Bankruptcy Judge A. Jay Cristol. Judge Gordo was informed that Selective had declared

the Judgment by Confession without explanation, either in New York or in her court, so she

proceeded to enter her Foreclosure Order and her Foreclosure Judgment. Despite this, and

without any record support from the proceedings in New York, or any other court, Judge Cristol

set off NLG's Foreclosure Judgment with the Judgment by Confession, in effect canceling the

state court judgment and the mortgage, in violation of the well-settled principals of *Rooker-*

*Feldman* and res judicata.

All of the litigation mentioned in Selective's Motion to Dismiss is related to Hazan's

efforts to avoid the consequences of defaulting on her mortgage obligations to NLG.

**Standard of Review on a Motion for Summary Judgment**

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 4 of 21

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered when the moving party demonstrates that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This is an ideal case for summary judgment as it is entirely document-driven. There is no need for testimony as the documents all speak for themselves.

"To defeat a motion for summary judgment, the opposing party must do more than simply show that there is some doubt as to the facts of the case." *In re Am. Managed Care, LLC*, 2016 WL 3621534, at *3 (Bankr. M.D. Fla. June 28, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "The party opposing the motion must establish (a) the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion, and (b) that the movant is not entitled to judgment as a matter of law." Id. (citing *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Selective does not and cannot provide a single reference to any decision ruling on the issue presented in this case—whether the Judgment by Confession is void *ab initio* for lack of due process and as a fraud on the courts.

Selective filed a long and irrelevant motion to dismiss to confuse the issues and avoid addressing the crux of the case—that a judgment in New York against an individual, Chris Kosachuk, was used in Pennsylvania to obtain a charging order against NLG, which was then used in New York to create a $5 million Judgment by Confession for "abuse of process," where the same individual, Raymond Houle, represented both the plaintiff Quebec and the defendant NLG. The real NLG was never given notice nor an opportunity to be heard. No court has ever ruled on this fraudulent conduct or abuse of due process.

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 5 of 21

To avert discussing the merits of NLG's claim for declaratory relief, Selective filed 21 documents under judicial notice to re-hash the same arguments presented to and rejected by Judge Gordo before she entered her Final Judgment of Foreclosure. Thus, while arguing res judicata and issue preclusion, Selective ignores the latest pronouncement by a court of competent jurisdiction which considered and ruled on all the issues Selective seeks to re-litigate, except for Judge Cristol's decision which is currently under appeal in front of Judge Gayles under case number 17-cv-24127-DPG.

## FACTUAL BACKGROUND

### The Judgment by Confession

Attached as Exhibit 1 of the Amended Complaint are the papers filed in New York to obtain a $5 million judgment based on alleged abuse of process. [*See* ECF No. 13 pages 10-16]. Raymond Houle filed an Affidavit falsely representing himself as "the Manager and duly authorized agent" of NLG. He then swore that the confession of judgment was for a "debt" just due to the plaintiff. Black's Law Dictionary defines a debt as "a sum of money due by contract." See also *Hughes v. Union Ins. Co.*, 21 U.S. (8 Wheat.) 294, 312 (1823).

The affidavit also claimed in contradictory fashion that the confession of judgment was "for a **debt** justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process." (Emphasis added). Plaintiff's New York attorney, Darius Marzec, who is Hazan's counsel of record in multiple matters, affirmed under penalties of perjury that the amount confessed was $5,000,000.00, plus costs.

Any judge reviewing these submissions would have rejected them summarily, but no judge ever reviewed them. Instead, it was simply "adjudged" and recorded by the New York County Clerk of the Court in complete and total violation of NLG's right to due process.

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 6 of 21

The New York statute authorizing this type of summary procedure is governed by NY CLS § 3218, which requires an affidavit from the defendant "for money due or to become due, or to secure the plaintiff against a contingent liability in behalf of the defendant." The statute does not authorize the entry of a judgment based on a tort claim for an unliquidated amount of damages such as the $5 million involved here. For this reason alone, the Judgment by Confession was fraudulently entered and is void ab initio.

Furthermore, the affidavit was fraudulent because, before Quebec filed this Judgment by Confession, there was no litigation between Quebec and NLG. The only litigation was between Quebec and Mr. Kosachuk individually.

Houle filed a second affidavit giving as the address for the defendant NLG as the Ft. Lauderdale address of an attorney representing Hazan in Florida. [*See* ECF No. 13 p.13]. This resulted in NLG not learning of the judgment until more than a year later.

**The Griffith Order**

The foregoing recitation would lead any jurist to wonder what's the rest of the story. It's not that simple. Houle and Marzac did claim the right to act for NLG based on a charging order obtained in Pennsylvania. This requires a detour to Pennsylvania.

The genesis of all the litigation goes back to a judgment obtained on February 22, 2007, in the Supreme Court of New York by Eugenia Lorret against Chris Kosachuk in the amount of $48,293.54. [*See* Judge Edward Griffith Order dated May 1, 2012, in Chester County, Pennsylvania, under Case No. 2012-00057, footnote 1, ECF No. 22-17]. On December 15, 2009, Lorret assigned her judgment to Quebec, which existed for the sole purpose of holding and collecting the judgment. Quebec filed the domestication action in Chester County and fraudulently used the proceeding to collect a judgment against **Kosachuk** into a charging order

Case 1:22-cv-21485-RKA Document 3-6 Entered on FLSD Docket 04/22/2022 Page 212 of 650
Case 1:18-cv-21398-JEM Document 86 Entered on FLSD Docket 03/22/2019 Page 7 of 21

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 7 of 21

against **NLG**. All of this is set out in detail by Judge Griffith in his Order. It was Houle, with the assistance of Attorney Marzac, who filed an affidavit claiming the judgment was against the defendant**s.** *Id.* (Emphasis in the original). "Houle knew or should have known that the Judgment had been entered in New York against Kosachuk only." Houle's filing gave a Miami address for NLG, but failed to provide the last know post office address for NLG, which was 854 Pheasant Run Road, West Chester, Pennsylvania 19382. The Chester County, Pennsylvania prothonotary then recorded the Judgment against both Kosachuk **and NLG**. "With reference to NLG, there was no judgment from New York to domesticate," but Quebec had nevertheless obtained the February 15, 2012 charging order against NLG. Furthermore, the charging order granted Quebec "all economic and management rights in NLG," but under Pennsylvania law, charging orders only permit creditors to collect on an LLC's member's unpaid personal debts through the member's interest in the LLC up to the amount owed on the debt. Here Quebec seized the entire LLC.

Judge Griffith vacated the charging order, which terminated any alleged rights that Quebec had against NLG. As the assignee of Quebec, it also terminated Selective's rights. [*See* ECF No. 22-17]. But by then, Quebec and Houle had obtained the Judgment by Confession.

**The Scola Judgment**

The Scola Judgment is a red herring mentioned in Selective's Motion to Dismiss is a red herring. On April 28, 2008, Judge Scola entered a Default Final Judgment on the Note (the "Scola Judgment"), but regrettably, the judgment did not foreclose on the mortgage. Three years later, NLG filed its foreclosure action which eventually resulted in Judge Gordo's Final Judgment of Foreclosure. But NLG initially lost at trial based on Judge Eig's ruling that NLG had made an election of remedies by suing on the note and not suing for foreclosure at the same

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 8 of 21

time. This was reversed by the Third District Court of Appeal on September 3, 2014. The court stated that "NLG's prior suit on the promissory note and recordation of a judgment on the note [the Scola Judgment] was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014). The court reversed and remanded "for further proceedings, including the enforcement of NLG's mortgage." *Id*. at 457.

Despite the fact that NLG was not proceeding under the Scola Judgment, and the Third District decision that it did not need to proceed under the Scola Judgment, but could simply foreclose on the mortgage, both Hazan and her husband, as managing member of Selective, have continued to use the Scola Judgment in an attempt to obfuscate every proceeding thereafter. This argument would ignore the fact that when the Third District held that NLG could sue under the mortgage instead of the Scola Judgment, this became the law of the case under Florida law. This was also the same argument before Judge Gordo, who properly denied it.

**The Lopez Assignment Order**

The Lopez Assignment Order is another red herring. While the appeal was pending, Selective domesticated the Judgment by Confession in Florida under Case No. 14-10475 CA (10). This resulted in an order signed by Judge Peter Lopez on August 20, 2014 (the "Lopez Assignment Order"), which preceded the Third District Court's opinion in September 2014. That Order assigned the Scola Judgment to Selective. Judge Lopez specifically refused to entertain any argument as to whether the Judgment by Confession was void as having been fraudulently obtained without due process. See Transcript of Proceedings before Judge Lopez on November 10, 2015, at page 24, where NLG's counsel raised the fact that the judgment was obtained by fraud. Judge Lopez stated: "I don't care by fraud, that's for New York to decide."

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 9 of 21

The Lopez Assignment Order never mentioned the note and mortgage. The assignment was strictly limited to the Scola Judgment. Thus, the Assignment Order left intact NLG's right to proceed under the note and mortgage, as mandated by the Third District, instead of the Scola Judgment. In fact, NLG still has possession of the original note.

Before the appellate court issued its mandate, Hazan filed a motion for rehearing with the Third District, raising the same issues Selective is now raising in its motion to dismiss. In particular, it argued that the appeal was moot because the underlying judgment and mortgage had been satisfied. It had been satisfied through a settlement reached between Hazan and her husband's company, the Defendant herein, Selective. The Third District denied rehearing.

The same day the Lopez Assignment Order was signed, Selective proceeded to file a satisfaction of the mortgage, despite the fact that the Order never mentioned the mortgage. This was totally unauthorized. Even if Selective had requested Judge Lopez assign the mortgage, Florida statutes would have barred such an assignment. See FLA. STAT. § § 55.202(2) stating: "A judgment lien may be acquired on a judgment debtor's interest in all personal property in this state subject to execution under s. 56.061, other than fixtures, money, negotiable instruments, and **mortgages**."

Likewise, the unilateral filing by Selective on September 5, 2014, of an electronic judgment lien statement filed two days after the Third District had issued its opinion was totally meaningless because the opinion made clear that NLG did not have to sue on the Scola Judgment, yet the filing purported to set off the Judgment by Confession against the Scola Judgment.

**Judge Gordo's Order Granting Foreclosure**

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 10 of 21

The Gordo Order Granting Foreclosure ("Gordo Order") was simply an order enforcing the mandate of the Third District which "reverse[d] the final judgment and remand[ed] the case for further proceedings, including the enforcement of NLG's mortgage…" *Id*. at 457.

The Gordo Order started quoting the Third District opinion and the mandate issued on November 25, 2014. It then traced all the efforts by Hazan and her husband, through Selective, to prevent or delay the enforcement of the mandate, which included Selective filing, on December 2, 2014, a Satisfaction of Mortgage. *Gordo Order*, p. 3. The Order explained how, on May 1, 2015, counsel for Selective appeared and argued on behalf of Selective, even though it had never moved to intervene. *Id*. p. 4. It noted that Selective's sole Managing Member, Sean Neil Meehan, was Hazan's husband. It remarked that Selective waited until October 7, 2015 to move to intervene for the sole purpose of re-arguing the same matters that had been raised by Hazan and previously rejected. *Id*.

The motion also included a request to substitute Selective for NLG as the party plaintiff based on the assignment of judgment granted by Judge Lopez in the Lopez Assignment Order dated August 20, 2014. The Gordo Order noted that Judge Lopez had previously dismissed his case on October 1, 2015, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceed will be taken." *Id*. p. 7. Judge Gordo also observed that when the foreclosure action was tried before Judge Eig, Hazan had asserted as an affirmative defense that NLG did not own the Scola Judgment. After Judge Eig ruled against NLG, it took an appeal. *Id*. p. 8. Judge Gordo ruled that at the time Judge Lopez entered the Lopez Assignment Order, on August 20, 2014, the Scola Judgment "had been subsumed into the final judgment in favor of Hazan," citing *Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014). *Gordo Order*, p. 8.

Case 1:22-cv-21485-RNS 3D-AiGen Doc 57 Entered 10 FLSD Docket 05/14/2022 Page 216 of 21
Case 1:18-cv-21398-JEM Document 38-7 Entered on FLSD Docket 09/22/2019 Page 1 of 21
650

The Gordo Order also discussed how the enforceability of the Scola Judgment was an integral part of the pending appeal at the time Judge Lopez entered his Assignment Order, and that a lower court could not enter orders that deprived the appellate court of jurisdiction. *Id*. p. 9.

But the discussion most relevant to this action deals with the Judgment by Confession. Judge Gordo observed that neither Hazan nor Selective had requested the Third District to relinquish jurisdiction to assert that they owned this newly assigned Judgment by Confession. *Id*. p. 11. The Order traced all of NLG's efforts to vacate the judgment in New York, commencing on January 1, 2014, and how Selective kept delaying a hearing. NLG's Motion to Vacate is of record at ECF No. 22-28. After obtaining numerous postponements, on May 18, 2015, Selective filed a bankruptcy petition to obtain a stay, even though it was the supposed judgment **creditor**. *Id*.

Judge Gordo then discussed the appointment of a Trustee in the bankruptcy, who found that the Judgment by Confession had been premised on an Affidavit signed by Raymond Houle, who claimed to be president of the plaintiff while simultaneously acting as manager of the defendant NLG. "Mr. Meehan was placed under oath and he testified 'that he had no knowledge of the underlying basis for the Judgment [by Confession] and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except here was an unspecified "deal" whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment.'" *Id*. p. 12. The Trustee also found Mr. Meehan's testimony "not plausible" with respect to the Judgment by Confession and the reasons for filing bankruptcy as "suspicious." *Id*. [The Affirmation in Support of dismissal of the bankruptcy petition filed by the Trustee is ECF No. 22-2 p. 17].

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 12 of 21

After the bankruptcy was dismissed, Judge Gordo noted how NLG again tried to reschedule its motion to vacate the Judgment by Confession, which now triggered a letter from Selective's counsel to the presiding judge stating that the judgment had been satisfied in full. *Id.* p. 13. Judge Gordo observed that Selective had offered no explanation why it took from August 20, 2014 to September 4, 2015, for the judgment to be satisfied. *Id.*

Judge Gordo then stated that, even if the Judgment by Confession had still been outstanding, "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere," citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559 (1980). Relying on the Trustee's examination under oath of Mr. Meehan, Judge Gordo found that the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. Furthermore, relying on the records submitted by Selective in the New York action, Judge Gordo also found that "NLG received no notice or opportunity to be heard because Houle was acting for both Quebec and NLG." *Gordo Order*, p. 13-14. She thus concluded that without notice, a court lacks personal jurisdiction and the Judgment by Confession need not be recognized, citing *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008). See *Gordo Order,* p. 14.

Judge Gordo concluded that, "[b]y continuously postponing the hearing on NLG's motion to vacate the Judgment by Confession, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction…" Furthermore, "[i]f a defendant has not had 'the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment.'" Citing *Williams*, *supra*, 980 So. 2d at 1243. See *Gordo Order,* p. 14.

Although the Gordo Order may not have been an appealable order, the subsequent Foreclosure Judgment was. Hazan not only filed her bankruptcy petition, but also subsequently

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 13 of 21

filed a Notice of Appeal of the Foreclosure Judgment, which was dismissed after she voluntarily dismissed it. That made the Gordo Order and the Gordo Foreclosure Judgment the law of the case.

### The FitzSimon Order

Another relevant proceeding took place in Pennsylvania with an Involuntary Bankruptcy Petition Quebec filed against Kosachuk, which resulted in an Order entered on March 24, 2015, by Judge Jean K. FitzSimon, U.S. Bankruptcy Judge for the Eastern District of Pennsylvania. [*See* ECF No. 22-18]. Judge FitzSimon found that the bankruptcy was filed in bad faith and that Kosachuk was entitled to recover monetary sanctions in the amount of $192,173.71, and punitive damages in the amount of $960,968.55 against Quebec. The Order also cancelled *nunc pro tunc* to July 6, 2012, the Lorret Judgment in New York against Kosachuk, which had been used in Pennsylvania to fraudulently obtain the charging order against NLG. Thus, not only has the charging order used to obtain the Judgment by Confession been vacated, but also the Lorret Judgment has been cancelled which was fraudulently used to obtain the charging order. As assignee of Quebec, Selective cannot have rights greater than the assignor.

### The Tarantino Order

Another lawsuit is relevant to this action. It was brought by Selective in Suffolk County New York for a declaratory judgment against NLG and resulted in an Order dated October 30, 2015. [*See* ECF No. 22-19]. Selective petitioned for an order declaring that the Judgment by Confession was valid and enforceable. Although NLG was never notified of the proceedings, the strategy backfired. Instead of finding that the judgment was valid and enforceable, Judge Tarantino Order recounted how Raymond Houle, as manager of Quebec, executed a sworn affidavit of confession of judgment in favor of Quebec against NLG in the amount of

$5,000,000.00. *Tarantino Order*, p. 2. Judge Tarantino noted that the record did not reveal any effort on the part of Selective to serve NLG's attorney. *Id.* p. 3. Despite the lack of appearance or representation on behalf of NLG, the judge reviewed the proceedings and the affidavit filed that resulted in the Judgment by Confession in relation to the requirements under New York law, CPLR 3218 (a) (2), and the case law. He then quoted from *Fiore v. Oakwood Plaza Shopping Ctr., Inc.*, 78 N.Y.2d 572, 575, 578 N.Y.S.2d 115, 115-16, 585 N.E.2d 364, 364-65 (1991):

> Judgments by confession, recognized both as "the loosest way of binding a man's property that ever was devised in any civilized country" and as devices that "serve a proper and useful purpose in the commercial world," in this State have been strictly limited by the Legislature.

The *Fiore* case goes on to state that Judgments by Confession are limited to contractual provisions employing a security device whereby the obligor consents in advance to the creditor's obtaining judgment without notice or hearing. But it must be enforced only where the judgment debtor made a voluntary, knowing and intelligent waiver of the right to notice and an opportunity to be heard.

> Judge Tarantino ruled that:
>
> Here, the confession device was not used in the normal situation of a contract action, but in a tort action which is unlikely to have been negotiated in advance. More importantly, the supporting affidavit was made by the petitioner, as the plaintiff therein, acting on behalf of the NLG as the defendant, and it appears that the confessed amount of the judgment is arbitrary.

*Tarantino Order*, p. 3-4.

Unfortunately, Judge Tarantino did not enter a final order, but ordered Selective to properly serve NLG, then place the matter on the Trial Assignment Calendar. Predictably, Selective dismissed its declaratory judgment action two days later.

## MEMORANDUM OF LAW

**Claim Preclusion and Res Judicata do not apply to this Declaratory Relief Action**

After mentioning numerous lawsuits in various jurisdictions, the Memorandum of Law in the Motion to Dismiss argues that only two cases qualify for res judicata or claim preclusion—the Order entered by U.S. District Judge McMahon and the Final Judgment rendered by Judge Cristol. The shotgun argument that NLG has made the same claim in Pennsylvania, New York and Miami-Dade County and "every one of these courts has ruled against NLG," is patently false. Besides providing no citation for this claim, NLG has shown by its detailed discussion, with citations attached as exhibits, that every judge that has been willing to entertain the arguments of fraud and lack of due process has ruled in favor of NLG.

The Order entered by U.S. District Judge Colleen McMahon fails to satisfy the two of the four requirements for claim preclusion. As recently stated in *Sealey v. Branch Banking & Tr. Co.*, 693 F. App'x 830, 833 (11th Cir. 2017): "Claim preclusion bars a subsequent lawsuit when four elements are present: (1) a final judgment on the merits was entered; (2) the prior decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Selective relies on an Order entered on July 20, 2016, but this was not a final judgment on the merits and did not involve the same cause of action as in this Declaratory Action. Judge McMahon merely ruled that removal was improper. She subsequently determined that no sanctions would be imposed. [*See* ECF No. 22-39].

The Final Judgment entered by Judge Cristol made clear at the outset: "This Court is not an appellate court for any of the other courts; thus, full faith and credit must be given to all of the final judgments and orders entered in the other courts as those judgments have become final and

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 16 of 21

not subject to appeal." Furthermore, Judge Cristol specifically stated that all final orders or judgments would be given full faith and credit. He later repeated that "(Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.)" Cristol Final Judgment at p. 7. Thus, the issue of fraud in obtaining the Judgment by Confession or the lack of due process were not issues that Judge Cristol contemplated, nor did any of the parties request that he contemplate them.

Judge Cristol entered a final judgment on all counts which went to trial and only on counts which the bankruptcy court had jurisdiction to hear -- the core bankruptcy matters. The Cristol Final Judgment does not resolve the validity of the Judgment by Confession, making this Declaratory Action necessary so that NLG can finally obtain an adjudication on the merits as to the validity of the Judgment by Confession.

Judge Lopez specifically refused to entertain the issues raised in this Declaratory Action, directing NLG to seek a remedy in New York. As previously outlined, Selective has successfully stymied every effort tot have the matter heard, including the filing of bankruptcy and then claiming the judgment had been satisfied.

**Rooker-Feldman Doctrine Precludes Review of State Court Orders**

NLG wholeheartedly agrees with this proposition and it forms the crux of its appeal of the Final Judgment entered by Judge Cristol. It has been NLG's position that the Gordo Order Granting Foreclosure disposed of all the arguments Selective raised in the Adversary Proceeding and should have been dispositive.

On the other hand, NLG is asserting that the Judgment by Confession is void for fraud and violation of due process. Such a challenge is authorized both under New York and Florida law. Under New York law, "[a] defendant debtor who seeks to attack the validity of a judgment

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 17 of 21

by confession on the ground of fraud must proceed by plenary action." *Affenita v. Long Indus., Inc.*, 133 A.D.2d 727, 728, 519 N.Y.S.2d 999, 1000 (App. Div. 1987). "A plenary action is defined as a complete and formal hearing on the merits as distinguished from a summary hearing." *Kowohl v. Roschko*, 659 F. Supp. 910, 912 n.2 (E.D.N.Y. 1987), citing Black's Law Dictionary 1038 (5th ed. 1979). Based on the diversity of jurisdiction, NLG has filed his lawsuit in federal court in the venue of Selective's residence.

Furthermore, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), the U.S. Supreme Court cited with approval at 544 U.S. at 284, the Ninth Circuit held that

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). This Declaratory Action does precisely that-- asserts that Selective's assignor fraudulently obtained the Judgment by Confession. The Affidavit of Raymond Houle is xxx,a charging order in Pennsylvania (which has been vacated *nunc pro tunc*) to enable Quebec and Raymond Houle to act for both the plaintiff and the defendant and thereby obtain a $5 million Judgment by Confession for alleged abused of process.

As to Florida law, Judge Gordo recognized that "[a] challenge to personal jurisdiction may be raised either in the foreign court or in the court where the judgment is sought to be enforced." *Spano v. Wells Fargo Equip. Fin.*, 165 So. 3d 834, 836 (Fla. 4th DCA 2015). If "the defendant had a full and fair opportunity to litigate the issue [of personal jurisdiction] in the

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 18 of 21

foreign court," "then its ruling is res judicata and not subject to collateral attack." *Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004).

"If, however, the defendant did not have the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Spano*, 165 So. 3d at 836; *see also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is *not* fairly litigated in the initial court, the defendants are free to raise the question *de novo* in the jurisdiction in which enforcement of the judgment is attempted."). Here, NLG has never had an opportunity to litigate the issue of personal jurisdiction, and the charging order which ostensibly gave Quebec and Raymond Houle the ability to act for both the plaintiff and defendant has been vacated *nunc pro tunc*.

Although the validity of the foreign judgment must be analyzed under the law of the foreign state, *Nichols v. Nichols*, 613 So. 2d 137, 139 (Fla. 4th DCA 1993), every state in the country recognizes that the total lack of notice or opportunity to be heard renders the judgment void under the U.S. Constitution. New York is no different, recognizing that a judgment obtained by fraud is void. See *Dobson v. Pearce*, 12 N.Y. 156, 165 (1854).

## CONCLUSION

The Judgment by Confession must be vacated *nunc pro tunc* because (1) it was not authorized by New York law, which is limited to the collection of debts; (2) it was obtained by defrauding the courts of Pennsylvania and New York; and most importantly, (3) it was obtained without notice or opportunity to be heard by NLG, thus being a void judgment that can be attacked at any time.

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 19 of 21

**WHEREFORE**, for the reasons set forth above, NLG respectfully requests that the Court

grant NLG's Verified Motion For Summary Judgment (the "Motion") filed on August 22, 2018,

order  and grant such other and further relief as the Court deems appropriate.

August 22, 2018.


Respectfully submitted,

**Attorneys for Plaintiff NLG, LLC**

| | |
|---|---|
| Juan Ramirez, Jr. | Astrid E. Gabbe |
| ADR Miami, LLC | The Law Office of Astrid E. Gabbe, P.A. |
| Florida Bar No. 201952 | Florida Bar No. 635383 |
| ADR Miami LLC | P.O. Box 4216 |
| 1172 S. Dixie Hwy. #341 | Hollywood, FL 33083 |
| Coral Gables, FL 33146 | Tel. (954) 303-9882 |
| (305) 667-6609 | Fax. (954) 983-1427 |
| jr@adrmiami.com | astridgabbe@gmail.com |

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 20 of 21

## **VERIFICATION**

I, Chris Kosachuk, pursuant to Fla. Stat. 92.525, 28 U.S. Code § 1746 and under penalty of perjury, I declare that I have read the foregoing Verified Motion for Summary Judgment and that the facts are true, correct and based on my personal knowledge.


/S/ *Chris Kosachuk*

_____

Chris Kosachuk

Manager - NLG, LLC


Dated this 22nd day of August, 2018

Case 1:22-cv-21485-PNS-SDA Case Doc 57-4 Entered 10FLSD Docket 05/14/2022 Page 226 of 21
Case 1:18-cv-21398-JEM Document 36 Entered on FLSD Docket 08/22/2018 Page 21 of 21
650

NLG, LLC's Motion for Summary Judgment
Case No. 18-cv-21398-JEM
Page 21 of 21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of foregoing was served via CM/ECF, email or U.S. Mail to the parties on the attached service list as indicated on this 22nd day of August 2018.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

**Via CM/ECF/Email**

Joe M. Grant, Esq. on behalf of Defendant Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com; mg197ecfbox@gmail.com;sleary@msglaw.com



At an IAS Part 17 of the
SUPREME COURT OF THE
STATE OF NEW YORK
COUNTY OF NEW YORK at the
Courthouse, Room 335 , 60 Centre
Street, New York, NY on the 21 st
day of September, 2018

FILED
AND FEE PAID
SEP 18 2018
COUNTY CLERK'S OFFICE
NEW YORK

MS# 12

PRESENT: Hon. ~~Shlomo Hagler, JSC~~ *Shlomo Hagler, JSC*

9197-5904 QUEBEC, INC.,

                              Plaintiff,

- against -

NLG, LLC, a Delaware Limited Liability
Company

                              Defendant

Index No.: 101875/2012

ORDER TO SHOW CAUSE
TO VACATE JUDGMENT
BY CONFESSION

Upon reading and filing the affidavit of ~~NLG~~ *Third Party* creditor, Chris Kosachuk, sworn to on September 18, 2018, with exhibits annexed thereto, and upon all of the pleadings and proceedings heretofore had herein:

*LET*
~~IT IS HEREBY ORDERED~~ that Plaintiff or its attorneys appear and show cause before this Court at IAS Part 17, to be held in and for the County of New York, at the Courthouse, 60 Centre St., Room 335, New York, New York, on the ___ day of ~~October~~ *November*, 2018 at 2:15PM, or as soon thereafter as counsel may be heard, why an Order should not be made and entered: vacating, striking and setting aside with prejudice the filing in the

office of the County Clerk of the City of New York, the Judgment by Confession herein recorded on February 22, 2012 *nunc pro tunc* to date of entry because of the insufficiency of the affidavit of confession and granting such other and further relief which to this Court deems appropriate.

**IT IS HEREBY**:

**ORDERED,** that sufficient cause ~~appearing~~ being alleged therefore, let service of a copy of this Order and the papers on which it is based by email and regular mail service upon counsel for the plaintiff, Vlahadamis & Hillen LLP, 148 E. Montauk Highway, Suite 3, Hampton Bays, New York 11948, to James F. Vlahadamis at, james@vhlawny.com , on or before the 3rd day of October, 2018, be deemed good and sufficient service.

**ORDERED,** that any opposition to this Motion shall be served upon Chris Kosachuk and NLG, LLC, by email and regular mail service on or before the ~~3rd/15th~~ day of October, 2018 and that any reply papers be filed and served 7 days before the return date.

ENTERED:

_____

J.S.C. **SHLOMO HAGLER**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

9197-5904 QUEBEC, INC.,

                                    Plaintiff,

- against -

NLG, LLC, a Delaware Limited Liability
Company

                                    Defendant

Index No.: **101875/2012**

**AFFIDAVIT IN
SUPPORT OF ORDER
TO SHOW CAUSE TO
VACATE JUDGMENT
BY CONFESSION NUNC
PRO TUNC TO DATE OF
ENTRY**

State of New York          )
County of New York         ) ss:

　　　　I, Chris Kosachuk., being duly sworn depose and state that:

　　　　1.　　I am the manager of defendant NLG, LLC (hereinafter "NLG") and a creditor of NLG.  As such, I am fully familiar with the facts of this matter based upon my personal knowledge.

　　　　2.　　I submit this affidavit in support of my Order to Show Cause which seeks to vacate, strike and set aside the Judgment by Confession obtained in the case in 2012, with prejudice, *nunc pro tunc* to date of entry.  The judgment by confession is attached hereto as Exhibit A.

　　　　3.　　NLG filed a motion to vacate the judgment by confession in May of 2014 and it is motion sequence #2.  I incorporate and adopt by reference as if fully rewritten herein the NLG Motion to Vacate.

4.     Creditor ADR Miami filed a motion to vacate the judgment by confession in May of 2015 and it is motion sequence #6.  I incorporate and adopt by reference as if fully rewritten herein the ADR Miami Motion.

5.     Motion Sequence #2 and #6 are both fully briefed and pending before this Court.

6.     This judgment by confession is preventing NLG from foreclosing on its collateral, which is a mansion on Fisher Island worth approximately $10 million.  In turn, NLG is unable to pay me what I am owed.

7.     A complete chronology of the case history can be found in Motion Sequence #9.

8.     The judgment by confession herein is void because it does not comply with CPLR 3218 and should have been rejected by the New York County Clerk.

9.     A void judgment is subject to vacatur at any time.   It is undisputed that NLG never waived these rights and Selective has never argued that the charging order authorized Quebec to consent to a judgment *ex parte* and without due process. See *Fiore v. Oakwood Plaza Shopping Ctr., Inc.*, 78 N.Y.2d 572, 580, 578 N.Y.S.2d 115, 119, 585 N.E.2d 364, 368 (1991) (holding that the enforceability of cognovit judgments [judgments by confession] depend on whether the judgment debtor made a voluntary, knowing and intelligent waiver of the right to notice and an opportunity to be heard.). Here, NLG did not waive

anything and the charging order did not authorize Quebec to dispense with due process. As such, the judgment is void. See, e.g., *E. River Sav. Bank v. Cerullo Motors, Inc.*, 134 Misc. 2d 699, 701, 512 N.Y.S.2d 327, 328 (Cnty. Ct. 1987) (stating that a violation of due process rendered the judgment void). Furthermore, "an attack upon a void judgment may be made at any time, and may even be raised for the first time on an appeal." *Freccia v. Carullo*, 93 A.D.2d 281, 284, 462 N.Y.S.2d 38, 40 (App. Div. 1983). See also *Fid. & Cas. Co. v. Marendino*, 202 A.D. 24, 25, 195 N.Y.S. 667 (App. Div. 1922) (stating that a void judgment may be vacated at any time and a defendant is not required to make the motion within one year after the filing of the judgment).

10.    The affidavit executed and submitted by the plaintiff Quebec, which was executed by Raymond Houle on behalf of the defendant, NLG, did not comply with the New York statute authorizing Judgments by Confession. While the affidavit claimed to be based on a "debt," it was really based on an alleged tort.

11.    Houle was acting for both the plaintiff and the defendant. That alone should raise due process concerns. Selective defended this unusual action by claiming it was authorized by a Pennsylvania charging order. That charging order, however, was fraudulently obtained because it was based on an outstanding judgment against an individual, Chris Kosachuk, **not against NLG**.

12.     Even if the charging order had any validity, under both New York and Pennsylvania law, such an order only authorizes the collection of the amount of the outstanding judgment, here approximately $48,000, but it does not authorize the confession to a judgment more than a hundred times larger

13.     NLG never waived its rights to due process, including service of process, notice and opportunity to be heard. It did not waive improper venue or forum non convenience. The Pennsylvania charging order, even if not fraudulent and not illegal under both New York and Pennsylvania law, never gave Quebec the right to proceed *ex parte*, without service of process and without any due process.

14.     This Judgment by Confession was already thoroughly analyzed by Judge Tarantino with respect to CPLR 3218 and New York case law on judgments by confession.  Judge Tarantino found that the judgment was not valid.  Attached hereto as Exhibit B is the Order entered by Judge Tarantino.

15.     The Tarantino Order is binding on the parties to this case and is dispositive.

16.     Significantly, the Tarantino Order recognized that the Judgment by Confession obtained in this case was not authorized. Judge Tarantino reviewed the proceedings and the affidavit filed in this case that resulted in the Judgment by Confession in relation to the requirements under New York law, CPLR 3218 (a) (2), and the case law.  He then quoted from *Fiore v. Oakwood Plaza Shopping*

*Ctr., Inc.*, 78 N.Y.2d 572, 575, 578 N.Y.S.2d 115, 115-16, 585 N.E.2d 364, 364-65 (1991):

> Judgments by confession, recognized both as "the loosest way of binding a man's property that ever was devised in any civilized country" and as devices that "serve a proper and useful purpose in the commercial world," in this State have been strictly limited by the Legislature.

17.     The *Fiore* case went on to state that Judgments by Confession are limited to contractual provisions employing a security device whereby the obligor consents in advance to the creditor's obtaining a judgment without notice or hearing. But it must be enforced only where the judgment debtor made a voluntary, knowing and intelligent waiver of the right to notice and an opportunity to be heard.

18.     Judge Tarantino ruled that:

> Here, the confession device was not used in the normal situation of a contract action, but in a tort action which is unlikely to have been negotiated in advance. More importantly, the supporting affidavit was made by the petitioner, as the plaintiff therein, acting on behalf of the NLG as the defendant, and it appears that the confessed amount of the judgment is arbitrary. See *Tarantino Order*, p. 3-4.

19.     No previous application for the relief requested herein has been made.

**WHEREFORE**, for all the foregoing reasons, this Court should enter an order:

(a) pursuant to CPLR §3218 and §5015, the order to show cause to vacate the Judgment by Confession brought by creditor, Chris Kosachuk, should be granted in its entirety and plaintiff's judgment by confession should be vacated, stricken and set aside, with prejudice, *nunc pro tunc* to date of entry;

(b) grant NLG other such relief that this Court deems just and equitable.

Dated: September 18, 2018

_____

CHRIS KOSACHUK

Sworn to before me this 18ᵗʰ
day of September, 2018.

_____

Notary Public

KENNETH CARDEZ
Notary Public, State of New York
Reg. No. 04CA6351839
Qualified in New York County
Commission Expires Dec. 12, 2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

9197-5904 QUEBEC, INC.,

                    Plaintiff,

- against -

NLG, LLC, a Delaware Limited Liability
Company

                    Defendant

Index No.:  **101875/2012**

**AFFIDAVIT IN
SUPPORT OF ORDER
TO SHOW CAUSE**

State of Florida          )
County of Miami-Dade      ) ss:

I, Juan Ramirez, Jr., being duly sworn depose and state that:

1.      I am a Third Party Creditor of NLG, LLC (hereinafter "NLG"). I am

fully familiar with the facts of this matter based upon my personal knowledge and

a review of my files.

2.      I submit this affidavit in support of an Order to Show Cause which

seeks to vacate the Judgment by Confession obtained in this case on February 22,

2012, with prejudice, *nunc pro tunc* to date of entry.

3.      I am a creditor of NLG based on attorneys fees and costs that NLG

owes me and my law firm, ADR Miami LLC. ADR Miami LLC, which is solely

owned by me, has assigned its rights to collect those fees and costs to myself. See

attached the Assignment as Exhibit A.

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 2

4.      The outstanding legal fees due from NLG to myself and my LLC exceed $400,000, which NLG is unable to pay because of the Judgment by Confession.

5.      The affidavit executed and submitted by the plaintiff Quebec, that was executed by Raymond Houle on behalf of the defendant, NLG, did not comply with New York law, CPLR 3218 (a) (2), and the case law authorizing Judgments by Confession. While the affidavit claimed to be based on a "debt," it was really based on an alleged tort.

6.      The affidavit signed by Houle stated that it was for "a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process." A second affidavit again claimed the confession of judgment was for a "debt," then set out in greater detail how defendant NLG abused its legal position by filing frivolous litigation, etc.

7.      The original plaintiff, 9197-5904 Quebec, Inc. ("Quebec") assigned the Judgment by Confession to Selective Advisors Group, LLC ("Selective").

8.      Selective filed a Petition for Declaratory Judgment in Suffolk County on March 12, 2015. That filing in Suffolk County resulted in the Tarantino Order. [*See* Exhibit B attached hereto, the "Tarantino Order"]. The Order noted that the petitioner had not served counsel for NLG, who was its lawyer in this action.

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 3

9. The Tarantino Order recognized that the Judgment by Confession obtained in this case was not authorized. Judge Andrew Tarantino reviewed the proceedings and the affidavit filed in this case that resulted in the Judgment by Confession in relation to the requirements under New York law, CPLR 3218 (a) (2), and the case law. He then quoted from *Fiore v. Oakwood Plaza Shopping Ctr., Inc.*, 78 N.Y.2d 572, 575, 578 N.Y.S.2d 115, 115-16, 585 N.E.2d 364, 364-65 (1991):

> Judgments by confession, recognized both as "the loosest way of binding a man's property that ever was devised in any civilized country" and as devices that "serve a proper and useful purpose in the commercial world," in this State have been strictly limited by the Legislature.

10. The *Fiore* case went on to state that Judgments by Confession are limited to contractual provisions employing a security device whereby the obligor consents in advance to the creditor's obtaining a judgment without notice or hearing. But it must be enforced only where the judgment debtor made a voluntary, knowing and intelligent waiver of the right to notice and an opportunity to be heard.

Judge Tarantino ruled that:

> Here, the confession device was not used in the normal situation of a contract action, but in a tort action which is unlikely to have been negotiated in advance. More importantly, the supporting affidavit was

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 4

made by the petitioner, as the plaintiff therein, acting on behalf of the NLG as the defendant, and it appears that the confessed amount of the judgment is arbitrary. See *Tarantino Order*, p. 3-4.

11.     In addition, the Judgment by Confession is void *ab initio* as it violated the due process clause of the United States Constitution. In prior filings in this case, Selective has admitted that Houle was acting for both the plaintiff and the defendant when the Judgment by Confession was entered by the Clerk of the Court, in the amount of $5,000,225.00.

12.     Selective never served NLG with process, did not notify NLG of the action and NLG has no opportunity to defend.

13.     Selective has taken the position in this case that Houle was authorized to act for NLG based on a charging order Quebec obtained in Pennsylvania. That is the sole basis asserted for dispensing with NLG's rights to due process. The charging order, however, was fraudulently obtained because it was based a 2007 New York Judgment referred to as the Lorret Judgment in prior filings with this Court.

14.     The Lorret Judgment was **only** against an individual, Chris Kosachuk, **not against NLG**. NLG received no notice of the Pennsylvania action before the charging order was entered. Thus, Houle, Quebec and their lawyer were able to deceive the Pennsylvania court into thinking the judgment was against both

4

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 5

Kosachuk **and NLG**. Houle, Quebec and their lawyer never sought to pierce NLG's corporate veil.

15.    On May 1, 2012, Judge Edward Griffith of the Chester County, Penn. Civil Court, vacated both the Judgment entered against NLG and vacated the Charging Order. (Judge Griffith's Order is attached hereto as Exhibit C).

16.    In a long footnote, Judge Edwards detailed the Pennsylvania proceedings, including how Houle's affidavit misleadingly claimed the Lorret Judgment was against both Kosachuk and NLG, when he knew or should have known that the New York judgment was only against Kosachuk. In his affidavit, Houle failed to provide the last known address for NLG.

17.    Judge Griffith also noted that the charging order gave Houle all economic and management rights even though, "[w]ith reference to NLG, there was no judgment from New York to domesticate." *Id*. p. 3. He also observed that the notice was insufficient because Quebec had used an address "least likely to provide actual notice." Finally, Judge Griffith explained that the charging order had erroneously allowed Quebec to seize the entire LLC, instead of the member's economic benefits, as allowed by Pennsylvania law.

18.    As Judge Griffith recognized, no charging order should have ever issued against NLG. Furthermore, the Pennsylvania Charging Order never gave

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 6

Quebec the right to confess to a judgment. It did not authorize Quebec to file a separate action in another state, *ex parte*, without service of process, or any type of notice to NLG or Kosachuk. It did not waive NLG's rights to challenge venue, forum non conveniens, or the merits of the case.

19.    The Charging Order itself cited to 15 Pa. C.S.A. § 8924, but this statute, like New York law, only granted the right "to receive the distributions and the return of contributions to which that member would otherwise be entitled." It did not authorize turning the $48,293.54 judgment into a $5 million Judgment by Confession. The statute only authorized the collection of the $48,293.54 judgment from distributions of NLG, if any.

20.    Selective has stymied ADR Miami LLC's previous attempt to vacate the Judgment by Confession by filing for bankruptcy.

21.    On September 3, 2015, Selective filed a Satisfaction of Judgment without receiving any consideration and without offering any explanation. The Satisfaction filed with this Court specifically stated that the "judgment has been paid in full (Plaintiff has accepted a partial payment that is hereby deemed as payment in full satisfaction of the judgment) on September 1, 2015 and the amount of $0.00 remains unpaid." See Exhibit D.

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 7

22. Selective has admitted that NLG paid nothing for the satisfaction [Attached hereto as Exhibit E is a motion wherein Selective admits that NLG never paid the judgment by confession].

23. Under *Cach, LLC v. Ryan*, 158 A.D.3d 1193, 71 N.Y.S.3d 237 (App. Div. 2018), a motion to vacate is proper even though the judgment has been satisfied. There the defendant had moved to vacate a default judgment on the ground that the court that rendered the judgment lacked personal jurisdiction over the defendant.

24. In *Cach*, like here, plaintiff Quebec never served NLG, never notified NLG, and relied solely on its fraudulently-obtained charging order. Thus, this Court also lacked personal jurisdiction over NLG.

25. The *Cach* opinion stated:

Where, as here, a defendant moves to vacate a default judgment on the ground that the court that rendered the judgment lacked personal jurisdiction over the defendant (*see* CPLR 5015 [a] [4]), a finding in favor of the defendant would mean that the judgment was "a nullity" (*Royal Zenith Corp. v Continental Ins. Co.*, 63 NY2d 975, 977, 473 N.E.2d 243, 483 N.Y.S.2d 993 [1984]; *see Empire of Am. Realty Credit Corp. v Smith*, 227 AD2d 931, 932, 643 N.Y.S.2d 246 [4th Dept 1996]). It necessarily follows that, "if a judgment is a nullity, it never legally existed so as to become extinguished by payment" (*Citibank [S.D.] v Farmer*, 166 Misc 2d 145, 146, 631 N.Y.S.2d 800 [Mount Vernon City Ct 1995]). Plaintiff cites various cases for the proposition that "[a] judgment which is paid and satisfied of record ceases to have any existence since a defendant, by paying the

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 8

amount due, extinguishes the judgment and the obligation thereunder," thereby depriving a court of jurisdiction to vacate the judgment (*H. D. I. Diamonds v Frederick Modell, Inc.*, 86 AD2d 561, 561, 446 N.Y.S.2d 283 [1st Dept 1982], *appeal dismissed* 56 NY2d 645 [1982]; *see Delahanty v Anderson*, 161 AD2d 1164, 1165, 556 N.Y.S.2d 423, 556 N.Y.S.2d 503 [4th Dept 1990]). Those cases, however, are not applicable where, as here, a defendant disputes whether the court that rendered the judgment lacked personal jurisdiction over the defendant in the first instance (*see Citibank [S.D.]*, 166 Misc 2d at 146).

In addition, inasmuch as plaintiff levied the judgment amount with interest by a property execution on defendant's bank account, we conclude that defendant did not voluntarily pay and satisfy the judgment (*cf. Delahanty*, 161 AD2d at 1165; *H. D. I. Diamonds*, 86 AD2d at 561). Thus, it cannot be said that she waived the defense of lack of personal jurisdiction (*see Cadlerock Joint Venture, L.P. v Kierstedt*, 119 AD3d 627, 628, 990 N.Y.S.2d 522 [2d Dept 2014]; *cf. Cach, LLC v Anderson*, 48 Misc 3d 136[A], 26 N.Y.S.3d 212, 2015 NY Slip Op 51132[U], *1 [2d Dept App Term 2015]).

*Cach*, *supra*, 158 A.D.3d at 1193-94, 71 N.Y.S.3d at 239.

26.     Likewise here, NLG paid nothing towards the unilateral satisfaction filed by Selective and NLG is claiming Quebec never acquired jurisdiction over it prior to having the Clerk of the Court enter the Judgment by Confession.

27.     No previous application for the relief requested herein has been made.

**WHEREFORE**, for all the foregoing reasons, this Court should enter an order to show cause why, under CPLR §3218 and §5015, the relief requested by Juan Ramirez, Jr., should not be granted in its entirety and plaintiff's confessed

Index No.: 101875/2012
Affidavit of Juan Ramirez, Jr.
Page 9

judgment should be vacated, stricken and set aside, with prejudice, *nunc pro tunc* to date of entry; and grant such other such relief that this Court deems just and equitable.

Dated: September 21, 2018

_____
JUAN RAMIREZ, JR.

Sworn to before me this 21st
day of September, 2018.

_____
Notary Public

## CERTIFICATE OF CONFORMITY

The undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the State of Florida and is a resident of the State of Florida, that he/she makes this affidavit in accordance with requirements of the Clerk of the County of New York pertaining to the acknowledgment of the proof of the Affidavit of Juan Ramirez, Jr., to be filed in the Supreme Court, New York County; that the foregoing acknowledgment of Juan Ramirez, Jr. named in the foregoing instrument taken before CLAUDIA DE LA OSA, a Notary in the State of Florida, being the state in which it was taken, and based upon my review thereof, appears to conform with the law of the State of Florida as to the purpose for which it is submitted and filed.

Dated: Sept. 21, 2018

_____ Bar No. #3566
Attorney    Alexis Hernandez - Bar #113566

Sworn to before me this
21st day of September, 2018

_____
Notary Public



9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                Chapter 11
_____/

### SECURED CREDITOR NLG, LLG'S OPPOSITION RESPONSE TO THE MOTIONS FOR CONTEMPT [ECF NOS. 742, 747 & 748]

Secured Creditor, NLG, LLC ("NLG"), and its manager, Chris Kosachuk, through undersigned counsel, and Juan Ramirez, Jr., pro se, hereby file this Response to Debtor's Motions for Contempt [ECF Nos. 742, 747 and 748]. In support, NLG states:

Liza Hazan (the "Debtor") filed her Chapter 11 Petition 33 months ago, on January 11, 2016, the day before Circuit Judge Monica Gordo set a foreclosure sale of her Fisher Island Property motivated by NLG's Final Judgment of Foreclosure and pending foreclosure sale.

In the thirty-three months which have passed since the petition date, the Debtor has lived in the foreclosed property without making any payments towards mortgages, real estate taxes or homeowner's association fees. The Debtor is living for free in a multi-million dollar mansion in Fisher Island at the expense of her creditors. This Court should not allow this unjust situation to continue.

Hazan has filed three motions for contempt [ECF 742, 747 and 748] alleging that that NLG, its manager, Chris Kosachuk, and Juan Ramirez, Jr., have all violated the automatic stay of 11 U.S.C. § 362 and this Court Order Confirming Plan of Reorganization entered on June 12, 2018.

On November 29, 2016, this Court entered an Order Granting JP Morgan Chase Bank N.A.'s Motion for Relief from Stay [ECF No. 315]. In it, all parties to the foreclosure action,

including NLG, were "granted relief from the automatic stay to litigate the foreclosure claim of Chase in the Foreclosure Action to the point of judgment, but not to conduct a foreclosure sale of the Property".

On November 1, 2017, this Court entered a Final Judgment in favor of Hazan in violation of *Rooker-Feldman*, a doctrine this Court's judgment totally ignored. That decision was promptly appealed, but because the final judgment did not certify that it was immediately appealable, the appeal was dismissed. When this Court corrected that error, on October 17, 2018, NLG again filed another prompt appeal, now pending in Case No. 18-cv-24272-FAM. To expedite a resolution, NLG filed its Initial Brief three days later. In addition, on October 22, 2018, NLG filed a Motion to Expedite Briefing Schedule, as well as a Motion for Stay of Final Judgment Pending Appeal.

This Court's Order Confirming Plan of Reorganization has also been appealed by NLG under Case No. 18-cv-22564-DPG, because the Plan is nothing but a fantasy. *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) quotes from 5 *Collier on Bankruptcy* para. 1129.02 [11] at 1129-34 (15th ed. 1984) for the following: "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *See also In re Trail's End Lodge,* 54 Bankr. 898, 903-904 (Bankr. D. Vt. 1985) (stating that "the Code requires the court to prevent confirmation of visionary schemes which promise creditors more under a proposed plan that which the debtor can possibly attain after confirmation").

The only proposal the plan makes is to pay creditors "from sources of payment, such as equity in properties and future income." [ECF No. 562 p. 70 and 112]. The Disclosure Statement

does not explain how the Debtor will have enough cash to pay all the claims and expenses and refers to Exhibits C and D. [ECF No. 562-3 and 562-4]. Exhibit C shows only $20,178 as "Cash in Debtor's account now." It then claims she will accumulate $45,000 more before the effective date of the Plan, a goal which was not achieved.

The Debtor's last monthly statement filed before the confirmation hearing reported that **her earnings for** those **three months was $4,500**. [ECF No. 668, p. 3] and her cash balance had actually gone down to $17,393.83 [*Id.* p. 2]. For someone trying to keep up with the Joneses in Fisher Island, her financial wherewithal is woefully lacking.

Exhibit D was the spreadsheet which was even more unrealistic, projecting a yearly income of $810,000 [ECF No. 562-4].

The Confirmation Order simply rubber-stamped the Debtor's proposed order, stating in conclusory fashion: "The Plan and Disclosure Statement were accompanied by projections that support the financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11 U.S.C. §1129(a)(11) are satisfied.

Debtor relies on the equity of the Fisher Island Property, but in fact has none. The Disclosure Statement listed the Fisher Island Property which was the subject of the NLG Foreclosure Judgment. It lists the value at $12 million but the Debtor's own appraisal concluded that the market value based on comparable sales was $9,500,000.00. [ECF No. 81-1]. There is no record support for the $2,500,000 higher valuation.

The Property is subject to a mortgage from J.P. Morgan Chase, which is the subject of a pending foreclosure action in the state court and which the Debtor listed as having a balance of $5,200,000 on February 10, 2016. The Debtor does not disclose the amount currently owed.

In addition, NLG's Foreclosure Judgment, with post-judgment interest, has a current balance of over $6 million. As long as the appeal of this Court's order is pending, Hazan cannot count of any of that alleged equity. Debtor has been doing everything in her power to delay a decision on the merits of the appeal while trying to rush the bankruptcy to a conclusion.

The Debtor will be unable to sell the property or refinance it because of her pending bankruptcy and her poor credit history.

In *Sherman v. Harbin (In re Harbin)*, 486 F.3d 510, 518 (9th Cir. 2007), the Court stated that, "[u]nder *Pizza of Hawaii*, a bankruptcy court cannot adequately determine a plan's feasibility for purposes of section 1129(a)(11) without evaluating whether a potential future judgment may affect the debtor's ability to implement its plan. *Id.* A bankruptcy court's failure to consider such a possibility in discharging its duties under section 1129(a)(11) is clear error. *Id.*; *see also Brutoco Eng'g & Constr. Co. v. Dennis Ponte, Inc.* (*In re Dennis Ponte, Inc.*), 61 B.R. 296, 300 (B.A.P. 9th Cir. 1986).

Here, neither the Debtor nor the bankruptcy court evaluated the potential that the reversal of the November 1, 2017 Final Judgment would have in the future implementation of the plan. Indeed the Debtor does not even mention the pending appeal of this judgment in the Disclosure Statement and Plan.

Hazan's Answer Brief in the appeal of the confirmation order is due on October 29, 2018, but her counsel is already asking for consent on a motion for extension of time.

While seeking delay at every turn, of the adversary proceeding and the confirmation order, Hazan is seeking to intimidate NLG, Kosachuk and Ramirez with motions for contempt.

NLG, Kosachuk and Ramirez have not taken any actions that would violate the automatic stay.

Hazan first complains about a Notice of Lis Pendens filed by NLG on August 9, 2018. The notice simply puts the world on notice that NLG has filed a cross-claim in the JPMorgan Chase litigation for which both Chase and NLG were given relief from the bankruptcy stay. That order allowed NLG "to litigate the foreclosure claim of Chase in the Foreclosure Action to the point of judgment, but not to conduct a foreclosure sale of the Property". NLG is not seeking to conduct a foreclosure sale. If NLG had not filed a cross-claim when it filed an answer to Chase's complaint it could be deemed to constitute a waiver. NLG is currently owed over $6 million. It is not willing to waive anything.

The Confirmation Order did not rescind the prior order granting stay relief.

The motions for contempt also seek to enjoin NLG, Kosachuk and Ramirez from continuing to prosecute two actions seeking to vacate the fraudulent Judgment by Confession (referred to by this Court as the Quebec Judgment).

Anyone looking at this Judgment by Confession can readily see its phony. Raymond Houle, Quebec's president, acting for the plaintiff, also executed an affidavit confessing judgment in the amount of $5,000,225.00 for a "debt." This alleged debt, however, was based on "fraud and abuse of process". The plaintiff never served defendant with process and never provided NLG with notice or opportunity to be heard.

NLG has been trying to have its motion to vacate heard by the New York court since 2014, but Selective has continuously delayed the matter. One delay was caused when Selective filed for bankruptcy. Another was when Selective declared its judgment by confession had been satisfied. Nonetheless, after that, Selective successfully persuaded this Court to offset the entire amount of the sham $5 million judgment by confession against NLG's legitimate Foreclosure Judgment.

Now Selective is seeking this Court to order NLG, Kosachuk and Ramirez to withdraw all pending motions, Orders to Show Cause or other pleadings in the New York action—this despite the fact that Hazan is not a party to that case. The only party is Selective. Although owned by Hazan's husband, Hazan has never claimed any ownership interest in Selective and has never listed any ownership interest in Selective in any bankruptcy filing for the last three years.

It is a black letter bankruptcy principle that §362(a) does not create a general, automatic stay of a creditor's right to assert claims against non-debtor parties who are related to the debtor in some fashion. See, e.g., *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir.1991) ("the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor"); accord *Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry and Expert Restorations*, 140 F.3d 661, 666 (7th Cir.1998); *Winters By and Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996); *In re Gronczewski*, 444 B.R. 526, 530 (Bankr. E.D. Pa. 2011). [T]he stay must, in some sense, be "earned" by the beneficiary of the stay submitting to the invasive authority of the bankruptcy court into his private financial life . . .[thus] assur[ing] a comprehensive commitment of the beneficiary's assets to the satisfaction of his obligations, a fundamental aspect of the debtor/creditor readjustment process that justifies the extraordinary effect of a stay of creditor pursuit of self-interest."

Selective has never submitted itself to the invasive authority of the bankruptcy court as a debtor. It is thus not entitled to its protections. 11 U.S.C. § 362(a) covers the debtor and the property of the debtor. Neither one is at issue in the N.Y. case or in the efforts to vacate the N.Y. judgment. The pertinent part of the statute is:

(2) the enforcement, **against the debtor or against property of the estate**, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of **property of the estate** or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce **any lien against property of the estate**;

(5) any act to create, perfect, or enforce **against property of the debtor** any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover **a claim against the debtor** that arose before the commencement of the case under this title…

The automatic stay is a statutory right of **the debtor**, not the debtor's husband, not the debtor's husband's company. *In re Brooks,* 871 F.2d 89, 90 (9th Cir. 1989), involving a husband and wife, the court found that the wife had no standing to challenge a deed of trust on the grounds that it was recorded after the husband's bankruptcy petition where the wife had not filed a petition nor had she joined in the husband's petition.

The motion also seeks a dismissal of Case No. 18-cv-21398-JEM, which was filed in response to Selective's argument in New York that the only way NLG could challenge the validity of the N. Y. Judgment by Confession was through plenary action. It is a Complaint seeking declaratory relief. Because of diversity jurisdiction, the case in front of District Judge Martinez is such a plenary action.

NLG commenced the action for declaratory relief on April 10, 2018. Selective filed a Motion to Dismiss on June 7, 2018. In it, Selective never raised the issue of any bankruptcy stay. The Order Confirming Hazan's Plan was granted on June 12, 2018. On October 1, 2018, Selective filed its Response to NLG's Motion for Summary Judgment and Cross-Motion for Summary Judgment. In it, Selective never raised the issue of any bankruptcy stay nor that the confirmation plan enjoined NLG from continuing to prosecute its declaratory action. The idea

that Selective is now asking this Court to dismiss a case pending in front of a district court judge is nothing short of ludicrous.

The motions for contempt are frivolous and intended to frustrate NLG's right to appeal, to intimidate NLG's manager and its attorneys from pursuing NLG's rights. This Court, under Rule 11 F.R.C.P. and Rule 9011 of the F.R.B.P., should sanction counsel for having to defend the frivolous motions for sanction.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should deny the three Motions for Contempt and grant sanctions against Selective and its attorneys, and such other and further relief as the Court deems appropriate.

Dated October 22, 2018

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 22nd day of October, 2018.  I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

**Attorneys for Appellant NLG, LLC**

Juan Ramirez, Jr.
ADR Miami LLC
Florida Bar No. 201952
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr.. Esq. on behalf of Secured Creditor, NLG, LLC
jr@adrmiami.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In Re:

LIZA HAZAN a/k/a ELIZABETH HAZAN,     Case No. 16-10389-AJC
                                          Chapter 11

       Debtor,

_____/

## <u>NOTICE OF FILING</u>

Selective Advisors Group, LLC gives notice of filing the attached:

1.      Order Denying Plaintiff's Emergency Motion for Temporary Restraining Order [D.E. 57]
        Case Style: NLG, LLC v. Selective Advisors Group, LLC
        Case No. 18-21398-CIV-MARTINEZ-OTAZO-REYES

                           Respectfully submitted,

                           **MARSHALL SOCARRAS GRANT, P.L.**
                           *Attorneys for Creditor,*
                           *Selective Advisors Group, LLC*
                           197 South Federal Highway, Suite 200
                           Boca Raton, Florida  33432
                           Telephone No. 561.361.1000
                           Facsimile No. 561.672.7581
                           Email: jgrant@msglaw.com

                           By:   */s/ Joe M. Grant*
                               JOE M. GRANT
                               Florida Bar No. 137758

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of October, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By: */s/ Joe M. Grant*
JOE M. GRANT

## SERVICE LIST

**16-10389-AJC Notice will be electronically mailed to:**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.;
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.; aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com, nsocorro@ecclegal.com; bankruptcy@ecclegal.com;
bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association; adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC; bkfl@albertellilaw.com

Michael A Friedman on behalf of Creditor NLG, LLC; mfriedman@gjb-law.com, gjbecf@gjb-law.com; jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium mortman@furrcohen.com, atty_furrcohen@bluestylus.com

Astrid Gabbe on behalf of Creditor NLG, LLC; astridgabbe@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.; robert.gusrae@gmail.com

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc. dhaber@dhaberlaw.com, ngomez@dhaberlaw.com; rcasamayor@dhaberlaw.com; dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Debtor Liza Hazan; dave@flalawyer.com, emily@flalawyer.com; monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan; tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLCl; bkcmiami@gmail.com

Office of the US Trustee; USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.; Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association spowrozek@logs.com, electronicbankruptcynotices@logs.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. kkorey@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Daniel A. Bushell, Esquire on behalf of Debtor; dan@bushellappellatelaw.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
**Case Number: 18-21398-CIV-MARTINEZ-OTAZO-REYES**

NLG, LLC,
      Plaintiff,

vs.

SELECTIVE ADVISORS GROUP, LLC,
      Defendant.
_____/

## ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

THIS CAUSE is before the Court on Plaintiff's Emergency Motion for Restraining Order, asking the undersigned to prevent the Honorable A. Jay Cristol, United States Bankruptcy Judge, from conducting a contempt hearing scheduled for tomorrow October 24, 2018 at 2:00 P.M.

This case arises out of a Complaint for Declaratory Judgment, seeking to vacate, strike and set aside a fraudulently obtained Judgement by Confession, *nunc pro* tunc to date of entry. In its Motion, Plaintiff states that a Debtor in Bankruptcy, who is married to the manager of Defendant in this case, filed a Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages and Punitive Damages on the basis that Plaintiff and its counsel filed this action in violation of the automatic stay of 11 U.S.C § 362. Bankruptcy Judge A. Jay Cristol has scheduled a hearing on the Debtor's Motion for tomorrow, October 24, 2018 at 2:00 P.M.

Plaintiff filed the instant Motion at 3:25 P.M., on the eve of the hearing, asking the undersigned to prevent tomorrow's hearing from going forward. Plaintiff cited to no case law, nor is this Court aware of any authority, allowing this Court to provide Plaintiff with the relief

requested. The Court having considered the Motion, finding there to be no good cause as stated therein, and being otherwise duly advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that:

The Motion [ECF No. 55] is **DENIED without prejudice**.

DONE AND ORDERED in Chambers at Miami, Florida, this 24 day of October, 2018.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record

Page 1

1                 UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF FLORIDA
2

3                             Case No.:  16-10389-AJC
4    In re:
     LIZA HAZAN, a/k/a ELIZABETH HAZAN,
5          Debtor.
     _____/
6    LIZA HAZAN, a/k/a ELIZABETH HAZAN,
     and SELECTIVE ADVISORS GROUP, LLC,
7          Plaintiffs,
     vs.                        Adv. No.:  16-01439-AJC
8    NLG, LLC, a Delaware limited
     liability company,
9          Defendant.
     _____/
10   NLG, LLC, a Delaware limited
     liability company,
11         Counterclaim Plaintiff,
     vs.
12   SELECTIVE ADVISORS GROUP, LLC, and
     LIZA HAZAN, a/k/a ELIZABETH HAZAN,
13         Counterclaim Defendants.
     _____/
14

15              ECF # 335, 713, 742, 748, 752
16                     October 24, 2018
17           The above-entitled cause came on for
18   hearing before the HONORABLE A. JAY CRISTOL, one of
19   the Judges of the UNITED STATES BANKRUPTCY COURT, in
20   and for the SOUTHERN DISTRICT OF FLORIDA, at 301 N.
21   Miami Avenue, Miami, Miami-Dade County, Florida, on
22   Wednesday, October 24, 2018, commencing at or about
23   2:10 p.m., and the following proceedings were had:
24

             Transcribed from a digital recording by:
25               Helayne Wills, Court Reporter

Page 2

```
 1   APPEARANCES:
 2        MARSHALL SOCARRAS GRANT, P.L., by
          JOE M. GRANT, ESQ.,
 3        on behalf of Selective Advisors Group
 4
          ADR MIAMI, LLC, by
 5        JUAN RAMIREZ, JR., ESQ.,
          on behalf of NLG, LLC
 6
 7        JOEL M. ARESTY, P.A., by
          JOEL ARESTY, ESQ.,
 8        and
          AARONSON SCHANTZ BEILEY, P.A., by
 9        GEOFFREY S. AARONSON, ESQ.,
          on behalf of Liza Hazan
10
11        BUSHELL APPELLATE LAW, by
          DANIEL A. BUSHELL, ESQ.,
12        on behalf of Liza Hazan and Selective Advisors
          Group
13
14        OFFICE OF THE UNITED STATES TRUSTEE, by
          JOHANNA P. ARMENGOL, ESQ.,
15        on behalf of the U.S. Trustee
16
          ALSO PRESENT:
17        ECRO - Electronic Court Reporting Operator
18
19
20
21
22
23
24
25
```

Page 3

```
 1          THE COURT:  Next is Selective Advisors
 2   Group.  Appearances.
 3          MR. RAMIREZ:  Good afternoon, Judge.  Juan
 4   Ramirez on behalf of NLG, LLC.
 5          MR. AARONSON:  Good afternoon, Judge.
 6          THE COURT:  Pardon me.  Mr. Ramirez, for
 7   our electronic recorder we need to have you spell
 8   your last name.
 9          MR. RAMIREZ:  I'm sorry.  R-A-M-I-R-E-Z.
10          THE COURT:  Very well.  Next.
11          MR. AARONSON:  Good afternoon, Judge.
12   Geoffrey Aaronson, A-A-R-O-N-S-O-N, appearing as
13   requested by Ms. Hazan for the hearings today, Your
14   Honor, on behalf of Ms. Hazan.
15          THE COURT:  Well, isn't she represented by
16   another attorney?
17          MR. AARONSON:  She has other counsel here,
18   Judge, but she asked me if I would take a stab at
19   arguing these matters before Your Honor.  I
20   appreciate the Court's indulgence.
21          THE COURT:  Very well.  All right.
22          Who's next?
23          MR. ARESTY:  Judge, in alphabetical order,
24   Joel Aresty, A-R-E-S-T-Y.  I represent Liza Hazan in
25   these cases.
```

Page 4

```
 1              MR. BUSHELL:  Good afternoon, Judge.
 2   Daniel Bushell, B-U-S-H-E-L-L, on behalf of
 3   Ms. Hazan and Selective Advisors.
 4              MR. GRANT:  Your Honor, Joe Grant,
 5   G-R-A-N-T, on behalf of Selective Advisors.
 6              MR. AARONSON:  If I may, Your Honor, there
 7   are three matters --
 8              THE COURT:  Is that everybody in here?
 9   Okay.  It looks like one side has the other side
10   outnumbered.
11              Is that the title in the matter or do we
12   have to hear more?
13              MR. AARONSON:  I don't think there's
14   anyone else involved in this.
15              THE COURT:  All right.
16              MR. AARONSON:  So, Judge, there are three
17   matters on before the Court, and my suggestion is,
18   we do them in some sort of logical order.
19              The first I would suggest we hear is the
20   discharge matter.  Your Honor has already entered an
21   order in that regard, and I'd like to finalize that.
22   The next is the motion for stay, and the last is the
23   motion for contempt and sanctions.  I'm suggesting
24   that order, because probably in order of complicity
25   we could get the earlier ones done quickly.
```

Page 5

```
 1            THE COURT:  Anyone have any objection to
 2    that procedure?  Mr. Ramirez.
 3            MR. RAMIREZ:  Judge, I think your calendar
 4    reflected that the motion for stay would be first,
 5    and then the motion for --
 6            THE COURT:  Okay.  The motion for stay
 7    we'll take it first.  Denied.  This is an order that
 8    was entered in 2017.  Stay was denied then, and it's
 9    a little late to come in a year later and --
10            MR. RAMIREZ:  Judge, you just certified
11    the appellate rights of NLG on the 11th of October.
12    So it is not untimely.  We have made our argument.
13            THE COURT:  You need to speak into the
14    microphone, Mr. Ramirez.
15            MR. RAMIREZ:  Judge, we had made a motion
16    for stay, but then the matter was dismissed.  Now we
17    have a new appeal now that the Court certified the
18    order as appealable on October 11th of this month.
19            We would have had a decision by now on the
20    appeal if my opponents hadn't been changing their
21    position, first saying the order was final and they
22    were arguing that the case or the appeal should be
23    dismissed, because the receiver had not filed the
24    appeal.  When we got that problem taken care of by
25    vacating the receivership appointment nunc pro tunc
```

Page 6

```
 1   and the appeal was reinstated, then the Judge

 2   dismissed it, because it hadn't been certified.

 3          They have delayed our appeal while trying

 4   to proceed as expeditiously as possible with the

 5   confirmation and discharge in order to try to

 6   prevent this from having our appellate rights

 7   decided.  I think it's important that, Judge, we

 8   have a right to appeal.

 9          THE COURT:  We granted the motion making

10   it a final order that's appealable.  I still believe

11   it's a little too late.  However, you're free to

12   apply to the Appellate Court for a stay.  If they

13   think that it's appropriate you'll get it there, but

14   I think it's too late here.

15          MR. RAMIREZ:  Thank you, Judge.

16          MR. AARONSON:  Judge, he already did.  He

17   already applied to Judge Moreno, and today Judge

18   Moreno denied his request for stay.

19          THE COURT:  Well then, I guess there's no

20   stay.

21          MR. RAMIREZ:  Just to be clear, Judge, he

22   denied the first request, but we had amended that

23   motion, and we should have withdrawn the first

24   motion, but that second motion has not been ruled

25   upon.
```

Page 7

 1              THE COURT:  I see.  Well, good luck.

 2              And so you're going to draw the order on

 3    the stay pending appeal, Mr. Aaronson?

 4              MR. AARONSON:  Yes, Judge.

 5              THE COURT:  All right.

 6              MR. AARONSON:  So, if I may address the

 7    discharge.  Give me a moment here, Judge.

 8              THE COURT:  Well, I have a problem with

 9    the discharge.  There are four or five counts

10    pending --

11              MR. AARONSON:  Yes.

12              THE COURT:  -- that have nothing to do

13    with bankruptcy.  Is it the debtor's intention to

14    pursue them?  I don't know what --

15              MR. AARONSON:  No.  And I'm here to

16    announce to the Court that the debtor is today going

17    to withdraw those counts.  As clearly suggested or

18    implied by the Court, I understand that those counts

19    would be a hindrance to the discharge and closing

20    the case.

21              We are going to withdraw those counts,

22    each party to bear their own costs and attorney's

23    fees in connection with that matter.  We would then

24    go forward as suggested by the Court to seek

25    discharge, closing the case.

1    THE COURT:  Oh, pardon me.  All right.  Go

2  ahead.  Anyone else wish to be heard?

3    MR. RAMIREZ:  Judge, these five counts --

4    THE COURT:  Is it five or six?  I forgot

5  how many.

6    MR. RAMIREZ:  Six.

7    THE COURT:  Six.

8    MR. RAMIREZ:  These counts were precisely

9  the reason we have been stymied in our right to

10  appeal.  Now they announce, after they derived all

11  the benefit they could from that delay, now today

12  they announce that they're going to withdraw those

13  counts.

14    Judge, we, of course, will accept the

15  dismissal but I want the Court to be aware that

16  those counts were there just to throw interference,

17  just to make it difficult for us to proceed with our

18  appeal.  And now they want to proceed more than a

19  year later with a discharge, where we have for

20  almost a year been stymied in our right to appeal.

21    THE COURT:  Anything further?  Then in

22  connection with the withdrawal of those, I --

23    MR. AARONSON:  Your Honor has already

24  heard on these.  I think Mr. Pugatch brought it

25  before the Court, the fact of the compliance with

Page 9

```
 1    the plan, the payment to creditors.
 2              THE COURT:  Well, those counts were the
 3    only thing holding up the discharge, so has
 4    something been filed that removes them, or do we
 5    need to --
 6              MR. AARONSON:  We're going to file it
 7    today, Judge.  We'll file it right after this
 8    hearing.
 9              THE COURT:  So you're going to file an
10    order withdrawing all six of those counts, and
11    therefore, now we're talking about discharge, it
12    seems like there's nothing left in the case to
13    prevent the discharge, so it appears to be entered.
14              MR. AARONSON:  Correct.
15              THE COURT:  Anyone else wish to be heard?
16              MR. RAMIREZ:  Yes, Judge.
17              MR. AARONSON:  Before Mr. Ramirez stands
18    up again, this Court has ruled on innumerable
19    occasions that NLG is not a creditor, and has no
20    claims against the debtor in this case.  So I don't
21    mind Mr. Ramirez talking, and I'm sure the Court --
22              THE COURT:  It's always a pleasure to hear
23    him talk.  He's a very eloquent speaker.
24              MR. AARONSON:  It's always a pleasure, and
25    I'm happy to hear him speak, but I don't know who --
```

1  I don't know why he has standing to participate in

2  this case.

3          THE COURT:  Well, when he speaks, when he

4  finishes, you can respond and may perhaps raise that

5  point if appropriate.

6          MR. AARONSON:  Thank you.

7          THE COURT:  Mr. Ramirez, you wish to be

8  heard.

9          MR. RAMIREZ:  Judge, first of all, your

10 order making us lose our standing is on appeal.  The

11 confirmation order is also on appeal.  In fact, they

12 filed today a motion for extension of time to file a

13 brief on that appeal.  So again, it's a pattern of

14 delaying when we're trying to assert our rights,

15 while trying to rush through and get a discharge.

16         Judge, while I may or may not have

17 standing, I think the Court has an independent duty

18 to review these confirmation plans before they're

19 approved, and exercise independent judgment as to

20 them.  And they have not, in fact, complied with

21 completion of all payments under the plan, and

22 that's required under the statute.

23         They have to pay us as unsecured

24 creditors, and they have not.  This JMB/Urban, where

25 they settled a case from over $600,000 to a hundred

```
 1   and some thousand dollars, and they were supposed to

 2   pay them in July, they have defaulted on that

 3   payment.  They have numerous creditors they have not

 4   paid, but just -- I don't need to show a lot of

 5   them, I just need to show one, and they have not

 6   paid that one creditor.

 7          They have also in their plan not

 8   considered the possibility of reversal of your

 9   judgment wiping out our second mortgage, which at

10   this point without over a $6 million balance.  If

11   that is reversed, how are they going to meet their

12   obligations under the plan?  They have not addressed

13   that, and they have not, in fact, complied with the

14   statute and with the confirmation plan itself.  They

15   were supposed to meet certain obligations in that

16   time and they have not done so.

17          THE COURT:  Thank you, Mr. Ramirez.

18          Does the United States Trustee have a

19   position?

20          MS. ARMENGOL:  Thank you, Your Honor.

21          Mr. Ramirez is correct in that the statute

22   provides that discharge for an individual in a

23   Chapter 11 could only happen if all unsecured plan

24   payments have been made.  I was under the impression

25   that they have been made.  I'm not sure what --
```

Page 12

1          THE COURT:  I thought so also, but let's

2    find out.

3          What about it, Mr. Aaronson?

4          MR. AARONSON:  Your Honor, my

5    understanding is JMB has agreed to the discharge and

6    to close this case.

7          THE COURT:  Who is JMB?

8          MR. AARONSON:  That is the creditor that

9    they're referring to.

10          THE COURT:  Are they represented here

11    today?

12          MR. AARONSON:  They are not represented.

13    They agreed to the closing of this case and to the

14    discharge, because under their settlement they are

15    not getting a discharge, and we have a separate

16    agreement with them to pay them over a period of

17    time.  We're not discharged of that debt.  That is

18    not part of this case.

19          It's an agreement.  I believe it was

20    approved by the Court.

21          THE COURT:  Is it of record?

22          MR. RAMIREZ:  Judge, this is news to me.

23          MR. ARESTY:  There was a settlement

24    agreement.  I don't have the docket number, but

25    early in the case, Judge, and the agreement was it

```
 1   was non-dischargeable, and therefore, it's not part

 2   of the discharge package.

 3            MR. RAMIREZ:  Judge, there was an

 4   agreement, and they were to pay the whole thing in

 5   July, and they haven't paid it.  We checked with

 6   them periodically, including today, and they have

 7   not been paid.  They just don't want to incur

 8   more --

 9            THE COURT:  Well, they're not disputing

10   that they've not been paid.  Their argument is that

11   they have an agreement with that creditor that this

12   is not a matter on the confirmation.

13            Let's see if we can find that document.

14            MR. RAMIREZ:  They have an agreement that

15   they had to pay by July 27th of this year, and we're

16   in October and they haven't paid it.

17            THE COURT:  Pardon me, Mr. Aaronson or

18   anyone, what is the date of that agreement?

19            MR. AARONSON:  Your Honor, if I could have

20   a moment.  I wasn't in the case at that point.

21            MR. ARESTY:  Judge, it looks like there's

22   a --

23            THE COURT:  Yes, Mr. Aresty?

24            MR. ARESTY:  Document 21.  There's an

25   adversary proceeding, Your Honor, Adversary
```

Page 14

```
 1    Proceeding 16-01188.

 2              THE COURT:  16-0118?

 3              MR. ARESTY:  Eight.

 4              THE COURT:  Two eights?

 5              MR. ARESTY:  Yes.  And at Doc 21 there's

 6    an agreed final judgment.

 7              THE COURT:  Okay.  Apparently Document 21

 8    in that adversary is what we're talking about.

 9              MR. ARESTY:  And it stipulates that it's a

10    non-dischargeable judgment.

11              THE COURT:  Okay.

12              (Discussion off the record.)

13              THE COURT:  It's being printed.  We'll

14    take a look at it in a moment.

15              MR. ARESTY:  I think this is also

16    referenced in a footnote, Judge, in the motion for

17    discharge.

18              THE COURT:  Perhaps.  You may not believe

19    this, but I have not memorized all the footnotes.

20              MR. RAMIREZ:  Are you waiting for us?

21              THE COURT:  I'm waiting for the document.

22    It will be here in a moment.

23              MR. RAMIREZ:  Because the Judge said they

24    were supposed to pay in 18 months.  It's been 24

25    months.
```

1          THE COURT:  Let's see.  I'm looking at

2     agreed final judgment, Court Paper 21, in Adversary

3     Case 16-01188-AJC.  If you all have it handy, take a

4     look and see if anyone can point to the dispositive

5     factor either way.

6          MR. ARESTY:  Judge, it clearly says --

7          THE COURT:  Pardon me, Mr. Aresty.  You

8     have to identify yourself when you speak.

9          MR. ARESTY:  I'm sorry.  Joel Aresty,

10    A-R-E-S-T-Y.

11         THE COURT:  So in Paragraph 1 it says

12    there's a judgment entered against Hazan for

13    275,000.

14         MR. ARESTY:  A non-dischargeability

15    judgment it is identified as.  It was always

16    intended to be non-dischargeable, and therefore --

17         THE COURT:  Well, let's see what it says,

18    rather than what you think it intended.

19         Two says, non-dischargeability shall be

20    surviving against Hazan, and shall be deemed to

21    replace the pre-petition judgment, which shall no

22    longer be valid or enforceable.  Okay.

23         In the event the debtor has failed to

24    satisfy they then proceed to execution.  In the

25    event the plan is confirmed and the debtor defaults

1   in making payments -- well, this would be if the

2   plan were confirmed before the payment was made --

3   the debtor will still be entitled to pay and satisfy

4   the judgment before the second anniversary date, and

5   JMB will refrain from exercising any rights that may

6   be granted.

7            JMB agrees to support the debtor's plan of

8   reorganization as long as said plan requires payment

9   to JMB in the amount set forth, et cetera, prior to

10  the second anniversary date.  This does not treat

11  JMB in a manner less favorable than other unsecured

12  creditors.

13           All right.  We'll give each of you an

14  opportunity to explain how you feel this judgment

15  applies to the position you're presenting.  You can

16  start, Mr. Aaronson.

17           MR. AARONSON:  Your Honor, I'm going to

18  defer to Mr. Aresty.

19           THE COURT:  All right.  Mr. Aresty.

20           MR. ARESTY:  Judge, JMB made an agreement

21  to settle the adversary.  I think Mr. Aaronson was

22  involved in the negotiations of it.  When I came in

23  the case we were just finishing up the paperwork.

24  JMB was represented by counsel in the case.

25           If it's non-dischargeable, then there's no

 1   question about the fact that the discharge is not

 2   affected by the fact that this non-dischargeable

 3   debt is outstanding.  JMB did not object to

 4   confirmation under the terms of its settlement.  It

 5   certainly had notice.  And as Mr. Aaronson said,

 6   they supported the closing of the case.  They have a

 7   separate agreement outside of the estate from which

 8   to seek satisfaction.

 9             THE COURT:  All right.  Thank you,

10   Mr. Aresty.

11             Mr. Ramirez, what --

12             MR. RAMIREZ:  They had defaulted on this

13   agreement, on this judgment, even before.

14             THE COURT:  Where did they default?  Point

15   that out to me.

16             MR. RAMIREZ:  They have not paid.

17             THE COURT:  It says that they have two

18   years after the confirmation to pay.

19             MR. RAMIREZ:  That was in 2016.

20             THE COURT:  It says two years after the

21   confirmation, not two years from the date of the

22   order, doesn't it?  Point it out to me.  I want to

23   be educated.

24             They say in Paragraph 5, JMB agrees to

25   support and vote for debtor's plan, as long as the

Page 18

```
 1   plan requires the amount set forth in this
 2   non-dischargeability judgment prior to the second
 3   anniversary date.
 4            MR. RAMIREZ:  That would have been this
 5   summer, July of 2018.
 6            THE COURT:  Anniversary date of what?  Is
 7   it of the plan or the order?
 8            MR. RAMIREZ:  The order.  It doesn't say
 9   it was the confirmation.  Second anniversary was
10   when they -- the second anniversary date is defined
11   in Paragraph 3 as two years from the date of entry,
12   which was the date --
13            THE COURT:  Hold on.  Let me look at
14   Paragraph 3.
15            MR. RAMIREZ:  That was July 19, 2016.
16            THE COURT:  "And in that event proceed to
17   execute."
18            Okay.  So apparently you're right.  It's
19   two years from the date of the order, and if it
20   isn't paid, they have their right to proceed, but
21   they're not affected by the confirmation, because
22   they're non-dischargeable.
23            MR. RAMIREZ:  They're still an unsecured
24   creditor who has not been paid.
25            THE COURT:  No.  Under this -- doesn't
```

1    this document say that that claim was wiped out, and

2    they have this new claim under this agreement?

3            MR. RAMIREZ:  They're still an unsecured

4    creditor under the statute.  It still prevents the

5    plan, and this Court should supervise this debtor to

6    make sure that she complies with that and all the

7    other obligations.

8            The IRS is owed hundreds of thousands of

9    dollars, all kinds of debts that she hadn't complied

10   with, and all kinds of creditors that she's given

11   preferential treatment in an apartment in New York.

12           We raised all these issues in our appeal

13   of the confirmation order, Judge.  So I think that

14   prevents the confirmation and it prevents the

15   discharge.

16           THE COURT:  Mr. Aaronson?

17           MR. AARONSON:  Your Honor, I don't have

18   the document in front of me, but it appears obvious

19   from everything that I've just seen that this is an

20   agreement outside of the plan, outside of

21   confirmation.  They were agreeable to confirmation.

22   They were agreeable to discharge.

23           THE COURT:  They say in Paragraph 5, they

24   say they agree to support and vote for the plan as

25   long as it requires them to pay the amount set forth

Page 20

1    prior to the second anniversary date.  But if they

2    haven't done that, does that mean that JMB is no

3    longer supporting the plan, or what does it mean?

4            MR. AARONSON:  They have agreed.  They

5    agreed to the plan, they have agreed to the

6    discharge, they're not objecting.  And we're in a

7    payment plan schedule with them, Judge.

8            THE COURT:  Well, continue --

9            MR. AARONSON:  Whether it be as set forth

10   in that document or not.

11           THE COURT:  Continue, Mr. Aaronson, and

12   then we'll hear from Mr. Ramirez, and then we'll

13   hear from the United States Trustee.

14           MR. ARESTY:  Judge, if the Court please,

15   this is an individual Chapter 11 case, so there's a

16   provision in 11 U.S.C. 1141, which is what was the

17   gravamen of the motion for discharge.  Not only is

18   it a non- dischargeable debt, but Paragraph B of

19   Subsection 5 of 1141 says, "After noticing a hearing

20   the Court may grant a discharge to the debtor who

21   has not completed payments under the plan, if the

22   value as of the effective date of property actually

23   distributed is not less than the amount that would

24   have been paid on such claim if the estate had been

25   liquidated under Chapter 7."

Page 21

1        This was the code provision that

2  Mr. Pugatch argued to the Court at the hearing in

3  which it's cited in both the motion and

4  Mr. Pugatch's -- and in the Court's order asking for

5  this hearing.

6        MS. ARMENGOL:  Your Honor, if I may, I

7  think that what Mr. Aresty is alluding to is that

8  the code provides for discharge if all plan payments

9  to unsecured creditors pursuant to the plan have

10  been made.  I do not believe that the JMB settlement

11  was treated in the plan.

12        THE COURT:  So then it would be immaterial

13  as to whether it was paid or not.

14        MS. ARMENGOL:  I would believe so.  That's

15  the way I'm reading the plan.

16        THE COURT:  That sounds like a logical

17  interpretation, but nevertheless, we have numerous

18  great brains out there kicking this around.  I want

19  to get input from anyone that wants any more.

20        What about that, Mr. Ramirez?

21        MR. RAMIREZ:  I'm just reading the

22  statute, Judge, and it doesn't say that only those

23  creditors that are objecting, or any other creditors

24  are included in the plan.  It says the payment of

25  all creditors, and this is --

Page 22

1          THE COURT:  Pardon me.  That's not what
2     the statute says, the way I heard it read.  It said
3     all creditors in the plan.  And I -- I mean, I'm not
4     taking one side or another, but if I understood, the
5     argument of the other side was that this creditor is
6     not in the plan, so that 1141 would govern.

7          Now, I haven't read 1141 in a while, and
8     I'm not going to just shoot from the hip on it, but
9     nevertheless, I want everybody to have an
10    opportunity to give me their thoughts on how it
11    applies or how it does not apply.

12         It would appear to me that if we adopt
13    Mr. Aresty's argument that 1141 only deals with
14    payments of creditors in the plan, then they're
15    entitled to a discharge.  On the other hand, if we
16    follow your argument, Mr. Ramirez, that all
17    unsecured creditors need to be paid, then they're
18    not entitled to a discharge.

19         Anyone else want to put anything else on
20    the table before we move on from this matter?

21         MR. AARONSON:  Only that the statute, Your
22    Honor, I agree with Your Honor, Your Honor's
23    suggestion here, but the statute refers to creditors
24    that are treated in the plan.

25         THE COURT:  Well, in any event, as I said,

1   it's an important matter and I don't want to shoot

2   from the hip, so I'm going to ask for competing

3   orders.

4           How much time do you need to prepare an

5   order, Mr. Ramirez?

6           MR. RAMIREZ:  Usually you grant two weeks.

7           THE COURT:  Two weeks.  Very well.

8           Is that enough time for you, Mr. Aaronson.

9           MR. AARONSON:  Your Honor, I believe we've

10  already submitted an order when Mr. Pugatch filed

11  this motion.

12          THE COURT:  Well, let me say this.

13          MR. AARONSON:  I can re-upload it.

14          THE COURT:  I am not aware of every order

15  that's been submitted in a caseload of 6,000 cases.

16  I'm going to give two weeks.  Today is the 24th, so

17  that would be the 31st, that would be the 7th.  Now,

18  the fact of the matter is, I'm leaving town on the

19  7th, so if you want to make it 21 days we'll give

20  you 21 days and make it the 14th.

21          So by the 14th of November, I'll look for

22  orders from Mr. Ramirez and Mr. -- who's going to do

23  your order, Mr. Aaronson, you or Mr. Aresty?

24          MR. ARESTY:  Judge, can we ask for a

25  shorter time?  These matters are not that

Page 24

```
 1    complicated.
 2            THE COURT:  Hold on just a second.
 3            (Discussion off the record.)
 4            THE COURT:  Okay.  We've got your orders,
 5    Mr. Aaronson, but they don't address the issue
 6    involving this creditor.
 7            You say you'd rather have less time?
 8            MR. AARONSON:  We don't need a lot of time
 9    on this.  A week is fine.
10            THE COURT:  Can you do it in less than 14
11    days, Mr. Ramirez?
12            MR. RAMIREZ:  If you're leaving on the
13    7th, can we do it on the 6th?
14            THE COURT:  Well, if they come in on the
15    6th, I'm not going to get a look at them until I get
16    back ten days later.  So in other words, if you can
17    do it in seven days or eight days, we can do that,
18    but again, we don't want --
19            MR. RAMIREZ:  This is not an area that I
20    am very cognizant of.  I need the time, because
21    there's statutes that I'm not familiar with.  This
22    case, as many cases, I didn't know they had an
23    adversary with a judgment.  I need to look at that
24    and see -- contact the creditor and see if they've
25    been paid.
```

Page 25

```
 1              I think two weeks is not unreasonable.

 2              THE COURT:  All right.  We'll stay with

 3    the two weeks.

 4              Who's going to do the order for your side?

 5              MR. AARONSON:  Myself or Mr. Aresty will

 6    do it, Judge.

 7              THE COURT:  All right.  As I said, the

 8    order that you have submitted doesn't deal with this

 9    issue, so I think you better look at that order and

10    prepare a revised order.

11              U.S. Trustee have anything further?

12              MS. ARMENGOL:  Your Honor, just a

13    procedural issue.

14              This case, we're proceeding and this case

15    is closed.  I believe that the motion for discharge

16    asks for the reopening of the case, but it's been

17    lingering.  So I would request that this case be

18    reopened, because there's many, many things going

19    on, and proceed from there.  But as we speak, this

20    case is closed.

21              THE COURT:  So then you're suggesting that

22    it should be reopened today?

23              MS. ARMENGOL:  Well, that's part of -- I

24    would suggest that if the Court would at least in

25    part grant the motion to reopen --
```

1          THE COURT:  And then we'll deal with the

2    issue of --

3          MR. AARONSON:  Your Honor, I think it

4    could all be in one order, that the case is reopened

5    to consider the discharge and to close the case, and

6    it can address this one particular issue with regard

7    to this creditor.  I don't see why we need two

8    separate orders.

9          THE COURT:  Well, Madam Trustee --

10         MS. ARMENGOL:  Because we've had pleadings

11   and filings ever since -- we're proceeding, and this

12   case is closed.  Procedurally it's not proper for

13   this case to be closed and having --

14         MR. ARESTY:  I'm sorry.  I was just going

15   to say, Judge, that the matters before the Court are

16   either appeals or motions speaking to the

17   confirmation order, which would occur in any closed

18   Chapter 11 case under the Court's continued

19   jurisdiction, and there's no reason to reopen it in

20   general.

21         Usually -- the procedure that was in the

22   confirmed plan was that when the payments were made

23   there would be a motion to reopen for purposes of

24   consideration of the final report and discharge and

25   a final decree.  That's usually the way it occurs.

Page 27

```
 1   I think the clerk issues the discharge, if I'm not

 2   mistaken.  There's an administerial act once the

 3   Court authorizes it, and then the case is reclosed.

 4           Otherwise, the debtor has to file monthly

 5   operating reports, pay U.S. Trustee fees, and

 6   really, everything that's before the Court proceeds

 7   from the confirmation order under your reservation

 8   of jurisdiction.

 9           THE COURT:  Under those circumstances, I

10   guess if the case isn't going to be reopened or this

11   isn't going to fly, we wouldn't be accomplishing

12   much by reopening it today.  So let's leave the

13   reopening as part of the order that Mr. Ramirez and

14   Mr. Aresty are going to submit.  The 14th of

15   November is the date.  Hopefully within a week after

16   that we'll be able to adopt one of the orders or the

17   other, or modify one or the other or make my own

18   order.

19           Anything further we need to do on this

20   matter today?

21           MR. AARONSON:  There's another motion.

22           THE COURT:  I know there's another motion.

23   Right now we're talking about Court Paper 713.

24           Mr. Ramirez, Mr. Aresty, I'm looking for

25   orders on whether the nonpayment due -- what was the
```

Page 28

```
 1   name of that debtor again -- creditor, rather?
 2              MR. AARONSON:  JMB.
 3              THE COURT:  Whether the JMB unpaid bill
 4   prevents the issuance of the discharge or whether it
 5   allows it.  So we'll look for those orders.
 6              Let's move on now to Court Papers 742, 748
 7   and 752.  They're motions for contempt, amended
 8   motions for contempt and response.  This has to do
 9   with the filing of a lis pendens.
10              So starting out, the motion came from
11   Daniel Bushell.
12              MR. AARONSON:  Yes.  He's in court, Judge,
13   but I was planning on arguing.
14              THE COURT:  Well then, Mr. Aaronson, go
15   ahead and tell us about your motion, and then I'll
16   hear what is to be said in opposition to it.
17              MR. AARONSON:  Thank you, Judge.
18              So I'm going to take this in some kind of
19   a logical sequence here.  On November 1, 2017,
20   almost a year ago, the Court entered its final
21   judgment in the adversary action.  This Court is
22   very familiar with that.  I don't want to get into a
23   lot of detail.  The court reconciled all of the
24   underlying state court orders and judgments.
25              THE COURT:  I thank you, but I attempted
```

Page 29

1   to.  I don't know whether I did or not.

2          MR. AARONSON:  You didn't focus just on

3   one judgment to the exclusion of all of the others.

4   You put your arms around all of them.  And you found

5   ultimately that the promissory note, the Scola

6   judgment, the mortgage, the foreclosure judgment,

7   they've all been satisfied and paid, and are deemed

8   satisfied of record.

9          And the debtor has good title to her

10  homestead against the claims, or purported claims,

11  of NLG, and the title for the property is forever

12  quieted as to all claims of NLG.  That was your

13  judgment, November 1, 2017.

14         This case went to confirmation May 30,

15  2018, and the Court entered its confirmation order

16  on June 12, 2018.  At that hearing, May 30, Your

17  Honor was exceedingly generous in conversation with

18  Mr. Ramirez.  I was in Court that day, and there's a

19  record of that hearing, and the Court specifically

20  told Mr. Ramirez that confirmation, "makes a big

21  difference," and, "confirmation may moot out the

22  appeal," "if there's a stay nothing can happen."

23         I don't know what more the Court could

24  have done to put NLG on notice.

25         The confirmation proceeded.  There was no

```
 1    stay.  There was no motion for stay.  The Court

 2    entered a confirmation order, and the Court

 3    specifically found and stated that, "All creditors,

 4    all creditors whose judgments are declared null and

 5    void are enjoined from commencing, continuing or

 6    imploring any action, process or act to collect,

 7    recover or offset any such debts as personal

 8    liability of the debtor or from property of the

 9    debtor."

10         The Court also said another injunction in

11    that order.  "All creditors are also enjoined from

12    commencing, continuing or imploring any action,

13    process or act to collect, recover or offset any

14    debts or enforce any liens against the debtor on

15    account of any debt that existed as of the petition

16    date."

17         That's pretty clear language, as I

18    understand it, but on August 9, 2018, NLG filed a

19    lis pendens.  If that's not an action, process or

20    act to recover a debt, I don't know what is.  It

21    specifically inhibited the debtor from selling or

22    refinancing her property, which is what she's

23    intending to do.  It's not the only thing.

24         On October 18, 2018, in a state court

25    action -- foreclosure action on the debtor's home,
```

1  they had received relief from stay to proceed with

2  it, NLG filed a cross-claim, a claim against the

3  debtor seeking to foreclose the NLG mortgage,

4  exactly inconsistent, contrary to this Court's

5  order.  They literally are seeking to foreclose the

6  mortgage in the Chase Bank -- their mortgage in the

7  Chase Bank foreclosure.

8          Now, they're going to come and tell you

9  that this Court granted relief from stay to Chase to

10 proceed with the foreclosure, and relief from stay

11 to Chase and any other parties involved in Chase's

12 foreclosure, but that doesn't mean that after the

13 Court entered its injunction, that they had the

14 right to re-litigate the foreclosure action, which

15 this Court specifically prohibited.

16         They can defend with regard to Chase, but

17 a pre-confirmation stay relief order that allows

18 Chase to proceed and any other parties in that case,

19 does not void the latter -- this Court's final

20 judgment and the latter confirmation order

21 prohibiting them from proceeding to enforce their

22 alleged mortgage.  That's not the only thing.

23         In NLG versus Selective, in the U.S.

24 District Court, they filed in April '18, five months

25 after the final judgment, and two months before the

1   confirmation order, they filed a specific act before

2   Judge Martinez seeking to challenge the New York

3   judgment, the underlying New York judgment, which

4   Judge Lopez acknowledged in connection with the

5   assignment order.

6          They are going back to their original

7   claims, which they litigated over and over and over

8   again, and everything that this Court considered,

9   that Your Honor considered, and they literally,

10  after the Court's order, went before Martinez and

11  they want to re-litigate it.  Completely

12  inconsistent with your Court's judgment, and

13  inconsistent with the injunction that was entered in

14  the confirmation order.

15         They filed yesterday before Martinez an

16  emergency motion before District Court Judge

17  Martinez.  They filed an emergency motion to stay

18  this hearing, the hearing that we're on right now to

19  hold them in contempt.  Judge Martinez denied it.

20  It's not the only thing they've done.

21         On October 18, 2018, they went to New York

22  and filed the same papers that they filed before

23  Martinez with regard to the 2012 judgment, that was

24  acknowledged before Judge Lopez, they went back to

25  New York and they're challenging the judgment, the

```
 1    underlying 2012 judgment in New York.  They did that

 2    as of October 18, 2018.

 3              This is all --

 4              THE COURT:  How many years are they

 5    allowed to file an appeal of a New York judgment?

 6              MR. AARONSON:  You know, in this case,

 7    Judge, it clearly goes on forever.  It's forever.

 8    There's no statute.  They file actions in Florida to

 9    set aside the New York judgment.  They file actions

10    in New York to set aside the New York judgment.

11    They've litigated here and this Court has ruled and

12    reconciled all of the judgments.

13              The fact that Lopez -- Judge Lopez was

14    willing to consider any due process requirements of

15    the New York judgment, but they didn't post a bond,

16    and Judge Lopez ruled that the New York judgment was

17    valid, it's irrelevant to them.  They are filing new

18    cases in District Court, going back to New York in

19    the Chase foreclosure action.  They're again seeking

20    to foreclose.  And guess what they're relying on

21    when they're seeking to foreclose?  Exhibit A, Judge

22    Gordo's foreclosure judgment.

23              Frankly, Judge, there's no shame.  They

24    are ignoring the judgment of this Court and the

25    injunctions of this Court.  I've never seen anything
```

```
 1   like this before.  But that's the fact.  That's
 2   what's going on here.
 3            This Court specifically retained
 4   jurisdiction to enforce the confirmation order and
 5   its injunctions, based upon the willful violations.
 6   They're not going to stand here and say they didn't
 7   participate in the trial before Your Honor, that
 8   they were unaware of it, that they were unaware of
 9   the confirmation order, that they were not aware of
10   the state court judgment.
11            They tried to avoid us coming here before
12   Your Honor.  They've gone before Moreno -- Judge
13   Moreno, in connection with the appeal and sought a
14   stay.  He denied it.  They've gone before Martinez.
15   He's denied it.  So they're forced to come here and
16   listen to me talk about this motion for sanctions.
17            But, Judge, if this Court's orders mean
18   anything, the Court needs to enforce it.  And we're
19   asking for sanctions.
20            We're asking, first of all, coercively,
21   that they be required to dismiss the cross-claim for
22   foreclosure, based upon the Gordo judgment in the
23   state court.  We're asking that they be required to
24   remove the lis pendens on the property alleging that
25   they have a right to foreclose the property.  We're
```

1  asking that they dismiss the Martinez lawsuit in the

2  U.S. District Court challenging the New York

3  judgment.  We're asking that they withdraw their

4  motions in New York in connection with the 2012 New

5  York judgment to show cause, challenging the

6  underlying 2012 New York judgment.  And I'm asking

7  for actual damages, and we're asking for punitive

8  damages.

9           But I think from a coercive point of view,

10 we're entitled at this point to have them abide by

11 this Court's orders and the injunctions, clean up

12 all of these violations of the judgment and the

13 injunctions, and pay attorney's fees for us having

14 to come into this court in order to apprize the

15 Court of what's been going on.

16           In terms of punitive damages, if they

17 don't do it we'll be back in court, and I'll ask the

18 Court for some type of punitive sanction in

19 connection with their failure to clean up the mess

20 that they filed since this Court entered the

21 judgment, and since this Court has entered the

22 confirmation order with the various injunctions.

23           There are exhibits to our motion.  There's

24 the lis pendens, and there's the filings in the

25 various courts.  Thank you, Judge.

Page 36

```
 1              THE COURT:  Thank you, Mr. Aaronson.

 2          Mr. Ramirez, any response?

 3              MR. RAMIREZ:  Yes, Judge.  Since they went

 4   back to the Scola judgment and everything that was

 5   litigated, I need to respond to that.

 6              THE COURT:  I think the issue here is

 7   whether or not the filing of the lis pendens

 8   violated the injunction.  I mean, it's nice to hear

 9   the history of this case, which we hear in full

10   every time we have a hearing.  It's always very

11   pleasant to hear eloquent attorneys present their

12   client's position.

13              MR. RAMIREZ:  You allowed him to --

14              THE COURT:  You're allowed as much time as

15   you want.

16              MR. RAMIREZ:  I just want to respond to

17   that, because it's misleading.

18          I know the Court tried to reconcile all

19   these judgments and orders, but the Scola judgment

20   went back to 2007.  The Lopez assignment order that

21   you discussed in your final order went back to 2014.

22   The Gordo orders went back to 2015.  So she had the

23   benefit of those two prior orders, and discussed

24   them in her order granting us foreclosure and the

25   final judgment.
```

Page 37

1          That is the decision of the Court, whether

2     right or wrong.  Their remedy was to appeal that to

3     the Third District, which, in fact, they did.  They

4     filed an appeal, and then they must have found in

5     forum shopping that they had a better chance with

6     you, because the Third District already rejected

7     their arguments numerous times.

8          These arguments that the Court heard, with

9     all due respect, were heard by the Third District,

10    by Judge Gordo, and even by Judge Lopez.  After

11    Judge Gordo granted the foreclosure, Judge Lopez

12    said, "I'm not an appellate court.

13         And under Rooker-Feldman, Judge, you

14    basically had no restriction to second guess what

15    Judge Gordo did.  Right or wrong, her remedy was

16    with the Third.

17         Now, you did, and they kind of went over

18    this quickly, and it's ECF Number 315.  You granted

19    an order allowing JPMorgan relief from the stay, and

20    in that order you specifically granted it also to

21    NLG, because NLG was a party to that.  And I was

22    granted relief from the automatic stay to litigate

23    the foreclosure claim of Chase in the foreclosure

24    action to the point of judgment, but not to conduct

25    the foreclosure sale of the property.  We have not

Page 38

```
 1    attempted in any way to conduct a foreclosure sale
 2    of the property.
 3             We did delay as long as we could planning
 4    anything in that action, because they had not served
 5    Ms. Hazan with process.  So when they did serve her
 6    with process, which took a long time, we felt that
 7    the plaintiff wanted us to file an answer, and we
 8    did.
 9             As we were getting ready to do that, we
10    filed a lis pendens, just to put the world on
11    notice.  It doesn't seek any damages from anybody.
12    It just puts the world on notice that this claim is
13    pending.
14             And the cross-claim, if we had not filed
15    the cross-claim, we would be deemed to be waiving
16    the rights to do so.  You granted us leave to
17    prosecute this action.  We were doing that.  Your
18    order, confirmation order, does not rescind your
19    prior order, so we were proceeding under the prior
20    order.
21             They have said that Judge Lopez ruled on
22    the validity of the New York judgment, and that we
23    have no -- we have lost every step of the way.  In
24    fact, we have not.  We have won -- Judge Gordo ruled
25    that they were not entitled to full claims and
```

Page 39

```
 1    credit.  She put it in her order.  Because NLG was
 2    never served with process, was never given notice,
 3    was never given an opportunity to be heard and that
 4    made that a void judgment.
 5            So you asked the question, how long do you
 6    have.  You have forever.  A void judgment can be
 7    attacked at any time.  And NLG did it in 2014, and
 8    they've been trying to have the judge in New York
 9    hear it ever since that date.  And they've done
10    everything they could, Selective, to delay that.
11            But the main reason that that's irrelevant
12    is because it does not involve Hazan.  Hazan is not
13    a party to that case.  Selective, as far as I know,
14    is only owned by her husband.  Now, the bankruptcy
15    automatic stay does not apply to family members or
16    their companies.
17            Hazan is not an owner of anything to do
18    with Selective.  We have not sought any action
19    against Hazan in New York.  If the judge is to
20    vacate that judgment, then we would return to you,
21    Judge, and you would do with it what's appropriate,
22    which would be, I would assume, to revisit your
23    final judgment under Rule 60.
24            Judge, we instituted also a dec action,
25    because in New York, Selective is arguing that
```

```
 1   there's -- the only way to attack that judgment was

 2   through a plenary action.  So we, in an abundance of

 3   caution, filed a plenary action.  This is the action

 4   we filed with Judge Martinez.  Because there's

 5   diverse jurisdiction and it's over $75,000, we filed

 6   that plenary action here, and we did that in April.

 7            They never have raised the bankruptcy stay

 8   with Judge Martinez, they file an answer -- I mean,

 9   they filed a motion to dismiss and a motion for

10   summary judgment.  They never raised the automatic

11   stay with Judge Martinez.

12            THE COURT:  Pardon me.  Let me interrupt,

13   Mr. Ramirez, to say, I don't believe that the

14   automatic stay is an issue here.  The automatic

15   stay, I don't believe, was in effect.  What they're

16   going under is the injunction in the confirmation

17   order, which is not the same as the automatic stay.

18            Maybe I misunderstood that.  At least

19   that's the way it appears that it was being

20   presented.

21            MR. RAMIREZ:  Well, Judge, there's a

22   judgment -- first of all, a confirmation order.

23   We've also filed an appeal.  But that did not

24   rescind -- we were traveling under your prior order

25   which gave Chase and NLG the right to litigate that,
```

1 And that's what we were doing.

2          I don't see how the confirmation order in

3 any way affects a dec action with Judge Martinez or

4 our case in New York, because it does not involve

5 the debtor.

6          THE COURT:  Well, that's not what we're

7 talking about.  We're talking about whether or not

8 the filing of the lis pendens violated the

9 injunction.  To me that seems very simple.

10          Both sides of this issue seem to want to

11 talk about various trips around the world, and I

12 hope the sight-seeing is wonderful, but basically,

13 what I'm trying to focus on is whether or not the

14 filing of the lis pendens was something that was

15 allowable, in which event the motion here would be

16 denied, or whether it was a violation of an

17 injunction, in which event there might be a contempt

18 ruling.

19          That's what I'm trying to focus on, and

20 it's always a pleasure to hear you and your

21 colleagues eloquently express your thoughts and

22 theories on this matter, but as I said, both of you

23 seem to be beyond the focus of what Court Paper 742

24 is all about.

25          MR. RAMIREZ:  Judge, we did not draft the

Page 42

1   order confirming the plan.  So we did not get any

2   input into the wording of that order, but that order

3   did not rescind the prior order, which gave us the

4   right to litigate the foreclosure, and as part of

5   that, we put the world on notice through the lis

6   pendens.  The lis pendens itself does not in any way

7   seek any damages against Ms. Hazan.  It's just

8   putting the world on notice.

9              We have an appeal pending of your order

10  that basically reversed Judge Gordo, and we think

11  that somebody is going to buy this property, which

12  we don't have any objection.  If they want to sell

13  it, they escrow the money to protect all the

14  creditors, that would be something that NLG might be

15  agreeable to, but for her to sell the property and

16  then the buyer, not knowing that we have this

17  pending appeal and maybe prevail on it, and then

18  they have to deal with our $6 million, the lis

19  pendens, all it does is notify the public of that

20  and anybody doing a title search would be protected

21  by that.

22             As far as the cross-claim, if the Court

23  directs us to withdraw that we will withdraw it, but

24  it would be under your order, because otherwise, if

25  we had voluntarily done that, we could be deemed to

Page 43

1    have waived our right to file the cross-claim.

2              I think that we have not violated any

3    order of the Court, and we were proceeding under

4    your prior order.

5              THE COURT:  Thank you.  Anything further,

6    Mr. --

7              MR. BUSHELL:  Your Honor, I'm Mr. Bushell.

8    I'm the one who drafted the motion, so maybe I can

9    clear up a few things.

10              First of all --

11              MR. RAMIREZ:  Judge, how many people are

12    going to gang up on me?

13              THE COURT:  Normally it's one on one,

14    unless there's no objection.  If you have an

15    objection --

16              MR. RAMIREZ:  I object.

17              THE COURT:  All right then.  Mr. Aaronson

18    will continue.

19              MR. BUSHELL:  We do have multiple

20    plaintiffs.

21              THE COURT:  One on one is fine.  Tell

22    Mr. Aaronson what you would have said and he'll say

23    it for you.

24              MR. ARESTY:  Your Honor, may I just jump

25    in for a second?  I'm the attorney for Ms. Hazan,

Page 44

```
 1    and I just have one thing to say and it will be real

 2    brief.

 3            Judge, lis pendens is like an automatic

 4    injunction.

 5            THE COURT:  It's not an injunction, but in

 6    any event -- pardon me.  Mr. Ramirez rises for a

 7    purpose.

 8            What is it?

 9            MR. RAMIREZ:  He's arguing the lis

10    pendens.

11            THE COURT:  But he's for a different

12    party.

13            MR. ARESTY:  Liza Hazan individually.

14            MR. RAMIREZ:  He's (unintelligible) also.

15            THE COURT:  Who are you representing,

16    Mr. Aresty?

17            MR. ARESTY:  I represent Liza Hazan,

18    Judge.  I'm lead counsel right now in this case.

19            THE COURT:  And Mr. Aaronson is

20    representing her, so then talk to Mr. Aaronson and

21    let them put it all on the table.

22            MR. AARONSON:  I think everyone wants

23    to -- everyone has an interest in responding.  I'll

24    give you my thoughts, Judge.

25            I'm not sure I followed about 90 percent
```

Page 45

1    of what Mr. Ramirez was saying.  It sounded to me

2    like he was making an argument for rehearing in this

3    case.  The problem is that the judgment was entered

4    November 1, 2017.  He wants to talk about all of the

5    underlying orders.  I thought that's what was done

6    at trial.

7             There was no motion for rehearing at the

8    time.  The Court has not granted him the right to

9    proceed to reargue this case.  Why he's standing

10   here rearguing all of the underlying matters, which

11   the Court heard at length and ruled upon, I'm not

12   really sure I follow.

13            And then at the end of his statements he

14   seems to be appealing to the Court to allow him

15   to -- to allow him to violate all of the Court's

16   injunctions, because there's an appeal pending.

17   Well, I don't think I need to remind Mr. Ramirez,

18   and certainly not Your Honor, that if he doesn't

19   want to be bound by the judgment, he needs to file a

20   motion for stay.

21            He's only filed at this point, by my last

22   count, four motions for stay, all have been denied.

23   They've all been untimely.  Whatever reason he's

24   come up with as a motion for stay of the underlying

25   judgment and the injunctions in this case, have all

1   been denied by two Federal District Court Judges and

2   by Your Honor twice.

3           So his final appeal on his de facto

4   rehearing, "Judge, please let me violate the

5   judgment and the court orders, because there's an

6   appeal pending," I think rings hollow.

7           I would also note, Judge, that it's not

8   just the lis pendens.  The motion that we're

9   traveling under is 747, which is an amended

10  expedited motion.  That's what's on the calendar,

11  Your Honor.  And there are a number of matters where

12  he has violated the court order.  It's not just the

13  lis pendens.

14          He has filed an action in the Federal

15  District Court.  He has filed an action seeking

16  foreclosure under the Gordo judgment in the Circuit

17  Court.  He has filed a matter in the New York court.

18  I agree, it's all over the place.  We didn't file

19  these matters.  They filed these matters.

20          The whole purpose of the adversary action,

21  as I understood it, and as I think the Court at one

22  point indicated on the record, was to get its arms

23  around this entire mess and to find some peace here

24  and to analyze all of this.  Because the actions

25  filed here, there and everywhere, in Federal Court,

Page 47

```
 1   state courts, New York, Pennsylvania, Florida,

 2   they're out of control.  And this Court, most

 3   incisively, focused on all of the orders and put

 4   them all together.

 5            Yeah, they filed an appeal.  They didn't

 6   get a stay pending appeal.  We went forward with

 7   confirmation.  They didn't get a stay of

 8   confirmation.  The Court literally practically told

 9   them that they're going to be subject to these

10   injunctions unless they got a stay, and they

11   remained silent.

12            The plan, but for this JMB issue, has been

13   substantially consummated.  We'll deal with the

14   final order.

15            Judge, this thing has to end.  At some

16   point it has to end.  We can't go through trial

17   after trial, and have Mr. Ramirez ignore the Court

18   when the Court rules against him, and only focus on

19   his one order that he relies upon, the Judge Gordo

20   order, which this Court read, acknowledged,

21   analyzed, took into account that order, and said

22   that the property has been redeemed pursuant to that

23   Gordo final judgment.

24            How many times do we have to do this, and

25   are we going to be doing this for the next five
```

Page 48

```
 1   years?
 2            THE COURT:  Probably.
 3            MR. AARONSON:  I hope not.  I hope not.
 4            THE COURT:  Anything further,
 5   Mr. Aaronson?
 6            MR. AARONSON:  Your Honor, only that,
 7   Judge, we're not looking just to remove the lis
 8   pendens.  We're looking for him to withdraw a
 9   renewed foreclosure action in the Circuit Court, an
10   action before Martinez to set aside the underlying
11   judgment, an action in New York to set aside the
12   underlying judgment.  We need this Court's order
13   complied with.
14            Thank you, Judge.
15            THE COURT:  Mr. Ramirez, anything further?
16            MR. RAMIREZ:  Yes, Judge.
17            He says he didn't understand 90 percent of
18   what I said, and then he goes and tries to rebut
19   that 90 percent he didn't understand, Judge.
20            The only reason I discussed those prior
21   judgments that he keeps bringing up is because he
22   gives us his own slant, and I give it my own slant,
23   Judge.  And my slant has the jurisdictional basis,
24   subject matter jurisdiction under the U.S. Supreme
25   Court that says the only way to appeal a judgment of
```

Page 49

1    the state court is through the U.S. Supreme Court,

2    not through a Bankruptcy Court, not through District

3    Court, not through the 11th Circuit in Atlanta.  So

4    we have a strong appeal on that issue.  I wouldn't

5    talk about it if they didn't keep bringing it up.

6            They have not responded, however, to the

7    main argument as to the two cases that you said you

8    weren't interested in hearing about, and those cases

9    do not involve the debtor Hazan.  They involve

10   Selective Advisors, and they are the parties in

11   those two proceedings, and you have no statutory, or

12   even under the confirmation order, in any way enjoin

13   anything other than what reflects on Hazan.

14           So Selective Advisors is not covered by

15   that order and those two cases.  The Judge Martinez

16   case was filed in April, which was before the

17   confirmation order, and they never (unintelligible)

18   up to you to do anything about that proceeding.  The

19   one in New York has been pending, as I said, since

20   2014.

21           Those have not been ruled on the merits.

22   Judge Lopez never ruled on the merits, and you,

23   yourself, Judge, did not in any way go into the

24   validity of that judgment in New York.  You accepted

25   all judgments at face value, as you had to under the

Page 50

```
 1    Rooker-Feldman doctrine.

 2              Our main argument is, so that Mr. Aaronson

 3    can understand, first of all, we had an order

 4    relieving us of the automatic stay in the Chase

 5    foreclosure, and that's what we relied on.  As I

 6    said, if the Court orders me to withdraw the

 7    cross-claim, that's fine.  I think it's -- I find it

 8    was part of what your report allowed me to do in the

 9    foreclosure pursuant to your order, but if you think

10    it steps out of bounds, fine.

11              I don't think the lis pendens itself is

12    taking any action.  It's just putting the world on

13    notice.

14              So I don't know if you want to look at

15    those two cases that predated your confirmation

16    order or not, because they keep addressing that.  I

17    don't see how in any way this affects Ms. Hazan,

18    because it is not a proceeding against her, it's a

19    proceeding against Selective.

20              THE COURT:  Thank you.  I think we've

21    heard enough.

22              What do you have?

23              MR. GRANT:  Very briefly, Your Honor.  I'm

24    Joe Grant on behalf of Selective Advisors.

25    Mr. Aaronson presented argument on behalf of the
```

```
 1   debtor.  I just want to be very brief, Your Honor,
 2   and point out a couple of things as I listen to all
 3   these arguments.
 4          We filed an adversary complaint, and I say
 5   "we."  It was the debtor and Selective Advisors.  I
 6   tried that case with Mr. Ramirez and Mr. Langley at
 7   the time.  The complaint was to determine the
 8   extent, validity and priority of NLG's mortgage and
 9   lien on the debtor's homestead.  We spent two days
10   in trial.
11          Your Honor allowed us to admit a ton of
12   documents into evidence from all these various
13   proceedings.  At the conclusion of that trial, Your
14   Honor, you asked all of us, "Are all of these orders
15   final and not appealable," and both sides
16   acknowledged that they were.
17          So what you have here is, again, another
18   attempt to re-litigate these issues.  You spent
19   three months, I believe, reviewing all of these
20   different orders, and so at the end you issued a
21   final judgment determining that they did not have
22   any lien on the debtor's homestead.  Then there's
23   the confirmation order with the injunction, and they
24   basically said, "Judge, we're going to ignore it."
25          So I think it's within the power of this
```

1   Court to make them remove that lis pendens, which is

2   against the debtor's property, remove the

3   cross-claim, and whatever other actions you can

4   enjoin them against from taking actions to enforce a

5   mortgage they don't have.

6           Thank you, Your Honor.

7           THE COURT:  Thank you.

8           MR. RAMIREZ:  Judge, the fact that an

9   order is final and non-appealable does not mean that

10  it cannot be challenged, based upon the fact that it

11  was void.  A void judgment can be challenged at any

12  time.  I don't think I need to give you any law on

13  that.  It's Black letter law.

14          We did challenge it in 2014 in New York.

15  They had not said anything about that judgment for

16  over a year, so we couldn't appeal it.  Sure it was

17  final and non-appealable, but it was still an order

18  that can be vacated pursuant to a motion to vacate.

19          THE COURT:  Thank you, Mr. Ramirez.

20          I think all parties are aware of the fact

21  that if an order is entered and no stay is put into

22  place, that if the order is implemented it may moot

23  out any right to an appeal.

24          But nevertheless, we're here on Court

25  Papers 742 and 748, primarily in regard to whether

Page 53

```
 1    or not the filing of the lis pendens violated the

 2    injunction.  That's what I've been trying to focus

 3    on, although I've had the pleasure of being toured

 4    all around the country with comments about what went

 5    on in a number of different places.

 6            I'm going to direct the parties to prepare

 7    proposed orders within the same time frame as the

 8    other one, 14 November, on the motion for contempt

 9    and amended motion for contempt and the response

10    thereto.  In the order we'll only deal with whether

11    or not there has been a violation which would

12    justify a finding of contempt.  If there's been no

13    such violation, then that would be the end of the

14    matter.  If there has been such a violation, then

15    the matter will be set for further hearing as to

16    what the sanctions might be.

17            So I thank you all.  It's always a

18    pleasure hearing counsel speak eloquently on behalf

19    of their clients.  I commend both sides for the very

20    detailed efforts they made on behalf of their

21    client's position.

22            (Thereupon, the hearing was concluded.)

23

24

25
```

Page 54

```
1                         CERTIFICATION

 2

 3    STATE OF FLORIDA:

 4    COUNTY  OF  DADE:

 5

 6               I, HELAYNE F. WILLS, Shorthand

 7    Reporter and Notary Public in and for the State of

 8    Florida at Large, do hereby certify that the

 9    foregoing proceedings were taken by electronic

10    recording at the date and place as stated in the

11    caption hereto on Page 1; that the foregoing

12    computer-aided transcription is a true record of my

13    stenographic notes taken from said electronic

14    recording.

15               WITNESS my hand this 29th day of

16    October, 2018.

17

18

19               _____

                        HELAYNE F. WILLS

20                Court Reporter and Notary Public

               In and For the State of Florida at Large

21             Commission No:  GG123092  Expires 8/2/2021

22

23

24

25
```

Form CGFD17 (10/15/10)

# United States Bankruptcy Court
### Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:**

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## NOTICE REGARDING FILING OF TRANSCRIPT AND DEADLINE FOR FILING NOTICE OF INTENT OR MOTIONS TO REQUEST REDACTION OF TRANSCRIPT

Notice is hereby given that an official transcript of a proceeding held on 10/24/2018 has been filed on 11/2/2018 by the court reporter in the above captioned matter.

Pursuant to the "Bankruptcy Court Guidelines on Electronic Availability of Transcripts and Procedures for Transcript Redaction", the parties have until **11/09/2018** to file with the court a local form "Notice of Intent to Request Redaction of Transcript." Parties timely filing the local form "Notice of Intent to Request Redaction of Transcript" shall, within 21 days of the date the transcript was docketed, unless otherwise ordered by the court, file a "Statement of Personal Data Identifier Redaction Request" which shall indicate, by page and line number, the location of the personal data identifiers for which redaction is being requested.

Parties seeking to review the unredacted transcript filed with the court may either (1) purchase a copy of the transcript from the court reporter: Ouellette and Mauldin Court Reporters, 28 West Flagler St., Suite 808, Miami, Florida 33130, (305) 358–8875; or (2) view a copy of the transcript at no charge in any of the clerk's three divisional offices.

If a "Statement of Personal Data Identifier Redaction Request" is filed, the redacted transcript is due **12/03/2018**.

Absent the filing of a timely motion related to redaction, or further order of the court, the transcript will be made available after **01/31/2019** for remote electronic access and at the clerk's office public terminals for viewing and printing.

**Dated: 11/5/18**

**CLERK OF COURT**
By: Randy Eisenberg
Deputy Clerk

The clerk shall serve a copy of this notice on all case participants listed as appearances on the transcript.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                          Chapter 11
_____/

## SECURED CREDITOR NLG, LLG'S
## AMENDED AND EXPEDITED
## <u>MOTION TO REOPEN CHAPTER 11 BANKRUPTCY CASE</u>

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, in accordance with

11 U.S.C. §350(b) and Local Rule 5010-1(A), moves to reopen this Chapter 11 Bankruptcy Case

on an expedited basis. In support, NLG states:

1.      The Court prematurely closed this case [*See* ECF No. 692] on the same day it

entered its Order Confirming Plan of Reorganization. The order was labeled "Agreed" based on

an Ore Tenus Motion. The hearing on May 30, 2018, was set by Court Order [ECF No. 673],

which listed the motions that would be heard. It did not list any motion to close the case.

2.      This Court nevertheless granted the so-called Agreed Order before the plan had

been substantially consummated, before the Debtor had made all payments due pursuant to the

Plan, before the Court entered a discharge order and before the case had been fully administered.

3.      There are several matters pending before the Court and the United States Trustee

at the hearing on October 24, 2018, noted to the Court that this bankruptcy case should be

reopened.

4.      NLG agrees with the United States Trustee that the Court should reopen this

Chapter 11 Bankruptcy.

5.      NLG moves on an expedited basis to reopen this bankruptcy in order to file an adversary proceeding to revoke the confirmation order because it was procured by fraud. *See* 11 U.S.C. § 1144 and FED. R. BANKR. P. 7001(5).

6.      The Confirmation Order was entered on June 12, 2018 [ECF No. 691]. The adversary proceeding to revoke confirmation must be filed within 180 days, to wit on or before December 9, 2018.  Because the bankruptcy case was prematurely closed, NLG is being prevented from filing its adversary proceeding.

**WHEREFORE**, for the foregoing reasons, the Court should reopen this chapter 11 bankruptcy and grant such other and further relief as the Court deems appropriate.

Dated November 13, 2018

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 13th day of November, 2018.  I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216

Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

### *Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com



**ORDERED in the Southern District of Florida on December 6, 2018.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                Chapter 11

                    Debtor.
_____/

**ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT,**
**AND ENTER DISCHARGE TO REORGANIZED DEBTOR**

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745]. The Court has further considered the following:

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al*. [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

Having considered the record, including NLG's Objection and Opposition,[2] and finding that due and adequate notice has been given and no additional notice is required, the Court grants the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the Final Report. The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to a discharge pursuant to 11 U.S.C. § 1141(d)(5). However, a Final Decree will not yet be issued and the case shall not be re-closed at this time.

## I.    11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to individual debtor who has not completed all plan payments

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered by the Court until completion of all payments under the confirmed plan. *11 U.S.C. §1141(d)(5)(A).* An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia*, an individual debtor has made all plan payments to unsecured creditors. Section 1141(d)(5)(B) provides:

> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if –
>
>     (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
>     (ii) modification of the plan under section 1127 is not practicable; and
>     (iii) subparagraph (C) permits the court to grant a discharge.

---

[2] Although this Court previously determined that NLG is not a creditor and has no claim against the Reorganized Debtor [*see*, *Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No. 16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules same.

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –
>
> > (i) section 522(q)(1) may be applicable to the debtor; and
> > (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);
>
> > and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C. § 1141(d)(5)(B).  *See*, *11 U.S.C. § 1141(d)(5)*; *see also*, *In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor.  In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C. § 1141(b)(5)(B) so as to be entitled to an early discharge.[3] Exhibit "A" attached to both the Motion

---

[3] The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

> MS. ARMENGOL:
>
> … I can speak as to the procedural propriety of the Court awarding a discharge now.  I concur with Mr. Pugatch -- and for the record, the code section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid in the Plan, have been paid in full. As a result, the value of property [payments] distributed under the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended Plan") on account of each unsecured claim is not less than the amount that would have been paid on such claim if the bankruptcy estate would have been liquidated under chapter 7. Therefore, the Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i). The Court takes judicial notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018 to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made pursuant to the Fourth Amended Plan and Confirmation Order. Moreover, the Court finds 11 U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not practicable under 11 U.S.C. § 1127.

## II. The Fourth Amended Plan, the Confirmation Order and this Court's prior Orders provide additional bases to grant relief

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to completion of payments under the Plan. The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.
Looking at the plan, Your Honor, the only other claims were secured. So even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay pursuant to the plan, they still have that security and that lien. And a priority claim with the IRS – and I'm not sure where that stands, but Your Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors. For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to **unsecured creditors**, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to **unsecured creditors**.

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added]. The Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to **unsecured creditors** have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added]. The Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

CASE NO. 16-10389-BKC-AJC

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor upon the completion of plan payments to unsecured creditors under the Plan. Specifically, paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to **Unsecured Creditors**, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all payments contemplated under the Plan to **Unsecured Creditors**.

See, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to **Unsecured Creditors** have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

See, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation [ECF No. 692] (the "Agreed Order"). The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the ***unsecured creditors*** have been made. The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added]. The Court finds that the Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class 12 unsecured creditors.

### III. NLG's Objection and Opposition

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG, whose claim the Court disallowed, asserted that a discharge should not be granted at this time because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full. The Court took the matter under advisement to consider the objection; and upon further consideration and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding, in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns. Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge. However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals. It is the policy of the Court to not close a case until all appeals are finally resolved and over. Therefore, it is

**ORDERED AND ADJUDGED**:

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

2.   The Final Report is **APPROVED.**

3.   NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos. 757 and 763] are **GRANTED IN PART** with respect to reopening this case, and not closing the case until the final disposition of all pending motions and appeals herein, but NLG, LLC's Opposition and Objection to the granting of the discharge are **DENIED** and **OVERRULED**.

4.   The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

5.   The discharge issued to the Reorganized Debtor does not discharge or otherwise affect the JMB non-dischargeable judgment.

6.   The discharge issued to the Reorganized Debtor does not discharge the Reorganized Debtor from her personal monetary liability in the amount of One Hundred Nine Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board of Managers of Spencer Condominium. The Reorganized Debtor has other non-monetary obligations under the Settlement Agreement with the Board of Managers of Spencer Condominium, as provided for in the treatment of Class 11 under the Fourth Amended Plan and the Confirmation Order, and such non-monetary obligations are not impacted by the discharge.  The New York courts have exclusive

jurisdiction over the settlement between those parties.

7.  This case shall remain open pending the final disposition of all motions herein and

    the outstanding appeals, after which the Court will direct the Clerk of Court to enter

    a Final Decree closing this case.

                                      ###


Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                         Chapter 11

     Debtor,

—————————————————————/

NLG, LLC
A Delaware limited liability company and
CHRIS KOSACHUK, an interested party                       Adv. No. 18-

     Plaintiffs,

v.

LIZA HAZAN a/k/a ELIZABETH HAZAN

     Defendant/Debtor.

—————————————————————/

## COMPLAINT TO REVOKE CONFIRMATION ORDER
## AND DISCHARGE ORDER FOR FRAUD

Plaintiff, NLG,LLC, ("NLG") through undersigned counsel, and Chris Kosachuk, *pro se*,

hereby sue Defendant Debtor, Liza Hazan, a/k/a Elizabeth Hazan (the "Debtor" or "Defendant"),

to revoke the Confirmation and Discharge Orders for fraud and alleges as follows:

## COUNT I

1.    This is an action against the Debtor to revoke the Confirmation Order [BK ECF

No. 691 and attached hereto as Exhibit 1] for fraud pursuant to 11 U.S.C. § 1144, FED. R.

BANKR. P. 9024 and FED. R. CIV. P. 60(d)(3).

## **Parties, Jurisdiction and Venue**

2.      Plaintiff, NLG, is a Delaware limited liability company and the largest creditor of Debtor Defendant Liza Hazan.

3.      Plaintiff, Chris Kosachuk, is an interested party.

4.      Debtor/Defendant Liza Hazan (the "Debtor") is the debtor in the bankruptcy case of *In re Liza Hazan a/k/a Elizabeth Hazan*, Case No. 16-10389-AJC, pending before this Court (the "Bankruptcy Case").

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§§ 157(b), 1334(b) and 2201(a) because this action is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).  The statutory predicate for the relief requested is 11 U.S.C. § 1144, FED. R. BANKR. P. 9024 and FED. R. CIV. P. 60(d)(3).  The Bankruptcy Rules provide that "a proceeding to revoke an order of confirmation of a chapter 11 … plan" is an adversary proceeding. FED. R. BANKR. P. 7001(5).

6.      Venue is proper in this Court under 28 U.S.C. § 1409 because this action arises in or relates to the Bankruptcy Case.

7.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

## **Factual Allegations**

### **A.  The Fraudulent Official Bank Checks Used for Confirmation**

8.      The Debtor filed the Bankruptcy Case on January 11, 2016.

9.      In order to proceed to confirmation and obtain the Confirmation Order, the Debtor filed several documents to support her contention that she had made all the payments to unsecured creditors pursuant to the proposed Plan.  [*See* BK ECF No. 684, 688 and 713].

10.    At the confirmation hearing on May 30, 2018 the following exchange in regards to these payments to unsecured creditors occurred:

THE COURT: And the United States Trustee have a position?

MS. ARMENGOL:  Your Honor, we have reviewed all the payments and the checks that Ms. Hazan has with her, and we can confirm that she has all of those, in addition to unpaid taxes that she paid for 2016 and 2017, which was an issue we had raised at prior hearings. So with that, Your Honor, we have no objection to confirmation.

May 30, 2018 Transcript, p. 10 and attached hereto as Exhibit 2

11.    Those payments included a series of official checks.  Those official checks have also been presented to Judge Moreno in NLG's Appeal of this Court's November 1, 2017 Final Judgment [*See NLG, LLC v. Selective Advisors Group, LLC and Liza Hazan*, Case No. 18-24272-CIV-MORENO ECF No. 25-1].  Copies of the relevant checks filed with Judge Moreno are attached hereto as Exhibit 3.

12.    The Debtor refers to unsecured Class #12 claims as being paid in full in her post confirmation hearing Declaration of Disbursements BK ECF No. 684 filed on May 31, 2018. Attached hereto as Exhibit 4 is this declaration of disbursements.

13.    The Debtor refers to those same unsecured class #12 creditors being paid in full in her post confirmation hearing Declaration of Disbursements BK ECF No. 688 filed on June 1, 2018 with each class #12 claim being listed separately.  Attached hereto as Exhibit 5.

14.    Debtor's attorney, Mr. Aresty, then filed a post confirmation hearing motion BK ECF No. 713 on July 5, 2018 and again referenced completed payments made to those same unsecured creditors.  Attached hereto as Exhibit 6.

15.    Each of these docket entries purports that the following creditors were paid in full:

Sterling Emer Svcs Class #12 for $2,445.30;

Mount Sinai Phys Practice Class #12 for $295.91; and

Mount Sinai Phys Practice Class #12 for $3,240.00.

16.     In fact, Debtor Hazan never sent these official checks to her unsecured creditors because she simply returned these official checks back to her bank and signed the backs of the official checks with the statement "NOT USED FOR PURPOSE INTENDED" the day after the confirmation hearing on May 31, 2018. As such, Debtor Hazan provided knowingly false evidence of payments to this Court, the District Court and United States Trustees Office.

17.     The copies of the official checks confirming that the official checks were returned to her bank are attached hereto as Exhibit 7.

18.     As can been seen from the official checks, they were purchased from the bank on May 29, 2018, photographed, and then used by the Debtor as evidence of payment confirmation at the confirmation hearing on May 30, 2018.

19.     Debtor thereafter simply returned to the bank for refunds on May 31, 2018, the day after the Debtor defrauded this Court.

20.     After the Debtor returned these official checks to the bank on May 31, 2018, she filed her perjurious Declarations of Disbursements with this Court on June 1, 2018 [ECF No. 684 and 688 and Exhibit 4 and 5 herein] claiming that these unsecured creditors had been paid when in fact they had not been paid.  When the Debtor filed these Declarations, she swore under the penalty of perjury that the declarations were true when in fact they were knowingly false.

21.     The Debtor (1) made this false representation to the Court; (2) knew that the Declarations were false because she had just returned those checks to the bank the day before; (3) that the representation was made to induce the court to rely upon it; (4) that the court did rely

upon it; and (5) that as a consequence of such reliance, the court entered the confirmation order. [*See* BK ECF No. 691 Confirmation Order and attached hereto as Exhibit 1].

22.     In reliance on these knowingly fake checks and false declarations, the Debtor induced the United States Trustee to support confirmation of the Plan which she did and in turn induced this Court to confirm the Plan, which it did, also relying on these fake payments.

### The Debtor's Undisclosed Asset and Transfer and Mortgages

23.     Prior to August 15, 2011, the Debtor owned a residential condo unit located at 1 East 62nd Street No. 1A, New York, New York 10065 (the "Spencer Condo"). On August 15, 2011, the Debtor transferred the New York Condo out of her name and into the name of an individual named Raymond Houle for no consideration (the "Spencer Condo Transfer").  Mr. Houle eventually transferred the condo, again for no consideration, to Real Estate Holding Group, LDC, an entity controlled by the Debtor's husband, Sean Meehan. *See* Deed Transfers and Affidavit by Mr. Meehan, [Exhibit 8].

24.     The first Spencer Condo Transfer occurred just a little over four years prior to the Petition Date.

25.     Although that is outside the four-year statute of limitations under Chapter 726 of the Florida Statutes, it is well within the six-year statute of limitations period applicable to fraudulent transfers under the law of New York, where the transfers occurred.

26.     The Debtor owes a substantial tax liability to the IRS (about $485,703.40) that was incurred before the Spencer Condo Transfer. *See* [BK ECF No. 21 p. 13 and BK ECF No.563 p. 15 and IRS Proof of Claim #3].

27.     In addition to being actionable under New York law, the Spencer Condo Transfers may also be avoidable under Florida law and Section 544(b).

28.     Although the Debtor claimed in the Fifth Amended Disclosure Statement that she had completed her investigation into potentially avoidable transfers, the Spencer Condo Transfer was not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [*See* BK ECF No. 562 p. 12, BK ECF Nos. 21 and 90].

29.     Debtor Hazan concealed her ownership interest in the Spencer Condominium. She clearly is still the beneficial owner even though she fraudulently conveyed the title. Attached hereto as Exhibit 9 is one of those mortgages recorded on the Spencer Condo to the Hazan's attorney Geoffrey Aaronson's law firm, for $145,000. Attorney Aaronson was counsel of record for the Debtor in the Bankruptcy Case.

30.     This mortgage also discloses mortgages to three other unsecured but preferred creditors, Bruce Jacobs for $55,000, Robert P. Lithman for $95,000 and Mark Cohen for $25,000. These three attorneys represented Hazan and her husband's corporation, Selective Advisors Group, LLC, at various stages of the state court foreclosure proceedings in front of Judge Gordo.

31.     All three were listed as unsecured creditors in the Debtor's original bankruptcy petition and have now become secured creditors to the detriment of the other creditors.

32.     Attorney Aaronson was present at the confirmation hearing, supported confirmation but never disclosed his secured creditor status, nor the other attorneys' secured creditor status, to the detriment of all other creditors.

33.     In fact he told the Court: "Good afternoon, Your Honor. Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also former counsel for the debtor. I'm appearing here on behalf of my firm, basically just an interested party. We're appropriately dealt with in the plan".  May 30, 2018 Confirmation Hearing Transcript p. 4.

34.     Attorney Aaronson knew that representation he just made was misleading and without belief in its truth, or was made with reckless disregard for the truth because Mr. Aaronson was the holder of a Mortgage executed on November 14, 2016, secured by the Spencer Condo and thus his claim was not actually part of the Plan.

35.     In fact, Attorney Aaronson even notarized the mortgage and agreed that upon payment, he would return the original Promissory Note and Mortgage directly to Debtor Hazan.

36.     Attorney Aaronson made the false representation to induce the court to rely upon it; the court did rely upon it; and, as a consequence of such reliance, the court entered the confirmation order."

37.     As detailed above, revocation of the Confirmation Order is justified.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) revoking the Confirmation Order for fraud pursuant to 11 U.S.C. § 1144, FED. R. BANKR. P. 9024 and FED. R. CIV. P. 60(d)(3), (b) awarding NLG its reasonable attorney's fees and costs incurred against the Debtor and her attorneys and (d) granting such other and further relief as the Court deems appropriate.

## COUNT II

38.     NLG incorporates the allegations of paragraphs 1 through 37 of the complaint as though fully set forth herein.

39.     This is an action seeking to revoke the Discharge Order [BK ECF No. 766 and attached hereto as Exhibit 10] pursuant to 11 USC §727.

40.     Because the Confirmation Order was procured via fraud it is now appropriate to revoke the Discharge Order as well.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) revoking the Discharge Order for Fraud pursuant to 11 U.S.C. § 1144, FED. R. BANKR. P. 9024, FED. R. CIV. P. 60(d)(3) and 11 USC §727 (b) awarding NLG its reasonable attorney's fees and costs incurred against the Debtor and her attorneys and (c) granting such other and further relief as the Court deems appropriate.

Dated:  December 8, 2018

Respectfully submitted,

**Attorneys for NLG, LLC**

| | |
|---|---|
| Juan Ramirez, Jr. | Astrid E. Gabbe |
| ADR Miami LLC | The Law Office of Astrid E. Gabbe, P.A. |
| Florida Bar No. 201952 | Florida Bar No. 635383 |
| ADR Miami LLC | P.O. Box 4216 |
| 1172 S. Dixie Hwy. #341 | Hollywood, FL 33083 |
| Coral Gables, FL 33146 | Tel. (954) 303-9882 |
| (305) 667-6609 | Fax. (954) 983-1427 |
| jr@adrmiami.com | astridgabbe@gmail.com |

**Pro Se Plaintiff**
Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083

Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

# EXHIBIT 1



**ORDERED in the Southern District of Florida on June 11, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                           Case No: 16-10389 AJC
                                                 Chapter 11
Liza Hazan
 Debtor.                        /

ORDER CONFIRMING PLAN OF REORGANIZATION

THIS MATTER came before the Court on May 30, 2018 at 2:00 PM. upon Doc 563 Liza Hazan
a/k/a Elizabeth Hazan's Fourth Amended Plan of Reorganization and Doc 562 Liza Hazan a/k/a Elizabeth
Hazan's Fifth Amended Disclosure Statement both filed 11/15/17 proposed by (the "Debtor" or
"Proponent") and Order Approving Amended Disclosure Statement and Setting Hearing on
Confirmation of Plan entered 12/13/17 Doc 580.

In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i)
*Certificate on Acceptance of Plan and Tabulation of Ballots Filed by Debtor Doc 681* , (the "Ballot
Certificate") and (ii) *Confirmation Affidavit Filed by Debtor Doc 680,* (the "Confirmation Affidavit"). The
Court has also: (i) reviewed and considered the entire record in this Chapter 11 Case, including the
*Proponent's Disclosure Statement* and the Plan; (ii) considered the argument of counsel; (iii)
considered the testimony of the Debtor as set forth in the Confirmation Affidavit which was proffered
at the Confirmation Hearing without objection, and representations of counsel at the hearing, and (iv)
considered the other evidence presented at the hearing.

The only creditors who previously objected to or voted against the plan were present, and
announced that they were changing their votes to support the plan or had no objection.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure. Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises,* 256 B.R. 377, 385 n,2 (Bankr. N.J, 2000); *In re Antar,* 122 B,R, 788, 789 (Bankr. S.D. Fla. 1990).

A. The Court conducted a hearing to consider approval of the Disclosure Statement and Plan filed by the Debtor.

B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan.  Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(I) and (b)(2)(L), 1334(a) and (b), the United States District Court's general Order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly), satisfies section 1123(a)(1) of the Bankruptcy Code;

G. Articles II through V  of the Plan specify any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfy section 1123(a)(2) and (3) of the Bankruptcy Code;

H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment, if applicable, and accordingly, satisfies section 1123(a)(4) of the Bankruptcy Code;

I. The Disclosure Statement Article III  sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code; the Plan will be funded through funds from the ongoing operation of the Debtor's properties and jobs;

J. Each of the Voting Classes have accepted the Plan in the requisite number of

ballots, and in the requisite dollar amount, as required pursuant to 11 U.S.C
§ 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly set forth the tabulation of votes, as required by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the Southern District of Florida;

L. The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Procedures Order;

M. The Ballot Certificate and evidence at the hearing reflects that all Classes have accepted or not rejected the Plan;

N. All other objections to confirmation were announced to be settled at the Confirmation Hearing;

O. The Plan complies with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the Proponent;

P. The Proponents of the Plan complied with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129;

Q. The Plan has been proposed and submitted to all Creditors and Interest Holders in good faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R. All payments made, or to be made, by the Debtor in connection with this Chapter 11 case or in connection with the Plan either have been approved by or are subject to the approval of the Bankruptcy Court, including applications for compensation and reimbursement of expenses and, therefore, the Plan satisfies the requirements of 11 U .S.C. § 1129(a)(4);

S. The Proponent of the Plan has disclosed the identity of the individual Reorganized Debtor, who will serve after the Confirmation Date and, therefore, the Plan satisfies the requirements of II U.S.C. § 1129(a)(5);

T. The Plan does not discriminate unfairly, is fair and equitable, and otherwise complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to each Class of Claims or Interests that are impaired under the Plan, including without limitation, creditors holding Unsecured Claims who will receive more on account of their Claims under this Plan, than they would receive in a chapter 7 liquidation;

U. The Plan and Disclosure Statement were accompanied by projections that support the financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11U.S.C. § 1129(a)(11) are satisfied;

V. The ongoing operation of the properties and incomes of Debtor will provide sufficient funds available for the payment in whole of: (i) Allowed Administrative Expense Claims (unclassified), which will be paid on the Effective Date; (ii) United States Trustee's Fees (unclassified); secured claims and a dividend to unsecured creditors.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS**:

1**.** The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129.

2. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All of the Terms and provisions of the Disclosure Statement and Plan are approved.

4. There are no allowed Administrative Expense Claims other than those of the Debtor's professionals and US Trustee fees. Administrative Expense Claims related to professional fees and costs shall be awarded by separate order of the Court.

5. Discharge. Because the Debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the Court may grant a discharge to the Debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and **(iii)** subparagraph (C) permits the court to discharge; and **(C)** the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the Debtor; and **(ii)** there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

6. As of the Effective Date all pre-petition property of the estate shall re-vest in the Reorganized Debtor.

7. Any judgment obtained in any court other than this Court is null and void as a determination of the individual liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 USC § 1141.

4

8.  All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived

9. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

10. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within ten (10) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a order by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

11. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and upon this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court approved local form.

12. The Reorganized Debtor shall pay all allowed claims at such time an in such amounts as provided for in the Plan.

13. The failure to reference or address all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, except as otherwise provided herein.

14. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacation of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

15. The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the

Plan, the Disclosure Statement, the Modification, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Orders and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). The Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

16. **All executory contracts and unexpired leases listed in Article VI of the Plan are deemed either assumed or rejected as indicated in the Plan as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as they deem appropriate in the exercise her business judgment without the need for a motion and hearing in this Court.**

17. The Bankruptcy Court shall retain jurisdiction:

(a) To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b) To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c) To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d) To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e) To determine the validity, extent and priority of all liens, if any, against property of the estate;

(f) To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

(g) To determine all objections to Administrative Claims;

(h) To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

(i) Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

(j) To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

(k) To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(l) To determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(m) To enforce any and all injunctions created pursuant to the terms of the Plan;

(n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(0) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

18.        Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,

6

upon completion all payments required under the Plan to unsecured creditors. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)    Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)    The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Unsecured Creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)    The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)    During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the

treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e)    Upon the satisfaction of all payments required under the Plan to Unsecured Creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Unsecured Creditors.

(f)    Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Unsecured Creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).


### ###

Submitted by: David W. Langley who will serve copies to: all creditors and appearances.

8

# EXHIBIT 2

1                UNITED STATES BANKRUPTCY COURT

                SOUTHERN DISTRICT OF FLORIDA

2                    MIAMI DIVISION

3

4

5

  IN RE:                       CASE NO. 16-10389-AJC

6                          CHAPTER 11

  LIZA HAZAN,

7

           Debtor.

8  _____/

9

10

11             ECF# 563, 590, 599, 607, 610

12

13               May 30, 2018

14

15         The above-entitled cause came on for hearing

16  before the Honorable A. JAY CRISTOL, one of the Judges in

17  the UNITED STATES BANKRUPTCY COURT, in and for the

18  SOUTHERN DISTRICT OF FLORIDA, at 301 North Miami Avenue,

19  Miami, Miami-Dade County, Florida, on May 30, 2018,

20  commencing at or about 2:12 p.m., and the following

21  proceedings were had:

22

23

24      Transcribed from a Digital Audio Recording by:

          Margaret Franzen, Court Reporter

25

```
 1                      APPEARANCES:
 2

              DAVID W. LANGLEY, ESQUIRE
 3             On behalf of the Debtor
 4
 5             JOEL M. ARESTY, ESQUIRE
            Former Counsel for the Debtor
 6
 7
             AARONSON SCHANTZ BEILEY, by
 8          GEOFFREY S. AARONSON, ESQUIRE
            Former Counsel for the Debtor
 9
10
             MARSHALL SOCARRAS GRANT, by
11              JOE M. GRANT, ESQUIRE
          On behalf of Selective Advisors Group
12
13
           REBECCA CASAMAYOR, ATTORNEY-AT-LAW
14      On behalf of Valencia Homeowners' Association
15
16             JUAN RAMIREZ, ESQUIRE
                On behalf of NLG, LLC
17
18
       OFFICE OF THE UNITED STATES TRUSTEE, by
19         JOHANNA ARMENGOL, ATTORNEY-AT-LAW
                  Attorney/Advisor
20        On behalf of the United States Trustee
21
22                ALSO PRESENT:
23
                LIZA HAZAN, Debtor
24      ECRO - Electronic Court Reporting Operator
25
                  - - - - - - -
```

Page 3

1          THE COURT:  The next matter is Liza Hazan.

2          MR. ARESTY:  Your Honor, if it please the

3    Court, Ms. Hazan is out in the conference room doing a

4    last minute settlement that should result in a consensual

5    plan.

6          I'm here also for the Blohm matter, which is

7    consensual and has no objections.

8          (Thereupon, the Court heard another matter

9    on its calendar, after which the following proceedings

10   were had:)

11          THE COURT:  We'll adjourn the Blohm matter

12   and see how soon we are ready to get back to the Hazan

13   matter.

14          Appearances on Hazan.  Apparently Mr. Furr

15   is reported to be out in telephone land.  Are you out

16   there, Mr. Furr?

17          COURTCALL OPERATOR:  Mr. Furr did not check

18   in on CourtCall, Your Honor.

19          THE COURT:  Okay.  Who else is here?

20          MR. LANGLEY:  Good afternoon, Your Honor.

21   David Langley here for the debtor, Elizabeth Hazan, and

22   Ms. Hazan is in the courtroom with us.

23          MS. CASAMAYOR:  Rebecca Casamayor,

24   C-a-s-a-m-a-y-o-r, here for the creditor, Valencia

25   Homeowners' Association.

Page 4

```
 1              MR. GRANT:  Good afternoon, Your Honor.
 2   Joe Grant, G-r-a-n-t, on behalf of Selective Advisors
 3   Group.
 4              MS. ARMENGOL:  Good afternoon again,
 5   Your Honor.  Johanna Armengol, A-r-m-e-n-g-o-l, for the
 6   U.S. Trustee.
 7              MR. ARESTY:  Joel Aresty, A-r-e-s-t-y, I was
 8   former counsel for the debtor-in-possession, I'm still a
 9   creditor, Your Honor, and was helping out Ms. Hazan with
10   some of the forms.
11              MR. AARONSON:  Good afternoon, Your Honor.
12   Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also
13   former counsel for the debtor.  I'm appearing here on
14   behalf of my firm, basically just an interested party.
15   We're appropriately dealt with in the plan.
16              MR. RAMIREZ:  Good morning, Your Honor --
17   afternoon.  Juan Ramirez, R-a-m-i-r-e-z, on behalf of NLG.
18              THE COURT:  Thank you.  Anyone else?
19              All right.  Where are we and what are we
20   going to do here today?
21              MR. LANGLEY:  Judge, we're here to confirm
22   the fourth amended plan.
23              First a housecleaning matter, if I may,
24   Judge?  There was one pending objection to confirmation by
25   the Valencia Homeowners' Association, and we just worked
```

Page 5

```
1    that out today.  We have a proposed stipulation that I'll

2    be filing today between the debtor and Valencia that takes

3    care of their objection.

4              We tendered -- Ms. Hazan tendered a

5    cashier's check for the amount due that we agreed upon to

6    Valencia, and with that, they've agreed to withdraw their

7    objection to confirmation and to change their ballot from

8    objecting to accepting.

9              THE COURT:  That's your position Mrs. --

10   Ms. Casamayor?

11             MS. CASAMAYOR:  Yes, that's correct.  We are

12   also dealt with in the plan, but as far as just the

13   objection and the basis for the objection, that's been

14   resolved through the stipulation and the cashier's check.

15             THE COURT:  Very well.  What's next?

16             MR. LANGLEY:  Yes, we're asking that the

17   Court approve the stipulation, which we will be filing.

18             THE COURT:  You both agreed.

19             MS. CASAMAYOR:  Yes.

20             THE COURT:  The Court will always endorse an

21   agreement, unless something unusual prevents it.  So you

22   can ---

23             MS. CASAMAYOR:  I don't think there's

24   anything usual.  We'll -- we'll just submit it ---

25             THE COURT:  All right.  Then you can submit
```

Page 6

```
 1    an agreed order on it.
 2                MS. CASAMAYOR:  Yes, yes, we'll file it --
 3                MR. LANGLEY:  Okay.  Very good.
 4                MS. CASAMAYOR:  -- and submit an agreed
 5    order.
 6                THE COURT:  Very well.
 7                MR. LANGLEY:  Very good.  Thank you, Judge.
 8                We have essentially worked out every
 9    other -- agreements with every other creditor.  I don't
10    know that anybody is actually objecting from NLG.  If we
11    need to address that, we will.
12                MR. RAMIREZ:  Yes.  Well, I just want to
13    make sure the Court realizes that we have an appeal
14    pending, and the appeal was reinstated by Judge Gayles.
15    Now they have raised the fact that they don't think your
16    final order that you entered in the adversary proceeding
17    was, indeed, a final order, so they are -- raised that
18    now.  So if that is not a final order, then that is still
19    pending before you in this -- in this case.
20                THE COURT:  And has there been a supercedes
21    entered in that case?
22                MR. LANGLEY:  Yeah, nothing -- nothing
23    entered, Judge.
24                Mr. Ramirez is correct, there is an issue
25    pending before Judge Gayles on whether the final judgment
```

1    of November 1, that's the -- the name of the document,

2    whether it's actually final for appellate purposes.  It

3    resolved three out of nine counts in the adversary, it

4    left some remaining to go to trial, so I think it pretty

5    clearly is not, but that's an issue for Judge Gayles.

6            For confirmation purposes, there's nothing

7    in the NLG matters that would affect confirmation.  The

8    final judgment of November 1, 2017 is the law of the case

9    and it states that the mortgage has been satisfied, that

10    the claim has been disallowed, and that NLG has no

11    standing in this case.

12            The Tucker case that we cited to the Court

13    in our motion, and I have a copy if the Court would like

14    it, it stands for the -- it's a Middle District case, it

15    stands for the proposition that absent a motion for stay

16    relief, the pendency of an appeal is not an impediment to

17    confirmation.

18            So despite everything else that we're doing

19    with NLG ---

20            THE COURT:  Well, it is not unless there is

21    a stay in place, but you're saying there is no stay.

22            MR. LANGLEY:  There's no stay.

23            THE COURT:  Mr. Ramirez, do you agree there

24    is no stay?

25            MR. RAMIREZ:  There is no stay, Judge.

Page 8

1          THE COURT:  Okay.

2          MR. RAMIREZ:  But I just want to correct

3    that it's not the law of the case until the appellate case

4    is decided.

5          THE COURT:  Well, but if something happens

6    in the interim, it may moot out the appeal, that's why it

7    makes a big difference.  If there's a stay, then nothing

8    can happen until that matter is decided, but if there is

9    no stay and things go along a track to where they're not

10   reversible, then it possibly or probably would moot the

11   issue, but in any event, what's next?

12         MR. LANGLEY:  And, Judge, the plan provides

13   for payment to unsecured creditors so that Ms. Hazan can

14   get a discharge, that doesn't affect NLG.  So I think

15   we're in a good position to -- to be confirmed.

16         We have filed a confirmation affidavit.  We

17   filed the debtor's certificate of compliance, that's

18   Docket Entry 677.  My certificate of proponent of plan,

19   acceptance of the plan, we've gone through the ballots and

20   with the change for Valencia to accepting, we have

21   100 percent acceptance of the plan.

22         And we have filed Ms. Hazan's confirmation

23   declaration, that's at Docket Entry 680, which is very

24   thorough, it goes through her -- her preparations of the

25   plan, it confirms that the plan complies with all of the

Page 9

```
 1    requirements of Section 1129, and I would submit that to
 2    the Court as a proffer, as our statement as to the
 3    confirmability of the fourth amended plan.
 4               THE COURT:  So you're offering the affidavit
 5    in evidence?
 6               MR. LANGLEY:  Yes, Judge, Docket Entry 680.
 7               THE COURT:  Any objection to the admission
 8    of the affidavit into evidence?  There being no objection,
 9    it is admitted in evidence.
10               Does anyone wish to cross-examine the
11    affiant?  There being no request for same, it is admitted
12    in evidence without objection.
13               Proceed.
14               MR. LANGLEY:  That takes care of it, Judge.
15               In addition to the plan being confirmable,
16    Ms. Hazan is here today with cashier's checks payable to
17    all of the creditors that get effective date payments, so
18    by the end of the day today, the effective date payments
19    will be paid.
20               This bankruptcy, as you know, Judge, has
21    been a real impediment to Ms. Hazan's business, and we
22    would like to get this case administratively closed, if
23    possible, with an agreed order that we would submit.
24               I don't know that we need any follow-up
25    hearings because the effective date payments are going out
```

Page 10

```
 1   today.  Nobody is objecting to that.  Nobody is objecting
 2   to the confirmation.  Our goal is to try to get this case
 3   administratively closed.
 4                THE COURT:  And the United States Trustee
 5   have a position?
 6                MS. ARMENGOL:  Thank you, Your Honor.
 7                We have reviewed the certificates of plan
 8   proponent and the ballot certificate, Document 677,
 9   Your Honor, which was admitted into evidence before I was
10   able to stand up, was -- seems to have been filed by
11   Mr. Aresty.  Mr. Aresty is no longer counsel of record,
12   Your Honor.
13                We would request that that be refiled by
14   Mr. Langley just to have the procedural -- all the
15   procedures correct before, you know, confirmation.
16                In addition, Your Honor, we have reviewed
17   all the payments and the checks that Ms. Hazan has with
18   her, and we can confirm that she has all of those, in
19   addition to unpaid taxes that she paid for 2016 and 2017,
20   which was an issue we had raised at prior hearings.
21                So with that, Your Honor, we have no
22   objection to confirmation.  However, we would request that
23   document 677 be refiled.
24                THE COURT:  Mr. Langley --
25                MR. LANGLEY:  Judge, it was.
```

Page 11

```
 1              THE COURT:  -- any problem?
 2              MR. LANGLEY:  It was refiled at Docket Entry
 3  680.  I -- I filed it.
 4              THE COURT:  Does that cover it, Madam United
 5  States Trustee?
 6              MS. ARMENGOL:  No, Your Honor.  That
 7  document needs to be refiled, Your Honor.
 8              THE COURT:  All right.
 9              MR. LANGLEY:  I can certainly do that today,
10  Judge.
11              THE COURT:  Very well.  Then what else can
12  we do here today?
13              MR. LANGLEY:  With Your Honor's permission,
14  we would like to submit an order confirming the plan; and
15  with Your Honor's permission, an agreed order
16  administratively closing the case.
17              THE COURT:  Does the U.S. Trustee have any
18  objection to the administrative order closing the case?
19              MS. ARMENGOL:  No, Your Honor, as long as
20  there's a certificate of compliance that all the payments
21  went out and that's filed --
22              THE COURT:  Very well.
23              MS. ARMENGOL:  -- prior to closing of the
24  case.
25              THE COURT:  Very well.  Then, Mr. Langley,
```

Page 12

```
 1    you may submit both of those orders, both are approved,

 2    and what else can we do other than say congratulations

 3    on --

 4                MR. LANGLEY:  Yes, Judge, I think ---

 5                THE COURT:  -- successfully completing an

 6    11?

 7                MR. LANGLEY:  Yes, I think Ms. Hazan

 8    deserves some congratulations for --

 9                MS. HAZAN:  Thank you, Judge.

10                MR. LANGLEY:  -- getting it this far.

11                MS. HAZAN:  Thank you, Your Honor --

12                MR. LANGLEY:  Yes, thank you so much, Judge.

13                MS. HAZAN:  -- for everything

14                THE COURT:  Very well, then.  Anything

15    further before we adjourn?  Apparently not.

16                THE MARSHAL:  All rise.

17                THE COURT:  I wish you all a good day and

18    we'll adjourn this hearing.

19                (Thereupon, the hearing was concluded.)

20

21

22

23

24

25
```

Page 13

```
 1

 2

 3                        CERTIFICATION

 4

 5    STATE OF FLORIDA        :

 6    COUNTY OF MIAMI-DADE   :

 7

 8              I, Margaret Franzen, Court Reporter and

 9    Notary Public in and for the State of Florida at Large, do

10    hereby certify that the foregoing proceedings were

11    transcribed by me from a digital recording held on the

12    date and from the place as stated in the caption hereto on

13    Page 1 to the best of my ability.

14              WITNESS my hand this 5th day of July 2018.

15

16

17              _____

18                      MARGARET FRANZEN

19              Court Reporter and Notary Public

                in and for the State of Florida at Large

20                   Commission #GG187411

                        April 14, 2022

21

22

23

24

25
```

# EXHIBIT 3









# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## THE SOUTHERN DISTRICT OF
## FLORIDA MIAMI DIVISION

### www.flsb.uscourts.gov

IN RE:

CaseNo:16-10389-AJC
Chapter 11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR.                    /

### DECLARATION OF DISBURSEMENTS FOR DEBTOR-IN-POSSESSION

The Debtor, files her declaration of disbursements pursuant to 28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury, and respectfully represents:

1.      I am the Debtor-in-Possession in this case and the Disbursing Agent appointed pursuant to the Fourth Amended Plan.

2.      On May 30, 2018 and May 31, 2018, following confirmation of my Fourth Amended Plan, I made disbursements as follows:

*CLASS / NAME OF CREDITOR*

| | |
|---|---|
| 5 – Valencia Estates Comm. Assoc. | $4,062.00 |
| 7 – Miami-Dade Water | $1,502.54 |
| 12 – Convenience Class | $ 12,958.04 |
| | |
| 1  IRS First payment Priority Claim | $2,674.34 |
| U.S Trustee | $ 651.07 |
| | |
| TOTAL: | $21,847.99 |

Liza Hazan

I declare under penalty of perjury of the Laws of the United States that the foregoing is true and correct. Executed on 5/31/18

# EXHIBIT 5

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF FLORIDA

### MIAMI-DADE DIVISION

#### www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                    CASE NO.: 16-10389 AJC

Debtor.                                        CHAPTER 11

_____/

# DECLARATION OF DISBURSEMENTS FOR DEBTOR-IN-POSSESSION LIZA HAZAN

The Debtor, files this declaration of disbursements pursuant to 28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury, and respectfully represents:

1. My name, is Liza Hazan. I am over 21 years of age and fully competent to make this declaration. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

2. As of the date of this Declaration I have made the post-confirmation hearing Effective Date disbursements listed on the attached Exhibit A.

**I declare under penalty of perjury of the Laws of the United States that the foregoing is true and correct. Executed on 6/1/18**

Liza Hazan

## EXHIBIT A LIST OF EFFECTIVE DATE PAYMENTS PAID PURSUANT TO THE PLAN

| CLASS | NAME OF CREDITOR | CLAIM NUMBER | SCHEDULED AND/OR CLAIMED AMOUNT | FIRST DIVIDEND TO BE PAID PURSUANT TO PLAN |
|---|---|---|---|---|
| 5 | Valencia Estates Comm. Assoc | #10 | $4,062.00 | $ 4,062.00 |
| 6 | Fisher Island Comm. Assoc. | | settled | $ 0 |
| 7 | Miami-Dade Water | #7 | $1,502.54 | $1,502.54 |
| 12 | Convenience Class: | | | |
| | IRS Claim #3<br><br>IRS first priority payment | | $ 24,663.00 | $ 1,085.00<br>$2,674.34 |
| | American InfoSource<br>T Mobile Claim #2 | | | $ 1,130.00 |
| | American InfoSource<br>Direct TV Claim #9 | | | $ 461.00 |
| | FPL Claim #11 | #13 | | $ 2,906.93 |
| | Sterling Emer Svcs | | | $2,445.30 |
| | Mount Sinai Phys  Practice | | | $295.91<br>$3,240 |
| | HSBC Bank USA NA | | | $1,070.66 |
| | Wells Fargo | #12 | | $323.24 |
| | U.S. Trustee | | | $651.07 |

# EXHIBIT 6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                              Case No: 16-10389 AJC
                                                                     Chapter 11

Liza Hazan
 Debtor.                          /

**CORRECTED MOTION TO REOPEN,**
**FINAL REPORT AND MOTION FOR DISCHARGE,**
**AND MOTION FOR ENTRY OF FINAL DECREE AND TO RECLOSE**

Reorganized Debtor Liza Hazan a/k/a Elizabeth Hazan, by and through her undersigned counsel, files this Motion to Administratively Reopen Individual Chapter 11 Case to Obtain Discharge and Final Decree and to reclose ("Motion") and Pursuant to Local Rule 3022-1(A), the undersigned files this Final Report and Motion for discharge and Final Decree and represents:

1. On May 30, 2018, the Court granted the Confirmation of the Chapter 11 Plan. The Order granting confirmation of the Fourth amended plan filed on November 15, 2017 ("Doc 563") was entered on June 12, 2018 and was docketed at Doc 691. The plan provided for 41% payment of the unsecured allowed claims. On June 13, 2018 the Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation docketed at Doc 692.

2. As evidenced by the attached detailed accounting, the reorganized Debtor has now completed all payments called for under the Confirmed Plan and Confirmation Order. The payments required by the plan have been distributed and all matters to be completed upon the effective date of the confirmed plan have been fulfilled or completed; Doc 684 Declaration of Disbursements.

3. Having completed all plan payments, the reorganized Debtor is now eligible to discharge pursuant to §1141 (d)(5)(A).

4. There is no reasonable cause to believe that §522(q)(1) is applicable to the reorganized Debtor, and there is no pending proceeding in which the reorganized Debtor may be found guilty of a felony of the kind described in §522(q)(1)(A) or liable for a debt of the kind described in §522(q)(1)(B).

5 . All administrative claims and expenses have been paid in full, or appropriate arrangements have been made for the full payment thereof. A summary of fees and expenses is as follows:

$  n/a Trustee Compensation (If trustee received compensation under more than one chapter)

$ n/a Fee for Attorney for Trustee

$ arranged -Fees for Attorneys for Reorganized Debtor, awarded and appropriate arrangements have been made

$ paid U.S. Trustee (fees required by 28 U.S.C. §1930)

$ paid Clerk of Court (fees required by 28 U.S.C. §1930)

$ n/a All expenses, including Trustee's

6. Attached as Exhibit A is a distribution report detailing the payments made under the plan on and after the effective date.

7. Pursuant to Fed. R. Bankr. P.1007(b)(7), the undersigned represents that 11 U.S.C. § 1141(d)(3) is not applicable to the reorganized Debtor, or the reorganized Debtor has filed a statement of completion of the personal financial management course.

WHEREFORE, The reorganized Debtor respectfully requests that this court (1) grant this Motion and administratively reopen this case, (2) enter a discharge of the reorganized Debtor, (3) enter a final decree closing this fully administered individual Chapter 11 case, and (4) grant such other and further relief as the Court deems appropriate..

I certify that a copy of this report and attachments was emailed to the U.S. Trustee's office on 7/7/18.

JOEL M. ARESTY, P.A.
Counsel for
Reorganized Debtor
Liza Hazan
309 1st Ave S
Tierra Verde, FL
33715
Phone: 305-904-1903
Fax: 800-559-1870
E-mail: Aresty@Mac.com
By: /s/Joel M. Aresty
Fla. Bar No. 197483

Case 1:22-cv-21485-BB Document 57-7 Entered on FLSD Docket 09/24/2025
Case 19-13388-AJC Doc 67 Filed 07/10/19 Page 34 of Page 375 of
650

**EXHIBIT A**

LIST ALL PAYMENTS MADE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN,
OR IF INDIVIDUAL CHAPTER 11, ALL PAYMENTS MADE UNDER THE PLAN.*
SEPARATE CLAIMANTS BY CLASSIFICATION UNDER THE PLAN AND PROVIDE A
TOTAL FOR EACH CLASSIFICATION. LIST THE NAME OF EACH RECIPIENT,
AMOUNT OF THE ALLOWED CLAIM AND THE AMOUNT THAT WAS PAID (USE
CONTINUATION PAGE IF NECESSARY).

| **Name Of Creditor** | **Claim Number** | **Class Number** | **Payment In Plan** |
|---|---|---|---|
| IRS priority | Claim # **3** | Class 1 | $2,674.34 Paid at Confirmation |
| Valencia Estates Community Association, Inc. | Claim # **10** | Class 5 | $4,062.00 Paid at confirmation |
| Miami-Dade Water & Sewer Department | Claim # **7** | Class 7 | $1,502.54 Paid at confirmation |
| IRS secured | Claim # **3** | Class 8 | $22,948.00 Paid after confirmation |
| American InfoSource TMobile Class **12** | Claim # **2** | Class 12 | $1,130.00 Paid at confirmation |
| S&S Collections | Claim # **13** | Class 13 | $6,968.04 Paid after confirmation |
| IRS unsecured | Claim # **3** | Class 12 | $1,085.00 Paid at confirmation |
| American info Source Direct TV Class **12** | Claim # **9** | Class 12 | $461.00 Paid at Confirmation |
| FPL Class **12** | Claim # **11** | Class 12 | $2,906.93 Paid at Confirmation |
| Sterling Emer Svcs | | Class 12 | $2,445.30 Paid at Confirmation |

| | | | Confirmation |
|---|---|---|---|
| Mount Sinai Phys Practice | | Class 12 | $295.91    Paid    at Confirmation |
| | | | $3,240.00    Paid    at Confirmation |
| HSBC Bank USA NA | | Class 12 | $1,070.66    Paid    at Confirmation |
| Wells Fargo | Claim # **12** | Class 12 | $323.24    Paid    at Confirmation |
| Total class 12 <br><br> Total <br> Total | | | $12,958.04    Paid    at Confirmation |
| | | | $651.07    Paid    at Confirmation |
| | | | $51,764.03 |

\*Class **13 JMB Urban 900** in the amount of $275,000 is the subject of a **Non-dischargeable Judgment** and therefore is not sought to be discharged.

# EXHIBIT 7

*Date: December 6, 2018*     *Branch Banking and Trust*     *Page 2 of 2*

*Reference: 20000240336916:20000240336916:20000179650928*

**OFFICIAL CHECK**     1001054051

68-236/514

ISSUING BRANCH 8540219-MIAMI - DADE - SOUTH BEACH

DATE May 29, 2018

PAY TO THE ORDER OF MOUNT SINAI     $295.91

Two Hundred Ninety-Five and 91/100ths Dollars

BB&T     $295.91

AUTHORIZED SIGNATURE

MEMO/PURCHASER LIZA HAZAN SS 6026 AHA3
6913 VALENCIA DRIVE MIAMI, FL 33109

⑈100105405⑈ ⑆051402369⑆ 000101901009 7⑈

---

| Date | 20180531 | Account Number | 0000001019010097 |
|------|----------|----------------|------------------|
| Amount | 29591 | CR-DR | D |
| Serial Number | 1001054051 | Transaction Link | 015835230463583031 |

Date: December 6, 2018 *Branch Banking and Trust* Page 2 of 2

Reference: 20000240336983:20000240336983:20000179650994



| | | | |
|---|---|---|---|
| **Date** | 20180531 | **Account Number** | 0000001019010097 |
| **Amount** | 244530 | **CR-DR** | D |
| **Serial Number** | 1001054325 | **Transaction Link** | 015835230463583031 |

Date: December 6, 2018       *Branch Banking and Trust*       Page 2 of 2

Reference: *20000240308683:20000240308683:20000179628693*



| Date | 20180531 | Account Number | 0000001019010097 |
|---|---|---|---|
| Amount | 324000 | CR-DR | D |
| Serial Number | 1001054034 | Transaction Link | 015835230463583031 |

*Date: December 6, 2018*     *Branch Banking and Trust*     *Page 1 of 1*

Reference: 20000240359127:20000240359127:20000179666132





| | | | |
|---|---|---|---|
| **Date** | 20180614 | **Sequence Number** | 2900128596 |
| **Account Number** | 0000001019010097 | **Amount** | 150254 |
| **CR-DR** | D | **Serial Number** | 1001054089 |
| **Transaction Link** | 013336290012859614 | | |

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 05/04/2022  Page 382 of 650

**THOMSON INFOLINK SEARCH SELECTIONS**

**Select one or more of the following and press ENTER.**     **0001** ITEMS FOUND
(D=display  I=Inquiry  S=Send to external application)

| S | Routing | Search Name | Search City/Addr | ST | Appl | H |
|---|---------|-------------|------------------|----|----|---|
| _ | 091000019 | WELLS FARGO BANK, NATIONAL ASS | ALBERT LEA | MN | | B |
| | | | 122 E MAIN ST | | | |

**F1** HELP     **F3** EXIT     **F5** REFRESH     **F7** BACKWARD  **F8** FORWARD  **F12** CANCEL

# EXHIBIT 8



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011081500311001001EDE7E

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: 2011081500311001 | Document Date: 08-15-2011 | Preparation Date: 08-15-2011 |
|---|---|---|

Document Type: DEED
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| MARZEC LAW FIRM<br>225 BROADWAY<br>SUITE 3000<br>NEW YORK, NY 10007<br>212-267-0200<br>dmarzec@marzeclaw.com | MARZEC LAW FIRM<br>225 BROADWAY<br>SUITE 3000<br>NEW YORK, NY 10007<br>212-267-0200<br>dmarzec@marzeclaw.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 Entire Lot | 1A | 1 EAST 62ND STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN: 2006000629750

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| ELIZABETH HAZAN<br>1 EAST 62ND STREET, APT. 1A<br>NEW YORK, NY 10065 | RAYMOND HOULE<br>1 EAST 62ND STREET, APT. 1A<br>NEW YORK, NY 10065 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 08-22-2011 11:55 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | **2011000295677** | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*

**City Register Official Signature**

Form 8002* 5/85 - 25M--Bargain and Sale Deed with Covenant against Grantor's Acts-Individual or Corporation. (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 15th day of August , 2011

BETWEEN

**ELIZABETH HAZAN,**
**residing at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the first part, and

**RAYMOND HOULE,**
**residing at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of  ten dollars [$10.00] and other valuable consideration  paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A ANNEXED HERETO AND MADE A PERT OF HEREOF.

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated December 22, 2005 and recorded on November 14, 2006 in CRFN 2006000629750.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

TAX MAP
DESIGNATION

DIST.

SEC.

BLK: 1137

LOT(S): 1100

APT: 1A

Grantor:

Elizabeth Hazan

STATE OF NEW YORK, COUNTY OF KINGS

On the 15th day of August the year 2011 before me, the undersigned, personally appeared **Elizabeth Hazan** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SYLVIA M WRONOWSKI
NOTARY PUBLIC
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

STATE OF NEW YORK, COUNTY OF KINGS

On the  day of February, 200  before me personally came to me known, who, being by me duly sworn, did depose and say that he resides at No.

that he is the  of, the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the board of directors of said Corporation.

NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF KINGS

On the  day of , 20  , before me personally came  and

to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

NOTARY PUBLIC _____

STATE OF NEW YORK, COUNTY OF KINGS

On the  day of , 19, before me personally came  the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did dispose and say that he resides at No. ; that he knows
to be the individual
described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw he/she/they execute the same; and that he, said witness, at the same time subscribed his name as witness thereto.

NOTARY PUBLIC

SECTION:

BLOCK : 1137

LOT : 1100

COUNTY OR TOWN: NEW YORK

TAX BILLING ADDRESS: 1 EAST 62ND STREET, APT. 1A

NEW YORK, NEW YORK

RETURN BY MAIL TO:

Elizabeth Hazan
6913 Fisher Island Drive
Miami, FL 33109

# *Bargain and Sale Deed*

## WITH COVENANT AGAINST GRANTOR'S ACTS

ELIZABETH HAZAN

TO

RAYMOND HOULE

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

First American Title Insurance Company of New York

Commitment Number   KEN-F-34513-NY-NY

## SCHEDULE A
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows.

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

BLOCK 1377      LOT 1100      UNIT 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York.

ALTA Commitment
Schedule C

(KEN-F-34513-NY-NY.PFD/KEN-F-34513-NY-NY/8)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2011081500311001001S10FF

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2011081500311001    Document Date: 08-15-2011    Preparation Date: 08-15-2011
Document Type: DEED

**ASSOCIATED TAX FORM ID: 2011081500064**

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RPTT FILING FEE EXEMPTION AFFIDAVIT | 5 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

FOR CITY USE ONLY

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

(Rev 11/2002)

| C1. County Code | | C2. Date Deed Recorded | | | |
| --- | --- | --- | --- | --- | --- |
| | | | Month | Day | Year |

C3. Book

OR

C5. CRFN

C4. Page

**PROPERTY INFORMATION**

1. **Property Location**  1  EAST 62ND STREET 1A   MANHATTAN   10065
   STREET NUMBER   STREET NAME   BOROUGH   ZIP CODE

2. **Buyer Name**  HOULE   RAYMOND
   LAST NAME / COMPANY   FIRST NAME

   LAST NAME / COMPANY   FIRST NAME

3. **Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
   LAST NAME / COMPANY   FIRST NAME

   STREET NUMBER AND STREET NAME   CITY OR TOWN   STATE   ZIP CODE

4. **Indicate the number of Assessment Roll parcels transferred on the deed**  1  # of Parcels OR ☐ Part of a Parcel

   4A. Planning Board Approval - N/A for NYC
   4B. Agricultural District Notice - N/A for NYC

5. **Deed Property Size**  FRONT FEET  X  DEPTH  OR  ACRES

   Check the boxes below as they apply:
   6. Ownership Type is Condominium ☐
   7. New Construction on Vacant Land ☐

8. **Seller Name**  HAZAN   ELIZABETH
   LAST NAME / COMPANY   FIRST NAME

   LAST NAME / COMPANY   FIRST NAME

9. **Check the box which most accurately describes the use of the property at the time of sale:**

| A | ☑ One Family Residential | C | ☐ Residential Vacant Land | E | ☐ Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| B | ☐ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

**SALE INFORMATION**

10. **Sale Contract Date**  8 / 15 / 2011
    Month Day Year

11. **Date of Sale / Transfer**  8 / 15 / 2011
    Month Day Year

12. **Full Sale Price** $  0

   ( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

13. **Indicate the value of personal property included in the sale**

14. **Check one or more of these conditions as applicable to transfer:**

| | |
| --- | --- |
| A | ☐ Sale Between Relatives or Former Relatives |
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type not Warranty or Bargain and Sale (Specify Below ) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ☑ None |

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. **Building Class**  R 4   16. **Total Assessed Value (of all parcels in transfer)**

17. **Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )**

   MANHATTAN 1377 1100

**CERTIFICATION**  I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**

BUYER SIGNATURE   _Raymond Houle_   08.15.11   DATE

STREET NUMBER   STREET NAME (AFTER SALE)

CITY OR TOWN   STATE   ZIP CODE

**BUYER'S ATTORNEY**

LAST NAME   FIRST NAME

000   000-0000
AREA CODE   TELEPHONE NUMBER

**SELLER**

SELLER SIGNATURE   08.15.11   DATE

2011081500064201

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

**BUYER**

*Laymond Houle*

BUYER SIGNATURE     08.15.11 DATE

**BUYER'S ATTORNEY**

| LAST NAME | FIRST NAME |
|---|---|

STREET NUMBER    STREET NAME (AFTER SALE)

| AREA CODE | TELEPHONE NUMBER |
|---|---|
| 000 | 000-0000 |

**SELLER**

CITY OR TOWN    STATE    ZIP CODE

SELLER SIGNATURE       08.15.11 DATE

2011081500064201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York    )
                     ) SS.:
County of           )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1 EAST 62ND STREET | , | 1A | , |
| --- | --- | --- | --- |
| **Street Address** | | **Unit/Apt.** | |

| MANHATTAN | New York, | 1377 | 1100 | (the "Premises"); |
| --- | --- | --- | --- | --- |
| **Borough** | | **Block** | **Lot** | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| Elizabeth Hozan | Raymond Houle |
| --- | --- |
| **Name of Grantor** (Type or Print) | **Name of Grantee** (Type or Print) |
| _signature_ | _Raymond Houle_ |
| **Signature of Grantor** | **Signature of Grantee** |

Sworn to before me this 15th date of August 19 2011

SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

Sworn to before me this 15th date of August 19 2011

SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2011081500064101



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY 11373-5108**

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)  Property receiving service: BOROUGH: MANHATTAN          BLOCK: 1377          LOT: 1100

(2)  Property Address: 1 EAST 62ND STREET Unit 1A, NEW YORK, NY 10065

(3)  Owner's Name:      HOULE , RAYMOND

Additional Name:

### Affirmation:

 Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

#### Please Note:

**A.** Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.** Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**. DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _Raymond Houle_ _____ Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS  REV. 8/08

2011081500064101



**2011120900724001001E5EB1**

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
|---|---|---|
| **Document ID:** **2011120900724001** | Document Date: 12-09-2011 | Preparation Date: 12-09-2011 |

Document Type: DEED
Document Page Count: 2

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| MARZEC LAW FIRM | 9221-0228 QUEBECK, INC. |
| 225 BROADWAY | 1 EAST 62ND STREET |
| SUITE 3000 | APT. 1A |
| NEW YORK, NY 10007 | NEW YORK, NY 10065 |
| 212-267-0200 | |
| dmarzec@marzeclaw.com | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62ND STREET |

**Property Type:** MULTIPLE RESIDENTIAL CONDO UNT

**CROSS REFERENCE DATA**

**CRFN:** 2011000295677

**PARTIES**

| **GRANTOR/SELLER:** | **GRANTEE/BUYER:** |
|---|---|
| RAYMOND HOULE | 9221-0228 QUEBEC, INC. |
| 1 EAST 62ND STREET, APT. 1A | 1 EAST 62ND STREET, APT. 1A |
| NEW YORK, NY 10065 | NEW YORK, NY 10065 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 12-29-2011 16:19 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2011000452186** | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

***City Register Official Signature***

---

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

Form 8002* 5/85 - 25M--Bargain and Sale Deed with Covenant against Grantor's Acts-Individual or Corporation. (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 9th day of December , 2011

BETWEEN

**RAYMOND HOULE,**
**residing at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the first part, and

**9221-0228 QUEBEC, INC.**
**located at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A ANNEXED HERETO AND MADE A PERT OF HEREOF.

Except as otherwise specificially permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated August 15, 2011 and recorded on In CRFN 2011081500064

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

TAX MAP
DESIGNATIO
N

DIST.

SEC.

BLK: 1137

LOT(S): 1100

APT: 1A

Grantor:

Raymond Houle

STATE OF NEW YORK, COUNTY OF KINGS

On the 9th day of December the year 2011 before me, the undersigned, personally appeared **Raymond Houle** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Sylvia M. Wronowski*   **SEAL**

NOTARY PUBLIC

**SYLVIA M WRONOWSKI**
**Notary Public, State of New York**
**No. 01WR6196869**
**Qualified in Queens County**
**Commission Expires November 24, 2012**

STATE OF NEW YORK, COUNTY OF KINGS

On the day of        , 200, before me personally came
to me known, who, being by me duly sworn, did depose and say that he resides at No.

that he is the   of, the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the board of directors of said Corporation.

NOTARY PUBLIC

## *Bargain and Sale Deed*

WITH COVENANT AGAINST GRANTOR'S ACTS

RAYMOND HOULE

TO

9221-0228 Quebec, Inc.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

STATE OF NEW YORK, COUNTY OF KINGS

On the day of , 20  , before me personally came  and

to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF KINGS

On the   day of , 19, before me personally came   the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did dispose and say that he resides at No. ; that he knows
                     to be the individual
described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw he/she/they execute the same; and that he, said witness, at the same time subscribed his name as witness thereto.

NOTARY PUBLIC

SECTION:

BLOCK : 1137

LOT : 1100

COUNTY OR TOWN: NEW YORK

TAX BILLING ADDRESS: 1 EAST 62ND STREET, APT. 1A

NEW YORK, NEW YORK

RETURN BY MAIL TO:

Marzec Law Firm
225 Broadway, S. 3000
New York, NY 10007



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | 2011120900724001001S9030 |
|---|---|

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2011120900724001     Document Date: 12-09-2011          Preparation Date: 12-09-2011
Document Type: DEED

---

**ASSOCIATED TAX FORM ID:** 2011120900210

---

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

CITY REGISTER

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed Recorded | Month | Day | Year |
|---|---|---|---|---|---|

| C3. Book OR | | C4. Page | |
|---|---|---|---|

C5. CRFN

**REAL PROPERTY TRANSFER REPORT**
**STATE OF NEW YORK**
**STATE BOARD OF REAL PROPERTY SERVICES**

# RP - 5217NYC

## PROPERTY INFORMATION

**1. Property Location**: 1 EAST 62ND STREET 1A | MANHATTAN | 10065
STREET NUMBER / STREET NAME | BOROUGH | ZIP CODE

**2. Buyer Name**: 9221-0228 QUEBEC, INC.
LAST NAME / COMPANY | FIRST NAME
LAST NAME / COMPANY | FIRST NAME

**3. Tax Billing Address** — Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY | FIRST NAME
STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**: 1 # of Parcels OR ☐ Part of a Parcel

**4A. Planning Board Approval - N/A for NYC**
**4B. Agricultural District Notice - N/A for NYC**

**5. Deed Property Size**: FRONT FEET X DEPTH OR ACRES

Check the boxes below as they apply:
**6. Ownership Type is Condominium** ☐
**7. New Construction on Vacant Land** ☐

**8. Seller Name**: HOULE | RAYMOND
LAST NAME / COMPANY | FIRST NAME
LAST NAME / COMPANY | FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | ☐ One Family Residential | C | ☐ Residential Vacant Land | E | ☐ Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
|---|---|---|---|---|---|---|---|---|---|
| B | ☑ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

## SALE INFORMATION

**10. Sale Contract Date**: 12 / 9 / 2011 (Month / Day / Year)

**11. Date of Sale / Transfer**: 12 / 9 / 2011 (Month / Day / Year)

**12. Full Sale Price** $ 0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ Sale Between Relatives or Former Relatives |
|---|---|
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type **not** Warranty or Bargain and Sale (Specify Below ) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ☑ None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**: R 4

**16. Total Assessed Value** (of all parcels in transfer): 1 0 6 3 2 8

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

MANHATTAN 1377 1100

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| *Raymond Haule* | 12/9/2011 | PRO SE | | BUYER'S ATTORNEY |
|---|---|---|---|---|
| BUYER SIGNATURE | DATE | | | |

| 1 EAST 62ND STREET  APT. 1A | | | | LAST NAME | FIRST NAME |
|---|---|---|---|---|---|
| | | | | 000 | 000-0000 |
| STREET NUMBER | STREET NAME (AFTER SALE) | | | AREA CODE | TELEPHONE NUMBER |

| NEW YORK | | NY | 10065 | SELLER *Raymond Haule* | 12/09/2011 |
|---|---|---|---|---|---|
| CITY OR TOWN | | STATE | ZIP CODE | SELLER SIGNATURE | DATE |

•

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York     )
                      ) SS.:
County of             )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1 EAST 62ND STREET | , | 1A | , |
|---|---|---|---|
| Street Address | | Unit/Apt. | |

| MANHATTAN | New York, | 1377 | 1100 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

RAYMOND HOULE

**Name of Grantor** (Type or Print)

Signature of Grantor

9221-0228 QUEBEC, INC.

**Name of Grantee** (Type or Print)

Signature of Grantee

Sworn to before me
this _____ date of December 20__

SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

Sworn to before me
this _____ date of December 20__

SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1

2011120900210101



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY 11373-5108**

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1) **Property receiving service: BOROUGH: MANHATTAN**  **BLOCK: 1377**  **LOT: 1100**

(2) **Property Address: 1 EAST 62ND STREET  Unit 1A, NEW YORK, NY 10065**

(3) **Owner's Name:**  **9221-0228 QUEBEC, INC.**

**Additional Name:**

## Affirmation:

 Your water & sewer bills will be sent to the property address shown above.

## Customer Billing Information:

### Please Note:

**A.** Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.** Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**. DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

## Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:
Signature: _Raymond Noule_  _12/9/11_ Date (mm/dd/yyyy)
Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS  REV. 8/08

2

2011120900210101



**2013072200949001001E2886**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

## RECORDING AND ENDORSEMENT COVER PAGE — PAGE 1 OF 3

| Document ID: **2013072200949001** | Document Date: 07-22-2013 | Preparation Date: 07-22-2013 |
|---|---|---|
| Document Type: DEED | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| REAL ESTATE HOLDING TRUST<br>1 E 62 STREET<br>NEW YORK, NY 10065<br>212-267-0200<br>REALESTATEHOLDINGTRUST@OUTLOOK.COM | REAL ESTATE HOLDING TRUST<br>1 E 62 STREET<br>NEW YORK, NY 10065<br>212-267-0200<br>REALESTATEHOLDINGTRUST@OUTLOOK.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot 1A | 1 EAST 62 STREET |
| Property Type: | SINGLE RESIDENTIAL CONDO UNIT | | | |

### CROSS REFERENCE DATA

CRFN: 2011000452186

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 9221-0228 QUEBEC, INC<br>11020 ARMAND-LAVERGNE<br>MONTREAL, QUEBEC H1H3P5<br>CANADA | REAL ESTATE HOLDINGS GROUP, LDC<br>60 MARKET SQUARE<br>BELIZE CITY<br>BELIZE |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed        08-12-2013 16:17
City Register File No.(CRFN):
        **2013000317610**

*Annette M Hill*

**City Register Official Signature**

Form 8002* 5/85 - 25M--Bargain and Sale Deed with Covenant against Grantor's Acts-Individual or Corporation. (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the    22nd    day of July , 2013

BETWEEN

**9221-0228 QUEBEC, INC,**
**located at 11020, Armand-Lavergne, Montreal-Nord (Quebec) H1H3P5**

party of the first part, and

**REAL ESTATE HOLDINGS GROUP, L.D.C.**
**located at 60 Market Square, Belize City, Belize**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of  ten dollars [$10.00] and other valuable consideration  paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A ANNEXED HERETO AND MADE A PART OF HEREOF.

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated December 29, 2011 and recorded on In CRFN 2011000452186

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

TAX MAP DESIGNATION

DIST.

SEC.

BLK: 1137

LOT(S): 1100

APT: 1A

Grantor: 9221-0228 Quebec, Inc.

By:  *Raymond Houle*
Raymond Houle, Director

STATE OF NEW YORK, COUNTY OF KINGS

On the 22TH day of July the year 2013 before me, the undersigned, personally appeared Raymond Houle personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

EDYTA A PIECHOTA
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01PI6229492
COMM. EXP. _October 12, 2014_

STATE OF NEW YORK, COUNTY OF NEW YORK

On the 22nd day of July 2013 before me personally came Raymond Houle to me known, who, being by me duly sworn, did depose and say that he resides at 11020, Armand-Lavergne, Montreal-Nord (Quebec) H1H3P5 that he is the of, the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the board of directors of said Corporation.

_____
NOTARY PUBLIC

# *Bargain and Sale Deed*

## WITH COVENANT AGAINST GRANTOR'S ACTS

---

9221-0228 Quebec, Inc.

TO

Real Estate Holdings Group, L.D.C.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

STATE OF NEW YORK, COUNTY OF KINGS

On the    day of ____, 20__, before me personally came Raymond Houle, to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that  he/she/they executed the same.

_____
NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF NEW YORK

On the    day of , 19, before me personally came  the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did dispose and say that he resides at No. ; that he knows                         to be the individual described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw he/she/they execute the same; and that he, said witness, at the same time subscribed his name as witness thereto.

NOTARY PUBLIC

SEAL

SECTION:

BLOCK : 1137

LOT : 1100

COUNTY OR TOWN: NEW YORK

TAX BILLING ADDRESS: 1 EAST 62ND STREET, APT. 1A

NEW YORK, NEW YORK

RETURN BY MAIL TO:

Owner
1 East 62nd Street, Apt. 1A
New York, NY 10065



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

**2013072200949001001SE607**

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| **Document ID: 2013072200949001** Document Type: DEED | Document Date: 07-22-2013 | Preparation Date: 07-22-2013 |

**ASSOCIATED TAX FORM ID:** 2013072200298

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed Recorded | Month Day Year |
| --- | --- | --- | --- |

C3. Book OR
C4. Page

C5. CRFN

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

---

**PROPERTY INFORMATION**

**1. Property Location** — STREET NUMBER: 1 — STREET NAME: EAST 62 STREET 1A — BOROUGH: MANHATTAN — ZIP CODE: 10065

**2. Buyer Name** — LAST NAME / COMPANY: REAL ESTATE HOLDINGS GROUP, LDC — FIRST NAME:

**3. Tax Billing Address** — Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY — FIRST NAME
STREET NUMBER AND STREET NAME — CITY OR TOWN — STATE — ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** — 1 # of Parcels OR ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
**6. Ownership Type is Condominium** ☐
**7. New Construction on Vacant Land** ☐

**5. Deed Property Size** — FRONT FEET ___ X ___ DEPTH ___ OR ___ ACRES

**8. Seller Name** — LAST NAME / COMPANY: 9221-0228 QUEBEC, INC — FIRST NAME:

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | ✓ One Family Residential | C | ☐ Residential Vacant Land | E | ☐ Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| B | ☐ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

---

**SALE INFORMATION**

**10. Sale Contract Date** — 7 / 22 / 2013 — Month Day Year

**11. Date of Sale / Transfer** — 7 / 22 / 2013 — Month Day Year

**12. Full Sale Price** $ 0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ Sale Between Relatives or Former Relatives |
| --- | --- |
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type **not** Warranty or Bargain and Sale (Specify Below ) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ✓ None |

---

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

**15. Building Class** R, 4

**16. Total Assessed Value (of all parcels in transfer)** 1 0 8 3 0 7

**17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )**

MANHATTAN 1377 1100

**Signature (both the grantor(s) and grantee(s) must sign)**

The undersigned certify that the above information contained in schedules A, B, and C, including any return, certification, schedule, or attachment, is to the best of his/her knowledge, true and complete, and authorize the person(s) submitting such form on their behalf to receive a copy for purposes of recording the deed or other instrument effecting the conveyance.

| Grantor signature | Title | Grantee signature | Title |
|---|---|---|---|

| Grantor signature | Title | Grantee signature | Title |
|---|---|---|---|

2013072200298301

# AFFIDAVIT OF COMPLIANCE
# WITH SMOKE DETECTOR REQUIREMENT
# FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York    )
                    ) SS.:
County of            )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1 EAST 62 STREET | | 1A |
|---|---|---|
| Street Address | , | Unit/Apt. |

| MANHATTAN | New York, | 1377 | 1100 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| Name of Grantor (Type or Print) | Name of Grantee (Type or Print) |
|---|---|
| Signature of Grantor | Signature of Grantee |

Sworn to before me this ___ date of _July_ 20 13

Sworn to before me this 22 date of _July_ 20 13

EDYTA A PIECHOTA
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01PI6229492
Commission Expires October 12, 2014

**SEAL**

EDYTA A PIECHOTA
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01PI6229492
Commission Expires October 12, 2014

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY  11373-5108**

# Customer Registration Form for Water and Sewer Billing

## Property and Owner Information:

(1)    Property receiving service: BOROUGH: **MANHATTAN**          BLOCK: **1377**          LOT: **1100**

(2)    Property  Address: **1  EAST 62 STREET   Unit 1A, NEW YORK, NY 10065**

(3)    Owner's Name:      **REAL ESTATE HOLDINGS GROUP, LDC**

         Additional Name:

## Affirmation:

 Your water & sewer bills will be sent to the property address shown above.

## Customer Billing Information:

### Please Note:

**A.**  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.**  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**.  DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way  relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

## Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _____  7/22/1?  Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

CS-7CRF-ACRIS   REV. 8/08

2013072200298101

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------X

U.S. Bank National Association, as trustee, on behalf of the
Holders of the HarborView Mortgage Loan Trust 2006-1
Mortgage  Loan Pass-Through Certificates, series 2006-1
                                            **Plaintiff**,

                     -against-


Elizabeth Hazan, Real Estate Holdings Group, L.D.C.,
Mortgage Electronic Registration Systems, inc., acting solely as
a nominee for America's Wholesale Lender, The Board of
Managers of The Spencer Condominium, NLG, LLC, New
York City Department of Finance, New York State Department
of Taxation and Finance and "JOHN DOE#1" through "JOHN
DOE#10", the last ten names being fictious and unknown to
the plaintiff, the person or parties intended being the persons or
parties, if any, having or claiming an interest in or lien upon the
mortgaged premises described in the Complaint,



                                    **Defendants**.
--------------------------------------------------------------------------X

**Index#:850240-2014**

**AFFIRMATION IN
OPPOSITION TO CROSS-
MOTION FOR DEFAULT
JUDGMENT AND FOR
MOTION TO DISMISS**


STATE OF NEW YORK          )
                          )     ss.:
COUNTY OF KINGS           )


SEAN NEIL MEEHAN, being first duly sworn, deposes and says:

1.      I am the member of Real Estate Holding Group, L.D.C. ("REHG"), defendant in the

instant action and am duly authorized to make this affidavit.  I am asking that this Court dismiss

the Plaintiff's complaint based on the lack of personal jurisdiction over REHG.

2.      I have personal knowledge of all facts contained herein.

3.      I reviewed the purported Affidavit of Service outrageously claiming that REHG was

served. Neither I, nor REHG, was ever served with a Summons and Complaint, any case notices,

or letters in any manner whatsoever, and in any location whatsoever.

4.      The Summons and Complaint is claimed to have been served on REHG through the New York Secretary of State. <u>See</u> **Exhibit A**. It is inexplicable why Plaintiff would submit that the service on the New York State Secretary of State qualifies as proper service as REHG is not a New York Corporation or Limited Liability Company. Attached as **Exhibit B** are print outs from the New York Department of State website showing search results that REHG is not a domestic or a registered/authorized business entity.

5.      REHG is in fact a Belize formed Limited Duration Company, and is not registered with the New York State Secretary of State.  Annexed as **Exhibit C** is a true copy of the Certificate of Incorporation with Memorandum of Association and Articles of Association.  Since the date of filing of the Complaint on July 1, 2014, until the date of this affidavit, I have not been served in any manner whatsoever. No other person is authorized to accept service on REHG's behalf and clearly -not the New York Secretary of State.

6.      At the time of the alleged service, because of a dispute with the condominium board, REHG and I were locked out of the premises per court order annexed as **Exhibit D**. Nevertheless, there was no mail correspondence from the Secretary of State at the address of the premises at 1 East 62nd Street, Apt. 1A, New York, NY.  It would be impossible as the Secretary of State never had any address on file for REHG.  None of the alleged actions by Plaintiff provided notice to REHG of this suit.  I did not learn about this suit until recently.

7.      REHG joins and adopts the motion and affidavit of Elizabeth Hazan requesting that this case be dismissed on jurisdictional grounds, and in the alterative, on the grounds raised in the motion papers.  Elizabeth Hazan's affidavit is hereby incorporated herein in its entirety by reference.  The purported cross-motion should be denied as a nullity as REHG was not served at

all. Moreover, REHG has good and valid defenses to this action as presented in the motion to dismiss.

8. REHG has not requested the relief herein previously.

WHEREFORE, REHG now moves for the following court order:

1. Pursuant to CPLR § 3211(a)(8), dismissing the case for failure to obtain jurisdiction over the moving defendants;

IN THE ALTERNATIVE, SHOULD THIS COURT FIND THAT JURISDICTION HAS BEEN ESTABLISHED AGAINST THE MOVING DEFENDANTS :

2. Pursuant to CPLR § 3211(a)(5), dismissing Plaintiff's Complaint, with prejudice, on the ground that the Complaint is time barred pursuant to the six-year statute of limitations—established by CPLR § 213(4)—which has now expired;

3. Pursuant to CPLR § 3211(a)(7), dismissing Plaintiff's complaint with prejudice, for failure to state a cause of action against the moving defendants;

4. Pursuant to CPLR § 3211(a)(1), dismissing Plaintiff's complaint with prejudice as a defense is founded upon documentary evidence;

5. Pursuant to CPLR 3211(a)(2) dismissing the complaint for lack of subject matter jurisdiction;

6. Pursuant to CPLR 3211(a)(3) for lack of capacity / standing to sue;

7. In the alternative, should the all Court deny relief to the moving defendants as per above, for leave to file an answer in this case to proceed to discovery with the meritorious defenses as laid out in this motion, and other grounds; and

8. For such and other and further relief that this Court may deem appropriate.

Dated: New York, New York
     July 1, 2015

Sean Neil Meehan
Manager,
Real Estate Holdings Group, L.D.C.

Sworn to before me this
1st day of July 2015

NOTARY PUBLIC

**Darius A Marzec**
Notary Public State of New York
No. 02MA6272827 -Qualified in
New York County
Commission Expires 11/26/2016

# EXHIBIT 9



**2017080301184001002ED19B**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 8 |
|---|---|

| Document ID: **2017080301184001** | Document Date: 11-14-2016 | Preparation Date: 08-30-2017 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 7

**PRESENTER:**

TITLEVEST AGENCY
44 WALL STREET, R-NY-608614
10TH FLOOR
NEW YORK, NY 10005
212-757-5800
RECORDINGS@TITLEVEST.COM

**RETURN TO:**

TITLEVEST AGENCY
44 WALL STREET, R-NY-608614
10TH FLOOR
NEW YORK, NY 10005
212-757-5800
RECORDINGS@TITLEVEST.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot 1A | 1 EAST 62 STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ *or* DocumentID_____ *or* _____ Year____ Reel____ Page_____ *or* File Number_____

### PARTIES

**MORTGAGOR/BORROWER:**

REAL ESTATE HOLDINGS GROUP, L.D.C.
60 MARKET SQUARE, P.O. BOX 364
BELIZE CITY
BELIZE

**MORTGAGEE/LENDER:**

AARONSON SCHANTZ BEILEY P.A.
100 S.E. 2ND STREET, 27TH FLOOR
MIAMI, FL 33131

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 145,000.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 145,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 725.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,450.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 362.50 | | |
| MTA: | $ | 405.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 2,942.50 | | |
| Recording Fee: | $ | 72.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 08-31-2017 12:35
City Register File No.(CRFN):
**2017000325773**

*Annette M Hill*

*City Register Official Signature*

**This Mortgage Agreement secures**
**a Promissory Note of even date**
**in the amount of $145,000.00.**

This instrument prepared by,
and after recording, return to:

Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131

(Reserved for Clerk of Court, New York
County)

---

## MORTGAGE AGREEMENT

THIS MORTGAGE AGREEMENT, executed the 14th day of November, 2016, by Real Estate Holdings Group, L.D.C. ("REHG"), of 60 Market Square, P.O. Box 364, Belize City, Belize (hereinafter the "Mortgagor"), to AARONSON SCHANTZ BEILEY P.A., ("ASBPA") whose mailing address is 100 S.E. 2nd Street, 27th Floor, Miami, Florida 33131 (hereinafter the "Mortgagee").

### W I T N E S S E T H:

WHEREAS, Mortgagor executed and delivered to Mortgagee that certain Assumption and Springing Guarantee Agreement and Secured Promissory Note (hereinafter the "Promissory Note"), of even date herewith, wherein Mortgagor has agreed to pay Mortgagee Principal and Interest (hereinafter the "Obligation"). The Mortgagor has agreed to secure the Obligations under the Promissory Note by granting this Mortgage (hereinafter the "Mortgage") to Mortgagee in respect to real property owned by Mortgagor located at: 1 East 62 Street Apt 1A, New York, NY 10065 (the "Property"). As more fully set forth in the parties' Promissory Note, this Mortgage shall become due eight months from the date of execution of the Promissory Note, or upon the sale of the Property, or refinancing of the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000) or upon any other Final Default as set forth in the Promissory Note or this Mortgage. Upon full payment of the Obligations, the Mortgagee shall promptly file and record a satisfaction of this Mortgage, and shall return the original Promissory Note and Mortgage to Mortgagee % Elizabeth Hazan.

NOW, THEREFORE, the Mortgagor, in consideration of the indebtedness and to secure the payment to Mortgagee of the Obligation provided for in the Promissory Note and in this Mortgage, has granted, bargained, sold and conveyed and by these presents do

grant, bargain, sell and convey unto Mortgagee the Property, as particularly described in the attached Schedule "A"

To have and hold the same together with the tenements, hereditaments, and appurtenances, unto the Mortgagee and their heirs and assigns, fee simple.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, do covenant with the Mortgagee and its members, officers, directors, employees, agents, legal representatives and assigns that the Mortgagor has full power and lawful right to convey the Property as aforesaid; that the Property is free from all voluntary encumbrances, with the exception of those listed herein on Schedule B, and that the Mortgagor, their heirs, legal representatives, successors or assigns will make such further assurances to perfect the fee simple to the Property in the Mortgagee, and its members, officers, directors, employees, agents, legal representatives and assigns as may reasonably be required, and that the Mortgagor hereby fully warrants the title to the Property and will defend the Property against the lawful claims of all persons whomsoever including for any tax deeds, claim of lien(s) or mortgage by any governmental or non-governmental authority or taxing authority.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, hereby covenants and agrees to pay all and singular sums of money payable by virtue of the Obligations and this Mortgage.

This Mortgage shall be recorded upon the earlier of: (i) Six (6) months from the date of the Promissory Note; (ii) the entry into a contract for sale (or prior to actual sale) of all or part of the Property; or (iii) the refinancing of, or the impending refinancing of, the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000); or (iii) upon any other Final Default as set forth in the Promissory Note or this Mortgage.

Anything herein to the contrary notwithstanding, the Mortgagor and the Mortgagee agree that the Mortgagee does not at any time intend to charge nor does the Mortgagor have any obligation to pay interest at a rate which shall exceed the limits specified under the laws under the State of New York applicable to this Mortgage evidencing the Obligation. Any interest previously paid which would be construed under New York law as usurious interest shall be deemed to have been a payment against principal as of the time of payment.

No waiver of any agreement, covenant, condition, representation, or warranty under this Mortgage or the Promissory Note shall at any time hereafter be held to be a waiver of any of the other terms thereof or a continuing waiver thereof. Time is of the essence under all terms and conditions of the Mortgage and Indemnification Agreement.

2

Each provision of this Mortgage is intended to be severable and the invalidity or illegality of any portion of this Mortgage shall not affect the validity or legality of the remainder thereof. Any ambiguities contained in this Mortgage shall not be construed against the preparers of this document.

Upon the failure of Mortgagor to abide by any of the provisions of this Mortgage and/or the Promissory Note, including the failure to satisfy the Obligation and Promissory Note, Mortgagee shall be entitled to foreclose upon this Mortgage.

**MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, OR THE INDEMNIFICATION AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING HERETO OR THERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE ACCEPTING THIS MORTGAGE.**

IN WITNESS WHEREOF, the Mortgagor has hereunto set its hand and seal to this Mortgage and Spreader Agreement on the day and year first above written.

Print Name: _Sean W Meehan_
as Manager and duly authorized representative of REHG

The foregoing Mortgage was sworn to, subscribed and acknowledged before me this 14 day of June, 2015, by _Sean W. Meehan_, who is personally known to me and did (did not) take an oath.

LEILA BENAVIDES
Notary Public State of Florida
My Comm. Expires Nov 19, 2017
Commission # FF 021474

Print Name:
Notary Public, State of Florida at Large
My commission expires:

| Signed, sealed, read and delivered in the presence of: | Signed, sealed, read and delivered in the presence of: |
|---|---|
| Print Witness Name: _L M. Schantz_ | Print Witness Name: _Roxana Sucar_ |

3

State of Florida

County of Miami-Dade

On the 14th day of November in the year 2016, before me, the undersigned, personally appeared **Sean N. Meehan**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Miami, Miami-Dade County, Florida.

_____
Notary Public

Printed Name: <u>Geoffrey S. Aaronson</u>

My Commission Expires:
<u>June 16, 2018</u>

GEOFFREY S. AARONSON
Notary Public · State of Florida
My Comm. Expires Jun 16, 2018
Commission # FF 121262

4



**First American**

MORTGAGE SERVICES

### SCHEDULE A

### DESCRIPTION OF MORTGAGED PREMISES

Title No.: **DS140013366**

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

Page 2 of 12

SWM

SWM

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

## **SCHEDULE B**

1.  First Mortgage: U.S. Bank, approximately $2.5 Million

2.  Second Mortgage: Real Time Resolutions, as Servicer, approximately $350,000

3.  Spencer Condo: Settlement amount: approximately $426,000 in 3/15; Proof of Claim
    amount as of 1/11/16 approx'y $668,000 plus accruing Maintenance and attorney fees

4.  IRS Lien approx'y $394,000

5.  Attorney Liens of Bruce Jacobs ($55,000 no interest); Robert P. Lithman ($95,000);
    and Mark Cohen ($25,000)

# EXHIBIT 10



**ORDERED in the Southern District of Florida on December 6, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                              Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                   Chapter 11

                Debtor.
_____/

**ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT,**
**AND ENTER DISCHARGE TO REORGANIZED DEBTOR**

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745].  The Court has further considered the following:

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al*. [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

CASE NO. 16-10389-BKC-AJC

Having considered the record, including NLG's Objection and Opposition,[2] and finding that due and adequate notice has been given and no additional notice is required, the Court grants the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the Final Report. The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to a discharge pursuant to 11 U.S.C. § 1141(d)(5). However, a Final Decree will not yet be issued and the case shall not be re-closed at this time.

**I.  11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to individual debtor who has not completed all plan payments**

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered by the Court until completion of all payments under the confirmed plan. *11 U.S.C. §1141(d)(5)(A).* An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia,* an individual debtor has made all plan payments to unsecured creditors. Section 1141(d)(5)(B) provides:

> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if –
>
> (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
> (ii) modification of the plan under section 1127 is not practicable; and
> (iii) subparagraph (C) permits the court to grant a discharge.

---

[2]  Although this Court previously determined that NLG is not a creditor and has no claim against the Reorganized Debtor [*see*, *Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No. 16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules same.

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –
>
> > (i) section 522(q)(1) may be applicable to the debtor; and
> > (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);
> >
> > and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C. § 1141(d)(5)(B). *See*, *11 U.S.C. § 1141(d)(5)*; *see also*, *In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor. In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C. § 1141(b)(5)(B) so as to be entitled to an early discharge.[3] Exhibit "A" attached to both the Motion

---

[3] The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

> MS. ARMENGOL:
>
> … I can speak as to the procedural propriety of the Court awarding a discharge now. I concur with Mr. Pugatch -- and for the record, the code section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid

in the Plan, have been paid in full.  As a result, the value of property [payments] distributed under

the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended

Plan") on account of each unsecured claim is not less than the amount that would have been paid

on such claim if the bankruptcy estate would have been liquidated under chapter 7.  Therefore, the

Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i).   The Court takes judicial

notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018

to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the

Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made

pursuant to the Fourth Amended Plan and Confirmation Order.  Moreover, the Court finds 11

U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not

practicable under 11 U.S.C. § 1127.

II.     **The Fourth Amended Plan, the Confirmation Order and this Court's
prior Orders provide additional bases to grant relief**

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior

rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to

completion of payments under the Plan.  The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.
Looking at the plan, Your Honor, the only other claims were secured.  So
even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay
pursuant to the plan, they still have that security and that lien.  And a
priority claim with the IRS – and I'm not sure where that stands, but Your
Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority
to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors. For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to *unsecured creditors*, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to *unsecured creditors*.

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added]. The Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to *unsecured creditors* have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added]. The Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor upon the completion of plan payments to unsecured creditors under the Plan. Specifically, paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to **Unsecured Creditors**, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all payments contemplated under the Plan to **Unsecured Creditors**.

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to **Unsecured Creditors** have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation [ECF No. 692] (the "Agreed Order"). The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the ***unsecured creditors*** have been made. The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added]. The Court finds that the Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class 12 unsecured creditors.

### III. NLG's Objection and Opposition

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG, whose claim the Court disallowed, asserted that a discharge should not be granted at this time because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full. The Court took the matter under advisement to consider the objection; and upon further consideration and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding, in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns.  Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge.  However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals.  It is the policy of the Court to not close a case until all appeals are finally resolved and over.  Therefore, it is

**ORDERED AND ADJUDGED**:

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

*CASE NO. 16-10389-BKC-AJC*

2.   The Final Report is **APPROVED.**

3.   NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos.
     757 and 763] are **GRANTED IN PART** with respect to reopening this case, and
     not closing the case until the final disposition of all pending motions and appeals
     herein, but NLG, LLC's Opposition and Objection to the granting of the discharge
     are **DENIED** and **OVERRULED**.

4.   The Reorganized Debtor is entitled to a discharge in accordance with the provisions
     of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation
     Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions
     of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation
     and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11
     in accordance with the provisions of 11 U.S.C. § 1141(d).

5.   The discharge issued to the Reorganized Debtor does not discharge or otherwise
     affect the JMB non-dischargeable judgment.

6.   The discharge issued to the Reorganized Debtor does not discharge the Reorganized
     Debtor from her personal monetary liability in the amount of One Hundred Nine
     Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board
     of Managers of Spencer Condominium. The Reorganized Debtor has other non-
     monetary obligations under the Settlement Agreement with the Board of Managers
     of Spencer Condominium, as provided for in the treatment of Class 11 under the
     Fourth Amended Plan and the Confirmation Order, and such non-monetary
     obligations are not impacted by the discharge.  The New York courts have exclusive

jurisdiction over the settlement between those parties.

7.   This case shall remain open pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing this case.

### ###

Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                      Case No.: 16-10389-AJC

LIZA HAZAN, a/k/a ELIZABETH                 Chapter 11
HAZAN,

      Debtor.

_____/

> This matter is being filed on an emergency basis because (a) Chris Kosachuk, NLG, LLC, Juan Ramirez and Astrid Gabbe continue to blatantly violate and disregard various orders of this Court; and (b) their continued violations of Court Orders are causing potential irreparable harm to the Reorganized Debtor and third parties.

**EMERGENCY MOTION FOR ORDER TO SHOW CAUSE AS TO WHY**
**CHRIS KOSACHUK, NLG, LLC, JUAN RAMIREZ AND ASTRID GABBE**
**SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATIONS OF**
**THIS COURT'S JUDGMENT, CONFIRMATION ORDER AND DISCHARGE ORDER**

Reorganized Debtor Liza Hazan a/k/a Elizabeth Hazan ("Hazan"), respectfully requests the entry of an Order to Show Cause as to why Chris Kosachuk, NLG, LLC, Juan Ramirez and Astrid Gabbe should not appear and show cause why they each individually should not be held in contempt of Court for continued willful and deliberate violations of this Court's Final Judgment [Case No.:16-01439, ECF 238], Confirmation Order [ECF 691] and Discharge Order [ECF 766], and in support thereof respectfully states:

## INTRODUCTION

1.     To suggest that the recent developments described herein are inappropriate would be a gross understatement. Rather, the actions of Chris Kosachuk ("Kosachuk"), NLG, LLC

("NLG"), and their attorneys, Juan Ramirez, Esq. ("Ramirez") and Astrid Gabbe, Esq. ("Gabbe," and together with Kosachuk, NLG and Ramirez, the "Kosachuk Group") since the filing of Debtor's *Amended Expedited Motion for Contempt, Sanctions, Damages, and Punitive Damages* on October 18, 2018 [ECF 748] ("First Contempt Motion") are repugnant to our legal system, make a mockery of this Court, and they trifle with our legal system without any compunction. The well-reasoned Orders of this Court and the principles of res judicata have been flagrantly disregarded yet again by the Kosachuk Group, who appears to have no respect for this Court and simply and blatantly disregards its Orders at will. This Court undertook the yeoman task of analyzing the long and litigious history between these parties, reconciling the numerous prior orders of other courts, and resolving the many issues in this case. Nevertheless, the Kosachuk Group continues to ignore the authority of this Court and engage in direct violations of this Court's Orders.

2.      The Court will recollect that on November 24, 2018, the Court held a hearing on Hazan's First Contempt Motion and is presently considering proposed forms of order. This Emergency Motion for entry of an Order to Show Cause ("Show Cause Motion") is predicated upon ***new actions that unabashedly have been taken by the Kosachuk Group since the filing of the First Contempt Motion on October 18, 2018 and subsequently heard by the Court on November 24, 2018.***

### RECAP OF COURT ORDERS AS OF OCTOBER 18, 2018

3.      A brief recap of Court orders issued prior to the filing of Debtor's First Contempt Motion on October 18, 2018 is useful and important to the context of these matters:

2

- After trial was conducted in the matter of Selective Advisors Group, LLC ("Selective") and Hazan v. NLG, Adversary Case 16-01439, on November 1, 2017, this Court entered judgment (the "Judgment") determining that:

    i.    The Scola Judgment in favor of NLG and against the Debtor has been paid and satisfied;

    ii.    The note and mortgage in favor of NLG has been paid and satisfied;

    iii.    The note and mortgage in favor of NLG is deemed satisfied of record;

    iv.    The Gordo Foreclosure Judgment entered in favor of NLG and against the Debtor has been paid and satisfied;

    v.    The Gordo Foreclosure Judgement is deemed satisfied of record; And

    vi.    The Debtor has good title to property located at 6913 Valencia Drive, Miami, Florida 33109

- NLG appealed the Judgment to the District Court but did not obtain a stay pending appeal. For various reasons, both Judge Moreno and this Court denied NLG's motions for stay. The appeal remains pending.

- This Court's Judgment was entirely consistent with the prior orders entered by Judge Jaffe in New York Supreme Court, Judge Hagler in New York Supreme Court and Judge McMahon in U.S. District Court for the Southern District of New York, all of whom concluded that the judicial assignment of the NLG judgment against Hazan to Selective by Judge Lopez (in the Florida Circuit Court) was valid.[1]

---

[1] NLG through Ramirez unsuccessfully sought to revisit this assignment in all of these courts, including rehearing before Judge Lopez, before this Court had the opportunity to lay the matter to final rest.

AARONSON SCHANTZ BEILEY P.A. | ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

- On June 12, 2018, the Court entered its final Order Confirming Plan of Reorganization [ECF 691] ("Confirmation Order"). The Confirmation Order provided for an injunction specifically directed to NLG. It provided that:

> All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

It also provided that:

> All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

- At the confirmation hearing, the Court generously advised Ramirez that absent a stay of the Confirmation Order, that Order might not be appealable after substantial consummation. The Kosachuk Group made no effort to obtain a stay of the Confirmation Order. Since Confirmation, the Debtor has substantially consummated her Plan. She has paid over half a million dollars to unsecured creditors pursuant to the confirmed Plan.

## RECAP OF KOSACHUK GROUP'S ACTIONS AS OF OCTOBER 18, 2018

4.    A summary of the actions of the Kosachuk Group prior to October 18, 2018, which resulted in the filing of Debtor's First Contempt Motion, also is useful here:

- On August 9, 2018, *after* entry of the unstayed Judgment and *after* entry of the unstayed Confirmation Order, Ramirez recorded a Notice of Lis Pendens against the Debtor's homestead residence in favor of NLG. (See Exhibit "1" to the First Contempt Motion). The Lis Pendens provides for notice "of the institution of a cross-claim for foreclosure by Defendant/Crossclaim Plaintiff NLG, LLC pursuant to its Final Judgment of Foreclosure;"

4

- In *JP Morgan Bank, NA v. Elizabeth Hazan a/k/a Liza Hazan et al.*, Case No.: 2013-25902 (Fla. 11th Cir. Ct.) ("State Court Case"), wherein JP Morgan has filed a foreclosure action, on October 1, 2018, *after* entry of the unstayed Judgment and *after* entry of the unstayed Confirmation Order, Ramirez filed papers on behalf of NLG asserting its alleged continuing lien on the Debtor's homestead and stating that NLG "has a valid lien on the Debtor's home for the total amount specified in the Foreclosure Judgment;"

- In *NLG, LLC v. Selective Advisors Group, LLC,* pending in the U.S. District Court for the Southern District of Florida, Case No.: 1:18-CV-21398-JEM ("District Court Case"), on August 22, 2018, NLG/Ramirez filed a Motion for Summary Judgment seeking *yet again* to vacate the 2012 Quebec judgment against NLG and assigned to Selective Advisors (which was domesticated in Florida and recognized by this Court, Judge Lopez in the Florida State Court, and three New York Courts, and was reconciled with the Judge Gordo case).  Again, this was done *after* entry of the unstayed Judgment and *after* entry of the unstayed Confirmation Order.

### SINCE THE FIRST CONTEMPT MOTION WAS FILED

5.     This Court heard argument on November 24, 2018 at 3:00 p.m. on Debtor's First Contempt Motion, which sought to have this Court hold Kosachuk, NLG and Ramirez in contempt for having violated the Judgment and the Confirmation Order. That matter remains under advisement.

6.     However, since the First Contempt Motion was filed on October 18, 2018 and indeed, on some occasions even since the November 24, 2018 hearing was held on that motion,

AARONSON SCHANTZ BEILEY P.A. | ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

the Kosachuk Group has continued *unabated and intentionally* to violate this Court's Judgment and the Confirmation Order. More specifically:

- On November 8, 2018, Ramirez appeared as both counsel and as a "creditor" of NLG at a hearing in New York Supreme Court ("New York Case"), seeking yet again to set aside the 2012 Quebec judgment against NLG, the same judgment domesticated in Florida, assigned to Selective, and recognized by this Court, Judge Lopez and three New York Courts. At a hearing before Judge Hagler in the New York Case, Kosachuk, who like Ramirez, argued as an attorney[2] and as a "creditor" of NLG, specifically stated to Judge Hagler that there was no stay in effect:

  > THE COURT: If you get a stay, contact me,
  > and I'll act appropriately.
  > MR. KOSACHUK: There is no stay.
  > THE COURT: There is no stay at this time.

  Transcript filed in this Case, ECF 765, Pg 24

  Judge Hagler has taken the Kosachuk Group's latest efforts under advisement. It is respectfully suggested that if Judge Hagler were to receive this Court's ruling from the November 24, 2018 hearing on Debtor's First Contempt Motion, the matter in New York would be resolved.

- In the District Court Case, (again seeking to set aside the 2012 New York Quebec judgment against NLG) on November 14, 2018, *after* entry of the unstayed Judgment and *after* entry of the unstayed Confirmation Order, Ramirez and Gabbe, on behalf of NLG, filed a motion seeking Rule 11 sanctions against Selective ("Rule 11 Motion") for having failed to "immediately withdraw with prejudice any

---

[2] Kosachuk is not an attorney.

6

and all filings in opposition to NLG's Amended Complaint for Declaratory Judgment." In the District Court Case, NLG/Ramirez/Gabbe have the temerity to reference this Court and to unilaterally dismiss and flippantly disregard this Court's unstayed Judgment:

> After Judge Gordo rejected all of Selective's arguments surrounding the Judgment by Confession, Hazan and Selective filed an Adversary Proceeding raising those same arguments in front of Bankruptcy Judge A. Jay Cristol. Judge Gordo was informed that Selective had declared the Judgment by Confession satisfied, without explanation, either in New York or in her court, so she proceeded to enter her Foreclosure Order and her Foreclosure Judgment. Despite this, and without any record support from the proceedings in New York, or any other court, Judge Cristol offset NLG's Foreclosure Judgment with the Judgment by Confession, in effect canceling the state court judgment and the mortgage, in violation of the well-settled principals of Rooker-Feldman and res judicata.

> District Court Case 1:18-cv-21398-JEM, ECF 64, Pg.3

The District Court Case continues unabated. On November 30, 2018, at the request of NLG/Ramirez, Judge Martinez referred the Rule 11 Motion to Magistrate Judge Alicia M. Otazo-Reyes for resolution. The Motion for Sanctions has been set for hearing by Magistrate Judge Alicia M. Otazo-Reyes on January 3, 2019. Again, it is respectfully suggested that if Magistrate Judge Alicia M. Otazo-Reyes were to receive this Court's ruling from the November 24, 2018 hearing on Debtor's First Contempt Motion, the matter would be resolved.

7.      On December 7, 2018, this Court entered its Discharge Order in this case, discharging Hazan of her Chapter 11 debts (but for two debts as to which discharge was waived), and ordered that:

> the Reorganized Debtor is DISCHARGED pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such

7

confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

8. However, notwithstanding this Court's entry of the unstayed Judgment, the unstayed Confirmation Order, and now the Discharge Order, the Kosachuk Group is attempting now to proceed with **discovery** in NLG's appeal of the Confirmation Order before Judge Moreno in the U.S. District Court, Southern District of Florida, Case No. 18-24272-CIV-MORENO ("District Court Appeal"). See attached Exhibit "A." Ramirez and Gabbe, on behalf of NLG, have subpoenaed banking information, bank account information and bank account statements, social security number signature cards, and login password online confidential information from date of account opening to present, and personal and business online information regarding the Reorganized Debtor and others. Aside from the fact that neither the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure nor the Local Bankruptcy Rules or the Local Federal Rules have any provisions authorizing a fishing expedition via document discovery in a pending bankruptcy appeal, these efforts from a non-creditor violate this Court's unstayed Judgment and the unstayed Confirmation Order, and now this Court's Discharge Order as well.

## THE KOSACHUK GROUP'S LATEST GAMBIT

9. In the latest round of filings by the Kosachuk Group, since the entry of (a) the unstayed Judgment; (b) the unstayed Confirmation Order, (c) the domestication of the New York 2012 Quebec judgment, and their challenges over the last seven years before state Judges (d) Jaffe, (e) Hagler, (f) Lopez and (g) Gordo, and federal Judges (h) McMahon and (i) Martinez; now, *for the first time,* the Kosachuk Group is seeking to challenge the 2012 Quebec judgment based upon the proposition that New York law only permits confessions of judgment for contract debts and not torts.

Aaronson Schantz Beiley P.A. | One Biscayne Tower | 2 S. Biscayne Blvd., 34th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

10.     Even if the Kosachuk Group's new proposition were valid, does that erase the domestication in Florida and approximately seven court rulings over a period of *seven years,* when the Kosachuk Group could have/ought to have, asserted these defenses?  Is not the Kosachuk Group subject to latches, equitable estoppel,j and *res judicata*.

11.     In the instant case, the Quebec judgment (thereafter assigned to Selective) was properly domesticated in Florida under the Florida Enforcement of Foreign Judgments Act ("FEFJA").  (The Kosachuk Group asserted the invalidity of the New York judgment both at initial hearing and upon rehearing before Judge Lopez.  They failed to post a bond, and Judge Lopez domesticated the judgment.)

12.     In a recent analogous case, the Florida Supreme Court had occasion to review the question of whether a properly domesticated judgment was enforceable when the underlying foreign judgment became unenforceable. In *Patrick v. Hess*, 212 So. 3d 1039 (Fla. 2017), *reh'g denied,* No. SC15-1147, 2017 WL 1046532 (Fla. Mar. 20, 2017), the Court concluded that a properly domesticated judgment in Florida is enforceable notwithstanding the inability to enforce it in the state of origin:

> we hold that the twenty-year statute of limitations found in section 95.11(1) applies to the enforcement of a foreign judgment after it is recorded under FEFJA. This interpretation gives full effect to the legislative intent to treat a foreign judgment recorded under FEFJA as a judgment of this state by subjecting it to the same enforcement limitations applicable to domestic judgments. See § 55.503(1), Fla. Stat.; *Nadd*, 804 So.2d at 1229 n.7.
>
> *Patrick v. Hess*, 212 So. 3d 1039, 1044 (Fla. 2017), *reh'g denied,* No. SC15-1147, 2017 WL 1046532 (Fla. Mar. 20, 2017)

Obviously, the underlying circumstances of each case are different.  In *Patrick,* the foreign judgment was no longer enforceable as a matter of limitations law; in this case, the Kosachuk Group argues seven years late, that the underlying judgment was wrongfully entered under New

9

York law.  In both cases, the judgments were properly domesticated in Florida.  The voidability *vel non* of the underlying judgment does not automatically erase *seven years of failure to assert their claims, and the judgments of seven courts that reviewed this*.  *See Tannenbaum v. Shea*, 133 So. 3d 1056 (Fla. Dist. Ct. App. 2014).

<u>**CONCLUSION**</u>

13.     Not only has the Kosachuk Group violated, deliberately, intentionally and with malice, the unstayed Judgment and the unstayed Confirmation Order, resulting in the Debtor's First Contempt Motion filed on October 18, 2018 and heard on November 24, 2018, but they *continue* to violate this Court's Orders with impunity, including now the Discharge Order.  The applicable law was fully briefed in the First Contempt Motion.  At this point, one wonders whether the Kosachuk Group will ever abide by an Order of this Court, or will Kosachuk, NLG, Ramirez and Gabbe instead continue to thumb their respective noses at this Court and believe that they can continue to litigate indirectly against the Debtor with impunity, in any forum and in any manner that they wish, irrespective of the Orders of this Court precluding such actions.

14.     This is not a game.  The actions of the Kosachuk Group, particularly those of Ramirez and Gabbe as attorneys and officers of the Court, are very disturbing and they undermine the very essence of our legal system.  Are Kosachuk, NLG, Ramirez and Gabbe above the law?  Are they exempt from the force and effect of this Court's Orders?  Yet they continue to act with impunity, as though the Court's Orders and the rule of law do not apply to them.  At this point, one wonders whether the litigiousness of the Kosachuk Group will ever end, and what it will take to achieve their compliance with Orders of this Court.  The Debtor respectfully submits that achieving their compliance may only be obtained by this Court's entry of an Order to Show Cause

Aaronson Schantz Beiley P.A. | One Biscayne Tower | 2 S. Biscayne Blvd., 34th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

to each member of the Kosachuk Group as to why they should not be held in contempt of Court and sanctioned as a result of their actions described herein.

      WHEREFORE, for the reasons set forth herein and in the prior Motion for Sanctions incorporated herein, the Reorganized Debtor seeks the following:

      1.      Entry of an Order to Show Cause why Chris Kosachuk, NLG, LLC, Juan Ramirez and Astrid Gabbe to appear and show cause why they should not be held in contempt of Court and sanctioned on a daily basis until:

      a.      With regard to the action pending in New York before Judge Hagler entitled, 9197-5904 Quebec, Inc., Plaintiff,vs. NLG, LLC, a Delaware Limited Liability Company, Defendant, in the Supreme Court of The State of New York, County of New York: Trial Term Part 17, Index No. 101875/2012, Kosachuk, NLG, Ramirez and Gabbe withdraw their latest Motion to Vacate Judgment with prejudice and provide Judge Hagler with copies of this Court's unstayed Judgment, the unstayed Confirmation Order, the Discharge Order, and any Order to Show Cause entered by this Court, as well as any other Order(s) entered by this Court in connection with the requested Order to Show Cause;

      b.      With regard to the same action pending in New York before Judge Hagler, Kosachuk, NLG, Ramirez and Gabbe withdraw their Motion to Vacate and request that the Court refrain from any further rulings in the case;

      c.      With regard to the District Court Case (Case No. 18-21398-CIV-MART1NEZ-OTAZO-REYES), seeking to set aside the underlying Quebec New York judgment, Kosachuk, NLG, Ramirez and Gabbe dismiss the case with prejudice;

      d.      With regard to the District Court Appeal of the Confirmation Order (Case No. 18-24272-CIV-MORENO), Kosachuk, NLG, Ramirez and Gabbe withdraw all discovery and

Aaronson Schantz Beiley P.A. | One Biscayne Tower | 2 S. Biscayne Blvd., 34th Floor | Miami, Florida 33131 | Ph 786.594.3000 | Fax 305.424.9336

direct that BB&T BANK located at 1200 Brickell Avenue, FL 1, Miami, Florida 33131-3209 be directed not to respond to the subpoena or produce any documentation, with copies of such direction to be served on undersigned counsel;

   e. With regard to the District Court Appeal of the Confirmation Order (Case No. 18-24272-CIV-MORENO), Kosachuk, NLG, Ramirez and Gabbe turn over all discovery produced by BB&T BANK located at 1200 Brickell Avenue, FL 1, Miami, Florida 33131-3209 to undersigned counsel forthwith, and each member of the Kosachuk Group destroy all copies of such discovery and file an affidavit: (i) confirming that all such documentation has been turned over to undersigned counsel, and (ii) verifying under oath that all copies of such documentation, in all formats including paper, electronic and digital have been deleted or destroyed;

  2. An order declaring that only the Bankruptcy Court for the Southern District of Florida has jurisdiction over all matters orders and judgments that were reconciled in the adversary case proceeding to the exclusion of all the other courts except for the appeal thereof to the District Court;

  3. An order declaring that, but for the pending appeal to the District Court, NLG, Kosachuk, Ramirez, Gabbe and their officers, agents, representatives are collaterally estopped and enjoined from challenging and relitigating all matters, judgments, and orders reconciled by, addressed in, and set forth in the Judgment;

  4. An award of costs and attorney fees associated with this Motion; and

  5. Any other and further relief that the Court deems appropriate in the premises.

AARONSON SCHANTZ BEILEY P.A. | ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

Respectfully submitted,
**Aaronson Schantz Beiley P.A.**

/s/ *Geoffrey S. Aaronson*
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
gaaronson@aspalaw.com
One Biscayne Tower, Floor 34
2 S. Biscayne Boulevard
Miami, Florida 33131
Ph: 786.594.3000
Fax: 305.424.9336
*Attorneys for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished via e-mail through the Court's CM/ECF service to the below listed parties on December 13, 2018.

- Geoffrey S. Aaronson    gaaronson@aspalaw.com, 5408891420@filings.docketbird.com
- Joel M. Aresty    aresty@mac.com
- Daniel A Bushell    dan@bushellappellatelaw.com
- Elizabeth J Campbell    ecampbell@lockelord.com, marian.scott@lockelord.com
- Rebecca N Casamayor    rcasamayor@haber.law, cpla@haber.law
- Robert P. Charbonneau    rpc@agentislaw.com, nsocorro@agentislaw.com;bankruptcy@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com
- Adam A Diaz    adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com
- Jeffrey S Fraser    bkfl@albertellilaw.com, anhsalaw@infoex.com
- Michael A Friedman    mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-law.com;vlambdin@gjb-law.com
- Robert C Furr    ltitus@furrcohen.com, atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com;furrrr84158@notify.bestcase.com
- Astrid Gabbe    astridgabbe@gmail.com
- Joe M. Grant    jgrant@marshallgrant.com, jenna-munsey-6083@ecf.pacerpro.com;efile@marshallgrant.com;mg197ecfbox@gmail.com
- Robert A Gusrae    ROBERT.GUSRAE@GMAIL.COM, Gusraelaw@gmail.com
- David B. Haber    dhaber@dhaberlaw.com, rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com;cpla@dhaberlaw.com
- David W. Langley    dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

13

- Tamara D McKeown    tdmckeown@mckeownpa.com
- James B Miller    bkcmiami@gmail.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Ashley Prager Popowitz    Ashley.popowitz@mccalla.com, flbkecf@mccalla.com
- Steven G. Powrozek    spowrozek@logs.com, electronicbankruptcynotices@logs.com
- Eric J Silver    esilver@stearnsweaver.com, rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com
- Michael W Simon    ppaoletti@simonsigalos.com, dgasser@simonsigalos.com
- Andrew D. Zaron    azaron@leoncosgrove.com, jgomez@leoncosgrove.com

s/ Geoffrey S. Aaronson
Geoffrey S. Aaronson, Esq.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

*11-29-18 @ 10:30Am*
*by KM SPS1493*

| | |
|---|---|
| NLG, LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 18-24272-CIV-MORENO |
| SELECTIVE ADVISORS GROUP, LLC & LIZA HAZAN A/K/A ELIZABETH HAZAN | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                          BB&T BANK
                                         1200 BRICKELL AVE FL 1
                                         MIAMI, FL 33131-3209
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

    SEE ATTACHED SCHEDULE "A"

| Place: 1200 BRICKELL AVE FL 1 MIAMI, FL 33131-3209 | Date and Time: 12/05/2018 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/27/2018

            *CLERK OF COURT*
                                         OR
                                              /S/ ASTRID E. GABBE, ESQ
_____            _____
  *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    NLG, LLC
_____ , who issues or requests this subpoena, are:
ASTRID E. GABBE The Law Office of Astrid E. Gabbe, P.A. P.O. Box 4216Hollywood, FL, 33083
954-303-9882 Email: astridgabbe@gmail.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-24272-CIV-MORENO

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-24272-CIV-MORENO**

NLG, LLC,

      **Defendant/Appellant,**

v.

SELECTIVE ADVISORS GROUP, LLC,
and LIZA HAZAN a/k/a ELIZABETH
HAZAN,

      **Plaintiffs/Appellees.**

_____/

## SCHEDULE A

1.      The name of the account holder[s] from which the funds for each of the attached

official checks came including EIN and/or Social Security Number of the account holder[s].

2.      Whether the check was cashed and if so when and by whom.

3.      If the check was not cashed, to which account were the funds returned.

4.      Copies of the backs of the cashed official checks.

5.      Copies of the corresponding bank statements related to each of the official checks.

                    Respectfully submitted,

**Attorneys for NLG, LLC**

Juan Ramirez, Jr.
ADR Miami LLC
Florida Bar No. 201952
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com















AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| NLG, LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 18-24272-CIV-MORENO |
| SELECTIVE ADVISORS GROUP, LLC & LIZA HAZAN A/K/A ELIZABETH HAZAN | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
BB&T BANK
1200 BRICKELL AVE FL 1
MIAMI, FL 33131-3209
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED SCHEDULE "A"

| Place: 1200 BRICKELL AVE FL 1 MIAMI, FL 33131-3209 | Date and Time: 12/14/2018 1:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/7/2018

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /S/ ASTRID E. GABBE, ESQ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* NLG, LLC
_____, who issues or requests this subpoena, are:

ASTRID E. GABBE The Law Office of Astrid E. Gabbe, P.A. P.O. Box 4216Hollywood, FL, 33083
954-303-9882 Email: astridgabbe@gmail.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-24272-CIV-MORENO

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____         _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 18-24272-CIV-MORENO

NLG, LLC,

      **Defendant/Appellant,**

v.

**SELECTIVE ADVISORS GROUP, LLC, and LIZA HAZAN a/k/a ELIZABETH HAZAN,**

      **Plaintiffs/Appellees.**

_____/

## <u>SCHEDULE A</u>

1.    Copies of the bank statements for account holder Liza Elizabeth Hazan, (last four of social 7473), for account number 0000241197166, from July 2018 to present.  Copies of the front and back of any official checks drawn from that account during those months and corresponding Thomson Infolink information.

2.    The originating bank and name of originating account holder for the following any incoming wire transfers received into account number 0000241197166 from May 1, 2018 to present including  but not limited to the following incoming wires:

    05/29/18 REF# 20180529-00007923 for $21,000.00

    06/11/18 REF # 20180611-00010445 for $24,000.00

3.    Copies of the front and back of the following official checks from the 5/24/18 and 6/26/18 bank statements for account number 0000241197166, including Thomson Infolink Information for the receiving bank where the check was cashed:

    05/01/18 Check #7472726 for $3,000.00

    05/07/18 Check #75448494 for $1,000.00

05/15/18 Check #7552795 for $3,000.00

05/18/18 Check #7550119 for $3,000.00

05/18/18 Check #7550120 for $2,000.00

05/29/18 Check #7550132 for $12,958.04

05/29/18 Check #7550133 for $8,298.72

05/31/18 Check #7387177 for $5,921.81

06/12/18 Check #7548319 for $6,000.00

4.     Details, including copies of the deposit ticket[s] and check[s] if applicable or whether it was a cash deposit, for the any deposits to account number 0000241197166 from May 1, 2018 to present including a Counter Deposit for $9,900 on 5/29/18.

5.     Copies of the bank statements for any other account where Liza Elizabeth Hazan, (last four of social 7473), is a signatory or account holder, either business or personal, from January 2018 to present. If none, state none.

6.     Identify the name[s] of the account holder[s] including signature cards for checking account numbers 0000246969981 and 0000246970009 and produce the bank statements from date of account opening to present on each account.

7.     The originating bank and name of originating account holder for the following any incoming wire transfers, BB&T Online Transfers or BB&T In Branch Transfers received into account numbers 0000246969981 and 0000246970009 from May 1, 2018 to present.

Respectfully submitted,

**Attorneys for NLG, LLC**

Juan Ramirez, Jr.
ADR Miami LLC
Florida Bar No. 201952
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                Chapter 11
_____/

**SECURED CREDITOR NLG, LLG'S
MOTION TO COMPEL TIMELY, LEGIBLE AND COMPLETE OPERATING
REPORT FOR JUNE 2018 AND POST CONFIRMATION MONTHLY OPERATING
REPORTS  AND COMPLIANCE GOING FORWARD**

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, in accordance with

Rule 2015 of the Federal Rules of Bankruptcy Procedure and the Chapter 11 Guidelines and

Reporting Requirements (revised January 8, 2018 and published by the United States

Department of Justice and the United States Trustee Region 21), moves to compel timely, legible

and complete June 2018 monthly operating report and post confirmation quarterly operating

reports and compliance going forward in this individual Chapter 11. In support, NLG states:

1.      This Court confirmed the Debtor's Plan on June 12, 2018. [*See* ECF No. 691].

2.      The last monthly operating report filed by the Debtor was for the reporting period

of June 2018.  The report was filed late on July 26, 2018.  The report also failed to attach the

Debtor's DIP bank account statement for her City National Bank account.  As such, the Debtor is

required to file an amended and complete monthly operating report for the June 2018.

3.      The debtor has also failed to file any post confirmation quarterly reports.  The

Court should compel the debtor to file the quarterly reports immediately and compel compliance

going forward.

4.      A review of the Debtor's monthly operating reports that the debtor has purchased

in excess of $100,000 worth of counter checks from the DIP account at BB&T bank.  Because

counter checks are specifically prohibited, the Court should compel the debtor to account for all the counter checks and/or return the money to the estate which was pilfered through the counter checks.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Court should compel timely, legible and complete monthly operating reports including debtor in possession bank statements for the June 2018 period, enjoin the Debtor from cashing any other counter checks, order the return of the misappropriated funds through the cashing of counter checks back to the bankruptcy estate and grant such other and further relief as the Court deems appropriate.

Dated December 17, 2018

## **CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 17th day of December, 2018. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216

Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Daniel A. Bushell on behalf of Selective Advisors Group, LLC and Liza Hazan
dan@bushellappellatelaw.com

Kevin Christopher Gleason on behalf of Liza Hazan and Selective Advisors Group, LLC
KGPAECMF@aol.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                              Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                    Chapter 11
_____/

**SECURED CREDITOR NLG, LLG'S MOTION FOR REHEARING OF AND RELIEF FROM ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT, AND ENTER DISCHARGE TO REORGANIZED DEBTOR**

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, pursuant to Rule 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, and Rules 59 and 60 of the Federal Rules of Civil Procedure and moves for rehearing, reconsideration and relief from this Court's Order Granting Motion to Reopen Case to Approve Final Report, and Enter Discharge to Reorganized Debtor [D.E. 766]. In support, NLG states:

This Court's Order is riddled with inconsistencies, at times finding that the Debtor has made all plan payments to unsecured creditors, only to recognize later in the Order that she actually has not. In particular, the Order acknowledged that two unsecured creditors have not been paid, to wit: JMB Urban Development Partners, Ltd and the Board of Managers of Spencer Condominium. It is as if this Court has issued two different orders under one. The Order also fails to recognize that NLG promptly appealed the Order Granting Confirmation [*See* D.E. 696], on June 25, 2018, pending in front of Judge Gayles, and that it immediately filed a motion to stay confirmation on July 26, 2018, [*See* NLG, LLC v. Liza Hazan Case No. 18-cv-22564-GAYLES D.E. 11], which has been fully briefed and pending since August 6 2018. [*See* NLG, LLC v. Liza Hazan Case No. 18-cv-22564-GAYLES D.E. 20].

In Section I of the Order, it began pointing out that "[t]he Bankruptcy Code provides that an individual debtor's discharge shall not be entered by the Court until completion of all

payments under the confirmed plan." Order, p. 3. Obviously, Hazan has not completed all payments under the plan.

The Order next discussed an exception pursuant to 11 U.S.C. § 1141(d)(5)(B) when "an individual has made all plan payments to unsecured creditors." *Id*. The Court then found that the Debtor had complied with the statute by quoting from a transcript of a hearing held on August 9, 2018, ignoring what transpired at a later hearing on October 24, 2018. At the August 9 hearing, which the Court quoted on at footnote 3, Ms. Armengol was under the impression that all unsecured creditors had been paid.

At the later hearing on October 24, 2018, Ms. Armengol stated:

MS. ARMENGOL: Mr. Ramirez is correct in that the statute provides that discharge for an individual in a Chapter 11 could only happen if all unsecured plan payments have been made. I was under the impression that they have been made. I'm not sure what --

THE COURT: I thought so also, but let's find out.

What about it, Mr. Aaronson?

Transcr. of October 24, 2018, pp. 11-12. [D.E. 758].

Mr. Aaronson first claimed incorrectly that JMB Urban was to be paid over time.

This Court then stated: "**Well, they're not disputing that they've not been paid**." *Id*. at p. 13, line 9-10.

Next, this Court read from the agreed final judgment entered in JMB's adversary proceeding that "JMB agrees to support the debtor's plan of reorganization as long as said plan requires payment to JMB in the amount set forth, et cetera, prior to the second anniversary date." *Id*. at 16.

It is undisputed that JMB Urban was to be paid under the Debtor's Plan. At D.E.. 563, p. 21, it stated that Claim #4 by JMB Urban 900 Dev., in the amount of $664,380.47, constituted an

unsecured claim that was settled for 41%, or $275,000 per settlement of adversary proceeding under Case No. 16-01188-AJC. This Court approved the settlement and entered a final judgment on July 20, 2016. The settlement amount of $275,000 was to be paid within two years, or by July 20, 2018. At the October 24 hearing, this Court correctly observed that Hazan is not disputing that JMB has not been paid.

Besides quoting from Ms. Armengol, the Order relied on Exhibit "A" attached to the Motion and Final Report for proof that "the general unsecured creditors, whose claims were to be paid in the Plan, have been paid in full." Order, p. 5. The Court concluded that "the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B)(i). This statement, of course, overlooks the fact, recognized later in the Order, that JMB Urban and the Spencer Condo have not been paid.

Under Section II, the Order gave additional bases to grant a discharge—the Fourth Amended Plan, the Confirmation Order and this Court's prior Orders. These documents indicated that the Debtor intended to seek a discharge "upon payments in full to unsecured creditors." Again, we know that has not happened. This entire Section II is predicated on all unsecured creditors being paid in full. The statement that all payments were made to Class 12 unsecured creditors is not what the statute requires, nor the case law, nor the Confirmation Order, nor the so-called Agreed Order, because it totally ignores the Class 13 creditors, some of which were paid, like S&S Collections, and some of which were not, like JMB Urban.

It is not until Section III of the Order that this Court recognized that two unsecured creditors, JMB and the Spencer Condo, have not been paid. It acknowledged that JMB is owed $275,000, but its debt is non-dischargeable. Likewise, the Spencer Condo was non-dischargeable. Thus, these two unsecured creditors are directed to pursue payment outside the Plan which does not consider the devastating impact such collection actions would have on the

Plan and other creditors. The Court in effect has created three classes of creditors—secured, unsecured dischargeable and unsecured non-dischargeable, and has re-written 11 U.S.C. § 1141(d)(5)(B) by inserting the word dischargeable, to read when "an individual has made all plan payments to unsecured and dischargeable creditors." There is likewise no support for this new classification of creditors in the case law.

In Chapter 11 cases in which the debtor is an individual, the discharge will not be granted until the debtor has completed all payments under the plan. *United States v. White,* 466 F.3d 1241, 1246 n.10 (11th Cir. 2006); *Torrington Livestock Cattle Co. v. Berg (In re Berg),* 423 B.R. 671, 676 (10th Cir. BAP 2010); *Shotkoski v. Fokkena (In re Shotkoski),* 420 B.R. 479, 482 (8th Cir. BAP 2009); *In re Belcher*, 410 B.R. 206, at 217 (Bankr. W.D. Va. 2009); *In re Kirkbride,* No. 08-00120-8-JRL, 2010 Bankr. LEXIS 4103, 2010 WL 4809334, at *3 (Bankr. E.D.N.C. Nov. 19, 2010). An individual debtor may seek a discharge before completion of the plan payments under either subsection (A) or (B) of § 1141(d)(5). Section 1141(d)(5)(A) allows for an exception to the general rule that an individual debtor will not be granted a discharge until completion of plan payments only "after notice and a hearing" if the court finds "cause." *In re Draiman*, 450 B.R. 777, 823 (Bankr. N.D. Ill. 2011); *In re Sheridan,* 391 B.R. 287, 290 (Bankr. E.D.N.C. 2008). Neither the motion for discharge nor this Court's order ever mentions "cause." There is in fact no cause to grant a discharge before the Debtor has completed all plan payments.

Likewise, there is no support for a discharge in § 1141(d)(5)(B). The Order cited to *In re Belcher*, 410 B.R. 206, 217 (Bankr. W.D. Va. 2009) for the proposition that "§ 1141(d)(5)(B) provides an early discharge in a manner similar to the 'hardship discharge' in Chapter 13 cases under 1328(b)." This reference is enigmatic as hardship is never mentioned again. But the next two sentences are even more confusing: "In this case, all unsecured creditors

were to be paid in accordance with the Plan, and those payments have been made in full. JMB

and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their

respective non-dischargeable debts outside the Plan." The two sentences cannot be reconciled.

JMB has been paid nothing despite a provision in the Plan that it would be paid by July 20, 2018.

It settled a judgment it obtained in 2011 for a claim dating back to 2003. They settled their claim

and voted for the Plan with the expectation of payment by July 20, 2018. And now this Court is

directing them to pursue their claim outside the Plan. That was not what JMB bargained for

when it withdrew its objection to the Plan. The Court is rewarding the Debtor by granting her a

discharge even though she breached a settlement reached during this bankruptcy and entered into

an Agreed Order issued by this Court. JMB is thus directed to hire a Florida lawyer to start new

collection efforts against the bankrupt debtor.

      The Court then stated that it "sees no reason to withhold the discharge when the Debtor

has otherwise established entitlement to same." The problem is that the Debtor is not otherwise

entitled to a discharge. Not according to statute, and not according to case law.

      Next the Order stated: "The entry of a non-dischargeable judgment, and the outstanding

debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in

no way impacts the non-dischargeable debts." There is no citation for this statement, but the next

sentence stated: "Unsecured creditors holding nondischargeable claims are entitled to collect the

balance of their debts outside the plan." The Court cited *Newman v. United States (In re*

*Newman)*, 399 B.R. 541, 548 (Bankr. M.D. Fla. 2008), implying that the case also supported the

first sentence. It does not. This is crucial because the *Newman* case does not even discuss

granting a discharge to a Debtor who has not made all payments to unsecured creditors in

accordance with the plan.

The *Newman* case was a dispute between the Debtor and the IRS. In it, the parties agreed that the Debtor had made the payments required under the Chapter 11 Plan. *Id.* at 543. The Court concluded that the IRS was allowed to pursue its non-discharged debt against the debtor. There is nothing in the case to support a discharge when all plan payments have not been made. There is simply no support in the case law for granting a discharge to a Debtor that has not completed all plan payments, particularly to all unsecured creditors. On the contrary, a confirmed plan holds the status of a binding contract as between the debtor and its creditors. *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (2d Cir. BAP 1998). Here, JMB compromised its claim and voted in favor of the plan thinking its collection efforts were over and the bankruptcy judge that approved the settlement would also enforce the settlement.

The final paragraph of the Order in the legal analysis section returned to finding "that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to **general** unsecured creditors." (Emphasis added). It is not clear what this Court meant by "general unsecured creditors." Is it general as opposed to specific, or definite, or unique? In any event, that is not the language of the statute.

The Court relied on D.E. 703 a Final Report filed on July 5, 2018. This report shows a list of creditors which had allegedly been paid. However, the Debtor never filed a monthly operating report for July 2018 along with bank statements to confirm this. NLG has discovered that the official checks purchased by the Debtor from BB&T bank on May 29, 2018, presented to the Trustee as proof of payment at the confirmation hearing on May 30, 2018, were simply returned to the bank and redeposited into the debtor's account. Attached as Exhibit 1 are those checks at issue.

Another issue around payment to creditors is the $120,000 official check payable to Aaronson Schantz Beiley PA. This official check was indorsed to Total Bank but tendered for payment at City National Bank in Aventura. These funds should have flowed through the Debtor-In-Possession account so all payments could be tracked easily. This is precisely the reason that the DIP account must be used. But the Debtor has flouted such requirements with impunity.

NLG takes no issue with the part of the Order which re-opens the Chapter 11 case until final disposition of all pending motions and appeals.

**WHEREFORE**, for the foregoing reasons, the Court grant rehearing, rescind and vacate that part of the order granting a discharge, and grant such other and further relief as the Court deems appropriate.

Dated December 20, 2018

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 20th day of December, 2018. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC

jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In Re:

LIZA HAZAN a/k/a ELIZABETH HAZAN,            Case No. 16-10389-AJC
                                             Chapter 11

      Debtor,

_____/

**HAZAN'S RESPONSE IN OPPOSITION TO NLG, LLC'S MOTION TO COMPEL**
**TIMELY, LEGIBLE AND COMPLETE OPERATING REPORT FOR JUNE 2018 AND**
**POST CONFIRMATION MONTHLY OPERATING REPORTS AND COMPLIANCE**
**GOING FORWARD [ECF No. 773] AND MOTION TO RECLOSE CASE**

      Reorganized Discharged Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Hazan" or

"Reorganized Discharged Debtor"), by and through her undersigned counsel, hereby files her

Response in opposition to NLGs, LLC's[1] *Motion to Compel Timely, Legible, and Complete*

*Operating Report for June 2018 and Post Confirmation Monthly Operating Report Going*

*Forward* (the "Motion to Compel") [ECF No. 773], respectfully moves to reclose case and avers

as follows:

<u>**Introduction**</u>

      NLG is an entity without standing in Hazan's Bankruptcy Case following a trial in the

Adversary case 16-01439-AJC (the "Adversary Proceeding" or "A.P.") held in July of 2017

before this Court which found that NLG lacks standing and does not have a claim. NLG did not

obtain a stay pending appeal of that judgment and this Court and the Court on appeal have

denied such stay [ECF No. 308][ECF No. 354] [ECF No. 356] [ECF No. 357] in Adv. case 16-

_____

[1] NLG includes a self-serving and false title of "secured creditor" to bolster its meritless paper.
In the Adversary Proceeding this Court previously found that NLG does not have any claim
against the Hazan or estate property, secured or otherwise, and NLG lacks standing in Hazan's
case – which would include the instant Motion to Compel.

01439-AJC. As the judgment was unstayed, this Bankruptcy Court confirmed Hazan's plan,

entered her discharge, and administratively closed her bankruptcy case. NLG, despite not having

standing in the case, seeks to compel Hazan to perform tasks which all actual parties that have

standing in this case are satisfied with and which are not required. Accordingly, NLG's only

interest at this stage is causing unnecessary expense and this Court should deny the Motion to

Compel.

## **Factual Background**

### *I.      NLG Lacks Standing in the Debtor's Bankruptcy Case to Advance its Motion to Compel or any matter.*

1.      On August 21, 2016, the Appellee commenced the Adversary Proceeding, case

No. 16-01439-AJC, (the "Adversary Proceeding" or "A.P.") against Appellant. (BK A.P. ECF

1).

2.      In her Third Amended Complaint (January 3, 2017), Ms. Hazan brought three

causes of action to resolve NLG's assertion of rights regarding her property: (i) Count I – to

determine the extent, validity, and priority of Appellant's claim of alleged lien; (ii) Count II – to

avoid Appellant's alleged security interest pursuant to § 544; and (iii) to Quiet Title (the

"Counts") (BK A.P. ECF 48).

3.      The Court conducted a trial in the Adversary Proceeding on July 13, 2017. (BK

A.P. ECF 188).

4.      Following the trial, on November 1, 2017, the Bankruptcy Court entered the

Judgment on Counts I, II and III in favor of Appellee. ("the Unstayed Final judgment") (BK

A.P. ECF 238).

5.      The Unstayed Final Judgment provides, in relevant part:

a. "NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that **NLG has no standing in this case** based upon the Note, Mortgage, claim or lien emanating therefrom." *Id.* at p. 13 (emphasis added).

b. "NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:
LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida
have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and **the title to the Property is forever quieted as to all claims of NLG, LLC**."

c. "**NLG's Proof of Claim #17 is disallowed** and **NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order**." *Id.* at p. 14.

## II. *Hazan confirmed a Plan of Reorganization, received her discharge, and administratively closed the case.*

6. Based on the Judgment, the Reorganized Debtor proceeded to plan confirmation. On November 15, 2017, she filed her Fifth Amended Disclosure Statement (the "Disclosure Statement") (B.K. M.C. C.P. 562) and Fourth Amended Plan of Reorganization (the "Plan") (B.K. M.C. C.P. 563).

7. At the Confirmation Hearing on the Plan the Court noted that the Unstayed Final Judgment remained unstayed. (BK M.C. C.P. 707 at pp. 6 - 8):

> **THE COURT: Mr. Ramirez, do you agree there is no stay?**
>
> **MR. RAMIREZ: There is no stay, Judge.**

3

THE COURT: Okay.

MR. RAMIREZ: But I just want to correct that it's not the law of the case until the appellate case is decided.

THE COURT: Well, but if something happens in the interim, it may moot out the appeal, that's why it makes a big difference. If there's a stay, then nothing can happen until that matter is decided, but if there is no stay and things go along a track to where they're not reversible, then it possibly or probably would moot the issue

8.     On June 12, 2018, the Bankruptcy Court entered the Confirmation Order (BK M.C. ECF No. 691).

9.     On June 13, 2018, the Bankruptcy Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 case. (B.K. M.C. ECF No. 692).

10.    On July 10, 2018 Thereafter, Hazan filed her Amended Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a Final Decree and to re-close the case [ECF No. 713] (the "Reopen and Discharge Motion").

11.    All NLG's Motions to Stay the Final Judgment in favor of Hazan and against NLG were denied in this Court and in the Appeal Court [ECF No. 308][ECF No. 354]  [ECF No. 356] [ECF No. 357] in Adv. case 16-01439-AJC.

12.    On December 7, 2018, this Court entered the Order granting the Reopen and Discharge Motion [ECF No. 766] (the "Discharge Order") which, among other things, granted Hazan a discharge and reopened the bankruptcy case "for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order" and "pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing this case."

4

13. After entry of the Discharge Order, NLG filed its Motion to Compel which seeks, among other things, to require Hazan to complete post-confirmation reports although the case was administratively closed and no reports from July to November would have been due and she has obtained her discharge and filing financial reports when prepetition property has revested into Hazan and Hazan has been discharged.

14. Non creditor NLG has no claim and is just continuing a pattern of never ending wasteful litigation.

<u>**Argument**</u>

15. Standing cannot be waived and may be raised at any time. *See, e.g., Eldorado Canyon Prop., LLC v. JPMorgan Chase Bank, N.A. (In re Eldorado Canyon Prop., LLC)*, 505 B.R. 598, 599-600 (B.A.P. 1st Cir. 2014).

16. Simply put, NLG does not have standing in this case, as established by the Unstayed Final Judgment, and this Court should not entertain further drains on all of the parties' resources with this most recent motion.

17. Further, Federal Rule of Bankruptcy Procedure 2015 and Local Rule 2015-1 govern the operating and quarterly reports which are to be provided to the US Trustee. Under those rules the obligation to file a quarterly report is tied to the requirement to a pay a fee. Where a case is administratively closed, such as this case, a fee to the US Trustee fee is not required and therefore reports are no longer required.

18.     Prior to the case being close Hazan filed the requisite reports with associated documents and the US Trustee confirmed same at the Confirmation Hearing.  No objections or issues, other than by NLG, have been raised by any actual creditor or party with standing.[2]

19.     Further, while the case was administratively closed a reorganized debtor is excused from making payments to the US Trustee which in turn excuses the reorganized debtor from the costs associated with preparing reports.  *In re Mendez*, 464 B.R. 63, 65 (Bankr. D. Mass. 2011) (finding that the Court has the authority under §105 of the Bankruptcy Code to administratively close as a case which includes the cessation of fees).  Moreover, here the Reorganized Discharged Debtor obtained her discharge and the case has been fully administered so that continuing confirmation reports are no longer required.  Further, as set forth in the Reopen and Discharge Order the case was reopened for the limited purpose of resolving the pending motions to hold NLG, Chris Kosachuk and NLG's attorneys Juan Ramirez and Astrid Gabbe in contempt of court for violating the final Judgment, the confirmation order (pending motions would not include NLG's Motion to Compel which was filed later) and adversary proceeding which was filed after the entry for the discharge order.  Post-conformation reports or quarterly reports were not included in the Order.  This case is fully administered and Ms Hazan is discharged.

20.     Finally, in NLG's Motion to Compel it attempts to enforce its interpretation of the US Trustee's guidelines regarding checks.  Motion to Compel at ¶4.  Only the United States Trustee is responsible for enforcing its guidelines (and a non-party such as NLG surely does not have standing to do so). And the United States Trustee reviewed the checks issued by Hazan and supported confirmation of her plan of reorganization:

---

[2] In an attempt to find any argument NLG raises an issue regarding a Citi National Bank account.  Such account reflects no activity for the period of June. see attached as **Exhibit "A"** Hazan's City National Bank account closed on June 7, 2018 and showing no activity for the month of June 2018..

In addition, Your Honor, we have reviewed all the payments and the checks that Ms. Hazan has with her, and we can confirm that she has all of those, in addition to unpaid taxes that she paid for 2016 and 2017, which was an issue we had raised at prior hearings. So with that, Your Honor, we have no objection to confirmation.

[Transcript of May 30, 2018 Confirmation Hearing ECF No. 707 at p. 10]

21.    Therefore, the United States Trustee has concluded that Hazan's checks complied under its guidelines and NLG has neither the authority nor any basis for arguing otherwise. In fact, the United States Trustee accepted cashier's checks from the debtor.  See **Exhibit "B"**.  The cashier checks NLG complains of are similar to those accepted by the US Trustee and are attached hereto as **Exhibit "C."**

22.    Accordingly, NLG's Motion to Compel should be denied.

WHEREFORE, Reorganized Debtor respectfully requests this Court enter an order denying NLG, LLC's Motion to Compel (ECF No. 14), reclose case and awarding Hazan all attorney fees and costs against NLG and its counsels for bringing a meritless Motion;  and granting such other and further relief as the Court deems appropriate.

December 24, 2018

Respectfully submitted,

**MARSHALL GRANT, P.L.**
197 South Federal Highway, Suite 200
Boca Raton, Florida  33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email: jgrant@msglaw.com
        tzeichman@msglaw.com

By:   /s/ JOE M. GRANT
        JOE M. GRANT
        Florida Bar No. 137758
        THOMAS G. ZEICHMAN
        Florida Bar No. 99239

**CERTIFICATE OF SERVICE**

7

**I HEREBY CERTIFY** that on this 24rd day of December, 2018, I electronically filed this document with the Clerk of Court using CM/ECF. I also certify that the document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By: /s/ JOE M. GRANT
JOE M. GRANT

 **City National Bank**

Bci FINANCIAL GROUP

Page: 1 of 1
Account: XXXXXX4508

### Client Service

 Online
citynational.com

 CityTel
305-595-XXXXXX
1 866 762 XXXXXX

 Your Banking Center
Brickell
1450 Brickell Ave., Suite 100
Miami, FL 33131

Telephone
305-371-5080
800-435-8839

 Your Banking Center Hours
Lobby:     Monday - Thursday:     8:30am - 4:00pm
           Friday:                8:30am - 6:00pm

For additional locations
and hours, please visit
citynational.com

 Member **FDIC**     EQUAL HOUSING LENDER

P:199 / T: / S:

LIZA HAZAN
DEBTOR IN POSSESSION
CASE 16-10389-AJC
6913 VALENCIA DR
MIAMI BEACH FL 33109-0601

## Bankruptcy

### Account Summary

| | | | |
|---|---|---|---|
| Account: | XXXXXX4508 | Beginning Balance: | -$15.38 |
| Last Statement: | May 31, 2018 | Ending Balance: | $0.00 |
| This Statement: | June 8, 2018 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| 05-31 | Beginning balance | | | -15.38 |
| 06-07 | Refund Monthly Maintenance Fee | 15.38 | | 0.00 |
| 06-07 | Closing Transaction | | 0.00 | 0.00 |
| 06-08 | Ending totals | 15.38 | 0.00 | 0.00 |

## LET US HELP PROTECT YOU AND YOUR BUSINESS.

City National Bank is offering a free service to help you protect yourself from online fraudsters. With Trusteer Rapport, you get an extra layer of security.

Trusteer is easy to download and easy to use. Just visit citynational.com and visit our Online Services page.



**INTRODUCING MONEY MANAGEMENT**

Login to online banking and look for MONEY MANAGEMENT

 **City National Bank**
**Bci** FINANCIAL GROUP

P:199 / T: / S:

Page: 1 of 1
Account: XXXXXX4508

## Client Service

 Online
citynational.com

 CityTel

 Your Banking Center
Brickell
1450 Brickell Ave., Suite 100
Miami, FL 33131

Telephone
305-371-5080
800-435-8839

Your Banking Center Hours
Lobby.        Monday - Thursday.    8:30am - 4:00pm
              Friday:               8:30am - 6:00pm

For additional locations
and hours, please visit
citynational.com

 Member **FDIC**  EQUAL HOUSING LENDER

LIZA HAZAN
DEBTOR IN POSSESSION
CASE 16-10389-AJC
6913 VALENCIA DR
MIAMI BEACH FL 33109-0601

## Bankruptcy

### Account Summary

| | | | |
|---|---|---|---|
| Account: | XXXXXX4508 | Beginning Balance: | -$15.38 |
| Last Statement: | May 31, 2018 | Ending Balance: | $0.00 |
| This Statement: | June 8, 2018 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| 05-31 | Beginning balance | | | -15.38 |
| 06-07 | Refund Monthly Maintenance Fee | 15.38 | | 0.00 |
| 06-07 | Closing Transaction | | 0.00 | 0.00 |
| 06-08 | Ending totals | 15.38 | 0.00 | 0.00 |



## LET US HELP PROTECT YOU AND YOUR BUSINESS.

City National Bank is offering a free service to help you protect yourself from online fraudsters. With Trusteer Rapport, you get an extra layer of security.

Trusteer is easy to download and easy to use. Just visit citynational.com and visit our Online Services page.



INTRODUCING MONEY MANAGEMENT

Login to online banking and look for MONEY MANAGEMENT

*Date: December 10, 2018* *Branch Banking and Trust* *Page 1 of 1*

*Reference: 200002412573325:200002412573325:200001803306325*

THIS DOCUMENT CONTAINS A TRUE WATERMARK. HOLD TO LIGHT TO VIEW.

OFFICIAL CHECK

1001054348

ISSUING BRANCH 2540219-MIAMI - DADE - SOUTH BEACH

DATE May 29, 2018

PAY TO THE ORDER OF U.S-TRUSTEE $651.07

Six Hundred Fifty-One and 07/100ths Dollars

BB&T $651.07

AUTHORIZED SIGNATURE

MEMO/PURCHASER LIZA HAZAN ACCOUNT NUMBER [redacted]

⑈1001054348⑈ ⑆[redacted]097⑈

CHECK HERE IF MOBILE DEPOSIT
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
0410-3601-7<
US TREAS DG-ECP
20180606
Chemical Wash Detection Box
INSIDE THIS BOX SHOULD BE WHITE

| | | | |
|---|---|---|---|
| Date | 20180607 | Account Number | [redacted]097 |
| Amount | 65107 | CR-DR | D |
| Serial Number | 1001054348 | Transaction Link | 013488290519401607 |

REGIONS

CASHIER'S CHECK

08/03/2018

5504475234

SEAN MEEHAN / Purchaser / Purchased For

FOUR THOUSAND FIVE HUNDRED FIFTY DOLLARS AND 00 CENTS

PAY TO THE ORDER OF U.S. TRUSTEE

$4,550.00

Liza Hazan

Regions Bank 16-10389 AJC

Authorized Signature

Branch FL06247

CC028247

⑈5504475234⑈ [redacted] [redacted]

>0410-3601-7<
US TREAS DG-ECP
20180813

FOR DEPOSIT ONLY TO THE ACCOUNT OF THE UNITED STATES TRUSTEES OFFICE

# JPMorgan



Posting Date: 05/29/2018

Sequence Number:
3690053030

Amount: 62,500.00

Account: xxxxxxxxxxxxxxxxxxxxxxx

Routing Transit Number:
04400003

Check/Serial Number:
001174240655

Bank Number: 1

IRD: 0

Image type: P

BOFD: 000000000

Cost Center:

Teller Number:

Teller Sequence Number:

Capture Source: PV

Entry Number: 0000017651

UDK:
1180529003690053030

Copyright © 2010 J.P. Morgan
Chase & Co. All Rights
Reserved

JPMorgan



Posting Date: 06/01/2018

Sequence Number: 6670454742

Amount: 74,101.63

Account: xxxxxxxxxxxxxxxxxxxxxxxx

Routing Transit Number: 04400003

Check/Serial Number: 001174240660

Bank Number: 1

IRD: 0

Image type: P

BOFD: 000000000

Cost Center:

Teller Number:

Teller Sequence Number:

Capture Source: PV

Entry Number: 0000000289

UDK: 1180601006670454742

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved

Date: December 10, 2018        Branch Banking and Trust                    Page 1 of 1

Reference: 20000241196972:20000241196972:20000180261973





**Date** 20180608

**Amount** 29591

**Serial Number** 1001060304

**Account Number** xxxxxxxxxxxxxxxxx

**CR-DR** D

**Transaction Link** 013543290588092508

Date: December 10, 2018     Branch Banking and Trust     Page 1 of 1

Reference: 20000241239021:20000241239021:20000180292022



**OFFICIAL CHECK**    1001060383

ISSUING BRANCH 8540201-MIAMI - DADE - BRICKELL MAIN

DATE May 31, 2018

PAY TO THE ORDER OF    STERLING EMER SVCS MIAMI BEACH PA    **$2,445.30**

Two Thousand Four Hundred Forty-Five and 30/100ths Dollars

**BB&T**

$2,445.30

AUTHORIZED SIGNATURE

MEMO/PURCHASER   LIZA ELIZABETH HAZAN

⑆100106038 3⑆ ⑉X05⑈⑈0⑆8⑈9⑉X⑆ 1009 7⑆   /0000 244530/

| Date | 20180606 | Account Number | xx0000081019000087xx |
|---|---|---|---|
| Amount | 244530 | CR-DR | D |
| Serial Number | 1001060383 | Transaction Link | 013447290456454506 |

Date: December 10, 2018     Branch Banking and Trust                    Page 1 of 1

Reference: 20000241239054:20000241239054:20000180292055



**OFFICIAL CHECK**                                     1001060415

ISSUING BRANCH  8540201-MIAMI - DADE - BRICKELL MAIN

DATE  May 31, 2018

                        ID 1175 919    HAZAN LIZA

PAY TO THE
ORDER OF     MOUNT SINAI PHYSICIAN PRACTICES                    $3,240.00

Three Thousand Two Hundred  Forty and 00/100ths Dollars

**BB&T**              $3,240.00

                                              AUTHORIZED SIGNATURE

MEMO/PURCHASER  LIZA ELIZABETH HAZAN  6913 VALENCIA DRIVE
MIAMI  FL  33109  58 6000 79 71

⑈ 100 106 0415⑈  ⑈:0651⑈0⑈329⑈0001⑈01⑈0 1009 7⑈

| Date | 20180608 | Account Number | xxxxxxxxxxxxxxxxxxxxxxxxx |
|---|---|---|---|
| Amount | 324000 | CR-DR | D |
| Serial Number | 1001060415 | Transaction Link | 013543290588092408 |

Date: December 10, 2018    Branch Banking and Trust    Page 1 of 1

Reference: 20000241239123:20000241239123:20000180292124





**Date** 20180614
**Amount** 150254
**Serial Number** 1001054089

**Account Number** xxxxxxx181901xxxxxxxx
**CR-DR** D
**Transaction Link** 013336290012859614

**REGIONS**

CASHIER'S CHECK

5504475234

08/03/2018

SEAN MCEINAN / ...
Purchaser / Purchased For

FOUR THOUSAND FIVE HUNDRED FIFTY DOLLARS AND 00 CENTS

PAY TO THE ORDER OF  U.S. TRUSTEE

$4,550.00

LIZA HAZAN

Regions Bank       16-1089 AJC

Authorized Signature       Branch FL06247
CCC24247

⌐5504475234⌐  ⌐05 250000185⌐  0000913561⌐

>0410-3601-7<
US TREAS DG-ECP
20180813

FOR DEPOSIT ONLY TO THE
ACCOUNT OF THE UNITED
STATES TRUSTEES OFFICE

**REGIONS**

CASHIER'S CHECK

RECEIVED

JUL 2 0 2018

5504475220

Purchaser / Purchased For

THREE THOUSAND EIGHT HUNDRED NINETY TWO DOLLARS AND 00 CENTS

$3,892.00

PAY TO THE ORDER OF VALENCIA ESTATES HOMEOWNERS
ASSOCIATION, INC

Authorized Signature

Regions Bank

Branch FL06247
CC026247

⑈5504475220⑈  ⑈XXXXXXXX47X5XXXXX42066 1⑈

MerchantDep=071921456xXXXXXXXXXXXXXXxxxxxxxXXX

Banco Popular North America
Pay To The Order Of Only To Named Payee
To the account of 86007 19706

**REGIONS**

# 13463 72 11

CASHIER'S CHECK

08/10/2018

Real Time Resolutions, Inc.

5504475237

Sean Meehan / Claim #5 Paid Case 15-10389 AJC
Purchaser / Purchased For

SEVEN THOUSAND DOLLARS AND 00 CENTS

AUG 2 1 2018

PAY TO THE ORDER OF   Real Time Resolutions, INC.

$7,000.00

Regions Bank

Authorized Signature

Branch FL06247
CC026247

⑈5504475237⑈ ⑆063100277⑆ 000021⑇5 1⑈

For Deposit Only - JPGSC

Date: December 10, 2018          Branch Banking and Trust                    Page 1 of 1

Reference: 20000241257211;20000241257211;20000180306212

| | | |
|---|---|---|
| | **OFFICIAL CHECK** | 1001054167 |
| | | 66-236/514 |
| | ISSUING BRANCH 8540219-MIAMI - DADE - SOUTH BEACH | |
| | DATE May 29, 2018 | |

PAY TO THE ORDER OF    WELLS FARGO BANK                                   $323.24

Three Hundred Twenty-Three and 24/100ths Dollars

**BB&T**

MEMO/PURCHASER  LIZA HAZAN CASE 16 10389-AJC  Claim#12
55 602047493

AUTHORIZED SIGNATURE

⑈100105416?⑈ ⑆⑆0x0x0x0x0x0x0x0x0x0x80 10097⑈⑈

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
LACK OF ENDORSEMENT GUARANTEED
WELLS FARGO BANK, N.A.
ALL PRIOR ENDORSEMENTS
AU:02382

WELLS FARGO BANK NA ORD
20180608 E0611    PKT 40
►09 10-0001-94
04504209930

| | |
|---|---|
| **Date** | 20180611 |
| **Amount** | 32324 |
| **Serial Number** | 1001054167 |

| | |
|---|---|
| **Account Number** | XXXXXXXXXXXXXXXXXXXX |
| **CR-DR** | D |
| **Transaction Link** | 013601290680578711 |

Date: December 10, 2018     Branch Banking and Trust     Page 1 of 1

Reference: 20000241257238:20000241257238:20000180306239



THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW.

**OFFICIAL CHECK**                                    1001054055
                                                      68-236/514

ISSUING BRANCH  8540219-MIAMI - DADE - SOUTH BEACH

DATE May 29, 2018

PAY TO THE
ORDER OF   HSBC BANK USA, NA                          $1,070.66

One Thousand Seventy and 66/100ths Dollars

**BB&T**                  $1,070.66

                                         AUTHORIZED SIGNATURE

MEMO/PURCHASER  1070.66   Liza Hazan SS602 EN       2183
                ELIZABETH HAZAN 6912 VALENCIA DNE MIAMI 33109

⑈ 1001054055⑈ ⑆054010040⑆000004401680 10097⑈

5370500908 20180604 HSBC HBUS

**Date**            20180605
**Amount**          107066
**Serial Number**   1001054055

**Account Number**  xxxxxxxxxxxxxxxxxxxxx
**CR-DR**           D
**Transaction Link** 013397290371634505

Date: December 10, 2018          Branch Banking and Trust          Page 1 of 1

Reference: 20000241257270:20000241257270:20000180306271



OFFICIAL CHECK                                    1001054025

ISSUING BRANCH 8540219-MIAMI - DADE - SOUTH BEACH
DATE May 29, 2018

PAY TO THE
ORDER OF   FLORIDA POWER & LIGHT                          $2,906.93

Two Thousand Nine Hundred Six and 93/100ths Dollars

BB&T          $2,906.93                    AUTHORIZED SIGNATURE

MEMO/PURCHASER  LIZA HAZAN  CASE 16-10389 · AJC  doithell

#100105402 5# #2000  1009 7#



06/11/2018  Machine #7    77487 114 Regina H. Payments - Monday

| Date | 20180612 | Account Number | xxxxxxxx1261xxxxxxxx |
|---|---|---|---|
| Amount | 290693 | CR-DR | D |
| Serial Number | 1001054025 | Transaction Link | 013646290781477712 |

Date: December 10, 2018     Branch Banking and Trust                    Page 1 of 1

Reference: 20000241257325:20000241257325:20000180306325



---

**Date**            20180607
**Amount**          65107
**Serial Number**   1001054348

**Account Number** xxxxxxxxxxxxxxxxxx
**CR-DR**          D
**Transaction Link** 013488290519401607

## JPMorgan



Posting Date: 11/13/2018

Sequence Number:
3790050415

Amount: 5,000.00

Account: xxxxxxxxxxxxxxxxxxxxx

Routing Transit Number:
04400003

Check/Serial Number:
001174241832

Bank Number: 1

IRD: 0

Image type: P

BOFD: 000000000

Cost Center:

Teller Number:

Teller Sequence Number:

Capture Source: PV

Entry Number: 0000012977

UDK:
1181113003790050415

Copyright © 2010 J.P. Morgan
Chase & Co. All Rights
Reserved

1380590534

Date: December 10, 2018       Branch Banking and Trust                    Page 1 of 1

Reference: 20000241239503:20000241239503:20000180292504



**Date**           20180604
**Amount**         406200
**Serial Number**  1001054220

**Account Number**   XXXXXX8190X0097XXXX
**CR-DR**            D
**Transaction Link**  023730280616243804


## JPMorgan



Posting Date: 10/16/2018

Sequence Number: 8670305976

Amount: 20,312.50

Account: xxxxxxxxxxxxxxxxxxxxxxx

Routing Transit Number: 04400003

Check/Serial Number: 001174241612

Bank Number: 1

IRD: 0

Image type: P

BOFD: 074909962

Cost Center:

Teller Number:

Teller Sequence Number:

Capture Source: PV

Entry Number: 0000000324

UDK: 1181016008670305976

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved

1376629022



**JPMorgan**

| | Posting Date: 10/23/2018 |
| --- | --- |
| | Sequence Number: 9070042690 |
| | Amount: 2,739.44 |
| | Account: XXXXXXXXXXXXXXXXXXXXXXXX |
| | Routing Transit Number: 04400003 |
| | Check/Serial Number: 001174241614 |
| | Bank Number: 1 |
| | IRD: 0 |
| | Image type: P |
| | BOFD: 000000000 |
| | Cost Center: |
| | Teller Number: |
| | Teller Sequence Number: |
| | Capture Source: PV |
| | Entry Number: 0000002841 |
| | UDK: 1181023009070042690 |

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved

1376629021



Date: December 10, 2018     Branch Banking and Trust     Page 1 of 1

Reference: 20000241257362:20000241257362:20000180306363



| Date | 20180615 | Account Number | XXXXXXXXXXXXXXXXXXXXXX |
| Amount | 131400 | CR-DR | D |
| Serial Number | 0000000317 | Transaction Link | 020679280706131915 |

Date: December 10, 2018     Branch Banking and Trust     Page 1 of 1

Reference: 20000241239815:20000241239815:20000180292816



**Date** 20180611
**Amount** 46062
**Serial Number** 1001054250

**Account Number** XXXXXXX18X90X0097XXXX
**CR-DR** D
**Transaction Link** 013601290680395411

Date: December 10, 2018    Branch Banking and Trust    Page 1 of 1

Reference: 20000241239946:20000241239946:20000180292946



**Date** 20180606

**Amount** 244530

**Serial Number** 1001060383

**Account Number** XXXXXXXXXXXXXXXXXXXX

**CR-DR** D

**Transaction Link** 013447290456454506

Date: December 10, 2018      Branch Banking and Trust      Page 1 of 1

Reference: 20000241239758:20000241239758:20000180292756

---

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

**OFFICIAL CHECK**

1001054012

88-296/514

ISSUING BRANCH   8540219-MIAMI - DADE - SOUTH BEACH

DATE   May 29, 2018

PAY TO THE ORDER OF   INTERNAL REVENUE SERVICE

$1,085.00

One Thousand Eighty-Five and 00/100ths Dollars

**BB&T**      $1,085.00

AUTHORIZED SIGNATURE

MEMO/PURCHASER   LIZA HAZAN   CASE 16-10389-AJC   ✓ claim#3

SS 602947473

⑆1001054012⑆ ⑉05140336900000404040097⑈  /0000108500/

---

Date          20180605          Account Number   xxxxxxxxxxxxxxxxxxxx
Amount        108500            CR-DR            D
Serial Number 1001054012        Transaction Link 023746280629137405

Date: December 10, 2018     Branch Banking and Trust          Page 1 of 1

Reference: 20000241239783:20000241239783:20000180292784



THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

**OFFICIAL CHECK**                                    1001053991
                                                        63-236/514

ISSUING BRANCH  8540219-MIAMI - DADE - SOUTH BEACH
DATE  May 29, 2018

PAY TO THE
ORDER OF   AMERICAN INFOSOURCE LP AS AGENT FOR T MOBIL/T-MOBILE US          $1,130.22

One Thousand One Hundred Thirty and 22/100ths Dollars

**BB&T**                                              AUTHORIZED SIGNATURE

MEMO/PURCHASER  LIZA HAZAN  CASE 16-1089-AJC  Claim#2

⑆100105399⑈ ⑆⑆⑆ 1009⑇⑆

Credit to within named payee
Lockbox date:        06052018  Seq: 7602644280
>303087995> MidFirst Bank

Date            20180606            Account Number  xxxxxxxxxxxxxxxxxxxx
Amount          113022             CR-DR           D
Serial Number   1001053991         Transaction Link  013447290456614306

Date: December 10, 2018        Branch Banking and Trust        Page 1 of 1

Reference: 20000241239583:20000241239583:20000180292584



OFFICIAL CHECK

1001060084

53-336/514

ISSUING BRANCH  8540201-MIAMI - DADE - BRICKELL MAIN

DATE May 31, 2018

PAY TO THE
ORDER OF  AARONSON SCHANTZ BEILEY, P.A.

$120,000.00

One Hundred Twenty Thousand and 00/100ths Dollars

BB&T

$120,000.00

AUTHORIZED SIGNATURE

MEMO/PURCHASER  SEAN N MEEHAN

⑈100106008⑊⑈⑊⑈⑊⑈⑊⑈⑊10097⑈



Date            20180601
Amount          12000000
Serial Number   1001060084

Account Number  XXXXXXXXXXXXXXXXXXXXXXXX
CR-DR           D
Transaction Link  013694290171861801

Date: December 10, 2018      Branch Banking and Trust      Page 1 of 1

Reference: 20000241239624:20000241239624:20000180292625

---

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

**OFFICIAL CHECK**

1001054183

ISSUING BRANCH 8540219-MIAMI - DADE - SOUTH BEACH

DATE May 29, 2018

PAY TO THE ORDER OF    INTERNAL REVENUE SERVICE        $2,674.34

Two Thousand Six Hundred Seventy-Four and 34/100ths Dollars

**BB&T**        $2,674.34

AUTHORIZED SIGNATURE

MEMO/PURCHASER  LIZA HAZAN  CASE 16-10389-AJC  CLAIM#3
PRIORITY CLAIM FIRST PAYMENT DUE UNDER PLAN

⑈100105418⑈ ⑈000000000000000000 10097⑈ ⑈0000267434⑈

---

| Date | 20180605 | Account Number | XXXXXXXXXXXXXXXX |
| Amount | 267434 | CR-DR | D |
| Serial Number | 1001054183 | Transaction Link | 023746280629137505 |

*Date: December 10, 2018*　　　*Branch Banking and Trust*　　　*Page 1 of 1*

*Reference: 20000241239650:20000241239650:20000180292651*





**Date** 20180622
**Amount** 2294800
**Serial Number** 1001094896

**Account Number** xxxxxxxxxxxxxxxxxxxxxxxxxxx
**CR-DR** D
**Transaction Link** 023947280768191422

Date: December 6, 2018        Branch Banking and Trust        Page 1 of 1

Reference: 20000240359127:20000240359127:20000179666132





| | |
|---|---|
| **Date** | 20180614 |
| **Account Number** | XXXXXX1009018897XXXXX |
| **CR-DR** | D |
| **Transaction Link** | 013336290012859614 |

| | |
|---|---|
| **Sequence Number** | 2900128596 |
| **Amount** | 150254 |
| **Serial Number** | 1001054089 |

Date: December 10, 2018    Branch Banking and Trust    Page 1 of 1

Reference: 20000241257178:20000241257178:20000180306179



**OFFICIAL CHECK**    1001060415

ISSUING BRANCH  8540201-MIAMI - DADE - BRICKELL MAIN

DATE May 31, 2018

ID 1175 919    HAZAN LIZA

PAY TO THE ORDER OF   MOUNT SINAI PHYSICIAN PRACTICES    $3,240.00

Three Thousand Two Hundred Forty and 00/100ths Dollars

**BB&T**    $3,240.00

MEMO/PURCHASER  LIZA ELIZABETH HAZAN  6913 VALENCIA DRIVE
MIAMI FL 33109 SS 600017475

AUTHORIZED SIGNATURE

⑈100106041511:  ⑈05110231888020010180100978⑈



| | |
|---|---|
| **Date** | 20180608 |
| **Amount** | 324000 |
| **Serial Number** | 1001060415 |

| | |
|---|---|
| **Account Number** | XXXXXXXXXXXXXXXXXXXX |
| **CR-DR** | D |
| **Transaction Link** | 013543290588092408 |



*Date: December 10, 2018*     *Branch Banking and Trust*     *Page 1 of 1*

*Reference: 20000241257108;20000241257108;20000180306109*

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

**OFFICIAL CHECK**     1001060304

ISSUING BRANCH   8540201-MIAMI - DADE - BRICKELL MAIN

DATE   May 31, 2018

101175919
HAZAN LIZA

PAY TO THE ORDER OF   MOUNT SINAI PHYSICIAN PRACTICES     $295.91

Two Hundred Ninety-Five and 91/100ths Dollars

**BB&T**    $295.91

AUTHORIZED SIGNATURE

MEMO/PURCHASER   LIZA ELIZABETH HAZAN   6913 VALENCIA DRIVE
MIAMI FL 33109

#100 1060304# #0611033580000 10180 1009 7#



| | |
|---|---|
| **Date** | 20180608 |
| **Amount** | 29591 |
| **Serial Number** | 1001060304 |

| | |
|---|---|
| **Account Number** | xxxxxxxxxxxxxxxxxxxxxxxxxxx-x |
| **CR-DR** | D |
| **Transaction Link** | 013543290588092508 |

*Date: December 10, 2018*     *Branch Banking and Trust*     *Page 1 of 1*

*Reference: 20000241257072:20000241257072:20000180306073*



**Date** 20180614
**Amount** 150254
**Serial Number** 1001054089

**Account Number** XXXXXXXXXXXXXXXXXXXXXX
**CR-DR** D
**Transaction Link** 013336290012859614

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                         Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                               Chapter 11
_____/

**SECURED CREDITOR NLG, LLG'S OPPOSITION RESPONSE
TO EMERGENCY MOTION FOR ORDER TO SHOW CAUSE [ECF NO. 770]**

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, and its manager,

Chris Kosachuk, *pro se* and Juan Ramirez, Jr., *pro se*, hereby file this joint Opposition Response

to Debtor's Emergency Motions for Order to Show Cause [ECF No. 770]. In support, they state:

This is the fourth motion for contempt filed by Liza Hazan (the "Debtor") and her

lawyers Daniel A. Bushell and Geoffrey S. Aaronson [Doc. No. 742, 747, 748, and 770]. The

latest, a 14-page motion, accuses the "Kosachuk Group" of actions "repugnant to our legal

system."

The latest motion is labeled an emergency. This is a blatant abuse of the court system and

a direct violation of the Local Rule 7.1(d)(1), which states:

(1) *Emergency Motions*. A filer requesting emergency action must include the words
    "Emergency Motion" in the title of the motion and must set forth in detail the
    nature of the emergency, the date by which a ruling is necessary, and the reason
    the ruling is needed by the stated date. **The unwarranted designation of a
    motion as an emergency motion may result in sanctions.** The filer must certify
    that the matter is a true emergency by including the following certification before
    the motion's signature block:

    After reviewing the facts and researching applicable legal
    principles, I certify that this motion in fact presents a true emergency
    (as opposed to a matter that may need only expedited treatment) and
    requires an immediate ruling because the Court would not be able to
    provide meaningful relief to a critical, non-routine issue after the
    expiration of seven days. I understand that an unwarranted
    certification may lead to sanctions.

The motion filed by Mr. Aaronson does not attempt to comply with this rule. As the rule states, Mr. Aaronson should be sanctioned. There is obviously no emergency. His only explanation for calling it an emergency is "potential irreparable harm to the Reorganized Debtor and third parties." There is, of course, no explanation as to how continuing to prosecute a motion that has been pending for four years in New York litigation and not involving the Debtor can possibly cause her irreparable harm. And the motion never identifies these third parties.

The only party that could be harmed is Selective Advisor's Group, LLC and that would require an adverse ruling in New York. Selective can avoid that by prevailing on the merits. Hazan is afraid that the New York court will grant the motion to vacate because the judgment by confession was void as a matter of law. She is asking this Court to sanction the Kosachuk Group because we dared seek redress in a court of law for a judgment obtained in violation of NLG's right to due process and in violation of New York law. The fact that this motion has been filed at all shows the lack of faith in Selective's chances of prevailing in New York. If anything, this judgment by confession is repugnant to our legal system.

The prior three motions for contempt were filed as "Expedited" and were heard by this Court. Those motions also violated Local Rule 7.1(d)(2) because they never set forth in detail "the date by which an expedited ruling is needed and the reason the ruling is needed by the stated date." At the end of the hearing, this Court reserved ruling. This evidently has encouraged the Debtor to "kick it up a notch" and raise the melodrama from expedited to emergency.

Other than increasingly histrionic allegations, the latest motion spends the first half regurgitating previous accusations. It is not until page 8 that we learn the reason for this latest incarnation – that the Kosachuk Group had the temerity to attend a hearing in New York in a case against Selective. As previously explained, the Debtor **is not a party** to that lawsuit.

Although the corporation is owned by the Debtor's husband, there is no derivative, or vicarious, or marital bankruptcy stay afforded in the Bankruptcy Code, nor is Selective mentioned in the Confirmation Order or the Discharge Order.

The motion then argues the merits of the motion pending in New York. Besides the fact that it is scandalously inaccurate and misleading, this Court should find this argument totally irrelevant. The court in New York will rule on the merits of the motion pending before it, not this Court. If the motion to vacate has no merit, the New York court will deny it. If the motion is frivolous, the New York court can impose sanctions. The disposition of the New York motion may only be adjudicated by the New York Court.

The new "Emergency" Motion also complains about discovery in the Judge Moreno appeal. NLG issued subpoenas seeking banking information on checks which the Debtor herself filed with Judge Moreno. Those checks were filed in support of Hazan's argument that the appeal of the Final Judgment entered by this Court on November 1, 2017, was equitably moot. Hazan and Selective filed a motion to quash the subpoena with Judge Moreno, who **denied** the motion two days after it was filed. Hazan never explains how this discovery, which was allowed by the judge with jurisdiction over the matter, can possibly violate any order of this Court.

This discovery would have been unnecessary if Hazan had complied with her obligation, as a Debtor in Possession (DIP) under Chapter 11, to use her own checks in her own DIP account, and provide her own DIP bank statements. Region 21, in which the Southern District of Florida sits, published its latest OPERATING GUIDELINES AND REPORTING REQUIREMENTS FOR DEBTORS IN POSSESSION AND CHAPTER 11 TRUSTEES (Revised 1/7/2018). The pertinent section on bank accounts reads:

> [I]ndividual debtors engaged in business as sole proprietors should open a separate debtor-in-possession account for payment of personal living expenses.

All business revenues must be deposited into the operating account, with amounts needed to fund the other accounts being transferred to those accounts as necessary. Deposits, other than transfers from the operating account, should not be made directly to the payroll or tax accounts. Any deviation from the three required debtor-in-possession accounts must be approved by the United States Trustee prior to the Initial Debtor Interview

**Counter checks are prohibited**. Requests to use, create, or maintain petty cash accounts must be submitted to the United States Trustee in writing. Each bank account must be located in a United States Trustee approved depository. A list of approved depositories is available on the Region 21 website at http://www.justice.gov/ust/r21. Under each office, navigate to chapter 11 for the approved depositories for each judicial district. The debtor is required to maintain bank records and canceled checks, and provide them to the United States Trustee as required by the Monthly Operating Report instructions. Within 14 days of filing the petition, the debtor must provide the United States Trustee with a sworn statement describing all pre-petition accounts by depository name, account number, and account name, verifying that each such pre-petition account has been closed. A form that complies with this requirement can be obtained from the Region 21 website at http://www.justice.gov/ust/r21/reg_info.htm#ch11. Proof of closing old accounts and opening new accounts must be provided.

The new "emergency" motion for contempt is frivolous and intended to frustrate NLG's right to appeal, and to intimidate NLG's manager and its attorneys from pursuing NLG's rights. This Court, under Local Rule 7.1(d)(1), Rule 11 F.R.C.P. and Rule 9011 of the F.R.B.P., should sanction counsel for abusing the emergency motion procedure, and for having to defend the new frivolous motion for contempt.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Court should deny this latest Motion for Order to Show Cause and deny all other Motions for Contempt and grant sanctions against Hazan, Selective and its attorneys, award NLG all legal fees it has incurred defending these frivolous motions and such other and further relief as the Court deems appropriate.

Dated December 24, 2018

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 24th day of December, 2018. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

**Attorneys for Appellant NLG, LLC**

Juan Ramirez, Jr.
ADR Miami LLC
Florida Bar No. 201952
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr.. Esq. on behalf of Secured Creditor, NLG, LLC
jr@adrmiami.com



**ORDERED in the Southern District of Florida on December 28, 2018.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:                                    Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,       Chapter 11

      Debtor,

_____/

**<u>ORDER GRANTING IN PART DEBTOR'S AMENDED EXPEDITED MOTION FOR CONTEMPT, SANCTIONS, DAMAGES AND PUNITIVE DAMAGES [ECF NO. 748]</u>**

THIS CAUSE came before the Court for hearing on October 24, 2018 upon the _Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages, and Punitive Damages and Memorandum of Law_ (the "Motion") [ECF 748].  In the Motion, the Reorganized Debtor seeks sanctions and more against NLG, LLC and Attorney Juan Ramirez, for recording a _lis pendens_ against the Reorganized Debtor's real property on August 9, 2018 and filing a cross-claim on

October 1, 2018 against the Reorganized Debtor in that state court foreclosure action by JP Morgan Bank against Debtor, *JP Morgan Bank, NA v. Elizabeth Hazan a/d/a Liza Hazan, et al.*, Case No. 2013-25902, pending in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida ("Foreclosure Action"). Debtor alleges they violated the automatic stay and the injunction resulting from the confirmed Chapter 11 Plan.

NLG, LLC and Attorney Ramirez assert their actions do not violate any provisions of the automatic stay under section 362 of the Bankruptcy Code because the filing of the *lis pendens* does not seek to to collect, recover, or offset debts from the property of the Debtor. In addition, they contend that no stay was in effect at the time of the filings, post-confirmation, due to the closure of this case, and therefore no stay violation occurred.

On December 13, 2018, following the hearing on the Motion and the post-hearing submission of proposed orders, the Reorganized Debtor filed another sanctions motion. The additional motion seeks an order to show cause as to why Chris Kosachuk, NLG, LLC, Juan Ramirez, Esq. and Astrid Gabbe, Esq. should not be held in contempt of Court for violating the Court's judgment and orders [ECF 770]. This second sanctions motion is based on additional actions taken by the foregoing parties, but the argument for sanctions remains the same, to wit, that the actions taken in various court proceedings violate this Court's Orders and judgment. A hearing on the motion for order to show cause was held on December 27, 2018.

**<u>BACKGROUND</u>**

NLG has been a participant in the Reorganized Debtor's bankruptcy case, and filed a proof of claim herein. NLG maintained that it held a foreclosure judgment on the Reorganized Debtor's homestead residence and the right to foreclose on it. The Debtor disputed NLG's assertions and,

together with Selective Advisors Group, LLC, ("Selective Advisors") a business owned by Debtor's husband, filed an adversary proceeding against NLG, Adv. No. 16-1439 BKC-AJC-A.

The adversary case was tried on July 13, 2017; and, on November 1, 2017, the Court entered a Final Judgment on Counts I, II and III of the Reorganized Debtor's Third Amended Complaint [Adv. No. 16-1439, ECF No. 238]. The Final Judgment disallowed NLG's untimely filed proof of claim, and deemed NLG's Mortgage, Note and Judgment on the Note, all entered against the Reorganized Debtor, satisfied by virtue of set-off based upon a judgment against NLG in favor of Selective Advisors. The Court ruled that NLG had no further claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order of record and in evidence:

> NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

>> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

> have been satisfied and paid, and are deemed SATISFIED OF RECORD, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

Adv. No. 16-1439 ECF No. 238 at p.14.

On June 12, 2018, the Court entered its Order Confirming the Debtor's Plan of Reorganization ("Confirmation Order") [ECF No. 691]. The Confirmation Order contains injunctions prohibiting creditors from pursuing prepetition claims against the Reorganized Debtor or her property. Paragraph 8 of the Confirmation Order contains an injunction prohibiting creditors whose claims were extinguished from pursuing such claims against the debtor:

> All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

ECF No. 691 at 5, ¶8. Similarly, Paragraph 9 of the Confirmation Order contains an injunction prohibiting all creditors from taking any action to collect any prepetition debt or to enforce any lien against the debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

*Id.*, ¶9.

NLG has appealed the Confirmation Order. No stay pending appeal of the Confirmation Order has been entered.

## **ANYALYSIS**

Pursuant to 11 U.S.C. 362(c)(1), "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." Additionally, 11 U.S.C. 362(c)(2) provides that the stay of any other act under subsection (a) continues until the earliest of the time the case is closed, dismissed or the time a discharge is granted or denied.

In accordance with 11 U.S.C. 1141(b), the confirmation of the Chapter 11 Plan in this case, on June 12, 2018, vested all property of the estate in the Reorganized Debtor. Thus, upon confirmation and the vesting of estate property in the Reorganized Debtor, the stay ceased to exist, and the actions thereafter taken against the Debtor's property are not in violation of the automatic stay. 11 U.S.C. 362(c)(1). *Baur v. Chase Home Finance (In re Baur)*, 433 B.R. 898 (Bankr. M.D. Fla. 2010). Moreover, because the Court closed this case upon confirmation, at the Debtor's request, the automatic stay was discontinued as of June 12, 2018, and the Court therefore finds there was no violation of the automatic stay by the subsequent filing of the *lis pendens* or the cross-claim. 11 U.S.C. 362(c)(2).

However, the Chapter 11 Plan and Confirmation Order replaced the automatic stay with a permanent injunction, as more specifically provided in paragraphs 8 and 9 of the Confirmation Order. Therefore, the primary issue is whether the recording of the *lis pendens* and/or the filing of the cross-claim against the Debtor violates the Court's injunction in the Confirmation Order.

Upon consideration, the Court believes the recordation of the *lis pendens* against Debtor's property is not, in and of itself, a violation of the Plan's injunction. The purpose of a *lis pendens* is to give constructive notice to a prospective buyer or lender of the pendency of a legal proceeding affecting title to or the right of possession of real property. A *lis pendens* exists, in part, to prevent third-party purchasers or lenders from "buying" a lawsuit when they purchase or loan against the property. *Chiusolo v. Kennedy*, 614 So.2d 491 (Fla. 1993). The recordation of a *lis pendens* provides constructive notice to subsequent purchasers or lenders, to prevent a buyer of real property from claiming *bona fide* purchaser status with respect to the asserted claim. A *lis pendens* also protects the filer from intervening liens that could impair any property rights claimed and from possible extinguishment of an unrecorded equitable lien. *Id*.

In this instance the *lis pendens* provides for notice "of the institution of a cross-claim for foreclosure by Defendant/Crossclaim Plaintiff NLG, LLC pursuant to its Final Judgment of Foreclosure." While the *lis pendens* appears premised upon a pre-petition, satisfied and extinguished claim, it does not establish or perfect a lien on real property and therefore does not constitute an act in violation of the stay or injunction (though some courts may suggest otherwise).

The filing of the cross-claim against the Reorganized Debtor, on the other hand, does indeed constitute an act commencing or continuing an action or process to collect, recover or offset a debt, and to enforce a lien against the Debtor on account of a pre-petition debt, in violation of paragraph 8 of the Confirmation Order, and in violation of paragraph 9 of the Confirmation Order. Filing the cross-claim against the Reorganized Debtor seeking to foreclose on her home is an act to enforce a lien against the Debtor's property. By filing the cross-claim, NLG and Attorney Ramirez violated the Plan's injunction.

"Bankruptcy judges, like district judges, have the power to coerce compliance with injunctive orders." *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 966 (11th Cir. 2012). A party will be held in contempt of a plan injunction if it is shown that the creditor (1) had knowledge of the plan injunction; and (2) intended the acts that violated the injunction. *See Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996) (factors determining stay violations are applicable to violations of discharge injunction, citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)). If the party intended to do the acts that violated the injunction, then the party is in contempt, regardless of whether the violator specifically intended to violate the stay or injunction. *Jove*, 92 F.3d at 1555.

The Court finds both conditions are satisfied here. NLG and Ramirez filed, with aforethought, the offending cross-claim, knowing full well the Confirmation Order contained those injunctive provisions, because NLG is pursuing an appeal of that Order. The injunction in the Confirmation Order prevented NLG from taking any action or attempt to collect any discharged debts, including preventing the filing of a lawsuit in state court to collect on its extinguished or otherwise satisfied debt.

Although in November 2016, the Court granted relief from the automatic stay to JP Morgan Chase Bank and NLG "to litigate *the foreclosure claim of Chase* in the Foreclosure Action to the point of judgment," [ECF No. 315], it did not authorize NLG to pursue its own foreclosure claim. Moreover, relief from stay was granted before the Court entered its Final Judgment on Counts I, II, and III, determining NLG's foreclosure judgment had been satisfied. Now that the Court has ruled on that issue, and that Judgment has not been stayed, that ruling is law of the case and NLG may not pursue a claim in state court seeking the opposite result.

Bankruptcy courts are empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Where, as here, a party has violated a plan injunction through pursuing litigation in another forum, it is appropriate for the Court to order the party to dismiss and discontinue its offending lawsuits. *See, e.g., In re Kimball Hill, Inc.*, 565 B.R. 878, 901–02 (Bankr. N.D. Ill. 2017). Because NLG and Ramirez's cross-claim in the Florida Foreclosure Action is in violation of the injunctions contained in the Confirmation Order, they are ordered to immediately discontinue their pursuit of the cross-claim against the Debtor by withdrawing or dismissing same. Upon withdrawal or dismissal of the cross-claim, the notice of *lis pendens* will automatically be dissolved pursuant to Fla.R.Civ.P. 1.420(f).

As sanctions for the violation, the Court will award the Debtor reasonable attorneys fees for having to bring this matter before the Court. However, no punitive damages will be awarded unless NLG and Attorney Ramirez fail to immediately comply with this Order.

Finally, and with respect to the motion for an order to show cause, the Debtor argues that NLG, its manager Chris Kosachuk and Attorneys Ramirez and Gabbe are in contempt of Court and should be sanctioned for commencing and continuing litigation in both Florida and New York, where they are seeking to void the judgment against NLG owned by Selective Advisors. The Debtor contends such actions constitute "employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date." The Court disagrees. Seeking to vacate the New York judgment is not akin to taking action to collect against the Debtor, regardless of whether this Court relied on the existing New York judgment in entering its Final Judgment against NLG in Adv. No. 16-1439.

The Court has no jurisdiction over litigation between two third-parties in a state or other federal court case. Third party Selective Advisers did not obtain the benefit of the automatic stay in this case, nor did it receive an injunction in the confirmed Chapter 11 Plan. The fact that Chris Kosachuk and Attorney Ramirez may have admitted in affidavits filed in those cases that their true purpose in seeking to void that New York judgment is to enforce the Reorganized Debtor's alleged debt and to foreclose a mortgage on her home, is irrelevant and does not support a finding of contempt. Stating as much in an affidavit does not make it so; NLG, Kosachuk, Ramirez and Gabbe are still not entitled to foreclose. The Court ruled as such in its Final Judgment on Counts I, II and III of the Reorganized Debtor's Third Amended Complaint in Adv. No. 16-1439, and that judgment has not been stayed and is now law of the case. The actions of NLG, its manager Chris

Kosachuk and Attorneys Ramirez and Gabbe in the cases against Selective Advisers are not actions to foreclose on the Debtor's property.

Selective Advisers is not entitled to the injunction obtained by the Reorganized Debtor in this case. The injunction is intended to protect the Reorganized Debtor from creditors seeking to enforce pre-petition debts. Actions taken by NLG, Chris Kosachuk or Attorneys Ramirez and Gabbe against third parties are not included in the injunctive relief as those actions are not seeking to collect a pre-petition debt from the Debtor in this case. Accordingly, it is

**ORDERED** and **ADJUDGED** that *Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages, and Punitive Damages and Memorandum of Law* (the "Motion") [ECF 748] is GRANTED IN PART as follows:

1. The Court finds that Attorney Ramirez and NLG have violated the injunctions in the Confirmation Order by filing the cross-claim in the Foreclosure Action seeking to foreclose a pre-petition debt that was deemed satisfied and otherwise extinguished in this bankruptcy case.

2. Attorney Ramirez and NLG shall immediately withdraw or dismiss the cross-claim filed in the Foreclosure Action, and upon dismissal of the cross-claim, the *lis pendens* shall be dissolved.

3. If the cross-claim is not immediately dismissed, NLG, LLC and Juan Ramirez, Esq., will be determined to be in contempt of this Court's Orders and the Court will consider the imposition of further sanctions, including punitive damages.

4. NLG and Attorney Ramirez are cautioned to refrain from taking any other action in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June 12, 2018.

5. NLG and Mr. Ramirez shall be jointly and severally liable for the attorney's fees in the amount of $9,500.00 as reasonable fees incurred by the Reorganized Debtor for filing the Motion in this case, appearing before the Court at two (2) hearings and filing post-hearing submissions with the Court, all in defense of NLG's improperly filed and violative cross-claim in the Foreclosure Action. The Court denies an award of fees for the multiple attorneys appearing on behalf of the Debtor as multiple attorneys were not necessary and such an award is not reasonable.

It is further

**ORDERED** and **ADJUDGED** that, based upon the foregoing, the Debtor's *Emergency Motion for Order to Show Cause as to Why Chris Kosachuk, NLG, LLC, Juan Ramirez and Astrid Gabbe Should Not be Held in Contempt of Court for Violations of This Court's Judgment, Confirmation Order and Discharge Order* [ECF 770] is MOOT.

<div align="center">###</div>

Copies furnished to:

Debtor
Geoffrey S Aaronson, Esq.
Juan Ramirez, Esq.
AUST

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

Case 1:22-cv-21485-RNS Document 35-5 Entered on FLSD Docket 04/07/2022 Page 543 of 650

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION**

**CASE NO. 2013-25902 CA 01**

JP Morgan Bank, NA,

     Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

     Defendants.

_____/

## NLG, LLC'S NOTICE OF WITHDRAWAL OF CROSSCLAIM

Defendant/Counterclaimant, NLG, LLC ("NLG"), through undersigned counsel, files this

Notice of Withdrawal of Crossclaim to the Foreclosure Complaint (the "Complaint") filed by JP

Morgan Chase Bank, NA ("JP Morgan") and states that, pursuant to Court Order, NLG hereby

withdraws the Cross-Claim against Defendant Elizabeth Hazan filed on October 1, 2018.

Dated:  December 29, 2018

               Respectfully submitted,

               ADR Miami LLC

NLG, LLC's Notice of Withdrawal of Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 3

1172 So. Dixie Hwy. #341
Coral Gables, Florida 33146
Tel: (305) 667-6609
Fax: (800) 380-4155

By: ___/s/ Juan Ramirez, Jr.____
**Juan Ramirez, Jr.**
Florida Bar No. 201952
jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 29th day of December, 2018, on all counsel or parties of record on the Service List below.

By: ___/s/ Juan Ramirez, Jr.____
Attorney for Defendant/Counterclaimant, NLG

## SERVICE LIST

Robin Reyes
*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia*

NLG, LLC's Notice of Withdrawal of Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 3

*Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community*
*Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com



**ORDERED in the Southern District of Florida on December 28, 2018.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                         Chapter 11

        Debtor.

_____/

**ORDER DENYING MOTION FOR REHEARING AND RELIEF FROM ORDER
REOPENING CASE, APPROVING FINAL REPORT AND ENTERING DISCHARGE
TO DEBTOR**

**THIS MATTER** came before the Court upon the *Secured Creditor NLG, LLC's Motion
for Rehearing of and Relief from Order Granting Motion to Reopened Case to Approve Final
Report, and Enter Discharge to Reorganized Debtor* (ECF 776). The Court notes that NLG, LLC
has not been determined to be a secured creditor in this case. Notwithstanding, the Court has
reviewed the motion for rehearing and finds no basis stated therein to reconsider its prior order.
Movant has raised no new issues of law or fact that the Court has not previously considered.

CASE NO. 16-10389-BKC-AJC

Although NLG has persistently argued that all unsecured creditors of the Debtor must be paid in full before obtaining a discharge, this Court disagreed. The Court determined that, pursuant to 11 U.S.C. §1141, those unsecured creditors holding non-dischargeable judgments, need not be paid in full prior to the issuance of a discharge. The Court reasoned that the discharge does not affect these unsecured creditors with non-dischargeable debts as their debts survive the confirmed plan. It is therefore

ORDERED AND ADJUDGED that the *Secured Creditor NLG, LLC's Motion for Rehearing of and Relief from Order Granting Motion to Reopened Case to Approve Final Report, and Enter Discharge to Reorganized Debtor* (ECF 776) is DENIED.

### 

Copies to:

Astrid Gabbe, Esq.
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427

*Attorney Astrid Gabbe is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*



**ORDERED in the Southern District of Florida on December 28, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

        Debtor.

_____/

### ORDER DENYING MOTION TO COMPEL

**THIS MATTER** came before the Court upon the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773).  The Court has reviewed the Motion, as modified by movant at the hearing on the motion held December 27, 2018, and finds it is not only without merit, but is moot. The Chapter 11 Plan having been confirmed, the case having been administratively closed, and the Debtor having now received a discharge, it is

CASE NO. 16-10389-BKC-AJC

ORDERED AND ADJUDGED that the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773) is DENIED.

###

Copies to:

Astrid Gabbe, Esq.
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427

*Attorney Astrid Gabbe is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 16-10389-AJC |
| | ) | |
| LIZA HAZAN a/k/a ELIZABETH HAZAN, | ) | Chapter 11 |
| | ) | |
|    Debtor. | ) | |
| | ) | |
| _____ | ) | |

**REORGANIZED DEBTOR'S EXPEDITED MOTION FOR CONTEMPT AND TO**
**IMPOSE ADDITIONAL SANCTIONS ON NLG, LLC AND ITS COUNSEL FOR**
**NONCOMPLIANCE WITH DECEMBER 28, 2018 CONTEMPT ORDER**

Reorganized and Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan moves this Court

for an order finding NLG, LLC and its counsel, Juan Ramirez, Esq., in contempt, awarding

attorney's fees, damages, and punitive damages, issuing Writs of Bodily Attachment, and

granting further relief to remedy NLG and Ramirez's willful violation of this Court's Order

Granting in Part Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages and

Punitive Damages [ECF NO. 780] (the Contempt Order), Order Confirming Plan of

Reorganization [ECF NO. 691] (the Confirmation Order), and Order Granting Motion to

Reopen Case to Approve Final Report and Enter Discharge to Reorganized Debtor [ECF NO.

766] (the Discharge Order), as follows:

    1.     Less than one week after this Court entered the Contempt Order, NLG and

Ramirez have already violated its terms. It is time to sanction NLG and Ramirez in sufficient

measure to ensure their compliance with this Court's orders.

    2.     On June 12, 2018, this Court entered its Order Confirming Plan of Reorganization

(Confirmation Order). [ECF No. 691].

3.      Paragraph 8 of the Confirmation Order contains an injunction prohibiting creditors whose claims were extinguished from pursuing such claims against the debtor:

> All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived.

4.      Paragraph 9 of the Confirmation Order contains an injunction prohibiting all creditors from taking any action to collect any prepetition debt or to enforce any lien against the debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

5.      In the Adversary Case No. 16-01439, this Court held a trial on July 13, 2017, and on November 1, 2017, entered a Final Judgment on Counts I, II and III in favor of Ms. Hazan. *Id*. It declared that NLG's claim against the debtor had been satisfied and that NLG had no further claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. *Id*. And this Court forever quieted the Debtor's title to her property as against all claims by NLG:

> NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

2

> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida
>
> have been satisfied and paid, and are deemed SATISFIED OF RECORD, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

Adv. Case No. 16-01439 ECF No. 238 at 14.

6.    On December 7, 2018, this Court entered the Discharge Order, ruling, among other things, that Hazan was discharged from all debts arising prior to plan confirmation:

> The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

ECF NO. 766 at 11, ¶4.

7.    On December 28, 2018, this Court entered the Contempt Order, finding NLG and its counsel in violation of the Confirmation Order by pursuing foreclosure of Hazan's property in state court and ordering that NLG's cross-claim in state court be dismissed, barring which NLG and its counsel would be held in contempt and further sanctions would be imposed:

> The Court finds that Attorney Ramirez and NLG have violated the injunctions in the Confirmation Order by filing the cross-claim in the Foreclosure Action seeking to foreclose a pre-petition debt that was deemed satisfied and otherwise extinguished in this bankruptcy case.
>
> Attorney Ramirez and NLG shall immediately withdraw or dismiss the cross-claim filed in the Foreclosure Action, and upon dismissal of the cross-claim, the *lis pendens* shall be dissolved.
>
> If the cross-claim is not immediately dismissed, NLG, LLC and Juan Ramirez, Esq., will be determined to be in contempt of this Court's

3

> Orders and the Court will consider the imposition of further sanctions, including punitive damages.

ECF NO. 780 at 9.

8.     The Court further ordered NLG and its counsel to pay Hazan $9,500.00 in attorney's fees for bringing the motion:

> NLG and Mr. Ramirez shall be jointly and severally liable for the attorney's fees in the amount of $9,500.00 as reasonable fees incurred by the Reorganized Debtor for filing the Motion in this case, appearing before the Court at two (2) hearings and filing post-hearing submissions with the Court, all in defense of NLG's improperly filed and violative cross-claim in the Foreclosure Action.

*Id*. at 10.

9.     Finally, the Court warned NLG and its counsel "to refrain from taking ***any other action*** in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June 12, 2018." *Id*. at 9 (emphasis added).

10.      NLG has disobeyed the Contempt Order, failed to heed the Court's warning, and committed additional violations of the Confirmation Order and Discharge Order.

11.     *First*, on January 3, 2019, NLG filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 11-42770, Plaintiff's Motion to Schedule Hearing to Determine the Amount of Attorney's Fees, a copy of which is attached hereto as Exhibit 1. In that motion, NLG asks the state court to fix the amount of and award attorney's fees against Hazan purportedly due under an April 26, 2016 order awarding appellate attorney's fees.

12.     Despite recognizing the Discharge Order, NLG blatantly misrepresents its effect in its motion, telling the the state court that the attorney's fees "were not discharged because they constitutes [sic] a post-petition debt." *See* Exhibit 1.

13.     Not only did the attorney's fees result from litigation over a prepetition claim, but the Discharge Order expressly states that Hazan is discharged from "any debt that arose before the date

4

of such confirmation…" The Confirmation Order was entered on June 12, 2018. April 26, 2016, when entitlement to attorney's fees was determined, was before June 12, 2018. Accordingly, the attorney's fees award has been discharged.

14.     Moreover, in moving to have the amount of attorney's fees determined and awarded, NLG has ignored the Court's warning in the Contempt Order to "refrain from taking any other action in contravention of the Final Judgment on Counts I, II and III…"  In the Final Judgment as to Counts I, II and III, the Court held that "NLG, LLC has **no claim** against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage **or any court order**." Adv. Case No. 16-01439 ECF No. 238 at 14 (emphasis added). In direct contravention of that determination, NLG is asserting a claim to attorney's fees against Hazan—and has misrepresented to the state court that it is entitled to such attorney's fees notwithstanding Hazan's discharge.

15.     The Circuit Court has set a hearing on NLG's motion to determine amount of attorney's fees for March 14, 2019 at 3:45 PM.

16.     *Second*, NLG has violated the Contempt Order's directives to "dismiss the cross-claim filed in the Foreclosure Action" and "refrain from taking any other action in contravention of the Final Judgment on Counts I, II and III…"

17.     On December 29, 2018, NLG filed a document titled NLG, LLC's Notice of Withdrawal of Crossclaim, which states only that NLG "withdraws the Cross-Claim against Defendant Elizabeth Hazan." *See* Exhibit 2 hereto.

18.     NLG's Cross-Claim, which seeks foreclosure of Hazan's property, is asserted "against all named Defendants." *See* NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim, attached hereto as Exhibit 3, at 5. Merely "withdrawing" the cross-claim against Hazan only does not comply with the Contempt Order's directive to dismiss the cross-claim.

19.     In the Contempt Order, this Court specifically contemplated that on "dismissal of the cross-claim, the notice of *lis pendens* will automatically be dissolved pursuant to Fla.R.Civ.

5

1.420(f)." ECF NO. 780 at 7. It is apparent that NLG failed to comply with the Court's order to dismiss its crossclaim—without qualification—precisely to avoid the dissolution of the *lis pendens*, so that NLG could thereby continue to prevent Hazan from selling her property.

20.     Moreover, NLG has continued to pursue the Counterclaim it filed in the same foreclosure case, in which it also is seeking to assert the same claim to Hazan's property that this Court found satisfied in the Final Judgment as to Counts I, II and III:

> NLG prays that the Court enter judgment (a*) **confirming that NLG has a valid lien on the Property** for the total amount specified in the Foreclosure Judgment, plus per diem interest and legal fees after the date of entry, superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

Exhibit 3 at 5 (emphasis added).

21.     Similarly, NLG continues to defend against Chase's claim by asserting in its Answer and Affirmative Defenses—in direct contravention of the Final Judgment on Counts I, II and III—that it holds a lien on Hazan's property superior to all other liens and interests. *See* Exhibit 3 at 2-3.

22.     By continuing to pursue its counterclaim and to stand on its Answer and Affirmative Defenses, NLG is taking "action[s] in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439" and "the Confirmation Order entered on June 12, 2018."

23.     *Third*, despite the Contempt Order's directive for NLG and its counsel to pay $9,500.00 to Hazan for the attorney's fees she incurred in bringing her prior motion for contempt, NLG and its counsel have disobeyed the Contempt Order by refusing to tender such payment.

24.     NLG and its counsel's continued disobedience of this Court's orders makes clear that more onerous sanctions, both monetary and non-monetary, are necessary to compel compliance.

25.     Accordingly, Hazan requests that the Court award additional attorney's fees, damages, and punitive damages. And because NLG has already demonstrated its willingness to disobey this Court's orders for payment of money, Hazan further requests that the Court issue a Writ of Bodily Attachment for NLG's principal, Chris Kosachuk and counsel, Juan Ramirez, Jr. subject to purgation by payment of all sums ordered by the Court, dismissal of all state court foreclosure claims, and fulfillment of any other obligations imposed by the Court.

WHEREFORE, Hazan respectfully requests that the Court enter an order: (a) finding NLG and its counsel, Juan Ramirez, Esq., in contempt of Court;  (b) directing NLG and Ramirez to immediately cancel the hearing on NLG's motion for attorney's fees in Miami-Dade County Circuit Court Case No. 11-42770 and to dismiss that action, as well as Miami-Dade County Circuit Court Case No. 07-19532 with prejudice; (c) directing NLG and Ramirez to dismiss with prejudice the entirety of NLG's crossclaim and counterclaim in Miami-Dade County Circuit Court Case No. 2013-25902, to withdraw its Answer, Affirmative Defenses, Counterclaim and Crossclaim in that action, and to record a dismissal of its *lis pendens*; (d) awarding damages, punitive damages, and attorney's fees to Hazan; and (e) ordering the issuance of Writs of Bodily Attachment directed to Ramirez and Kosachuk if all such corrective actions, including but not limited to the dismissals stated above and payment of all monetary sums awarded, are not immediately performed.

Respectfully submitted,

BUSHELL LAW, P.A.
Counsel for Liza Hazan

7

6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220

By: /s/ Daniel A. Bushell
Daniel A. Bushell
Florida Bar No. 0043442
dan@bushellappellatelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Daniel A. Bushell
Daniel A. Bushell

# SERVICE LIST

## Case No. 16-10389-AJC

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A. aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman mfriedman@gjb-law.com,
gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC mfriedman@gjb-law.com, gjbecf@gjb-
law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC astridgabbe@gmail.com

Astrid Gabbe on behalf of NLG, LLC

astridgabbe@gmail.com

9

Astrid Gabbe on behalf of Defendant NLG, LLC astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com,
jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com,
jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan dave@flalawyer.com,
emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan dave@flalawyer.com,
emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC dave@flalawyer.com,
emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan dave@flalawyer.com,
emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC bkcmiami@gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Juan Ramirez, Jr., Esq. jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth esilver@stearnsweaver.com,
rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. ppaoletti@simonsigalos.com,
dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Miami-Dade County Tax Collector c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430 Miami, FL 33128-1733

Filing # 82804779 E-Filed 01/03/2019 01:56:31 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; J.P. MORGAN CHASE
BANK, N.A., a foreign corporation; FISHER ISLAND
COMMUNITY ASSOCIATION, INC., a Florida Non
Profit Corporation; VALENCIA ESTATES HOME-
OWNERS ASSOCIATION, INC., a Florida Non Profit
Corporation; and JOHN DOE and JANE DOE,
Individually, as unknown Tenants in possession of the
Subject Property

      Defendants

_____/

## PLAINTIFF'S MOTION TO SCHEDULE HEARING TO DETERMINE THE AMOUNT OF ATTORNEY'S FEES

      Plaintiff NLG, LLC, by and through undersigned counsel and pursuant to a Court

Order from the Third District Court of Appeal, requests this Court schedule an

evidentiary hearing to fix the amount of attorney's fees, and as grounds states:

      1.     On April 26, 2016, the Third District Court of Appeal issued an order

granting NLG's motion for attorney's fees pursuant to section 57.105, Florida Statutes

and Rule 9.410 Fla. R. App. P. and remanded to the trial court to fix amount. The Order

is attached.

2.     Because the Defendant/Appellant Elizabeth Hazan was under the automatic stay protection of the bankruptcy court, NLG had not requested a hearing to fix the amount.

3.     The petition for Chapter 11 bankruptcy was filed on January 11, 2016, and Hazan received her discharge on December 7, 2018.

4.     The attorney's fees awardable pursuant to the order of the Third District were not discharged because they constitutes a post-petition debt.

WHEREFORE Plaintiff NLG prays for a Hearing to fix the amount of attorney's fees.

Respectfully submitted this 3rd day of January, 2019.

> JUAN RAMIREZ, JR.
> ADR Miami LLC
> 1172 S. Dixie Hwy. #341
> Coral Gables, Florida 33146
> Tel: (305) 667-6609
> Fax: (800) 380-4155
>
> ___/s/ Juan Ramirez, Jr. ___
> Juan Ramirez, Jr. (Fla. Bar # 201952)
> jr@adrmiami.com
> *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via email this 2nd day of January, 2019, to:

Robert P. Lithman
rpl@lithmanlaw.com

Mark Cohen, Esq.
Mdcohenpa@yahoo.com

Daniel S. Nathan

Daniel S. Nathan, P.A.
12805 SW 84th Avenue Road
Miami, Florida 33156
Dnathan@danielsnathan.com

Bruce Jacobs,
efile@jakelegal.com

Ray Garcia
The Law Office of Ray Garcia, P.A.
rgarcia@raygarcialaw.com
Service@raygarcialaw.com

 

 

 

 

 

                                                  ___*/s/ Juan Ramirez, Jr.*___
                                                        Juan Ramirez, Jr.

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 26, 2016

ELIZABETH HAZAN,                           CASE NO.:  3D**16-0315**
Appellant(s)/Petitioner(s),
vs.                                        L.T. NO.:    11-42770
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

     Upon consideration of the motion for attorney's fees pursuant to

section 57.105, Florida Statutes and Rule 9.410 Fla. R. App. P. filed by appellee, it

is ordered that said motion is granted and remanded to the trial court to fix amount.

     SUAREZ, C.J., and SHEPHERD and SALTER, JJ., concur.



cc:    Robert P. Lithman     Juan Ramirez, Jr.     Hon. Monica Gordo
     Miami-Dade Clerk

la

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

### CASE NO. 2013-25902 CA 01

JP Morgan Bank, NA,

    Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

    Defendants.

_____/

### NLG, LLC'S NOTICE OF WITHDRAWAL OF CROSSCLAIM

Defendant/Counterclaimant, NLG, LLC ("NLG"), through undersigned counsel, files this

Notice of Withdrawal of Crossclaim to the Foreclosure Complaint (the "Complaint") filed by JP

Morgan Chase Bank, NA ("JP Morgan") and states that, pursuant to Court Order, NLG hereby

withdraws the Cross-Claim against Defendant Elizabeth Hazan filed on October 1, 2018.

Dated:  December 29, 2018

                Respectfully submitted,

                ADR Miami LLC

NLG, LLC's Notice of Withdrawal of Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 3

1172 So. Dixie Hwy. #341
Coral Gables, Florida 33146
Tel: (305) 667-6609
Fax: (800) 380-4155

By: ____/s/ Juan Ramirez, Jr.____
**Juan Ramirez, Jr.**
Florida Bar No. 201952
jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 29th day of December, 2018, on all counsel or parties of record on the Service List below.

By: ____/s/ Juan Ramirez, Jr.____
Attorney for Defendant/Counterclaimant, NLG

## SERVICE LIST

Robin Reyes
*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia*

NLG, LLC's Notice of Withdrawal of Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 3

*Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community*
*Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com

Case 1:22-cv-21485-FNS Document 25-757 Entered on FLSD Docket 06/14/2022 Page 568 of 650

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

### CASE NO. 2013-25902 CA 01

JP Morgan Bank, NA

      Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

      Defendants.

_____/

### NLG, LLC'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND CROSSCLAIM

Defendant/Counterclaim and Crossclaimant, NLG, LLC ("NLG"), through undersigned

counsel, files this Answer,  Affirmative Defenses, Counterclaim and Crossclaim to the

Foreclosure Complaint (the "Complaint") filed by JP Morgan Chase Bank, NA ("JP Morgan").

### ANSWER AND AFFIRMATIVE DEFENSES

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 2 of 11

1.     Paragraph 1 of the Complaint describes the nature of the purported claims asserted by JP Morgan in the Complaint and does not require a response. To the extent a response is required, the allegations are admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Denied.

6.     Denied.

7.     Admitted.

8.     Denied.

9.     NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

10.     NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

11.     Denied.

12.     Denied.

13.     Denied.

14.     NLG is without knowledge as to the allegations contained in paragraph 9 and therefore demands strict proof thereof.

15.     Denied. 6913 Valencia LLC's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

16.     Denied.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 11

17.     Denied.  Fisher Island Community Association's interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

18.     Denied.  Valencia Estates' interest in the subject property was foreclosed out by NLG's Foreclosure Judgment and is also inferior to NLG's lien interest in the subject property.

19.     Denied.

20.     Denied.

## AFFIRMATIVE DEFENSES

21.     As its first affirmative defense, NLG states that Plaintiff's claims are barred by the doctrine of res judicata for the reasons set forth in NLG's crossclaim.

22.     As its second affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of collateral estoppel for the reasons set forth in NLG's crossclaim.

23.     As its third affirmative defense, NLG states that Plaintiffs' claims are barred by the doctrine of estoppel for the reasons set forth in NLG's crossclaim.

24.     As a fourth affirmative defense, NLG states that the Plaintiffs' claims are barred by previous dismissals of the same causes of action by the Plaintiff in 2008 and 2011.

25.     As a fifth affirmative defense, NLG states that the Plaintiffs' claims are barred by their respective statutes of limitation.

26.     As a sixth affirmative defense, NLG is without knowledge whether Plaintiff complied with paragraph 22 of the mortgage, which requires notice of acceleration and therefor alleges that Plaintiff failed to comply with the notice requirement, subject to conducting discovery.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 4 of 11

27.     As a seventh affirmative defense, NLG asserts that the Plaintiff lacked standing at the time this action was filed as the mortgagee listed in the Complaint is JP Morgan, but the mortgagee was Washington Mutual Bank at the time of filing.

28.     As an eight affirmative defense, NLG asserts that Plaintiff has failed to record and pay documentary stamps on the Loan Modification Agreement mentioned in the Complaint.

## **COUNTERCLAIM**

29.     Plaintiff alleges that on March 7, 2007, Defendant Hazan executed a promissory note and mortgage recorded in Official Records Book 25450, Page 2835, of the Public Records of Miami-Dade County, Florida. The mortgage listed the lender as "Washington Mutual Bank, FA." The mortgage was attached to the Complaint as Exhibit B and is incorporated by reference herein.

30.     The Complaint does not allege that this mortgage was ever assigned to Plaintiff.

31.     On March 8, 2007, Hazan executed and delivered to NLG a promissory note in the principal amount of $1,275,000, secured by a Mortgage of even date recorded in Official Records Book 25559, Page 4266, of the Public Records of Miami-Dade County, Florida. Attached is the Note as Exhibit "A" and the Mortgage as Exhibit "B".

32.     The Complaint alleges that Hazan executed a Loan Modification Agreement. The Loan Modification was attached to the Complaint as Exhibit C and is incorporated by reference herein. Exhibit C was dated June 20, 2011, and shows it was in favor of Plaintiff, JPMORGAN CHASE BANK, N.A., with an effective date of August 1, 2011, increasing the Principal Balance to $4,282,432.36.  It does not show that the Loan Modification was ever recorded.

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 5 of 11

33.     NLG never agreed to subordinate its interest to Plaintiff and neither Hazan nor Plaintiff alerted NLG to the loan modification.  NLG only learned of the loan modification when it was attached to the Complaint in this case.

34.     As such, Plaintiff JP Morgan and/or Washington Mutual lost its priority position with respect to NLG when it entered into the Loan Modification Agreement with Hazan and did not obtain NLG's consent.

35.     NLG has retained undersigned counsel to represent it in this Counterclaim, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Plaintiff.

36.     All conditions precedent to the filing of this Counterclaim have been performed, have been waived, have occurred or have been satisfied.

**WHEREFORE**, NLG prays that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment, plus per diem interest and legal fees after the date of entry, superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

## CROSSCLAIM

Cross-claimant NLG, through undersigned counsel, hereby files this Crossclaim against all named Defendants and alleges as follows:

### Preliminary Statement

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 6 of 11

37.     NLG is the holder of a valid lien against the Property, superior in dignity to any interest of any Defendant and Plaintiff herein, under an Order Granting Foreclosure (the "Foreclosure Order") entered on December 1, 2015, and a Final Judgment of Foreclosure (the "Foreclosure Judgment") entered in December 4, 2015 by Circuit Judge Monica Gordo in the case of *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 11-42770-CA 02 in Miami-Dade County Circuit Court (the "Foreclosure Action"). The Final Judgment was recorded at Official Records Book 29902, Page 3737, of the Public Records of Miami-Dade County, Florida. Correct copies of the Foreclosure Order and Foreclosure Judgment are attached as Exhibits "C" and "D."

38.     Judge Gordo ruled in NLG's favor on all of all issues in a detailed fifteen page (plus exhibits) Order Granting Foreclosure on December 1, 2015, which was followed by the entry of the Foreclosure Judgment on December 4, 2015.

39.     Defendant Hazan filed a Notice of Appeal to the Third District Court of these orders and was assigned a Case No. 3D16-0315. On February 10, 2016, NLG filed its Motion to Dismiss the appeal. Hazan filed four motions for extension of time before filing a Response to the Motion to Dismiss on March 28, 2016. NLG filed its Reply on April 4, 2016. Two and a half hours later, Hazan filed a Notice of Voluntary Dismissal. On the next day, the Third District dismissed the appeal.

40.     On April 26, 2016, the Court granted NLG's motion for attorney's fees pursuant to section 57.105, Florida Statutes and Rule 9.410 of the Fla. R. App. P.

41.     This rendered both the Order Granting Foreclosure on December 1, 2015, and the Foreclosure Judgment on December 4, 2015, to be the "law of the case."

**<u>Factual Allegations</u>**

**A. The Note, Note Judgment, Mortgage and Foreclosure Action.**

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 7 of 11

42.     In 2007, NLG sold a home located at 6913 Valencia Drive, Fisher Island, Florida 33109 to Hazan for $5,100,000, and received a purchase money note and mortgage on the Property in the amount of $1,275,000. Correct copies of the Note and the Mortgage are attached as Exhibits "A" and "B."

43.     On April 28, 2008, based on the Debtor's default under a settlement agreement stemming from the Debtor's default under the Note, NLG obtained a default final judgment against the Debtor for $1,618,071.29 plus post-judgment interest (the "Default Final Judgment") in the case of *NLG, LLC v. Hazan*, Case No. 07-19532, which was affirmed on appeal twice.

44.     After entry of the Default Final Judgment, NLG and Hazan entered into a second settlement agreement, which Hazan defaulted in February 2009.

45.     On December 21, 2011, NLG filed a complaint to foreclose its Mortgage on the Property in the case of *NLG, LLC v. Elizabeth Hazan, et al.* (*i.e.*, the NLG Foreclosure Action), under Case No. 11-42770-CA 02.

46.     On January 2, 2013, the circuit court judge then presiding over the NLG Foreclosure Action entered judgment in favor of Hazan. That judgment was reversed on appeal in a detailed written opinion reported under *NLG, LLC v. Hazan*, 151 So. 3d 455 (Fla. 3d DCA 2014).

**B. The Third DCA issues its Opinion and Mandate in the NLG Appeal.**

47.     On September 3, 2014, the Third District issued its Opinion in *NLG v. Hazan*, 151 So. 3d 455, reversing the judgment in favor of Hazan in the Foreclosure Action and adjudicating the following issues:

    a.  The entry of the Default Final Judgment in NLG's favor did not preclude NLG's later enforcement of the Mortgage in the NLG Foreclosure Action;

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 8 of 11

    b. NLG's Mortgage had not been extinguished; and

    c. NLG had standing to pursue the NLG Foreclosure Action, with its manager Chris Kosachuk (the same manager through which it acts today) being a proper representative of NLG.

48. The Third District denied motions for rehearing and rehearing *en banc*, and entered its Mandate in accordance with its opinion on November 25, 2014. A correct copy of the Third District's Opinion and Mandate is attached as Exhibit "E" to this Crossclaim.

49. After over a year of additional litigation, on December 1, 2015, Judge Gordo entered her Order Granting Foreclosure, which took into consideration the material facts and disputes between NLG and Hazan, including the facts alleged above, and determined that NLG was entitled to foreclose its valid Mortgage on the Property.

50. On December 4, 2015, Judge Gordo entered her Foreclosure Judgment, entering in rem relief in favor of NLG and adjudicating that NLG holds a lien on the Property in the amount of $4,876,654.29. On February 3, 2016, the Debtor filed a Notice of Appeal, but voluntarily dismissed her appeal on April 4, 2016. The Foreclosure Judgment is now final, non-appealable and the "law of the case."

51. Judge Gordo set a foreclosure sale for January 12, 2016. Hazan filed her Bankruptcy Case on January 11, 2016 to stay the foreclosure sale.

52. On November 29, 2016, the Bankruptcy Court granted relief from the automatic stay to all parties to this action, including NLG. The relief was granted to litigate the foreclosure claim "to the point of judgment, but not to conduct a foreclosure sale of the Property."

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 9 of 11

53.     NLG has retained undersigned counsel to represent it in this action, is required to pay counsel a fee for it services, and is entitled to an award of reasonable attorney's fees and costs against Selective and the Debtor.

54.     All conditions precedent to the filing of this action have been performed, have been waived, have occurred or have been satisfied.

## COUNT I

55.     NLG incorporates the allegations of paragraphs 37 through 54 of the Crossclaim as though fully set forth herein.

56.     This is an action by NLG against the named Crossclaim Defendants.

57.     The NLG Foreclosure Judgment is a final non-appealable judgment of a state court of competent jurisdiction which is binding upon all of the parties to this action and cannot be revisited by this Court under principles of res judicata, collateral estoppel or otherwise. Furthermore, it is the law of the case as between and among all parties herein.

58.     In accordance with the Foreclosure Judgment, NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment "superior in dignity to any right, title, interest or claim of the Defendants [in the NLG Foreclosure Action], and all persons, corporations, or other entities claiming by, through or under the defendants or any of them," plus per diem interest since the date of entry of the NLG Foreclosure Judgment and attorneys' fees incurred thereafter.

59.     For the reasons stated above, NLG prays that this Court should enter judgment in NLG's favor confirming that Judge Gordo's final, non-appealable Foreclosure Judgment is binding on the parties to this action and confirming that NLG holds a valid lien against the

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 10 of 11

Property superior in dignity to any interest in the Property held by the Crossclaim and Counterclaim Defendants.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) confirming that NLG has a valid lien on the Property for the total amount specified in the Foreclosure Judgment superior in dignity to any right, title, interest or claim of the Plaintiff or Defendants, (b) reserving judgment to grant NLG further relief with respect to the Property, (c) awarding NLG its reasonable attorney's fees and costs against Plaintiff or Defendants, and (d) granting such other and further relief as the Court deems appropriate.

Dated: October 1, 2018

> Respectfully submitted,
>
> ADR Miami LLC
> 1172 So. Dixie Hwy. #341
> Coral Gables, Florida 33146
> Tel: (305) 667-6609
> Fax: (800) 380-4155
>
> By: ____/s/ Juan Ramirez, Jr.____
> **Juan Ramirez, Jr.**
> Florida Bar No. 201952
> jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 1st day of October, 2018, on all counsel or parties of record on the Service List below.

> By: ____/s/ Juan Ramirez, Jr.____
> Attorney for Defendant and Crossclaimant, NLG, LLC

## SERVICE LIST

Robin Reyes

NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 11 of 11

*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia*
*Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community*
*Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com

# EXHIBIT A

EXHIBIT A

## NOTE

U.S. $1,275,000.00

Miami, Florida
March 6, 2007

FOR VALUE RECEIVED the undersigned, and if more than one, jointly and severally ("Maker"), promises to pay to the order of NLG, LLC ("Holder"), or to its successors or assigns, ONE MILLION DOLLARS TWO HUNDRED SEVENTY-FIVE THOUSANDAND ZERO CENTS ($1,275,000.00) in lawful money of the United States, with interest, payable as follows:

1. THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on April 10, 2007;
2. THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000.00) of principal shall be due and payable on September 10, 2007; and,
3. FOUR HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($400,000.00) of principal shall be due and payable on January 10, 2008.
4. TWO HUNDRED SEVENTY-FIVE THOUSAND AND ZERO CENTS ($275,000.00) of principal shall be due and payable on September 10, 2008

Interest at the rate of TEN percent (10%) per annum shall accrue on the outstanding principal balance. Accrued and unpaid interest shall be paid in a single installment on September 10, 2008.

The payments due hereunder shall be payable by wire transfer to Wachovia Bank, N.A., Account # 2000015278142, ABA # 031201467, or such other place as Holder may designate in writing for the benefit of NLG, LLC.

The full balance of principal, along with all accrued and unpaid interest, shall be due and payable, unless sooner paid in one lump sum payment on March 10, 2008. This Note may be prepaid in whole or in part at any time without penalty, together with accrued interest on the principal prepaid to the date of payment. Any partial prepayment shall be applied first to the payment of interest on the unpaid principal amount at the interest rate, and the remainder thereof to payment on account of principal.

The principal amount of this Note may be prepaid in whole or in part at any time without penalty. Any partial prepayment shall be applied against the next maturing payment of principal.

The Maker waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold Maker liable.

The Maker further agrees to pay all costs of collection, including reasonable attorney's fees in case the principal of this Note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

If any installment of interest or principal under this Note is not paid within ten (10) days from the due date, the entire principal amount outstanding hereunder and accrued and unpaid interest at the default interest rate of twenty-four percent (24%) per annum thereon (the "default interest rate") shall at once become due and payable, at the option of the Holder.

This Note is to be construed and enforced according to the laws of the State of Florida.

Ex "A"

Case 1:22-cv-21852-RNS Document 57-8 Entered on FLSD Docket 06/14/2023 Page 581 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 3 of 72

Notwithstanding anything herein to the contrary, it is not the intention of the parties to charge or receive nor shall there at any time be charged any interest which would result in a rate of interest being charged which is in excess of the maximum rate permitted to be charged by law; and in the event that any sum in excess of the maximum legal rate of interest is paid or charged, the same shall, immediately upon discovery thereof, be deemed to have been a prepayment of principal (which prepayment shall be permitted, and be without premium or penalty) as of the date of such receipt, and all payments made thereafter shall be appropriately reapplied to interest and principal to give effect to the maximum rate permitted by law, and after such reapplication, any excess payment shall be immediately refunded to Maker.

This Note is secured by a Florida Real Estate Purchase Money Second Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), dated of even date herewith, encumbering property situated in the State of Florida, which Mortgage was granted by the Maker to the Holder, to which reference is hereby made for a description of the mortgaged property, the nature and extent of the security, the rights of the Holder in respect thereof and the terms and conditions upon which this Note is issued. The unpaid balance of the principal amount, plus accrued interest, shall become immediately due and payable at the option of the Holder upon the happening of an event by which said balance shall or may become due and payable under the terms of the Mortgage.

Maker:

_____
ELIZABETH HAZAN, a single woman

# EXHIBIT B

Exhibits to NLG, LLC's Answer, Affirmative Defenses Counterclaims

Case No.
Page 5 of 7

PREPARED BY AND RECORDED COPIES
SHOULD BE RETURNED TO:
Thomas M. David, Esq.
Weisenfeld & Associates, P.A.
2900 S.W. 28 Terrace, Penthouse
Miami, Florida 33133

```
CFN  2007R0410013
OR Bk 25559 Pss 4266 - 4272; (7pss)
RECORDED 04/24/2007 12:37:00
MTG DOC TAX 4,462.50
INTANG TAX 2,550.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

## PURCHASE MONEY SECOND MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS PURCHASE MONEY SECOND MORTGAGE AND SECURITY AGREEMENT (hereinafter the "Mortgage") executed the 8th day of March, 2007 by ELIZABETH HAZAN, a single woman (hereinafter referred to as "Mortgagor"), to NLG, LLC, a Delaware Limited Liability Company, (hereinafter referred to as "Mortgagee").

### W I T N E S S E T H:

FOR GOOD AND VALUABLE CONSIDERATION, and also in consideration of the aggregate sum named in the Note of even date herewith (the "Note"), hereinafter described, the said Mortgagor grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the said Mortgagee, its successors and assigns, in fee simple, all that certain real property of which Mortgagor is now seized and possessed, and in actual possession, situated in the county of Miami-Dade, State of Florida, to-wit:

Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

TOGETHER WITH ALL structures and improvements now and hereafter located on said real property and all licenses and permits used or required in connection with the use of said real property, and all leases of said property now or hereafter entered into and all right, title and interest of the Mortgagor thereunder, including without limitation, rents, issues, proceeds and profits accruing and to accrue from said real property, all of which are included within the foregoing description. Also, all gas, steam, electric, water and other heating, plumbing, ventilating, security, irrigating and power, extensions, appliances, fixtures, and appurtenances, including air conditioning, ducts, machinery and equipment, which are now or may hereafter pertain to or be used with, in or on said real property, though they be either detached or detachable (the real property and tangible and intangible personal property as described above, are hereinafter collectively referred to as the "Mortgaged Property").

TO HAVE AND TO HOLD the same together with the tenements, hereditaments, and appurtenances, unto the said Mortgagee, its successors and assigns, in fee simple.

AND the said Mortgagor, for itself and its successors and assigns, covenants with the said Mortgagee, its successors and assigns, that the said Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that there is a dedicated public right of ingress and egress to the Mortgaged Property; that the said Mortgagor has full power and lawful right to the Mortgaged Property in fee simple as aforesaid; that the Mortgaged Property is free from all encumbrances except as may be set forth elsewhere herein; that the lien hereof is a second mortgage lien on the Mortgaged Property; and that the said Mortgagor hereby fully warrants the title to the Mortgaged Property and will defend the same against the lawful claims of all person whomsoever, subject only as set forth herein.

1

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/14/2023 Page 584 of

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 6 of 172

PROVIDED ALWAYS, that if the said Mortgagor, its successors or assigns, shall pay unto the said Mortgagee, its successors or assigns, all of the amount under that certain Note from Mortgagor to Mortgagee of even date herewith in the principal amount of ONE MILLION TWO HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 ($1,275,000.00) with the final payment due as provided in the Note on March 10, 2008 and shall further perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the said Note and of this Mortgage, then this Mortgage and the estate thereby created shall cease and be null and void, and this instrument shall be released by the Mortgagee. All release documentation shall be prepared and recorded at the expense of Mortgagor and shall be furnished by Mortgagor to Mortgagee for execution.

AND the Mortgagor, for itself and its successors and assigns, hereby covenants and agrees:

1.    To pay all and singular, the principal and interest and other sums of money payable by virtue of the aforementioned Note and this Mortgage, or either, promptly when due.

2.    To pay all and singular taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Mortgaged Property promptly and prior to the time the same shall become delinquent. The Mortgagor shall deliver to the Mortgagee receipts evidencing the payment of said taxes, assessments, levies, etc., immediately upon the payment thereof as required in this Paragraph; provided, however, that the receipt evidencing payment of the ad valorem taxes lawfully imposed for the preceding calendar year shall be delivered to Mortgagee no later than March 15 of each year.

3.    To pay all and singular the costs, charges and expenses, including reasonable attorneys' fees and costs of abstracts of title examination, incurred or paid at any time by the Mortgagee, its successors or assigns, because of the failure on the part of the Mortgagor, its successors or assigns, to perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants of the aforementioned Note and this Mortgage, or either of same.

4.    To perform, comply with and abide by each and every stipulation, agreement, condition and covenant in the aforesaid Note and this Mortgage.

5.    To permit, commit, or suffer no waste, impairment, abandonment, or deterioration of the Mortgaged Property, or any part thereof, and upon the failure of the Mortgagor to keep the buildings or any other item of security hereunder now or hereafter located on the Mortgaged Property in good condition or repair, the Mortgagee may demand the immediate repair of said buildings or such other security, or an increase in the amount of security, or the immediate repayment of the debt secured hereunder.

6.  (a)  To keep any and all buildings now or hereafter on the Mortgaged Property insured under policies of all-risk insurance (which shall include, but not be limited to, fire, extended coverage and vandalism), in a sum acceptable to the Mortgagee, but in no event less than the total of the principal balance of the Note plus the principal balance of the note secured by any prior mortgage encumbering the Mortgaged Property, in a company or companies acceptable to the Mortgagee, and the premiums for all such insurance shall be paid by the Mortgagor not later than fifteen (15) days before same are due. The original of such policy or policies, or a certificate of insurance, shall be delivered to and held by the Mortgagee and monies due thereunder shall be made payable to the Mortgagee, his successors or assigns, to the extent of his interest, by having attached or contained in the policy or policies a loss-payable clause and proper endorsements;

(b)  Subject to the rights of the holder of a prior mortgage encumbering the Mortgaged Property, in the event any sum of money becomes payable under the insurance policy or policies, the Mortgagee, its successors or assigns, shall have the

2

Case 1:22-cv-21485-RNS Document 657 Entered on FLSD Docket 06/13/2023 Page 585 of
Exhibits to N. G. L.'s Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case Note 2007-2199 Mortgage
Page 7 of 11

option to receive and apply the same on account of the indebtedness hereby secured or
permit the Mortgagor to receive and use all or any part thereof for other purposes,
without thereby waiving or impairing any equity, lien or right under or by virtue of this
Mortgage;

(c)   Notwithstanding anything to the contrary contained herein and so
long as Mortgagor is not in default hereunder, Mortgagee agrees that, in the event of a
casualty loss to the Mortgaged Property, or any portion thereof, Mortgagee will permit
Mortgagor to use any and all insurance proceeds to repair, replace or restore the
Mortgaged Property to the condition it was prior to such casualty; provided that
Mortgagor provides Mortgagee with certification from an architect or engineer as to the
cost of such repair, replacement or restoration and that, to the extent that the insurance
proceeds are not sufficient to cover such costs, Mortgagor agrees to disburse and
expend the funds necessary to cover the costs of repairing, replacing or restoring the
Mortgaged Property that exceed their available insurance proceeds prior to using said
proceeds;

(d)   Upon the failure of Mortgagor to obtain required insurance, the
placing of such insurance and the paying of the premium of such insurance or any part
thereof by the Mortgagee shall not be deemed to waive or affect any right of the
Mortgagee hereunder, including the right to foreclose this Mortgage, and each and
every payment of insurance so made by the Mortgagee shall be considered additional
principal due under the Note and shall bear interest from the date of payment thereof at
the rate of twenty-four percent (24%) per annum, and this Mortgage shall secure the
payment of same; Every such payment shall be deemed additional monies owed by the
Mortgagor to the Mortgagee, shall be payable on demand of the Mortgagee therefore,
and shall be secured by the lien of this Mortgage;

(e)   If the Mortgagee acquires title to the Mortgaged Property by
foreclosure proceedings or otherwise, any unearned premiums on a hazard insurance
policy covering the Mortgaged Property and held by the Mortgagee are hereby assigned
to and shall belong to the Mortgagee. If at any time during the lien of the Mortgage any
insurance policies shall be cancelled and returned premiums available, these returned
premiums shall belong to the Mortgagee and at the option of the Mortgagee shall be
credited by the Mortgagee against the indebtedness secured hereunder.  Any rights of
the Mortgagee to any insurance proceeds shall in no way be affected or impaired by
reason of the fact that the Mortgagee may have instituted foreclosure proceedings
hereunder.

7.   To further secure payment of the indebtedness of the Mortgagor to the
Mortgagee, the Mortgagor does hereby sell, assign, transfer and set over unto the
Mortgagee all of the leases, rents, issues and profits of the Mortgaged Property.  This
assignment shall become operative upon any default being made by the Mortgagor
under the terms of the Mortgage or the Note secured hereby, the aforementioned first
mortgage, or either of same and shall remain in full force and effect so long as any
default continues to exist in the making of any of the payments or the performance of
any of the covenants of this Mortgage or the Note secured hereby, and the Mortgagee
shall have the right to enter upon the Mortgaged Property and collect same directly from
persons in possession.  In the event that the Mortgagor should further assign the
leases, rents, issues and profits of the Mortgaged Property, or any part thereof, without
the consent of Mortgagee, then the entire principal sum secured hereby, with accrued
and unpaid interest and any other charges shall, at the option of the Mortgagee,
become immediately due and payable.  Any subsequent assignment of the rents,
deposits, revenues and profits of the Mortgaged Property, or any part thereof, approved
by Mortgagee, shall at all times be inferior and subordinate to the assignment granted
hereby and to the rights of the Mortgagee hereunder.

8.   In the event the Mortgagor fails to pay any tax or other charge or
obligation required to be paid by the Mortgagor hereunder, within the time set forth for
such payment, the Mortgagee shall have the right, but shall not be required to pay such
charge or obligation without waiving or affecting the option of the Mortgagee to consider
this Mortgage in default.  Every such payment so made shall be considered additional

3

principal due under the Note and shall bear interest from the date thereof at the rate of
twenty-four percent (24%) per annum. Every such payment shall be deemed additional
monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the
Mortgagee therefore, and shall be secured by the lien of this Mortgage.

9. If any of the sums of money due on the Note or otherwise herein
referred to are not promptly and fully paid or if any of the stipulations, agreements,
conditions and covenants contained in the Note and this Mortgage, or either of same,
are not duly performed, complied with and abided by, within ten (10) days after an
applicable due date, the same shall be considered a default of this Mortgage and the
Note; and the aggregate sum set forth in the Note then remaining unpaid, with interest
accrued and unpaid, and all monies secured hereby, shall become due and payable
forthwith, or thereafter, at the option of the Mortgagee, as fully and completely as if all
the said sums of money were originally stipulated to be paid on such day, anything in
the Note or in this Mortgage to the contrary notwithstanding; and thereupon or
thereafter, at the option of the Mortgagee, without notice or demand, foreclosure
proceedings or other suit at law or in equity may be prosecuted as if all monies secured
hereby had matured prior to its institution.

10. The following shall be considered additional acts of default, which,
upon occurrence, shall allow the Mortgagee to pursue the various remedies for default
hereunder; (a) The filing by the Mortgagor of a voluntary petition in bankruptcy or the
Mortgagor's adjudication as a bankrupt or insolvent; or (b) The entry by a court of
competent jurisdiction of an order, judgment or decree approving a petition filed against
Mortgagor seeking any reorganization, arrangement, composition, readjustment,
liquidation, dissolution or similar relief under any present or further federal or state law
or regulation relating to bankruptcy, insolvency or other relief for debtors, which order,
judgment or decree remains unvacated and unstayed for sixty (60) days from the date
of entry thereof; (c) an event of default under the aforementioned first Mortgage; or, (d)
if foreclosure proceedings are instituted with regard to any other lien against the
Mortgaged Property whether prior to or inferior to the lien of this Mortgage; or, (e) the
creation or allowance of any additional mortgage encumbrance secured by the
Mortgaged Property whether prior to or inferior to the lien of this Mortgage.

11. That in the event the Mortgaged Property or any part thereof, shall be
condemned and taken for public use under the power of eminent domain, the
Mortgagee shall have the right to require that all damages awarded for the taking of or
damages to the Mortgaged Property, including interest thereon, shall be paid to the
Mortgagee, not to exceed the then unpaid balance of this Mortgage and the Note
secured hereby, together with all interest and charges then outstanding, and, at the
option of the Mortgagee the same may be applied to payments of principal in the
inverse order of maturity.

12. That no extensions of the time or modification of the terms of payment
of the Note by the Mortgagee shall release, relieve, or discharge the Mortgagor from the
payment of any of the sums hereby secured, but in such event the Mortgagor shall
nevertheless be eligible to pay such sums according to the terms of such extension or
modification unless specifically released and discharged in writing by the Mortgagee.
Any acceptance by the Mortgagee of part payment of any installment of principal or
interest, or both, or of part performance of any covenant, or delay by the Mortgagee for
any period of time in exercising the option to mature the entire debt secured hereby,
shall not operate as a waiver of the right to exercise such option to mature the entire
debt secured hereby.

13. In the event of a suit being instituted to foreclose this Mortgage, the
Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the
court having jurisdiction thereof for the appointment of a receiver of all and singular the
Mortgaged Property, and of all rents, incomes, profits, issues and revenues thereof,
from whatever source derived; and thereupon it is hereby expressly covenanted and
agreed that the court shall forthwith appoint such receiver with the usual powers and
duties of receivers in like cases; and said appointment shall be made by the court as a
matter of strict right to the Mortgagee, and without reference to the adequacy or

4

14. That if any action or proceeding shall be commenced by any person other than the Mortgagee (except an action to foreclose this Mortgage, or to collect the debt secured hereby) to which action, or proceeding, the mortgagee is made a party or in which it shall become necessary to defend, or uphold, the lien of this mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute, or defend the rights and lien created by this Mortgage (including court costs and reasonable attorneys' fees at all trial and appellate levels), shall be paid by the Mortgagor, together with interest thereon at the rate of twenty-four percent (24%) per annum and any such sum and the interest thereon, shall be a claim upon the Mortgaged Property, attaching or accruing, subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and shall be deemed an additional payment obligation under the Note secured hereby. The sums paid by the holder hereof in accordance with the terms of this paragraph shall be paid by the Mortgagor unto the holder hereof within fifteen (15) days of said payment, without demand. Upon failure of Mortgagor to make said payment, the Mortgagee, at its option may declare this Mortgage and the Note secured hereby to be in default, thereupon maturing all of the unpaid indebtedness, including the sums advanced hereunder. In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured hereby, the provisions of law and this Mortgage respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

15. Upon the occurrence of a default hereunder, the principal amount of the Note secured hereby, together with all accrued and unpaid interest, and together with all sums which may have been advanced by Mortgagee and which are secured hereby, shall bear interest at the lesser of twenty-four percent (24%) or the highest rate permitted by the laws of the State of Florida, until paid in full.

16. No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other agreement executed as a part of the loan evidenced by the Note is exclusive of any other right, power or remedy, and each and every right, power and remedy given hereunder or under the Note or any other instrument securing the Note or now or hereafter existing at law, in equity or by statute, shall be cumulative, at the option of Mortgagee. A waiver in one or more instances of any of the terms, covenants, conditions or provisions hereof, or of the Note or obligations secured hereby, shall apply to the particular instance or instances and at the particular time or times only, and no such waiver shall be deemed a continuing waiver, but all of the terms, covenants, conditions and other provisions of this Mortgage and of the Note secured hereby shall survive and continue to remain in full force and effect.

17. To the extent that the Mortgaged Property shall be deemed to be personal property, this Mortgage shall serve as a "security agreement" within the meaning of the Uniform Commercial Code as adopted in the State of Florida. Mortgagor hereby grants to Mortgagee a security interest in and to all of those portions of the Mortgaged Property which may ultimately be held to be personal property. With respect to such personal property, Mortgagee shall have all rights afforded secured parties by the Uniform Commercial Code, as adopted in the State of Florida, and as may hereafter be modified or amended, in addition to, but not in limitation of, the other rights afforded the Mortgagee hereunder.

18. If all or any part of the Mortgaged Property, or any interest therein, is sold, conveyed, transferred (including a transfer by agreement for deed or land contract) or further encumbered by Mortgagor without Mortgagee's prior written consent, then, and in that event, Mortgagor shall be deemed in default and Mortgagee may declare all sums secured by this Mortgage immediately due and payable. Any and all leases of all or part of the Mortgaged premises shall be subordinate to the lien of the Mortgagee arising pursuant to this Mortgage.

19. The mailing of a written notice of demand, addressed to the owner of record of the Mortgaged Property, directed to the said owner at the last address actually

5

furnished to the Mortgagee, or directed to said owner at the Mortgaged Property, and in the United States mail, shall be sufficient notice and demand in any case arising under this instrument and required by the provision hereof or by law; provided, however, that the provisions of this Paragraph shall not be construed as requiring notice from the Mortgagee to the Mortgagor unless specifically provided by other provisions hereof or by provisions of the Note.

20.   All payments received by the Mortgagee shall be applied first to accrued and unpaid interest and then to the principal of the Note.

21.   Notwithstanding anything to the contrary contained herein and/or in the Note, it is the intention of the parties that any and all interest charged, collected and/or paid shall not exceed the maximum effective rate of interest allowed under applicable law.   Should any amounts, characterized as interest, in excess of said maximum rate, be charged, collected and/or paid, such excess shall be refunded to the Mortgagor or credited against the sums due the Mortgagee pursuant to the terms of this Mortgage and the Note secured hereby.

22.   This Mortgage is and shall be a Second Purchase Money Mortgage of the Mortgaged Property, subject and subordinate only to that certain first Mortgage given by Mortgagor to Washington Mutual Bank, F.A., in the original principal amount of THREE MILLION EIGHT HUNDRED TWENTY-FIVE THOUSAND AND NO/100 ($3,825,000.00).

23.   The Mortgagor shall from time to time with ten (10) days after written demand by the Mortgagee, execute in such form as shall be required by the Mortgagee, an estoppel certificate, duly acknowledged, setting forth the amount of principal and interest unpaid under the Note and the general status of this Mortgage.   Failure of the Mortgagor to make and deliver the estoppel certificate within the required time shall constitute a breach of this Mortgage and a default hereunder.

24.   Any abstract or abstracts of title covering the Mortgaged Property shall be delivered to Mortgagee or his designated agent, which shall at all times during the term of this Mortgage, remain in the possession of the Mortgagee, and in the event of the foreclosure of this mortgage or other transfer of title, all right, title and interest of the Mortgagor in and to such abstract or abstracts of title shall pass to the purchaser or grantee.

25.   This Mortgage and the Note shall be governed by the substantive and procedural laws of the State of Florida.   The terms "Mortgagor" and "Mortgagee" whenever used herein shall include the heirs, personal representatives, successors and assigns of the respective parties hereto.   Whenever used the singular number shall include the plural and the plural the singular, and the use of any gender shall included all genders.

26.   In the event any one or more of the provisions contained in this Mortgage or in the Note secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, and if the deletion thereof would not adversely affect the receipt of any material benefit by and to any party hereunder or substantially increase the burden of any party hereto, such validity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provision of this Mortgage.

27.   The Mortgagor hereby waives any right it may have to a jury trial in any action which may be brought under the Mortgage or the Note secured hereby.

6

Case No. 2013-25902 CA 01

Page 1 of 2

28. This Mortgage constitutes the complete agreement between the parties hereto as to the subject matter hereof; and it may not be amended, changed or modified orally, except by a writing signed by the party to be charged by said amendment, change or modification.

LAST PAGE

IN WITNESS WHEREOF, the said Mortgagor has caused these presents to be duly executed as of the day and year first above.

Signed, sealed and delivered
in the presence of:

_____
Lourdes Marrero
Print or Type Name

_____
Melbis Avila
Print or Type Name

MORTGAGOR:

_____
ELIZABETH HAZAN, a single woman

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

The foregoing instrument was acknowledged before me, the undersigned, this 8th day of March, 2007, by Elizabeth Hazan.

NOTARY PUBLIC-STATE OF FLORIDA
Melbis Avila
Commission # DD522194
Expires: FEB. 23, 2010
Bonded Thru Atlantic Bonding Co., Inc.

[NOTARIAL SEAL]

_____
NOTARY PUBLIC

Personally Known _____ OR Produced Identification ✓

Type of Identification Produced Florida Drivers License

7

# EXHIBIT C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

     Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

     Defendants

_____/

## ORDER GRANTING FORECLOSURE

THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second

Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil

Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,

ORDERS AND ADJUDGES as follows:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 14 of 72

The history of the litigation between the parties was set out in detail when the matter

went up on appeal to the Third District. The facts and procedural history recited in the opinion

constitute the law of the case. In its opinion, the Third District stated as follows:

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

2

*NLG, LLC v. Hazan*, 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

***Status of the Pleadings After Mandate***

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

4

property which was then the subject of a mortgage foreclosure action and accompanying lis pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention. In *Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation."

*Carlisle*, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any interest in the litigation. The Wherefore Clause merely requests intervention. But if Selective is trying to collect on the Judgment by Confession, it is undisputed that the judgment has been satisfied. Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to assert its rights, but to obstruct the foreclosure of his wife's property. To allow intervention by Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction. As the Third District recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if Selective were allowed to intervene, they would take "the procedural posture of the case as it stood when they were allowed to intervene." *Id*. at 505, *citing Omni Nat'l Bank v. Ga. Banking Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the then-existing claims in the lawsuit." The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties…" *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id.*

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 19 of 72

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would

prevail in the pending appeal.  The only new developments since August 20, 2014, are (1) the

opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from

the New York State Court that was domesticated in Miami-Dade County under Case No. 14-

10475, which has been dismissed as the underlying judgment has been satisfied.

   *Selective Advisors' Arguments*

   Even though Selective Advisors should be denied leave to intervene as a matter of law,

this Court will discuss the arguments raised by it.  In a nutshell, Selective's motion seeks to

argue that this action cannot proceed because NLG has lost all its rights against Hazan.

   First, the motion seeks to have Selective substituted as party plaintiff, based on the

Lopez Order" in Case No. 14-10475.  Selective argues that this order allows it to stand in the

shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been

domesticated in that case.  However, on October 1, 2015, the case was dismissed by Judge

Lopez, stating:  "It appearing the judgment has been satisfied of record, this cause is dismissed

& no further proceeding will be taken."  Because it is undisputed that the underlying judgment

has been satisfied and the Florida case domesticating that judgment has been dismissed,

Selective's right to stand in the shoes of NLG have been likewise extinguished.

   Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned

to it in the Lopez Order.  NLG had obtained a Default Final Judgment on April 28, 2008, in the

amount of $1,618,071.29, against Hazan ("Default Judgment").  In the foreclosure action filed

on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought

to foreclose on the money due under the Default Judgment in both the initial complaint and the

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 20 of 72

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

8

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 22 of 72

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.*, 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk*, 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action…").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District. Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/14/2022 Page 601 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 23 of 72

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..." The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG. Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); Williams, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 27 of 72

**Conclusion**

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is

hereby GRANTED.  The Court will hereafter enter a Final Judgment of Foreclosure upon the

presentation of updated affidavits.


ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.


_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 28 of 72

# EXHIBIT "A"

Case 1:22-cv-21485-RNS Document 57-87 Entered on FLSD Docket 06/10/2022 Page 607 of
Exhibits to Answer, Affirmative Defenses, Counterclaim and Third Party 650
Case No. 2013-25902 CA 01
Page 29 of 72

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                              Chapter 7

Selective Advisors Group LLC,                       Case No. 815-72153-A736

     Debtor.                                      <u>Affirmation in Support</u>

--------------------------------------------------------X

     Marc A. Pergament, duly affirms under the penalties of perjury as follows:

     1.     I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

     2.     I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

     3.     This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

     4.     On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

Case 1:22-cv-21485-BB Document 57-37 Entered on FLSD Docket 06/11/2022 Page 608 of
650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 30 of 72

5.     I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015.  A further request for an adjournment of the § 341(a) meeting was declined.

6.     On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.     My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.     Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00.  The Debtor's Schedule F indicated that it was a disputed claim.

9.     The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest.  The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012.  A copy of the Assignment of Judgment is annexed hereto as Exhibit "A."  However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC.  The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment.  A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

Case 1:22-cv-21485-RNS Document 87 Entered on FLSD Docket 06/22/2023 Page 609 of
Exhibits to CBSE 8-15-2152 Answer Affirm Defense & Counterclaim and Crossclaim 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 31 of 72

10.     After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.     As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.     Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.     Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.     I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

Case 1:22-cv-21485-BB Document 57-2 Entered on FLSD Docket 06/13/2023 Page 610 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 32 of 72

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.     Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.     The dispute with respect to the Judgment is evident.

17.     As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.     NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.     I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

Case 1:22-cv-21551-BB Document 57-1 Entered on FLSD Docket 06/14/2023 Page 611 of
Exhibits to Case 8-15-72152-reg firm ... Defense ... Claim and ... Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 33 of 72

20. For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered. A copy of the Stipulation is annexed hereto as Exhibit "D."

21. I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22. It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23. No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated: Garden City, New York
August 6, 2015

_____
Marc A. Pergament

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

-------------------------------------------------------------x

9197-5904 QUEBEC INC
  Plaintiff,


              -against-


NLG LLC
                         Defendant.

-------------------------------------------------------------

### ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec Inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes, Delaware 19958 County of Sussex, party of the second part,


WHEREAS, on the 22nd day of February, 2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec Inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.


NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.


Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/14/2023 Page 614 of
Exhibits to SEC's USC's Answer Affirmative Defenses Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 36 of 72

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

_Raymond Houle_

RAYMOND HOULE, president

## ACKNOWLEGEMENT

Province
State of _____ Quebec _____

County of _D'Arcy McGee_ ss.:

On the __3__ day of __June__ in the year 20__14__, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Pierrette Tardif_

Notary Public

_Raymond Houle_

Raymond Houle

## CERTIFICATE OF CONFORMITY

I, _Pierrette Tardif_, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: _June 3/ 2014_     _Pierrette Tardif_

NOTARY PUBLIC
NAME:

COMMISSAIRE À L'ASSERMENTATION
PIERRETTE
TARDIF
# 198036

Case 1:22-cv-21485-RNS Document 37-1 Entered on FLSD Docket 06/48/2022 Page 615 of
Case 8-15-72153-reg Doc 11-2 Filed 08/06/15 Entered 08/06/15 14:29:22
Exhibits to SEC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 37 of 72

# EXHIBIT B

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/49/2023 Page 616 of
Exhibit 6.15-72153.weg Affidavit - Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 38 of 72

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Address of Plaintiff:
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

against

**JUDGMENT BY**
**CONFESSION**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

MARZEC LAW FIRM, PC

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 2 2 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 2 2 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

Case 1:22-cv-21485-RNS Document 57 Entered on FLSD Docket 06/50/0083 Page 617 of
Exhibit Case 6-15-72253-reg Affidavit 1-2 of Filed 08/06/15 Claims and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 39 of 72

JUDGMENT entered the __22nd__ day of __February__, 20_12_

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,


**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is


ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk     amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

*Norman Goodman*
CLERK

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

✱ Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT A

Case 1:22-cv-21485-RNS Document 87 Entered on FLSD Docket 06/14/2022 Page 618 of
Exhibits Case 8:15-72453-reg Doc 1 D-2 Filed 08/06/15 and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 40 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10187⁵/12

9197-5904 Quebec, Inc.,

           **Plaintiff,**

against

AFFIDAVIT OF
CONFESSION OF
JUDGMENT

NLG, LLC, *A Delaware Limited
Liability Company,*

           **Defendant.**

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK

COUNTY OF NEW YORK      ss.:

     Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

     The defendant hereby confesses judgment herein and authorizes entry thereof against

defendant in the sum of $5,000,000.00.

     Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida

33309; Defendant authorizes entry of judgment in New York County, New York, if said

residence address is not in New York State.

     This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Fraud and Abuse of Process.

     This affidavit, if made in connection with an agreement for the purchase for
$1,500.00 or less of any commodities for any use other than a commercial or business use
upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed, subsequent to the time a default occurred in the payment of an
installment thereunder.

Sworn to before me this

1b day of _Febny_, 2012

                                9197-5904 Quebec, Inc. by Raymond Houle, Manager
                                MANAGER, NLG LLC

                             Darius A. Marzec
                         Notary Public State of New York
                           No. 02MA6186309
                         Qualified in Queens County
                       Commission Expires 04/28/2012

      NOTARY PUBLIC

**EXHIBIT A**

Case 1:22-cv-21485-RNS Document 87-2 Entered on FLSD Docket 06/54/2023 Page 619 of
Exhibits Case 8-15-72453-reg filffin Doc 1 Defense Filed 08/06/15 and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 41 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

                                    Plaintiff,

          against

NLG, LLC,

                                    Defendant.

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK          ss.:

    Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

    This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Defendant has consistently abused its legal position by filing frivolous litigation

documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth

concerning key facts regarding the mode of operation, personnel, employees, corporate

documents and status of defendant; Defendant has failed to abide by rules of court with respect

to discovery, disclosures and subpoena power of the court and counsel, and has made litigation

process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute

abuse of process and fraud upon the court and parties involved, who were unduly damaged by

such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was

intentional and malicious and calculated to cause additional expense, delay and harassment to

defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the

administration of justice and process in these matters, giving Plaintiff a cause of action.

# EXHIBIT A

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

Supreme Court Records OnLine Library - page 5 of 6

Case 1:22-cv-21485-RNS Document 78 Entered on FLSD Docket 06/54/2082 Page 621 of
Exhibits Case 8-15-72153-reg Doc 1-2 Filed 08/06/15 and Entered 08/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 43 of 72

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                    Index No.

9197-5904 Quebec, Inc.,

                                    Plaintiff,

        against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                COMPANY,

                                    Defendant.

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C,
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND
DOCKETED**

FEB 2 2 2012

AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

                        By: Darius A. Marzec, Esq.
                        MARZEC LAW FIRM PC
                        Attorneys for Plaintiff
                        225 Broadway, Ste. 3000
                        New York, NY 10007
                        (212) 267-0200

DOCKETED BY

EXHIBIT A

Case 1:22-cv-21485-RNS Document 8-578 Entered on FLSD Docket 06/55/2022 Page 622 of
Case 8:15-72153-reg-nm Doc 1b-3 Filed 08/06/15 Entered 08/06/15 14:29:22
Exhibits Cover Pages affirming Bravo Defenses Counterclaims and Exhibits

# EXHIBIT C

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 06/56/2023 Page 623 of
Exhibits to NEC, LPC's Answer, Affirmative Defenses, Counterclaim and Crossclaim 09/06/15 14:29:22
Case No. 2013-25902 CA 01
Page 45 of 72
Case 12-16438-jkf*SEALED*    Doc 211 *SEALED*    Filed 03/24/15    Entered 03/24/15
15:32:21    Desc Main Document    Page 1 of 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:                                              :    DISMISSED CHAPTER 7 INVOLUNTARY
                                                    :
                                                    :    CASE NO. 12-16438(JKF) *SEALED*
CHRISTOPHER    KOSACHUK,    a.k.a.    :
CHRIS KOSACHUK                                      :
                                                    :
                                                    :
_____                 :

**ORDER AND FINAL JUDGMENT**

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary

Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal

the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the

arguments of counsel and evidence admitted at the trial conducted before this Court on March

18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.      The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the

Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.      Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to

11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred

by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc.,

plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.      Final Judgment for monetary sanctions in the amount of $960,968.55, pursuant to

11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is

awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post

judgment interest at the federal judgment rate.

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 06/57/2023 Page 624 of
650
Exhibits to NEG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 46 of 72  Case 12-16438-jkf *SEALED*   Doc 211 *SEALED*   Filed 03/24/15   Entered 03/24/15
15:32:21   Desc Main Document      Page 2 of 2

4.      Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.      This Final Judgment may be recorded as a matter of public record.

6.      This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.      Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

Exhibits to NEG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 47 of 72

# EXHIBIT D

Case 1:22-cv-21485-RNS Document 57 Entered FLSD Docket 06/59/2023 Page 626 of
Case 8-1PC's-72153-reg   DOC 1154   Filed 08/06/15   Entered 08/06/15 14:29:22
Exhibits to NLG, LPC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 48 of 72

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:                                        Chapter 7

Selective Advisors Group LLC,                 Case No. 815-72153-A736

        Debtor.                               <u>Stipulation of Settlement</u>

-------------------------------------------------------X

        Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code,

        Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the

Bankruptcy Code,

        Whereas, the Trustee having raised issues as to whether this filing was a good

faith bankruptcy filing by the Debtor,

        Whereas, there is an issue concerning whether the Debtor has any creditors in this

bankruptcy case,

        Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having

expended substantial time and effort in trying to understand this bankruptcy case and all of the

related litigation between the Debtor and NLG LLC,

        It is hereby Stipulated and Agreed as follows:

        1.      This bankruptcy case is dismissed with prejudice.

        2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross &

Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by

the Debtor in the bankruptcy petition and related State Court lawsuits.

Case 1:22-cv-21485-BB Document 57 Entered on FLSD Docket 06/01/2023 Page 627 of 650

Exhibits to SEG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 49 of 72

3. This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4. The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
   July 23, 2015

         Weinberg, Gross & Pergament LLP
         Attorneys for Trustee

By: _____
         Marc A. Pergament
         400 Garden City Plaza, Suite 403
         Garden City, New York 11530
         (516) 877-2424

         Vlahadamis & Hillen, LLP
         Attorneys for Debtor

By: _____
         Evans M. Hillen
         148 East Montauk Highway, Suite 3
         Hampton Bays, New York 11946
         (631) 655-4115

"So Ordered"

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 50 of 72

# EXHIBIT "B"

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

---

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

EVANS M. HILLEN
evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

Case 1:22-cv-21485-RNS Document 87 Entered on FLSD Docket 06/13/2023 Page 630 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 52 of 72

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc

      Plaintiff,          Index No: 101875/2012

**NOTICE OF FILING
SATISFACTION OF
JUDGMENT**

       - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                    Defendant.
----------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff-Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York


Vlahadamis & Hillen, LLP

                     By:    /s/ James F. Vlahadamis
                               James F. Vlahadamis, Esq.
                               148 E. Montauk Highway
                               Suite 3
                               Hampton Bays, New York 11946


TO:    THE LAW OFFICES OF ARI MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0578
       ari.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 54 of 72



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK.
-------------------------------------------------X

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                          Plaintiff,          Index No. 101875/2012
                                        SATISFACTION OF
                                        JUDGMENT

       - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                          Defendant.
-------------------------------------------------X


## SATISFACTION OF JUDGMENT


WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 56 of 72

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean Neil Meehan, manager

ACKNOWLEGEMENT

COUNTY OF _Dinoster_

On the _3rd_ day of _September_ in the year _2015_ before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 57 of 72

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 3th 2015

_____
NOTARY PUBLIC
NAME:

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 58 of 72

## AFFIRMATION OF SERVICE

STATE OF NEW YORK    )
                          )   SS.:
COUNTY OF NEW YORK  )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York. On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:    THE LAW OFFICES OF ART MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0578
       art.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company

       JONATHAN M. BORG BEDELL & FORMAN LLP
       44 Wall Street, 10th Floor
       (646) 219-7551
       jborg@bedell-forman.com

       ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Vlahadamis & Hillen, LLP

                               By:    /s/ James F. Vlahadamis
                                       James F. Vlahadamis, Esq.
                                       148 E. Montauk Highway
                                       Suite 3
                                       Hampton Bays, New York 11946

# EXHIBIT D

Case 1:22-cv-21485-RNS Document 67-12 Entered on FLSD Docket 06/14/2023 Page 638 of 650
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 60 of 72

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015  01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

GENERAL JURISDICTION DIVISION

2011-42770 CA 01

CASE NO.: 2011-42270 CA (02)

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/



FILED
DEC 04 2015
CLERK CIRCUIT & COUNTY COURTS

**FINAL JUDGMENT OF FORECLOSURE**
**(Pursuant to Administrative Order 09-09)**

      **THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on mandate from the Third District Court of Appeals on November 25, 2014;

      **IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service of process has been duly and regularly obtained over all Defendants in this action and this Court has jurisdiction over the parties in this action and the subject matter herein.

1.    **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following from Defendant ELIZABETH HAZAN:

      Principal due on the note secured by the mortgage foreclosed, as set forth in the Opinion of the Third District Court of Appeal:

              **$1,618,071.29.**

      Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion of the Third District Court:

CFN: 20150812181 BOOK 29902 PAGE 3738

### $2,953,489.91

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015 until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

| | |
|---|---|
| Property Maintenance | $21,333.14 |

### GRAND TOTAL: $4,876,654.29

2. **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment** against the Defendants. With the exception that any deficiency is hereby taxed against Defendant ELIZABETH HAZAN, there are no in personam damages against said other Defendants.

3. **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of

CFN: 20150812181 BOOK 29902 PAGE 3739

the defendants. The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on December _____ *January 12, 2016* 2015, to the highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6. **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8. **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

Case 1:22-cv-21485-RNS Document 58-1 Entered on FLSD Docket 06/14/2022 Page 641 of 650

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 63 of 72

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9.  **Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10.  **NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 64 of 72

CFN: 20150812181 BOOK 29902 PAGE 3741

**(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

11.     **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 65 of 72

CFN: 20150812181 BOOK 29902 PAGE 3742

---

**FINAL ORDERS AS TO ALL PARTIES**
**SRS DISPOSITION NUMBER   12**

THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.

**Judge's Initials   MG**

---

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

**Copies furnished: Parties of record**

# EXHIBIT E

# M A N D A T E

### from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## THIRD DISTRICT

This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.

WITNESS the Honorable Frank A. Shepherd, Chief Judge of the District Court of Appeal of the State of Florida, Third District, and seal of the said Court at Miami, Florida on this day.

**DATE:**              November 25, 2014
**CASE NO.:**         **13-0684**
**COUNTY OF ORIGIN:** **Dade**
**T.C. CASE NO.:**    **11-42770**

**STYLE:**    **NLG, LLC, etc.,**          v.    **ELIZABETH HAZAN,**



**ORIGINAL TO:**    Miami-Dade Clerk

cc:  Mark D. Cohen          Allan S. Reiss          Megan K. Wells

la

Bk 29406 Pg 558 CFN 20140815112 11/26/2014 08:37:24 Pg 1 of 6 Mia-Dade Cty, FL

Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 68 of 72

# Third District Court of Appeal

## State of Florida

Opinion filed September 3, 2014.
Not final until disposition of timely filed motion for rehearing.

———————

No. 3D13-684
Lower Tribunal No. 11-42770

———————

## NLG, LLC,
Appellant

vs.

## Elizabeth Hazan,
Appellee

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Megan K. Wells (Miramar), for appellant.

Levine & Partners and Allan S. Reiss; Mark D. Cohen (Hollywood), for appellee.

Before SUAREZ, SALTER and LOGUE, JJ.

SALTER, J.

A mortgage lender, NLG, LLC (NLG), appeals a final judgment for the mortgagor, Elizabeth Hazan. Finding no basis in the pleadings or applicable law

for the positions advanced by the borrower, we reverse and remand for further proceedings.

Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. Hazan v. NLG, LLC, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. Hazan v. NLG, LLC, 19 So. 3d 319 (Fla. 3d DCA 2009).

2

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

Analysis

Bk 29406 Pg 561 CFN 20140815112 11/26/2014 08:37:24 Pg 4 of 6 Mia-Dade Cty, FL

A review of Ms. Hazan's pleadings, applicable law, and the transcript of the trial court's January 2, 2013, hearing, discloses no basis for denying foreclosure to NLG. Default in payment was undisputed (conceded in writing, as it was, in the various settlement agreements, which also included waivers of any defenses). The two arguments advanced by Ms. Hazan's counsel were flawed.

First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage. Junction Bit & Tool Co. v. Village Apartments, Inc., 262 So. 2d 659 (Fla. 1972) (unsatisfied judgment on a promissory note secured by mortgage did not constitute a remedy or a bar to a suit to foreclose the mortgage). See also Royal Palm Corporate Ctr. Ass'n, Ltd. v. PNC Bank, NA, 89 So. 3d 923 (Fla. 4th DCA 2012).

As to the second argument advanced by Ms. Hazan's counsel, the December 2008 order "quieting title" did not extinguish the mortgage or its lien. That order quieted title in Ms. Hazan only to the extent it vacated the sheriff's deed obtained by NLG and disentitled anyone in possession (other than Ms. Hazan) to remain in possession. Neither the motion nor the order support the extinguishment of an unpaid purchase money lien on the home (now exceeding $2,000,000.00), a lien senior to the junior mortgage granted by Ms. Hazan as these proceedings unfolded. Because there is no legal basis for such relief in Ms. Hazan's pleadings, the trial

4

Case 1:22-cv-21842-RNS Document 57-7 Entered on FLSD Docket 06/13/2022 Page 650 of
Exhibits to NLG, LLC's Answer, Affirmative Defenses, Counterclaim and Crossclaim
Case No. 2013-25902 CA 01
Page 72 of 72

court's final judgment must be reversed. <u>BAC Home Loans Servicing, Inc. v.</u>
<u>Headley</u>, 130 So. 3d 703, 705 (Fla. 3d DCA 2013); <u>Mullne v. Sea-Tech Constr.</u>
<u>Inc.</u>, 84 So. 3d 1247, 1249 (Fla. 4th DCA 2012).

Regarding Ms. Hazan's affirmative defenses to the effect that NLG and its
representative at trial lacked standing because of an internal dispute among the
members, the trial court explicitly stated in the January 2, 2013, transcript
(incorporated by the final judgment) that NLG did have standing and that its
representative (Mr. Kosachuk) was a proper representative of NLG.

Accordingly, we reverse the final judgment and remand the case for further
proceedings, including the enforcement of NLG's mortgage and the reinstatement
of the lis pendens and amended lis pendens previously vacated by the final
judgment.

Reversed and remanded.

Bk 29406 Pg 563 CFN 20140815112 11/26/2014 08:37:24 Pg 6 of 6 Mia-Dade Cty, FL