UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                              )    Case No. 16-10389-AJC
                                                    )
LIZA HAZAN a/k/a ELIZABETH HAZAN,                   )    Chapter 11
                                                    )
        Debtor.                                     )
                                                    )
                                                    )
_____            )

REORGANIZED DEBTOR'S MOTION TO DEEM VOID
ORDERS ENTERED IN VIOLATION OF THE AUTOMATIC STAY

        Reorganized and Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan moves this Court

for an order deeming void orders entered April 26, 2016 and May 23, 2016 purporting to award

entitlement to attorney's fees to NLG, LLC in violation of the automatic stay, as follows:

        1.      Hazan filed for Chapter 11 bankruptcy relief on January 11, 2016, at which time

the automatic stay imposed by 11 U.S.C. § 362 went into effect. ECF No. 1.

        2.      On April 6, 2016, without seeking relief from the automatic stay, NLG, LLC filed

a motion in the Third District Court of Appeal of Florida asking that court to award attorney's

fees to NLG against Hazan and her counsel in Case No. 3D16-0315, pursuant to §57.105, Florida

Statutes. *See* Exhibit 1 hereto.

        3.      On April 26, 2016, the Third District entered an order stating that NLG's motion

"is granted and remanded to the trial court to fix amount." *See* Exhibit 2 hereto.

        4.      On May 23, 2016, the Third District entered an order stating that "we confirm that

appellee's motion for appellate attorney's fees is granted and remanded to the trial court to fix

amount." *See* Exhibit 3 hereto.

1

5.     On June 12, 21017, NLG filed a motion with this Court seeking relief from the automatic stay to allow NLG to, among other things, ask the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 11-42770, to fix the amount of attorney's fees to which it claimed to be entitled under the Third District's orders. ECF Doc. 475.

6.     On June 27, 2017, this Court entered an order denying NLG's request for relief from stay. ECF Doc. 500.

7.     In Adversary Case No. 16-01439, this Court held a trial on July 13, 2017, and on November 1, 2017, entered a Final Judgment on Counts I, II and III in favor of Ms. Hazan. Adv. Case No. 16-01439 ECF No. 238.

8.     This Court held, among other things, that "NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order." *Id*. at 14.

9.     On June 12, 2018, this Court confirmed Hazan's chapter 11 plan of reorganization. ECF Doc. 691.

10.     Following Hazan's discharge, NLG filed a motion in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 11-42770, asking that court to fix the amount of and award attorney's fees against Hazan purportedly due under the orders of the Third District that were entered while the automatic stay was in place.

11.     "It is the law of this Circuit that '[a]ctions taken in violation of the automatic stay are void and without effect.'" *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (quoting *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982)).

12. "This includes orders entered by state courts." *Jacobs v. Traditional Homes by Hernandez, Inc*., Case No. 8:11-CV-227-T-17, 2012 WL 360201, at *3 (M.D. Fla. Feb. 2, 2012) (citing *In re Clarke*, 373 B.R. 769 (Bankr. S.D. Fla. 2006)).

13. Although the *Rooker-Feldman* doctrine "bars collateral review of state court judgments by a federal court," it "does not abrogate the bankruptcy court's authority to enforce the automatic stay" by deeming void state court orders entered in violation of the automatic stay. *In re Clarke*, 373 B.R. 769, 771 (Bankr. S.D. Fla. 2006).

14. Because the Third District's April 26, 2016 and May 23, 2016 orders were entered in violation of the automatic stay, they are void *ab initio* and of no force and effect. This Court should deem them void.

WHEREFORE, Hazan respectfully requests that the Court enter an order: (1) deeming void *ab initio* and of no force and effect the Third District's April 26, 2016 and May 23, 2016 orders purporting to grant NLG entitlement to attorney's fees; (2) sanctioning NLG and its counsel for violating the automatic stay; (3) awarding Hazan attorney's fees and costs; and (4) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

BUSHELL LAW, P.A.
Counsel for Reorganized Debtor Liza Hazan
6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220

By:   /s/ Daniel A. Bushell
      Daniel A. Bushell
      Florida Bar No. 0043442
      dan@bushellappellatelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Daniel A. Bushell
Daniel A. Bushell

## SERVICE LIST

### Case No. 16-10389-AJC

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A. aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com

4

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium mortman@furrcohen.com, atty_furrcohen@bluestylus.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC astridgabbe@gmail.com

Astrid Gabbe on behalf of NLG, LLC

astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc. ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc. dhaber@dhaberlaw.com, ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC bkcmiami@gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, electronicbankruptcynotices@logs.com

Juan Ramirez, Jr., Esq. jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth esilver@stearnsweaver.com,
rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. ppaoletti@simonsigalos.com,
dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Miami-Dade County Tax Collector c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430 Miami, FL 33128-1733

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
THIRD DISTRICT

ELIZABETH HAZAN,

        Appellant,                          Case No. 3D16-0315
                                                         LT Case No. 11-42770

v.

NLG, LLC,

        Appellee

_____/

## APPELLEE'S MOTION FOR ATTORNEY'S FEES
## PURSUANT TO SECTION 57.105, FLORIDA STATUTES
## AND RULE 9.410 FLA.R.APP.P

Appellee, NLG, LLC, pursuant to Rule 9.400(b), moves for an award of attorney's fees. The grounds upon which recovery is sought are as follows:

1.      NLG served a Motion for Sanctions and an Amended Motion for Sanctions, pursuant to Section 57.105, Florida Statutes, on Appellant and on her attorney, Robert P. Lithman, on December 30, 2014 and on January 2, 2015, respectively, for interposing defenses to this foreclosure which she knew or should have known were not supported by the material facts and/or applicable law.

2.      A copy of the Motion for Sanctions is attached as **Exhibit "A"** and the Amended Motion for Sanctions is attached as **Exhibit "B."**

WHEREFORE, Appellee NLG respectfully requests that this Court grant it an award of attorney's fees pursuant to §57.105, F.S.

Respectfully submitted this 6th day of April, 2016.

                                       JUAN RAMIREZ, JR.
                                       DIAZ, REUS, TARG, LLP
                                       3400 Miami Tower

RECEIVED, 4/6/2016 3:58 PM, Mary Cay Blanks, Third District Court of Appeal

100 Southeast 2nd Street
Miami, Florida 33131
Tel: (305) 375-9220
Fax: (305) 375-8050

_____/s/ Juan Ramirez, Jr._____
Juan Ramirez, Jr.
Florida Bar No. 201952
(jramirez@diazreus.com)
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was sent this 6th day of

April, 2016, to:

Robert P. Lithman
Robert P. Lithman, P.A.
150 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
rpl@olsrhh.com

_____/s/ Juan Ramirez, Jr._____
Juan Ramirez, Jr.

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN,

      Appellee

_____/

## MOTION FOR ATTORNEY'S FEES
## PURSUANT TO SECTION 57.105, FLORIDA STATUTES

Plaintiff NLG, LLC, pursuant to Section 57.105, Florida Statutes, moves this Court for an award of attorney's fees against Elizabeth Hazan and her counsel, Mark D. Cohen, for interposing frivolous defenses in this matter.

1. This is a foreclosure action pending since 2011, during which defendant and her attorney have interposed every conceivable obstacle which counsel knew or should have known were not supported by the material facts and/or applicable law. The Third District, in an opinion dated September 3, 2014, stated that it could find no basis in the pleadings or applicable law for the positions advanced by the borrower. The district court issued its mandate on November 25, 2014. All defenses raised or that could have been raised constitute law of the case.

2. Any allegation that a judgment by Quebec, Inc., or Selective Advisors Group, LLC., should in any way affect the enforceability of NLG's mortgage is frivolous, as those judgments were obtained by fraud, as are all documents emanating from that judgment. The reasons why the judgment by Quebec, Inc. was obtained by fraud are set forth in detail in Exhibit "A" attached hereto.

3. Unless defendant and her counsel desist from raising matters already adjudicated, nor new matters that could have been previously raised within 21 days, plaintiff will seek sanctions under Section 57.105, F.S.

4. A similar motion was filed on October 10, 2014, at the Third District Court of Appeal, but because no fees were incurred after the filing of the motion, it was withdrawn.

## **MEMORANDUM**

**Legal Standard Under § 57.105, Florida Statutes**

"Florida lawyers have both ethical and statutory duties not to file actions . . . that are not supported by the application of the governing law." *De Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 683 (Fla. 1st DCA 2007). Section 57.105 provides that, upon the motion of any party, "the court shall award a reasonable attorney's fee . . . on any claim . . . in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim . . . when initially presented to the court at any time before trial: (a) [w]as not supported by the material facts necessary to establish the claim . . . or (b) [w]ould not be supported by the application of then-existing law to those material facts." § 57.105(1), FLA. STAT.

2

Responsibility for paying an award of attorney's fees should be split equally between the opposing party and the opposing party's counsel, unless the opposing party's counsel can prove that it relied in good faith upon the representations of its clients or was making a good faith attempt to create new law in filing the claim which was not supported by the material facts or then-existing law. *See Danziger v. Alternative Legal, Inc.*, 987 So. 2d 694, 696 (Fla. 4th DCA 2008) (holding that fees should have been assessed against both the opposing party and its counsel where the trial court found that counsel had shown no good faith reliance upon its client's representations or good faith attempt to expand upon existing law).

## CONCLUSION

Based on the foregoing points and authorities, Plaintiff, NLG requests that this Court in this case enter sanctions against Appellee Hazan and/or her counsel.

WHEREFORE, Appellant requests that this Court grant it an award of reasonable attorney's fees it incurred in prosecuting this foreclosure, assessing same equally against defendant and/or her counsel.

Respectfully submitted this 30th day of December, 2014.

JUAN RAMIREZ, JR.
DIAZ, REUS, TARG, LLP
3400 Miami Tower
100 Southeast 2nd Street
Miami, Florida 33131
Tel: (305) 375-9220
Fax: (305) 375-8050

____*/s/ Juan Ramirez, Jr.*____
Juan Ramirez, Jr.
Florida Bar No. 201952
(jramirez@diazreus.com)
*Counsel for Appellant*

3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via

email this 30th day of December, 2014, to:

Chris Kosachuk for NLG, LLC
854 Pheasant Run Road
Westchester, PA 19382
chriskosachuk@gmail.com

Nicole R. Moskowitz, Esq.
nlglaw@yahoo.com

Mark Cohen, Esq.
Mdcohenpa@yahoo.com

Daniel S. Nathan
Daniel S. Nathan, P.A.
12805 SW 84th Avenue Road
Miami, Florida 33156
Dnathan@danielsnathan.com

Jonathan E. Pollard
401 E. Las Olas Blvd.
Suite 1400
Ft. Lauderdale, Florida 33301
jpollard@pollardllc.com

Robert P. Lithman
Robert P. Lithman, P.A.
150 Alhambra Circle
Suite 1150
Coral Gables, Florida 33134
rpl@olsrhh.com

_____/s/ Juan Ramirez, Jr._____
Juan Ramirez, Jr.

# EXHIBIT "A"

EX PARTE MOTION OFFICE

APPROVED
FOR THE PAYMENT
OF MOTION FEE
ONLY          SHLOMO HAGLER
                              J.S.C.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
9197-5904 QUEBEC, INC.,

                                        Plaintiff,

                              -against-

NLG, LLC, a Delaware Limited Liability Company

                              Defendant.
--------------------------------------------------------------------X

At IAS Part _17_ of the Supreme
Court of the State of New York,
held in and for the County of New
York, at the Courthouse located at
60 Centre Street, New York, NY
on the _27_ day of _June_, 2014

14M09872

Index No.: **101875/2012**

**ORDER TO SHOW CAUSE**

$MSH$

$VHL$

FEE PAID

JUN 25 2014

NEW YORK
COUNTY CLERK'S OFFICE

Upon reading and filing the affirmation of Van Mor, Esq., dated June 25, 2014, the affidavit of Chris Kosachuk sworn to on June 11, 2014, the exhibits annexed thereto, and upon all the pleadings and proceedings heretofore had herein, and sufficient reason appearing therefor, it is hereby:

**ORDERED**, that Plaintiff, its principles, or their attorneys, show cause at IAS Part _17_ Room _33_ of this Court to be held at 60 Centre Street, New York, New York on the _21st_ day of _July_, 2014 at 10:00 ~~9:30~~ o'clock in the forenoon of that day or as soon thereafter as counsel can be heard why an order should not be made and entered:

(a) pursuant to CPLR § 3218, granting, NLG's motion in its entirety, vacating Plaintiff's judgment by confession *nunc pro tunc*;

(b) pursuant to N.Y.C.R.R. 130-1.1, granting an award of sanctions against Plaintiff, its Counsel Darius Marzec, Esq,, and Raymond Houle;

(c) granting NLG attorneys' fees, costs, and disbursements;

ᴹᴺᴺ

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------X

9197-5904 QUEBEC, INC.,

Index No.: **101875/2012**

Plaintiff,

**AFFIRMATION IN SUPPORT
OF ORDER TO SHOW CAUSE**

-against-

NLG, LLC, a Delaware Limited Liability Company

Defendant.
--------------------------------------------------------------------------X

Ari Mor, an attorney duly admitted to practice law before the Courts of the State of New

York, under the penalties of perjury, affirms the truth of the following:

1.     I am the attorney for defendant NLG, LLC (hereinafter "NLG"). As such, I am

fully familiar with the facts of this matter based upon communication with my client and a

review of my file.

## I.   PRELIMINARY STATEMENT

2.     I submit this affirmation in support of NLG's Order to Show Cause: (a) pursuant

to CPLR § 3218, to vacate Plaintiff's judgment by confession *nunc pro tunc*; (b) pursuant to

N.Y.C.R.R. 130-1.l, granting an award of sanctions against Plaintiff, its Counsel Darius Marzec,

Esq,, and Raymond Houle; (c) to grant attorneys' fees, costs, and disbursements; (d) to enjoin

Plaintiff and its counsel, Darius Marzec, Esq, from filing any further purported judgment by

confessions against NLG in the future; and (e) grant NLG such other relief as that this Court

deems just and proper.

3.     NLG's previous application for this relief was deemed abandoned by this Court,

however, it was not the intention of previous counsel or NLG to abandon its application to vacate

the judgment by confession referenced herein.

4.     I incorporate the affidavit and its exhibits of NLG's manager, Chris Kosachuk, as

if fully rewritten herein, and the Court is respectfully referred to the Kosachuk Aff. for a

recitation of the relevant facts.

5.     In short, NLG seeks an Order from this Court vacating the Judgment on the basis

that the entry was procedurally defective and fraudulent. (See Kosachuk Aff., at ¶¶ 2-10)

6.     The Judgment was entered based upon an Affidavit of Confession obtained from

Raymond Houle by the Plaintiff on February 21, 2012 (the "Confession Aff.") and entered by

Plaintiff's attorney. As more fully set forth herein, the Judgment is invalid because it does not

comply with CPLR § 3218 and because Judgment was obtained through collusion between the

Plaintiff, Raymond Houle and Plaintiff's Attorney in order to defraud NLG. Id.

## II. **ARGUMENT**

7.     NLG is entitled to an Order vacating the Judgment because it was not entered in

compliance with CPLR § 3218(a) and because it appears to have been obtained through fraud or

collusion between the Plaintiff, Raymond Houle and Plaintiff's attorney, warranting the denial of

any equitable arguments raised by the Plaintiff.

8.     CPLR § 3218(a) states:

> Affidavit of defendant. Except as provided in section thirty-two
> hundred one, a judgment by confession may be entered, without an
> action, either for money due or to become due, or to secure the

- 2 -

> plaintiff against a contingent liability in behalf of the defendant, or
> both, upon an affidavit executed by the defendant;
>
> 1. stating the sum for which judgment may be entered, authorizing
> the entry of judgment, and stating the county where the defendant
> resides or if he is a non-resident, the county in which entry is
> authorized;
>
> 2. if the judgment to be confessed is for money due or to become
> due, stating concisely the facts out of which the debt arose and
> showing that the sum confessed is justly due or to become due; and

a. **The History and Requirements for Entry of Judgments by Confession**

9.      A judgment by confession is a statutory device which permits a creditor to "dispense[] with an adversary proceeding and [obtain] the fruits of a successful one by permitting the creditor merely to file a judgment voluntarily confessed by the debtor." Siegel, New York Practice (3d ed. 1999), § 299.

10.     The affidavit is given by a debtor to confess judgment to provide security so that if the debtor does not make payment as agreed, the creditor may obtain a judgment against the debtor before or after the sums come due (although if entered prior to becoming due, it cannot be enforced until due). Id.

11.     Traditionally, the common law recognized two types of judgments by confession, or cognovit judgments: those which were entered "on the regular cognovit actionem or written confession after the regular commencement of the action; and those entered upon a warrant of attorney to confess judgment without the institution of an action." Atlas Credit Corp. v. Ezrine, 25 N.Y.2d 219, 228, 303 N.Y.S.2d 382, 250 N.E. 2d 474 (1969) (citing 1 Black,

Judgments, § 50; 3 Freeman, Judgments, § 1302; Note, Confessions of Judgment, 102 U. of Pa. L. Rev. 524, 525-526; Hunter, The Warrant of Attorney to Confess Judgment, 8 Ohio St. L.J. 1; 49 C. J. S., Judgments, §§ 134-137). See also Chappel v. Chappel, 12 N.Y. 215, 218 (1855) (noting that the common law permitted a warrant of attorney to be incorporated in a bond, note, or other instrument evidencing the obligation). The method of entry upon warrant of an attorney, however, became heavily disfavored over time, leading to its abolition in New York in 1848. Atlas Credit, *supra* at 226 (citing Code of Pro. [Field Code, 1848], §§ 335-337).

12.     The law enacted by New York in 1848 required that the obligor personally execute an affidavit stating the amount in which judgment could be entered and setting forth the relevant facts from which the liability arose. Atlas Credit, *supra* at 226. In 1915, the Code of Civil Procedure was amended to require that any judgment by confession be "filed with the clerk of the county in which the obligor resided at the time he executed the affidavit." Id. at 226 (citing Code of Civil Procedure (1915), ch. 639).

13.     With the enactment of the CPLR in 1962 to replace the Civil Practice Act, New York also required that the obligor state in the affidavit "the county where [he] resides, or, if he is a nonresident, the county in which entry is authorized" in order to readily ascertain the "proper county for entry ... from the affidavit [for confession]." CPLR § 3218(a)(1); Atlas Credit, *supra* at 226 (quoting 5th Report, Advisory Comm. on Prac. and Pro., N. Y. Legis. Doc., 1961, No. 15, p. 503).

14.     Pursuant to Section 3218, an affidavit on which a judgment of confession is to be based must, if the judgment is one for money which is due or to become due (as opposed to a contingent liability), state "concisely the facts out of which the debt arose and show[] that the sum confessed is justly due or to become due." CPLR § 3218(a)(2). This requirement has been

- 4 -

strictly interpreted by the New York Courts, <u>County Nat'l Bank v. Vogt</u>, 28 A.D.2d 793, 794, 280 N.Y.S.2d 1016 (3rd Dep't 1967), *aff'd* 21 N.Y.2d 800, 288 N.Y.S.2d 631, 235 N.E.2d 772 (1968), and necessitates more than just a statement of the existence of a debt and a statement that the debt is due; the "concise" statement of facts in the affidavit must include, *inter alia*, the amount of the loan(s) or debts, the date(s) made or incurred, the amount(s) of the principal and interest due, and the nature and circumstances of the debt. <u>McDaniel v. Sangenino</u>, 67 A.D.2d 698, 412 N.Y.S.2d 400 (2nd Dep't 1979) (citing <u>Wood v. Mitchell</u>, 117 N.Y. 439, 22 N.E. 1125 (1889)) (holding that an affidavit for judgment by confession must "separately state the amount of the loans, the dates upon which they were made, the amount of principal and the amount of interest" in order that "any interested third party may investigate the matter and ascertain whether the confession of judgment was accurate and bona fide."). <u>See also</u> <u>Vogt</u>, *supra* at 793-94 (holding insufficient [and vacating a judgment entered upon] an affidavit where the only description of the transaction in the affidavit was "money loaned by plaintiff to defendant and not repaid"); <u>Bahre v. Rochester Dental Practices, Inc.</u>, 112 Misc. 2d 270, 272, 446 N.Y.S.2d 901 (Sup.Ct. 1982) (citing Siegel, <u>Practice Commentaries, Mckinney's Cons. Laws Of New York</u>, Book 7B, CPLR C3218:9) (holding that the statement must contain "enough detail" to permit others "'to discern a complete picture of the transaction from the affidavit itself...'").

15.     The reason for strictly construing the requirement of § 3218(a)(2) that there be a "concise statement" of facts because it exists so that "third persons (notably other creditors) may ascertain whether the confession was accurate, honest and bona fide." <u>Baehre</u>,112 Misc. 2d at 272 (citing <u>Vogt</u>, *supra;* <u>Wood v. Mitchell</u>, *supra*). See also <u>Mall Commercial Corp. v. Chrisa Rest., Inc.</u>, 85 Misc. 2d 613, 614, 381 N.Y.S.2d 391 (1st Dep't 1976) (holding that the statutory mandate of CPLR § 3218(a)(2) "is designed for the protection of third persons who might be

- 5 -

prejudiced in the event that a collusively confessed judgment is entered"); McDaniel, *supra* (holding that the "purpose [of CPLR § 3218] is to protect creditors of a defendant from judgments entered on confession by collusion."); Giryluk v. Giryluk, 30 A.D.2d 22, 25, 289 N.Y.S.2d 458 (1st Dep't 1968) (holding that CPLR § 3218 was specifically drafted to protect third-party creditors, who are entitled to demand strict compliance therewith).

### b. The Judgment Must be Vacated Because the Affidavit was Defective

#### i. The standard and procedure for vacating a judgment entered by confession

16.     Consistent with the requirement that CPLR § 3218 be strictly construed, Confessions of judgment are always closely scrutinized and New York Courts maintain a liberal attitude   towards vacating a judgment by confession. Giryluk, *supra;* Rae v. Kestenberg, 23 A.D.2d 565, 256 N.Y.S.2d 737 (2nd Dep't 1965).

17.     The failure of an affidavit for judgment by confession to strictly comply with the requirements of CPLR § 3218(a) requires vacatur of the judgment entered pursuant thereto, even where the underlying transaction may have been  legitimate or the clerk of the court entered the judgment believing it to be proper. Ripoll v. Rodriguez, 53 A.D.2d 638, 384 N.Y.S.2d 504 (2nd Dep't 1976); Vogt, *supra* at 793 (holding that a confession of judgment be vacated if "the affidavit is formally insufficient, whether or not the transaction was in fact bona fide") (emphasis added).

18.     Here, the Confession Aff. is facially deficient in its description of the time, place, manner, and circumstances of the purported debt and the demand for payment thereof, and NLG is therefore, as a matter of law, entitled to an Order vacating the Judgment.

#### ii. The Confession Aff. is defective and the Judgment must be vacated

19. The Confession Aff. provides no detail as to the transactions which are the basis for the Judgment nor does it make an accounting of the amounts purportedly due to Plaintiff, and allegedly not paid despite demand, rendering it defective under New York law. Vogt, *supra.*

20. Specifically, the Confession Aff. recites only the following language with respect to the nature of the moneys confessed to be due:

> This confession of judgment is for a debt justly due to the plaintiff and arising from the following facts: Defendant consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state…All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant…

(See Exhibit "A" to the Kosachuk Aff.)

21. Here the Confession Aff. completely lacks any indicia of, *inter alia,* the dates the money came due, the nature and/or purpose of the monies due, the interest rate(s) if any upon the monies due, the date when repayment was demanded. Bahre, *supra* at 274 (holding the affidavit for confession to be insufficient where it "[gave] no indication of when the services were rendered or for what purpose" and provided no information as to the "amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount confessed is principal or interest"). See also Chappel v. Chappel, 12 N.Y. 215, 217 (1855) (holding judgment by confession invalid where information as to amount and dates of debt was provided, but there was no explanation as to how the debt actually arose.)

- 7 -

22. The language in the Confession Aff. amounts to little more than insufficient language which has repeatedly been rejected by the Courts of the State of New York. Bahre, *supra* at 275 (comparing the vagueness and the insufficiency of the term "legal services" to "terms such as 'money loaned' or 'goods sold and delivered' or numerous other expressions that have been held insufficient to support a confessed judgment"). See also Bradley v. Glass, 20 A.D. 200, 46 N.Y.S. 790 (4th Dep't 1897) (cited in Bahre) (invalidating a judgment by confession where the affidavit "furnishe[d] little or no information in respect to the precise nature of the indebtedness to secure which the judgment was confessed" and merely recited that the debt was for "goods sold and delivered" and that "the payment thereof became due as aforesaid"); Vogt, *supra* (noting the fatal absence of the affidavit for judgment by confession to contain any information as to the "amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount **confessed** is principal or interest"); Stebbins v. East Society of Methodist Episcopal Church of Rochester, 12 How. Prac. 410, 412 (cited in Bahre, *supra*) (vacating, under an early [but nearly identical] predecessor to CPLR § 3218, a series of "37 judgments for money 'lent and advanced' by plaintiff to enable defendant 'to pay off and discharge [its] debts'... at the instance of a third-party creditor, on the ground that the affidavits on which they were based failed to adequately reveal the transactions that gave rise to the liabilities confessed" because the "statute looks not to evidence of the demand, *but to the facts in which it originated;* in other words, to the consideration which sustains the promise" (emphasis in original) (internal quotes omitted). *Cf.* Eurofactors v. Jacobowitz 21 A.D.3d 443, 800 N.Y.S.2d 569 (2d Dep't 2005) (finding affidavit sufficiently detailed where it set forth the "date and amount of the loan, and the date when repayment was due"); Stebbins, *supra* (holding valid one of 38 contested judgments by confession because the

- 8 -

particular affidavit contained sufficient information); Keller v. Greenstone, 253 A.D. 573, 2 N.Y.S. 2d 977 (1st Dep't 1938) (cited in Bahre, *supra*) (sustaining a judgment by confession based on language of "[f]or money borrowed," but only because the debt was stated to be due pursuant to a promissory note which delivered on a specific date and the note was attached to the affidavit for judgment by confession).

23. As in the affidavits for judgment by confession at issue in Vogt, McDaniel, and Boudreau, the Confession Aff. here is deficient for all of the foregoing stated reasons. Further, as was held to be insufficient in Baehre and Chappel, the Confession Aff. provides no indication as to how the debt of $5,000,225 arose; it is bereft of any factual detail whatsoever. Simply stated, the utter absence of facts in the Confession Aff. renders it violative of CPLR § 3218, requiring immediate vacatur of the Judgment. See Franco v. Zeltser, 111 A.D.2d 367, 368, 489 N.Y.S.2d 583 (2nd Dep't 1985).

## c. The Confession Aff. and Judgment are Products of Collusion and Fraud

24. In addition to the facial insufficiency of the Confession Aff. pursuant to CPLR § 3218(a), the Judgment also appears to have been obtained through fraud or collusion between the Plaintiff, Raymond Houle , and Plaintiff's Counsel.

25. This is wholly substantiated by Raymond Houle, where Mr. Houle has testified that NLG in fact never owed Plaintiff money. (See Kosachuk Aff., at ¶¶ 7-8; See also Kosachuk Aff. Ex. " B" pg. 45 ¶ 18-20).

26. Fraudulent intent, however, is rarely established by direct proof, however, and instead is inferred through a showing of "badges of fraud," which give rise to an inference of intent due to the fact that their presence is so commonly associated with fraud. Wall St. Assoc. v. Brodsky, 257 A.D.2d 526, 528-529, 684 N.Y.S.2d 244, 248 (1st Dep't 1999). See also Dempster

v. Overview Equities, Inc., 4 A.D.3d 495, 773 N.Y.S.2d 71 (2nd Dep't 2004) noting that "direct evidence of fraudulent intent is often elusive [necessitating the] consider[ation of] badges of fraud…").

27.    In Matter of Boudreau, the Surrogate's Court was presented with a situation in which an affidavit for judgment by confession was executed in favor of a party's mother for a sum which had allegedly been borrowed from her at a time when his "marriage was in trouble and his wife was consulting with counsel regarding divorce." Id, 13 Misc.3d at 1227(A). In addition to finding that the judgment was procedurally defective, see *supra*, the Court found that the circumstances were "replete with badges of fraud" in that, *inter alia*, the judgment was entered in favor of a family member while an action against the defendant was pending. Id. Here, as in Boudreau, the badges of fraud are clearly present and establish that the conduct of Plaintiff was undertaken through collusion with Plaintiff's counsel, and Raymond Houle in order to perpetuate a fraud upon this court and NLG. (See Kosachuk Aff., at ¶¶ 4-8).

28.    The overwhelming presence of the badges of fraud in connection with execution of the Confession Aff., and the entry of the Judgment, are sufficient to give rise to an inference of actual fraudulent intent on the part of Plaintiff. As such, they constitute an additional basis for vacatur of the Judgment and constitute a basis to defeat any equitable arguments offered by Plaintiffs in opposition to this application, which is in accordance with the equitable nature of the relief sought herein, the liberal attitude adopted by the Courts towards vacating judgments by confession, and the "venerable maxim that '[h]e who seeks equity must do equity.'" Lincoln Life & Annuity Co. v. Caswell, 31 A.D.3d 1, 813 N.Y.S.2d 385 (1st Dep't 2006) (quoting Langel v. Betz, 250 N.Y. 159, 162, 164 N.E. 890 (1928)).

- 10 -

29.     Under these circumstances, NLG's order to show cause to vacate the judgment by confession with prejudice *nunc pro tunc* must be granted in its entirety.

## d. This Court should also grant NLG an order sanctioning the Plaintiff, its counsel, Darius Marzec, Esq., and Raymond Houle

30.     In the case at hand, it is apparent that Plaintiff's actions were primarily undertaken to harass, intimidate or maliciously injure NLG and to give Mr. Marzec's girlfriend, Elizabeth Hazan (member of Plaintiff corporation), a defense in her indefensible litigation with NLG. (Ms. Hazan is the judgment debtor of NLG and owes almost $4 million. The NLG Judgment against Ms. Hazan is recorded under index number 101288/2013 and captioned NLG, LLC v. Elizabeth Hazan). Such actions warrant sanctions under N.Y.C.R.R. 130-1.1.

31.     Pursuant to N.Y.C.R.R. 130-1.I, a "court, in its discretion, may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct," which is further defined as conduct which is "primarily undertaken to prolong the resolution of the litigation, or to harass or maliciously injure another". 22 NYCRR 130-1.1. See also Pickens v. Castro, 867 N.Y.S.2d 47, 55 A.D.3d 443 (1st Dep't 2008) (upholding an award of sanctions to plaintiff where the court determined that the actions of defendant were undertaken to delay or prolong litigation, or to harass or maliciously injure another).

32.     New York courts have held that pursuant to Rule 130-1.1, sanctions may be imposed upon any party to the litigation, not merely an attorney. See Park Health Center v. Country-Wide  Insurance Company, 774 N.Y.S.2d 260, 2  Misc.3d 737 (N.Y. Civ. Ct. 2003) (awarding sanctions against both attorney and client for intentionally covering up information in a no-fault benefits action).

33.     Furthermore, sanctions may be imposed for any action intended to harass or injure another, not limited to frivolous litigation tactics. See Jalor Color Graphics, Inc., v. Universal

- 11 -

Advertising Systems, Inc., 703 N .Y.S.2d 370, 183 Misc.2d 294 (N.Y. Civ. Ct. 1999) (ordering sanctions against Defendant's counsel based on their letter threatening criminal prosecution, finding that their actions were undertaken primarily to harass or maliciously injure Plaintiff and Plaintiff's counsel).

34.    In the present case, the court should impose sanctions upon Plaintiff, its Counsel, Mr. Marzec, and Raymond Houle, as their actions are clearly frivolous as defined by N.Y.C.R.R. 130-1.1.

35.    Based on the foregoing, the Judgment by Confession should be vacated with prejudice *nunc pro tunc*.

36.    A previous application for the relief requested herein has been made but was inadvertently abandoned by previous counsel due to law office failure.

**WHEREFORE**, for all the foregoing reasons, this Court should enter an order:

(a) pursuant to CPLR § 3218, granting, NLG's motion in its entirety, vacating Plaintiff's judgment by confession *nunc pro tunc*;

(b) pursuant to N.Y.C.R.R. 130-1.l, granting an award of sanctions against Plaintiff, its Counsel Darius Marzec, Esq,, and Raymond Houle;

(c) granting NLG attorneys' fees, costs, and disbursements;

(d) enjoining Plaintiff and its Counsel, Darius Marzec, Esq, from filing any further purported judgment by confessions against NLG in the future; and

(e) granting NLG such other relief as that this Court deems just and proper.

## [INTENTIONALLY LEFT BLANK]

Yours, etc,

Dated: New York, New York
     June 25, 2014

THE LAW OFFICES OF ARI MOR, ESQ.
Attorney for NLG, LLC
347 E. 65th Street, Suite 2RW
New York, New York 10065
(347) 850-0578
ari.mor.esq@gmail.com

By:                                 
         ARI MOR
         (Rule 130-1.1-a)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

9197-5904 QUEBEC, INC.,

              Plaintiff,

- against -

NLG, LLC, a Delaware Limited Liability
Company

              Defendant

Index No.: **101875/2012**

**AFFIDAVIT IN
SUPPORT OF
DEFENDANT NLG'S
OSC TO VACATE
JUDGMENT BY
CONFESSION WITH
PREJUDICE**

---

STATE OF NEW YORK    )
                      ) ss:
COUNTY OF NEW YORK   )

        CHRIS KOSACHUK, being duly sworn, deposes and says:

    1.    I am the manager of NLG, LLC, a Delaware limited liability company
with its principal place of business located at 854 Pheasant Run Road, West
Chester, Pennsylvania 19382 (hereinafter "NLG"). As such, I am fully familiar
with the facts and circumstances stated herein. I am also authorized to make this
affidavit on behalf of NLG.

    2.    I submit this affidavit in support of Defendant NLG's Order to Show
Cause to Vacate Judgment by Confession With Prejudice.

3.  NLG seeks to vacate with prejudice the Judgment by Confession (the "Judgment") attached hereto as Exhibit A.

4.  The Judgment is a complete and total fraud on the Court orchestrated by Attorney Darius Marzec in another futile attempt to obtain a judgment against NLG which he has been unable to do in any jurisdiction after countless tries including most recently an action before your Honor, Index Number 151653/2013 captioned 9197-5904 Quebec, Inc. v. NLG, LLC et al. which was dismissed by this Court on February 26, 2014 (Index Number 151653/2013 NYSCEF Doc. Nos. 39 – 41).

5.  Mr. Raymond Houle (herein "Mr. Houle") was never a duly elected manager or representative of NLG, did not have authorization to make or execute the affidavit on behalf of NLG attached to the Judgment and used to record the Judgment by Confession, and did not have authorization to confess to any judgment.

6.  Mr. Houle was also purportedly operating as the manager of Plaintiff 9197-5904 Quebec Inc. (herein "9197") when he confessed judgment on behalf of NLG. Accordingly, Mr. Houle was operating as both the plaintiff and the defendant at the same time. His attorney, Mr. Marzec knew this, was assisting him anyway in this bold, outrageous and scandalous fraud.

- 2 -

7. Moreover, in Mr. Houle's own deposition testimony from Philadelphia and attached hereto as Exhibit B, Mr. Houle unequivocally stated that NLG owed no money to 9197.

8. Specifically in his deposition on page 45 at lines 18 – 20, Mr. Houle was asked "Before you filed this confession of judgment against NLG, did NLG owe Quebec Corporation any money?" Answer by Mr. Houle. "No". Accordingly, Mr. Houle admits the NLG owed no money to Quebec before this sham Judgment by confession. This Court cannot and should not allow such a fraud to proceed.

9. I formed NLG, LLC on or about November 19, 2002. Attached hereto as Exhibit C is a true and correct copy of the Certificate of Formation of NLG, LLC from the Delaware Secretary of State.

10. I have also continuously served as NLG's only manager from inception to date.

11. Under these circumstances, defendant's order to show cause to vacate the judgment by confession with prejudice must be granted in its entirety.

12. A previous application for the relief requested herein has been made but was deemed abandoned because of a law office failure.

- 3 -

**WHEREFORE**, for all the foregoing reasons, the order to show cause brought by Defendant, NLG, LLC, should be granted in its entirety.

Dated:   New York, New York
         June 10, 2014

FURTHER AFFIANT SAYETH NAUGHT.

Chris Kosachuk

STATE OF NEW YORK      )
                       : ss
COUNTY OF NEW YOR      )

        BEFORE ME, the undersigned authority, personally appeared Chris Kosachuk, who, being first duly sworn, acknowledges that he has read the foregoing and that the same is true and correct to the best of his knowledge, information and belief.

SWORN TO AND SUBSCRIBED before me this  11/h  day of June, 2014.

NOTARY PUBLIC, STATE OF NEW YORK

NAME OF NOTARY PUBLIC
(PRINT, STAMP OR TYPE AS COMMISSIONED)

My Commission Expires:
        11/04/17

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

              **Plaintiff,**

Index No.:

**JUDGMENT BY**
**CONFESSION**

   **against**

NLG, LLC, a Delaware Limited Liability Company,

             **Defendant.**

**12101875**

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

I HEREBY CERTIFY THAT I HAVE ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

**MARZEC LAW FIRM, PC**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

**COUNTY CLERKS OFFICE**

**JUDGMENT** entered the _____22ⁿᵈ_____ day of _FebRuARy_, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein, sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is

**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC,* Defendant, with the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with $225.00 costs and disbursements, as taxed by the clerk amounting in all to the sum of $5,000,225.00 and that the plaintiff have execution therefor.

Norman Goodman
CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full Name is:
NLG, LLC, a DelawaRe Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187/12

9197-5904 Quebec, Inc.,

        **Plaintiff,**

    against

NLG, LLC, ~ Delaware Limited
Liability Company,

        **Defendant.**

**AFFIDAVIT OF**
**CONFESSION OF**
**JUDGMENT**

**FILED**

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**     ss.:

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

Sworn to before me this
16 day of Feb, 2012

NOTARY PUBLIC

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MENAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. $10\,875/12$

9197-5904 Quebec, Inc.,

                      **Plaintiff,**

      **against**

NLG, LLC,

                      **Defendant.**

**AFFIDAVIT OF**
**RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**     **ss.:**

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20.

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                    Index No.

9197-5904 Quebec, Inc.,

**Plaintiff,**

against

NLG, LLC., A DELAWARE LIMITED LIABILITY
            COMPANY,

**Defendant.**

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

**FILED AND
DOCKETED**

FEB 2 2 2012

AT      10:25 A      M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

# EXHIBIT B

Page 1

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

NLG, LLC,                          )
                                   )
            Plaintiff,             )
                                   )
                                   )  AUGUST TERM, 2012
vs.                                )  NO. 02514
                                   )
DARIUS A. MARZEC, MARZEC LAW       )
FIRM, P.C., GUY A. DONATELLI,      )
LAMB McERLANE, P.C., and           )
9197-5904 Quebec, Inc.,            )
                                   )
            Defendants.            )
_____)


- - -

FRIDAY, APRIL 4, 2014

- - -

Telephonic deposition of RAYMOND HOULE, taken
at the LAW OFFICES OF EDWIN P. SMITH, 1528 Walnut Street,
Suite 702, Philadelphia, Pennsylvania, beginning at
approximately 11:15 a.m., on the above date, before Carol L.
Shearer, Registered Professional Reporter and Notary Public.

CENTER CITY REPORTING, INC.
1315 Walnut Street - Suite 601
Philadelphia, Pennsylvania 19107
215-732-4882

Page 2

1
2   APPEARANCES:
3
    EDWIN P. SMITH & ASSOCIATES, P.C.
    BY: EDWIN P. SMITH, ESQUIRE
4      1528 Walnut Street
       Suite 702
5      Philadelphia, Pennsylvania 19102
       (215) 864-7300
6      edwinsmith.attorney@yahoo.com
7
       -- Representing the Plaintiff
8
9
    KANE, PUGH, KNOELL, TROY & KRAMER, LLP
10  BY: PETER ROGERS, ESQUIRE
       (Appearing Via Telephone)
11     510 Swede Street
       Norristown, Pennsylvania 19401
12     (610) 275-2000
       progers@kanepugh.com
13
14     -- Representing the Defendants
       Darius A. Marzec and Marzec Law Firm, P.C.
15
16
    LAMB McERLANE, P.C.
17  BY: GUY A. DONATELLI, ESQUIRE
       (Appearing Via Telephone)
18     24 East Market Street
       West Chester, Pennsylvania 19382
19     (610) 430-8000
       gdonatelli@lambmcerlane.com
20
       -- Representing the Defendants
21     Guy A. Donatelli and Lamb McErlane, P.C.
22
23
24

Page 3

1   A P P E A R A N C E S (cont'd.):
2
3      MARZEC LAW FIRM
       BY: DARIUS A. MARZEC, ESQUIRE
4      (Appearing Via Telephone)
       225 Broadway
5      Suite 3000
       New York, New York 10007
6      (212) 267-0200
       dmarzec@marzeclaw.com
7
8      -- Representing the Defendant 9197-5904 Quebec,
          Inc.
9
10
11
12  ALSO PRESENT: JUDITH P. MEYER, DISCOVERY MASTER
13
14
15
16
17
18
19
20
21
22
23
24

Page 4

1                    INDEX
2
3                                              Page
4
5   Examination by Mr. Smith                  5, 66
6   Examination by Mr. Marzec                    61
7   Examination by Mr. Rogers                    74
8   Court Reporter's Certificate                 76
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

EXHIBIT B

Page 45

1 Affidavit of Confession of Judgment signed by you -- that is
2 your signature at the bottom?
3 A. Which page?
4 Q. Third page.
5 A. I see it, yes.
6 Q. And it says manager of NLG. Who appointed you as
7 manager of NLG?
8 A. By corporate resolution.
9 COURT REPORTER: I'm sorry?
10 BY MR. SMITH:
11 Q. By corporate resolution? What corporation?
12 A. That I did when Quebec took over NLG.
13 Q. What corporation issued the resolution?
14 A. You got a valid -- a valid charging order to do so.
15 It's the Quebec company who make that resolution.
16 Q. Before you filed this, did NLG owe Quebec anything?
17 A. I don't understand very well.
18 Q. Before you filed this Confession of Judgment against
19 NLG, did NLG owe Quebec Corporation any money?
20 A. No.
21 Q. Who selected the $5 million figure?
22 A. I did.
23 Q. Did anyone assist you in selecting that amount?
24 A. No.

Page 46

1 Q. Now, if you'll look at the two pages past there,
2 please.
3 A. Which page?
4 Q. Two more pages past.
5 A. Okay.
6 Q. At the top it has what appears to be your signature.
7 I ask you if that is your signature.
8 A. I don't find the page. I don't know. Past or
9 before?
10 Q. It's the fifth page of that exhibit.
11 A. Yes.
12 Q. Is that your signature?
13 A. Yes.
14 Q. And the notary is Darius A. Marzec; is that correct?
15 A. Yes.
16 Q. Was he with you when you signed this?
17 A. Yes.
18 Q. And were you in New York when you signed this?
19 A. Of course.
20 Q. Where in New York were you?
21 A. In his office.
22 Q. And where was his office?
23 MR. MARZEC: I have to object --
24 THE WITNESS: In Brooklyn.

Page 47

1 MR. MARZEC: -- to this line of questioning.
2 Mr. Houle, hold on. This line of questioning is not
3 reasonably calculated to lead to admissible evidence.
4 Let's not get away from the fact that this is the
5 Dragonetti action that alleges that a judgment was
6 entered against NLG. This is too far afield, in my
7 opinion, for these questions to continue.
8 MS. MEYER: The level of detail, where was your
9 office, I don't know where that's going, but I'll
10 allow that question. Can we just stipulate where
11 your office was? Does it matter?
12 MR. SMITH: I just wanted to know if he actually
13 knows where it was and if he was really there when he
14 signed that affidavit.
15 MS. MEYER: All right. So where was
16 Mr. Marzec's office?
17 THE WITNESS: It's in Brooklyn.
18 BY MR. SMITH:
19 Q. How many times were you there?
20 A. I don't understand the question. How many?
21 Q. How many times were you in Mr. Marzec's office in
22 Brooklyn?
23 A. That time, or how many times?
24 Q. I'm sorry. I didn't understand. Say that again.

Page 48

1 A. Many times.
2 Q. More than five?
3 A. I don't understand.
4 Q. All right. Strike the question.
5 MR. MARZEC: I have to object. Where is this
6 going?
7 MR. SMITH: I said strike the question.
8 MS. MEYER: Okay. Counsel, move on.
9 BY MR. SMITH:
10 Q. Would you please look at Exhibit, H-10, a document
11 from the Circuit Court of the 11th Judicial Circuit in and
12 for the Miami-Dade County in Florida.
13 A. H --
14 Q. H-10.
15 A. What does it indicate on the document, the title?
16 Q. It says Corrected Notice of Voluntary Dismissal.
17 A. Okay. I see it.
18 Q. Have you ever seen that document before?
19 A. No, I don't recall seeing this document.
20 Q. Did you ever instruct an attorney to have this
21 document filed in Florida?
22 A. I don't recall.
23 Q. Did you ever speak with a Jonathan P. Cohen, an
24 attorney?

EXHIBIT B

# EXHIBIT C



PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "NLG, LLC", FILED IN THIS OFFICE ON THE NINETEENTH DAY OF NOVEMBER, A.D. 2002, AT 9 O'CLOCK A.M.

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

3592957   8100

020713058

AUTHENTICATION: 2099035

DATE: 11-19-02

NOV. 19. 2002  4:05PM    PARCELS INC.

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 11/19/2002
020713058 - 3592957

STATE OF DELAWARE
LIMITED LIABILITY COMPANY
CERTIFICATE OF FORMATION
OF
NLG, LLC

### First

The name of the limited liability company is NLG, LLC.

### Second

The address of its Registered Offices in the State of Delaware is 32

Loockerman Square, Suite 109, City of Dover, County of Kent 19904.

The registered agent at such address is First State Corporate Services,

Inc.

### Third

The limited liability company is to have perpetual existence.

In Witness Whereof, the undersigned have executed this Certificate of

Formation this 18th day of November 2002, AD.

By: _____

Chris Kosachuk
Authorized Person

# EXHIBIT "B"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN,

      Defendant

_____/

## AMENDED MOTION FOR ATTORNEY'S FEES
## PURSUANT TO SECTION 57.105, FLORIDA STATUTES

Plaintiff NLG, LLC, pursuant to Section 57.105, Florida Statutes, moves this Court for an award of attorney's fees against Elizabeth Hazan and her counsel, Mark D. Cohen, Alan Reiss, Robert Lithman, Bruce Jacobs, Michael Simon and Daniel Nathan for interposing frivolous defenses in this matter.

1. This is a foreclosure action pending since 2011, during which defendant and her attorneys have interposed every conceivable obstacle which counsel knew or should have known were not supported by the material facts and/or applicable law. The Third District, in an opinion dated September 3, 2014, stated that it could find no basis in the pleadings or applicable law for the positions advanced by the borrower. The district court issued its mandate on November 25, 2014. All defenses raised or that could have been raised constitute law of the case.

2. Any allegation that a judgment by Quebec, Inc., or Selective Advisors Group, LLC., should in any way affect the enforceability of NLG's mortgage is frivolous, as those judgments were obtained by fraud, as are all documents emanating from that judgment. The reasons why the judgment by Quebec, Inc. was obtained by fraud are set forth in detail in Exhibit "A" attached hereto.

3. Unless defendant and her counsel desist from raising matters already adjudicated, nor new matters that could have been previously raised within 21 days, plaintiff will seek sanctions under Section 57.105, F.S. **This motion is intended as notice not only to those attorneys currently of record, but to any other attorney who Ms. Hazan may persuade in the future to become involved in this protracted litigation.**

4. A similar motion was filed on October 10, 2014, at the Third District Court of Appeal, but because no fees were incurred after the filing of the motion, it was withdrawn.

## MEMORANDUM

### Legal Standard Under § 57.105, Florida Statutes

"Florida lawyers have both ethical and statutory duties not to file actions . . . that are not supported by the application of the governing law." *De Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 683 (Fla. 1st DCA 2007). Section 57.105 provides that, upon the motion of any party, "the court shall award a reasonable attorney's fee . . . on any claim . . . in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim . . . when initially presented to the court at any time before trial: (a) [w]as not supported by the material facts necessary to establish the claim .

2

. . or (b) [w]ould not be supported by the application of then-existing law to those material facts." § 57.105(1), FLA. STAT.

Responsibility for paying an award of attorney's fees should be split equally between the opposing party and the opposing party's counsel, unless the opposing party's counsel can prove that it relied in good faith upon the representations of its clients or was making a good faith attempt to create new law in filing the claim which was not supported by the material facts or then-existing law. *See Danziger v. Alternative Legal, Inc.*, 987 So. 2d 694, 696 (Fla. 4th DCA 2008) (holding that fees should have been assessed against both the opposing party and its counsel where the trial court found that counsel had shown no good faith reliance upon its client's representations or good faith attempt to expand upon existing law).

## **CONCLUSION**

Based on the foregoing points and authorities, Plaintiff, NLG requests that this Court in this case enter sanctions against Defendant Hazan and/or her counsel.

WHEREFORE, Appellant requests that this Court grant it an award of reasonable attorney's fees it incurred in prosecuting this foreclosure, assessing same equally against defendant and/or her counsel.

Respectfully submitted this 2nd day of January, 2015.

> JUAN RAMIREZ, JR.
> DIAZ, REUS, TARG, LLP
> 3400 Miami Tower
> 100 Southeast 2nd Street
> Miami, Florida 33131
> Tel: (305) 375-9220
> Fax: (305) 375-8050
> ___/s/ Juan Ramirez, Jr. ___
> Juan Ramirez, Jr.
> Florida Bar No. 201952
> (jramirez@diazreus.com)
> *Counsel for Appellant*

3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via

email this 2nd day of January, 2015, to:

Chris Kosachuk for NLG, LLC
854 Pheasant Run Road
Westchester, PA 19382
chriskosachuk@gmail.com

Nicole R. Moskowitz, Esq.
nlglaw@yahoo.com

Mark Cohen, Esq.
Mdcohenpa@yahoo.com

Daniel S. Nathan
Daniel S. Nathan, P.A.
12805 SW 84th Avenue Road
Miami, Florida 33156
Dnathan@danielsnathan.com

Robert P. Lithman and Robert P. Lithman, P.A.
150 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
rpl@olsrhh.com

Alan Reiss
Levine & Partners
1110 Brickell Ave FL 7
Miami, FL 33131
asr@levinelawfirm.com

Bruce Jacobs
Jacobs Keeley, PLLC
169 E Flagler Str., Suite 1620
Miami, FL 33131
efile@jakelegal.com

Michael Simon
msimon@3slaw.com
msimon@simonsigalos.com

$\underline{\hspace{1cm}/s/\ Juan\ Ramirez,\ Jr.\ \hspace{0.5cm}}$
Juan Ramirez, Jr.

4

# EXHIBIT "A"

Case 1:22-cv-21485-RNS-JJS Document 66-7 Entered on FLSD Docket 4/20/23 Page 53 of 889

EX PARTE MOTION OFFICE

APPROVED
FOR THE PAYMENT
OF MOTION FEE
ONLY          SHLOMO HAGLER
                        J.S.C.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

9197-5904 QUEBEC, INC.,

At IAS Part $17$ of the Supreme
Court of the State of New York,
held in and for the County of New
York, at the Courthouse located at
60 Centre Street, New York, NY
on the $27$ day of June , 2014

14M09872

Index No.: 101875/2012

Plaintiff,

**ORDER TO SHOW CAUSE**

-against-

NLG, LLC, a Delaware Limited Liability Company

FEE PAID

Defendant.
-------------------------------------------------------------------X

JUN 25 2014

Upon reading and filing the affirmation of Ari Mor, Esq., dated June 25, 2014, the

affidavit of Chris Kosachuk sworn to on June 11, 2014, the exhibits annexed thereto, and upon

all the pleadings and proceedings heretofore had herein, and sufficient reason appearing therefor,

it is hereby:

**ORDERED**, that Plaintiff, its principles, or their attorneys, show cause at IAS Part $17$

Room $33$ of this Court to be held at 60 Centre Street, New York, New York on the 21st day of

July , 2014 at 10:00 o'clock in the forenoon of that day or as soon thereafter as counsel can

be heard why an order should not be made and entered:

(a) pursuant to CPLR § 3218, granting, NLG's motion in its entirety, vacating Plaintiff's
    judgment by confession *nunc pro tunc*;

(b) pursuant to N.Y.C.R.R. 130-1.1, granting an award of sanctions against Plaintiff, its
    Counsel Darius Marzec, Esq,, and Raymond Houle;

(c) granting NLG attorneys' fees, costs, and disbursements;

(d) enjoining Plaintiff and its Counsel, Darius Marzec, Esq, from filing any further purported judgment by confessions against NLG in the future; and

(e) granting NLG such other relief as that this Court deems just and proper.

**ORDERED**, that sufficient reason having been shown, execution upon the judgment by confession is stayed, pending the hearing of this motion.

**ORDERED**, that sufficient cause being alleged, let service of a copy of this order and the papers on which it is based by regular mail, and email service upon counsel for the plaintiff, The Marzec Law Firm, P.C., 225 Broadway, Suite 3000, New York, New York 10007, to Darius Marzec at, dmarzec@marzeclaw.com, on or before the 7th day of July, 2014, be deemed good and sufficient service.

**ORDERED,** that any opposition to this motion shall be served upon Ari Mor, attorney for NLG, LLC, by regular mail to 347 E. 65th St, Suite 2RW, New York, New York, and by email service to ari.mor.esq@gmail.com on or before the 15th day of July, 2014, and that any reply papers be brought to Court on the return date.

ENTER:

_____

J.S.C

SHLOMO HAGLER
J.S.C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------X

9197-5904 QUEBEC, INC.,

Index No.: **101875/2012**

Plaintiff,

-against-

**AFFIRMATION IN SUPPORT
OF ORDER TO SHOW CAUSE**

NLG, LLC, a Delaware Limited Liability Company

Defendant.

---------------------------------------------------------------------------X

Ari Mor, an attorney duly admitted to practice law before the Courts of the State of New York, under the penalties of perjury, affirms the truth of the following:

1.    I am the attorney for defendant NLG, LLC (hereinafter "NLG"). As such, I am fully familiar with the facts of this matter based upon communication with my client and a review of my file.

## I.    PRELIMINARY STATEMENT

2.    I submit this affirmation in support of NLG's Order to Show Cause: (a)  pursuant to CPLR § 3218, to vacate Plaintiff's judgment by confession *nunc pro tunc*; (b) pursuant to N.Y.C.R.R. 130-1.l, granting an award of sanctions against Plaintiff, its Counsel Darius Marzec, Esq,, and Raymond Houle; (c) to grant attorneys' fees, costs, and disbursements; (d) to enjoin Plaintiff and its counsel, Darius Marzec, Esq, from filing any further purported judgment by confessions against NLG in the future; and (e) grant NLG such other relief as that this Court deems just and proper.

3.     NLG's previous application for this relief was deemed abandoned by this Court, however, it was not the intention of previous counsel or NLG to abandon its application to vacate the judgment by confession referenced herein.

4.     I incorporate the affidavit and its exhibits of NLG's manager, Chris Kosachuk, as if fully rewritten herein, and the Court is respectfully referred to the Kosachuk Aff. for a recitation of the relevant facts.

5.     In short, NLG seeks an Order from this Court vacating the Judgment on the basis that the entry was procedurally defective and fraudulent. (See Kosachuk Aff., at ¶¶ 2-10)

6.     The Judgment was entered based upon an Affidavit of Confession obtained from Raymond Houle by the Plaintiff on February 21, 2012 (the "Confession Aff.") and entered by Plaintiff's attorney. As more fully set forth herein, the Judgment is invalid because it does not comply with CPLR § 3218 and because Judgment was obtained through collusion between the Plaintiff, Raymond Houle and Plaintiff's Attorney in order to defraud NLG. Id.

II. **ARGUMENT**

7.     NLG is entitled to an Order vacating the Judgment because it was not entered in compliance with CPLR § 3218(a) and because it appears to have been obtained through fraud or collusion between the Plaintiff, Raymond Houle and Plaintiff's attorney, warranting the denial of any equitable arguments raised by the Plaintiff.

8.     CPLR § 3218(a) states:

> Affidavit of defendant. Except as provided in section thirty-two hundred one, a judgment by confession may be entered, without an action, either for money due or to become due, or to secure the

- 2 -

plaintiff against a contingent liability in behalf of the defendant, or

both, upon an affidavit executed by the defendant;

1. stating the sum for which judgment may be entered, authorizing

the entry of judgment, and stating the county where the defendant

resides or if he is a non-resident, the county in which entry is

authorized;

2. if the judgment to be confessed is for money due or to become

due, stating concisely the facts out of which the debt arose and

showing that the sum confessed is justly due or to become due; and

a. **The History and Requirements for Entry of Judgments by Confession**

9.      A judgment by confession is a statutory device which permits a creditor to "dispense[] with an adversary proceeding and [obtain] the fruits of a successful one by permitting the creditor merely to file a judgment voluntarily confessed by the debtor." Siegel, New York Practice (3d ed. 1999), § 299.

10.     The affidavit is given by a debtor to confess judgment to provide security so that if the debtor does not make payment as agreed, the creditor may obtain a judgment against the debtor before or after the sums come due (although if entered prior to becoming due, it cannot be enforced until due). Id.

11.     Traditionally, the common law recognized two types of judgments by confession, or cognovit judgments: those which were entered "on the regular cognovit actionem or written confession after the regular commencement of the action; and those entered upon a warrant of attorney to confess judgment without the institution of an action." Atlas Credit Corp. v. Ezrine, 25 N.Y.2d 219, 228, 303 N.Y.S.2d 382, 250 N.E. 2d 474 (1969) (citing 1 Black,

- 3 -

Judgments, § 50; 3 Freeman, Judgments, § 1302; Note, Confessions of Judgment, 102 U. of Pa.

L. Rev. 524, 525-526; Hunter, The Warrant of Attorney to Confess Judgment, 8 Ohio St. L.J.

1; 49 C. J. S., Judgments, §§ 134-137). See also Chappel v. Chappel, 12 N.Y. 215, 218

(1855) (noting that the common law permitted a warrant of attorney to be incorporated in a bond,

note, or other instrument evidencing the obligation). The method of entry upon warrant of an

attorney, however, became heavily disfavored over time, leading to its abolition in New York in

1848. Atlas Credit, *supra* at 226 (citing Code of Pro. [Field Code, 1848], §§ 335-337).

12.     The law enacted by New York in 1848 required that the obligor personally

execute an affidavit stating the amount in which judgment could be entered and setting forth the

relevant facts from which the liability arose. Atlas Credit, *supra* at 226. In 1915, the Code of

Civil Procedure was amended to require that any judgment by confession be "filed with the clerk

of the county in which the obligor resided at the time he executed the affidavit." Id. at 226 (citing

Code of Civil Procedure (1915), ch. 639).

13.     With the enactment of the CPLR in 1962 to replace the Civil Practice Act, New

York also required that the obligor state in the affidavit "the county where [he] resides, or, if he

is a nonresident, the county in which entry is authorized" in order to readily ascertain the "proper

county for entry ... from the affidavit [for confession]." CPLR § 3218(a)(1); Atlas Credit,

*supra* at 226 (quoting 5th Report, Advisory Comm. on Prac. and Pro., N. Y. Legis. Doc., 1961,

No. 15, p. 503).

14.     Pursuant to Section 3218, an affidavit on which a judgment of confession is to be

based must, if the judgment is one for money which is due or to become due (as opposed to a

contingent liability), state "concisely the facts out of which the debt arose and show[] that the

sum confessed is justly due or to become due." CPLR § 3218(a)(2). This requirement has been

- 4 -

strictly interpreted by the New York Courts, County Nat'l Bank v. Vogt, 28 A.D.2d 793, 794, 280 N.Y.S.2d 1016 (3rd Dep't 1967), aff'd 21 N.Y.2d 800, 288 N.Y.S.2d 631, 235 N.E.2d 772 (1968), and necessitates more than just a statement of the existence of a debt and a statement that the debt is due; the "concise" statement of facts in the affidavit must include, *inter alia,* the amount of the loan(s) or debts, the date(s) made or incurred, the amount(s) of the principal and interest due, and the nature and circumstances of the debt. McDaniel v. Sangenino, 67 A.D.2d 698, 412 N.Y.S.2d 400 (2nd Dep't 1979) (citing Wood v. Mitchell, 117 N.Y. 439, 22 N.E. 1125 (1889)) (holding that an affidavit for judgment by confession must "separately state the amount of the loans, the dates upon which they were made, the amount of principal and the amount of interest" in order that "any interested third party may investigate the matter and ascertain whether the confession of judgment was accurate and bona fide."). See also Vogt, *supra* at 793-94 (holding insufficient [and vacating a judgment entered upon] an affidavit where the only description of the transaction in the affidavit was "money loaned by plaintiff to defendant and not repaid"); Bahre v. Rochester Dental Practices, Inc., 112 Misc. 2d 270, 272, 446 N.Y.S.2d 901 (Sup.Ct. 1982) (citing Siegel, Practice Commentaries, Mckinney's Cons. Laws Of New York, Book 7B, CPLR C3218:9) (holding that the statement must contain "enough detail" to permit others "'to discern a complete picture of the transaction from the affidavit itself...'").

15. The reason for strictly construing the requirement of § 3218(a)(2) that there be a "concise statement" of facts because it exists so that "third persons (notably other creditors) may ascertain whether the confession was accurate, honest and bona fide." Baehre, 112 Misc. 2d at 272 (citing Vogt, *supra;* Wood v. Mitchell, *supra*). See also Mall Commercial Corp. v. Chrisa Rest., Inc., 85 Misc. 2d 613, 614, 381 N.Y.S.2d 391 (1st Dep't 1976) (holding that the statutory mandate of CPLR § 3218(a)(2) "is designed for the protection of third persons who might be

prejudiced in the event that a collusively confessed judgment is entered"); McDaniel, *supra* (holding that the "purpose [of CPLR § 3218] is to protect creditors of a defendant from judgments entered on confession by collusion."); Giryluk v. Giryluk, 30 A.D.2d 22, 25, 289 N.Y.S.2d 458 (1st Dep't 1968) (holding that CPLR § 3218 was specifically drafted to protect third-party creditors, who are entitled to demand strict compliance therewith).

### b. The Judgment Must be Vacated Because the Affidavit was Defective

#### i. The standard and procedure for vacating a judgment entered by confession

16.     Consistent with the requirement that CPLR § 3218 be strictly construed, Confessions of judgment are always closely scrutinized and New York Courts maintain a liberal attitude   towards vacating a judgment by confession. Giryluk,   *supra;* Rae   v.   Kestenberg, 23 A.D.2d 565, 256 N.Y.S.2d 737 (2nd Dep't 1965).

17.     The failure of an affidavit for judgment by confession to strictly comply with the requirements of CPLR § 3218(a) requires vacatur of the judgment entered pursuant thereto, even where the underlying transaction may have been   legitimate or the clerk of the court entered the judgment believing it to be proper. Ripoll v. Rodriguez, 53 A.D.2d 638, 384 N.Y.S.2d 504 (2nd Dep't 1976); Vogt, *supra* at 793 (holding that a confession of judgment be vacated if "the affidavit is formally insufficient, whether or not the transaction was in fact bona fide") (emphasis added).

18.     Here, the Confession Aff. is facially deficient in its description of the time, place, manner, and circumstances of the purported debt and the demand for payment thereof, and NLG is therefore, as a matter of law, entitled to an Order vacating the Judgment.

#### ii. The Confession Aff. is defective and the Judgment must be vacated

19.   The Confession Aff. provides no detail as to the transactions which are the basis for the Judgment nor does it make an accounting of the amounts purportedly due to Plaintiff, and allegedly not paid despite demand, rendering it defective under New York law. Vogt, *supra.*

20.   Specifically, the Confession Aff. recites only the following language with respect to the nature of the moneys confessed to be due:

> This confession of judgment is for a debt justly due to the plaintiff
> and arising from the following facts: Defendant consistently
> abused its legal position by filing frivolous litigation documents,
> affidavits, pleadings, and motions, in and without the state…All
> actions of Defendant constitute abuse of process and fraud upon
> the court and parties involved, who were unduly damaged by such
> fraudulent conduct and abuse of process by Defendant…

(See Exhibit "A" to the Kosachuk Aff.)

21.   Here the Confession Aff. completely lacks any indicia of, *inter alia,* the dates the money came due, the nature and/or purpose of the monies due, the interest rate(s) if any upon the monies due, the date when repayment was demanded. Bahre, *supra* at 274 (holding the affidavit for confession to be insufficient where it "[gave] no indication of when the services were rendered or for what purpose" and provided no information as to the "amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount confessed is principal or interest"). See also Chappel v. Chappel, 12 N.Y. 215, 217 (1855) (holding judgment by confession invalid where information as to amount and dates of debt was provided, but there was no explanation as to how the debt actually arose.)

22. The language in the Confession Aff. amounts to little more than insufficient language which has repeatedly been rejected by the Courts of the State of New York. Bahre, *supra* at 275 (comparing the vagueness and the insufficiency of the term "legal services" to "terms such as 'money loaned' or 'goods sold and delivered' or numerous other expressions that have been held insufficient to support a confessed judgment"). See also Bradley v. Glass, 20 A.D. 200, 46 N.Y.S. 790 (4th Dep't 1897) (cited in Bahre) (invalidating a judgment by confession where the affidavit "furnishe[d] little or no information in respect to the precise nature of the indebtedness to secure which the judgment was confessed" and merely recited that the debt was for "goods sold and delivered" and that "the payment thereof became due as aforesaid"); Vogt, *supra* (noting the fatal absence of the affidavit for judgment by confession to contain any information as to the "amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount **confessed** is principal or interest"); Stebbins v. East Society of Methodist Episcopal Church of Rochester, 12 How. Prac. 410, 412 (cited in Bahre, *supra*) (vacating, under an early [but nearly identical] predecessor to CPLR § 3218, a series of "37 judgments for money 'lent and advanced' by plaintiff to enable defendant 'to pay off and discharge [its] debts'... at the instance of a third-party creditor, on the ground that the affidavits on which they were based failed to adequately reveal the transactions that gave rise to the liabilities confessed" because the "statute looks not to evidence of the demand, *but to the facts in which it originated;* in other words, to the consideration which sustains the promise" (emphasis in original) (internal quotes omitted). *Cf.* Eurofactors v. Jacobowitz 21 A.D.3d 443, 800 N.Y.S.2d 569 (2d Dep't 2005) (finding affidavit sufficiently detailed where it set forth the "date and amount of the loan, and the date when repayment was due"); Stebbins, *supra* (holding valid one of 38 contested judgments by confession because the

- 8 -

particular affidavit contained sufficient information); Keller v. Greenstone, 253 A.D. 573, 2 N.Y.S. 2d 977 (1st Dep't 1938) (cited in Bahre, *supra*) (sustaining a judgment by confession based on language of "[f]or money borrowed," but only because the debt was stated to be due pursuant to a promissory note which delivered on a specific date and the note was attached to the affidavit for judgment by confession).

23. As in the affidavits for judgment by confession at issue in Vogt, McDaniel, and Boudreau, the Confession Aff. here is deficient for all of the foregoing stated reasons. Further, as was held to be insufficient in Baehre and Chappel, the Confession Aff. provides no indication as to how the debt of $5,000,225 arose; it is bereft of any factual detail whatsoever. Simply stated, the utter absence of facts in the Confession Aff. renders it violative of CPLR § 3218, requiring immediate vacatur of the Judgment. See Franco v. Zeltser, 111 A.D.2d 367, 368, 489 N.Y.S.2d 583 (2nd Dep't 1985).

### c. The Confession Aff. and Judgment are Products of Collusion and Fraud

24. In addition to the facial insufficiency of the Confession Aff. pursuant to CPLR § 3218(a), the Judgment also appears to have been obtained through fraud or collusion between the Plaintiff, Raymond Houle , and Plaintiff's Counsel.

25. This is wholly substantiated by Raymond Houle, where Mr. Houle has testified that NLG in fact never owed Plaintiff money. (See Kosachuk Aff., at ¶¶ 7-8; See also Kosachuk Aff. Ex. " B" pg. 45 ¶ 18-20).

26. Fraudulent intent, however, is rarely established by direct proof, however, and instead is inferred through a showing of "badges of fraud," which give rise to an inference of intent due to the fact that their presence is so commonly associated with fraud. Wall St. Assoc. v. Brodsky, 257 A.D.2d 526, 528-529, 684 N.Y.S.2d 244, 248 (1st Dep't 1999). See also Dempster

- 9 -

v. Overview Equities, Inc., 4 A.D.3d 495, 773 N.Y.S.2d 71 (2nd Dep't 2004) noting that "direct evidence of fraudulent intent is often elusive [necessitating the] consider[ation of] badges of fraud…").

      27.    In Matter of Boudreau, the Surrogate's Court was presented with a situation in which an affidavit for judgment by confession was executed in favor of a party's mother for a sum which had allegedly been borrowed from her at a time when his "marriage was in trouble and his wife was consulting with counsel regarding divorce." Id, 13 Misc.3d at 1227(A). In addition to finding that the judgment was procedurally defective, see *supra*, the Court found that the circumstances were "replete with badges of fraud" in that, *inter alia,* the judgment was entered in favor of a family member while an action against the defendant was pending. Id. Here, as in Boudreau, the badges of fraud are clearly present and establish that the conduct of Plaintiff was undertaken through collusion with Plaintiff's counsel, and Raymond Houle in order to perpetuate a fraud upon this court and NLG. (See Kosachuk Aff., at ¶¶ 4-8).

      28.    The overwhelming presence of the badges of fraud in connection with execution of the Confession Aff., and the entry of the Judgment, are sufficient to give rise to an inference of actual fraudulent intent on the part of Plaintiff. As such, they constitute an additional basis for vacatur of the Judgment and constitute a basis to defeat any equitable arguments offered by Plaintiffs in opposition to this application, which is in accordance with the equitable nature of the relief sought herein, the liberal attitude adopted by the Courts towards vacating judgments by confession, and the "venerable maxim that '[h]e who seeks equity must do equity.'" Lincoln Life & Annuity Co. v. Caswell, 31 A.D.3d 1, 813 N.Y.S.2d 385 (1st Dep't 2006) (quoting Langel v. Betz, 250 N.Y. 159, 162, 164 N.E. 890 (1928)).

- 10 -

29.     Under these circumstances, NLG's order to show cause to vacate the judgment by confession with prejudice *nunc pro tunc* must be granted in its entirety.

### d. This Court should also grant NLG an order sanctioning the Plaintiff, its counsel, Darius Marzec, Esq., and Raymond Houle

30.     In the case at hand, it is apparent that Plaintiff's actions were primarily undertaken to harass, intimidate or maliciously injure NLG and to give Mr. Marzec's girlfriend, Elizabeth Hazan (member of Plaintiff corporation), a defense in her indefensible litigation with NLG. (Ms. Hazan is the judgment debtor of NLG and owes almost $4 million.  The NLG Judgment against Ms. Hazan is recorded under index number 101288/2013 and captioned NLG, LLC v. Elizabeth Hazan).  Such actions warrant sanctions under N.Y.C.R.R. 130-1.1.

31.     Pursuant to N.Y.C.R.R. 130-1.I, a "court, in its discretion, may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct," which is further defined as conduct which is "primarily undertaken to prolong the resolution of the litigation, or to harass or maliciously injure another". 22 NYCRR 130-1.1. See also Pickens v. Castro, 867 N.Y.S.2d 47, 55 A.D.3d 443 (1st Dep't 2008) (upholding an award of sanctions to plaintiff where the court determined that the actions of defendant were undertaken to delay or prolong litigation, or to harass or maliciously injure another).

32.     New York courts have held that pursuant to Rule 130-1.1, sanctions may be imposed upon any party to the litigation, not merely an attorney. See Park Health Center v. Country-Wide  Insurance Company, 774 N.Y.S.2d 260, 2  Misc.3d 737 (N.Y. Civ. Ct. 2003) (awarding sanctions against both attorney and client for intentionally covering up information in a no-fault benefits action).

33.     Furthermore, sanctions may be imposed for any action intended to harass or injure another, not limited to frivolous litigation tactics. See Jalor Color Graphics, Inc., v. Universal

- 11 -

Advertising Systems, Inc., 703 N .Y.S.2d 370, 183 Misc.2d 294 (N.Y. Civ. Ct. 1999) (ordering sanctions against Defendant's counsel based on their letter threatening criminal prosecution, finding that their actions were undertaken primarily to harass or maliciously injure Plaintiff and Plaintiff's counsel).

34.     In the present case, the court should impose sanctions upon Plaintiff, its Counsel, Mr. Marzec, and Raymond Houle, as their actions are clearly frivolous as defined by N.Y.C.R.R. 130-1.1.

35.     Based on the foregoing, the Judgment by Confession should be vacated with prejudice *nunc pro tunc*.

36.     A previous application for the relief requested herein has been made but was inadvertently abandoned by previous counsel due to law office failure.

**WHEREFORE**, for all the foregoing reasons, this Court should enter an order:

(a) pursuant to CPLR § 3218, granting, NLG's motion in its entirety, vacating Plaintiff's judgment by confession *nunc pro tunc*;

(b) pursuant to N.Y.C.R.R. 130-1.l, granting an award of sanctions against Plaintiff, its Counsel Darius Marzec, Esq,, and Raymond Houle;

(c) granting NLG attorneys' fees, costs, and disbursements;

(d) enjoining Plaintiff and its Counsel, Darius Marzec, Esq, from filing any further purported judgment by confessions against NLG in the future; and

(e) granting NLG such other relief as that this Court deems just and proper.

**[INTENTIONALLY LEFT BLANK]**

- 12 -

Dated: New York, New York
June 25, 2014

Yours, etc,

THE LAW OFFICES OF ARI MOR, ESQ.
Attorney for NLG, LLC
347 E. 65th Street, Suite 2RW
New York, New York 10065
(347) 850-0578
ari.mor.esq@gmail.com

By: _____
ARI MOR
(Rule 130-1.1-a)

- 13 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

9197-5904 QUEBEC, INC.,

                         Plaintiff,

- against -

NLG, LLC, a Delaware Limited Liability
Company

                         Defendant

Index No.: **101875/2012**

**AFFIDAVIT IN
SUPPORT OF
DEFENDANT NLG'S
OSC TO VACATE
JUDGMENT BY
CONFESSION WITH
PREJUDICE**

STATE OF NEW YORK      )
                            ) ss:
COUNTY OF NEW YORK   )

           CHRIS KOSACHUK, being duly sworn, deposes and says:

          1.     I am the manager of NLG, LLC, a Delaware limited liability company

with its principal place of business located at 854 Pheasant Run Road, West

Chester, Pennsylvania 19382 (hereinafter "NLG"). As such, I am fully familiar

with the facts and circumstances stated herein. I am also authorized to make this

affidavit on behalf of NLG.

          2.     I submit this affidavit in support of Defendant NLG's Order to Show

Cause to Vacate Judgment by Confession With Prejudice.

3. NLG seeks to vacate with prejudice the Judgment by Confession (the "Judgment") attached hereto as Exhibit A.

4. The Judgment is a complete and total fraud on the Court orchestrated by Attorney Darius Marzec in another futile attempt to obtain a judgment against NLG which he has been unable to do in any jurisdiction after countless tries including most recently an action before your Honor, Index Number 151653/2013 captioned 9197-5904 Quebec, Inc. v. NLG, LLC et al. which was dismissed by this Court on February 26, 2014 (Index Number 151653/2013 NYSCEF Doc. Nos. 39 − 41).

5. Mr. Raymond Houle (herein "Mr. Houle") was never a duly elected manager or representative of NLG, did not have authorization to make or execute the affidavit on behalf of NLG attached to the Judgment and used to record the Judgment by Confession, and did not have authorization to confess to any judgment.

6. Mr. Houle was also purportedly operating as the manager of Plaintiff 9197-5904 Quebec Inc. (herein "9197") when he confessed judgment on behalf of NLG. Accordingly, Mr. Houle was operating as both the plaintiff and the defendant at the same time. His attorney, Mr. Marzec knew this, was assisting him anyway in this bold, outrageous and scandalous fraud.

- 2 -

7.  Moreover, in Mr. Houle's own deposition testimony from Philadelphia and attached hereto as Exhibit B, Mr. Houle unequivocally stated that NLG owed no money to 9197.

8.  Specifically in his deposition on page 45 at lines 18 – 20, Mr. Houle was asked "Before you filed this confession of judgment against NLG, did NLG owe Quebec Corporation any money?" Answer by Mr. Houle. "No". Accordingly, Mr. Houle admits the NLG owed no money to Quebec before this sham Judgment by confession. This Court cannot and should not allow such a fraud to proceed.

9.  I formed NLG, LLC on or about November 19, 2002. Attached hereto as Exhibit C is a true and correct copy of the Certificate of Formation of NLG, LLC from the Delaware Secretary of State.

10.  I have also continuously served as NLG's only manager from inception to date.

11.  Under these circumstances, defendant's order to show cause to vacate the judgment by confession with prejudice must be granted in its entirety.

12.  A previous application for the relief requested herein has been made but was deemed abandoned because of a law office failure.

- 3 -

**WHEREFORE**, for all the foregoing reasons, the order to show cause brought by Defendant, NLG, LLC, should be granted in its entirety.

Dated:   New York, New York
          June 10, 2014

FURTHER AFFIANT SAYETH NAUGHT.

Chris Kosachuk

STATE OF NEW YORK       )
                        : ss
COUNTY OF NEW YOR       )

      BEFORE ME, the undersigned authority, personally appeared Chris Kosachuk, who, being first duly sworn, acknowledges that he has read the foregoing and that the same is true and correct to the best of his knowledge, information and belief.

SWORN TO AND SUBSCRIBED before me this __11/2__ day of June, 2014.

NOTARY PUBLIC, STATE OF NEW YORK

NAME OF NOTARY PUBLIC
(PRINT, STAMP OR TYPE AS COMMISSIONED)

My Commission Expires:
          11/04/17

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

**JUDGMENT BY**
**CONFESSION**

against

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the

attorney of record for the Plaintiff herein and states that the disbursements specified are correct

and true and have been or will necessarily be made or incurred herein and are reasonable in

amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

**MARZEC LAW FIRM, PC**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

FILED

FEB 22 2012

COUNTY CLERKS OFFICE

**JUDGMENT** entered the ___22ⁿᵈ___ day of _FebRuARy_, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein, sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is

**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC,* Defendant, with the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with $225.00 costs and disbursements, as taxed by the clerk amounting in all to the sum of $5,000,225.00 and that the plaintiff have execution therefor.

Norman Goodman
CLERK

FILED
FEB 22 2012
COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187/12

9197-5904 Quebec, Inc.,

Plaintiff,

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

against

NLG, LLC, ~ Delaware Limited
Liability Company,

Defendant.

**FILED**

**STATE OF NEW YORK**

FEB 22 2012

**COUNTY OF NEW YORK**        ss.:

COUNTY CLERK'S OFFICE
NEW YORK

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

Sworn to before me this
16 day of Feb, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MENAGOR, NLG LLC

NOTARY PUBLIC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20_12

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. $10\ 875/12$

9197-5904 Quebec, Inc.,

                                    **Plaintiff,**

        **against**

NLG, LLC,

                            **Defendant.**

**AFFIDAVIT OF**
**RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**        **ss.:**

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

*Raymond Houle*

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                    Index No.

9197-5904 Quebec, Inc.,

                              **Plaintiff,**

        **against**

NLG, LLC., A DELAWARE LIMITED LIABILITY
              COMPANY,

                              **Defendant.**

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

**FILED AND DOCKETED**
FEB 22 2012
AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

# EXHIBIT B

1 (Pages 1 to 4)

Page 1

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

NLG, LLC,                          )
                                   )
          Plaintiff,               )
                                   )
                                   )  AUGUST TERM, 2012
vs.                                )  NO. 02514
                                   )
DARIUS A. MARZEC, MARZEC LAW       )
FIRM, P.C., GUY A. DONATELLI,      )
LAMB McERLANE, P.C., and           )
9197-5904 Quebec, Inc.,            )
                                   )
          Defendants.              )
_____)

- - -

FRIDAY, APRIL 4, 2014

- - -

Telephonic deposition of RAYMOND HOULE, taken
at the LAW OFFICES OF EDWIN P. SMITH, 1528 Walnut Street,
Suite 702, Philadelphia, Pennsylvania, beginning at
approximately 11:15 a.m., on the above date, before Carol L.
Shearer, Registered Professional Reporter and Notary Public.

CENTER CITY REPORTING, INC.
1315 Walnut Street - Suite 601
Philadelphia, Pennsylvania 19107
215-732-4882

Page 2

APPEARANCES:

EDWIN P. SMITH & ASSOCIATES, P.C.
BY: EDWIN P. SMITH, ESQUIRE
    1528 Walnut Street
    Suite 702
    Philadelphia, Pennsylvania 19102
    (215) 864-7300
    edwinsmith.attorney@yahoo.com

    -- Representing the Plaintiff

KANE, PUGH, KNOELL, TROY & KRAMER, LLP
BY: PETER ROGERS, ESQUIRE
    (Appearing Via Telephone)
    510 Swede Street
    Norristown, Pennsylvania 19401
    (610) 275-2000
    progers@kanepugh.com

    -- Representing the Defendants
       Darius A. Marzec and Marzec Law Firm, P.C.

LAMB McERLANE, P.C.
BY: GUY A. DONATELLI, ESQUIRE
    (Appearing Via Telephone)
    24 East Market Street
    West Chester, Pennsylvania 19382
    (610) 430-8000
    gdonatelli@lambmcerlane.com

    -- Representing the Defendants
       Guy A. Donatelli and Lamb McErlane, P.C.

Page 3

APPEARANCES (cont'd.):

MARZEC LAW FIRM
BY: DARIUS A. MARZEC, ESQUIRE
    (Appearing Via Telephone)
    225 Broadway
    Suite 3000
    New York, New York 10007
    (212) 267-0200
    dmarzec@marzeclaw.com

    -- Representing the Defendant 9197-5904 Quebec,
       Inc.

ALSO PRESENT: JUDITH P. MEYER, DISCOVERY MASTER

Page 4

INDEX

                                          Page

Examination by Mr. Smith                 5, 66
Examination by Mr. Marzec                   61
Examination by Mr. Rogers                   74
Court Reporter's Certificate                76

EXHIBIT B

Page 45

1   Affidavit of Confession of Judgment signed by you -- that is
2   your signature at the bottom?
3       A.  Which page?
4       Q.  Third page.
5       A.  I see it, yes.
6       Q.  And it says manager of NLG.  Who appointed you as
7   manager of NLG?
8       A.  By corporate resolution.
9           COURT REPORTER:  I'm sorry?
10  BY MR. SMITH:
11      Q.  By corporate resolution?  What corporation?
12      A.  That I did when Quebec took over NLG.
13      Q.  What corporation issued the resolution?
14      A.  You got a valid -- a valid charging order to do so.
15  It's the Quebec company who make that resolution.
16      Q.  Before you filed this, did NLG owe Quebec anything?
17      A.  I don't understand very well.
18      Q.  Before you filed this Confession of Judgment against
19  NLG, did NLG owe Quebec Corporation any money?
20      A.  No.
21      Q.  Who selected the $5 million figure?
22      A.  I did.
23      Q.  Did anyone assist you in selecting that amount?
24      A.  No.

Page 46

1       Q.  Now, if you'll look at the two pages past there,
2   please.
3       A.  Which page?
4       Q.  Two more pages past.
5       A.  Okay.
6       Q.  At the top it has what appears to be your signature.
7   I ask you if that is your signature.
8       A.  I don't find the page.  I don't know.  Past or
9   before?
10      Q.  It's the fifth page of that exhibit.
11      A.  Yes.
12      Q.  Is that your signature?
13      A.  Yes.
14      Q.  And the notary is Darius A. Marzec; is that correct?
15      A.  Yes.
16      Q.  Was he with you when you signed this?
17      A.  Yes.
18      Q.  And were you in New York when you signed this?
19      A.  Of course.
20      Q.  Where in New York were you?
21      A.  In his office.
22      Q.  And where was his office?
23          MR. MARZEC:  I have to object --
24          THE WITNESS:  In Brooklyn.

Page 47

1           MR. MARZEC:  -- to this line of questioning.
2   Mr. Houle, hold on.  This line of questioning is not
3   reasonably calculated to lead to admissible evidence.
4   Let's not get away from the fact that this is the
5   Dragonetti action that alleges that a judgment was
6   entered against NLG.  This is too far afield, in my
7   opinion, for these questions to continue.
8           MS. MEYER:  The level of detail, where was your
9   office, I don't know where that's going, but I'll
10  allow that question.  Can we just stipulate where
11  your office was?  Does it matter?
12          MR. SMITH:  I just wanted to know if he actually
13  knows where it was and if he was really there when he
14  signed that affidavit.
15          MS. MEYER:  All right.  So where was
16  Mr. Marzec's office?
17          THE WITNESS:  It's in Brooklyn.
18  BY MR. SMITH:
19      Q.  How many times were you there?
20      A.  I don't understand the question.  How many?
21      Q.  How many times were you in Mr. Marzec's office in
22  Brooklyn?
23      A.  That time, or how many times?
24      Q.  I'm sorry.  I didn't understand.  Say that again.

Page 48

1       A.  Many times.
2       Q.  More than five?
3       A.  I don't understand.
4       Q.  All right.  Strike the question.
5           MR. MARZEC:  I have to object.  Where is this
6   going?
7           MR. SMITH:  I said strike the question.
8           MS. MEYER:  Okay.  Counsel, move on.
9   BY MR. SMITH:
10      Q.  Would you please look at Exhibit, H-10, a document
11  from the Circuit Court of the 11th Judicial Circuit in and
12  for the Miami-Dade County in Florida.
13      A.  H --
14      Q.  H-10.
15      A.  What does it indicate on the document, the title?
16      Q.  It says Corrected Notice of Voluntary Dismissal.
17      A.  Okay.  I see it.
18      Q.  Have you ever seen that document before?
19      A.  No, I don't recall seeing this document.
20      Q.  Did you ever instruct an attorney to have this
21  document filed in Florida?
22      A.  I don't recall.
23      Q.  Did you ever speak with a Jonathan P. Cohen, an
24  attorney?

EXHIBIT B

EXHIBIT C



PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "NLG, LLC", FILED IN THIS OFFICE ON THE NINETEENTH DAY OF NOVEMBER, A.D. 2002, AT 9 O'CLOCK A.M.

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

3592957    8100

020713058

AUTHENTICATION: 2099035

DATE: 11-19-02

NOV. 19. 2002  4:05PM    PARCELS INC.

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 11/19/2002
020713058 — 3592957

STATE OF DELAWARE
LIMITED LIABILITY COMPANY
CERTIFICATE OF FORMATION
OF
NLG, LLC

### First

The name of the limited liability company is NLG, LLC.

### Second

The address of its Registered Offices in the State of Delaware is 32
Loockerman Square, Suite 109, City of Dover, County of Kent 19904.
The registered agent at such address is First State Corporate Services,
Inc.

### Third

The limited liability company is to have perpetual existence.

In Witness Whereof, the undersigned have executed this Certificate of
Formation this 18th day of November 2002, AD.

By: _____

Chris Kosachuk
Authorized Person

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 26, 2016

ELIZABETH HAZAN,                    CASE NO.:  3D**16-0315**
Appellant(s)/Petitioner(s),
vs.                                 L.T. NO.:    11-42770
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

Upon consideration of the motion for attorney's fees pursuant to

section 57.105, Florida Statutes and Rule 9.410 Fla. R. App. P. filed by appellee, it

is ordered that said motion is granted and remanded to the trial court to fix amount.

SUAREZ, C.J., and SHEPHERD and SALTER, JJ., concur.



cc:     Robert P. Lithman          Juan Ramirez, Jr.          Hon. Monica Gordo
        Miami-Dade Clerk

la

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

MAY 23, 2016

ELIZABETH HAZAN,                              CASE NO.:  3D**16-0315**
Appellant(s)/Petitioner(s),
vs.                                           L.T. NO.:    11-42770
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

       Upon consideration of appellant's motion to vacate our order of April

26, 2016; appellant's response of May 11, 2016, to the appellee's motion for fees;

and appellee's reply to that response, we confirm that appellee's motion for

appellate attorney's fees is granted and remanded to the trial court to fix amount.

Appellant's motion to vacate is denied as moot.

       SUAREZ, C.J., and SHEPHERD and SALTER, JJ., concur.



cc:     Robert P. Lithman     Juan Ramirez, Jr.     Hon. Monica Gordo
         Miami-Dade Clerk

la

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                          Chapter 11
_____/

### NLG, LLG'S MOTION FOR REHEARING OF AND RELIEF FROM ORDER GRANTING IN PART DEBTOR'S AMENDED EXPEDITED MOTION FOR CONTEMPT, SANCTIONS AND PUNITIVE DAMAGES [ECF NO. 780]

NLG, LLC ("NLG"), through undersigned counsel, and Attorney Juan Ramirez, Jr. ("Movants"), pursuant to Rule 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, and Rules 59 and 60 of the Federal Rules of Civil Procedure hereby move for rehearing, reconsideration and relief from this Court's Order Granting in Part Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages and Punitive Damages ("Contempt Order") [D.E. 780]. In support, NLG states:

First, the offending cross-claim has been withdrawn [*See* ECF No. 783]. Although the Movants do not agree that the Debtor proved a violation of the injunctions in the Confirmation Order by filing the cross-claim in the foreclosure action being prosecuted by JPM Chase under Case No. 2013-25902 by clear and convincing evidence, this motion does not seek relief from that finding. See *Burton v. Mouser (In re Burton)*, Nos. 08-10013(1)(7), 08-1019, 2010 Bankr. LEXIS 675, at *9 (Bankr. W.D. Ky. Mar. 16, 2010) ("The debtor must prove that the violation occurred by clear and convincing evidence."). That is because a careful reading of the Contempt Order reveals that this Court did not find that NLG and Attorney Ramirez were in contempt of this Court's Order provided that the cross-claim was immediately withdrawn, which it was. Thus, for the purpose of this Motion, Movants concede the finding of **entitlement** to fees.

Movants, however, take issue with the **amount** of the fees, that is, the imposition of monetary sanctions in the amount of $9,500. At the hearing on the motion for contempt held on October 24, 2018, this Court directed the parties to prepare proposed orders which would "only deal with whether or not there has been a violation which would justify a finding of contempt. If there's been no such violation, then that would be the end of the matter. If there has been such a violation, then **the matter will be set for further hearing** as to what sanctions might be." See Exhibit "1," Transc. p. 53 (emphasis added). Movants do not know where the $9,500 figure came from as they were never provided with a copy of the Debtor's proposed order. Movants also do not know how the Court arrived at that number, and whether it was based on an hourly rate and number of hours.

The various motions for contempt filed by the Debtor complained about the following:

(1)     That the *lis pendens* filed by NLG violated the automatic stay statute, the Confirmation Order and the Discharge Order. This Court disagreed and denied relief based on this argument.

(2)     That NLG, Chris Kosachuk and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by prosecuting a motion to vacate in New York. This Court disagreed and denied relief based on this argument.

(3)     That NLG, Chris Kosachuk and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by prosecuting a Declaratory Judgment Action in front of Judge Martinez in the District Court for Southern District of Florida. This Court disagreed and denied relief based on this argument.

(4)     That NLG, Kosachuk, and Attorneys Ramirez and Astrid Gabbe violated the automatic stay statute, the Confirmation Order and the Discharge Order by seeking discovery in

the appeal pending in front of Judge Moreno of this Court judgment in the adversary proceeding. This Court disagreed and denied relief based on this argument.

(5)     NLG and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by filing a cross-claim in the Chase foreclosure case. This Court disagreed that NLG and Attorney Ramirez violated the automatic stay because the stay ceased to exist upon confirmation.

(6)     The Order also denied any relief against Selective Advisors Group because it was not entitled to the injunction obtained by the Debtor.

(7)     Out of all those allegations, this Court only found a violation with the "filing of the cross-claim."

Thus, the Debtor prevailed only on one of the multiple claimed violations.

After this Court granted relief from the automatic stay in November 2016, to both JP Morgan Chase Bank and NLG "to litigate the foreclosure claim of Chase in the Foreclosure Action to the point of judgment." [ECF No. 315], NLG tried to simply tread water. It took no action until July 5, 2017, when NLG filed a Motion to Dismiss. But on February 22, 2018, the motion was denied and NLG was ordered to file an answer in 30 days. NLG then obtained numerous extensions. On August 9, 2018, NLG filed a Notice of *Lis Pendens* intended to provide notice to any potential buyers that it was still litigating in bankruptcy court and had an appeal pending.

When Hazan discovered this notice, one of Debtor's many attorneys, Joel Aresty, sent an email pointing out that the *lis pendens* referenced a cross-claim but no cross-claim had ever been filed. The email is attached as Exhibit "2." That resulted, on October 1, 2018, in the filing of its Answer, Affirmative Defenses, Counterclaim and the offending Cross-claim. The cross-claim

was only intended as a placeholder. Obviously, unless NLG obtains relief from this Court's November 1, 2017 final judgment invalidating its mortgage and final judgment of foreclosure, NLG had no claim against the Debtor. The cross-claim would neither add nor detract from NLG's rights against the property as it already had a final judgment of foreclosure. The cross-claim was filed only to prevent Hazan from arguing at a later date that NLG waived its claim against her. Furthermore, the cross-claim was never properly served on her as she had a pending motion to quash service of process against Chase. At that point, proper service could only be effected by service of process, not mail service.

The Movants submit that the Court should consider the underlying facts in deciding whether sanctions are even appropriate. NLG and its lawyer reasonably believed that the cross-claim was simply a placeholder to preserve its rights should it prevail on appeal of this Court's final judgment. Because Chase has alleged in that action that it occupies the position of first mortgage, a judgment has the potential of wiping NLG's mortgage. Although this Court invalidated NLG's mortgage on November 1, 2017, NLG has been trying to appeal that decision ever since. It has been met with constant delays, initially because the notice of appeal was not filed by a wrongfully appointed receiver in state court. That receiver had agreed to allow undersigned counsel to protect NLG's interests by prosecuting the bankruptcy and related proceedings. This caused NLG to have to seek relief from the state court which improperly appointed the receiver. The state court vacated the receivership appointment *nunc pro tunc*.

While the Debtor had argued that the November 1, 2017 Final Judgment was final when she thought she could obtain a dismissal with prejudice of the appeal, thereafter when the appeal was reinstated she argued that the final judgment was not final. This resulted in a second dismissal of the appeal because there remained six noncore personal injury tort claims pending.

That same day, NLG filed its Expedited Motion to Certify the Final Judgment [BK AP ECF No. 310].

On September 11, 2018, this Court set the motion for hearing on September 20, 2018. On September 18, 2018, Appellees filed a Response in Opposition to the Motion to Certify [BK AP Doc. 322]. They argued that the motion was untimely and that it should be denied because it would promote piecemeal appeals, as the non-core tort counts were still remaining. On October 11, 2018, this Court entered the Order Granting NLG's Expedited Motion to Certify Final Judgment as final [BK AP Doc. 330]. The Order stated that after the entry of the November 1, 2017 judgment, Appellees had "made no effort to prosecute the six noncore counts, which involve totally unrelated personal injury tort claims between Hazan and Mr. Kosachuk and NLG, dating back to over a decade ago." [*Id.* p. 3]. It was only when this Court announced at the hearing on October 24, 2018, that it had "a problem with the discharge" as long as those counts remained pending that the Debtor announced she was dismissing those claims. Exh. "1," Transcr. p. 7.

Those six frivolous counts dating back over a decade caused NLG a tremendous amount in delay and attorney's fees, far in excess of the $9,500 allegedly incurred by the Debtor in connection with her repetitive motions for contempt. NLG has served and filed multiple motions for sanctions pursuant to Rule 9011, on June 6, 2017 [BK AP Doc. 173], and on September 14, 2017 [BK AP Doc. 226]. On October 31, 2018, NLG filed a motion requesting a hearing and adjudication of NLG's pending Rule 9011 Sanctions Motions [BK AP Doc. 359]. Thus far, this Court has neither set the matter for hearing nor ruled upon the motions.

**WHEREFORE**, for the foregoing reasons, the Court grant rehearing, rescind and vacate the order granting in part the motion for contempt until it holds a hearing pursuant to its oral

pronouncement that if there was a violation of the Court's Orders, the matter would be set for further hearing as to what the sanctions might be.

Dated January 11, 2019.

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 11th day of January, 2019.  I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan

dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

# EXHIBIT 1

1           UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF FLORIDA
2
3                          Case No.:  16-10389-AJC
4    In re:
     LIZA HAZAN, a/k/a ELIZABETH HAZAN,
5         Debtor.
     _____/
6    LIZA HAZAN, a/k/a ELIZABETH HAZAN,
     and SELECTIVE ADVISORS GROUP, LLC,
7         Plaintiffs,
     vs.                       Adv. No.:  16-01439-AJC
8    NLG, LLC, a Delaware limited
     liability company,
9         Defendant.
     _____/
10   NLG, LLC, a Delaware limited
     liability company,
11        Counterclaim Plaintiff,
     vs.
12   SELECTIVE ADVISORS GROUP, LLC, and
     LIZA HAZAN, a/k/a ELIZABETH HAZAN,
13        Counterclaim Defendants.
     _____/
14
15            ECF # 335, 713, 742, 748, 752
16                  October 24, 2018
17            The above-entitled cause came on for
18   hearing before the HONORABLE A. JAY CRISTOL, one of
19   the Judges of the UNITED STATES BANKRUPTCY COURT, in
20   and for the SOUTHERN DISTRICT OF FLORIDA, at 301 N.
21   Miami Avenue, Miami, Miami-Dade County, Florida, on
22   Wednesday, October 24, 2018, commencing at or about
23   2:10 p.m., and the following proceedings were had:
24
             Transcribed from a digital recording by:
25             Helayne Wills, Court Reporter

Page 2

```
 1   APPEARANCES:
 2        MARSHALL SOCARRAS GRANT, P.L., by
          JOE M. GRANT, ESQ.,
 3        on behalf of Selective Advisors Group
 4
          ADR MIAMI, LLC, by
 5        JUAN RAMIREZ, JR., ESQ.,
          on behalf of NLG, LLC
 6
 7        JOEL M. ARESTY, P.A., by
          JOEL ARESTY, ESQ.,
 8        and
          AARONSON SCHANTZ BEILEY, P.A., by
 9        GEOFFREY S. AARONSON, ESQ.,
          on behalf of Liza Hazan
10
11        BUSHELL APPELLATE LAW, by
          DANIEL A. BUSHELL, ESQ.,
12        on behalf of Liza Hazan and Selective Advisors
          Group
13
14        OFFICE OF THE UNITED STATES TRUSTEE, by
          JOHANNA P. ARMENGOL, ESQ.,
15        on behalf of the U.S. Trustee
16
          ALSO PRESENT:
17        ECRO - Electronic Court Reporting Operator
18
19
20
21
22
23
24
25
```

Page 3

```
 1              THE COURT:  Next is Selective Advisors
 2    Group.  Appearances.
 3              MR. RAMIREZ:  Good afternoon, Judge.  Juan
 4    Ramirez on behalf of NLG, LLC.
 5              MR. AARONSON:  Good afternoon, Judge.
 6              THE COURT:  Pardon me.  Mr. Ramirez, for
 7    our electronic recorder we need to have you spell
 8    your last name.
 9              MR. RAMIREZ:  I'm sorry.  R-A-M-I-R-E-Z.
10              THE COURT:  Very well.  Next.
11              MR. AARONSON:  Good afternoon, Judge.
12    Geoffrey Aaronson, A-A-R-O-N-S-O-N, appearing as
13    requested by Ms. Hazan for the hearings today, Your
14    Honor, on behalf of Ms. Hazan.
15              THE COURT:  Well, isn't she represented by
16    another attorney?
17              MR. AARONSON:  She has other counsel here,
18    Judge, but she asked me if I would take a stab at
19    arguing these matters before Your Honor.  I
20    appreciate the Court's indulgence.
21              THE COURT:  Very well.  All right.
22              Who's next?
23              MR. ARESTY:  Judge, in alphabetical order,
24    Joel Aresty, A-R-E-S-T-Y.  I represent Liza Hazan in
25    these cases.
```

Page 4

```
 1              MR. BUSHELL:  Good afternoon, Judge.
 2    Daniel Bushell, B-U-S-H-E-L-L, on behalf of
 3    Ms. Hazan and Selective Advisors.
 4              MR. GRANT:  Your Honor, Joe Grant,
 5    G-R-A-N-T, on behalf of Selective Advisors.
 6              MR. AARONSON:  If I may, Your Honor, there
 7    are three matters --
 8              THE COURT:  Is that everybody in here?
 9    Okay.  It looks like one side has the other side
10    outnumbered.
11              Is that the title in the matter or do we
12    have to hear more?
13              MR. AARONSON:  I don't think there's
14    anyone else involved in this.
15              THE COURT:  All right.
16              MR. AARONSON:  So, Judge, there are three
17    matters on before the Court, and my suggestion is,
18    we do them in some sort of logical order.
19              The first I would suggest we hear is the
20    discharge matter.  Your Honor has already entered an
21    order in that regard, and I'd like to finalize that.
22    The next is the motion for stay, and the last is the
23    motion for contempt and sanctions.  I'm suggesting
24    that order, because probably in order of complicity
25    we could get the earlier ones done quickly.
```

1          THE COURT:  Anyone have any objection to

2    that procedure?  Mr. Ramirez.

3          MR. RAMIREZ:  Judge, I think your calendar

4    reflected that the motion for stay would be first,

5    and then the motion for --

6          THE COURT:  Okay.  The motion for stay

7    we'll take it first.  Denied.  This is an order that

8    was entered in 2017.  Stay was denied then, and it's

9    a little late to come in a year later and --

10         MR. RAMIREZ:  Judge, you just certified

11   the appellate rights of NLG on the 11th of October.

12   So it is not untimely.  We have made our argument.

13         THE COURT:  You need to speak into the

14   microphone, Mr. Ramirez.

15         MR. RAMIREZ:  Judge, we had made a motion

16   for stay, but then the matter was dismissed.  Now we

17   have a new appeal now that the Court certified the

18   order as appealable on October 11th of this month.

19         We would have had a decision by now on the

20   appeal if my opponents hadn't been changing their

21   position, first saying the order was final and they

22   were arguing that the case or the appeal should be

23   dismissed, because the receiver had not filed the

24   appeal.  When we got that problem taken care of by

25   vacating the receivership appointment nunc pro tunc

1    and the appeal was reinstated, then the Judge

2    dismissed it, because it hadn't been certified.

3            They have delayed our appeal while trying

4    to proceed as expeditiously as possible with the

5    confirmation and discharge in order to try to

6    prevent this from having our appellate rights

7    decided.  I think it's important that, Judge, we

8    have a right to appeal.

9            THE COURT:  We granted the motion making

10   it a final order that's appealable.  I still believe

11   it's a little too late.  However, you're free to

12   apply to the Appellate Court for a stay.  If they

13   think that it's appropriate you'll get it there, but

14   I think it's too late here.

15           MR. RAMIREZ:  Thank you, Judge.

16           MR. AARONSON:  Judge, he already did.  He

17   already applied to Judge Moreno, and today Judge

18   Moreno denied his request for stay.

19           THE COURT:  Well then, I guess there's no

20   stay.

21           MR. RAMIREZ:  Just to be clear, Judge, he

22   denied the first request, but we had amended that

23   motion, and we should have withdrawn the first

24   motion, but that second motion has not been ruled

25   upon.

1          THE COURT:  I see.  Well, good luck.

2          And so you're going to draw the order on

3  the stay pending appeal, Mr. Aaronson?

4          MR. AARONSON:  Yes, Judge.

5          THE COURT:  All right.

6          MR. AARONSON:  So, if I may address the

7  discharge.  Give me a moment here, Judge.

8          THE COURT:  Well, I have a problem with

9  the discharge.  There are four or five counts

10 pending --

11         MR. AARONSON:  Yes.

12         THE COURT:  -- that have nothing to do

13 with bankruptcy.  Is it the debtor's intention to

14 pursue them?  I don't know what --

15         MR. AARONSON:  No.  And I'm here to

16 announce to the Court that the debtor is today going

17 to withdraw those counts.  As clearly suggested or

18 implied by the Court, I understand that those counts

19 would be a hindrance to the discharge and closing

20 the case.

21         We are going to withdraw those counts,

22 each party to bear their own costs and attorney's

23 fees in connection with that matter.  We would then

24 go forward as suggested by the Court to seek

25 discharge, closing the case.

1          THE COURT:  Oh, pardon me.  All right.  Go

2    ahead.  Anyone else wish to be heard?

3          MR. RAMIREZ:  Judge, these five counts --

4          THE COURT:  Is it five or six?  I forgot

5    how many.

6          MR. RAMIREZ:  Six.

7          THE COURT:  Six.

8          MR. RAMIREZ:  These counts were precisely

9    the reason we have been stymied in our right to

10   appeal.  Now they announce, after they derived all

11   the benefit they could from that delay, now today

12   they announce that they're going to withdraw those

13   counts.

14          Judge, we, of course, will accept the

15   dismissal but I want the Court to be aware that

16   those counts were there just to throw interference,

17   just to make it difficult for us to proceed with our

18   appeal.  And now they want to proceed more than a

19   year later with a discharge, where we have for

20   almost a year been stymied in our right to appeal.

21          THE COURT:  Anything further?  Then in

22   connection with the withdrawal of those, I --

23          MR. AARONSON:  Your Honor has already

24   heard on these.  I think Mr. Pugatch brought it

25   before the Court, the fact of the compliance with

1    the plan, the payment to creditors.

2              THE COURT:  Well, those counts were the

3    only thing holding up the discharge, so has

4    something been filed that removes them, or do we

5    need to --

6              MR. AARONSON:  We're going to file it

7    today, Judge.  We'll file it right after this

8    hearing.

9              THE COURT:  So you're going to file an

10   order withdrawing all six of those counts, and

11   therefore, now we're talking about discharge, it

12   seems like there's nothing left in the case to

13   prevent the discharge, so it appears to be entered.

14             MR. AARONSON:  Correct.

15             THE COURT:  Anyone else wish to be heard?

16             MR. RAMIREZ:  Yes, Judge.

17             MR. AARONSON:  Before Mr. Ramirez stands

18   up again, this Court has ruled on innumerable

19   occasions that NLG is not a creditor, and has no

20   claims against the debtor in this case.  So I don't

21   mind Mr. Ramirez talking, and I'm sure the Court --

22             THE COURT:  It's always a pleasure to hear

23   him talk.  He's a very eloquent speaker.

24             MR. AARONSON:  It's always a pleasure, and

25   I'm happy to hear him speak, but I don't know who --

Page 10

1    I don't know why he has standing to participate in
2    this case.
3                THE COURT:  Well, when he speaks, when he
4    finishes, you can respond and may perhaps raise that
5    point if appropriate.
6                MR. AARONSON:  Thank you.
7                THE COURT:  Mr. Ramirez, you wish to be
8    heard.
9                MR. RAMIREZ:  Judge, first of all, your
10   order making us lose our standing is on appeal.  The
11   confirmation order is also on appeal.  In fact, they
12   filed today a motion for extension of time to file a
13   brief on that appeal.  So again, it's a pattern of
14   delaying when we're trying to assert our rights,
15   while trying to rush through and get a discharge.
16               Judge, while I may or may not have
17   standing, I think the Court has an independent duty
18   to review these confirmation plans before they're
19   approved, and exercise independent judgment as to
20   them.  And they have not, in fact, complied with
21   completion of all payments under the plan, and
22   that's required under the statute.
23               They have to pay us as unsecured
24   creditors, and they have not.  This JMB/Urban, where
25   they settled a case from over $600,000 to a hundred

1   and some thousand dollars, and they were supposed to

2   pay them in July, they have defaulted on that

3   payment.   They have numerous creditors they have not

4   paid, but just -- I don't need to show a lot of

5   them, I just need to show one, and they have not

6   paid that one creditor.

7          They have also in their plan not

8   considered the possibility of reversal of your

9   judgment wiping out our second mortgage, which at

10  this point without over a $6 million balance.  If

11  that is reversed, how are they going to meet their

12  obligations under the plan?  They have not addressed

13  that, and they have not, in fact, complied with the

14  statute and with the confirmation plan itself.  They

15  were supposed to meet certain obligations in that

16  time and they have not done so.

17          THE COURT:  Thank you, Mr. Ramirez.

18          Does the United States Trustee have a

19  position?

20          MS. ARMENGOL:  Thank you, Your Honor.

21          Mr. Ramirez is correct in that the statute

22  provides that discharge for an individual in a

23  Chapter 11 could only happen if all unsecured plan

24  payments have been made.  I was under the impression

25  that they have been made.  I'm not sure what --

Page 12

1          THE COURT:  I thought so also, but let's
2    find out.
3          What about it, Mr. Aaronson?
4          MR. AARONSON:  Your Honor, my
5    understanding is JMB has agreed to the discharge and
6    to close this case.
7          THE COURT:  Who is JMB?
8          MR. AARONSON:  That is the creditor that
9    they're referring to.
10         THE COURT:  Are they represented here
11   today?
12         MR. AARONSON:  They are not represented.
13   They agreed to the closing of this case and to the
14   discharge, because under their settlement they are
15   not getting a discharge, and we have a separate
16   agreement with them to pay them over a period of
17   time.  We're not discharged of that debt.  That is
18   not part of this case.
19         It's an agreement.  I believe it was
20   approved by the Court.
21         THE COURT:  Is it of record?
22         MR. RAMIREZ:  Judge, this is news to me.
23         MR. ARESTY:  There was a settlement
24   agreement.  I don't have the docket number, but
25   early in the case, Judge, and the agreement was it

Page 13

```
 1   was non-dischargeable, and therefore, it's not part
 2   of the discharge package.
 3              MR. RAMIREZ:  Judge, there was an
 4   agreement, and they were to pay the whole thing in
 5   July, and they haven't paid it.  We checked with
 6   them periodically, including today, and they have
 7   not been paid.  They just don't want to incur
 8   more --
 9              THE COURT:  Well, they're not disputing
10   that they've not been paid.  Their argument is that
11   they have an agreement with that creditor that this
12   is not a matter on the confirmation.
13              Let's see if we can find that document.
14              MR. RAMIREZ:  They have an agreement that
15   they had to pay by July 27th of this year, and we're
16   in October and they haven't paid it.
17              THE COURT:  Pardon me, Mr. Aaronson or
18   anyone, what is the date of that agreement?
19              MR. AARONSON:  Your Honor, if I could have
20   a moment.  I wasn't in the case at that point.
21              MR. ARESTY:  Judge, it looks like there's
22   a --
23              THE COURT:  Yes, Mr. Aresty?
24              MR. ARESTY:  Document 21.  There's an
25   adversary proceeding, Your Honor, Adversary
```

```
 1    Proceeding 16-01188.
 2                THE COURT:  16-0118?
 3                MR. ARESTY:  Eight.
 4                THE COURT:  Two eights?
 5                MR. ARESTY:  Yes.  And at Doc 21 there's
 6    an agreed final judgment.
 7                THE COURT:  Okay.  Apparently Document 21
 8    in that adversary is what we're talking about.
 9                MR. ARESTY:  And it stipulates that it's a
10    non-dischargeable judgment.
11                THE COURT:  Okay.
12                (Discussion off the record.)
13                THE COURT:  It's being printed.  We'll
14    take a look at it in a moment.
15                MR. ARESTY:  I think this is also
16    referenced in a footnote, Judge, in the motion for
17    discharge.
18                THE COURT:  Perhaps.  You may not believe
19    this, but I have not memorized all the footnotes.
20                MR. RAMIREZ:  Are you waiting for us?
21                THE COURT:  I'm waiting for the document.
22    It will be here in a moment.
23                MR. RAMIREZ:  Because the Judge said they
24    were supposed to pay in 18 months.  It's been 24
25    months.
```

1            THE COURT:  Let's see.  I'm looking at

2   agreed final judgment, Court Paper 21, in Adversary

3   Case 16-01188-AJC.  If you all have it handy, take a

4   look and see if anyone can point to the dispositive

5   factor either way.

6            MR. ARESTY:  Judge, it clearly says --

7            THE COURT:  Pardon me, Mr. Aresty.  You

8   have to identify yourself when you speak.

9            MR. ARESTY:  I'm sorry.  Joel Aresty,

10  A-R-E-S-T-Y.

11           THE COURT:  So in Paragraph 1 it says

12  there's a judgment entered against Hazan for

13  275,000.

14           MR. ARESTY:  A non-dischargeability

15  judgment it is identified as.  It was always

16  intended to be non-dischargeable, and therefore --

17           THE COURT:  Well, let's see what it says,

18  rather than what you think it intended.

19           Two says, non-dischargeability shall be

20  surviving against Hazan, and shall be deemed to

21  replace the pre-petition judgment, which shall no

22  longer be valid or enforceable.  Okay.

23           In the event the debtor has failed to

24  satisfy they then proceed to execution.  In the

25  event the plan is confirmed and the debtor defaults

```
 1    in making payments -- well, this would be if the
 2    plan were confirmed before the payment was made --
 3    the debtor will still be entitled to pay and satisfy
 4    the judgment before the second anniversary date, and
 5    JMB will refrain from exercising any rights that may
 6    be granted.
 7              JMB agrees to support the debtor's plan of
 8    reorganization as long as said plan requires payment
 9    to JMB in the amount set forth, et cetera, prior to
10    the second anniversary date.  This does not treat
11    JMB in a manner less favorable than other unsecured
12    creditors.
13              All right.  We'll give each of you an
14    opportunity to explain how you feel this judgment
15    applies to the position you're presenting.  You can
16    start, Mr. Aaronson.
17              MR. AARONSON:  Your Honor, I'm going to
18    defer to Mr. Aresty.
19              THE COURT:  All right.  Mr. Aresty.
20              MR. ARESTY:  Judge, JMB made an agreement
21    to settle the adversary.  I think Mr. Aaronson was
22    involved in the negotiations of it.  When I came in
23    the case we were just finishing up the paperwork.
24    JMB was represented by counsel in the case.
25              If it's non-dischargeable, then there's no
```

1   question about the fact that the discharge is not

2   affected by the fact that this non-dischargeable

3   debt is outstanding.  JMB did not object to

4   confirmation under the terms of its settlement.  It

5   certainly had notice.  And as Mr. Aaronson said,

6   they supported the closing of the case.  They have a

7   separate agreement outside of the estate from which

8   to seek satisfaction.

9           THE COURT:  All right.  Thank you,

10  Mr. Aresty.

11          Mr. Ramirez, what --

12          MR. RAMIREZ:  They had defaulted on this

13  agreement, on this judgment, even before.

14          THE COURT:  Where did they default?  Point

15  that out to me.

16          MR. RAMIREZ:  They have not paid.

17          THE COURT:  It says that they have two

18  years after the confirmation to pay.

19          MR. RAMIREZ:  That was in 2016.

20          THE COURT:  It says two years after the

21  confirmation, not two years from the date of the

22  order, doesn't it?  Point it out to me.  I want to

23  be educated.

24          They say in Paragraph 5, JMB agrees to

25  support and vote for debtor's plan, as long as the

Page 18

1    plan requires the amount set forth in this

2    non-dischargeability judgment prior to the second

3    anniversary date.

4              MR. RAMIREZ:  That would have been this

5    summer, July of 2018.

6              THE COURT:  Anniversary date of what?  Is

7    it of the plan or the order?

8              MR. RAMIREZ:  The order.  It doesn't say

9    it was the confirmation.  Second anniversary was

10   when they -- the second anniversary date is defined

11   in Paragraph 3 as two years from the date of entry,

12   which was the date --

13             THE COURT:  Hold on.  Let me look at

14   Paragraph 3.

15             MR. RAMIREZ:  That was July 19, 2016.

16             THE COURT:  "And in that event proceed to

17   execute."

18             Okay.  So apparently you're right.  It's

19   two years from the date of the order, and if it

20   isn't paid, they have their right to proceed, but

21   they're not affected by the confirmation, because

22   they're non-dischargeable.

23             MR. RAMIREZ:  They're still an unsecured

24   creditor who has not been paid.

25             THE COURT:  No.  Under this -- doesn't

1   this document say that that claim was wiped out, and

2   they have this new claim under this agreement?

3           MR. RAMIREZ:  They're still an unsecured

4   creditor under the statute.  It still prevents the

5   plan, and this Court should supervise this debtor to

6   make sure that she complies with that and all the

7   other obligations.

8           The IRS is owed hundreds of thousands of

9   dollars, all kinds of debts that she hadn't complied

10  with, and all kinds of creditors that she's given

11  preferential treatment in an apartment in New York.

12          We raised all these issues in our appeal

13  of the confirmation order, Judge.  So I think that

14  prevents the confirmation and it prevents the

15  discharge.

16          THE COURT:  Mr. Aaronson?

17          MR. AARONSON:  Your Honor, I don't have

18  the document in front of me, but it appears obvious

19  from everything that I've just seen that this is an

20  agreement outside of the plan, outside of

21  confirmation.  They were agreeable to confirmation.

22  They were agreeable to discharge.

23          THE COURT:  They say in Paragraph 5, they

24  say they agree to support and vote for the plan as

25  long as it requires them to pay the amount set forth

Page 20

```
 1   prior to the second anniversary date.  But if they

 2   haven't done that, does that mean that JMB is no

 3   longer supporting the plan, or what does it mean?

 4               MR. AARONSON:  They have agreed.  They

 5   agreed to the plan, they have agreed to the

 6   discharge, they're not objecting.  And we're in a

 7   payment plan schedule with them, Judge.

 8               THE COURT:  Well, continue --

 9               MR. AARONSON:  Whether it be as set forth

10   in that document or not.

11               THE COURT:  Continue, Mr. Aaronson, and

12   then we'll hear from Mr. Ramirez, and then we'll

13   hear from the United States Trustee.

14               MR. ARESTY:  Judge, if the Court please,

15   this is an individual Chapter 11 case, so there's a

16   provision in 11 U.S.C. 1141, which is what was the

17   gravamen of the motion for discharge.  Not only is

18   it a non- dischargeable debt, but Paragraph B of

19   Subsection 5 of 1141 says, "After noticing a hearing

20   the Court may grant a discharge to the debtor who

21   has not completed payments under the plan, if the

22   value as of the effective date of property actually

23   distributed is not less than the amount that would

24   have been paid on such claim if the estate had been

25   liquidated under Chapter 7."
```

1          This was the code provision that

2    Mr. Pugatch argued to the Court at the hearing in

3    which it's cited in both the motion and

4    Mr. Pugatch's -- and in the Court's order asking for

5    this hearing.

6          MS. ARMENGOL:  Your Honor, if I may, I

7    think that what Mr. Aresty is alluding to is that

8    the code provides for discharge if all plan payments

9    to unsecured creditors pursuant to the plan have

10   been made.  I do not believe that the JMB settlement

11   was treated in the plan.

12          THE COURT:  So then it would be immaterial

13   as to whether it was paid or not.

14          MS. ARMENGOL:  I would believe so.  That's

15   the way I'm reading the plan.

16          THE COURT:  That sounds like a logical

17   interpretation, but nevertheless, we have numerous

18   great brains out there kicking this around.  I want

19   to get input from anyone that wants any more.

20          What about that, Mr. Ramirez?

21          MR. RAMIREZ:  I'm just reading the

22   statute, Judge, and it doesn't say that only those

23   creditors that are objecting, or any other creditors

24   are included in the plan.  It says the payment of

25   all creditors, and this is --

Page 22

1              THE COURT:  Pardon me.  That's not what

2    the statute says, the way I heard it read.  It said

3    all creditors in the plan.  And I -- I mean, I'm not

4    taking one side or another, but if I understood, the

5    argument of the other side was that this creditor is

6    not in the plan, so that 1141 would govern.

7              Now, I haven't read 1141 in a while, and

8    I'm not going to just shoot from the hip on it, but

9    nevertheless, I want everybody to have an

10   opportunity to give me their thoughts on how it

11   applies or how it does not apply.

12             It would appear to me that if we adopt

13   Mr. Aresty's argument that 1141 only deals with

14   payments of creditors in the plan, then they're

15   entitled to a discharge.  On the other hand, if we

16   follow your argument, Mr. Ramirez, that all

17   unsecured creditors need to be paid, then they're

18   not entitled to a discharge.

19             Anyone else want to put anything else on

20   the table before we move on from this matter?

21             MR. AARONSON:  Only that the statute, Your

22   Honor, I agree with Your Honor, Your Honor's

23   suggestion here, but the statute refers to creditors

24   that are treated in the plan.

25             THE COURT:  Well, in any event, as I said,

Page 23

1    it's an important matter and I don't want to shoot

2    from the hip, so I'm going to ask for competing

3    orders.

4            How much time do you need to prepare an

5    order, Mr. Ramirez?

6            MR. RAMIREZ:  Usually you grant two weeks.

7            THE COURT:  Two weeks.  Very well.

8            Is that enough time for you, Mr. Aaronson.

9            MR. AARONSON:  Your Honor, I believe we've

10   already submitted an order when Mr. Pugatch filed

11   this motion.

12           THE COURT:  Well, let me say this.

13           MR. AARONSON:  I can re-upload it.

14           THE COURT:  I am not aware of every order

15   that's been submitted in a caseload of 6,000 cases.

16   I'm going to give two weeks.  Today is the 24th, so

17   that would be the 31st, that would be the 7th.  Now,

18   the fact of the matter is, I'm leaving town on the

19   7th, so if you want to make it 21 days we'll give

20   you 21 days and make it the 14th.

21           So by the 14th of November, I'll look for

22   orders from Mr. Ramirez and Mr. -- who's going to do

23   your order, Mr. Aaronson, you or Mr. Aresty?

24           MR. ARESTY:  Judge, can we ask for a

25   shorter time?  These matters are not that

Page 24

1    complicated.

2              THE COURT:  Hold on just a second.

3              (Discussion off the record.)

4              THE COURT:  Okay.  We've got your orders,

5    Mr. Aaronson, but they don't address the issue

6    involving this creditor.

7              You say you'd rather have less time?

8              MR. AARONSON:  We don't need a lot of time

9    on this.  A week is fine.

10             THE COURT:  Can you do it in less than 14

11   days, Mr. Ramirez?

12             MR. RAMIREZ:  If you're leaving on the

13   7th, can we do it on the 6th?

14             THE COURT:  Well, if they come in on the

15   6th, I'm not going to get a look at them until I get

16   back ten days later.  So in other words, if you can

17   do it in seven days or eight days, we can do that,

18   but again, we don't want --

19             MR. RAMIREZ:  This is not an area that I

20   am very cognizant of.  I need the time, because

21   there's statutes that I'm not familiar with.  This

22   case, as many cases, I didn't know they had an

23   adversary with a judgment.  I need to look at that

24   and see -- contact the creditor and see if they've

25   been paid.

Page 25

```
1          I think two weeks is not unreasonable.
2          THE COURT:  All right.  We'll stay with
3    the two weeks.
4          Who's going to do the order for your side?
5          MR. AARONSON:  Myself or Mr. Aresty will
6    do it, Judge.
7          THE COURT:  All right.  As I said, the
8    order that you have submitted doesn't deal with this
9    issue, so I think you better look at that order and
10   prepare a revised order.
11         U.S. Trustee have anything further?
12         MS. ARMENGOL:  Your Honor, just a
13   procedural issue.
14         This case, we're proceeding and this case
15   is closed.  I believe that the motion for discharge
16   asks for the reopening of the case, but it's been
17   lingering.  So I would request that this case be
18   reopened, because there's many, many things going
19   on, and proceed from there.  But as we speak, this
20   case is closed.
21         THE COURT:  So then you're suggesting that
22   it should be reopened today?
23         MS. ARMENGOL:  Well, that's part of -- I
24   would suggest that if the Court would at least in
25   part grant the motion to reopen --
```

 1                THE COURT:  And then we'll deal with the

 2     issue of --

 3                MR. AARONSON:  Your Honor, I think it

 4     could all be in one order, that the case is reopened

 5     to consider the discharge and to close the case, and

 6     it can address this one particular issue with regard

 7     to this creditor.  I don't see why we need two

 8     separate orders.

 9                THE COURT:  Well, Madam Trustee --

10                MS. ARMENGOL:  Because we've had pleadings

11     and filings ever since -- we're proceeding, and this

12     case is closed.  Procedurally it's not proper for

13     this case to be closed and having --

14                MR. ARESTY:  I'm sorry.  I was just going

15     to say, Judge, that the matters before the Court are

16     either appeals or motions speaking to the

17     confirmation order, which would occur in any closed

18     Chapter 11 case under the Court's continued

19     jurisdiction, and there's no reason to reopen it in

20     general.

21                Usually -- the procedure that was in the

22     confirmed plan was that when the payments were made

23     there would be a motion to reopen for purposes of

24     consideration of the final report and discharge and

25     a final decree.  That's usually the way it occurs.

1   I think the clerk issues the discharge, if I'm not

2   mistaken.  There's an administerial act once the

3   Court authorizes it, and then the case is reclosed.

4          Otherwise, the debtor has to file monthly

5   operating reports, pay U.S. Trustee fees, and

6   really, everything that's before the Court proceeds

7   from the confirmation order under your reservation

8   of jurisdiction.

9          THE COURT:  Under those circumstances, I

10  guess if the case isn't going to be reopened or this

11  isn't going to fly, we wouldn't be accomplishing

12  much by reopening it today.  So let's leave the

13  reopening as part of the order that Mr. Ramirez and

14  Mr. Aresty are going to submit.  The 14th of

15  November is the date.  Hopefully within a week after

16  that we'll be able to adopt one of the orders or the

17  other, or modify one or the other or make my own

18  order.

19          Anything further we need to do on this

20  matter today?

21          MR. AARONSON:  There's another motion.

22          THE COURT:  I know there's another motion.

23  Right now we're talking about Court Paper 713.

24          Mr. Ramirez, Mr. Aresty, I'm looking for

25  orders on whether the nonpayment due -- what was the

Page 28

```
 1    name of that debtor again -- creditor, rather?
 2              MR. AARONSON:  JMB.
 3              THE COURT:  Whether the JMB unpaid bill
 4    prevents the issuance of the discharge or whether it
 5    allows it.  So we'll look for those orders.
 6              Let's move on now to Court Papers 742, 748
 7    and 752.  They're motions for contempt, amended
 8    motions for contempt and response.  This has to do
 9    with the filing of a lis pendens.
10              So starting out, the motion came from
11    Daniel Bushell.
12              MR. AARONSON:  Yes.  He's in court, Judge,
13    but I was planning on arguing.
14              THE COURT:  Well then, Mr. Aaronson, go
15    ahead and tell us about your motion, and then I'll
16    hear what is to be said in opposition to it.
17              MR. AARONSON:  Thank you, Judge.
18              So I'm going to take this in some kind of
19    a logical sequence here.  On November 1, 2017,
20    almost a year ago, the Court entered its final
21    judgment in the adversary action.  This Court is
22    very familiar with that.  I don't want to get into a
23    lot of detail.  The court reconciled all of the
24    underlying state court orders and judgments.
25              THE COURT:  I thank you, but I attempted
```

1  to.  I don't know whether I did or not.

2          MR. AARONSON:  You didn't focus just on

3  one judgment to the exclusion of all of the others.

4  You put your arms around all of them.  And you found

5  ultimately that the promissory note, the Scola

6  judgment, the mortgage, the foreclosure judgment,

7  they've all been satisfied and paid, and are deemed

8  satisfied of record.

9          And the debtor has good title to her

10  homestead against the claims, or purported claims,

11  of NLG, and the title for the property is forever

12  quieted as to all claims of NLG.  That was your

13  judgment, November 1, 2017.

14          This case went to confirmation May 30,

15  2018, and the Court entered its confirmation order

16  on June 12, 2018.  At that hearing, May 30, Your

17  Honor was exceedingly generous in conversation with

18  Mr. Ramirez.  I was in Court that day, and there's a

19  record of that hearing, and the Court specifically

20  told Mr. Ramirez that confirmation, "makes a big

21  difference," and, "confirmation may moot out the

22  appeal," "if there's a stay nothing can happen."

23          I don't know what more the Court could

24  have done to put NLG on notice.

25          The confirmation proceeded.  There was no

1   stay.  There was no motion for stay.  The Court

2   entered a confirmation order, and the Court

3   specifically found and stated that, "All creditors,

4   all creditors whose judgments are declared null and

5   void are enjoined from commencing, continuing or

6   imploring any action, process or act to collect,

7   recover or offset any such debts as personal

8   liability of the debtor or from property of the

9   debtor."

10          The Court also said another injunction in

11  that order.  "All creditors are also enjoined from

12  commencing, continuing or imploring any action,

13  process or act to collect, recover or offset any

14  debts or enforce any liens against the debtor on

15  account of any debt that existed as of the petition

16  date."

17          That's pretty clear language, as I

18  understand it, but on August 9, 2018, NLG filed a

19  lis pendens.  If that's not an action, process or

20  act to recover a debt, I don't know what is.  It

21  specifically inhibited the debtor from selling or

22  refinancing her property, which is what she's

23  intending to do.  It's not the only thing.

24          On October 18, 2018, in a state court

25  action -- foreclosure action on the debtor's home,

1 │ they had received relief from stay to proceed with

2 │ it, NLG filed a cross-claim, a claim against the

3 │ debtor seeking to foreclose the NLG mortgage,

4 │ exactly inconsistent, contrary to this Court's

5 │ order.  They literally are seeking to foreclose the

6 │ mortgage in the Chase Bank -- their mortgage in the

7 │ Chase Bank foreclosure.

8 │         Now, they're going to come and tell you

9 │ that this Court granted relief from stay to Chase to

10 │ proceed with the foreclosure, and relief from stay

11 │ to Chase and any other parties involved in Chase's

12 │ foreclosure, but that doesn't mean that after the

13 │ Court entered its injunction, that they had the

14 │ right to re-litigate the foreclosure action, which

15 │ this Court specifically prohibited.

16 │         They can defend with regard to Chase, but

17 │ a pre-confirmation stay relief order that allows

18 │ Chase to proceed and any other parties in that case,

19 │ does not void the latter -- this Court's final

20 │ judgment and the latter confirmation order

21 │ prohibiting them from proceeding to enforce their

22 │ alleged mortgage.  That's not the only thing.

23 │         In NLG versus Selective, in the U.S.

24 │ District Court, they filed in April '18, five months

25 │ after the final judgment, and two months before the

Page 32

1   confirmation order, they filed a specific act before

2   Judge Martinez seeking to challenge the New York

3   judgment, the underlying New York judgment, which

4   Judge Lopez acknowledged in connection with the

5   assignment order.

6           They are going back to their original

7   claims, which they litigated over and over and over

8   again, and everything that this Court considered,

9   that Your Honor considered, and they literally,

10  after the Court's order, went before Martinez and

11  they want to re-litigate it.  Completely

12  inconsistent with your Court's judgment, and

13  inconsistent with the injunction that was entered in

14  the confirmation order.

15          They filed yesterday before Martinez an

16  emergency motion before District Court Judge

17  Martinez.  They filed an emergency motion to stay

18  this hearing, the hearing that we're on right now to

19  hold them in contempt.  Judge Martinez denied it.

20  It's not the only thing they've done.

21          On October 18, 2018, they went to New York

22  and filed the same papers that they filed before

23  Martinez with regard to the 2012 judgment, that was

24  acknowledged before Judge Lopez, they went back to

25  New York and they're challenging the judgment, the

Page 33

1    underlying 2012 judgment in New York.  They did that

2    as of October 18, 2018.

3              This is all --

4              THE COURT:  How many years are they

5    allowed to file an appeal of a New York judgment?

6              MR. AARONSON:  You know, in this case,

7    Judge, it clearly goes on forever.  It's forever.

8    There's no statute.  They file actions in Florida to

9    set aside the New York judgment.  They file actions

10   in New York to set aside the New York judgment.

11   They've litigated here and this Court has ruled and

12   reconciled all of the judgments.

13             The fact that Lopez -- Judge Lopez was

14   willing to consider any due process requirements of

15   the New York judgment, but they didn't post a bond,

16   and Judge Lopez ruled that the New York judgment was

17   valid, it's irrelevant to them.  They are filing new

18   cases in District Court, going back to New York in

19   the Chase foreclosure action.  They're again seeking

20   to foreclose.  And guess what they're relying on

21   when they're seeking to foreclose?  Exhibit A, Judge

22   Gordo's foreclosure judgment.

23             Frankly, Judge, there's no shame.  They

24   are ignoring the judgment of this Court and the

25   injunctions of this Court.  I've never seen anything

 1   like this before.  But that's the fact.  That's
 2   what's going on here.
 3          This Court specifically retained
 4   jurisdiction to enforce the confirmation order and
 5   its injunctions, based upon the willful violations.
 6   They're not going to stand here and say they didn't
 7   participate in the trial before Your Honor, that
 8   they were unaware of it, that they were unaware of
 9   the confirmation order, that they were not aware of
10   the state court judgment.
11          They tried to avoid us coming here before
12   Your Honor.  They've gone before Moreno -- Judge
13   Moreno, in connection with the appeal and sought a
14   stay.  He denied it.  They've gone before Martinez.
15   He's denied it.  So they're forced to come here and
16   listen to me talk about this motion for sanctions.
17          But, Judge, if this Court's orders mean
18   anything, the Court needs to enforce it.  And we're
19   asking for sanctions.
20          We're asking, first of all, coercively,
21   that they be required to dismiss the cross-claim for
22   foreclosure, based upon the Gordo judgment in the
23   state court.  We're asking that they be required to
24   remove the lis pendens on the property alleging that
25   they have a right to foreclose the property.  We're

```
1   asking that they dismiss the Martinez lawsuit in the
2   U.S. District Court challenging the New York
3   judgment.  We're asking that they withdraw their
4   motions in New York in connection with the 2012 New
5   York judgment to show cause, challenging the
6   underlying 2012 New York judgment.  And I'm asking
7   for actual damages, and we're asking for punitive
8   damages.
9           But I think from a coercive point of view,
10  we're entitled at this point to have them abide by
11  this Court's orders and the injunctions, clean up
12  all of these violations of the judgment and the
13  injunctions, and pay attorney's fees for us having
14  to come into this court in order to apprize the
15  Court of what's been going on.
16          In terms of punitive damages, if they
17  don't do it we'll be back in court, and I'll ask the
18  Court for some type of punitive sanction in
19  connection with their failure to clean up the mess
20  that they filed since this Court entered the
21  judgment, and since this Court has entered the
22  confirmation order with the various injunctions.
23          There are exhibits to our motion.  There's
24  the lis pendens, and there's the filings in the
25  various courts.  Thank you, Judge.
```

1             THE COURT:  Thank you, Mr. Aaronson.

2             Mr. Ramirez, any response?

3             MR. RAMIREZ:  Yes, Judge.  Since they went

4    back to the Scola judgment and everything that was

5    litigated, I need to respond to that.

6             THE COURT:  I think the issue here is

7    whether or not the filing of the lis pendens

8    violated the injunction.  I mean, it's nice to hear

9    the history of this case, which we hear in full

10   every time we have a hearing.  It's always very

11   pleasant to hear eloquent attorneys present their

12   client's position.

13            MR. RAMIREZ:  You allowed him to --

14            THE COURT:  You're allowed as much time as

15   you want.

16            MR. RAMIREZ:  I just want to respond to

17   that, because it's misleading.

18            I know the Court tried to reconcile all

19   these judgments and orders, but the Scola judgment

20   went back to 2007.  The Lopez assignment order that

21   you discussed in your final order went back to 2014.

22   The Gordo orders went back to 2015.  So she had the

23   benefit of those two prior orders, and discussed

24   them in her order granting us foreclosure and the

25   final judgment.

1          That is the decision of the Court, whether

2   right or wrong.  Their remedy was to appeal that to

3   the Third District, which, in fact, they did.  They

4   filed an appeal, and then they must have found in

5   forum shopping that they had a better chance with

6   you, because the Third District already rejected

7   their arguments numerous times.

8          These arguments that the Court heard, with

9   all due respect, were heard by the Third District,

10  by Judge Gordo, and even by Judge Lopez.  After

11  Judge Gordo granted the foreclosure, Judge Lopez

12  said, "I'm not an appellate court.

13          And under Rooker-Feldman, Judge, you

14  basically had no restriction to second guess what

15  Judge Gordo did.  Right or wrong, her remedy was

16  with the Third.

17          Now, you did, and they kind of went over

18  this quickly, and it's ECF Number 315.  You granted

19  an order allowing JPMorgan relief from the stay, and

20  in that order you specifically granted it also to

21  NLG, because NLG was a party to that.  And I was

22  granted relief from the automatic stay to litigate

23  the foreclosure claim of Chase in the foreclosure

24  action to the point of judgment, but not to conduct

25  the foreclosure sale of the property.  We have not

Page 38

1   attempted in any way to conduct a foreclosure sale

2   of the property.

3           We did delay as long as we could planning

4   anything in that action, because they had not served

5   Ms. Hazan with process.  So when they did serve her

6   with process, which took a long time, we felt that

7   the plaintiff wanted us to file an answer, and we

8   did.

9           As we were getting ready to do that, we

10  filed a lis pendens, just to put the world on

11  notice.  It doesn't seek any damages from anybody.

12  It just puts the world on notice that this claim is

13  pending.

14          And the cross-claim, if we had not filed

15  the cross-claim, we would be deemed to be waiving

16  the rights to do so.  You granted us leave to

17  prosecute this action.  We were doing that.  Your

18  order, confirmation order, does not rescind your

19  prior order, so we were proceeding under the prior

20  order.

21          They have said that Judge Lopez ruled on

22  the validity of the New York judgment, and that we

23  have no -- we have lost every step of the way.  In

24  fact, we have not.  We have won -- Judge Gordo ruled

25  that they were not entitled to full claims and

Page 39

1    credit.  She put it in her order.  Because NLG was
2    never served with process, was never given notice,
3    was never given an opportunity to be heard and that
4    made that a void judgment.
5             So you asked the question, how long do you
6    have.  You have forever.  A void judgment can be
7    attacked at any time.  And NLG did it in 2014, and
8    they've been trying to have the judge in New York
9    hear it ever since that date.  And they've done
10   everything they could, Selective, to delay that.
11            But the main reason that that's irrelevant
12   is because it does not involve Hazan.  Hazan is not
13   a party to that case.  Selective, as far as I know,
14   is only owned by her husband.  Now, the bankruptcy
15   automatic stay does not apply to family members or
16   their companies.
17            Hazan is not an owner of anything to do
18   with Selective.  We have not sought any action
19   against Hazan in New York.  If the judge is to
20   vacate that judgment, then we would return to you,
21   Judge, and you would do with it what's appropriate,
22   which would be, I would assume, to revisit your
23   final judgment under Rule 60.
24            Judge, we instituted also a dec action,
25   because in New York, Selective is arguing that

Page 40

1    there's -- the only way to attack that judgment was

2    through a plenary action.  So we, in an abundance of

3    caution, filed a plenary action.  This is the action

4    we filed with Judge Martinez.  Because there's

5    diverse jurisdiction and it's over $75,000, we filed

6    that plenary action here, and we did that in April.

7            They never have raised the bankruptcy stay

8    with Judge Martinez, they file an answer -- I mean,

9    they filed a motion to dismiss and a motion for

10   summary judgment.  They never raised the automatic

11   stay with Judge Martinez.

12           THE COURT:  Pardon me.  Let me interrupt,

13   Mr. Ramirez, to say, I don't believe that the

14   automatic stay is an issue here.  The automatic

15   stay, I don't believe, was in effect.  What they're

16   going under is the injunction in the confirmation

17   order, which is not the same as the automatic stay.

18           Maybe I misunderstood that.  At least

19   that's the way it appears that it was being

20   presented.

21           MR. RAMIREZ:  Well, Judge, there's a

22   judgment -- first of all, a confirmation order.

23   We've also filed an appeal.  But that did not

24   rescind -- we were traveling under your prior order

25   which gave Chase and NLG the right to litigate that,

1    And that's what we were doing.

2            I don't see how the confirmation order in

3    any way affects a dec action with Judge Martinez or

4    our case in New York, because it does not involve

5    the debtor.

6            THE COURT:  Well, that's not what we're

7    talking about.  We're talking about whether or not

8    the filing of the lis pendens violated the

9    injunction.  To me that seems very simple.

10           Both sides of this issue seem to want to

11   talk about various trips around the world, and I

12   hope the sight-seeing is wonderful, but basically,

13   what I'm trying to focus on is whether or not the

14   filing of the lis pendens was something that was

15   allowable, in which event the motion here would be

16   denied, or whether it was a violation of an

17   injunction, in which event there might be a contempt

18   ruling.

19           That's what I'm trying to focus on, and

20   it's always a pleasure to hear you and your

21   colleagues eloquently express your thoughts and

22   theories on this matter, but as I said, both of you

23   seem to be beyond the focus of what Court Paper 742

24   is all about.

25           MR. RAMIREZ:  Judge, we did not draft the

1   order confirming the plan.  So we did not get any

2   input into the wording of that order, but that order

3   did not rescind the prior order, which gave us the

4   right to litigate the foreclosure, and as part of

5   that, we put the world on notice through the lis

6   pendens.  The lis pendens itself does not in any way

7   seek any damages against Ms. Hazan.  It's just

8   putting the world on notice.

9           We have an appeal pending of your order

10  that basically reversed Judge Gordo, and we think

11  that somebody is going to buy this property, which

12  we don't have any objection.  If they want to sell

13  it, they escrow the money to protect all the

14  creditors, that would be something that NLG might be

15  agreeable to, but for her to sell the property and

16  then the buyer, not knowing that we have this

17  pending appeal and maybe prevail on it, and then

18  they have to deal with our $6 million, the lis

19  pendens, all it does is notify the public of that

20  and anybody doing a title search would be protected

21  by that.

22          As far as the cross-claim, if the Court

23  directs us to withdraw that we will withdraw it, but

24  it would be under your order, because otherwise, if

25  we had voluntarily done that, we could be deemed to

Page 43

```
1    have waived our right to file the cross-claim.
2              I think that we have not violated any
3    order of the Court, and we were proceeding under
4    your prior order.
5              THE COURT:  Thank you.  Anything further,
6    Mr. --
7              MR. BUSHELL:  Your Honor, I'm Mr. Bushell.
8    I'm the one who drafted the motion, so maybe I can
9    clear up a few things.
10             First of all --
11             MR. RAMIREZ:  Judge, how many people are
12   going to gang up on me?
13             THE COURT:  Normally it's one on one,
14   unless there's no objection.  If you have an
15   objection --
16             MR. RAMIREZ:  I object.
17             THE COURT:  All right then.  Mr. Aaronson
18   will continue.
19             MR. BUSHELL:  We do have multiple
20   plaintiffs.
21             THE COURT:  One on one is fine.  Tell
22   Mr. Aaronson what you would have said and he'll say
23   it for you.
24             MR. ARESTY:  Your Honor, may I just jump
25   in for a second?  I'm the attorney for Ms. Hazan,
```

Page 44

1    and I just have one thing to say and it will be real
2    brief.
3              Judge, lis pendens is like an automatic
4    injunction.
5              THE COURT:  It's not an injunction, but in
6    any event -- pardon me.  Mr. Ramirez rises for a
7    purpose.
8              What is it?
9              MR. RAMIREZ:  He's arguing the lis
10   pendens.
11             THE COURT:  But he's for a different
12   party.
13             MR. ARESTY:  Liza Hazan individually.
14             MR. RAMIREZ:  He's (unintelligible) also.
15             THE COURT:  Who are you representing,
16   Mr. Aresty?
17             MR. ARESTY:  I represent Liza Hazan,
18   Judge.  I'm lead counsel right now in this case.
19             THE COURT:  And Mr. Aaronson is
20   representing her, so then talk to Mr. Aaronson and
21   let them put it all on the table.
22             MR. AARONSON:  I think everyone wants
23   to -- everyone has an interest in responding.  I'll
24   give you my thoughts, Judge.
25             I'm not sure I followed about 90 percent

1  of what Mr. Ramirez was saying.  It sounded to me

2  like he was making an argument for rehearing in this

3  case.  The problem is that the judgment was entered

4  November 1, 2017.  He wants to talk about all of the

5  underlying orders.  I thought that's what was done

6  at trial.

7        There was no motion for rehearing at the

8  time.  The Court has not granted him the right to

9  proceed to reargue this case.  Why he's standing

10  here rearguing all of the underlying matters, which

11  the Court heard at length and ruled upon, I'm not

12  really sure I follow.

13        And then at the end of his statements he

14  seems to be appealing to the Court to allow him

15  to -- to allow him to violate all of the Court's

16  injunctions, because there's an appeal pending.

17  Well, I don't think I need to remind Mr. Ramirez,

18  and certainly not Your Honor, that if he doesn't

19  want to be bound by the judgment, he needs to file a

20  motion for stay.

21        He's only filed at this point, by my last

22  count, four motions for stay, all have been denied.

23  They've all been untimely.  Whatever reason he's

24  come up with as a motion for stay of the underlying

25  judgment and the injunctions in this case, have all

1    been denied by two Federal District Court Judges and

2    by Your Honor twice.

3             So his final appeal on his de facto

4    rehearing, "Judge, please let me violate the

5    judgment and the court orders, because there's an

6    appeal pending," I think rings hollow.

7             I would also note, Judge, that it's not

8    just the lis pendens.  The motion that we're

9    traveling under is 747, which is an amended

10   expedited motion.  That's what's on the calendar,

11   Your Honor.  And there are a number of matters where

12   he has violated the court order.  It's not just the

13   lis pendens.

14            He has filed an action in the Federal

15   District Court.  He has filed an action seeking

16   foreclosure under the Gordo judgment in the Circuit

17   Court.  He has filed a matter in the New York court.

18   I agree, it's all over the place.  We didn't file

19   these matters.  They filed these matters.

20            The whole purpose of the adversary action,

21   as I understood it, and as I think the Court at one

22   point indicated on the record, was to get its arms

23   around this entire mess and to find some peace here

24   and to analyze all of this.  Because the actions

25   filed here, there and everywhere, in Federal Court,

Page 47

1    state courts, New York, Pennsylvania, Florida,
2    they're out of control.  And this Court, most
3    incisively, focused on all of the orders and put
4    them all together.
5         Yeah, they filed an appeal.  They didn't
6    get a stay pending appeal.  We went forward with
7    confirmation.  They didn't get a stay of
8    confirmation.  The Court literally practically told
9    them that they're going to be subject to these
10   injunctions unless they got a stay, and they
11   remained silent.
12        The plan, but for this JMB issue, has been
13   substantially consummated.  We'll deal with the
14   final order.
15        Judge, this thing has to end.  At some
16   point it has to end.  We can't go through trial
17   after trial, and have Mr. Ramirez ignore the Court
18   when the Court rules against him, and only focus on
19   his one order that he relies upon, the Judge Gordo
20   order, which this Court read, acknowledged,
21   analyzed, took into account that order, and said
22   that the property has been redeemed pursuant to that
23   Gordo final judgment.
24        How many times do we have to do this, and
25   are we going to be doing this for the next five

Page 48

```
 1   years?
 2              THE COURT:  Probably.
 3              MR. AARONSON:  I hope not.  I hope not.
 4              THE COURT:  Anything further,
 5   Mr. Aaronson?
 6              MR. AARONSON:  Your Honor, only that,
 7   Judge, we're not looking just to remove the lis
 8   pendens.  We're looking for him to withdraw a
 9   renewed foreclosure action in the Circuit Court, an
10   action before Martinez to set aside the underlying
11   judgment, an action in New York to set aside the
12   underlying judgment.  We need this Court's order
13   complied with.
14              Thank you, Judge.
15              THE COURT:  Mr. Ramirez, anything further?
16              MR. RAMIREZ:  Yes, Judge.
17              He says he didn't understand 90 percent of
18   what I said, and then he goes and tries to rebut
19   that 90 percent he didn't understand, Judge.
20              The only reason I discussed those prior
21   judgments that he keeps bringing up is because he
22   gives us his own slant, and I give it my own slant,
23   Judge.  And my slant has the jurisdictional basis,
24   subject matter jurisdiction under the U.S. Supreme
25   Court that says the only way to appeal a judgment of
```

Page 49

```
 1   the state court is through the U.S. Supreme Court,
 2   not through a Bankruptcy Court, not through District
 3   Court, not through the 11th Circuit in Atlanta.  So
 4   we have a strong appeal on that issue.  I wouldn't
 5   talk about it if they didn't keep bringing it up.
 6            They have not responded, however, to the
 7   main argument as to the two cases that you said you
 8   weren't interested in hearing about, and those cases
 9   do not involve the debtor Hazan.  They involve
10   Selective Advisors, and they are the parties in
11   those two proceedings, and you have no statutory, or
12   even under the confirmation order, in any way enjoin
13   anything other than what reflects on Hazan.
14            So Selective Advisors is not covered by
15   that order and those two cases.  The Judge Martinez
16   case was filed in April, which was before the
17   confirmation order, and they never (unintelligible)
18   up to you to do anything about that proceeding.  The
19   one in New York has been pending, as I said, since
20   2014.
21            Those have not been ruled on the merits.
22   Judge Lopez never ruled on the merits, and you,
23   yourself, Judge, did not in any way go into the
24   validity of that judgment in New York.  You accepted
25   all judgments at face value, as you had to under the
```

1  Rooker-Feldman doctrine.

2          Our main argument is, so that Mr. Aaronson

3  can understand, first of all, we had an order

4  relieving us of the automatic stay in the Chase

5  foreclosure, and that's what we relied on.  As I

6  said, if the Court orders me to withdraw the

7  cross-claim, that's fine.  I think it's -- I find it

8  was part of what your report allowed me to do in the

9  foreclosure pursuant to your order, but if you think

10 it steps out of bounds, fine.

11         I don't think the lis pendens itself is

12 taking any action.  It's just putting the world on

13 notice.

14         So I don't know if you want to look at

15 those two cases that predated your confirmation

16 order or not, because they keep addressing that.  I

17 don't see how in any way this affects Ms. Hazan,

18 because it is not a proceeding against her, it's a

19 proceeding against Selective.

20         THE COURT:  Thank you.  I think we've

21 heard enough.

22         What do you have?

23         MR. GRANT:  Very briefly, Your Honor.  I'm

24 Joe Grant on behalf of Selective Advisors.

25 Mr. Aaronson presented argument on behalf of the

1    debtor.  I just want to be very brief, Your Honor,

2    and point out a couple of things as I listen to all

3    these arguments.

4              We filed an adversary complaint, and I say

5    "we."  It was the debtor and Selective Advisors.  I

6    tried that case with Mr. Ramirez and Mr. Langley at

7    the time.  The complaint was to determine the

8    extent, validity and priority of NLG's mortgage and

9    lien on the debtor's homestead.  We spent two days

10   in trial.

11             Your Honor allowed us to admit a ton of

12   documents into evidence from all these various

13   proceedings.  At the conclusion of that trial, Your

14   Honor, you asked all of us, "Are all of these orders

15   final and not appealable," and both sides

16   acknowledged that they were.

17             So what you have here is, again, another

18   attempt to re-litigate these issues.  You spent

19   three months, I believe, reviewing all of these

20   different orders, and so at the end you issued a

21   final judgment determining that they did not have

22   any lien on the debtor's homestead.  Then there's

23   the confirmation order with the injunction, and they

24   basically said, "Judge, we're going to ignore it."

25             So I think it's within the power of this

1    Court to make them remove that lis pendens, which is

2    against the debtor's property, remove the

3    cross-claim, and whatever other actions you can

4    enjoin them against from taking actions to enforce a

5    mortgage they don't have.

6              Thank you, Your Honor.

7              THE COURT:  Thank you.

8              MR. RAMIREZ:  Judge, the fact that an

9    order is final and non-appealable does not mean that

10   it cannot be challenged, based upon the fact that it

11   was void.  A void judgment can be challenged at any

12   time.  I don't think I need to give you any law on

13   that.  It's Black letter law.

14             We did challenge it in 2014 in New York.

15   They had not said anything about that judgment for

16   over a year, so we couldn't appeal it.  Sure it was

17   final and non-appealable, but it was still an order

18   that can be vacated pursuant to a motion to vacate.

19             THE COURT:  Thank you, Mr. Ramirez.

20             I think all parties are aware of the fact

21   that if an order is entered and no stay is put into

22   place, that if the order is implemented it may moot

23   out any right to an appeal.

24             But nevertheless, we're here on Court

25   Papers 742 and 748, primarily in regard to whether

Page 53

1    or not the filing of the lis pendens violated the

2    injunction.  That's what I've been trying to focus

3    on, although I've had the pleasure of being toured

4    all around the country with comments about what went

5    on in a number of different places.

6              I'm going to direct the parties to prepare

7    proposed orders within the same time frame as the

8    other one, 14 November, on the motion for contempt

9    and amended motion for contempt and the response

10   thereto.  In the order we'll only deal with whether

11   or not there has been a violation which would

12   justify a finding of contempt.  If there's been no

13   such violation, then that would be the end of the

14   matter.  If there has been such a violation, then

15   the matter will be set for further hearing as to

16   what the sanctions might be.

17             So I thank you all.  It's always a

18   pleasure hearing counsel speak eloquently on behalf

19   of their clients.  I commend both sides for the very

20   detailed efforts they made on behalf of their

21   client's position.

22             (Thereupon, the hearing was concluded.)

23

24

25

Page 54

1                        CERTIFICATION

2

3    STATE OF FLORIDA:

4    COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand

7    Reporter and Notary Public in and for the State of

8    Florida at Large, do hereby certify that the

9    foregoing proceedings were taken by electronic

10   recording at the date and place as stated in the

11   caption hereto on Page 1; that the foregoing

12   computer-aided transcription is a true record of my

13   stenographic notes taken from said electronic

14   recording.

15             WITNESS my hand this 29th day of

16   October, 2018.

17

18

19   _____

                      HELAYNE F. WILLS
20             Court Reporter and Notary Public
              In and For the State of Florida at Large
21           Commission No:  GG123092  Expires 8/2/2021

22

23

24

25

# EXHIBIT 2



**From:** **JOEL ARESTY** aresty@icloud.com
**Subject:** lis pendens filed in case 2013-25902 CA 01 JP Morgan Chase Bank
**Date:** September 29, 2018 at 4:32 PM
**To:** Juan Ramirez, Jr., Former Chief Judge jr@adrmiami.com

Juan

You filed a lis pendens in case 2013-25902 CA 01 JP Morgan Chase Bank
and recorded it 8/9/18 OR book 31094 Pgs 3318-3319
saying it was notice of a cross claim

we found out about this yesterday from a title insurance company

you did not file a cross claim in the case
and the lis pendens is an illegal  cloud on the title of the Fisher Island property

this email is a warning that the lis pendens constitutes a significant violation
of Bar and Court rules for the following reasons

1.   the lack of cross claim makes the instrument a fallacy on its face

2.   the reference to the final judgment OR 29902 pages 3737-3742
     is wrongful because that judgment has been voided by Judge Cristol

3.   the lis pendens violates the plan injunction in the Hazan bankruptcy
     doc 91 6/12/18 which the court retained jurisdiction to enforce

4.   the lis pendens constitutes a significant slander of title and is damaging Ms. Hazan's
     efforts to sell the subject property

Juan
unless the lis pendens is cancelled by a filing in the court and recording in the public records
by Wednesday October 3, 2018 at 5pm
we will file a motion for contempt before Judge Cristol
asking for sanctions including attorneys' fees, damages and punitive damages
and a separate action will lie for slander of titleand a complaint to the Florida Bar

please be governed accordingly

thanks
sincerely

Joel

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

**Fla. Bar No. 197485**

Aresty@Mac.com
http://www.Joelaresty.com

This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                               )    Case No. 16-10389-AJC

                                      )

LIZA HAZAN a/k/a ELIZABETH HAZAN,   )    Chapter 11

                                      )

      Debtor.                         )

                                        )

_____ )

## MOTION FOR ENTRY OF FINAL JUDGMENT

       Reorganized and Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan moves this Court

to enter final judgment in favor of Hazan and against NLG, LLC the award of attorney's fees

granted in the Court's December 28, 2018 order [ECF 780], as follows:

       1.      On December 28, 2018, this Court entered an *Order Granting in Part Debtor's*

*Amended Expedited Motion for Contempt, Sanctions, Damages and Punitive Damages [ECF No.*

*748]*. ECF 780.

       2.      After finding that NLG and its attorney, Juan Ramirez, Jr., Esq., had violated the

injunctions in the Court's *Order Confirming the Debtor's Plan of Reorganization*, the Court

ordered NLG and Mr. Ramirez to pay the attorney's fees incurred by Hazan in moving for

contempt:

> NLG and Mr. Ramirez shall be jointly and severally liable for the
> attorney's fees in the amount of $9,500.00 as reasonable fees
> incurred by the Reorganized Debtor for filing the Motion in this
> case, appearing before the Court at two (2) hearings and filing
> post-hearing submissions with the Court, all in defense of NLG's
> improperly filed and violative cross-claim in the Foreclosure
> Action.

ECF 780 at 10.

1

3.      Hazan has made demand on NLG and Mr. Ramirez to tender payment for the attorney's fees that the Court ordered them to pay, but they have refused to tender payment.

4.      Reducing the award to a judgment would assist Hazan in obtaining payment of the attorney's fee award through registration, garnishment, levy, and/or other collection procedures.

5.      A proposed Final Judgment is attached hereto.

6.      There is no just reason to delay such entry of judgment.

WHEREFORE, Hazan respectfully requests that the Court enter an order: (1) directing the Clerk of Court to enter Final Judgment for $9,500.00 in favor of Hazan and jointly and severally against NLG, LLC and Juan Ramirez, Esq.; and (2) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

BUSHELL LAW, P.A.
Counsel for Reorganized Debtor Liza Hazan
6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220

By:   /s/ Daniel A. Bushell
         Daniel A. Bushell
         Florida Bar No. 0043442
         dan@bushellappellatelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Daniel A. Bushell
Daniel A. Bushell

## **SERVICE LIST**

### Case No. 16-10389-AJC

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A. aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman mfriedman@gjb-law.com,
gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
mortman@furrcohen.com, atty_furrcohen@bluestylus.com

3

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC astridgabbe@gmail.com

Astrid Gabbe on behalf of NLG, LLC

astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc. ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc. dhaber@dhaberlaw.com, ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC bkcmiami@gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc. Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association spowrozek@logs.com, electronicbankruptcynotices@logs.com

Juan Ramirez, Jr., Esq. jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth esilver@stearnsweaver.com, rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association azaron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Miami-Dade County Tax Collector c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430 Miami, FL 33128-1733

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| In re: | ) Case No. 16-10389-AJC |
| | ) |
| LIZA HAZAN a/k/a ELIZABETH HAZAN, | ) Chapter 11 |
| | ) |
|     Debtor. | ) |
| | ) |
| _____ | ) |

## <u>JUDGMENT FOR ATTORNEY'S FEES</u>

The Court has ordered that Liza Hazan a/k/a Elizabeth Hazan shall recover from NLG, LLC and Juan Ramirez, Jr., Esq., jointly and severally, the amount of $9,500.00, for which sum let execution issue. This matter was decided by the Honorable A. Jay Cristol, United States Bankruptcy Judge, on Liza Hazan's motion for contempt.


Date: _____          *CLERK OF COURT*



                                         _____
                                           *Signature of Clerk or Deputy Clerk\*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

      Debtor,

_____/

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the attached *Order Granting NLG,*

*LLC's Agreed Motion to Continue Hearing* entered on January 15, 2018 [ECF No. 799] was

served via CM/ECF and/or first-class postage-prepaid U.S. Mail to the parties on the attached

service list as indicated on the 15th day of January, 2019.

Dated: January 15, 2019

                          Respectfully submitted,

                          /s/ Astrid E. Gabbe
                          The Law Office of Astrid E. Gabbe, P.A.
                          Florida Bar No. 635383
                          P.O. Box 4216
                          Hollywood, FL 33083
                          Tel. (954) 303-9882
                          Fax. (954) 983-1427
                          astridgabbe@gmail.com
                          *Attorneys for NLG, LLC*

**SERVICE LIST**

**_Served via CM/ECF_**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.

aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
jr@adrmiami.com

Daniel A. Bushell on behalf of Selective Advisors Group, LLC and Liza Hazan
dan@bushellappellatelaw.com

Kevin Christopher Gleasaon on behalf of Liza Hazan and Selective Advisors Group, LLC
KGPAECMF@aol.com



**ORDERED in the Southern District of Florida on January 15, 2019.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                             Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,        Chapter 11

     Debtor,

_____/

**ORDER GRANTING NLG LLC'S AGREED MOTION**
**TO CONTINUE HEARING [ECF NO. 791]**

    **THIS MATTER** having come before the court on NLG LLC's Agreed Motion to

Continue Hearing [ECF No. 791]. The Court having reviewed the file and otherwise being fully

advised, it is:

**ORDERED:**

The Agreed Motion to Continue Hearing [ECF No. 791] is GRANTED**.** The February 5, 2019

hearing is continued to **February 6, 2019 at 11:00 a.m. at C. Clyde Atkins U.S. Courthouse,**

**301 North Miami Avenue, Courtroom 7, Miami, FL 33128.**

###
**Submitted by:**

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

*Attorneys for NLG, LLC*

The party submitting this order shall serve a copy of the signed order on all parties listed
below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                      Case No: 16-10389 AJC
                                            Chapter 11
Liza Hazan
 Debtor.                              /

**Reorganized and Discharged Debtor Liza Hazan's Response in opposition to
NLG's Motion [Doc 795] and NLG's Amended Motion for Relief Doc 798] from
Order Granting in part Debtor's Amended Expedited Motion For contempt, Motion
for Sanctions, Damages and Punitive Damages [Doc 780]**

Reorganized and Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan ("Ms
Hazan") files her response in opposition to NLG's Motion [Doc 795] and NLG's Amended
Motion for relief [Doc 798] from Order Granting in part Debtor's Amended Expedited
Motion For contempt, Motion for Sanctions, Damages and Punitive Damages [Doc 780],
and respectfully represents:

1.     NLG has filed a motion and amended motion for relief from this Court's
Order Granting in part Debtor's Amended Expedited Motion For contempt, Motion for
Sanctions, Damages and Punitive Damages.

2.     The NLG's motion [Doc 795] and amended motion [Doc 798] admit that
they were filed after the 14 day deadline in Rule 9023 incorporating Rule 59 and seek
enlargement of the deadline for excusable neglect.

3.     Rule 9023. New Trials; Amendment of Judgments provides

> Except as provided in this rule and Rule 3008, Rule 59 F.R.Civ.P.
> applies in cases under the Code. A motion for a new trial or to alter
> or amend a judgment shall be filed, and a court may on its own
> order a new trial, **no later than 14 days after entry of judgment**. In
> some circumstances, Rule 8008 governs post-judgment motion
> practice after an appeal has been docketed and is
> pending.(emphasis added)

4.      Doc 780 was entered on the docket 12/28/18 and the 14 days ran out on January 11, 2019. The order is therefore **final** and cannot be appealed.

5.      Rule 8002. Time for Filing Notice of Appeal provides in material part

> Rule 8002. Time for Filing Notice of Appeal
> (a) In General.
> (1) Fourteen-Day Period. Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.
> (5) Entry Defined.
> (A) A judgment, order, or decree is entered for purposes of this Rule 8002(a):
> (i) when it is entered in the docket under Rule 5003(a),
> (b) Effect of a Motion on the Time to Appeal.
> (1) In General. If a party timely in the bankruptcy court any of the following motions and does so within the time allowed by these rules, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:
> (A) to amend or make additional findings under Rule 7052, whether or not granting the motion would alter the judgment;
> (B) to alter or amend the judgment under Rule 9023;
> (C) for a new trial under Rule 9023; or
> (D) for relief under Rule 9024 if the motion is filed within 14 days after the judgment is entered.

28 U.S.C. § 158(c), which provides district courts subject matter jurisdiction over bankruptcy court appeals, states that appeals must be taken in the time provided by Bankruptcy Rule 8002.

This time limit has always been deemed to be "jurisdictional," meaning that neither the parties nor the trial judge could change it and the appellate court could raise it on its own. The Supreme Court has always said without exception that procedural conditions for appealing a case are jurisdictional. "When an appeal is 'not taken within the time prescribed by law,' the 'Court of Appeals [is] without jurisdiction.'" Gonzalez, 565 U.S. at 159 (Scalia, J.,dissenting) (citing George v. Victor Talking Machine Co., 293 U.S. 377, 379 (1934); United States v. Robinson, 361 U.S. 220, 229–230 (1960)).

6.       The amended motion Doc 798 admits on its face on page 8 of 67 that on Jan 7, 2019 NLG counsel Juan Ramirez Jr. told his client Chris Kosachuk "**Let's make sure we don't blow the 14 days to move from relief from the Dec. 28 order**." but it was not timely filed. The email also evidences an intent to file the motion to stay the time for appeal.

7.       Because the Rule 59 motion was not timely filed, the court lacks discretion under that rule. Under Rule 60, "[e]vidence that is available to a party prior to entry of judgment ... is not a basis for granting a motion for reconsideration as a matter of law." No new evidence is suggested by the motion. No new evidence is shown by the motions at bar.

8.       Although the court may consider excusable neglect with regard to bankruptcy rule 60, it does not have jurisdiction to do so with regard to the time to file a rule 59 motion, or appeal, which is jurisdictional because it arises from the statute.

Wherefore Reorganized Discharged Debtor respectfully requests that the NLG's Motion and Amended Motion be denied.

Joel M. Aresty, P.A.
Attorneys for Reorganized Discharged
Debtor Liza Hazan a/k/a Elizabeth Hazan
309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                                Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

          Debtor,

_____/

NLG, LLC
A Delaware limited liability company and
CHRIS KOSACHUK, an interested party                    Adv. No. 18-1492-AJC

          Plaintiffs,

v.

LIZA HAZAN a/k/a ELIZABETH HAZAN
SEAN NEIL MEEHAN, PORTEFOLIO
ONESOURCE ADVISOR, LLC, A
FLORIDA LLC, PORTFOLIO ONESOURCE
ADVISORS, LLC, A DELAWARE LLC
AND HORIZON HOSPITALITY GROUP,
LLC

          Defendant/Debtor.

_____/


## <u>AMENDED COMPLAINT TO REVOKE CONFIRMATION ORDER</u>
## <u>AND DISCHARGE ORDER FOR FRAUD</u>

        Plaintiff, NLG, LLC, ("NLG") through undersigned counsel, and Chris Kosachuk, *pro se,*

hereby sue Defendant Debtor, Liza Hazan, a/k/a Elizabeth Hazan, her husband Sean Neil

Meehan, Portefolio Onesource Advisor, LLC a Florida LLC, Portfolio Onesource Advisors,

LLC, a Delaware LLC and Horizon Hospitality Group, LLC, to revoke the Confirmation and

Discharge Orders for fraud and alleges as follows:

## COUNT I

1. This is an action against the Debtor, her husband and various shell companies which were used to hide assets and defraud her creditors during the bankruptcy proceeding, to revoke the Confirmation Order [BK ECF No. 691 and attached hereto as Exhibit 1] for fraud pursuant to 11 U.S.C. § 1144, Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(d)(3).

### Parties, Jurisdiction and Venue

2. Plaintiff, NLG, is a Delaware limited liability company and the largest creditor of Debtor Defendant Liza Hazan.

3. Plaintiff, Chris Kosachuk, is an interested party.

4. Debtor/Defendant Liza Hazan (the "Debtor") is the debtor in the bankruptcy case of *In re Liza Hazan a/k/a Elizabeth Hazan*, Case No. 16-10389-AJC, pending before this Court (the "Bankruptcy Case").

5. Sean Neil Meehan is the Debtor's husband, alter-ego and co-conspirator.

6. Portefolio Onesource Advisor, LLC ("Portefolio") is a Florida LLC and the alter-ego and co-conspirator of Debtor Hazan.

7. Portfolio Onesource Advisors, LLC, ("Portfolio") is a Delaware LLC and the alter-ego and co-conspirator of Debtor Hazan.

8. Horizon Hospitality Group, LLC, ("Horizon") is the alter-ego and co-conspirator of Debtor Hazan.

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§§ 157(b), 1334(b) and 2201(a) because this action is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L). The statutory predicate for the relief requested is 11 U.S.C. § 1144, Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(d)(3). The Bankruptcy Rules provide that "a

proceeding to revoke an order of confirmation of a chapter 11 … plan" is an adversary proceeding. Fed. R. Bankr. P. 7001(5).

10.     Venue is proper in this Court under 28 U.S.C. § 1409 because this action arises in or relates to the Bankruptcy Case.

11.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

<p align="center">**Factual Allegations**</p>

**A.  The Fraudulent Official Bank Checks Used for Confirmation**

12.     The Debtor filed the Bankruptcy Case on January 11, 2016.

13.     In order to proceed to confirmation and obtain the Confirmation Order, the Debtor filed several documents to support her contention that she had made all the payments to unsecured creditors pursuant to the proposed Plan.  [*See* BK ECF No. 684, 688 and 713].

14.     At the confirmation hearing on May 30, 2018 the following exchange in regards to these payments to unsecured creditors occurred:

> THE COURT: And the United States Trustee have a position?
>
>      MS. ARMENGOL:  Your Honor, we have reviewed all the payments and the checks that Ms. Hazan has with her, and we can confirm that she has all of those, in addition to unpaid taxes that she paid for 2016 and 2017, which was an issue we had raised at prior hearings. So with that, Your Honor, we have no objection to confirmation.
>
> May 30, 2018 Transcript, p. 10 and attached hereto as Exhibit 2

15.     Those payments included a series of official checks.  Those official checks have also been presented to Judge Moreno in NLG's Appeal of this Court's November 1, 2017 Final Judgment [*See NLG, LLC v. Selective Advisors Group, LLC and Liza Hazan*, Case No. 18-24272-CIV-MORENO ECF No. 25-1].  Copies of the relevant checks filed with Judge Moreno are attached hereto as Exhibit 3.

16.     The Debtor refers to unsecured Class #12 claims as being paid in full in her post confirmation hearing Declaration of Disbursements BK ECF No. 684 filed on May 31, 2018. Attached hereto as Exhibit 4 is this declaration of disbursements.

17.     The Debtor refers to those same unsecured class #12 creditors being paid in full in her post confirmation hearing Declaration of Disbursements BK ECF No. 688 filed on June 1, 2018 with each class #12 claim being listed separately.  Attached hereto as Exhibit 5.

18.     Debtor's attorney, Mr. Aresty, then filed a post confirmation hearing motion BK ECF No. 713 on July 5, 2018 and again referenced completed payments made to those same unsecured creditors.  Attached hereto as Exhibit 6.

19.     Each of these docket entries purports that the following creditors were paid in full:

Sterling Emer Svcs Class #12 for $2,445.30;

Mount Sinai Phys Practice Class #12 for $295.91; and

Mount Sinai Phys Practice Class #12 for $3,240.00.

20.     In fact, Debtor Hazan never sent these official checks to her unsecured creditors because she simply returned these official checks back to her bank and signed the backs of the official checks with the statement "NOT USED FOR PURPOSE INTENDED" the day after the confirmation hearing on May 31, 2018. As such, Debtor Hazan provided knowingly false evidence of payments to this Court, the District Court and United States Trustees Office.

21.     The copies of the official checks confirming that the official checks were returned to her bank are attached hereto as Exhibit 7.

22.     As can been seen from the official checks, they were purchased from the bank on May 29, 2018, photographed, and then used by the Debtor as evidence of payment confirmation at the confirmation hearing on May 30, 2018.

23.     Debtor thereafter simply returned to the bank for refunds on May 31, 2018, the day after the Debtor defrauded this Court.

24.     After the Debtor returned these official checks to the bank on May 31, 2018, she filed her perjurious Declarations of Disbursements with this Court on June 1, 2018 [ECF No. 684 and 688 and Exhibit 4 and 5 herein] claiming that these unsecured creditors had been paid when in fact they had not been paid.  When the Debtor filed these Declarations, she swore under the penalty of perjury that the declarations were true when in fact they were knowingly false.

25.     The Debtor (1) made this false representation to the Court; (2) knew that the Declarations were false because she had just returned those checks to the bank the day before; (3) that the representation was made to induce the court to rely upon it; (4) that the court did rely upon it; and (5) that as a consequence of such reliance, the court entered the confirmation order. [*See* BK ECF No. 691 Confirmation Order and attached hereto as Exhibit 1].

26.     In reliance on these knowingly fake checks and false declarations, the Debtor induced the United States Trustee to support confirmation of the Plan which she did and in turn induced this Court to confirm the Plan, which it did, also relying on these fake payments.

**The Debtor's Undisclosed Asset and Transfer and Mortgages**

27.     Prior to August 15, 2011, the Debtor owned a residential condo unit located at 1 East 62nd Street No. 1A, New York, New York 10065 (the "Spencer Condo"). On August 15, 2011, the Debtor transferred the New York Condo out of her name and into the name of an individual named Raymond Houle for no consideration (the "Spencer Condo Transfer").  Mr.

Houle eventually transferred the condo, again for no consideration, to Real Estate Holding Group, LDC, an entity controlled by the Debtor's husband, Sean Meehan. *See* Deed Transfers and Affidavit by Mr. Meehan, [Exhibit 8].

28.    The first Spencer Condo Transfer occurred just a little over four years prior to the Petition Date.

29.    Although that is outside the four-year statute of limitations under Chapter 726 of the Florida Statutes, it is well within the six-year statute of limitations period applicable to fraudulent transfers under the law of New York, where the transfers occurred.

30.    The Debtor owes a substantial tax liability to the IRS (about $485,703.40) that was incurred before the Spencer Condo Transfer. *See* [BK ECF No. 21 p. 13 and BK ECF No.563 p. 15 and IRS Proof of Claim #3].

31.    In addition to being actionable under New York law, the Spencer Condo Transfers may also be voidable under Florida law and Section 544(b).

32.    Although the Debtor claimed in the Fifth Amended Disclosure Statement that she had completed her investigation into potentially voidable transfers, the Spencer Condo Transfer was not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [*See* BK ECF No. 562 p. 12, BK ECF Nos. 21 and 90].

33.    Debtor Hazan concealed her ownership interest in the Spencer Condominium. She clearly is still the beneficial owner even though she fraudulently conveyed the title. Attached hereto as Exhibit 9 is one of those mortgages recorded on the Spencer Condo to the Hazan's attorney Geoffrey Aaronson's law firm, for $145,000. Attorney Aaronson was counsel of record for the Debtor in the Bankruptcy Case.

34.    This mortgage also discloses mortgages to three other unsecured but preferred creditors, Bruce Jacobs for $55,000, Robert P. Lithman for $95,000 and Mark Cohen for $25,000. These three attorneys represented Hazan and her husband's corporation, Selective Advisors Group, LLC, at various stages of the state court foreclosure proceedings in front of Judge Gordo.

35.    All three were listed as unsecured creditors in the Debtor's original bankruptcy petition and have now become secured creditors to the detriment of the other creditors.

36.    Attorney Aaronson was present at the confirmation hearing, supported confirmation but never disclosed his secured creditor status, nor the other attorneys' secured creditor status, to the detriment of all other creditors.

37.    In fact he told the Court: "Good afternoon, Your Honor. Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also former counsel for the debtor. I'm appearing here on behalf of my firm, basically just an interested party. We're appropriately dealt with in the plan".  May 30, 2018 Confirmation Hearing Transcript p. 4.

38.    Attorney Aaronson knew that representation he just made was misleading and without belief in its truth, or was made with reckless disregard for the truth because Mr. Aaronson was the holder of a Mortgage executed on November 14, 2016, secured by the Spencer Condo and thus his claim was not actually part of the Plan.

39.    In fact, Attorney Aaronson even notarized the mortgage and agreed that upon payment, he would return the original Promissory Note and Mortgage directly to Debtor Hazan.

40.    Attorney Aaronson made the false representation to induce the court to rely upon it; the court did rely upon it; and, as a consequence of such reliance, the court entered the confirmation order.

41.     Attorney Aaronson's false representation to this Court started on the day he filed the petition.  Introduce his settlement letter.

## COUNT II

### The Debtor's Concealment of Business Ownership and Bank Accounts
### (Violation of 18 USC 152)

42.     The Debtor concealed her ownership interest in Portefolio Onesource Advisor, LLC and its bank account[s].  The Debtor disclosed to BB&T Bank that she is self-employed and that Portefolio is her employer.  As such, she should have disclosed the BB&T Portefolio bank account on her schedules and monthly operating reports.   The debtor failed to honor this obligation.

43.     Additionally, the Debtor received at least $48,000 in wire transfers from the bank account of Portefolio as disclosed by her DIP bank statements from City National.

44.     The Debtor's husband, Mr. Meehan, assisted the Debtor in this concealment scheme.

45.     Mr. Meehan aided and abetted his wife in this bankruptcy fraud by opening bank account[s] for Portefolio and claiming that the business is his in order to avoid the scrutiny of the bankruptcy court and creditors.

46.     The Debtor disclosed her ownership in another shell company with a suspiciously similar name, Portfolio Onesource Advisors, LLC but failed to provide any other information about this entity.

47.     With the assistance of her husband, the Debtor concealed her ownership interest in Horizon and its bank account[s].

## COUNT III

**The Debtor False Oaths**
**(Violation of 18 USC 152)**

48.     Debtor claimed to be a director and associated with the business 9197-5904 Quebec, Inc. ("Quebec") and that the business of Quebec was "Real Estate".  [ECF No 90 p. 27]. This statement is demonstrably false because Quebec's sole business purpose was to own the Lorret Judgment and a 2012 New York Judgment by Confession obtained by Quebec against NLG, neither of which is real estate or even related to real estate.

49.     As such the Debtor made false oaths in her bankruptcy.

## COUNT IV

**The Debtor's False Claims – 6913 Valencia, LLC Sham Mortgage**
**(Violation of 18 USC 152)**

50.     6913 Valencia, LLC is a Florida LLC allegedly controlled by the Debtor's mother.  Ms. Hazan claims to have received a $2 million mortgage on the Fisher Island Property however, this mortgage is a sham as $2 million never changed hands.

51.     Additionally this mortgage was foreclosed out of the Fisher Island Property by NLG's Final Judgment of Foreclosure.

52.     6913 Valencia's ballot cast for the plan is also a sham and should be stricken.

53.     The ballot was filed by the Debtor's attorney, David Langley and signed by the Debtor herself.

## COUNT V

**The Debtor's Embezzlement from the Bankruptcy Estate –**
**Counter Checks written to the Debtor herself and cashed**
**(Violation of 18 USC 153)**

54.  The Debtor cashed over $100,000 in counter checks from the DIP bank accounts and therefore embezzled from the bankruptcy estate.

## COUNT VI

### The Debtor's Bankruptcy Fraud
### (Violation of 18 USC 157)

55.  The confirmation order is supported by the November 1, 2017 Final Judgment which is based on a void as a matter of law sham judgment by confession from New York and therefore all judgments and orders dependent on it are also void as a matter of law.

56.  Liza Hazan (the "Debtor") filed her Chapter 11 Petition almost three years ago, on January 11, 2016 (the "Petition Date"), the day before a foreclosure sale was to take place on her Fisher Island Property.

57.  At the time of the petition filing, JMB/Urban 900 Development Partners, LTD ("JMB") was also a judgment creditor of Debtor Hazan in the amount of $664,380.47.

58.  JMB timely filed a proof of claim for that amount. [*See* Proof of Claim #4]. Because the Debtor failed to schedule JMB's judgment as a liability, the Debtor's voluntary petition and schedules were fraudulent.

59.  Thereafter JMB filed an adversary proceeding to determine the non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and (6) and Federal Rule of Bankruptcy Procedure 4007 against Debtor/Defendant Liza Hazan *aka* Elizabeth Hazan. [*See JMB v. Hazan.* Case No. 16-ap-1188-AJC ECF No. 1].

60.  JMB brought the action to object to the dischargeability of debt owed by the Debtor to JMB under a final judgment entered by the Circuit Court of Cook County, Illinois, which forms the basis of JMB's proof of claim in this case. JMB alleged that the debt should not

Case 1:22-cv-20485-RNS Document 6-18 Entered on FLSD Docket 04/14/2022   Page 177 of
889
Case 1:16-ap-01188-AJC   Doc 18   Filed 07/25/19   Page 11 of 16

be discharged because it is subject to the "fraud" exceptions contained in 11 U.S.C. §§ 523(a)(2)
and (6), for money obtained by the Debtor by false pretenses, false representation, or actual fraud
and while the Debtor was acting in a fiduciary capacity.

61.    The adversary proceeding concluded with the entry of an Agreed Final Judgment
entered on July 20, 2016 in the non-dischargeable amount of $275,000 along with provisions for
a timely payment of said Judgment.  [*See JMB v. Hazan.* Case No. 16-ap-1188-AJC ECF No. 21
and attached hereto as Exhibit 11].

62.    Each party negotiated for key provisions provided for in the Agreed Final
Judgment.  JMB agreed to reduce the amount it was owed to $275,000, but was now a non-
dischargeable judgment and would be timely paid in full by the Debtor on or before July 20,
2018 without further litigation or collection activity and expense.

63.    JMB agreed to support and vote for Debtor's Plan of Reorganization so long as
said Plan required payment to JMB in the amounts set forth in this Non-Dischargeability
Judgment prior to the Second Anniversary Date (July 20, 2018), and does not treat JMB in a
manner less favorable to other unsecured creditors under the plan with respect to its now agreed
upon $275,000 unsecured non-dischargeable claim.

64.    While the Debtor may establish a convenience class of small claims to which it
may pay 100 cents at confirmation -- provided this class does not exceed $30,000 in the
aggregate -- the Debtor shall not make any other cash payments to its other creditors unless JMB
receives a like percentage of cash on its $275,000 claim at the time of the distribution.  JMB's
claim is listed as Claim #4 in the Plan.

65.    In reliance of the Agreed Final Judgment, JMB gave the debtor breathing room
and time to confirm the Plan.

66.    JMB patiently waited for two years, dutifully voted for the Plan and with JMB's support, the Plan was confirmed.

67.    At or just before the Confirmation Hearing on May 30, 2018, the Debtor paid Creditor Valencia Estates Homeowner's Association $74,101.63 of the $195,072.14 owed according to the Plan as Claim #10. [*See* ECF No. 563, p. 11].

68.    This payment equals 38% of what was owed to this Creditor and triggered an immediate of 38% payment to JMB or approximately $104,000.  However, the Debtor defaulted in making this 38% payment to JMB.

69.    Pursuant to the terms of the Agreed Final Judgment, the Debtor was to satisfy the judgment in full on July 20, 2018.  Again the Debtor failed to make payment to JMB due on July 20, 2018. Indeed the Debtor's financial projections attached to her Fifth Amended Disclosure Statement, [ECF No. 562-4], showed a $275,000 payment to JBM in July 2018.

70.    On August 15, 2018, S&S Collections, Inc., the collection arm of the Debtor's lawyer Michael Simon of Simon & Sigalos, filed a notice of Compliance Regarding Claim #13. [*See* ECF No. 737].  The Notice read: "Undersigned counsel received the settlement funds and the settlement is paid in full." This payment in full to S&S triggered a full payment to JMB.  The Debtor again failed to honor her agreement and failed to pay JMB.

71.    The Debtor clearly defrauded JMB into supporting the Plan and into accepting 41% of what it was owed when the Debtor was and is capable of paying JMB 100% of what is owed.

72.    As detailed above, revocation of the Confirmation Order is justified.

## COUNT VII

73.     NLG incorporates the allegations of paragraphs 1 through 72 of the complaint as though fully set forth herein.

74.     This is an action seeking to revoke the Discharge Order [BK ECF No. 766 and attached hereto as Exhibit 10] pursuant to 11 USC §727.

75.     Because the Confirmation Order was procured via fraud it is now appropriate to revoke the Discharge Order as well.

**WHEREFORE**, NLG respectfully requests that the Court enter judgment (a) revoking the Discharge Order for Fraud pursuant to 11 U.S.C. § 1144, Fed. R. Bankr. P. 9024, Fed. R. Civ. P. 60(d)(3) and 11 USC §727 (b) awarding NLG its reasonable attorney's fees and costs incurred against the Debtor and her attorneys and (c) granting such other and further relief as the Court deems appropriate.

Dated:  January 13, 2019

                                        Respectfully submitted,

**Attorneys for NLG, LLC**

Juan Ramirez, Jr.                       Astrid E. Gabbe
ADR Miami LLC                           The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 201952                  Florida Bar No. 635383
ADR Miami LLC                           P.O. Box 4216
1172 S. Dixie Hwy. #341                 Hollywood, FL 33083
Coral Gables, FL 33146                  Tel. (954) 303-9882
(305) 667-6609                          Fax. (954) 983-1427
jr@adrmiami.com                         astridgabbe@gmail.com

**Pro Se Plaintiff**
Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

**CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of foregoing was served via CM/ECF, email or U.S. Mail to the parties on the attached service list as indicated on this 13th day of January 2019.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

### Via CM/ECF/Email

Geoffrey S. Aaronson on behalf of Liza Hazan
gaaronson@aspalaw.com

Daniel A. Bushell on behalf of Liza Hazan
dan@bushellappellatelaw.com

# EXHIBIT 1



ORDERED in the Southern District of Florida on June 11, 2018.

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**


In re:                                        Case No: 16-10389 AJC
                                              Chapter 11
Liza Hazan
 Debtor.                    /

ORDER CONFIRMING PLAN OF REORGANIZATION

THIS MATTER came before the Court on May 30, 2018 at 2:00 PM. upon Doc 563 Liza Hazan a/k/a Elizabeth Hazan's Fourth Amended Plan of Reorganization and Doc 562 Liza Hazan a/k/a Elizabeth Hazan's Fifth Amended Disclosure Statement both filed 11/15/17 proposed by (the "Debtor" or "Proponent") and Order Approving Amended Disclosure Statement and Setting Hearing on Confirmation of Plan entered 12/13/17 Doc 580.

In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i) *Certificate on Acceptance of Plan and Tabulation of Ballots Filed by Debtor Doc 681*, (the "Ballot Certificate") and (ii) *Confirmation Affidavit Filed by Debtor Doc 680,* (the "Confirmation Affidavit"). The Court has also: (i) reviewed and considered the entire record in this Chapter 11 Case, including the *Proponent's Disclosure Statement* and the Plan; (ii) considered the argument of counsel; (iii) considered the testimony of the Debtor as set forth in the Confirmation Affidavit which was proffered at the Confirmation Hearing without objection, and representations of counsel at the hearing, and (iv) considered the other evidence presented at the hearing.

The only creditors who previously objected to or voted against the plan were present, and announced that they were changing their votes to support the plan or had no objection.

# I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure. Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises,* 256 B.R. 377, 385 n,2 (Bankr. N.J, 2000); *In re Antar,* 122 B,R, 788, 789 (Bankr. S.D. Fla. 1990).

A. The Court conducted a hearing to consider approval of the Disclosure Statement and Plan filed by the Debtor.

B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan.  Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(I) and (b)(2)(L), 1334(a) and (b), the United States District Court's general Order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly), satisfies section 1123(a)(1) of the Bankruptcy Code;

G. Articles II through V  of the Plan specify any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfy section 1123(a)(2) and (3) of the Bankruptcy Code;

H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment, if applicable, and accordingly, satisfies section 1123(a)(4) of the Bankruptcy Code;

I. The Disclosure Statement Article III  sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code; the Plan will be funded through funds from the ongoing operation of the Debtor's properties and jobs;

J. Each of the Voting Classes have accepted the Plan in the requisite number of

ballots, and in the requisite dollar amount, as required pursuant to 11 U.S.C
§ 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly set forth the tabulation of votes, as required by the
Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the
Southern District of Florida;

L. The Plan was voted on by all Classes of Impaired Claims that were entitled to
vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation
Procedures Order;

M. The Ballot Certificate and evidence at the hearing reflects that all Classes have accepted or
not rejected the Plan;

N. All other objections to confirmation were announced to be settled at the Confirmation
Hearing;

O. The Plan complies with all applicable provisions of the Bankruptcy Code,
including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under
the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the
Debtor as the Proponent;

P. The Proponents of the Plan complied with all applicable provisions of the
Bankruptcy Code, including 11 U.S.C. § 1129;

Q. The Plan has been proposed and submitted to all Creditors and Interest Holders in good
faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R. All payments made, or to be made, by the Debtor in connection with this Chapter 11 case or
in connection with the Plan either have been approved by or are subject to the approval of the
Bankruptcy Court, including applications for compensation and reimbursement of expenses
and, therefore, the Plan satisfies the requirements of 11 U .S.C. § 1129(a)(4);

S. The Proponent of the Plan has disclosed the identity of the individual Reorganized Debtor,
who will serve after the Confirmation Date and, therefore, the Plan satisfies the requirements
of II U.S.C. § 1129(a)(5);

T. The Plan does not discriminate unfairly, is fair and equitable, and otherwise
complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to
each Class of Claims or Interests that are impaired under the Plan, including without limitation,
creditors holding Unsecured Claims who will receive more on account of their Claims under
this Plan, than they would receive in a chapter 7 liquidation;

U. The Plan and Disclosure Statement were accompanied by projections that support the
financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11U.S.C. §
1129(a)(11) are satisfied;

V. The ongoing operation of the properties and incomes of Debtor will provide sufficient funds available for the payment in whole of: (i) Allowed Administrative Expense Claims (unclassified), which will be paid on the Effective Date; (ii) United States Trustee's Fees (unclassified); secured claims and a dividend to unsecured creditors.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS**:

1**.** The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129.

2. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All of the Terms and provisions of the Disclosure Statement and Plan are approved.

4. There are no allowed Administrative Expense Claims other than those of the Debtor's professionals and US Trustee fees. Administrative Expense Claims related to professional fees and costs shall be awarded by separate order of the Court.

5. Discharge. Because the Debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the Court may grant a discharge to the Debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and **(iii)** subparagraph (C) permits the court to discharge; and **(C)** the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the Debtor; and **(ii)** there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

6. As of the Effective Date all pre-petition property of the estate shall re-vest in the Reorganized Debtor.

7. Any judgment obtained in any court other than this Court is null and void as a determination of the individual liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 USC § 1141.

4

8.  All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived

9. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

10. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within ten (10) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a order by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

11. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and upon this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court approved local form.

12. The Reorganized Debtor shall pay all allowed claims at such time an in such amounts as provided for in the Plan.

13. The failure to reference or address all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, except as otherwise provided herein.

14. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacation of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

15. The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the

5

Plan, the Disclosure Statement, the Modification, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Orders and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). The Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

16. **All executory contracts and unexpired leases listed in Article VI of the Plan are deemed either assumed or rejected as indicated in the Plan as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as they deem appropriate in the exercise her business judgment without the need for a motion and hearing in this Court.**

17. The Bankruptcy Court shall retain jurisdiction:

(a) To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b) To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c) To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d) To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e) To determine the validity, extent and priority of all liens, if any, against property of the estate;

(f) To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

(g) To determine all objections to Administrative Claims;

(h) To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

(i) Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

(j) To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

(k) To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(I) To determine any tax Iiability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(m) To enforce any and all injunctions created pursuant to the terms of the Plan;

(n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(0) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

18.        Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,

upon completion all payments required under the Plan to unsecured creditors. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Unsecured Creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns.  The Motion to Close shall certify that each of the above conditions have been met.

(c)     The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties.  The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)     During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the

treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e)     Upon the satisfaction of all payments required under the Plan to Unsecured Creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Unsecured Creditors.

(f)     Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Unsecured Creditors have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).


###

Submitted by: David W. Langley who will serve copies to: all creditors and appearances.

8

Case 1:22-cv-21485-RNS Document 68-16 Filed 01/25/01 Page 24 of 726    Page 190 of
Case 1:19-cv-21452-XXX   Doc 16   Entered 01/14/19   Page 24 of 116
889

# EXHIBIT 2

Page 1

1                  UNITED STATES BANKRUPTCY COURT

                     SOUTHERN DISTRICT OF FLORIDA

2                         MIAMI DIVISION

3

4

5

      IN RE:                          CASE NO. 16-10389-AJC

6                                     CHAPTER 11

      LIZA HAZAN,

7

              Debtor.

8      _____/

9

10

11                  ECF# 563, 590, 599, 607, 610

12

13                         May 30, 2018

14

15            The above-entitled cause came on for hearing

16      before the Honorable A. JAY CRISTOL, one of the Judges in

17      the UNITED STATES BANKRUPTCY COURT, in and for the

18      SOUTHERN DISTRICT OF FLORIDA, at 301 North Miami Avenue,

19      Miami, Miami-Dade County, Florida, on May 30, 2018,

20      commencing at or about 2:12 p.m., and the following

21      proceedings were had:

22

23

24            Transcribed from a Digital Audio Recording by:

                  Margaret Franzen, Court Reporter

25

Page 2

1                        APPEARANCES:

2

                    DAVID W. LANGLEY, ESQUIRE
3                    On behalf of the Debtor

4

5                    JOEL M. ARESTY, ESQUIRE
                    Former Counsel for the Debtor
6

7

                    AARONSON SCHANTZ BEILEY, by
8                    GEOFFREY S. AARONSON, ESQUIRE
                    Former Counsel for the Debtor
9

10

                    MARSHALL SOCARRAS GRANT, by
11                        JOE M. GRANT, ESQUIRE
                    On behalf of Selective Advisors Group

12

13

                    REBECCA CASAMAYOR, ATTORNEY-AT-LAW
14          On behalf of Valencia Homeowners' Association

15

16                    JUAN RAMIREZ, ESQUIRE
                    On behalf of NLG, LLC

17

18

            OFFICE OF THE UNITED STATES TRUSTEE, by
19              JOHANNA ARMENGOL, ATTORNEY-AT-LAW
                        Attorney/Advisor
20              On behalf of the United States Trustee

21

22                    ALSO PRESENT:

23

                    LIZA HAZAN, Debtor
24          ECRO - Electronic Court Reporting Operator

25

                    - - - - - - -

Page 3

```
 1              THE COURT:  The next matter is Liza Hazan.

 2              MR. ARESTY:  Your Honor, if it please the

 3    Court, Ms. Hazan is out in the conference room doing a

 4    last minute settlement that should result in a consensual

 5    plan.

 6              I'm here also for the Blohm matter, which is

 7    consensual and has no objections.

 8              (Thereupon, the Court heard another matter

 9    on its calendar, after which the following proceedings

10    were had:)

11              THE COURT:  We'll adjourn the Blohm matter

12    and see how soon we are ready to get back to the Hazan

13    matter.

14              Appearances on Hazan.  Apparently Mr. Furr

15    is reported to be out in telephone land.  Are you out

16    there, Mr. Furr?

17              COURTCALL OPERATOR:  Mr. Furr did not check

18    in on CourtCall, Your Honor.

19              THE COURT:  Okay.  Who else is here?

20              MR. LANGLEY:  Good afternoon, Your Honor.

21    David Langley here for the debtor, Elizabeth Hazan, and

22    Ms. Hazan is in the courtroom with us.

23              MS. CASAMAYOR:  Rebecca Casamayor,

24    C-a-s-a-m-a-y-o-r, here for the creditor, Valencia

25    Homeowners' Association.
```

Case 1:22-cv-2485-RNS DAAO Doc 68 Entered 07/25/DO PageDD4/2D2 Page 194 of
Case 1:03-cv-02485-RNS DD9 Doc 18 Filed 01/12/19 Page 26 of 116
889

Page 4

1          MR. GRANT:  Good afternoon, Your Honor.

2     Joe Grant, G-r-a-n-t, on behalf of Selective Advisors

3     Group.

4          MS. ARMENGOL:  Good afternoon again,

5     Your Honor.  Johanna Armengol, A-r-m-e-n-g-o-l, for the

6     U.S. Trustee.

7          MR. ARESTY:  Joel Aresty, A-r-e-s-t-y, I was

8     former counsel for the debtor-in-possession, I'm still a

9     creditor, Your Honor, and was helping out Ms. Hazan with

10    some of the forms.

11         MR. AARONSON:  Good afternoon, Your Honor.

12    Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also

13    former counsel for the debtor.  I'm appearing here on

14    behalf of my firm, basically just an interested party.

15    We're appropriately dealt with in the plan.

16         MR. RAMIREZ:  Good morning, Your Honor --

17    afternoon.  Juan Ramirez, R-a-m-i-r-e-z, on behalf of NLG.

18         THE COURT:  Thank you.  Anyone else?

19         All right.  Where are we and what are we

20    going to do here today?

21         MR. LANGLEY:  Judge, we're here to confirm

22    the fourth amended plan.

23         First a housecleaning matter, if I may,

24    Judge?  There was one pending objection to confirmation by

25    the Valencia Homeowners' Association, and we just worked

Page 5

```
 1    that out today.  We have a proposed stipulation that I'll
 2    be filing today between the debtor and Valencia that takes
 3    care of their objection.
 4              We tendered -- Ms. Hazan tendered a
 5    cashier's check for the amount due that we agreed upon to
 6    Valencia, and with that, they've agreed to withdraw their
 7    objection to confirmation and to change their ballot from
 8    objecting to accepting.
 9              THE COURT:  That's your position Mrs. --
10    Ms. Casamayor?
11              MS. CASAMAYOR:  Yes, that's correct.  We are
12    also dealt with in the plan, but as far as just the
13    objection and the basis for the objection, that's been
14    resolved through the stipulation and the cashier's check.
15              THE COURT:  Very well.  What's next?
16              MR. LANGLEY:  Yes, we're asking that the
17    Court approve the stipulation, which we will be filing.
18              THE COURT:  You both agreed.
19              MS. CASAMAYOR:  Yes.
20              THE COURT:  The Court will always endorse an
21    agreement, unless something unusual prevents it.  So you
22    can ---
23              MS. CASAMAYOR:  I don't think there's
24    anything usual.  We'll -- we'll just submit it ---
25              THE COURT:  All right.  Then you can submit
```

Case 1:22-cv-2485-RNS-AOC Document 68 Entered on FLSD Docket 04/2022 Page 196 of
Case 1:23-cv-22423-AOC Doc 18 Filed 01/25/19 Page 50 of 116
889

1    an agreed order on it.

2              MS. CASAMAYOR:  Yes, yes, we'll file it --

3              MR. LANGLEY:  Okay.  Very good.

4              MS. CASAMAYOR:  -- and submit an agreed

5    order.

6              THE COURT:  Very well.

7              MR. LANGLEY:  Very good.  Thank you, Judge.

8              We have essentially worked out every

9    other -- agreements with every other creditor.  I don't

10   know that anybody is actually objecting from NLG.  If we

11   need to address that, we will.

12             MR. RAMIREZ:  Yes.  Well, I just want to

13   make sure the Court realizes that we have an appeal

14   pending, and the appeal was reinstated by Judge Gayles.

15   Now they have raised the fact that they don't think your

16   final order that you entered in the adversary proceeding

17   was, indeed, a final order, so they are -- raised that

18   now.  So if that is not a final order, then that is still

19   pending before you in this -- in this case.

20             THE COURT:  And has there been a supercedes

21   entered in that case?

22             MR. LANGLEY:  Yeah, nothing -- nothing

23   entered, Judge.

24             Mr. Ramirez is correct, there is an issue

25   pending before Judge Gayles on whether the final judgment

Case 1:22-cv-22485-RNS Document 63-15 Entered on FLSD Docket 06/14/2022  Page 197 of
Case 1:19-bk-24862-AJC  Doc 18  Filed 01/24/19  Page 51 of 116
889

 1  of November 1, that's the -- the name of the document,

 2  whether it's actually final for appellate purposes.  It

 3  resolved three out of nine counts in the adversary, it

 4  left some remaining to go to trial, so I think it pretty

 5  clearly is not, but that's an issue for Judge Gayles.

 6          For confirmation purposes, there's nothing

 7  in the NLG matters that would affect confirmation.  The

 8  final judgment of November 1, 2017 is the law of the case

 9  and it states that the mortgage has been satisfied, that

10  the claim has been disallowed, and that NLG has no

11  standing in this case.

12          The Tucker case that we cited to the Court

13  in our motion, and I have a copy if the Court would like

14  it, it stands for the -- it's a Middle District case, it

15  stands for the proposition that absent a motion for stay

16  relief, the pendency of an appeal is not an impediment to

17  confirmation.

18          So despite everything else that we're doing

19  with NLG ---

20          THE COURT:  Well, it is not unless there is

21  a stay in place, but you're saying there is no stay.

22          MR. LANGLEY:  There's no stay.

23          THE COURT:  Mr. Ramirez, do you agree there

24  is no stay?

25          MR. RAMIREZ:  There is no stay, Judge.

Case 1:22-cv-22485-RNS Document 68 Entered on FLSD Docket 04/2022   Page 198 of
Case 1:93-bk-01021-AJC   Doc 18   Filed 01/24/19   Page 32 of 116
889

1              THE COURT:  Okay.

2              MR. RAMIREZ:  But I just want to correct

3      that it's not the law of the case until the appellate case

4      is decided.

5              THE COURT:  Well, but if something happens

6      in the interim, it may moot out the appeal, that's why it

7      makes a big difference.  If there's a stay, then nothing

8      can happen until that matter is decided, but if there is

9      no stay and things go along a track to where they're not

10     reversible, then it possibly or probably would moot the

11     issue, but in any event, what's next?

12             MR. LANGLEY:  And, Judge, the plan provides

13     for payment to unsecured creditors so that Ms. Hazan can

14     get a discharge, that doesn't affect NLG.  So I think

15     we're in a good position to -- to be confirmed.

16             We have filed a confirmation affidavit.  We

17     filed the debtor's certificate of compliance, that's

18     Docket Entry 677.  My certificate of proponent of plan,

19     acceptance of the plan, we've gone through the ballots and

20     with the change for Valencia to accepting, we have

21     100 percent acceptance of the plan.

22             And we have filed Ms. Hazan's confirmation

23     declaration, that's at Docket Entry 680, which is very

24     thorough, it goes through her -- her preparations of the

25     plan, it confirms that the plan complies with all of the

Page 9

1    requirements of Section 1129, and I would submit that to

2    the Court as a proffer, as our statement as to the

3    confirmability of the fourth amended plan.

4                    THE COURT:  So you're offering the affidavit

5    in evidence?

6                    MR. LANGLEY:  Yes, Judge, Docket Entry 680.

7                    THE COURT:  Any objection to the admission

8    of the affidavit into evidence?  There being no objection,

9    it is admitted in evidence.

10                   Does anyone wish to cross-examine the

11   affiant?  There being no request for same, it is admitted

12   in evidence without objection.

13                   Proceed.

14                   MR. LANGLEY:  That takes care of it, Judge.

15                   In addition to the plan being confirmable,

16   Ms. Hazan is here today with cashier's checks payable to

17   all of the creditors that get effective date payments, so

18   by the end of the day today, the effective date payments

19   will be paid.

20                   This bankruptcy, as you know, Judge, has

21   been a real impediment to Ms. Hazan's business, and we

22   would like to get this case administratively closed, if

23   possible, with an agreed order that we would submit.

24                   I don't know that we need any follow-up

25   hearings because the effective date payments are going out

1    today.  Nobody is objecting to that.  Nobody is objecting

2    to the confirmation.  Our goal is to try to get this case

3    administratively closed.

4                    THE COURT:  And the United States Trustee

5    have a position?

6                    MS. ARMENGOL:  Thank you, Your Honor.

7                    We have reviewed the certificates of plan

8    proponent and the ballot certificate, Document 677,

9    Your Honor, which was admitted into evidence before I was

10   able to stand up, was -- seems to have been filed by

11   Mr. Aresty.  Mr. Aresty is no longer counsel of record,

12   Your Honor.

13                   We would request that that be refiled by

14   Mr. Langley just to have the procedural -- all the

15   procedures correct before, you know, confirmation.

16                   In addition, Your Honor, we have reviewed

17   all the payments and the checks that Ms. Hazan has with

18   her, and we can confirm that she has all of those, in

19   addition to unpaid taxes that she paid for 2016 and 2017,

20   which was an issue we had raised at prior hearings.

21                   So with that, Your Honor, we have no

22   objection to confirmation.  However, we would request that

23   document 677 be refiled.

24                   THE COURT:  Mr. Langley --

25                   MR. LANGLEY:  Judge, it was.

Page 11

```
 1                    THE COURT:  -- any problem?

 2                    MR. LANGLEY:  It was refiled at Docket Entry

 3      680.  I -- I filed it.

 4                    THE COURT:  Does that cover it, Madam United

 5      States Trustee?

 6                    MS. ARMENGOL:  No, Your Honor.  That

 7      document needs to be refiled, Your Honor.

 8                    THE COURT:  All right.

 9                    MR. LANGLEY:  I can certainly do that today,

10      Judge.

11                    THE COURT:  Very well.  Then what else can

12      we do here today?

13                    MR. LANGLEY:  With Your Honor's permission,

14      we would like to submit an order confirming the plan; and

15      with Your Honor's permission, an agreed order

16      administratively closing the case.

17                    THE COURT:  Does the U.S. Trustee have any

18      objection to the administrative order closing the case?

19                    MS. ARMENGOL:  No, Your Honor, as long as

20      there's a certificate of compliance that all the payments

21      went out and that's filed --

22                    THE COURT:  Very well.

23                    MS. ARMENGOL:  -- prior to closing of the

24      case.

25                    THE COURT:  Very well.  Then, Mr. Langley,
```

```
 1    you may submit both of those orders, both are approved,

 2    and what else can we do other than say congratulations

 3    on --

 4                   MR. LANGLEY:  Yes, Judge, I think ---

 5                   THE COURT:  -- successfully completing an

 6    11?

 7                   MR. LANGLEY:  Yes, I think Ms. Hazan

 8    deserves some congratulations for --

 9                   MS. HAZAN:  Thank you, Judge.

10                   MR. LANGLEY:  -- getting it this far.

11                   MS. HAZAN:  Thank you, Your Honor --

12                   MR. LANGLEY:  Yes, thank you so much, Judge.

13                   MS. HAZAN:  -- for everything

14                   THE COURT:  Very well, then.  Anything

15    further before we adjourn?  Apparently not.

16                   THE MARSHAL:  All rise.

17                   THE COURT:  I wish you all a good day and

18    we'll adjourn this hearing.

19                   (Thereupon, the hearing was concluded.)

20

21

22

23

24

25
```

Page 13

```
 1

 2

 3                    CERTIFICATION

 4

 5   STATE OF FLORIDA      :

 6   COUNTY OF MIAMI-DADE   :

 7

 8           I, Margaret Franzen, Court Reporter and

 9   Notary Public in and for the State of Florida at Large, do

10   hereby certify that the foregoing proceedings were

11   transcribed by me from a digital recording held on the

12   date and from the place as stated in the caption hereto on

13   Page 1 to the best of my ability.

14           WITNESS my hand this 5th day of July 2018.

15

16

17           _____

18                   MARGARET FRANZEN

19           Court Reporter and Notary Public

             in and for the State of Florida at Large

20               Commission #GG187411

                   April 14, 2022

21

22

23

24

25
```

# EXHIBIT 3



THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

**OFFICIAL CHECK**

0304

ISSUING BRANCH  8540201-MIAMI - DADE - BRICKELL MAIN

DATE May 31, 2018

$295.91

PAY TO THE
ORDER OF    MOUNT SINAI PHYSICIAN PRACTICES

Two Hundred Ninety-Five and 91/100ths Dollars

$295.91

**BB&T**

AUTHORIZED SIGNATURE
Daylen Bible

MEMO/PURCHASER  LIZA ELIZABETH HAZAN  6913 Valencia    DAVE
MIAMI  FL 33109

0304  ⑆051402369⑆000104901009⑈



THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD AT AN ANGLE TO VIEW

OFFICIAL CHECK

0383

ISSUING BRANCH  8540201-MIAMI - DADE - BRICKELL MAIN

DATE  May 31, 2018

$2,445.30

PAY TO THE ORDER OF   STERLING EMER SVCS MIAMI BEACH PA

Two Thousand Four Hundred Forty-Five and 30/100th Dollars

BB&T

$2,445.30

AUTHORIZED SIGNATURE

MEMO/PURCHASER   LIZA ELIZABETH HAZAN

0383   ⑆051402369⑆000101901009⑉



THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW

**OFFICIAL CHECK**

0415

ISSUING BRANCH 8540201-MIAMI - DADE - BRICKELL MAIN

DATE May 31, 2018

PAY TO THE
ORDER OF    MOUNT SINAI PHYSICIAN PRACTICES

Three Thousand Two Hundred Forty and 00/100ths Dollars

$3,240.00

**BB&T**

$3,240.00

AUTHORIZED SIGNATURE

MEMO/PURCHASER   LIZA ELIZABETH HAZAN  6913 VALENCIA DRIVE
MIAMI FL 33109 SS 6020/7475

0415   05140 2369:000 10190 10097

Case 1:22-cv-21485-RMOR Document 28-6 Entered on FLSD Docket 02/14/2023 Page 208 of 889
Case 1:13-cv-24583-XXX Document 29-1 Entered on FLSD Docket 02/14/2023 Page 140 of 51
889



# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## THE SOUTHERN DISTRICT OF
## FLORIDA MIAMI DIVISION

### www.flsb.uscourts.gov

IN RE:

Case No:16-10389-AJC
Chapter 11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR. _____/

### DECLARATION OF DISBURSEMENTS FOR DEBTOR-IN-POSSESSION

The Debtor, files her declaration of disbursements pursuant to 28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury, and respectfully represents:

1.    I am the Debtor-in-Possession in this case and the Disbursing Agent appointed pursuant to the Fourth Amended Plan.

2.    On May 30, 2018 and May 31, 2018, following confirmation of my Fourth Amended Plan, I made disbursements as follows:

*CLASS / NAME OF CREDITOR*

| | |
|---|---|
| 5 – Valencia Estates Comm. Assoc. | $4,062.00 |
| 7 – Miami-Dade Water | $1,502.54 |
| 12 – Convenience Class | $12,958.04 |
| | |
| 1  IRS First payment Priority Claim | $2,674.34 |
| U.S Trustee | $ 651.07 |
| | |
| TOTAL: | $21,847.99 |

Liza Hazan

I declare under penalty of perjury of the Laws of the United States that the foregoing is true and correct. Executed on 5/31/18

# EXHIBIT 5

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF FLORIDA

### MIAMI-DADE DIVISION

#### www.flsb.uscourts.gov

In re:

LIZA HAZAN,

Debtor.

_____/

CASE NO.: 16-10389 AJC

CHAPTER 11

# DECLARATION OF DISBURSEMENTS FOR DEBTOR-IN-POSSESSION LIZA HAZAN

The Debtor, files this declaration of disbursements pursuant to 28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury, and respectfully represents:

1. My name, is Liza Hazan. I am over 21 years of age and fully competent to make this declaration. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

2. As of the date of this Declaration I have made the post-confirmation hearing Effective Date disbursements listed on the attached Exhibit A.

**I declare under penalty of perjury of the Laws of the United States that the foregoing is true and correct. Executed on 6/1/18**

Liza Hazan

**EXHIBIT A LIST OF EFFECTIVE DATE PAYMENTS PAID PURSUANT TO THE PLAN**

| CLASS | NAME OF CREDITOR | CLAIM NUMBER | SCHEDULED AND/OR CLAIMED AMOUNT | FIRST DIVIDEND TO BE PAID PURSUANT TO PLAN |
|---|---|---|---|---|
| 5 | Valencia Estates Comm. Assoc | #10 | $4,062.00 | $ 4,062.00 |
| 6 | Fisher Island Comm. Assoc. | | settled | $ 0 |
| 7 | Miami-Dade Water | #7 | $1,502.54 | $1,502.54 |
| 12 | Convenience Class: | | | |
| | IRS Claim #3 IRS first priority payment | | $ 24,663.00 | $ 1,085.00 $2,674.34 |
| | American InfoSource T Mobile Claim #2 | | | $ 1,130.00 |
| | American InfoSource Direct TV Claim #9 | | | $ 461.00 |
| | FPL Claim #11 | #13 | | $ 2,906.93 |
| | Sterling Emer Svcs | | | $2,445.30 |
| | Mount Sinai Phys  Practice | | | $295.91 $3,240 |
| | HSBC Bank USA NA | | | $1,070.66 |
| | Wells Fargo | #12 | | $323.24 |
| | U.S. Trustee | | | $651.07 |

# EXHIBIT 6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                          Case No: 16-10389 AJC
                                                                Chapter 11

Liza Hazan
 Debtor.                        /

**CORRECTED MOTION TO REOPEN,**
**FINAL REPORT AND MOTION FOR DISCHARGE,**
**AND MOTION FOR ENTRY OF FINAL DECREE AND TO RECLOSE**

        Reorganized Debtor Liza Hazan a/k/a Elizabeth Hazan, by and through her
undersigned counsel, files this Motion to Administratively Reopen Individual Chapter 11
Case to Obtain Discharge and Final Decree and to reclose ("Motion") and Pursuant to
Local Rule 3022-1(A), the undersigned files this Final Report and Motion for discharge and
Final Decree and represents:

        1. On May 30, 2018, the Court granted the Confirmation of the Chapter 11 Plan. The
Order granting confirmation of the Fourth amended plan filed on November 15, 2017
("Doc 563") was entered on June 12, 2018 and was docketed at Doc 691. The plan
provided for 41% payment of the unsecured allowed claims. On June 13, 2018 the
Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to
Administratively Close Individual Chapter 11 Case After Confirmation docketed at
Doc 692.

        2. As evidenced by the attached detailed accounting, the reorganized Debtor has
 now completed all payments called for under the Confirmed Plan and Confirmation
Order. The payments required by the plan have been distributed and all matters
to be completed upon the effective date of the confirmed plan have been
fulfilled or completed; Doc 684 Declaration of Disbursements.

        3. Having completed all plan payments, the reorganized Debtor is now eligible to
discharge pursuant to §1141 (d)(5)(A).

        4. There is no reasonable cause to believe that §522(q)(1) is applicable to the
 reorganized Debtor, and there is no pending proceeding in which the reorganized
Debtor may be found guilty of a felony of the kind described in §522(q)(1)(A) or
liable for a debt of the kind described in §522(q)(1)(B).

        5 . All administrative claims and expenses have been paid in full, or appropriate
arrangements have been made for the full payment thereof. A summary of fees
and expenses is as follows:

        $  n/a Trustee Compensation (If trustee received compensation under more than
one chapter)

$ <u>n/a</u> Fee for Attorney for Trustee

$ arranged -Fees for Attorneys for Reorganized Debtor, awarded and appropriate arrangements have been made

$ paid U.S. Trustee (fees required by 28 U.S.C. §1930)

$ <u>paid</u> Clerk of Court (fees required by 28 U.S.C. §1930)

$ <u>n/a All</u> expenses, including Trustee's

6.   Attached as Exhibit A is a distribution report detailing the payments made under the plan on and after the effective date.

7.   Pursuant to Fed. R. Bankr. P.1007(b)(7), the undersigned represents that 11 U.S.C. § 1141(d)(3) is not applicable to the reorganized Debtor, or the reorganized Debtor has filed a statement of completion of the personal financial management course.

WHEREFORE, The reorganized Debtor respectfully requests that this court (1) grant this Motion and administratively reopen this case, (2) enter a discharge of the reorganized Debtor, (3) enter a final decree closing this fully administered individual Chapter 11 case, and (4) grant such other and further relief as the Court deems appropriate..

I certify that a copy of this report and attachments was emailed to the U.S. Trustee's office on 7/7/18.

JOEL M. ARESTY, P.A.
Counsel for
Reorganized Debtor
Liza Hazan
309 1st Ave S
Tierra Verde, FL
33715
Phone: 305-904-1903
Fax: 800-559-1870
E-mail: Aresty@Mac.com
By: <u>/s/Joel M. Aresty</u>
Fla. Bar No. 197483

## EXHIBIT A

LIST ALL PAYMENTS MADE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN, OR IF INDIVIDUAL CHAPTER 11, ALL PAYMENTS MADE UNDER THE PLAN.* SEPARATE CLAIMANTS BY CLASSIFICATION UNDER THE PLAN AND PROVIDE A TOTAL FOR EACH CLASSIFICATION. LIST THE NAME OF EACH RECIPIENT, AMOUNT OF THE ALLOWED CLAIM AND THE AMOUNT THAT WAS PAID (USE CONTINUATION PAGE IF NECESSARY).

| Name Of Creditor | Claim Number | Class Number | Payment In Plan |
|---|---|---|---|
| IRS priority | Claim # 3 | Class 1 | $2,674.34 Paid at Confirmation |
| Valencia Estates Community Association, Inc. | Claim # 10 | Class 5 | $4,062.00 Paid at confirmation |
| Miami-Dade Water & Sewer Department | Claim # 7 | Class 7 | $1,502.54 Paid at confirmation |
| IRS secured | Claim # 3 | Class 8 | $22,948.00 Paid after confirmation |
| American InfoSource TMobile Class 12 | Claim # 2 | Class 12 | $1,130.00 Paid at confirmation |
| S&S Collections | Claim # 13 | Class 13 | $6,968.04 Paid after confirmation |
| IRS unsecured | Claim # 3 | Class 12 | $1,085.00 Paid at confirmation |
| American info Source Direct TV Class 12 | Claim # 9 | Class 12 | $461.00 Paid at Confirmation |
| FPL Class 12 | Claim # 11 | Class 12 | $2,906.93 Paid at Confirmation |
| Sterling Emer Svcs | | Class 12 | $2,445.30 Paid at Confirmation |

| | | | Confirmation |
|---|---|---|---|
| Mount Sinai Phys Practice | | Class 12 | $295.91 Paid at Confirmation |
| | | | $3,240.00 Paid at Confirmation |
| HSBC Bank USA NA | | Class 12 | $1,070.66 Paid at Confirmation |
| Wells Fargo | Claim # **12** | Class 12 | $323.24 Paid at Confirmation |
| Total class 12<br><br>Total<br>Total | | | $12,958.04 Paid at Confirmation<br>$651.07 Paid at Confirmation<br><br><br>$51,764.03 |

*Class **13 JMB Urban 900** in the amount of $275,000 is the subject of a **Non-dischargeable Judgment** and therefore is not sought to be discharged.

# EXHIBIT 7

*Date: December 6, 2018*    *Branch Banking and Trust*    *Page 2 of 2*

Reference: 20000240336916:20000240336916:20000179650928



**OFFICIAL CHECK**    1001054051

68-236/514

**ISSUING BRANCH** 8540219-MIAMI - DADE - SOUTH BEACH
**DATE** May 29, 2018

**PAY TO THE ORDER OF**  MOUNT SINAI    **$295.91**

Two Hundred  Ninety-Five and 91/100ths Dollars

**BB&T**    $295.91

**AUTHORIZED SIGNATURE**

MEMO/PURCHASER  LIZA HAZAN SS 6006 AHA3
6913 VALENCIA DRIVE MIAMI FL 33109

⑈100105405⑈ ⑆051402369⑆000101901009⑈7⑈

| Date | 20180531 | Account Number | 0000001019010097 |
|------|----------|----------------|------------------|
| Amount | 29591 | CR-DR | D |
| Serial Number | 1001054051 | Transaction Link | 015835230463583031 |

Date: December 6, 2018        Branch Banking and Trust        Page 2 of 2

Reference: 20000240336983:20000240336983:20000179650994



| Date | 20180531 | Account Number | 0000001019010097 |
| Amount | 244530 | CR-DR | D |
| Serial Number | 1001054325 | Transaction Link | 015835230463583031 |

Date: December 6, 2018     *Branch Banking and Trust*     Page 2 of 2

Reference: *20000240308683:20000240308683:20000179628693*



| Date | 20180531 | Account Number | 0000001019010097 |
| --- | --- | --- | --- |
| Amount | 324000 | CR-DR | D |
| Serial Number | 1001054034 | Transaction Link | 015835230463583031 |

*Date: December 6, 2018*     *Branch Banking and Trust*     *Page 1 of 1*

Reference: 20000240359127;20000240359127;20000179666132





| Date | 20180614 | Sequence Number | 2900128596 |
|------|----------|-----------------|------------|
| Account Number | 0000001019010097 | Amount | 150254 |
| CR-DR | D | Serial Number | 1001054089 |
| Transaction Link | 013336290012859614 | | |

Case 1:22-cv-22429-XXXX Document 18 Entered on FLSD Docket 01/25/19 Page 58 of 116

**THOMSON INFOLINK SEARCH SELECTIONS**

**Select one or more of the following and press ENTER.**      0001  ITEMS FOUND
(D=display  I=Inquiry  S=Send to external application)

| S | Routing | Search Name | Search City/Addr | ST | Appl | H |
|---|---------|-------------|------------------|----|------|---|
| _ | 091000019 | WELLS FARGO BANK, NATIONAL ASS | ALBERT LEA | MN | | B |
| | | | 122 E MAIN ST | | | |

**F1** HELP     **F3** EXIT     **F5** REFRESH     **F7** BACKWARD  **F8** FORWARD  **F12** CANCEL

# EXHIBIT 8



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011081500311001001EDE7E

| **RECORDING AND ENDORSEMENT COVER PAGE** | **PAGE 1 OF 3** |
|---|---|

| Document ID: **2011081500311001** | Document Date: 08-15-2011 | Preparation Date: 08-15-2011 |
|---|---|---|

Document Type: DEED
Document Page Count: 2

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| MARZEC LAW FIRM | MARZEC LAW FIRM |
| 225 BROADWAY | 225 BROADWAY |
| SUITE 3000 | SUITE 3000 |
| NEW YORK, NY  10007 | NEW YORK, NY  10007 |
| 212-267-0200 | 212-267-0200 |
| dmarzec@marzeclaw.com | dmarzec@marzeclaw.com |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62ND  STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

**CRFN:** 2006000629750

**PARTIES**

| **GRANTOR/SELLER:** | **GRANTEE/BUYER:** |
|---|---|
| ELIZABETH HAZAN | RAYMOND HOULE |
| 1 EAST 62ND STREET, APT. 1A | 1 EAST 62ND STREET, APT. 1A |
| NEW YORK, NY  10065 | NEW YORK, NY  10065 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | | 08-22-2011 11:55 |
| Additional  MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | | **2011000295677** |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

***City Register Official Signature***

Form 8002* 5/85 - 25M--Bargain and Sale Deed with Covenant against Grantor's Acts-Individual or Corporation. (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 15th day of August , 2011

BETWEEN

**ELIZABETH HAZAN,**
**residing at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the first part, and

**RAYMOND HOULE,**
**residing at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A ANNEXED HERETO AND MADE A PERT OF HEREOF.

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated December 22, 2005 and recorded on November 14, 2006 in CRFN 2006000629750.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

Grantor:

Elizabeth Hazan

TAX MAP DESIGNATION

DIST.

SEC.

BLK: 1137

LOT(S): 1100

APT: 1A

STATE OF NEW YORK, COUNTY OF KINGS

On the 15th day of August the year 2011 before me, the undersigned, personally appeared Elizabeth Hazan personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_SYLVIA M WRONOWSKI_
NOTARY PUBLIC          SYLVIA M WRONOWSKI
                      Notary Public, State of New York
                      No. 01WR6196869
                      Qualified in Queens County
                      Commission Expires November 24, 2012

STATE OF NEW YORK, COUNTY OF KINGS

On the  day of February, 200  before me personally came
to me known, who, being by me duly sworn, did depose and say that he resides at No.

that he is the  of, the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the board of directors of said Corporation.

NOTARY PUBLIC


# *Bargain and Sale Deed*

## WITH COVENANT AGAINST GRANTOR'S ACTS

---

### ELIZABETH HAZAN

### TO

### RAYMOND HOULE

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

---

STATE OF NEW YORK, COUNTY OF KINGS

On the  day of , 20  , before me personally came  and

to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

NOTARY PUBLIC _____

STATE OF NEW YORK, COUNTY OF KINGS

On the   day of , 19 , before me personally came   the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did dispose and say that he resides at No. ; that he knows
                      to be the individual
described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw he/she/they execute the same; and that he, said witness, at the same time subscribed his name as witness thereto.

NOTARY PUBLIC

SECTION:

BLOCK : 1137

LOT : 1100

COUNTY OR TOWN: NEW YORK

TAX BILLING ADDRESS: 1 EAST 62ND STREET, APT. 1A

NEW YORK, NEW YORK

RETURN BY MAIL TO:

Elizabeth Hazan
6913 Fisher Island Drive
Miami, FL 33109

First American Title Insurance Company of New York

Commitment Number   KEN-F-34513-NY-NY

### SCHEDULE A
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows.

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

BLOCK 1377     LOT 1100     UNIT 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York New York.

ALTA Commitment
Schedule C

(KEN-F-34513-NY-NY.PFD/KEN-F-34513-NY-NY/8)



| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | |
|---|---|

2011081500311001001S10FF

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|

**Document ID: 2011081500311001**     Document Date: 08-15-2011     Preparation Date: 08-15-2011
Document Type: DEED

**ASSOCIATED TAX FORM ID: 2011081500064**

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RPTT FILING FEE EXEMPTION AFFIDAVIT | 5 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

FOR CITY USE ONLY

| C1. County Code | | C2. Date Deed Recorded | / / | | **REAL PROPERTY TRANSFER REPORT** |
| C3. Book OR | | C4. Page | | | **STATE OF NEW YORK STATE BOARD OF REAL PROPERTY SERVICES** |
| C5. CRFN | | | | | **RP - 5217NYC** |

Month  Day  Year

(Rev 11/2002)

## PROPERTY INFORMATION

**1. Property Location**  1   EAST 62ND STREET 1A                    MANHATTAN          10065
STREET NUMBER    STREET NAME                    BOROUGH            ZIP CODE

**2. Buyer Name**  HOULE                          RAYMOND
LAST NAME / COMPANY                FIRST NAME

LAST NAME / COMPANY                FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY                FIRST NAME

STREET NUMBER AND STREET NAME              CITY OR TOWN          STATE    ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**   1  # of Parcels  OR  ☐ Part of a Parcel

**4A.** Planning Board Approval - N/A for NYC
**4B.** Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
**6.** Ownership Type is Condominium  ☐
**7.** New Construction on Vacant Land  ☐

**5. Deed Property Size**  ___ FRONT FEET  X  ___ DEPTH  OR  ___ ACRES

**8. Seller Name**  HAZAN                          ELIZABETH
LAST NAME / COMPANY                FIRST NAME

LAST NAME / COMPANY                FIRST NAME

**9. Check the box which most accurately describes the use of the property at the time of sale:**

| A | ✓ | One Family Residential | C | ☐ | Residential Vacant Land | E | ☐ | Commercial | G | ☐ | Entertainment / Amusement | I | ☐ | Industrial |
| B | ☐ | 2 or 3 Family Residential | D | ☐ | Non-Residential Vacant Land | F | ☐ | Apartment | H | ☐ | Community Service | J | ☐ | Public Service |

## SALE INFORMATION

**10. Sale Contract Date**   8 / 15 / 2011
Month  Day  Year

**11. Date of Sale / Transfer**   8 / 15 / 2011
Month  Day  Year

**12. Full Sale Price** $                    0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ | Sale Between Relatives or Former Relatives |
| B | ☐ | Sale Between Related Companies or Partners in Business |
| C | ☐ | One of the Buyers is also a Seller |
| D | ☐ | Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ | Deed Type **not** Warranty or Bargain and Sale (Specify Below ) |
| F | ☐ | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ | Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ | Sale of Business is Included in Sale Price |
| I | ☐ | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ✓ | None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**  R 4     **16. Total Assessed Value** (of all parcels in transfer)

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

MANHATTAN 1377 1100

## CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**

*Raymond Houle*  08.15.11
BUYER SIGNATURE          DATE

STREET NUMBER    STREET NAME (AFTER SALE)

CITY OR TOWN    STATE    ZIP CODE

**BUYER'S ATTORNEY**

LAST NAME          FIRST NAME

000 | 000-0000
AREA CODE    TELEPHONE NUMBER

**SELLER**

SELLER SIGNATURE          08.15.11
DATE

2011081500064201

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

| BUYER | | BUYER'S ATTORNEY |
|---|---|---|
| *Laymand Houle* | 08.15.11 | |
| BUYER SIGNATURE | DATE | LAST NAME          FIRST NAME |
| | | 000          000-0000 |
| STREET NUMBER     STREET NAME (AFTER SALE) | | AREA CODE     TELEPHONE NUMBER |
| | | SELLER |
| | | *[signature]*          08.15.11 |
| CITY OR TOWN          STATE          ZIP CODE | | SELLER SIGNATURE          DATE |

Case 1:22-cv-20485-RNS Document 18 Entered on FLSD Docket 01/25/09 Page 671 of 116   Page 233 of
889
Case 1:22-cv-20485-RNS Document 18 Entered on FLSD Docket 01/25/09 Page 671 of 116

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York )
) SS.:
County of )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1 EAST 62ND STREET | | 1A |
|---|---|---|
| Street Address | , | Unit/Apt. , |

| MANHATTAN | New York, | 1377 | 1100 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

_Elizabeth Hozan_

Name of Grantor (Type or Print)

Signature of Grantor

_Raymond Houle_

Name of Grantee (Type or Print)

_Raymond Houle_

Signature of Grantee

Sworn to before me
this 15 date of August 19 2011

SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

Sworn to before me
this 15 date of August 19 2011

SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1

2011081500064101



The City of New York
Department of Environmental Protection
Bureau of Customer Services
59-17 Junction Boulevard
Flushing, NY  11373-5108

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)   Property receiving service: BOROUGH:  MANHATTAN          BLOCK: 1377          LOT:  1100

(2)   Property  Address: 1  EAST 62ND   STREET   Unit 1A, NEW YORK, NY 10065

(3)  Owner's Name:      HOULE , RAYMOND

Additional Name:

### Affirmation:

  Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

**Please Note:**

**A.**  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

**B.**  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**.  DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way  relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _Raymond Houle_____          Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS   REV. 8/08

2

2011081500064101



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011120900724001001E5EB1

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
|---|---|---|
| Document ID: **2011120900724001** | Document Date: 12-09-2011 | Preparation Date: 12-09-2011 |
| Document Type: DEED | | |
| Document Page Count: 2 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| MARZEC LAW FIRM | 9221-0228 QUEBECK, INC. |
| 225 BROADWAY | 1 EAST 62ND STREET |
| SUITE 3000 | APT. 1A |
| NEW YORK, NY 10007 | NEW YORK, NY 10065 |
| 212-267-0200 | |
| dmarzec@marzeclaw.com | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62ND STREET |

**Property Type:** MULTIPLE RESIDENTIAL CONDO UNT

**CROSS REFERENCE DATA**

**CRFN:** 2011000295677

**PARTIES**

| **GRANTOR/SELLER:** | **GRANTEE/BUYER:** |
|---|---|
| RAYMOND HOULE | 9221-0228 QUEBEC, INC. |
| 1 EAST 62ND STREET, APT. 1A | 1 EAST 62ND STREET, APT. 1A |
| NEW YORK, NY 10065 | NEW YORK, NY 10065 |

**FEES AND TAXES**

| **Mortgage** | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed 12-29-2011 16:19 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2011000452186** | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*

***City Register Official Signature***

Form 8002* 5/85 - 25M--Bargain and Sale Deed with Covenant against Grantor's Acts-Individual or Corporation. (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 9th day of December , 2011

BETWEEN

**RAYMOND HOULE,**
**residing at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the first part, and

**9221-0228 QUEBEC, INC.**
**located at 1 East 62nd Street, Apt. 1A, New York, NY 10065**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A ANNEXED HERETO AND MADE A PERT OF HEREOF.

Except as otherwise specificially permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated August 15, 2011 and recorded on
In CRFN 2011081500064

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

TAX MAP DESIGNATION

DIST.

SEC.

BLK: 1137

LOT(S): 1100

APT: 1A

Grantor:

Raymond Houle

STATE OF NEW YORK, COUNTY OF KINGS

On the 9th day of December the year 2011 before me, the undersigned, personally appeared Raymond Houle personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Sylvia M. Wronowski_ **SEAL**

NOTARY PUBLIC

**SYLVIA M WRONOWSKI**
**Notary Public, State of New York**
**No. 01WR6196869**
**Qualified in Queens County**
**Commission Expires November 24, 2012**

STATE OF NEW YORK, COUNTY OF

On the day of , 200, before me
personally came
to me known, who, being by me duly sworn, did depose and say that he resides at No.

that he is the of, the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the board of directors of said Corporation.

NOTARY PUBLIC

### *Bargain and Sale Deed*

WITH COVENANT AGAINST GRANTOR'S ACTS

RAYMOND HOULE

TO

9221-0228 Quebec, Inc.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

---

STATE OF NEW YORK, COUNTY OF KINGS

On the day of , 20 , before me personally came and

to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF KINGS

On the day of , 19, before me personally came the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did dispose and say that he resides at No. ; that he knows
to be the individual
described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw he/she/they execute the same; and that he, said witness, at the same time subscribed his name as witness thereto.

NOTARY PUBLIC

SECTION:

BLOCK : 1137

LOT : 1100

COUNTY OR TOWN: NEW YORK

TAX BILLING ADDRESS: 1 EAST 62ND STREET, APT. 1A

NEW YORK, NEW YORK

RETURN BY MAIL TO:

Marzec Law Firm
225 Broadway, S. 3000
New York, NY 10007



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2011120900724001001S9030

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2011120900724001    Document Date: 12-09-2011    Preparation Date: 12-09-2011
**Document Type:** DEED

**ASSOCIATED TAX FORM ID:** 2011120900210

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

CITY REGISTER

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

## RP - 5217NYC

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed Recorded | Month | Day | Year |
| --- | --- | --- | --- | --- | --- |

| C3. Book OR | | C4. Page | |
| --- | --- | --- | --- |

C5. CRFN

**PROPERTY INFORMATION**

**1. Property Location**
| 1 | EAST 62ND STREET 1A | MANHATTAN | 10065 |
| --- | --- | --- | --- |
| STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE |

**2. Buyer Name**
| 9221-0228 QUEBEC, INC. | |
| --- | --- |
| LAST NAME / COMPANY | FIRST NAME |
| LAST NAME / COMPANY | FIRST NAME |

**3. Tax Billing Address** Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
| | |
| --- | --- |
| LAST NAME / COMPANY | FIRST NAME |
| STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE |

**4. Indicate the number of Assessment Roll parcels transferred on the deed** [ 1 ] # of Parcels OR [ ] Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

**Check the boxes below as they apply:**
6. Ownership Type is Condominium [ ]
7. New Construction on Vacant Land [ ]

**5. Deed Property Size**
| | FRONT FEET | X | DEPTH | OR | ACRES |
| --- | --- | --- | --- | --- | --- |

**8. Seller Name**
| HOULE | RAYMOND |
| --- | --- |
| LAST NAME / COMPANY | FIRST NAME |
| LAST NAME / COMPANY | FIRST NAME |

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A [ ] One Family Residential | C [ ] Residential Vacant Land | E [ ] Commercial | G [ ] Entertainment / Amusement | I [ ] Industrial |
| --- | --- | --- | --- | --- |
| B [✓] 2 or 3 Family Residential | D [ ] Non-Residential Vacant Land | F [ ] Apartment | H [ ] Community Service | J [ ] Public Service |

**SALE INFORMATION**

**10. Sale Contract Date** 12 / 9 / 2011
Month Day Year

**11. Date of Sale / Transfer** 12 / 9 / 2011
Month Day Year

**12. Full Sale Price** $ 0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A [ ] | Sale Between Relatives or Former Relatives |
| --- | --- |
| B [ ] | Sale Between Related Companies or Partners in Business |
| C [ ] | One of the Buyers is also a Seller |
| D [ ] | Buyer or Seller is Government Agency or Lending Institution |
| E [ ] | Deed Type **not** Warranty or Bargain and Sale (Specify Below ) |
| F [ ] | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G [ ] | Significant Change in Property Between Taxable Status and Sale Dates |
| H [ ] | Sale of Business is Included in Sale Price |
| I [ ] | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J [✓] | None |

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

**15. Building Class** R 4    **16. Total Assessed Value** (of all parcels in transfer) 1 0 6 3 2 8

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

| MANHATTAN 1377 1100 | | |
| --- | --- | --- |

201112090021020101

Case 1:22-cv-27485-RMS-AJC Document 685 Entered on FLSD Docket 04/4/2022   Page 240 of
Case 1:93-cv-02432-AJC   Doc 18   Filed 01/25/19   Page 74 of 110
889

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

**BUYER** *Raymond Haule*  12/9/2011

BUYER SIGNATURE            DATE

1 EAST 62ND STREET  APT. 1A

STREET NUMBER        STREET NAME (AFTER SALE)

NEW YORK

CITY OR TOWN

| | NY | 10065 |
|---|---|---|
| | STATE | ZIP CODE |

PRO SE

**BUYER'S ATTORNEY**

LAST NAME          FIRST NAME

000    000-0000

AREA CODE      TELEPHONE NUMBER

**SELLER** *Raymond Haule*  12/09/2011

SELLER SIGNATURE                DATE

2011120900210201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York          )
                           ) SS.:
County of                  )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1 EAST 62ND STREET | | 1A |
|---|---|---|
| Street Address | , | Unit/Apt. |

| MANHATTAN | New York, | 1377 | 1100 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

_RAYMOND HOULE_
**Name of Grantor** (Type or Print)

_Raymond Houle_
**Signature of Grantor**

_9221-0228 QUEBEC, INC._
**Name of Grantee** (Type or Print)

_Raymond Houle_
**Signature of Grantee**

SEAL

Sworn to before me
this ___9TH___ date of ___December___ 20_11_
SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

Sworn to before me
this ___9TH___ date of ___December___ 20_11_
SYLVIA M WRONOWSKI
Notary Public, State of New York
No. 01WR6196869
Qualified in Queens County
Commission Expires November 24, 2012

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
59-17 Junction Boulevard
Flushing, NY  11373-5108

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)   **Property receiving service: BOROUGH:  MANHATTAN**            **BLOCK: 1377**            **LOT:  1100**

(2)   **Property  Address: 1  EAST 62ND STREET   Unit 1A, NEW YORK, NY 10065**

(3)  **Owner's Name:        9221-0228 QUEBEC, INC.**

      **Additional Name:**

## Affirmation:

   Your water & sewer bills will be sent to the property address shown above.

## Customer Billing Information:

### Please Note:

**A.**  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or
sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or
other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer
charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure
to pay such charges when due may result in foreclosure of the lien by the City of New York, the property
being placed in a lien sale by the City or Service Termination.

**B.**  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to
an alternate mailing address**.  DEP will provide a duplicate copy of bills to one other party (such as a
managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no
way  relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP
at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's
information.

## Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it
has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the
information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _Raymond Noule_   12/9/11   Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS   REV. 8/08

2011120900210101



**2013072200949001001E2886**

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| Document ID: **2013072200949001** | Document Date: 07-22-2013 | Preparation Date: 07-22-2013 |
| Document Type: DEED | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| REAL ESTATE HOLDING TRUST<br>1 E 62 STREET<br>NEW YORK, NY 10065<br>212-267-0200<br>REALESTATEHOLDINGTRUST@OUTLOOK.COM | REAL ESTATE HOLDING TRUST<br>1 E 62 STREET<br>NEW YORK, NY 10065<br>212-267-0200<br>REALESTATEHOLDINGTRUST@OUTLOOK.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 Entire Lot | 1A | 1 EAST 62 STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN: 2011000452186

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 9221-0228 QUEBEC, INC<br>11020 ARMAND-LAVERGNE<br>MONTREAL, QUEBEC H1H3P5<br>CANADA | REAL ESTATE HOLDINGS GROUP, LDC<br>60 MARKET SQUARE<br>BELIZE CITY<br>BELIZE |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 08-12-2013 16:17 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 47.00 | **2013000317610** | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

***City Register Official Signature***

Form 8002* 5/85 - 25M--Bargain and Sale Deed with Covenant against Grantor's Acts-Individual or Corporation. (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the   22nd   day of July , 2013

BETWEEN

**9221-0228 QUEBEC, INC,**
**located at 11020, Armand-Lavergne, Montreal-Nord (Quebec) H1H3P5**

party of the first part, and

**REAL ESTATE HOLDINGS GROUP, L.D.C.**
**located at 60 Market Square, Belize City, Belize**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A ANNEXED HERETO AND MADE A PART OF HEREOF.

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any Rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated December 29, 2011 and recorded on In CRFN 2011000452186

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

TAX MAP DESIGNATION

DIST.

SEC.

BLK: 1137

LOT(S): 1100

APT: 1A

Grantor: 9221-0228 Quebec, Inc.

By: *Raymond Houle*
Raymond Houle, Director

STATE OF NEW YORK, COUNTY OF KINGS

On the 22TH day of July the year 2013 before me, the undersigned, personally appeared Raymond Houle personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

EDYTA A PIECHOTA
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01PI6223492
COMM. EXP. October 12, 2014

STATE OF NEW YORK, COUNTY OF NEW YORK

On the 22nd day of July 2013 before me personally came Raymond Houle to me known, who, being by me duly sworn, did depose and say that he resides at 11020, Armand-Lavergne, Montreal-Nord (Quebec) H1H3P5 that he is the of, the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the board of directors of said Corporation.

_____
NOTARY PUBLIC

# *Bargain and Sale Deed*

## WITH COVENANT AGAINST GRANTOR'S ACTS

9221-0228 Quebec, Inc.

TO

Real Estate Holdings Group, L.D.C.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

STATE OF NEW YORK, COUNTY OF KINGS

On the day of ____, 20__, before me personally came Raymond Houle, to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

_____
NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF NEW YORK

On the day of , 19, before me personally came the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did dispose and say that he resides at No. ; that he knows to be the individual described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw he/she/they execute the same; and that he, said witness, at the same time subscribed his name as witness thereto.

NOTARY PUBLIC

SEAL

SECTION:

BLOCK : 1137

LOT : 1100

COUNTY OR TOWN: NEW YORK

TAX BILLING ADDRESS: 1 EAST 62ND STREET, APT. 1A

NEW YORK, NEW YORK

RETURN BY MAIL TO:

Owner
1 East 62nd Street, Apt. 1A
New York, NY 10065



**2013072200949001001SE607**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | | |
|---|---|---|
| **SUPPORTING DOCUMENT COVER PAGE** | | **PAGE 1 OF 1** |

**Document ID: 2013072200949001**     Document Date: 07-22-2013     Preparation Date: 07-22-2013
Document Type: DEED

**ASSOCIATED TAX FORM ID:**   2013072200298

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

| FOR CITY USE ONLY | | | | | | |
|---|---|---|---|---|---|---|

**C1.** County Code

**C2.** Date Deed Recorded | Month | Day | Year

**C3.** Book OR

**C4.** Page

**C5.** CRFN

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES
# RP - 5217NYC

## PROPERTY INFORMATION

**1. Property Location** | 1 | EAST 62 STREET 1A | MANHATTAN | 10065
STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

**2. Buyer Name** | REAL ESTATE HOLDINGS GROUP, LDC
LAST NAME / COMPANY | FIRST NAME
LAST NAME / COMPANY | FIRST NAME

**3. Tax Billing Address** Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY | FIRST NAME
STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** | 1 | # of Parcels OR | ☐ Part of a Parcel

**4A.** Planning Board Approval - N/A for NYC
**4B.** Agricultural District Notice - N/A for NYC

**5. Deed Property Size** | FRONT FEET | X | DEPTH | OR | ACRES

Check the boxes below as they apply:
**6.** Ownership Type is Condominium ☐
**7.** New Construction on Vacant Land ☐

**8. Seller Name** | 9221-0228 QUEBEC, INC
LAST NAME / COMPANY | FIRST NAME
LAST NAME / COMPANY | FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | ✓ One Family Residential | C | ☐ Residential Vacant Land | E | ☐ Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
|---|---|---|---|---|---|---|---|---|---|
| B | ☐ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

## SALE INFORMATION

**10. Sale Contract Date** | 7 / 22 / 2013
Month Day Year

**11. Date of Sale / Transfer** | 7 / 22 / 2013
Month Day Year

**12. Full Sale Price** $ | 0

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ Sale Between Relatives or Former Relatives |
|---|---|
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type **not** Warranty or Bargain and Sale (Specify Below ) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ✓ None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class** | R, 4 | **16. Total Assessed Value** (of all parcels in transfer) | 1 0 8 3 0 7

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

MANHATTAN 1377 1100

Case 1:22-cv-22185-RNS Document 68-15 Entered on FLSD Docket 04/2026   Page 248 of
Case 1:13-cv-22402-AJC   Doc 18   Filed 01/13/19   Page 82 of 116
889

**Signature (both the grantor(s) and grantee(s) must sign)**

The undersigned certify that the above information contained in schedules A, B, and C, including any  return, certification, schedule, or attachment, is to the best of his/her knowledge, true and complete, and authorize the person(s) submitting such form on their behalf to receive a copy  for purposes of recording the deed or other instrument effecting the conveyance.

| Grantor signature | Title | Grantee signature | Title |

| Grantor signature | Title | Grantee signature | Title |

2013072200298301

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York      )
                       ) SS.:
County of              )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1 EAST 62 STREET | | 1A |
|---|---|---|
| Street Address | , | Unit/Apt. |

| MANHATTAN | New York, | 1377 | 1100 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

_____
Name of Grantor (Type or Print)

_____
Signature of Grantor

_____
Name of Grantee (Type or Print)

_____
Signature of Grantee

Sworn to before me
this _22nd_ date of _July_ 20 13

_Edyta A. Piechota_

EDYTA A PIECHOTA
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01PI6229492
_October 12, 2014_

Sworn to before me
this _22nd_ date of _July_ 20 13

_Edyta A. Piechota_

SEAL

EDYTA A PIECHOTA
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01PI6229492
_October 12, 2014_

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1

2013072200298101

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
--------------------------------------------------------------------------X

U.S. Bank National Association, as trustee, on behalf of the          **Index#:850240-2014**
Holders of the HarborView Mortgage Loan Trust 2006-1
Mortgage  Loan Pass-Through Certificates, series 2006-1              **AFFIRMATION IN**
                              **Plaintiff,**                         **OPPOSITION TO CROSS-**
                                                                     **MOTION FOR DEFAULT**
        -against-                                                    **JUDGMENT AND FOR**
                                                                     <u>**MOTION TO DISMISS**</u>

Elizabeth Hazan, Real Estate Holdings Group, L.D.C.,
Mortgage Electronic Registration Systems, inc., acting solely as
a nominee for America's Wholesale Lender, The Board of
Managers of The Spencer Condominium, NLG, LLC, New
York City Department of Finance, New York State Department
of Taxation and Finance and "JOHN DOE#1" through "JOHN
DOE#10", the last ten names being fictious and unknown to
the plaintiff, the person or parties intended being the persons or
parties, if any, having or claiming an interest in or lien upon the
mortgaged premises described in the Complaint,

                              **Defendants**.
--------------------------------------------------------------------------X

STATE OF NEW YORK          )
                           )      ss.:
COUNTY OF KINGS            )


SEAN NEIL MEEHAN, being first duly sworn, deposes and says:

1.      I am the member of Real Estate Holding Group, L.D.C. ("REHG"), defendant in the

instant action and am duly authorized to make this affidavit.  I am asking that this Court dismiss

the Plaintiff's complaint based on the lack of personal jurisdiction over REHG.

2.      I have personal knowledge of all facts contained herein.

3.      I reviewed the purported Affidavit of Service outrageously claiming that REHG was

served. Neither I, nor REHG, was ever served with a Summons and Complaint, any case notices,

or letters in any manner whatsoever, and in any location whatsoever.

4.      The Summons and Complaint is claimed to have been served on REHG through the New York Secretary of State. See **Exhibit A**. It is inexplicable why Plaintiff would submit that the service on the New York State Secretary of State qualifies as proper service as REHG is not a New York Corporation or Limited Liability Company. Attached as **Exhibit B** are print outs from the New York Department of State website showing search results that REHG is not a domestic or a registered/authorized business entity.

5.      REHG is in fact a Belize formed Limited Duration Company, and is not registered with the New York State Secretary of State.  Annexed as **Exhibit C** is a true copy of the Certificate of Incorporation with Memorandum of Association and Articles of Association.  Since the date of filing of the Complaint on July 1, 2014, until the date of this affidavit, I have not been served in any manner whatsoever. No other person is authorized to accept service on REHG's behalf and clearly -not the New York Secretary of State.

6.      At the time of the alleged service, because of a dispute with the condominium board, REHG and I were locked out of the premises per court order annexed as **Exhibit D**. Nevertheless, there was no mail correspondence from the Secretary of State at the address of the premises at 1 East 62nd Street, Apt. 1A, New York, NY.  It would be impossible as the Secretary of State never had any address on file for REHG.  None of the alleged actions by Plaintiff provided notice to REHG of this suit.  I did not learn about this suit until recently.

7.      REHG joins and adopts the motion and affidavit of Elizabeth Hazan requesting that this case be dismissed on jurisdictional grounds, and in the alterative, on the grounds raised in the motion papers.  Elizabeth Hazan's affidavit is hereby incorporated herein in its entirety by reference.  The purported cross-motion should be denied as a nullity as REHG was not served at

all. Moreover, REHG has good and valid defenses to this action as presented in the motion to dismiss.

8.     REHG has not requested the relief herein previously.

WHEREFORE, REHG now moves for the following court order:

1.     Pursuant to CPLR § 3211(a)(8), dismissing the case for failure to obtain jurisdiction over the moving defendants;

IN THE ALTERNATIVE, SHOULD THIS COURT FIND THAT JURISDICTION HAS BEEN ESTABLISHED AGAINST THE MOVING DEFENDANTS :

2.     Pursuant to CPLR § 3211(a)(5), dismissing Plaintiff's Complaint, with prejudice, on the ground that the Complaint is time barred pursuant to the six-year statute of limitations—established by CPLR § 213(4)—which has now expired;

3.     Pursuant to CPLR § 3211(a)(7), dismissing Plaintiff's complaint with prejudice, for failure to state a cause of action against the moving defendants;

4.     Pursuant to CPLR § 3211(a)(1), dismissing Plaintiff's complaint with prejudice as a defense is founded upon documentary evidence;

5.     Pursuant to CPLR 3211(a)(2) dismissing the complaint for lack of subject matter jurisdiction;

6.     Pursuant to CPLR 3211(a)(3) for lack of capacity / standing to sue;

7.     In the alternative, should the all Court deny relief to the moving defendants as per above, for leave to file an answer in this case to proceed to discovery with the meritorious defenses as laid out in this motion, and other grounds; and

8.     For such and other and further relief that this Court may deem appropriate.

Dated: New York, New York
     July 1, 2015

Sean Neil Meehan
Manager,
Real Estate Holdings Group, L.D.C.

Sworn to before me this
1st day of July 2015

NOTARY PUBLIC

**Darius A Marzec**
Notary Public State of New York
No. 02MA6272827 -Qualified in
New York County
Commission Expires 11/26/2016

# EXHIBIT 9



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2017080301184001002ED19B

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 8 |
|---|---|

**Document ID: 2017080301184001**  Document Date: 11-14-2016  Preparation Date: 08-30-2017
Document Type: MORTGAGE
Document Page Count: 7

| PRESENTER: | RETURN TO: |
|---|---|
| TITLEVEST AGENCY<br>44 WALL STREET, R-NY-608614<br>10TH FLOOR<br>NEW YORK, NY 10005<br>212-757-5800<br>RECORDINGS@TITLEVEST.COM | TITLEVEST AGENCY<br>44 WALL STREET, R-NY-608614<br>10TH FLOOR<br>NEW YORK, NY 10005<br>212-757-5800<br>RECORDINGS@TITLEVEST.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot  1A | 1 EAST 62 STREET |

Property Type:  SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____  *or*  DocumentID_____  *or*  _____ Year____ Reel____ Page_____  *or*  File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| REAL ESTATE HOLDINGS GROUP, L.D.C.<br>60 MARKET SQUARE, P.O. BOX 364<br>BELIZE CITY<br>BELIZE | AARONSON SCHANTZ BEILEY P.A.<br>100 S.E. 2ND STREET, 27TH FLOOR<br>MIAMI, FL 33131 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 145,000.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 145,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:  County (Basic): | $ | 725.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,450.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 362.50 | | |
| MTA: | $ | 405.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 2,942.50 | | |
| Recording Fee: | $ | 72.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**

Recorded/Filed          08-31-2017 12:35
City Register File No.(CRFN):
                                         **2017000325773**

*Annette M Hill*

*City Register Official Signature*

**This Mortgage Agreement secures
a Promissory Note of even date
in the amount of $145,000.00.**

This instrument prepared by,
and after recording, return to:

Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131

(Reserved for Clerk of Court, New York
County)

---

## MORTGAGE AGREEMENT

THIS MORTGAGE AGREEMENT, executed the 14th day of November, 2016, by Real Estate Holdings Group, L.D.C. ("REHG"), of 60 Market Square, P.O. Box 364, Belize City, Belize (hereinafter the "Mortgagor"), to AARONSON SCHANTZ BEILEY P.A., ("ASBPA") whose mailing address is 100 S.E. 2nd Street, 27th Floor, Miami, Florida 33131 (hereinafter the "Mortgagee").

### W I T N E S S E T H:

WHEREAS, Mortgagor executed and delivered to Mortgagee that certain Assumption and Springing Guarantee Agreement and Secured Promissory Note (hereinafter the "Promissory Note"), of even date herewith, wherein Mortgagor has agreed to pay Mortgagee Principal and Interest (hereinafter the "Obligation"). The Mortgagor has agreed to secure the Obligations under the Promissory Note by granting this Mortgage (hereinafter the "Mortgage") to Mortgagee in respect to real property owned by Mortgagor located at: 1 East 62 Street Apt 1A, New York, NY 10065 (the "Property"). As more fully set forth in the parties' Promissory Note, this Mortgage shall become due eight months from the date of execution of the Promissory Note, or upon the sale of the Property, or refinancing of the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000) or upon any other Final Default as set forth in the Promissory Note or this Mortgage. Upon full payment of the Obligations, the Mortgagee shall promptly file and record a satisfaction of this Mortgage, and shall return the original Promissory Note and Mortgage to Mortgagee % Elizabeth Hazan.

NOW, THEREFORE, the Mortgagor, in consideration of the indebtedness and to secure the payment to Mortgagee of the Obligation provided for in the Promissory Note and in this Mortgage, has granted, bargained, sold and conveyed and by these presents do

grant, bargain, sell and convey unto Mortgagee the Property, as particularly described in the attached Schedule "A"

To have and hold the same together with the tenements, hereditaments, and appurtenances, unto the Mortgagee and their heirs and assigns, fee simple.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, do covenant with the Mortgagee and its members, officers, directors, employees, agents, legal representatives and assigns that the Mortgagor has full power and lawful right to convey the Property as aforesaid; that the Property is free from all voluntary encumbrances, with the exception of those listed herein on Schedule B, and that the Mortgagor, their heirs, legal representatives, successors or assigns will make such further assurances to perfect the fee simple to the Property in the Mortgagee, and its members, officers, directors, employees, agents, legal representatives and assigns as may reasonably be required, and that the Mortgagor hereby fully warrants the title to the Property and will defend the Property against the lawful claims of all persons whomsoever including for any tax deeds, claim of lien(s) or mortgage by any governmental or non-governmental authority or taxing authority.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, hereby covenants and agrees to pay all and singular sums of money payable by virtue of the Obligations and this Mortgage.

This Mortgage shall be recorded upon the earlier of: (i) Six (6) months from the date of the Promissory Note; (ii) the entry into a contract for sale (or prior to actual sale) of all or part of the Property; or (iii) the refinancing of, or the impending refinancing of, the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000); or (iii) upon any other Final Default as set forth in the Promissory Note or this Mortgage.

Anything herein to the contrary notwithstanding, the Mortgagor and the Mortgagee agree that the Mortgagee does not at any time intend to charge nor does the Mortgagor have any obligation to pay interest at a rate which shall exceed the limits specified under the laws under the State of New York applicable to this Mortgage evidencing the Obligation. Any interest previously paid which would be construed under New York law as usurious interest shall be deemed to have been a payment against principal as of the time of payment.

No waiver of any agreement, covenant, condition, representation, or warranty under this Mortgage or the Promissory Note shall at any time hereafter be held to be a waiver of any of the other terms thereof or a continuing waiver thereof. Time is of the essence under all terms and conditions of the Mortgage and Indemnification Agreement.

2

Each provision of this Mortgage is intended to be severable and the invalidity or illegality of any portion of this Mortgage shall not affect the validity or legality of the remainder thereof. Any ambiguities contained in this Mortgage shall not be construed against the preparers of this document.

Upon the failure of Mortgagor to abide by any of the provisions of this Mortgage and/or the Promissory Note, including the failure to satisfy the Obligation and Promissory Note, Mortgagee shall be entitled to foreclose upon this Mortgage.

**MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, OR THE INDEMNIFICATION AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING HERETO OR THERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE ACCEPTING THIS MORTGAGE.**

IN WITNESS WHEREOF, the Mortgagor has hereunto set its hand and seal to this Mortgage and Spreader Agreement on the day and year first above written.

Print Name: _Sean W Meehan_

as Manager and duly authorized representative of REHG

The foregoing Mortgage was sworn to, subscribed and acknowledged before me this _14_ day of ~~June, 2015~~ NOV. 2015, by _Sean W. Meehan_, who is personally known to me and did (did not) take an oath.

LEILA BENAVIDES
Notary Public, State of Florida
My Comm. Expires Nov 19, 2017
Commission # FF 024747

Print Name: _____
Notary Public, State of Florida at Large
My commission expires:

| Signed, sealed, read and delivered in the presence of: | Signed, sealed, read and delivered in the presence of: |
|---|---|
| Print Witness Name: _L.M. Schantz_ | Print Witness Name: _Roxana Sucar_ |

3

State of Florida

County of Miami-Dade

On the 14th day of November in the year 2016, before me, the undersigned, personally appeared **Sean N. Meehan**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Miami, Miami-Dade County, Florida.

_____
Notary Public

Printed Name: <u>Geoffrey S. Aaronson</u>

My Commission Expires:
<u>June 16, 2018</u>

GEOFFREY S. AARONSON
Notary Public · State of Florida
My Comm. Expires Jun 16, 2018
Commission # FF 121262

4



**First American**

MORTGAGE SERVICES

## SCHEDULE A

### DESCRIPTION OF MORTGAGED PREMISES

Title No.: **DS140013366**

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

Page 2 of 12

SWM

SWM

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

**<u>SCHEDULE B</u>**

1.  First Mortgage: U.S. Bank, approximately $2.5 Million

2.  Second Mortgage: Real Time Resolutions, as Servicer, approximately $350,000

3.  Spencer Condo: Settlement amount: approximately $426,000 in 3/15;  Proof of Claim
    amount as of 1/11/16 approx'y $668,000 plus accruing Maintenance and attorney fees

4.  IRS Lien approx'y $394,000

5.  Attorney Liens of Bruce Jacobs ($55,000 no interest); Robert P. Lithman ($95,000);
    and Mark Cohen ($25,000)

# EXHIBIT 10



**ORDERED in the Southern District of Florida on December 6, 2018.**

_____

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                      Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                            Chapter 11

          Debtor.
_____/

**ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT,
AND ENTER DISCHARGE TO REORGANIZED DEBTOR**

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745]. The Court has further considered the following:

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al*. [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

Having considered the record, including NLG's Objection and Opposition,[2] and finding that due and adequate notice has been given and no additional notice is required, the Court grants the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the Final Report. The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to a discharge pursuant to 11 U.S.C. § 1141(d)(5). However, a Final Decree will not yet be issued and the case shall not be re-closed at this time.

**I.    11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to individual debtor who has not completed all plan payments**

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered by the Court until completion of all payments under the confirmed plan. *11 U.S.C. §1141(d)(5)(A).* An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia*, an individual debtor has made all plan payments to unsecured creditors. Section 1141(d)(5)(B) provides:

> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if –
>
> (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
> (ii) modification of the plan under section 1127 is not practicable; and
> (iii) subparagraph (C) permits the court to grant a discharge.

---

[2] Although this Court previously determined that NLG is not a creditor and has no claim against the Reorganized Debtor [*see*, *Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No. 16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules same.

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –
>> (i) section 522(q)(1) may be applicable to the debtor; and
>> (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);
>> and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C. § 1141(d)(5)(B). *See*, *11 U.S.C. § 1141(d)(5)*; *see also*, *In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor. In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C. § 1141(b)(5)(B) so as to be entitled to an early discharge.[3] Exhibit "A" attached to both the Motion

---

[3] The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

> MS. ARMENGOL:
>
> … I can speak as to the procedural propriety of the Court awarding a discharge now. I concur with Mr. Pugatch -- and for the record, the code section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid

in the Plan, have been paid in full.  As a result, the value of property [payments] distributed under

the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended

Plan") on account of each unsecured claim is not less than the amount that would have been paid

on such claim if the bankruptcy estate would have been liquidated under chapter 7.  Therefore, the

Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i).   The Court takes judicial

notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018

to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the

Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made

pursuant to the Fourth Amended Plan and Confirmation Order.  Moreover, the Court finds 11

U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not

practicable under 11 U.S.C. § 1127.

## II.     The Fourth Amended Plan, the Confirmation Order and this Court's prior Orders provide additional bases to grant relief

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior

rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to

completion of payments under the Plan.  The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.
Looking at the plan, Your Honor, the only other claims were secured.  So even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay pursuant to the plan, they still have that security and that lien.  And a priority claim with the IRS – and I'm not sure where that stands, but Your Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors. For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to **unsecured creditors**, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to **unsecured creditors**.

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added]. The Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to **unsecured creditors** have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added]. The Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the

Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor

upon the completion of plan payments to unsecured creditors under the Plan.    Specifically,

paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to
> **Unsecured Creditors**, the Debtor may file a motion to reopen this
> bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk
> of Court fees associated with filing of the motion to reopen shall be
> waived.  The motion to reopen shall be verified and served upon all
> creditors and parties in interest and shall demonstrate that the Debtor
> has made all payments contemplated under the Plan to **Unsecured
> Creditors**.

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added].  The Court finds that the

Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the

Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized

Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor
> shall promptly file a Final Report of Estate and Motion for Final
> Decree Closing Case on the Court-approved local form, which shall
> certify that all payments required under the Plan to **Unsecured
> Creditors** have been made.  The Court may then grant the Debtor a
> discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added].  The Court finds that the

Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final

Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized

Debtor made all plan payments to Class 12 unsecured creditors.

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation [ECF No. 692] (the "Agreed Order"). The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the ***unsecured creditors*** have been made. The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added]. The Court finds that the Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class 12 unsecured creditors.

### III.    NLG's Objection and Opposition

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG, whose claim the Court disallowed, asserted that a discharge should not be granted at this time because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full. The Court took the matter under advisement to consider the objection; and upon further consideration and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding, in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns.  Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge.  However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals.  It is the policy of the Court to not close a case until all appeals are finally resolved and over.  Therefore, it is

**ORDERED AND ADJUDGED**:

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

2.   The Final Report is **APPROVED.**

3.   NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos. 757 and 763] are **GRANTED IN PART** with respect to reopening this case, and not closing the case until the final disposition of all pending motions and appeals herein, but NLG, LLC's Opposition and Objection to the granting of the discharge are **DENIED** and **OVERRULED**.

4.   The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

5.   The discharge issued to the Reorganized Debtor does not discharge or otherwise affect the JMB non-dischargeable judgment.

6.   The discharge issued to the Reorganized Debtor does not discharge the Reorganized Debtor from her personal monetary liability in the amount of One Hundred Nine Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board of Managers of Spencer Condominium. The Reorganized Debtor has other non-monetary obligations under the Settlement Agreement with the Board of Managers of Spencer Condominium, as provided for in the treatment of Class 11 under the Fourth Amended Plan and the Confirmation Order, and such non-monetary obligations are not impacted by the discharge.  The New York courts have exclusive

jurisdiction over the settlement between those parties.

7.  This case shall remain open pending the final disposition of all motions herein and

the outstanding appeals, after which the Court will direct the Clerk of Court to enter

a Final Decree closing this case.

<div align="center">###</div>

Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

---

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and
to file a certificate of service with the Court.*

# EXHIBIT 11



**ORDERED in the Southern District of Florida on July 19, 2016.**

_A. Jay Cristol, Judge_
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE:<br><br>**LIZA HAZAN**<br>_aka_ **ELIZABETH HAZAN**<br><br>     **DEBTOR.** | **CASE NO.: 16-10389-AJC**<br><br>**CHAPTER: 11** |
| **JMB/URBAN 900 DEVELOPMENT**<br>**PARTNERS, LTD.**<br><br>     **PLAINTIFF,**<br><br>v.<br><br>**LIZA HAZAN A/K/A ELIZABETH**<br>**HAZAN,**<br><br>     **DEFENDANT.** | **ADV. PROC.: 16-01188-AJC** |

**<u>AGREED FINAL JUDGMENT</u>**

THIS MATTER came before the Court upon *Ex Parte* Motion to Approve Agreed Final Judgment by Debtor/Defendant, Liza Hazan a/k/a Elizabeth Hazan ("Hazan"), and Plaintiff JMB/Urban 900 Development Partners, Ltd., Plaintiff ("JMB"), and the Court, noting the agreement of the parties, finding that good and sufficient cause exists; and finding that

JMB and Hazan were engaged in pre-petition litigation which resulted in a Settlement Stipulation and thereafter the entry of Judgment against Hazan, in the Circuit Court of Cook County, Illinois County Department, Law Division, No. 05L 13785 (the "Pre-petition Judgment");

On January 11, 2016, Hazan filed a Petition for Relief under Chapter 11 United States Bankruptcy Code;

On April 18, 2016, JMB filed a Complaint Objecting to Dischargeability to Certain Debts of the Debtor Pursuant to 11 U.S.C. § 523(a)(2) and (6) (the "Dischargeability Matters"); alleging that the Pre-petition Judgment is not dischargeable under 11 U.S.C § 523(a)(2) and (6).

The parties have engaged in substantial negotiations and have agreed to resolve the Dischargeability Matters; and

The parties have agreed to the entry of a Final Judgment resolving the Dischargeability Matters and all issues related thereto on the terms set forth below,

ACCORDINGLY, it is Ordered and Adjudged as follows:

1.      Judgment is hereby entered against Hazan in the amount of $275,000.00 ("The Non Dischargeability Judgment"). The Non Dischargeability Judgment shall be deemed non-dischargeable under 11 U.S.C. § 523(a)(2), for which execution shall issue  subject to the following provisions:

      a.      The Debtor shall have eighteen months from the date of the filing of the Petition for relief (the "First Anniversary Date") to pay $275,000.00 without interest. Thereafter

commencing with the First Anniversary Date, any then unpaid balance of The Non Dischargeability Judgment amount shall accrue interest at the rate of 2.5% above the then current federal judgment interest rate per annum.

b.      JMB agrees to receive and credit The Non Dischargeability Judgment with all payments made to JMB, including all payments made under and pursuant to the Debtor's Plan of Reorganization, with payments credited first to payment of accrued interest, if any, and then to principal.

2.      This Non Dischargeability Judgment shall be the surviving judgment against Hazan and shall be deemed to replace the Pre-petition Judgment, which shall no longer be valid or enforceable.

3.      In the event that the Debtor has failed to pay and satisfy this Non Dischargeability Judgment within two years of the date of entry (the "Second Anniversary Date"), JMB may then and in that event proceed to execution of this Non Dischargeability Judgment.

4.      In the event that a Plan is confirmed and the Debtor defaults in making payments to JMB and/or other creditors in connection with the payments required under the confirmed Plan, (a) the Debtor will still be entitled to pay and satisfy this Non Dischargeability Judgment before the Second Anniversary Date; and (b) JMB will refrain from exercising any rights that may be granted under the confirmed Plan to enforce the Plan, until after the Second Anniversary Date and does not treat JMB in a manner less favorable than other unsecured creditors.

5.      JMB agrees to support and vote for Debtor's Plan of Reorganization so long as said Plan requires payment to JMB in the amounts set forth in this Non Dischargeability Judgment prior to the Second Anniversary Date, and does not treat JMB in a manner less favorable to other unsecured creditors under the plan with respect to its now agreed upon $275,000 unsecured nondischargeable claim. For an avoidance of doubt, while the Debtor may establish a convenience class of small claims to which it may pay 100 cents at confirmation-- provided this class does not exceed $30000 in the aggregate, the Debtor shall not make any other

cash payments to its other creditors unless JMB receives a like percentage of cash on its $275,000 claim at the time of the distribution .

     6.     JMB and Hazan, for themselves, and as may be applicable, their directors, employees, agents and attorneys, and all of their respective successors, assigns, heirs and personal representatives ("Releasing Parties"), hereby release, waive, acquit, satisfy and discharge one another, of, from and against all claims, demands, actions, causes of action, entitlements, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments and executions, in law or in equity (collectively, "Claims"), which each ever had, now have, or which any Releasing Party, respectively, can, shall or may have, against any other Releasing Party, arising from any event, matter, cause or thing occurring, arising or accruing from the beginning of the world until the Effective Date, except, however, this release is not intended to have any affect upon the terms, conditions and obligations of Hazan as set forth in this Agreed Judgment. If and when Hazan makes the full and complete payments as required by this Agreed Judgment, this release shall be deemed unconditional.

     7.     This Court shall retain jurisdiction as may be appropriate and necessary to interpret and enforce this stipulation.

s/s/: David J. Fischer, Esq.
Locke Lord LLP
Counsel for Plaintiff
Dated: 7/15/16

s/s/: Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
Counsel for Debtor
Dated: 7/15/16
s/s/:Joel M. Aresty, Esq.
Joel M. Aresty P.A
Counsel for Debtor
Dated: 7/15/16

Elizabeth Hazan

Debtor

Dated: 07.14.16

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                                Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

        Debtor,
_____/

### APPELLANT NLG LLC'S DESIGNATION OF THE RECORD
### AND STATEMENT OF ISSUES ON APPEAL

Appellant NLG, LLC ("NLG" or "Appellant"), by and through undersigned counsel, and

pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure, hereby files its Designation

of the Record and Statement of Issues on Appeal with respect to Appellant's Notice of Appeal

[ECF 792] of Order Denying NLG LLC's Motion for Relief from Discharge Order [ECF 784]

filed on December 28, 2018, of U.S. Bankruptcy Judge A. Jay Cristol and entered on the docket

on January 2, 2019 in this case and [ECF 766] Order Granting Discharge, and requests that the

same be transmitted electronically to the United States District Court for the Southern District of

Florida, Miami Division.

| Main Case (BK) | Filing Date | Docket # | Docket Text/Document Description |
|:---:|:---:|:---:|:---:|
| BK | 1/11/2016 | 1 | Voluntary Petition |
| BK | 1/13/2016 | 4 | Notice of 341 Meeting and Deadlines |
| BK | 1/19/2016 | 10 | Valencia Estates Motion for Stay Relief |
| BK | 2/9/2016 | 20 | Chapter 11 Case Management Summary |
| BK | 2/17/2016 | 32 | Amended Chapter 11 Case Management Summary |
| BK | 4/20/2016 | 61 | DIP Monthly Operating Report |
| BK | 5/13/2016 | 66, 66-1,66-2, 66-3, 66-4 | NLG Motion For Relief from the Automatic Stay and Exhibits |

| | | and 66-5 | |
|---|---|---|---|
| BK | 5/13/2016 | 67 | Correct Affidavit |
| BK | 5/24/2016 | 76 | Debtor Response to NLG Motion for Relief from the Automatic Stay |
| BK | 5/24/2016 | 77 | Selective Response to NLG Motion for Relief from the Automatic Stay |
| BK | 5/25/2016 | 79 | NLG Reply |
| BK | 5/25/2016 | 79-1 | Judge Gordo Order Granting Foreclosure to NLG against Debtor Hazan |
| BK | 6/15/2016 | 90 | Debtor Schedules |
| BK | 7/12/2017 | 105 | 5/26/17 Hearing Transcript |
| BK | 8/23/2016 | 176 | Order Denying Stay Relief to NLG |
| BK | 9/15/2016 | Claim 17 | NLG Proof of Claim attaching NLG Foreclosure Judgment |
| BK | 9/16/2016 | 204 | Debtor Objection to NLG POC |
| BK | 10/26/2016 | 265 | 8/17/2016 Hearing Transcript |
| BK | 11/4/2016 | 275 | JPM Motion for Stay Relief |
| BK | 11/9/2016 | 279 | Valencia Objection to Disclosure Statement |
| BK | 11/9/2016 | 281 | NLG Objection to Disclosure Statement |
| BK | 11/9/2016 | 282 | JPM Objection to Disclosure Statement |
| BK | 11/9/2016 | 284 | S&S Collections Objection to Disclosure Statement |
| BK | 11/11/2016 | 285 | NLG Omnibus Response to JPM Stay Relief |
| BK | 11/11/2016 | 286 | NLG Response to Debtor Objection |
| BK | 11/15/2016 | 290 | NLG Motion to Dismiss or Convert |
| BK | 11/29/2016 | 315 | Order Granting Stay Relief to JPM and NLG |
| BK | 12/21/2017 | 358 | 12/21/2016 Hearing Transcript |
| BK | 5/25/2017 | 456 | 5/4/2017 Hearing Transcript |
| BK | 6/2/2017 | 465 | NLG Motion to Dismiss or Convert |
| BK | 6/12/2017 | 475 | NLG Limited Motion for Stay Relief |
| BK | 6/12/2017 | 476 | NLG Hazan Response to Limited Motion for Stay Relief |
| BK | 6/16/2017 | 481 | NLG Motion To Appoint Chapter 11 Trustee |
| BK | 6/20/2017 | 484 | NLG Aff in Support of Motion to Dismiss, Convert or Appoint Chapter 11 Trustee |
| BK | 6/22/2017 | 489 | NLG Motion to Compel Timely Legible and Complete Monthly Operating Reports |
| BK | 6/28/2017 | 500 | Order Denying NLG Limited Motion for Stay Relief |
| BK | 9/9/2017 | 541, 541-1, | Fourth Amended Disclosure Statement and |

| | | 541-2, 541-3, 541-4 & 541-5 | Exhibits |
|---|---|---|---|
| BK | 9/9/2017 | 542 | Third Amended Plan |
| BK | 9/10/2017 | 543 | Debtor Motion for Extension of Exclusivity |
| BK | 9/14/2017 | 546 | NLG Opp. to Motion for Extension Exclusivity |
| BK | 9/14/2017 | 547 | NLG Opp to Fourth Amended Disclosure Statement and Third Amended Plan |
| BK | 10/26/2017 | 559 | DIP Monthly Operating Report |
| BK | 11/15/17 | 562, 562-1, 562-2, 562-3, 562-4 & 562-5 | Fifth Amended Disclosure Statement and Exhibits |
| BK | 11/15/17 | 563 | Fourth Amended Plan |
| BK | 11/22/17 | 564 | DIP Monthly Operating Report |
| BK | 12/4/17 | 569, with exhibits 1-7 | Valencia Estates Motion to Convert |
| BK | 12/11/17 | 578 | NLG Objection to Confirmation |
| BK | 12/13/17 | 580 | Order Approving Disclosure Statement |
| BK | 12/22/17 | 591 | Simon Ballot Accepting Plan |
| BK | 12/22/17 | 592 | NLG Objection to Confirmation |
| BK | 12/29/17 | 595 | DIP Monthly Operating Report |
| BK | 1/9/18 | 603 | Valencia Estates Ballot Rejecting Plan |
| BK | 1/10/18 | 606 | NLG Amended Objection to Confirmation |
| BK | 1/10/18 | 607 | NLG Motion to Strike Ballot of 6913 Valencia |
| BK | 1/10/18 | 610 | Debtor Motion to Strike Amended NLG Objection |
| BK | 1/17/18 | 614 | NOH on Motion to Strike 6913 Valencia Ballot |
| BK | 1/17/18 | 615 | NOH on Motion to Strike Objection |
| BK | 1/19/18 | 619 | NLG Opp to Debtor Motion to Strike |
| BK | 1/19/18 | 621 | Motion to Continue Hearing |
| BK | 1/22/18 | 622 | Notice of hearing |
| BK | 1/23/18 | 625 | DIP Monthly Operating Report |
| BK | 1/24/18 | 626 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 627 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 628 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 629 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 630 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 631 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 632 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 633 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 634 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 635 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 636 & 636-1 | Amended DIP Monthly Operating Report |

| BK | 1/24/18 | 637 & 637-1 | Amended DIP Monthly Operating Report |
|---|---|---|---|
| BK | 1/24/18 | 638 & 638-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 639 & 639-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 640 & 640-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 641 & 641-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 642 &642-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 643 & 643-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 644 & 644-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 645 & 645-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 646 & 646-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 647 &647-1 | Amended DIP Monthly Operating Report |
| BK | 1/24/18 | 651 | Order Continuing Hearing |
| BK | 3/5/18 | 657 | DIP Monthly Operating Report |
| BK | 5/25/18 | 677 | Certificate of Compliance |
| BK | 5/25/18 | 678 | Certification of Proponent |
| BK | 5/25/18 | 679 | Debtor Declaration |
| BK | 5/25/18 | 680 | Debtor Declaration |
| BK | 5/25/18 | 681 | Certification of Proponent |
| BK | 5/30/18 | 682 | Certification of Proponent |
| BK | 5/31/18 | 684 | Declaration for Payments |
| BK | 5/31/18 | 685 | Notice of Deadlines |
| BK | 5/31/18 | 686 | Stipulation with Valencia |
| BK | 6/1/18 | 688 | Declaration for Payments |
| BK | 6/12/18 | 690 | Stipulation |
| BK | 6/13/18 | 691 | Confirmation Order |
| BK | 6/13/18 | 692 | Order Closing Case |
| BK | 6/25/18 | 696 | Notice of Appeal |
| BK | 7/5/18 | 702 | Motion to Reopen Case |
| BK | 7/5/18 | 703 | Motion to Reopen Case |
| BK | 7/5/18 | 704 | Notice of Deadlines |
| BK | 7/6/18 | 707 | Transcript |
| BK | 7/9/18 | 711 | Notice of Hearing |
| BK | 7/9/18 | 713 | Motion to Reopen Case and Discharge |
| BK | 7/13/18 | 716 | Notice of Hearing |
| BK | 7/26/18 | 723 | Amended DIP Monthly Operating Report |
| BK | 7/27/18 | 725 | Amended DIP Monthly Operating Report |
| BK | 7/27/18 | 726 | Amended DIP Monthly Operating Report |
| BK | 7/27/18 | 727 | Amended DIP Monthly Operating Report |
| BK | 8/3/18 | 729 | NLG Objection to Motion for Discharge |
| BK | 8/6/18 | 730 | Notice of Hearing |
| BK | 8/6/18 | 731 | Realtime Objection to Discharge |
| BK | 8/8/18 | 733 | NLG Opposition |
| BK | 8/9/18 | 734 | Valencia Opp |
| BK | 10/18/18 | 748 | Second Amended Motion for Contempt |
| BK | 10/22/18 | 752 | NLG Opposition |

| BK | 10/29/18 | 757 | NLG Motion to Reopen Bankruptcy |
|----|----------|-----|--------------------------------|
| BK | 11/2/18 | 758 | Transcript from 10/24/18 hearing |
| BK | 11/13/18 | 763 | Motion to Reopen |
| BK | 11/26/18 | 765 | Transcript from Judge Hagler 11/8/18 |
| BK | 12/13/18 | 770 | Emergency Motion for Contempt |
| BK | 12/14/18 | 771 | Notice of Hearing on Emergency Motion |
| BK | 12/20/18 | 776 | Motion for Relief from Discharge Order |
| BK | 12/24/18 | 778 | NLG Opposition |
| BK | 12/28/18 | 780 | Order |
| BK | 12/31/18 | 783 | Notice of Filing of Withdraw of Crossclaim |
| BK | 1/2/19 | 784 | Order Denying NLG Motion |
| | | | |
| | | | |
| | | | |
| | | | |

## **STATEMENT OF ISSUES**

1.     Whether the Bankruptcy Court erred in entering a discharge order:

(A) When there was a pending appeal of the Confirmation Order.

(B) When there was a pending Motion for Stay of the Confirmation Order.

(C) When the Debtor had already defaulted in making plan payments thus rendering the Plan in default.

(D) When the unsecured creditors had not been paid in full as required by the bankruptcy code before discharge.

(E) When the Confirmation Order was a product of fraud and an adversary proceeding to revoke confirmation for fraud was filed.

January 25, 2019.

## **CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of foregoing was served via CM/ECF, email or U.S. Mail to the parties on the attached service list as indicated on this 25th day of January, 2019.

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

### Served via CM/ECF

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com, rross@stearnsweaver.com; larrazola@stearnsweaver.com;
cgraver@stearnsweaver.com

Joel Aresty on behalf of Plaintiff and Counter-Defendant Liza Hazan
Aresty@mac.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                             Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                   Chapter 11
_____/

### NLG, LLG'S OPPOSITION RESPONSE TO
### DEBTOR'S EXPEDITED MOTION TO DEEM VOID ORDERS ENTERED IN
### VIOLATION OF THE AUTOMATIC STAY [ECF NO. 789]

NLG, LLC ("NLG"), through undersigned counsel, and its Counsel and Juan Ramirez,

Jr., *pro se* ("Respondents"), hereby file this Opposition Response to Debtor's Motion to Deem

Void Orders Entered in Violation of the Automatic Stay ("the Motion") [ECF No. 789]. In

support, NLG states:

This is the latest example of the barrage of motions filed by the Debtor Hazan, and her

army of lawyers, intended to harass and intimidate NLG, and its counsel. The Motion was filed

on January 9, 2019. The next day, as with all other motions filed by Hazan, the Court promptly

scheduled a hearing for February 5, 2019.

In contrast, the Court summarily denied NLG's motion for sanctions, in the related

adversary proceeding under case no. 16-1439-AJC, without a hearing. [*See* ECF 368]. It denied

NLG's Motion to Compel Monthly Reports [ECF 785], without addressing the discussion at the

hearing on December 27, 2018, wherein NLG amended the motion to compel monthly reports to

one requesting the Court compel quarterly reports as required by the bankruptcy code.

This new motion overlaps with the Fourth Motion for Contempt filed by a phalanx of

lawyers hired and paid for by the Debtor[1] and her husband are part of an effort to harass and

intimidate NLG and its lawyers into abandoning any legal attempt to enforce their rights. As will

---

[1] While defaulting on her payments to at least two creditors as per her Plan of Reorganization.

be shown in this Opposition Response, this pattern of intimidation, harassment and obfuscation is also intended to delay any relief from the two jurisdictions who can vacate the sham Judgment by Confession. This Judgment by Confession was admittedly obtained while the same individual, Hazan's cohort, acted as President of the plaintiff Quebec while at the same time executing an affidavit for the defendant NLG confessing to a $5,000,000 judgment. Instead of being offended by such blatant lack of due process, this Court has entered a series of orders necessitating a series of appeals, all of which would have been resolved by now if Hazan had not filed six frivolous non-core personal injury tort counts and had this Court certified its November 1, 2017 Final Judgment as immediately appealable. This entire saga would have been avoided had this Court honored, as it was obligated to do, Judge Gordo's Order Granting Foreclosure and the Final Judgment of Foreclosure which had already adjudicated every issue between NLG, Hazan and Selective.

In the Fourth Motion for Contempt which was also promptly scheduled for hearing on February 5, 2019, Hazan complained about NLG's efforts to determine the amount of attorney's fees pursuant an order dated April 26, 2016, by the Third District Court of Appeal. It sought an order directing counsel to cancel its fee hearing and dismiss the action, throwing in a 2007 case without explanation. Less than a week later, Hazan is back complaining about the same efforts, but now asking this Court to deem that order void.

What the new motion unprofessionally and unethical fails to reveal is that it was the Debtor Hazan who filed an appeal to the Third District, not NLG. The appeal was filed by Hazan on February 3, 2016, without leave of the Court or the trustee in bankruptcy.  [*See* ECF 812 p. 13]. This bankruptcy was filed on January 16, 2016 [ECF 1]. NLG moved to dismiss the appeal on February 10, 2016. Hazan obtained multiple extensions of time to file a response, which she

finally did on March 28, 2016. Then, on April 4, 2016, within hours of NLG filing its Reply, Hazan filed a Notice of Voluntary Dismissal. NLG moved for attorney's fees on April 6, 2016, and the motion was granted on April 26, 2016 [*See* ECF 812 p. 17].

In its Opposition Response [ECF 812] to the Fourth Motion for Contempt, NLG meticulously outlined Hazan's course of conduct, in coordination with her husband's company, Selective Advisors Group, LLC, to harass, intimidate and dissipate its legal resources while engaging a coterie of lawyers. This strategy has been encouraged and enabled Hazan to continually push the envelope and file a series of frivolous and misleading motions, prompting the court to grant numerous hearings that keep encumbering NLG's resources.

## MEMORANDUM OF LAW

Hazan filed this Chapter 11 bankruptcy petition on January 11, 2016, the day before a foreclosure sale scheduled pursuant to NLG's Final Judgment of Foreclosure. This filing triggered an automatic stay pursuant to 11 U.S.C. § 362. As explained earlier, Hazan filed her Notice of Appeal on February 3, 2016.

In Chapter 11 cases, the debtor-in-possession is charged with "the duties of a trustee" § 1106(a), which include the duty to "be accountable for all property received," including objecting to "any claim that is improper," § 704. The latter duty is an implicit reference to § 502(b), which permits a trustee to seek disallowance of a claim against the debtor's estate because "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). "Because of doctrines such as claim preclusion, issue preclusion, and *Rooker-Feldman*, a bankruptcy court may try claim objections under this provision only if the underlying claim is subject to dispute and has yet to be decided pursuant to

a final judgment from a state or federal court of original jurisdiction." *In re Mid-City Parking, Inc.*, 332 B.R. 798, 814 (Bankr. N.D. Ill. 2005), *citing In re Fiterman*, 1999 Bankr. LEXIS 1409, 1999 WL 1044811, at *3 (Bankr. D. Minn. 1999); *In re Johnson*, 210 B.R. 1004, 1006 (Bankr. W.D. Tenn. 1997); *cf. Gruntz*, 202 F.3d at 1084 (stating that the three doctrines would apply to prepetition state court judgments); *see also Singleton v. Fifth Third Bank (In re Singleton)*, 230 B.R. 533, 537-38 (B.A.P. 6th Cir. 1999) (citing examples); Kathleen P. March & Jennifer Hildebrandt, *The Many Ways to Win or Lose on Your Bankruptcy Issue in State Court; or, Why Bankruptcy Lawyers and Judges Who Thought State Court Was Irrelevant to Bankruptcy Practice Guessed Wrong*, 25 CAL. BANKR. J. 332, 343 (2000).

Therefore, in order to succeed under § 502(b)(1), the trustee may be required to obtain a successful ruling of reversal or remand from a court with appellate jurisdiction directly over the final judgment creating the bankruptcy claim. *In re Mid-City Parking*, 332 B.R. at 814. Not only is the trustee charged with the duty to oppose unenforceable claims, *see In re KTMA Acquisition Corp.*, 153 B.R. 238, 259-60 (Bankr. D. Minn. 1993), 7 *Collier On Bankruptcy*, *supra*, AP 1107.02, at 1107-5, but he or she is also generally charged with pursuing any litigation that would inure to the benefit of the debtor's estate irrespective of whether the stance taken is offensive or defensive, *see id.* AP 1107.02, at 1107-4. In carrying out these duties, the trustee or debtor-in-possession has a fiduciary duty to the creditor body, *see Wolf v. Weinstein*, 372 U.S. 633, 649-50, 83 S. Ct. 969, 979, 10 L. Ed. 2d 33 (1963), and may simply choose not to appear and expend estate resources defending claims against the debtor's estate, *see, e.g., Norton v. Switzer*, 93 U.S. 355, 363-64, 23 L. Ed. 903 (1876).

The automatic stay has a dual purpose: it temporarily relieves the debtor of financial hardship and collection activity while simultaneously preventing creditors from improving their

Opposition Response to Motion to Deem Orders Void
Case No. 16-10389-AJC
Page 5 of 9

positions relative to one another. *See Winters by & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133, 135 (4th Cir. 1996); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982); *Commerzanstalt v. Telewide Sys.*, 790 F.2d 206, 207 (2d Cir. 1986); *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir. 1993); H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97. Thus, "section 362 is a shield, not a sword." *Winters*, 94 F.3d at 136. *Capgro Leasing* recognizes the dual purpose, *see In re Capgro Leasing Assocs., 169 B.R. 305, 310 (Bankr. E.D.N.Y. 1994),* and states that "because the stay is not solely for the debtor's protection, a debtor may neither unilaterally waive nor limit the scope of the automatic stay." *Id.*; *see also Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). A Chapter 11 debtor is not just "a debtor" when granted the powers and responsibilities of a trustee under § 323; he or she is a fiduciary for all creditors.

"It goes without saying that once a trustee or debtor-in-possession unilaterally waives the protections of the automatic stay by proceeding with estate administration, he cannot contend that a creditor-appellee has violated the automatic stay by opposing the appeal he himself has initiated and prosecuted." *In re Mid-City Parking*, 332 B.R. at 814. The debtor-in-possession is estopped from asserting the stay against a creditor-appellee once it has initiated an appeal in the face of § 362(a). *See In re Horkins*, 153 B.R. 793, 799 (Bankr. M.D. Tenn. 1992); *cf. In re Cobb*, 88 B.R. 119, 121 (Bankr. W.D. Tex. 1988).

Therefore, in *In re Mid-City Parking*, the court concluded that: "A Chapter 11 debtor-in-possession or case trustee may waive the protections afforded by § 362(a) when the actions that would otherwise violate the stay are in furtherance of his statutory duties of administering the

bankruptcy estate, including appealing judgments against the debtor's estate in non-bankruptcy forums." *Id.* at 820. Here, as in *Mid-City Parking*, the Chapter 11 debtor-in-possession took affirmative action by filing a notice of appeal, thereby waiving the protections of § 362(a)(1) on behalf of the bankruptcy estate. Thus, no automatic stay violation occurred.

Furthermore, Hazan's liability for fees was based on NLG's argument that the appeal was frivolous. Her actions giving rise to the award of fees were all post-petition actions. The sanctions are therefore a post-petition debt.

In the meantime, the Debtor continues to live on Fisher Island, making no mortgage payments, no payments for real estate taxes or association fees to Fisher Island Community Association. The Debtor is basically living for free in a multi-million dollar mansion at the expense of her creditors by gaming this Court.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should summarily deny the Motion to Deem Orders Void and instead sanction Hazan and her attorneys, and such other and further relief as the Court deems appropriate.

Dated February 4, 2019

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

Opposition Response to Motion to Deem Orders Void
Case No. 16-10389-AJC
Page 7 of 9

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with

the Clerk of Court using the CM/ECF system on this 4th day of February, 2019.  I also certify

that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF

system to the parties on the attached service list.

        Respectfully submitted,

**Attorneys for Appellant NLG, LLC**

| | |
|---|---|
| Juan Ramirez, Jr. | Astrid E. Gabbe |
| ADR Miami LLC | The Law Office of Astrid E. Gabbe, P.A. |
| Florida Bar No. 201952 | Florida Bar No. 635383 |
| ADR Miami LLC | P.O. Box 4216 |
| 1172 S. Dixie Hwy. #341 | Hollywood, FL 33083 |
| Coral Gables, FL 33146 | Tel. (954) 303-9882 |
| (305) 667-6609 | Fax. (954) 983-1427 |
| jr@adrmiami.com | astridgabbe@gmail.com |

## SERVICE LIST

***Served via CM/ECF***

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.

rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Opposition Response to Motion to Deem Orders Void
Case No. 16-10389-AJC
Page  9 of 9

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr.. Esq. on behalf of Secured Creditor, NLG, LLC
jr@adrmiami.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                Chapter 11
_____/

## NLG, LLG'S OPPOSITION RESPONSE TO
## DEBTOR'S MOTION FOR ENTRY OF FINAL JUDGMENT [ECF NO. 796]

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, its manager, Chris
Kosachuk, *pro se*, and Juan Ramirez, Jr., *pro se* ("Respondents"), hereby file this Opposition
Response to Debtor's Motion for Entry of Final Judgment [ECF No. 796]. In support, NLG
states:

The Court granted in part the Debtor's Motion for Contempt and summarily awarded
$9,500 [ECF 780], despite its prior statement that it would only be determining entitlement and a
later hearing on amount would be scheduled if needed.

The Fourth Motion for Contempt filed by a phalanx of lawyers hired and paid for by the
Debtor[1] and her husband are part of an effort to harass and intimidate NLG and its lawyers into
abandoning any attempt to enforce their legal rights. As will be shown in this Opposition
Response, this pattern of intimidation, harassment and obfuscation is also intended to delay any
relief from the two jurisdictions who can vacate the sham Judgment by Confession. This
judgment by confession was admittedly obtained while the same individual, Hazan's cohort,
acted as President of the plaintiff Quebec while at the same time executing an affidavit for the
defendant NLG confessing to a $5,000,000 judgment. Instead of being offended by such blatant
lack of due process, this Court has entered a series of orders necessitating a series of appeals, all

_____

[1] While defaulting on her payments to at least two creditors as per her Plan of Reorganization.

of which would have been resolved by now if Hazan had not filed six frivolous non-core tort counts and had this Court certified its November 1, 2017 Final Judgment as immediately appealable. This entire saga would have been avoided had this Court honored, as it was obligated to do, Judge Gordo's Order Granting Foreclosure and Final Judgment of Foreclosure which had already adjudicated every issue between NLG, Hazan and Selective.

The prior three motions for contempt alleged the following violations:

(1)     That the *lis pendens* filed by NLG violated the automatic stay statute, the Confirmation Order and the Discharge Order. This Court disagreed and denied relief based on this argument.

(2)     That NLG, Chris Kosachuk and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by prosecuting a motion to vacate in New York. This Court disagreed and denied relief based on this argument.

(3)     That NLG, Chris Kosachuk and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by prosecuting a Declaratory Judgment Action in front of Judge Martinez in the District Court for Southern District of Florida. This Court disagreed and denied relief based on this argument.

(4)     That NLG, Kosachuk, and Attorneys Ramirez and Astrid Gabbe violated the automatic stay statute, the Confirmation Order and the Discharge Order by seeking discovery in the appeal pending in front of Judge Moreno of this Court judgment in the adversary proceeding. This Court disagreed and denied relief based on this argument.

(5)     NLG and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by filing a cross-claim in the Chase foreclosure case. This Court

Opposition Response to Motion for Entry of Final Judgment
Case No. 16-10389-AJC
Page 3 of 7

disagreed that NLG and Attorney Ramirez violated the automatic stay because the stay ceased to exist upon confirmation.

(6)     The Order also denied any relief against Selective Advisors Group because it was not entitled to the injunction obtained by the Debtor.

(7)     Out of all those allegations, this Court only found a violation with the "filing of the cross-claim."

Under a prevailing party standard, by any measure, NLG was the prevailing party as it prevailed on the significant issues in the litigation. The *lis pendens* and the efforts to vacate the Judgment by Confession were the more significant issues, as Hazan claimed in her motions. There was nothing happening in connection with the cross-claim or the rest of the related foreclosure litigation as the issue of service of process had yet to be decided.

Yet the Court summarily awarded Hazan $9,500.00 in fees with no explanation as to how it had arrived at that figure and again without the promised hearing. In addition, there is nothing in the record to justify such an award, such as an Affidavit from Counsel. In *Hensley v. Eckerhart,* 461 U.S. 424 (1983), the Supreme Court established that "the starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The party seeking reimbursement for fees paid carries the burden to produce documentation of the hours worked and billed. *Id.* Reasonable fees should not include those fees not actually billed to the client because they were a result of overstaffing, redundant services, excessive time expended, etc. *Id.* at 434. The court cannot summarily grant plaintiff's motion for fees. *Gannett Outdoor Co. v. Feist*, File No. 1:89-CV-472, 1991 U.S. Dist. LEXIS 948, at *22 (W.D. Mich. Jan. 29, 1991). The Court should "indicate on the record the number of hours it finds the

plaintiffs' attorneys have expended on the case." *Northcross v. Bd. of Educ. of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir. 1979) *cert. denied,* 447 U.**S**. 911 (1980). Other considerations for the Court to consider in determining what fees, if any, are recoverable is whether plaintiff prevailed on all of its claims. *Hensley,* 461 U.**S**. at 429.

The new complaints in the new motion for contempt are, first, that NLG has scheduled a hearing to determine the amount of attorney's fees awarded by the Third District Court of Appeal. The motion filed in state court made clear that those fees were not discharged by this bankruptcy proceeding as they awarded **after** the filing of the petition and were thus a **post-petition debt**. The new motion for contempt asserts, without any support, that the "fees result from litigation over a prepetition claim." That has to be an intentional misstatement of the facts, which are:

- January 11, 2016 - The petition was filed [ECF No. 1].

- February 3, 2016 - Hazan filed her Notice of Appeal [ECF 812 p. 13].

- April 26, 2016 - The Third District granted the motion for attorney's fees on [ECF 812 p. 17].

NLG is only seeking appellate attorney's fees occasioned by her appeal under Case No. 3D16-0315. The relevant date is not the date of the confirmation order, but the date the petition was filed. The Confirmation Order only enjoins actions to collect on "any debt that existed as of the Petition Date." [ECF 691, ¶ 9].

NLG adopts and incorporates by reference its opposition to the Fourth Motion for Sanctions, ECF 812, as if fully re-written herein and attached hereto as Exhibit 1.

The Debtor continues to live on Fisher Island, making no mortgage payments, no payments for real estate taxes or association fees to Fisher Island Community Association. The Debtor is basically living for free in a multi-million dollar mansion at the expense of her creditors by gaming this Court.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should summarily deny the fourth Motion for Entry of Final Judgment and instead sanction Hazan and her attorneys, and such other and further relief as the Court deems appropriate.

Dated February 4, 2019

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 4th day of February, 2019. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

Opposition Response to Motion for Entry of Final Judgment
Case No. 16-10389-AJC
Page 6 of 7

**Attorneys for Appellant NLG, LLC**

Juan Ramirez, Jr.
ADR Miami LLC
Florida Bar No. 201952
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium

bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr.. Esq. on behalf of Secured Creditor, NLG, LLC
jr@adrmiami.com

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                            Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                  Chapter 11
_____/

## NLG, LLG'S OPPOSITION RESPONSE TO DEBTOR'S EXPEDITED MOTION FOR CONTEMPT AND TO IMPOSE ADDITIONAL SANCTIONS [ECF NO. 787]

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, its manager, Chris

Kosachuk, *pro se*, and Juan Ramirez, Jr., *pro se* ("Respondents"), hereby file this Opposition

Response to Debtor's new Expedited Motion for Contempt and To Impose Additional Sanctions

[ECF No. 787]. In support, NLG states:

This is now the Fourth Motion for Contempt, all filed as either expedited or emergency.

[*See* ECF Nos. 742, 747 and 748 for the prior motions]. The Court set a hearing -- the third -- on

the next business day. In contrast, the Court summarily denied NLG's motion for sanctions

without a hearing. [*See* ECF 368].  It denied NLG's Motion to Compel Monthly Reports [ECF

785], without addressing the discussion at the hearing on December 27, 2018, wherein NLG

amended the motion to compel monthly reports to one requesting the Court compel quarterly

reports as required by the bankruptcy code. The Court granted in part the Debtor's Motion for

Contempt and summarily awarded $9,500 [ECF 780], despite its prior statement that it would

only be determining entitlement and a later hearing on amount would be scheduled if needed.

This Fourth Motion for Contempt filed by a phalanx of lawyers hired and paid for by the

Debtor[1] and her husband are part of an effort to harass and intimidate NLG and its lawyers into

abandoning any legal attempt to enforce their rights. As will be shown in this Opposition

_____
[1] While defaulting on her payments to at least two creditors as per her Plan of Reorganization.

Opposition Response to Motion for Contempt

Case No. 16-10389-AJC

Page 2 of 11

Response, this pattern of intimidation, harassment and obfuscation is also intended to delay any relief from the two jurisdictions who can vacate the sham Judgment by Confession. This judgment was admittedly obtained while the same individual, Hazan's cohort, acted as President of the plaintiff Quebec while at the same time executing an affidavit for the defendant NLG confessing to a $5,000,000 judgment. Instead of being offended by such blatant lack of due process, this Court has entered a series of orders necessitating a series of appeals, all of which would have been resolved by now if Hazan had not filed six frivolous non-core personal injury tort counts and had this Court certified its November 1, 2017 Final Judgment as immediately appealable.  This entire saga would have been avoided had this Court honored, as it was obligated to do, Judge Gordo's Order Granting Foreclosure and the Final Judgment of Foreclosure  which had already adjudicated every issue between NLG, Hazan and Selective.

The prior three motions for contempt alleged the following violations:

(1)    That the *lis pendens* filed by NLG violated the automatic stay statute, the Confirmation Order and the Discharge Order. This Court disagreed and denied relief based on this argument.

(2)    That NLG, Chris Kosachuk and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by prosecuting a motion to vacate in New York. This Court disagreed and denied relief based on this argument.

(3)    That NLG, Chris Kosachuk and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by prosecuting a Declaratory Judgment Action in front of Judge Martinez in the District Court for Southern District of Florida. This Court disagreed and denied relief based on this argument.

(4)     That NLG, Kosachuk, and Attorneys Ramirez and Astrid Gabbe violated the automatic stay statute, the Confirmation Order and the Discharge Order by seeking discovery in the appeal pending in front of Judge Moreno of this Court judgment in the adversary proceeding. This Court disagreed and denied relief based on this argument.

(5)     NLG and Attorney Ramirez violated the automatic stay statute, the Confirmation Order and the Discharge Order by filing a cross-claim in the Chase foreclosure case. This Court disagreed that NLG and Attorney Ramirez violated the automatic stay because the stay ceased to exist upon confirmation.

(6)     The Order also denied any relief against Selective Advisors Group because it was not entitled to the injunction obtained by the Debtor.

(7)     Out of all those allegations, this Court only found a violation with the "filing of the cross-claim."

Under a prevailing party standard, by any measure, NLG was the prevailing party as it prevailed on the significant issues in the litigation. The *lis pendens* and the efforts to vacate the Judgment by Confession were the more significant issues, as Hazan claimed in her motions. There was nothing happening in connection with the cross-claim or the rest of the related foreclosure litigation as the issue of service of process had yet to be decided.

Yet the Court summarily awarded Hazan $9,500.00 in fees with no explanation as to how it had arrived at that figure and again without the promised hearing.  In addition, there is nothing in the record to justify such an award, such as an Affidavit from Counsel. In *Hensley v. Eckerhart,* 461 U.S. 424 (1983), the Supreme Court established that "the starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The party seeking

reimbursement for fees paid carries the burden to produce documentation of the hours worked and billed. *Id*. Reasonable fees should not include those fees not actually billed to the client because they were a result of overstaffing, redundant services, excessive time expended, etc. *Id*. at 434. The court cannot summarily grant plaintiff's motion for fees. *Gannett Outdoor Co. v. Feist*, File No. 1:89-CV-472, 1991 U.S. Dist. LEXIS 948, at *22 (W.D. Mich. Jan. 29, 1991). The Court should "indicate on the record the number of hours it finds the plaintiffs' attorneys have expended on the case." *Northcross v. Bd. of Educ. of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir. 1979) *cert. denied,* 447 U.S. 911 (1980). Other considerations for the Court to consider in determining what fees, if any, are recoverable is whether plaintiff prevailed on all of its claims. *Hensley,* 461 U.S. at 429.

The new complaints in the new motion for contempt are, first, that NLG has scheduled a hearing to determine the amount of attorney's fees awarded by the Third District Court of Appeal. The motion filed in state court made clear that those fees were not discharged by this bankruptcy proceeding as they awarded after the filing of the petition and were thus a post-petition debt. The new motion for contempt asserts, without any support, that the "fees result from litigation over a prepetition claim." That is an intentional misstatement of the facts. The petition was filed on January 11, 2016 [ECF No. 1]. Hazan filed a Notice of Appeal on February 3, 2016 [Attached as Exhibit 1]. The Third District granted the motion for attorney's fees on April 26, 2016 [Attached as Exhibit 2]. NLG is only seeking appellate attorney's fees occasioned by her appeal under Case No. 3D16-0315. The relevant date is not the date of the confirmation order, but the date the petition was filed. The Confirmation Order only enjoins actions to collect on "any debt that existed as of the Petition Date." [ECF 691, ¶ 9].

Opposition Response to Motion for Contempt
Case No. 16-10389-AJC
Page 5 of 11

Next, Hazan complains about the Notice of Withdrawal "merely" withdrawing the cross-claim against Hazan only. That is the only party against whom NLG made any allegations. That should be sufficient to automatically dissolve the *lis pendens* pursuant to Rule 1.420(f). If any one of the assortment of lawyers representing Hazan had requested a correction to clarify that the entire cross-claim had been withdrawn, they could have requested such clarification suggesting the language they wanted included in the Notice of Withdrawal. The only complaint undersigned received was that the Notice did not include the legal description, which the current motion for sanctions does not mention. Even though unnecessary, NLG has filed a Corrected Withdrawal, which is attached to this Response as Exhibit 3.

Hazan also, for the first time, complains in this fourth motion for contempt about the counterclaim in the foreclosure action of *JP Morgan Chase v. Hazan.* On November 29, 2016, this Court entered an Order Granting JP Morgan Chase Bank N.A.'s Motion for Relief from Stay [ECF No. 315]. In it, all parties to the foreclosure action, including NLG, were "granted relief from the automatic stay to litigate the foreclosure claim of Chase in the Foreclosure Action to the point of judgment, but not to conduct a foreclosure sale of the Property." That order has never been rescinded.

In that litigation, Hazan has not even filed a response to the complaint other than to move to quash service. The Agreed Order entered on November 6, 2018, does not even obligate her to file an answer, only a response. *See* Agreed Order as Exhibit 4. That response is not due until January 22, 2019, at the earliest and Hazan has failed to file any responsive pleading.

Furthermore, the word counterclaim does not even appear in any of the three prior motions for contempt [ECF 742, 747 and 748]. Only now, on her fourth motion for contempt, Hazan objects to the counterclaim. This is further evidence that the purpose of these motions is

to harass and intimidate. Having been encouraged to push the envelop, Hazan and her entourage of lawyers keep combing the files in the numerous pending suits and appeals to accuse the respondents of mischief, while she is allowed to file frivolous claims with impunity, ignore her obligation to file quarterly reports, breach her agreements to pay creditors (agreements reduced to judgment entered by this Court) and violate virtually every obligation as a debtor in possession under the bankruptcy code, including fraudulent conduct in connection with the Spencer Condominium and a corporation (Portefolio Onesource) that was supposedly dissolved yet paid the Debtor over $50,000 before confirmation.

On December 31, 2018, Attorney Joel Aresty wrote to Attorney Ramirez mentioning NLG's withdrawal of the counterclaim. Ramirez clarified that NLG had not withdrawn the counterclaim, but had withdrawn the cross-claim. When Ramirez pointed out that NLG's continued activity in Chase Foreclosure was in effect a defense of a foreclosure action against Aresty's client and that we were on the same side against Chase, Aresty responded "when you are right you are right." See Exhibit 5.

Since the last hearing on Hazan's three motions for contempt, NLG has done nothing in the Chase litigation except file two Notices of Withdrawal of Cross-claim. As stated before, NLG is merely seeking to tread water, while waiting for an adjudication on the merits of its appeal of the November 1, 2017 final judgment, which Hazan has successfully delayed through her six frivolous non-core tort claims and this Court's failure to certify the final judgment as immediately appealable. It should be abundantly clear now that this Court should have granted NLG summary judgment as to those six sham personal injury tort claims.

Finally, Hazan complains that NLG and its counsel have disobeyed this Court's prior order by not immediately paying the $9,500. This argument overlooks Respondents' right to file

Case 1:22-cv-20485-RNS Document 68 Entered on FLSD Docket 05/24/2022 Page 314 of
Case 16-10389-AJC Doc 831 Filed 02/04/19 Page 7 of 110
889

Opposition Response to Motion for Contempt
Case No. 16-10389-AJC
Page 7 of 11

a motion under Rule 59 and 60 of the Federal Rules of Civil Procedure, as well as Rule 9023 and

9024 of the Federal Rules of Bankruptcy Procedure, seeking relief from the order. Those rules

provide movants with 14 days to file the motion. That motion was filed on January 11, 2019 [AP

ECF No. 371].

Immediately upon the entry of the order, Hazan started harassing Attorney Ramirez

wanting to pick up a check by 8:00 a.m. on December 31, 2018. Her first email addressed to

"Juan" and the email chain is attached as Exhibit 6. The emails continued even after Attorney

Ramirez asked Hazan not to contact him again. On January 4, 2019, she then filed a bar

complaint against Attorney Ramirez, sending copies to eight other recipients. Exhibit 7 and 8.

The next day, she filed a bar complaint against Attorney Gabbe.

As this Court may recall, the prior motions for contempt sought an injunction to prevent

NLG and its creditors, Kosachuk and Ramirez, from prosecuting their motions to vacate the

sham judgment by confession obtained in 2012 without due process. The third motion for

contempt described a hearing held on November 8, 2018 in the New York Supreme Court on the

longstanding motions to vacate the sham judgment dating back to 2014. At that hearing the court

announced that the case has "been on a lot of times, and I want to get this case off my calendar.

It's a 2012 case, one of my oldest cases, and I want to render a decision as soon as possible."

[See ECF 765, p. 23, Transcript, p. 19, lines 8-11]. Despite that, the court gave the parties two

months to brief a simple issue: does the judgment by confession statute allow the entry of a

judgment by confession based on a tort as opposed to a debt? That issue is the crux of NLG's

motion because it is undisputed that the judgment by confession was entered for the alleged torts

of fraud and abuse of process and the statute does not allow the entry of a judgment based on tort

claims.

      Rather than concede that the language of the statute and the case law uniformly limit

judgments by confession to debts, Hazan and Selective Advisors Group, LLC (the corporation

owned by Hazan's husband) have tried anything to sidetrack a ruling on the merits of the

motions to vacate. Hazan and her husband first sought to derail the hearing through an injunction

from this Court. When that failed, they argued to the New York judge, Justice Hagler, that his

action was stayed by the bankruptcy. As the transcript reflects, Justice Hagler rejected that

argument and order final briefs due on January 7, 2019. Three business days before Selective's

memorandum was due, it filed a Notice of Removal. The Notice is attached as Exhibit 9. As can

be seen in paragraph 10 of the Notice, Selective is ultimately seeking to have the matter

transferred to this Court. This matter has been pending for almost five years in New York and

constitutes a blatant display of forum shopping. They obviously regard this Court as a friendlier

forum which can better adjudicate an issue of New York law.

      Even assuming the motions to vacate the judgment by confession were related to this

bankruptcy case, the Notice was filed three years too late. Under Rule 9027(c)(2) of the Federal

Rules of Bankruptcy Procedure, which provides the time limits for filing a notice of removal, the

lengthiest time is within 90 days after the "order for relief" in the bankruptcy case.  Title 11

U.S.C. § 301(b) clearly and succinctly defines "order for relief" as "[t]he commencement of a

voluntary case under a chapter of this title constitutes an order for relief under such chapter."

Debtor Hazan filed her voluntary petition for Chapter 11 bankruptcy on January 11, 2016 [ECF

1].

      In the meantime, the Debtor continues to live on Fisher Island, making no mortgage

payments, no payments for real estate taxes or association fees to Fisher Island Community

Opposition Response to Motion for Contempt
Case No. 16-10389-AJC
Page 9 of 11

Association. The Debtor is basically living for free in a multi-million dollar mansion at the expense of her creditors by gaming this Court.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court should summarily deny the fourth Motion for Contempt and instead sanction Hazan and her attorneys, and such other and further relief as the Court deems appropriate.

Dated February 4, 2019

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 4th day of February, 2019. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

**Attorneys for Appellant NLG, LLC**

Juan Ramirez, Jr.                                    Astrid E. Gabbe
ADR Miami LLC                                   The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 201952                         Florida Bar No. 635383
ADR Miami LLC                                   P.O. Box 4216
1172 S. Dixie Hwy. #341                       Hollywood, FL 33083
Coral Gables, FL 33146                          Tel. (954) 303-9882
(305) 667-6609                                      Fax. (954) 983-1427
jr@adrmiami.com                                  astridgabbe@gmail.com

## SERVICE LIST

*Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium

Opposition Response to Motion for Contempt
Case No. 16-10389-AJC
Page  11 of 11

bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr.. Esq. on behalf of Secured Creditor, NLG, LLC
jr@adrmiami.com

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. 11-42770 CA 01
DIVISION 02

NLG, LLC, a Delaware
limited liability company,

       Plaintiff,

vs.                                        **<u>NOTICE OF APPEAL</u>**

ELIZABETH HAZAN,
an individual, et. al.,

       Defendants.

                                 /

      NOTICE IS HEREBY GIVEN that the Defendant/Appellant, ELIZABETH

HAZAN, by and through undersigned counsel, appeals to the District Court of Appeal of

Florida, Third District, the Final Judgment of Foreclosure rendered on December 4, 2015,

a conformed copy of which is attached hereto together with a copy of the Order denying this

Defendant's Motion for Rehearing pursuant to applicable Florida Rules of Appellate

Procedure. Additionally, a Motion for Rehearing and Other Relief was timely filed by this

Defendant on December 14, 2015, and supplemented on December 17, 2015, after which this

Defendant/Appellant's Motions for Rehearing were peculiarly denied by Order dated January

6, 2016, which did not mention this Defendant by name but which is presumed to pertain to

this Defendant in spite of the fact that various other Defendants filed motions for rehearing

as well, after which this appeal was filed.

       The nature of the Order is a final judgment in that the judgment includes an

amount of money due to the Plaintiff and thereafter calls for a judicial sale of the property

which is the subject of the action to the highest and best bidder on January 12, 2016, and

which sale date has been cancelled.

       I HEREBY CERTIFY that a true and correct copy of the foregoing has been

mailed to Juan Ramirez, Jr., Esquire, Diaz, Reus and Targ, LLP, 3400 Miami Tower, 100 SE

2 Street, Miami, Florida 33131, jramirez@diazreus.com; Chris Kosachuk for NLG, LLC, 854

Pleasant Run Road, Westchester, PA 19382, chriskosachuk@gmail.com; Nicole R.

Moskowitz, Esquire, nlglaw@yahoo.com; Mark Cohen, Esquire, mark@markdcohenpa.com;

Matthew David Glachman, Esquire, matt@glachmanbrill.com, service@glachmanbrill.com;

Daniel S. Nathan, Esquire, Daniel S. Nathan, P.A., dnathan74@gmail.com; Roger Slade,

Esquire, Jonathan S. Goldstein, Esquire, Haber Slade, P.A., rslade@dhaberlaw.com,

jgoldstein@dhaberlaw.com; Danielle Schneider, Esquire, Peyton Bolin, PL,

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 4 of 99

danielle@peytonbolin.com; and Bruce Jacobs, Esquire, efile@jakelegal.com; on this 3rd of

February, 2016.

> ROBERT P. LITHMAN, P.A.
> 18001 Old Cutler Road, Suite 600
> Palmetto Bay FL 33157
> (305) 971-0010
> (305) 377-8804 (Facsimile)
> Primary: rpl@lithmanlaw.com
> Secondary: sharon@lithmanlaw.com

> BY:      /s/ Robert P. Lithman
> ROBERT P. LITHMAN
> Florida Bar No. 224464

Case 1:22-cv-... Case 16-10389-AJC Doc 812 Filed 02/04/19 Page 323 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 5 of 99

# EXHIBIT 2

Case 1:22-cv-21485 Case 16-10389-AJC Doc 812 Entered 02/04/19 Page 25 of 228   Page 324 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 6 of 99

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 26, 2016

ELIZABETH HAZAN,                    CASE NO.:  3D**16-0315**
Appellant(s)/Petitioner(s),
vs.                                 L.T. NO.:    11-42770
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

      Upon consideration of the motion for attorney's fees pursuant to

section 57.105, Florida Statutes and Rule 9.410 Fla. R. App. P. filed by appellee, it

is ordered that said motion is granted and remanded to the trial court to fix amount.

      SUAREZ, C.J., and SHEPHERD and SALTER, JJ., concur.



cc:    Robert P. Lithman      Juan Ramirez, Jr.      Hon. Monica Gordo
      Miami-Dade Clerk

la

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 7 of 99

# EXHIBIT 3

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 8 of 99

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
### CIVIL DIVISION

## CASE NO. 2013-25902 CA 01

JP Morgan Bank, NA,

     Plaintiff,

vs.

Elizabeth Hazan a/k/a Liza Hazan; Unknown
Spouse of Elizabeth Hazan a/k/a Liza Hazan; NLG,
LLC, 6913 Valencia, LLC; Western National Life
Insurance Company f/k/a AIG Annuity Insurance
Company; Fisher Island Community Association,
Inc.; Valencia Estates Homeowners' Association,
Inc.; Unknown Parties in Possession #1, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants;
Unknown Parties in Possession #2, If living,
And all Unknown Parties claiming by, through,
Under and against the above named Defendant(s)
Who are not known to be dead or alive, whether said
Unknown Parties may claim an interest in Spouse,
Heirs, Devisees, Grantees, or Other Claimants.

     Defendants.

_____/

## NLG, LLC'S CORRECTED NOTICE OF WITHDRAWAL OF CROSSCLAIM

     Defendant/Counterclaimant, NLG, LLC ("NLG"), through undersigned counsel, files this

Notice of Withdrawal of Crossclaim to the Foreclosure Complaint (the "Complaint") filed by JP

Morgan Chase Bank, NA ("JP Morgan") and states that, pursuant to Court Order, NLG hereby

withdraws the Cross-Claim filed on October 1, 2018.

Dated:  January 7, 2019.

               Respectfully submitted,

               ADR Miami LLC

Case 1:22-cv-21860-BB Document 8 Entered on Docket 02/04/19 Page 327 of 889
Case 16-19388-AJC Doc 812 Filed 07/08/19 Page 26 of 116
Opposition Response to Motion for Contempt - Exhibits
NLG, LLC's Notice of Withdrawal of Crossclaim
Case No. 16-19388-AJC
Case No. 2013-25902 CA 01
Page 9 of 99
Page 2 of 3

1172 So. Dixie Hwy. #341
Coral Gables, Florida 33146
Tel: (305) 667-6609
Fax: (800) 380-4155

By:  ___/s/ Juan Ramirez, Jr.____
**Juan Ramirez, Jr.**
Florida Bar No. 201952
jr@adrmiami.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via email on this 7th day of January, 2019, on all counsel or parties of record on the Service List below.

By:  ___/s/ Juan Ramirez, Jr.____
Attorney for Defendant/Counterclaimant, NLG

## SERVICE LIST

Robin Reyes
*Attorney for Plaintiff JPMorgan Chase, NA*
roreyes@logs.com
sfgbocaservice@logs.com

Nicole Moskowitz, Esq.
*Attorney for Defendant Elizabeth Hazan*
NLGlaw@yahoo.com

Micheal Simon
*Attorney for Defendant 6913 Valencia, LLC*
msimon@3slaw.com

Roger Slade, Esq.
*Attorney for Defendant Valencia
Estates Homeowners' Association, Inc.*
rslade@dhaberlaw.com

Jonathan Goldstein, Esq.
*Attorney for Defendant Valencia*

Opposition Response to Motion for Contempt - Exhibits
NLG, LLC's Notice of Withdrawal of Crossclaim
Case No. 16-10386-Cref.
Case No. 2013-25902 CA 01
Page 1 of 49
Page 3 of 3

*Estates Homeowners' Association, Inc.*
jgoldstein@dhaberlaw.com

Gian Ratnapala, Esq.
*Attorney for Defendant Fisher Island Community*
*Association, Inc.*
gian@peytonbolin.com
bankforeclosure@peytonbolin.com

David W. Langley
*Attorney for Defendant* Liza Hazan a/k/a Elizabeth Hazan
dave@flalawyer.com, emily@flalawyer.com, monica@flalawyer.com

Case 1:22-cv-Case 16-15386-AJC Doc 812 Entered 07/03/19 Doc #064/2022 Page 329 of
Case 16-10389-AJC Doc 812 Entered 02/04/19 Page 22 of 116 Page 329 of
889

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 11 of 99

# EXHIBIT 4

Case 1:22-cv-~~Case 16-10389-AJC~~ Doc 81 ~~Filed 02/04/19~~ ~~Doc#~~ Page 330 of
889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 12 of 99

IN THE CIRCUIT COURT OF THE

ELEVENTH JUDICIAL CIRCUIT, IN AND

FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2013-025902-CA-01

JPMORGAN CHASE BANK, N.A.

     Plaintiff,

v.

ELIZABETH HAZAN, *et al*.,

     Defendants.

_____/

## AGREED ORDER ON DEFENDANT HAZAN'S MOTION TO QUASH PLAINTIFF CHASE'S SERVICE OF PROCESS

THIS CAUSE came before the Court on Defendant, Elizabeth Hazan's ("Hazan") Motion to Quash JPMorgan Chase Bank, N.A's ("Plaintiff" or "Chase") Service of Process (the "Motion to Quash"). The Court held a hearing on the Motion to Quash on November 9, 2018 and scheduled a continued hearing for December 6, 2018. Prior to the continued hearing, the parties advised the Court of their agreement to resolve the Motion to Quash as set forth below. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Hazan's Motion to Quash is **DEEMED MOOT.**

2.    Daniel Bushell, Esq., counsel for Defendant Elizabeth Hazan, shall accept service of process in this matter by email service of the complaint sent to dan@bushellappellatelaw.com, by Chase's counsel, Andrew Zaron, Esq., of the law firm León Cosgrove, LLP. Service on Hazan shall be effective as of the date of Service on Attorney Dan Bushell.

3.    Defendant Hazan shall have 75 days from the date of service on Attorney Dan Bushell to respond to the Complaint.

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 13 of 99

    4.     No further extensions of time to respond to the Complaint shall be granted.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida, this _6_ day of
__*Nov*__, 2018.

 

DAVID C. MILLER
CIRCUIT COURT JUDGE

*ORIGINAL
JUDGE DAVID C. MILLER*

Copies furnished to: All Counsel of Record

## SERVICE LIST

Robin Reyes, Esq.
SHAPIRO, FISHMAN & GACHE, LLP
2424 North Federal Highway, Suite 360
Boca Raton, FL 33431
Email: SFGBocaService@logs.com
Email: roreyes@logs.com
*Co-Counsel for Plaintiff*

David W. Langley, Esq.
LAW OFFICES OF DAVID W. LANGLEY
8551 W. Sunrise Blvd, Suite 303
Plantation, FL 33322
Email: dave@flalawyer.com
*Counsel for Defendant, Elizabeth Hazan*

Juan Ramirez, Jr. Esq.
DIAZ, REUS, TARG, LLP
3400 Miami Tower, 100 SE 2nd Street
Miami, FL 33131
Email: jramirez@diazreus.com
*Counsel for Defendant, NLG, LLC*

Gian Ratnapala, Esq.
PEYTONBOLIN, PL
3343 W. Commercial Blvd., Suite 100
Fort Lauderdale, FL 33309
Email: gian@peytonbolin.com
Email: bankforeclosure@peytonbolin.com
*Counsel for Defendant, Fisher Island
Community Association, Inc.*

Jonathan Goldstein, Esq.
HABER SLADE, P.A.
201 S Biscayne Blvd, Suite 1205
Miami, FL 33131
Email: jgoldstein@dhaberlaw.com
Email: dbhpaservice@dhaberlaw.com
*Counsel for Defendant, Valencia Estates
Homeowners' Association, Inc.*

cc: Robert Lithman, Esq.
ROBERT P. LITHMAN, P.A.
7117th Ave S
Lake Worth, FL 33460
Email: rpl@lithmanlaw.com

cc: Jeremy Evans, Esq.
AARONSON SCHANTZ BEILEY, P.A.
100 SE 2nd Street, 27th Floor
Miami, FL 33131
Email: gaaronson@aspalaw.com

NLG, LLC
c/o First State Corporate Service, Inc.
111B South Governers Ave,
Dover, DE 19904
***Via U.S. Mail***

2

Case 1:22-cv-~~Case 16-10389-AJC~~ Gen Doc 812 entered 02/04/19 Page 35 of 122   Page 332 of
889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 14 of 99

Email: jevans@aspalaw.com
Email: jrodriguez@aspalaw.com


Western National Life Insurance Company
f/k/a AIG Annuity Insurance Company
c/o Chief Financial Officer
200 East Gaines Street, Tallahassee, FL
32399
*Via U.S. Mail*


Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Avenue S.
Tierra Verde, FL 33715
aresty@mac.com


6913 Valencia, LLC
c/o Michael W. Simon, R.A.,
3839 NW Boca Raton Blvd, 100
Boca Raton, FL 33431
*Via U.S. Mail*

Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109
*Via U.S. Mail*

John Paul Arcia
John Paul Arcia, P.A.
Latitude One Office Building
175 S.W. 7th Street
Suite 200
Miami, Florida 33130
parcia@arcialaw.com

NLG, LLC
c/o A Registered Agent, Inc.
8 The Green, Suite A
Dover, DE 19901
*Via U.S. Mail*


Laurie U. Mathews, Esq.
Aaron Brownell, Esq.
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.437.8158
Email: lmathews@leoncosgrove.com
Email: abrownell@leoncosgrove.com
Email: cmanzano@leoncosgrove.com
Email: jgomez@leoncosgrove.com
*Co-Counsel for Plaintiff*

Case 1:22-cv-7Ca85-RNI389ahC GeDoc812teFideHicorD6289ieDoc2042/2022 Page 333 of
889
Case 16-10389-AJC Doc 812 Entered 02/04/19 Page 26 of 110

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 15 of 99

# EXHIBIT 5

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page JOEL ARESTY

**From:** JOEL ARESTY  aresty@mac.com
**Subject:** Re: Hazan
**Date:** December 31, 2018 at 10:40 AM
**To:** Juan Ramirez, Jr., Former Chief Judge  jr@adrmiami.com
**Cc:** Paul Arcia  parcia@arcialaw.com



when you are right you are right

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

**Aresty@Mac.com**
**http://www.JoelAresty.com**

**This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.**

On Dec 31, 2018, at 10:39 AM, Juan Ramirez, Jr., Former Chief Judge <jr@adrmiami.com> wrote:

Actually, we're defending a foreclosure action against your client. We're on the same side against Chase.

*Juan Ramirez Jr., FCIArb*
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
**ADR Miami LLC**
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com

<image003.png><Logo.tiff><Logo2.tiff>

On Dec 31, 2018, at 10:36 AM, JOEL ARESTY <aresty@mac.com> wrote:

Juan

a word to the wise should have been sufficient
the first time

the continued activity could be found to be slander of title
in addition to contempt

thanks
sincerely

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

**Aresty@Mac.com**
**http://www.JoelAresty.com**

**This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521**

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 17 of 99

legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

On Dec 31, 2018, at 10:33 AM, Juan Ramirez, Jr., Former Chief Judge <jr@adrmiami.com> wrote:

Joel:

We're going to be filing a Motion to Alter or Amend Judge Cristol's Order. Under Rule 9023, we have 14 days to do so. Tell your client to sit tight.

We have not withdrawn the Counterclaim. We withdrew the Crossclaim. Rule 1.420(f), which you sent me on Saturday, states that if "a claim for affirmative relief is dismissed under this rule, the notice of lis pendens connected with the dismissed claim is **automatically** dissolved at the same time." No order is needed. We complied with Judge Cristol's directive.

Happy New Year.

*Juan Ramirez Jr.*, *FCIArb*
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
**ADR Miami LLC**
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com

<image003.png><Logo.tiff><Logo2.tiff>

On Dec 31, 2018, at 9:42 AM, JOEL ARESTY <aresty@mac.com> wrote:

Juan

Ms Hazan wants her $9500 today
and has a courier
can we do that

also

checking with you
I want to submit an agreed order dissolving the lis pendens
based on your withdrawal of counterclaim
i will run the form by you
that will solve that problem

thanks
sincerely

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

**Aresty@Mac.com**
**http://www.Joelaresty.com**

This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 18 of 99

On Dec 30, 2018, at 12:29 PM, Juan Ramirez, Jr., Former Chief Judge <jr@adrmiami.com> wrote:

Dear Counsel:

I am going to collect all these harassing emails and present them to Judge Cristol. You either refuse to or cannot restrain your client, which is not surprising. She had ripped papers out of my hand in state court and ripped a proposed order outside of Judge Cristol's courtroom after I handed the proposed order to Attorney Grant.

This woman is dangerous and I will have nothing to do with her. If you make no effort to stop this, I will hold you personally responsible.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

*Juan Ramirez Jr., FCIArb*
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
**ADR Miami LLC**
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com


<image003.png><Logo.tiff><Logo2.tiff>

On Dec 30, 2018, at 12:23 PM, elizabeth hazan <elizabethhazan07@gmail.com> wrote:

Have the check made payable to my name as ordered in the amount of $9500 ready to be picked up tomorrow starting 8 AM . Confirming your physical address :

  Juan Ramirez, Jr.
  ADR Miami, LLC
  Florida Bar No. 201952
  1172 S. Dixie Hwy. #341
  Coral Gables, FL 33146
  (305) 667-6609
  jr@adrmiami.com

---------- Forwarded message ---------
From: **elizabeth hazan** <elizabethhazan07@gmail.com>
Date: Sun, Dec 30, 2018 at 11:13 AM
Subject: RE: SERVICE OF COURT DOCUMENT CASE NUMBER 132013CA025902000001 Jpmorgan Chase Bank N A vs Hazan , Elizabeth
To: Juan Ramirez Jr. Former Chief Judge <jr@adrmiami.com>
Cc: Attorney Joel Aresty <aresty@mac.com>, Paul Arcia <parcia@arcialaw.com>


I am going to contact you as much as needed as this involves my homestead property and you have unlawfully recorded a Lis pendens and a cross claim against me and all the parties in the chase bank case . As Honorable judge  Cristol called it an "offensive cross claim".

Immediately Comply with the Honorable Judge Cristol's order or my lawyers will move tomorrow for additional sanctions including punitive damages and you will be determined in contempt of court . As you have been found that you and your client have violated the injunction . The order clearly states that if you do not comply with the order you are determined in contempt of court . Govern yourself accordingly . Enough is enough . As my lawyer Geoffrey Aaronson argued in court on the December 27 noone is above the law. You have caused me unnecessary legal fees and grief over and over again to me and everyone involved .

Sent from my iPhone

On Dec 30, 2018, at 10:33 AM, Juan Ramirez Jr. Former Chief Judge <jr@adrmiami.com> wrote:

  Please do not contact me again.

  Sent from my iPad

  On Dec 30, 2018, at 8:41 AM, elizabeth hazan <elizabethhazan07@gmail.com> wrote:

    Juan

    My lawyers are authorizing you to also directly communicate with me .

    I will be picking up the check from your office tomorrow morning . Please confirm the address . Please have the check made payable  to my name ready at 8 AM .

    And please file immediately the corrected notice of withdrawal of the cross claim as it has to address all parties in the case and that you are withdrawing the cross claim that you filed against all parties in the Chase bank case not just me individually .

    Also please email us immediately the cancellation of the Lis Pendens with the book and page number and also have it immediately recorded in the public records in Miami Dade, the Lis Pendens that you have recorded since august 2018 has to be immediately canceled . You and your client have encumbered my title and have slandered my title and are continuing to do so since august of this year .


    Elizabeth Hazan

    Begin forwarded message:

    **From:** JOEL ARESTY <aresty@mac.com>
    **Date:** December 29, 2018 at 4:28:37 PM EST
    **To:** "Juan Ramirez, Jr., Former Chief Judge" <jr@adrmiami.com>

Subject: Re: SERVICE OF COURT DOCUMENT CASE NUMBER 132013CA025902000001 Jpmorgan Chase Bank N A vs Hazan , Elizabeth

Juan

I did enough real estate and foreclosures to know
that it should be dissolved by you

you did not record it pursuant to the crossclaim
so it needs to be dissolved by book and page

I presume a title company will not accept the withdrawal
also the withdrawal seems to be as to one defendant
and it should be withdrawn period

and Ms Hazan wants to pick up her check Monday

not purging per above will result in more fees and motions for sanctions

so if you had listened to me the first time you would be $9500 ahead

thanks
sincerely

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

**Aresty@Mac.com**
**http://www.Joelaresty.com**

**This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.**

On Dec 29, 2018, at 2:12 PM, Juan Ramirez, Jr., Former Chief Judge <jr@adrmiami.com> wrote:

I was going by Judge Cristol's order that it was automatic.

*Juan Ramirez Jr*., *FCIArb*
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
**ADR Miami LLC**
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com

<image003.png><Logo.tiff><Logo2.tiff>

On Dec 29, 2018, at 2:00 PM, JOEL ARESTY <aresty@mac.com> wrote:

Juan

you need to include that the lis pendens recorded date at book and page
be dissolved

it is not automatic because you recorded it first according to the title agent

thanks
sincerely

# EXHIBIT 6

Opposition Response to Motion for Contempt - Exhibits

Case No. 16-10389-AJC

Page 91 of 117

**From:** elizabeth hazan    elizabethhazan07@gmail.com

**Subject:** Fwd: SERVICE OF COURT DOCUMENT CASE NUMBER 132013CA025902000001 Jpmorgan Chase Bank N A vs Hazan , Elizabeth

**Date:** December 30, 2018 at 12:23 PM

**To:** Juan Ramirez Jr. Former Chief Judge  jr@adrmiami.com

**Cc:** Joel Aresty  aresty@mac.com, Paul Arcia  parcia@arcialaw.com

Have the check made payable to my name as ordered in the amount of $9500 ready to be picked up tomorrow starting 8 AM . Confirming your physical address :

Juan Ramirez, Jr.
ADR Miami, LLC
Florida Bar No. 201952
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

---------- Forwarded message ---------
From: elizabeth hazan <elizabethhazan07@gmail.com>
Date: Sun, Dec 30, 2018 at 11:13 AM
Subject: Re: SERVICE OF COURT DOCUMENT CASE NUMBER 132013CA025902000001 Jpmorgan Chase Bank N A vs Hazan , Elizabeth
To: Juan Ramirez Jr. Former Chief Judge <jr@adrmiami.com>
Cc: Attorney Joel Aresty <aresty@mac.com>, Paul Arcia <parcia@arcialaw.com>

I am going to contact you as much as needed as this involves my homestead property and you have unlawfully recorded a Lis pendens and a cross claim against me and all the parties in the chase bank case . As Honorable judge  Cristol called it an "offensive cross claim".

Immediately Comply with the Honorable Judge Cristol's order or my lawyers will have tomorrow for additional sanctions including punitive damages and you will be determined in contempt of court . As you have been found that you and your client have violated the injunction . The order clearly states that if you do not comply with the order you are determined in contempt of court . Govern yourself accordingly . Enough is enough . As my lawyer Geoffrey Aaronson argued in court on the December 27 noone is above the law. You have caused me unnecessary legal fees and grief over and over again to me and everyone involved .

Sent from my iPhone

On Dec 30, 2018, at 10:33 AM, Juan Ramirez Jr. Former Chief Judge <jr@adrmiami.com> wrote:

Please do not contact me again.

Sent from my iPad

On Dec 30, 2018, at 8:41 AM, elizabeth hazan <elizabethhazan07@gmail.com> wrote:

Juan

My lawyers are authorizing you to also directly communicate with me .

I will be picking up the check from your office tomorrow morning . Please confirm the address . Please have the check made payable  to my name ready at 8 AM.

And please file immediately the corrected notice of withdrawal of the cross claim as it has to address all parties in the case and that you are withdrawing the cross claim that you filed against all parties in the Chase bank case not just me individually.

Also please email us immediately the cancellation of the Lis Pendens with the book and page number and also have it immediately recorded in the public records in Miami Dade, the Lis Pendens that you recorded since august 2018 has to be immediately canceled . You and your client have encumbered my title and have slandered my title and are continuing to do so since august of this year .

Elizabeth Hazan

Begin forwarded message:

**From:** JOEL ARESTY <aresty@mac.com>
**Date:** December 29, 2018 at 4:28:37 PM EST
**To:** "Juan Ramirez, Jr., Former Chief Judge" <jr@adrmiami.com>
**Subject: Re: SERVICE OF COURT DOCUMENT CASE NUMBER 132013CA025902000001 Jpmorgan Chase Bank N A vs Hazan , Elizabeth**

Juan

 I did enough real estate and foreclosures to know
that it should be dissolved by you

you did not record it pursuant to the crossclaim
so it needs to be dissolved by book and page

I presume a title company will not accept the withdrawal
also the withdrawal seems to be as to one defendant
and it should be withdrawn period

and Ms Hazan wants to pick up her check Monday

not purging per above will result in more fees and motions for sanctions

so if you had listened to me the first time you would be $9500 ahead

thanks

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 22 of 99

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

Aresty@Mac.com
http://www.JoelAresty.com

**This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.**

On Dec 29, 2018, at 2:12 PM, Juan Ramirez, Jr., Former Chief Judge <jr@adrmiami.com> wrote:

I was going by Judge Cristol's order that it was automatic.

*Juan Ramirez Jr.*, *FCIArb*
Mediator, Arbitrator and Consultant
Florida Supreme Court Certified Circuit Civil Mediator
Retired Chief Judge, District Court of Appeal
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
Email: jr@adrmiami.com
(305) 667-6609
Cell (305) 479-0150
www.adrmiami.com

<image003.png><Logo.tiff><Logo2.tiff>

On Dec 29, 2018, at 2:00 PM, JOEL ARESTY <aresty@mac.com> wrote:

Juan

you need to include that the lis pendens recorded date at book and page
be dissolved

it is not automatic because you recorded it first according to the title agent

thanks
sincerely

**JOEL M. ARESTY, P.A.**
**Board Certified**
**Business Bankruptcy Law**
**309 1st Ave S**
**Tierra Verde, FL 33715**
**Phone - Cell: 305-904-1903**
**Fax: 800-559-1870**
**Joel M. Aresty, Esq.**
**Fla. Bar No. 197483**

Aresty@Mac.com

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 23 of 99

This e-mail, as well as any attachments to same, is covered by the Electronic Communications Privacy Act, 18 U.S. C. §§ 2510-2521 and is legally privileged under federal and state laws, including but not limited to laws applicable to the attorney-client privilege and other private matters. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, please destroy the email after advising by reply that you erroneously received this. The receipt by anyone other than the designated recipient does not waive the attorney-client privilege, nor will it constitute a waiver of the work-product doctrine.

Begin forwarded message:

**From:** eservice@myflcourtaccess.com
**Subject: SERVICE OF COURT DOCUMENT CASE NUMBER 132013CA025902000001 Jpmorgan Chase Bank N A vs Hazan , Elizabeth**
**Date:** December 29, 2018 at 1:18:28 PM EST
**To:** Undisclosed recipients: ;

### Notice of Service of Court Documents

#### Filing Information

Filing #:           82673847
Filing Time:        12/29/2018 01:18:26 PM ET
Filer:              Juan Ramirez Jr 305-667-6609
Court:              Eleventh Judicial Circuit in and for Miami-Dade County, Florida
Case #:             132013CA025902000001
Court Case #:       2013-025902-CA-01
Case Style:         Jpmorgan Chase Bank N A vs Hazan , Elizabeth

#### Documents

| Title | File |
|-------|------|
| Notice | JPMvHazan-NLG Notice of Withdrawal.pdf |

#### E-service recipients selected for service:

| Name | Email Address |
|------|---------------|
| Aaron Charles Brownell | abrownell@leoncosgrove.com |
| | jgomez@leoncosgrove.com |
| | jgomez@leoncosgrove.com |
| Gian Ratnapala, Esq. | gian@peytonbolin.com |
| | bankforeclosure@peytonbolin.com |
| Barry Fishman | masterefilings@logs.com |
| | courtxpress@firmsolutions.us |
| MEGAN WELLS | MWELLS@WELLSCIVILFIRM.COM |
| Gian Ratnapala | gian@peytonbolin.com |
| | BANKFORECLOSURE@peytonbolin.com |
| Ray Garcia | service@raygarcialaw.com |
| | MKLASKALA@RAYGARCIALAW.COM |
| JUAN RAMIREZ | JRAMIREZ@DIAZREUS.COM |
| JONATHAN S. GOLDSTEIN, ESQ. | JGOLDSTEIN@DHABERLAW.COM |

| | DBHPASERVICE@DHABERLAW.COM |
|---|---|
| Jeremy Evans | gaaronson@aspalaw.com |
| | jevans@aspalaw.com |
| | jrodriguez@aspalaw.com |
| Daniel A Bushell | dan@bushellappellatelaw.com |
| Daniel S Nathan | dnathan74@gmail.com |
| David Brian Haber | jgoldstein@dhaberlaw.com |
| | dbhpaservice@dhaberlaw.com |
| Lee Andrew Watson, Esq. | lewatson@logs.com |
| | lewatson@logs.com |
| | sfgbocaservice@logs.com |
| Gian Ratnapala, Esquire | gian@peytonbolin.com |
| | bankforeclosure@peytonbolin.com |
| | litigation@peytonbolin.com |
| David W Langley | dave@flalawyer.com |
| | emily@flalawyer.com |
| Gian Ratnapala | Gian@peytonbolin.com |
| | Litigation@peytonbolin.com |
| Joel M Aresty | aresty@icloud.com |
| | Aresty@mac.com |
| John Paul Arcia | service@arcialaw.com |
| Juan Ramirez Jr | jr@adrmiami.com |
| | juanramirezlaw@gmail.com |
| Jonathan Goldstein | jgoldstein@dhaberlaw.com |
| Ludys Barringer | lbarringer@logs.com |
| | cpalencia@logs.com |
| Laurie Uustal Mathews | lmathews@leoncosgrove.com |
| | kvasquez@leoncosgrove.com |
| Laurie U. Mathews | lmathews@leoncosgrove.com |
| | cmanzano@leoncosgrove.com |
| | dzulueta@leoncosgrove.com |
| Aaron Brownell | abrownell@leoncosgrove.com |
| | jgomez@leoncosgrove.com |
| | skhan@leoncosgrove.com |
| Robin Reyes | roreyes@logs.com |
| Michael Mayer | michael@peytonbolin.com |
| | foreclosure@peytonbolin.com |
| Nicole Moskowitz | NLG@yahoo.com |
| | jl@neusteinlaw.com |
| Marissa Carvajal | marissa@neusteinlaw.com |
| Shapiro, Fishman & Gache, LLP | SFGBocaService@LOGS.com |
| Robert Paul Lithman | rpl@lithmanlaw.com |
| | sharon@lithmanlaw.com |

**E-service recipients not selected for service:**

| Name | Email Address |
|---|---|
| Elizabeth Hazan | elizabethhazan07@gmail.com |
| | elizabethhazan@aol.com |

This is an automatic email message generated by the Florida Courts E-Filing Portal. This email address does not receive email.

Thank you,
The Florida Courts E-Filing Portal

<Notice.pdf>

# EXHIBIT 7

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC

**From:** Elizabeth Hazan  elizabethhazan07@gmail.com 🔗
**Subject:** Elizabeth Hazan's Bar Complaint against Juan Ramirez JR January 3, 2019 Bar ID # 201952
**Date:** January 4, 2019 at 8:44 AM
**To:** Juan Ramirez Jr. Former Chief Judge  jr@adrmiami.com
**Cc:** Robert Lithman  rpl@lithmanlaw.com, Geoffrey Aaronson  gaaronson@aspalaw.com, Dan Bushell  dan@bushellappellatelaw.com, Joel Aresty  aresty@mac.com, Joe Grant  jgrant@msglaw.com, astridgabbe@gmail.com, Thomas Zeichman  tzeichman@msglaw.com, Michael Simon  msimon@simonsigalos.com

EH

Mr Juan Ramirez JR Bar ID # 201952

I hope this email finds you well .

Please find enclosed my first complaint against you with the Florida Bar Association.

GOVERN YOURSELF ACCORDINGLY

Sincerely,

Elizabeth Hazan



LIZA HAZAN A/
K/A ELI...19 .pdf

# EXHIBIT 8

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 28 of 99

# The Florida Bar
# Inquiry/Complaint Form

**PART ONE** (See Page 1, PART ONE – Complainant Information.):

Your Name: LIZA HAZAN A/K/A ELIZABETH HAZAN

Organization:

Address: 6913 VALENCIA DRIVE

City, State, Zip Code: MIAMI FL 33109

Telephone: (305) 570-8271

E-mail: ELIZABETHHAZAN07@GMAIL.COM

ACAP Reference No.:

Does this complaint pertain to a matter currently in litigation? Yes [X]  No [ ]


**PART TWO** (See Page 1, PART TWO – Attorney Information.):

Attorney's Name: JUAN RAMIREZ, JR          Florida Bar No.: 201952

Address: 1172 S. DIXIE HIGHWAY # 341

City, State, Zip Code: CORAL GABLES, FLORIDA 33146

Telephone: (305) 667-6609


**PART THREE** (See Page 1, PART THREE – Facts/Allegations.): **The specific thing or things I am complaining about are: (attach additional sheets as necessary)**

I , LIZA HAZAN AKA ELIZABETH HAZAN, AM THE OWNER OF MY HOMESTEAD PROPERTY LOCATED ON FISHER ISLAND MIAMI FLORIDA AT 6913 VALENCIA DRIVE MIAMI FLORIDA 33109. ON JANUARY 11, 2016, I FILED FOR BANKRUPTCY PROTECTION UNDER CHAPTER 11.

NLG, LLC IS A DELAWARE COMPANY WHOSE ALLEGED CLAIMS AGAINST ME UNDER A NOTE AND A MORTGAGE WERE ASSIGNED TO MY HUSBAND'S COMPANY CALLED SELECTIVE ADVISORS COMPANY, LLC BY MIAMI DADE HONORABLE JUDGE PETER LOPEZ ON AUGUST 2014.

AN ATTORNEY NAMED JUAN RAMIREZ, JR FLORIDA BAR NUMBER 201952 WHO IS A FORMER CHIEF JUDGE OF THE THIRD DCA IS REFUSING TO ACCEPT THE REALITY THAT HIS CLIENT NLG, LLC HAD NO MORE CLAIM AGAINST ME. HE HAS CONTINUED ITS EFFORTS TO HARRASS ME, PURSUE LITIGATION AGAINST ME IN MANY DIFFERENT FORUMS AND HAS RELENTLESSLLY CAUSED ME IMMENSE GRIEF. JUAN RAMIREZ, JR HAS ACTED UNCONSIONNABLY AND HAS CAUSED ME UNLIMITED LEGAL FEES.

JUAN RAMIREZ, JR HAS MISREPRESENTED FACTS TO MIAMI DADE JUDGE MONICA GORDO AND HAS SUCCEEDED IN DECEMBER 2015 IN OBTAINING A FORECLOSURE ORDER AGAINST ME. UNFORTUNATELY FOR HIM AND HIS CLIENT NLG, LLC THE BANRUPTCY COURT RESOLVED AND RECONCILIED ALL THE CONFLICTING RULINGS

AND ULTIMATELY RULED IN MY FAVOR.

AFTER THE FILING OF MY BANKRUPTCY CHAPTER 11 REORGANIZATION CASE ON JANUAY 11, 2016 IN CASE 16-01439-AJC, I JOINED MY HUSBAND'S COMPANY SELECTIVE ADVISORS GROUP, LLC IN A LAWSUIT IN AN ADVERSARY CASE AGAINST MR RAMIREZ'S CLIENT NLG, LLC IN CASE NUMBER 16-10389 WHERE WE BOTH SUED NLG, LLC FOR QUIET TITLE, DISALLOWANCE OF NLG, LLC'S UNTIMELY PROOF OF CLAIM AND A RULING THAT NLG HAD NO LIEN AGAINST MY FISHER ISLAND HOMESTEAD RESIDENCE. I AM ATTACHING RELEVANT PLEADINGS.

SELECTIVE ADVISORS GROUP, LLC AND I BOTH WON THE TRIAL HELD ON JULY 13, 2017 IN THE ADVERSARY CASE AND A FINAL JUDGMENT ON COUNTS I, II AND III WAS ENTERED IN OUR FAVOR AGAINST NLG, LLC ON NOVEMBER 1, 2017. THE HONORABLE JUDGE AJ CRISTOL FOUND THAT NLG, LLC'S UNTILEMLY PROOF OF CLAIM WAS DISALLOWED, THE ALLEGED MORTGAGE FORECLOSURE JUDGMENT ENTERED BY JUDGE GORDO WAS SATISFIED OF RECORD, THE JUDGMENT ON THE NOTE ENTERED BY JUDGE SCOLA WAS ALSO SATISFIED OF RECORD AND THAT MR RAMIREZ'S CLIENT NLG, LLC HAS NO MORE CLAIM AGAINST ME UNDER THE NOTE, THE MORTGAGE AND ANY COURT ORDER. THE BANKRUPTCY COURT ALSO ORDERED AND ADJUDGED THAT THE TITLE OF MY PROPERTY WAS FOREVER QUIETED AS TO ALL NLG, LLC CLAIMS.

THE HONORABLE JUDGE AJ CRISTOL CONFIRMED MY CHAPTER 11 PLAN OF REORGANIZATION ON JUNE 12, 2018 AGAINST THE NUMEROUS OBJECTIONS OF NON CREDITOR NLG, LLC THROUGH ITS COUNSEL JUAN RAMIREZ JR.

I AM MAKING THIS BAR COMPLAINT AGAINST ATTORNEY JUAN RAMIREZ JR BAR ID # 201952 WHO HAS ACTED UNPROFESSIONALLY AND UNETHICALY WHO HAS VIOLATED BANKRUPTCY ORDERS OF THE HONORABLE MIAMI DIVISION BANKRUPTCY JUDGE AJ CRISTOL WHO FOUND HIM IN VIOLATION OF HIS COURT'S ORDERS AND WHO HAS SANCTIONED HIM JOINTLY AND SEVERALLY WITH HIS CLIENT NLG, LLC FOR THEIR COMPTEMPTUOUS CONDUCT AND FOUND THEM BOTH JOINTLY LIABLE FOR MY ATTORNEY FEES THAT I INCURRED HAVING TO FILE THREE SEPARATE MOTIONS AND HAVING TO REQUEST AND OBTAINED TWO EXPEDITED AND EMERGENCY HEARINGS BEFORE JUDGE AJ CRISTOL TO HAVE THE LIS PENDENS FILED BY MR RAMIREZ ON BEHALF OF HIS CLIENT ON AUGUST 2018 POST CONFIRMATION POST FINAL JUDGMENT IMMEDIATELY REMOVED AND THE PLEADINGS FILED IN A SEPARATE CASE IMMEDIATELY WITHDRAWN. ALL RAMIREZ'S ACTS DESCRIBED IN THIS COMPLAINT WERE IN VIOLATION OF THE FINAL JUDGMENT ENTERED IN THE ADVERSARY CASE IN NOVEMBER 1, 2017 IN MY FAVOR AND AGAINST MR RAMIREZ'S CLIENT NLG.

THE HONORABLE BANKRUPTCY JUDGE AJ CRISTOL ORDERED THEM (JUAN RAMIREZ JR AND HIS CLIENT NLG, LLC) TO IMMEDIATELY WITHDRAW THE OFFENSIVE CROSS CLAIM FILED AGAINST ME IN ADITION OF PUTTING A LIS

PENDENS AGAINST MY PROPERTY SINCE AUGUST 2018. IN CONFIRMING MY PLAN I OBTAINED A PERMANENT INJUNCTION AGAINST JUAN RAMIREZ'S CLIENT NLG, LLC. THE UNAUTHOZRIED LIS PENDENS PUT A CLOUD ON MY PROPERTY ALTHOUGH ATTORNEY JUAN RAMIREZ AND HIS CLIENT KNEW THAT NLG, LLC HAD NO MORE CLAIM AGAINST MY PROPERTY LOCATED AT 6913 VALENCIA DRIVE MIAMI FLORIDA 33109 OR ME INDIVIDUALLY AS NLG, LLC'S CLAIM WAS DISALLOWED IN BANRUPTCY COURT AND THE BANKRUPTCY COURT FOREVER QUIETED MY TITLE AS TO ALL NLG'S CLAIMS.

JUAN RAMIREZ JR AND HIS CLIENT HAVE BOTH WILLFULLY VIOLATED THE INJUCNTION OF THE CONFIRMATION ORDER AND NOW ARE CONTINUING IN ACTING IN VIOLATION OF THE DISCHARGE ORDER.

DAYS AFTER THE ENTRY OF THE ORDER GRANTING SANCTIONS AGAINST JUAN RAMIREZ AND NLG, LLC, JUAN RAMIREZ JR HAS STILL NOT FULLY COMPLIED WITH THE BANKRUPTCY ORDER GRANTING MY AMENDED MOTION FOR SANCTIONS AGAINST MR RAMIREZ AND HIS CLIENT JOINTLY AND SEVERALLY.

MR RAMIREZ IS STILL REFUSING TO PAY MY ATTORNEY FEES ALTHOUGH HE IS PERSONALLY LIABLE.

INSTEAD OF PURGING HIS CONTEMPT OF COURT HE HAS DECIDED TO FILE DAYS LATER A MOTION IN STATE COURT IN CASE 11-42770 TO SET A HEARING FOR SANCTIONS AGAINST ME AND ALL MY LAWYERS PRESENT PAST AND FUTURE ALL IN CONTRAVENTION OF THE BANKRUPTCY JUDGE AJ CRISTOL'S FINAL JUDGMENT THAT FOUND THAT NLG, LLC HAD NO CLAIM AGAINST ME AND HAD RULED IN MY FAVOR. MR RAMIREZ HAS WILLFULLY VIOLATED THE CONFIRMATION ORDER AND NOW THE DISCHARGE ORDER.

MR RAMIREZ'S CONDUCT CAN NOT CONTINUE ANY LONGER AND HE SHOULD BE REFERRED TO THE FLORIDA DISCIPLINARY BAR AND HAVE TO EXPLAIN WHY HE THINKS THAT HE IS ABOVE THE LAW AND CAN CONTINUOUSLY ACT THIS WAY IN VIOLATION OF THE FLORIDA RULES OF ETHICAL CONDUCT OF A FLORIDA ATTORNEY AND IN VIOLATION OF THE JUDGE PETER LOPEZ'S ORDERS AND IN VIOLATION OF THE HONORABLE BANRUPTCY JUDGE AJ CRISTOL'S ORDERS AND JUDGMENTS INJUNCTIONS AND DISCHARGES ORDERS.

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 31 of 99

**PART FOUR**  (See Page 1, PART FOUR – Witnesses.):  The witnesses in support of my allegations are: [see attached sheet].

**PART FIVE**  (See Page 1, PART FIVE – Signature.):  Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.

LIZA HAZAN A/K/A ELIZABETH HAZAN
_____
Print Name

_____
Signature

01/03/19
_____
Date

Case 1:22-cv-~~Case 16-10389-AJC~~ Doc 812 entered 07/03/19 Doc~~age 671 of 122~~ Page 350 of
889
Opposition Response to Motion for Contempt Exhibits  Filed 11/01/17   Page 1 of 15
Case No. 16-10389-AJC
Page 32 of 99



**ORDERED in the Southern District of Florida on October 31, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:

LIZA HAZAN,                                     CASE NO. 16-10389-BKC-AJC
a/k/a ELIZABETH HAZAN

    Debtor.                              CHAPTER 11

_____/

LIZA HAZAN a/k/a ELIZABETH HAZAN
and SELECTIVE ADVISORS GROUP, LLC,              ADV. NO. 16-1439-BKC-AJC-A

    Plaintiffs,

vs.

NLG, LLC

    Defendant.

_____/

## FINAL JUDGMENT ON COUNTS I, II AND III OF PLAINTIFFS' THIRD AMENDED COMPLAINT DETERMINING VALIDITY, PRIORITY AND EXTENT OF LIENS AND SETTING TRIAL ON COUNTS IV THROUGH IX

**THIS CAUSE** came before the Court for trial on July 13, 2017 at 10:00 a.m., upon

Case 1:22-cv-~~Case 16-10389-AJC~~ Doc 812 Entered 02/03/19 Page 662 of 123   Page 351 of
889
Opposition Response to Motion for Contempt - Exhibit   Filed 11/01/17   Page 2 of 15
Case No. 16-10389-AJC
Page 33 of 99

Plaintiffs, Selective Advisors Group, LLC ("Selective") and Liza Hazan a/k/a Elizabeth Hazan's

Third Amended Complaint and Defendant, NLG, LLC's Counterclaim. Selective commenced

this Adversary Proceeding against NLG, LLC ("NLG") on August 21, 2016, seeking a

determination of the nature and extent of its claimed lien, if any. Debtor joined the adversary

proceeding against NLG on October 21, 2016. The Third Amended Complaint was deemed the

operative Complaint by Order entered January 23, 2017, and NLG filed an Amended Answer and

Counterclaim on May 17, 2017. In its Counterclaim, NLG also seeks a determination of the nature

and extent of its claimed lien and that its late filed claim be allowed as a timely filed claim. Plaintiffs

seek a determination that NLG has no remaining claim against this Debtor and no standing to

participate in this case.

The Court having reviewed the file, the documentary evidence and exhibits, having heard

the testimony of witnesses and argument of counsel, finds and concludes as follows.

## A. Background

Ms. Hazan is the owner of her homestead residence located at 6913 Valencia Drive, Fisher

Island, Florida (the "Property"). She purchased the Property on March 7, 2007 from NLG. Chris

Kosachuk is the manager and representative of NLG. For nearly a decade, Kosachuk and NLG have

litigated with Debtor in multiple courts and in several jurisdictions. The various courts have entered

final orders setting forth the rights and obligations of Ms. Hazan, NLG, and Selective.

All interested parties to the various controversies are now before this Court and subject to its

jurisdiction. This Court is not an appellate court for any of the other courts; thus, full faith and credit

must be given to all of the final judgments and orders entered in the other courts as those judgments

have become final and not subject to appeal.

There have been claims or assertions that some of these other court decisions are erroneous.

Case 1:22-cv-2a85af5afa3a80aAJGenDo6g2aateFiled02f08f19oPag046g4f2a2 Page 352 of 889
Opposition Response to Motion for Contempt, Exhibits
Case No. 16-10389-AJC
Page 34 of 99

However, when the decisions or judgments of those courts became final and not subject to further appeal, those decisions or judgments became the law of the respective case and not subject to further review by this Court. While arguments have been made to accept one or more of the prior judgments and ignore others, those arguments are not persuasive and this Court will attempt to determine the rights of the parties by giving full faith and credit to all of the final orders and judgments.

## State Court Proceedings

NLG's claim against Debtor arises from a promissory note (the "Note") (Exhibit 1) and mortgage (the "Mortgage") (Exhibit 2) on the Property, recorded in April 2007 in the original amount of $1,275,000.00. In June 2007, NLG sued Debtor for an alleged breach of the Note, in Miami-Dade Circuit Court, Case No. 07-19532 CA 11 (Exhibit 3). On April 28, 2008, Circuit Judge Robert N. Scola Jr. entered a Default Final Judgment on the Note (the "Scola Judgment") against Ms. Hazan in the amount of $1,618,071.29 with 11% interest per annum (Exhibit 4). NLG moved to domesticate the Scola Judgment in New York and litigation followed in the New York Supreme Court.

In December 2011, NLG filed a second lawsuit, Case No. 11-42770 CA (01), in Miami–Dade Circuit Court seeking to foreclose on the Mortgage (Exhibit 5). On February 8, 2013, the trial court judge, Judge Spencer Eig, ruled that NLG had made an election of remedies by first suing on the alleged breach of the Note, and obtaining a judgment thereon. As such, Judge Eig precluded NLG from foreclosing on the Mortgage (Exhibit 6). NLG appealed that decision to the Third District Court of Appeal.

On April 30, 2014, while the Eig Order was on appeal to the Third District Court of Appeal, Plaintiff Selective acquired a 2012 New York judgment against NLG [and in favor of 9197-5904 Quebec, Inc.] and recorded the foreign judgment in Miami-Dade County, Florida in Case No.14-10475 CA (10) assigned to Circuit Court Judge Peter Lopez (the "Quebec Judgment"). NLG filed a

3

Motion to Quash the recording of the New York judgment against it in Florida. However, after NLG failed to post a bond as ordered, Judge Lopez denied NLG's motion to quash on June 16, 2014, finding that Plaintiff Selective has the right to enforce and collect on their foreign judgment, the $5,000,225.00 Quebec Judgment.

Thereafter, on July 2, 2014, Selective, as owner of the then-domesticated foreign judgment, the Quebec Judgment, brought proceedings supplementary in Case No.14-10475 CA (10) specifically to seize and attach NLG's judgment against Hazan (the Scola Judgment) for the purpose of partially satisfying the Quebec Judgment. Circuit Judge Lopez heard the Proceedings Supplementary Motion on August 12, 2014 and August 15, 2014, and entered an Order on August 20, 2014, judicially assigning to Selective the Scola Judgment against Debtor (the "Lopez Assignment Order"). The Lopez Assignment Order states in pertinent part:

>    1.    The Court orders that the Hazan Final Judgment held by NLG, LLC, against Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.
>
>    2.    Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, Elizabeth Hazan, with NLG, LLC receiving credit for all sums so received.
>
>    3.    Plaintiff, SELECTIVE ADVISORS GROUP, LLC shall give a credit to Defendant NLG, LLC in the sum of $2,746,953.34 which amount includes principal and interest through August 31, 2014 at the 11% judgment amount **without prejudice to Defendant establishing at further hearing why the credited amount should be greater**.

Exhibit 8 (emphasis added).

At trial, NLG argued that the Scola Judgment was the subject of an appeal at the time of the assignment, and therefore could not have been judicially assigned by Judge Lopez. However, Judge

Lopez actually addressed and dismissed that argument when he denied NLG's motion to reconsider

the Order of assignment of the Scola Judgment to Selective:

> Okay, so I assigned your interest in it to them (Selective), which had nothing to do
> with what's going on up on appeal. . . .
>
> That judgment that I assigned to them (Selective) or that interest in that judgment was
> up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win
> or lose, whatever happens, now, these people own it instead of you. The Third came
> back and said, too bad, you get to foreclose, they now own that judgment or note if
> that's what merged into it, they (Selective) get to go and foreclose.

Exhibit 22, Tr page 24 lines 3-5; Tr page 26 Lines 3-12. Judge Lopez's Orders are final.

### Satisfaction and Payment of the Scola Judgment

On August 20 and 21, 2014, Selective filed a satisfaction of the Scola Judgment and the

Mortgage (Exhibit 9). Selective gave credit to NLG towards the Quebec Judgment. According to the

Electronic Judgment Lien Amendment Statement filed on September 5, 2014 with the Florida

Secretary of State (Exhibit 14), it appears NLG was given credit in the amount of the Scola Judgment,

or $1,618,071.29, without credit for interest thereon. The Lopez Assignment Order specifically

determined that $2,746,953.34 was the correct sum to be credited to NLG for the Scola Judgment, as

that amount includes interest from April 28, 2008 through August 31, 2014. **The Lopez Assignment**

**Order also left open the possibility of an increase in that amount, should same be proven at a**

**further hearing**.

The Lopez Assignment Order was never vacated or set aside, and the decision remains the

law of the case.

In the New York lawsuit by NLG against the Debtor, Selective proceeded to intervene. Judge

Barbara Jaffe of the New York Supreme Court entered a Decision and Order on October 30, 2014

recognizing Selective's assignment of the Scola Judgment pursuant to the Lopez Assignment Order.

In that case, the court ordered the caption of the New York case be changed to reflect the substitution

5

Case 1:22-cv-2̶a̶s̶e̶ 1̶6̶-1̶0̶3̶8̶9̶-̶A̶J̶C̶ ̶D̶o̶c̶ ̶8̶ e̶n̶t̶e̶r̶F̶i̶l̶e̶d̶ ̶0̶2̶/̶0̶4̶/̶1̶9̶ o̶ P̶a̶g̶e̶ 6̶ o̶f̶ 2̶1̶2̶   Page 355 of
889
Opposition Response to Motion for Contempt - Exhibits   Filed 11/01/17   Page 6 of 15
Case No. 16-10389-AJC
Page 37 of 99

of Selective Advisors Group, LLC as the proper party, in place of NLG, LLC (Exhibit 18). The court

also directed the Clerk to accept for filing the Order of assignment "judicially assigning the underlying

Florida judgment from plaintiff to Selective", and strike all NLG's judgments of record against Ms.

Hazan. On November 13, 2014, Judge Jaffe dismissed NLG's lawsuit against Elizabeth Hazan, ruling

as follows:

> Given the satisfaction of Judgment in the underlying action under index #101288/2013,
> as reflected in my Decision and Order dated October 30, 2014, defendant's motion to
> dismiss the proceeding is granted and the proceeding is dismissed. The clerk is directed to
> enter judgment accordingly.

Exhibit 19.

### The Third District Court of Appeal Opinion and the Gordo Foreclosure Judgment

On September 3, 2014, the Third District Court of Appeal reversed Judge Eig on the issue of

election of remedies and held that foreclosure could proceed on the Mortgage (Exhibit 12). Circuit

Judge Monica Gordo, by that time having replaced Judge Eig in the division, then entered a

foreclosure judgment in favor of NLG, despite the judicial assignment of NLG's interests in the Note

and Mortgage to Selective (the "Gordo Foreclosure Judgment"). Notwithstanding the various court

rulings recognizing the judicial assignment of the Scola Judgment to Selective, Judge Gordo entered

a Final Judgment of Foreclosure in favor of NLG on December 4, 2015 (Exhibit 21). The Gordo

Foreclosure Judgment determined NLG, LLC was entitled to the grand total sum of $4,876,654.29

and set a sale for January 12, 2016.

However, on January 11, 2016, the Debtor filed for Chapter 11 bankruptcy protection and

the sale was stayed.

#### B. Legal Analysis

Plaintiffs contend that Judge Lopez judicially assigned to Selective the Scola Judgment,

together with all the rights and claims thereunder, which includes the right to enforce the Mortgage,

Case 1:22-cv-... Document 8-12 Entered ... Page 356 of 889
Opposition Response to Motion for Contempt - Exhibit Filed 11/01/17 Page 7 of 15
Case No. 16-10389-AJC
Page 38 of 99

leaving NLG with no enforceable mortgage, lien, or claim in this bankruptcy case. NLG takes the position that, notwithstanding the judicial assignment of the Scola Judgment on the Note, NLG retained the right to foreclose on the Mortgage. NLG asks the Court to limit its review to only one out of the many rulings entered in the ten-year history of litigation between the parties. It asks the Court to look only to the Gordo Foreclosure Judgment, contending that Judge Gordo resolved all issues in NLG's favor.

After reviewing the history of the proceedings between the parties, it is evident the Gordo Foreclosure Judgment does not resolve all issues in NLG's favor. The Scola Judgment, the Lopez Assignment Order, and the Gordo Foreclosure Judgment all control this Court's decision going forward. The Scola Judgment established Debtor's liability to NLG on the Note. The Scola Judgment, and consequently the Mortgage, were assigned to Selective by the Lopez Assignment Order, and were thereafter satisfied. Finally, by the Gordo Foreclosure Judgment, NLG, LLC established its entitlement to a greater credit for the judicial assignment of the Note and Mortgage. Moreover, any interest NLG may have had in the Mortgage by virtue of the Gordo Foreclosure Judgment is/was extinguished upon redemption by the Debtor and satisfaction.

The Scola Judgment awarded NLG, LLC $1,618,071.29 against the Debtor for Debtor's breach of the Note.

In 2014, after entry of the Scola Judgment, Selective acquired a $5,000,225 judgment against NLG, LLC, the Quebec Judgment. (Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.) Selective domesticated the Quebec Judgment in state court, before Judge Lopez, and the order domesticating the judgment has become final and non-appealable. Thereafter, the Lopez Assignment Order was entered, judicially assigning the Scola Judgment to Selective [in partial satisfaction of the Quebec

7

Judgment] and determining the value of the Scola Judgment to be $2,746,953.34, inclusive of interest. The Lopez Assignment Order judicially assigns the Scola Judgment to Selective, together with all the rights and claims thereunder.

Because ownership of the Mortgage follows the Note, in the absence of a contrary intention, Selective, who owns and holds the Note, therefore has standing to foreclose the Mortgage.

> It has frequently been held that a mortgage is but an incident to the debt, the payments of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by the mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt, unless there be some plain and clear agreement to the contrary, if that be the intention of the parties.

*Taylor v. Bayview Loan Servicing, LLC*, 74 So.3d 1115, 1117-18 (Fla. 2d DCA 2011). Under Florida law, "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" [the subject note and subject mortgage when the complaint is filed]. *McLean v. JPMorgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA 2012). "Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint." *Id.* NLG has not demonstrated that it owns and holds the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010). Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge Lopez to Selective. NLG no longer holds the right to enforce the Note or the Scola Judgment entered on the Note. See, Trial Transcript Page 27 lines 3-11. There being no evidence presented to support the position that the parties did not intend for the Mortgage to follow the Note, the Mortgage did indeed follow the assignment of the Note in this case. The Note having been judicially assigned to Selective, Selective has standing to foreclose the Mortgage and, upon assignment, NLG had no further right to foreclose the Mortgage. When Judge Lopez assigned the Scola Judgment to

Case 1:22-cv-... Document ... Filed 02/04/19 Page 351 of 1222    Page 358 of
Opposition Response to Motion for Contempt Exhibits  889  Filed 11/01/17   Page 9 of 15
Case No. 16-10389-AJC
Page 40 of 99

Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage.

The public records for Miami-Dade County, Florida reflect that the Scola Judgment and the Mortgage were both satisfied in August 2014. NLG was given credit by Selective for the debt remaining under the Scola Judgment and Mortgage, in partial satisfaction of the domesticated Quebec Judgment. It appears that credit may not have been finally determined, as discussed further herein.

Notwithstanding the judicial assignment to Selective and subsequent satisfactions, in November 2014, the Third District Court of Appeal, presumably unaware of the assignment and satisfactions, entered an opinion reversing the Eig Order and permitting foreclosure of the Mortgage. Following the mandate, Judge Gordo entered the Gordo Foreclosure Judgment in December 2015. The Gordo Foreclosure Judgment determined NLG is entitled to $4,876,654.29 under the Note and Mortgage. The Court is advised Selective tried to intervene in the case but Judge Gordo did not allow intervention. This Court was not informed as to why Selective did not otherwise intervene in the appeal of the Eig Order and advise the Third District Court of Appeal that Selective was assigned the Note and Mortgage and that the Note and Mortgage were satisfied months before the Third District Court Appeal issued its opinion reversing the Eig Order.

Thus, it initially appears there may be a conflict between the Lopez Assignment Order, assigning ownership of the Note and Mortgage on the Property to Selective, and the Gordo Foreclosure Judgment, granting foreclosure of the Property in favor of NLG as Plaintiff instead of in favor of Selective. However, this conflict has been overcome by events.

Giving full faith and credit to the Lopez Assignment Order, NLG's rights in the Scola Judgment were assigned to Selective, after Judge Lopez concluded that the assignment of the Scola

9

Judgment to Selective had no relevance to the issues on appeal. (Exhibit 22, Tr. 26:3-11). The Lopez Assignment Order establishes that NLG, LLC is entitled to $2,746,953.34 for the assignment, "which amount includes principal and interest [on the Note] through August 31, 2014 at the 11% judgment amount *without prejudice to [NLG] establishing at further hearing why the credited amount should be greater*." (Emphasis added.) Giving full faith and credit to the Gordo Foreclosure Judgment, NLG established its entitlement to a greater credit than that in the Lopez Assignment Order, in the grand total sum of $4,876,654.29. The Gordo Foreclosure Judgment also granted NLG the right to foreclose, but allowed the Debtor to redeem the Property up until the time of the sale. Thus, notwithstanding the right to foreclose, no sale took place, and the Debtor's right to redeem remains alive and well.

NLG argued at trial that Selective is collaterally estopped from asserting its interest in the Mortgage. "However, in collateral estoppel the 'precise fact' or 'every point and question' on the issue must have been decided". *Chandler v. Chandler,* 226 So.2d 697 (Fla. 4th DCA 1969) citing *Gordon v. Gordon,* 59 So.2d at 45 (Fla.1952). Here, Selective sought to intervene in the Gordo foreclosure lawsuit to raise its unique issues of law and fact relative to the assignment of the Mortgage rights and the right to intervene was denied to Selective. "[I]f there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation". *Brown v. R.J. Reynolds Tobacco Co.,* 611 F.3d 1324 (11th Cir. 2010). The evidence and testimony presented at trial demonstrate that Selective was not a party to the Gordo case and therefore is not barred by res judicata or collateral estoppel from asserting its rights under the Note and Mortgage.

However, even assuming that the Gordo Foreclosure Judgment authorized NLG, *and not Selective,* to foreclose the Mortgage, the foreclosure sale never took place because Debtor filed

10

this bankruptcy case, staying the sale pursuant to 11 U.S.C. §362. The Debtor redeemed the

Property prior to a foreclosure sale being conducted and certificate of sale being issued, thereby

satisfying the Gordo Foreclosure Judgment. In paragraph 4 of the Gordo Foreclosure Judgment,

the state court judge set a foreclosure sale date, subject to paragraph 6 therein. Paragraph 6 of the

Gordo Foreclosure Judgment states:

> **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of
> redemption as proscribed by Florida Statute, Section 45.0315 shall be terminated.

Section 45.0135, Fla. Stats., provides:

> At any time before the later of the filing of a certificate of sale by the clerk of the
> court or the time specified in the judgment, order, or decree of foreclosure, the
> mortgagor or the holder of any subordinate interest may cure the mortgagor's
> indebtedness and prevent a foreclosure sale by paying the amount of moneys
> specified in the judgment, order, or decree of foreclosure, or if no judgment, order,
> or decree of foreclosure has been rendered, by tendering the performance due under
> the security agreement, including any amounts due because of the exercise of a
> right to accelerate, plus the reasonable expenses of proceeding to foreclosure
> incurred to the time of tender, including reasonable attorney's fees of the creditor.
> Otherwise, there is no right of redemption.

Until the certificate of sale issued, the Debtor retained her right of redemption, regardless of the

identity of the mortgagee. Consistent with her rights under the Gordo Foreclosure Judgment and as

provided by statute, the Debtor in fact redeemed the Property prior to a foreclosure sale, by satisfying

the Note and Mortgage, and by Selective providing NLG credit for payment of the Note and Mortgage

to partially satisfy NLG's debt to Selective by virtue of the Quebec Judgment.

The amount of the credit provided to NLG should be the greater amount established by the

Gordo Foreclosure Judgment. Although the Scola Judgment determined the debt on the Note to be

$1,618,071.29, the Lopez Assignment Order increased the amount owed to NLG by the Debtor to

$2,746,953.34. The Gordo Foreclosure Judgment ultimately established that NLG was entitled to

$4,876,654.29 for the Note and Mortgage. While the $4,876,654.29 amount may be disputed, the

11

Case 1:22-cv-21485-AJC Document 82 Entered on FLSD Docket 07/03/23 Page 361 of
889
Opposition Response to Motion for Contempt - Exhibits Filed 11/01/17 Page 12 of 15
Case No. 16-10389-AJC
Page 43 of 99

Court must give full faith and credit to the Gordo Foreclosure Judgment and will therefore view the amount determined in that judgment to be the greater amount NLG established it was owed on account of the Note and Mortgage, *as the Lopez Assignment Order allowed*.

It appears from the Electronic Judgment Lien Amendment Statement (Exhibit 14) that NLG was given credit only for the amount indicated in the Scola Judgment, or $1,618,071.29. It was not credited with the amount indicated in the Lopez Assignment Order of $2,746,953.34 (which included interest on the Scola Judgment), nor was it credited with the amount indicated in the Gordo Foreclosure Judgment, $4,876,654.29. However, at the time of trial, the parties' rights were already determined by all those orders. Before any credits, Selective was owed $5,000,225.00 from NLG on account of the Quebec Judgment, and NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage pursuant to the Gordo Final Judgment. Honoring the Gordo Foreclosure Judgment, NLG must be credited for the full amount of the judgment, $4,876,654.29, whether that amount is lesser or not, for the assignment of the Note and Mortgage and satisfactions, leaving the Mortgage redeemed and Selective with a judgment against NLG in the remaining amount of $123,570.71. Whether the various satisfactions and other documents filed by Selective waive Selective's right to collect any further balance is an issue between Selective and NLG.

## Conclusion

The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose the Mortgage securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District Court of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose. Assuming the validity of the Gordo Foreclosure

12

Case 1:22-cv-~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ Page 362 of 889
Opposition Response to Motion for Contempt - Exhibits Filed 11/01/17 Page 13 of 15
Case No. 16-10389-AJC
Page 44 of 99

Judgment, the Debtor exercised her right to redeem the Property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's debt to NLG has been paid, including the New York State Supreme Court, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited by Selective for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure Judgment. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,876,654.29, which credit will leave the Mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom. Accordingly, it is

ORDERED and ADJUDGED that Counts I, II and III of Plaintiffs' Third Amended Complaint and NLG's Amended Counterclaim are **GRANTED IN PART** and **DENIED IN PART**

<div align="center">13</div>

CO2

Case 1:22-cv-~~2485~~ ~~16-10389-AJC~~ ~~Doc 812~~ ~~Entered on FLSD~~ ~~Filed 02/04/19~~ Docket ~~07/01/2022~~   Page 364 of
889
Opposition Response to Motion for Contempt - Exhibits  Filed 11/01/17    Page 15 of 15
Case No. 16-10389-AJC
Page 46 of 99

Email: dave@flalawyer.com
Florida Bar No. 348279

Attorney Langley is directed to serve a copy of this Final Judgment on all interested parties and to
file a Certificate of Service with the Court.



ORDERED in the Southern District of Florida on December 28, 2018.

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

In re:                                            Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,        Chapter 11

    Debtor,

_____/

## ORDER GRANTING IN PART DEBTOR'S AMENDED EXPEDITED MOTION FOR CONTEMPT, SANCTIONS, DAMAGES AND PUNITIVE DAMAGES [ECF NO. 748]

THIS CAUSE came before the Court for hearing on October 24, 2018 upon the *Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages, and Punitive Damages and Memorandum of Law* (the "Motion") [ECF 748]. In the Motion, the Reorganized Debtor seeks sanctions and more against NLG, LLC and Attorney Juan Ramirez, for recording a *lis pendens* against the Reorganized Debtor's real property on August 9, 2018 and filing a cross-claim on

October 1, 2018 against the Reorganized Debtor in that state court foreclosure action by JP

Morgan Bank against Debtor, *JP Morgan Bank, NA v. Elizabeth Hazan a/d/a Liza Hazan, et al.*,

Case No. 2013-25902, pending in the Eleventh Judicial Circuit Court in and for Miami-Dade

County, Florida ("Foreclosure Action"). Debtor alleges they violated the automatic stay and the

injunction resulting from the confirmed Chapter 11 Plan.

NLG, LLC and Attorney Ramirez assert their actions do not violate any provisions of the

automatic stay under section 362 of the Bankruptcy Code because the filing of the *lis pendens*

does not seek to to collect, recover, or offset debts from the property of the Debtor. In addition,

they contend that no stay was in effect at the time of the filings, post-confirmation, due to the

closure of this case, and therefore no stay violation occurred.

On December 13, 2018, following the hearing on the Motion and the post-hearing

submission of proposed orders, the Reorganized Debtor filed another sanctions motion. The

additional motion seeks an order to show cause as to why Chris Kosachuk, NLG, LLC, Juan

Ramirez, Esq. and Astrid Gabbe, Esq. should not be held in contempt of Court for violating the

Court's judgment and orders [ECF 770]. This second sanctions motion is based on additional

actions taken by the foregoing parties, but the argument for sanctions remains the same, to wit,

that the actions taken in various court proceedings violate this Court's Orders and judgment. A

hearing on the motion for order to show cause was held on December 27, 2018.

### BACKGROUND

NLG has been a participant in the Reorganized Debtor's bankruptcy case, and filed a proof

of claim herein. NLG maintained that it held a foreclosure judgment on the Reorganized Debtor's

homestead residence and the right to foreclose on it. The Debtor disputed NLG's assertions and,

together with Selective Advisors Group, LLC, ("Selective Advisors") a business owned by Debtor's husband, filed an adversary proceeding against NLG, Adv. No. 16-1439 BKC-AJC-A.

    The adversary case was tried on July 13, 2017; and, on November 1, 2017, the Court entered a Final Judgment on Counts I, II and III of the Reorganized Debtor's Third Amended Complaint [Adv. No. 16-1439, ECF No. 238]. The Final Judgment disallowed NLG's untimely filed proof of claim, and deemed NLG's Mortgage, Note and Judgment on the Note, all entered against the Reorganized Debtor, satisfied by virtue of set-off based upon a judgment against NLG in favor of Selective Advisors. The Court ruled that NLG had no further claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order of record and in evidence:

> NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

>> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

> have been satisfied and paid, and are deemed SATISFIED OF RECORD, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

Adv. No. 16-1439 ECF No. 238 at p.14.

On June 12, 2018, the Court entered its Order Confirming the Debtor's Plan of
Reorganization ("Confirmation Order") [ECF No. 691]. The Confirmation Order contains
injunctions prohibiting creditors from pursuing prepetition claims against the Reorganized Debtor
or her property. Paragraph 8 of the Confirmation Order contains an injunction prohibiting creditors
whose claims were extinguished from pursuing such claims against the debtor:

> All creditors whose judgments are declared null and void (if any)
> are enjoined from commencing, continuing, or employing any
> action, process, or act to collect, recover, or offset any such debts as
> personal liability of the Debtor, or from property of the Debtor,
> whether or not discharge of such Debtor is waived.

ECF No. 691 at 5, ¶8. Similarly, Paragraph 9 of the Confirmation Order contains an injunction
prohibiting all creditors from taking any action to collect any prepetition debt or to enforce any
lien against the debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing, or
> employing any action, process, or act to collect, recover, or offset
> any debts, or enforce any liens against the Debtor on account of any
> debt that existed as of the Petition Date.

*Id.*, ¶9.

NLG has appealed the Confirmation Order. No stay pending appeal of the Confirmation
Order has been entered.

### ANYALYSIS

Pursuant to 11 U.S.C. 362(c)(1), "the stay of an act against property of the estate under
subsection (a) of this section continues until such property is no longer property of the estate."
Additionally, 11 U.S.C. 362(c)(2) provides that the stay of any other act under subsection (a)
continues until the earliest of the time the case is closed, dismissed or the time a discharge is
granted or denied.

In accordance with 11 U.S.C. 1141(b), the confirmation of the Chapter 11 Plan in this case, on June 12, 2018, vested all property of the estate in the Reorganized Debtor. Thus, upon confirmation and the vesting of estate property in the Reorganized Debtor, the stay ceased to exist, and the actions thereafter taken against the Debtor's property are not in violation of the automatic stay. 11 U.S.C. 362(c)(1). *Baur v. Chase Home Finance (In re Baur)*, 433 B.R. 898 (Bankr. M.D. Fla. 2010). Moreover, because the Court closed this case upon confirmation, at the Debtor's request, the automatic stay was discontinued as of June 12, 2018, and the Court therefore finds there was no violation of the automatic stay by the subsequent filing of the *lis pendens* or the cross-claim. 11 U.S.C. 362(c)(2).

However, the Chapter 11 Plan and Confirmation Order replaced the automatic stay with a permanent injunction, as more specifically provided in paragraphs 8 and 9 of the Confirmation Order. Therefore, the primary issue is whether the recording of the *lis pendens* and/or the filing of the cross-claim against the Debtor violates the Court's injunction in the Confirmation Order.

Upon consideration, the Court believes the recordation of the *lis pendens* against Debtor's property is not, in and of itself, a violation of the Plan's injunction. The purpose of a *lis pendens* is to give constructive notice to a prospective buyer or lender of the pendency of a legal proceeding affecting title to or the right of possession of real property. A *lis pendens* exists, in part, to prevent third-party purchasers or lenders from "buying" a lawsuit when they purchase or loan against the property. *Chiusolo v. Kennedy*, 614 So.2d 491 (Fla. 1993). The recordation of a *lis pendens* provides constructive notice to subsequent purchasers or lenders, to prevent a buyer of real property from claiming *bona fide* purchaser status with respect to the asserted claim. A *lis pendens* also protects the filer from intervening liens that could impair any property rights claimed and from possible extinguishment of an unrecorded equitable lien. *Id.*

In this instance the *lis pendens* provides for notice "of the institution of a cross-claim for foreclosure by Defendant/Crossclaim Plaintiff NLG, LLC pursuant to its Final Judgment of Foreclosure." While the *lis pendens* appears premised upon a pre-petition, satisfied and extinguished claim, it does not establish or perfect a lien on real property and therefore does not constitute an act in violation of the stay or injunction (though some courts may suggest otherwise).

The filing of the cross-claim against the Reorganized Debtor, on the other hand, does indeed constitute an act commencing or continuing an action or process to collect, recover or offset a debt, and to enforce a lien against the Debtor on account of a pre-petition debt, in violation of paragraph 8 of the Confirmation Order, and in violation of paragraph 9 of the Confirmation Order. Filing the cross-claim against the Reorganized Debtor seeking to foreclose on her home is an act to enforce a lien against the Debtor's property. By filing the cross-claim, NLG and Attorney Ramirez violated the Plan's injunction.

"Bankruptcy judges, like district judges, have the power to coerce compliance with injunctive orders." *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 966 (11th Cir. 2012). A party will be held in contempt of a plan injunction if it is shown that the creditor (1) had knowledge of the plan injunction; and (2) intended the acts that violated the injunction. *See Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996) (factors determining stay violations are applicable to violations of discharge injunction, citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)). If the party intended to do the acts that violated the injunction, then the party is in contempt, regardless of whether the violator specifically intended to violate the stay or injunction. *Jove*, 92 F.3d at 1555.

Case 1:22-cv-~~21585-JEM~~ Document 8 Entered on ~~FLSD Docket 07/04/22~~ Page 371 of
889

Opposition Response to Motion for Contempt - Exhibit

Case 1:16-10389-AJC Doc 812 Filed 12/28/18 Page 7 of 10
Case No. 16-10389-AJC
Page 53 of 99

The Court finds both conditions are satisfied here. NLG and Ramirez filed, with aforethought, the offending cross-claim, knowing full well the Confirmation Order contained those injunctive provisions, because NLG is pursuing an appeal of that Order. The injunction in the Confirmation Order prevented NLG from taking any action or attempt to collect any discharged debts, including preventing the filing of a lawsuit in state court to collect on its extinguished or otherwise satisfied debt.

Although in November 2016, the Court granted relief from the automatic stay to JP Morgan Chase Bank and NLG "to litigate *the foreclosure claim of Chase* in the Foreclosure Action to the point of judgment," [ECF No. 315], it did not authorize NLG to pursue its own foreclosure claim. Moreover, relief from stay was granted before the Court entered its Final Judgment on Counts I, II, and III, determining NLG's foreclosure judgment had been satisfied. Now that the Court has ruled on that issue, and that Judgment has not been stayed, that ruling is law of the case and NLG may not pursue a claim in state court seeking the opposite result.

Bankruptcy courts are empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Where, as here, a party has violated a plan injunction through pursuing litigation in another forum, it is appropriate for the Court to order the party to dismiss and discontinue its offending lawsuits. *See, e.g., In re Kimball Hill, Inc.*, 565 B.R. 878, 901–02 (Bankr. N.D. Ill. 2017). Because NLG and Ramirez's cross-claim in the Florida Foreclosure Action is in violation of the injunctions contained in the Confirmation Order, they are ordered to immediately discontinue their pursuit of the cross-claim against the Debtor by withdrawing or dismissing same. Upon withdrawal or dismissal of the cross-claim, the notice of *lis pendens* will automatically be dissolved pursuant to Fla.R.Civ.P. 1.420(f).

Case 1:22-cv-~~Case 16-10389-AJC~~ Doc 812 ~~Filed 02/03/19~~ Page ~~65 of 112~~   Page 372 of
889
Opposition Response to Motion for Contempt-Exhibit  Filed 12/28/18   Page 8 of 10
Case No. 16-10389-AJC
Page 54 of 99

As sanctions for the violation, the Court will award the Debtor reasonable attorneys fees for having to bring this matter before the Court. However, no punitive damages will be awarded unless NLG and Attorney Ramirez fail to immediately comply with this Order.

Finally, and with respect to the motion for an order to show cause, the Debtor argues that NLG, its manager Chris Kosachuk and Attorneys Ramirez and Gabbe are in contempt of Court and should be sanctioned for commencing and continuing litigation in both Florida and New York, where they are seeking to void the judgment against NLG owned by Selective Advisors. The Debtor contends such actions constitute "employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date." The Court disagrees. Seeking to vacate the New York judgment is not akin to taking action to collect against the Debtor, regardless of whether this Court relied on the existing New York judgment in entering its Final Judgment against NLG in Adv. No. 16-1439.

The Court has no jurisdiction over litigation between two third-parties in a state or other federal court case. Third party Selective Advisers did not obtain the benefit of the automatic stay in this case, nor did it receive an injunction in the confirmed Chapter 11 Plan. The fact that Chris Kosachuk and Attorney Ramirez may have admitted in affidavits filed in those cases that their true purpose in seeking to void that New York judgment is to enforce the Reorganized Debtor's alleged debt and to foreclose a mortgage on her home, is irrelevant and does not support a finding of contempt. Stating as much in an affidavit does not make it so; NLG, Kosachuk, Ramirez and Gabbe are still not entitled to foreclose. The Court ruled as such in its Final Judgment on Counts I, II and III of the Reorganized Debtor's Third Amended Complaint in Adv. No. 16-1439, and that judgment has not been stayed and is now law of the case. The actions of NLG, its manager Chris

Kosachuk and Attorneys Ramirez and Gabbe in the cases against Selective Advisers are not actions to foreclose on the Debtor's property.

Selective Advisers is not entitled to the injunction obtained by the Reorganized Debtor in this case. The injunction is intended to protect the Reorganized Debtor from creditors seeking to enforce pre-petition debts. Actions taken by NLG, Chris Kosachuk or Attorneys Ramirez and Gabbe against third parties are not included in the injunctive relief as those actions are not seeking to collect a pre-petition debt from the Debtor in this case. Accordingly, it is

**ORDERED** and **ADJUDGED** that *Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages, and Punitive Damages and Memorandum of Law* (the "Motion") [ECF 748] is GRANTED IN PART as follows:

1. The Court finds that Attorney Ramirez and NLG have violated the injunctions in the Confirmation Order by filing the cross-claim in the Foreclosure Action seeking to foreclose a pre-petition debt that was deemed satisfied and otherwise extinguished in this bankruptcy case.

2. Attorney Ramirez and NLG shall immediately withdraw or dismiss the cross-claim filed in the Foreclosure Action, and upon dismissal of the cross-claim, the *lis pendens* shall be dissolved.

3. If the cross-claim is not immediately dismissed, NLG, LLC and Juan Ramirez, Esq., will be determined to be in contempt of this Court's Orders and the Court will consider the imposition of further sanctions, including punitive damages.

4. NLG and Attorney Ramirez are cautioned to refrain from taking any other action in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June 12, 2018.

5. NLG and Mr. Ramirez shall be jointly and severally liable for the attorney's fees in the amount of $9,500.00 as reasonable fees incurred by the Reorganized Debtor for filing the Motion in this case, appearing before the Court at two (2) hearings and filing post-hearing submissions with the Court, all in defense of NLG's improperly filed and violative cross-claim in the Foreclosure Action. The Court denies an award of fees for the multiple attorneys appearing on behalf of the Debtor as multiple attorneys were not necessary and such an award is not reasonable.

It is further

**ORDERED** and **ADJUDGED** that, based upon the foregoing, the Debtor's *Emergency Motion for Order to Show Cause as to Why Chris Kosachuk, NLG, LLC, Juan Ramirez and Astrid Gabbe Should Not be Held in Contempt of Court for Violations of This Court's Judgment, Confirmation Order and Discharge Order* [ECF 770] is MOOT.

###

Copies furnished to:

Debtor
Geoffrey S Aaronson, Esq.
Juan Ramirez, Esq.
AUST

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

Case 1:22-cv-Case 16-10389-AJC Doc 812 Filed 02/04/19 Page 68 of 116 Page 375 of
Case 16-10389-AJC Gen Docketen tered 07/13/19 Doc#0075-4/2022 Page 375 of
889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 57 of 99

# EXHIBIT 9

Case 1:22-cv- Case 16-10389-AJC Doc 1 Entered 07/83/90 Page 075 of 227 Page 376 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 58 of 99

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
9197-5904 QUEBEC, INC.,

               Plaintiff,

      -against-

NLG, LLC, a Delaware Limited Liability Company,

               Defendant.
------------------------------------------------------------------X

Docket No.:

**NOTICE OF REMOVAL**

To the Clerk of the United States District Court for the Southern District of New York:

Plaintiff-Assignee, Selective Advisors Group, LLC ("Selective") files this Notice of Removal under 28 U.S.C. §§ 1446, 1452 and Federal Rules of Civil Procedure, Rule 81(a) and Loc. Civ. R. 81.1.

**STATEMENT OF FACTS ENTITLING DEFENDANT TO REMOVAL**

1.     The action pending in the Supreme Court of New York, in and for the County of New York entitled <u>9197-5904 QUEBEC, INC., vs. NLG, LLC, a Delaware Limited Liability Company</u>, Index No.: 101875/2012 was commenced on or about February 22, 2012 by way of the filing of a judgment by confession against Defendant NLG, LLC ("NLG").

2.     Selective is the assignee of original Plaintiff 9197-5904 Quebec, Inc. and is authorized to pursue this matter.

3.     Copies of the pleadings and other papers served on the removing defendant in the above-described action are appended to this Notice of Removal as required by 28 U.S.C. § 1446 (<u>See</u> **Exhibit A**).

4.     As the appended record demonstrates, the action pending in state court is a civil action and removal is appropriate here under 28 U.S.C. § 1452 ("Section 1452") because this Court has bankruptcy jurisdiction over this matter pursuant to 28 U.S.C. § 1334 ("Section 1334").

5.      Removal is appropriate in this case because, as set forth below, the State Court Action satisfies the "related to" threshold for establishing bankruptcy jurisdiction and will definitively impact the handling and administration of the bankrupt estate.

6.      The State Court Action is related to a case under the Bankruptcy Code in the United States Bankruptcy Code for the Southern District of Florida, to wit: <u>In Re Liza Hazan</u>, Docket No.: 16-10389-AJC. The Petition is attached as **Exhibit B**.

7.      If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under §362 of the Code, or (C) 30 days after a trustee qualifies in a Chapter 11 reorganization case but not later than 180 days after the order for relief.

8.      This Notice of Removal is timely pursuant to 28 U.S.C. §1452 and Bankruptcy Rule 9027(a), as an order for relief has been entered on December 7, 2018, and is annexed hereto as **Exhibit C**.

9.      Removal to this district court is proper under 28 U.S.C. § 1441(a) because the Supreme Court of the State of New York in and for the County of New York is geographically located within this court's district.

10.     Upon removal, the State Court Action will be joined into the adversary proceeding (the "Adversary Proceeding") that constitutes a core proceeding pursuant to, inter alia, 28 U.S.C. § 157(b)(2)(C), (K) and (O). This Adversary Proceeding is a civil action within the meaning of the Acts of Congress relating to the removal of cases.

11.     In accordance with 28 U.S.C. §1446(a), Selective is filing herewith a copy of all process, pleadings and orders served in this action.

12.     Pursuant to 28 U.S.C. §1446(d), Selective certifies that promptly after filing this Notice of Removal it will provide written notice of the filing to Plaintiff and to the Clerk of the Court for the Supreme Court of New York County of New York. Selective will thereafter file a motion to transfer venue to the United States Bankruptcy Court for the Southern District of Florida, where the Bankruptcy is currently pending.

Dated: January 2, 2019
        Passaic, New Jersey

                                    **LAW OFFICES OF J. HENRY NIERMAN**


                    By:     /s/ Joseph H. Nierman
                            Joseph Nierman, Esq.
                            157 Mineral Spring Avenue
                            Passaic, New Jersey 07055
                            (516) 523-3803

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 61 of 99

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

     **Plaintiff,**

Index No.:

  **against**

**JUDGMENT BY
CONFESSION**

NLG, LLC, a Delaware Limited Liability Company,

     **Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | |
| | | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

**MARZEC LAW FIRM, PC**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT 1

JUDGMENT entered the ___22nd___ day of __February__, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,


**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is


**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of NLG, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk      amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.


_Norman Goodman_
CLERK

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK


\* Defendant's full Name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10185/12

---

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC, *A DELAWARE LIMITED LIABILITY COMPANY,*

Defendant.

---

**AFFIDAVIT OF CONFESSION OF JUDGMENT**

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK** ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

Sworn to before me this
16 day of *Feb*, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
*MANAGER, NLG LLC*

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

*NOTARY PUBLIC*

**EXHIBIT 1**



**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

Index No. 10875/12

---

9197-5904 Quebec, Inc.,

                      **Plaintiff,**

    **against**

NLG, LLC,

                      **Defendant.**

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

---

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**      **ss.:**

      Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

      This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT 1

_Raymond Houle_
RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

_Notary Public_

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT 1



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                     Index No.

9197-5904 Quebec, Inc.,
                                **Plaintiff,**

        **against**

NLG, LLC., A DELAWARE LIMITED LIABILITY
              COMPANY,
                                **Defendant.**

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**
FEB 22 2012
AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

**DOCKETED BY**

EXHIBIT 1

# EXHIBIT B

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF FLORIDA

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7
☑ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Check if this an amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy
**12/15**

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** <br> Write the name that is on your government-issued picture identification (for example, your driver's license or passport). <br><br> Bring your picture identification to your meeting with the trustee. | **Liza** <br> First name <br><br> _____ <br> Middle name <br><br> **Hazan** <br> Last name and Suffix (Sr., Jr., II, III) | _____ <br> First name <br><br> _____ <br> Middle name <br><br> _____ <br> Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years** <br> Include your married or maiden names. | **Elizabeth Hazan** | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-7473** | |

| Debtor 1 | Liza Hazan | | Case number *(if known)* | |
|---|---|---|---|---|

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

☐ I have not used any business name or EINs.

Business name(s)

EINs

☐ I have not used any business name or EINs.

Business name(s)

EINs

**5.** **Where you live**

**6913 Valencia Drive
Miami Beach, FL 33109**
Number, Street, City, State & ZIP Code

**Miami-Dade**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** **Why you are choosing *this district* to file for bankruptcy**

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Case 16-10389-AJC    Doc 1    Filed 01/11/16    Page 3 of 18

Debtor 1    Eliza Hazan _____    Case number *(if known)* _____

---

| **Part 2:** | **Tell the Court About Your Bankruptcy Case** |

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one. (For a brief description of each, see Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7
■ Chapter 11
☐ Chapter 12
☐ Chapter 13

---

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.
☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

---

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No
☐ Yes.

| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When | Case number, if known | _____ |

---

**11.** **Do you rent your residence?**

■ No.    Go to line 12.
☐ Yes.    Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?

☐ No. Go to line 12.
☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

---

Official Form 101        **Voluntary Petition for Individuals Filing for Bankruptcy**        page 3

Case 1:22-cv-21485-RNS Document 68-1 Entered on FLSD Docket 07/14/2023 Page 390 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 72 of 99

Debtor 1    Liza Hazan                Case number *(if known)* _____

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |
| --- | --- |

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ **No.**    Go to Part 4.

☐ **Yes.**    Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐   Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐   Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐   Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐   Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐   None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).*

☐ **No.**   I am not filing under Chapter 11.

■ **No.**   I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ **Yes.**   I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |
| --- | --- |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ **No.**

☐ **Yes.**   What is the hazard? _____

If immediate attention is needed, why is it needed? _____

Where is the property? _____

_____
Number, Street, City, State & Zip Code

---

Case 16-10389-AJC    Doc 1    Filed 01/11/16    Page 5 of 18

Debtor 1    Elza Hazan

Case number (if known) _____

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

You must check one:

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.
If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ Incapacity.  I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ Disability.  My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ Active duty.  I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

You must check one:

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ Incapacity.  I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ Disability.  My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ Active duty.  I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Case 1:22-cv-23074-BB Document 106-1 Entered on FLSD Docket 05/04/2023 Page 392 of 889
Opposition Response to Motion for Contempt - Exhibits
Page 74 of 99

| Debtor 1 | Liza Hazan | | Case number *(if known)* | _____ |
|---|---|---|---|---|

<table>
<tr><td colspan="3">**Part 6:**  **Answer These Questions for Reporting Purposes**</td></tr>
</table>

**16.  What kind of debts do you have?**

    **16a.**  **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

        ☐ No. Go to line 16b.

        ■ Yes. Go to line 17.

    **16b.**  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

        ☐ No. Go to line 16c.

        ☐ Yes. Go to line 17.

    **16c.**  State the type of debts you owe that are not consumer debts or business debts  _____

**17.  Are you filing under Chapter 7?**

    ■ No.    I am not filing under Chapter 7. Go to line 18.

    Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

    ☐ Yes.    I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

        ☐ No

        ☐ Yes

**18.  How many Creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**19.  How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20.  How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

<table>
<tr><td colspan="2">**Part 7:**  **Sign Below**</td></tr>
</table>

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

/s/ Liza Hazan
_____        _____
Liza Hazan                            Signature of Debtor 2
Signature of Debtor 1

Executed on  **January 11, 2016**        Executed on  _____
              MM / DD / YYYY                         MM / DD / YYYY

| Debtor 1 | **Elza Hazan** | | Case number *(if known)* | |
|---|---|---|---|---|

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

| /s/ Geoffrey S. Aaronson | Date | **January 11, 2016** |
|---|---|---|
| Signature of Attorney for Debtor | | MM / DD / YYYY |

**Geoffrey S. Aaronson**
Printed name

**Aaronson Schantz Beiley P.A.**
Firm name

**100 SE 2nd Street, Floor 27**
**Miami, FL 33131**
Number, Street, City, State & ZIP Code

Contact phone **786-594-3000**          Email address

**349623**
Bar number & State

---

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Liza Hazan** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | |

☐ Check if this is an amended filing

---

## B 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an insider. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.

**Part 1:**  List the 20 Unsecured Claims in Order from Largest to Smallest.  Do Not Include Claims by Insiders.

Unsecured claim

**1**
900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606

What is the nature of the claim?    Judgment    $ $500,000.00

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured)    $ _____
Value of security:    - $ _____
Unsecured claim    $ _____

Contact
Contact phone

---

**2**
Allied Collection Service
1607 Central Ave
Columbus, IN 47201

What is the nature of the claim?    Hotel Bill    $ $312.00

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured)    $ _____
Value of security:    - $ _____

Contact

---

B104 (Official Form 104)    For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims    Page 1

Case 1:22-cv-... Case 16-10389-AJC ... Filed 01/11/16 ... Page 395 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC   Case 16-10389-AJC   Doc 1   Filed 01/11/16   Page 9 of 18
Page 77 of 99

| Debtor 1 | **Liza Hazan** | Case number *(if known)* | |
|---|---|---|---|
| Contact phone | | Unsecured claim | $ |

---

| 3 | **ATT Mobility** <br> PO Box 536216 <br> Atlanta, GA 30353 | What is the nature of the claim? | **Telephone Bill** | $ **$3,910.00** |

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
      Value of security:    - $ _____
      Unsecured claim    $ _____

Contact _____
Contact phone _____

---

| 4 | **Car Southeast Financial, LLC** <br> 4000 N. Federal Highway, Suite 200 <br> Boca Raton, FL 33431 | What is the nature of the claim? | **Car Loan** | $ **$20,792.15** |

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
      Value of security:    - $ _____
      Unsecured claim    $ _____

Contact _____
Contact phone _____

---

| 5 | **Cross Simon** <br> PO Box 1380 <br> Wilmington, DE 19899-1380 | What is the nature of the claim? | **Legal Fees** | $ **$11,023.83** |

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
      Value of security:    - $ _____
      Unsecured claim    $ _____

Contact _____
Contact phone _____

---

| 6 | **Direct TV** <br> PO Box 6550 <br> Englewood, CO 80155-6550 | What is the nature of the claim? | **Cable Bill** | $ **$461.00** |

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

---

B 104 (Official Form 104)    For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims    Page 2

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Case 1:22-cv-Ca85e51655382Au0C nDecu8Dat1e Filed 0470839DneR1ar2ee2 a02Dafg2026 Page 396 of 889

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC Case 16-10389-AJC Doc 1 Filed 01/11/16 Page 10 of 18
Page 78 of 99

| Debtor 1 | **Liza Hazan** | Case number *(if known)* | |

---

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured) $ _____
  - Value of security: - $ _____
  - Unsecured claim $ _____

---

**7** **Enhanced Recovery Company**
8014 Bayberry Rd
Jacksonville, FL 32256

What is the nature of the claim? **Telephone Bill** $ **123.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured) $ _____
  - Value of security: - $ _____
  - Unsecured claim $ _____

Contact
Contact phone

---

**8** **First National Collection Bureau, Inc.**
610 Waltham Way
Sparks, NV 89434

What is the nature of the claim? **Bank Fees** $ **246.08**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured) $ _____
  - Value of security: - $ _____
  - Unsecured claim $ _____

Contact
Contact phone

---

**9** **Fisher Island Community Association**
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319

What is the nature of the claim? **Homeowner's Association Fees** $ **0.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured) $ _____
  - Value of security: - $ _____
  - Unsecured claim $ _____

Contact
Contact phone

---

**10** What is the nature of the claim? **Cable Bill** $ **332.00**

---

B 104 (Official Form 104)     For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims     Page 3

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

Case 1:22-cv-... Case 18-10389-AJC ... Doc 68-1 Filed 07/08/22 ... Page 95 of 223 Page 397 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC    Case 16-10389-AJC    Doc 1    Filed 01/11/16    Page 11 of 18
Page 79 of 99

| Debtor 1 | Liza Hazan | | Case number (if known) | |

**Focus Management**
**10284 NW 47th St**
**Fort Lauderdale, FL 33351**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
  - Value of security:    - $ _____
  - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**11**

**Halsted Management Company**
**c/o David A. Tane, Esq.**
**Tane Waterman & Wurtzel, PC**
**120 Broadway, Suite 948**
**New York, NY 10271**

What is the nature of the claim?    **Condominium Association Fees**    $ **$0.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
  - Value of security:    - $ _____
  - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**12**

**Internal Revenue Service**
**P.O. Box 7317**
**Philadelphia, PA 19101**

What is the nature of the claim?    **Federal Income Taxes**    $ **$0.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
  - Value of security:    - $ _____
  - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**13**

**Marzec Law Firm**
**225 Broadway, Suite 3000**
**New York, NY 10007**

What is the nature of the claim?    **Legal Fees**    $ **$0.00**

As of the date you file, the claim is: Check all that apply
- ☐ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No

---

B 104 (Official Form 104)    For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims    Page 4

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Case 1:22-cv-Case 1:18-A5349-DE AJC Document 68-1 Entered on FLSD Docket 02/09/2023 Page 95 of 223 Page 398 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC Case 16-10389-AJC Doc 1 Filed 01/11/16 Page 12 of 18
Page 80 of 99

| Debtor 1 | Liza Hazan | | Case number *(if known)* | |
|---|---|---|---|---|

| | Contact | ☐ Yes. Total claim (secured and unsecured) | $ |
| | | Value of security: | - $ |
| | Contact phone | Unsecured claim | $ |

---

**14** Mercedes Benz Financial Services
PO Box 685
Roanoke, TX 76262

What is the nature of the claim? $ $0.00

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured) $
Value of security: - $
Unsecured claim $

Contact _____
Contact phone _____

---

**15** Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140

What is the nature of the claim? **Medical Bill** $ $31,414.15

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured) $
Value of security: - $
Unsecured claim $

Contact _____
Contact phone _____

---

**16** Newman Ferrara, LLP
1250 Broadway, 27th Floor
New York, NY 10001

What is the nature of the claim? **Legal Fees** $ $24,654.22

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured) $
Value of security: - $
Unsecured claim $

Contact _____
Contact phone _____

---

**17** Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185

What is the nature of the claim? **Legal Bills** $ $1,000.00

As of the date you file, the claim is: Check all that apply
■ Contingent

---

B 104 (Official Form 104)   For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims   Page 5

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com   Best Case Bankruptcy

| Debtor 1 | Liza Hazan | | Case number (if known) | |
|---|---|---|---|---|

|  |  |
|---|---|
|  | ■ Unliquidated |
|  | ■ Disputed |
|  | ☐ None of the above apply |

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)     $ _____
        Value of security:     - $ _____
        Unsecured claim     $ _____

Contact _____

Contact phone _____

---

**18**   **Sterling Emergency Serv. of Miami Beach**
PO Box 975213
Dallas, TX 75397-5213

**What is the nature of the claim?**   **Medical Bills**   $ **$4,442.40**

**As of the date you file, the claim is: Check all that apply**

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)     $ _____
        Value of security:     - $ _____
        Unsecured claim     $ _____

Contact _____

Contact phone _____

---

**19**   **Valencia Estates**
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131

**What is the nature of the claim?**   **Homeowner's Association Fees**   $ **$100,000.00**

**As of the date you file, the claim is: Check all that apply**

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)     $ _____
        Value of security:     - $ _____
        Unsecured claim     $ _____

Contact _____

Contact phone _____

---

**20**   **Verizon**
PO Box 1100
Albany, NY 12250-0001

**What is the nature of the claim?**   **Telephone Bill**   $ **$1,758.00**

**As of the date you file, the claim is: Check all that apply**

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)     $ _____
        Value of security:     - $ _____

Contact _____

---

B 104 (Official Form 104)     For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims     Page 6

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 82 of 99

| Debtor 1 | **Liza Hazan** | | Case number *(if known)* | _____ |
|---|---|---|---|---|
| | Contact phone | | Unsecured claim | $ _____ |

---

**Part 2:** Sign Below

**Under penalty of perjury, I declare that the information provided in this form is true and correct.**

| X | **/s/ Liza Hazan** | X | _____ |
|---|---|---|---|
| | **Liza Hazan** | | Signature of Debtor 2 |
| | Signature of Debtor 1 | | |
| | | | |
| Date | **January 11, 2016** | Date | _____ |

B 104 (Official Form 104)     For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims     Page 7

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

Case 1:22-cv-21485-RNS Document 26-61 Entered on FLSD Docket 05/24/2023 Page 401 of 889

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC   Case 16-10389-AJC   Doc 1   Filed 01/11/16   Page 15 of 18
Page 83 of 99

900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606


Allied Collection Service
1607 Central Ave
Columbus, IN 47201


ATT Mobility
PO Box 536216
Atlanta, GA 30353


Car Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431


Chase Bank, NA
c/o Jennifer Kopf, Esq.
Shapiro, Fishman & Gashe, LLP
2424 N. Federal Highway, Suite 360
Boca Raton, FL 33431


Cross Simon
PO Box 1380
Wilmington, DE 19899-1380


Direct TV
PO Box 6550
Englewood, CO 80155-6550


Enhanced Recovery Company
8014 Bayberry Rd
Jacksonville, FL 32256


First National Collection Bureau, Inc.
610 Waltham Way
Sparks, NV 89434


Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351


Halsted Management Company
c/o David A. Tane, Esq.
Tane Waterman & Wurtzel, PC
120 Broadway, Suite 948
New York, NY 10271


Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101


Jacobs Keeley, PLLC
c/o Bruce Jacobs, Esq.
169 East Flagler Street, Suite 1620
Miami, FL 33131


Mark D. Cohen, PA
c/o Mark D. Cohen, Esq.
4000 Hollywood Boulevard, Suite 435
Hollywood, FL 33021


Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007


Mercedes Benz Financial Services
PO Box 685
Roanoke, TX 76262


Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140


Newman Ferrara, LLP
1250 Broadway, 27th Floor
New York, NY 10001


NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131

Case 1:22-cv-21485-RNS Document 26-11 Entered on FLSD Docket 05/14/2023 Page 403 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC    Case 16-10389-AJC    Doc 1    Filed 01/11/16    Page 17 of 18
Page 85 of 99

Presidential Auto Leasing & Sales
3201 South Federal Highway
Delray Beach, FL 33483


Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185


Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247


Robert P. Lithman P.A.
c/o Robert P. Lithman, Esq.
18001 Old Cutler Road, Suite 600
Miami, FL 33157


Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016


Select Portfolio Servicing, Inc.
ATTN: Bankruptcy Department
PO Box 66250
Salt Lake City, UT 84165


Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431


Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213


Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017

US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706


Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131


Verizon
PO Box 1100
Albany, NY 12250-0001

Case 1:16-cv-10889-AJC Document 161 Filed 02/03/21 Page 1 of 13

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 87 of 99

# EXHIBIT C

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 88 of 99



**ORDERED in the Southern District of Florida on December 6, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                         Chapter 11

        Debtor.

_____/

**ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT,
AND ENTER DISCHARGE TO REORGANIZED DEBTOR**

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745]. The Court has further considered the following:

*CASE NO. 16-10389-BKC-AJC*

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al.* [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

CASE NO. 16-10389-BKC-AJC

Having considered the record, including NLG's Objection and Opposition,[2] and finding that due and adequate notice has been given and no additional notice is required, the Court grants the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the Final Report. The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to a discharge pursuant to 11 U.S.C. § 1141(d)(5). However, a Final Decree will not yet be issued and the case shall not be re-closed at this time.

I.    **11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to individual debtor who has not completed all plan payments**

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered by the Court until completion of all payments under the confirmed plan. *11 U.S.C. §1141(d)(5)(A)*. An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia*, an individual debtor has made all plan payments to unsecured creditors. Section 1141(d)(5)(B) provides:

(B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if –

(i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
(ii) modification of the plan under section 1127 is not practicable; and
(iii) subparagraph (C) permits the court to grant a discharge.

---

[2] Although this Court previously determined that NLG is not a creditor and has no claim against the Reorganized Debtor [*see*, *Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No. 16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules same.

Case 1:22-cv-21485-RNS Document 68-15 Entered on FLSD Docket 02/04/2023 Page 409 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 91 of 99
Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 4 of 12

CASE NO. 16-10389-BKC-AJC

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –
> (i) section 522(q)(1) may be applicable to the debtor; and
> (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);
> and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C. § 1141(d)(5)(B). *See, 11 U.S.C. § 1141(d)(5); see also*, *In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor. In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C. § 1141(b)(5)(B) so as to be entitled to an early discharge.[3] Exhibit "A" attached to both the Motion

---

[3] The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

> MS. ARMENGOL:
>
> … I can speak as to the procedural propriety of the Court awarding a discharge now. I concur with Mr. Pugatch -- and for the record, the code section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

Case 1:22-cv-22005-JAL Document 66-1 Entered on FLSD Docket 01/14/2023 Page 410 of 889

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC Case 16-10389-AJC Doc 766 Filed 12/07/18 Page 5 of 12
Page 92 of 99

CASE NO. 16-10389-BKC-AJC

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid in the Plan, have been paid in full. As a result, the value of property [payments] distributed under the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended Plan") on account of each unsecured claim is not less than the amount that would have been paid on such claim if the bankruptcy estate would have been liquidated under chapter 7. Therefore, the Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i). The Court takes judicial notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018 to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made pursuant to the Fourth Amended Plan and Confirmation Order. Moreover, the Court finds 11 U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not practicable under 11 U.S.C. § 1127.

## II. The Fourth Amended Plan, the Confirmation Order and this Court's prior Orders provide additional bases to grant relief

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to completion of payments under the Plan. The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.
Looking at the plan, Your Honor, the only other claims were secured. So even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay pursuant to the plan, they still have that security and that lien. And a priority claim with the IRS – and I'm not sure where that stands, but Your Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

Case 1:22-cv-2485 Case 16-10389-AJC Doc 766 Filed 12/07/18 Page 411 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC    Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 6 of 12
Page 93 of 99

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors.
For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in
pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to
> **unsecured creditors**, the Debtor may file a motion to reopen this
> bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk
> of Court fees associated with filing of the motion to reopen shall be
> waived. The motion to reopen shall be verified and served upon all
> creditors and parties in interest and shall demonstrate that the Debtor
> has made all of the payments contemplated under the Plan to
> **unsecured creditors**.

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added]. The
Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended
Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the
Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in
relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor
> shall promptly file a Final Report of Estate and Motion for Final
> Decree Closing Case on the Court-approved local form, which shall
> certify that all payments required under the Plan to **unsecured
> creditors** have been made. The Court may then grant the Debtor a
> discharge, pursuant to 11 U.S.C. § 1141(d)(5).

See, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added]. The
Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended
Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating
that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

Case 1:22-cv-21485-RNS Document 60-13 Entered on FLSD Docket 02/24/23 Page 412 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC
Page 94 of 99

*CASE NO. 16-10389-BKC-AJC*

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor upon the completion of plan payments to unsecured creditors under the Plan.  Specifically, paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to *Unsecured Creditors*, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all payments contemplated under the Plan to *Unsecured Creditors*.

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added].  The Court finds that the Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to *Unsecured Creditors* have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added].  The Court finds that the Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

Case 1:22-cv-... Case 16-10389-AJC Doc 766 Filed 12/07/18 Page 413 of 889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389-AJC     Case 16-10389-AJC     Doc 766     Filed 12/07/18     Page 8 of 12
Page 95 of 99

CASE NO. 16-10389-BKC-AJC

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation [ECF No. 692] (the "Agreed Order"). The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the **unsecured creditors** have been made. The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added]. The Court finds that the Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class 12 unsecured creditors.

### III.     NLG's Objection and Opposition

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG, whose claim the Court disallowed, asserted that a discharge should not be granted at this time because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full. The Court took the matter under advisement to consider the objection; and upon further consideration and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding, in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

CASE NO. 16-10389-BKC-AJC

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

Case 1:22-cv-21485-RKA Document 30-15 Entered on FLSD Docket 05/18/2023  Page 415 of
889
Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389  Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 10 of 12
Page 97 of 99

CASE NO. 16-10389-BKC-AJC

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns. Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge. However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals. It is the policy of the Court to not close a case until all appeals are finally resolved and over. Therefore, it is

ORDERED AND ADJUDGED:

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

CASE NO. 16-10389-BKC-AJC

2.   The Final Report is **APPROVED.**

3.   NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos. 757 and 763] are **GRANTED IN PART** with respect to reopening this case, and not closing the case until the final disposition of all pending motions and appeals herein, but NLG, LLC's Opposition and Objection to the granting of the discharge are **DENIED** and **OVERRULED**.

4.   The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

5.   The discharge issued to the Reorganized Debtor does not discharge or otherwise affect the JMB non-dischargeable judgment.

6.   The discharge issued to the Reorganized Debtor does not discharge the Reorganized Debtor from her personal monetary liability in the amount of One Hundred Nine Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board of Managers of Spencer Condominium. The Reorganized Debtor has other non-monetary obligations under the Settlement Agreement with the Board of Managers of Spencer Condominium, as provided for in the treatment of Class 11 under the Fourth Amended Plan and the Confirmation Order, and such non-monetary obligations are not impacted by the discharge. The New York courts have exclusive

Case 1:22-cv-21485-RNS Document 1 Entered on FLSD Docket 05/14/2022 Page 417 of 889

Opposition Response to Motion for Contempt - Exhibits
Case No. 16-10389 Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 12 of 12
Page 99 of 99

*CASE NO. 16-10389-BKC-AJC*

jurisdiction over the settlement between those parties.

7. This case shall remain open pending the final disposition of all motions herein and
the outstanding appeals, after which the Court will direct the Clerk of Court to enter
a Final Decree closing this case.

### 

Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*



**ORDERED in the Southern District of Florida on March 12, 2019.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                         Chapter 11

        Debtor.

_____/

**ORDER DENYING NLG, LLC'S AMENDED MOTION FOR RELIEF FROM ORDER
GRANTING IN PART DEBTOR'S AMENDED EXPEDITED MOTION FOR
CONTEMPT, SANCTIONS, DAMAGES AND PUNITIVE DAMAGES [ECF 798]**

**THIS MATTER** came before the Court on February 6, 2019 on NLG, LLC'S Amended

Motion for Relief from Order Granting in Part Debtor's Amended Expedited Motion for Contempt,

Sanctions, Damages and Punitive Damages [ECF 798]. Upon hearing the arguments of counsel

for all interested parties, and the Court having reviewed the record and being otherwise fully

advised in the premises, the Court finds as follows:

On December 28, 2018, this Court entered an *Order Granting in Part Debtor's Amended

Expedited Motion for Contempt, Sanctions, Damages and Punitive Damages [ECF No. 748]*. ECF

780. Among other things, in that Order the Court awarded attorney's fees to the Reorganized

Debtor for bringing the Motion:

> NLG and Mr. Ramirez shall be jointly and severally liable for the attorney's fees in the amount of $9,500.00 as reasonable fees incurred by the Reorganized Debtor for filing the Motion in this case, appearing before the Court at two (2) hearings and filing post-hearing submissions with the Court, all in defense of NLG's improperly filed and violative cross-claim in the Foreclosure Action.

ECF 780 at 10.

NLG's Motion for Relief invokes Federal Rules of Bankruptcy Procedure 9023 and 9024, which authorize and set time limits for filing motions under Federal Rules of Civil Procedure 59 and 60, respectively. To the extent the NLG's Motion for Relief seeks relief under Rule 9023, it is untimely. Rule 9023 requires that "[a] motion for a new trial or to alter or amend a judgment shall be filed…no later than 14 days after entry of judgment." NLG's Motion for Relief was filed on January 14, 2019, 17 days after entry of judgment. This Court therefore denies exercising jurisdiction to grant relief under Rule 9023. *In re Southeast Bank Corp.*, 97 F.3d 476, 478 (11th Cir. 1996).

At the hearing on NLG's Motion for Relief, NLG's counsel stated that NLG was seeking relief only under Rule 9024 and Rule 60(b). Rule 60(b), Fed.R.Civ.P., authorizes relief only in limited circumstances, and the Court does not believe that NLG has demonstrated a mistake, newly discovered evidence, fraud, or that the Order is void. To the extent NLG relies on the catchall provision of Rule 60(b)(6), NLG has failed to show that "extraordinary circumstances" justify invoking this "extraordinary remedy," *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996).

NLG asserts the Court mistakenly entered the Order setting the amount of attorney's fees, when it previously indicated it would consider first the issue of entitlement and later, if necessary,

determine the amount of fees.  NLG argues it does not know where the amount of the sanction came from and that Hazan should not be awarded fees as a sanction for arguments on which she did not prevail.  While the Court did state that it would first consider entitlement, the Court did not limit its ruling to entitlement.  The Court determined the specific amount of sanctions, setting forth in the its order just what the sanctions represented.  The Court finds no excusable neglect or other basis to reconsider the amount now. Accordingly, it is

ORDERED and ADJUDGED that NLG, LLC'S Amended Motion for Relief from Order Granting in Part Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages and Punitive Damages [ECF 798] is DENIED.

### 

Geoffrey S. Aaronson, Esq. is directed to serve a copy of this
Order on all interested parties and to file a certificate of service.



**ORDERED in the Southern District of Florida on March 12, 2019.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                        Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

          Debtor.
_____/

### ORDER GRANTING MOTION FOR ENTRY OF FINAL JUDGMENT

**THIS MATTER** came before the Court on February 6, 2019 on the Reorganized Debtor's

Motion for Entry of Final Judgment [ECF 796]. A review of the record indicates that, on December

28, 2018, this Court entered an *Order Granting in Part Debtor's Amended Expedited Motion for*

*Contempt, Sanctions, Damages and Punitive Damages [ECF No. 748]* (ECF 780). Among other

things, in that Order the Court awarded attorney's fees to the Reorganized Debtor for bringing the

Motion:

> NLG and Mr. Ramirez shall be jointly and severally liable for the
> attorney's fees in the amount of $9,500.00 as reasonable fees
> incurred by the Reorganized Debtor for filing the Motion in this
> case, appearing before the Court at two (2) hearings and filing post-
> hearing submissions with the Court, all in defense of NLG's

improperly filed and violative cross-claim in the Foreclosure
Action.

ECF 780 at 10.

It is undisputed that the attorney's fee award has not been satisfied as NLG has disputed

the amount. However, the Court has, contemporaneously herewith, denied NLG's motion for relief

from the sanctions order, and Hazan is now entitled to a judgment for the attorney's fees awarded.

A recorded final judgment is necessary for a party to avail itself of post-judgment execution

methods under Florida law. *See* Florida Rule of Civil Procedure 1.550 ("No execution or other

final process shall issue until the judgment on which it is based has been recorded…"); *see also*

Federal Rule of Civil Procedure 69(a) ("The procedure on execution--and in proceedings

supplementary to and in aid of judgment or execution--must accord with the procedure of the state

where the court is located…"). Accordingly, the Court finds that its order may be enforced by

entry of a judgment of record.  It is therefor

ORDERED and ADJUDGED that the Reorganized Debtor's Motion for Entry of Final

Judgment [ECF 796] is GRANTED and the Debtor is directed to submit for entry a proposed Final

Judgment awarding $9,500.00 in favor of Liza Hazan a/k/a Elizabeth Hazan who resides at 6913

Valencia Drive Miami (Fisher Island), FL 33109 and against NLG, LLC of 854 Pheasant Run

Road, West Chester, Pennsylvania 19382 and Juan Ramirez, Esq. at 1172 S. Dixie Hwy. #341,

Coral Gables, FL 33146,  jointly and severally, for which execution may issue.

<center>###</center>

Geoffrey S. Aaronson, Esq. is directed to serve a copy of this
Order on all interested parties and to file a certificate of service.

<center>2</center>



**ORDERED in the Southern District of Florida on March 12, 2019.**

_A. Jay Cristol, Judge_
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re                                             Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                   Chapter 11
_____/

### ORDER DENYING DEBTOR'S EXPEDITED MOTION TO DEEM VOID ORDERS ENTERED IN VIOLATION OF THE AUTOMATIC STAY [ECF NO. 789]

**THIS MATTER** came before the Court for hearing on February 6, 2019 upon Debtor's

Motion to Deem Void Orders Entered in Violation of the Automatic Stay [ECF No. 789].

Debtor Hazan filed this Chapter 11 bankruptcy petition on January 11, 2016, at which time

the automatic stay imposed by 11 U.S.C. § 362 went into effect.

On February 3, 2016, the Debtor filed a Notice of Appeal to the Third District Court of

Appeal of the state court Final Judgment of Foreclosure entered by the Honorable Monica Gordo

on December 4, 2015.  *See* ECF 812 p. 13.

On February 10, 2016, NLG filed a motion to dismiss the appeal. Hazan filed a Response to the Motion to Dismiss on March 28, 2016, but apparently did not assert the automatic stay. On April 4, 2016, Hazan filed a Notice of Voluntary Dismissal of the appeal.

On April 26, 2016, the Third District Court of Appeal entered an order granting NLG's motion for attorney's fees pursuant to Fla.Stat. § 57.105 and Fla.R.App.P. 9.410. ECF 812, p. 17. On May 6, 2016, Hazan filed a Motion to Vacate Order Granting Appellee's Motion for Attorney's Fees but did not raise the issue of the automatic stay. The motion was denied on May 23, 2016.

NLG thereafter filed a motion in this Court seeking relief from the automatic stay to fix the amount of attorneys fees (ECF 475), This Court denied the motion on June 27, 2017 (ECF 500).

On June 12, 2018, this Court confirmed Hazan's Chapter 11 plan of reorganization. [ECF 691]. On December 6, 2018, the Court entered an Order Granting Motion to Reopen Case to Approve Final Report, and Enter Discharge to Reorganized Debtor [ECF 766], stating in pertinent part:

> the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

[ECF 766 at 11].

Following the Court's entry of the December 6, 2018 Discharge Order, NLG filed a motion in the state circuit court requesting that the circuit court fix the amount of fees due under the Third District's April 26, 2016 order. Hazan then filed her motion requesting this Court to deem void the April 26, 2016 order (and May 23, 2016 order confirming the April 26, 2016) due to the fact that the orders were entered while the automatic stay was in effect.

The Eleventh Circuit has held that "[i]t is the law of this Circuit that '[a]ctions taken in violation of the automatic stay are void and without effect.'" *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (quoting *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982)). Among the "actions" that are void when taken in violation of the automatic stay are "orders entered by state courts." *Jacobs v. Traditional Homes by Hernandez, Inc*., Case No. 8:11-CV-227-T-17, 2012 WL 360201, at *3 (M.D. Fla. Feb. 2, 2012) (citing *In re Clarke*, 373 B.R. 769 (Bankr. S.D. Fla. 2006)). It is clear that the April 26, 2016 and May 23, 2016 state court orders awarding attorney's fees to NLG were entered after the automatic stay went into effect on January 11, 2016.

However, by her actions, this Court believes the Debtor waived her right to complain about the entry of the orders as alleged violations of the automatic stay. *See Am. Online, Inc. v. Uhrig (In re Uhrig)*, 306 B.R. 687, 694-95 (Bankr. M.D. Fla. 2004); *see also In re Cobb*, 88 B.R. 119, 121 (Bankr. W.D.Tx. 1988)("When the [Debtor] appears and defends a suit on any basis other than application of the automatic stay, then the [Debtor] waives the automatic stay. To hold otherwise would allow a [Debtor] to have trump card that he could play if he did not like the outcome of the action, but allowing him take a favorable judgment.") The Debtor did not simply appear in the appellate action to raise or defend the automatic stay, but rather knowingly and voluntarily initiated the appeal. Hazan eventually filed a notice of voluntary dismissal of the appeal; but, the Third District Court of Appeal determined that the appeal was sanctionable under Fla.Stat. §57.105 and Fla.R.App.P. 9.410, and entered an order accordingly, seemingly unaware of the automatic stay.

The automatic stay has a dual purpose: it temporarily relieves the debtor of financial hardship and collection activity while simultaneously preventing creditors from improving their

positions relative to one another. *See Winters by & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133, 135 (4th Cir. 1996); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982); *Commerzanstalt v. Telewide Sys.*, 790 F.2d 206, 207 (2d Cir. 1986); *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir. 1993); H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97. Thus, "section 362 is a shield, not a sword." *Winters*, 94 F.3d at 136. *Capgro Leasing* recognizes the dual purpose, *see In re Capgro Leasing Assocs., 169 B.R. 305, 310 (Bankr. E.D.N.Y. 1994),* and states that "because the stay is not solely for the debtor's protection, a debtor may neither unilaterally waive nor limit the scope of the automatic stay." *Id.*; *see also Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). A Chapter 11 debtor is not just "a debtor" when granted the powers and responsibilities of a trustee under § 323; he or she is a fiduciary for all creditors.

"It goes without saying that once a trustee or debtor-in-possession unilaterally waives the protections of the automatic stay by proceeding with estate administration, he cannot contend that a creditor-appellee has violated the automatic stay by opposing the appeal he himself has initiated and prosecuted." *In re Mid-City Parking*, 332 B.R. at 814. The debtor-in-possession is estopped from asserting the stay against a creditor-appellee once it has initiated an appeal in the face of §362(a). *See In re Horkins*, 153 B.R. 793, 799 (Bankr. M.D. Tenn. 1992); *cf. In re Cobb*, 88 B.R. 119, 121 (Bankr. W.D. Tex. 1988). In this case, Hazan took affirmative action by filing a notice of appeal, thereby waiving the protections of the automatic stay. Therefore, the Court is not inclined to deem void the orders entered by the Third District Court of Appeals awarding fees against her, post-petition.

Notwithstanding any resulting claim which may arise from the orders as against the Debtor, such claim did not survive this case, regardless of amount. No claim was filed for said fees – administrative or otherwise, and the fees awarded against Hazan are therefore deemed discharged as the Reorganized Debtor has been discharged from any debt that arose before the date of the plan confirmation pursuant to 11 U.S.C. § 1141(d). It is accordingly

**ORDERED** and **ADJUDGED** that the Debtor's Motion to Deem Void Orders Entered in Violation of the Automatic Stay is DENIED.

###

Copies furnished to:

Debtor
Geoffrey S. Aronson, Esq.
Juan Ramirez, Jr., Esq.
Astrid Gabbe, Esq.
AUST



**ORDERED in the Southern District of Florida on March 12, 2019.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                    CASE NO. 16-10389-BKC-AJC

LIZA HAZAN                                                Chapter 11
a/k/a ELIZABETH HAZAN,

      Debtor.

_____/

### ORDER DENYING EXPEDITED MOTION FOR CONTEMPT AND SANCTIONS

THIS CAUSE came before the Court for hearing on February 6, 2019 upon the Debtor's

Expedited Motion for Contempt and to Impose Additional Sanctions (ECF 787). The motion seeks

additional sanctions for attorneys fees against NLG for its pursuit of a debt, to wit, state court

appellate attorney's fees in favor of NLG, which the Debtor asserts were discharged by the Order

confirming the Chapter 11 Plan in this case. The motion further seeks sanctions for NLG and its

attorney's failure to dismiss its crossclaim in the state court foreclosure case; the parties withdrew

their crossclaim instead. Finally, the Debtor seeks sanctions for NLG and its attorney's failure to

pay the prior sanction award. Upon consideration, the Court denies the motion.

First, NLG and its attorney did not pay the prior sanction award because they disputed the amount of the award and filed a motion to reconsider. The Debtor argues the motion to reconsider was belatedly filed, but NLG and its attorney contend it was timely filed under Rule 60(b) and that is the reason they did not tender any sanction award. The Court has, contemporaneously herewith, entered an order denying reconsideration of and/or relief from the prior sanction award, but believes that the failure to pay the sanction award, while a motion for relief from the sanction is pending, is not a valid basis upon which to impose additional sanctions.

Second, Debtor seeks sanctions because NLG, through his attorney, withdrew their crossclaim, rather than dismissed their crossclaim. The Debtor argues that withdrawal does not invalidate the lis pendens, while NLG and Attorney Ramirez argue otherwise. The Court does not find this disagreement to be a basis for sanctions as the Court directed the dismissal or withdrawal of the lis pendens. Importantly, at the hearing, NLG's attorney stated he did not know what the problem is with their withdrawal, but nonetheless offered Debtor's counsel to draft any notice of dismissal or withdrawal of the crossclaim that he felt complied with this Court's Contempt Order and stated he would file same in an effort to comply with the Contempt Order. Based on counsel's withdrawal and subsequent statement of willingness to file a form of a notice of dismissal or withdrawal of the crossclaim that the Debtor's attorney proposes, the Court finds no grounds for contempt.

Lastly, the Debtor seeks sanctions for NLG's pursuit of attorneys fees against the Debtor in state court. The Debtor argues that any fees allegedly owed were discharged by the Confirmation Order which specifically awards administrative fees for post-petition fees incurred by all claimants. The Court agrees with the Debtor that the language of the Confirmation Order required any

administrative claims, including these post petition fees, to be filed prior to confirmation of the plan or forever be discharged by the Confirmation Order. Although the Court did not void the Order of the Third District Court of Appeals finding NLG entitled to attorneys fees under Fla. Stat. §57.105, the Court nonetheless determines that pursuit of those fees after confirmation of the Chapter 11 Plan is prohibited by the Confirmation Order. Notwithstanding the fact that NLG set a hearing to determine the amount of such [discharged] fees, no hearing has proceeded, and the Court finds no additional sanctions are warranted. It is

ORDERED AND ADJUDGED that the Expedited Motion for Contempt and to Impose Additional Sanctions (ECF 787) is DENIED.

### 

Copies furnished to:

Geoffrey Aaronson, Esq.
Juan Ramirez, Esq.



**ORDERED in the Southern District of Florida on March 15, 2019.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                         Chapter 11

        Debtor.
_____/

## **FINAL JUDGMENT**

Pursuant to Order Granting Motion for Entry of Final Judgment [ECF 821 in this case] Judgment is entered in favor of LIZA HAZAN a/k/a ELIZABETH HAZAN, whose address is 6913 Valencia Drive Miami (Fisher Island), FL 33109 against NLG, LLC, whose address is 854 Pheasant Run Road, West Chester, Pennsylvania 19382 and JUAN RAMIREZ, Esq. at 1172 S. Dixie Hwy. #341, Coral Gables, FL 33146, jointly and severally, in the amount of $9,500.00 plus post judgment interest from this date at the rate prescribed by 28 U.S.C. § 1961, for which let execution issue.

###

*CASE NO.: 16-10389-AJC*

Geoffrey S. Aaronson, Esq. is directed to serve a copy of this
Order on all interested parties and to file a certificate of service.

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

      Debtor,

_____/

## NLG LLC'S MOTION FOR STAY OF JUDGMENT PENDING APPEAL

     NLG, LLC ("NLG"), through undersigned counsel, files this Motion for Stay of the Judgment Pending Appeal, pursuant to Bankruptcy Rules 8007 and 8011, and Local Bankruptcy Rule 8007-1 and Federal Rule of Civil Procedure 62 as incorporated by Bankruptcy Rules 7062 and respectfully states:

    1. On March 15, 2019, the Bankruptcy Court entered a Final Judgment. [ECF No. 825] for $9,500 in favor of Debtor Hazan against NLG and Counsel Ramirez.

    2. NLG and Counsel Ramirez plan to file an appeal of this Final Judgment and the time to file such appeal will not expire until April 1, 2019.

    3. NLG and Counsel Ramirez move this Court for a waiver of the bond because neither NLG nor Counsel Ramirez are a collection risk or in the alternative an order allowing them to post the $9,500 directly with the Bankruptcy Clerk.

    4. The Final Judgment is automatically stayed until April 1, 2019 per Bankruptcy Rule 7062.

    5. However, Counsel Ramirez left to New York City for surgery and cannot return to Miami until April 8, 2019 per his doctor's orders.

    6. NLG and Counsel Ramirez respectfully requests a hearing on this Motion after April 8, 2019, the date on which Counsel Ramirez returns from New York from his surgery, that no

NLG, LLC's Motion for Stay of Judgment Pending Appeal
Case No. 16-10389-AJC
Page 2 of 3

execution occur in this gap period between April 2, 2019 and the date of hearing and that the stay

currently in place continues until the hearing and order entered on this Motion.

7.   Counsel for Debtor Hazan has advised undersigned counsel that Hazan does not consent

to this stay.   Debtor Hazan has also advised that she does not consent to the waiver of the

security and does not consent to the entry of an order for the bankruptcy clerk to accept $9,500

as security for the payment of the judgment while the appeal is pending.

**WHEREFORE**, for the reasons set forth above, NLG and Counsel Ramirez respectfully

requests that the Court grant the Motion for Stay of Judgment Pending Appeal, waive the

security requirement or in the alternative enter an order allowing NLG to deposit $9,500 directly

with the bankruptcy clerk, stay the March 15, 2019 Final Judgment pending adjudication of this

Motion and the appeal and grant such other and further relief as the Court deems appropriate.

March 19, 2019.

Respectfully submitted,

**Attorneys for NLG, LLC**

| | |
|---|---|
| Juan Ramirez, Jr. | Astrid E. Gabbe |
| ADR Miami LLC | The Law Office of Astrid E. Gabbe, P.A. |
| Florida Bar No. 201952 | Florida Bar No. 635383 |
| ADR Miami LLC | P.O. Box 4216 |
| 1172 S. Dixie Hwy. #341 | Hollywood, FL 33083 |
| Coral Gables, FL 33146 | Tel. (954) 303-9882 |
| (305) 667-6609 | Fax. (954) 983-1427 |
| jr@adrmiami.com | astridgabbe@gmail.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of foregoing was served via CM/ECF,

email or U.S. Mail to the parties on the attached service list as indicated on this 19th day of

March 2018.

NLG, LLC's Motion for Stay of Judgment Pending Appeal
Case No. 16-10389-AJC
Page 3 of 3

/s/ Astrid E. Gabbe

The Law Office of Astrid E. Gabbe, P.A.

Florida Bar No. 635383

P.O. Box 4216

Hollywood, FL 33083

Tel. (954) 303-9882

Fax. (954) 983-1427

astridgabbe@gmail.com

*Attorneys for NLG, LLC*

## **SERVICE LIST**

**Via CM/ECF/Email**

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com; mg197ecfbox@gmail.com; sleary@msglaw.com

David W. Langley on behalf of Plaintiff and Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Daniel A. Bushell on behalf of Plaintiffs Selective Advisors Group, LLC and Liza Hazan
dan@bushellappellatelaw.com

Juan Ramirez, Jr. Esq. on behalf of Defendant and Counter-Claim Plaintiff NLG, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                               Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                     Chapter 11
_____/

## SECURED CREDITOR NLG, LLG'S
## MOTION TO COMPEL TIMELY, LEGIBLE AND COMPLETE POST
## CONFIRMATION QUARTERLY OPERATING REPORTS
## AND COMPLIANCE GOING FORWARD

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, in accordance with

Rule 2015 of the Federal Rules of Bankruptcy Procedure and the Chapter 11 Guidelines and

Reporting Requirements (revised January 8, 2018 and published by the United States

Department of Justice and the United States Trustee Region 21), moves to compel timely, legible

and complete post confirmation quarterly operating reports and compliance going forward in this

individual Chapter 11. In support, NLG states:

1.      This Court confirmed the Debtor's Plan on June 12, 2018. [*See* ECF No. 691].

2.      The last monthly operating report filed by the Debtor was for the reporting period

of June 2018.  The report was filed late on July 26, 2018.  The report also failed to attach the

Debtor's DIP bank account statement for her City National Bank account.  As such, the Debtor is

required to file an amended and complete monthly operating report for the June 2018.

3.      The debtor has also failed to file any post confirmation quarterly reports.  The

Court should compel the debtor to file the quarterly reports immediately and compel compliance

going forward.

4.      A review of the Debtor's monthly operating reports that the debtor has purchased

in excess of $100,000 worth of counter checks from the DIP account at BB&T bank.  Because

counter checks are specifically prohibited, the Court should compel the debtor to account for all the counter checks and/or return the money to the estate which was pilfered through the counter checks.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Court should compel timely, legible and complete quarterly reports for the third and fourth quarter of 2018, and thereafter; an amended monthly operating report, including debtor in possession bank statements for the June 2018 period and grant such other and further relief as the Court deems appropriate.

Dated March 19, 2019

## **CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 19th day of March, 2019. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882

Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

### *Served via CM/ECF*

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.

ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Daniel A. Bushell on behalf of Selective Advisors Group, LLC and Liza Hazan
dan@bushellappellatelaw.com

Kevin Christopher Gleason on behalf of Liza Hazan and Selective Advisors Group, LLC
KGPAECMF@aol.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In Re:

LIZA HAZAN a/k/a ELIZABETH HAZAN,                    Case No. 16-10389-AJC
                                                      Chapter 11

        Debtor,

_____/

**HAZAN'S RESPONSE IN OPPOSITION TO NON CREDITOR NLG, LLC'S SECOND
IDENTICAL PREVIOUSLY DENIED MOTION TO COMPEL TIMELY, LEGIBLE
AND COMPLETE OPERATING REPORT FOR JUNE 2018 AND POST CONFIRMA-
TION MONTHLY OPERATING REPORTS AND COMPLIANCE GOING FORWARD
[ECF No. 828] AND MOTION FOR SANCTIONS AGAINST NON CREDITOR NLG,
LLC AND ITS COUNSELS ASTRID GABBE AND JUAN RAMIREZ JR**

      Reorganized Discharged Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Hazan" or "Reor-

ganized Discharged Debtor"), by and through her undersigned counsel, hereby files her Re-

sponse in opposition to NLG, LLC's[1] second identical previously denied *Motion to Compel*

*Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly*

*Operating Report Going Forward* (the "Motion to Compel") [ECF No. 828], and moves this

Court for an Order awarding sanctions, damages, punitive damages, costs, attorney's fees, and

other relief, against non creditor NLG, LLC and its attorneys Astrid Gabbe and Juan Ramirez Jr

and respectfully avers as follows:

_____

[1] NLG includes a self-serving and false title of "secured creditor" to bolster its meritless paper.
In the Adversary Proceeding this Court previously found that NLG does not have any claim
against the Hazan or estate property, secured or otherwise, and NLG lacks standing in Hazan's
case – which would include the instant second Motion to Compel which same Motion to compel
[ECF No. 773] was previously denied by the court [D.E. 785].

**Introduction**

NLG is an entity without standing in Hazan's Bankruptcy Case following a trial in the Adversary case 16-01439-AJC (the "Adversary Proceeding" or "A.P.") held in July of 2017 before this Court which found that NLG lacks standing and does not have a claim. NLG did not obtain a stay pending appeal of that judgment and this Court and the Court on appeal have denied such stay [ECF No. 308] [ECF No. 354] [ECF No. 356] [ECF No. 357] in Adv. case 16-01439-AJC. As the judgment was unstayed, this Bankruptcy Court confirmed Hazan's plan, entered her discharge, and administratively closed her bankruptcy case on June 13, 2018 [ECF No.

. NLG, despite not having standing in the case, seeks to compel Hazan for the second time and after its first identical *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Report Going Forward* [ECF 773] filed on December 17, 2018 was denied by this Honorable Court on December [D.E. 785] on January 2, 2019, to perform tasks which all actual parties that have standing in this case are satisfied with and which are not required. Moreover NLG never appealed or moved for rehearing of the Order Denying Motion To Compel [D.E. 785]. Accordingly, NLG's only interest at this stage is causing unnecessary expense, emotional distress and unlimited attorney fees to Reorganized Discharged Debtor Ms Hazan and this Court should once again deny the second Motion to Compel with prejudice and award Hazan sanctions, attorney fees and costs and punitive damages against NLG and its attorney Astrid Gabbe.

**Factual Background**

**I.**   ***NLG Lacks Standing in the Reorganized Discharged Debtor's Bankruptcy Case to Advance its Motion to Compel or any matter.***

1.      On August 21, 2016, the Appellee commenced the Adversary Proceeding, case No. 16-01439-AJC, (the "Adversary Proceeding" or "A.P.") against NLG, LLC.  (BK A.P. ECF 1).

2.      In her Third Amended Complaint (January 3, 2017), Ms. Hazan brought three causes of action to resolve NLG's assertion of rights regarding her property: (i) Count I – to determine the extent, validity, and priority of Appellant's claim of alleged lien; (ii) Count II – to avoid Appellant's alleged security interest pursuant to § 544; and (iii) to Quiet Title (the "Counts") (BK A.P. ECF 48).

3.      The Court conducted a trial in the Adversary Proceeding on July 13, 2017.  (BK A.P. ECF 188).

4.      Following the trial, on November 1, 2017, the Bankruptcy Court entered the Final Judgment on Counts I, II and III in favor of Plaintiff Hazan and co-plaintiff Selective Advisors, LLC.  ("the Unstayed Final judgment") (BK A.P. ECF 238).

5.      The Unstayed Final Judgment provides, in relevant part:

   a.      "NLG's Proof of Claim #17, having been filed after the bar date, it is dis-allowed and the Court finds that **NLG has no standing in this case** based upon the Note, Mortgage, claim or lien emanating therefrom." *Id.* at p. 13 (emphasis added).

   b.      "NLG, LLC's judgment on the promissory note, the Scola Judgment, rec-orded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:
LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 ac-cording to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF REC-
ORD**, and Debtor has good title to said Property against the claims or pur-
ported claims by, through, under, or against it by NLG, LLC and **the title
to the Property is forever quieted as to all claims of NLG, LLC**."

      c.      "**NLG's Proof of Claim #17 is disallowed** and **NLG, LLC has no claim
against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the
Note, Mortgage or any court order**." *Id.* at p. 14.

**II.**     *Hazan confirmed a Plan of Reorganization, administratively closed the case, reo-
pened the case, and received her discharge.*

6.      Based on the Judgment, the Reorganized Debtor proceeded to plan confirmation.
On November 15, 2017, she filed her Fifth Amended Disclosure Statement (the "Disclo-
sure Statement") (B.K. M.C. C.P. 562) and Fourth Amended Plan of Reorganization (the
"Plan") (B.K. M.C. C.P. 563).

7.      At the Confirmation Hearing on the Plan the Court noted that the Unstayed Final
Judgment remained unstayed. (BK M.C. C.P. 707 at pp. 6 - 8):

      **THE COURT: Mr. Ramirez, do you agree there is no
stay?**

      **MR. RAMIREZ: There is no stay, Judge.**

      **THE COURT: Okay.**

      **MR. RAMIREZ: But I just want to correct that it's not
the law of the case until the appellate case is decided.**

      **THE COURT: Well, but if something happens in the in-
terim, it may moot out the appeal, that's why it makes a
big difference. If there's a stay, then nothing can happen
until that matter is decided, but if there is no stay and
things go along a track to where they're not reversible,
then it possibly or probably would moot the issue**

8.      On June 12, 2018, the Bankruptcy Court entered the Confirmation Order (BK
M.C. ECF No. 691).

9.      On June 13, 2018, the Bankruptcy Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 case. (B.K. M.C. ECF No. 692).

10.     On July 10, 2018 Thereafter, Hazan filed her Amended Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a Final Decree and to re-close the case [ECF No. 713] (the "Reopen and Discharge Motion").

11.     All NLG's Motions to Stay the Final Judgment in favor of Hazan and against NLG were denied in this Court and in the Appeal Court [ECF No. 308] [ECF No. 354] [ECF No. 356] [ECF No. 357] in Adv. case 16-01439-AJC.

12.     On December 7, 2018, this Court entered the Order granting the Reopen and Discharge Motion [ECF No. 766] (the "Discharge Order") which, among other things, granted Hazan a discharge and reopened the bankruptcy case "for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order" and "pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing this case."

13.     After entry of the Discharge Order, NLG filed its Motion to Compel which seeks, among other things, to require Hazan to complete post-confirmation reports although the case was administratively closed and no reports from July to November would have been due and she has obtained her discharge and filing financial reports when prepetition property has revested into Hazan and Hazan has been discharged.

14.     Non creditor NLG has no claim and is just continuing a pattern of never ending wasteful litigation and causing endless grief and unlimited attorney fees to Ms Hazan.

***III. The Court has already ruled on the same issue [D.E 785] and NLG is barred by res juricata or collateral estoppel,***

15.     On January 2, 2019 the court entered a Final Order Denying Motion to Compel. [D.E. 785]. This Order was never appealed by NLG and NLG never moved for rehearing of the Final Order Denying Motion to Compel, therefore The Final Order Denying Motion to Compel [D.E. 785] is final and non appealable. The Court ruled as follows: **THIS MATTER** came before the Court upon the Motion to Compel Timely, Legible, and

*Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773). The Court has reviewed the Motion, as modified by movant at the hearing on the motion held December 27, 2018, and **finds it is not only without merit, but is moot**. **The Chapter 11 Plan having been confirmed, the case having been administratively closed, and the Debtor having now received a discharg**e, it is

ORDERED AND ADJUDGED **that the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going***

***Forward* (ECF 773) is DENIED**.

16.     Moreover the United States Trustee Ms Johanna Armengol who was asked by NLG to join in this new Motion to compel responded by email on February 25, 2019 stating "Dear all –

**In light of Order at ECF 785**, which we understand **is final and non-appealable**, **the United States Trustee will abide by the Court's ruling** and **will not seek to require Ms. Hazan to file Post-Confirmation Quarterly Reports**."

<div align="center">

**Argument**

</div>

17.     Standing cannot be waived and may be raised at any time. *See, e.g., Eldorado Canyon Prop., LLC v. JPMorgan Chase Bank, N.A. (In re Eldorado Canyon Prop., LLC)*, 505 B.R. 598, 599-600 (B.A.P. 1st Cir. 2014).

18.     Simply put, NLG does not have standing in this case, as established by the Un-stayed Final Judgment, and this Court should not entertain further drains on Ms Hazan' resources with this most frivolous recent motion.

19.     Prior to the case being closed Hazan filed the requisite reports with associated documents and the US Trustee confirmed same at the Confirmation Hearing.  No objections or issues, other than by NLG, have been raised by any actual creditor or party with standing.[2]

20.     Further, while the case was administratively closed a reorganized debtor is excused from making payments to the US Trustee which in turn excuses the reorganized debtor from the costs associated with preparing reports.  *In re Mendez*, 464 B.R. 63, 65 (Bankr. D. Mass. 2011) (finding that the Court has the authority under §105 of the Bankruptcy Code to administratively close as a case which includes the cessation of fees). Moreover, here the Reorganized Discharged Debtor obtained her discharge and the case has been fully administered so that continuing confirmation reports are no longer required.  Further, as set forth in the Reopen and Discharge Order the case was reopened for the limited purpose of resolving the pending motions to hold NLG, Chris Kosachuk and NLG's attorneys Juan Ramirez and Astrid Gabbe in contempt of court for violating the final Judgment, the confirmation order (pending motions would not include NLG's Motion to Compel which was filed later) and adversary proceeding which was filed after the entry for the discharge order.  Post-conformation reports or quarterly reports were not included in the Order.  This case is fully administered and Ms Hazan is discharged.

---

[2] In an attempt to find any argument NLG raises an issue regarding a Citi National Bank account.  Such account reflects no activity for the period of June. see attached as **Exhibit "A"** Hazan's City National Bank account closed on June 7, 2018 and showing no activity for the month of June 2018 and which was also previously attached as exhibit "A" at [D.E. 777] as a response to the same Motion to compel [D.E.773].

21.     Finally, in NLG's Motion to Compel it attempts to enforce its interpretation of the US Trustee's guidelines regarding checks.  Motion to Compel at ¶4.  Only the United States Trustee is responsible for enforcing its guidelines (and a non-party such as NLG surely does not have standing to do so). And the United States Trustee reviewed the checks issued by Hazan and supported confirmation of her plan of reorganization:

In addition, Your Honor, we have reviewed all the payments and the checks that Ms. Hazan has with her, and we can confirm that she has all of those, in addition to unpaid taxes that she paid for 2016 and 2017, which was an issue we had raised at prior hearings.  So with that, Your Honor, we have no objection to confirmation.

[Transcript of May 30, 2018 Confirmation Hearing ECF No. 707 at p. 10]

22.     Therefore, the United States Trustee has concluded that Hazan's checks complied under its guidelines and NLG has neither the authority nor any basis for arguing otherwise. In fact, the United States Trustee accepted cashier's checks from the reorganized and discharged debtor.  The cashier checks NLG complains of are similar to those accepted by the US Trustee.

23.     On January 2, 2019 the court entered a Final Order Denying Motion to Compel. [D.E. 785]. This Order was never appealed by NLG therefore it is final and non appealable. **THIS MATTER** came before the Court upon the Motion to Compel Timely, Legible, and

*Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773). The Court has reviewed the Motion, as modified by movant at the hearing on the motion held December 27, 2018, and finds it is not only without merit, but is moot. The Chapter 11 Plan having been confirmed, the case having been administratively closed, and the Debtor having now received a discharge, it is

ORDERED AND ADJUDGED that **the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going***

*Forward* (ECF 773) is **DENIED**.

24.     Res judicata, collateral estoppel and the law of the case are three distinct but related court-created rules designed to **promote judicial efficiency and systemic consistency**. The Eleventh Circuit has laid out the test for each rule and the distinctions between them.

25.     Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, **then the judgment bars litigation not only of "every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented."** ... **[W]e refer to this strand of former adjudication as "claim preclusion."** ... If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." ... We refer to this strand of former adjudication as "issue preclusion." …

26.     Closely related to the doctrines of claim and issue preclusion is the doctrine of "law of the case." This is a rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case."     ... While the law of the case does not bar litigation of issues "which might have been decided but were not,"... it does require a court to follow what has been

decided explicitly, as well as by necessary implication, in an earlier proceeding, ... The distinction between law of the case and claim preclusion is that the former bars relitigation of legal rules while the latter bars relitigation of claims (i.e., legal rules applied to the facts of the case). In addition, law of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding, while claim preclusion bars relitigation not only of claims raised but also claims that could have been raised. ... Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases.Wallis v. Justice Oaks II, Ltd., (In re Justice Oaks II, Ltd.), 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (citations omitted) (emphasis in original). NLG is permanently barred from requesting the reorganized and discharged Debtor to request this Court to compel her to filing monthly reports.

27.    Accordingly, NLG's second Motion to Compel should be once again denied with prejudice.

WHEREFORE, Reorganized Discharged Debtor Hazan respectfully requests this Court enter an order denying NLG, LLC's Motion to Compel *Post Confirmation Quaterly Operating Reports* [ECF No. 828] with prejudice, and entering an Order awarding Hazan all attorney fees and costs, sanctions and punitive damages against NLG and its counsels Astrid Gabbe and Juan Ramirez JR, for bringing once again a meritless frivolous Motion that was previously ruled upon denied by this court and never appealed by NLG and after being warned by the US Trustee that NLG must abide by the Judge Final Non Appealable Order [D.E. No. 785] denying NLG's *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confir-*

*mation Monthly Operating Report Going Forward* [D.E. 773]; and granting such other and fur-

ther relief as the Court deems appropriate just and proper.

### CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the

Southern District of Florida and I am in compliance with the additional qualifications to practice

in this court set forth in Local Rules 2090-1(A).

March 20, 2019

<div style="margin-left:40%">

Respectfully submitted,


By:   Joel M. Aresty, P.A.
Attorneys for Reorganized Discharged Debtor Liza
Hazan a/k/a Elizabeth Hazan
309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq
Fla. Bar No. 197483

</div>

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20 day of March, 2019, I electronically filed this

document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is

being served this day on all counsel of record or pro se parties identified on the attached Service

List in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Filing.

By: <u>Joel M. Aresty, P.A.</u>
Attorneys for Reorganized Discharged
Debtor Liza Hazan a/k/a Elizabeth Hazan
309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
Aresty@Mac.com
<u>By:/s/ Joel M. Aresty, Esq</u>
Fla. Bar No. 197483



**City National Bank**

Bci FINANCIAL GROUP

P:199 / T: / S:



LIZA HAZAN
DEBTOR IN POSSESSION
CASE 16-10389-AJC
6913 VALENCIA DR
MIAMI BEACH FL 33109-0001

Page:           1 of 1
Account:        XICXXX4508

**Client Service**

Online                CityTel
citynational.com      305-305-0441;
                      1-800-462-0232 (5855)

Your Banking Center   Telephone
Brickell              305-371-5030
1450 Brickell Ave., Suite 300   800-435-8836
Miami, FL 33131

West Banking Center Hours
Lobby    Monday - Thursday   8.30am - 4.00pm

For additional locations      Member
and hours, please visit       FDIC
citynational.com



## Bankruptcy

### Account Summary

| Account: | XXXXXX4508 | Beginning Balance: | -$15.38 |
| Last Statement: | May 31, 2018 | Ending Balance: | $0.00 |
| This Statement: | June 8, 2018 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|------|-------------|---------------------|---------------------------|---------|
| | | | | -15.38 |
| 05-31 | Beginning balance | | | 0.00 |
| 06-07 | Refund Monthly Maintenance Fee | 15.38 | | 0.00 |
| 06-07 | Closing Transaction | | 0.00 | 0.00 |
| 06-08 | Ending totals | 15.38 | 0.00 | |

## LET US HELP PROTECT YOU AND YOUR BUSINESS.

City National Bank is offering a free service to help you protect yourself from online fraudsters. With Trusteer Rapport, you get an extra layer of security.

Trusteer is easy to download and easy to use. Just visit citynational.com and visit our Online Services page.



INTRODUCING MONEY MANAGEMENT

Login to online banking and look for MONEY MANAGEMENT



# City National Bank
Bci FINANCIAL GROUP

Page: 1 of 1
Account: XXXXXX4508

## Client Service

 Online
citynational.com

 CityTel
305-305-5 v5/5290
1-800-Az-2132-220/6

Your Banking Center          Telephone
Brickell                     305-371-5360
1450 Brickell Ave., Suite 100   800-635-8835
Miami, FL 33131

Your Banking Center Hours
Lobby.    Monday - Thursday.   8.30am - 4.00pm
          Friday.              8.30am - 6.00pm

For additional locations and hours, please visit citynational.com

Member FDIC    EQUAL HOUSING LENDER

LISA HAZAN
DEBTOR IN POSSESSION
CASE 16-10389-AJC
6913 VALENCIA DR
MIAMI BEACH FL 33100-0601

P:199 / T: / S:

## Bankruptcy

### Account Summary

| Account: | XXXXXX4508 | Beginning Balance: | -$15.38 |
|---|---|---|---|
| Last Statement: | May 31, 2018 | Ending Balance: | $0.00 |
| This Statement: | June 8, 2018 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| 05-31 | Beginning balance | | | -15.38 |
| 06-07 | Refund Monthly Maintenance Fee | 15.38 | | 0.00 |
| 06-07 | Closing Transaction | | 0.00 | 0.00 |
| 06-08 | Ending totals | 15.38 | 0.00 | 0.00 |



## LET US HELP PROTECT YOU AND YOUR BUSINESS.

City National Bank is offering a free service to help you protect yourself from online fraudsters. With Trusteer Rapport, you get an extra layer of security.

Trusteer is easy to download and easy to use. Just visit citynational.com and visit our Online Services page.



INTRODUCING MONEY MANAGEMENT

Login to online banking and look for MONEY MANAGEMENT

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In Re:

LIZA HAZAN a/k/a ELIZABETH HAZAN,     Case No. 16-10389-AJC
                                       Chapter 11

     Debtor,

_____/


**HAZAN'S RESPONSE IN OPPOSITION TO NON CREDITOR NLG, LLC'S SECOND
IDENTICAL PREVIOUSLY DENIED MOTION TO COMPEL TIMELY, LEGIBLE
AND COMPLETE OPERATING REPORT FOR JUNE 2018 AND POST CONFIRMA-
TION MONTHLY OPERATING REPORTS AND COMPLIANCE GOING FORWARD
[ECF No. 828] AND MOTION FOR SANCTIONS AGAINST NON CREDITOR NLG,
LLC AND ITS COUNSELS ASTRID GABBE AND JUAN RAMIREZ JR**

Reorganized Discharged Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Hazan" or "Reor-

ganized Discharged Debtor"), by and through her undersigned counsel, hereby files her Re-

sponse in opposition to NLG, LLC's[1] second identical previously denied *Motion to Compel*

*Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly*

*Operating Report Going Forward* (the "Motion to Compel") [ECF No. 828], and moves this

Court for an Order awarding sanctions, damages, punitive damages, costs, attorney's fees, and

other relief, against non creditor NLG, LLC and its attorneys Astrid Gabbe and Juan Ramirez Jr

and respectfully avers as follows:

_____

[1] NLG includes a self-serving and false title of "secured creditor" to bolster its meritless paper.
In the Adversary Proceeding this Court previously found that NLG does not have any claim
against the Hazan or estate property, secured or otherwise, and NLG lacks standing in Hazan's
case – which would include the instant second Motion to Compel which same Motion to compel
[ECF No. 773] was previously denied by the court [D.E. 785].

## Introduction

NLG is an entity without standing in Hazan's Bankruptcy Case following a trial in the Adversary case 16-01439-AJC (the "Adversary Proceeding" or "A.P.") held in July of 2017 before this Court which found that NLG lacks standing and does not have a claim. NLG did not obtain a stay pending appeal of that judgment and this Court and the Court on appeal have denied such stay [ECF No. 308] [ECF No. 354] [ECF No. 356] [ECF No. 357] in Adv. case 16-01439-AJC. As the judgment was unstayed, this Bankruptcy Court confirmed Hazan's plan, entered her discharge, and administratively closed her bankruptcy case on June 13, 2018 [ECF No. . NLG, despite not having standing in the case, seeks to compel Hazan for the second time and after its first identical *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Report Going Forward* [ECF 773] filed on December 17, 2018 was denied by this Honorable Court on December [D.E. 785] on January 2, 2019, to perform tasks which all actual parties that have standing in this case are satisfied with and which are not required. Moreover NLG never appealed or moved for rehearing of the Order Denying Motion To Compel [D.E. 785]. Accordingly, NLG's only interest at this stage is causing unnecessary expense, emotional distress and unlimited attorney fees to Reorganized Discharged Debtor Ms Hazan and this Court should once again deny the second Motion to Compel with prejudice and award Hazan sanctions, attorney fees and costs and punitive damages against NLG and its attorney Astrid Gabbe.

## Factual Background

**I.     NLG Lacks Standing in the Reorganized Discharged Debtor's Bankruptcy Case to Advance its Motion to Compel or any matter.**

1.       On August 21, 2016, the Appellee commenced the Adversary Proceeding, case No. 16-01439-AJC, (the "Adversary Proceeding" or "A.P.") against NLG, LLC.  (BK A.P. ECF 1).

2.       In her Third Amended Complaint (January 3, 2017), Ms. Hazan brought three causes of action to resolve NLG's assertion of rights regarding her property: (i) Count I – to determine the extent, validity, and priority of Appellant's claim of alleged lien; (ii) Count II – to avoid Appellant's alleged security interest pursuant to § 544; and (iii) to Quiet Title (the "Counts") (BK A.P. ECF 48).

3.       The Court conducted a trial in the Adversary Proceeding on July 13, 2017.  (BK A.P. ECF 188).

4.       Following the trial, on November 1, 2017, the Bankruptcy Court entered the Final Judgment on Counts I, II and III in favor of Plaintiff Hazan and co-plaintiff Selective Advisors, LLC.  ("the Unstayed Final judgment") (BK A.P. ECF 238).

5.       The Unstayed Final Judgment provides, in relevant part:

    a.   "NLG's Proof of Claim #17, having been filed after the bar date, it is dis-allowed and the Court finds that **NLG has no standing in this case** based upon the Note, Mortgage, claim or lien emanating therefrom." *Id.* at p. 13 (emphasis added).

    b.   "NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:
LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF REC-ORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and **the title to the Property is forever quieted as to all claims of NLG, LLC**."

  c.  "**NLG's Proof of Claim #17 is disallowed** and **NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order**." *Id.* at p. 14.

## II.  *Hazan confirmed a Plan of Reorganization, administratively closed the case, reopened the case, and received her discharge.*

  6.  Based on the Judgment, the Reorganized Debtor proceeded to plan confirmation. On November 15, 2017, she filed her Fifth Amended Disclosure Statement (the "Disclosure Statement") (B.K. M.C. C.P. 562) and Fourth Amended Plan of Reorganization (the "Plan") (B.K. M.C. C.P. 563).

  7.  At the Confirmation Hearing on the Plan the Court noted that the Unstayed Final Judgment remained unstayed.  (BK M.C. C.P. 707 at pp. 6 - 8):

> **THE COURT:  Mr. Ramirez, do you agree there is no stay?**
>
> **MR. RAMIREZ:  There is no stay, Judge.**
>
> **THE COURT:  Okay.**
>
> **MR. RAMIREZ:  But I just want to correct that it's not the law of the case until the appellate case is decided.**
>
> **THE COURT:  Well, but if something happens in the interim, it may moot out the appeal, that's why it makes a big difference.  If there's a stay, then nothing can happen until that matter is decided, but if there is no stay and things go along a track to where they're not reversible, then it possibly or probably would moot the issue**

  8.  On June 12, 2018, the Bankruptcy Court entered the Confirmation Order (BK M.C. ECF No. 691).

9.      On June 13, 2018, the Bankruptcy Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 case. (B.K. M.C. ECF No. 692).

10.     On July 10, 2018 Thereafter, Hazan filed her Amended Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a Final Decree and to re-close the case [ECF No. 713] (the "Reopen and Discharge Motion").

11.     All NLG's Motions to Stay the Final Judgment in favor of Hazan and against NLG were denied in this Court and in the Appeal Court [ECF No. 308] [ECF No. 354] [ECF No. 356] [ECF No. 357] in Adv. case 16-01439-AJC.

12.     On December 7, 2018, this Court entered the Order granting the Reopen and Discharge Motion [ECF No. 766] (the "Discharge Order") which, among other things, granted Hazan a discharge and reopened the bankruptcy case "for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order" and "pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing this case."

13.     After entry of the Discharge Order, NLG filed its Motion to Compel which seeks, among other things, to require Hazan to complete post-confirmation reports although the case was administratively closed and no reports from July to November would have been due and she has obtained her discharge and filing financial reports when prepetition property has revested into Hazan and Hazan has been discharged.

14.     Non creditor NLG has no claim and is just continuing a pattern of never ending wasteful litigation and causing endless grief and unlimited attorney fees to Ms Hazan.

*III. The Court has already ruled on the same issue [D.E 785] and NLG is barred by res juricata or collateral estoppel,*

15.     On January 2, 2019 the court entered a Final Order Denying Motion to Compel. [D.E. 785]. This Order was never appealed by NLG and NLG never moved for rehearing of the Final Order Denying Motion to Compel, therefore The Final Order Denying Motion to Compel [D.E. 785] is final and non appealable. The Court ruled as follows: **THIS MATTER** came before the Court upon the Motion to Compel Timely, Legible, and

*Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773). The Court has reviewed the Motion, as modified by movant at the hearing on the motion held December 27, 2018, and **finds it is not only without merit, but is moot**. **The Chapter 11 Plan having been confirmed, the case having been administratively closed, and the Debtor having now received a discharg**e, it is

ORDERED AND ADJUDGED **that the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773) is DENIED**.

16.     Moreover the United States Trustee Ms Johanna Armengol who was asked by NLG to join in this new Motion to compel responded by email on February 25, 2019 stating "Dear all –

**In light of Order at ECF 785**, which we understand **is final and non-appealable**, **the United States Trustee will abide by the Court's ruling** and **will not seek to require Ms. Hazan to file Post-Confirmation Quarterly Reports.**"

### Argument

17.     Standing cannot be waived and may be raised at any time. *See, e.g., Eldorado Canyon Prop., LLC v. JPMorgan Chase Bank, N.A. (In re Eldorado Canyon Prop., LLC)*, 505 B.R. 598, 599-600 (B.A.P. 1st Cir. 2014).

18.     Simply put, NLG does not have standing in this case, as established by the Un-stayed Final Judgment, and this Court should not entertain further drains on Ms Hazan' resources with this most frivolous recent motion.

19.     Prior to the case being closed Hazan filed the requisite reports with associated documents and the US Trustee confirmed same at the Confirmation Hearing.  No objections or issues, other than by NLG, have been raised by any actual creditor or party with standing.[2]

20.     Further, while the case was administratively closed a reorganized debtor is excused from making payments to the US Trustee which in turn excuses the reorganized debtor from the costs associated with preparing reports.  *In re Mendez*, 464 B.R. 63, 65 (Bankr. D. Mass. 2011) (finding that the Court has the authority under §105 of the Bankruptcy Code to administratively close as a case which includes the cessation of fees). Moreover, here the Reorganized Discharged Debtor obtained her discharge and the case has been fully administered so that continuing confirmation reports are no longer required.  Further, as set forth in the Reopen and Discharge Order the case was reopened for the limited purpose of resolving the pending motions to hold NLG, Chris Kosachuk and NLG's attorneys Juan Ramirez and Astrid Gabbe in contempt of court for violating the final Judgment, the confirmation order (pending motions would not include NLG's Motion to Compel which was filed later) and adversary proceeding which was filed after the entry for the discharge order.  Post-conformation reports or quarterly reports were not included in the Order.  This case is fully administered and Ms Hazan is discharged.

---

[2] In an attempt to find any argument NLG raises an issue regarding a Citi National Bank account.  Such account reflects no activity for the period of June. see attached as **Exhibit "A"** Hazan's City National Bank account closed on June 7, 2018 and showing no activity for the month of June 2018 and which was also previously attached as exhibit "A" at [D.E. 777] as a response to the same Motion to compel [D.E.773].

21.     Finally, in NLG's Motion to Compel it attempts to enforce its interpretation of the US Trustee's guidelines regarding checks.  Motion to Compel at ¶4.  Only the United States Trustee is responsible for enforcing its guidelines (and a non-party such as NLG surely does not have standing to do so). And the United States Trustee reviewed the checks issued by Hazan and supported confirmation of her plan of reorganization:

> In addition, Your Honor, we have reviewed all the payments and the checks that Ms. Hazan has with her, and we can confirm that she has all of those, in addition to unpaid taxes that she paid for 2016 and 2017, which was an issue we had raised at prior hearings.  So with that, Your Honor, we have no objection to confirmation.

[Transcript of May 30, 2018 Confirmation Hearing ECF No. 707 at p. 10]

22.     Therefore, the United States Trustee has concluded that Hazan's checks complied under its guidelines and NLG has neither the authority nor any basis for arguing otherwise. In fact, the United States Trustee accepted cashier's checks from the reorganized and discharged debtor.  The cashier checks NLG complains of are similar to those accepted by the US Trustee.

23.     On January 2, 2019 the court entered a Final Order Denying Motion to Compel. [D.E. 785]. This Order was never appealed by NLG therefore it is final and non appealable. **THIS MATTER** came before the Court upon the Motion to Compel Timely, Legible, and

*Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773). The Court has reviewed the Motion, as modified by movant at the hearing on the motion held December 27, 2018, and finds it is not only without merit, but is moot. The Chapter 11 Plan having been confirmed, the case having been administratively closed, and the Debtor having now received a discharge, it is

ORDERED AND ADJUDGED that **the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going***

*Forward* (ECF 773) is **DENIED**.

24.     Res judicata, collateral estoppel and the law of the case are three distinct but related court-created rules designed to **promote judicial efficiency and systemic consistency**. The Eleventh Circuit has laid out the test for each rule and the distinctions between them.

25.     Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, **then the judgment bars litigation not only of "every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented."** ... **[W]e refer to this strand of former adjudication as "claim preclusion."** ... If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." ... We refer to this strand of former adjudication as "issue preclusion." …

26.     Closely related to the doctrines of claim and issue preclusion is the doctrine of "law of the case." This is a rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case."     ... While the law of the case does not bar litigation of issues "which might have been decided but were not,"... it does require a court to follow what has been

decided explicitly, as well as by necessary implication, in an earlier proceeding, ... The distinction between law of the case and claim preclusion is that the former bars relitigation of legal rules while the latter bars relitigation of claims (i.e., legal rules applied to the facts of the case). In addition, law of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding, while claim preclusion bars relitigation not only of claims raised but also claims that could have been raised. ... Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases.Wallis v. Justice Oaks II, Ltd., (In re Justice Oaks II, Ltd.), 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (citations omitted) (emphasis in original). NLG is permanently barred from requesting the reorganized and discharged Debtor to request this Court to compel her to filing monthly reports.

27.     Accordingly, NLG's second Motion to Compel should be once again denied with prejudice.

WHEREFORE, Reorganized Discharged Debtor Hazan respectfully requests this Court enter an order denying NLG, LLC's Motion to Compel *Post Confirmation Quaterly Operating Reports* [ECF No. 828] with prejudice, and entering an Order awarding Hazan all attorney fees and costs, sanctions and punitive damages against NLG and its counsels Astrid Gabbe and Juan Ramirez JR, for bringing once again a meritless frivolous Motion that was previously ruled upon denied by this court and never appealed by NLG and after being warned by the US Trustee that NLG must abide by the Judge Final Non Appealable Order [D.E. No. 785] denying NLG's *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confir-*

*mation Monthly Operating Report Going Forward* [D.E. 773]; and granting such other and fur-
ther relief as the Court deems appropriate just and proper.

<div align="center">

**CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)**

</div>

    I hereby certify that I am admitted to the Bar of the United States District Court for the
Southern District of Florida and I am in compliance with the additional qualifications to practice
in this court set forth in Local Rules 2090-1(A).

March 20, 2019

                        Respectfully submitted,


                        By:  <u>Joel M. Aresty, P.A.</u>
                        Attorneys for Reorganized Discharged Debtor Liza
                        Hazan a/k/a Elizabeth Hazan
                        309 1st Ave S
                        Tierra Verde, FL 33715
                        Fax: 800-559-1870
                        Phone: (305) 904-1903
                        Aresty@Mac.com
                        <u>By:/s/ Joel M. Aresty, Esq</u>
                        Fla. Bar No. 197483


<div align="center">

**<u>CERTIFICATE OF SERVICE</u>**

</div>


    **I HEREBY CERTIFY** that on this 20 day of March, 2019, I electronically filed this
document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is
being served this day on all counsel of record or pro se parties identified on the attached Service
List in the manner specified, either via transmission of Notices of Electronic Filing generated by
CM/ECF or in some other authorized manner for those counsel or parties who are not authorized
to receive electronically Notices of Filing.

<div align="center">

11

</div>

By: <u>Joel M. Aresty, P.A.</u>
Attorneys for Reorganized Discharged
Debtor Liza Hazan a/k/a Elizabeth Hazan
309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903
Aresty@Mac.com
<u>By:/s/ Joel M. Aresty, Esq</u>
Fla. Bar No. 197483

 **City National Bank**
Bci FINANCIAL GROUP

P:199 / T: / S:

Page:                                          1 of 1
Account:                               XIXXXX4508

**Client Service**

Online                              City Tel
citynational.com                    305-305-6 95-4000
                                    1-800-462-0232 (ASSIST)

Your Banking Center              Telephone
Brickell                         305-371-5000
1450 Brickell Ave., Suite 100    800-435-8836
Miami, FL 33131

West Banking Center Hours
Lobby:        Monday - Thursday:   8:30am - 4:00pm

For additional locations
and hours, please visit
citynational.com    Member
                    **FDIC**    LENDER

LIZA HAZAN
DEBTOR IN POSSESSION
CASE 16-10389-AJC
6913 VALENCIA DR
MIAMI BEACH FL 33109-0801





## Bankruptcy

### Account Summary

| Account: | XXXXXX4508 | Beginning Balance: | -$15.38 |
|---|---|---|---|
| Last Statement: | May 31, 2018 | Ending Balance: | $0.00 |
| This Statement: | June 8, 2018 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| | | | | -15.38 |
| 05-31 | Beginning balance | | | 0.00 |
| 06-07 | Refund Monthly Maintenance Fee | 15.38 | | |
| 06-07 | Closing Transaction | | 0.00 | 0.00 |
| 06-08 | Ending totals | 15.38 | 0.00 | 0.00 |

## LET US HELP PROTECT
## YOU AND YOUR BUSINESS.

City National Bank is offering a free
service to help you protect yourself
from online fraudsters. With Trusteer
Rapport, you get an extra layer of
security.

Trusteer is easy to download and easy
to use. Just visit citynational.com and
visit our Online Services page.



INTRODUCING
MONEY MANAGEMENT
Login to online banking and look for
MONEY MANAGEMENT



## City National Bank
### Bci FINANCIAL GROUP

Page:  1 of 1
Account:  XXXXX4508

**Client Service**




P:199 / T: / S:



LIZA HAZAN
DEBTOR IN POSSESSION
CASE 16-10380-AJC
6913 VALENCIA DR
MIAMI BEACH FL 33109-0601



---

## Bankruptcy

### Account Summary

| Account: | XXXXX4508 | Beginning Balance: | -$15.38 |
|---|---|---|---|
| Last Statement: | May 31, 2018 | Ending Balance: | $0.00 |
| This Statement: | June 8, 2018 | | |

### Daily Activity

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Balance |
|---|---|---|---|---|
| 05-31 | Beginning balance | | | -15.38 |
| 06-07 | Refund Monthly Maintenance Fee | 15.38 | | 0.00 |
| 06-07 | Closing Transaction | | 0.00 | 0.00 |
| 06-08 | Ending totals | 15.38 | 0.00 | 0.00 |



### LET US HELP PROTECT YOU AND YOUR BUSINESS.

City National Bank is offering a free service to help you protect yourself from online fraudsters. With Trusteer Rapport, you get an extra layer of security.

Trusteer is easy to download and easy to use. Just visit cnynational.com and visit our Online Services page.



INTRODUCING MONEY MANAGEMENT

Login to online banking and look for MONEY MANAGEMENT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                      Case No. 16-10389-AJC

LIZA HAZAN
a/k/a ELIZABETH HAZAN,                                      Chapter 11

     Debtor.

_____/

**REORGANIZED DISCHARGED DEBTOR'S EXPEDITED
MOTION FOR CONTEMPT AND TO IMPOSE SANCTIONS ON NLG,
JUAN RAMIREZ JR., CHRISTOPHER KOSACHUK, AND ASTRID GABBE**

     Reorganized Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan moves the Court for

an order finding NLG, LLC, its principal, Christopher Kosachuk, and its counsel, Juan Ramirez,

Esq. and Astrid Gabbe, Esq. in contempt for violating this Court's orders, including the Order

Granting in Part Debtor's Amended Expedited Motion for Contempt, Sanctions, Damages and

Punitive Damages [ECF NO. 780] (the First Contempt Order), Order Confirming Plan of

Reorganization [ECF NO. 691] (the Confirmation Order), Order Granting Motion to Reopen

Case to Approve Final Report and Enter Discharge to Reorganized Debtor [ECF NO. 766] (the

Discharge Order), and March 12, 2019 Order on Reorganized Discharged Debtor's Motion for

Contempt and Sanctions (the Second Contempt Order) [ECF 823]. She further requests that the

Court award attorney's fees, damages, punitive damages, and other sanctions and relief as the

Court deems appropriate.

## I.    Kosachuk and Gabbe's Violation of the Confirmation and Discharge Orders

In Paragraph 9 of the Court's June 12, 2018 Confirmation Order, the Court enjoined all creditors from taking any action to collect any prepetition debt or to enforce any lien against the debtor's property based on a prepetition claim:

> All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

[ECF 691 at 5].

In its December 7, 2018 Discharge Order, the Court found Hazan has been discharged of all debts arising prior to entry of the Confirmation Order:

> The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

[ECF 766 at 11].

In violation of the injunction in the Confirmation Order as well as the Discharge Order, Kosachuk and Gabbe have repeatedly engaged in actions to recover a prepetition debt against Hazan. On December 7, 2018, this Court entered the First Contempt Order, warning NLG and its counsel "to refrain from taking *any other action* in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June 12, 2018." ECF 780 at 9.

Precisely two weeks after his LLC and its counsel were sanctioned, Kosachuk filed *Chris Kosachuk v. 9197-5904 Quebec, Inc.*, Case No. 18-25369-MC-MOORE (S.D. Fla.), to register an Order and Final Judgment entered **on March 24, 2015**, well before Hazan filed her bankruptcy petition—and years before entry of the Confirmation Order. *See* Exhibit 1. Although the judgment names 9197-5904 Quebec, Inc. (Quebec) as the judgment debtor, Kosachuk's purpose for seeking to register the judgment was to attempt to collect it from Hazan despite that Kosachuk indisputably had notice of Hazan's bankruptcy petition and did not file a proof of claim and that this Court had discharged Hazan from all liabilities arising prior to entry of the Confirmation Order days earlier.

That intention was made clear by Kosachuk's first action in the case, which was to file a Motion for Postjudgment Writ of Garnishment against Hazan **less than one week after the Court entered the Discharge Order**. *See* Exhibit 2. In that motion, Kosachuk and his attorney, Gabbe, allege that "Hazan is indebted to Defendant Quebec" and that Hazan "is the alter-ego of Judgment Debtor Quebec and…the equitable owner of Quebec…" *Id.* at 2. In direct violation of the Confirmation Order and Discharge Order, Kosachuk and Gabbe have gone so far as to serve a writ of garnishment on Hazan to collect the prepetition debt. *See* Exhibits 3 (Writ of Garnishment) & 4 (Certificate of Service reflecting service of the Writ on Hazan). After Hazan filed an answer to the writ of garnishment, Kosachuk and Gabbe filed a Reply and Objection to Garnishee Liza Hazan's Amended Answer to Writ of Garnishment, in which they request that "the Court enter judgment against garnishee [*i.e.*, Hazan] for the full amount owed." *See* Exhibit 5.

Additionally, on March 18, 2019, Kosachuk and Gabbe filed a motion titled *Verified Motion to Enforce Final Judgment [D.E. 1] by Piercing the Corporate Veil of Bad Faith Petitioning Creditor 9197-5904 Quebec, Inc. Against its Officers and Beneficiaries: Raymond Houle and Elizabeth Hazan a/k/a Liza Hazan and Her Husband Sean Meehan and Incorporated Memorandum of Law*. *See* Exhibit 6. In the motion to pierce the corporate veil, Kosachuk and Gabbe claim Kosachuk is owed $1,172,492.93 as a result of the ***March 24, 2015*** Order and Final Judgment. *See id*. They ask the court to pierce the corporate veil of Quebec to Reorganized Discharged Debtor Hazan and her husband, Sean Meehan, on the theory that Quebec is and has always been Hazan's "alter-ego," and that Hazan and Meehan are liable for Quebec's purported debt to Kosachuk. *See generally* Exhibit 6. And they pray for the court to "pierce the corporate veil of Quebec, enter judgment against Mr. Houle, Ms. Hazan, Mr. Meehan and Selective, jointly and severally…" *Id*. at 11.

Each of these actions was taken in violation of the injunction in the Confirmation Order prohibiting pursuit of prepetition debts against Hazan and the Discharge Order, which discharged Hazan of all liabilities accruing prior to entry of the Confirmation Order. As noted, the Final Order and Judgment against Quebec was entered **on *March 24, 2015***, not only before the Confirmation Order but before Hazan petitioned for bankruptcy relief. Thus, even if Hazan had any liability for a debt of Quebec as a purported alter ego (and she does not), any such liability of Hazan would have arisen prepetition. Similarly, even if Hazan owed any debt to Quebec (and she did not), it would have arisen prior to her bankruptcy petition and would have been extinguished upon entry of the Confirmation Order and Discharge Order. Thus, the Confirmation Order prohibits Kosachuk and Gabbe from seeking to enforce the judgment against Hazan. There can

4

be no question that Kosachuk and Gabbe had actual knowledge of the Court's Confirmation Order and Discharge Order given their active participation in Hazan's bankruptcy case. Thus, their conduct can only have been undertaken in willful and contumacious disregard for the orders of this Court. The Court should not tolerate such flouting of its authority and should impose sanctions sufficient to compel Kosachuk and Gabbe to respect this Court's orders and discontinue their repeated attempts to collect debts that this Court has discharged.

## II.     NLG and Ramirez's Violations of this Court's Order in the Chase Litigation

In the First Contempt Order, this Court concluded that "[t]he injunction in the Confirmation Order prevented NLG from taking any action or attempt to collect any discharged debts, including preventing the filing of a lawsuit in state court to collect on its extinguished or otherwise satisfied debt." ECF 780 at 7. The Court further found NLG and its counsel had violated the Confirmation Order [ECF 691] by pursuing foreclosure of Hazan's property in state court and ordered that NLG's cross-claim in state court be dismissed such that the *lis pendens* had recorded would be dissolved:

1. The Court finds that Attorney Ramirez and NLG have violated the injunctions in the Confirmation Order by filing the cross-claim in the Foreclosure Action seeking to foreclose a pre-petition debt that was deemed satisfied and otherwise extinguished in this bankruptcy case.

2. Attorney Ramirez and NLG shall immediately withdraw or dismiss the cross-claim filed in the Foreclosure Action, and **upon dismissal of the cross-claim, the *lis pendens* shall be dissolved**.

3. If the cross-claim is not immediately dismissed, NLG, LLC and Juan Ramirez, Esq., will be determined to be in contempt of this Court's Orders and the Court will consider the imposition of further sanctions, including punitive damages.

5

ECF 780 at 9. In addition, the Court warned NLG and its counsel "to refrain from taking ***any other action*** in contravention of the Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439 or the Confirmation Order entered on June 12, 2018." *Id*. at 9 (emphasis added).

When Ramirez and NLG filed a notice of withdrawal that did not result in dissolution of the *lis pendens*, and indeed filed a second *lis pendens*, Hazan again moved for contempt. In its Second Contempt Order, the Court declined to impose additional sanctions on NLG and Ramirez for this conduct based on Ramirez's representation that he was willing to stipulate to dismissal in a form acceptable to Hazan:

> Importantly, at the hearing, NLG's attorney stated he did not know what the problem is with their withdrawal, but nonetheless offered Debtor's counsel to draft any notice of dismissal or withdrawal of the crossclaim that he felt complied with this Court's Contempt Order and stated he would file same in an effort to comply with the Contempt Order. Based on counsel's withdrawal and subsequent statement of willingness to file a form of a notice of dismissal or withdrawal of the crossclaim that the Debtor's attorney proposes, the Court finds no grounds for contempt.

[ECF 823 at 2].

But the promises that NLG's counsel made to this Court were empty. Despite Hazan's counsel having reached out to Ramirez to resolve this issue, Ramirez has refused to cooperate. To the contrary, Ramirez has informed Hazan's counsel that he will withdraw from the Chase litigation rather than do as he said, based on the representation that NLG—which Ramirez continues to represent in this case and several other cases—would not permit him to do so.

On March 14, 2019 at 4:32 PM, Hazan's counsel Geoffrey Aaronson sent Ramirez a proposed form of dismissal:

6

Juan,
You may recollect that we traded various emails in connection
with the Chase Bank state court matter – Feb. 6, 2019; Feb. 8,
2019; Feb. 14, 2019.  You had indicated that you would get back to
me after discussing with your client.

In the Bankruptcy Court's Order Denying Expedited Motion for
Contempt and Sanctions [ECF 823] the Court therein recited:
Importantly, at the hearing, NLG's attorney stated he did not know
what the problem is with their withdrawal, but nonetheless offered
Debtor's counsel to draft any notice of dismissal or withdrawal of
the crossclaim that he felt complied with this Court's Contempt
Order and stated he would file same in an effort to comply with the
Contempt Order. Based on counsel's withdrawal and subsequent
statement of willingness to file a form of a notice of dismissal or
withdrawal of the crossclaim that the Debtor's attorney proposes,
the Court finds no grounds for contempt.

I am now attaching a proposed "NLG, LLC'S Second Corrected
Notice of Voluntary Dismissal of Crossclaim and Notice of Volun-
tary Dismissal of Counterclaim and Dissolution of Lis Pendens" to
be executed for filing and recording.

Please execute and return to me.  Thank you.

On March 14, 2019 at 4:46 PM, Ramirez responded by refusing to agree:

Aaron,

The problem is you keep including the counterclaim and the lis
pendens, which were never contemplated in the discussion nor in
the order. We would be glad to submit a Notice that includes para-
graph 1 but eliminates paragraphs 2 and 3.

In a March 14, 2019 at 6:06 PM response, Hazan's counsel reminded Ramirez that his ac-

tions were inconsistent with his representations to this Court:

Juan,

I would appreciate it if you used my correct name, Geoffrey
Aaronson, not Aaron.

7

I believe that the Motions were quite clear and that Judge Cristol is again graciously providing you with the opportunity to abide by the Judgment, the Confirmation Order, and the Discharge Order without again finding you in contempt and imposing sanctions. Why are you continuing to make this difficult?

The foreclosure judgment is satisfied. NLG does not today have a foreclosure judgment, it does not have a mortgage, it does not have a lien, it does not even have a claim against Hazan. But you persist in filing pleadings that assert that you have a judgment, that you have a mortgage, and that you have a lien against Hazan's homestead.

This will be my last email to you in a good faith attempt to avoid ANOTHER UNNECESSARY HEARING to seek sanctions. Judge Cristol, I'm sure, is weary of this, and so am I. However, if you do not abide by the Judgment, the Confirmation Order, and the Discharge Order by executing the "NLG, LLC'S Second Corrected Notice of Voluntary Dismissal of Crossclaim and Notice of Voluntary Dismissal of Counterclaim and Dissolution of Lis Pendens" I sent you, we will be asking the Court to, this time, impose sanctions.

Geoffrey

Ramirez responded on March 15, 2019 at 5:01 PM, stating that he was withdrawing rather than agreeing to the form of dismissal:

Geoffrey:

I finished my mediation early and was able to discuss your email with Chris. I have decided to withdraw from the Chase foreclosure case and I'm attaching the motion I just filed. Feel free to contact Chris directly about this matter.

Please let me know if I can submit the attached agreed order or if I have to set it down for hearing.

Thanks.

Hazan's state court counsel, Stuart Zoberg, emailed Ramirez on March 17, 2019 to urge him to enter the stipulated form of dismissal before withdrawing:

8

Mr. Ramirez:

As you know, I have been recently been retained in the Chase matter. I noticed that you filed a motion to withdraw. Per Mr. Aaronson's email below, prior to doing so, it is important that you execute the attached stipulation. Further, should you fail to do so by the end of tomorrow, I will send a 57.105 motion and schedule it following the expiration of the 21 day safe harbor period. Case law is clear that your withdrawal will not save you from 57.105 or delay damages against you and your client. Korte v. U.S. Bank Nat. Ass'n, 64 So. 3d 134, 136 (Fla. 4th DCA 2011)(sanctions granted after attorney moved to withdraw for not just fees, but delay damages as well). I trust this will not be necessary.

Ramirez responded the following day that he was "not authorized by the client to file the stipulation." Thus, it is clear that contrary to Ramirez's assurances to this Court, neither he nor NLG is willing to file a dismissal that would effectuate dissolution of NLG's *lis pendens* as the Court intended.

As this Court has recognized, it can and should enforce its own orders. That is especially true in this case. If it was not clear before, there can be no doubt now that Kosachuk, NLG, and their counsel will continue to violate this Court's orders unless and until sufficiently punitive measures are imposed on them to deter such misconduct. Indeed, it is difficult to imagine a more flagrant violation of the Confirmation Order and Discharge Order than Kosachuk and Gabbe's filing of an entire new lawsuit against Hazan seeking to collect a prepetition debt barely two weeks after the First Contempt Order was entered and within days of entry of the Discharge Order. Enough is enough.

WHEREFORE, Reorganized and Discharged Debtor Liza Hazan respectfully requests that the Court enter an order:

(1) Finding Kosachuk, NLG, Ramirez, and Gabbe in contempt of court;

(2) Ordering NLG and Ramirez to immediately dismiss with prejudice the entirety of NLG's crossclaim and counterclaim in Miami-Dade County Circuit Court Case No. 2013-025902-CA-01; to withdraw their Answers and Affirmative Defenses in that action claiming entitlement to foreclose on the subject property with prejudice; to record the dismissal of its counterclaims and crossclaims; and to record a discharge of the two respectively recorded lis pendens in the public records of the Miami-Dade County Clerk of Courts on August 9, 2018 at Book 31094 and Pages 3318-3319 CFN 2018R0483358 and on December 31, 2018 at Book 31272 and Pages 3122-3123 CFN 2018R0783632 with prejudice;

(3) Ordering Kosachuk and Gabbe to immediately withdraw all pleadings, motions, writs, or other filings directed at or seeking to impose liability on Hazan in Case No. 18-25369-MC-MOORE and to dismiss that action with prejudice, as well as enjoining them from engaging in any other collection activities against Reorganized Discharged Hazan and from taking any other action in contravention of the Confirmation Order, Discharge Order, or Final Judgment on Counts I, II and III entered on November 1, 2017 in Adv. No. 16-01439;

(4) Imposing on Kosachuk, NLG, Gabbe, and Ramirez joint and several liability to pay Hazan's attorney's fees and costs of bringing this motion, as well as damages and punitive damages in an amount to be determined; and

(5) Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

BUSHELL LAW, P.A.
Counsel for Reorganized Discharged Debtor
6400 North Andrews Avenue, Suite 505
Fort Lauderdale, Florida 33309
Phone: 954-666-0220

By:    /s/ Daniel A. Bushell
        Daniel A. Bushell
        Florida Bar No. 0043442
        Email:  dan@bushellappellatelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 22, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

 /s/ Daniel A. Bushell
Daniel A. Bushell

# SERVICE LIST

## Case No. 16-10389-AJC

16-10389-AJC Notice will be electronically mailed to:

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A. aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd ecamp-
bell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd ecamp-
bell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com, nsocor-
ro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association adiaz@shdlegalgroup.com,
southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC bkfl@albertellilaw.com

Michael A Friedman on behalf of Attorney Michael Friedman mfriedman@gjb-law.com,
gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of NLG, LLC mfriedman@gjb-law.com, gjbecf@gjb-
law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium mort-
man@furrcohen.com, atty_furrcohen@bluestylus.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC astridgabbe@gmail.com

Astrid Gabbe on behalf of NLG, LLC

astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC jgrant@msglaw.com, jenna-munsey- 6083@ecf.pacerpro.com;efile@msglaw.com;mg197ecfbox@gmail.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc. ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc. dhaber@dhaberlaw.com, ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

David W. Langley on behalf of Counter-Defendant Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC bkcmiami@gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc. Ashley.popowitz@mccalla.com, flbkecf@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association spowrozek@logs.com, electronicbankruptcynotices@logs.com

Juan Ramirez, Jr., Esq. jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth esilver@stearnsweaver.com, rross@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc. ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association aza-ron@leoncosgrove.com, jgomez@leoncosgrove.com

16-10389-AJC Notice will not be electronically mailed to:

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Miami-Dade County Tax Collector c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430 Miami, FL 33128-1733

B2650 (Form 2650) (12/15)

# United States Bankruptcy Court

_____ District Of _____

In re ___Christopher Kosachuk aka Chris Kosachuk___,
                Debtor

_____,
                Plaintiff

v.

_____,
                Defendant

Case No. ___12-16438JKF___

Chapter ___7___

Adv. Proc. No. _____

## CERTIFICATION OF JUDGMENT FOR
## REGISTRATION IN ANOTHER DISTRICT

    I, clerk of the United States Bankruptcy Court, do certify that the attached judgment is a true and correct copy of the original judgment entered in this proceeding on ___March 24th, 2015___ as it appears in the records of this court, and that:
                                                            (date)

[X] No notice of appeal from this judgment has been filed, and no motion of the kind set forth in Federal Rule of Civil Procedure 60, as made applicable by Federal Rule of Bankruptcy Procedure 9024, has been filed.

[ ] No notice of appeal from this judgment has been filed, and any motions of the kind set forth in Federal Rule of Civil Procedure 60, as made applicable by Federal Rule of Bankruptcy Procedure 9024, have been disposed of, the latest order disposing of such a motion having been entered on _____.
                                      (date)

[ ] An appeal was taken from this judgment, and the judgment was affirmed by mandate of the _____ issued on _____.
                (name of court)                         (date)

[ ] An appeal was taken from this judgment, and the appeal was dismissed by order entered on _____.
       (date)

Timothy B. McGrath
_____
Clerk of the Bankruptcy Court

_December 20, 2018_
Date

By: _____
Deputy Clerk

Case 1:22-cv-20485-DMSP3K3oc4JContDoc 8B614redFilenFL8D3722keP0612/2022 Page 483 of
Case 1:18-mc-23869-XXXX Document 1 Entered on FLSD Docket 12/24/2018 Page 2 of 9
889

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) **\*SEALED\*** |
| CHRISTOPHER KOSACHUK, a.k.a. : | |
| CHRIS KOSACHUK | : |
| | : |
| | : |

A TRUE COPY CERTIFIED
TO FROM THE RECORD
DATED: _12 20 18_
ATTEST: _____
Deputy Clerk
U.S. Bankruptcy Court

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary

Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal

the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the

arguments of counsel and evidence admitted at the trial conducted before this Court on March

18, 2015, it is **ORDERED, ADJUDGED AND DECREED**:

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the

Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to

11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred

by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc.,

plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of $ 160,968.55 pursuant to

11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is

awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post

judgment interest at the federal judgment rate.

118113055_1

4.      Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.      This Final Judgment may be recorded as a matter of public record.

6.      This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.      Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. Fitz Simon
United States Bankruptcy Judge

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-25369-MC-MOORE

CHRIS KOSACHUK,

      Plaintiff

v.

9197-5904 QUEBEC, INC,

      Defendant

_____/

## MOTION FOR POSTJUDGMENT WRIT OF GARNISHMENT

      Plaintiff, Chris Kosachuk, by and through undersigned counsel, hereby files this Motion for the issuance of a post-judgment writ of garnishment against Liza Hazan a/k/a Elizabeth Hazan, Garnishee, and as grounds alleges the following:

      1.      Plaintiff, Chris Kosachuk, is the judgment creditor in the above referenced action residing at 854 Pheasant Run Rd. West Chester, PA 19382.

      2.      Garnishee, Liza Hazan a/k/a Elizabeth Hazan, ("Hazan") is a resident of the State of Florida residing at 6913 Valencia Dr. Fisher Island, FL 33109.

      3.      On March 24, 2015, Plaintiff Kosachuk recovered a judgment against Defendant, 9197-5904 Quebec, Inc.("Quebec") in the above-entitled action in the amount of $ 1,153,142.26. This judgment is final and non-appealable. Together with interest at the rate of point twenty-five percent per year, (.25%), from that date to the date of this motion, Defendant owes Plaintiff $1,171,908.47.

Case 1:23-cv-24435-RKA Document 6 Entered on FLSD Docket 09/03/2023 Page 486 of
889
Case 1:23-cv-23583-RNW Document 3 Entered on FLSD Docket 09/03/2023 Page 2 of 2

4.      Plaintiff has reason to believe, and does believe, that Garnishee, Hazan is indebted to
Defendant Quebec, Garnishee's place of business is located 6913 Valencia Dr. Fisher Island, FL
33109.

5.      Plaintiff has reason to believe that Hazan, Inc. is the alter-ego of Judgment Debtor
Quebec and that she is the equitable owner of Quebec as evidenced by the extensive record before
the Courts. Judgment Debtor 9197-5904 Quebec, Inc. and Hazan are one and the same.

6.      Plaintiff does not believe that Defendant visibly possesses sufficient property on
which a levy can be made to satisfy the judgment.

WHEREFORE, Plaintiff requests the Court to enter its order granting this motion, and to
order the clerk of the Court to issue a writ of garnishment against the debt owed by Garnishee, Hazan
Kosachuk to Defendant, 9197-5904 Quebec, Inc. requiring Garnishee to serve an answer and stating
the amount specified in Plaintiff's motion.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for Chris Kosachuk*

2

Case 1:23-cv-26435-RKA-HLSD23696 Document 6 Entered on FLSD Docket 09/04/2023 Page 487 of
889
Case 1:23-mc-25369-KMW Document 6 Entered on FLSD Docket 09/04/2023 Page 4 of 9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 18-25369-MC-MOORE

CHRIS KOSACHUK,

      Plaintiff

v.

9197-5904 QUEBEC, INC,

      Defendant

_____/

**WRIT OF GARNISHMENT**

THE STATE OF FLORIDA
To Each Sheriff of the State and/or the United States Marshall for the Southern District of Florida:

    YOU ARE COMMANDED to summon the garnishee, Liza Hazan a/k/a Elizabeth Hazan, who may be served at 6913 Valencia Dr. Fisher Island, FL 33109 to serve an answer to this writ on The Law Office of Astrid E. Gabbe, P.A., Attorneys for Chris Kosachuk., Plaintiff's attorney, whose email address is astridgabbe@gmail.com, within 20 days after service on the garnishee, exclusive of the day of service, and to file an original with the clerk of this court either before service on the attorney or immediately thereafter. The answer must state whether the Garnishee is indebted to Defendant, 9197-5904 Quebec, Inc. or was indebted to Defendant at the time of service of the writ, or at any time between those times, in what sum, and what tangible and intangible personal property of the Defendant, 9197-5904 Quebec, Inc., the Garnishee has in her possession or control at the time of the answer or had at the time of service of this writ was served, or at any time between those times, and whether the Garnishee knows of any other person indebted to the Defendant or who may be in possession or control of any of the Defendant's property. The amount set in plaintiff's motion is $1,171,908.47.

Dated: _____ **JAN - 4 2019**    **Angela E. Noble**

    As Clerk of the United States District Court for the Southern District of Florida
    Miami Dade County, Florida

Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. 18-25369-MC-MOORE**

CHRIS KOSACHUK,

     Plaintiff

v.

9197-5904 QUEBEC, INC,

     Defendant

_____/

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify, ECF Nos. 5, 6, 7, 8, 9 and 10 were served on the 6th day of February, 2019, on the individuals identified below via CM/ECF, e-mail and/or regular mail:

Elizabeth Hazan
9197-5904 Quebec, Inc.
6913 Valencia Drive
Fisher Island, FL 33109
Elizabethhazan1@aol.com
elizabethhazan07@gmail.com

Raymond Houle
9197-5904 Quebec, Inc.
6913 Valencia Drive
Fisher Island, FL 33109
Raymond.houle@gmail.com
Raymond.houle1@gmail.com

Raymond Houle
9197-5904 Quebec, Inc.
5552 Queen Mary Road, Suite 4
Montreal, Q.C. H3C 1H6

Raymond Houle
9197-5904 Quebec, Inc.
5552 Queen Mary Road, Suite 4
Hampstead, Q.C. H3X 1V9

Case 1:18-cv-23923-KMM Document 91 Entered on FLSD Docket 02/18/2019 Page 48 of 2

Plaintiff Chris Kosachuk's Certificate of Service
Case No. 18-25369-MC-MOORE
Page 2 of 2

Arthur R. Rosenberg, Esq.
ROSENBERG & PINSKY
6499 North Powerline Road
Suite 304
Fort Lauderdale, FL 33309
Tel: (954) 772-5151
Fax: (954) 772-4224
arr@arrosenberg.com
*Counsel for 9197-5904 Quebec, Inc.*

Mark Cohen, Esq.
4000 Hollywood Blvd
Suite 435 South
Tel: (954) 962-1166
Fax: (954) 962-1779
Hollywood, FL 33012
mdcohenpa@yahoo.com
*Counsel of Record for 9197-5904 Quebec, Inc.*

Ray Garcia, Esq.
LAW OFFICE OF RAY GARCIA, P.A.
14850 SW 26TH STREET, SUITE 204
MIAMI, FLORIDA 33185
Tel: (305) 227-4030
Fax: (305) 223-9811
rgarcia@raygarcialaw.com
*Counsel for SRS Techonologies Professionals, LLC as Assignee of 9197-5904 Quebec, Inc.*

Dated: February 16, 2019

Respectfully submitted,

/s/ Chris Kosachuk                          /s/ Astrid E. Gabbe
Chris Kosachuk                              The Law Office of Astrid E. Gabbe, P.A.
854 Pheasant Run Rd                         Florida Bar No. 635383
West Chester, PA 19382-8144                 P.O. Box 4216
(305) 490-5700                              Hollywood, FL 33083
chriskosachuk@gmail.com                     Tel. (954) 303-9882
                                            Fax. (954) 983-1427
                                            astridgabbe@gmail.com
                                            *Attorneys for Chris Kosachuk*

Case 1:22-cv-23348-RNS Document 86-5 Entered on FLSD Docket 06/14/2022 Page 490 of
Case 1:18-mv-25369-KMM Document 22 Entered on FLSD Docket 02/27/2019 Page 1 of 13
889

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-25369-MC-MOORE

CHRIS KOSACHUK,

      Plaintiff

v.

9197-5904 QUEBEC, INC,

      Defendant

_____/

### REPLY AND OBJECTION TO GARNISHEE LIZA HAZAN'S
### AMENDED ANSWER TO WRIT OF GARNISHMENT [D.E. 16]

Plaintiff, Chris Kosachuk, by and through undersigned counsel, hereby files this Reply and
Objection to Garnishee Liza Hazan's Amended Answer to Writ of Garnishment, [D.E. 16], and as
grounds alleges the following:

1.      Denied.

2.      Denied

3.      Denied.

4.      Indeed Mr. Meehan, Ms. Hazan's husband, has already testified that he owes Quebec
money if he collected the Judgment by Confession obtained in New York state court. Attached
hereto as Exhibit 1 is the 341 examination transcript of Mr. Meehan, [*See* page 14], from when he
filed a voluntary bankruptcy petition determined to have been a bad faith filing by the trustee and the
Court. Mr. Meehan also testified that the judgment by confession was given to him for free. [*See*
page 12 line 17].

Case 1:22-cv-23340-RNS Document 32-6 Entered on FLSD Docket 06/24/2022 Page 491 of
889
Case 1:18-mv-23369-KMM Document 22-3 Entered on FLSD Docket 02/27/2019 Page 2 of 13

Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 2 of 4

    5.     Mr. Meehan, on behalf of his wife Ms. Hazan, went on to collect the Judgment by

Confession before Judge Cristol. Attached hereto as Exhibit 2 is the Cristol Judgment, which offset

the $5 million Judgment by Confession against NLG's Final Judgment of Foreclosure. Mr.

Kosachuk is manager of NLG.

    6.     Before Judge Cristol entered his judgment, NLG was a judgment creditor having

obtained a foreclosure judgment against Elizabeth Hazan on a Fisher Island property sold to her by

NLG. The foreclosure judgment was for almost $5 million. Attached hereto as Exhibit 3 is Judge

Gordo's Final Judgment of Foreclosure (the "Foreclosure Judgment").

    7.     The trajectory of the litigation leading up to the Final Judgment of Foreclosure is set

out, in detail, by Judge Gordo's 15-page Order Granting Foreclosure, which is attached as Exhibit 4.

    8.     Thus, the $5 million Quebec Judgment by Confession was used to offset NLG's $4.8

million Foreclosure Judgment.

    9.     By offsetting NLG's Foreclosure Judgment, Selective, Meehan, and Hazan received a

$5 million benefit. As such, Ms. Hazan is indebted to Quebec in the amount owned to Mr. Kosachuk

by Quebec.

    WHEREFORE, Plaintiff Chris Kosachuk requests the Court enter judgment against the

garnishee for the full amount owed.

February 27, 2019

                            Respectfully submitted,

Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 3 of 4


/s/ Chris Kosachuk                          /s/ Astrid E. Gabbe
Chris Kosachuk                              The Law Office of Astrid E. Gabbe, P.A.
854 Pheasant Run Rd                         Florida Bar No. 635383
West Chester, PA 19382-8144                 P.O. Box 4216
(305) 490-5700                              Hollywood, FL 33083
chriskosachuk@gmail.com                     Tel. (954) 303-9882
                                            Fax. (954) 983-1427
                                            astridgabbe@gmail.com
                                            *Attorneys for Chris Kosachuk*


## CERTIFICATE OF SERVICE

I hereby certify, that the foregoing was served on the 27th day of February, 2019, on the individuals identified below via CM/ECF, e-mail and/or regular mail:

Raymond Houle
9197-5904 Quebec, Inc.
6913 Valencia Drive
Fisher Island, FL 33109
Raymond.houle@gmail.com
Raymond.houle1@gmail.com

Raymond Houle
9197-5904 Quebec, Inc.
5552 Queen Mary Road, Suite 4
Montreal, Q.C. H3C 1H6

Raymond Houle
9197-5904 Quebec, Inc.
5552 Queen Mary Road, Suite 4
Hampstead, Q.C. H3X 1V9

Arthur R. Rosenberg, Esq.
ROSENBERG & PINSKY
6499 North Powerline Road
Suite 304

Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 4 of 4

Fort Lauderdale, FL 33309
Tel: (954) 772-5151
Fax: (954) 772-4224
arr@arrosenberg.com
*Counsel for 9197-5904 Quebec, Inc.*

Mark Cohen, Esq.
4000 Hollywood Blvd
Suite 435 South
Tel: (954) 962-1166
Fax: (954) 962-1779
Hollywood, FL 33012
mdcohenpa@yahoo.com
*Counsel for 9197-5904 Quebec, Inc.*

Joe. M. Grant
MARSHALL GRANT, PLLC
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561.361.1000
Facsimile: 561.672.7581
Email: jgrant@marshallgrant.com
*Counsel for Garnishees, Elizabeth Hazan, Sean Meehan and Selective Advisors Group, LLC*

Respectfully submitted,

/s/ Chris Kosachuk                          /s/ Astrid E. Gabbe
Chris Kosachuk                              The Law Office of Astrid E. Gabbe, P.A.
854 Pheasant Run Rd                         Florida Bar No. 635383
West Chester, PA 19382-8144                 P.O. Box 4216
(305) 490-5700                              Hollywood, FL 33083
chriskosachuk@gmail.com                     Tel. (954) 303-9882
                                            Fax. (954) 983-1427
                                            astridgabbe@gmail.com
                                            *Attorneys for Chris Kosachuk*

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 1 of 119

# EXHIBIT 1

Case 1:22-cv-23489-DMJ-JDG Document 28 Entered on FLSD Docket 03/14/2023 Page 495 of
Case 1:18-mc-25369-MM3 Document 22 Entered on FLSD Docket 02/27/2019 Page 6 of 123
889
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 2 of 119

Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   EASTERN DISTRICT OF NEW YORK

 3   CASE NO. 15-72153-reg

 4   - - - - - - - - - - - - - - - - - - x

 5   In the Matter of:

 6

 7   SELECTIVE ADVISORS GROUP, LLC,

 8

 9          Debtor.

10   - - - - - - - - - - - - - - - - - - x

11

12

13                        341 HEARING

14               CONDUCTED BY MARC A. PERGAMENT

15

16                      JULY 1, 2015

17

18

19

20

21

22

23

24

25
```

Case 1:22-cv-23846-DMM Document 22 Entered on FLSD Docket 02/27/2023 Page 496 of
889
Case 1:22-cv-23846-DMM Document 22 Entered on FLSD Docket 02/27/2023 Page 496 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 3 of 119

```
 1    A P P E A R A N C E S :

 2    VLAHDAMIS & HILLEN, LLP

 3          Attorney for Debtor

 4          148 East Montauk Highway

 5          Suite 3

 6          Hampton Bays, New York 11946

 7

 8    BY:  EVANS M. HILLEN, ESQ.

 9

10    ALSO PRESENT:

11    SEAN NEAL MEEHAN

12    CHRISTOPHER KOSACHUK

13    ELIZABETH HAZAN

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                    MR. PERGAMENT:  Selective Advisors

 3          Group, LLC.  Creditors being present, do

 4          creditors wish to elect a trustee?

 5                    None being heard.  (Indiscernible)

 6          qualifies.

 7                    Sir, identify yourself, please.

 8                    Excuse me.  What's your name, sir?

 9                    MR. MEEHAN:  Sean.

10                    MR. PERGAMENT:  What's your last name,

11          sir?

12                    MR. MEEHAN:  Meehan.

13                    MR. PERGAMENT:  Okay.  Sean, S-E-A-N?

14                    MR. MEEHAN:  Uh-huh.

15                    MR. PERGAMENT:  Is that a yes?

16                    MR. MEEHAN:  Yes, it is.

17                    MR. PERGAMENT:  Okay.  And, Mr. Meehan,

18          what's your add -- your business and home

19          address?

20                    MR. MEEHAN:  Well --

21                    MR. PERGAMENT:  I want both.

22                    MR. HILLEN:  What's your home address?

23                    MR. MEEHAN:  My home address, 6913 --

24                    MR. PERGAMENT:  6913 --

25                    MR. MEEHAN:  -- Valencia --
```

Case 1:22-cv-23834-RMO Document 26-3 Entered on FLSD Docket 06/24/2023 Page 498 of 889
Case 1:22-cv-23834-RMO Document 22 Entered on FLSD Docket 03/24/2023 Page 5 of 123

```
 1                    MR. PERGAMENT:  Valencia?

 2                    MR. MEEHAN:  Yeah.  Drive.

 3                    MR. PERGAMENT:  What town?

 4                    MR. MEEHAN:  Miami, Florida 33109.

 5                    MR. PERGAMENT:  Whoa.  Whoa.  Slow

 6        down.  33 --

 7                    MR. MEEHAN:  109.

 8                    MR. PERGAMENT:  Okay.  And what is your

 9        relationship to this debtor?

10                    MR. MEEHAN:  I'm not sure I understand

11        the question.

12                    MR. PERGAMENT:  Okay.  Are you a member

13        of Selective Advisors Group?

14                    MR. MEEHAN:  Yes.  I'm the manager.

15                    MR. PERGAMENT:  Are you a member as

16        well?

17                    MR. MEEHAN:  Uh-huh.

18                    MR. PERGAMENT:  Yes?  I need verbal

19        responses.

20                    MR. MEEHAN:  Yes.

21                    MR. PERGAMENT:  Not hmms.  So you're a

22        member and a manager.  Is that correct?

23                    MR. MEEHAN:  That's correct.

24                    MR. PERGAMENT:  Okay.  Raise your right

25        hand, please.
```

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 06/04/2022 Page 499 of 889
Case 1:18-cv-25369-KMW Document 21-6 Entered on FLSD Docket 02/27/2019 Page 6 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 6 of 119

Page 5

1                    SEAN MEEHAN SWORN

2               MR. PERGAMENT:  Mr. Meehan, I want

3        verbal answers.

4               MR. MEEHAN:  Sure.

5               MR. PERGAMENT:  Counsel, your

6        appearance.

7               MR. HILLEN:  Evans Hillen on behalf of

8        the debtor, Selective Advisors Group, admitted in

9        the Eastern District.

10              MR. PERGAMENT:  Okay.  I was provided

11       with bankruptcy papers by hand that was

12       delivered, I believe, on the 29th or 30th, this

13       week.  It is  -- I'm looking for something with

14       Mr. Meehan's signature.  Did he sign any of these

15       papers, Counsel?

16              MR. HILLEN:  Yes, sir.  It should be on

17       the second page -- the page on the lower-right

18       hand box, page 3.

19              MR. PERGAMENT:  Page -- there it is.

20              MR. HILLEN:  One more.

21              MR. PERGAMENT:  Is this your signature

22       on the bottom of the bankruptcy papers?

23              MR. MEEHAN:  Yes.

24              MR. PERGAMENT:  Is everything correct?

25              MR. MEEHAN:  Yes.

Case 1:22-cv-21485-RNS Document 89-10 Entered on FLSD Docket 06/14/2022 Page 500 of 889
Case 1:18-cv-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 15 of 23

```
 1                    MR. PERGAMENT:  Any changes you want to
 2         make?
 3                    MR. MEEHAN:  No.
 4                    MR. PERGAMENT:  Okay.  I have your
 5         driver's license that indicates an address of 103
 6         West Tiana Road in Hampton Bays.  Is that your
 7         address?
 8                    MR. MEEHAN:  Yes.
 9                    MR. PERGAMENT:  Is that still your
10         address?
11                    MR. MEEHAN:  Yes.
12                    MR. PERGAMENT:  Which is your permanent
13         -- your residence, sir, the one in Miami or the
14         one in Hampton Bays?
15                    MR. MEEHAN:  Permanent, what's that
16         mean?  What's the definition of permanent?
17                    MR. PERGAMENT:  Okay.  We'll do it a
18         different way.  Where do you spend -- out of 30
19         days of the month, where do you spend your
20         nights?
21                    MR. MEEHAN:  Miami, Florida.
22                    MR. PERGAMENT:  And how much time do
23         you spend in Hampton Bays?
24                    MR. MEEHAN:  Summer months, two, three.
25                    MR. PERGAMENT:  Okay.  And who owns 103
```

```
 1            West Tiana?

 2                    MR. MEEHAN:  It's a rental.

 3                    MR. PERGAMENT:  Okay.  Are you there

 4        now?

 5                    MR. MEEHAN:  No.

 6                    MR. PERGAMENT:  Who is in that house

 7        now?

 8                    MR. MEEHAN:  My parents.

 9                    MR. PERGAMENT:  Okay.  Is everything

10        correct in your bankruptcy papers that you

11        signed?

12                    MR. MEEHAN:  Yeah.

13                    MR. PERGAMENT:  Are there any changes

14        that you want to make?  You have to keep your

15        voice up, please, sir.

16                    MR. MEEHAN:  I said no.

17                    MR. HILLEN:  Yes or no.

18                    MR. PERGAMENT:  Thank you.

19                    Who were the other members of Selective

20        Advisors Group, if any?

21                    MR. MEEHAN:  Just me.

22                    MR. PERGAMENT:  So you're the sole

23        member?

24                    MR. MEEHAN:  Yes.

25                    MR. PERGAMENT:  And are there any other
```

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 01/27/2023 Page 502 of 889
Case 1:18-cv-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2023 Page 15 of 23

```
 1          managers?

 2                  MR. MEEHAN:  No.

 3                  MR. PERGAMENT:  Okay.  What assets does

 4          Selective Group Advise -- excuse me -- what

 5          assets does Selective Advisers Group own?

 6                  MR. MEEHAN:  You know, what page are we

 7          on?

 8                  MR. PERGAMENT:  No.  I'm not asking you

 9          about pages, sir.  I'm asking you what assets it

10          owns.

11                  MR. MEEHAN:  Well, I'm going to

12          according to what I --

13                  MR. PERGAMENT:  No.  You --

14                  MR. MEEHAN:  -- wrote down.

15                  MR. PERGAMENT:  You don't -- you put

16          that aside.  I'm here to ask -- ask questions.

17          I'm not asking you to repeat what's in a piece of

18          writing.  I want to know what assets the company

19          owns.

20                  MR. HILLEN:  What are the assets of the

21          company?

22                  MR. MEEHAN:  Well, I see here there's

23          none.  So it's --

24                  MR. PERGAMENT:  I'm asking you, sir.  I

25          don't care what your attorney put down.
```

Case 1:22-cv-21485-RNS Document 26-63 Entered on FLSD Docket 06/14/2023 Page 503 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/24/2019 Page 14 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 10 of 119

                                                                          Page 9

```
 1                    MR. MEEHAN:  Okay.

 2                    MR. PERGAMENT:  I want to know what

 3        assets you own.

 4                    Thank you, Counsel.  Hold that.  Thank

 5        you.

 6                    I just think this is --

 7                    MR. MEEHAN:  We have a judgment.

 8                    MR. PERGAMENT:  Who has a judgment?

 9                    MR. MEEHAN:  That's an asset.

10                    MR. PERGAMENT:  Who has a judgment?

11                    MR. MEEHAN:  Selective Advisors.

12                    MR. PERGAMENT:  Against who?

13                    MR. MEEHAN:  NLG.

14                    MR. PERGAMENT:  And who is NLG?

15                    MR. MEEHAN:  I couldn't tell you that.

16                    MR. PERGAMENT:  Well, who obtained this

17        judgment on behalf of Selective Advisors Group

18        against NLG?

19                    MR. MEEHAN:  Who --

20                    MR. PERGAMENT:  Yeah.

21                    MR. MEEHAN:  -- obtained --

22                    MR. PERGAMENT:  Obtained the judgment.

23        Yes.

24                    MR. MEEHAN:  -- a judgment.

25                    MR. PERGAMENT:  Did you have a lawyer
```

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 06/14/2022 Page 504 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2023 Page 15 of 23

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 11 of 119

Page 10

```
 1            do this?
 2                    MR. MEEHAN:  Did I have a lawyer do
 3        this?  I don't understand your question.
 4                    MR. PERGAMENT:  What don't you
 5        understand?
 6                    MR. MEEHAN:  It's very forthcoming of
 7        you and you're --
 8                    MR. PERGAMENT:  What don't you -- you
 9        know what, Mr. Meehan?  I'm trying to keep my
10        patience here.  You filed --
11                    MR. MEEHAN:  So just go slowly with me.
12        That's all I'm asking.
13                    MR. PERGAMENT:  Go slowly?  I asked you
14        which attorney assisted you in obtaining a
15        judgment against NLG?
16                    MR. MEEHAN:  Which attorney?
17                    MR. PERGAMENT:  Excuse me.  If you want
18        to speak, do so outside.  You understand?
19                    UNIDENTIFIED SPEAKER:  Yes.
20                    MR. PERGAMENT:  Good.
21                    MR. HILLEN:  I can't answer the
22        question.  As I understand the question --
23                    MR. PERGAMENT:  No.  No.  No.
24                    MR. MEEHAN:  I don't understand --
25                    MR. PERGAMENT:  No.
```

Case 1:22-cv-21485-RNS Document 23-5 Entered on FLSD Docket 06/16/2022 Page 505 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2023 Page 16 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 12 of 119
Page 11

```
 1                        MR. MEEHAN:  -- the question.

 2                        MR. PERGAMENT:  What don't you

 3             understand?  Which words don't you understand to

 4             my question?

 5                        MR. MEEHAN:  What are -- which state

 6             are you talking about?  That's --

 7                        MR. PERGAMENT:  Anywhere.  You listed

 8             in your bankruptcy your only asset being this

 9             judgment against NLG.

10                        MR. MEEHAN:  Sure.

11                        MR. PERGAMENT:  Okay.  Did you have

12             NLG agree to pay you money?

13                        MR. MEEHAN:  Did I have NLG agree to

14             pay me money?

15                        MR. PERGAMENT:  Yeah.

16                        Please

17                        MR. MEEHAN:  I don't understand how

18             that --

19                        MR. PERGAMENT:  Please -- please --

20                        MR. MEEHAN:  -- question is -- is

21             relevant.

22                        MR. PERGAMENT:  -- please leave the

23             room.  Excuse me.  Hold on.  Your name, please.

24                        UNIDENTIFIED SPEAKER:  (Indiscernible).

25                        MR. PERGAMENT:  What's your name?
```

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 02/27/2023 Page 506 of 889
Case 1:18-mc-25369-KMM Document 1-6 Filed 01/31/19 Page 17 of 123

```
 1                    MS. HAZAN:  Elizabeth Hazan.

 2                    MR. PERGAMENT:  Please leave the room

 3         because you're interrupting my examination and

 4         it's unacceptable.

 5                    MR. HILLEN:  Sit up straight.

 6                    MR. MEEHAN:  I'm just not understanding

 7         what -- what you're asking me.

 8                    MR. PERGAMENT:  You're not

 9         understanding?  Okay.  You said that Selective

10         Advisors Group has a judgment against NLG.  Is

11         that correct?

12                    MR. MEEHAN:  That is correct.

13                    MR. PERGAMENT:  How did that come

14         about?

15                    MR. MEEHAN:  How did it come about?

16                    MR. PERGAMENT:  Yeah.

17                    MR. MEEHAN:  It was given to me.

18                    MR. PERGAMENT:  Who gave it to you?

19                    MR. MEEHAN:  Another company.

20                    MR. PERGAMENT:  Who gave it to you?

21                    MR. MEEHAN:  Quebec.

22                    MR. PERGAMENT:  Quebec?

23                    MR. MEEHAN:  Quebec.

24                    MR. PERGAMENT:  Is that the full name

25         of the company?
```

```
 1                         MR. MEEHAN:  Quebec, Inc., LLC?

 2                         MR. PERGAMENT:  I'm asking you, sir.

 3                         MR. MEEHAN:  I'm telling you.

 4                         MR. PERGAMENT:  Okay.  So Quebec, it

 5             assigned the judgment --

 6                         MR. MEEHAN:  Correct.

 7                         MR. PERGAMENT:  -- to Selective?  Okay.

 8             And what did you pay for that assignment?

 9                         MR. MEEHAN:  I didn't pay for it.  It

10             was given to me.

11                         MR. PERGAMENT:  It was a gift?

12                         MR. MEEHAN:  Yes.

13                         MR. PERGAMENT:  Okay.  And who at

14             Quebec agreed to give you the assignment?

15                         MR. MEEHAN:  Raymond Houle.

16                         MR. PERGAMENT:  Raymond, how do you

17             spell his last name?

18                         MR. MEEHAN:  H-O-U-L-E.

19                         MR. PERGAMENT:  And where does Mr.

20             Houle reside?

21                         MR. MEEHAN:  Canada.

22                         MR. PERGAMENT:  In Canada.  Okay.  Do

23             you know where in Canada?  It's a big country.

24                         MR. MEEHAN:  Montreal.

25                         MR. PERGAMENT:  In Montreal.  Okay.
```

Case 1:22-cv-21485-RNS Document 89-1 Entered on FLSD Docket 06/14/2023 Page 508 of 889
Case 1:18-mc-25369-KMW Document 22 Entered on FLSD Docket 02/17/2019 Page 15 of 23

```
 1           How did it come about that Mr. Houle assigned

 2           Quebec's judgment to Selective Advisors Group?

 3                   MR. MEEHAN:  Well, Mr. Houle, his

 4           health, he's not well and he tried to get the

 5           money from the judgment unsuccessfully due to his

 6           health, being a Canadian citizen, his age.  We

 7           agreed that I would pursue it.  And if we

 8           actually obtained anything we would work it out

 9           at that point.

10                   MR. PERGAMENT:  Is that in writing?  Is

11           that agreement in writing?  No?  Is your answer

12           no?

13                   MR. MEEHAN:  My answer is no.

14                   MR. PERGAMENT:  Okay.  And who is NLG?

15                   MR. MEEHAN:  We don't know.

16                   MR. PERGAMENT:  Did Mr. Houle tell you

17           who it was?

18                   MR. MEEHAN:  Well, we tried to figure

19           out who NLG is.

20                   MR. PERGAMENT:  Well, wait a second.

21           Quebec got a judgment against NLG.  Is that

22           correct?

23                   MR. MEEHAN:  Yeah.  It's a company.

24                   MR. PERGAMENT:  It's a company.

25                   MR. MEEHAN:  Supposedly in Nevis.
```

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 16 of 119

```
1                    MR. PERGAMENT:  What -- excuse me?

2                    MR. MEEHAN:  It's a company.

3                    MR. PERGAMENT:  Supposedly in what?

4                    MR. MEEHAN:  Nevis or some -- some

5         offshore company.

6                    MR. PERGAMENT:  Offshore company.

7         Okay.  Did Quebec lend money to NLG?

8                    MR. MEEHAN:  Did Quebec lend money to

9         NLG?  I'm not sure.

10                   MR. PERGAMENT:  Well, how did it come

11        about that NLG owed money to Quebec?

12                   MR. MEEHAN:  Some kind of debt.

13                   MR. PERGAMENT:  I -- I understand that.

14        I'm asking what kind of debt.  You know nothing

15        about it?

16                   MR. MEEHAN:  That's all I know.

17                   MR. PERGAMENT:  That's all you know.

18        And do you have the exact address of Mr. Houle?

19                   MR. MEEHAN:  No.

20                   MR. PERGAMENT:  Do you have his phone

21        number?

22                   MR. MEEHAN:  No.

23                   MR. PERGAMENT:  Well, how did he

24        communicate with you?

25                   MR. MEEHAN:  Email.
```

Case 1:22-cv-21485-RNS Document 30-10 Entered on FLSD Docket 06/24/2022 Page 510 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2023 Page 21 of 23

```
 1                    MR. PERGAMENT:  Email.  What's his

 2          email address?

 3                    MR. MEEHAN:  I'm not sure which one

 4          he's using right now.

 5                    MR. PERGAMENT:  Counsel --

 6                    MR. HILLEN:  Yes, sir.

 7                    MR. PERGAMENT:  -- you have 48 hours to

 8          provide me with Mr. Houle's address, phone

 9          numbers, email addresses, any other way of

10          contact.

11                    How did you know Mr. Houle?  How did

12          you hook up with him?  Are you friends?

13                    MR. MEEHAN:  I guess you could say

14          we're friends.

15                    MR. PERGAMENT:  You're friends.  How

16          long do you know him?

17                    MR. MEEHAN:  Three years.

18                    MR. PERGAMENT:  Three years.  How do

19          you know him, as a friend, as a business

20          associate?

21                    MR. MEEHAN:  A friend.

22                    MR. PERGAMENT:  And he didn't tell you

23          why NLG owed money to Quebec?

24                    MR. MEEHAN:  No.

25                    MR. PERGAMENT:  No?  How much is that
```

```
 1          judgment?

 2                  MR. MEEHAN:  Which judgment?

 3                  MR. PERGAMENT:  The judgment that was

 4          assigned to Selective Advisors --

 5                  MR. MEEHAN:  Are you asking at the time

 6          or are you asking now?

 7                  MR. PERGAMENT:  At the time.

 8                  MR. MEEHAN:  $5 million.

 9                  MR. PERGAMENT:  $5 million.  So that's

10          a lot of money, right?

11                  MR. MEEHAN:  To some.

12                  MR. PERGAMENT:  It's not to you, I take

13          it?

14                  MR. MEEHAN:  If you can actually

15          collect on it, it would be, yeah.

16                  MR. PERGAMENT:  Right.  I'm trying to

17          understand this judgment.

18                  Now what debts does Selective Advisors

19          have?

20                  MR. MEEHAN:  We have --

21                  MR. PERGAMENT:  Who does it owe money

22          to?

23                  MR. MEEHAN:  We have a lawyer we owe

24          money to.

25                  MR. PERGAMENT:  Selective owes money to
```

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 06/29/2023 Page 512 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 23 of 123

1          a lawyer?

2                    MR. MEEHAN:  Yeah.

3                    MR. PERGAMENT:  Okay.  And who is that

4          lawyer?

5                    MR. MEEHAN:  Joseph Nierman (ph).

6                    MR. PERGAMENT:  And that's in New York

7          City.  Is that right?

8                    MR. MEEHAN:  Yes.

9                    MR. PERGAMENT:  But do you agree you

10         owe him the money?

11                   MR. MEEHAN:  Do I agree that I owe him

12         money?

13                   MR. PERGAMENT:  Yeah, because your

14         bankruptcy papers say you dispute that you owe

15         him any money.

16                   MR. MEEHAN:  It's not disputed whether

17         we owe money or not.

18                   MR. PERGAMENT:  What's disputed?

19                   MR. MEEHAN:  It's what the amount is.

20                   MR. PERGAMENT:  Well, what does he

21         claim you owe him?

22                   MR. MEEHAN:  $3,500.

23                   MR. PERGAMENT:  Okay.  And what do you

24         think you owe him?

25                   MR. MEEHAN:  It could be a little -- a

Case 1:22-cv-21485-RNS Document 69-10 Entered on FLSD Docket 06/24/2022 Page 513 of
889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/24/2023 Page 24 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 20 of 119

```
 1        little -- 3,500.

 2                 MR. PERGAMENT:  So he's -- now what

 3        services did he provide that you owe him money?

 4                 MR. MEEHAN:  What services?  Legal

 5        counsel.

 6                 MR. PERGAMENT:  What did he provide?

 7        What kind of legal counsel did he provide?

 8                 MR. MEEHAN:  He appeared in front of

 9        Judge Hagler (ph).

10                 MR. PERGAMENT:  Judge Hagler.  Well,

11        who is Judge Hagler?

12                 MR. MEEHAN:  He's a judge in New York

13        City.

14                 MR. PERGAMENT:  And what was his

15        purpose of appearing before Judge Hagler in New

16        York City?

17                 MR. MEEHAN:  His purpose was to

18        maintain the judgment --

19                 MR. PERGAMENT:  To maintain or --

20                 MR. MEEHAN:  -- from someone trying to

21        dismiss the judgment.

22                 MR. PERGAMENT:  And who was trying to

23        dismiss the judgment?

24                 MR. MEEHAN:  NLG.

25                 MR. PERGAMENT:  And when you say
```

Case 1:22-cv-21485-RNS Document 89-4 Entered on FLSD Docket 04/24/2023 Page 514 of 889
Case 1:18-cv-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 25 of 123

```
 1            Quebec, Inc., are you referring to 9197-5904
 2            Quebec, Inc.?
 3                    MR. MEEHAN:  Yes.
 4                    MR. PERGAMENT:  That's the company.
 5            Now you list here that you have a garnishment
 6            against a Christopher Kosachuk.  Is that right?
 7                    MR. MEEHAN:  I don't know if that's how
 8            you pronounce his name.  Yeah --
 9                    MR. PERGAMENT:  Well, that's what's --
10                    MR. MEEHAN:  -- that's correct.
11                    MR. PERGAMENT:  -- written here.
12                    MR. MEEHAN:  That's correct.
13                    MR. PERGAMENT:  So you have a
14            garnishment pending.  Why do you have that
15            pending against -- why is that listed in your
16            bankruptcy case?
17                    MR. MEEHAN:  Why is it listed?
18                    MR. PERGAMENT:  Yeah.
19                    MR. MEEHAN:  Because you want to know
20            what Selective Advisors has as far as court
21            cases.  Is that correct?  So we listed it.
22                    MR. PERGAMENT:  Well, did -- did Quebec
23            -- 9197-5904 Quebec, Inc. assign a judgment that
24            it had against Mr. Kosachuk to Selective
25            Advisors?
```

Case 1:22-cv-21485-RNS Document 20-3 Entered on FLSD Docket 06/24/2022 Page 515 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2023 Page 26 of 123

```
 1                    MR. MEEHAN:  Yes.

 2                        MR. PERGAMENT:  That as well?  So there

 3             -- so Quebec -- the Quebec company assigned the

 4             judgment it has against NLG, the judgment it has

 5             against Mr. Kosachuk --

 6                        MR. MEEHAN:  Correct.

 7                        MR. PERGAMENT:  -- and also the

 8             judgment against Continental Casualty?

 9                        MR. MEEHAN:  Yeah.

10                        MR. PERGAMENT:  All those got assigned

11             to Selective.  Is that right?

12                        MR. MEEHAN:  That's correct.

13                        MR. PERGAMENT:  And all those

14             assignments were for no money being paid?

15                        MR. MEEHAN:  If we collected --

16                        MR. PERGAMENT:  Right.

17                        MR. MEEHAN:  -- that would have been

18             money --

19                        MR. PERGAMENT:  Is that in writing,

20             this arrangement?

21                        MR. MEEHAN:  Does it have to be?

22                        MR. PERGAMENT:  I -- excuse me.  You

23             don't ask me questions.  You answer mine.

24                        MR. MEEHAN:  Well, tell me --

25                        MR. PERGAMENT:  I don't like --
```

Case 1:22-cv-21485-RNS Document 36-5 Entered on FLSD Docket 06/27/2022 Page 516 of
889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 27 of 123

```
 1                    MR. MEEHAN:  (Indiscernible).

 2                    MR. PERGAMENT:  -- your attitude.

 3                    MR. MEEHAN:  I'm just trying to

 4          understand the question.

 5                    MR. PERGAMENT:  What didn't you

 6          understand about my questions?

 7                    MR. MEEHAN:  I just told you.

 8                    MR. PERGAMENT:  You don't understand.

 9          Why don't we start from the beginning.  Are you a

10          high school graduate, sir?

11                    MR. MEEHAN:  I'm a college graduate.

12                    MR. PERGAMENT:  What high school did

13          you graduate from, sir?

14                    MR. MEEHAN:  Hampton Bays.

15                    MR. PERGAMENT:  Hampton Bays.  What

16          year did you graduate from Hampton --

17                    MR. MEEHAN:  Why is --

18                    MR. PERGAMENT:  -- Bays?

19                    MR. MEEHAN:  -- this relevant?

20                    MR. PERGAMENT:  I -- because I want to

21          know your background, sir.

22                    MR. MEEHAN:  2002.

23                    MR. PERGAMENT:  Thank you.  What

24          college did you attend?

25                    MR. MEEHAN:  Franklin Pierce
```

Case 1:22-cv-21485-RNS Document 40-10 Entered on FLSD Docket 06/29/2023 Page 517 of 889
Case 1:18-mc-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2019 Page 26 of 123

```
 1            University, 2006.

 2                    MR. HILLEN:  Answer the question.

 3                    MR. PERGAMENT:  2006.  And you

 4        graduated with a BA or a BS?

 5                    MR. MEEHAN:  Double major, BA.

 6                    MR. PERGAMENT:  Did you attend any

 7        post-undergraduate education?  What were your

 8        majors in college?

 9                    MR. MEEHAN:  Criminal justice.

10                    MR. PERGAMENT:  You said double major.

11        What was --

12                    MR. MEEHAN:  Mass communication.

13                    MR. PERGAMENT:  -- the other major?

14        Excuse me?

15                    MR. MEEHAN:  Mass comm.

16                    MR. PERGAMENT:  Mass communication.

17        And what is your date of birth?

18                    MR. MEEHAN:  4/3/84.

19                    MR. PERGAMENT:  Did you meet with Mr.

20        Nierman before he saw Judge Hagler?

21                    MR. MEEHAN:  Yeah.

22                    MR. PERGAMENT:  And what did you

23        discuss with Mr. Hagler?

24                    MR. MEEHAN:  What did I -- I don't talk

25        to the judge.  I talked to my lawyer.
```

Case 1:22-cv-21485-RNS Document 39-10 Entered on FLSD Docket 06/29/2022 Page 518 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 25 of 123

```
 1                    MR. PERGAMENT:  What did you discuss

 2         with Mr. Nierman before he appeared before Judge

 3         Hagler?

 4                    MR. MEEHAN:  How are we going to get

 5         this to go away.

 6                    MR. PERGAMENT:  How he's going to get

 7         it to go away?

 8                    MR. MEEHAN:  Yeah, the pests who were

 9         trying to dismiss our judgment.

10                    MR. PERGAMENT:  And that was NLG trying

11         to do that?

12                    MR. MEEHAN:  Yeah.

13                    MR. PERGAMENT:  Was Mr. Kosachuk trying

14         to do that as well?

15                    MR. MEEHAN:  I guess.  He claims that

16         he's supposedly in charge.  But --

17                    MR. PERGAMENT:  Who claims that he's in

18         charge of what?

19                    MR. MEEHAN:  He does.

20                    MR. PERGAMENT:  Who's he?

21                    MR. MEEHAN:  This gentleman right here.

22                    MR. PERGAMENT:  Mr. Kosachuk.  You

23         pointed to Mr. Kosachuk.  Is that correct?

24                    MR. MEEHAN:  I -- I guess so.  I don't

25         see his ID.  I don't know.  I've never met him in
```

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 06/30/2022 Page 519 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 30 of 23
889

```
 1          person.

 2                    MR. PERGAMENT:  Oh, so you're just --

 3          but how do you know the gentleman, then?

 4                    MR. MEEHAN:  Well, you know, there's

 5          pictures and social media.

 6                    MR. PERGAMENT:  Social media.  What

 7          social media are we talking about?

 8                    MR. MEEHAN:  Google.

 9                    MR. PERGAMENT:  Google.  So you googled

10          Mr. Kosachuk.  Is that right?

11                    MR. MEEHAN:  No.  I didn't.

12                    MR. PERGAMENT:  Oh, so how did you see

13          his picture?

14                    MR. MEEHAN:  Someone else did it for

15          me.

16                    MR. PERGAMENT:  Who did that?

17                    MR. MEEHAN:  I don't know.

18                    MR. PERGAMENT:  You don't remember?

19                    MR. MEEHAN:  I don't remember.

20                    MR. PERGAMENT:  Was it done a week ago,

21          a month ago or six years ago?

22                    MR. MEEHAN:  Years ago.

23                    MR. PERGAMENT:  Years ago.  What was

24          the reason why Selective Advisors Group filed

25          bankruptcy?
```

Case 1:22-cv-21485-RNS Document 30-1 Entered on FLSD Docket 06/14/2022 Page 520 of
889

```
 1                        MR. MEEHAN:  Because I want to try to

 2           bring my attorney back.

 3                        MR. PERGAMENT:  I don't understand.

 4           What does that mean?

 5                        MR. MEEHAN:  I want to bring Joseph

 6           Nierman back --

 7                        MR. PERGAMENT:  Back --

 8                        MR. MEEHAN:  -- to settle the debt into

 9           the case that we're talking about.

10                        MR. PERGAMENT:  So you filed bankruptcy

11           holding a $5 million judgment to discharge a

12           $3,500 bill.  Is that correct?

13                        MR. MEEHAN:  No.

14                        MR. PERGAMENT:  Then why did you file

15           bankruptcy?

16                        MR. MEEHAN:  Because there's no money

17           in that $5 million judgment.  It's uncollectable.

18                        MR. PERGAMENT:  It's uncollectable.

19           Okay.

20                        Now so I understand, is there any other

21           proceedings in any other state involving

22           Selective Advisors Group?

23                        MR. MEEHAN:  Yes.

24                        MR. PERGAMENT:  And where are those

25           proceedings pending?
```

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 06/24/2022 Page 521 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/24/2023 Page 32 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 28 of 119

```
 1                        MR. MEEHAN:  Pennsylvania.

 2                        MR. PERGAMENT:  What's pending in

 3          Pennsylvania?

 4                        MR. MEEHAN:  Garnishments.

 5                        MR. PERGAMENT:  What else is pending?

 6                        MR. MEEHAN:  Just two garnishments.

 7                        MR. PERGAMENT:  Uh-huh.  Is there

 8          anything pending in Florida?

 9                        MR. MEEHAN:  Yes, there is.

10                        MR. PERGAMENT:  What's pending in

11          Florida?

12                        MR. MEEHAN:  Well, pending -- Mr. --

13                        MR. HILLEN:  Your Honor, are you making

14          reference to the --

15                        MR. MEEHAN:  I don't think I have

16          anything pending.

17                        MR. PERGAMENT:  Yeah.  You can show him

18          the papers.

19                        MR. MEEHAN:  Sure.

20                        MR. HILLEN:  These are the list of

21          suits that were included on the petition.  The

22          thing he's referring to is the suit.

23                        MR. MEEHAN:  Yeah.

24                        MR. HILLEN:  Okay.

25                        MR. MEEHAN:  That -- we spoke about
```

Case 1:22-cv-21485-RNS Document 20-6 Entered on FLSD Docket 06/29/2022 Page 522 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 35 of 123

```
 1          that one.
 2                    MR. HILLEN:  Yeah, but he's asking you
 3          again.
 4                    MR. MEEHAN:  Okay.  So, yes.
 5                    MR. HILLEN:  You need to --
 6                    MR. PERGAMENT:  What is the lawsuit in
 7          Florida?  What are you trying to do in Florida?
 8                    MR. MEEHAN:  This says this, though.
 9          All these pages look the same.  Oh, now I see the
10          pending.  There's a writ of bodily attachment
11          against the individual, Chris Kosachuk,
12          Christopher.  That's what's pending.
13                    MR. PERGAMENT:  Do you know a Darius
14          Marzec?
15                    MR. MEEHAN:  Yeah.
16                    MR. PERGAMENT:  Who is he?
17                    MR. MEEHAN:  He's a lawyer.
18                    MR. PERGAMENT:  How do you know him?
19                    MR. MEEHAN:  How do I know him?  I know
20          him as a lawyer.
21                    MR. PERGAMENT:  Okay.  Now I'm a little
22          bit confused, and maybe you could help me.
23                    MR. MEEHAN:  Maybe.
24                    MR. PERGAMENT:  And maybe not.  You
25          told me Mr. Houle is the -- was the owner of
```

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 06/24/2022 Page 523 of 889
Case 1:18-cv-25369-KMW Document 22-6 Entered on FLSD Docket 02/24/2023 Page 34 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 30 of 119

Page 29

```
 1              9197-5904 Quebec, Inc.  Is that right?

 2                      MR. MEEHAN:  Is that -- I'm not sure

 3          about the numbers you said.

 4                      MR. PERGAMENT:  Well, it's the name of

 5          the company.  Here, you see the assignment of

 6          judgment?

 7                      MR. MEEHAN:  Sure.

 8                      MR. PERGAMENT:  So that says 9197-5904

 9          Quebec, Inc.  That's his company, right?

10                      MR. MEEHAN:  Yeah.

11                      MR. PERGAMENT:  Okay.  Who owned NLG,

12          do you know?

13                      MR. MEEHAN:  Do I know who owns it?

14                      MR. PERGAMENT:  Yeah.

15                      MR. MEEHAN:  I don't know.

16                      MR. PERGAMENT:  Do you know if Mr.

17          Houle owns it?

18                      MR. MEEHAN:  He doesn't own it.

19                      MR. PERGAMENT:  Do you know if Mr.

20          Houle was its manager?

21                      MR. MEEHAN:  Well --

22                      MR. PERGAMENT:  Is it --

23                      MR. MEEHAN:  -- we did step in their

24          shoes --

25                      MR. PERGAMENT:  Is Mr. --
```

Case 1:22-cv-21485-RNS Document 20-65 Entered on FLSD Docket 04/24/2023 Page 524 of 889
Case 1:18-mc-25369-KMM Document 22-6 Filed 11/13/19 Docket 02/27/2019 Page 35 of 123

```
 1                    MR. MEEHAN:  -- for a period --

 2                    MR. PERGAMENT:  No.  That's not my

 3          question.  Is Mr. Houle the --

 4                    MR. MEEHAN:  Well, I'm --

 5                    MR. PERGAMENT:  -- manager of --

 6                    MR. MEEHAN:  -- you want --

 7                    MR. PERGAMENT:  -- NLG?

 8                    MR. MEEHAN:  Currently today?

 9                    MR. PERGAMENT:  At any time in the last

10          five years?

11                    MR. MEEHAN:  Yes, he was.

12                    MR. PERGAMENT:  So he was --

13                    MR. MEEHAN:  You heard me.  Yes.

14                    MR. PERGAMENT:  He -- excuse me.

15                    MR. MEEHAN:  I just want to be clear.

16                    MR. PERGAMENT:  You're not being clear.

17          Your testimony is Mr. Houle was both the manager

18          of 9197-5904 Quebec, Inc. and the manager of NLG,

19          LLC.  Is that right?

20                    MR. MEEHAN:  Is that right?

21                    MR. PERGAMENT:  Yes.  That's my

22          question.

23                    MR. MEEHAN:  Can you repeat the

24          question?

25                    MR. PERGAMENT:  Was Mr. Houle the
```

Case 1:22-cv-21485-RNS Document 30-10 Entered on FLSD Docket 06/04/2022 Page 525 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 36 of 123

```
 1            manager of both companies in the last five years?

 2                    MR. MEEHAN:  At the same time?

 3                    MR. PERGAMENT:  At any time.

 4                    MR. MEEHAN:  Yeah.  He was.

 5                    MR. PERGAMENT:  So he confessed

 6            judgment on behalf of NLG to 9197-5904 Quebec.

 7            Is that right?

 8                    MR. MEEHAN:  Yeah.

 9                    MR. PERGAMENT:  He did that.  Why did

10            he do that?

11                    MR. MEEHAN:  Because they owed him

12            money.

13                    MR. PERGAMENT:  Oh.  His own company

14            owed him money so he confessed judgment?

15                    MR. MEEHAN:  Well, those -- the -- all

16            this was already argued.

17                    MR. PERGAMENT:  I --

18                    MR. MEEHAN:  So --

19                    MR. PERGAMENT:  Excuse me.  You're in

20            front of me.  You are to answer my questions.  If

21            you don't want to answer my questions, we'll go

22            see Judge -- who has this case?  Judge Grossman

23            and you can explain to Judge Grossman under oath.

24            Tell me what you would rather do.

25                    MR. MEEHAN:  I would rather stay here.
```

Case 1:22-cv-21485-RNS Document 30-10 Entered on FLSD Docket 06/27/2022 Page 526 of 889

```
 1                    MR. PERGAMENT:  Then you answer my

 2         question and don't -- don't have attitude with me

 3         and don't ask me questions.  Is that clear?

 4                    MR. MEEHAN:  Yes.

 5                    MR. PERGAMENT:  Good.

 6                    Counsel, is that clear?

 7                    MR. HILLEN:  Yes, sir.

 8                    MR. PERGAMENT:  Good.  Back to my

 9         question, you're testifying that Mr. Houle

10         confessed judgment from one of his companies to

11         another one of his companies.  Is that right?

12                    MR. MEEHAN:  It's a confusing question.

13                    MR. PERGAMENT:  What's confusing about

14         it?

15                    MR. MEEHAN:  Just the way you word it.

16                    MR. PERGAMENT:  I'm sorry.  Do you

17         understand it?

18                    MR. MEEHAN:  Can you repeat it, please?

19                    MR. PERGAMENT:  Why did Mr. Houle

20         confess judgment on behalf of NLG for the benefit

21         of 9197-5904 Quebec, Inc.?

22                    MR. MEEHAN:  Because they were owed

23         money.

24                    MR. PERGAMENT:  How much money was

25         owed?
```

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 06/29/2022 Page 527 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/29/2019 Page 36 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 34 of 119

Page 33

```
 1                    MR. MEEHAN:  $5 million.

 2                    MR. PERGAMENT:  And do you know the

 3          basis of the $5 million debt?  Was that a loan?

 4                    MR. MEEHAN:  Was it a loan?

 5                    MR. PERGAMENT:  How -- how did it come

 6          about that he owed $5 million?

 7                    MR. MEEHAN:  I wasn't involved.

 8                    MR. PERGAMENT:  Did you ask him?

 9                    MR. MEEHAN:  No, I didn't.

10                    MR. PERGAMENT:  And Mr. Houle just

11          called you up and said, do me a favor, Sean.  I

12          want to assign this $5 million judgment that I

13          have to your company, Selective, and you'll pay

14          me down the road.  Is that right?  Is that what

15          you want me to believe?

16                    MR. MEEHAN:  It's not about what you

17          want to believe.

18                    MR. PERGAMENT:  Is that what you're

19          asking us to believe?

20                    MR. MEEHAN:  I'm not asking you to

21          believe.  It's the facts.

22                    MR. PERGAMENT:  It's the facts.

23             (Pause)

24                    MR. PERGAMENT:  Who is Evguenia,

25          E-V-G-U-E-N-I-A Lorret, L-O-R-R-E-T?
```

Case 1:22-cv-21485-RNS Document 33-5 Entered on FLSD Docket 06/29/2022 Page 528 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2019 Page 35 of 123

```
 1                    MR. MEEHAN:  She was one of the owners

 2          of 6913 Valencia where her home was

 3          (indiscernible).

 4                    MR. PERGAMENT:  And who is Nina Gog --

 5          G-O-G-I-T-I-D-Z-E?

 6                    MR. MEEHAN:  I don't know who that is.

 7                    MR. PERGAMENT:  Okay.  Was Mr. Nierman

 8          trying to enforce his claim against Selective

 9          Advisor Group?

10                    MR. MEEHAN:  He was trying to enforce

11          his claim?

12                    MR. PERGAMENT:  Yeah.  You filed

13          bankruptcy, so there had to be a reason why

14          you're filing bankruptcy.

15                    MR. MEEHAN:  Yeah.  Of course.

16                    MR. PERGAMENT:  What was he doing to

17          try to enforce it?

18                    MR. MEEHAN:  What was he doing?

19                    MR. PERGAMENT:  Yeah.

20                    MR. MEEHAN:  Withholding documents.

21                    MR. PERGAMENT:  What documents?

22                    MR. MEEHAN:  Like the case file.

23                    MR. PERGAMENT:  Why do you need the

24          case file?

25                    MR. MEEHAN:  To give to the new lawyer.
```

Case 1:22-cv-21485-RNS Document 30-1 Entered on FLSD Docket 06/40/2022 Page 529 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2019 Page 46 of 123

```
 1                    MR. PERGAMENT:  Who's the new lawyer?

 2                    MR. MEEHAN:  The new lawyer on record

 3         is James Vlahdamis.

 4                    MR. PERGAMENT:  Well, right now there's

 5         a bankruptcy so I'm the new -- I'm the trustee.

 6         So everything is turned over to me.  Did Mr.

 7         Nierman turn things over to you?

 8                    MR. MEEHAN:  Me personally?

 9                    MR. PERGAMENT:  Yeah.

10                    MR. MEEHAN:  No.  He gave it to my

11         lawyer at the time.

12                    MR. PERGAMENT:  Who did he give it to?

13                    MR. MEEHAN:  James Vlahdamis.

14                    MR. PERGAMENT:  Is that an attorney in

15         your firm?

16                    MR. HILLEN:  Yes.

17                    MR. PERGAMENT:  Oh, and what documents

18         did he turn over to your firm?

19                    MR. HILLEN:  That I know of, none.  I

20         don't believe he released the file.

21                    MR. PERGAMENT:  Now wait a second.

22         Your -- the debtor, his representative, has told

23         you that the papers were turned over to your law

24         firm.

25                    MR. HILLEN:  I'm unaware of that.
```

Case 1:22-cv-21485-RNS Document 29-16 Entered on FLSD Docket 06/14/2022 Page 530 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2019 Page 41 of 123

```
 1                    MR. PERGAMENT:  Well, who's aware?

 2                    MR. HILLEN:  My -- I can inquire with

 3          Mr. Vlahdamis what Mr. Nierman gave him or did

 4          not give him, but I'm unaware of what he may have

 5          or may not have given him.

 6                    MR. PERGAMENT:  I just get this

 7          impression that this Court is being played, so

 8          you understand.

 9                    MR. HILLEN:  No, I understand.

10                    MR. PERGAMENT:  I expect an answer to

11          that from him, not from you.  I want a letter

12          from that attorney in your firm by Monday --

13                    MR. HILLEN:  Absolutely.

14                    MR. PERGAMENT:  -- explaining what

15          documents he has and if he has any documents

16          related to the debtor, turn them over to me.  He

17          has no right to hold those documents.

18                    MR. HILLEN:  (Indiscernible).

19                    MR. PERGAMENT:  Mr. Kosachuk, you're

20          here today.  Do you have questions you want to

21          ask Mr. Meehan?

22                    MR. HILLEN:  Mr. Pergament, if I may --

23                    MR. PERGAMENT:  Yeah.

24                    MR. HILLEN:  The standing of Mr.

25          Kosachuk to ask questions?  He's not a creditor
```

Case 1:22-cv-21485-RNS Document 40-10 Entered on FLSD Docket 06/24/2022 Page 531 of 889
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/14/2019 Page 42 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 38 of 119

```
 1              of the estate.

 2                      MR. PERGAMENT:  He's a party in

 3              interest, sir.

 4                      MR. HILLEN:  Okay.

 5                      MR. PERGAMENT:  Mr. Kosachuk, you have

 6              any questions?  If you don't have any, you don't

 7              have to.  But you have an opportunity to ask him

 8              questions if you would like.  Do you have any

 9              questions?

10                      MR. KOSACHUK:  No.

11                      MR. PERGAMENT:  Okay.  Is there a

12              foreclosure action pending in Florida, Mr.

13              Meehan?

14                      MR. MEEHAN:  Is there a foreclosure

15              action pending?

16                      MR. PERGAMENT:  Yeah.

17                      MR. MEEHAN:  Yeah.

18                      MR. PERGAMENT:  Excuse me.

19                      MR. MEEHAN:  Yeah.

20                      MR. PERGAMENT:  Yes?  Okay.  And what

21              property is the subject of that foreclosure

22              action?

23                      MR. MEEHAN:  What property?  6913.

24                      MR. PERGAMENT:  Oh, the one that you

25              live in?
```

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 39 of 119

```
 1                    MR. MEEHAN:  Yeah.

 2                    MR. PERGAMENT:  Is that correct?

 3                    MR. MEEHAN:  Yeah.

 4                    MR. PERGAMENT:  And who is titled to

 5          that house, 6913 Valencia Drive?

 6                    MR. MEEHAN:  Elizabeth Hazan.

 7                    MR. PERGAMENT:  And who is she?

 8                    MR. MEEHAN:  Who is she?

 9                    MR. PERGAMENT:  Yeah.  How's she

10          related to you?  Is she your girlfriend?  Is she

11          your wife?  Is she a friend?

12                    MR. MEEHAN:  She's my wife.

13                    MR. PERGAMENT:  So when I ask who she

14          is, and who -- what her relation is, my question

15          was a tricky question, right?

16                    MR. MEEHAN:  Some of them were today.

17                    MR. PERGAMENT:  That question was

18          tricky?

19                    MR. MEEHAN:  I was making sure.

20                    MR. PERGAMENT:  You were making sure?

21                    MR. MEEHAN:  I have a right to make

22          sure I understand the question.

23                    MR. PERGAMENT:  Yes, you do, sir.

24          Definitely.  So who is foreclosing on 6913

25          Valencia Drive, what lender or what entity?
```

Case 1:22-cv-21485-RNS Document 89-10 Entered on FLSD Docket 06/24/2022 Page 533 of 889
Case 1:18-cv-23889-KMW Document 22-6 Entered on FLSD Docket 02/27/2023 Page 44 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 40 of 119

1        MR. MEEHAN:  What entity?

2        MR. PERGAMENT:  Yeah.  Who was doing a

3    foreclosure?

4        MR. MEEHAN:  NLG.

5        MR. PERGAMENT:  NLG.  So NLG is trying

6    to foreclose on the house in Florida that your

7    wife owns.  Are you on that deed to that house?

8        MR. MEEHAN:  No.

9        MR. PERGAMENT:  Who came up with this

10    idea of filing the bankruptcy in this court on

11    behalf of Selective Advisors Group?

12        MR. MEEHAN:  Myself.

13        MR. PERGAMENT:  Oh, you're an expert in

14    bankruptcy matters?

15        MR. MEEHAN:  Well, when I know that we

16    owe money and I want to bring my lawyer back,

17    like I told you.

18        MR. PERGAMENT:  Right.  And which

19    lawyer did you speak to to do that?

20        MR. MEEHAN:  Which lawyer?

21        MR. PERGAMENT:  Yeah, to file this

22    bankruptcy?  Did you meet Mr. Hillen?

23        MR. MEEHAN:  Yeah.  His law firm.

24        MR. PERGAMENT:  No.  No.  Did you meet

25    Mr. Hillen?  Not his law firm, did you meet him?

Case 1:22-cv-21485-RNS Document 39-1 Entered on FLSD Docket 06/14/2022 Page 534 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2023 Page 45 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 41 of 119

```
 1              I want to know who you met with and who gave you

 2         the advice?

 3                   MR. MEEHAN:  Yes.

 4                   MR. PERGAMENT:  You met with Mr.

 5         Hillen?

 6                   MR. MEEHAN:  Yes.

 7                   MR. PERGAMENT:  He gave you the advice

 8         to file this bankruptcy?

 9                   MR. MEEHAN:  Yes.  That's why I'm here.

10                   MR. PERGAMENT:  That's why you're here.

11         And he explained to you the value of filing

12         bankruptcy.  Is that correct?

13                   MR. MEEHAN:  Yeah.

14                   MR. PERGAMENT:  And you told him that

15         you were filing bankruptcy because you wanted to

16         get the file from Mr. Nierman.  Is that right?

17                   MR. MEEHAN:  No.

18                   MR. PERGAMENT:  Then why did you file -

19         - did you have your attorney file the bankruptcy?

20                   MR. MEEHAN:  So I could bring my old

21         lawyer back.

22                   MR. PERGAMENT:  I don't understand.

23         How do you bring him back?

24                   MR. MEEHAN:  To settle the debt and I

25         can bring him back.  He doesn't want to work for
```

Case 1:22-cv-21485-RNS Document 30-10 Entered on FLSD Docket 06/24/2022 Page 535 of 889
Case 1:18-cv-25369-KMM Document 22-6 Entered on FLSD Docket 02/27/2019 Page 46 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 42 of 119

```
 1              free.

 2                      MR. PERGAMENT:  But your -- have you

 3         paid him any money?

 4                      MR. MEEHAN:  Originally, yeah.

 5                      MR. PERGAMENT:  How much did you pay

 6         him?

 7                      MR. MEEHAN:  $1,200.

 8                      MR. PERGAMENT:  To enforce a $5 million

 9         judgment.  Is that correct?

10                      MR. MEEHAN:  That's correct.

11                      MR. PERGAMENT:  Okay.  Counsel, I'll

12         expect the information I requested.  As of now, I

13         expect the debtor to come back.  As of now we

14         have it on for July 15th at 10:30.  You and I

15         will speak before then if it's required, but as

16         of now I expect him to be here for further

17         questions, and I will send you a letter asking

18         for more documents because there -- there are

19         issues that I have with this case that need to be

20         further developed for the Court.

21                      MR. HILLEN:  Understood.

22                      MR. PERGAMENT:  Okay.  Thank you, sir.

23         (341 hearing concluded)

24

25
```

Case 1:22-cv-21485-RNS Document 42-5 Entered on FLSD Docket 06/17/2022 Page 536 of 889
Case 1:18-mc-25369-KMW Document 22-6 Filed on FLSD Docket 02/27/2019 Page 47 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 43 of 119

```
 1                              CERTIFICATION

 2

 3      I, Sherri L. Breach, certify that the foregoing transcript

 4      is a true and accurate record of the proceedings.

 5

 6

 7      _____

 8      Sherri L. Breach

 9      AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12      DATE:   September 24, 2015

13

14

15

16

17

18

19

20

21

22      Veritext Legal Solutions

23      330 Old Country Road

24      Suite 300

25      Mineola, NY 11501
```

& conducted]

| & |
|---|
| **&** 2:2 42:9 |

| 1 |
|---|
| **1** 1:16 |
| **1,200** 41:7 |
| **103** 6:5,25 |
| **109** 4:7 |
| **10:30** 41:14 |
| **11501** 42:25 |
| **11946** 2:6 |
| **148** 2:4 |
| **15-72153** 1:3 |
| **15th** 41:14 |

| 2 |
|---|
| **2002** 22:22 |
| **2006** 23:1,3 |
| **2015** 1:16 42:12 |
| **24** 42:12 |
| **29th** 5:12 |

| 3 |
|---|
| **3** 2:5 5:18 |
| **3,500** 18:22 19:1 26:12 |
| **30** 6:18 |
| **300** 42:24 |
| **30th** 5:12 |
| **33** 4:6 |
| **330** 42:23 |
| **33109** 4:4 |
| **341** 1:13 41:23 |
| **397** 42:9 |

| 4 |
|---|
| **4/3/84** 23:18 |
| **48** 16:7 |

| 5 |
|---|
| **5** 17:8,9 26:11,17 33:1,3,6,12 41:8 |

| 6 |
|---|
| **6913** 3:23,24 34:2 37:23 38:5,24 |

| 9 |
|---|
| **9197-5904** 20:1,23 29:1,8 30:18 31:6 32:21 |

| a |
|---|
| **aaert** 42:9 |
| **absolutely** 36:13 |
| **accurate** 42:4 |
| **action** 37:12,15,22 |
| **add** 3:18 |
| **address** 3:19,22,23 6:5,7,10 15:18 16:2 16:8 |
| **addresses** 16:9 |
| **admitted** 5:8 |
| **advice** 40:2,7 |
| **advise** 8:4 |
| **advisers** 8:5 |
| **advisor** 34:9 |
| **advisors** 1:7 3:2 4:13 5:8 7:20 9:11 9:17 12:10 14:2 17:4,18 20:20,25 25:24 26:22 39:11 |
| **age** 14:6 |
| **ago** 25:20,21,21,22 25:23 |
| **agree** 11:12,13 18:9 18:11 |
| **agreed** 13:14 14:7 |
| **agreement** 14:11 |
| **amount** 18:19 |
| **answer** 10:21 14:11 14:13 21:23 23:2 31:20,21 32:1 36:10 |
| **answers** 5:3 |
| **appearance** 5:6 |
| **appeared** 19:8 24:2 |
| **appearing** 19:15 |
| **argued** 31:16 |
| **arrangement** 21:20 |
| **aside** 8:16 |
| **asked** 10:13 |
| **asking** 8:8,9,17,24 10:12 12:7 13:2 15:14 17:5,6 28:2 33:19,20 41:17 |
| **asset** 9:9 11:8 |
| **assets** 8:3,5,9,18,20 9:3 |

| (col 3) |
|---|
| **assign** 20:23 33:12 |
| **assigned** 13:5 14:1 17:4 21:3,10 |
| **assignment** 13:8,14 29:5 |
| **assignments** 21:14 |
| **assisted** 10:14 |
| **associate** 16:20 |
| **attachment** 28:10 |
| **attend** 22:24 23:6 |
| **attitude** 22:2 32:2 |
| **attorney** 2:3 8:25 10:14,16 26:2 35:14 36:12 40:19 |
| **aware** 36:1 |

| b |
|---|
| **ba** 23:4,5 |
| **back** 26:2,6,7 32:8 39:16 40:21,23,25 41:13 |
| **background** 22:21 |
| **bankruptcy** 1:1 5:11,22 7:10 11:8 18:14 20:16 25:25 26:10,15 34:13,14 35:5 39:10,14,22 40:8,12,15,19 |
| **basis** 33:3 |
| **bays** 2:6 6:6,14,23 22:14,15,18 |
| **beginning** 22:9 |
| **behalf** 5:7 9:17 31:6 32:20 39:11 |
| **believe** 5:12 33:15 33:17,19,21 35:20 |
| **benefit** 32:20 |
| **big** 13:23 |
| **bill** 26:12 |
| **birth** 23:17 |
| **bit** 28:22 |
| **bodily** 28:10 |
| **bottom** 5:22 |
| **box** 5:18 |
| **breach** 42:3,8 |
| **bring** 26:2,5 39:16 40:20,23,25 |

| (col 4) |
|---|
| **bs** 23:4 |
| **business** 3:18 16:19 |

| c |
|---|
| **c** 2:1 3:1 |
| **called** 33:11 |
| **canada** 13:21,22,23 |
| **canadian** 14:6 |
| **care** 8:25 |
| **case** 1:3 20:16 26:9 31:22 34:22,24 41:19 |
| **cases** 20:21 |
| **casualty** 21:8 |
| **cert** 42:9 |
| **certification** 42:1 |
| **certified** 42:9 |
| **certify** 42:3 |
| **changes** 6:1 7:13 |
| **charge** 24:16,18 |
| **chris** 28:11 |
| **christopher** 2:12 20:6 28:12 |
| **citizen** 14:6 |
| **city** 18:7 19:13,16 |
| **claim** 18:21 34:8,11 |
| **claims** 24:15,17 |
| **clear** 30:15,16 32:3 32:6 |
| **collect** 17:15 |
| **collected** 21:15 |
| **college** 22:11,24 23:8 |
| **come** 12:13,15 14:1 15:10 33:5 41:13 |
| **comm** 23:15 |
| **communicate** 15:24 |
| **communication** 23:12,16 |
| **companies** 31:1 32:10,11 |
| **company** 8:18,21 12:19,25 14:23,24 15:2,5,6 20:4 21:3 29:5,9 31:13 33:13 |
| **concluded** 41:23 |
| **conducted** 1:14 |

Case 1:22-cv-23985-RNS Document 22-6 Entered on FLSD Docket 04/27/2023 Page 45 of 123
Case 1:22-cv-23985-RNS Document 22-6 Entered on FLSD Docket 04/27/2023 Page 538 of 889

| | | | |
|---|---|---|---|
| **confess** 32:20 | **disputed** 18:16,18 | **favor** 33:11 | **going** 8:11 24:4,6 |
| **confessed** 31:5,14 | **district** 1:2 5:9 | **figure** 14:18 | **good** 10:20 32:5,8 |
| 32:10 | **documents** 34:20 | **file** 26:14 34:22,24 | **google** 25:8,9 |
| **confused** 28:22 | 34:21 35:17 36:15 | 35:20 39:21 40:8,16 | **googled** 25:9 |
| **confusing** 32:12,13 | 36:15,17 41:18 | 40:18,19 | **graduate** 22:10,11 |
| **contact** 16:10 | **doing** 34:16,18 39:2 | **filed** 10:10 25:24 | 22:13,16 |
| **continental** 21:8 | **double** 23:5,10 | 26:10 34:12 | **graduated** 23:4 |
| **correct** 4:22,23 5:24 | **drive** 4:2 38:5,25 | **filing** 34:14 39:10 | **grossman** 31:22,23 |
| 7:10 12:11,12 13:6 | **driver's** 6:5 | 40:11,15 | **group** 1:7 3:3 4:13 |
| 14:22 20:10,12,21 | **due** 14:5 | **firm** 35:15,18,24 | 5:8 7:20 8:4,5 9:17 |
| 21:6,12 24:23 26:12 | | 36:12 39:23,25 | 12:10 14:2 25:24 |
| 38:2 40:12 41:9,10 | **e** | **five** 30:10 31:1 | 26:22 34:9 39:11 |
| **counsel** 5:5,15 9:4 | **e** 2:1,1 3:1,1,13 | **florida** 4:4 6:21 | **guess** 16:13 24:15 |
| 16:5 19:5,7 32:6 | 13:18 33:25,25,25 | 27:8,11 28:7,7 | 24:24 |
| 41:11 | 34:5 | 37:12 39:6 | |
| **country** 13:23 | **east** 2:4 | **foreclose** 39:6 | **h** |
| 42:23 | **eastern** 1:2 5:9 | **foreclosing** 38:24 | **h** 13:18 |
| **course** 34:15 | **education** 23:7 | **foreclosure** 37:12 | **hagler** 19:9,10,11 |
| **court** 1:1 20:20 | **elect** 3:4 | 37:14,21 39:3 | 19:15 23:20,23 24:3 |
| 36:7 39:10 41:20 | **electronic** 42:9 | **foregoing** 42:3 | **hampton** 2:6 6:6,14 |
| **creditor** 36:25 | **elizabeth** 2:13 12:1 | **forthcoming** 10:6 | 6:23 22:14,15,16 |
| **creditors** 3:3,4 | 38:6 | **franklin** 22:25 | **hand** 4:25 5:11,18 |
| **criminal** 23:9 | **email** 15:25 16:1,2 | **free** 41:1 | **hazan** 2:13 12:1,1 |
| **currently** 30:8 | 16:9 | **friend** 16:19,21 | 38:6 |
| | **enforce** 34:8,10,17 | 38:11 | **health** 14:4,6 |
| **d** | 41:8 | **friends** 16:12,14,15 | **heard** 3:5 30:13 |
| **d** 3:1 34:5 42:9 | **entity** 38:25 39:1 | **front** 19:8 31:20 | **hearing** 1:13 41:23 |
| **darius** 28:13 | **esq** 2:8 | **full** 12:24 | **help** 28:22 |
| **date** 23:17 42:12 | **estate** 37:1 | **further** 41:16,20 | **high** 22:10,12 |
| **days** 6:19 | **evans** 2:8 5:7 | | **highway** 2:4 |
| **debt** 15:12,14 26:8 | **evguenia** 33:24 | **g** | **hillen** 2:2,8 3:22 5:7 |
| 33:3 40:24 | **exact** 15:18 | **g** 3:1 33:25 34:5,5 | 5:7,16,20 7:17 8:20 |
| **debtor** 1:9 2:3 4:9 | **examination** 12:3 | **garnishment** 20:5 | 10:21 12:5 16:6 |
| 5:8 35:22 36:16 | **excuse** 3:8 8:4 | 20:14 | 23:2 27:13,20,24 |
| 41:13 | 10:17 11:23 15:1 | **garnishments** 27:4 | 28:2,5 32:7 35:16 |
| **debts** 17:18 | 21:22 23:14 30:14 | 27:6 | 35:19,25 36:2,9,13 |
| **deed** 39:7 | 31:19 37:18 | **gentleman** 24:21 | 36:18,22,24 37:4 |
| **definitely** 38:24 | **expect** 36:10 41:12 | 25:3 | 39:22,25 40:5 41:21 |
| **definition** 6:16 | 41:13,16 | **gift** 13:11 | **hmms** 4:21 |
| **delivered** 5:12 | **expert** 39:13 | **girlfriend** 38:10 | **hold** 9:4 11:23 |
| **developed** 41:20 | **explain** 31:23 | **give** 13:14 34:25 | 36:17 |
| **different** 6:18 | **explained** 40:11 | 35:12 36:4 | **holding** 26:11 |
| **discharge** 26:11 | **explaining** 36:14 | **given** 12:17 13:10 | **home** 3:18,22,23 |
| **discuss** 23:23 24:1 | | 36:5 | 34:2 |
| **dismiss** 19:21,23 | **f** | **go** 10:11,13 24:5,7 | **honor** 27:13 |
| 24:9 | **facts** 33:21,22 | 31:21 | **hook** 16:12 |
| **dispute** 18:14 | **far** 20:20 | **gog** 34:4 | **houle** 13:15,20 14:1 |
| | | | 14:3,16 15:18 16:11 |

28:25 29:17,20 30:3
30:17,25 32:9,19
33:10
**houle's** 16:8
**hours** 16:7
**house** 7:6 38:5 39:6
39:7
**how's** 38:9
**huh** 3:14 4:17 27:7

### i

**idea** 39:10
**identify** 3:7
**impression** 36:7
**included** 27:21
**indicates** 6:5
**indiscernible** 3:5
11:24 22:1 34:3
36:18
**individual** 28:11
**information** 41:12
**inquire** 36:2
**interest** 37:3
**interrupting** 12:3
**involved** 33:7
**involving** 26:21
**issues** 41:19

### j

**james** 35:3,13
**joseph** 18:5 26:5
**judge** 19:9,10,11,12
19:15 23:20,25 24:2
31:22,22,23
**judgment** 9:7,8,10
9:17,22,24 10:15
11:9 12:10 13:5
14:2,5,21 17:1,2,3
17:17 19:18,21,23
20:23 21:4,4,8 24:9
26:11,17 29:6 31:6
31:14 32:10,20
33:12 41:9
**july** 1:16 41:14
**justice** 23:9

### k

**keep** 7:14 10:9
**kind** 15:12,14 19:7
**know** 8:6,18 9:2
10:9 13:23 14:15
15:14,16,17 16:11
16:16,19 20:7,19
22:21 24:25 25:3,4
25:17 28:13,18,19
28:19 29:12,13,15
29:16,19 33:2 34:6
35:19 39:15 40:1
**kosachuk** 2:12 20:6
20:24 21:5 24:13,22
24:23 25:10 28:11
36:19,25 37:5,10

### l

**l** 13:18 33:25 42:3,8
**law** 35:23 39:23,25
**lawsuit** 28:6
**lawyer** 9:25 10:2
17:23 18:1,4 23:25
28:17,20 34:25 35:1
35:2,11 39:16,19,20
40:21
**leave** 11:22 12:2
**legal** 19:4,7 42:22
**lend** 15:7,8
**lender** 38:25
**letter** 36:11 41:17
**license** 6:5
**list** 20:5 27:20
**listed** 11:7 20:15,17
20:21
**little** 18:25 19:1
28:21
**live** 37:25
**llc** 1:7 3:3 13:1
30:19
**llp** 2:2
**loan** 33:3,4
**long** 16:16
**look** 28:9
**looking** 5:13
**lorret** 33:25

### lot 17:10
**lower** 5:17

### m

**m** 2:8
**maintain** 19:18,19
**major** 23:5,10,13
**majors** 23:8
**making** 27:13 38:19
38:20
**manager** 4:14,22
29:20 30:5,17,18
31:1
**managers** 8:1
**marc** 1:14
**marzec** 28:14
**mass** 23:12,15,16
**matter** 1:5
**matters** 39:14
**mean** 6:16 26:4
**media** 25:5,6,7
**meehan** 2:11 3:9,12
3:12,14,16,17,20,23
3:25 4:2,4,7,10,14
4:17,20,23 5:1,2,4
5:23,25 6:3,8,11,15
6:21,24 7:2,5,8,12
7:16,21,24 8:2,6,11
8:14,22 9:1,7,9,11
9:13,15,19,21,24
10:2,6,9,11,16,24
11:1,5,10,13,17,20
12:6,12,15,17,19,21
12:23 13:1,3,6,9,12
13:15,18,21,24 14:3
14:13,15,18,23,25
15:2,4,8,12,16,19
15:22,25 16:3,13,17
16:21,24 17:2,5,8
17:11,14,20,23 18:2
18:5,8,11,16,19,22
18:25 19:4,8,12,17
19:20,24 20:3,7,10
20:12,17,19 21:1,6
21:9,12,15,17,21,24
22:1,3,7,11,14,17
22:19,22,25 23:5,9
23:12,15,18,21,24

### 24:4,8,12,15,19,21
24:24 25:4,8,11,14
25:17,19,22 26:1,5
26:8,13,16,23 27:1
27:4,6,9,12,15,19
27:23,25 28:4,8,15
28:17,19,23 29:2,7
29:10,13,15,18,21
29:23 30:1,4,6,8,11
30:13,15,20,23 31:2
31:4,8,11,15,18,25
32:4,12,15,18,22
33:1,4,7,9,16,20
34:1,6,10,15,18,20
34:22,25 35:2,8,10
35:13 36:21 37:13
37:14,17,19,23 38:1
38:3,6,8,12,16,19
38:21 39:1,4,8,12
39:15,20,23 40:3,6
40:9,13,17,20,24
41:4,7,10
**meehan's** 5:14
**meet** 23:19 39:22,24
39:25
**member** 4:12,15,22
7:23
**members** 7:19
**met** 24:25 40:1,4
**miami** 4:4 6:13,21
**million** 17:8,9 26:11
26:17 33:1,3,6,12
41:8
**mine** 21:23
**mineola** 42:25
**monday** 36:12
**money** 11:12,14
14:5 15:7,8,11
16:23 17:10,21,24
17:25 18:10,12,15
18:17 19:3 21:14,18
26:16 31:12,14
32:23,24 39:16 41:3
**montauk** 2:4
**month** 6:19 25:21
**months** 6:24

Case 1:22-cv-21485-RNS Document 22 Entered on FLSD Docket 05/24/2023 Page 540 of 889
Case 1:18-cv-23683-KMM Document 22 Entered on FLSD Docket 02/27/2019 Page 51 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-23683-KMM **[montreal - questions]** Page 4
Page 47 of 119

**montreal** 13:24,25

## n

**n** 2:1 3:1,13 33:25
**name** 3:8,10 11:23
11:25 12:24 13:17
20:8 29:4
**neal** 2:11
**need** 4:18 28:5
34:23 41:19
**never** 24:25
**nevis** 14:25 15:4
**new** 1:2 2:6 18:6
19:12,15 34:25 35:1
35:2,5
**nierman** 18:5 23:20
24:2 26:6 34:7 35:7
36:3 40:16
**nights** 6:20
**nina** 34:4
**nlg** 9:13,14,18
10:15 11:9,12,13
12:10 14:14,19,21
15:7,9,11 16:23
19:24 21:4 24:10
29:11 30:7,18 31:6
32:20 39:4,5,5
**number** 15:21
**numbers** 16:9 29:3
**ny** 42:25

## o

**o** 3:1 13:18 33:25
34:5
**oath** 31:23
**obtained** 9:16,21,22
14:8
**obtaining** 10:14
**offshore** 15:5,6
**oh** 25:2,12 28:9
31:13 35:17 37:24
39:13
**okay** 3:13,17 4:8,12
4:24 5:10 6:4,17,25
7:3,9 8:3 9:1 11:11
12:9 13:4,7,13,22
13:25 14:14 15:7
18:3,23 26:19 27:24

28:4,21 29:11 34:7
37:4,11,20 41:11,22
**old** 40:20 42:23
**opportunity** 37:7
**originally** 41:4
**outside** 10:18
**owe** 17:21,23 18:10
18:11,14,17,21,24
19:3 39:16
**owed** 15:11 16:23
31:11,14 32:22,25
33:6
**owes** 17:25
**owned** 29:11
**owner** 28:25
**owners** 34:1
**owns** 6:25 8:10,19
29:13,17 39:7

## p

**p** 2:1,1 3:1
**page** 5:17,17,18,19
8:6
**pages** 8:9 28:9
**paid** 21:14 41:3
**papers** 5:11,15,22
7:10 18:14 27:18
35:23
**parents** 7:8
**party** 37:2
**patience** 10:10
**pause** 33:23
**pay** 11:12,14 13:8,9
33:13 41:5
**pending** 20:14,15
26:25 27:2,5,8,10
27:12,16 28:10,12
37:12,15
**pennsylvania** 27:1
27:3
**pergament** 1:14 3:2
3:10,13,15,17,21,24
4:1,3,5,8,12,15,18
4:21,24 5:2,5,10,19
5:21,24 6:1,4,9,12
6:17,22,25 7:3,6,9
7:13,18,22,25 8:3,8
8:13,15,24 9:2,8,10

9:12,14,16,20,22,25
10:4,8,13,17,20,23
10:25 11:2,7,11,15
11:19,22,25 12:2,8
12:13,16,18,20,22
12:24 13:2,4,7,11
13:13,16,19,22,25
14:10,14,16,20,24
15:1,3,6,10,13,17
15:20,23 16:1,5,7
16:15,18,22,25 17:3
17:7,9,12,16,21,25
18:3,6,9,13,18,20
18:23 19:2,6,10,14
19:19,22,25 20:4,9
20:11,13,18,22 21:2
21:7,10,13,16,19,22
21:25 22:2,5,8,12
22:15,18,20,23 23:3
23:6,10,13,16,19,22
24:1,6,10,13,17,20
24:22 25:2,6,9,12
25:16,18,20,23 26:3
26:7,10,14,18,24
27:2,5,7,10,17 28:6
28:13,16,18,21,24
29:4,8,11,14,16,19
29:22,25 30:2,5,7,9
30:12,14,16,21,25
31:3,5,9,13,17,19
32:1,5,8,13,16,19
32:24 33:2,5,8,10
33:18,22,24 34:4,7
34:12,16,19,21,23
35:1,4,9,12,14,17
35:21 36:1,6,10,14
36:19,22,23 37:2,5
37:11,16,18,20,24
38:2,4,7,9,13,17,20
38:23 39:2,5,9,13
39:18,21,24 40:4,7
40:10,14,18,22 41:2
41:5,8,11,22
**period** 30:1
**permanent** 6:12,15
6:16

**person** 25:1
**personally** 35:8
**pests** 24:8
**petition** 27:21
**ph** 18:5 19:9
**phone** 15:20 16:8
**picture** 25:13
**pictures** 25:5
**piece** 8:17
**pierce** 22:25
**played** 36:7
**please** 3:7 4:25 7:15
11:16,19,19,22,23
12:2 32:18
**point** 14:9
**pointed** 24:23
**post** 23:7
**present** 2:10 3:3
**proceedings** 26:21
26:25 42:4
**pronounce** 20:8
**property** 37:21,23
**provide** 16:8 19:3,6
19:7
**provided** 5:10
**purpose** 19:15,17
**pursue** 14:7
**put** 8:15,25

## q

**qualifies** 3:6
**quebec** 12:21,22,23
13:1,4,14 14:21
15:7,8,11 16:23
20:1,2,22,23 21:3,3
29:1,9 30:18 31:6
32:21
**quebec's** 14:2
**question** 4:11 10:3
10:22,22 11:1,4,20
22:4 23:2 30:3,22
30:24 32:2,9,12
38:14,15,17,22
**questions** 8:16
21:23 22:6 31:20,21
32:3 36:20,25 37:6
37:8,9 41:17

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-LT-5389-MCI-MOORE
Page 48 of 119

Page 5

## r

**r** 2:1 3:1 33:25,25
**raise** 4:24
**raymond** 13:15,16
**reason** 25:24 34:13
**record** 35:2 42:4
**reference** 27:14
**referring** 20:1
  27:22
**reg** 1:3
**related** 36:16 38:10
**relation** 38:14
**relationship** 4:9
**released** 35:20
**relevant** 11:21
  22:19
**remember** 25:18,19
**rental** 7:2
**repeat** 8:17 30:23
  32:18
**reporter** 42:9
**representative**
  35:22
**requested** 41:12
**required** 41:15
**reside** 13:20
**residence** 6:13
**responses** 4:19
**right** 4:24 5:17 16:4
  17:10,16 18:7 20:6
  21:11,16 24:21
  25:10 29:1,9 30:19
  30:20 31:7 32:11
  33:14 35:4 36:17
  38:15,21 39:18
  40:16
**road** 6:6 33:14
  42:23
**room** 11:23 12:2

## s

**s** 2:1 3:1,13
**saw** 23:20
**says** 28:8 29:8
**school** 22:10,12
**sean** 2:11 3:9,13 5:1
  33:11

**second** 5:17 14:20
  35:21
**see** 8:22 24:25
  25:12 28:9 29:5
  31:22
**selective** 1:7 3:2
  4:13 5:8 7:19 8:4,5
  9:11,17 12:9 13:7
  14:2 17:4,18,25
  20:20,24 21:11
  25:24 26:22 33:13
  34:8 39:11
**send** 41:17
**september** 42:12
**services** 19:3,4
**settle** 26:8 40:24
**sherri** 42:3,8
**shoes** 29:24
**show** 27:17
**sign** 5:14
**signature** 5:14,21
**signed** 7:11
**sir** 3:7,8,11 5:16
  6:13 7:15 8:9,24
  13:2 16:6 22:10,13
  22:21 32:7 37:3
  38:23 41:22
**sit** 12:5
**six** 25:21
**slow** 4:5
**slowly** 10:11,13
**social** 25:5,6,7
**sole** 7:22
**solutions** 42:22
**sorry** 32:16
**speak** 10:18 39:19
  41:15
**speaker** 10:19
  11:24
**spell** 13:17
**spend** 6:18,19,23
**spoke** 27:25
**standing** 36:24
**start** 22:9
**state** 11:5 26:21
**states** 1:1

**stay** 31:25
**step** 29:23
**straight** 12:5
**subject** 37:21
**suit** 27:22
**suite** 2:5 42:24
**suits** 27:21
**summer** 6:24
**supposedly** 14:25
  15:3 24:16
**sure** 4:10 5:4 11:10
  15:9 16:3 27:19
  29:2,7 38:19,20,22
**sworn** 5:1

## t

**t** 33:25 34:5
**take** 17:12
**talk** 23:24
**talked** 23:25
**talking** 11:6 25:7
  26:9
**tell** 9:15 14:16
  16:22 21:24 31:24
**telling** 13:3
**testifying** 32:9
**testimony** 30:17
**thank** 7:18 9:4,4
  22:23 41:22
**thing** 27:22
**things** 35:7
**think** 9:6 18:24
  27:15
**three** 6:24 16:17,18
**tiana** 6:6 7:1
**time** 6:22 17:5,7
  30:9 31:2,3 35:11
**titled** 38:4
**today** 30:8 36:20
  38:16
**told** 22:7 28:25
  35:22 39:17 40:14
**town** 4:3
**transcriber** 42:9
**transcript** 42:3
**tricky** 38:15,18
**tried** 14:4,18

**true** 42:4
**trustee** 3:4 35:5
**try** 26:1 34:17
**trying** 10:9 17:16
  19:20,22 22:3 24:9
  24:10,13 28:7 34:8
  34:10 39:5
**turn** 35:7,18 36:16
**turned** 35:6,23
**two** 6:24 27:6

## u

**u** 13:18 33:25
**uh** 3:14 4:17 27:7
**unacceptable** 12:4
**unaware** 35:25 36:4
**uncollectable** 26:17
  26:18
**undergraduate**
  23:7
**understand** 4:10
  10:3,5,18,22,24
  11:3,3,17 15:13
  17:17 22:4,6,8 26:3
  26:20 32:17 36:8,9
  38:22 40:22
**understanding** 12:6
  12:9
**understood** 41:21
**unidentified** 10:19
  11:24
**united** 1:1
**university** 23:1
**unsuccessfully** 14:5

## v

**v** 33:25
**valencia** 3:25 4:1
  34:2 38:5,25
**value** 40:11
**verbal** 4:18 5:3
**veritext** 42:22
**vlahdamis** 2:2 35:3
  35:13 36:3
**voice** 7:15

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 02/27/2023 Page 542 of 889
Case 1:18-mc-25989-KMM Document 22-6 Entered on FLSD Docket 02/27/2023 Page 55 of 123

| w | z |
|---|---|
| **wait**  14:20 35:21 | **z**  34:5 |
| **want**  3:21 5:2 6:1 | |
| 7:14 8:18 9:2 10:17 | |
| 20:19 22:20 26:1,5 | |
| 30:6,15 31:21 33:12 | |
| 33:15,17 36:11,20 | |
| 39:16 40:1,25 | |
| **wanted**  40:15 | |
| **way**  6:18 16:9 32:15 | |
| **week**  5:13 25:20 | |
| **west**  6:6 7:1 | |
| **whoa**  4:5,5 | |
| **wife**  38:11,12 39:7 | |
| **wish**  3:4 | |
| **withholding**  34:20 | |
| **word**  32:15 | |
| **words**  11:3 | |
| **work**  14:8 40:25 | |
| **writ**  28:10 | |
| **writing**  8:18 14:10 | |
| 14:11 21:19 | |
| **written**  20:11 | |
| **wrote**  8:14 | |

| x |
|---|
| **x**  1:4,10 |

| y |
|---|
| **yeah**  4:2 7:12 9:20 |
| 11:15 12:16 14:23 |
| 17:15 18:2,13 20:8 |
| 20:18 21:9 23:21 |
| 24:8,12 27:17,23 |
| 28:2,15 29:10,14 |
| 31:4,8 34:12,15,19 |
| 35:9 36:23 37:16,17 |
| 37:19 38:1,3,9 39:2 |
| 39:21,23 40:13 41:4 |
| **year**  22:16 |
| **years**  16:17,18 |
| 25:21,22,23 30:10 |
| 31:1 |
| **york**  1:2 2:6 18:6 |
| 19:12,16 |

# EXHIBIT 2



**ORDERED in the Southern District of Florida on October 31, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

In re:

LIZA HAZAN,                                        CASE NO. 16-10389-BKC-AJC
a/k/a ELIZABETH HAZAN

     Debtor.                                 CHAPTER 11
_____/
LIZA HAZAN a/k/a ELIZABETH HAZAN
and SELECTIVE ADVISORS GROUP, LLC,                 ADV. NO. 16-1439-BKC-AJC-A

     Plaintiffs,

vs.

NLG, LLC

     Defendant.
_____/

**<u>FINAL JUDGMENT ON COUNTS I, II AND III OF PLAINTIFFS' THIRD AMENDED
COMPLAINT DETERMINING VALIDITY, PRIORITY AND EXTENT OF LIENS AND
SETTING TRIAL ON COUNTS IV THROUGH IX</u>**

    **THIS CAUSE** came before the Court for trial on July 13, 2017 at 10:00 a.m., upon

Case 1:22-cv-21485-RNS Document 109-1 Entered on FLSD Docket 09/16/2022 Page 545 of
889
Case 1:18-mc-25369-MC-MOORE Document 62 Entered on FLSD Docket 11/27/2018 Page 56 of 123

Plaintiffs, Selective Advisors Group, LLC ("Selective") and Liza Hazan a/k/a Elizabeth Hazan's

Third Amended Complaint and Defendant, NLG, LLC's Counterclaim. Selective commenced

this Adversary Proceeding against NLG, LLC ("NLG") on August 21, 2016, seeking a

determination of the nature and extent of its claimed lien, if any. Debtor joined the adversary

proceeding against NLG on October 21, 2016. The Third Amended Complaint was deemed the

operative Complaint by Order entered January 23, 2017, and NLG filed an Amended Answer and

Counterclaim on May 17, 2017. In its Counterclaim, NLG also seeks a determination of the nature

and extent of its claimed lien and that its late filed claim be allowed as a timely filed claim. Plaintiffs

seek a determination that NLG has no remaining claim against this Debtor and no standing to

participate in this case.

The Court having reviewed the file, the documentary evidence and exhibits, having heard

the testimony of witnesses and argument of counsel, finds and concludes as follows.

### A. <u>Background</u>

Ms. Hazan is the owner of her homestead residence located at 6913 Valencia Drive, Fisher

Island, Florida (the "Property"). She purchased the Property on March 7, 2007 from NLG. Chris

Kosachuk is the manager and representative of NLG. For nearly a decade, Kosachuk and NLG have

litigated with Debtor in multiple courts and in several jurisdictions. The various courts have entered

final orders setting forth the rights and obligations of Ms. Hazan, NLG, and Selective.

All interested parties to the various controversies are now before this Court and subject to its

jurisdiction. This Court is not an appellate court for any of the other courts; thus, full faith and credit

must be given to all of the final judgments and orders entered in the other courts as those judgments

have become final and not subject to appeal.

There have been claims or assertions that some of these other court decisions are erroneous.

Case 1:22-cv-21485-RNS Document 109-3 Entered on FLSD Docket 10/16/2023 Page 546 of 889
Case 1:18-mc-25369-KMW Document 4 Entered on FLSD Docket 07/06/2023 Page 57 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 53 of 119

However, when the decisions or judgments of those courts became final and not subject to further appeal, those decisions or judgments became the law of the respective case and not subject to further review by this Court. While arguments have been made to accept one or more of the prior judgments and ignore others, those arguments are not persuasive and this Court will attempt to determine the rights of the parties by giving full faith and credit to all of the final orders and judgments.

**State Court Proceedings**

NLG's claim against Debtor arises from a promissory note (the "Note") (Exhibit 1) and mortgage (the "Mortgage") (Exhibit 2) on the Property, recorded in April 2007 in the original amount of $1,275,000.00. In June 2007, NLG sued Debtor for an alleged breach of the Note, in Miami-Dade Circuit Court, Case No. 07-19532 CA 11 (Exhibit 3). On April 28, 2008, Circuit Judge Robert N. Scola Jr. entered a Default Final Judgment on the Note (the "Scola Judgment") against Ms. Hazan in the amount of $1,618,071.29 with 11% interest per annum (Exhibit 4). NLG moved to domesticate the Scola Judgment in New York and litigation followed in the New York Supreme Court.

In December 2011, NLG filed a second lawsuit, Case No. 11-42770 CA (01), in Miami–Dade Circuit Court seeking to foreclose on the Mortgage (Exhibit 5). On February 8, 2013, the trial court judge, Judge Spencer Eig, ruled that NLG had made an election of remedies by first suing on the alleged breach of the Note, and obtaining a judgment thereon. As such, Judge Eig precluded NLG from foreclosing on the Mortgage (Exhibit 6). NLG appealed that decision to the Third District Court of Appeal.

On April 30, 2014, while the Eig Order was on appeal to the Third District Court of Appeal, Plaintiff Selective acquired a 2012 New York judgment against NLG [and in favor of 9197-5904 Quebec, Inc.] and recorded the foreign judgment in Miami-Dade County, Florida in Case No.14-10475 CA (10) assigned to Circuit Court Judge Peter Lopez (the "Quebec Judgment"). NLG filed a

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 54 of 119

Motion to Quash the recording of the New York judgment against it in Florida. However, after NLG

failed to post a bond as ordered, Judge Lopez denied NLG's motion to quash on June 16, 2014, finding

that Plaintiff Selective has the right to enforce and collect on their foreign judgment, the

$5,000,225.00 Quebec Judgment.

Thereafter, on July 2, 2014, Selective, as owner of the then-domesticated foreign judgment,

the Quebec Judgment, brought proceedings supplementary in Case No.14-10475 CA (10) specifically

to seize and attach NLG's judgment against Hazan (the Scola Judgment) for the purpose of partially

satisfying the Quebec Judgment. Circuit Judge Lopez heard the Proceedings Supplementary Motion

on August 12, 2014 and August 15, 2014, and entered an Order on August 20, 2014, judicially

assigning to Selective the Scola Judgment against Debtor (the "Lopez Assignment Order"). The

Lopez Assignment Order states in pertinent part:

> 1. The Court orders that the Hazan Final Judgment held by NLG, LLC, against
> Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and
> benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-
> Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability
> Company.
>
> 2. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC shall stand in
> the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG,
> LLC so as to entitle it to recover all proceeds attributable to said judgment against
> additional Defendant, Elizabeth Hazan, with NLG, LLC receiving credit for all sums
> so received.
>
> 3. Plaintiff, SELECTIVE ADVISORS GROUP, LLC shall give a credit to
> Defendant NLG, LLC in the sum of $2,746,953.34 which amount includes principal
> and interest through August 31, 2014 at the 11% judgment amount **without prejudice
> to Defendant establishing at further hearing why the credited amount should be
> greater**.

Exhibit 8 (emphasis added).

At trial, NLG argued that the Scola Judgment was the subject of an appeal at the time of the

assignment, and therefore could not have been judicially assigned by Judge Lopez. However, Judge

Lopez actually addressed and dismissed that argument when he denied NLG's motion to reconsider

the Order of assignment of the Scola Judgment to Selective:

> Okay, so I assigned your interest in it to them (Selective), which had nothing to do
> with what's going on up on appeal. . . .
>
> That judgment that I assigned to them (Selective) or that interest in that judgment was
> up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win
> or lose, whatever happens, now, these people own it instead of you. The Third came
> back and said, too bad, you get to foreclose, they now own that judgment or note if
> that's what merged into it, they (Selective) get to go and foreclose.

Exhibit 22, Tr page 24 lines 3-5; Tr page 26 Lines 3-12.  Judge Lopez's Orders are final.

**Satisfaction and Payment of the Scola Judgment**

On August 20 and 21, 2014, Selective filed a satisfaction of the Scola Judgment and the

Mortgage (Exhibit 9).  Selective gave credit to NLG towards the Quebec Judgment. According to the

Electronic Judgment Lien Amendment Statement filed on September 5, 2014 with the Florida

Secretary of State (Exhibit 14), it appears NLG was given credit in the amount of the Scola Judgment,

or $1,618,071.29, without credit for interest thereon.   The Lopez Assignment Order specifically

determined that $2,746,953.34 was the correct sum to be credited to NLG for the Scola Judgment, as

that amount includes interest from April 28, 2008 through August 31, 2014. **The Lopez Assignment**

**Order also left open the possibility of an increase in that amount, should same be proven at a**

**further hearing**.

The Lopez Assignment Order was never vacated or set aside, and the decision remains the

law of the case.

In the New York lawsuit by NLG against the Debtor, Selective proceeded to intervene.  Judge

Barbara Jaffe of the New York Supreme Court entered a Decision and Order on October 30, 2014

recognizing Selective's assignment of the Scola Judgment pursuant to the Lopez Assignment Order.

In that case, the court ordered the caption of the New York case be changed to reflect the substitution

of Selective Advisors Group, LLC as the proper party, in place of NLG, LLC (Exhibit 18). The court

also directed the Clerk to accept for filing the Order of assignment "judicially assigning the underlying

Florida judgment from plaintiff to Selective", and strike all NLG's judgments of record against Ms.

Hazan. On November 13, 2014, Judge Jaffe dismissed NLG's lawsuit against Elizabeth Hazan, ruling

as follows:

> Given the satisfaction of Judgment in the underlying action under index #101288/2013,
> as reflected in my Decision and Order dated October 30, 2014, defendant's motion to
> dismiss the proceeding is granted and the proceeding is dismissed. The clerk is directed to
> enter judgment accordingly.

Exhibit 19.

## The Third District Court of Appeal Opinion and the Gordo Foreclosure Judgment

On September 3, 2014, the Third District Court of Appeal reversed Judge Eig on the issue of

election of remedies and held that foreclosure could proceed on the Mortgage (Exhibit 12). Circuit

Judge Monica Gordo, by that time having replaced Judge Eig in the division, then entered a

foreclosure judgment in favor of NLG, despite the judicial assignment of NLG's interests in the Note

and Mortgage to Selective (the "Gordo Foreclosure Judgment"). Notwithstanding the various court

rulings recognizing the judicial assignment of the Scola Judgment to Selective, Judge Gordo entered

a Final Judgment of Foreclosure in favor of NLG on December 4, 2015 (Exhibit 21). The Gordo

Foreclosure Judgment determined NLG, LLC was entitled to the grand total sum of $4,876,654.29

and set a sale for January 12, 2016.

However, on January 11, 2016, the Debtor filed for Chapter 11 bankruptcy protection and

the sale was stayed.

**B. Legal Analysis**

Plaintiffs contend that Judge Lopez judicially assigned to Selective the Scola Judgment,

together with all the rights and claims thereunder, which includes the right to enforce the Mortgage,

Case 1:22-cv-21485-RNS Document 106-3 Entered on FLSD Docket 09/14/2022 Page 550 of 889
Case 1:18-mc-25369-AMC-MOORE Document 1 Entered on FLSD Docket 07/02/2018 Page 57 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 57 of 119

leaving NLG with no enforceable mortgage, lien, or claim in this bankruptcy case. NLG takes the position that, notwithstanding the judicial assignment of the Scola Judgment on the Note, NLG retained the right to foreclose on the Mortgage. NLG asks the Court to limit its review to only one out of the many rulings entered in the ten-year history of litigation between the parties. It asks the Court to look only to the Gordo Foreclosure Judgment, contending that Judge Gordo resolved all issues in NLG's favor.

After reviewing the history of the proceedings between the parties, it is evident the Gordo Foreclosure Judgment does not resolve all issues in NLG's favor. The Scola Judgment, the Lopez Assignment Order, and the Gordo Foreclosure Judgment all control this Court's decision going forward. The Scola Judgment established Debtor's liability to NLG on the Note. The Scola Judgment, and consequently the Mortgage, were assigned to Selective by the Lopez Assignment Order, and were thereafter satisfied. Finally, by the Gordo Foreclosure Judgment, NLG, LLC established its entitlement to a greater credit for the judicial assignment of the Note and Mortgage. Moreover, any interest NLG may have had in the Mortgage by virtue of the Gordo Foreclosure Judgment is/was extinguished upon redemption by the Debtor and satisfaction.

The Scola Judgment awarded NLG, LLC $1,618,071.29 against the Debtor for Debtor's breach of the Note.

In 2014, after entry of the Scola Judgment, Selective acquired a $5,000,225 judgment against NLG, LLC, the Quebec Judgment. (Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.) Selective domesticated the Quebec Judgment in state court, before Judge Lopez, and the order domesticating the judgment has become final and non-appealable. Thereafter, the Lopez Assignment Order was entered, judicially assigning the Scola Judgment to Selective [in partial satisfaction of the Quebec

Judgment] and determining the value of the Scola Judgment to be $2,746,953.34, inclusive of interest. The Lopez Assignment Order judicially assigns the Scola Judgment to Selective, together with all the rights and claims thereunder.

Because ownership of the Mortgage follows the Note, in the absence of a contrary intention, Selective, who owns and holds the Note, therefore has standing to foreclose the Mortgage.

> It has frequently been held that a mortgage is but an incident to the debt, the payments of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by the mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt, unless there be some plain and clear agreement to the contrary, if that be the intention of the parties.

*Taylor v. Bayview Loan Servicing, LLC*, 74 So.3d 1115, 1117-18 (Fla. 2d DCA 2011). Under Florida law, "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" [the subject note and subject mortgage when the complaint is filed]. *McLean v. JPMorgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA 2012). "Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint." *Id.* NLG has not demonstrated that it owns and holds the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010). Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge Lopez to Selective. NLG no longer holds the right to enforce the Note or the Scola Judgment entered on the Note. See, Trial Transcript Page 27 lines 3-11. There being no evidence presented to support the position that the parties did not intend for the Mortgage to follow the Note, the Mortgage did indeed follow the assignment of the Note in this case. The Note having been judicially assigned to Selective, Selective has standing to foreclose the Mortgage and, upon assignment, NLG had no further right to foreclose the Mortgage. When Judge Lopez assigned the Scola Judgment to

Case 1:22-cv-21484-RNS Document 1 One Document 33-5 Entered 93/17/19 Docket 06/04/2022 Page 552 of
Case 1:18-mc-25369-KMW Document 19 Entered on FLSD Docket 07/11/2018 Page 63 of 123
889

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 59 of 119

Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage.

The public records for Miami-Dade County, Florida reflect that the Scola Judgment and the Mortgage were both satisfied in August 2014. NLG was given credit by Selective for the debt remaining under the Scola Judgment and Mortgage, in partial satisfaction of the domesticated Quebec Judgment. It appears that credit may not have been finally determined, as discussed further herein.

Notwithstanding the judicial assignment to Selective and subsequent satisfactions, in November 2014, the Third District Court of Appeal, presumably unaware of the assignment and satisfactions, entered an opinion reversing the Eig Order and permitting foreclosure of the Mortgage. Following the mandate, Judge Gordo entered the Gordo Foreclosure Judgment in December 2015. The Gordo Foreclosure Judgment determined NLG is entitled to $4,876,654.29 under the Note and Mortgage. The Court is advised Selective tried to intervene in the case but Judge Gordo did not allow intervention. This Court was not informed as to why Selective did not otherwise intervene in the appeal of the Eig Order and advise the Third District Court of Appeal that Selective was assigned the Note and Mortgage and that the Note and Mortgage were satisfied months before the Third District Court Appeal issued its opinion reversing the Eig Order.

Thus, it initially appears there may be a conflict between the Lopez Assignment Order, assigning ownership of the Note and Mortgage on the Property to Selective, and the Gordo Foreclosure Judgment, granting foreclosure of the Property in favor of NLG as Plaintiff instead of in favor of Selective. However, this conflict has been overcome by events.

Giving full faith and credit to the Lopez Assignment Order, NLG's rights in the Scola Judgment were assigned to Selective, after Judge Lopez concluded that the assignment of the Scola

9

Case 1:22-cv-21485-RNS Document 108-5 Entered on FLSD Docket 04/14/2023 Page 553 of 889
Case 1:18-mc-25369-KMM Document 228 Entered on FLSD Docket 10/28/2019 Page 64 of 123

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 60 of 119

Judgment to Selective had no relevance to the issues on appeal. (Exhibit 22, Tr. 26:3-11). The Lopez Assignment Order establishes that NLG, LLC is entitled to $2,746,953.34 for the assignment, "which amount includes principal and interest [on the Note] through August 31, 2014 at the 11% judgment amount *without prejudice to [NLG] establishing at further hearing why the credited amount should be greater.*" (Emphasis added.) Giving full faith and credit to the Gordo Foreclosure Judgment, NLG established its entitlement to a greater credit than that in the Lopez Assignment Order, in the grand total sum of $4,876,654.29. The Gordo Foreclosure Judgment also granted NLG the right to foreclose, but allowed the Debtor to redeem the Property up until the time of the sale. Thus, notwithstanding the right to foreclose, no sale took place, and the Debtor's right to redeem remains alive and well.

NLG argued at trial that Selective is collaterally estopped from asserting its interest in the Mortgage. "However, in collateral estoppel the 'precise fact' or 'every point and question' on the issue must have been decided". *Chandler v. Chandler,* 226 So.2d 697 (Fla. 4th DCA 1969) citing *Gordon v. Gordon*, 59 So.2d at 45 (Fla.1952). Here, Selective sought to intervene in the Gordo foreclosure lawsuit to raise its unique issues of law and fact relative to the assignment of the Mortgage rights and the right to intervene was denied to Selective. "[I]f there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation". *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324 (11th Cir. 2010). The evidence and testimony presented at trial demonstrate that Selective was not a party to the Gordo case and therefore is not barred by res judicata or collateral estoppel from asserting its rights under the Note and Mortgage.

However, even assuming that the Gordo Foreclosure Judgment authorized NLG, *and not Selective*, to foreclose the Mortgage, the foreclosure sale never took place because Debtor filed

Case 1:22-cv-21485-RNS Document 10-3 Entered on FLSD Docket 04/16/2023 Page 554 of
889
Case 1:18-mc-25369-RNS Document 200-3 Entered on FLSD Docket 11/15/2018 Page 65 of 123

this bankruptcy case, staying the sale pursuant to 11 U.S.C. §362. The Debtor redeemed the

Property prior to a foreclosure sale being conducted and certificate of sale being issued, thereby

satisfying the Gordo Foreclosure Judgment. In paragraph 4 of the Gordo Foreclosure Judgment,

the state court judge set a foreclosure sale date, subject to paragraph 6 therein. Paragraph 6 of the

Gordo Foreclosure Judgment states:

> **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of
> redemption as proscribed by Florida Statute, Section 45.0315 shall be terminated.

Section 45.0135, Fla. Stats., provides:

> At any time before the later of the filing of a certificate of sale by the clerk of the
> court or the time specified in the judgment, order, or decree of foreclosure, the
> mortgagor or the holder of any subordinate interest may cure the mortgagor's
> indebtedness and prevent a foreclosure sale by paying the amount of moneys
> specified in the judgment, order, or decree of foreclosure, or if no judgment, order,
> or decree of foreclosure has been rendered, by tendering the performance due under
> the security agreement, including any amounts due because of the exercise of a
> right to accelerate, plus the reasonable expenses of proceeding to foreclosure
> incurred to the time of tender, including reasonable attorney's fees of the creditor.
> Otherwise, there is no right of redemption.

Until the certificate of sale issued, the Debtor retained her right of redemption, regardless of the

identity of the mortgagee. Consistent with her rights under the Gordo Foreclosure Judgment and as

provided by statute, the Debtor in fact redeemed the Property prior to a foreclosure sale, by satisfying

the Note and Mortgage, and by Selective providing NLG credit for payment of the Note and Mortgage

to partially satisfy NLG's debt to Selective by virtue of the Quebec Judgment.

The amount of the credit provided to NLG should be the greater amount established by the

Gordo Foreclosure Judgment. Although the Scola Judgment determined the debt on the Note to be

$1,618,071.29, the Lopez Assignment Order increased the amount owed to NLG by the Debtor to

$2,746,953.34. The Gordo Foreclosure Judgment ultimately established that NLG was entitled to

$4,876,654.29 for the Note and Mortgage. While the $4,876,654.29 amount may be disputed, the

11

Case 1:22-cv-21485-RNS Document 42-5 Entered on FLSD Docket 06/04/2022 Page 555 of
Case 1:18-mc-23888-RNS Document 2-6 Entered on FLSD Docket 12/26/2018 Page 66 of 123
889

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 62 of 119

Court must give full faith and credit to the Gordo Foreclosure Judgment and will therefore view the

amount determined in that judgment to be the greater amount NLG established it was owed on account

of the Note and Mortgage, *as the Lopez Assignment Order allowed*.

It appears from the Electronic Judgment Lien Amendment Statement (Exhibit 14) that NLG

was given credit only for the amount indicated in the Scola Judgment, or $1,618,071.29.  It was not

credited with the amount indicated in the Lopez Assignment Order of $2,746,953.34 (which included

interest on the Scola Judgment), nor was it credited with the amount indicated in the Gordo

Foreclosure Judgment, $4,876,654.29.  However, at the time of trial, the parties' rights were already

determined by all those orders.  Before any credits, Selective was owed $5,000,225.00 from NLG on

account of the Quebec Judgment, and NLG was owed $4,876,654.29 from Hazan on account of the

Note and Mortgage pursuant to the Gordo Final Judgment. Honoring the Gordo Foreclosure

Judgment, NLG must be credited for the full amount of the judgment, $4,876,654.29, whether that

amount is lesser or not, for the assignment of the Note and Mortgage and satisfactions, leaving the

Mortgage redeemed and Selective with a judgment against NLG in the remaining amount of

$123,570.71.  Whether the various satisfactions and other documents filed by Selective waive

Selective's right to collect any further balance is an issue between Selective and NLG.

## Conclusion

The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and

benefits held by NLG against Debtor related to said judgment, were judicially assigned to Selective

pursuant to the Lopez Assignment Order, and the right to foreclose the Mortgage securing the debt

traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established

by the Third District Court of Appeal, had been assigned to Selective, the Gordo Foreclosure

Judgment granted NLG the right to foreclose.  Assuming the validity of the Gordo Foreclosure

Case 1:22-cv-21485-RMB-RAR Document 6-10 Entered on FLSD Docket 04/24/2023 Page 556 of 889
Case 1:18-mc-25369-CMA Document 00 Page Entered D509f3c223d278af Page 57 of 123
889
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 63 of 119

Judgment, the Debtor exercised her right to redeem the Property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's debt to NLG has been paid, including the New York State Supreme Court, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited by Selective for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure Judgment. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,876,654.29, which credit will leave the Mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom. Accordingly, it is

ORDERED and ADJUDGED that Counts I, II and III of Plaintiffs' Third Amended Complaint and NLG's Amended Counterclaim are **GRANTED IN PART** and **DENIED IN PART**

Case 1:22-cv-21485-RNS Document 20-8 Entered on FLSD Docket 04/06/2023 Page 557 of 889
Case 1:18-mc-25369-KMM Document 16-8 Entered on FLSD Docket 12/06/2018 Page 65 of 123
889

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 64 of 119

as follows:

        1.      NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

        2.      Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt due to Selective pursuant to the Quebec Judgment.

        3.      NLG's Proof of Claim #17 is disallowed and NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order.

        4.      Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.

<center># # #</center>

Copy to:
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Facsimile: 954-356-0451

<center>14</center>

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 65 of 119

Email: dave@flalawyer.com

Florida Bar No. 348279

Attorney Langley is directed to serve a copy of this Final Judgment on all interested parties and to file a Certificate of Service with the Court.

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 66 of 119

# EXHIBIT 3

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 67 of 119

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015 01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

GENERAL JURISDICTION DIVISION
2011-42770 CA 01
CASE NO.:~~2011-42270 CA~~ (02)



FILED
DEC 04 2015
CLERK CIRCUIT & COUNTY COURTS

FORECLOSURE

**FINAL JUDGMENT OF FORECLOSURE**
**(Pursuant to Administrative Order 09-09)**

      **THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on
mandate from the Third District Court of Appeals on November 25, 2014;

      **IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF
FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service
of process has been duly and regularly obtained over all Defendants in this action and this
Court has jurisdiction over the parties in this action and the subject matter herein.

1.    **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following
from Defendant ELIZABETH HAZAN:

      Principal due on the note secured by the mortgage foreclosed, as set forth in the
Opinion of the Third District Court of Appeal:

                **$1,618,071.29.**

Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion
of the Third District Court:

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 68 of 119

CFN: 20150812181 BOOK 29902 PAGE 3738

## $2,953,489.91

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015 until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

Property Maintenance          $21,333.14

### GRAND TOTAL: $4,876,654.29

2.      **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment** against the Defendants. With the exception that any deficiency is hereby taxed against Defendant ELIZABETH HAZAN, there are no in personam damages against said other Defendants.

3.      **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 69 of 119

CFN: 20150812181 BOOK 29902 PAGE 3739

the defendants. The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4.  **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on December ___, 2015, to the *January 12, 2016* highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5.  **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6.  **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7.  **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8.  **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9.　**Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10.　**NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 06/14/2023 Page 564 of 889
Case 1:18-cv-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2019 Page 5 of 23
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 71 of 119

CFN: 20150812181 BOOK 29902 PAGE 3741

**(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

11.  **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 72 of 119

CFN: 20150812181 BOOK 29902 PAGE 3742

---

**FINAL ORDERS AS TO ALL PARTIES**
**SRS DISPOSITION NUMBER   12**

THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.

**Judge's Initials   MG**

---

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.
**Copies furnished: Parties of record**

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 73 of 119

# EXHIBIT 4

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

### ORDER GRANTING FORECLOSURE

THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second

Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil

Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,

ORDERS AND ADJUDGES as follows:

The history of the litigation between the parties was set out in detail when the matter

went up on appeal to the Third District. The facts and procedural history recited in the opinion

constitute the law of the case. In its opinion, the Third District stated as follows:

*Facts and Procedural Background*

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for
$5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms.
Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment
payment of $300,000.00 one month after the sale, and the note was to mature six months after
the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the
collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was
entered into, but required payments again were not made. In April 2008, and in accordance
with the settlement agreement, a default final judgment on the promissory note was entered
against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That
judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan
v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and
moved to vacate the judgment on the promissory note. The motion was denied and Ms.
Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d
DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its
judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property
was her homestead. The then-assigned circuit judge entered an order in December 2008
"quieting title," although Ms. Hazan's motion and the record establish that the order merely
extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the
quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan
made three of the specified payments before defaulting again in February 2009. After
additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its
mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a
defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this
mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her
mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final
judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2,
2013) into the final judgment "as though set forth herein." This appeal followed.

*NLG, LLC v. Hazan*, 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### Status of the Pleadings After Mandate

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

property which was then the subject of a mortgage foreclosure action and accompanying lis

pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention. In

*Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test

to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*,

75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the
> matter in litigation, and of such a direct and immediate character that the
> intervenor will either gain or lose by the direct legal operation and effect of the
> judgment. In other words, the interest must be that created by a claim to the
> demand in suit or some part thereof, or a claim to, or lien upon, the property or
> some part thereof, which is the subject of litigation."

*Carlisle*, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any

interest in the litigation. The Wherefore Clause merely requests intervention. But if Selective is

trying to collect on the Judgment by Confession, it is undisputed that the judgment has been

satisfied. Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to

assert its rights, but to obstruct the foreclosure of his wife's property. To allow intervention by

Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction. As the Third District

recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if

Selective were allowed to intervene, they would take "the procedural posture of the case as it

stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking

Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the

then-existing claims in the lawsuit." The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

*v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties…" *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id.*

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

*Selective Advisors' Arguments*

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

8

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

Case 1:22-cv-21485-RNS Document 22 Entered on FLSD Docket 02/27/2023 Page 576 of 889
Case 1:18-mc-25369-KMW Document 22 Entered on FLSD Docket 02/27/2023 Page 87 of 123
889

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action…").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District. Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

Case 1:22-cv-21485-RNS Document 22-6 Entered on FLSD Docket 02/27/2023 Page 577 of 23
Case 1:18-mc-25369-KMW Document 22-6 Entered on FLSD Docket 02/27/2023 Page 58 of 113
889

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 84 of 119

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate…" The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 86 of 119

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 87 of 119

Houle was acting for both Quebec and NLG. Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); *Williams*, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is

hereby GRANTED.  The Court will hereafter enter a Final Judgment of Foreclosure upon the

presentation of updated affidavits.


ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.


_____
Circuit Court Judge


Judgment Prepared by:              MONICA GORDO
Plaintiff's Counsel:               CIRCUIT COURT JUDGE
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 89 of 119

# EXHIBIT "A"

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 07/08/2022 Page 583 of 889
Case 8:15-72153-reg Doc 11 Filed 08/06/15 Entered 08/06/15 14:29:22 Page 94 of 113
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 90 of 119

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:                                          Chapter 7

Selective Advisors Group LLC,                   Case No. 815-72153-A736

      Debtor.                              <u>Affirmation in Support</u>

-------------------------------------------------------X

         Marc A. Pergament, duly affirms under the penalties of perjury as follows:

         1.      I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

         2.      I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

         3.      This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

         4.      On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

Case 1:22-cv-21830-RNS Document 36 Entered on FLSD Docket 09/19/2022 Page 584 of 889
Case 8:15-72153-reg    Doc 11    Filed 08/06/15    Entered 08/06/15 14:29:29    Page 95 of 113

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 91 of 119

5.      I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015. A further request for an adjournment of the § 341(a) meeting was declined.

6.      On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.      My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.      Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.      The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012. A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC. The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment. A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

Case 1:22-cv-21485-RNS Document 85-5 Entered 08/07/19 Page 585 of 889
Case 8-15-72153-reg   Doc 11   Filed 08/06/15   Entered 08/06/15 14:29:22
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 92 of 119

10.     After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.     As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC.  I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence.  Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.     Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.     Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.     I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 93 of 119

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.    Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.    The dispute with respect to the Judgment is evident.

17.    As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.    NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.    I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

Case 1:22-cv-21485-RNS Document 63-5 Entered on FLSD Docket 06/06/2022 Page 587 of 889
Case 1:18-mc-21485-RNS Document 63-5 Entered on FLSD Docket 06/06/2022 Page 95 of 123
Case 8-15-72153-reg   Doc 11   Filed 08/06/15   Entered 08/06/15 14:29:22

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 94 of 119

20.   For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered. A copy of the Stipulation is annexed hereto as Exhibit "D."

21.   I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.   It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.   No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:   Garden City, New York
August 6, 2015

_____
Marc A. Pergament

5

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 95 of 119

# EXHIBIT A

Case 1:22-cv-22538-RKA Document 66-6 Entered on FLSD Docket 06/09/2023 Page 589 of 889
Case 8-15-72153-reg    Doc 11-1    Filed 08/06/15    Entered 08/06/15 14:29:22
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 96 of 119

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

-------------------------------------------------------------x
9197-5904 QUEBEC INC
    Plaintiff,

        -against-

NLG LLC
                Defendant.
-------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes, Delaware 19958 County of Sussex, party of the second part,

WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.

Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

Case 1:22-cv-22462-FDS Doc 1 Entered on FLSD Docket 06/04/2023 Page 590 of 123
Case 8-15-72153-reg   Doc 11-1   Filed 08/06/15   Entered 08/06/15 14:29:22

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 97 of 119

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

_Raymond Houle_

RAYMOND HOULE, president

## ACKNOWLEGEMENT

State of ___Quebec___

County of ___D'Arcy McGee___ ..ss.:

On the __3__ day of __June__ in the year 20__14__, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Pierrette Tardif_

Notary Public

_Raymond Houle_

Raymond Houle

## CERTIFICATE OF CONFORMITY

I, _Pierrette Tardif_, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: _June 3/ 2014_     _Pierrette Tardif_

NOTARY PUBLIC
NAME:

COMMISSAIRE À L'ASSERMENTATION
PIERRETTE
TARDIF
# 198836
PRÈS SYSTÈME TUDICIAIRE

Case 1:22-cv-22462-FMS Document 6 Entered FLSD Docket 06/02/2022 Page 591 of
Case 1:18-cv-2463-FMS Document 6 Entered FLSD Docket 06/02/2022 Page 102 of 123
Case 8-15-72153-reg    Doc 11-2    Filed 08/06/15    Entered 08/06/15 14:29:22

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 98 of 119

# EXHIBIT B

Case 1-22-cv-34836 FINS9 Document 1-20 650 Filed 08/23/19 on Rec 06/03/2023 Page 592 of 123
Case 1-18-41-cv-34836 FINS Document 1-20 650 Filed 05/23/19 on Rec 06/03/2023 Page 103 of 123
Case 8-15-72153-reg    Doc 11-2    Filed 08/06/15    Entered 08/06/15 14:29:22
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 99 of 119

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Address of Plaintiff:
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

           **Plaintiff,**

Index No.:

    **against**

**JUDGMENT BY**
**CONFESSION**

NLG, LLC, a Delaware Limited Liability Company,

           **Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

Case 1:22-cv-24023-RNS Document 30-6 Entered on FLSD Docket 06/04/2023 Page 593 of 123
Case 1:14-mc-23369-KMW Document 11-2 Filed 05/13/14 Entered 05/13/14 Page 6 of 123
Case 8-15-72153-reg    Doc 11-2    Filed 08/06/15    Entered 08/06/15 14:29:22
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 100 of 119

JUDGMENT entered the ___22nd___ day of ___February___, 201 2.

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is

ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC,* Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk     amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

_Norman Goodman_
CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

Index No. 101875/12

9197-5904 Quebec, Inc.,

                           **Plaintiff,**

against

NLG, LLC, A Delaware LIMITED
LIABILITY COMPANY,

                           **Defendant.**

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**      ss.:

    Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

    The defendant hereby confesses judgment herein and authorizes entry thereof against

defendant in the sum of $5,000,000.00.

    Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida

33309; Defendant authorizes entry of judgment in New York County, New York, if said

residence address is not in New York State.

    This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Fraud and Abuse of Process.

    This affidavit, if made in connection with an agreement for the purchase for
$1,500.00 or less of any commodities for any use other than a commercial or business use
upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed, subsequent to the time a default occurred in the payment of an
installment thereunder.

Sworn to before me this
16 day of Febrary, 2012

                                  9197-5904 Quebec, Inc. by Raymond Houle, Manager
                                 MANAGER, NLG LLC

                                Darius A. Marzec
                          Notary Public State of New York
                              No. 02MA6186309
                          Qualified in Queens County
                          Commission Expires 04/28/2012

NOTARY PUBLIC

**EXHIBIT A**

Case 1:22-cv-23846-DJS-MJJ Document 11-2 Filed 08/06/15 Entered 08/06/15 14:29:22 Page 595 of 123
Case 8-15-72153-reg   Doc 11-2   Filed 08/06/15   Entered 08/06/15 14:29:22
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 102 of 119

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

                                        Plaintiff,

                against

NLG, LLC,

                                        Defendant.

**AFFIDAVIT OF RAYMOND HOULE REGARDING FACTS SUPPORTING JUDGMENT**

### STATE OF NEW YORK

### COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

Case 1:22-cv-20343-RNS-AOR Document 22 Entered on FLSD Docket 06/07/2022 Page 596 of 889

Case 1:18-mc-23369-KMM Document 22 Entered on FLSD Docket 02/14/2019 Page 107 of 123

Case 8:15-72153-reg    Doc 11-2    Filed 08/06/15    Entered 08/06/15 14:29:22

Exhibit to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 103 of 119

RAYMOND HOULE

Sworn to before me on the 21 day of February, 2012.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 __

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

Case 1:22-cv-22538-RKA   Document 312-1   Entered on FLSD Docket 06/08/2023   Page 597 of 123
Case 8:15-mc-23369-RKA   Document 32-1   Entered on FLSD Docket 02/11/23   Page 108 of 123
Case 8:15-72153-reg   Doc 11-2   Filed 08/06/15   Entered 08/06/15 14:29:22

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 104 of 119

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                                           Index No.

9197-5904 Quebec, Inc.,

                                        **Plaintiff,**

              against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                    COMPANY,

                                        **Defendant.**

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

---

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

**FILED AND
DOCKETED**

FEB 22 2012

AT  10:25 A M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

                                        By: Darius A. Marzec, Esq.
                                        MARZEC LAW FIRM PC
                                        Attorneys for Plaintiff
                                        225 Broadway, Ste. 3000
                                        New York, NY 10007
                                        (212) 267-0200

DOCKETED BY

**EXHIBIT A**

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 105 of 119

# EXHIBIT C

Case 1:22-cv-... Document... Filed... Page 599 of
Case 8:15-72153-reg   Doc 11-3   Filed 08/06/15   Entered 08/06/15 14:29:32
888
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 10Case 12-16438-jkf*SEALED*   Doc 211 *SEALED*   Filed 03/24/15   Entered 03/24/15
                    15:32:21   Desc Main Document   Page 1 of 2

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER   KOSACHUK,   a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |

## ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.     The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.     Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.     Final Judgment for monetary sanctions in the amount of $96,096.55 pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

Case 1:22-cv-22538-RKA Document 213-3 Entered on FLSD Docket 08/14/2023 Page 600 of 123
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 167 of 190    Case 12-16438-jkf *SEALED*    Doc 211 *SEALED*    Filed 03/24/15    Entered 03/24/15
15:32:21    Desc Main Document    Page 2 of 2

4.    Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers,

is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that

certain judgment issued by the Supreme Court, County of New York, under Index No.

103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45

accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of

$1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum

amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which

judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of

Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC

by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected

Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6,

2012.

5.    This Final Judgment may be recorded as a matter of public record.

6.    This Final Judgment is effective immediately upon entry and this Court shall

retain jurisdiction to, among other things, interpret, implement, and enforce the terms and

provisions of this Order and Final Judgment.

7.    Chris Kosachuk shall be entitled to writs of execution and all other legal process

to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal

Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

# EXHIBIT D

Case 1:22-cv-24755-FORCEDING Document 50-3-1 Entered on FLSD Docket 06/12/2023 Page 602 of 123
Case 8-15-72153-reg   Doc 11-4   Filed 08/06/15   Entered 08/06/15 14:29:22

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 109 of 119

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In Re:                                                    Chapter 7

Selective Advisors Group LLC,                             Case No. 815-72153-A736

            Debtor.                                       <u>Stipulation of Settlement</u>

-----------------------------------------------------------X

        Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code,

        Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the

Bankruptcy Code,

        Whereas, the Trustee having raised issues as to whether this filing was a good

faith bankruptcy filing by the Debtor,

        Whereas, there is an issue concerning whether the Debtor has any creditors in this

bankruptcy case,

        Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having

expended substantial time and effort in trying to understand this bankruptcy case and all of the

related litigation between the Debtor and NLG LLC,

        It is hereby Stipulated and Agreed as follows:

        1.      This bankruptcy case is dismissed with prejudice.

        2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross &

Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by

the Debtor in the bankruptcy petition and related State Court lawsuits.

Case 1:22-cv-... Page 603 of ...
Case 8:15-72153-reg Doc 11-4 Filed 08/06/15 Entered 08/06/15 14:29:32
Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 110 of 119

3.      This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.      The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
        July 23, 2015

                              Weinberg, Gross & Pergament LLP
                              Attorneys for Trustee

By:     _____
                              Marc A. Pergament
                              400 Garden City Plaza, Suite 403
                              Garden City, New York 11530
                              (516) 877-2424

                              Vlahadamis & Hillen, LLP
                              Attorneys for Debtor

By:     _____
                              Evans M. Hillen
                              148 East Montauk Highway, Suite 3
                              Hampton Bays, New York 11946
                              (631) 655-4115

"So Ordered"

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 111 of 119

# EXHIBIT "B"

Case 1:22-cv-23434-KMM Document 22-3 Entered on FLSD Docket 06/16/2022 Page 605 of 123
Case 1:84-mc-23369-KMM Document 22-3 Entered on FLSD Docket 02/24/2019 Page 113 of 123
889

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

8 E. Montauk Highway, Suite 3                     Telephone: 631.594.5400
Hampton Bays, NY 11946                            Fax: 631.594.5401
                                                  www.vhlawny.com

*JAMES F. VLAHADAMIS                              EVANS M. HILLEN
james@vhlawny.com                                evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc

     Plaintiff,         Index No: 101875/2012

                                                **NOTICE OF FILING
                                                SATISFACTION OF
                                                JUDGMENT**

                - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

                            Defendant.
------------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff-Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York

Vlahadamis & Hillen, LLP

                              By:     /s/ James F. Vlahadamis
                                     James F. Vlahadamis, Esq.
                                     148 E. Montauk Highway
                                     Suite 3
                                     Hampton Bays, New York 11946

TO:     THE LAW OFFICES OF ARI MOR, ESQ
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0378
         ari.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
As assignee of 1997-5901 QUEBEC, Inc.

                                    Plaintiff,              Index No. 101375/2012
                                                            SATISFACTION OF
                                                            JUDGMENT

NBG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

                                    Defendant.

SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action on February 22, 2012 in
favor of 1997-5901 QUEBEC, INC. against NBG, LLC in the amount $3,000,000.00 plus
interest of $25.00 and costs of $1,000.00 totaling $3,001,025.00 judgment.

WHEREAS, said judgment was docketed in the Office of the Clerk of the County of New York on the 22nd day of
February; and

WHEREAS, said judgment was thereafter assigned on April 30, 2014 to Selective Advisors

(illegible)

Exhibits to Chris Kosachuk's Reply to Garnishment Answer
Case No. 18-25369-MC-MOORE
Page 116 of 119

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                                        Plaintiff,           Index No: 101875/2012
                                                             SATISFACTION OF
                                                             JUDGMENT

        - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                                        Defendant.
-------------------------------------------------------------------X


## SATISFACTION OF JUDGMENT


WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

_Sean Neil Meehan, manager_

ACKNOWLEGEMENT

COUNTY OF _Onondaga_

On the 3rd day of September in the year 2015 before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3f, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 5th 2015

_____
NOTARY PUBLIC
NAME:

AFFIRMATION OF SERVICE

STATE OF NEW YORK     )
                      )  SS.:
COUNTY OF NEW YORK    )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York. On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:      THE LAW OFFICES OF ART MOR, ESQ
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0578
         art.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

         JONATHAN M. BORG BEDELL & FORMAN LLP
         44 Wall Street, 10th Floor
         (646) 219-7551
         jborg@bedell-forman.com

         ATTTORNEY FOR ADR MIAMI LLC ("ADRM")


Vlahadamis & Hillen, LLP

                              By:    /s/ James F. Vlahadamis
                                     James F. Vlahadamis, Esq.
                                     148 E. Montauk Highway
                                     Suite 3
                                     Hampton Bays, New York 11946

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-25369-MC-MOORE

CHRIS KOSACHUK,

      Plaintiff

v.

9197-5904 QUEBEC, INC,

      Defendant

_____/

### JUDGMENT CREDITOR CHRIS KOSACHUK'S VERIFIED MOTION TO ENFORCE FINAL JUDGMENT [D.E. 1] BY PIERCING THE CORPORATE VEIL OF BAD FAITH PETITIONING CREDITOR 9197-5904 QUEBEC, INC. AGAINSTS ITS OFFICERS AND BENEFICIARIES: RAYMOND HOULE, ELIZABETH HAZAN A/K/A LIZA HAZAN AND HER HUSBAND SEAN MEEHAN AND INCORPORATED MEMORANDUM OF LAW

Judgment Creditor Chris Kosachuk hereby files this Verified Motion to Enforce Final Judgment [D.E. 1] by Piercing the Corporate Veil of Bad Faith Petitioning Creditor 9197-5904 Quebec, Inc. against its Officers and Beneficiaries: Raymond Houle and Elizabeth Hazan a/k/a Liza Hazan and her husband Sean Meehan (the "Motion"). In support, Mr. Kosachuk avers as follows:

### BACKGROUND

1.    For a complete background of this bad faith involuntary bankruptcy petition which resulted in the Final Judgment, the Court is directed to the meticulous order and final judgment of the Honorable Jean K. FitzSimon and attached hereto as Exhibit 1 (the "8/13/15 Order").

2.    The matter before Judge FitzSimon was appealed to the United States District Court for the Eastern District of Pennsylvania which twice dismissed the appeal.

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 2 of 14

3.      The decisions of the dismissal Orders of the District Court were in turn appealed twice to the Third Circuit.

4.      The Third Circuit affirmed the District Court and the Bankruptcy Court. The final opinion and judgment of the Third Circuit were recorded on March 15, 2018 and attached hereto as Exhibit 2.

5.      9197-5904 Quebec, Inc. ("Quebec") has not paid the Final Judgment entered against it and domesticated in the Southern District of Florida on December 21, 2018. There is no stay of the Final Judgment and the Final Judgment is wholly unsatisfied. The total amount of principal and interest due as of the date of this Motion is $1,172,492.93.

6.      Quebec has also refused to answer any discovery in aid of execution and has failed to sit for a deposition in aid of execution.

7.      Because the Final Judgment is not stayed and unpaid, Mr. Kosachuk is entitled to enforce it by piercing the corporate veil of Quebec and have this Court enter judgment for the full amount owed to Mr. Kosachuk by Quebec against Mr. Houle, Ms. Hazan and Mr. Meehan individually with joint and several liability.

**The History of Quebec as Ms. Hazan's Alter-Ego Under Her Complete Control**

8.      Quebec was formed on May 26, 2008 by Elia Hazan, the brother of Elizabeth Hazan.

9.      Ms. Hazan used Quebec as her alter-ego to purchase the Lorret Judgment in December 2009. Ms. Hazan personally negotiated and paid New York Attorney David Blum $24,000 to take assignment of the Lorret Judgment from Lorret. However, no notice was provided to Mr. Kosachuk until March 21, 2011. This Lorret Judgment was used as the basis to file the bad faith involuntary petition in Philadelphia.

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 3 of 14

10.     Ms. Hazan then hired her personal attorney Darius Marzec to represent Quebec in all matters in New York and Pennsylvania, including the filing of the bad faith involuntary petition.

11.     Ms. Hazan then also installed Mr. Houle to be the corporate officer to sign documents on behalf of the company. If Ms. Hazan had signed the documents herself, it would have disclosed her involvement.

12.     One of the first actions taken by Mr. Houle under the dominion and control of Ms. Hazan and Mr. Marzec was to file a knowingly false affidavit to domesticate the Lorret Judgment in Chester County, PA against both Mr. Kosachuk and NLG, even though the Lorret Judgment was only entered against Mr. Kosachuk and not against NLG.  The affidavit is attached hereto as Exhibit 3.

13.     Mr. Marzec then motioned the Chester County Court for a charging order with management rights to NLG by misrepresenting the law in Pennsylvania to the Chester County Judge.

14.     Mr. Marzec purposely did not notify Mr. Kosachuk or NLG about the domestication of the Lorret Judgment in Pennsylvania, the Motion for Charging Order, nor the Charging Order. The Chester County Judge granted the Charging Order on default without a hearing.

15.     The Charging Order was not used to collect the outstanding amount due under the Lorret Judgment but was immediately used to divest NLG of all its assets in favor of Ms. Hazan.

16.     The motives and intent behind this whole exercise by Quebec are best evidenced by its actions, first in failing to serve Mr. Kosachuk at an address where Mr. Houle and its counsel (Mr. Marzec) knew he was present. They also wrongfully obtained the Pennsylvania

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 4 of 14

Charging Order on February 15, 2012, despite having already having one in Florida. With the

Pennsylvania Charging Order, they did the following:

    i.  On February 21, 2012, within 6 days of receipt of the Charging Order, dismissed with prejudice NLG's action against Ms. Hazan on the Mortgage and Note as reflected in Exhibit "4" hereto;

    ii.  On February 21, 2012, dismissed with prejudice NLG's Foreclosure Complaint against Hazan and released NLG's Lis Pendens, as reflected in the document attached hereto as Exhibit "5";

    iii.  On February 21, 2012, satisfied NLG's Judgment in the amount of $1,618,071.29 plus 11% interest against Hazan as reflected in the document attached hereto as Exhibit "6";

    iv.  On February 21, 2012, satisfied NLG's Mortgage in the amount of $1,275,000 on the Fisher Island House, securing its loan to Hazan, attached hereto as Exhibit "7"; and

    v.  On February 22, 2012, within 7 days of receipt of the Charging Order, stipulated to dismiss with prejudice NLG's Judgment of Domestication in New York against Hazan (signed by Marzec on behalf of Hazan; signed by Rosenberg on behalf of NLG) in the amount of $1,618,071.29, a true and correct copy of which is marked as Exhibit "8".

    vi.  On February 22, 2012, within 7 days of receipt of the Charging Order, filed a sham judgment by confession in New York for $5,000,225 against NLG and attached hereto as Exhibit 9

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 5 of 14

> vii. On February 23, 2012, within 8 days of receipt of the Charging Order, filed a Certificate of Cancellation of NLG, LLC with the Delaware Secretary of State. Exhibit 10
>
> viii. On March 2, 2012, filed a Declaratory Judgment Complaint in New York seeking a judgment declaring that they are in charge of NLG. Attached is Exhibit 11.
>
> ix. On July 6, 2012, filed a bad faith involuntary bankruptcy petition in Pennsylvania, which proceeding has been sealed.

17.    The sham satisfactions of NLG's judgment and mortgage in Florida were vacated, stricken and set-aside *nunc pro tunc*, to date of entry. Attached hereto as Exhibit 12.

18.    Mr. Meehan next used his company, Selective, to obtain an assignment of the sham judgment by confession from Quebec to Selective. Mr. Meehan then used that judgment to obstruct NLG's foreclosure of the Fisher Island Property in which he was living with his wife Ms. Hazan.

19.    NLG had motioned the New York Court to vacate the judgment by confession because it was entered by Mr. Houle acting as Plaintiff Quebec and Defendant NLG at the same time in an affidavit of confession notarized and recorded in New York County by Attorney Marzec. In addition to no notice and no opportunity to be heard, the judgment by confession was entered upon the alleged tort claim of fraud and abuse of process. The statute which authorizes the entry of judgment by confessions in New York, NY CPLR 3218, specifically restricts the entry to debts not tort claims. Additionally, the case law in New York that prohibits the entry of judgment by confession on torts goes back to at least 1873.

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 6 of 14

20.     "The rule that confession of a judgment for a tort is not authorized is ancient and well established." *Franklin v. Muckley*, 189 Misc. 155, 70 N.Y.S.2d 815 (1947). The Confession of Judgment statute "allows no confession of a judgment for a tort". *Burkham v. Van Saun,* 14 Abb. Pr. 163, 1873 N.Y. Misc. LEXIS 92 (N.Y. App. 1st Dist. 1873).

21.     NLG has been trying for almost five years to have several pending motions to vacate the sham judgment by confession heard and Selective has done everything that it can to avoid an adjudication on the merits. When the New York judge told Selective no more delays, and that the motion to vacate would be heard on May 18, 2015 at 2pm, Selective filed for bankruptcy that morning at 11:25AM. [*See* In Re Selective Advisors Group, LLC Case No. 8-15-72153-REG ECF No. 1].

22.     The Selective bankruptcy was dismissed with prejudice as a bad faith filing. [*See* In Re Selective Advisors Group, LLC Case No. 8-15-72153-REG ECF No. 19].

23.     NLG then moved to restore the matter back to calendar in New York, which triggered a letter from Selective's counsel informing the New York Judge that the judgment by confession had been satisfied and was no longer outstanding.

24.     After Selective filed the satisfaction of the judgment by confession, the Florida state court judge moved forward with NLG's foreclosure and specifically finding that the sham judgment by confession did not deserve full faith and credit treatment. She then entered an Order Granting Foreclosure and Final Judgment of Foreclosure to remedy the sham satisfactions. Attached hereto as Exhibit 13 and 14 respectively.

25.     The Final Judgment of Foreclosure set a sale date for Ms. Hazan's Fisher Island Property for January 12, 2016. Ms. Hazan filed a voluntary chapter 11 bankruptcy petition on the eve of January 11, 2016, to stay the sale set to occur the next morning at 9:00 am.

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 7 of 14

26.     Ms. Hazan has been manipulating the bankruptcy process in Florida ever since. Ms. Hazan and her husband have delayed NLG's Foreclosure now for almost three years and counting.

27.     All rights asserted by Mr. Meehan came from Quebec's judgment by confession. All litigation is being directed by Ms. Hazan from behind the scenes, much the way she was directing the filing of this bad faith involuntary bankruptcy against Mr. Kosachuk in Philadelphia.

28.     Mr Meehan and his wife then persuaded Judge Cristol to accept the sham judgment by confession as legitimate and to offset NLG's Foreclosure Judgment against the sham judgment by confession. Attached hereto is the Cristol Judgment.

29.     As such, Ms. Hazan and her husband have been credited almost $5 million from NLG and are thus indebted to Quebec according to Mr. Meehan's own testimony.

## MEMORANDUM OF LAW

To pierce the corporate veil, "the individual must have used the corporate entity to perpetrate a fraud or have so dominated and disregarded the corporate entity's corporate form that the corporate entity primarily transacted the individual's personal business rather than its own corporate business." *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 U.S. Dist. LEXIS 93933, 2011 WL 3703329 at *15 (S.D. Fla. Aug. 23, 2011) (Altonaga, J.).  Reaching the "alter egos" of corporations is especially valuable "where the separate identity of two corporations should be disregarded where one corporation becomes the conduit of another" or "where the near identity of two corporation should be disregarded in order to prevent manifest injustice to third parties." *Talen's Landing Inc. v. M/V Venture II*, 656 F.2d 1157, 1160 (5th Cir. 1981).

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 8 of 14

Some factors used by courts in determining whether to pierce the corporate veil are: (1) common or overlapping directors and officers, (2) use of same corporate office, (3) inadequate capitalization of subsidiary, (4) financing of subsidiary by parent, (5) parent's use of subsidiary's property and assets as its own, (6) informal intercorporate loan transactions, (7) decision-making for subsidiary by parent and principles, (8) non-observance of formal legal requirements, (9) existence of fraud, wrongdoing, or injustice to third parties. *Id.*, 659 So. 2d at 1152; *In re M/V Rickmers Genoa Litigation*, 622 F.Supp.2d 56, 75 (S.D.N.Y. 2009).

The frauds in all matters involving Ms. Hazan are readily apparent simply by reviewing the documents.

**Common or Overlapping Directors**

Ms. Hazan was a director of Quebec and directing all of its corporate activity for her own benefit. Every action taken by Quebec was designed to benefit Ms. Hazan. Quebec has no separate identity from Ms. Hazan who is the beneficial owner of Quebec.

**Use of the Same Corporate Office**

Quebec never maintained any independent offices. The addresses used by Quebec were always those of Ms. Hazan or her personal attorneys.

**Undercapitalization**

Quebec has been undercapitalized since it was formed. In fact, Quebec's President, Mr. Houle has testified in his deposition from April 4, 2014, that Quebec does not have a bank account and that Quebec does not have a checkbook. Because Quebec does not even have its own bank account, it is obviously undercapitalized and has always been.

**Financing**

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 9 of 14

Ms. Hazan provided all of the financing to Quebec. Indeed it was Ms. Hazan who paid

the $24,000 to Ms. Lorret for the Lorret Judgment.

**Failure to Adhere to Corporate Formalities**

Mr. Houle testified that he is the only shareholder, that he is the only officer, that he does

not recall how Quebec pays its attorneys.

Q. What is the business of the Quebec Corporation?
THE WITNESS: Yes. Quebec uses the company to own a judgment against Chris
Kosachuk. That was the main purpose that it was used for.  Transcript p. 22 lines
9-11.

Q.  Did Quebec have any other business other than owning the judgment against
Mr. Kosachuk?

A.  No. Transcript p. 22 lines 16-18

Q.  Does Quebec Corporation have a checkbook, a checking

**A.  No.**

Transcript, Exhibit 15,  p. 23 lines 16-18.

**Substantial Intermingling of Corporate and Personal Affairs**

As detailed above all of Quebec's corporate affairs were designed to benefit Ms. Hazan's

personal affairs.  Every action taken by Quebec inured to Ms. Hazan's benefit.  Ms. Hazan

exercised complete dominion and control over Quebec, Houle and Meehan as detailed above.

Quebec never operated as a separate legal entity; it always operated as Hazan's alter ego.

Even the bankruptcy lawyers hired in Philadelphia were hired and paid by Ms. Hazan including

current Counsel Mosser. Indeed every lawyer hired by Quebec has also worked for Ms. Hazan.

**Use of the Corporate Form to Perpetrate a Fraud**

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 10 of 14

Ms. Hazan used Quebec, Houle, Selective and Meehan to perpetrate a series of frauds as described above.

Attorney Grant is simultaneously representing Debtor Hazan's husband Sean Meehan and his company Selective in an adversary proceeding wherein they used the sham $5 million judgment by confession from New York against NLG, a company at which Mr. Kosachuk is the manager. [*See* Exhibit 16 – The Cristol Judgment].

The sham $5 million confessed judgment was created by Attorney Darius Marzec, who also filed the bad faith involuntary petition against Mr. Kosachuk in this Court using the Lorret Judgment cancelled by the Philadelphia Bankruptcy Court. [*See* D.E. 1 – the FitzSimon Order and Final Judgment].

In order to understand the origin of the Sham Judgment by Confession and its relation herein, Attorney Marzec domesticated the Lorret Judgment in Chester County, PA without notice to Kosachuk and then motioned the Court for an illegal charging order with management rights to NLG, which indeed was granted on default and by misrepresentations made by Attorney Marzec to the Chester County Court.

A charging order could have been proper, if used only to collect the $48,000 Lorret Judgment, not to create a $5 million liability for NLG. Indeed both Pennsylvania Law and Delaware Law prohibit the granting of management rights with a charging order and limit the creditor's rights to collecting what is owed not creating further liabilities.

Just as the Lorret Judgment was used for the improper purpose of filing a bad faith involuntary bankruptcy petition, it was also used in New York to create a sham $5 million confessed judgment.

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 11 of 14

Mr. Meehan testified that if he collected the judgment by confession that he would owe

Quebec. Attached hereto as Exhibit 17 is Mr. Meehan's 341 testimony from his bad faith

voluntary bankruptcy petition. [*See* page 33]. Because Mr. Meehan was able to collect the entire

amount of the Judgment by Confession by offsetting NLG's legitimate Final Judgment of

Foreclosure against the sham judgment by confession, Mr. Meehan and Ms. Hazan are duly

indebted to Quebec and therefore Mr. Kosachuk is entitled to judgment against them individually

with joint and several liability.

**WHEREFORE**, Chris Kosachuk respectfully requests that the Court grant this Motion in

its entirety, pierce the corporate veil of Quebec, enter judgment against Mr. Houle, Ms. Hazan,

Mr. Meehan and Selective, jointly and severally and such other and further relief as this Court

deems just under the circumstances.

Dated: March 18, 2019

Respectfully submitted,

/s/ Chris Kosachuk
Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for Chris Kosachuk*

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 12 of 14

## **VERIFICATION**

Pursuant to Fla. Stat. 92.525, 28 U.S. Code § 1746 and under penalty of perjury, I declare that I have read the foregoing Verified Motion and that the facts are true, correct and based on my personal knowledge.

Dated: March 18, 2019

*/S/ Chris Kosachuk*
_____
CHRIS KOSACHUK

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 13 of 14

## CERTIFICATE OF SERVICE

I hereby certify, that the foregoing was served on the 18th day of March, 2019, on the individuals identified below via CM/ECF, e-mail and/or regular mail:

Raymond Houle
9197-5904 Quebec, Inc.
6913 Valencia Drive
Fisher Island, FL 33109
Raymond.houle@gmail.com
Raymond.houle1@gmail.com

Raymond Houle
9197-5904 Quebec, Inc.
5552 Queen Mary Road, Suite 4
Montreal, Q.C. H3C 1H6

Raymond Houle
9197-5904 Quebec, Inc.
5552 Queen Mary Road, Suite 4
Hampstead, Q.C. H3X 1V9


Arthur R. Rosenberg, Esq.
ROSENBERG & PINSKY
6499 North Powerline Road
Suite 304
Fort Lauderdale, FL 33309
Tel: (954) 772-5151
Fax: (954) 772-4224
arr@arrosenberg.com
*Counsel for 9197-5904 Quebec, Inc.*

Mark Cohen, Esq.
4000 Hollywood Blvd
Suite 435 South
Tel: (954) 962-1166
Fax: (954) 962-1779
Hollywood, FL 33012
mdcohenpa@yahoo.com
*Counsel of Record for 9197-5904 Quebec, Inc.*

Ray Garcia, Esq.
LAW OFFICE OF RAY GARCIA, P.A.
14850 SW 26TH STREET, SUITE 204

Judgment Creditor Chris Kosachuk's Motion to Pierce Corporate Veil
Case No. 1925369-MC-MOORE
Page 14 of 14

MIAMI, FLORIDA 33185
Tel: (305) 227-4030
Fax: (305) 223-9811
rgarcia@raygarcialaw.com
*Counsel for SRS Techonologies Professionals, LLC as Assignee of 9197-5904 Quebec, Inc.*


Joe. M. Grant
MARSHALL GRANT, PLLC
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561.361.1000
Facsimile: 561.672.7581
Email: jgrant@marshallgrant.com
*Counsel for Garnishees, Elizabeth Hazan, Sean Meehan and Selective Advisors Group, LLC*


Dated: March 18, 2019

                                        Respectfully submitted,



        /s/ Chris Kosachuk                      /s/ Astrid E. Gabbe
        Chris Kosachuk                          The Law Office of Astrid E. Gabbe, P.A.
        854 Pheasant Run Rd                     Florida Bar No. 635383
        West Chester, PA 19382-8144             P.O. Box 4216
        (305) 490-5700                          Hollywood, FL 33083
        chriskosachuk@gmail.com                 Tel. (954) 303-9882
                                                Fax. (954) 983-1427
                                                astridgabbe@gmail.com
                                                *Attorneys for Chris Kosachuk*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                           :    **Chapter 7**

**Christopher Kosachuk**                         :
**a/k/a Chris Kosachuk,**

_____     :    **Case No. 12-16438 (JKF)**

## <u>ORDER</u>

This 13th day of August, 2015, 9197-5904 Quebec, Inc. ("Quebec") having filed

a Motion for Extension of Time to File Notice of Appeal Pursuant to B.R. 8002 as a

Result of Excusable Neglect ("Extension Motion") and a Motion for Stay of the Instant

Proceedings Pending Resolution of Motion to Extend Time to File Appeal and

Subsequent Appeal, if Granted, Pursuant to B.R. 8007 ("Stay Motion");

**AND** Christopher Kosachuk ("Kosachuk") objecting to Quebec's motions; <u>see</u>

Docket Entry Nos. 225 & 226;

**AND** Quebec seeking to file an appeal of this Court's Order and Final Judgment,

dated March 24, 2015;

**AND** Bankruptcy Rule 8002(a)[1] providing that "a notice of appeal must be filed

with the bankruptcy clerk within 14 days after the entry of the judgment . . . being

appealed";

**AND** Quebec having failed to file an appeal from the Order and Final Judgment

within the requisite 14 day period set forth in Bankruptcy Rule 8002(a);

_____

[1] References to the Bankruptcy Rules are to the Federal Rules of Bankruptcy
Procedure.

**AND** Bankruptcy Rule 8002(d) authorizing the bankruptcy court to extend the

time for filing a notice of appeal upon a party's motion under certain circumstances;

**AND** Bankruptcy Rule 8002(d) stating, in pertinent part:

> **(d) Extending the time to appeal**
>
> > **(1) When the time may be extended**
> >
> > Except as provided in subdivision (d)(2), the
> > bankruptcy court may extend the time to file a
> > notice of appeal upon a party's motion that is
> > filed:
> >
> > > (A) within the time prescribed by
> > > this rule; or
> > >
> > > (B) within 21 days after that time,
> > > if the party shows excusable
> > > neglect.
> >
> > * * *
> >
> > **(3) Time limits on an extension**
> >
> > No extension of time may exceed 21 days after
> > the time prescribed by this rule, or 14 days
> > after the order granting the motion to extend
> > time is entered, whichever is later.

**AND** Quebec having filed its Motion within the time period required under

Bankruptcy Rule 8002(d)(3);[2]

---

[2] As Kosachuk points out in his Response, Quebec filed its Extension Motion on
the very last day before the time period set forth Bankruptcy Rule 8002(d)(3) expired.
<u>See</u> Response ¶ 37.

2

## Factual History

**AND** Eugenia Lorret and Nina Gogitidze having obtained a judgment (the "Lorret Judgment") for $108,293.54 against Kosachuk in the state court of New York in September of 2006, see Joint Pre-Hearing Statement at pg. 2 (Uncontested Fact ¶ 1);

**AND** the state court, upon finding an error in the amount of the Lorret Judgment, having decreased the amount of the Lorret Judgment from $108,293.54 to $48,293.54, plus costs of $1,050.00 and interest from November 25, 2002, see id. (Uncontested Fact ¶ 3);

**AND** the Lorret Judgment having been assigned to Quebec in 2009 and the assignment of the Lorret Judgment to Quebec having been filed in the state court in New York on March of 2011, see id. (Uncontested Fact ¶ 4);

**AND** Quebec and Kosachuk having entered into a consent order on July 2, 2012, fixing the principle amount of the Lorret judgment at $48,293.54 and agreeing that Kosachuk would pay the amount within 30 days, see id. (Uncontested Fact ¶ 4);

**AND** Quebec having initiated this matter on July 6, 2012, which was only four days after Quebec and Kosachuk entered into the consent order mentioned immediately above, by filing an Involuntary Petition for Relief against Kosachuk,[3] see Docket Entry No. 1;

**AND** Quebec having represented in the Involuntary Petition for Relief that the amount of its claim against Kosachuk was $215,000;

---

[3] The Involuntary Petition was filed to commence a Chapter 7 bankruptcy case.

3

**AND** Raymond Houle ("Houle") having signed the Involuntary Petition as Quebec's representative;

**AND** Darius Marzec ("Marzec") having represented Quebec when the Involuntary Petition was filed;

**AND** Kosachuk, on July 30, 2012, having filed a motion to dismiss the involuntary bankruptcy case which Quebec filed against him, see Docket Entry No. 7;

**AND** Quebec having filed an Amended Involuntary Petition on August 17, 2012, see Docket Entry No. 13;

**AND** Quebec having filed an objection to Kosachuk's motion to dismiss on August 23, 2012, see Docket Entry No. 17;

**AND** the Court having held a hearing on Kosachuk's motion to dismiss on September 12, 2012;

**AND** the Court having issued an Order dated September 25, 2012, dismissing the involuntary bankruptcy case but retaining jurisdiction over the matter "to hear any claims the alleged Debtor makes against the Petitioning Creditor," Docket Entry No. 25;

**AND** Kosachuk having subsequently filed a *pro se* Motion to Declare this Involuntary Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, and to Seal the Records and Sanctions ("Bad Faith Motion"), see Docket Entry No. 27;

**AND** Quebec having filed a memorandum in opposition to Kosachuk's Bad Faith Motion, Docket Entry No. 32;

**AND** the Court having held a status hearing on April 17, 2013;

4

AND the Court having issued an Order, dated April 17, 2013, placing under seal all records of the Court relating to the Involuntary Petitions filed against Kosachuk and all references to the petitions, Docket Entry No. 48;

AND the parties consenting to having a mediator appointed for purposes of trying to reach a settlement regarding the Bad Faith Motion;

AND the Court having appointed a mediator for the parties, Docket Entry No. 49;

AND the mediator having reported, on or about June 25, 2013, that a settlement of the matter had not been reached, Docket Entry No. 56;

AND the Court having scheduled another status conference for August 6, 2013 and the status conference having been held on that date, see Docket Entry Nos. 62 & 63;

AND Marzec having requested the Court to build into the discovery period an additional two weeks in order to provide his client and himself with time to obtain separate, specific bankruptcy counsel to represent each of them with regard to the Bad Faith Motion, see Transcript, dated August 6, 2013, at 2-3, Docket Entry No. 73;

AND Kosachuk having had no objection to Marzec's request for a two week period to retain bankruptcy counsel for his client, Quebec, and himself, see id. at 5;

AND Marzec having requested, at the hearing on August 6, 2013, that his client's representative, namely Houle, be deposed telephonically by Kosachuk because Houle had been hospitalized (though was no longer in the hospital), lives in Canada and has a difficult time traveling, see id. at 6;

AND the Court having advised the parties that it would defer ruling on Marzec's

request regarding Houle and that, if Marzec intended to pursue the objection to Houle

being required to travel, the Court would "require medical proof" of his inability to do so,

see id. at 8;

AND the Court having thereafter issued a pretrial scheduling order setting the

discovery deadline as November 5, 2013 and requiring the parties to file a joint pre-

hearing statement on or before December 5, 2013, see Docket Entry No. 64;

AND Kosachuk having filed, on October 21, 2013, a motion to compel the

depositions of Houle and Marzec, see Docket Entry No. 66;

AND Kosachuk having alleged in the motion to compel that Marzec repeatedly

ignored his communications regarding the scheduling of depositions, see id. ;

AND the hearing on Kosachuk's motion to compel being noticed for November

13, 2013, see Docket Entry No. 67;

AND Marzec having filed, on November 12, 2013,[4] objections to Kosachuk's

motion to compel on behalf of Quebec and on behalf of himself, see Docket Entry Nos.

68 & 69;

AND Paul Troy, Esquire ("Troy") of Kane, Pugh, Knoell, Troy & Kramer, LLP,

having filed an entry of appearance on November 12, 2013, on behalf of Marzec, see

Docket Entry No. 70;

---

[4] Marzec waited until the day immediately prior to the hearing on Kosachuk's
motion to compel to file the objections.

6

AND the Court having held the hearing on Kosachuk's motion to compel on

November 13, 2013, and having stated:

> I have, in fact, reviewed all of the papers here. Mr. Marzec,
> your lack of cooperation in this matter is appalling. And it
> continues . . .
>
> Counsel, I'm just appalled at your behavior here.
> You're in a situation where it is clear that I have already
> ruled that you filed this case wrongly on an issue that we're
> supposed to be deciding at some point in this case is how
> much money he gets for that. So cooperation ought to be
> the hallmark of what you're doing in this case.
>
> And instead, as far as I can tell, every delay in this
> case has been the result of your inaction or actions. I am
> going to order the deposition of you and [Mr. Houle.]

Transcript, dated November 13, 2013, at 2-3, Docket Entry No. 72;

AND the Court having noted at the hearing on November 13, 2015, that Marzec

had asked at the prior hearing on August 6, 2013, for a couple of extra weeks before

discovery commenced to retain bankruptcy counsel for his client and himself but that he

had only retained bankruptcy counsel for himself (and not for Quebec) the day before

the hearing on Kosachuk's motion to compel, see id. at 11;

AND Marzec having advised the Court at the hearing on November 13, 2013,

that Houle was no longer an "officer of the company" and that a corporate

representative of Quebec (and not Houle) would be produced for deposition by

Kosachuk, see id. at 5;

AND the Court having advised Marzec that no action had been taken in

response to Kosachuk's notice of deposition directed to Houle and that it was too late

for Marzec to be seeking Court intervention on the matter at this date, see id. at 5-6;

7

**BUT** the Court having ruled that Quebec could produce a corporate representative other than Houle on December 3, 2014 with the understanding that Kosachuk could thereafter determine whether he still needed to depose Houle and, if so, whether he would agree to conduct Houle's deposition telephonically, see id. at 6, 9;

**AND,** despite Marzec's representations to the Court that Houle was unable to travel to Philadelphia and that he was no longer a corporate representative of Quebec, Houle having appeared in Philadelphia on December 3, 2013, for his deposition by Kosachuk, see Transcript of Oral Deposition of Raymond Houle, dated December 3, 2013 ("Tr. of Houle, 12/3/13");

**AND** the transcript from Houle's deposition noting that Elizabeth Hazan was also present for the deposition, see Tr. of Houle, 12/3/13, at 2;

**AND** Houle having originally testified at his deposition on December 3, 2013, that he was the "Shareholder and President" of Quebec but, on prompting from Marzec, who asked "Mr. Houle, are you the [P]resident right now?," Houle having altered his answer stating that "No, no, because I'm sick I had to change the things, but not I'm – I'm the shareholder," Tr. of Houle, 12/3/13, at 5;

**AND** Houle having explained at his deposition that he owned the sole share of stock of Quebec and that the sole business of Quebec is owning the Lorret Judgment against Kosachuk, id. at 6-7;

**AND** Houle having also explained that Eli Hazan, who is the brother of Elizabeth Hazan, transferred his sole share of stock in Quebec to Houle because Eli Hazan owed money to Houle, id. at 7-8;

8

**AND** Houle having testified that he did not think there were any other corporate
officers of Quebec "right now," id. at 13-14;

**AND** it being evident from the transcript of Houle's deposition that Marzec was
interjecting unreasonable objections to Kosachuk's questions to Houle and also
attempting to prompt Houle to provide particular answers to Kosachuk's questions, see
e.g., id at 5-13;

**AND** Marzec objecting, at one point, that Kosachuk was "very purposely"
pronouncing his words in a slow fashion in order to "create stress" for Houle and, yet,
just a short time later, having instructed Kosachuck to "slow down so that Mr. Houle can
understand" since "[h]e's not a native English speaker[,]" see id. at 13 & 20;

**AND** Houle having admitted during his deposition that he authorized Marzec to
file the original and the amended Involuntary Petitions against Kosachuk, id. at 29;

**AND** Kosachuk having also deposed Marzec in Philadelphia on December 3,
2013;

**AND** Marzec having filed a motion to compel against Kosachuk on November 27,
2014 (22 days after the discovery deadline), asserting that Kosachuk failed to respond
to document requests that were attached to a subpoena that was served on him on
October 1, 2013, see Docket Entry No. 74;[5]

_____

[5]  Quebec filed a motion to compel against Kosachuk on December 2, 2013.
See Docket Entry No. 76.  However, Quebec never filed notice of a hearing regarding
its motion to compel despite being advised of its failure to do so by the Bankruptcy
Clerk's Office. See Docket Entry No. 85.  Accordingly, Quebec's motion to compel was
dismissed for lack of prosecution. See Docket Entry No. 94.

9

AND the hearing on Marzek's motion to compel being scheduled for January 8, 2014, see Docket Entry No. 75

AND Kosachuk having filed an affidavit on December 4, 2013, stating that Marzec never served the aforementioned subpoena on him, see Docket Entry No. 77;

AND Marzec having waited until on or about January 6, 2014, to file an affidavit stating that he served the subpoena on Kosachuk on October 1, 2013, see Docket Entry Nos. 80 & 81;

AND the Court having held a hearing on Marzec's motion to compel on January 8, 2015, see Docket Entry No. 83;

AND the Court having denied Marzec's motion to compel on the grounds that: (i) Marzec failed to appear at the hearing on his motion to compel; (ii) Marzek did not mention at the prior court hearing on November 13, 2013, that he had served any discovery on Kosachuk; (iii) Kosachuk presented evidence which indicated that Marzec backdated the discovery at issue; and (iv) Marzec waited until after the discovery deadline had expired to file his motion to compel against Kosachuk, see Transcript, dated January 8, 2014, at 1-17, Docket Entry No. 95; see also Docket Entry No. 86 (Amended Order, dated January 8, 2014, denying Marzec's motion to compel);

AND the Court having continued the pretrial hearing conference that had been scheduled for January 14, 2014 to March 11, 2014 to provide the parties with: (i) sufficient time to file a Joint Pretrial Statement; and (ii) time to engage in another effort at mediation, see Transcript, dated January 8, 2014, at 17-24, Docket Entry No. 95; see also Docket Entry Nos. 82 & 88;

10

**AND** the Court, on January 31, 2014, having appointed Howard Gershman,

Esquire, to serve as a mediator in the parties' second attempt at mediation in this

matter, see Docket Entry No. 92;

**AND** Mr. Gershman having accepted his assignment as mediator, see Docket

Entry No. 98;

**AND** the Court having entered an Order, dated February 24, 2014, scheduling a

status hearing in this matter on April 8, 2014 and abating all pending deadlines and

hearings, see Docket Entry No. 99;

**AND** Mr. Gershman having filed a Mediator's Certificate of Compliance on March

18, 2014, stating that a settlement had not been reached, see Docket Entry No. 104,

**AND** the Court having issued an Order on March 19, 2014, scheduling a status

hearing on Tuesday, March 25, 2014 to "discuss the issues properly before this Court

and the scheduling of all remaining matters necessary to set a Pretrial Conference and

Trial date thereon[,]" see Docket Entry No. 106;

**AND** Marzec having thereafter filed a Motion for Leave to Withdraw as Counsel

for Quebec, alleging that a conflict of interest had arisen between his client and himself

because their defenses could not be "reconciled" and, further, that Quebec disagreed

with his advice concerning strategy and defense, see Docket Entry No. 108;

**AND** the Court having held a status hearing on March 25, 2014, at which the

Court: (i) granted Marzec's motion to withdraw as counsel to Quebec;[6] (ii) directed

---

[6] The Court formally entered an Order, dated May 13, 2014, granting Marzec's
motion to withdraw as counsel for Quebec. See Docket Entry No. 126.

Kosachuk to file a statement by April 15, 2014, setting forth the relief which he was

seeking against Quebec and Marzec for filing the Involuntary Petition against him;

(iii) required Quebec to retain new counsel by April 22, 2014; (iv) directed Quebec and

Marzec to file replies to Kosachuk's statement of relief by May 6, 2014; and

(v) scheduled the next status hearing on May 13, 2014, see Docket Entry No. 116;

**AND** Kosachuk, who had been proceeding *pro se* since the filing of the

Involuntary Petition against him, having retained Anne Aaronson, Esquire, of Dilworth

Paxson L.P., as counsel on or about April 11, 2014, see Docket Entry No. 119;

**AND** David Smith, Esquire, of Smith Kane Holman, LLC, having entered his

appearance as counsel for Quebec on May 5, 2014, see Docket Entry No. 121;

**AND** Aaronson having filed a statement on Kosachuk's behalf: (i) setting forth

the relief ("Statement of Relief") which he was seeking against Quebec and Marzec;

and (ii) stating the reasons why the relief was proper, see Christopher Kosachuk's

Statement in Support of Motions to Declare Bad Faith Filing and Request for Sanctions,

Docket Entry No. 120;

**AND** Exhibit F to Kosachuk's Statement of Relief purporting to be an Assignment

of Judgment, dated February 10, 2014, and a Corrected Assignment of Judgment, also

dated February 10, 2014, transferring and assigning the Lorret Judgment from Quebec

to SRS Techonologies [sic] Professionals LLC ("SRS"), see Docket Entry 120-6

(Exhibit F);

AND the address listed for Quebec on the Assignment of Judgment and
Corrected Assignment of Judgment, which are both dated February 10, 2014, being:
"5552 Queen Mary Road [S]uite #4 Hampstead, Quebec, H3X 1V9, Canada," <u>see</u> <u>id</u>.

AND Marzec's counsel having filed an Answer on his behalf to Kosachuk's
Statement of Relief, <u>see</u> Docket Entry No. 122;

AND Smith, having filed an Answer ("Quebec's Answer to Statement of Relief")
on Quebec's behalf to Kosachuk's Statement of Relief, <u>see</u> Docket Entry No. 123;

AND Quebec's answer to Kosachuk's Statement of Relief revealing that Houle
was in New York on February 10, 2014, to sign the aforementioned Assignment of
Judgment and Corrected Assignment of Judgment on behalf of Quebec, <u>see</u> Statement
of Relief ¶ 18 & Quebec's Answer to Statement of Relief ¶ 18; <u>see</u> <u>also</u> Exhibit F to
Statement of Relief;

AND the aforementioned Corrected Assignment of Judgment, dated February
10, 2014, having been notarized, <u>id</u>;

AND Houle having signed the aforementioned Corrected Assignment of
Judgment in New York on February 10, 2014, as the "President" of Quebec despite
Marzec's representation to the Court in November of 2013 that Houle was no longer an
officer of Quebec and Houle's deposition testimony on December 3, 2014 that he was
no longer an officer of Quebec, <u>see</u> <u>id</u>;

AND the Court having held a hearing on May 13, 2015, see Docket Entry
No. 124;

13

**AND** Marzec having filed a Motion to Compel Answers to Interrogatories and Requests for Production of Documents and Motion to Strike Objections to which Kosachuk filed a response, <u>see</u> Docket Entry Nos. 133 & 135;

**AND** the Court having held a hearing on July 30, 2014, on Marzec's Motion to Compel Answers to Interrogatories and Requests for Production of Documents and Motion to Strike Objections and the Court having denied the motion, <u>see</u> Transcript, dated July 30, 2014, Docket Entry No. 142;

**AND** a status hearing that was scheduled for September 18, 2014, having been continued to October 21, 2014, <u>see</u> Docket Entry Nos. 144 & 145;

**AND** the parties having filed a Joint Pre-Hearing Statement on October 16, 2014, listing: (i) a Statement of Uncontested Facts; (ii) Movant's Factual Contentions Disputed by Respondents; (iii) Respondents' Factual Contentions Disputed by Movant; (iv) Damages and other Relief requested by Kosachuk; (v) the parties' expected witnesses; and (vi) the parties' expected hearing exhibits, <u>see</u> Docket Entry No. 146;[7]

**AND** Kosachuk listing Houle as a hearing witness, <u>see</u> <u>id</u>. at 18;

**AND** Quebec listing Houle as a hearing witness and stating that he would be testifying as a "representative of Quebec" in support of "Respondents' disputed factual contentions," <u>see</u> <u>id</u>.;

---

[7] The Court's Pre-evidentiary Hearing Scheduling Order, dated August 7, 2013, set forth the requirements for the parties' Joint Pre-Hearing Statement. <u>See</u> Docket Entry No. 64. One of the requirements was for the parties to identify their witnesses and, "if not already provided to all parties," to list "the address and telephone number of each witness." <u>Id</u>.

14

AND the Court having held the status hearing that was scheduled on October 21, 2014;

AND Aaronson having pointed out at the status hearing that Quebec did not provide an address for Houle in the parties' Joint Pre-Hearing Statement,[8] see Hearing Transcript, dated 10/21/14, at 17, Docket Entry No. 150;

AND Quebec's counsel having responded by stating that he did not "actually" know Houle's address but that he would "find it out" and amend the Joint Pre-Hearing Statement accordingly, see id. at 17-18;[9]

AND the Court having directed Quebec's counsel to "get it," see id. at 18;

BUT Quebec's counsel having failed to amend the Joint Pretrial Statement to list Houle's current address;

AND the Court having issued a pretrial scheduling order, dated October 22, 2014, requiring all motions *in limine* to be filed on or before Friday, December 12, 2014 and stating that a trial date "will be set after December 12, 2014[,]" Docket Entry No. 149;

---

[8] Quebec and Marzec listed all of their witnesses' addresses and telephone numbers except for Houle and Aaronson. With regard to Aaronson, Quebec and Marzec stated: "Movant is in possession of Ms. Aaronson's address and telephone number." See Docket Entry No. 146 at 18-19.

[9] At the hearing on October 21, 2014, Michael Donahue, Esquire, from the firm of Smith Kane Holman, LLC, appeared on behalf of Quebec. See Hearing Transcript, dated October 21, 2014, Docket Entry No. 150.

AND Marzec and his liability insurer, Continental Casualty Company d/b/a CNA ("Continental"), having requested the parties to engage in a third attempt to confidentially mediate a resolution to this matter (along with another matter involving the same parties in the state court in Philadelphia County, Pennsylvania);[10]

AND the third attempt at mediation having occurred on December 11, 2014, December 22, 2014, and December 23, 2014;

AND Quebec, although initially refusing to participate in the mediation, having participated in the part of the mediation which occurred on December 11, 2014, but having declined to continue participating in any further part of the mediation;

AND Kosachuk, Marzec and Continental having continued with the mediation on December 22, 2014 and into the next day;

AND Kosachuk, Marzec and Continental having reached an agreement in principle on December 23, 2014, to resolve the Bad Faith Motion as between Kosachuk and Marzec only;

AND the agreement in principle being premised upon a simultaneous exchange of consideration;

---

[10] Upon notification that Marzec and Kosachuk intended to engage in another attempt at mediation in an effort to resolve their disputes, the Court extended the date for filing motions *in limine* from Friday, December 12, 2014 to Friday, December 19, 2014. See Docket Entry No. 151.

**AND** Kosachuk, Marzec and Continental attempting to circulate a settlement document ("Settlement Document") in December of 2014, but before the parties could act upon such Settlement Document, Quebec's purported assignee, SRS, having moved in a Florida court for the issuance of a writ of garnishment against Continental and, subsequently, against the law firms of counsel for Kosachuk, Marzec and Continental based on SRS's status as the current assignee of the Lorret Judgment;

**AND** the writs of garnishment having the effect of preventing, for the time being, the simultaneous exchange of consideration contemplated by the Settlement Document;

**AND** Smith having filed a motion (on behalf of his firm – Smith Kane Holman, LLC) on December 30, 2014, to withdraw as Quebec's counsel, stating that: (i) Quebec was not complying with the terms of the firm's engagement letter; and (ii) his firm was no longer able to adequately represent the interests which Quebec was "seeking to advance," see Docket Entry No. 152;

**AND** the hearing on Smith's motion to withdraw as Quebec's counsel having been scheduled for February 4, 2015, see Docket Entry No. 153;

**AND** Kosachuk having objected to Smith's motion to withdraw as counsel to the extent that such relief would delay trial or impair Kosachuk's ability to proceed against Quebec, see Docket Entry No. 154, and Marzec having taken no position regarding Smith's motion to withdraw as counsel, see Docket Entry No. 156;

**AND** the Court having also scheduled a status hearing in this matter on February 4, 2015, see Docket Entry No. 155;

**AND** Smith's motion to withdraw as Quebec's counsel having been granted on February 4, 2015, <u>see</u> Docket Entry No. 159;

**AND** a further status hearing having been scheduled in the afternoon on February 11, 2015, Docket Entry No. 162;

**AND** an attorney named Ronald Pressley, Esquire, having contacted the Court's chambers on the morning of February 11, 2015, prior to the status hearing, <u>see</u> Transcript, dated February 11, 2015, at 2-3;

**AND** Pressley having advised the Court that he had been retained the night before to represent Quebec and that he desired to participate telephonically in the status hearing but Pressley not having entered a notice of appearance on behalf of Quebec and the record in this matter being sealed, the Court declined to allow such participation, <u>id</u>;

**BUT** the Court having requested Kosachuk's counsel to contact Pressley in private by telephone during the status hearing to advise him that he was required to file a notice of appearance in order to participate in any hearing in the matter because the matter was under seal and that the trial of the matter was scheduled for Wednesday, March 18, 2015, at 11:30 a.m., <u>see id</u>. at 10-16;

**AND** Kosachuk's counsel (Aaronson) having resumed her telephonic participation in the status hearing on February 11, 2015, at the end of her telephone conversation with Pressley, <u>see id</u>. at 16-17;

18

AND Kosachuk's counsel having reported to the Court that Pressley told her that he "want[ed] to find out more about the case before he ... enter[ed] his appearance" but that he did "intend to enter his appearance" and that he was "available on the 18th of March for the trial of the matter, id. at 17;

AND the Court having entered an Order, dated February 11, 2015 (the "February 11th Order"), stating that: (i) all motions in limine were required to be filed on or before Wednesday, February 25, 2010; (ii) a hearing on motions in limine would be held on Tuesday, March 10, 2015 at 2:00 p.m.; and (iii) trial of the adversary proceeding would be held on Wednesday, March 18, 2015, at 11:30 a.m., Docket Entry No. 163;

AND the Court having requested Quebec's former counsel, David Smith, to send the February 11th Order to Quebec and Smith having confirmed in an email, dated February 13, 2015, and sent at 9:24 a.m., that he had sent the February 11th Order to Quebec via email;

AND the Court having specifically directed the Clerk's Office to mail a copy of the February 11th Order to the following three addresses for Quebec, which the Clerk's Office did:

> Attn: Ramond Houle
> 9197-5904 Quebec, Inc.
> 5552 Queen Mary Road, Suite 4
> Hampstead, Q.C. H3X 1V9
>
> Attn: Raymond Houle
> 9197-5904 Quebec, Inc.
> 5552 Queen Mary Road, Suite 4
> Montreal, Q.C. H3C 1H6

> Attn: Raymond Houle
> 9197-5904 Quebec, Inc.
> 18791 Main Street
> Fort Loudon, PA 17224

Docket Entry No. 166;

**AND** Smith Kane Holman, LLC, which was Smith's firm and Quebec's former

counsel, having filed a Certificate of Service with the Court, on February 20, 2015,

stating as follows:

> It is hereby certified that on February 19, 2015, a true and
> correct copy of the Court's February 11, 2015 Order was
> served upon 9197-5904 Quebec, Inc., as well as Raymond
> Houle, an officer of 9197-5904 Quebec, Inc., by electronic
> mail to a known active email address associated with
> 9197-5904 Quebec, Inc. and Raymond Houle, an e-mail
> address previously used to communicate with 9197-5904
> Quebec, Inc. and Raymond Houle. In addition, a true and
> correct copy of the Court's February 11 ,2015 Order was
> served upon 9197-5904 Quebec, Inc., by first U.S. Mail, first
> class delivery, postage prepaid, upon the following address,
> which address is identified as the Registered Office Address
> of 9197-5904 Quebec, Inc. at the Pennsylvania Department
> of State, Corporations Bureau as of February 18, 2015:
>
> > 9197-5904 Quebec, Inc.
> > 13791 Main Street
> > Fort Loudon, PA 17224
> > (Registered Office Address)

Docket Entry No. 172;

20

AND the Court having received an email on February 13, 2015,[11] at 10:41 a.m.,

from raymond.houle1@gmail.com, stating as follows:

> I am copying here 9197-5904 Quebec new attorney Ronald Pressley who has been hired a couple of days ago and was in the process of filing a notice of appearance but has conveyed to me that it was a sealed file and that the judge would unseal the file so he could file his notice of appearance. Can you please give him the instructions that he needs in order to unseal the file and file his notice of appearance. Thanks again.
>
> Best regards,
>
> Raymond Houle;

AND the Court receiving another email on February 13, 2015, at 10:49 a.m.,

from raymond.houle1@gmail.com, stating as follows:

> I am enclosing here 9197-5904 Quebec new attorney Ronald Pressley notice of appearance in this matter. Thanks again.
>
> Best regards,
>
> Raymond Houle;

AND Pressley having emailed Aaronson on February 13, 2015 at 1:13 p.m.,

stating:

> Anne, I understand that I will have to physically take my Entry of Appearance to the Clerk's office for filing since the file is sealed and unavailable for electronic access. This I will do either late this afternoon or first thing Monday morning.

see Exhibit H to Kosachuk's Objection to Extension Motion, Docket Entry No. 225;

---

[11] The two emails which the Court received on February 13, 2015, from raymond.houle1@gmail.com were sent to Judge FitzSimon's judicial assistant.

AND Pressley having had a letter, dated February 16, 2015, hand delivered to

the Court, declaring:

> Just to clarify, our office will *not* be filing an appearance or moving forward
> in the above referenced matter on behalf of 9197-5904 Quebec, Inc.  If
> there are any questions please feel free to call me.

see Exhibit I to Kosachuk's Objection to Extension Motion, Docket Entry No. 225;

AND Pressley having copied Houle on the February 16th letter to the Court;

AND Pressley never having filed a notice of appearance on behalf of Quebec;

AND the Court having received an email on March 16, 2015, from Elizabeth

Hazan, stating as follows:

> Please see the attached letter. Mr Raymond Houle principal
> of 9197-5904 Quebec inc [Sic] is confined in the Jewish
> General Hospital in the psychiatric division for an
> undetermined period of time and he is unable to attend the
> hearing scheduled on Wednesday March 18, 2015. He is
> suffering from a severe depression, panic attacks and other
> condition. He has been ill for the past few months and he
> won't be able to attend the court hearing on Wednesday.
> Please postpone the hearing to a later date when he will be
> able to attend after his release from the hospital.
>
> If you need to contact me please don't hesitate to call me at
> 2129206605. Thanks again.
>
> Best regards,
>
> Elizabeth

AND the letter ("Letter"), which was mentioned in and attached to Ms. Hazan's

email, bearing the date of March 13, 2015, and providing as follows:

> To Whom It May Concern:
>
> **RE: MR. RAYMOND HOULE**
> **D.O.B.: 1948-04-30**
>
>    The following is to confirm that the above-mentioned
> has been hospitalized at the Jewish General Hospital in
> Montreal since March 3, 2015 for medical reasons and
> therefore is unable to attend court in America.
>
>    Thank you for your understanding in this matter.
>
> Sincerely,
>
> _____
> Dr. C. Roy

AND the Letter from Dr. C. Roy being signed "Carmella Roy";

AND the Court never having seen such a short letter from a physician[12] and,

therefore, being suspicious of the Letter but being willing to provide Quebec with the

opportunity to provide adequate evidence that Houle was ill and unable to attend the

trial;

---

[12] Interestingly, in <u>JMB/Urban 900 Development Partners, Ltd v. Hazan</u>, 2013 WL 3367195 (Ill. App. 1 Dist. June 28, 2013), Hazan used a similar physician's note to support her claim that she was "suffering from psychological and emotional issues that made her severely 'out of it'" and that she did not understand a settlement which she had signed. In the aforementioned case, the court observed that the note was "from a[n] alleged psychiatric resident working at a 'Jewish General Hospital' located in Montreal, Canada" and that the note "stated that Hazan was a patient of the hospital who was undergoing treatment requiring that 'she remain in Montreal Canada for the time being, and for the foreseeable future until her treatment was completed." <u>Id</u>. at *2. The trial court directed Hazan to file an affidavit from a physician to support her continued assertion that she was unable to appear in court due to her medical condition. <u>Id</u>. at *10. No such affidavit was ever filed. <u>Id</u>. at *10-*12.

23

AND the Court, accordingly, having issued an Order, dated March 16, 2015 ("March 16th Order"), acknowledging that it received the aforementioned email (with attached Letter) from Ms. Hazan but opining that the Letter, even if it had been filed with the Court by an attorney on behalf of Quebec, was "wholly insufficient evidence/documentation" that Houle was unavailable for trial and directing that the trial would proceed as scheduled unless one of the following occurred:

(i) an attorney representing Quebec filed a motion with the Court with adequate supporting documentation and the Court granted the motion; or

(ii) a request for a continuance was made at the beginning of the trial by an attorney who made his or her appearance on behalf of Quebec and the Court was convinced by adequate supporting documentation that a continuance was warranted.

See Docket Entry No. 196;

AND the Court having provided Ms. Hazan with a copy of the March 16th Order on the same date via her email address of ElizabethHazan1@aol.com; id.;

AND the Court, on March 17, 2015, having continued trial of the Bad Faith Motion as between Kosachuk and Marzec in anticipation of and pending the submission of a joint motion by these two parties seeking to proceed with a settlement of Kosachuk's motion as against Marzec;

**AND** Ms. Hazan having appeared at the commencement of the trial of this matter

as against Quebec on March 18, 2015 and having acknowledged receiving the Court's

March 16th Order via email, <u>see</u> Audio Recording of Trial, March 18, 2015, at 11:35 to

11:41 a.m.;

**AND** Ms. Hazan having advised the Court that she had another letter, also

allegedly signed by Dr. Roy, and similarly stating that Houle was ill and could not

currently travel to Philadelphia for the trial,[13] <u>id</u>;

**AND** Ms. Hazan having also advised the Court that, an hour earlier, she entered

into a retainer agreement with an attorney to represent Quebec; <u>id</u>. at 11:36;

**AND** the Court having advised Ms. Hazan that: (i) Quebec had notice of the trial

for two months; (ii) she could not appear on behalf of, or represent, Quebec because it

was a corporation which must be represented in court by counsel; and (iii) she could not

represent Houle because the Court had no evidence that he had given her permission

to speak on his behalf, <u>id</u>;

**AND** the Court having requested Ms. Hazan to exit the courtroom because the

matter before it was a sealed matter and only the parties and their attorneys were

permitted to participate in the sealed matter, <u>id</u>.;

---

[13] This letter, dated March 18, 2015, was also just two sentences. It stated:

> This is to inform you that the abovementioned [referring to
> Raymond Houle] is currently admitted at the Jewish General
> Hospital for a severe Major Depressive Episode. He is
> unable to attend Court.

<u>See</u> Exhibit B to Extension Motion.

AND the Court having proceeded with the trial of this matter as between Kosachuk and Quebec;

AND, based upon Quebec's failure to appear at the trial, the Court having accepted an offer of proof from Aaronson as to the evidence which Kosachuk would present against Quebec, id. at 11:47 - 11:48;

AND the Court having admitted Kosachuk's exhibits, numbering P-1 to P-51, into evidence at the trial, id. at 12:56;

AND the Court scheduling a follow-up hearing on Tuesday, March 24, 2015, to render its ruling regarding the Bad Faith Motion as between Kosachuk and Quebec;

AND the Court directing Aaronson to: (i) update Kosachuk's request for attorney's fees and costs through March 18, 2015 and serve a copy of the same on Quebec; and (ii) file a revised proposed order and serve the same on Quebec;

AND Quebec having been served "via UPS Overnight Mail" on March 19, 2015, with a Certification of Counsel Regarding Attorneys' Fees and Expenses (by Aaronson), see Docket Entry Nos. 203 & 204;

AND Quebec having been served "via UPS Overnight Mail" on March 19, 2015 with notice of the hearing which the Court scheduled on Tuesday, March 24, 2015, see Docket Entry Nos. 202 & 204;

AND Quebec having been served "via UPS Overnight Mail" on March 20, 2015, with Kosachuk's Revised Proposed Order for Final Judgment on behalf of Kosachuk, see Docket Entry No. 207;

26

**AND** no attorney having entered an appearance on behalf of Quebec between the trial on March 18, 2015 and March 24, 2015;

**AND** no attorney having appeared before the Court on Quebec's behalf on March 24, 2015;

**AND** the Court having issued an oral ruling on March 24, 2015, on the Bad Faith Motion as between Kosachuk and Quebec;

**AND** the Court having entered an Order and Final Judgment, dated March 24, 2015, against Quebec and in favor of Kosachuck on the Bad Faith Motion, see Docket Entry No. 211;

**AND** Marzec and Kosachuk having filed a Joint Motion to Settle Claims of Christopher Kosachuk Against Darius Marzec and Marzec Law Firm Relating to the Above-Captioned Case, Free and Clear of All Liens, Claims, Interests and Encumbrances ("Joint Motion to Settle Claims"), see Docket Entry No. 208;

**AND** a hearing on the Joint Motion to Settle Claims having been scheduled for May 13, 2015;

**AND** Quebec having been served on March 30, 2015, with a notice of the hearing on the Joint Motion to Settle Claims, see Docket Entry No. 214;

**AND** Todd Mosser, Esquire, having filed a notice of appearance on behalf of Quebec on April 22, 2015, see Docket Entry No. 220;

**AND** Mosser having been given access to the sealed record in the above-captioned matter by Order, dated April 23, 2015, see Docket Entry No. 221;

27

**AND** Mosser having subsequently filed the Extension Motion and the Stay

Motion;

**AND** Mosser not having appeared at the hearing on the Joint Motion to Settle

Claims;

**AND** the Court having entered an Order granting the Joint Motion to Settle

Claims and providing for the relief requested therein, <u>see</u> Docket Entry No. 230;

## LEGAL ANALYSIS

**AND** my colleague, the Honorable Chief Judge Eric Frank, having thoroughly

examined and explained the "excusable neglect" requirement of Bankruptcy Rule

8002(d)(1)(B) in <u>Bayer v. Bayer (In re Nicholas Bayer)</u>, 527 B.R. 202 (Bankr. E.D. Pa.

2015);

**AND** the movant having the burden under Rule 8002(d)(1)(B) of proving that the

failure to file a timely appeal was the product of "excusable negect," <u>Bayer v. Bayer (In

re Nicholas Bayer)</u>, 527 B.R. at 207;

**AND** the Third Circuit Court of Appeals having ruled that the Supreme Court's

application of "excusable neglect" in <u>Pioneer Inv. Services Co. v. Brunswick Associates,

Ltd. Partnership</u>, 507 U.S. 380 (1993), "is used in applying Rule 8002(d)(1)(B)."[14] <u>Bayer

v. Bayer (In re Nicholas Bayer)</u>, 527 B.R. at 208; <u>see</u> <u>also</u> <u>Gruber v. Kaplan (In re

Kaplan)</u>, 482 Fed. Appx. 704, 707 (3d Cir. May 24, 2012) (standard set forth in <u>Pioneer

---

[14] In <u>Raguette v. Premier Wines & Spirits</u>, 691 F.3d 315, 319 (3d Cir.2012), the
Third Circuit observed that in <u>Pioneer Investment Services Co. v. Brunswick Associates
Limited Partnership</u>, 507 U.S. 380 (1993), the Supreme Court "established an equitable
approach to the 'excusable neglect' determination."

for excusable neglect "applies in the context of a motion under Rule 8002(c).")

AND the determination of "[w]hether neglect is 'excusable' in a bankruptcy context'" being "an equitable inquiry, which must take into account 'all relevant circumstances surrounding the party's omission.'" In re Straub, 2015 WL 1279510, at *2 (E.D. Pa. March 19, 2015)(*quoting* Pioneer, 507 U.S. at 395);

AND the Supreme Court having identified the following four factors in Pioneer as being relevant to the determination of excusable neglect: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant;[15] and (4) whether the movant acted in good faith, see id. at *2;

AND Quebec contending that the "excusable neglect" requirement of Bankruptcy Rule 8002(d)(1)(B), is satisfied because, "through no fault of its own, [it] could not receive notice of this Court's March 24, 2015 ruling in a timely fashion due to Mr. Houle's hospitalization," Extension Motion ¶ 15;

---

[15] Courts in the Third Circuit continue to apply the following five factors, which the Third Circuit Court of Appeals identified in Consolidated Freightways Corp. of Delaware v. Larson, 827 F.2d 916 (3d Cir. 1987), in "elucidating the 'reason for delay' factor from Pioneer'": (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts towards compliance. In re Straub, 2015 WL 1279510, at *2 (E.D. Pa. March 19, 2015)(*quoting* Consolidated, 827 F.2d at 919).

**BUT** Quebec having failed to include a discussion of the <u>Pioneer</u> factors in its Extension Motion;

**AND** Kosachuk having specifically discussed the <u>Pioneer</u> factors in his Objection to the Extension Motion, <u>see</u> Objection to Extension Motion ¶¶ 43-45;

**AND** Kosachuk asserting that he would suffer prejudice if the Extension Motion was granted because: (i) "[r]edress for the harm caused to Mr. Kosachuk by Quebec's bad faith filing of this matter has already been delayed for almost three years and has caused Mr. Kosachuk to incur attorney fees in excess of $200,000[,]" Objection to Extension Motion ¶ 56;

**AND** Kosachuk further asserting that an untimely appeal pursuant to Rule 8002(c)(2) would have a negative impact on the judicial proceedings in this matter because it would: (i) increase the harm which he has already suffered; (ii) frustrate the finality of the matter; and (iii) reward Quebec for its ongoing gamesmanship and refusal to cooperate with counsel, <u>id</u>.;

**AND** the Court disagreeing that an appeal pursuant to Rule 8002(c)(2) would result in any greater delay or prejudice to Kosachuk than a timely filed appeal would have;

**AND** Kosachuk asserting that Quebec's delay in filing a notice of appeal in this matter is inexcusable and that its delay in filing an appeal was entirely avoidable;

**AND** the Court agreeing that Quebec has not alleged excusable neglect for failing to file a timely notice of appeal;

**AND** Quebec having had two full months notice that the trial in this matter was going to be held on March 18, 2015;

**AND** Quebec having known on or before December 30, 2015, that David Smith was seeking permission to withdraw as its counsel in this matter;

**AND** Quebec (and Houle) having known since on or about February 16, 2015 (as a result of Pressley's letter of that date to the Court) that Pressley did not intend to move forward, or enter his appearance, on Quebec's behalf;

**AND** even assuming, based on Dr. Roy's Letter, that Houle was indeed hospitalized beginning on March 3, 2015, Houle neglected to take prompt action to retain another attorney on Quebec's behalf in February of 2015 while knowing that the trial in this matter was scheduled for March 18, 2015;

**AND** Quebec, having been a party to this matter, being responsible for retaining and *maintaining* counsel to represent its interest in this proceeding;

**AND** Quebec, though having had plenty of notice of the pending trial date in this matter, having failed to employ counsel to represent its interest at the trial on March 18, 2015 and at the hearing on March 24, 2015;

**AND** Quebec offering no reason whatsoever, other than referring to Houle's alleged hospitalization, for having failed to file a timely appeal;[16]

---

[16] Indeed, Quebec's counsel told the Court in November of 2013 that Houle was no longer as officer of Quebec.

31

**AND** Quebec's motion alleging that Elizabeth Hazan learned of the Court's judgment against Quebec on or around April 16, 2015 and that she conveyed her information about the judgment to Houle "several days later" and that "[a]t the time, Mr. Houle was hospitalized in Canada and therefore did not receive notice of this Court's ruling in the mail[,]"; Extension Motion ¶ 10;

**AND** Quebec's motion not providing evidence of Houle's alleged hospitalization except for the two 2-sentence letters from Dr. Roy, see Exhibit B to Extension Motion;[17]

**AND** the Court having previously stated that the Letter was insufficient evidence, whether presented by an attorney or a non-attorney, of Houle's hospitalization;

**AND** Quebec not having alleged that Houle's alleged hospitalization prevented it from discovering what happened at the trial on March 18, 2015 in a timely fashion;

**AND** Quebec not having alleged that Houle's hospitalization prevented it from filing a timely notice of appeal;

**AND** Houle's hospitalization, in and of itself, not being an adequate reason for Quebec's failure to take prompt action to discover the Court's trial ruling and filing a timely notice of appeal;

---

[17] Quebec also attached documents to its Extension Motion regarding a purported involuntary commitment of Houle in December of 2012. However, these documents do not provide support that Houle was hospitalized in March of 2015 and, specifically, on or around March 18, 2015. Moreover, Quebec could have attached an affidavit from Houle's alleged physician, Dr. Roy, attesting to the fact that Houle was hospitalized on March 18, 2015. In the alternative, Quebec could have stated in the Extension Motion that it would promptly supplement the record with such an affidavit. Quebec did neither. In any event, even if Houle was hospitalized on March 18, 2015 (and longer), it does not explain why Quebec failed to take action, following the trial date, to learn how the Court ruled on the Bad Faith Motion so that it could file a timely notice of appeal.

32

**AND** Kosachuk asserting that Quebec has not acted in good faith during the course of this judicial proceeding and that it purposefully avoided receiving formal notice of the Court's March 24th trial ruling, <u>see</u> Objection to Extension Motion ¶¶ 47-49, 54-57;

**AND** the Court finding it abundantly clear that Quebec has no had any trouble communicating with the Court when it has been to its advantage to do so;

**AND** Quebec's action of filing the Involuntary Petition within four days of having entered the consent order with Kosachuk on July 2, 2012, having been in bad faith;

**AND** this Court finding (as it related during its oral ruling at the hearing on March 24, 2015), based on the evidence submitted at the trial, that Quebec has been playing it fast and loose with the court systems in both federal and state courts in its attempt to harass Kosachuk with the Lorret Judgment, <u>see</u> Audio, dated March 24, 2015 (Court's oral findings and ruling in this matter);[18]

**AND** Quebec having failed to establish that it could not have prevented its delay in filing an appeal;

**AND** the Court having no hesitancy in agreeing that Quebec has not acted in good faith with regard to filing a timely appeal;

---

[18] Interestingly, on May 18, 2015, Quebec filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court in the Eastern District of New York. <u>See</u> In re 9197-5904 Quebec, Bankruptcy Case No. 15-42277 (Bankr. E.D.N.Y. 2015). Quebec estimated its assets as being from $0 to $30,000 and its liabilities as being from $500,000 to $1 million. <u>See id.</u> Docket Entry No. 3. Raymond Houle signed the petition as the "President" of Quebec. On July 21, 2015, the bankruptcy case was dismissed in response to an unopposed motion to dismiss filed by the Chapter 7 Trustee. <u>See id.</u> Docket Entry Nos. 8 & 10.

AND the third and fourth factors of <u>Pioneer</u> strongly outweighing the first and second factors of the Supreme Court's excusable neglect standard;

AND the Court, for the above-stated reasons, **ORDERING** and **DECREEING** that:

      (1)    Quebec's Extension Motion is **DENIED;** and

      (2)    Quebec's Stay Motion is **DENIED**.[19]

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

Anne M. Aaronson, Esquire
Dilworth Paxson LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102

Chistopher Kosachuk
854 Pheasant Run Road
West Chester, PA 19382

Paul C. Troy, Esquire
Kane, Pugh, Knoell, Troy & Kramer LLP
510 Swede Street
Norristown, PA 19401-4886

Darius A. Marzec, Esquire
Marzec Law Firm, P.C.
225 Broadway, Suite 3000
New York, NY 10007

Todd Michael Mosser, Esquire
The Law Office of Todd Mosser, PLLC
2 Penn Center
Suite 1723
Philadelphia, PA 19102

_____

[19] Since the Extension Motion is being denied, there is no reason to grant the Stay Motion.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 17-2216

———————————

IN RE: JOHN DOE,
                                      Involuntary Petitioner

v.

9197-5904 QUEBEC, INC.,
                                      Appellant

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cv-04870)
District Judge:  Hon. Wendy Beetlestone

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 15, 2018

———————————

Before:  JORDAN, SHWARTZ and KRAUSE, <u>Circuit Judges</u>.

———————————

JUDGMENT

———————————

This case came to be considered on the record from the United States District

Court for the Eastern District of Pennsylvania and was submitted pursuant to Third

Circuit L.A.R. 34.1(a) on March 15, 2018.

On consideration whereof, it is now hereby ORDERED and ADJUDGED by this

Court that the Order of the District Court entered on April 18, 2017 is hereby

AFFIRMED.  Costs taxed against Appellant.  All of the above in accordance with the Opinion of this Court.

ATTEST:

s/ Patricia S. Dodszuweit
Clerk

Dated:  March 15, 2018

Case: 17-2216 Document: 003112877043 Page: 1 Date Filed: 03/15/2018

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



U̲NITED S̲TATES C̲OURT OF A̲PPEALS

FOR THE THIRD CIRCUIT

21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790

Website: www.ca3.uscourts.gov

TELEPHONE

215-597-2995

March 15, 2018

John Doe
N/A


Todd M. Mosser
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Suite 1723
Philadelphia, PA 19102


In re: John Doe
Case Number: 17-2216
District Case Number: 2-15-cv-04870


ENTRY OF JUDGMENT

Today, **March 15, 2018** the Court entered its judgment in the above-captioned matter pursuant to
Fed. R. App. P. 36.

If you wish to seek review of the Court's decision, you may file a petition for rehearing. The
procedures for filing a petition for rehearing are set forth in Fed. R. App. P. 35 and 40, 3rd Cir.
LAR 35 and 40, and summarized below.

Time for Filing:
14 days after entry of judgment.
45 days after entry of judgment in a civil case if the United States is a party.

Form Limits:
3900 words if produced by a computer, with a certificate of compliance pursuant to Fed. R. App.

P. 32(g).
15 pages if hand or type written.

Attachments:
A copy of the panel's opinion and judgment only.
Certificate of service.
Certificate of compliance if petition is produced by a computer.
No other attachments are permitted without first obtaining leave from the Court.

Unless the petition specifies that the petition seeks only panel rehearing, the petition will be construed as requesting both panel and en banc rehearing. Pursuant to Fed. R. App. P. 35(b)(3), if separate petitions for panel rehearing and rehearing en banc are submitted, they will be treated as a single document and will be subject to the form limits as set forth in Fed. R. App. P. 35(b)(2). If only panel rehearing is sought, the Court's rules do not provide for the subsequent filing of a petition for rehearing en banc in the event that the petition seeking only panel rehearing is denied.

A party who is entitled to costs pursuant to Fed.R.App.P. 39 must file an itemized and verified bill of costs within 14 days from the entry of judgment. The bill of costs must be submitted on the proper form which is available on the court's website.

A mandate will be issued at the appropriate time in accordance with the Fed. R. App. P. 41.

Please consult the Rules of the Supreme Court of the United States regarding the timing and requirements for filing a petition for writ of certiorari.

Very truly yours,
Patricia S. Dodszuweit, Clerk

By: s/ Marianne/arr, Legal Assistant
Direct Dial: 267-299-4911

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2216
_____

IN RE: JOHN DOE,
                        Involuntary Petitioner

v.

9197-5904 QUEBEC, INC.,
                        Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cv-04870)
District Judge: Hon. Wendy Beetlestone
_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 15, 2018
_____

Before: JORDAN, SHWARTZ, and KRAUSE, <u>Circuit Judges</u>.

(Filed: March 15, 2018)

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

9197-5904 Quebec, Inc. ("Quebec") appeals, for the second time, from an order denying Quebec's motion for post-judgment relief under Federal Rule of Civil Procedure 60(b)(1). Because the District Court did not abuse its discretion in denying such relief, we will affirm.

I

Quebec filed an involuntary bankruptcy petition against John Doe, which the Bankruptcy Court dismissed. Doe then filed a motion asking the Bankruptcy Court to declare Quebec's petition to be in bad faith and for damages. Quebec failed to appear at the hearing on the motion allegedly due to the then-hospitalization of Quebec's representative, and on March 24, 2015, the Bankruptcy Court granted the motion and awarded approximately $1 million in punitive damages. Quebec then retained its current counsel. Twenty-one days after the appeal deadline passed, Quebec sought an extension of time for filing the appeal, asserting that it did not receive a copy of the Bankruptcy Court's March 24, 2015 order. The Bankruptcy Court denied the extension request. Quebec appealed that ruling to the District Court, and that same day, it received notice that it needed to file a designation of portions of the Bankruptcy Court record for the appeal by September 8, 2015. Quebec failed to do so, and the District Court dismissed the appeal on September 30, 2015 without an opinion. Quebec asserts that it failed to timely file the designation due to its counsel's erroneous calendaring of the deadline as October 22, 2015.

On October 20, 2015, Quebec filed its designation of record and a motion for post-judgment relief under Federal Rules of Civil Procedure 59(e) and 60(b)(1) seeking to

vacate the District Court's September 30, 2015 dismissal of the appeal. The District Court denied the motion as "untimely" without an opinion. Quebec filed a motion for reconsideration under Rule 59(e) which the District Court also denied without an opinion. Quebec appealed. We vacated the District Court's order denying Quebec's second Rule 59(3) motion because the District Court did not analyze whether Quebec's prior Rule 60(b) motion was timely filed. In re Doe, 681 F. App'x 106, 108-09 (3d Cir. 2017) (not precedential). We remanded to allow the District Court to determine the motion's timeliness and, if timely, consider the merits of the motion under Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993). Id. at 109.

On remand, the District Court again denied Quebec's Rule 59(e) motion, finding that the motion's timeliness was "questionable" and, even if timely, the prior Rule 60(b) motion nevertheless failed on the merits because the Pioneer factors demonstrated that Quebec had not shown "excusable neglect" warranting Rule 60(b)(1) relief. App. 10-14. Quebec appeals.

II[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 158(a)(1). Our Court has jurisdiction pursuant to 28 U.S.C. § 1291. Doe argues that this appeal is untimely and that we therefore lack appellate jurisdiction. See Doe's June 12, 2017 Mot. to Dismiss ¶ 10. Doe is mistaken. The District Court entered its order denying Quebec's Rule 60(b) motion on April 18, 2017, and Quebec filed its notice of appeal on May 18, 2017, which is within the 30-day timeframe set forth in Fed. R. App. P. 4(a)(1)(A). See also Fed. R. App. P. 6(b)(1) (applying Rule 4(a)(1)(A) to bankruptcy appeals). Therefore, this appeal is timely, and Doe's motion to dismiss for lack of appellate jurisdiction is denied.

We review a district court's order denying a Rule 60(b)(1) motion for abuse of discretion, except with respect to issues of law, over which we exercise plenary review. McBride v. Int'l Longshoremen's Ass'n, 778 F.3d 453, 458 (3d Cir. 2015). An abuse of discretion occurs where the district court's order "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact" or where "no reasonable person would adopt the district court's view." In re Cendant Corp. PRIDES Litig., 235 F.3d 176, 181 (3d Cir. 2000) (citation and internal quotation marks omitted).

Under Rule 60(b)(1), a district court may relieve a party from an order if the order resulted from "excusable neglect."[2] Fed. R. Civ. P. 60(b)(1). The question of whether a party's "neglect is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file.'" George Harms Constr. Co. v. Chao, 371 F.3d 156, 163 (3d Cir. 2004) (citation omitted). In making this determination, courts consider: (1) "the danger of prejudice," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." Pioneer, 507 U.S. at 395. "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute

---

[2] Rule 60(b) motions "must be made within a reasonable time" and "no more than a year after the entry of the judgment" from which relief is sought. Fed. R. Civ. P. 60(c)(1). Quebec does not challenge the District Court's conclusion that it was "questionable" whether the motion was made within a reasonable time.

4

'excusable' neglect," but excusable neglect "is not limited strictly to omissions caused by circumstances beyond the control of the movant." Id. at 392.

The District Court applied the Pioneer factors, found that Quebec's failure to timely file a designation of record for its appeal—which resulted in the dismissal of the appeal—was not attributable to excusable neglect, and denied Quebec's Rule 60(b)(1) motion.[3] The District Court's ruling was not an abuse of discretion.

First, the reason for the delay weighs against finding excusable neglect. Quebec's counsel concedes that he had notice of the September 8, 2015 deadline for filing the designation of record but explains that the deadline was mis-calendared. The District Court aptly found that counsel's oversight could have been prevented through effective office procedures and reasonable diligence on the part of counsel in checking the bankruptcy docket. See Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 322, 326, 328-31 (3d Cir. 2012) (concluding no excusable neglect based primarily on the reason for the delay factor where counsel's 29-day delay was caused by poor office practices,

---

[3] Quebec argues that the factors in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984), support relief. However, the Poulis framework applies when a district court considers dismissing a case before trial. Quebec does not challenge the dismissal of its involuntary bankruptcy petition against Doe but instead seeks review of a post-judgment order—the bankruptcy court's ruling imposing damages for Quebec's bad faith filing of the petition. See Roberts v. Ferman, 826 F.3d 117, 123 n.5 (3d Cir. 2016) (stating that a district court must consider the Poulis factors before dismissing a case for failure to prosecute but no Poulis analysis is necessary when the district court "dismisses a post-trial motion"); Knoll v. City of Allentown, 707 F.3d 406, 408-11 (3d Cir. 2013) (holding that Poulis does not apply in the post-trial context); see also George Harms, 371 F.3d at 163 (applying the Pioneer factors to a Rule 60(b)(1) motion). Because Poulis does not apply in the post-judgment context, we reject Quebec's argument that the Poulis factors support its request for relief.

explaining that counsel should have discovered the error earlier, and noting authority

from another circuit which held that counsel's mis-calendaring was not excusable); Nara

v. Frank, 488 F.3d 187, 193-94 (3d Cir. 2007), as amended (June 12, 2007) (holding no

excusable neglect under Rule 60(b) where an attorney would have received notice of the

order he untimely sought to challenge had he complied with the standing order to register

with the electronic filing system).  Moreover, the District Court correctly observed that it

was "difficult to excuse" counsel's incorrect recording of the September 8 deadline as

October 22, "nearly two months after he filed the notice of appeal (and received the email

notification)" and far beyond the fourteen-day deadline, in light of "the appellate practice

[Quebec's counsel] professes to maintain."  App. 11-12.  In addition, the District Court

correctly rejected Quebec's argument that it could not be held responsible for its

counsel's errors given the Supreme Court's clear statement that "clients must be held

accountable for the acts and omissions of their attorneys," Pioneer, 507 U.S. at 396.

Second, the District Court did not abuse its discretion in finding that Quebec's

delay prejudiced Doe and had a negative impact on judicial proceedings because "redress

for the harm [to Doe] caused by Quebec's filing of an involuntary bankruptcy petition . . .

has now been delayed for nearly five years," and the delay "undermin[ed] the expeditious

administration of this litigation, which has already been protracted as a result of Quebec's

dilatoriness."  App. 13.  The District Court further noted that Quebec's delay was another

example of its bad faith conduct exhibited throughout the underlying bankruptcy

proceeding.  Quebec "fail[ed] to cooperate with [Doe], fail[ed] to appear at hearings, and

fail[ed] to appear at trial."  App. 12-14 (citing <u>In re Kosachuk</u>, Bankr. No. 12-16438, slip op. (Bankr. E.D. Pa. Mar. 24, 2015)).

Although Quebec's present counsel was retained after the Bankruptcy Court issued its decision on Quebec's bad faith filing of the bankruptcy petition, reasonably diligent counsel entering at that late stage of the litigation would have reviewed the record, observed the history of dilatoriness and prior finding of bad faith, and ensured that future filings complied with all applicable rules and orders.  <u>See</u> <u>In re Cendant Corp. PRIDES Litig.</u>, 235 F.3d at 184; <u>see also</u> <u>In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.</u>, 496 F.3d 863, 867 (8th Cir. 2007) (concluding lack of good faith where a party had a history of delay).  Therefore, the District Court did not abuse its discretion in concluding that Quebec has not shown excusable neglect that would entitle it to relief under Rule 60(b)(1).

<div align="center">III</div>

For the foregoing reasons, we will affirm.

$35.80

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA
GOGITIDZE,

                                    Plaintiff,          No. 12 00057

                                                        AFFIDAVIT OF
                                                        RAYMOND HOULE

CHRISTOPHER KOSACHUK and NLG LLC,
                                    Defendants.

STATE OF QUEBEC         )
                        ) SS:
CITY OF MONTREAL        )

FILED
12 JAN -4 PM 1:27
OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

Raymond Houle, being duly sworn according to law, deposes and says that:

1.      I am an officer of 9197 – 5904, Quebec, Inc., with offices located at: 1255 Rue
University, Ste 1810, Montreal, Quebec H3B 3W3, Assignee of the Plaintiff Evguenia Lorret
and Nina Gogitidze;

2.      I am authorized to make this affidavit on behalf of 9197 – 5904, Quebec, Inc.;

3.      This affidavit is submitted to the Chester County Prothonotary for filing together with an
authenticated copy of the judgment entered against the defendants on February 22, 2007 by the
Supreme Court of the State of New York (hereinafter the "Judgment", respectively) in favor of
Evguenia Lorret and Nina Gogitidze;

Defs. Notified

4.    The Judgment is valid, enforceable and unsatisfied; true and correct copy of the Judgment

is attached to this Affidavit as "Exhibit A";

5.    Thereafter on May 12, 2008 the Judgment was reduced by Court Order (hereinafter the

"Court Order"); true and correct copy of the Court Order is attached as "Exhibit B"

6.    The Judgment has been assigned by plaintiffs Evguenia Lorret and Nina Gogitidze to

9197-5904 Quebec, Inc. on December 15th, 2009; true and correct copy of the Assignment is

attached as "Exhibit C";

7.    No part of the judgment has been paid or satisfied, and there is now due and owing on the

Judgment $105,375.78 plus costs of $1,050.00, together with interest from November 25, 2002.

8.    The name and last known post office addresses of the judgment debtors are:

       a.    Christopher Kosachuk

              201 South Biscayne Blvd., 28th FL.

              Miami, FL 33131

9.    The name and post office address of the judgment creditor is:

              9197 – 5904, Quebec, Inc.

              c/o Darius A. Marzec, Esq.

              225 Broadway, Suite 3000

              New York, NY 10007

Raymond Houle
_____
Raymond Houle

SWORN to and subscribed
before me this _16_ day of December, 2011.

_____
Notary Public


COMMISSAIRE À L'ASSERMENTATION
FRANÇOIS
BONIN
#179 529
POUR LE QUÉBEC

```
           CCCAMINI            SUPREME COURT - STATE OF NEW YORK      DATE: 01/03/2012
INDEX NO: 103896 2004              NEW YORK COUNTY CLERK              TIME: 14:23:50
PURCHASE: 03122004              CIVIL INDEX MINUTE BOOK INQUIRY

PLAINTIFF NAME: LORRET EUGUENIA    DEFENDANT NAME: KOSACHUK CHRIS
       ATTORNEY: TOFEL TROUP & PARTHN    ATTORNEY: UNKNOWN
                 800 THIRD AVENUE -
                 NEW YORK, NEW YORK
                 1-212 752-0007
SEQ  DATE                  MINUTES
0001 03122004              SUMMONS AND COMPLAINT

0001 04152004              AFFIDAVIT OF SERVICE

0001 07122004              AFFIDAVIT OF SERVICE

0001 07162004              ORDER IAS PART 30 SEQ 001 WITHDRAWN

0001 09292004              PROCEEDINGS

0001 11042004              PRELIMINARY CONFERENCE ORDER

0001 11052004              AFFIDAVIT OF SERVICE

0001 12022004              VERIFIED REPLY

0001 04012005              ORDER IAS PART 30 SEQ 003 DECIDED AS PER
                           MEMO.DECISION OF 4/4/05,SEQ 004 GRANTED.

0001 04072005              COPY ORDER/NOTICE OF ENTRY

0001 04142005              NOTICE

0001 05162005              SHORT FORM ORDER IAS PART 30

0001 07252005              SO ORDERED STIPULATION

0001 08022005              ORDER IAS PART 30 SEQ 005 WITHDRAWN

0001 08172005              ORDER IAS PART 30 SEQ 02 IS WITHDRAWN

0001 08232005              FAX PAPERS

0001 09212005              PROCEEDINGS/FAX PAPERS
```

FILED

12 JAN -4 PM 1:27

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

438641

2012 JAN -3 P 2:25

AS CLERKS MINUTES

PAGE - 1

```
CCOAMINI                SUPREME COURT - STATE OF NEW YORK      DATE: 01/03/2012
INDEX NO: 103896 2004        NEW YORK COUNTY CLERK              TIME: 14:23:50
PURCHASE: 03122004       CIVIL INDEX MINUTE BOOK INQUIRY


PLAINTIFF NAME: LORRET EUGUENIA     DEFENDANT NAME: KOSACHUK CHRIS
      ATTORNEY: TOFEL TROUP & PARTN        ATTORNEY: UNKNOWN
               800 THIRD AVENUE -
               NEW YORK, NEW YORK
               1-212 752-0007
SEQ  DATE                    MINUTES
0001 12062005           ORDER IAS PART 30 SEQ 06 IS RESOLVED


0001 12202005           LETTER


0001 02072006           SHORT FORM ORDER IAS PART 30. SEE ORDER.


0001 11082006           FINDINGS OF FACT AND CONCLUSION OF
                        LAW (3)

0001 11212006           TRANSCRIPT'S
                        COURT EXHIBITS

0001 11222006           NOTICE OF CHANGE OF ADDRESS


0001 11302006           NOTICE OF APPEAL # 3634


0001 12282006           APPELLATE DIVISION RECEIPT


0001 02222007           JUDGMENT - SD 02/23/07
                        8/27/08 JDGMT MODIFIED PURSUANT TO
                        ORDER FILED 5/9/08. NG/JMC (SD 8/27/08)
0001 03022007           NOTICE OF ENTRY


0001 05072007           TRANSCRIPT'S (3)


0001 09132007           PROCEEDINGS (3)


0001 05092008           ORDER IAS PART 15 SEQ 007,008 MOTION ARE
                        CONSOLIDATED FOR DISPOSITION IN ACCORD.
                        WITH THE MEMORANDUM DECISION.
0001 05122008           ORDER IAS PART 15 SEQ 007 MOTION IS
                        CONSOLIDATED WITH SEQ008 FOR DISPOSITION
                        IN ACCORD.WITH THE UNDERLYING
0002 05122008           MEMORANDUM DECISION.


0001 05152008           COPY ORDER/NOTICE OF ENTRY


0001 09032008           NOTICE OF ENTRY



                        PAGE -  2
```

```
      CCOANINI              SUPREME COURT - STATE OF NEW YORK      DATE: 01/03/2012
INDEX NO: 103896 2004              NEW YORK COUNTY CLERK          TIME: 14:23:50
PURCHASE: 03122004          CIVIL INDEX MINUTE BOOK INQUIRY


PLAINTIFF NAME: LORRET EUGUENIA      DEFENDANT NAME: KOSACHUK CHRIS
       ATTORNEY: TOFEL TROUP & PARTN        ATTORNEY: UNKNOWN
                 800 THIRD AVENUE -
                 NEW YORK, NEW YORK
                 1-212 752-0007
 SEQ  DATE                MINUTES
 0001 12312008            TRANSCRIPT


                    PAGE -   3
```

# EXHIBIT A

# The People of the State of New York

## BY THE GRACE OF GOD FREE AND INDEPENDENT

*To all to whom these presents shall come or may concern, GREETING:*

**Know Ye,** That we having examined the records and files in the office of the Clerk of the County of New York and Clerk of the Supreme Court of said State for said County, do find a certain JUDGMENT

there remaining in the words and figures following, to wit:

FILED
12 JAN -4 PM 1:28
OFFICE OF THE
PROTHONOTARY
CHESTER CO., PA.

OFFICE OF
PROTHONOTARY



SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x      Index No. 103896/04
EUGENIA LORRET and NINA GOGITIDZE,

        Plaintiffs,

      -against-

CHRIS KOSACHUK & NLG, LLC

        Defendants.
------------------------------------------------------------x

## JUDGMENT

The issues in the above entitled action having duly come on to be heard before Justice Walter

B. Tolub, without a jury, at an IAS Part 15, of this Court on the 12th, 13th and 14th days of

September, 2006, and the issues having been duly tried on those days and the plaintiff,

EUGENIA LORRET, having duly appeared by Burstein & Blum, LLP by Jay M. Blum, Esq.,

her attorney, and the defendant, CHRIS KOSACHUK, having duly appeared pro se, and the

proofs of both parties having been adduced and the plaintiff's counsel and the defendant having

been duly heard, and the Court, after due deliberation, on the 6th day of November, 2006, having

made and filed Findings of Fact and Conclusions of Law in writing in favor of the plaintiff

EUGENIA LORRET and against the defendant CHRIS KOSACHUK and directing the entry of

judgment in the sum of $108,293.54 plus interest from November 25 2002, and the costs and

disbursements of the plaintiff having been duly taxed in the sum of $1,050.00.

NOW, on motion of BURSTEIN & BLUM LLP, attorneys for the plaintiff, it is

**ORDERED, ADJUDGED AND DECREED** that the plaintiff, EUGENIA LORRET,

residing at , recover of the defendant, CHRIS KOSACHUK, residing at , the sum of ONE

HUNDRED EIGHT THOUSAND TWO HUNDRED NINETY THREE DOLLARS AND

FIFTY FOUR CENTS ($108,293.54) Dollars, with interest from the 25th day of November, 2002

in the amount of _____ 24,388. 91 _____ ($ _____ )

as of ___2/21/07___, together with ONE THOUSAND FIFTY DOLLARS

($1,050.00) costs and disbursements as taxed, making in all the sum of

$ 150,732. 45 _____ ($ _____ ),

and that the plaintiff EUGENIA LORRET have execution therefor.

DECEMBER

Judgment signed this 20th day of November, 2006.

Clerk

FILED

FEB 22 2007

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK, COUNTY OF NEW YORK,
SS: I, NORMAN GOODMAN, COUNTY CLERK AND
CLERK OF THE SUPREME COURT, NEW YORK
COUNTY, DO HEREBY CERTIFY ON

2011 DEC -8 P 12: 20

THAT I HAVE COMPARED THIS COPY
WITH THE ORIGINAL FILED IN MY OFFICE ON

2/22/07

AND THAT THE SAME IS A CORRECT

TRANSCRIPT THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL, IN WITNESS
WHEREOF, I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY OFFICIAL SEAL.

436318

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED PURSUANT
TO SEC. C33, CHAPTER 500, FEE PAID

BURSTEIN & BLUM LLP
Robert A. Burstein, Esq.
21 EAST 40TH STREET SUITE 1802
NEW YORK, NY 10016
(212) 947-9416
SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x    Index No. 103896/04

EUGENIA LORRET and
NINA GOGITIDZE

               Plaintiffs,


          -against-


CHRIS KOSACHUK & NLG, LLC,

               Defendants.
------------------------------------------------------------x

## BILL OF COSTS AND DISBURSEMENTS

COSTS (CPLR 8201)
Before note of issue                                             $200.00
After note of issue                                                200.00
Trial, inquest or assessment of damages                            300.00
                              TOTAL                              $700.00

*I HEREBY CERTIFY THAT I HAVE ADJUSTED THIS BILL OF COSTS AT $_____*

*FEB 22 2007*

*CLERK*

DISBURSEMENTS
Fee for Index Number (CPLR § 8018(a))                            $210.00
Request for Judicial Intervention                                   95.00
Note of Issue                                                       30.00
Sheriff's fee on execution (CPLR 8301 [a][8])                       15.00

                     TOTAL:                              $350.00

*Costs and disbursements taxed by court* N.B./A.W.

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

     David M. Blum, after being duly sworn, deposes and says:

     I am a member of the firm of Burstein & Blum LLP, attorneys for the Plaintiff in this case. The foregoing disbursements were or will be necessarily made and are reasonable in amount.

                       DAVID M. BLUM

Sworn to before me this
November 6, 2006

Notary Public

Robert A. Burstein
Notary Public, State of New York
No. 31-4728699
Qualified in New York County
Commission Expires July 91, 20__

FILED
FEB 22 2007
COUNTY CLERK'S O...
NEW YORK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                    Index No.: 103896/04

EUGENIA LORRET and NINA GOGITIDZE,

                                   Plaintiffs,

          -against-

CHRIS KOSACHUCK and NLG, LLC,

                                   Defendants.

---

### NOTICE OF SETTLEMENT

### JUDGMENT & BILL OF COSTS AND DISBURSEMENTS

---

**BURSTEIN & BLUM LLP**
Attorney for Plaintiffs
Office and Post Office Address, Telephone
21 EAST 40TH STREET
SUITE 1802
NEW YORK, NEW YORK 10016
(212) 947-9416

---

**TO: Chris Kosachuck**

**Defendant Pro Se**

Service of a copy of the within                    is hereby admitted.

Dated,                    Attorney(s) for      . . . . . . . . . . . . . . . . . .

| | DOCKETED BY |
|---|---|

**Sir: Please take notice**

[ ] NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the
within named court on
[ ] NOTICE OF SETTLEMENT
that an order                    which the within is a true copy will be
presented for
settlement to the HON.              one of the judges the within named Court, at
on the      day of   19      at        M.

Dated,

          Yours, etc.

                         **BURSTEIN & BLUM LLP**
                         Attorney for Plaintiff
                         Office and Post Office Address
                         21 EAST 40TH STREET
                         SUITE 1802
To                         NEW YORK, NEW YORK 10016
                         (212) 947-9416
Attorney(s) for

FILED AND DOCKETED
FEB 22 2007
AT 3:24P M
N.Y. CO. CLK'S OFFICE

All of which we have caused by these presents to be exemplified and the Seal of our said County and Supreme Court to be hereunto affixed.

Witness, BERNARD J. FRIED a Justice of the Supreme Court of the State of New York for the County of New York, the 8 day of December in the year of our Lord two thousand and Eleven , and of our independence the two hundred and thirty-fifth.

*Norman Goodman*

County Clerk and Clerk of the
Supreme Court, New York County

I, a Justice of the Supreme Court of the State of New York for the County of New York, the same being a Court of Record, do hereby certify that the foregoing attestation is in due and proper form and by the proper officer.

Dated, New York, DEC 13 2011 20 11

Justice of the Supreme Court
of the State of New York.

State of New York, } ss.:
County of New York,

I, NORMAN GOODMAN, County Clerk and Clerk of the Supreme Court of the State of New York, County of New York, do hereby certify that BERNARD J. FRIED whose name is subscribed to the preceding certificate is a Justice of the Supreme Court of said State in and for the County of New York, duly elected and qualified, and that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said County and Court this 13 day of December 20 11.

*Norman Goodman*

# EXHIBIT B

The People of the State of New York

BY THE GRACE OF GOD FREE AND INDEPENDENT

*To all to whom these presents shall come or may concern, GREETING:*

**Know Ye,** That we having examined the records and files in the office of the Clerk of the County of New York and Clerk of the Supreme Court of said State for said County, do find a certain ORDER

FILED
12 JAN - PM 1:29
OFFICE OF THE
PROTHONOTARY
CHESTER CO., PA.

there remaining, in the words and figures following, to wit:



SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ *TOLUB* _____                    PART _15_

                                    *Justice*

*LORRAT, EUGENIA,*                      INDEX NO. _103896/04_
              *ETAL.*
                                        MOTION DATE _____

              - v -                     MOTION SEQ. NO. _08_

*CHRIS KOSATCHUCK,*                      MOTION CAL. NO. _____
                *ETAL*

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

Cross-Motion: ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion *and motion seq. 007 are*

*Consolidated for disposition in accordance with the memorandum*

*decision.*

**FILED**

MAY 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

Dated: _____                    _____  J.S.C.
                                       *TOLUB*

Check one: ☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate: ☒ DO NOT POST    ☐ REFERENCE

*(vertical left margin)* MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 15
------------------------------------------x
EUGENIA LORRET and NINA GOGITIDZE

           Plaintiffs,

    -against-

CHRIS KOSACHUK & NLG, LLC

           Defendants.
------------------------------------------x

**Index No. 103896/04**
**Mtn Seq.007,008**

*FILED*

*MAY 12 2008*
*COUNTY CLERK'S OFFICE*
*NEW YORK*

**WALTER B. TOLUB, J.:**

    Motion sequence 007 and sequence 008 are consolidated for disposition in accordance with the underlying decision. Motion sequence 007 is a motion to modify the judgment entered in this matter on February 22, 2007 by $60,000 to correct a ministerial error. Motion sequence 008 is a motion to vacate an order entered against the Plaintiff on March 21, 2008 for failure to appear.

<u>Facts</u>

    Plaintiffs commenced this action against the Defendants claiming that the Defendants diverted funds from the Plaintiffs' account for his personal benefit. The action as to NLG was eventually dismissed.

    In the Answer to the Complaint, and upon the three day trial of the action, the Defendant Chris Kosachuk admitted receiving two checks totaling $136,293.54 from the Plaintiff, and depositing said funds into his private account.

Upon the trial of the action it was proven that, inter alia, the Plaintiff, prior to the filing of the Complaint had demanded repayment from the Defendant of all sums which remained due and owing out of the $136,293.54 (See Findings of Fact and Conclusions of Law, Defendant's Ex. F).

At trial, Plaintiff further demanded repayment of $60,000.00 which the Defendant had surreptitiously wired out of Plaintiff's account. This court specifically and expressly stated that the claim for $60,000 would not be considered as part of this case. (Defendant's Ex. D and E, at 433-434). Although the $60,000 claim was rejected, this court inadvertently included the sum in its Findings of Fact and Conclusions of Law.

On March 7, 2008, Plaintiff was served with the instant order to show cause seeking a modification of the Judgment made and entered by the court. The matter was scheduled for a hearing on March 21, 2008. No one from Plaintiff's office appeared and Plaintiff now seeks to vacate the default and upon vacatur, opposes Defendant's motion for modification of the Judgment.

<u>Discussion</u>

<u>Motion Sequence 008 to Vacate the Default</u>

CPLR §5015(a) provides, inter alia, that the court which rendered the judgment or order may relieve a party from such order upon such terms as may be just upon the ground of excusable

2

default. Courts have routinely recognized that there is a strong preference for adjudicating matters on the merits rather than relying on procedural issues. (Campos v. New York City Health and Hospitals Corp., 307 AD2d 785 [1st Dept 2003]). Where the party's default resulted from a mistake and an inadvertent assumption, courts have grated motions to vacate. (Connolly v. Tuan, 12 Misc.3d 1172(A) [Sup. Ct. NY Co. June 23, 2006]). Here, although Defendant could have been more thorough and diligent in managing its affairs, this court is inclined to vacate the March 21, 2008 Default Judgment so that the matter may be decided on the merits.

Motion Sequence 007 Motion To Modify the Judgment Entered

Defendant's motion for a modification of the Judgment entered on February 22, 2007 is also granted as this court made a ministerial error. As is clear from the trial transcript, this court had no intention of even considering Plaintiff's $60,000 claim. Plaintiff's claim was in fact expressly excluded from this matter. (Defendant's Ex. D and E, at 433-434).

Furthermore, the court may correct any mistake, defect or irregularity in the papers or proceedings not affecting a substantial right of a party. (CPLR §5019). Clerical mistakes may be corrected, not substantive ones. Here, there has been a clerical error and therefore the court is within its power to correct same.

3

Accordingly it is

ORDERED that Plaintiffs' motion to vacate the default judgment of march 21, 2008 is granted; and it is further

ORDERED that Defendant's motion is granted and that the Judgment entered in this case on February 22, 2007 be modified downward to exclude the sum of $60,000 and that Defendant is to pay all sums due and owing; and it is further

ORDERED that the Clerk of the court is directed to enter judgment accordingly.

This memorandum opinion constitutes the decision and order of the Court.

Dated:

HON. WALTER B. TOLUB, J.S.C.

FILED

MAY 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

STATE OF NEW YORK, COUNTY OF NEW YORK.
SS: I, NORMAN GOODMAN, COUNTY CLERK AND
CLERK OF THE SUPREME COURT, NEW YORK
COUNTY, DO HEREBY CERTIFY ON

TRANSCRIPT THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL. IN WITNESS
WHEREOF, I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY OFFICIAL SEAL.

2011 DEC -8 P 12: 20

436320         4

THAT I HAVE COMPARED THIS COPY
WITH THE ORIGINAL FILED IN MY OFFICE ON

5/12/08

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED PURSUANT
TO SEC. 304, N.Y.C.R.R. 1409. FEE PAID

AND THAT THE SAME IS A CORRECT

...f which we have caused by these presents to be exemplified and the seal of our said County and Supreme Court to be hereunto affixed.

...ess, Hon. BERNARD J. FRIED, a Justice of the Supreme Court of the State of New York for the County of New York, the 8 day of December in the year of our Lord two thousand and Eleven , and of our independence the two hundred and thirty-fifth.

*Norman Goodman*

County Clerk and Clerk of the
Supreme Court, New York County

a Justice of the Supreme Court of the State of New York for the County of New York, the said being a Court of Record, do hereby certify that the foregoing attestation is in due and proper form and by the proper officer.

...d, New York, DEC 1 3 2011 2011 *Bernard Fried*

Justice of the Supreme Court
of the State of New York.

State of New York,
County of New York, } ss.:

I, NORMAN GOODMAN, County Clerk and Clerk of the Supreme Court of the State of New York, County of New York, do hereby certify that Hon. BERNARD J. FRIED whose name is subscribed to the preceding certificate is a Justice of the Supreme Court of said State in and for the County of New York, duly elected and qualified, and that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said County and Court this 13 day of December 2011.

*Norman Goodman*

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                          Index No. 103896/2004

-----------------------------------------------------------

EVGUENIA LORRET AND NINA GOGITIDZE

                              Plaintiff,

           -against-

CHRISTOPHER KOSACHUCK and NLG LLC

                              Defendant.

-----------------------------------------------------------


## ASSIGNMENT OF JUDGMENT

This indenture made the 15th day of December 2009, between EVGUENIA LORRET and
NINA GOGITIDZE residing at 6254 97th Pl. # 10K Rego Park, State of New York, party of the
first part, and 9197-5904 Quebec, Inc with offices located at: 1255 Rue University Ste 1810
Montreal, Quebec H3B 3W3, the party of the second part.

   Whereas, on the 22nd day of February 2007 judgment was recovered in the Supreme
Court, County of NY in favor of EVGUENIA LORRET AND NINA GOGITIDZE
and against CHRISTOPHER KOSACHUCK and NLG LLC in the sum of $108,293.54 plus
costs of $1050.00 plus interest from November 25, 2002, and which Judgment was thereafter
modified and reduced on May 12, 2008 to the amount of $48,293.54 plus costs of $1050.00 plus
interest from November 25, 2002.

   Now This Indenture Witnesseth that the said party of the first part in consideration of
$10 and goods valued at nominal consideration to them duly paid has sold, and by these presents
does assign, transfer and set over, unto the said party of the second part 9197-5904 Quebec it's
executors, administrators, and assigns, the said judgment and all sum or sums of money that may
be had or obtained by means thereof, or on any proceedings to be had thereupon;
Also, the said party of the first part does hereby constitute and appoint the said party of the
second part, it's executors, administrators, and assigns, their true and lawful attorney irrevocable,
with power of substitution and revocation, for the use and at the proper costs and charges of the
said party of the second part, to ask, demand, and receive, and to obtain executions, and take all
lawful ways for the recovery of the money due or to become due on said judgment; and on
payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under
them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby
ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises.
Also, the said party of the first part does covenant, that there is now due on the said judgment the
sum of $$48,293.54 and that they will not collect or receive the same or any part thereof, nor
release or discharge the said judgment, but will allow all lawful proceedings thereinto be taken

by the said party of the second part, saving the said party of the first part harmless of and from any costs in the premises. This assignment is made without recourse to the party of the first part in any event whatsoever.

In Witness Whereof, the party of the first part has hereunto set [his/her] hand and seal the day and year first above written.

EVGUENIA LORRET

## ACKNOWLEGEMENT

STATE OF NEW YORK

COUNTY OF NEW YORK

DAVID M. BLUM
NOTARY PUBLIC, State of New York
No. 02BL5029264
Qualified in New York County
Commission Expires June 13, 2010

On the 15th day of December before me personally appeared EVGUENIA LORRET to be known and known by me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that she executed the same.

Notary Public

NINA GOGITIDZE

## ACKNOWLEGEMENT

STATE OF NEW YORK

COUNTY OF NEW YORK

DAVID M. BLUM
NOTARY PUBLIC, State of New York
No. 02BL5029264
Qualified in New York County
Commission Expires June 13, 2010

On the 15th day of December before me personally appeared NINA GOGITIDZE to be known and known by me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that she executed the same.

Notary Public

FILED
MAR 2 1 2011
NEW YORK
COUNTY CLERK'S OFFICE

_(Notary Public signature)_

Notary Public

_NGogitidze_

NINA GOGITIDZE

## ACKNOWLEGEMENT

STATE OF NEW YORK

COUNTY OF NEW YORK

On the 15th day of December 2009 before me personally appeared NINA GOGITIDZE to be known and known by me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that she executed the same.

_(Notary Public signature)_

Notary Public

NOTARY PUBLIC, State of New York
No. 02BL5029264
Qualified in New York County
Commission Expires June 13,

FILED

MAR 21 2011

NEW YORK
COUNTY CLERK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 103896/2004

-------------------------------------------------------------

EVGUENIA LORRET AND NINA GOGITIDZE

Plaintiffs,

-against-

CHRISTOPHER KOSACHUCK and NLG LLC

-------------------------------------------------------------

### NOTICE OF ASSIGNMENT OF JUDGMENT

Date:   March 14, 2011

To:  CHRISTOPHER KOSACHUCK and NLG LLC

Dear Judgment Debtors:

You are hereby notified that on December 15, 2009 we assigned and transferred to
9197 -5904 QUEBEC, INC the Judgment entered against you in the above captioned matter.

Please direct any further correspondence (or payments, if applicable) to them at the following
address:

David Blum, Esq.
286 Madison Avenue Suite 1802
New York, NY 10017

Please contact us should you have any questions, and we thank you for your cooperation.

yours, etc.

David M. Blum
Attorneys for :EVGUENIA LORRET and
NINA GOGITIDZE

2011 MAR 21  PM 3: 37
FILED
N.Y. COUNTY
COUNTY CLERK

FILED
MAR 21 2011
NEW YORK
COUNTY CLERKS OFFICE

BERNARD J. FRIED

a J[...] of the Supreme Court of the State of New York for the County of New York, the [...] being a Court of Record, do hereby certify that the foregoing attestation is in d[...] and proper form and by the proper officer.

DEC 13 2011          19

Justice of the Supreme Court
of the State of New York.

} ss.:

I, Norman Goodman County Clerk and Clerk of the Supreme Court of the State of New York, County of New York, do hereby certify that Hon. BERNARD J. FRIED whose name is subscribed to the preceding certificate is a Justice of the Supreme Court of said State in and for the County of New York, duly elected and qualified, and that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said County and Court this 8 day of December, 2011    19    .

Norman Goodman
County Clerk and Clerk of the
Supreme Court, New York County.

No[...]          6235

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA
GOGITIDZE,

                                Plaintiff,

                                                        No. 12-00057

CHRISTOPHER KOSACHUK and NLG, LLC,
                                Defendants.

To:     Christopher Kosachuk
        201 South Biscayne Blvd.
        28th FL.
        Miami, FL 33131

                            **NOTICE**

NOTICE IS GIVEN THAT A JUDGMENT IN THE ABOVE-CAPTIONED MATTER HAS
BEEN ENTERED AGAINST YOU.

*Damarus A. Osborn, Deputy*
PROTHONOTARY        1/4/12

If you have any questions concerning the above, please contact:

Darius A. Marzec
Marzec Law Firm, PC
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

FILED
12 JAN -4 PM 1:29
OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

CFN 2012R0117833 OR BK 28002 Pgs 4731 - 4735; (5pgs)
RECORDED 02/21/2012 11:12:01
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 07-19532 CA (11)

NLG, LLC, a Delaware Limited
Liability Company,
     Plaintiff,
vs.

ELIZABETH HAZAN,
     Defendant.

_____/

## NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE

    Plaintiff, NLG, LLC, by and through its undersigned Counsel pursuant to the certified copy of the

Charging Order attached hereto as Exhibit "A", hereby voluntarily dismisses this action with prejudice.

    Dated: February 20, 2012

                          ROSENBERG & PINSKY

                          By _____
                              Arthur Rosenberg
                              Attorneys for 9197-5904 QUEBEC, INC.
                              6499 North Powerline Road
                              Suite 304
                              Fort Lauderdale, Florida 33309
                              954-772-5151

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

5

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served U.S. Mail on this 21st day of February 2012, upon Christopher M. David, Esquire, of David and Joseph P.L., Attorneys for NLG, LLC., 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131 Mark D. Cohen, Esquire Attorney for Hazan, 4000 Hollywood Boulevard, Suite 435 – South, Hollywood, Florida 33021; Darius A. Marzec, Esquire, Marzec Law Firm, P.C., attorney for Elizabeth Hazan, of 225 Broadway, Suite 3000, New York, NY 10007; Robert P. Lithman, Esquire, Orsham, Lithman, et al, attorneys for purported Intervenor, World of Concepts, LLC., 150 Alhambra Circle, Suite 1150, Coral Gables, Florida 33134; Eliot R. Weitzman, Esquire attorney for Hazan of Hollywood Boulevard, Suite 435 – South, Hollywood, Florida 33021; Neil G. Cawsey for Garnishee, The Village of Gulfstream Park, LLC., Legal Department Terminal Tower, 50 Public Square, Suite 1360, Cleveland, Ohio 44113-2267 and Jorge L. Piedra, Esquire, Piedra & Associates, of 2950 SW 27th Avenue, Suite 300, Miami, Florida 33133; and Recalde Law Firm, PA, 3250 NE 1st Avenue, Ste 314, Miami, FL 33137.

ROSENBERG & PINSKY
6499 North Powerline Road
Suite 304
Fort Lauderdale, Florida 33309
Telephone: (954) 772-5151

BY: ARTHUR R. ROSENBERG
Florida Bar #325805

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office.
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| EVGUENIA LORRET and NINA GOGITIDZE, | : | COURT OF COMMON PLEAS |
| | : | Civil Division |
| Plaintiffs, | : | Chester County |
| | : | |
| | : | No.: 00057-2012-JD |
| | : | |
| | : | 2012-00057 |
| CHRISTOPHER KOSACHUK and NLG LLC, | : | |
| | : | |
| Defendants. | : | |

## CHARGING ORDER

AND NOW, to wit, this 15th day of _____ , 2012, on Motion of the Plaintiff-

Assignee, 9197-5904 Quebec, Inc. it is hereby ORDERED:

1.      A Charging Order is hereby entered against Defendant Christopher Kosachuk's

interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging

Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having

been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.      Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-

member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and

Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both

economic and management rights in NLG, LLC.

3.      In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil

Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

CERTIFIED
FROM THE RECORD

ATTEST _____
DEPUTY PROTHONOTARY
9-17-12

1

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

    4.    In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

    5.    Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

<div align="right">

BY THE COURT

*Jacqueline C. Cody*

J.

</div>



2

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA          :        COURT OF COMMON PLEAS
GOGITIDZE,                        :        Civil Division
                    Plaintiffs,   :        Chester County
                                  :
                                  :        No.: ~~00057-2012-JD~~
                                  :
                                  :        *2012 - 00057*
CHRISTOPHER KOSACHUK and NLG LLC, :
                                  :
                    Defendants.   :

## ORDER PERMITTING CAPTION CHANGE

AND NOW, to wit, this 15ᵗʰ day of _____, 2012, on Motion of the Plaintiff, the

Prothonotary is hereby **ORDERED** to amend case caption from: EVGUENIA LORRET and

NINA GOGITIDZE, Plaintiffs, vs. CHRISTOPHER KOSACHUK and NLG LLC, Defendants,

to:                         9197-5904 QUEBEC, INC.

Plaintiff,

Vs.

CHRISTOPHER KOSACHUK and NLG LLC,
Defendants.

**CERTIFIED**
**FROM THE RECORD**
ATTEST _____
DEPUTY PROTHONOTARY
2-17-12

BY THE COURT

_____
J.

1

CFN 2012R0117832 OR BK 28002 Pgs 4726 - 4730; (5pgs)
RECORDED 02/21/2012 11:12:01
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 11-42770 CA (02)

NLG, LLC,
     Plaintiff,

vs.

ELIZABETH HAZAN, et al.,
     Defendant.

_____/

**NOTICE OF VOLUNTARY DISMISSAL WITH PREJUDICE AND DISCHARGE OF LIS
PENDENS**

     Plaintiff, NLG, LLC, by and through its undersigned Counsel, hereby voluntarily dismisses this

action with prejudice and discharges lis pendens on the following property:

          LOT 7, BLOCK 2, of LINDISFARNE ON FISHER ISLAND SECTION
          10, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN
          PLAT BOOK 157, AT PAGE 640 OF THE PUBLIC RECORDS OF
          MIAMI-DADE COUNTY, FLORIDA

which has the address of 6913 Valencia Drive, Fisher Island, Florida 33109.

     This Satisfaction is being executed pursuant to the authority of the Charging Order attached

hereto as exhibit "A".

Dated: February 20, 2012.

                    ROSENBERG & PINSKY

                    By_____
                         Arthur Rosenberg
                         Attorneys for 9197-5904 Quebec, Inc.
                         6499 North Powerline Road
                         Suite 304
                         Fort Lauderdale, Florida 33309
                         954-772-5151

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. FEB 21 AD 20___
HARVEY RUVIN, Clerk of Circuit and County Courts

Deputy Clerk _____

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served U.S. Mail on this 21st day of February 2012, upon Christopher M. David, Esquire, of David and Joseph P.L., Attorneys for NLG, LLC., 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131 Mark D. Cohen, Esquire Attorney for Hazan, 4000 Hollywood Boulevard, Suite 435 – South, Hollywood, Florida 33021; Darius A. Marzec, Esquire, Marzec Law Firm, P.C., attorney for Elizabeth Hazan, of 225 Broadway, Suite 3000, New York, NY 10007; Robert P. Lithman, Esquire, Orsham, Lithman, et al, attorneys for purported Intervenor, World of Concepts, LLC., 150 Alhambra Circle, Suite 1150, Coral Gables, Florida 33134; Eliot R. Weitzman, Esquire attorney for Hazan of Hollywood Boulevard, Suite 435 – South, Hollywood, Florida 33021; Neil G. Cawsey for Garnishee, The Village of Gulfstream Park, LLC., Legal Department Terminal Tower, 50 Public Square, Suite 1360, Cleveland, Ohio 44113-2267 and Jorge L. Piedra, Esquire, Piedra & Associates, of 2950 SW 27th Avenue, Suite 300, Miami, Florida 33133; and Recalde Law Firm, PA, 3250 NE 1st Avenue, Ste 314, Miami, FL 33137.

ROSENBERG & PINSKY
6499 North Powerline Road
Suite 304
Fort Lauderdale, Florida 33309
Telephone: (954) 772-5151

BY _____
ARTHUR R. ROSENBERG
Florida Bar #325805

Certificate of Service

JP Morgan Chase Bank, N.A.
c/o Shapiro & Fishman, LLP
2424 North Federal Highway
Suite 360
Boca Raton, FL 33431

Fisher Island Community Assoc, Inc
c/o SKRLD, Inc, registered Agent
201 Alhambra Plaza, Suite 1202
Coral Gables, FL 33134

Valencia Estates, Homeowners Assoc, Inc
c/o David B. Haber, P.A.
201 S Biscayne Blvd
Miami Center Suite 1205
Miami, FL 33131

Rafael Recalde Esg.
Recalde Law Firm, P.A.
3250 NE 1st Ave, Ste 314
Miami, FL 33137

Elizabeth Hazan
6913 Valencia Dr.
Fisher Island, FL 33109

Served by mail February 21, 2012
Jonathan P. Cohen
Florida Bar No: 11526

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA
GOGITIDZE,

      Plaintiffs,

:
:
:
:
:
:

CHRISTOPHER KOSACHUK and NLG LLC,

      Defendants.

:
:
:

COURT OF COMMON PLEAS
Civil Division
Chester County

No.: ~~00057-2012-JD~~

2012-00057

## CHARGING ORDER

AND NOW, to wit, this 15 day of _____ , 2012, on Motion of the Plaintiff-Assignee, 9197-5904 Quebec, Inc. it is hereby **ORDERED**:

1.   A Charging Order is hereby entered against Defendant Christopher Kosachuk's interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.   Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both economic and management rights in NLG, LLC.

3.   In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

1

CERTIFIED
FROM THE RECORD
ATTEST _____
DEPUTY FIRST ASSISTANT NOTARY
2-12-12

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

4. In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

5. Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

BY THE COURT

Jacqueline C. Cody
J.



2

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA          :      COURT OF COMMON PLEAS
GOGITIDZE,                         :      Civil Division
                    Plaintiffs,    :      Chester County
                                   :
                                   :      No.: ~~00057-2012-JD~~
                                   :
                                   :      *2012 - 000*
CHRISTOPHER KOSACHUK and NLG LLC,  :
                                   :
                    Defendants.    :

## ORDER PEMITTING CAPTION CHANGE

AND NOW, to wit, this 15th day of _____, 2012, on Motion of the Plaintiff, the

Prothonotary is hereby **ORDERED** to amend case caption from: EVGUENIA LORRET and

NINA GOGITIDZE, Plaintiffs, vs. CHRISTOPHER KOSACHUK and NLG LLC, Defendants,

to:                        9197-5904 QUEBEC, INC.

Plaintiff,

Vs.

CHRISTOPHER KOSACHUK and NLG LLC,
Defendants.

**CERTIFIED
FROM THE RECORD**
ATTEST _____
~~DEPUTY PROTHONOTARY~~
2-17-12

BY THE COURT

_____
J.

1

Case 1:22-cv-24851-RNS Document 36-6 Entered on FLSD Docket 03/20/2024 Page 6 of

CFN 2012R0117831 OR BK 28002 Pgs 4721 - 4725; (5pgs)
RECORDED 02/21/2012 11:12:01
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 07-19532 CA (11)

NLG, LLC, a Delaware Limited
Liability Company,
      Plaintiff,

vs.

ELIZABETH HAZAN,
      Defendant.

_____/

## SATISFACTION OF JUDGMENT

    KNOW ALL MEN BY THESE PRESENTS that NLG, LLC, the Plaintiff in the above action,

wherein a judgment was entered in the original amount of **$1,618,071.29** against the Defendant,

ELIZABETH HAZAN, said judgment being recorded in the minutes of said court and a copy thereof

having been recorded on May 2, 2007 in Official Records Books 26357 Page 3948 -3949 of the public

records of Miami-Dade County, Florida, does hereby acknowledge full payment and satisfaction thereof

and hereby consents that the same shall be satisfied of record.

    This Satisfaction is being executed pursuant to the authority of the Charging Order attached

hereto as exhibit "A"

    Witness our hand and seal this 20th day of February 2012.

NLG, LLC.
BY:9197-5904 QUEBEC, INC.

By:_____
      Raymond Houle, Manager

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. FEB 21 AD 2012
HARVEY RUVIN, Clerk of Circuit and County Courts

Deputy Clerk _____

5

STATE OF FLORIDA )
                      : SS
COUNTY OF _Broward_ )

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared RAYMOND HOULE, a manager of 9197-5904 Quebec, Inc., and duly authorized agent of NLG, LLC., who is personally known to me or who has produced his passport as identification and who did take an oath.

     WITNESS my hand and official seal at _Ft/Lauderdale_ County of _Broward_, Florida, on this 20th day of February 2012.

                                NOTARY PUBLIC

My commission expires:





IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

|  |  |  |
|---|---|---|
| EVGUENIA LORRET and NINA GOGITIDZE, | : | COURT OF COMMON PLEAS |
|  | : | Civil Division |
| Plaintiffs, | : | Chester County |
|  | : |  |
|  | : | No.: 00057-2012-JD |
|  | : | 2012-00 |
| CHRISTOPHER KOSACHUK and NLG LLC, | : |  |
|  | : |  |
| Defendants. | : |  |

## CHARGING ORDER

AND NOW, to wit, this 15ᵗʰ day of July , 2012, on Motion of the Plaintiff-Assignee, 9197-5904 Quebec, Inc. it is hereby **ORDERED**:

1.   A Charging Order is hereby entered against Defendant Christopher Kosachuk's interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.   Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both economic and management rights in NLG, LLC.

3.   In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

1

CERTIFIED
FROM THE RECORD
ATTEST _Hunter C. Hu_
DEPUTY PROTHONOTARY
2-17-12

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

4. In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

5. Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

BY THE COURT

_Jacqueline C. Cody_
J.



2

BOOK 28002 PAGE 4725
LAST PAGE

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| EVGUENIA LORRET and NINA GOGITIDZE, | : | COURT OF COMMON PLEAS |
| | : | Civil Division |
| Plaintiffs, | : | Chester County |
| | : | |
| | : | No.: 00057-2012-JD |
| | : | |
| | : | 2012 - 00057 |
| CHRISTOPHER KOSACHUK and NLG LLC, | : | |
| | : | |
| Defendants. | : | |

**ORDER PEMITTING CAPTION CHANGE**

AND NOW, to wit, this 15th day of _____, 2012, on Motion of the Plaintiff, the

Prothonotary is hereby **ORDERED** to amend case caption from: EVGUENIA LORRET and

NINA GOGITIDZE, Plaintiffs, vs. CHRISTOPHER KOSACHUK and NLG LLC, Defendants,

to:                     9197-5904 QUEBEC, INC.

Plaintiff,

Vs.

CHRISTOPHER KOSACHUK and NLG LLC,
Defendants.

CERTIFIED
FROM THE RECORD
ATTEST _____
DEPUTY PROTHONOTARY
2-17-12

BY THE COURT

_____
J.

1

CFN 2012R0117830
OR Bk 28002 Pgs 4715 - 4720; (6pgs)
RECORDED 02/21/2012 11:12:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return to:

Arthur R.Rosenberg, Esquire
6499 N. Powerline Road
Suite 304
Fort Lauderdale, FL 33309

---------------------------------------------------------------

**COVER PAGE TO SATISFACTION OF MORTGAGE**

Document Prepared and Returned by:
Arthur Rosenberg
Rosenberg & Pinsky
6499 North Powerline Road
Suite 304
Fort Lauderdale, Florida 33309
954-772-5151

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: The undersigned owner(s) and holder(s) of a mortgage (and of the indebtedness secured by it) made by Elizabeth Hazan of 6913 Valencia Drive, Fisher Island, Florida 33109, to NLG, LLC., a Delaware limited liability company with the address of 6499 N. Powerline Road, Suite 304, Fort Lauderdale, Florida 33309 securing the sum of **One Million Two Hundred Seventy Five Thousand and ($1,275,000.00) Dollars** on the 8th day of March 2007, which was recorded on April 24, 2007, in Official Records Book 25559, Page 4226 - 4272, Instrument Number 2007R410013, of the Public Records of Miami-Dade County, Florida, covering the real property described below:

> **LOT 7, BLOCK 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 157, AT PAGE 640 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

which has the address of 6913 Valencia Drive, Fisher Island, Florida 33109.

This document is being executed by Raymond Houle as Manager of 9197-5904 Quebec, Inc., pursuant to the attached Charging Order.

The Undersigned acknowledge that the above-described indebtedness has been paid, and by this instrument cancel the above-described mortgage and the Promissory Note accompanying said Mortgage.

IN WITNESS THEREOF, I have hereunto set my hand and seal, the 26th day of February 2011.

Signed, sealed and delivered
in presence of:

_____

_____

NLG, LLC
By:9197-5904 Quebec, Inc.

by: _____
Raymond Houle, Manager

STATE OF FLORIDA    )
                          ) : SS

COUNTY OF Broward   )

        ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared **RAYMOND HOULE**, a manager of 9197-5904 Quebec Inc., as duly authorized agent of NLG, LLC., who is personally known to me or who has produced his passport as identification and who did take an oath.

        **WITNESS** my hand and official seal at Ft. Lauderdale, County of Broward, Florida, on this _____ th day of February 2012.

                                NOTARY PUBLIC

My commission expires:



IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| EVGUENIA LORRET and NINA GOGITIDZE, | : | COURT OF COMMON PLEAS |
| | : | Civil Division |
| Plaintiffs, | : | Chester County |
| | : | |
| | : | No.: ~~00057-2012-JD~~ |
| | : | 2012-00057 |
| CHRISTOPHER KOSACHUK and NLG LLC, | : | |
| | : | |
| Defendants. | : | |

**CHARGING ORDER**

AND NOW, to wit, this 15ᵗʰ day of _Sept_, 2012, on Motion of the Plaintiff-Assignee, 9197-5904 Quebec, Inc. it is hereby **ORDERED**:

1.      A Charging Order is hereby entered against Defendant Christopher Kosachuk's interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.      Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both economic and management rights in NLG, LLC.

3.      In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

1

CERTIFIED
FROM THE RECORD
ATTEST _____
DEPUTY PROTHONOTARY
2-17-12

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

    4.    In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

    5.    Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

<div align="right">BY THE COURT</div>

<div align="right"><em>Jacqueline C. Cody</em><br>J.</div>

2

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA       :    COURT OF COMMON PLEAS
GOGITIDZE,                     :    Civil Division
                  Plaintiffs,  :    Chester County
                               :
                               :    No.: ~~00057-2012-JD~~
                               :    2012- 0005
                               :
CHRISTOPHER KOSACHUK and NLG LLC, :
                               :
                  Defendants.  :

2012 FEB 15 PM 2:38 FILED OFFICE OF THE PROTHONOTARY CHESTER CO. PA.

**ORDER PEMITTING CAPTION CHANGE**

AND NOW, to wit, this 15th day of ____, 2012, on Motion of the Plaintiff, the

Prothonotary is hereby **ORDERED** to amend case caption from: EVGUENIA LORRET and

NINA GOGITIDZE, Plaintiffs, vs. CHRISTOPHER KOSACHUK and NLG LLC, Defendants,

to:                    9197-5904 QUEBEC, INC.

Plaintiff,

Vs.

CHRISTOPHER KOSACHUK and NLG LLC,
Defendants.

CERTIFIED
FROM THE RECORD
ATTEST _____
DEPUTY PROTHONOTARY
2-17-12

BY THE COURT

_Jacqueline C. Cody_
J.

1

# EXHIBIT "I"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------X

NLG, LLC,

                                 Plaintiff,

Index No: 108020/08

      -against-

ELIZABETH HAZAN,

                               Defendant.

**STIPULATION OF DISMISSAL
WITH PREJUDICE**

-------------------------------------------------------X

       **IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, attorney for

9197-5904 Quebec, Inc. pursuant to the authority granted 9197-5904 Quebec, Inc., under the Charging

Order attached hereto as Exhibit "A" to manage the Plaintiff, NLG, LLC and the attorney for the

Defendant, who are all of the parties appearing in the above-entitled action, that, whereas no party hereto

is an infant or incompetent person for whom a committee has been appointed, and no person not a party

has an interest in the subject matter of the action, the above-entitled action, and all claims, counterclaims

and third party claims asserted therein, is <u>discontinued with prejudice and without costs</u> to either party

as against the other.

Dated: New York, New York

       February 22, 2012

**MARZEC LAW FIRM, PC**

       By: _____
         Darius A. Marzec
         Attorneys for Defendant
         Elizabeth Hazan
         225 Broadway, Suite #3000
         New York, New York 10007

**9197-5904 QUEBEC, INC. ON BEHALF OF NLG, LLC**

       By: _____
         Arthur Rosenberg, Esq.
         6499 North Powerline Road, Suite 304
         Fort Lauderdale, Florida 33309
         954-772-5151

# EXHIBIT A

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA
GOGITIDZE,

                  Plaintiffs,

CHRISTOPHER KOSACHUK and NLG LLC,

                  Defendants.

COURT OF COMMON PLEAS
Civil Division
Chester County

No.: 00057-2012-JD

2012-00057

2012 FEB 15 PM 2:38

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

## CHARGING ORDER

AND NOW, to wit, this 15th day of Feb , 2012, on Motion of the Plaintiff-Assignee, 9197-5904 Quebec, Inc. it is hereby **ORDERED**:

1.     A Charging Order is hereby entered against Defendant Christopher Kosachuk's interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.     Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both economic and management rights in NLG, LLC.

3.     In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

1

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

4. In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

5. Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

BY THE COURT

Jacqueline C. Cody

J.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
NLG, LLC,

                            Index No: 108020/08

                 Plaintiff,

    -against-

                            **AFFIDAVIT OF SERVICE**

ELIZABETH HAZAN,

                 Defendant.
------------------------------------------------------------X

  Darius A. Marzec, Esq., of Marzec Law Firm, P.C., an attorney duly admitted to practice law in the Courts of the State of New York, pursuant to CPLR 2106 and under the penalty of perjury, affirms as follows:

1.    I am the principal of the Marzec Law Firm, P.C.
2.    On the 27th day of February, 2012, I served a copy of the within STIPULATION OF DISMISSAL WITH PREJUDICE via First Class Mail, to:

      1.  Arthur Rosenberg, Esquire, Attorney for 9197-5904 Quebec, Inc., on behalf of NLG, LLC; and
      2.  James Costo, Esquire, Former Attorney, NLG, LLC, 275 Seventh Avenue, Suite 1505 New York, NY 10001

NEW YORK, NEW YORK
February 27, 2012

                                      DARIUS A MARZEC ESQUIRE

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

**Address of Plaintiff:**

3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

**JUDGMENT BY**
**CONFESSION**

against

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| | | | |
|---|---|---|---|
| Amount Confessed | $5,000,000.00 | | |
| Interest | $0.00 | | $ 5,000,000.00 |
| Costs by Statute | $15.00 | | |
| Transcript | | | |
| Fees on Execution | | | |
| Satisfaction | | | |
| Filing Fee | $210.00 | | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
**CLERK**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

JUDGMENT entered the ___22nd___ day of ___February___, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is

**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC,* Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk      amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

_Norman Goodman_

CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187S/12

---

9197-5904 Quebec, Inc.,

**Plaintiff,**

**against**

NLG, LLC, A Delaware Limited Liability Company,

**Defendant.**

**AFFIDAVIT OF CONFESSION OF JUDGMENT**

┌ **FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE NEW YORK

---

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**      ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

**Sworn to before me this**
16 **day of** February, **2012**

...................................................

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

NOTARY PUBLIC



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. $10\,875/12$

---

9197-5904 Quebec, Inc.,

                          **Plaintiff,**

          **against**

NLG, LLC,

                          **Defendant.**

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

---

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**          **ss.:**

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

RAYMOND HOULE

Sworn to before me on the 21 day of February, 2012.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                    Index No.

9197-5904 Quebec, Inc.,

                                         **Plaintiff,**

        **against**

NLG, LLC., A DELAWARE LIMITED LIABILITY
         COMPANY,

                                         **Defendant.**

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

**FILED AND DOCKETED**
FEB 2 2 2012
AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200



State of Delaware
Secretary of State
Division of Corporations
Delivered 02:27 PM 02/23/2012
FILED 02:27 PM 02/23/2012
SRV 120214501 - 3592957 FILE

# STATE OF DELAWARE
# CERTIFICATE OF CANCELLATION

1.  The name of the limited liability company is ___N L G , LLC___

2.  The Certificate of Formation of the limited liability company was filed on
    ___11 / 19 / 2002___

IN WITNESS WHEREOF, the undersigned has executed this Certificate of
Cancellation this ___23___ day of ___FEBRUARY___, A.D. ___2012___.

By: _____
Authorized Person(s)

Name: ___RAYMOND HOULE___
Print or Type

FILED: NEW YORK COUNTY CLERK 03/27/2012
INDEX NO. 102260/2012
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/27/2012
Case 1:22-cv-21485-RNS Document 8-836 Entered on FLSD Docket 06/24/2022 Page 735 of 889
SCANNED ON 3/23/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.:
Date of Purchase:

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━X

V.R. AUTO LOCATION INC. D/B/A NLG
AND NLG, LLC.,

**SUMMONS**

                Plaintiff,

Plaintiff designates
NEW YORK
County as place of trial

     -against-

CHRISTOPHER KOSACHUK,

The basis of venue is:
Plaintiff's Place Of
Doing Business

             Defendant.

12102260

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━X

To the above named defendant:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's Attorneys within 20 days after the service of this summons exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
      March 22, 2012

                **MARZEC LAW FIRM, P.C.**

      BY:

                MICHAEL MA, ESQUIRE.
                Marzec Law Firm, P.C.
                Attorneys for Plaintiff
                225 Broadway, Ste. 3000
                New York, New York 10007
                (212) 267-0200
                dmarzec@MarzecLaw.com

Defendant's Address:

Christopher Kosachuk
201 South Biscayne Blvd.
28th Floor
Miami, FL 33131

FILED
MAR 23 2012
NEW YORK
COUNTY CLERKS OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
V.R. AUTO LOCATION INC. D/B/A NLG
AND NLG, LLC,

                             Plaintiff,                  Index No.:

      - against –

CHRISTOPHER KOSACHUK,            **COMPLAINT**

                            Defendant.

----------------------------------------------------------------X

      Plaintiff, V.R. AUTO CONNECTION INC D/B/A NLG AND NLG, LLC, by and through its attorneys MARZEC LAW FIRM, P.C., complains of the Defendant as follows:

      1.     At all times hereinafter mentioned, Plaintiff V.R. AUTO CONNECTION INC. D/B/A "NLG" AND "NLG, LLC" ("V.R.") was and is a Canadian corporation doing business in the City of New York, New York with the principal business address of 3756 Saint- Kevin, Ste 9, Montreal, Quebec, H3T 1H8, Canada.

      2.     At all times hereinafter mentioned, Defendant Christopher Kosachuk ("Kosachuk") is an individual with an address of 201 S. Biscayne Blvd., 28th Floor, Miami, FL 33131.

      3.     Jurisdiction is proper in New York as both Plaintiff and Defendant do business in New York and all pertinent events took place in New York State and New York County, to wit: execution of documents, agreements, corporate documents, exchange of consideration, and the acts complained of occurred herein.

      4.     This is a declaratory judgment action.

1

## FACTS

5.      All interest in NLG/NLG, LLC ("NLG") was transferred from 9197-5904 Quebec, Inc. to VR, on or about March 1, 2012.

6.      9197-5904 Quebec, Inc. received complete authority over NLG pursuant to a court order after extensive execution proceedings against Defendant Kosachuk.

7.      9197-5904 Quebec, Inc. holds a valid New York Judgment against Christopher Kosachuk in the sum exceeding $105,000.00 including interest.

8.      Per execution proceedings, Christopher Kosachuk has lost its right, title and interest in NLG.

9.      V.R. currently holds any and all interest in NLG, and is doing business as such.

10.     V.R. has learned that Defendant Kosachuk continues to hold himself out as Manager/Member of NLG in violation of property and corporate rights of Plaintiff.

11.     Plaintiff is in the business of consulting.

## CAUSE OF ACTION

12.     Plaintiff repeats and realleges all foregoing allegations.

13.     Plaintiff demands a declaratory judgment in its favor and against Defendant, declaring that is the rightful owner of, and solely charged with control of the NLG.

14.     Plaintiff a declaratory judgment indicating that Defendant has no right, title or interest in NLG.

15.     Moreover, Defendant Kosachuk's misrepresentation has imbued irreparable harm and damages upon V.R., and will continue to imbue such irreparable harm and damages absent preliminary and permanent relief by this Court.

2

Supreme Court Records OnLine Library - page 3 of 5

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against the Defendant as follows: That the Court issue a judgment declaring:

(i)     V.R. as sole shareholder/owner/beneficiary of NLG; and

(ii)    Christopher Kosachuk an individual with no interest, shares, rights, or position whatsoever in NLG; and

(iii)   Christopher Kosachuk an individual with no right to bind NLG; and

(iv)    Costs and expenses, including attorneys' fees and disbursements, as permitted by law, and such other and further relief as the Court may deem just, proper and equitable.

Dated: New York, New York
March 22, 2012

**MARZEC LAW FIRM, PC**

By:     MICHAEL MA, ESQUIRE.
        Marzec Law Firm, P.C.
        Attorneys for Plaintiff
        225 Broadway, Suite 3000
        New York, New York 10007
        (212) 267-0200
        dmarzec@MarzecLaw.com

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                     Index No.

V.R. AUTO LOCATION, INC. D/B/A NLG
AND NLG, LLC.

                              Plaintiff,

- against -

                                                      12.02260

CHRISTOPHER KOSACHUK,

                              Defendant.

---

## SUMMONS AND COMPLAINT

---

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

---

## CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Michael Ma, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

NLG, LLC,

     Plaintiff

v.

ELIZABETH HAZAN, et al.

     Defendant

_____/

GENERAL JURISDICTION DIVISION

CASE NO.: 2011-42770-CA-02

~~AGREED~~ ORDER

    THIS CAUSE, having come before this Court upon ~~agreement of the parties~~, it *ore tenus motion at the trial*

is hereby ORDERED as follows:

1. The Satisfaction of mortgage recorded on February 21, 2012 in Miami-Dade

   Public Records Book 28002, Page 4715-4720, with Clerk's File Number

   2012R0117830, is hereby stricken nunc pro tunc the date of such recording.

2. The Corrected satisfaction mortgage recorded on February 27, 2012 in

   Miami-Dade Public Records Book 28010, Page 517-518, with Clerk's File

   Number 2012R0133712 is hereby stricken nunc pro tunc the date of such

   recording.

3. The satisfactions that are hereby stricken shall be disregarded as though

   same have never been recorded.

Done and Ordered in Miami-Dade County, Florida this 2nd day of January, 2013.

The Honorable Spencer Eig
Circuit Court Judge

SPENCER EIG
CIRCUIT COURT JUDGE

Copies furnished:
Parties of record

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

      Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants

_____/

### ORDER GRANTING FORECLOSURE

THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS, ORDERS AND ADJUDGES as follows:

The history of the litigation between the parties was set out in detail when the matter

went up on appeal to the Third District. The facts and procedural history recited in the opinion

constitute the law of the case. In its opinion, the Third District stated as follows:

**Facts and Procedural Background**

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

*NLG, LLC v. Hazan,* 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

***Status of the Pleadings After Mandate***

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the
Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to
intervene. Although Mr. Cohen represented to this Court that he did not know what the
relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing
Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied
Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7,
2015, that Selective Advisors first moved to intervene. A comparison of the Motion to
Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is
trying to inject the very same issues and arguments that this Court ruled could not be
presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's
alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the
New York Judgment by Confession discussed below. The motion may be rejected as a matter of
law.

### Intervention

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to
"[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set
forth what interest it is claiming in the pending litigation. The ability to intervene is a
permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170
So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d
1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to
intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

property which was then the subject of a mortgage foreclosure action and accompanying lis

pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention. In

*Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test

to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*,

75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the
> matter in litigation, and of such a direct and immediate character that the
> intervenor will either gain or lose by the direct legal operation and effect of the
> judgment. In other words, the interest must be that created by a claim to the
> demand in suit or some part thereof, or a claim to, or lien upon, the property or
> some part thereof, which is the subject of litigation."

*Carlisle*, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any

interest in the litigation. The Wherefore Clause merely requests intervention. But if Selective is

trying to collect on the Judgment by Confession, it is undisputed that the judgment has been

satisfied. Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to

assert its rights, but to obstruct the foreclosure of his wife's property. To allow intervention by

Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction. As the Third District

recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if

Selective were allowed to intervene, they would take "the procedural posture of the case as it

stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking

Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the

then-existing claims in the lawsuit." The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

*v. IMC Phosphates, Inc.,* 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id.*

### *Substitution*

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

### Selective Advisors' Arguments

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

8

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

9

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action...").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District. Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment. Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475. It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

10

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal' whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..." The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG.  Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court.  *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); *Williams*, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is hereby GRANTED. The Court will hereafter enter a Final Judgment of Foreclosure upon the presentation of updated affidavits.

ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.

_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                              Chapter 7

Selective Advisors Group LLC,                       Case No. 815-72153-A736

                Debtor.                             Affirmation in Support

--------------------------------------------------------X

Marc A. Pergament, duly affirms under the penalties of perjury as follows:

1.      I am an attorney admitted to practice law in the United States Court of
Appeals for the Second Circuit and the United States District Court for the Eastern and Southern
Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for
the Trustee.

2.      I am also the Trustee of this Estate and am familiar with the facts and
circumstances set forth herein.

3.      This Affirmation is submitted in support of my request that the Court
scheduling a hearing on shortened notice:  (a) approving the dismissal of this bankruptcy case
with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of
$6,500.00 for services rendered; and (c) such other and further relief that this Court deems just
and proper.

4.      On May 18, 2015, the Debtor filed a voluntary petition for relief under
Chapter 7 of the Bankruptcy Code.  The initial bankruptcy filing was a bare bones petition filed
by the Debtor.  The manager who signed the petition was Sean N. Meehan.  Mr. Meehan failed
to appear at the § 341(a) meeting scheduled for June 24, 2015.  The Debtor's counsel appeared
on that date and requested an adjournment of the 341(a) meeting.

5.     I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015. A further request for an adjournment of the § 341(a) meeting was declined.

6.     On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.     My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.     Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.     The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012. A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC. The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment. A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

10.    After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.    As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.    Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.    Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.    I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

3

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.    Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.    The dispute with respect to the Judgment is evident.

17.    As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.    NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.    I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

20.     For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered.  A copy of the Stipulation is annexed hereto as Exhibit "D."

21.     I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.     It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.     No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:   Garden City, New York
         August 6, 2015

_____
Marc A. Pergament

5

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

------------------------------------------------------------x
9197-5904 QUEBEC INC
  Plaintiff,


            -against-


NLG LLC
                    Defendant.
------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,


WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec Inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.    .


NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.


Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

_Raymond Houle_

RAYMOND HOULE, president

### ACKNOWLEGEMENT

Province
State of ___Quebec___

County of ___D'Arcy McGee___ ..ss.:

On the ___3___ day of ___June___ in the year 2014, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Pierrette Tardif_

Notary Public

_Raymond Houle_

Raymond Houle

### CERTIFICATE OF CONFORMITY

I, _Pierrette Tardif_, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3, 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: _June 3/ 2014._   _Pierrette Tardif_

NOTARY PUBLIC
NAME:

COMMISSAIRE A L'ASSERMENTATION
PIERRETTE
TARDIF
# 198836

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

Address of Plaintiff:
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

**JUDGMENT BY
CONFESSION**

**against**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

1 2 1 0 1 8 7 5

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the

attorney of record for the Plaintiff herein and states that the disbursements specified are correct

and true and have been or will necessarily be made or incurred herein and are reasonable in

amount and affirms this statement to be true under the penalties of perjury.

Dated:  February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 2 2 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 2 2 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

JUDGMENT entered the ___22nd___ day of __February__, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,


**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is


ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of NLG, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk       amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.


Norman Goodman
CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK


✱ Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company


EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187512

9197-5904 Quebec, Inc.,

                                    Plaintiff,                    **AFFIDAVIT OF**
                                                                   **CONFESSION OF**
        against                                                    **JUDGMENT**

NLG, LLC, A DELAWARE LIMITED
LIABILITY COMPANY,
                                    Defendant.

**IFILED**

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**          ss.:          FEB 22 2012

                                              COUNTY CLERKS OFFICE
                                                  NEW YORK

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and

duly authorized agent of the defendant Limited Liability Company and is duly authorized to

make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against

defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida

33309; Defendant authorizes entry of judgment in New York County, New York, if said

residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the

following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for
$1,500.00 or less of any commodities for any use other than a commercial or business use
upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed, subsequent to the time a default occurred in the payment of an
installment thereunder.

Sworn to before me this

16 day of Febuary, 2012

                                    9197-5904 Quebec, Inc. by Raymond Houle, Manager
                                    MANAGER, NLG LLC

                                              Darius A. Marzec
                                         Notary Public State of New York
                                              No. 02MA6186309
                                           Qualified in Queens County
                                          Commission Expires 04/28/2012

        NOTARY PUBLIC

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC,

Defendant.

AFFIDAVIT OF
RAYMOND HOULE
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                          Index No.

9197-5904 Quebec, Inc.,

                                    Plaintiff,

        against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                COMPANY,

                                    Defendant.

---

JUDGMENT BY CONFESSION
AFFIDAVIT OF JUDGMENT BY CONFESSION

---

ATTORNEYS FOR PLAINTIFF
Marzec Law Firm, P.C,
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**
FEB 2 2 2012
AT  10.25 A M
N.Y., CO. CLK'S OFFICE

---

CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

EXHIBIT A

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER    KOSACHUK,    a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of $960,968.55 pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

Case 12-16438-jkf*SEALED*   Doc 211 *SEALED*   Filed 03/24/15   Entered 03/24/15 15:32:21   Desc Main Document   Page 2 of 2

4.   Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.   This Final Judgment may be recorded as a matter of public record.

6.   This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.   Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                            Chapter 7

Selective Advisors Group LLC,                     Case No. 815-72153-A736

          Debtor.                                 <u>Stipulation of Settlement</u>

--------------------------------------------------------X

Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code,

Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the Bankruptcy Code,

Whereas, the Trustee having raised issues as to whether this filing was a good faith bankruptcy filing by the Debtor,

Whereas, there is an issue concerning whether the Debtor has any creditors in this bankruptcy case,

Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having expended substantial time and effort in trying to understand this bankruptcy case and all of the related litigation between the Debtor and NLG LLC,

It is hereby Stipulated and Agreed as follows:

1.       This bankruptcy case is dismissed with prejudice.

2.       The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross & Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by the Debtor in the bankruptcy petition and related State Court lawsuits.

3.      This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.      The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
      July 23, 2015

                   Weinberg, Gross & Pergament LLP
                   Attorneys for Trustee

By:           _____

                   Marc A. Pergament
                   400 Garden City Plaza, Suite 403
                   Garden City, New York 11530
                   (516) 877-2424

                   Vlahadamis & Hillen, LLP
                   Attorneys for Debtor

By:           _____

                   Evans M. Hillen
                   148 East Montauk Highway, Suite 3
                   Hampton Bays, New York 11946
                   (631) 655-4115

"So Ordered"

# EXHIBIT "B"

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

EVANS M. HILLEN
evans@vhlawny.com

*Admitted in NY & NJ

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc
      Plaintiff,        Index No: 101875/2012

                                                  **NOTICE OF FILING SATISFACTION OF JUDGMENT**

            - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                          Defendant.
------------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff, Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York


Vlahadamis & Hillen, LLP


                          By:    /s/ James F. Vlahadamis
                                 James F. Vlahadamis, Esq.
                                 148 E. Montauk Highway
                                 Suite 3
                                 Hampton Bays, New York 11946


TO:    THE LAW OFFICES OF ARI MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0578
       ari.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------X

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
As assignee of 9197-5904 Quebec Inc.

                                        Plaintiff,

                                                            Index No.: 101375/2012
            -against-                                       SATISFACTION OF
                                                            JUDGMENT

NBG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

                                        Defendant.

------------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action on February 28, 2012, in
favor of 9197-5904 QUEBEC INC. against NBG, LLC in the amount of $800,000,000.00 plus
interest of $23,000 and $8,000,23,000 adjunct;

WHEREAS, docketed in the Office of the Clerk of the County of New York, on the opinion;
and

WHEREAS, said judgment was thereafter, on April 30, 2014, to Selective Advisors

[remainder illegible]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                            Plaintiff,              Index No: 101875/2012
                                         SATISFACTION OF
                                         JUDGMENT

         - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                          Defendant.
-------------------------------------------------------------X


## SATISFACTION OF JUDGMENT


WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean    Neil    Meehan ; manager

ACKNOWLEGEMENT

COUNTY OF _Onondaga_

On the _3rd_ day of _September_ in the year _2015_ before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 3, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 3th 2015

_____
NOTARY PUBLIC
NAME:

AFFIRMATION OF SERVICE

STATE OF NEW YORK  )
                   )   SS.:
COUNTY OF NEW YORK )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York.  On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:     THE LAW OFFICES OF ART MOR, ESQ
        347 E 65th Street, Suite 2RW
        New York, New York 2RW
        (347) 850-0578
        art.mor.esq@gmail.com

        ATTORNEY FOR DEFENDANT
        NLG, LLC, a Delaware Limited Company

        JONATHAN M. BORG BEDELL & FORMAN LLP
        44 Wall Street, 10th Floor
        (646) 219-7551
        jborg@bedell-forman.com

        ATTTORNEY FOR ADR MIAMI LLC ("ADRM")


Vlahadamis & Hillen, LLP

                        By:     /s/ James F. Vlahadamis
                                James F. Vlahadamis, Esq.
                                148 E. Montauk Highway
                                Suite 3
                                Hampton Bays, New York 11946

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015 01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

GENERAL JURISDICTION DIVISION

CASE NO.: ~~2011-42270 CA~~ (02)   2011-42770 CA 01

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property



      Defendants

_____/

### FINAL JUDGMENT OF FORECLOSURE
#### (Pursuant to Administrative Order 09-09)

      **THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on mandate from the Third District Court of Appeals on November 25, 2014;

      **IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service of process has been duly and regularly obtained over all Defendants in this action and this Court has jurisdiction over the parties in this action and the subject matter herein.

1.   **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following from Defendant ELIZABETH HAZAN:

      Principal due on the note secured by the mortgage foreclosed, as set forth in the Opinion of the Third District Court of Appeal:

               **$1,618,071.29.**

Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion of the Third District Court:

*(vertical text in left margin)* FORECLOSURE

CFN: 20150812181 BOOK 29902 PAGE 3738

$$\textbf{\$2,953,489.91}$$

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015 until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

| | |
|---|---|
| Property Maintenance | $21,333.14 |

**GRAND TOTAL: $4,876,654.29**

2.  **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment** against the Defendants. With the exception that any deficiency is hereby taxed against Defendant ELIZABETH HAZAN, there are no in personam damages against said other Defendants.

3.  **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of

CFN: 20150812181 BOOK 29902 PAGE 3739

the defendants. The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4.     **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on December ___, 2015, to the *January 12, 2016 ug* highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5.     **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6.     **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7.     **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8.     **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9.      **Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10.     **NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA**

CFN: 20150812181 BOOK 29902 PAGE 3741

(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

11. **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

CFN: 20150812181 BOOK 29902 PAGE 3742

---

**FINAL ORDERS AS TO ALL PARTIES**
**SRS DISPOSITION NUMBER   12**

THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.

**Judge's Initials   MG**

---

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

**Copies furnished: Parties of record**

Page 1

COURT OF COMMON PLEAS

PHILADELPHIA COUNTY, PENNSYLVANIA


NLG, LLC,                          )
                                   )
              Plaintiff,           )
                                   )
                                   )  AUGUST TERM, 2012
VS.                                )  NO. 02514
                                   )
DARIUS A. MARZEC, MARZEC LAW       )
FIRM, P.C., GUY A. DONATELLI,      )
LAMB McERLANE, P.C., and           )
9197-5904 Quebec, Inc.,            )
                                   )
              Defendants.          )
_____)



- - -

FRIDAY, APRIL 4, 2014

- - -


            Telephonic deposition of RAYMOND HOULE, taken

at the LAW OFFICES OF EDWIN P. SMITH, 1528 Walnut Street,

Suite 702, Philadelphia, Pennsylvania, beginning at

approximately 11:15 a.m., on the above date, before Carol L.

Shearer, Registered Professional Reporter and Notary Public.

CENTER CITY REPORTING, INC.
1315 Walnut Street - Suite 601
Philadelphia, Pennsylvania  19107
215-732-4882

1   A P P E A R A N C E S:

2

3       EDWIN P. SMITH & ASSOCIATES, P.C.
        BY:   EDWIN P. SMITH, ESQUIRE
4             1528 Walnut Street
              Suite 702
5             Philadelphia, Pennsylvania   19102
              (215) 864-7300
6             edwinsmith.attorney@yahoo.com

7
              --   Representing the Plaintiff
8

9

        KANE, PUGH, KNOELL, TROY & KRAMER, LLP
10      BY:   PETER ROGERS, ESQUIRE
              (Appearing Via Telephone)
11            510 Swede Street
              Norristown, Pennsylvania   19401
12            (610) 275-2000
              progers@kanepugh.com
13

14            --   Representing the Defendants
                   Darius A. Marzec and Marzec Law Firm, P.C.
15

16

        LAMB McERLANE, P.C.
17      BY:   GUY A. DONATELLI, ESQUIRE
              (Appearing Via Telephone)
18            24 East Market Street
              West Chester, Pennsylvania   19382
19            (610) 430-8000
              gdonatelli@lambmcerlane.com
20
              --   Representing the Defendants
21                 Guy A. Donatelli and Lamb McErlane, P.C.

22

23

24

```
 1    A P P E A R A N C E S (cont'd.):

 2

 3         MARZEC LAW FIRM
           BY:   DARIUS A. MARZEC, ESQUIRE
 4               (Appearing Via Telephone)
                 225 Broadway
 5               Suite 3000
                 New York, New York  10007
 6               (212) 267-0200
                 dmarzec@marzeclaw.com
 7

 8               --  Representing the Defendant 9197-5904 Quebec,
                     Inc.
 9

10

11

12    ALSO PRESENT:  JUDITH P. MEYER, DISCOVERY MASTER

13

14

15

16

17

18

19

20

21

22

23

24
```

1                         I N D E X

2

3                                                    Page

4

5    Examination by Mr. Smith                      5, 66

6    Examination by Mr. Marzec                        61

7    Examination by Mr. Rogers                        74

8    Court Reporter's Certificate                     76

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 5

1             (It is hereby stipulated, by and among counsel

2     for the respective parties, that signing, sealing,

3     certification and filing are waived; and that all

4     objections, except as to form of the question, are

5     waived until the time of trial.)

6                     RAYMOND HOULE,

7      the Witness herein, having been first duly sworn,

8      was examined and testified as follows:

9                     EXAMINATION

10   BY MR. SMITH:

11      Q.    State your name.

12      **A.    Raymond Houle.**

13      Q.    And what is your home address, Mr. Houle?

14      **A.    What is what?**

15      Q.    What is your home address?  Where do you live?

16      **A.    Where I am?  In Montreal.**

17      Q.    Give me your address, please, you street number and

18   the street name.

19      **A.    My home is 552 -- 5552 Queen Mary Road -- Avenue --**

20   **Road -- Queen Mary Road, Apartment 4, in Hampstead.**

21      Q.    She cannot hear you.  You have to turn the

22   microphone off on the computer because there's feedback.

23      **A.    One moment.  Yes.**

24      Q.    That's better.  Okay.  Give the rest of your address

Page 6

1    after Quebec.

2         A.    I didn't hear.  Sorry.

3         Q.    You have to turn the microphone off on your computer

4    and hold the phone up closer to your mouth, please.

5         A.    (Inaudible.)

6         Q.    Hold the phone closer to your mouth.

7         A.    Okay.

8         Q.    Pick up the phone and hold it near your mouth.

9         A.    Okay.

10        Q.    Now, what was your address after Montreal?

11        A.    552 Road -- Queen Mary, Apartment 4, Hampstead,

12   Quebec H3X 1G9.

13        Q.    Where's all the laughing coming from?  Mr. Houle,

14   hold the phone up to your mouth, please.

15        A.    Okay.

16        Q.    That's better.  That's better.

17        MR. SMITH:  Yes, Guy?

18        MR. DONATELLI:  My screen shows that Peter

19   Rogers is no longer on the phone.

20             (Whereupon, a discussion was held off the

21   Record.)

22   BY MR. SMITH:

23        Q.    Mr. Houle, are you employed?

24        A.    Are you what?

Page 7

1    Q.    Employed.  Do you work?

2    A.    I'm working for myself.

3    Q.    What is your business?

4    A.    My what?

5    Q.    What is your business?

6    A.    I'm a businessman.

7    Q.    Say again.  What business are you in?

8    A.    Business.

9    Q.    What kind of work do you do?

10   A.    Accounting.

11   Q.    How long have you been involved in accounting?

12   A.    35 years.

13   Q.    35 years.

14   A.    I am a CPA.

15   Q.    And where did you obtain your license or

16   certification?

17   A.    CPA is here in Quebec, the new form of CPA

18   (inaudible).

19         COURT REPORTER:  I'm sorry.  I didn't get that.

20   BY MR. SMITH:

21   Q.    You have to hold the phone closer to your mouth, Mr.

22   Houle.

23         COURT REPORTER:  Say it again, please.  "Where

24   did you obtain your license or certification?"

Page 8

1          THE WITNESS:  Pardon?

2     BY MR. SMITH:

3          Q.   Where did you obtain your certification?  Where did

4     you get your CPA?

5          **A.   Montreal.**

6          Q.   What is your physical problem that prevents you from

7     coming to Philadelphia?

8          **A.   I am on medication.**

9          Q.   And why can you not travel?

10         **A.   (Inaudible.)**

11         Q.   Why can you not travel to Philadelphia?

12              MR. MARZEC:  I'm sorry.  This is Darius Marzec.

13         I just have to lodge an objection only to the extent

14         that we do not want Mr. Houle to discuss his

15         confidential health information.  And I'm not sure if

16         it's going that way, but as a precaution, I would

17         like to object to that line of questioning.  We are

18         on Skype at this time.  Mr. Houle is here.  I would

19         prefer to get to the merits.

20              MR. SMITH:  I would like to ask the questions --

21              MS. MEYER:  Mr. Marzec, the Discovery Master,

22         Judith Meyer.  The objection is premature.

23         Additionally, the Skype connection is very tortured,

24         and if Mr. Houle could possibly come to Philadelphia,

Page 9

1      that is a proper question that may be asked by

2      counsel.

3   BY MR. SMITH:

4      Q.   Mr. Houle, what is your medical problem that

5   prevents you from traveling to Philadelphia?

6      **A.   Severe, severe depression last year, and I'm still**

7   **on medication for that.**

8      Q.   You appeared in Philadelphia in December for

9   depositions; is that correct?

10     **A.   Well, yes, it was correct, but it was very difficult**

11  **for me to come back.**

12     Q.   What is the difficulty?

13     **A.   The difficulty because in my state -- my --**

14     COURT REPORTER:  I'm having trouble hearing you.

15  BY MR. SMITH:

16     Q.   Say that again, please.  And hold the phone close to

17  your mouth.

18     **A.   Okay.  I have (unintelligible) --**

19     COURT REPORTER:  "I have" what?

20     THE WITNESS:  I have (unintelligible)

21     COURT REPORTER:  I'm not --

22  BY MR. SMITH:

23     Q.   The court reporter cannot understand what you're

24  saying.  Please repeat it?

Page 10

1    COURT REPORTER:  I'm not understanding most of

2    the answers.  I'm starting to be very uncomfortable

3    with this.

4         MS. MEYER:  Counsel, Judith Meyer, discovery

5    master.  It might be fruitful to ask Mr. Houle if he

6    ever leaves his house and, if so, if he could go to a

7    video conferencing center where we would not have to

8    deal with these technical problems.

9    BY MR. SMITH:

10   Q.   Mr. Houle, can you travel inside Montreal?

11   **A.   No, I don't have a car.**

12   Q.   How do you get around?

13   **A.   By my friends.**

14   Q.   You have people that drive you?

15   **A.   No.**

16   Q.   Are there taxicabs in Montreal?

17   **A.   Yes.**

18   Q.   Can you take taxicabs?

19   **A.   Take what?**

20   Q.   Taxicabs, taxis?

21   **A.   Taxi, yes, I can take.**

22        MR. SMITH:  Ms. Meyer, may I suggest that we

23   comply with your suggestion and let him take a

24   taxicab to some conference center, and Mr. Marzec can

Page 11

1    set that up.  This is torturous.

2        MS. MEYER:  We have been 45 minutes at this, and

3    we barely have the occupation of the witness down.

4        MR. MARZEC:  Ms. Meyer, Darius Marzec.  I hear

5    Mr. Houle.  There is a language issue.  He's a native

6    French speaker, and I hear everybody.  So Our

7    position is try this.  Let's continue with the

8    question and give Mr. Houle an opportunity to answer

9    the questions now that we're set up.

10       MS. MEYER:  Mr. Marzec, the problem is if the

11   court reporter cannot hear Mr. Houle, we have no

12   transcript.

13       (Unintelligible cross-talk)

14       MR. ROGERS:  May I make one suggestion.  If

15   there's no concern now whether it is or is not

16   Mr. Houle who is testifying, could we just go to a

17   telephone deposition at this point?

18       MR. SMITH:  This is Ed Smith.  He is on the

19   telephone and the court reporter cannot understand

20   what he's saying, and it's very hard to hear him.

21       MR. MARZEC:  Because his computer is on, I

22   believe.  That's why.  There's static because of

23   that.

24       MR. SMITH:  Well, I've asked him several times

Page 12

1      to turn it off, and it's still on then, apparently.

2           MR. ROGERS:  Well, can we try that?  Can we try

3      to have Mr. Houle turn off his computer entirely?

4           MR. MARZEC:  Let's try that.

5           MR. SMITH:  We're off the Record now.

6           (Whereupon, a discussion was held off the

7      Record.)

8      BY MR. SMITH:

9      Q.   Mr. Houle, do you have the exhibits in front of you

10     1 through 14?

11     **A.   1 what?**

12     Q.   There are papers that were supposed to be provided

13     to you.  There are exhibits --

14     **A.   Yes.**

15     Q.   -- and they're marked --

16     **A.   I have exhibits 1 to 13.**

17     Q.   Yes.

18     **A.   14.  Yes, I have it.**

19     Q.   You have to speak up and speak loudly, please.

20     **A.   Yes.**

21     Q.   Please pick up Exhibit H-14.

22     **A.   14.  What does it indicate on the paper?**

23          MR. MARZEC:  I don't have H-14.  Darius Marzec.

24          MR. SMITH:  I sent an e-mail saying that your

Page 13

```
 1        motion to withdraw as counsel should be marked as

 2        H-14 and provided to the witness.

 3              MR. MARZEC:  Which motion?  Which case?

 4              MR. SMITH:  Your motion to withdraw in this

 5        case.

 6              MR. MARZEC:  I did not receive that as an

 7        exhibit in this case.

 8              MR. SMITH:  No.  I sent you an e-mail asking you

 9        to provide him with a copy of your Motion to Withdraw

10        as his counsel and mark it H-14.

11  BY MR. SMITH:

12        Q.  Mr. Houle --

13              MR. MARZEC:  I don't recall such an e-mail.

14  BY MR. SMITH:

15        Q.  Mr. Houle, do you know that Mr. Marzec is quitting

16  as your attorney, or trying to quit as your attorney?

17        A.  No.

18        Q.  You didn't know that?

19        A.  (No response.)

20        Q.  When I say "your", I'm talking about Quebec.

21        A.  Yes, Quebec.

22        Q.  Did you know --

23        A.  (Inaudible).

24              COURT REPORTER:  What did you just --
```

Page 14

1    BY MR. SMITH:

2        Q.   Say that again?

3            MR. MARZEC:  Mr. Houle, please speak loud, slow

4        and wait for the person asking the question to

5        finish.  Just pause and then answer.

6            THE WITNESS:  Okay.

7    BY MR. SMITH:

8        Q.   Did you ever receive papers saying that Mr. Marzec

9    is trying to quit as Quebec's attorneys?

10       **A.   No.**

11       Q.   Did you know that Mr. Marzec is saying that you do

12   not cooperate with him?

13       **A.   Yes, I do cooperate.**

14           COURT REPORTER:  You do what?

15           MR. SMITH:  Cooperate.

16           THE WITNESS:  I do cooperate.

17   BY MR. SMITH:

18       Q.   Did you ever not cooperate with Mr. Marzec?

19           MR. MARZEC:  This is Darius Marzec.  I have to

20       lodge an objection --

21           THE WITNESS:  No, never.

22           MR. MARZEC:  -- because this line of questioning

23       gets into confidential client/attorney

24       communications, and information that Mr. Smith is

Page 15

1    seeking is privileged, not subject to disclosure,

2    specifically, communication between client and the

3    attorney.

4         MR. SMITH:  May I respond?  This is Ed Smith.

5         MS. MEYER:  Yes.

6         MR. SMITH:  In his motion, paragraph 4, he says

7    Quebec has failed to cooperate in the strategy,

8    advice and counsel provided to it.  In paragraph 5 he

9    says neither has Quebec agreed with counsel

10   concerning the strategy, defense and the direction of

11   the pending action.  And paragraph 6 says

12   additionally, shareholder of Quebec, Mr. Raymond

13   Houle, maintains a residence in Canada, does not

14   communicate with counsel as required for effective

15   representation.  Now I'm just questioning him as to

16   those averments by Mr. Marzec.

17        MS. MEYER:  Those are public averments -- I'm

18   sorry.  Mr. Marzec, respond.

19        MR. MARZEC:  Briefly, my response is that the

20   question is -- I worry that Mr. Houle may respond

21   with information that should not be made part of this

22   record, meaning any communication and discussions and

23   the strategy.  I don't want this to go there, because

24   it would not be proper for this deposition.

Page 16

1        MS. MEYER:  Let me make this ruling then.  Did

2     you serve this on your client, Mr. Marzec?

3        MR. MARZEC:  Yes, of course.

4        MS. MEYER:  Okay.  To the extent that you raised

5     these issues in your motion, Mr. Smith can inquire on

6     a yes/no basis whether these things are correct,

7     because I'm troubled that the Court may not know or

8     believe that Mr. Houle has been served, and if

9     Mr. Houle is in disagreement with your allegation, I

10     think the Court needs to know that.  We will not get

11     into the substance of your communications or any

12     advice you have given Mr. Houle.

13  BY MR. SMITH:

14     Q.   Mr. Houle, have you failed to cooperate in the

15  strategy or advice of Mr. Marzec?

16     **A.   No, never.**

17     Q.   Have you ever disagreed with Mr. Marzec concerning

18  your strategy or defense or anything to do with the lawsuit?

19     **A.   I always agree.**

20     Q.   Have you ever refused to talk to Mr. Marzec when

21  he's contacted you?

22     **A.   Never.  I always talk to my lawyer.**

23     Q.   Have you ever had any discussions with Guy

24  Donatelli?

Page 17

1    MR. MARZEC: I have to object. Again, it's the

2    same objection that Mr. Smith is inquiring about

3    privileged and confidential statements between

4    counsel and clients.

5    MR. SMITH: It just requires a yes or no.

6    MS. MEYER: He asked as to Mr. Donatelli, not as

7    to you.

8    MR. MARZEC: But the privilege is held with

9    Quebec, the company that I represent.

10    MR. SMITH: My question just requires a yes or

11    no answer, Ms. Meyer.

12    MS. MEYER: Yes. It does require just a yes or

13    no answer.

14    THE WITNESS: Could you repeat your question.

15    BY MR. SMITH:

16    Q.    Did you ever have conversations with Guy Donatelli?

17    **A.    Yes.**

18    Q.    Where was Quebec incorporated? I'm saying Quebec

19    instead of the full name. I'm sorry. Where was it

20    incorporated?

21    **A.    In Quebec, in Montreal.**

22    Q.    And was there a lawyer who assisted you in creating

23    that corporation?

24    **A.    I was not the creator.**

Page 18

1    Q.    Who created it?

2    A.    I don't know.

3    Q.    Well, how did you come to be an officer of that

4    corporation or a shareholder of that corporation?

5    A.    (No audible response.)

6          COURT REPORTER:  I'm sorry?

7    BY MR. SMITH:

8    Q.    Your answer?

9    A.    Yes.  I had a friend -- I had Elia Hazan, who has

10   transferred me the company --

11         COURT REPORTER:  Who what?

12   BY MR. SMITH:

13   Q.    Wait.  Start over, please, and speak slowly and

14   loudly.

15   A.    Elia Hazan, who transferred me the company, in

16   September, 2011.

17   Q.    That's Elia Hazan; is that right?

18   A.    Yes.

19   Q.    And how is he related to Elizabeth Hazan?

20   A.    Yes.

21         MR. MARZEC:  I have to object.  I don't believe

22   that this line of questioning will lead to discovery

23   of admissible evidence in this case.  It's not

24   reasonably calculated to lead to that.

Page 19

1          MS. MEYER:   Overruled.

2    BY MR. SMITH:

3        Q.   Is he related to Elizabeth Hazan?

4        **A.   Yes.   He is her brother.**

5        Q.   Were you ever asked by Elizabeth Hazan to do

6    anything using the Quebec Corporation?

7        **A.   No, never.**

8        Q.   Did Elia Hazan ask you to use the corporation to do

9    anything?

10       **A.   No, never.**

11       Q.   Were you promised anything by either Hazan for being

12   involved with the Quebec Corporation?

13       **A.   No.**

14       Q.   Weren't you promised $200,000 by Ms. Hazan?

15       **A.   Yes.**

16       Q.   And what was that for?

17       **A.   For satisfying some judgment she has with NLG.**

18       Q.   Did she pay you that money?

19       **A.   No.   It is a --**

20            COURT REPORTER:   I'm sorry?

21   BY MR. SMITH:

22       Q.   What did you say after "no"?

23       **A.   It is a promise.**

24       Q.   It is a promise?   She promised to pay?

1      A.    P-R-O-M-I-S-E.

2      Q.    Promise.  And when is she to pay you that money?

3      A.    (Unintelligible.

4            COURT REPORTER:  I'm sorry?

5   BY MR. SMITH:

6      Q.    Say that again.

7      A.    One moment, please.

8            MR. MARZEC:  I think he said "depending".

9   BY MR. SMITH:

10     Q.    When is she to pay you that money?

11     A.    When I ask -- one moment, please.  Could you repeat

12  the question.

13     Q.    Who is with you, Mr. Houle?

14     A.    She has 24 months to pay me.

15     Q.    Mr. Houle, who is with you in the room?

16     A.    Nobody.

17     Q.    Who?

18     A.    Nobody.

19     Q.    Weren't you just talking to somebody?

20     A.    No.

21     Q.    Do you know that, under the law of Pennsylvania, you

22  could be personally responsible for the debts of Quebec

23  Corporation under certain circumstances?

24            MR. MARZEC:  This is Darius Marzec.  I object.

1      I think the question calls for a legal conclusion,

2      which my client is not equipped to give.

3          MR. SMITH:  I just asked him if he knows.  It's

4      a yes or no answer.

5          MS. MEYER:  You can ask him if he knows, but it

6      is a legal question, and -- well, ask him if he

7      knows.

8  BY MR. SMITH:

9      Q.   Do you know that?

10         MR. MARZEC:  Is my objection overruled?

11         THE WITNESS:  No.

12         MS. MEYER:  Yes.  For the purposes of yes or no,

13     it is.

14         MR. MARZEC:  His answer was no.

15         MS. MEYER:  We will treat it as a fact question.

16  BY MR. SMITH:

17     Q.   What business was Quebec in?

18         MS. MEYER:  Was there an answer to the question?

19         MR. SMITH:  Yes.  He said "no."

20         MS. MEYER:  Okay.

21  BY MR. SMITH:

22     Q.   What is the business of the Quebec Corporation?

23     **A.   (Unintelligible).**

24         COURT REPORTER:  I'm sorry?

Page 22

1   BY MR. SMITH:

2       Q.   We didn't hear that.

3       **A.   One moment, please.   Yes.   Could I respond?**

4       Q.   What is the business of the Quebec Corporation?

5       **A.   Quebec uses the company to own judgment.**

6   **(Unintelligible).**

7            COURT REPORTER:   I'm sorry.   You'll have to

8       repeat that.

9            THE WITNESS:   Yes.   Quebec uses the company to

10      own a judgment against Chris Kosachuk.   That was the

11      main purpose that it was used for.

12  BY MR. SMITH:

13      Q.   Did the corporation have any other business other

14  than that?

15      **A.   Pardon?**

16      Q.   Did Quebec have any other business other than owning

17  the judgment against Mr. Kosachuk?

18      **A.   No.**

19      Q.   Does Quebec -- has Quebec paid attorneys fees to

20  Mr. Marzec or Mr. Donatelli?

21           MR. MARZEC:   I have to object on the basis that

22      the question calls for privileged and confidential

23      information that should not be disclosed here.   I

24      believe the same objection was made in response to

1    paper discovery, and the objection was sustained.

2        MR. SMITH:  I don't know what he's referring to,

3    but this is not a privileged matter.  I'm not asking

4    for communication.  I'm just asking whether or not he

5    paid the bills, his corporation paid the bills.

6        MS. MEYER:  The objection is overruled.  This is

7    not getting into privileged material.

8        THE WITNESS:  Okay.  I can respond.  I don't

9    recall.

10  BY MR. SMITH:

11     Q.   Does Quebec Corporation have a checkbook, a checking

12  account?

13     **A.   No.**

14     Q.   You are the only shareholder of Quebec Corporation;

15  is that correct?

16     **A.   Yes.**

17     Q.   And you are the only officer of Quebec Corporation;

18  is that correct?

19     **A.   Yes.**

20     Q.   Then how did you pay attorneys fees?

21     **A.   I don't have to respond to that question.**

22     Q.   Yes, you do, sir.  How did Quebec pay its attorneys

23  fees?

24     **A.   I don't recall.**

Page 24

1    Q.    Have you ever received a bill for attorneys fees to

2    Quebec Corporation from Mr. Marzec or Mr. Donatelli?

3    **A.    I don't recall.**

4    Q.    Is there anything wrong with you that affects your

5    memory?

6    **A.    Sometimes, yes, because of my medication.**

7    Q.    What is the medication?

8    **A.    I have my medication over here.**

9    MR. MARZEC:  I object to the extent that this

10   calls for Mr. Houle to respond about his medical

11   conditions and medicines that he's taking.  I think

12   that's delving too deep into his personal life.

13   Again, he's here as a representative of 9197-5904

14   Quebec, Inc., that is a Defendant in this case.

15   MR. SMITH:  If I may respond, he's saying his

16   memory may be affected by the medication.  I'm

17   entitled to know what the medication is.

18   MS. MEYER:  You have a witness who doesn't

19   recall whether the company of which he is sole the

20   shareholder and officer has paid attorneys fees.  On

21   behalf of the corporation, he doesn't recall if he

22   ever received bills for attorneys fees.  If this

23   witness is impaired in any way, and he is saying his

24   memory is impaired, then the question is proper as to

Page 25

1    what the hindrances are that are affecting his

2    ability to recall answers to questions.  Overruled.

3          MR. MARZEC:  Mr. Houle, please answer the

4    question.

5          THE WITNESS:  Okay.  I was treated for

6    depression, the main purpose that could affect my

7    memory.  I have good memory.  On pressure, I have

8    difficulty to remember.  That's the main thing.

9    BY MR. SMITH:

10        Q.    What is the medication that you're taking?

11        A.    **My medication is Venlafaxine.**

12        Q.    Would you spell that, please.

13        A.    **V-E-N-L-A-F-A-X-I-N-E.  It's for anxiety,**

14   **depression.**

15        Q.    Did you select the attorneys to represent the

16   corporation in matters involving Mr. Kosachuk?

17        A.    **Yes, I did.**

18        Q.    Had Mr. Marzec ever represented you before any

19   matter involving Mr. Kosachuk?

20        A.    **Yes, I did.  Yes, I do.**

21        Q.    And was that representing you personally or

22   representing some other corporation?

23        A.    **Personally.**

24        Q.    Did you ever pay any attorneys fees in cash on

1  behalf of the Quebec?

2      **A.   Yes.**

3      Q.   Yes?  Where did the cash come from?

4      **A.   From my money.**

5      Q.   Your personal money or the corporation's money?

6      **A.   My personal.**

7      Q.   And why did you pay in cash?

8      **A.   (No response.)**

9      Q.   Did you understand my question?

10     **A.   Yeah.  That's my right.**

11     Q.   Why did you pay --

12         MR. MARZEC:  He said "that's my right".

13         THE WITNESS:  That's my right.

14  BY MR. SMITH:

15     Q.   Did anybody ask you to pay in cash?

16     **A.   (Inaudible) cash if I want to do.**

17     Q.   What?

18     **A.   To pay cash if I want to.**

19     Q.   Did anyone ask you to pay in cash?

20     **A.   Yes.**

21     Q.   Who?

22     **A.   I don't remember.  I don't --**

23         MR. MARZEC:  I don't think he understood the

24  question.

1    MR. SMITH:  Excuse me, sir.  Mr. Marzec, please

2    don't interrupt.

3  BY MR. SMITH:

4    Q.   Sir, who asked you to pay in cash?

5    **A.   I don't remember.**

6    Q.   Was it Elizabeth Hazan that asked you to pay in

7  cash?

8    **A.   No.**

9    Q.   Was it Mr. Hazan that asked you to pay in cash?

10   **A.   No.**

11   Q.   Was it an attorney who asked you to pay in cash?

12   **A.   It was my choice.**

13   Q.   Did you receive a receipt for those payments?

14   **A.   That's my right.**

15   Q.   Sir, did you receive --

16   **A.   I don't recall.  I don't recall if I have a**

17  **receipt.**

18   Q.   Do you file tax returns for the corporation?

19   **A.   Yes.**

20   Q.   And in the tax returns in Canada, do you have to

21  list the corporation's expenses?

22   MR. MARZEC:  I think I have to object to this

23   question on the basis that it calls for an answer

24   that a lay person, as Mr. Houle in this deposition,

Page 28

1    is not equipped to give.

2         MR. SMITH:  He's not a lay person.  He's a CPA.

3         MS. MEYER:  He's a CPA, Mr. Marzec.

4         MR. MARZEC:  But he's not appearing in this

5    deposition as a CPA.

6         MS. MEYER:  But he has the knowledge of what

7    goes on tax returns, and he's the filing officer for

8    Quebec.

9         MR. MARZEC:  Okay.  Mr. Houle, please answer.

10        THE WITNESS:  Yes.  That is my business.

11   BY MR. SMITH:

12        Q.  Does the tax return for the corporation contain a

13   listing of expenses of the corporation?

14        **A.  Sure.**

15        Q.  And did you file a tax return for the year 2013 for

16   the corporation?

17        **A.  I don't recall.**

18        Q.  When does Canadian law require that you file the tax

19   return for 2013 for the corporation?

20        MR. MARZEC:  Objection.  Even if he's a CPA,

21        this is a question that asks about statement of the

22        law and not what happened, where it happened or what

23        he did or what he didn't do and so forth.

24        MR. SMITH:  Laymen understand when tax returns

Page 29

1    are due here for April 15th.

2              MS. MEYER:  Overruled.

3              THE WITNESS:  (Inaudible).

4              MR. MARZEC:  I'm sorry, Mr. Houle.  Say again.

5              THE WITNESS:  I said I want this

6    (unintelligible) over.

7              COURT REPORTER:  I'm --

8    BY MR. SMITH:

9         Q.   Hold the phone up to your mouth, please.

10        **A.   Okay.**

11        Q.   When are tax returns due for filing for the

12   corporation for 2013?

13        **A.   June 23, 2014.**

14        Q.   And would that be true for the 2012 return that

15   would also be due in June of 2013?

16        **A.   Exactly.**

17        Q.   And the tax return that you filed for the

18   corporation for 2012, did you list any attorneys fees as

19   expenses to Mr. Marzec or Mr. Donatelli?

20        **A.   I don't recall.**

21        Q.   Have you ever had any discussions with Elizabeth

22   Hazan as to what you should do with regard to Mr. Kosachuk?

23        **A.   No.**

24        Q.   She's never discussed it with you and you've never

Page 30

1    discussed it with her; is that correct?

2        A.    Exactly.

3        Q.    And how about with Mr. Hazan, have you discussed it

4    with him?

5        A.    No.

6        Q.    Then how did you know to enter a judgment against

7    Mr. Kosachuk for NLG pursuant to the charging order?  Who

8    told you to do that?

9            MR. MARZEC:  Objection.  Lack of foundation.

10           MS. MEYER:  Sustained.

11   BY MR. SMITH:

12       Q.    Did you enter a judgment against NLG as a result --

13   excuse me.  Did you enter a judgment against Mr. Kosachuk

14   because of the charging order you received?

15       A.    No.

16       Q.    Didn't you enter --

17           MS. MEYER:  Did he understand the question?

18           MR. SMITH:  I'll give him another question.

19   BY MR. SMITH:

20       Q.    Didn't you enter a $5 million judgment against Mr.

21   Kosachuk because of your charging order for NLG?

22       A.    Yes.

23           MR. MARZEC:  Objection to the form and lack of

24           foundation.

1          MR. SMITH:  His answer was yes.

2          MS. MEYER:  Sustained.

3          MR. DONATELLI:  This is Guy Donatelli.  I'd also

4     like to object to that question because it

5     mischaracterizes the charges.

6  BY MR. SMITH:

7     Q.    Do you have the exhibits there, sir?

8     **A.    Yes.**

9     Q.    Would you please pick up Exhibit H-1.

10    **A.    H what?**

11    Q.    H-1.

12    **A.    Yes.**

13    Q.    That is a letter addressed to you by Guy Donatelli;

14  is that correct?

15    **A.    It is correct.**

16    Q.    Did you ever sign that letter and return it to Mr.

17  Donatelli?

18    **A.    No.  Yes.  I have signed.  I remember it now.**

19    Q.    That you remember signing and sending it back to

20  him; is that right?

21    **A.    Yeah.**

22    Q.    That letter says, quote, I will be transmitting to

23  you copies of correspondence and other papers in this case

24  which I believe have some significance.  Did you ever receive

1    such papers and correspondence from Mr. Donatelli?

2         MR. MARZEC:  Objection.  I think that was two

3    questions.  Objection to the form.

4         MS. MEYER:  Sustained.

5    BY MR. SMITH:

6      Q.   Did you ever receive copies of correspondence from

7    Mr. Donatelli?

8      **A.   Yes, I believe so.**

9      Q.   Did you ever receive copies of any other papers from

10   Mr. Donatelli?

11     **A.   No.**

12     Q.   Who selected --

13     **A.   I don't remember.**

14     Q.   Is your answer no or is it you don't remember?

15   Which one?

16     **A.   I don't remember.**

17     Q.   Who selected Mr. Donatelli to represent the

18   corporation?

19     **A.   Can you re-ask the question again.**

20     Q.   Who selected Mr. Donatelli to represent the

21   corporation?

22     **A.   I don't recall who.**

23     Q.   Did you know that a judgment was entered against NLG

24   in the Court of Common Pleas of Chester County, Pennsylvania?

Page 33

1          MR. MARZEC:  Objection.  Lack of foundation.

2     And what judgment are we talking about here?

3          MS. MEYER:  Clarify the judgment.  Otherwise I

4     think there is foundation.

5 BY MR. SMITH:

6     Q.   In this case that we're here on, sir, your

7 corporation sued Christopher Kosachuk and NLG and recorded a

8 judgment against NLG.  Are you aware of that?

9     **A.   No.**

10     Q.   Did anyone ever tell you that a judgment in the case

11 in Chester County, Pennsylvania, was entered against NLG?

12     **A.   I don't recall.**

13     Q.   Did you learn that NLG was trying to have that

14 judgment removed in Chester County, Pennsylvania?

15     **A.   I don't recall.**

16     Q.   Did you retain attorneys to oppose the removal of

17 that judgment against NLG in Chester County, Pennsylvania?

18     **A.   I don't recall.**

19     Q.   Did you intend to enter a -- have a judgment entered

20 on behalf of the Quebec Corporation against NLG in Chester

21 County, Pennsylvania?

22     **A.   No, I don't recall.**

23     Q.   Would you please pick up Exhibit H-3.  I'm sorry.

24 H-2.

Page 34

1      **A.    Yes.**

2      Q.    Did you ever see that document before it was

3    presented to you for this deposition?

4      **A.    Yes.**

5      Q.    When did you first see it?

6      **A.    I don't recall.**

7      Q.    How long ago did you see it?

8      MR. MARZEC:  Objection.  Asked and answered.

9      MS. MEYER:  Is that an objection?

10      MR. MARZEC:  Asked and answered.

11      MS. MEYER:  He said he'd seen it before.

12      MR. MARZEC:  Say again, please.

13      MS. MEYER:  His answer was I have seen this

14    before.  I thought that's what he -- --

15      THE WITNESS:  My response is I don't recall

16    seeing this document now.  Sorry.

17    BY MR. SMITH:

18      Q.    Would you turn to H-3, Exhibit H-3, please.

19      **A.    Yes.**

20      Q.    Would you look at the last page of that exhibit,

21    please.  It's entitled "verification".  Do you have that

22    there, sir?

23      **A.    Yes.**

24      Q.    It says "I, Raymond Houle, verify that the facts set

Page 35

1   forth in the Answer to Motion to Vacate are true and correct

2   to the best of my knowledge, information and belief.  I

3   represent that I am an officer of the Plaintiff and am

4   authorized to take this verification on its behalf.  I

5   understand that false statements herein are made subject to

6   the penalties of the law relating to unsworn falsification to

7   authorities."  Did you sign that document, sir?  Is that your

8   signature there?

9       **A.    I think so.**

10      Q.    And did you sign it on March 15, 2012?

11      **A.    Yes.**

12      Q.    Did you read the document before you signed that

13  verification?

14      **A.    I don't remember.**

15      Q.    Do you remember ever seeing Exhibit H-3 before?

16      MR. MARZEC:  Objection.  Asked and answered.

17      MS. MEYER:  Overruled.

18      THE WITNESS:  Probably.

19  BY MR. SMITH:

20      Q.    Probably?

21      **A.    Yes.  But I'm not sure.**

22      Q.    Do you know who probably gave it to you to look at?

23      **A.    Yes.**

24      Q.    Who?

Page 36

1     A.    Probably I'm not sure.

2          MR. MARZEC:  I'm sorry.  This is Darius Marzec.

3     I'm not sure what the question is.

4          MS. MEYER:  I'm not entirely sure, either.

5     BY MR. SMITH:

6     Q.    Who gave you -- who gave you Exhibit H-3 to look at,

7     if you can recall?

8          MR. MARZEC:  Objection.  That wasn't the answer

9     to the question.  He said that he probably saw it

10    before, but he didn't say that someone gave him the

11    document to look at it.  It's mischaracterizing the

12    testimony of the witness.

13         MS. MEYER:  I think it's a new question; who

14    gave it to him.

15    BY MR. SMITH:

16    Q.    From whom did you receive Exhibit H-3?

17    A.    I don't recall.

18    Q.    Would you look at H-4, please, Exhibit H-4.  Do you

19    have that in front of you, sir?

20    A.    Yes.

21    Q.    Have you ever seen that document before it was given

22    to you for this deposition?

23    A.    No.  Sorry.

24    Q.    Would you please look at H-5, Exhibit H-5.  Do you

Page 37

1   have that in front of you?

2       A.    Yes.

3       Q.    Would you look through it, please.

4       A.    H-5.  Okay, I got.

5       Q.    It's an Order of Court from Chester County,

6   Pennsylvania.  Do you have that in front of you?

7       A.    Yes, I have.

8       Q.    Have you ever seen that document before?

9       A.    No.

10      Q.    Did you say no?

11      A.    I don't recall.

12      Q.    Did you know that a judge in Chester County took off

13  the judgment against NLG?

14      A.    I don't know.

15          MR. MARZEC:  I don't understand the question.

16      This is Darius Marzec.  The question is when and --

17      it's a little confusing.  What does to take off mean?

18          MR. SMITH:  Would you rather I use "vacate"?  Do

19      you think he'd understand that better?

20  BY MR. SMITH:

21      Q.    Did you know that a judge in Chester County vacated

22  the judgment against NLG?

23      A.    (No response.)

24      Q.    Are you there, sir?

1    A.   I don't recall.

2    Q.   You don't recall.  Would you please look at Exhibit

3  H-6.  It's a letter from Mr. Marzec to Judge Griffith in

4  Chester County dated May 10, 2012.  Have you ever seen that

5  letter before?

6    A.   I don't recall.

7    Q.   The document attached to that letter, which is a

8  motion to reconsider and to vacate prior order, have you ever

9  seen that before?

10   A.   I don't recall.

11   Q.   Did you authorize anyone to file either Exhibit H-4

12  H-5 -- I'm sorry.  H-4 or H-6, did you authorize anyone to

13  file those exhibits in court?

14   A.   I don't recall.

15   Q.   Would you look at H-7, please.

16       MR. DONATELLI:  Ed, H-5 is the judge's order.

17  Did you mean to include that in that question?

18       MR. SMITH:  I thought I corrected that and just

19  referred to H-4 -- I'm sorry -- H-4 and H-6.

20  BY MR. SMITH:

21   Q.   You're looking at H-7?

22   A.   Yes.

23   Q.   Have you ever seen that document before?

24   A.   I don't recall.

1    Q.   Did you ever authorize anyone to change the caption

2  of the case in Chester County and the name of the parties?

3    **A.   I don't recall.**

4    Q.   Would you look at H-8, please.  Do you have H-8 in

5  front of you?

6    **A.   Yes.**

7    Q.   That's a document from the 11th Judicial Circuit in

8  and for Miami-Dade County, Florida, and it's a Notice of

9  Voluntary Dismissal with Prejudice.  It says "Plaintiff NLG,

10  by and through undersigned counsel, pursuant to the certified

11  copy of the charging order attached hereto as Exhibit A

12  hereby voluntarily dismisses this action with prejudice."

13  Did you know that the action by NLG against Elizabeth Hazan

14  that I just referred to was being dismissed?

15    **A.   No.**

16    MR. MARZEC:  Objection.  Lack of foundation.

17    THE WITNESS:  I don't recall.

18    MR. MARZEC:  Objection.

19    MS. MEYER:  He doesn't recall anyway.  If

20    counsel wants to lay foundation that might help him

21    recall, that's fine.

22  BY MR. SMITH:

23    Q.   Did Mr. Rosenberg represent your corporation in

24  Florida?

Page 40

```
1       A.   Yes.

2       Q.   And did you ask Mr. Rosenberg or did you instruct

3   Mr. Rosenberg to satisfy the judgment that NLG had against

4   Elizabeth Hazan?

5       A.   Yes.

6            MR. MARZEC:  Objection.  Lack of foundation.

7            MS. MEYER:  Does the witness understand the

8       question?

9            MR. SMITH:  He said yes.  I'll say it again.

10  BY MR. SMITH:

11      Q.   Did you authorize Mr. Rosenberg to have the judgment

12  by NLG against Hazan satisfied?

13      A.   Would you repeat?

14      Q.   Did you authorize Mr. Rosenberg to have the judgment

15  of NLG against Elizabeth Hazan satisfied?

16      A.   Yes.

17      Q.   Why?

18           MR. MARZEC:  Objection.  I believe that was

19      asked and answered, and the witness testified about

20      the $200,000.

21           MR. SMITH:  I'm going to object to counsel

22      suggesting answers.

23           MS. MEYER:  There was a payment of $200,000, but

24      it was not connected to this.  And the objection is
```

Page 41

```
 1      overruled.

 2           MR. MARZEC:  Okay.  Mr. Houle, answer the

 3      question, please.

 4  BY MR. SMITH:

 5      Q.   Why did you instruct the satisfaction of that

 6  judgment against Elizabeth Hazan?

 7      A.   Because of the promise of the $200,000.

 8      Q.   Who were you just talking to?

 9      A.   Nobody.

10      Q.   You turned your head and you said something quietly

11  to your left.  Are you saying you're not talking to anybody;

12  you were talking to yourself?

13      A.   Exactly.

14           MR. MARZEC:  I think he was answering the

15      question.  I don't know.

16           MS. MEYER:  I believe someone else is present,

17      because very early -- I no longer have video here,

18      but very early in the deposition, Mr. Houle was

19      waving away somebody with his hand and turned his

20      head to look at somebody.  But I don't know who that

21      person was.

22  BY MR. SMITH:

23      Q.   Has there been anybody with you at all during this

24  deposition?
```

Page 42

1      **A.   No.**

2      Q.   Would you please look at H-9.  This is a document

3 from the Supreme Court of the State of New York, County of

4 New York, in which Quebec Corporation was the Plaintiff and

5 NLG was a Defendant.  Have you ever seen this document

6 before?

7      **A.   Yes, I did.**

8      Q.   When did you first see it?

9      **A.   I don't remember.**

10     Q.   Was it more than a month ago?

11     **A.   I don't remember.**

12     Q.   Was it last week, the first time you saw it?

13     **A.   No.**

14     Q.   Was it over a year ago that you first saw it?

15     **A.   I don't know.  I think was two years ago.**

16     Q.   Who prepared that document?  Who gave it to you?

17     **A.   Ten days -- ten days.**

18     Q.   Pardon me?

19     **A.   (Unintelligible)  Marzec.  It indicates on the**

20 **document.**

21     Q.   You have to say that again.  I don't understand what

22 you just said.  You said Mr. Marzec gave it to you, and then

23 what did you say?

24     **A.   It says on the paper Mr. Marzec.  (Inaudible)**

1    Q.   Who asked you to have this document filed?

2    **A.   Would you repeat.**

3    Q.   Who asked you to have this document filed with the

4    court?

5    **A.   I asked my lawyer, Mr. Marzec, to prepare -- to**

6    **prepare it.**

7    Q.   Who asked you to have this document filed?

8         MR. MARZEC:  Objection.  Asked and answered.  He

9    said, I asked my lawyer to prepare it.

10        MR. SMITH:  I didn't hear him say that.

11        THE WITNESS:  I asked my lawyer to prepare it.

12   Nobody else.

13        MR. SMITH:  Ms. Meyer, may I ask that Mr. Marzec

14   be instructed not to suggest answers as part of his

15   objections or intermeddle his answers.

16        MS. MEYER:  You are so instructed, Mr. Marzec.

17   BY MR. SMITH:

18   Q.   Why did you have this document filed?

19   **A.   Because for abuse (inaudible)**

20        COURT REPORTER:  I'm sorry.  Could you start

21   your answer again, please.

22        THE WITNESS:  (Inaudible.)

23        COURT REPORTER:  I can't hear you.

24   BY MR. SMITH:

1    Q.   Speak up, please.  Put the phone near your mouth.

2         COURT REPORTER:  Start your answer again.

3         THE WITNESS:  Sorry.

4    BY MR. SMITH:

5    Q.   Why did you have this document filed?

6    **A.   Yeah, it was filed for fraud and abuse of process**

7    **and to collect our judgment.**

8    Q.   What judgment --

9    **A.   Because of five years of process of fraud by Mr.**

10   **Kosachuk.**

11   Q.   And you filed that as -- and who -- strike that.

12        You filed this -- you allowed this to be filed as an

13   agreement on behalf of NLG; is that correct?

14   **A.   (No response.)**

15   Q.   You represented NLG in filing this document; didn't

16   you?

17   **A.   Are you referring to the charging order?**

18   Q.   Yes, and you represented NLG in filing this

19   document; is that correct?

20   **A.   Yes.  Indicated on it.**

21   Q.   And you indicated yourself as manager of NLG; is

22   that correct?

23   **A.   Indicated.  I don't --**

24   Q.   Okay.  Look at the third page, please.  It's an

Page 45

1    Affidavit of Confession of Judgment signed by you -- that is

2    your signature at the bottom?

3         A.   **Which page?**

4         Q.   Third page.

5         A.   **I see it, yes.**

6         Q.   And it says manager of NLG.  Who appointed you as

7    manager of NLG?

8         A.   **By corporate resolution.**

9              COURT REPORTER:  I'm sorry?

10   BY MR. SMITH:

11        Q.   By corporate resolution?  What corporation?

12        A.   **That I did when Quebec took over NLG.**

13        Q.   What corporation issued the resolution?

14        A.   **You got a valid -- a valid charging order to do so.**

15   **It's the Quebec company who make that resolution.**

16        Q.   Before you filed this, did NLG owe Quebec anything?

17        A.   **I don't understand very well.**

18        Q.   Before you filed this Confession of Judgment against

19   NLG, did NLG owe Quebec Corporation any money?

20        A.   **No.**

21        Q.   Who selected the $5 million figure?

22        A.   **I did.**

23        Q.   Did anyone assist you in selecting that amount?

24        A.   **No.**

Page 46

1    Q.  Now, if you'll look at the two pages past there,

2 please.

3    **A.  Which page?**

4    Q.  Two more pages past.

5    **A.  Okay.**

6    Q.  At the top it has what appears to be your signature.

7 I ask you if that is your signature.

8    **A.  I don't find the page.  I don't know.  Past or**

9 **before?**

10    Q.  It's the fifth page of that exhibit.

11    **A.  Yes.**

12    Q.  Is that your signature?

13    **A.  Yes.**

14    Q.  And the notary is Darius A. Marzec; is that correct?

15    **A.  Yes.**

16    Q.  Was he with you when you signed this?

17    **A.  Yes.**

18    Q.  And were you in New York when you signed this?

19    **A.  Of course.**

20    Q.  Where in New York were you?

21    **A.  In his office.**

22    Q.  And where was his office?

23    MR. MARZEC:  I have to object --

24    THE WITNESS:  In Brooklyn.

1          MR. MARZEC:  -- to this line of questioning.

2     Mr. Houle, hold on.  This line of questioning is not

3     reasonably calculated to lead to admissible evidence.

4     Let's not get away from the fact that this is the

5     Dragonetti action that alleges that a judgment was

6     entered against NLG.  This is too far afield, in my

7     opinion, for these questions to continue.

8          MS. MEYER:  The level of detail, where was your

9     office, I don't know where that's going, but I'll

10    allow that question.  Can we just stipulate where

11    your office was?  Does it matter?

12         MR. SMITH:  I just wanted to know if he actually

13    knows where it was and if he was really there when he

14    signed that affidavit.

15         MS. MEYER:  All right.  So where was

16    Mr. Marzec's office?

17         THE WITNESS:  It's in Brooklyn.

18  BY MR. SMITH:

19    Q.   How many times were you there?

20    **A.   I don't understand the question.  How many?**

21    Q.   How many times were you in Mr. Marzec's office in

22  Brooklyn?

23    **A.   That time, or how many times?**

24    Q.   I'm sorry.  I didn't understand.  Say that again.

Page 48

1    **A.   Many times.**

2    Q.   More than five?

3    **A.   I don't understand.**

4    Q.   All right.  Strike the question.

5         MR. MARZEC:  I have to object.  Where is this

6    going?

7         MR. SMITH:  I said strike the question.

8         MS. MEYER:  Okay.  Counsel, move on.

9    BY MR. SMITH:

10   Q.   Would you please look at Exhibit, H-10, a document

11   from the Circuit Court of the 11th Judicial Circuit in and

12   for the Miami-Dade County in Florida.

13   **A.   H --**

14   Q.   H-10.

15   **A.   What does it indicate on the document, the title?**

16   Q.   It says Corrected Notice of Voluntary Dismissal.

17   **A.   Okay.  I see it.**

18   Q.   Have you ever seen that document before?

19   **A.   No, I don't recall seeing this document.**

20   Q.   Did you ever instruct an attorney to have this

21   document filed in Florida?

22   **A.   I don't recall.**

23   Q.   Did you ever speak with a Jonathan P. Cohen, an

24   attorney?

1     **A.    I think.**

2     Q.    Pardon me?

3     **A.    I think.**

4     Q.    You think what?

5     **A.    I think so.**

6     Q.    I didn't hear the rest of your answer.  Did you ever

7     speak with --

8     **A.    He worked with Mr. Rosenberg.**

9     Q.    You have to say that again, sir.  I didn't

10    understand what you said.

11    **A.    He worked with Mr. Rosenberg.**

12    Q.    Oh, he works with Mr. Rosenberg.  Okay.  Did you

13    ever authorize Mr. Rosenberg to file this document in court?

14    **A.    I don't recall.**

15    Q.    Would you look at H-11, please.  It's an Order of

16    Court in the 11th Circuit, Judicial Circuit, in and for the

17    Miami-Dade County, Florida.  Do you have that in front of

18    you?

19    **A.    Yes.**

20    Q.    Did you ever see that document before?

21    **A.    I don't recall.**

22    Q.    Did you know that the satisfaction of judgment,

23    which was H-10, was stricken by the Court, by this order

24    marked H-11?  Did you know that?

Page 50

1       A.    I don't recall.

2           MR. MARZEC:  Objection.  Well, he answered that

3       question.

4    BY MR. SMITH:

5       Q.    Would you look at H-12, please.  There's several

6    pages.  Would you look through all of them, please.  Have you

7    done that?  Have you looked through all the pages?

8       A.    Which pages?

9       Q.    H-12.  All the pages, I want you to look through

10   them.

11      A.    Okay.  I'm looking.  Yes.

12      Q.    Have you ever seen that document before?

13      A.    Yes.

14      Q.    When did you first see it?

15      A.    When I became the owner of Quebec.

16      Q.    I'm sorry.  I didn't understand what answer.

17      A.    When I became the owner of Quebec company.

18      Q.    That's when you first saw this?

19      A.    Exactly.

20      Q.    Was there an owner of the Quebec Corporation before

21   you?

22          MR. MARZEC:  Objection.  Asked and answered.

23      And I can go into the details if I'm permitted.

24          MR. SMITH:  I don't believe I asked that

Page 51

1    question.  I didn't ask that question before.

2         MS. MEYER:  I don't recall it.  Overruled.

3         MR. MARZEC:  Okay.

4    BY MR. SMITH:

5    Q.   Was there an owner of the Quebec Corporation before

6    you?

7    **A.   Yes.  I told it before.  It's Elia Hazan.**

8    Q.   He was the owner before you?

9    **A.   He was the owner of the 9197 Quebec company.**

10   Q.   This H-12, this is an assignment of a judgment

11   against Christopher Kosachuk and NLG for $108,000, did you

12   see that there in the second paragraph?

13   **A.   Sorry.  What paragraph?**

14   Q.   It says "Whereas on the 22nd day of February, 2007,

15   judgment was recovered in the Supreme Court, County of New

16   York, in favor of Evguenia Lorret and Nina Gogitidze" -- I'll

17   spell these for you later -- "and against Christopher

18   Kosachuk and NLG, LLC, in the sum of $108,293.54 plus costs."

19   Have you seen that before?

20   **A.   I've seen that document, but I told you, but it's**

21   **only against Chris Kosachuk, not NLG.**

22   Q.   Well, why does this say there was a judgment entered

23   against NLG?  Do you know why?

24        MR. MARZEC:  This calls for speculation.

Page 52

1          MS. MEYER:  Ask if he knows why.

2          MR. SMITH:  That's what my question was.

3    BY MR. SMITH:

4     Q.  Do you know why it says it's a judgment entered

5    against NLG?

6          MR. MARZEC:  Okay.

7          THE WITNESS:  It's not against -- it's the name

8     of the caption.

9    BY MR. SMITH:

10    Q.  No, I'm not reading the caption.  I'm reading what I

11   just read, that the judgment of those two women and against

12   Christopher Kosachuk and NLG, in the sum of $108,000.  Do you

13   know why it says NLG?

14    **A.   I don't know.  I was not there at that time when it**

15   **was done.  I was not the owner of the Quebec company when it**

16   **was done.  So you're asking a question about a document**

17   **before I was owner of that judgment.**

18    Q.  When did you -- on what date did you become the

19   owner of the corporation?

20    **A.   Around September 2011.**

21    Q.  Would you look at the third page there, please.

22    **A.   What?**

23          MR. MARZEC:  Of H-12?

24   BY MR. SMITH:

Page 53

1    Q.   Of H-12, the third page.  Strike that.  Strike that.

2    Don't go there.

3         Would you look at H-13, please.

4    **A.   Yes.  (Unintelligible).  Yes.**

5    Q.   Do you have H-13 in front of you?

6    **A.   Yes.**

7    Q.   That's a document from the Supreme Court of the

8    State of New York, County of New York, Quebec versus Kosachuk

9    and NLG and that's dated the 10th day of February, 2014.  You

10   were president of the corporation at that time; weren't you?

11        MR. MARZEC:  Objection to multiple questions in

12        that one question.

13        MS. MEYER:  Break down the questions.

14        MR. SMITH:  I thought I just asked him if he was

15        the president of the corporation at that time.

16        MR. MARZEC:  Is that a question or is it a

17        statement?

18        MS. MEYER:  It's a question.

19   BY MR. SMITH:

20   Q.   Do you understand the question, sir?

21   **A.   No.**

22   Q.   On February 10, 2014, did you have a position with

23   Quebec Corporation?

24   **A.   Yes.**

Page 54

1    Q.   What was your position?

2    **A.   Owner.**

3    Q.   Pardon me?

4    **A.   I am president.**

5    Q.   Would you look at the second page of that document.

6    I'll ask you if that contains your signature.

7    **A.   Yes.   What's the question?**

8    Q.   Is that your signature on the second page?

9    **A.   Yes.**

10   Q.   And how about at the bottom, is that also your

11   signature?

12   **A.   Yes.**

13   Q.   You assigned this judgment for $10; didn't you?

14   **A.   Pardon?**

15   Q.   This is an assignment of the judgment to SRS

16   Technologies Professionals, LLC; is that correct?

17   **A.   That's correct.**

18   Q.   And why did you assign it?

19   **A.   I sold it.**

20   Q.   Pardon me?

21   **A.   I sold it.**

22   Q.   You have to hold the phone up to your mouth, sir.

23   **A.   Sorry.   I sold it.**

24   Q.   You sold it.   Why?

Page 55

1      A.    Because I need money.

2      Q.    Well, this says you got $10.  Did that help you out

3  a lot, that $10?

4      A.    No, it's not true.

5      Q.    You mean it's not true that you got $10?

6      A.    No.  I got the amount.  I got 49,000.  I was paid in

7  cash -- in check.  I'm sorry.  In check.  My memory is -- I

8  was paid 49,000, the amount of 48,000, plus 1,000 -- 1,050

9  paid that made it 49,000, and also -- also the company, SRS

10  agreed to pay all the pending legal bills I got for the

11  amount for recovering for the interest accrued.

12      Q.    Are either of the Hazans involved with SRS

13  Technologies in any way?

14      A.    No, never.

15      Q.    Who did you negotiate this assignment with?

16      A.    (No response.)

17      Q.    Sir, why are you looking over to your left?

18      A.    I'm not looking.  I'm just getting much tired.

19      Q.    I'm sorry.  I didn't understand what you said.

20      A.    I'm getting tired.  That's why.  I have a problem

21  with my neck.  That's why I'm doing that.  Okay.

22      Q.    Who did you deal with at SRS Technologies?

23      A.    Yes.

24      Q.    Who?  Who is the person?

Page 56

1    **A.    One moment, please.  It's a company from nearby.**

2    Q.    Who is the person that you negotiated this

3  arrangement with?

4    **A.    It's Mr. Alex Sarano.**

5    Q.    Spell that last name, please.

6    **A.    S-A-R-A-N-O.**

7    MR. DONATELLI:  Did the court reporter get that

8  last name?

9    COURT REPORTER:  Yes.

10  BY MR. SMITH:

11    Q.    What did you do with the money?  Did you deposit it

12  in an account for the Quebec Corporation?

13    **A.    I cashed the money.**

14    Q.    And did you put it in an account for the Quebec

15  Corporation?

16    MR. MARZEC:  Objection.  Asked and answered.

17    MS. MEYER:  No, it's not asked and answered.

18  It's overruled.

19    MR. MARZEC:  Mr. Houle, please answer.

20    THE WITNESS:  It was a check.  It was written in

21  the name of the company first.  I was able to turn it

22  and (inaudible).

23  BY MR. SMITH:

24    Q.    Turn it and what?  We couldn't hear what you last

Page 57

1    said.

2         A.   It was (inaudible) -- no, no.

3         Q.   Hold the phone to your mouth, please.

4         A.   Sorry.

5              MR. MARZEC:  Mr. Houle, do you need a break?

6              THE WITNESS:  The check was in the name of the

7         company first, but then it was replaced my name,

8         Raymond Houle.

9    BY MR. SMITH:

10        Q.   Why?

11        A.   It was easier to..

12        Q.   Why wasn't the check given to the corporation?

13        A.   That is what I decided.

14        Q.   So you took the money for yourself; is that right?

15        A.   This is my problem.

16        Q.   Sir --

17        A.   Yes.

18        Q.   -- my question is did you take the money for

19   yourself?

20        A.   Yes.  Yes.

21        Q.   Does Quebec own any interest in SRS?

22        A.   No.

23        Q.   Do you own any interest in SRS?

24        A.   No.

Page 58

1    Q.    Has Elizabeth Hazan or Mr. Hazan ever given you any

2  actual money?

3    **A.    No.**

4    Q.    Has Elizabeth Hazan or Mr. Hazan ever instructed you

5  to do anything with regard to Kosachuk or NLG?

6    **A.    No.**

7         MR. MARZEC:  I have to object.  This is Darius

8    Marzec.  I'm not sure when.  I'm not sure if we're

9    still talking about the assignment of the judgment.

10   I'm not -- I'm a little lost.  I don't think you have

11   a foundation there to be able to answer these

12   questions.

13        MR. SMITH:  I believe my question --

14        MS. MEYER:  The witness seems to be

15   understanding the questions and answering them.  If

16   you want to redepose him on cross examination -- not

17   cross examination, but on your questioning of the

18   witness, you may.

19  BY MR. SMITH:

20   Q.    Who paid the bill for Ms. Meyer's time recently?

21   **A.    What -- sorry.  would you repeat?**

22   Q.    Ms. Meyer had presented a bill for her time involved

23  in this case.  Who paid it on your behalf?

24   **A.    Repeat the question.  The service --**

Page 59

1      Q.   Did you ever pay any money for the payment of

2  Ms. Meyer's bill?

3      **A.   Nobody paid.  Not yet.**

4      Q.   Sorry to hear that.  I'm just checking my notes.

5  I'll be with you in one second.  Did you know that Mr. Marzec

6  also represents Ms. Hazan?

7      **A.   Yes.  So what?**

8      Q.   Did you ever have any conversations of any kind with

9  Ms. Hazan other than with regards to the deposition you

10  appeared for in December in the bankruptcy matter?

11      **A.   No.**

12      Q.   Did you ever meet Ms. Hazan at any time other than

13  as a result of that bankruptcy deposition?

14      **A.   No.**

15      Q.   How about Mr. Hazan, did you ever meet with him, her

16  brother?

17      **A.   No.**

18      Q.   Then how did he ask you to take over the Quebec

19  Corporation?

20      **A.   It was a long time ago.  I meet him before.**

21      Q.   You did meet with him before.  How many times?

22      **A.   Yes.  Not recently, but --**

23      Q.   How many times?

24      **A.   Maybe five, ten times.  I don't remember.**

Page 60

1    Q.   Are you related to either Mr. or Ms. Hazan in any

2  way, either by blood or marriage?

3    **A.   No.   No.   I'm -- they are Jewish and I'm Catholic.**

4       MR. MARZEC:  Mr. Houle, there's no question

5     before you.

6  BY MR. SMITH:

7    Q.   Are you willing to have Mr. Marzec no longer

8  represent your corporation?

9       MR. MARZEC:  Objection.  I think this calls for

10      Mr. Houle to address confidential and privileged

11      information.

12      MS. MEYER:  Mr. Houle has stated he's unaware

13      that Mr. Marzec is seeking to withdraw his

14      representation from Quebec.

15      MR. SMITH:  Yes.  I'm asking him if he's willing

16      to allow him to withdraw his representation.

17      MR. MARZEC:  And there's no foundation for this.

18      It's out of the blue.

19      THE WITNESS:  I could say if that is his wish

20      I fully --

21      MR. MARZEC:  I'm sorry.  Hold on one second for

22      the ruling.

23      MS. MEYER:  You can ask him if he wishes to have

24      Mr. Marzec continue representing Quebec.

Page 61

```
1    BY MR. SMITH:

2        Q.   Do you, sir?

3        A.   If that is his wish, I fully respect his wishes.

4            MR. MARZEC:  I'm sorry.  Please ask the question

5        again and answer.

6    BY MR. SMITH:

7        Q.   Do you wish Mr. Marzec to continue to represent

8    Quebec Corporation?

9        A.   If he doesn't want to represent Quebec any longer, I

10   will respect him.

11       Q.   Do you understand that that means you have to get

12   another lawyer to represent the corporation?

13       A.   He is a brilliant lawyer, but I understand.

14       Q.   My question is, do you understand that you will have

15   to get another lawyer to represent the corporation?

16       A.   Yes.

17           MR. SMITH:  That's all I have.

18                              EXAMINATION

19   BY MR. MARZEC:

20       Q.   Mr. Houle, this is Darius Marzec, your attorney.  I

21   just have a few questions.  Mr. Houle, do you know what a

22   Motion to Withdraw an Appearance is?

23       A.   No.

24       Q.   Do you know what a Notice of Appearance is?
```

Page 62

1      A.    No.

2      Q.    Mr. Houle, are you aware that my law firm, Marzec

3  Law Firm, P.C., has filed a request before the Court in this

4  case to no longer represent 9197-5904 Quebec, Inc.

5      A.    **(No response.)**

6      Q.    Mr. Houle, did you understand?

7      A.    **It's very unfortunate.**

8      Q.    But are you aware of the application to withdraw

9  from representation filed by this firm?

10      A.    **If you want, what can I do?**

11      Q.    Mr. Houle, it's a yes or no question.  Do you know

12  that I want to leave this case and my firm wants to leave

13  this case?

14      A.    **(No response.)**

15      Q.    Mr. Houle?

16      A.    **I don't understand.**

17      Q.    Okay.  Mr. Houle, did you receive a letter from me

18  telling you -- withdrawn.

19           Mr. Houle, did you receive a motion in this case

20  filed by my law firm asking the Court for permission to no

21  longer be Quebec's attorney?

22      A.    **I didn't inspect my e-mail, but I will do it.**

23      Q.    Have you checked your mailbox?  Not e-mail, your

24  mailbox.

Page 63

1       A.   I got my mailbox -- (inaudible).

2            COURT REPORTER:  I'm sorry?

3            THE WITNESS:  My e-mail.  My mailbox and

4       my e-mail, also.  My mailbox.

5  BY MR. MARZEC:

6       Q.   How long have you not checked your mailbox for?

7       A.   Over a week.

8       Q.   Mr. Houle, are you aware that this law firm has

9  withdrawn from representation of Quebec in other cases?

10      A.   No, but I'm very sad.

11      Q.   Mr. Houle, do you receive mail at the address that

12  you gave in the beginning of your testimony?

13      A.   Which case?

14      Q.   Mr. Houle, do you receive mail at --

15      A.   No, I didn't.  No.

16      Q.   Hold on one second, please.  I just need a minute.

17  Excuse me.  Mr. Houle, do you receive mail at 5552 Queen Mary

18  Road, Number 4, Montreal, Canada?

19      A.   (No response.)

20      Q.   Mr. Houle, do you receive mail at 5552 Queen Mary

21  Road address?

22      A.   Yes, but I don't --

23           COURT REPORTER:  "I don't" what?

24           MR. SMITH:  Say that again, Mr. Houle.

1      THE WITNESS:  Yes, but I don't check my mail all

2  the time.

3  BY MR. MARZEC:

4      Q.   But are you aware of my law firm's applications,

5  motions, to withdraw from representation of Quebec?

6      MR. SMITH:  Objection.  He's asked that several

7  times and gotten answers.

8      MS. MEYER:  I'll allow it.

9  BY MR. MARZEC:

10      Q.   Mr. Houle?

11      **A.   Okay.  I understand now.**

12      Q.   Okay.  Let's move on.  Mr. Houle, 9197-5904 Quebec,

13  Inc., as of January 2012 held a judgment against whom?

14      **A.   Mr. Kosachuk.**

15      Q.   And what, if anything, did Quebec do with that

16  judgment in Chester County, Pennsylvania?

17      **A.   Would you repeat.**

18      Q.   What, if anything, did Quebec do with that judgment

19  against Mr. Kosachuk in Chester County, Pennsylvania?

20      **A.   It say in the charging order, holding against**

21  **collection.**

22      Q.   And what did, if anything, the charging order permit

23  Quebec to do as far as you understand it?

24      **A.   (Unintelligible).**

1    COURT REPORTER:  I'm sorry?

2    THE WITNESS:  I'm sorry.  I'm just taking time

3    to think about it.  Take over the management and

4    the --

5    COURT REPORTER:  I'm sorry?  Sir, could you

6    start your answer again, please.

7    BY MR. MARZEC:

8    Q.   Slowly.

9    **A.   Take over the management and the (unintelligible).**

10    COURT REPORTER:  I can't understand you.  Could

11    you say it again, please.

12    THE WITNESS:  The purpose is to take over the

13    management and the economics life of Mr. Kosachuk and

14    NLG as well as change what the charging order was

15    that was obtained in February 2012.

16    BY MR. MARZEC:

17    Q.   And Mr. Houle, did Quebec require a judgment against

18    NLG, LLC, in order to obtain a charging order against Mr.

19    Kosachuk --

20    **A.   No.**

21    Q.   -- as far as you know?

22    MR. MARZEC:  I have no more questions.  It's

23    very difficult to communicate with this witness.

24    MR. SMITH:  I have one or two others.  This is

1    Ed Smith.

2                        EXAMINATION

3    BY MR. SMITH:

4        Q.   How much did Mr. Kosachuk -- how much was the

5    judgment against Mr. Kosachuk that was obtained in New

6    York?

7        A.   **$95,000.**

8        Q.   And that was assigned to somebody else, wasn't it,

9    that judgment?

10           MR. DONATELLI:  Objection.  When?  Where?

11           MR. SMITH:  I'll withdraw that question.

12   BY MR. SMITH:

13       Q.   New question.  Why did you satisfy a judgment

14   against Ms. Hazan for over a million dollars when the debt of

15   Mr. Kosachuk was $95,000?

16       A.   **Hold on.**

17           MR. DONATELLI:  Hold on.  I have an objection to

18       that question.

19           MR. MARZEC:  I think this is a valid objection.

20           MS. MEYER:  I'm sorry.  I'm not hearing

21       somebody.

22           MR. MARZEC:  I'm sorry.  I spoke at the same

23       time.  I apologize.

24           MR. DONATELLI:  This is Guy.  I have an

Page 67

1          objection to the form of that question.

2               MR. MARZEC:  And I second that objection.

3               MS. MEYER:  Restate the question.

4     BY MR. SMITH:

5          Q.   You obtained an assignment of the judgment against

6     Mr. Kosachuk for approximately $95,000; correct?

7          **A.   Yes.**

8               MR. MARZEC:  Objection.  That is

9          mischaracterizing the witness' testimony.

10              MR. SMITH:  That's exactly what he just said.

11              MS. MEYER:  I thought -- let the reporter read

12         back the answer to the prior question.

13              MR. MARZEC:  The objection is asked and

14         answered.

15    BY MR. SMITH:

16         Q.   After you obtained that judgment against Mr.

17    Kosachuk for approximately $95,000, you later, on behalf of

18    NLG, satisfied a judgment against Elizabeth Hazan for over a

19    million dollars; isn't that correct?

20         **A.   Yes.**

21         Q.   Why did you satisfy that judgment worth over a

22    million dollars for a $95,000 debt?

23         **A.   The promise to pay me $200,000 in exchange of**

24    **satisfying the judgment against her.**

Page 68

1    Q.    The charging order permitted you to attach any

2    interest of Mr. Kosachuk in NLG in payment of the $95,000;

3    isn't that correct?

4    **A.    I don't --**

5         MR. MARZEC:  Objection.  The document speaks for

6    itself.

7         MS. MEYER:  This is his understanding of the

8    document.  Overruled.

9         MR. MARZEC:  Go ahead, Mr. Houle.

10        THE WITNESS:  I don't understand the question, I

11   think.

12   BY MR. SMITH:

13   Q.    You got a charging order, and that allowed you to

14   attach anything owned by Mr. Kosachuk and NLG in order to

15   satisfy his debt of $95,000; correct?

16        MR. MARZEC:  I have to object.  This

17   mischaracterizes the document and his testimony.  I

18   could explain it further.  I just don't want to --

19        MS. MEYER:  Overruled.  You can clarify with

20   questions of your own.

21   BY MR. SMITH:

22   Q.    Do you want me to repeat the question, sir?

23   **A.    Yes.**

24   Q.    What's your understanding as to what the charging

Page 69

1    order allowed you to do?

2        A.   **Yes, to take over NLG.**

3        Q.   Take over NLG and then do what?

4        A.   **Replace Kosachuk and NLG.**

5        Q.   And was that for the purpose of getting payment of

6    the $95,000?

7        A.   **No.**

8        Q.   What was the purpose then?

9        A.   **(No response.)**

10       Q.   What was your purpose in taking over NLG?

11       A.   **Because I wanted to make the $200,000.**

12       Q.   Was that your only reason?

13       A.   **Yes, for my business decision.**

14       Q.   And it was Elizabeth Hazan who was going to pay you

15   the $200,000?

16       A.   **Yes.**

17       Q.   And she hasn't paid you that yet?

18       A.   **No.**

19       Q.   Has she agreed to pay you on a particular date?

20       A.   **I already respond to that.**

21       Q.   Well, would you please repeat it.

22            MR. MARZEC:  Objection.  Asked and answered.

23       Witness is right.

24            MS. MEYER:  I'm sorry.  What?

1      MR. SMITH:  I don't believe that question was

2  ever asked.

3      MR. MARZEC:  Objection.  Asked and answered.

4  The question is when is the payment due.

5      MS. MEYER:  Overruled.

6  BY MR. SMITH:

7      Q.   When is she going to pay you the $200,000?

8      **A.   Over the next two -- next 24 months.**

9      Q.   In a lump sum or in monthly payments?

10     **A.   (No response.)**

11     Q.   Is she going to pay you all at once, or is she going

12 to pay it over time?

13     **A.   Wait a moment.**

14     MR. MARZEC:  I didn't get that.

15     MS. MEYER:  "Wait a moment".

16     THE WITNESS:  She won't pay me any more since

17 the judgment's been cancelled by the --

18 BY MR. SMITH:

19     Q.   Hold the phone up to your mouth and answer the

20 question, please.  Go ahead.  Now say that again.

21     **A.   She won't pay me any more now.**

22     Q.   Why?

23     **A.   Because the action -- the judgment's been cancelled.**

24     Q.   What has been cancelled?

1    A.    I don't -- because the judgment of NLG came back

2  against her.   Hear?

3    Q.    I'm sorry.  You have to say that again.  I don't

4  understand your answer.

5    A.    Because -- she won't pay any more because the

6  judgment of NLG came back against her.

7    Q.    What do you mean it came back against her?

8    A.    I mean, it was going and now it was no more.  You

9  have the document.  You know all these answers.

10    Q.    Was there a written agreement between you and

11  Elizabeth Hazan with regard to that $200,000 payment?

12    A.    Yes.

13    Q.    Who prepared that agreement?  Was it prepared by a

14  lawyer?

15    A.    I did.

16    Q.    You prepared it?  And do you have it?

17    A.    No, not with me.

18    Q.    Where is it?

19    A.    I don't remember where I put it.

20    Q.    Did you prepare it on the computer?

21    A.    No.

22    Q.    How did you prepare it?

23    A.    I don't remember.

24    Q.    Did you handwrite it?

Page 72

1    **A.    (No response.)**

2    Q.    Did you write it out longhand on a piece of paper?

3        MR. MARZEC:  I think I'm going to object.  The

4    witness already gave an answer that he -- well --

5        MS. MEYER:  I'm going to view these questions as

6    trying to refresh the witness' recollection.

7        MR. DONATELLI:  Why don't we have a little bit

8    of a break.  I have folks coming at 1:00 today.

9    They're in my conference room.  May I go out and tell

10   them that I'll be another 10 or 15 minutes?

11       MR. SMITH:  I'm almost done.

12       MS. MEYER:  How much longer do we have?

13       MR. SMITH:  One or two questions, and I'm done.

14   I just want to find out where the agreement is.

15   BY MR. SMITH:

16   Q.    Did you write the agreement in longhand on a piece

17   of paper with a pen or pencil?

18   **A.    No.  The computer -- I don't remember the place.**

19   Q.    I'm sorry.  I didn't understand what you said.  Hold

20   the phone up, please.

21   **A.    I think I prepare it on a computer.**

22   Q.    And you still have the same computer?

23   **A.    No.**

24   Q.    Where is that computer?

Page 73

1      A.   It broke.

2      Q.   Did you give a copy of that agreement to any

3 attorney?

4      A.   I don't recall.

5      Q.   Did you give the agreement to Ms. Hazan?

6      A.   I'm sure.

7      Q.   Did she sign the agreement?

8      A.   Yes.

9      Q.   Will you ask her for a copy of it back?  Are you

10 willing to do that?

11      MR. MARZEC:  I have to object.  That's not a

12      proper request to the witness.  You can only ask

13      questions of the witness and not ask the witness to

14      do something.

15      MS. MEYER:  If you want to ask for a production

16      of it from -- I guess you'd have to ask for it from

17      Hazan or subpoena it from Hazan, unless the witness

18      is willing to ask for it.  If he is, it's a fair

19      question.  I don't know how you will enforce it.

20 BY MR. SMITH:

21      Q.   Are you willing to ask Ms. Hazan for a copy of it?

22      A.   Yes.

23      Q.   And will you give it to your attorney when you get

24 it?

1    **A.   Yes.**

2    MR. SMITH:  Thank you.  That's all I have.

3    MR. MARZEC:  I have no more questions.  Darius

4  Marzec here.

5    MS. MEYER:  Anyone else?

6    MR. ROGERS:  I have three very brief questions.

7  This is Peter Rogers.

8                    EXAMINATION

9  BY MR. ROGERS:

10    Q.  Mr. Houle, do you understand that Mr. Marzec has

11  asked the Court for permission to stop being Quebec's

12  attorney?

13    MR. SMITH:  Objection.

14    MS. MEYER:  Overruled.

15    MR. SMITH:  Is he still there?

16  BY MR. ROGERS:

17    Q.  Mr. Houle, are you still there?

18    **A.   Yes.**

19    Q.  Let me ask it again.  I'll try to make it as simple

20  as possible.  Do you understand that Mr. Marzec has asked the

21  Court for permission to stop being Quebec's attorney?

22    **A.   Yes.**

23    Q.  Do you understand that Quebec will need to get a new

24  attorney?

Page 75

1      A.    Yes.

2      Q.    Do you give permission to Mr. Marzec to stop being

3   Quebec's attorney?

4      A.    Pardon?  Can you repeat?

5      Q.    Do you, as the shareholder of Quebec, give

6   permission to Mr. Marzec to stop being Quebec's attorney?

7      A.    Yes.

8            MR. ROGERS:  I don't have any other questions.

9            MS. MEYER:  Anyone else?

10           MR. MARZEC:  No.

11           MR. SMITH:  Ed Smith has none.

12           MR. DONATELLI:  Mr. Donatelli has none.

13           (Whereupon, the deposition was concluded at

14      1:05 p.m.)

15

16

17

18

19

20

21

22

23

24

1        C E R T I F I C A T I O N.

2                    I hereby certify that the

3    proceedings, evidence and objections noted are contained

4    fully and accurately in the notes taken by me in the hearing

5    of the foregoing matter, and that this is a true and correct

6    transcript of the same.

7

8

9

10

11

12

13

14

15

16          _Carol Shearer_

17              CAROL L. SHEARER, RPR

18              Stenographic Court Reporter

19              Notary Public.

20

21                    (THE FOREGOING CERTIFICATION OF THIS

22   TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY

23   ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR SUPERVISION

24   OF THE CERTIFYING REPORTER.)

SCANNED 01/20/2012

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

**against**

**JUDGMENT BY
CONFESSION**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |

| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

PLAINTIFF'S
EXHIBIT
H-9

JUDGMENT entered the __22nd__ day of February, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,


**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is


**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of *NLG*, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

*Norman Goodman*

CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full Name is:
NLG, LLC, a Delaware Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10|875/12

9197-5904 Quebec, Inc.,

**Plaintiff,**

against

**AFFIDAVIT OF**
**CONFESSION OF**
**JUDGMENT**

NLG, LLC, *A Delaware Limited Liability Company,*

**Defendant.**

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK** ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

Sworn to before me this
16 day of Febray, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2013

NOTARY PUBLIC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

                        **Plaintiff,**

    against

NLG, LLC,

                        **Defendant.**

**AFFIDAVIT OF
RAYMOND HOULE
REGARDING FACTS
SUPPORTING
JUDGMENT**

STATE OF NEW YORK

COUNTY OF NEW YORK    ss.:

    Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

    This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

RAYMOND HOULE

Sworn to before me on the _21_ day of _February_, 20 1 2.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 _12_

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**        Index No.

9197-5904 Quebec, Inc.,

                        Plaintiff,

    against

NLG, LLC., A DELAWARE LIMITED LIABILITY
           COMPANY,

                        Defendant.

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**
FEB 2 2 2012
AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY



**ORDERED in the Southern District of Florida on October 31, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

</div>

In re:

LIZA HAZAN,                                         CASE NO. 16-10389-BKC-AJC
a/k/a ELIZABETH HAZAN

     Debtor.                                CHAPTER 11
_____/
LIZA HAZAN a/k/a ELIZABETH HAZAN
and SELECTIVE ADVISORS GROUP, LLC,    ADV. NO. 16-1439-BKC-AJC-A

     Plaintiffs,

vs.

NLG, LLC

     Defendant.
_____/

<div align="center">

**FINAL JUDGMENT ON COUNTS I, II AND III OF PLAINTIFFS' THIRD AMENDED
COMPLAINT DETERMINING VALIDITY, PRIORITY AND EXTENT OF LIENS AND
SETTING TRIAL ON COUNTS IV THROUGH IX**

</div>

    **THIS CAUSE** came before the Court for trial on July 13, 2017 at 10:00 a.m., upon

Plaintiffs, Selective Advisors Group, LLC ("Selective") and Liza Hazan a/k/a Elizabeth Hazan's Third Amended Complaint and Defendant, NLG, LLC's Counterclaim.  Selective commenced this Adversary Proceeding against NLG, LLC ("NLG") on August 21, 2016, seeking a determination of the nature and extent of its claimed lien, if any. Debtor joined the adversary proceeding against NLG on October 21, 2016. The Third Amended Complaint was deemed the operative Complaint by Order entered January 23, 2017, and NLG filed an Amended Answer and Counterclaim on May 17, 2017.  In its Counterclaim, NLG also seeks a determination of the nature and extent of its claimed lien and that its late filed claim be allowed as a timely filed claim.  Plaintiffs seek a determination that NLG has no remaining claim against this Debtor and no standing to participate in this case.

The Court having reviewed the file, the documentary evidence and exhibits, having heard the testimony of witnesses and argument of counsel, finds and concludes as follows.

## A. <u>Background</u>

Ms. Hazan is the owner of her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property").  She purchased the Property on March 7, 2007 from NLG.  Chris Kosachuk is the manager and representative of NLG. For nearly a decade, Kosachuk and NLG have litigated with Debtor in multiple courts and in several jurisdictions.  The various courts have entered final orders setting forth the rights and obligations of Ms. Hazan, NLG, and Selective.

All interested parties to the various controversies are now before this Court and subject to its jurisdiction.  This Court is not an appellate court for any of the other courts; thus, full faith and credit must be given to all of the final judgments and orders entered in the other courts as those judgments have become final and not subject to appeal.

There have been claims or assertions that some of these other court decisions are erroneous.

However, when the decisions or judgments of those courts became final and not subject to further appeal, those decisions or judgments became the law of the respective case and not subject to further review by this Court. While arguments have been made to accept one or more of the prior judgments and ignore others, those arguments are not persuasive and this Court will attempt to determine the rights of the parties by giving full faith and credit to all of the final orders and judgments.

**State Court Proceedings**

NLG's claim against Debtor arises from a promissory note (the "Note") (Exhibit 1) and mortgage (the "Mortgage") (Exhibit 2) on the Property, recorded in April 2007 in the original amount of $1,275,000.00. In June 2007, NLG sued Debtor for an alleged breach of the Note, in Miami-Dade Circuit Court, Case No. 07-19532 CA 11 (Exhibit 3). On April 28, 2008, Circuit Judge Robert N. Scola Jr. entered a Default Final Judgment on the Note (the "Scola Judgment") against Ms. Hazan in the amount of $1,618,071.29 with 11% interest per annum (Exhibit 4). NLG moved to domesticate the Scola Judgment in New York and litigation followed in the New York Supreme Court.

In December 2011, NLG filed a second lawsuit, Case No. 11-42770 CA (01), in Miami–Dade Circuit Court seeking to foreclose on the Mortgage (Exhibit 5). On February 8, 2013, the trial court judge, Judge Spencer Eig, ruled that NLG had made an election of remedies by first suing on the alleged breach of the Note, and obtaining a judgment thereon. As such, Judge Eig precluded NLG from foreclosing on the Mortgage (Exhibit 6). NLG appealed that decision to the Third District Court of Appeal.

On April 30, 2014, while the Eig Order was on appeal to the Third District Court of Appeal, Plaintiff Selective acquired a 2012 New York judgment against NLG [and in favor of 9197-5904 Quebec, Inc.] and recorded the foreign judgment in Miami-Dade County, Florida in Case No.14-10475 CA (10) assigned to Circuit Court Judge Peter Lopez (the "Quebec Judgment"). NLG filed a

3

Motion to Quash the recording of the New York judgment against it in Florida. However, after NLG

failed to post a bond as ordered, Judge Lopez denied NLG's motion to quash on June 16, 2014, finding

that Plaintiff Selective has the right to enforce and collect on their foreign judgment, the

$5,000,225.00 Quebec Judgment.

Thereafter, on July 2, 2014, Selective, as owner of the then-domesticated foreign judgment,

the Quebec Judgment, brought proceedings supplementary in Case No.14-10475 CA (10) specifically

to seize and attach NLG's judgment against Hazan (the Scola Judgment) for the purpose of partially

satisfying the Quebec Judgment. Circuit Judge Lopez heard the Proceedings Supplementary Motion

on August 12, 2014 and August 15, 2014, and entered an Order on August 20, 2014, judicially

assigning to Selective the Scola Judgment against Debtor (the "Lopez Assignment Order"). The

Lopez Assignment Order states in pertinent part:

> 1.     The Court orders that the Hazan Final Judgment held by NLG, LLC, against
> Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and
> benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-
> Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability
> Company.
>
> 2.     Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC shall stand in
> the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG,
> LLC so as to entitle it to recover all proceeds attributable to said judgment against
> additional Defendant, Elizabeth Hazan, with NLG, LLC receiving credit for all sums
> so received.
>
> 3.     Plaintiff, SELECTIVE ADVISORS GROUP, LLC shall give a credit to
> Defendant NLG, LLC in the sum of $2,746,953.34 which amount includes principal
> and interest through August 31, 2014 at the 11% judgment amount **without prejudice
> to Defendant establishing at further hearing why the credited amount should be
> greater**.

Exhibit 8 (emphasis added).

At trial, NLG argued that the Scola Judgment was the subject of an appeal at the time of the

assignment, and therefore could not have been judicially assigned by Judge Lopez. However, Judge

Lopez actually addressed and dismissed that argument when he denied NLG's motion to reconsider the Order of assignment of the Scola Judgment to Selective:

> Okay, so I assigned your interest in it to them (Selective), which had nothing to do with what's going on up on appeal. . . .
>
> That judgment that I assigned to them (Selective) or that interest in that judgment was up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win or lose, whatever happens, now, these people own it instead of you. The Third came back and said, too bad, you get to foreclose, they now own that judgment or note if that's what merged into it, they (Selective) get to go and foreclose.

Exhibit 22, Tr page 24 lines 3-5; Tr page 26 Lines 3-12. Judge Lopez's Orders are final.

**Satisfaction and Payment of the Scola Judgment**

On August 20 and 21, 2014, Selective filed a satisfaction of the Scola Judgment and the Mortgage (Exhibit 9). Selective gave credit to NLG towards the Quebec Judgment. According to the Electronic Judgment Lien Amendment Statement filed on September 5, 2014 with the Florida Secretary of State (Exhibit 14), it appears NLG was given credit in the amount of the Scola Judgment, or $1,618,071.29, without credit for interest thereon. The Lopez Assignment Order specifically determined that $2,746,953.34 was the correct sum to be credited to NLG for the Scola Judgment, as that amount includes interest from April 28, 2008 through August 31, 2014. **The Lopez Assignment Order also left open the possibility of an increase in that amount, should same be proven at a further hearing**.

The Lopez Assignment Order was never vacated or set aside, and the decision remains the law of the case.

In the New York lawsuit by NLG against the Debtor, Selective proceeded to intervene. Judge Barbara Jaffe of the New York Supreme Court entered a Decision and Order on October 30, 2014 recognizing Selective's assignment of the Scola Judgment pursuant to the Lopez Assignment Order. In that case, the court ordered the caption of the New York case be changed to reflect the substitution

of Selective Advisors Group, LLC as the proper party, in place of NLG, LLC (Exhibit 18). The court also directed the Clerk to accept for filing the Order of assignment "judicially assigning the underlying Florida judgment from plaintiff to Selective", and strike all NLG's judgments of record against Ms. Hazan. On November 13, 2014, Judge Jaffe dismissed NLG's lawsuit against Elizabeth Hazan, ruling as follows:

> Given the satisfaction of Judgment in the underlying action under index #101288/2013, as reflected in my Decision and Order dated October 30, 2014, defendant's motion to dismiss the proceeding is granted and the proceeding is dismissed. The clerk is directed to enter judgment accordingly.

Exhibit 19.

### The Third District Court of Appeal Opinion and the Gordo Foreclosure Judgment

On September 3, 2014, the Third District Court of Appeal reversed Judge Eig on the issue of election of remedies and held that foreclosure could proceed on the Mortgage (Exhibit 12). Circuit Judge Monica Gordo, by that time having replaced Judge Eig in the division, then entered a foreclosure judgment in favor of NLG, despite the judicial assignment of NLG's interests in the Note and Mortgage to Selective (the "Gordo Foreclosure Judgment"). Notwithstanding the various court rulings recognizing the judicial assignment of the Scola Judgment to Selective, Judge Gordo entered a Final Judgment of Foreclosure in favor of NLG on December 4, 2015 (Exhibit 21). The Gordo Foreclosure Judgment determined NLG, LLC was entitled to the grand total sum of $4,876,654.29 and set a sale for January 12, 2016.

However, on January 11, 2016, the Debtor filed for Chapter 11 bankruptcy protection and the sale was stayed.

### B. Legal Analysis

Plaintiffs contend that Judge Lopez judicially assigned to Selective the Scola Judgment, together with all the rights and claims thereunder, which includes the right to enforce the Mortgage,

Case 10-81455-AJC Doc 236 Filed 11/01/10 Page 7 of 13

leaving NLG with no enforceable mortgage, lien, or claim in this bankruptcy case. NLG takes the position that, notwithstanding the judicial assignment of the Scola Judgment on the Note, NLG retained the right to foreclose on the Mortgage. NLG asks the Court to limit its review to only one out of the many rulings entered in the ten-year history of litigation between the parties. It asks the Court to look only to the Gordo Foreclosure Judgment, contending that Judge Gordo resolved all issues in NLG's favor.

After reviewing the history of the proceedings between the parties, it is evident the Gordo Foreclosure Judgment does not resolve all issues in NLG's favor. The Scola Judgment, the Lopez Assignment Order, and the Gordo Foreclosure Judgment all control this Court's decision going forward. The Scola Judgment established Debtor's liability to NLG on the Note. The Scola Judgment, and consequently the Mortgage, were assigned to Selective by the Lopez Assignment Order, and were thereafter satisfied. Finally, by the Gordo Foreclosure Judgment, NLG, LLC established its entitlement to a greater credit for the judicial assignment of the Note and Mortgage. Moreover, any interest NLG may have had in the Mortgage by virtue of the Gordo Foreclosure Judgment is/was extinguished upon redemption by the Debtor and satisfaction.

The Scola Judgment awarded NLG, LLC $1,618,071.29 against the Debtor for Debtor's breach of the Note.

In 2014, after entry of the Scola Judgment, Selective acquired a $5,000,225 judgment against NLG, LLC, the Quebec Judgment. (Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.) Selective domesticated the Quebec Judgment in state court, before Judge Lopez, and the order domesticating the judgment has become final and non-appealable. Thereafter, the Lopez Assignment Order was entered, judicially assigning the Scola Judgment to Selective [in partial satisfaction of the Quebec

Case 1:22-cv-21485-PDAoc1QmeDoD-83EnteFiblexfD/1750l/2D9ockBbage633/04/0227 Page 882 of
Case 10-81459-AJC Doc 238 entered 11/01/10 Page 8 of 13
889

Judgment] and determining the value of the Scola Judgment to be $2,746,953.34, inclusive of

interest. The Lopez Assignment Order judicially assigns the Scola Judgment to Selective, together

with all the rights and claims thereunder.

Because ownership of the Mortgage follows the Note, in the absence of a contrary

intention, Selective, who owns and holds the Note, therefore has standing to foreclose the

Mortgage.

> It has frequently been held that a mortgage is but an incident to the debt, the payments
> of which it secures, and its ownership follows the assignment of the debt. If the note
> or other debt secured by the mortgage be transferred without any formal assignment
> of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident
> to the debt, unless there be some plain and clear agreement to the contrary, if that be
> the intention of the parties.

*Taylor v. Bayview Loan Servicing, LLC*, 74 So.3d 1115, 1117-18 (Fla. 2d DCA 2011).  Under Florida

law, "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure

must demonstrate that it has standing to foreclose" [the subject note and subject mortgage when the

complaint is filed]. *McLean v. JPMorgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA

2012). "Standing may be established by either an assignment or an equitable transfer of the

mortgage prior to the filing of the complaint." *Id.*  NLG has not demonstrated that it owns and holds

the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010).

Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge

Lopez to Selective.  NLG no longer holds the right to enforce the Note or the Scola Judgment

entered on the Note. See, Trial Transcript Page 27 lines 3-11.  There being no evidence presented

to support the position that the parties did not intend for the Mortgage to follow the Note, the Mortgage

did indeed follow the assignment of the Note in this case.  The Note having been judicially assigned

to Selective, Selective has standing to foreclose the Mortgage and, upon assignment, NLG had no

further right to foreclose the Mortgage. When Judge Lopez assigned the Scola Judgment to

Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage.

The public records for Miami-Dade County, Florida reflect that the Scola Judgment and the Mortgage were both satisfied in August 2014. NLG was given credit by Selective for the debt remaining under the Scola Judgment and Mortgage, in partial satisfaction of the domesticated Quebec Judgment. It appears that credit may not have been finally determined, as discussed further herein.

Notwithstanding the judicial assignment to Selective and subsequent satisfactions, in November 2014, the Third District Court of Appeal, presumably unaware of the assignment and satisfactions, entered an opinion reversing the Eig Order and permitting foreclosure of the Mortgage. Following the mandate, Judge Gordo entered the Gordo Foreclosure Judgment in December 2015. The Gordo Foreclosure Judgment determined NLG is entitled to $4,876,654.29 under the Note and Mortgage. The Court is advised Selective tried to intervene in the case but Judge Gordo did not allow intervention. This Court was not informed as to why Selective did not otherwise intervene in the appeal of the Eig Order and advise the Third District Court of Appeal that Selective was assigned the Note and Mortgage and that the Note and Mortgage were satisfied months before the Third District Court Appeal issued its opinion reversing the Eig Order.

Thus, it initially appears there may be a conflict between the Lopez Assignment Order, assigning ownership of the Note and Mortgage on the Property to Selective, and the Gordo Foreclosure Judgment, granting foreclosure of the Property in favor of NLG as Plaintiff instead of in favor of Selective. However, this conflict has been overcome by events.

Giving full faith and credit to the Lopez Assignment Order, NLG's rights in the Scola Judgment were assigned to Selective, after Judge Lopez concluded that the assignment of the Scola

Judgment to Selective had no relevance to the issues on appeal. (Exhibit 22, Tr. 26:3-11). The Lopez Assignment Order establishes that NLG, LLC is entitled to $2,746,953.34 for the assignment, "which amount includes principal and interest [on the Note] through August 31, 2014 at the 11% judgment amount *without prejudice to [NLG] establishing at further hearing why the credited amount should be greater*." (Emphasis added.) Giving full faith and credit to the Gordo Foreclosure Judgment, NLG established its entitlement to a greater credit than that in the Lopez Assignment Order, in the grand total sum of $4,876,654.29. The Gordo Foreclosure Judgment also granted NLG the right to foreclose, but allowed the Debtor to redeem the Property up until the time of the sale. Thus, notwithstanding the right to foreclose, no sale took place, and the Debtor's right to redeem remains alive and well.

NLG argued at trial that Selective is collaterally estopped from asserting its interest in the Mortgage. "However, in collateral estoppel the 'precise fact' or 'every point and question' on the issue must have been decided". *Chandler v. Chandler,* 226 So.2d 697 (Fla. 4th DCA 1969) citing *Gordon v. Gordon*, 59 So.2d at 45 (Fla.1952). Here, Selective sought to intervene in the Gordo foreclosure lawsuit to raise its unique issues of law and fact relative to the assignment of the Mortgage rights and the right to intervene was denied to Selective. "[I]f there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation". *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324 (11th Cir. 2010). The evidence and testimony presented at trial demonstrate that Selective was not a party to the Gordo case and therefore is not barred by res judicata or collateral estoppel from asserting its rights under the Note and Mortgage.

However, even assuming that the Gordo Foreclosure Judgment authorized NLG, *and not Selective*, to foreclose the Mortgage, the foreclosure sale never took place because Debtor filed

this bankruptcy case, staying the sale pursuant to 11 U.S.C. §362. The Debtor redeemed the Property prior to a foreclosure sale being conducted and certificate of sale being issued, thereby satisfying the Gordo Foreclosure Judgment. In paragraph 4 of the Gordo Foreclosure Judgment, the state court judge set a foreclosure sale date, subject to paragraph 6 therein. Paragraph 6 of the Gordo Foreclosure Judgment states:

> **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statute, Section 45.0315 shall be terminated.

Section 45.0135, Fla. Stats., provides:

> At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure, or if no judgment, order, or decree of foreclosure has been rendered, by tendering the performance due under the security agreement, including any amounts due because of the exercise of a right to accelerate, plus the reasonable expenses of proceeding to foreclosure incurred to the time of tender, including reasonable attorney's fees of the creditor. Otherwise, there is no right of redemption.

Until the certificate of sale issued, the Debtor retained her right of redemption, regardless of the identity of the mortgagee. Consistent with her rights under the Gordo Foreclosure Judgment and as provided by statute, the Debtor in fact redeemed the Property prior to a foreclosure sale, by satisfying the Note and Mortgage, and by Selective providing NLG credit for payment of the Note and Mortgage to partially satisfy NLG's debt to Selective by virtue of the Quebec Judgment.

The amount of the credit provided to NLG should be the greater amount established by the Gordo Foreclosure Judgment. Although the Scola Judgment determined the debt on the Note to be $1,618,071.29, the Lopez Assignment Order increased the amount owed to NLG by the Debtor to $2,746,953.34. The Gordo Foreclosure Judgment ultimately established that NLG was entitled to $4,876,654.29 for the Note and Mortgage. While the $4,876,654.29 amount may be disputed, the

Court must give full faith and credit to the Gordo Foreclosure Judgment and will therefore view the amount determined in that judgment to be the greater amount NLG established it was owed on account of the Note and Mortgage, *as the Lopez Assignment Order allowed*.

It appears from the Electronic Judgment Lien Amendment Statement (Exhibit 14) that NLG was given credit only for the amount indicated in the Scola Judgment, or $1,618,071.29. It was not credited with the amount indicated in the Lopez Assignment Order of $2,746,953.34 (which included interest on the Scola Judgment), nor was it credited with the amount indicated in the Gordo Foreclosure Judgment, $4,876,654.29. However, at the time of trial, the parties' rights were already determined by all those orders. Before any credits, Selective was owed $5,000,225.00 from NLG on account of the Quebec Judgment, and NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage pursuant to the Gordo Final Judgment. Honoring the Gordo Foreclosure Judgment, NLG must be credited for the full amount of the judgment, $4,876,654.29, whether that amount is lesser or not, for the assignment of the Note and Mortgage and satisfactions, leaving the Mortgage redeemed and Selective with a judgment against NLG in the remaining amount of $123,570.71. Whether the various satisfactions and other documents filed by Selective waive Selective's right to collect any further balance is an issue between Selective and NLG.

**Conclusion**

The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose the Mortgage securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District Court of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose. Assuming the validity of the Gordo Foreclosure

Judgment, the Debtor exercised her right to redeem the Property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's debt to NLG has been paid, including the New York State Supreme Court, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited by Selective for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure Judgment. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,876,654.29, which credit will leave the Mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom. Accordingly, it is

ORDERED and ADJUDGED that Counts I, II and III of Plaintiffs' Third Amended Complaint and NLG's Amended Counterclaim are **GRANTED IN PART** and **DENIED IN PART**

as follows:

1.  NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

2.  Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt due to Selective pursuant to the Quebec Judgment.

3.  NLG's Proof of Claim #17 is disallowed and NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order.

4.  Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.

# # #

Copy to:
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Facsimile: 954-356-0451

Email: dave@flalawyer.com
Florida Bar No. 348279

Attorney Langley is directed to serve a copy of this Final Judgment on all interested parties and to file a Certificate of Service with the Court.